## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.    09-CR-043-SPF |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR PROTECTIVE ORDER

The United States of America, by and through its attorneys, David E. O'Meilia,

United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke,

Assistant United States Attorney, and Charles A. O'Reilly, Trial Attorney, United States

Department of Justice, moves the Court pursuant to Fed.R.Crim.P. 6(e)(3)(E)(i), Title 26,

United States Code, Sections 6103(i)(4)(A)(i) and (ii) and Title 18, United States Code,

Sections 2516(1) and (3) and 2518(8)(b), for an order permitting disclosure, preliminarily to

or in connection with the trial of *United States v. Lindsey Kent Springer and Oscar Amos

Stilley*, Case No. 09-CR-043-SPF, of grand jury testimony, documents produced to the grand

jury or its agents, income tax returns, taxpayer return information, and documents or other

information in any form which contains the street address, telephone number, social security

account number, date of birth, alien registration number, credit card number, bank account

number, insurance policy number, membership number, employee identification number,

4084384.1

state or federal driver's license or identification card number, government passport number, employer or taxpayer identification number, email address or other means of identification. The Government also moves to have the order limit further disclosure and use of the materials referenced above, and in support thereof states as follows:

1.      A Grand Jury sitting in the Northern District of Oklahoma recently returned an Indictment in the matter of *United States v. Lindsey Kent Springer and Oscar Amos Stilley*, Case No. 09-CR-043-SPF.

2.      Plaintiff, the United States of America, hereinafter referred to as "the Government," possesses grand jury transcripts of prospective trial witnesses that it anticipates disclosing to the defendants as material required by the Jencks Act, 18 U.S.C. § 3500, Fed.R.Crim.P. 26.2, *Brady v. Maryland*, and/or *United States v. Giglio*.

3.      The Government possesses documents produced under subpoenas issued by the Grand Jury sitting in this District that must be made available to the defendants under Fed.R.Crim.P. 16.

4.      The Government possesses income tax returns and taxpayer return information of the defendants obtained as part of the grand jury investigation that is likely to be subject to discovery to the defendants under Fed.R.Crim.P. 16.

5.      The Government possesses materials obtained pursuant to a search warrant executed at the home of Lindsey Kent Springer that is likely to  be subject to discovery to the defendants under Fed.R.Crim.P. 16.

-2-

4084384.1

6.     For the sole purpose of preparing for trial, counsel for all parties may find it necessary to disclose grand jury documents and testimony to their prospective witnesses.

7.     For the sole purpose of preparing for trial, counsel for both parties may find it necessary to disclose grand jury documents and transcripts to experts, consultants, contractors, subcontractors and agents, including professional graphics and litigation support personnel, who will be assisting in counsels' preparation for trial.  The Government estimates approximately 33,000 pages of discovery at the present time, however, the investigation is ongoing, and additional discovery of computer records, video recordings and audio recordings is anticipated.

8.     Disclosure of the materials identified above for trial preparation or for use at trial is appropriate, provided the disclosure is pursuant to a protective order regarding the maintenance of grand jury secrecy, taxpayer information and individual identification information in the continuing grand jury investigation.

9.     The Jencks Act requires the Government, on motion of the defendants, to produce an "statement" of a witness it has called that relates to the subject matter to which the witness has testified.  18 U.S.C. § 3500(b) (1988).  This includes a transcript of a witness's testimony before a grand jury.  *Id.*, § 3500(e)(3); *United States v. Bailey*, 944 F.2d 911, 1991 WL 180087, at *1 (10th Cir. Sept. 11, 1991) (citing *United States v. Knowles*, 594

F.2d 753, 755 (9th Cir. 1979)).[1]

10.     Fed.R.Crim.P. 26.2(a) states that after a witness other than a defendant has testified on direct examination, the defendants are entitled to any statement of the witness that relates to the subject matter of the witness's testimony, which may include a transcript of the grand jury testimony of the witness.

11.     Fed.R.Crim.P. 6(e)(1) gives the United States Attorney custody and control of grand jury transcripts until the Court orders otherwise.  Rule 6(e)(2) states "an attorney for the government . . . shall not disclose matters occurring before the grand jury, except as otherwise provided in these rules."  There are several exceptions to the rule, and one exception allows grand jury transcripts to be released when directed by the Court. Fed.R.Crim.P. 6(3)(E)(i).

12.     It is the practice in this District to voluntarily disclose grand jury transcripts during discovery, thereby preventing delays during the trial.

13.     In order to protect the witnesses from being threatened, harmed or intimidated before testifying, to protect the sanctity and the secrecy of the grand jury process, and to protect the Government attorneys if they disclose to counsel for the defendants, prior to trial, grand jury and other investigative materials to include Ex Parte Applications and Orders for Tax Return Information and those income tax returns, taxpayer return information, and

---

[1] Pursuant to 10th Circuit Rule 36.3, a copy of *Bailey*, an unpublished opinion, is attached hereto because it has persuasive value with respect to a material issue that has not been addressed in a published opinion, and would assist the court in its disposition.

4084384.1

transcripts of undercover recorded conversations), which must be disclosed under normal circumstances pursuant to the dictates of the *Jencks* Act, 18 U.S.C. § 3500; Fed.R.Crim.P. 16; *United States v. Giglio*, 405 U.S. 150 (1972); and *Brady v. Maryland*, 373 U.S. 83 (1963), a protective order should be entered requiring that the defendants shall:

> (a)    not disseminate the transcripts and other materials provided pursuant to discovery for any other purpose;
>
> (b)    return the transcripts and other materials provided pursuant to discovery to the United States Attorney's Office immediately after the testimony of the specific witness;
>
> (c)    not show the transcripts and other materials provided pursuant to discovery to anyone–with the exception of the defendants, defendants' attorneys of record in this case (if any) and those persons employed by the attorney or *pro se* defendant who are necessary to assist counsel of record or the *pro se* defendant in preparation for trial in this case;
>
> (d)    not reproduce the documents and transcripts for dissemination to any other persons or parties, and shall maintain complete custody and control over them, including all copies.

14.    Fed. R. Crim. P. 16(d)(1) provides that the Court may "for good cause, deny, restrict or defer discovery or inspection, or grant other appropriate relief."  Fed.R.Crim.P. 16(d)(1).  The Supreme Court has noted that the courts may use protective orders to restrict the use of materials produced in discovery.  Where appropriate, a trial court can and should place a defendant and his attorney under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect.  *Alderman v. United States*, 394 U.S. 165, 185 (1969).

4084384.1

Fed.R.Crim.P. 6(e)(2) provides a general rule of grand jury secrecy for "matters occurring before the grand jury," *id.*, but Fed.R.Crim.P. 6(e)(3)(E)(i) permits disclosure "directed by the court preliminarily to or in connection with a judicial proceeding . . . in such manner, at such time, and under such conditions as the court may direct." *Id.* Under this rule, a party seeking disclosure must show with particularity that the "need for disclosure is greater than the need for continued secrecy." *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 443 (1983), quoting *Douglas Oil Co. V. Petrol Stops Northwest*, 411 U.S. 211, 222-23 (1979).

In directing such a disclosure, the Court may impose protective limitations on the use of disclosed materials. *Douglas Oil*, 441 U.S. at 223. The United States requests that the Court limit defense counsels' and *pro se* defendants' use of the grand jury materials to their preparation for, or use at trial, and to forbid defense counsel and each (*pro se*) defendant from making further disclosure of the grand jury material for purposes unrelated to this trial. Such a limitation is necessary here not only to comply with Rule 6(e)'s requirement of grand jury secrecy, but also to protect the interests of the ongoing grand jury investigation that produced the instant Indictment. See *Id.* At 219 n. 10; *United States v. Proctor & Gamble Co.*, 356 U.S. 667, 681-82 n. 6 (1958). The proposed order is also necessary to protect the dignity and privacy of individuals whose information will be disclosed.

4084384.1

WHEREFORE, the United States requests that the Court enter a protective order for all discovery materials, to include grand jury transcripts and other investigative materials, income tax information and other information in any form which contains the street address, telephone number, social security account number, date of birth, alien registration number, credit card number, bank account number, insurance policy number, membership number, employee identification number, state or federal driver's license or identification card number, government passport number, employer or taxpayer identification number, email address or other means of identification, provided to the defendants during discovery, requiring the *pro se* defendants and/or their counsel to comply as set forth therein.

Respectfully submitted,

DAVID E. O'MEILIA
United States Attorney


*/s/ Charles A. O'Reilly*
CHARLES A. O'REILLY, CBA #160980
Special Assistant United States Attorney
KENNETH P. SNOKE, OBA #08437
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

-7-

4084384.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of April, 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants, and by United States Postal Service to the following defendants:

Lindsey K. Springer, Pro Se Defendant
lindsey@mindspring.com

Oscar A. Stilley, Pro Se Defendant
7103 Race Track Loop
Ft. Smith, AR 72916

/s/ Charles A. O'Reilly
Assistant United States Attorney

4084384.1

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

944 F.2d 911 (Table)
944 F.2d 911 (Table), 1991 WL 180087 (10th Cir.(Colo.))
**Unpublished Disposition**
**(Cite as: 944 F.2d 911,  1991 WL 180087 (10th Cir.(Colo.)))**

NOTICE:  THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Robert BAILEY, a/k/a James Robert Nicholson, Defendant-Appellant.
No. 90-1148.

Sept. 11, 1991.

D. Colo., No. 89-CR-395.

D.Colo.

AFFIRMED.

Before McKAY and SETH, Circuit Judges, and BROWN, Senior District Judge. [FN1]

ORDER AND JUDGMENT  [FN2]

McKAY, Circuit Judge.

**\*\*1** Defendant James Bailey appeals his conviction on four counts of unauthorized use of food coupons under 7 U.S.C. § 2024(b) (1988) and aiding and abetting another in the unauthorized use of food coupons under 18 U.S.C. § 2 (1988). Defendant filed a motion for a new trial that was denied by the district court.   He was sentenced to three years imprisonment on each of the counts, to be served concurrently.   This appeal followed.

I.

Defendant and co-defendant Sinnica Nicholson operated Seven Seas Seafood, a food store in Denver, Colorado.   They were authorized by the United States Department of Agriculture to redeem food coupons.  USDA initiated an investigation into the possible unauthorized use of food coupons after receiving a phone call from the manager of the bank where the defendant and Ms. Nicholson had opened an account.   The bank manager informed USDA agents that he was suspicious of defendant and Ms. Nicholson due to the extremely large volume of food stamps they had deposited into their account and because they were withdrawing the cash shortly after making deposits.

4084384.1

USDA conducted an investigation involving special agents and a civilian working as an undercover operative. On July 26, 1989, a special agent and the undercover operative entered Seven Seas Seafood. They asked defendant if he would redeem food stamps for cash. Defendant responded affirmatively and directed them to Ms. Nicholson who was in another part of the store. Ms. Nicholson exchanged $200 worth of USDA food coupons for $100 in cash.

On August 4, 1989, the undercover operative entered Seven Seas Seafood and contacted defendant. They left the store together, entered defendant's automobile, and drove behind the store into an alley. The undercover operative informed defendant that the food coupons she was about to exchange were stolen. Defendant paid $80 in cash for $160 in food coupons. The undercover operative also stated that she would have more food coupons to sell in the future. Defendant indicated that he was willing to purchase more coupons. This transaction was recorded through a device hidden on the undercover operative and was viewed by two federal agents.

The next exchange occurred on September 15, 1989. Following a phone conversation, co-defendant Nicholson met the undercover operative at the East Side Food Stamp Office in Denver. Ms. Nicholson exchanged $400 for $850 worth of USDA food coupons. The undercover operative saw defendant seated on a porch approximately one-half block from where the exchange occurred, and observed Ms.

Nicholson walk toward him after the exchange was completed.

On September 18, 1989, the undercover operative again met Ms. Nicholson at the East Side Food Stamp Office after arranging the meeting over the telephone. Ms. Nicholson arrived in a car driven by defendant. She and the undercover operative then exchanged $500 in cash for $1000 worth of food coupons. After the transaction, Ms. Nicholson got back into the car and drove away with defendant. This exchange was videotaped and observed by federal agents.

**2** The jury returned a verdict of guilty as to each of these transactions. Following a jury trial, appellant moved for a new trial on the basis of his allegation that the government failed to provide a complete transcript of the grand jury proceedings in violation of his discovery request. The district court denied the motion.

II.

Defendant alleges numerous errors that warrant reversal and a new trial. His first argument is that the district court erred in denying his motion for a new trial due to the failure of the government to produce a complete set of grand jury transcripts. He maintains that this alleged failure by the government to comply with his discovery request for Jencks Act material prejudiced his trial preparation. The government asserts that the only grand jury testimony upon which the indictment was based was the testimony of USDA Special Agent Hopko, and that the complete grand jury

transcript was provided to defense counsel.

Whether to grant a motion for a new trial is a decision within the sound discretion of the district court.  We will not reverse the court's decision absent a plain abuse of that discretion.  *United States v. McIntyre,* 836 F.2d 467, 472 (10th Cir.1987); *United States v. Troutman,* 814 F.2d 1428, 1455 (10th Cir.1987).

The Jencks Act requires that the government, on motion of the defendant, produce any "statement" of a witness it has called that relates to the subject matter to which the witness has testified.  18 U.S.C. § 3500(b) (1988). This material includes a transcript of a witness's testimony before a grand jury.  *Id.,* § 3500(e)(3);  *United States v. Knowles,* 594 F.2d 753, 755 (9th Cir.1979).

Defendant points to passages in the grand jury transcript that he contends demonstrate the government did not produce the entire grand jury proceedings. The first example involves a statement by Agent Hopko that the USDA investigation of defendant stemmed from a Denver police complaint about defendant and Ms. Nicholson trafficking in food stamps and also possibly trafficking in narcotics.  The government then asked a question referring to "these various episodes, that the Grand Jurors heard about involving drugs" and sought to clarify that no exchange of drugs ever occurred.  Record, vol. 1, doc. 22, exh. 1 at 3.  Defendant asserts that this reference indicates that there was earlier grand jury testimony.

"Various episodes," however, could just as easily have been a reference to Agent Hopko's statement about the Denver police complaint.  Moreover, this excerpt does not demonstrate that the district court abused its discretion in failing to grant a new trial.

Defendant also maintains that the government's reference to Agent Hopko's prior summary of nine food coupon transactions demonstrates that the witness had testified at a different grand jury proceeding about these transactions. *Id.* at 8.  Agent Hopko, however, had summarized the trafficking of food coupons a few moments earlier during his testimony on that day, and, thus, his statement does not establish that there was prior grand jury testimony.

**3** Finally, defendant asserts that the Assistant United States Attorney improperly tainted the grand jury when, in response to a grand juror's concern about the ability of untrustworthy individuals to obtain authorization to redeem food coupons, the AUSA mentioned that defendant had an extensive criminal history but was able to obtain authorization.  The AUSA immediately cautioned the grand jury that they were not to take into consideration defendant's criminal history when deciding whether to return an indictment. *Id.* at 19-20.  In light of the fact that this information came out in response to a grand juror's question and that the AUSA properly cautioned the grand jury, we cannot conclude that the district court abused its discretion in

4084384.1

denying defendant's motion for a new trial.

### III.

Defendant maintains that the evidence was insufficient to support his convictions for wilfully assisting Ms. Nicholson in the unauthorized acquisition of food coupons on September 15, 1989, and September 18, 1989. Evidence is considered sufficient to support a criminal conviction if, viewing all the evidence--both direct and circumstantial--in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Culpepper,* 834 F.2d 879, 881 (10th Cir.1987).

During the August 4, 1989, exchange of food coupons for cash, defendant stated that he was interested in acquiring additional food coupons in the future. Further, during the initial exchange on July 26, 1989, defendant directed the undercover operative and the special agent to Ms. Nicholson in order to consummate the exchange. In addition, evidence was presented showing that defendant and Ms. Nicholson were authorized to redeem food coupons, that they were co-signators on the bank account into which they deposited food coupons, that they both deposited coupons, and that they both withdrew large amounts cash from that account shortly after making deposits. Although defendant did not execute the transaction himself on September 18 but drove Ms. Nicholson to the site and drove away with her after the exchange was completed, a reasonable jury could infer that defendant

willfully assisted Ms. Nicholson by transporting her to and from the site. Similarly, on September 15, defendant waited one-half block from where the transaction occurred, and Ms. Nicholson walked towards him after the exchange. Although there was no evidence showing that defendant transported Ms. Nicholson to the site, a permissible inference from all the evidence presented is that he wilfully assisted her. Viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government, we conclude that the jury could find beyond a reasonable doubt that defendant wilfully assisted Ms. Nicholson in the unlawful acquisition of food coupons on both September 15 and September 18.

### IV.

Defendant contends that the district court abused its discretion by admitting extrinsic evidence of prior inconsistent statements to impeach Ms. Nicholson. He argues that the evidence was improperly admitted because she did not have an adequate opportunity to explain the prior statements as required by Rule 613(b) of the Federal Rules of Evidence. The decision of whether to admit evidence is a matter committed to the discretion of the district court. *United States v. Alexander,* 849 F.2d 1293, 1301 (10th Cir.1988).

**\*\*4** During the government's case-in-chief, Ms. Nicholson stated that defendant did not give her money to purchase food coupons. The government sought to impeach her by introducing the testimony

4084384.1

of government agents who testified that Ms. Nicholson had previously told them that the money came from defendant. Ms. Nicholson was given an opportunity to explain her prior statements, record, vol. 3, at 263, and the district court properly instructed the jury that the testimony of the government agents was for the limited purpose of impeaching Ms. Nicholson's credibility, and not to establish the truth of the prior statements. *Id.,* vol. 4 at 339. [FN3]   Under these circumstances, we conclude that the district court did not abuse its discretion in admitting the agents' testimony of Ms. Nicholson's prior inconsistent statements.

## V.

Defendant also argues that the district court erred by permitting a government agent to testify about a conversation he overheard between Ms. Nicholson and the undercover operative.   The conversation had been recorded, but the audio tape was inaudible.   Defendant argues that the admission of the testimony violated Rule 1004 of the Federal Rules of Evidence because the tape itself was the best evidence of the conversation and a proper foundation was not presented as to why the tape could not be produced at trial.   We must determine whether the district court abused its discretion in admitting the agent's testimony.   *Alexander,* 849 F.2d at 1301.

Defendant misapprehends the best evidence rule and the purposes for which the agent's testimony was offered.   The best evidence rule requires the production of a writing, recording, or photograph in order to prove its contents. Fed.R.Evid. 1002.   In this case, however, the government sought to establish the contents of Ms. Nicholson's conversation with the undercover operative, not the sounds preserved on the tape recording. Therefore, the best evidence rule is inapplicable. *See United States v. Rose,* 590 F.2d 232, 237 (7th Cir.1978), *cert. denied,* 442 U.S. 929 (1979);   *United States v. Gonzales-Benitez,* 537 F.2d 1051, 1053-54 (9th Cir.), *cert. denied* 429 U.S. 923 (1976).   The district court did not abuse its discretion in admitting the agent's testimony.

## VI.

Defendant's last two contentions are not persuasive.   He argues that the district court erred in denying his motion for a mistrial based on a government witness's reference to a "criminal history check" in response to a question about the training of the undercover operative.   Record, vol. 4, at 303. Taken in context, this comment referred to the screening of individuals to determine their fitness as undercover operatives.   The district court's denial of defendant's motion for a mistrial was not an abuse of discretion. *See United States v. Peveto,* 881 F.2d 844, 859 (10th Cir.), *cert. denied,* 110 S.Ct. 348 (1989).

Finally, defendant contends that the cumulative effect of the alleged errors require that we vacate his conviction.   In light of our determination that the district court did not err as defendant alleges, cumulative-error analysis is inappropriate.

4084384.1

*See United States v. Rivera,* 900 F.2d 1462, 1470-71 (10th Cir.1990).

**\*\*5** The district court's judgment is AFFIRMED.

> FN1. The Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, sitting by designation.

> FN2. This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3.

> FN3. The extrinsic evidence presented was the testimony of the government agents based on their recollection of their earlier conversation with Ms. Nicholson. Record, vol. 4 at 341, 352-53. Contrary to defendant's position, Ms. Nicholson was not impeached by documentary evidence.

944 F.2d 911 (Table), 1991 WL 180087 (10th Cir.(Colo.)) Unpublished Disposition

END OF DOCUMENT

4084384.1