IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LINDSEY K. SPRINGER, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) Case No. 06-CV-156 -GKF-FHM <br> DOUGLAS HORN, *et al.*, ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> ) | |

## OPINION AND ORDER

This matter comes before the court on the Motion for Summary Judgment of defendant IRS Special Agents Brian Shern, Jason White, Marc Collins, Loy Smith, Donald Anderson, Kathy Beckner, Christopher Albin, Scott A. Wells, Diana S. Megli, Donald G. Shoemake and William Robert Taylor. [Doc. No. 156]. For the reasons set forth below, defendants' motion is denied.

### I. Background/Procedural History

This *Bivens* suit arises from events surrounding the September 16, 2005, execution by Internal Revenue Special Agents of a search warrant at the home of plaintiff in Kellyville, Oklahoma. During the search, agents seized currently they logged, tagged and inventoried as "approximately $19,000 cash." The currency was delivered to a local bank, where a teller counted it and informed the agents the amount of cash was only $17,000. When the money was returned to plaintiff on January 10, 2006, the amount returned was $17,000. Plaintiff sued two

assistant United States Attorneys [1] and the IRS agents.  The IRS agents filed motions to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted.  [Doc. Nos. 12, 29, 30].  Those motions were denied. [Doc. No. 41].  Defendants then filed a Motion for Judgment on the Pleadings [Doc. No. 106], raising the doctrine of qualified immunity, arguing the alleged theft or conversions was not a cognizable *Bivens* claim because plaintiff had a remedy under the Federal Tort Claims Act, and asserting plaintiff had failed to alleged defendants' personal participation in the alleged constitutional violations.  The motion was denied [Doc. No. 155].

In support of their summary judgment motion, defendants once again raise qualified immunity.  They argue plaintiff has not asserted a cognizable Fourth Amendment claim and is precluded from asserting a Fifth Amendment *Bivens* claim because he had a remedy under the Federal Tort Claims Act.  Moreover, they claim there is no evidence the amount of cash seized was $19,000 rather than $17,000.  Fianlly, they allege plaintiff executed a release that bars this action.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When applying this standard, a court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party

---

[1] On November 28, 2008, the court granted the assistant United States Attorneys' Motion for Summary Judgment. [Doc. No. 150].

opposing summary judgment. *Wolf v. Prudential Insurance Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995). The movant for summary judgment must meet the initial burden of showing the absence of a genuine issue of material fact, then the nonmovant bears the burden of pointing to specific facts in the record "showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id*.

### III. Analysis

#### A. Defendants' Qualified Immunity Defense

The IRS Special Agents contend they are entitled to summary judgment on plaintiffs' claim on the basis of qualified immunity. Qualified immunity protects government officials from individual liability unless the official's conduct violates clearly established constitutional rights. *See Perez v. Unified Gov't of Wynadotte County,* 432 F.3d 1163, 1165 (10th Cir. 2005); *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). When a defendant raises a qualified immunity defense, the plaintiff bears the burden of establishing (1) that the defendant's actions violated a constitutional or statutory right; and (2) the constitutional or statutory rights was clearly established at the time of the conduct at issue. *Perez,* 432 F.3d at 1165*; Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir. 1995). The doctrine ensures that government actors have notice of the constitutional restrictions on their behavior. *Davis v. Scherer,* 468 U.S. 183, 195 (1984).

Defendants assert they are entitled to qualified immunity on plaintiff's Fourth Amendment claim. The court has already rejected defendants' argument that, as a matter of law, no Fourth Amendment claim could exist. [Doc. 41, p. 4]. Defendants also contend they did not seize $19,000, but only "approximately $19,000," which in reality was only $17,000. The court finds a material issue of fact remains concerning whether the amount of money discovered in

plaintiff's house was actually $19,000–as claimed by plaintiff's wife [Doc. No. 138, Ex. 2], or only *approximately* $19,000, as asserted by defendants. Further, a material issue of fact remains concerning whether, where and how $2,000 of the cash disappeared.[2]

Defendants also argue no Fifth Amendment *Bivens* claim is available to plaintiff because of the existence of an adequate post-deprivation remedy under the Federal Tort Claims Act. This argument, too, was addressed and rejected in the court's Opinion and Order denying defendants' Motion for Judgment on the Pleadings [Doc. No. 155].

Finally, defendants assert plaintiff has presented no evidence they seized $19,000 in cash. This is not correct. During the search of plaintiff's house, defendants identified a photo of the currency as "approximately $19,000," completed an evidence tag stating the currency seized was "approximately $19,000 cash," and inventoried the amount as "Approximately $19,000 in U.S. Currency." Defendants contend they did not count the money in each paper-clipped bundle of cash, and therefore the number was only approximate and the actual amount of cash could have been only $17,000 rather than $19,000. However, plaintiff's wife testified to the contrary, stating the "oldest man" in the group counted each note of each paper clip in her presence and in the presence of two other men and concluded there was $19,000 in paper clipped currency. [Doc. No. 138, Ex. 2]. Thus, a material issue of fact remains concerning the original amount of money counted by the agents and whether, how and when $2,000 disappeared after the agents counted the money.

---

[2]In the past, defendants have intimated plaintiff's wife took the money while agents were not present in the room with her. No such allegation is made in defendants' current motion. [Doc. No. 157]. Plaintiff's wife has testified that after an IRS agent counted the money and concluded there was $19,000 in paper-clipped bundles, she had no control over the currency and further that an agent was with her at all times during the search of the house. [Doc. 138, Ex. 2].

**B. The Release Executed by Plaintiff**

Finally, defendants claim that a release signed by plaintiff bars his claim. Plaintiff executed the release when the IRS agents gave him a United States Treasury check for $17,000 on January 10, 2006. The release [Doc. No. 135, Ex. 6] states, in pertinent part:

> ...This agreement is made in consideration of the return of: $17,000.00 U.S. registered to/owned by: Lindsey K. Springer...which was seized pursuant to Title 18 U.S.C. Section 981 or 981/Title 26 U.S.C. Section 7302 in the course of a criminal or civil investigation...
> 
> \* \* \* \*
> 
> The registrant/owner hereby agrees to unconditionally release and hold harmless the Internal Revenue Service...from any and all claims, demands, damages, causes of action or suits... that might now exist or hereafter exist by reason of, or growing out of, or affecting, directly or indirectly, the seizure, custody or return of the above-described property.

[Doc. No. 135, Ex. 6]. A release is valid and enforceable when (1) an attempt to excuse one party from liability is expressed in clear, definite and unambiguous language; (2) the contract is made at arm's length with no vast disparity of bargaining power between the parties and (3) it is not contrary to public policy. *Trumbower v. Sports Car Club of America, Inc.,* 428 F.Supp. 1113, 1116 (W.D. Okla. 1976). Under Oklahoma law, an exculpatory contract must be strictly construed against the party excused from liability. *See Mohawk Drilling Company v. McCullough Tool Company,* 271 F.2d 627, 633 (10th Cir. 1957). Exculpatory clauses have been held *not* to include exemption from negligence unless an intent to do so is shown by "clear, definite and unambiguous language." *Id.* at 632.

Here, the release at issue is exculpatory in nature, and thus must be strictly construed

5

against defendants. On its face, the release references only the return of $17,000. The release does not address the fact that defendants had logged, tagged and inventoried "approximately $19,000," nor does the document, by "clear, definite and unambiguous language," manifest an intent to relieve defendants of liability for the missing cash. Therefore, the release does not absolve defendants of liability on plaintiff's claims.

### IV. Conclusion

For the reasons set forth above, defendants' Motion for Summary Judgment [Doc. No. 156] is denied.

ENTERED this 7th day of April, 2009.

*Gregory K. Frizzell*
Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma