



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              Case No. 03CR 55 EA

EDDY PATTERSON and
JUDITH PATTERSON                                           DEFENDANTS

## RESPONSE OF JERRY BARRINGER TO SHOW CAUSE ORDER DATED 9-22-04

Comes now Respondent, Jerold Barringer, and for his response to show

cause order states:

Counsel has done nothing sanctionable regarding the issues stated in the

Court's order.   If this fact does not become abundantly clear from a reading of this

response, undersigned counsel requests a hearing prior to this Court making its

final findings, decision and order, where all persons with knowledge relevant to

the issues raised by the Court's order may be brought before this Court for

testimony for the Court's consideration.

At such hearing, Respondent will need to present the testimony of Judith

and Eddy Patterson, Doug Horn, William Widell, Kevin Danielson, Melody

Nelson, and possibly the testimony of other persons.

1



# BACKGROUND

On or about in March 2000, Counsel was hired by Eddy Patterson ("client's husband") and Judy Patterson ("client") to represent Judy Patterson regarding all issues involving a criminal investigation out of the Northern District of Oklahoma.

On or about March 2000, client's husband hired Oscar Stilley of Fort Smith Arkansas to represent his interests in the same criminal case. Mr. Stilley did not represent client's husband in any SEC matters until late 2003.

Mr. Stilley numerous times attempted to get the U.S. Assistant Attorneys Melody Noble Nelson and Douglas Horn to identify the particular laws the Government claimed triggered the violations of their investigation. It appears that at least Ms. Nelson was in the beginning honestly ignorant of the law. After having been shown the state of the law, even to the satisfaction of the Court, Mr. Horn and Ms. Nelson continued to present an inaccurate picture to the jury, asking them to find the existence of legal provisions that both knew to be utter fiction.

Mr. Horn along with Mrs. Nelson and other agents of the Federal Government attended the meeting after client's husband appeared and gave testimony before the Federal Grand Jury sitting in the Northern District. At the time of this visit, client's husband was also represented by the law firm of Hall, Estill located in Tulsa, Oklahoma. The Government informed Mr. Stilley and the

2

firm of Hall, Estill that the issues to be discussed before the Grand Jury were regarding taxes only. While the Government had client's husband before the Federal Grand Jury, Mr. Horn and Mrs. Nelson, proceeded to ask client's husband questions to which no counsel for client's husband had been aware involving Security and Exchange Commission violations.

During the post Grand Jury interrogation by Mr. Horn, Mrs. Nelson and the SEC staff attorneys, Mr. Patterson revisited the attorney waiting room where Mr. Stilley was directed to remain. While Mr. Patterson was speaking with Mr. Stilley, Mr. Horn, Mrs. Nelson and the SEC staff attorneys abruptly barged into the waiting room and approached Mr. Stilley directly within inches of his face and shouted as he looked at Mr. Stilley, "this man is going to get you sent to prison for the rest of your life." Mr. Horn also turned to client's husband and pointed his finger at client's husband saying "you better find another attorney because Mr. Stilley is going to get you a sentence of life imprisonment."

After the Grand Jury indictment was purportedly filed "in open court" Counsel was notified of his client's arrest and immediately began preparation for trial in Oklahoma.

Counsel was in the process of obtaining the local counsel services, perhaps of William J. Patterson. Mr. Patterson was challenged by Mr. Horn and Mrs.

3

Nelson for a suspension issue arising over 5 years earlier which the Honorable

Judge Cook determined made Mr. Patterson unavailable as "local counsel."

When asked what the role of "local counsel" would be the Court responded that

local counsel would only be needed for emergency type hearings when Mr.

Barringer was unable to travel within the time the Court gave for the notice. At

no time did local counsel represent the client(s). Because of the embarrassment,

Mr. Patterson, who offices at 403 Cheyenne, Penthouse Suite, Tulsa, Oklahoma,

acquired the local counsel services of William P. Widell, who incidentally

likewise has an address of 403 Cheyenne, Penthouse Suite, Tulsa, Oklahoma, to

act as "local counsel" for undersigned.

At this same time, Mr. Horn and Mrs. Nelson mounted a vigorous offense

attempting to have Mr. Stilley disqualified as being the attorney of record for

client's husband. Mr. Stilley was a member in good standing with the Northern

District of Oklahoma Bar.

Once Judge Cook had accepted Mr. Stilley as the attorney of record for

client's husband, next Mr. Horn and Mrs. Nelson demanded Mr. Stilley have local

counsel even though he was a member of the Bar in the Northern District of

Oklahoma.

Mr. Stilley, on behalf of client's husband, asked for Judge Cook to recuse

himself as his bias against Mr. Stilley as the attorney, and client's husband had become obvious. After this Court was assigned this case for trial Mr. Horn and Mrs. Nelson further attempted to make issue out of Mr. Stilley's representation of client's husband. This Court was satisfied that Mr. Stilley would obey all orders of this Court and even recommended that it looked forward to future cases with Mr. Stilley after the trial was concluded.

As this Court is aware, after the verdict was entered, this Court allowed client to remain free on bond while incarcerating client's husband based upon the argument by Mr Horn and Mrs. Nelson that Mr. Patterson was going to have such a long sentence that there was no way he would serve it all prior to this Court announcing sentence, in addition to the concerns that client's husband would flee and not return for sentencing.

Between the jury verdict and the date of sentence for client, Respondent spoke to client numerous times. In each instance, client directed Respondent to continue representation and that she was satisfied with said representation. On numerous occasions client informed Counsel that client's husband wished and directed client to fire Counsel. Each time, client informed Counsel that she was not going to fire counsel.

At some time in January 2004, local counsel William Widell visited Eddy

5

Patterson at the David Moss center without counsel's knowledge, and without consulting Oscar Stilley, Eddy Patterson's attorney.

On this same day, Oscar Stilley visited client's husband at the David Moss center, wherein client's husband presented a list of issues he wished Oscar Stilley to address regarding why client's husband was being held pending sentencing.

Shortly thereafter Eddy Patterson informed Oscar Stilley that he wished to fire Mr. Stilley.   Client's husband informed Oscar Stilley he had hired Steven Knorr upon a recommendation by Eddy Patterson's cellmate, allegedly also a client of Steven Knorr.

On or about March 1, 2004, undersigned counsel informed client that undersigned counsel believed Eddy Patterson was unable to read and that this was probably something the District Court should be aware of when considering the proper sentence for Judy Patterson.  Undersigned counsel announced intention to call client's husband to the March 23, 2004, sentencing hearing for this limited purpose.

On or about March 14, 2004, Respondent  received a call from client informing him that she would like to sell her interest in a company called Tulsa Sales and Rental ("TSR") to her son and that she wondered how this would affect the sentencing issues.

6

After several conversations with personnel at US Probation, Judy Patterson, and Judy Patterson's son Timothy Patterson, undersigned counsel advised Judy Patterson not to do anything with the TSR interest until after the Court imposed a sentence, however counsel told Judy Patterson that if she absolutely believed that this sale had to be done now, that it at least would not cause her harm since full disclosure to probation had been made. It appears Timothy Patterson had concluded that his interests would be best served by a quick sale to himself.

On or about March 21, 2004, less than three days before sentencing, client telephoned Counsel to discuss what could be expected at the sentencing hearing to be held on March 23, 2004, and client thanked Counsel saying that she appreciated all that was being done on her behalf.

Within 3 hours Judy Patterson called back and informed Counsel that she wished for Counsel to withdraw as her attorney and to request for a continuance of the sentencing date. Judy Patterson said that client's husband was hiring someone else to represent her.

On March 23, 2004, as this Court is aware, client did not know what to do when told she needed to decide whether she wished to be represented or whether she wished to proceed *pro se*. She asked Mr. Widell "what do I do," which the Court noted for the record.

7

This Court sentenced client to a term of incarceration of 18 months to begin on May 5, 2004.

At numerous times within the 10 day period after sentencing, client changed her mind regarding an appeal, finally deciding to appeal. Respondent was directed by client to file a notice of appeal as quickly as possible. Counsel was directed by client to file an appeal brief on her behalf. Client reported to prison on May 5, 2004.

Counsel filed Appellant's Brief on or about July 2, 2004 to the 10th Circuit Court of Appeals as required and mailed a copy to the following:

Doug Horn, United States Attorney's Office, 3460 U.S. Courthouse, 333 W. 4th Street, Tulsa, OK 74103;

Stephen Knorr, Attorney at Law

4815 South Harvard, Suite 525, Tulsa, OK 74135-3069; and

Oscar Stilley, Attorney at Law, 5111 Rogers Avenue, Fort Smith, AR 72903-2047.

Oscar Stilley provided assistance to undersigned at various times. Amongst other things, Oscar Stilley attempted to make contact with Judy Patterson, to obtain her consent for an extension of brief time requested by Kevin Danielson, Appellate division of the U.S. Attorneys Office in Tulsa. Mr. Danielson asked for

8

a 30 day extension of time on the appeal response brief by the government.

Undersigned would never have consented to an extension of time, had he been informed that the principal, if not sole reason, for the delay was so the government could manipulate Eddy Patterson into thinking that he could get his wife out of jail by waiving many of his own legal rights.

On August 23, 2004, Counsel, in the best interest of client, filed a request under 18 U.S.C. § 3143(b) asking this Court to enter a "stay" of the remaining sentence not yet served regarding client. It was believed that the case was going to be remanded to the District Court for one or more of the many defects in the prosecution. A dismissal of that appeal would not be in the best interests of the client.

On or about August 28, 2004, undersigned counsel then received a letter in the mail from a person named Debra Lyons which purported to be dated August 15, 2004, from client informing undersigned counsel that "I no longer want your services as Attorneys." This letter also directed undersigned counsel to send "all my papers to WM Widell." The letter concluded by saying "I would appreciate not hearing from you...." It appears that Ms. Lyons has a vested interest in divesting Judy Patterson of her stake in TSR.

On or about August 29, 2004, undersigned counsel placed a call to William

9

Widell on his cellular phone number 918-605-1809, in which undersigned counsel left a message regarding client and simply asked if he knew anything about what was going on with Judy Patterson.

On or about August 29, 2004, William Widell called undersigned counsel leaving a message on his answering machine that he did not know what was going on with client and that he had not spoken with her since the date of sentencing.

On or about August 30, 2004, undersigned counsel contacted William Widell and was told by Mr. Widell that he had not been hired by anyone to represent Judy Patterson, and that he did not know anything more than what counsel knew.

On September 1, 2004, this Court issued an Order to release Judy Patterson based upon a reduction under Federal Rules of Criminal Procedure 35(b).

On September 3, 2004, undersigned counsel became aware of the Court's September 1, 2004 Order and that the Court had arguably mooted the Motion for Stay of Sentence filed in August on behalf of Judy Patterson.

On or about September 7, 2004, undersigned counsel contacted William Widell regarding the order and release of Judy Patterson. Mr. Widell stated that he was notified on August 30, 2004, by Steven Knorr to contact Doug Horn regarding Judy Patterson. Widell informed undersigned counsel that Mr. Horn

10

faxed a "Rule 35(b)" motion to Widell's office and that was all he knew. Widell also informed undersigned counsel that he showed up at a hearing the next day, September 1, 2004, and that "he got Judy out of jail." Widell was asked why wasn't the Rule 35 motion sent to undersigned counsel to which Widell replied that he would send it right away. Mr. Widell has not sent the motion to undersigned counsel. Mr. Widell also stated that he had waived any objections to the Court striking the motion for stay of sentence filed by Counsel.

Undersigned counsel has never seen any Rule 35(b) motion filed by the Government in this case. From the docket, it appears to have been filed under seal, although undersigned counsel knows of no legitimate method whereby the government could have filed the document under seal, and furthermore without having served the pleading upon opposing counsel. Ms. Nelson informed counsel that the Court had determined that all attorneys, U.S. Attorneys and defense attorneys, were automatically discharged at the sentence, so undersigned counsel no longer was an attorney in the case. Counsel knows of no order referencing an automatic discharge of all attorneys, and counsel does not know if all the attorneys then refiled entries of appearances on or about August 30, 2004.

William Widell again informed undersigned counsel that he had not seen or spoken with Judy Patterson until after the Court's September 1, 2004 Court order.

11

On September 8, 2004, undersigned counsel again contacted Mr. Widell regarding his meeting with client on this date. Widell informed undersigned counsel that he was with the client, that Judy Patterson was visiting probation, and that as soon as she was done he would have her call undersigned counsel for a discussion and determination of what to do with the appeal and other issues not yet discussed. No call ever came.

On September 14, 2004, having never received any other contact from client, Counsel filed an "amended notice of appeal" preserving the issues already contained and fully briefed in the jurisdiction of the 10th Circuit Court of Appeals.

On or about September 17, 2004, Counsel received a letter on the letterhead of William Widell, with copy to the attorney disciplinary authorities in Illinois, purportedly conveying a wish on the part of Judy Patterson that all appeals at the 10th Circuit be withdrawn.

Attorney Oscar Stilley spent considerable time and effort on appellate work for Judy Patterson's appeal, under the direction and supervision of undersigned counsel. Judy Patterson in fact communicated to Oscar Stilley her desire for an appeal. Judy Patterson, according to the affidavit of Oscar Stilley, has never failed to take or return his calls under circumstances where it could be verified that his messages, either personal or by personnel, were being transmitted to Judy

Patterson for her consideration.

Oscar Stilley's affidavit shows that he never received from Judith Patterson any letter dated 7-19-04 from Judith Patterson. He did receive a fax from Debra Lyons on July 29, 2004, which did purport to contain the referenced letter dated 7-19-04. Ms. Lyons would not say whether she had witnessed the signature, and hung up on Mr. Stilley.

Oscar Stilley attempted to call Judy Patterson at least on July 26, July 29, and August 10, 2004. Judy Patterson did not return any of these phone calls. Oscar Stilley concluded that the letter purportedly from Judy Patterson, and dated 7-19-04, was not genuine.

1.    **THE MOTION FOR SENTENCING RELIEF UNDER RULE 35(b) APPEARS TO BE IMPROPER.**

Based upon the facts set forth above, the government had no legitimate basis for filing a motion pursuant to Federal Rule of Criminal Procedure 35(b). Rule 35(b) requires "...a defendant's subsequent substantial assistance in investigating or prosecuting another person..." Mr. Widell stated that he had not represented Judy Patterson at any time that might permit the government to claim that he transmitted useful information from Judy Patterson to the government. Mr.

Widell also stated quite unequivocally that Judy Patterson had not spoken with the government, had no information to give to the government, and could not provide any substantial assistance in any way which would support the motion. Undersigned counsel, knowing what Judy Patterson had told him in their attorney-client relationship, also knows that Judy Patterson had no useful information to provide to the government. So, the basis for the Rule 35(b) motion, if that was the basis for her amended sentence, seems suspect to William Widell and to counsel.

It would certainly be a grave breach of ethics if any attorney for the government contacted Mrs. Patterson. Undersigned counsel does not believe that this happened. In fact, it appears that the motion for sentencing relief under Rule 35(b) is unsupported by any fact, and would therefore be a total fiction..

Otherwise, why would the government refuse to serve a copy of the pleading upon undersigned counsel. There is no rational basis for this failure. Undersigned counsel was unquestionably counsel of record at the time of the motion. If, in fact, information of another crime had been given to the government by Judith Patterson, the confidential nature of that information would have been maintained. There is only one reason that undersigned counsel can see for the failure to serve the pleading, namely that the document is altogether improper.

14

Pursuant to the due process provisions of the U.S. Constitution, Respondent is entitled to see the purported motion by the government. If the government has won the allegiance of Judith Patterson through a fraud on the Court, Respondent is entitled to show the Court that such allegiance was obtained by fraud, and the time that said allegiance was obtained. See *Kowalczyk v. INS*, 245 F.3d 1143 (10th Cir. 2001), where the Court said: "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations and citations omitted).

It is altogether of no consequence that Judith Patterson may be indifferent to the fraud, or even favorably disposed toward the fraud. If Respondent is to suffer for the fraud, he is entitled to relief. In *King v. Horizon Corp.*, 701 F.2d 1313 (10th Cir. 1983) the Court said:

> As noted in the classic case of Angerosa v. White Co., 248 App. Div. 425, 290 N.Y.S. 204 (1936):
>
> > To deny relief to the victim of a deliberate fraud because of his own negligence would encourage falsehood and dishonesty. . . .
>
> . . . .
>
> In this jurisdiction protection is given to one who is injured by falsehood or deception; fraud vitiates

15

> everything which it touches, and destroys the very
> thing which it was devised to support; the law does
> not temporize with trickery or duplicity.

The docket of the appellate case is attached. It is plain that the government never meant to file a responsive brief. The government just asks for extension after extension, a total of some 90 days, and now has obtained the dismissal of the appeal. Respondent submits that as of this date, it is unlikely the government ever truly attempted to prepare an appellate brief in light of *Blakely v. Washington*, and the circumstances of this case.

## 2. UNDERSIGNED COUNSEL IS NOT SATISFIED THAT A LETTER RECEIVED 2 DAYS BEFORE CLIENT WAS ORDERED RELEASED SATISFIES THE MINIMUM REQUIREMENTS OF COMPETENT LEGAL REPRESENTATION

The letter dated August 15, 2004, was sent to undersigned counsel through Debra Lyons, someone undersigned counsel does not know. The letter was inconsistent with other directions client gave undersigned counsel regarding representation. The letter was not an original, and the signature was not clearly the signature of Judy Patterson to counsel. Further, no other phone calls or other information had come from Judy Patterson regarding dissatisfaction with representation, nor was there any additional work that needed to be performed. By

16

the time counsel received the letter, he had already submitted the Motion for Stay,

based in large part on *Blakely*, which was the only information that counsel had

received from Judy Patterson or anyone else; that being that a *Blakely* motion

ought to be filed.

When undersigned counsel contacted William Widell and he informed

undersigned counsel that he had not spoken with Judith Patterson, undersigned

counsel became more suspicious. The August 15, 2004 letter purports to direct

that all filings be sent to Mr. Widell, when no communications between Widell

and Judith Patterson allegedly had taken place.

With the letter containing false statements, and since the letter did not come

directly from the client, undersigned counsel did not conclude that the letter was

genuine, and certainly not such as to warrant the drastic measures the letter

purports to request.

Undersigned counsel respectfully submits that any finding by this Court that

"Judith Ray Patterson terminated Mr. Barringer as her attorney no later than late

August 2004" would be erroneous.

**3.    ALTHOUGH LETTER PURPORTS TO DIRECT COUNSEL TO
SEND CLIENT FILES TO WIDELL, WIDELL TWICE INFORMED
COUNSEL HE KNEW OF NO SUCH AGREEMENT BECAUSE HE HAD
NOT SPOKEN WITH CLIENT.**

The Court states in its show cause order that "Judith Ray Patterson...directed him to forward all correspondence and records to her present attorney, William P. Widell, Jr." Although it appears the August 15, 2004 letter does say that, William Widell has denied having any knowledge of any communication with Judith Patterson between sentencing and September 3, 2004, whatsoever.

**4. AMENDED NOTICE OF APPEAL WAS FILED TO PRESERVE THE RIGHT TO APPEAL UNTIL SUCH TIME AS COUNSEL COULD ASCERTAIN THE TRUE WISHES OF CLIENT AFTER FULL DISCLOSURE AND ADVICE OF COMPETENT COUNSEL, INCLUDING DISCLOSURE OF THE FRAUD UPON THIS HONORABLE COURT BY THE GOVERNMENT ATTORNEYS.**

The only reason the "amended notice of appeal" was filed was to preserve the issues already fully brief at the 10th Circuit. The filing of the amended and second amended judgments suggest an unfair attempt to disseize Ms. Patterson of her appellate rights. Undersigned counsel believes that Mr. Horn and Mrs. Nelson, along with Steven Knorr and William Widell, are obstructing the rights of Judith Patterson regarding issues for appeal for the actual or perceived benefit of Judith Patterson's husband only.

As of the filing of the Amended Notice of Appeal, undersigned counsel had no direct or credible evidence that client wished her appeal to be withdrawn. In

18

conversations with Widell, Widell said the only reason Eddy Patterson waived his rights to Apprendi and Blakely violations was because the Government claimed they would re-indict Eddy Patterson on other, slightly different charges. When undersigned counsel became aware that a Rule 35(b) motion had been filed on Tuesday, August 30, 2004, and that at this time undersigned counsel was still undersigned counsel for client according to the 10th Circuit and the District Court for the Northern District (see Notice of Appeal filed and Motion for Stay filed) undersigned counsel became suspicious of exactly when and how Judith Patterson gave substantial assistance to the government to warrant the 6 level departure this Court granted in its September 1, 2004 Order.

The claimed "substantial assistance" in the sealed, unserved Rule 35(b) motion must have been at least alleged to have taken place prior to the filing of that motion. Rule 35 says " Correction or Reduction of Sentence" and further states it applies to "defendant's subsequent substantial assistance in investigating or prosecuting another person.." If the government contacted Judith Patterson regarding any "substantial assistance" without undersigned counsel's knowledge, the government's problems are just beginning. What is the name of the person who contacted client directly and why did they not contact undersigned counsel?

This conduct suggests an ethics violation on the part of someone in the U.S.

19

Attorney's office. If the motion is not totally false, then someone with the Government must have contacted Judith Patterson, known to have been represented by Jerold Barringer, without undersigned counsel's knowledge.

If a government attorney exerted the same type of influence on Judith Patterson as was put on Mr. Patterson after he testified before the Federal Grand Jury, this Court would have an independent duty to use its contempt power to punish that attorney.

The inconsistent and implausible communications from various individuals left undersigned counsel with more questions than answers regarding how Ms. Patterson went from being satisfied with the appeal to claiming "William P. Widell, Jr., currently represents me in these proceedings and he is the only attorney authorized to file pleadings on my behalf." No other client has attempted to fire me while steadfastly refusing to speak to me orally.

Accordingly, based upon all the unanswered, undersigned counsel felt compelled to err, if at all, on the side of caution. If Judith Patterson truly wished her appeal to be dismissed, after being advised of the legal implications of that act, she could promptly obtain such a dismissal. So long as the requests had virtually none of the earmarks of authenticity, undersigned counsel felt compelled not to compromise the rights of Judith Patterson.

## 5. COUNSEL DID NOT MISREPRESENT ATTORNEY STATUS TO THE DISTRICT COURT.

The 10th Circuit has ruled that the filing of a timely notice of appeal pursuant to Fed.R.App.P. 3 transfers the matter from the district court to the court of appeals. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam); *Gryar v. Odeco Drilling, Inc.*, 674 F.2d 373, 375 (5th Cir. 1982). The district court is thus divested of jurisdiction. Any subsequent action by it is null and void. *Offshore Logistics Servs., Inc., v. Mutual Marine Office, Inc.*, 639 F.2d 1168, 1170 (5th Cir. Unit A Mar. 1981); *Taylor v. Wood*, 458 F.2d 15, 16 (9th Cir. 1972). In collateral matters not involved in the appeal, however, the district court retains jurisdiction. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1550-51 (11th Cir.), cert. denied, ___ U.S. ___, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986); *Akerly v. Red Barn Sys., Inc.*, 551 F.2d 539, 543 (3d Cir. 1977).

Thus, when an interlocutory appeal is taken, the district court retains jurisdiction to proceed with matters not involved in that appeal. *Taylor v. Sterrett*, 640 F.2d 663, 667-68 (5th Cir. Unit A 1981). More important to counsel, courts have found certain matters to be collateral to a final judgment. See, e.g., *Haas v.*

*Pittsburgh Nat'l Bank*, 495 F. Supp. 815, 817 (W.D.Pa. 1980); *see also Keasler v. United States*, 585 F. Supp. 825, 833-34 (E.D.Ark. 1984), aff'd, 766 F.2d 1227 (8th Cir. 1985). For example, even after a timely notice of appeal is filed, a district court may retain jurisdiction to determine the propriety and amount of attorney's fees. *Cox*, 784 F.2d at 1550-51. See also that *Garcia v. Burlington Northern R. Co.*, 818 F.2d 713 (10th Cir. 1987).

The only jurisdiction this Court has involves issues not related to the appeal. If this Court relies upon jurisdiction to "amend" the sentence currently briefed on appeal at the 10th Circuit, it should explain the basis for a finding of "substantial assistance" authorizing the Court's action.

Sometimes, a defendant may be pleased to have a reduction of sentence, even after obtaining competent counsel. At other times, a reduction of sentence may amount to nothing more than a fraud practiced upon an unsophisticated person, a sham to trick the individual into giving up important legal rights. Undersigned counsel cannot allow himself to be made party to any frauds upon a court or a client, regardless of anyone's wishes. Undersigned counsel made an oath to uphold justice without regard to considerations personal to himself. Our legal system was founded upon honesty and the unflagging commitment to the rule of law.

Counsel does not believe this Court has jurisdiction to decide who represents Judy Patterson on appeal to the 10th Circuit. Further, just because Judith Patterson would not want counsel to be involved in any appeal, does not take away counsel's responsibility and obligation under the 10th Circuit rules. Although the Notice of Appeal was filed in the District Court, the appeal itself is governed by the United States Court of Appeals Rules. Neither the government nor this Court can change the jurisdiction of the Court of Appeals.

## 6. NO RESTRAINING ORDER IS REQUIRED UNDER THE CIRCUMSTANCES OF THIS CASE.

The Court suggests that a restraining order may be required to prevent undersigned counsel from representing client on issues of appeal. No restraining order is needed. Once the issues herein are addressed to the Court's satisfaction with all pertinent facts being revealed to the Court and under oath, undersigned counsel has no problem withdrawing from any representation upon the proper request of Judith Patterson. Withdrawal would have been speedily effectuated if Ms. Patterson had simply called and confirmed her understanding of the legal issues, and her desire to retain new counsel.

As such, Counsel respectfully requests the Court conclude the Order for Rule to Show Cause, and counsel requests a due process hearing, as stated earlier,

as needed to resolve all issues in this matter.

Respectfully Submitted,

Jerold W. Barringer
Attorney at Law
102 S. Pine St., P.O. Box 213
Nokomis, IL 62075
(217) 563-2646