



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                       PLAINTIFF

v.                  Case No. 03CR 55 EA

EDDY PATTERSON and
JUDITH PATTERSON                             DEFENDANTS

### AMENDED AND SUPPLEMENTAL
### AFFIDAVIT OF OSCAR STILLEY

STATE OF Arkansas )
                   )ss
County of Sebastian    )

       Before the undersigned, a Notary Public, duly qualified and acting in and for said County and State, appeared Oscar Stilley, satisfactorily proven to be the affiant herein, who stated the following under oath:

1.      I am over the age of eighteen years, of sound mind, and have personal knowledge of all matters set forth within this affidavit.

2.      I received from Debra Lyons a fax dated July 27, 2004, to which was attached a copy of a letter purportedly from Judith Patterson.

3.      I called Ms. Lyons and asked her if she had witnessed the signature. My log of the event states: "Review fax from Debra Lyons, she says she sent the fax on behalf of her mother, would not discuss whether she had witnessed the signature, she hung up on me."



1



Case 4:09-cr-00048-SPF Document 36-7 Filed in USDC ND/OK on 10/18/2004 Page 2 of 4

4.      I was suspicious of the document, as it had not originated from the prison at which Judith Patterson was confined.   Furthermore, Ms. Lyons was very hostile, and refused to provide reasonable assurances that the faxed document was genuine.

5.      I caused to be made two phone calls, one on the 29th and one on August 10, 2004, attempting to speak with Ms. Patterson and confirm whether or not she had written the letter. I had already called for her on July 26th, 2004, and knowing the speed of communications in prison, felt it a useless act to call the day after a previous call.

6.      Judy Patterson has always spoken kindly and in a pleasant tone, in any conversations with me.  She has always returned calls made under circumstances that I knew the message would be received.

7.      Ms. Patterson knew that I was not her attorney of record for any of her criminal matters, but nonetheless asked me to respond to some legal questions she had.  While she had always shown a very high regard for Mr. Barringer, at times she felt more comfortable asking me about various details, but always with the understanding that Mr. Barringer was her attorney and would give her legal advice and maintain sufficient communication that she was well informed of her case.

8.      Ms. Patterson told me that she definitely wanted to do an appeal, scant days before the notice of appeal was filed.  She has never stated to me in any oral communication that she is or was dissatisfied with the appeal.

9.      I still do not believe that the purported letter from Ms. Patterson, faxed to me July 27, 2004, has the genuine signature of Judith Patterson.  She has never confirmed to me that she wrote that letter.  The lack of a notarization, on a document containing a place for a notarization,

is simply further indicia that photocopies of documents purporting to bear the signature of Ms.
Patterson are not to be trusted.

10.     Steven Knorr told me in telephone conversations that he was fully aware that he could
have obtained the immediate liberty of Eddy Patterson on a Blakely motion, the maximum legal
sentence having already been served.  Steven Knorr said that the government was threatening to
reindict on supposedly slightly different charges, if Eddy Patterson exercised his legal rights and
obtained his immediate liberty.

11.     Eddy Patterson attended a session of the grand jury to give testimony concerning the
suggestion that was not compliant with certain unidentified tax laws.   At the time of this visit,
client's husband was also represented by a law firm of Hall Estill located in Tulsa, Oklahoma,
concerning certain securities matters.  I was never informed that the government intended to ask
any questions unrelated to tax matters.  To my knowledge, the attorneys at Hall Estill were also
unaware of the plan to suprise Eddy Patterson with questions on security matters.   Government
attorneys asked Eddy Patterson numerous questions about the securities matters, although Eddy
Patterson had not been given opportunity to consult with counsel on these issues prior to
questioning before the grand jury.

12.     After the questioning before the grand jury, Mr. Horn, Mrs. Nelson and certain SEC staff
attorneys, asked to visit with me and Mr. Patterson in a waiting room where I was directed to
remain during grand jury proceedings.  Mr. Horn approached me to a close and uncomfortable
proximity, and with a very angry and hostile voice accused me of representing Mr. Patterson in
such a manner that Mr. Patterson would go to prison what would likely amount to a life
sentence.  Mr. Horn pointedly and angrily informed Mr. Patterson that he had better get other

legal counsel lest he suffer a sentence amounting to a life sentence.

13.     I have read the above and foregoing statements and swear or affirm that they are true and

correct to the best of my knowledge and belief.

Further Affiant sayeth not.

IN WITNESS WHEREOF, I hereunto set my hand this October 13, 2004.


_____

Oscar Stilley, Affiant

Subscribed to on oath or affirmation before me this October 13, 2004.

MARCUS COKER
Crawford County
My Commission Expires
October 7, 2013

_____          _____

My commission expires:                              Notary Public