IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                                    Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.

MEMORANDUM OF LAW IN SUPPORT OF SPRINGER'S FIRST MOTION TO DISMISS
GRAND JURY INDICTMENT FOR LACK OF VENUE

Lindsey Kent Springer, files this Memorandum of Law in support of his First Motion to Dismiss the document labeled "INDICTMENT" dated March 10, 2009, based upon (1) the "Grand Jury" pursuant to 28 U.S.C. § 1861 policy, lacks venue over the claims made in the indictment, (2) this 28 U.S.C. § 116 United States District Court created by Congress for the territory over which its sovereignty extends known as "Oklahoma" lacks jurisdiction and venue because Austin Texas and Washington D.C. are not located within anyone's interpretation of the boundaries set by Congress for section 116, (3) this 28 U.S.C. § 116 Court created by Congress lacks jurisdiction and venue because Tulsa, Oklahoma is not identified by Congress at 26 U.S.C. § 6091 or any place else within the Judicial Power of this Court, (4) this 28 U.S.C. § 116 Court lacks territorial jurisdiction over the place where the crimes are said to have occurred, and (5) that this 28 U.S.C. § 116 Court created by Congress

1

lacks any judicial power under Article III of the Constitution.

**A.     SUMMARY OF CHARGES FOR THIS MOTION TO DISMISS FOR LACK OF VENUE**

Count One alleges Springer and Stilley entered into an agreement to violate Title 18 U.S.C. Section 371 "in the Northern District and elsewhere" with the agreed objective to "impede, impair, obstruct and defeat the lawful government functions of the Internal Revenue Service, an agency of the United States, in the ascertainment, computation, assessment and collection of revenue, that is, federal individual income taxes."  See Indictment, page 2, paragraph 9.

Count Two, Three and Four, allege "in the Northern District and elsewhere" Springer had "substantial income" "owing" "income taxes," failed to "file United States Individual Income Tax Returns as required by law and committing various affirmative acts" "all in violation of Title 26 U.S.C. Section 7201."  These Counts allege Stilley aided Springer in Springer's alleged attempt to violate section 7201.

Count Five and Six allege something totally different than Counts One, Two, Three and Four.  Counts Five and Six allege a violation of Title 26, section 7203. These two Counts allege Springer was required by law to make an income tax return to one of three places: First, "the Internal Revenue Service Center at Austin, Texas"; Second, with a person "assigned to receive returns" at the local office of the Internal Revenue Service, at Tulsa, Oklahoma; and Third, "to another Internal Revenue Service Office permitted by the Commissioner of the Internal Revenue," specifically stating the items of gross income and any deduction Springer was

entitled.

**B.     LEGAL AUTHORITY INVOLVING VENUE OVER CRIMES AGAINST UNITED STATES RELATED TO INCOME TAX CHARGES BY GRAND JURY**

The alleged crimes in Counts One through Six are specific intent crimes. Denbo v. U.S. 988 F.2d 1029 (10th Cir. 1993)("we're talking about criminal intent in the one area [sections 7201 and 7203]")

"Ordinarily criminal prosecutions must be brought in the district in which the **offense was committed**, and federal income tax returns must, by statute, be filed in the place of legal residence of the taxpayer or at a service center serving **that district**, 26 U.S.C. § 6091 (b) (1) (A) (i) and (ii), or the principal place of business of the taxpayer." The prosecution "must then establish beyond a reasonable doubt that the defendant's residence in this, a tax case, was [Oklahoma City]. **This is essential to establish jurisdiction and venue**. United States v. Brewer, 486 F.2d 507, 509 (10th Cir. 1973) [1]

The requirement concerning the place of filing of the individual income tax returns is provided ONLY in 26 U.S.C.A. § 6091(b)(1)(A) for persons other than

---

[1] The 10th Circuit cited to all these cases in support of its holding: United States v. Gorman, 393 F.2d 209, 213-214 (7th Cir.), cert. denied, 393 U.S. 832, 89 S.Ct. 102, 21 L.Ed.2d 103 (1968); Yarborough v. United States, 230 F.2d 56, 58-59 (4th Cir.), cert. denied, 351 U.S. 969, 76 S.Ct. 1034, 100 L.Ed. 1487 (1956); Bowles v. United States, 73 F.2d 772, 773-774 (4th Cir. 1934), cert. denied, 294 U.S. 710, 55 S.Ct. 506, 79 L.Ed. 1245 (1935); United States v. Commerford, 64 F.2d 28, 32-33 (2d Cir.), cert. denied, 289 U.S. 759, 53 S.Ct. 792, 77 L.Ed. 1502 (1933). See also United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1915); Weaver v. United States, 298 F.2d 496 (5th Cir. 1962).

corporations. It prescribes the place of filing as "in the internal revenue district in which is located the legal residence or principal place of business of the person making the return. . . ." U.S. v. Taylor, 828 F.2d 630, 634-635 (10th Cir. 1987) The federal statute and regulations lay down the rule as a matter of federal law. Id.

"Internal Revenue Districts" no longer exist and have not existed since the latter part of 1999. These places were done away with by the Restructuring and Reform Act of 1998 (RRA of 1998). See section 1001 of the RRA of 1998 directing reorganization.[2] Likewise, as of 1999, there were no persons employed as "district directors" or "directors" over the servicing center servicing any "internal revenue districts." See Exhibit 1 ("Regulations also remove all references to IRS district director or service center director, as these positions no longer exist within the IRS. The offices of the district director and service center director were eliminated by the IRS reorganization implemented pursuant to the IRS Reform and Restructuring Act of 1998.")

In a criminal case, the government bears the burden of proving proper venue by a preponderance of the evidence. United States v. Netz, 758 F.2d 1308, 1312 (8th Cir. 1985). Venue properly lies in the judicial district where an offense occurred. Fed.R.Crim.P. 18; United States v. Marchant, 774 F.2d 888, 891 (8th Cir. 1985), cert. denied, 475 U.S. 1012, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986)..

---

[2]At hearing the District Court asked Springer for the citation of law which led to the evisceration of District Directors and Internal Revenue Districts.

Prosecution are required to be "instituted in a district court with jurisdiction over violations of 26 U.S.C. § 7203 and in which venue was proper. See: 18 U.S.C. § 3231 (jurisdiction of district court over offenses against laws of the United States); 26 U.S.C. §§ 6012, 6091, and 7203 (substantive offense and venue of its commission)"; United States v. Rice, 659 F.2d 524, 526 (5th Cir. 1981).

"Article III of the Constitution generally requires that the trial of any crime be held in the state where the crime was committed. U.S. Const. Art. III, § 2, cl. 3. The Sixth Amendment further requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. v. Cryar, 232 F.3d 1318 (10th Cir. 2000) "Thus, the 6th Amendment provides that all criminal trials shall be by a jury of the 'State and district' in which the crime shall have been committed; and by 'district' is here meant either an entire State or a subdivision of a State." Harvard Law Review, Vol. XII, # 6, (1.25.1899) 365, 385; See also U.S. v. Dawson, 56 U.S. 15 How. 467, 488 (1853)("A crime, therefore, committed against the laws of the United States **out of the limits of a state** is not local, but may be tried at such place as Congress shall designate by law. This furnishes an answer to the argument against the jurisdiction of the court as it respects venue, trial in the county, and jury from the vicinage, as well as in respect to the necessity of particular or fixed districts before the offense."

The Supreme Court said in United States v. Williams, 504 U.S. 36, 47 (1992)

"[R]ooted in long centuries of Anglo-American history," Hannah v. Larche, 363 U.S. 420, 490 (1960) (Frankfurter, J., concurring in result), the **grand jury** is mentioned in the Bill of Rights, but not in the body of the Constitution. **It has not been textually assigned**, therefore, **to any of the branches described in the first three Articles. It "`is a constitutional fixture in its own right**.'" United States v. Chanen, 549 F.2d 1306, 1312 (CA9 1977) (quoting Nixon v. Sirica, 159 U.S. App. D.C. 58, 70, n. 54, 487 F.2d 700, 712, n. 54 (1973)), cert. denied, 434 U.S. 825 (1977). In fact, the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people. See Stirone v. United States, 361 U.S. 212, 218 (1960); Hale v. Henkel, 201 U.S. 43, 61 (1906); G. Edwards, The Grand Jury 28-32 (1906). Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length."

The Grand Jury created by 28 U.S.C. § 1861 can have only the power its creator can give it.  Congress has no general criminal judicial power and absolutely no power to enact "grand jury" legislation.  In fact, Congress only has the power to pick the place for trial when the alleged acts are not committed within any State. See Article III, Section 2, Clause 3. "A crime, therefore, committed against the laws of the United States out of the limits of a state is not local, but may be tried at such place as Congress shall designate by law." U.S. v. Dawson, 56 U.S. 15 How. 467, 488 (1853)

The only allegation in the Grand Jury words as to Count One, Two, Three, and Four, are "in the Northern District of Oklahoma, and elsewhere." Count Five and Six alleged in "in the Northern District of Oklahoma, and elsewhere, with the added words "Austin, Texas," "Tulsa, Oklahoma," and "Commissioner of Internal Revenue."

### 1.  THE 28 U.S.C. § 1861 POLICY GRAND JURY LACKED VENUE OVER CLAIMS IN THEIR INDICTMENT AS TO EACH COUNT.

#### a.  COUNT ONE, TWO, THREE AND FOUR

As to Count One, as also applicable to Counts Two, Three and Four, these charges suffer from a lack of venue. Each are premised upon the requirement to "file a United States Individual Income Tax Return as required by law."[3] See Indictment, paragraph 6 (Count One)[4], 41 (Count Two), 43 (Count Three) and 45 (County Four). There were no internal revenue districts, no district directors, and no other claims in Counts One, Two, Three and Four, that would identify any venue for such requirements being within the Northern District of Oklahoma and the jurisdiction of this Court. 26 U.S.C. § 6091 clearly provides by statute all individual's requested to provide information to the Secretary of the Treasury are directed to

---

[3] Since the Grand Jury does not allege Springer was required by law "or regulation" this Court must only construe this Motion challenging venue under the "required by law" as section 6091 clearly demonstrates. Even if this Court were drawn to the regulations, and it should not, under 6091 those regulations say the same thing as section 6091 for the years 2000 through 2005 tax years.

[4] Paragraph 6 in Count One is realleged in each of the Counts Two through Six. This paragraph alleges Springer has not provided information to the Internal Revenue Service on any "individual income tax return" since the "late 1980s."

provide such information either to the district director over the internal revenue district where they live or to the service center servicing such internal revenue district.   U.S. v. Taylor, 828 F.2d 630, 634-635 (10th Cir. 1987)

Count One, Two, Three and Four, as a matter of law, fails to allege an offense that occurred within the United States Judicial District of Oklahoma, in its Northern District, because no District Directors and no Internal Revenue Districts specifically existed from at least the year 2000 through 2009 requiring Springer to do anything therein.

### b.     COUNT ONE, FIVE AND SIX

The Government takes no exception with the fact Austin, Texas is not within the venue of any Grand Jury sitting in the "Northern District of Oklahoma" pursuant to 28 U.S.C. § 1861.  The Commissioner of Internal Revenue is likewise in Washington D.C. and outside any such reach of Congress' Northern District of Oklahoma.  This leaves Tulsa, Oklahoma and Tulsa is not even mentioned in any Federal Law or Regulation as the place where any "U.S. Individual Income Tax Return" is required to be made or filed pursuant to 26 U.S.C. 7203, and as applicable to 18 U.S.C. § 371.[5]  Tulsa, Oklahoma is also not any place where the legal "collection" of taxes is to occur by the District Director for any one living in "Kelleyville, Oklahoma."

Although "Treasury regulations establish voluntary compliance as the general

---

[5]If the "object" of the conspiracy is a misdemeanor only then any punishment, if convicted under section 371, cannot exceed that of the substantive misdemeanor.

method of income tax collection, Congress gave the Secretary of the Treasury the power to enforce the income tax laws through involuntary collection. See, e.g., 26 U.S.C. § 6301 et seq." United States v. Tedder, 787 F.2d 540, 542-543 (10th Cir. 1986)

Treasury regulations promulgated under the Commissioner's general authority at 26 U.S.C. 7805(a) to "prescribe all needful rules and regulations" are owed "less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision." Rowan Cos., Inc. v. United States, 452 U.S. 247, 253, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981); see also McKinney v. Comm'r, 732 F.2d 414, 417 (10th Cir. 1983). See also COX v. C.I.R., 514 F.3d 1119, 1123-1124 (10th Cir. 2008)

The Secretary of the Treasury implements his specific grant of authority at 26 U.S.C. § 6301 by promulgating 26 CFR 301.6301. This regulation section is entitled "**301.6301–1 Collection authority.**" From the Year 2000 through the return of the indictment in this case, the prescribed "method" of tax collection was to be "collected by the district directors of the internal revenue":

> The taxes imposed by the internal revenue laws **shall be collected by district directors of internal revenue**. See, however, section 6304, relating to the collection of certain taxes under the provisions of the Tariff Act of 1930 (19 U.S.C. ch. 4).

As demonstrated above, there are no "district directors" nor any "internal revenue districts" since at least 1999. See Exhibit 1 referenced specifically above.

The Fifth Amendment requires no person be held to answer or trial unless on

9

indictment of a properly gathered Grand Jury. Midland Asphalt Corp v. United States, 489 U.S. 794, 802 (1989)  The Sixth Amendment directs all "juries" be derived from the State and district where the crime is alleged to have occurred.  Harvard Law Review, Vol. XII, # 6, (1.25.1899) 365, 385; See also U.S. v. Dawson, 56 U.S.  15 How. 467, 488 (1853) The Tenth Amendment prohibits the United States from exercising any  power limited to their exclusive jurisdiction within the exclusive jurisdiction of any State, including the State of Oklahoma. *Kansas v. United States*, 214 F.3d 1196, 1198 (10th Cir. 2000).

Count One, Five and Six,  as a matter of law, fails to allege an offense that occurred within the United States Judicial District of Oklahoma, in its Northern District, because no District Directors and no Internal Revenue Districts specifically existed from at least the year 2000 through 2009 requiring Springer to do anything therein.

**2.    THIS 28 U.S.C. § 116  UNITED STATES DISTRICT OF OKLAHOMA COURT CREATED BY CONGRESS LACKS JURISDICTION AND VENUE BECAUSE AUSTIN TEXAS AND WASHINGTON D.C.  ARE NOT WITHIN ANYONE'S INTERPRETATION OF THE BOUNDARIES SET BY CONGRESS AT 28 U.S.C. § 116.**

As more fully set fourth above in Section 2, 28 U.S.C. § 116 does not encompass the area of Austin Texas or Washington D.C.  Accordingly, this Court lacks venue over Counts One, Two, Three, Four, Five and Six, under the Fifth Amendment, Sixth Amendment, Tenth Amendment, Article III, Section 2, Clause 3, 28 U.S.C. § 3231, 28 U.S.C. § 3232, and Federal Rules of Criminal Procedure 18 as to

any allegations of any alleged crime being committed in either Austin Texas or Washington, D.C.

"Where Congress is not explicit, 'the locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" Travis, 364 U.S. at 635 (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)). United States v. Wiles, 102 F.3d 1043, 1065 (10th Cir. 1996) Venue in federal criminal prosecutions is a question of fact which the government must prove. Wilkett v. United States, 655 F.2d 1007, 1011 (10th Cir. 1981), cert. denied, 454 U.S. 1142 (1982). In Anderson, the Supreme Court compared the cases holding that "when an omission to act is the crime, the venue is the jurisdictional locality where the act should have been performed." Id. at 705

The Crime in Anderson was determined to be committed at Fort Lewis when "for the first time he declined to go forward as he was required to do. This refusal was his crime. It took place at Fort Lewis." Id. at 706. The United States District Court in the Western District had territorial Jurisdiction over the "crime" alleged to have occurred at Fort Lewis because Fort was within the United States' territorial jurisdiction.

The claims against Springer in Counts One, Two, Three, Four, Five and Six, involve the requirement Springer was by law to provide information to the Internal Revenue Service on an U.S. Individual Income Tax Return for years 2000, 2002, 2003 2004 and 2005. Since there are no district directors and no internal revenue districts,

11

it is impossible for the Government to prove there was any requirement to provide information by Springer to anyone, for purposes of a crime under 18 U.S.C. § 371, and under Title 26, Sections 7201 and 7203.

> 3. **THIS 28 U.S.C. § 116 UNITED STATES DISTRICT OF OKLAHOMA COURT CREATED BY CONGRESS LACKS JURISDICTION AND VENUE BECAUSE TULSA OKLAHOMA IS NOT A PLACE IDENTIFIED WITHIN 26 U.S.C. § 6091 WHERE ANY INFORMATION SPRINGER IS ALLEGED TO HAVE BEEN REQUIRED TO REPORT WAS REQUIRED TO BE REPORTED.**

26 U.S.C. § 6091 does not identify Tulsa Oklahoma and furthermore directs that Title 26 requires only the "return" at issue be "filed" in the "internal revenue district" over which the legal residence of the taxpayer is located. This section goes on to identify the "service center" over such "internal revenue district." No where in Counts One, Two, Three, Four, Five and Six, is the identification of the "internal revenue district" alleged to establish the locus delecti being in Tulsa, Oklahoma. See U.S. v. CRYAR, 232 F.3d 1318, 1321 (10th Cir. 2000) quoting United States v. Cabrales, 524 U.S. 1, 6-7 (1998) ("stating that the 'locus delicti' [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it")

Accordingly, this Court lacks venue over Counts One, Two, Three, Four, Five and Six under the Fifth Amendment, Sixth Amendment, Tenth Amendment, Article III, Section 2, Clause 3, 28 U.S.C. § 3231, 28 U.S.C. § 3232, and Federal Rules of Criminal Procedure 18, because venue in Tulsa, Oklahoma over those claims is improper as there are no district directors or internal revenue districts encompassing

Tulsa, Oklahoma.

**4.     THIS 28 U.S.C. § 116 COURT CREATED BY CONGRESS LACKS TERRITORIAL JURISDICTION OVER THE PLACE THE ALLEGED CRIMES ARE SAID TO HAVE OCCURRED.**

28 U.S.C. § 116 is the establishment by Congress of "Judicial Districts" and Congress was given no criminal judicial power to use such "districts" to hold trial of any offense unless said offense occurred outside the territorial limits of any State. U.S. v. Dawson, 56 U.S. 15 How. 467, 488 (1853)("A crime, therefore, committed against the laws of the United States **out of the limits of a state** is not local, but may be tried at such place as Congress shall designate by law. )

Article III of the Constitution generally requires that the trial of any crime be held in the state where the crime was committed. U.S. Const. Art. III, § 2, cl. 3. The Sixth Amendment further requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. v. Cryar, 232 F.3d 1318 (10th Cir. 2000) "Thus, the 6th Amendment provides that all criminal trials shall be by a jury of the 'State and district' in which the crime shall have been committed; and by 'district' is here meant either an entire State or a subdivision of a State**.**" Harvard Law Review, Vol. XII, # 6, (1.25.1899) 365, 385.

This Court lacks territorial jurisdiction over the claims presented by the United States Department of Justice to the 28 U.S.C. § 1861 Policy Grand Jury claims and are instituted in violation of Fifth Amendment, Sixth Amendment, Tenth

Amendment, Article III, Section 2, Clause 3, 28 U.S.C. § 3231, 28 U.S.C. § 3232, and Federal Rules of Criminal Procedure 18.

### 5. THIS 28 U.S.C. § 116 COURT CREATED BY CONGRESS LACKS SUBJECT MATTER JURISDICTION, JURISDICTION, AND VENUE, PURSUANT TO ARTICLE III, SECTION 2, CLAUSE 3 OVER GRAND JURY CLAIMS.

Article III of the Constitution generally requires that the trial of any crime be held in the State where the crime was committed. U.S. Const. Art. III, § 2, cl. 3. U.S. v. Cryar, 232 F.3d 1318, 1320 (10th Cir. 2000)  The Sixth Amendment further requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." Id.

Our determination of venue raises matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests. These are important factors in any consideration of the effective enforcement of the criminal law. They have been adverted to, from time to time, by eminent judges; and Congress has not been unmindful of them. Questions of venue in criminal cases, therefore, are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed. Id. 1321

In United States v. Johnson, 323 U.S. 273, 275 (1944) "Fed.R.Crim.P. 18 reinforces these directives: '[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was

14

committed.'"

When a "statute" "does not contain a specific venue provision" "the place at which the crime was committed `must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" United States v. Medina-Ramos, 834 F.2d 874, 876 (10th Cir. 1987) (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)) (emphasis added); see United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999) ("In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."); United States v. Cabrales, 524 U.S. 1, 6-7 (1998) (stating that the "`locus delicti' [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it").

There is nothing in 18 U.S.C. § 371, 26 U.S.C. § 7201 or § 7203 that identifies any nexus for a United States venue. There is no claim the acts constituting the "crimes" occurred within the channels of interstate commerce within this 28 U.S.C. § 116 Judicial District.

Any trial of the claims made by the 28 U.S.C. § 1861 Grand Jury is to take place "in the State" and not within the territorial jurisdiction of the United States. Congress' only power to pick the place for any "trial" is when it is alleged that none of the facts giving rise to the "said crimes" occurred within "any State." See Article III, Section 2, Clause 3.

15

In another case styled USA v. Springer, 08-278, the District Court stated in an order that in 28 U.S.C. § 116 Congress "dividing up the State of Oklahoma" into 3 "judicial districts." Congress has no judicial power to divide the State of Oklahoma up regarding any alleged criminal acts occurring within the territorial limits of the State named Oklahoma.

In Clawson v. United States, 114 U.S. 477, 5 S.Ct. 949 (1885) before Utah became a State and at a time where it was a U.S. territory, expressed in the words of Chief Justice MARSHALL, speaking of the law as it then existed, said: 'It has been justly observed that no act of congress directs grand juries, or defines their powers. By what authority, then, are they summoned, and whence do they derive their powers? The answer is that the laws of the United States have erected courts which are invested with criminal jurisdiction. This jurisdiction they are bound to exercise, and it can only be exercised through the instrumentality of grand juries. They are, therefore, given by a necessary and indispensable implication. But how far is this implication necessary and indispensable? The answer is obvious. Its necessity is co-extensive with that jurisdiction to which it is essential." at 954-955

Congress has no "territorial" criminal jurisdiction alive in the State of Oklahoma and most certainly no enumerated power to divide the State of Oklahoma up into 3 exclusive territorial places.

CONCLUSION

This 28 U.S.C. § 116 United States District Court should issue an order in Lindsey Kent Springer's favor that (1) the "Grand Jury" pursuant to 28 U.S.C. § 1861 policy, lacks venue over the claims made in the indictment, (2) this 28 U.S.C. § 116 United States District Court created by Congress for the territory over which its sovereignty extends known as "Oklahoma" lacks jurisdiction and venue because Austin Texas and Washington D.C. are not located within anyone's interpretation of the boundaries set by Congress for section 116, (3) this 28 U.S.C. § 116 Court created by Congress lacks jurisdiction and venue because Tulsa, Oklahoma is not identified by Congress at 26 U.S.C. § 6091, (4) this 28 U.S.C. § 116 Court lacks territorial jurisdiction over the place where the crimes are said to have occurred, and (5) that this 28 U.S.C. § 116 Court created by Congress lacks any judicial power under Article III of the Constitution.

Respectfully Submitted
/s/ Lindsey K. Springer
<u>Lindsey K. Springer</u>
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Memorandum of Law in Support of his First Motion To Dismiss was ecf'd on May 15, 2009, to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

<u>/s/ Lindsey K. Springer</u>
Signature