IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.

MEMORANDUM OF LAW IN SUPPORT OF SPRINGER'S EIGHTH MOTION TO DISMISS GRAND JURY INDICTMENT FOR VIOLATIONS OF FOURTH AND FIFTH AMENDMENT AND SELECTIVE PROSECUTION

Lindsey Kent Springer, files this Memorandum of Law in support of his Eighth Motion to Dismiss the document labeled "INDICTMENT" dated March 10, 2009, based upon the United States and its Internal Revenue Service relying upon violations of Springer's Fourth and Fifth Amendment Rights in securing the evidence to present to the Grand Jury, and for selective prosecution.

**A.**    **SUMMARY OF THE CHARGES RELATED TO THIS MOTION**

Count One through Six allege Springer defrauded, falsely stated, and failed to act as required by law.

**B.**    **LEGAL ARGUMENT IN APPLICABLE TO THIS MOTION IN FAVOR OF DISMISSAL**

The Fourth Amendment guarantees Springer the absolute right to be free

1

from unreasonable searches and seizures[1] carried out by virtue of federal authority. Id.  And "where federally protected rights have been invaded, it has been the rule from the beginning that courts will **be alert to adjust their remedies so as to grant the necessary relief**." Bell v. Hood, 327 U.S., at 684 (footnote omitted); see Bemis Bros. Bag Co. v. United States, 289 U.S. 28, 36 (1933) (Cardozo, J.); The Western Maid, 257 U.S. 419, 433 (1922) (Holmes, J.).

The Fourth Amendment protects the citizen against unlawful searches and seizures. The Fifth Amendment secures him from compulsory testimony against himself. And these constitutional provisions are to be liberally construed to prevent impairment of the safeguards which they provide. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Gilbert v. United States, 10 Cir., 144 F.2d 568; See Gilbert v. U.S., 163 F.2d 325, 326 (10th Cir. 1947)

In Gouled v. United States, 255 U.S. 298, 309, the Court said that search warrants:

> "may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding. . . ." The Court derived from Boyd v. United States, supra, the proposition that warrants "may be resorted to only when a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police power renders possession of the property by the accused unlawful and provides that it may be taken," 255 U.S., at 309; that is, when the property is an instrumentality or fruit of crime, or contraband. Since it

---

[1] And persons, houses, papers and effects.

was "impossible to say, on the record . . . that the Government had any interest" in the papers involved "other than as evidence against the accused . . .," "to permit them to be used in evidence would be, in effect, as ruled in the Boyd Case,[2] to compel the defendant to become a witness against himself." Id., at 311. See Warden v. Hayden, 387 U.S. 294, 302 (1967)

A search under the Fourth Amendment "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Whether an individual has a constitutionally protected reasonable expectation of privacy in an object or place is a two-fold inquiry: (1) whether the individual has manifested a subjective expectation of privacy in the object or place to be searched and (2) whether that expectation is one society is prepared to recognize as reasonable. *United States v. Hatfield* 333 F.3d 1189, 1195 (10th Cir.2003). "[T]he burden of establishing a legitimate expectation of privacy is on the party claiming a Fourth Amendment violation, and we have applied that same rule to a claimed invasion of the curtilage." *United States v. Cavely*, 318 F.3d 987, 994 (10th Cir.2003) (citation omitted). It is well-settled an individual has a reasonable expectation of privacy in the interior of one's home and its curtilage. *Kyllo v. United States*, 533 U.S. 27, 34, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001); *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); see also *Hatfield*, 333 F.3d at 1196 ("[P]rivacy in the interior of a home and its curtilage are at the core of what the Fourth Amendment

---

[2]Boyd v. United States, 116 U.S. 616, 630 (1886)

protects. . . ."). See Reeves v. Churchich, 484 F.3d 1244, 1254 (10th Cir. 2007)

The Supreme Court has held that "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Rakas, supra, at 143. See also Rawlings v. Kentucky, 448 U.S. 98, 106 (1980). The text of the Amendment suggests that its protections extend only to people in "their" houses. Minnesota v. Carter, 525 U.S. 83, 88-89 (1998)

### C.  THIS COURT SHOULD DISMISS THE CLAIMS IN EACH COUNT OF THE GRAND JURY INDICTMENT BECAUSE THEY ARE MAINTAINED BASED UPON CONSTRUCTION OF CERTAIN EVIDENCE OBTAINED IN VIOLATION OF SPRINGER'S FOURTH AND FIFTH AMENDMENT RIGHTS.

The indictment in this case is based upon Fourth and Fifth Amendment violations.[3] There is not one item listed on the "items to be seized" of the search warrant in this case that could be considered "contraband" or "instrumentality or fruit of a crime."[4] In fact, everything listed were intended to be used solely against Springer and in his own words at some possible future criminal proceeding. The Government has absolutely no interest in any information Springer maintained at

---

[3] These claims differ from the Fifth Motion to Dismiss in that these claims involve the false statements tendered to Springer during the Donna Meadors assault beginning in 2003 and ending in early 2005, as well as the search of Springer's home in 2005 solely looking for things Springer had written or said contained in his private home.

[4] Springer is also filing for a Frank's Hearing by June 1, 2009, as ordered by the Court and though there are some overlap between that Motion and the Eighth Motion to Dismiss. This Motion solely raises dismissal claims based upon the usage of information before the Grand Jury obtained unlawfully and should be considered separately but along side the Frank's Motion

his home other than to gather evidence, in effect, as ruled in the Boyd Case, to compel the defendant to become a witness against himself." Gouled v. United States, 255 U.S. 298, 301. See also Warden v. Hayden, 387 U.S. 294, 302 (1967)

Evidence that was obtained and used by Donna Meadors is also in the hands of the Government by Ms. Meadors falsely inducing Springer to cooperate with her 6700 investigation based upon Meadors directly telling Springer that he was not under any criminal investigation and that she was solely looking at whether Springer was selling any tax abuse shelter program. Meadors at all times was working with Mr. Reed, the civil/criminal coordinator for the IRS out of Oklahoma City, as well as with other CID Agents and both Douglas Horn and Melody Noble Nelson.

This is the same tactic Brian Shern used to obtain testimony from Oscar Stilley that Agent Shern now seeks to use against both Springer and Stilley. Shern informed Stilley that he was not under criminal investigation in early 2006, to subpoena Mr. Stilley to testify before two Grand Juries, and only recently was Stilley informed by the United States that in fact he has been under criminal investigation since at least May, 2004. This is the date Mr. Patterson and Mrs. Patterson met with Melody Noble Nelson.

Donna Meadors worked with both Melody Nelson and Douglas Horn in the Patterson Trial in late 2003. In fact, Douglas Horn and Melody Nelson were doing an adjacent criminal investigation of both Springer and Stiley during the Patterson Trial in late 2003.

5

The Grand Jury should never have been allowed to consider any testimony of any person who participated in the unlawful gathering of information by Donna Meadors and most certainly the Grand Jury should never have been allowed to consider any evidence leading from Donna Meadors to Brian Shern which then derived from Springer's Home or Stilley's mouth.

Springer had two expectations of privacy. First, Springer would never have given any information to Donna Meados had she divulged that she was doing a criminal investigation of Springer generally or that she knew a criminal investigation was ongoing. She specifically said she was solely investigating some "tape" for sale on the internet which contained Springer's voice from 1995. It was on these contentions Springer provided the summoned information.

Second, Springer had an expectation of privacy in his home. The only things sought by the warrant were things testimonial in nature that the Government could use to say look what Springer said or did. Such conduct is exactly what the Fourth Amendment was to guard against and the Fifth Amendment was to catch and stop from being used against Springer.

**D.    THIS COURT SHOULD DISMISS ON GROUNDS OF SELECTIVE PROSECUTION.**

The "showing necessary to obtain discovery for a selective prosecution defense must `itself be a significant barrier to the litigation of insubstantial claims.'" James,257 F.3d at 1178 (quoting *Armstrong,* 517 U.S. at 464, 116 S.Ct. 1480). Although defendants seeking discovery need not establish a prima facie case of

selective prosecution, *id.* at 1178, they must satisfy a "rigorous standard," *Armstrong,* 517 U.S. at 468, 116 S.Ct. 1480. They must produce "some evidence" of both discriminatory effect and discriminatory intent. *Armstrong,* 517 U.S. at 470, 116 S.Ct. 1480; *accord United States v. Bass,* 536 U.S. 862, 863, 122 S.Ct. 2389, 153 L.Ed.2d 769 (2002) (per curiam).

The Internal Revenue Service and the U.S. Department of Justice had both a discriminatory effect and purpose against Springer.

Springer's Bondage Breaker's Ministry was to "get rid of the IRS." It would be hard to say that alone did not satisfy the discriminatory effect and purpose in seeking the seventh Grand Jury to indict Springer for something.

First, Springer witnessed what Douglas Horn and Melody Noble Nelson did in 2002 before Eddy Patterson and Oscar Stilley. This is demonstrated in the affidavits filed by Oscar Stilley and Jerold Barringer in 2004 in the Patterson Criminal Case. See Exhibit 1 and 2.

Being fully aware of the threats Springer witnessed Horn make to Stilley and Patterson while Nelson edged it on, more than suggests Nelson and Horn had a strong motive to silence what Springer witnessed. Nelson told this Court in another case that "based on prior experience with Springer. I was concerned that anything I said to him might be taken out of context." Exhibit 3, pg. 5

The only other experience Springer had with Nelson was witnessing the 2002 threats she and Horn made against Eddy Patterson and Oscar Stilley. See Exhibit

2, pg. 3, paragraph 12.

Since Donna Meadors worked directly with Horn and Nelson in the criminal trial of Eddy Patterson, and because she was pending at the time to become a Criminal Investigator for the IRS, and within 2 weeks after the trial of the Pattersons, Meadors summoned Springer falsely, there is simply no other way to see the strong evidence that Springer was selected by Horn and Nelson, through a civil/criminal coordinator, David Reed, to have Donna Meadors conduct a criminal investigation of Springer and not to tell Springer.

Meadors is the "agent" who made the criminal referral in this case which Shern accepted on or about April 26, 2005 by his own declaration in 06-156.

It is from here that Nelson and Horn's illegal conduct led to the search of Springer's home looking for anything that could be used as testimony against Springer that Springer said or drafted in paper or on computer in pursuit of his mission.

It is true Shern and others looked for illegal guns at Springer's home but amazingly guns were not even listed on the items to be searched "warrant." Everything was simply a fishing expedition and Springer's liberty was the sought after prize with no probable cause whatsoever to believe any contraband or instrumentality or fruits of any crime were even sought in that illegal search.

CONCLUSION

Lindsey K. Springer respectfully requests this Court dismiss all Six Counts of the Grand Jury Indictment because all Six Counts were obtained by presenting evidence illegally taken from Springer by Donna Meador, Douglas Horn, Melody Noble Nelson, and David Reed, in the first instance, dealing with Meadors 6700 investigation, in violation of the Fifth Amendment Rights of Springer, and was also obtained by Brian Shern, Douglas Horn and Melody Noble Nelson, violating the Fourth Amendment Right of Springer to be secure in his person, house, papers, and effects, and in violation of Springer's Fifth Amendment not to be compelled to be a witness against himself, by searching, taking and utilizing Springer words taken by way of the Search Warrant from computers and other writings.

Respectfully Submitted
/s/ Lindsey K. Springer
<u>Lindsey K. Springer</u>
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Memorandum of Law in Support of his Eighth Motion To Dismiss was ecf'd on May 15, 2009, to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

/s/ Lindsey K. Springer
Signature