IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA

LINDSEY K. SPRINGER,            )
                                )
            Plaintiff,          )
                                )
    v.                          )    Case No. 06-CV-156-GKF-FHM
                                )
DOUGLAS HORN, Individually; MELODY  )
NOBLE NELSON, Individually; BRIAN   )
SHERN, Individually; 10 UNKNOWN )
AGENTS OF THE INTERNAL REVENUE  )
SERVICE, Individually; and OTHERS   )
UNKNOWN, Individually,          )
                                )
            Defendants.         )
_____)


## DECLARATION OF MELODY NOBLE NELSON

I, MELODY NOBLE NELSON, declare that:

1. I am presently employed as an Assistant Attorney General in the Oklahoma Attorney General's Office in Tulsa, Oklahoma, where I prosecute criminal and civil cases in the Patient Abuse and Medicaid Fraud Division of our office. I am one of the defendants in the above-captioned civil action.

2. This Declaration is being executed in support of the individual federal defendants' motion for summary judgment in the above-captioned civil action.

3. Except where specifically noted to the contrary, I have personal knowledge of the facts set forth in this Declaration, and, if called upon to testify to said facts, could do so competently.

4. I have read, and am familiar with, the allegations of the Bivens Complaint in this case.

2871148.1

5.  I graduated from the University of Central Arkansas with a degree in Accounting in 1985, and from the University of Arkansas Law School in 1988. After passing the bar and obtaining my license to practice law in Arkansas, I was employed as a civil litigator at the firm of Crockett and Brown, P.A., in Little Rock, Arkansas, between July of 1988 and June of 1990. I was employed by the Pulaski County Prosecuting Attorney's Office between June of 1990 and December of 1992. I was admitted to the Texas Bar and served as an Assistant District Attorney for Bowie County, Texas, between April of 1993 and November of 1994. Between March of 1995 (when I was admitted to the Oklahoma Bar) and November of 2001, I served as an Assistant Attorney General for the State of Oklahoma.

6.  From approximately December of 2001 until July of 2006, I served as an Assistant United States Attorney for the Northern District of Oklahoma in Tulsa, Oklahoma, where I prosecuted individuals for violations of federal law. In July of 2006, I left my job as an Assistant United States Attorney to return to my previous employment as an Assistant Attorney General for the State of Oklahoma.

### The investigation into the activities of Lindsey K. Springer and the search warrant for the search of his residence

7.  While I was an Assistant United States Attorney for the Northern District of Oklahoma, I was assigned to a case involving an investigation by the Internal Revenue Service into the activities of the plaintiff, Lindsey K. Springer, for alleged violations of Title 26, United States Code (including, but not limited to, section 7201 of the Internal Revenue Code). As part of this investigation, I prepared a search warrant for the search of the plaintiff's residence in Kellyville, Oklahoma. On or about September 15, 2005, I presented the search warrant and the

2871148.1

supporting declaration of IRS Special Agent Brian M. Shern to United States Magistrate Judge

Frank H. McCarthy, who signed the search warrant and authorized the search of Springer's

residence.

8. A copy of the search warrant signed by Magistrate Judge McCarthy is attached to the

"Movant's Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search

Warrant (2) The Application for the Search Warrant and (3) Return of Certain Property Either

Not Items Listing in Search Warrant or Clearly Not Subject to Seizure" filed by Springer in In

the Matter of the Search of Premises Known as 25757 South 201st West Avenue, Kellyville,

Oklahoma, Case No. 05-SM-1 (N.D. Okla.) (hereinafter, "the Movant's Motion"). A true and

correct copy of the Movant's Motion, including Exhibits 1 and 2 thereto (the search warrant

issued by Magistrate Judge McCarthy on September 15, 2005, and the Inventory Listing of All

Items Seized at Search Warrant Site, respectively), is attached to this Declaration as Exhibit 1.

9. Listed among the items to be seized in paragraph 2 of Attachment B to the search

warrant (Exhibit 1 to this Declaration) for Springer's residence were "[c]urrency and monetary

instruments including cashier's checks, receipts of cashier's checks, money orders, traveler's

checks, and other monetary instruments."

**The search of Lindsey Springer's residence on September 16, 2005**

10. The search of Springer's residence pursuant to the search warrant authorized by

Magistrate Judge McCarthy took place on September 16, 2005. I was not present for the search

of the plaintiff's residence by IRS Special Agent Brian Shern and other IRS Special Agents.

11. I have never traveled to Springer's residence in Kellyville, Oklahoma.

12. On the morning of the execution of the search warrant at Springer's residence on

-3-                                    2871148.1

September 16, 2005, I received a telephone call from Supervisory Special Agent William R. Taylor, who was one of the Agents who was involved in the search of Springer's residence. During this conversation, Agent Taylor informed me that approximately $19,000 in U.S. currency had been discovered in the search of Springer's residence. I, along with Douglas Horn (the Chief of the Criminal Division of the United States Attorney's Office for the Northern District of Oklahoma) and Agent Taylor, determined that the currency should be seized pursuant to the search warrant signed by Magistrate Judge McCarthy as potential evidence of one or more violations of Title 26, United States Code, by Lindsey K. Springer.

13. On the afternoon of September 16, 2005, I received a telephone call from Supervisory Agent Taylor, who informed me that although they had thought they had about $19,000 in cash, the actual amount, as counted at a bank, was $17,000. I asked Agent Taylor if any Agent was ever alone with the cash, and he replied "no." I asked Agent Taylor to document who had been around the money, and what had happened.

### Subsequent contacts with Lindsey Springer

14. Shortly after the execution of the search warrant at Springer's residence on September 16, 2005, Lindsey Springer began to call me at my office at the United States Attorney's Office in Tulsa, Oklahoma. In several instances, Springer left messages for me at my office. All of the messages concerned the return of the currency and car titles.

15. IRS Special Agent Brian Shern called and told me that Lindsey Springer was calling him about the return of the currency and car titles. I told Agent Shern to refer Springer to me.

16. During the telephone conversations that I had with Lindsey Springer, he asked me to recuse myself from his case, which I declined to do. Springer also requested the return of the

currency and car titles. Because I believed that the law did not require me to do so, I told him

that I would not return the currency or car titles.

17. Springer informed me by telephone that he would file something with the Court for

the return of the currency and car titles. I informed Springer that the currency and car titles

would be returned to him if the Court ordered the Government to do so. I also asked him to stop

calling me and to put any of his requests or concerns in writing. I did this for two reasons. First,

Springer was the target of an investigation, and I was uncomfortable with discussing matters with

him over the telephone. Second, based on prior experience with Springer. I was concerned that

anything I said to him might be taken out of context.

### Springer's Rule 41 motion

18. On September 23, 2005, one week after the execution of the search warrant at his

residence, Springer filed his "Movant's Motion for (1) Copy of All Sworn Testimony Court

Considered in Issuance of Search Warrant (2) The Application for the Search Warrant and (3)

Return of Certain Property Either Not Items Listing in Search Warrant or Clearly Not Subject to

Seizure" in In the Matter of the Search of Premises Known as 25757 South 201st West Avenue,

Kellyville, Oklahoma, Case No. 05-SM-1 (ND Okla.). The "Movant's Motion" sought the

disclosure of the supporting declaration of IRS Agent Brian Shern (as well as any other

supporting materials) and the return of the currency and car titles that were seized pursuant to the

search warrant. A true and correct copy of the "Movant's Motion," together with all materials

filed in support of that motion, is attached to this Declaration as Exhibit 1.

19. I prepared and filed the United States of America's Response to Movant's Motion for

Copy of Sworn Testimony, Application for Search Warrant and Return of Certain Seized Items

2871148.1

(the "Response") that was filed with the Court on October 5, 2005. A true and correct copy of the Response is attached to this Declaration as Exhibit 2.

20. In an Order entered on October 28, 2005, Magistrate Judge McCarthy denied Springer's request for copies of the materials and/or testimony considered in connection with the issuance of the search warrant and the application for the search warrant. The Court also denied without prejudice Springer's motion for the return of the seized currency and car titles. A true and correct copy of the October 28, 2005 Order is attached to this Declaration as Exhibit 3.

21. After the denial of the Movant's Motion, Assistant United States Attorney Douglas Horn and myself made the decision to return the currency and the car titles that were seized pursuant to the search warrant to Springer. It is my recollection that Agent Shern went to Springer's residence in January of 2006 and gave him a Treasury check in the amount of $17,000.

22. I did not steal any money from the plaintiff in this civil action, or enter into any agreement or conspiracy with Assistant United States Attorney Douglas Horn or any IRS Special Agent, or anyone else, to steal any money from Lindsey Springer.

23. I did not, individually or in conjunction with any other party or individual, "cover up" or attempt to "cover up" any alleged discrepancy between the amount of currency shown on the "Inventory Listing of All Items Seized at Search Warrant Site" ("Approximately $19,000.00 in U.S. Currency") and the $17,000.00 amount shown on the Treasury Check tendered to the plaintiff, Lindsey K. Springer, in January of 2006. I opposed the "Movant's Motion," as described in paragraph 18, above, because of my good-faith belief that Springer had not demonstrated that he would suffer irreparable harm or injury (as he was required to do under

2871148.1

Rule 41 of the Federal Rules of Criminal Procedure) if the money and car titles seized from his residence on September 16, 2005, were not returned to him immediately, and for the other reasons set forth in the United States' response to Springer's motion for the return of seized items.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

2871148.1

## CERTIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 27th, 2007.

MELODY NOBLE NELSON

2871148.1

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the forgoing **DECLARATION** was filed with the Clerk of the court electronically today, July 14, 2008, such that a service copy was sent by way of the electronic filing system to the plaintiff and all counsel who have arranged for electronic service of filings

*/s/ Robert D. Metcalfe*
ROBERT D. METCALFE DC #423163
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Ben Franklin Station
Washington, D.C.  20044

# FILED

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA**

SEP 2 3 2005

Phil Lombardi, Clerk
U.S. DISTRICT COURT

In the Matter of the Search of

SEALED

SEP 2 1 2005

US ATTORNEY
N. D. OKLAHOMA

"Premises known as
25758 South 201ˢᵗ West Avenue
Kellyville, Oklahoma"

Case No

## MOVANT'S MOTION FOR (1) COPY OF ALL SWORN TESTIMONY COURT CONSIDERED IN ISSUANCE OF SEARCH WARRANT (2) THE APPLICATION FOR THE SEARCH WARRANT AND (3) RETURN OF CERTAIN PROPERTY EITHER NOT ITEMS LISTED IN SEARCH WARRANT OR CLEARLY NOT SUBJECT TO SEIZURE.

Lindsey K. Springer (hereinafter referred to as "movant"), moves the

District Court for an order (1) directing the release to movant of all sworn

testimony the Court considered in its finding of probable cause to issue the search

warrant on September 15, 2005 regarding the search of the property known as

"25758 South 201ˢᵗ West Avenue, Kellyville, Oklahoma; and (2) directing release

of the "application" which the Court considered in reviewing the affidavit and

issuing the Search Warrant, and (3)  directing certain currency and documents be

returned immediately to movant and the property known as "25758 South 201ˢᵗ

West Avenue, Kellyville, Oklahoma".

**EXHIBIT**

1

1

# 198

Without the sworn testimony attached to the warrant or without the warrant making reference to the facts that support the finding of probable cause, the warrant violates the Fourth Amendment Rights of movant.   Likewise seizing currency can in no way be evidence of any crimes under section 7201 or 7203 for the years 2000 to present.   And finally, without seeing the affidavit and application, Movant is unable to make an exhaustive list of the seized property being outside the scope of the warrant and issues revealed therein, and at the conducted search, but certainly two vehicle titles wherein said vehicles are in need or registration can in no way be within any of the four listed reasons for issuance of a Search Warrant under Rule 41(c).

Currency derived from the cashing of a check in September 2005 is not "evidence of a crime".   It is not contraband or fruits of a crime or otherwise illegally possessed.   It is not property intended to be used to commit a crime and 41(c)(4) does not apply.   There are no facts to support the seizure of the currency.

Vehicle titles are not evidence of a crime, nor contraband, fruits of a crime, illegally possessed, property designed for use, intended use or used in committing a crime.   They were also not listed on the overbroad Search Warrant specifically or in some general way as to intend to be within its reach.   There are no facts to support the seizure of these titles.

## BACKGROUND

On September 15, 2005, this Court issued a "Search Warrant" (hereinafter referenced as "warrant") directing Brian M. Shern ("hereinafter referred to as Serving Agent") and any Authorized Officer of the United States to "search on or before 9-25-2005 the premises known as 25758 South 201st West Avenue, Kellyville, Oklahoma". *Exhibit 1*

On September 16, 2005, Brian M. Shern and several other employees of the Criminal Investigation Division of the Internal Revenue Service, served said warrant upon movant at the property known as "25758 South 201st West Avenue, Kellyville, Oklahoma"

On September 16, 2005, Brian M. Shern tendered to movant an "Inventory Listing of all items Seized at Search Warrant Site" (hereinafter referred to as "seized property"). *Exhibit 2*

I.   MOTION TO RELEASE ALL SWORN TESTIMONY THE COURT CONSIDERED IN FINDING PROBABLE CAUSE TO ISSUE SEARCH WARRANT.

Federal Rules of Criminal Procedure Rule 41 authorize this Court to issue a warrant to an officer authorized to execute it.   *See Rule 41(e)(1) 2005 Edition.* The warrant may only be issued for the purpose of gathering evidence of a crime,

3

for contraband, fruits of crime, or other items illegally possessed, for property

designed for use, intended for use, or use in committing a crime, or for a person to

be arrested or for whom is unlawfully restrained. *See Rule 41(c)(1) through (4).*

The Attachment "B" labeled "ITEMS TO BE SEIZED" states "Based on the

foregoing, I respectfully submit that there is probable cause to believe that the

following items, which constitute evidence of violations of Title 26, United States

Code Sections 7201 and 7203, will be found at the location described in

Attachment A in individual and business names including, but not limited to

Lindsey Springer, Oscar Stilley, and Bondage Breakers Ministries.   All the items

to be seized as referenced below are for the year beginning January 1, 2000,

through the execution of the warrant including the following...:"

"The Fourth Amendment protects the individual's  privacy in a variety of

settings. In none is the zone of privacy more clearly defined than when bounded

by the unambiguous physical dimensions of an individual's home - a zone that

finds its roots in clear and specific constitutional terms: 'The right of the people

to be secure in their . . . houses . . . shall not be violated.' That language

unequivocally establishes the proposition that '[a]t the very core [of the Fourth

Amendment] stands the right of a man to retreat into his own home and there be

free from unreasonable governmental intrusion.'" *Payton v. New York*, 445 U.S.

4

573, 585, 589-90, 100 S.Ct. 1371, 1379, 1381-82, 63 L.Ed.2d 639 (1980)

(alterations in original) (citations omitted).  See also *U.S. v. Dahlman*, 13 F.3d

1391 (10th Cir. 1993)

The Fourth Amendment provides that "no Warrants shall issue, but upon

probable cause, supported by Oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized." *U.S. Const. amend.*

*IV; United States v. Mesa-Rincon*, 911 F.2d 1433, 1436 (10th Cir. 1990); see also

*U.S. v. Janus Industries*, 48 F.3d 1548 (10th Cir. 1995)

The Supreme Court has stated that "probable cause is a fluid concept -

turning on the assessment of probabilities in particular factual contexts - not

readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*,

462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). "The task of the

issuing magistrate is simply to make a practical, common-sense decision whether,

given all the circumstances set forth in the **affidavit** before him . . . there is a fair

probability that contraband or evidence of a crime will be found in a particular

place." Id. at 238, 103 S.Ct. at 2332; see also *Janus* **supra**.

The particularity requirement of the Fourth Amendment "prevents a

`general, exploratory rummaging in a person's belongings,' *Coolidge v. New*

*Hampshire*, 403 U.S. 443, 467 [91 S.Ct. 2022, 2038, 29 L.Ed.2d 564] (1971) and

`"makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."'" *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) (quoting *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965)). It "`ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.'" *United States v. Leary*, 846 F.2d at 600 (quoting *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985)); see also *United States v. Sullivan*, 919 F.2d at 1424; *United States v. Mesa-Rincon*, 911 F.2d at 1440. *U.S. v. Wicks*, 995 F.2d 964 (10th Cir. 1993)

It has been held that if "[T]he face of the warrant does not show the "facts" referred to, but they are contained in the affidavit used to support the request for the warrant which was attached to and served with the warrant" that this procedure "thus informed of the reasons for the search and its purposes". The affidavit was incorporated into the warrant, and we shall not require that the facts stated in the affidavit be recited again on the face of the warrant when they are served together. See *Clay v. United States*, 246 F.2d 298 (5th Cir.).

Clearly, the warrant dated September 15, 2005, is clearly in violation of the fourth amendment and the rights of movant. It attaches no affidavit and makes no

6

reference to any facts derived from any affidavit.   It uses the boiler phrase "there is probable cause" and lists two code sections from "Title 26 United States Code".

Movant enquired as to who the USAS was and movant was told it was Mrs. Melody Noble Nelson of the United States Attorney's Office in the Northern District of Oklahoma )(hereinafter referenced as "ASUA").

Movant asked to see the "affidavit" referenced in the infirm warrant and was denied.  Movant asked if the affidavit was on site and was told that anymore questions regarding the warrant would have to be addressed to the ASUA. Movant enquired the ASUA for the affidavit and was denied access to it.

Movant telephoned the chambers of the Honorable Magisrate Judge for the United States District Court Frank H McCarthy and was informed to make a request for said affidavit.   LET THERE BE NO MISTAKE ABOUT THIS. THIS IS MOVANT'S REQUEST FOR THE AFFIDAVIT THAT WAS RELIED UPON BY THE HONORABLE JUDGE TO FIND "PROBABLE CAUSE".   The affidavit was not attached to the warrant and the warrant makes no specific reference to the facts claimed to  support the warrant.

When reviewing a warrant, "we read together all properly incorporated or referenced components of the warrant, including the attached application and affidavit." *United States v. Occhipinti*, 998 F.2d 791, 799 (10th Cir. 1993).

7

See also *U.S. v. Callwood*, 66 F.3d 1110 (10th Cir. 1995)

"In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the **factual** and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Id., at 175. Our observation in *United States v. Cortez*, 449 U.S. 411, 418 (1981), regarding "particularized suspicion," is also applicable to the probable-cause standard. *Illinois v. Gates*, 462 U.S. 213, 231 (1983)

As early as *Locke v. United States*, 7 Cranch 339, 348 (1813), Chief Justice Marshall observed, in a closely related context: "[T]he term `probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation . . . . It imports a seizure made under *circumstances which warrant suspicion*."

Movant respectfully requests this Court to release to movant all sworn or affirmed testimony the Court relied upon in issuing the warrant dated September 15, 2005 at 4:01 pm.

II.     MOVANT REQUESTS THIS COURT TO RELEASE THE APPLICATION MADE BY THE GOVERNMENT SEEKING SAID WARRANT TO SEARCH.

Based upon that absolute right of Movant to be served with a warrant that

8

satisfies the Fourth Amendment, Movant respectfully request this Court direct the release of any/all applications relied upon to obtain the warrant dated September 15, 2005 to Movant.

III.    MOVANT REQUESTS THIS COURT DIRECT THE RETURN OF THE CURRENCY TAKEN PURSUANT TO THE WARRANT AS WELL AS DOCUMENTS TAKEN THAT WERE NOT PURSUANT TO THE WARRANT.

### A.  The Currency

On September 16, 2004, the Service Agent served upon Movant a deficient warrant which did not attach any affidavit under the Fourth Amendment requirements nor did it reference any facts within the warrant referencing the affidavit it claims probable cause was found to support.

The warrant directed that all "currency" be seized and any "money orders", "cashier checks", and "traveler's checks" and other "monetary instruments". There is nothing in the warrant itself that justifies the Government holding or maintaining the "currency" taken from Movant.   This currency was received through a local financial institution from the cashing of a check made payable to Movant and there is no way that this cashing could in any way relate to "violations of Title 26, United States Code Sections 7201 and 7203.

Movant requested U.S. Assistant Attorney Melody Noble Nelson agree to

return the seized currency and she informed Movant "not at this time".

Since there is no fact alleged in the warrant nor could there be any that would not be easily contradicted justifying the seizure of currency from Movant's home, nor is there any due process given to take such currency from Movant, Movant respectfully request this Court issue an order returning the currency to Movant immediately.

### B.  THE VEHICLE TITLES

There is nothing contained within the warrant that would direct the Service Agent to seize vehicle titles recently purchased by Movant.  The warrant is very ambiguous in this regard as it only mentions "documents related to the purchase and sale or other vehicles or machinery."   The Government can simply take copies of these documents but tender the originals back to Movant.   When asked for these to be returned to Movant U.S. Assistant Attorney Mrs. Melody Noble Nelson responded that she would give copies to Movant but not the originals. Movant then asked why and Mrs. Nelson responded that Movant had other vehicles and did not need these titles.

The warrant says the alleged probable cause violated sections are section 7201 and 7203.   There is nothing in either of these two sections that a grand jury maintaining the original titles of two vehicles would need to continue their

investigation.    The only reason the currency and the titles are attempting to be

maintained is because of an end run around section 6330(e) by the  seizing of

property belonging to Movant.   Mrs. Nelson is fully aware those vehicles cannot

be licenced correctly or tagged without the titles to the vehicles.   She was also

informed that the only collection issues between Movant and the IRS are under

stay in Oklahoma City pursuant to section 6330(e).   Mrs. Nelson responded that

that case was civil and her case is criminal.

"In dealing with probable cause, . . . as the very name implies, we deal with

probabilities. These are not technical; they are the **factual** and practical

considerations of everyday life on which reasonable and prudent men, not legal

technicians, act.' Id., at 175. Our observation in *United States v. Cortez*, 449 U.S.

411, 418 (1981), regarding "particularized suspicion," is also applicable to the

probable-cause standard. *Illinois v. Gates*, 462 U.S. 213, 231 (1983)

As early as *Locke v. United States*, 7 Cranch 339, 348 (1813), Chief Justice

Marshall observed, in a closely related context: "[T]he term `probable cause,'

according to its usual acceptation, means less than evidence which would justify

condemnation . . . . It imports a seizure made under *circumstances which warrant*

*suspicion*."

There can be no suspicion let alone condemnation regarding vehicle titles.

11

The vehicle titles have nothing to do with section 7201 nor section 7203.   They

do not change whether the money given to Movant that acquired them was

excludable under section 102 of the Internal Revenue Code.

Since the warrant did not contain any alleged facts which would authorize

the seizure of the two titles taken and no affidavit attached explaining the need for

the seizure of the titles, Movant respectfully request this Court issue an order

directing the return of the two original titles to Movant immediately.

IV.   CONCLUSION

Movant respectfully request this Court release a copy of the application and

all sworn testimony it relied upon to find probable cause regarding the Search

Warrant issued on September 15, 2005 as well as order the return of the currency

seized and the titles seized on September 16, 2005 by the Service Agent.

Respectfully Submitted

Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a true and correct copy of Movant's MOTION  FOR (1) COPY OF ALL SWORN TESTIMONY COURT CONSIDERED IN ISSUANCE OF SEARCH WARRANT (2) THE APPLICATION FOR THE SEARCH WARRANT AND (3) RETURN OF CERTAIN PROPERTY EITHER NOT ITEMS LISTED IN SEARCH WARRANT OR CLEARLY NOT SUBJECT TO SEIZURE was mailed to

U.S. Attorney Office
Attn.  Mrs. Melody Noble Nelson
110 West 7th St., Suite 300
Tulsa, Oklahoma 74119
918-382-2700

U.S. Department of Justice
Robert D. Metcalfe
Tax Division, Trial Section
555 4th Street, N.W. Room 8921C
Washington D.C. 2001
202-307-6525

Signature of Server

13

AO 93 (Rev. 5/85) Search Warrant

# United States District Court

NORTHERN _____ District of _____ OKLAHOMA

In the Matter of the Search of

Name, address or brief description of person, property or premises to be searched)

**SEARCH WARRANT**

Premises known as:
25758 South 201st West Avenue
Kellyville, Oklahoma

Case No. _____

To: Brian M. Shern and any Authorized Officer of the United States:

Affidavit(s) having been made before me by Brian M. Shern, who has reason to believe that on the premises known as

SEE ATTACHMENT A – LOCATION TO BE SEARCHED, ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE

in the Northern District of Oklahoma, there is now concealed certain property, namely

SEE ATTACHMENT B – ITEMS TO BE SEIZED, ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before    **9-25-05**
                                                        Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.) and if the person or property to be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to Magistrate Judge Frank H. McCarthy as required by law.

**9-15-05       4:01 PM**
Date and Time issued                         at              Tulsa, Oklahoma

Frank H. McCarthy, U.S. Magistrate Judge          _Frank H. McCarthy_

Name and Title of Judicial Officer                 Signature of Judicial Officer

AO 93 (Rev. 5/85) Search Warrant

### RETURN

| Date Warrant Received | Date and Time Warrant Executed | Copy of Warrant and Receipt for Items Left With |
|---|---|---|
| | | |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

### CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this _____ day of _____, 20_____.

_____        _____

U.S. Judge or Magistrate                                                        Date

**ATTACHMENT A**

**LOCATION TO BE SEARCHED**

Two-story residence and curtilage, surrounding outbuildings, appurtenances, buses,
automobiles, and property (including locked containers) of LINDSEY SPRINGER
located at 25758 SOUTH 201ST WEST AVENUE, KELLYVILLE, OKLAHOMA, 74039,
more specifically described as follows:

A two-story residence located on the west side of South 201st West
Avenue.  The entrance of the residence faces northeast.  The residence is
made of reddish-brown colored brick with light colored grayish siding
covering the majority of the front of the residence.  The door and windows
of the residence are white.  There is an unattached two-car garage and
two small outbuildings that are perpendicular to the residence and face
southeast.  South 201st West Avenue is not identified with a street sign.  It
is 1.2 miles west of the turnpike gate on State Highway 33, which can be
accessed from exit number 211 off the Turner Turnpike, headed
westbound from Sapulpa.  Adjacent to the entrance of South 201st West
Avenue from State Highway 33 is a gray mailbox on a wooden post with
the numbers "12244".  The residence located at 25758 South 201st West
Avenue is approximately one quarter-mile on South 201st West Avenue
from this mailbox.

Attached is a map showing the location of the residence, a satellite photograph of
the residence and surrounding area, and some photographs of the residence and
the mailbox adjacent to the road leading up to the residence.











## ATTACHMENT B

## ITEMS TO BE SEIZED

Based on the foregoing, I respectfully submit that there is probable cause to believe that the following items, which constitute evidence of violations of Title 26, United States Code Sections 7201 and 7203, will be found at the location described in Attachment A in individual and business names including, but not limited to LINDSEY SPRINGER, OSCAR STILLEY, and BONDAGE BREAKERS MINISTRIES. All of the items to be seized as referenced below are for the year beginning January 1, 2000 through the execution of the warrant including the following:

1. Client billing records, fee schedules, contracts for employment, estimates for services, filed court documents, and correspondence (opened and unopened) relating to the above referenced items;

2. Currency and monetary instruments including cashier's checks, receipts of cashier's checks, money orders, traveler's checks, and other monetary instruments;

3. Bank records including bank statements, deposit tickets, cancelled checks, debit and credit memos, records of wire transfers, and records of safe deposit box rental and entry, financial statements, and correspondence (open and unopened) with banks and financial institutions;

4. Financial records including tax returns, documents relating to the preparation of his tax returns, documents related to the purchase and sale of automobiles or

other vehicles or machinery, documentation of business expenses, documentation of other expenses, documentation of personal expenditures, and credit card records;

5. Financial statement records including books, ledgers, notations, memoranda, cash receipts and disbursements journals, general journals, accounts receivable and payable ledgers, general ledgers, balance sheets, profit and loss statements, and income distribution statements;

6. Loan records from any source whatsoever and payments relating thereto, as well as loan applications, financial statements, and documents related to the attainment of loans;

7. Address and/or telephone records reflecting names, addresses, and/or telephone numbers;

8. Property records including documents related to the purchase and sale of real estate;

9. Records of mailbox or drop box rentals;

10. Records of storage rentals;

11. Rental or lease agreements of real property, autos, electronics, equipment, and machinery;

12. As used above, the terms records, documents, or statements include records, documents, or statements created, modified, or stored in any form.

13. In searching for data capable of being read, stored or interpreted by a computer, law enforcement personnel executing this search warrant will employ the following procedure:

a. Upon securing the premises, law enforcement personnel trained in searching and seizing computer data (the "computer personnel") will make an initial review of any computer equipment and storage devices to determine whether these items can be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve the data.

b. If the computer equipment and storage devices cannot be searched on-site in a reasonable amount of time, then the computer personnel will determine whether it is practical to copy the data during the execution of the search in a reasonable amount of time without jeopardizing the ability to preserve the data.

c. If the computer personnel determine it is not practical to perform an on-site search or make an on-site copy of the data within a reasonable amount of time, then the computer equipment and storage devices will be seized and transported to an appropriate law enforcement laboratory for review. The computer equipment and storage devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized set forth herein.

d. In searching the data, the computer personnel may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted," "hidden" or encrypted data to

determine whether the data falls within the list of items to be seized as set forth herein.

e.  If the computer personnel determine that the data does not fall within any of the items to be seized pursuant to this warrant or is not otherwise legally seized, the government will return these items within a reasonable period of time not to exceed 60 days from the date of seizure unless further authorization is obtained from the court.

14. In order to search for data that is capable of being read or interpreted by a computer, law enforcement personnel will need to seize the following items, subject to the procedures set forth above:

a.  Any computer equipment and storage device capable of being used to commit, further or store evidence of the offense listed above;

b.  Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

c.  Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

d.  Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software;

e. Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

f. Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

g. Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH OF        )
                                      )
PREMISES KNOWN AS                     )
25758 SOUTH 201ST WEST AVENUE         )       CASE NO.
KELLYVILLE, OKLAHOMA                  )

**SEALED**

## UNITED STATES OF AMERICA'S RESPONSE TO MOVANT'S MOTION FOR COPY OF SWORN TESTIMONY, APPLICATION FOR SEARCH <u>WARRANT AND RETURN OF CERTAIN SEIZED ITEMS</u>

The United States, by its Assistant United States Attorney Melody Noble Nelson,

requests that the Court deny Movant's Motion, based on the following arguments and

authorities.

**I.     The Application for Search Warrant and Sworn Testimony in support of the Application should remained sealed.**

Movant, Lindsey Springer, requests release of all sworn testimony and the application

considered by this Court in issuing the search warrant served upon him at the property known

as "25758 South 201st West Avenue, Kellyville, Oklahoma". This information should not

be provided to Movant because the United States has a compelling government interest

justifying the sealing of the search warrant affidavits until the conclusion of the investigation.

"[There is] no right of access to search warrant materials while a pre-indictment

investigation is under way." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1211 (9th Cir.

1989). Although there is a common law right of access to court documents, this presumption

has not applied to materials properly under seal. *In the Matter of the Search of 1638 E. 2nd*

**EXHIBIT**

_____2_____

#215

*Street, Tulsa Oklahoma v. United States*, 993 F.3d 773, 775 (10th Cir. 1993) (internal citations omitted.) "[T]here is no right of access to documents which have traditionally been kept secret for important policy reasons." *Times Mirror Co.* at 873 F.2d 1219.

This search warrant was issued only after an ex parte application by the Government and in camera consideration by this Court. This Court determined sufficient reason existed to keep the warrant materials under seal. "The process of disclosing information to a neutral magistrate to obtain a search warrant [therefore] has always been considered an extension of the criminal investigation itself. It follows that the information disclosed to the magistrate in support of the warrant request is entitled to the same confidentiality accorded to other aspects of the criminal investigation." *Times Mirror Co.*, 873 F.2d at 1214. The Court, in *Times Mirror Co.*, recognized the importance that search warrant materials remain inaccessible while a pre-indictment investigation is ongoing. *See, Matter of the Search of Flower Aviation of Kansas, Inc.* 789 F. Supp. 366, 368 (D.Kan. 1992).

Often, a party providing information for an affidavit for a search warrant is protected by the "informer's privilege". Under this privilege, "the state is normally entitled to refuse to disclose the identity of the person who has furnished information relating to an investigation of a possible violation of law." *Hoffman v. Reali*, 973 F.2d 980, 987 (1st Cir. 1992). However, this privilege is not absolute. If the party seeking disclosure makes a proper showing of need, the privilege will give way. It will yield when " the identification of the informant or of a communication is essential to a balanced measure of the issues and

2

the fair administration of justice. The party opposing the privilege may overcome it upon showing his need for the information outweighs the government's entitlement to the privilege." *Doe v. Local 1942, IBEW*, 870 F.2d 368, 372-73 (7th Cir. 1989).

Movant has not established that his need for the affidavit or for sworn testimony is essential to fair justice. As of the date of this Response, Movant is not the subject of a criminal indictment. At this early stage of the investigation, the Government's need to protect informers outweighs Movant's need for the information. The informers' privilege is stronger since Movant's motion is civil in nature and the constitutional guarantees assured to criminal defendants are inapplicable. *See, Matter of Search of 1638 E. 2nd Street, Tulsa, Okl.*, 993 F.2d 773,775 (10th Cir. 1993) citing *Doe*, 870 F.2d at 372.

Movant has failed to allege any facts that would warrant unsealing the affidavit in a ongoing investigation case where the government is asserting an informer privilege.

## II. Movant is not entitled to the return of the cash and car title seized during the execution of the search warrant.

Movant has requested this Court order the Government return cash and a car title seized pursuant to the search warrant executed at his property. Requests for return of property taken pursuant a search warrant are governed by FED. R. CRIM. P. 41(g). Rule 41(g) provides,

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose

3

reasonable conditions to protect access to the property and its use in later proceedings.

Actions for return of property are governed by equitable principles which should be undertaken with "caution and restraint." *Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir. 1988).[1]   Therefore, a district court may assume jurisdiction over a preindictment Rule 41(g) motion if a movant demonstrates that being deprived of actual possession of the seized property causes irreparable injury and must be otherwise without adequate remedy at law. *Floyd* at 860 F.2d 1003.   However, "the mere threat of imminent indictment does not establish irreparable injury as required for a motion under Rule 41(e)." *Blinder , Robinson & Co. v. United States (In re Matter of Search of 6455 South Yosemite, Englewood, Colo.)*, 897 F.2d 1549, 1557 (10th Cir. 1990).

Movant fails to establish that he will be irreparably harmed if the money and title are not returned to him immediately.   In addition, this evidence is needed to continue the investigation.

The elements of 26 U.S.C. § 7201 are 1) the existence of a tax deficiency, 2) an affirmative act constituting an evasion or attempted evasion of the tax, and 3) the defendant acted willfully. *United States v. Townsend*, 31 F.3d 262, 266 (5th Cir. 1994) citing *Sansone v. United States* 380 U.S. 343, 351 (1965), *United States v. Wisenbaker*, 14 F.3d 1022, 1024

---

[1]Effective December 1, 2002, Rule 41 was amended and reorganized.  What was formerly Rule 41(e) was changed to Rule 41(g) with minor stylistic changes.  Most of the cases cited by the Government were decided prior to the amendment and reorganization.  Therefore, the cited opinions will refer to Rule 41(e) instead of Rule 41(g).

(5th Cir. 1994).  Dealing in cash has been held as evidence of an affirmative act for purposes

of tax evasion, 26 U.S.C. § 7201.  *See, United States v. Daniel*, 956 F.2d 540, 543 (6th Cir.

1992).  Therefore, the cash seized from Movant's home may constitute evidence should the

Government file criminal charges against Movant.

Movant requests his car title be returned.  However, Movant has failed to allege how

the Government's retention of his car title will cause him irreparable harm.  Movant currently

has four automobiles and two motor homes in his possession, therefore, he will have

transportation even if he does not have the original title to his new Lexus automobile.

In addition, evidence that shows any act taken by Movant in order to mislead or

conceal funds from the Government to avoid paying taxes could be used as an affirmative

act constituting evasion.  *See, United States v. Voigt*, 89 F.3d 1050, 1090 (3rd Cir. 1996).

Accordingly, the title of Movant's recent car purchase is important as potential evidence

should the Government file charges.

Movant has not established that he will be irreparably harmed if his cash and car title

are not returned to him.  Further, the cash and car title are needed in the event the

Government files criminal charges in this case.  Therefore, the Government requests the

Court deny his request for return of his property.

## Conclusion

Movant is not entitled to the affidavit and sworn statements in support of search

warrant sealed by this Court.  The Government's interest in its ongoing investigation and the

protection of its informants outweigh Movant's interest in the affidavit and sworn statements

in support of search warrant.

In addition, Movant has failed to establish irreparable harm if his cash and car title are

not returned.  Therefore, his Motion for return of these items should be denied.

Respectfully submitted,

DAVID E. O'MEILIA
United States Attorney

MELODY NOBLE NELSON, OBA #16467
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119-1013
(918)382-2700

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th  day of October, 2005, I served the foregoing
document by postage paid U.S. Mail, who are not registered participants of the ECF
System:

Lindsey K. Springer
5147 South Harvard, #116
Tulsa, Oklahoma 74135

MELODY NOBLE NELSON

Received

OCT 3 1 2005

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

In the Matter of the Search of

SEALED   Case No.

"Premises known as
25758 South 201st West Avenue
Kellyville, Oklahoma"

)
)
)
)
)

[UNDER SEAL]



### ORDER

Movant's Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance

of Search Warrant (2) The Application for the Search Warrant and (3) Return of Certain

Property Either Not Items Listed in Search Warrant or Clearly Not Subject to Seizure, is

before the Court for consideration.  The motion concerns a search warrant issued in an on-

going criminal investigation.  The application for the warrant and the affidavit in support of

the application were ordered sealed by the Court.

Movant asserts that the warrant was served on him at the address listed on the

warrant and that he was provided with an inventory of the items seized pursuant to the

warrant.  Movant contends he is entitled to the application for the warrant and the sworn

testimony the Court considered in issuing the warrant because without that information the

warrant violates Movant's Fourth Amendment rights and also because he needs the

information to determine if items outside the scope of the warrant were seized.  Movant

also contends that there was no basis for the seizure of currency and car title(s) and seeks

their return.

Initially the Court notes that Movant's motion fails to establish his lawful personal

interest in the property searched or the items seized which provides an independent basis

to deny the motion.  Even assuming that Movant has a lawful personal interest, the law

EXHIBIT

3

does not support the relief requested. There is no right to access to the application or affidavit in support of a search warrant during an on-going investigation. *Matter of Search of 1638 E. 2nd Street, Tulsa, Okl.*, 993 F.2d 773 (10th Cir. 1993); *Times Mirror Co. v. U.S.*, 873 F.2d 1210 (9th Cir. 1989). If the investigation results in a criminal prosecution, access to those materials may be sought in those proceedings. Movant's motion is DENIED as to (1)Copy of All Sworn Testimony Court Considered in Issuance of Search Warrant, and (2) The Application for the Search Warrant.

Movant's request for the return of the seized currency and car title(s) is also insufficient. Such motions are best deferred until the completion of the criminal investigation unless irreparable harm will occur during the delay. *First Nat. Bank of Tulsa v. U.S. Dept. of Justice*, 965 F.2d 217 (10th Cir. 1989). Here, Movant has not only failed to establish his lawful personal interest in the seized items, he has also failed to establish irreparable harm. The motion for the return of the currency and the car title(s) is, therefore, DENIED WITHOUT PREJUDICE.[1]

SO ORDERED this 28th day of October, 2005.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

---

[1] If any subsequent proceedings arise concerning the currency or car title(s) the Government should address why its interests would not be fully met by making copies of the items for use in its investigation and returning these apparently non-contraband items to the lawful owner.

2

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

In the Matter of the Search of        )
                                       )   Case No.
"Premises known as                     )
25758 South 201st West Avenue          )
Kellyville, Oklahoma"                  )   [UNDER SEAL]

## ORDER

The Motion to Unseal Documents [Dkt. 285] filed by the United States is before the

Court for decision.  A response to the motion [Dkt. 286] was filed by Mr. Lindsey Springer.

The motion requests that the Court unseal: Movant's Motion for (1) Copy of All Sworn

Testimony Court Considered in Issuance of Search Warrant (2) the Application for the

Search Warrant and (3) Return of Certain Property Either Not Items Listed in Search

Warrant or Clearly Not Subject to Seizure [Dkt. 198]; the United States of America's

Response to Movant's Motion for Copy of Sworn Testimony, Application for Search

Warrant and Return of Certain Seized Items [Dkt. 215]; and the Court's Order of October

28, 2005 [Dkt. 227], for use in a civil case, Case No. 06-CV-156-TCK-FHM.

After consideration of the papers on file, the Court concludes that the motion should

be granted as set forth herein.  The documents sought to be unsealed were served on the

United States and Mr. Springer so they are aware of the contents of those documents and

making the documents available for use in the pending civil case, No. 06-CV-156-TCK-

FHM, would not jeopardize any ongoing investigation.

The Court, therefore, GRANTS the United State's Motion to Unseal Documents [Dkt.

285] to the following extent:  Both the United States and Mr. Springer are hereby

authorized to publicly disclose, including public filings in Case No. 06-CV-156-TCK-FHM,

c/USA & Springer

the Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search

Warrant (2) the Application for the Search Warrant and (3) Return of Certain Property

Either Not Items Listed in Search Warrant or Clearly Not Subject to Seizure [Dkt. 198]; the

United States of America's Response to Movant's Motion for Copy of Sworn Testimony,

Application for Search Warrant and Return of Certain Seized Items [Dkt. 215]; and the

Court's Order of October 28, 2005 [Dkt. 227].

   The Court Clerk for the United States District Court for the Northern District of

Oklahoma is hereby authorized to provide to the United States and to Mr. Springer copies

of the Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search

Warrant (2) the Application for the Search Warrant and (3) Return of Certain Property

Either Not Items Listed in Search Warrant or Clearly Not Subject to Seizure [Dkt. 198]; the

United States of America's Response to Movant's Motion for Copy of Sworn Testimony,

Application for Search Warrant and Return of Certain Seized Items [Dkt. 215]; and the

Court's Order of October 28, 2005 [Dkt. 227]. The Court Clerk is also directed to provide

a copy of this Order to the United States and to Mr. Springer.

   However, the Court will not order the Court Clerk to unseal the documents in the

Court's filing system as the documents are filed in the general sealed grand jury file.

   SO ORDERED this _20th_ day of _JULY_ , 2006.


                              _Frank H. McCarthy_
                              FRANK H. McCARTHY
                              UNITED STATES MAGISTRATE JUDGE


2