1

1    IN THE UNITED STATES DISTRICT COURT FOR THE
           NORTHERN DISTRICT OF OKLAHOMA
2

3
     UNITED STATES OF AMERICA,          )
4                                       )
              Plaintiff,                )
5                                       )
     -vs-                               ) No. 08-CV-00278-TCK-PJC
6                                       )
     LINDSEY K. SPRINGER, et al.        )
7                                       )
              Defendants.               )
8

9

10          THE DEPOSITION OF DONNA MEADORS,

11   taken on behalf of the Defendants, pursuant to court

12   order and the following stipulations on April 9, 2009, at

13   1645 South 101st East Avenue, Tulsa, Oklahoma, before me,

14   Greg Eustice, Certified Shorthand Reporter in and for the

15   State of Oklahoma.

16

17          A P P E A R A N C E S

18   For the Plaintiff:     Mr. James C. Strong
                         Department of Justice
19                         Tax Division
                         P.O. Box 7238
20                         Ben Franklin Station
                         Washington, D.C.  20044

21

For the Defendants
22    pro se:          Mr. Lindsey K. Springer
                       5147 South Harvard, Suite 116
23                     Tulsa, Oklahoma   74135

24

25

EUSTICE REPORTING SERVICE
BOX 700488  TULSA, OK 74170  (918)445-2965

2

1               C O N T E N T S
                      PAGE
2
        Defendant's Exhibit No. 13 . . . . . . . 8,9,10,12,13
3                       17,20,26,39

4    Defendant's Exhibit No. 41 . . . . . . . 39
        Defendant's Exhibit No. 42 . . . . . . . 39
5

6               S T I P U L A T I O N S

7          It is stipulated and agreed by and between the

8    parties hereto that the deposition is taken pursuant to

9    court order, and that the same is to be taken at this

10    time and place.

11          It is further stipulated and agreed that the

12    deposition is taken pursuant to the Federal Rules of

13    Civil Procedure.

14

15

16          MR. SPRINGER:  We're here today in United

17    States of America versus Lindsey K. Springer, et al.

18    Case Number 08-278.  And Mrs. Meadors -- Mr. Strong is

19    here to the government, Lindsey Springer here speaking.

20               DONNA MEADORS,

21    being first duly sworn to testify the truth, the whole

22    truth and nothing but the truth, testified as follows:

23              DIRECT EXAMINATION

24    BY MR. SPRINGER:

25    Q    Mrs. Meadors, would you please enter your official

3

1    name for the record.

2  A  Donna Meadors.

3  Q  Mrs. Meadors, has anybody prepared you for the

4    deposition that you're giving here today?

5  A  I briefly met with Mr. Strong this morning.

6  Q  Other than that, has anybody talked to you about

7    O8-278, the case I just identified?

8  A  No.

9  Q  Okay.  Bear with me on this.  Have you heard the

10    name Lindsey Springer before you spoke with Mr.

11    Strong today?

12  A  Yes.

13  Q  And could you give just a brief history of your

14    employment with the IRS?

15  A  I started to work for the IRS in February of 1991 as

16    a revenue agent and I became a special agent with

17    the IRS in July of 2005.  And I'm currently employed

18    as a special agent.

19  Q  It was true that one the requirements of being a

20    special agent you had to become a CPA; is that true?

21   A   No.

22   Q   Did you have to become an accountant of some kind or

23       pass a certain test?

24   A   No.  I was not required to.

25   Q   Was that a requirement in past CID agents?

4

1   A   It's a requirement for some.  It depends on GPA in

2       college, work experience.  It just depends on --

3   Q   So your connection of becoming a special agent was

4       unrelated to whether you became a CPA or not?

5   A   That's correct.

6   Q   You are a CPA though; isn't that true?

7   A   Yes.

8   Q   You became a CPA just prior to your employment as a

9       special agent 2004-2005?

10  A   I'm thinking it was '05.  I'm not positive.

11  Q   Now, as a revenue agent, you determine tax

12      liability; is that correct?  Prior to your job as a

13      special agent.

14  A   That was part of my responsibilities, yes.

15  Q   And are you familiar with tools that the IRS uses

16      like notice of deficiencies?  Have you ever heard

17      that phrase before?

18  A   I've heard of the phrase, yes.

19  Q   Have you ever been involved in the issuance of a

20      notice of deficiency?

21   A   No.

22   Q   Have you ever been involved in investigating tax

23        liabilities of taxpayers?

24   A   Yes.

25   Q   Is that a general job description of a revenue

5

1     agent?

2   A   General, but it entails a lot of other things.

3   Q   Revenue agents do not collect taxes; isn't that

4     true?

5   A   We can or they can.

6   Q   They can.  They can receiver it, but --

7     (Interrupted)

8   A   Correct.

9   Q   -- they can't go out and enforce collection, right?

10   A   Correct.

11   Q   Revenue officers do the enforcement; is that true?

12   A   Correct.

13   Q   Now, you were with the IRS prior to the Reform and

14     Restructuring Act of 1998; isn't that true?

15   A   Yes.

16   Q   Prior to that time period did you work in the

17     Oklahoma/Arkansas Internal Revenue District?

18   A   Yes.

19   Q   And where were you located out of, let's say, in

20     that Internal Revenue district?

21   A   I have always been in the Tulsa, Oklahoma office.

22   Q   Have you ever worked out of Muskogee before?

23   A   I have worked in Muskogee, but my assignment has

24       always been in Tulsa, Oklahoma except for my

25       training time to become a special agent.

6

1    Q    And do you still as a special agent to this day work

2          out of Tulsa, Oklahoma?

3    A    Yes, that's my posted -- (Interrupted)

4    Q    That's your posted duty.  In 1999, if you are

5          familiar, were Internal Revenue districts and

6          district directors done away with as far as you

7          know?

8    A    I don't remember when that happened, but I know

9          there's no longer the title of district director.

10   Q    And is there no longer a title of Internal Revenue

11         district if you know?

12   A    That's correct.  I know in CI we're field offices.

13         I'm not sure what the term is on the civil side any

14         longer.

15   Q    Your field office in Tulsa, Oklahoma?

16   A    The field office is the Dallas field office.

17   Q    How is Tulsa related to the field office?  How does

18         Tulsa fall into -- under a field office like Dallas?

19   A    Posted duty within the field office.

20   Q    Do you remember the first time you ever heard the

21      name Lindsey Springer?

22  A   No.

23  Q   Is it safe to say you've heard it many times?

24  A   Yes.

25  Q   Do you remember the first time you ever looked and

EUSTICE REPORTING SERVICE
BOX 700488  TULSA, OK 74170  (918)445-2965

7

1     saw Lindsey Springer physically?  Do you remember

2     where that was?

3   A   No.

4   Q   Could it have been at a criminal trial?

5   A   It could have been, but I don't remember when the

6     actual first time was.

7   Q   Okay.  At some point in time prior to you becoming a

8     special agent but after the Reform and Restructuring

9     Act of 1998 was enacted, were you assigned to

10     perform an investigation on Lindsey Springer?

11   A   I don't remember the exact date.  I do know it was

12     prior to me becoming a special agent.

13   Q   Would it be safe to say that Lindsey Springer was

14     your last assignment as a revenue agent?

15   A   No, I can't say that that was.

16   Q   Do you ever remember telling Lindsey Springer that?

17   A   I don't remember that.

18   Q   Is it true though you became a special agent in July

19     of 2005?

20   A   That's when I was sent to training, yes.

21   Q   Now, to become a special agent you had to apply for

22        that position?

23   A   Yes.

24   Q   And when did you apply for that position if you

25        remember?

8

1    A   I applied twice.  I know one time -- I don't

2        remember the dates.

3    Q   Do you remember how long it took you to become

4        approved to be a special agent?

5    A   Awhile.

6    Q   Awhile.  Could that be two years?

7    A   I don't know.  I can't --

8    Q   Okay.  More than a year?

9    A   I just -- I can't remember.

10   Q   Didn't happen the second day after you --

11       (Interrupted)

12   A   It did not.

13   Q   So we got a good span there?

14   A   Yes.

15   Q   I'm going to present to you what's been marked as

16       Defendant's Exhibit No. 13 and I'm going to ask you

17       if you've ever seen that Defendant's Exhibit No. 13

18       before.  I'll note that there are two pages to

19       Defendant's Exhibit No. 13, so I'm going to be

20       asking you questions about both documents.  Have you

21      seen either of those two documents as Defendant's

22      Exhibit No. 13?

23  A   Yes.

24  Q   Do you recognize the signature on both of the

25      documents?

9

1    A   Yes.

2    Q   And whose signature is that?

3    A   That is my signature.

4    Q   All right.  Did you -- dealing with page one, on

5        January 26th, 2004 do you remember whether or not

6        you sent this letter that has your signature on it

7        to Lindsey Springer?

8    A   Yes.

9    Q   And can you tell the court why you sent this letter

10       of January 26th, 2004, page one of Defendant's

11       Exhibit No. 13, to Lindsey Springer?

12   A   As it indicates in the letter, I was initiating

13       what's called a 6700 Investigation on Lindsey

14       Springer.

15   Q   All right.  And could you tell the court what a 6700

16       Investigation is?

17   A   It's been awhile.  But 6700 -- my job in these types

18       of investigations was to determine whether or not in

19       this case Mr. Springer was promoting, I don't know

20       the exact terminology, but any anti-tax sort of by

21     selling pamphlets or cassette tapes or video tapes

22     or by promoting in any way that type of

23     investigation.

24  Q   The language in your letter used the word promoting

25     abusive tax shelters?

10

1   A   Yes.

2   Q   Is that an accurate description of what your 6700 --

3       Defendant's Exhibit No. 13?

4   A   It says a tax shelter promotion.

5   Q   Right.

6   A   There it is.  That's it.  Yes.

7   Q   Then doesn't the letter also go on to say -- let's

8       just start at the top.  We have received certain

9       material with respect to your tax shelter program or

10      promotion?

11          MR. STRONG:  I think -- (Interrupted)

12  A   Reviewed.

13  Q   (By Mr. Springer) I'm sorry.  Reviewed certain

14      material with respect to your tax shelter promotion?

15  A   Yes.

16  Q   Now, does that mean that you actually have some

17      information, documentation, that Lindsey Springer

18      was actually selling a tax shelter program?

19  A   I don't remember what I had that initiated the

20      investigation.  I know there was something.  I had

21      some sort of file that had information related to

22      Lindsey Springer and a tax shelter, so the object

23      was to determine if that was being promoted by --

24      (Interrupted)

25   Q   Do you remember if it was a tape for sale on the

11

1       internet from 1995?

2    A   I remember having some tapes.  I don't remember

3        anything about them being for sale on the internet.

4        But I did have some tapes, yes.

5    Q   You did also have numerous tapes with Lindsey

6        Springer's voice on it, did you not?

7    A   Yes.

8    Q   And as part of your assignment you were to listen to

9        those tapes to see or determine whether or not there

10       were any offers or promotions being made within

11       those tapes?

12   A   Yes.  Promotions within the 6700 -- (Interrupted)

13   Q   Right.  And did you ever discover any promotion in

14       any of those tapes of Lindsey Springer offering to

15       sell anything to anybody?

16   A   I did not -- there were no violations of 6700.

17       There were no offers of him selling the video --

18       (Interrupted)

19   Q   Tax shelters, and -- okay.  Now, it says here we are

20       considering possible action under Section 6700 and

21      7408.  Have you ever read either of those two

22      sections before?

23   A   Not out of the code book, no.  I know I saw portions

24      or all of them at a training at some point, but I

25      don't know if I read all of them.

12

1    Q    What about in the Internal Revenue Manual, would you

2         use that as a source guide for --

3    A    Yes, but I don't remember if I specifically

4         researched the manual for these two sections.

5    Q    And in your investigation of Lindsey Springer did

6         you have occasion to call a witness by the name of

7         Robert D. Metcalf?

8    A    I remember speaking with Mr. Metcalf, but I don't

9         remember anything about the conversation.

10   Q    Would you have kept notes on -- go back here a

11        second.  In your investigation, part of your

12        investigation was to send Defendant's Exhibit No. 13

13        to Lindsey Springer; isn't that true?

14   A    Yes.

15   Q    And isn't this your attempt to -- Defendant's

16        Exhibit No. 13, isn't this letter your attempt to

17        get me to cooperate with you in a 6700

18        Investigation?

19   A    It's to notify you of the investigation and to get

20        your cooperation, yes.

21   Q   And along with your letter did you also send a

22       summons?

23   A   I don't remember.  It does not say that it was

24       enclosed with this letter.

25   Q   That's right.  So, when you sent this letter out,

13

1    did Lindsey Springer respond to your letter?

2  A  Yes.

3  Q  And would you have made records of any responses

4    that Lindsey Springer gave you?

5  A  Yes.

6  Q  Would you have also been actively involved in making

7    notations in an ICS history transcript?

8  A  No.  ICS is collection.

9  Q  Okay.  So is it safe to say that anything that would

10    be written in the ICS transcript that purports to be

11    by you was not written by you?

12  A  I've never had access to the ICS system.

13  Q  Never.  On Defendant's Exhibit No. 13 it says

14    Lindsey Springer and then 5147 South Harvard, Number

15    116 Tulsa, Oklahoma 74135.  That is your writing, is

16    it not?  You typed that in on that document?

17  A  Yes.

18  Q  And prior to this document of January 26th, 2004 had

19    you ever received any documents or any communication

20    directly with Lindsey Springer?

21   A   Not that I can remember.

22   Q   Okay.  And when you prepared this Defendant's

23       Exhibit No. 13 which is letter 1844 dash -- it's 9

24       of '83.  I don't know what that means.  But when you

25       did that, it was a blank piece of paper and you were

14

1    the one that typed in all the pertinent information,

2    if you remember?

3  A   I don't remember.  I know I would have typed in the

4    name, the date and my information.

5  Q   Would you have typed in the address?

6  A   Yes.

7  Q   In deciding to send this letter, where would you

8    have obtained the address to put on this letter?

9    How would you have obtained that?

10  A   I do not remember.

11  Q   What are the -- so you were a revenue agent for 14

12    years?

13  A   Yes.

14  Q   So, in your training if you needed to contact a

15    taxpayer where would you go look to see what their

16    address was?

17  A   Normally cases are sent to us from wherever with

18    certain information already in them and the address

19    is generally already included with that.

20  Q   Okay.  So the choice of the address that was on your

21      exhibit here was something that you were told that

22      was the address to communicate with Lindsey Springer

23      on; is that true?

24   A   No, I can't say that that's true.  I may have had to

25      look it up myself if it wasn't in the material, but

15

1      I just don't remember.

2   Q   Did you ever have any problems with that address?

3   A   Problems?

4   Q   Yes.  Did the address work for what you were trying

5      to accomplish?

6   A   The mail was received at that address, yes.

7   Q   Did you send it certified?

8   A   I don't remember.

9   Q   A 6700 Investigation, was that something that you

10     were a specialist in?

11  A   I was assigned for a short period of time to work

12     those type of investigations.

13  Q   Is that the last assignment you had before you

14     became a CI?

15  A   No.

16  Q   So after you finished the investigation on Lindsey

17     Springer you still did other jobs besides 6700?

18  A   Even at the same time that I was doing this

19     investigation I was still doing other assignments.

20  Q   How many 6700 Investigations have you done for the

21      IRS?

22   A   I don't remember.

23   Q   A lot?

24   A   Not a lot.  It was a very short assignment.

25   Q   Had you had specialized training in that?

16

1    A    I remember attending a class, yes, a short.  I don't

2         remember if it was one or two weeks.

3    Q    If I said to you last known address, does that mean

4         anything to you?

5    A    It can mean last known physical address, last known

6         mail address.  It can mean different things.

7    Q    But you are required, are you not, any time

8         communicating with a taxpayer to use their last

9         known address; isn't that true?

10   A    Not any time.  Sometimes if we know -- if we have a

11        last known address but we know that to be incorrect

12        we can send things to two different places at once.

13   Q    Call that a whipsaw?

14   A    I have no idea what it's called.

15   Q    Do you remember Lindsey Springer agreeing to

16        participate in helping you gather the information

17        that you were looking for in your 6700

18        Investigation?

19   A    Yes.

20   Q    Do you remember Lindsey Springer offering you names

21      and contact information as you requested?

22   A   Yes.

23   Q   Do you remember sending summonses out in regard to

24      the 6700 Investigation?

25   A   I don't remember specifically sending summonses, but

17

1      I could have.

2    Q    When you do a 6700 Investigation, you look for

3         information to determine whether somebody in this

4         particular instance had bought -- purchased

5         something from Lindsey Springer; isn't that true?

6    A    Yes.  Purchased one of the items that would violate

7         -- (Interrupted)

8    Q    Right.

9    A    -- 6700.

10   Q    And page two of Defendant's Exhibit No. 13 also uses

11        the same address except with a different Zip Code.

12        Do you see that?

13   A    Yes.

14   Q    Do you know why that Zip Code is different?

15   A    I do not.

16   Q    You do agree that's your signature on the second

17        page?

18   A    Yes.

19   Q    And this document, second page of Defendant's

20        Exhibit No. 13, was dated December 2nd, 2004?

21   A   Yes.

22   Q   So is it safe to say from January 26th, 2004 until

23       December 2nd, 2004 the last known address that the

24       IRS had on file that you were using was 5147 South

25       Harvard Suite 116 Tulsa, Oklahoma?

18

1    MR. STRONG:  Objection.  Calls for a legal

2    conclusion.

3  Q   (By Mr. Springer) That's the only address you used;

4    isn't that true?

5  A   It's the address on the letters, yes.

6  Q   Is there any other address that you know of that you

7    used during the 6700 Investigation of Lindsey

8    Springer?

9  A   Not that I know of.

10  Q   I'm going to read something to you and I'm going to

11    ask you if this refreshes your memory.  Met with

12    R.A. She advised that taxpayer uses name Bondage

13    Breakers and admits that he and Bondage Breakers are

14    one in the same.  Has no income and relies strictly

15    on gift donations and has no reportable income.  Do

16    you remember saying that to anybody?

17  A   I don't remember saying it.

18  Q   Okay.  Do you remember saying he does not promote

19    tax avoidance schemes.  He travels around the

20    country helping in legal research and providing

21     attorney support for various court case types, not

22     limited to only tax court cases?

23  A   I don't remember saying that.

24  Q   He lives off of gifts and donations.  Do you

25     remember saying that?

19

1   A   Not in that particular instance.

2   Q   The ICS address is incorrect and he lives in Kiefer

3       area and uses a PO box drop.  Do you remember saying

4       that?

5   A   No.

6   Q   Which she will provide me with this week.  Do you

7       remember saying that?

8   A   No.

9   Q   House is held in a trust and located in the Kiefer

10      area.  Do you remember saying that?

11  A   No.

12  Q   CI not interested because gifts are not taxable

13      income.  Do you remember that?

14  A   No.

15  Q   He uses checks, cashier's, and has a cash -- check

16      cashers and has no bank account.  Do you remember

17      saying?

18  A   No.

19  Q   Estate and gift attorney looking at scenario, but

20      thus far has found nothing.  Did you ever have any

21      conversation with anybody about that?

22   A   About -- say that part -- (Interrupted)

23   Q   About estate and gift attorney looking at scenario,

24      but thus far have found nothing.

25   A   I don't remember.

20

1    Q    R.A. has found nothing to indicate he promotes tax

2         avoidance schemes.  Do you remember saying that?

3    A    No.

4    Q    But it's true, right?  You never found anything that

5         I was -- Lindsey Springer was promoting as a tax

6         avoidance scheme?

7         MR. STRONG:  What is true?

8    Q    (By Mr. Springer) What I'm reading to you is:  R.A.

9         has found nothing to indicate he promotes tax

10        voidance schemes.  You said you don't remember

11        saying that?

12   A    That's indicated.  I don't remember saying it, but

13        it is indicated in the second page of Exhibit 13.

14   Q    During the time that you were doing a 6700

15        Investigation, did Lindsey Springer meet you at this

16        same building that we're in today?

17   A    Yes.

18   Q    And did you summons him to appear for that?

19   A    I don't remember.

20   Q    Did he willingly answer your questions?

21    A    Yes.

22    Q    Was there anybody else at that meeting besides you?

23    A    My recollection is two meetings, one with Lindsey

24         Springer and myself and another one with my manager,

25         Mike Gregory.

21

1    Q    Mr. Gregory, he's out of Oklahoma City?

2    A    Yes.  My manager at the time.

3    Q    At the time.  Now, is Mr. Gregory the person who

4         assigned you to the 6700 case if you remember?

5    A    I cannot remember if those were assigned through the

6         manager or if they came from another source.  I

7         can't remember that.

8    Q    All right.  At the same time that you were assigned

9         to this case with Lindsey Springer you were also

10        involved in a case involving Eddie and Judy

11        Patterson; do you remember that?

12   A    I don't remember if it was at the same time.

13   Q    Do you remember having a conversation with me --

14        with Lindsey Springer telling Lindsey Springer that

15        you waited until after the trial was over to make

16        contact with Lindsey Springer if you remember?

17        MR. STRONG:  Objection.  Calls for information

18        concerning a criminal case.

19        MR. SPRINGER:  It's fine.  It's not a criminal

20        case.  It's over.  I'm asking you a specific

21      question outside of that question.

22          MR. STRONG:  Instruct the witness not to

23      answer.

24          MR. SPRINGER:  I can call Judge Cleary if you

25      want, but I'm not going into the criminal case.  I'm

22

1   staying outside of it.  I'm laying a foundation for

2   my questions that has nothing to do with Mr.

3   Patterson's criminal case.

4       MR. STRONG:  Calling for information.  Let's

5   hear your question one more time.

6   Q   (By Mr. Springer) Okay.  Do you remember telling

7   Lindsey Springer that because of a Patterson case

8   that you were involved in in dealing with tax return

9   preparation that you waited till after the trial was

10   over to send this January 26th, 2004 letter to

11   Lindsey Springer on the 6700 Investigation?

12       MR. STRONG:  Go ahead.

13   A   I don't remember saying the exact thing that you

14   just said, but I remember a conversation to that

15   effect, yes.

16   Q   (By Mr. Springer) Would it be safe to say that you

17   were assigned to do a 6700 Investigation on Lindsey

18   Springer prior to the trial of the Pattersons and

19   that you waited until after the trial?

20   A   I can't say that it was assigned to me prior to that

21      being concluded, but I knew it was coming.  I don't

22      know if it was officially assigned yet.

23   Q   And in the Patterson case you worked with a -- your

24      civil, right?  You're not a criminal investigator,

25      isn't that true, at this time?

23

1    A   At the time -- (Interrupted)

2    Q   At the time of the Patterson case?

3    A   Yes.

4    Q   Because that would have been prior to July of 2005,

5        best of your knowledge?

6    A   Yes.

7    Q   But you did work side by side with criminal

8        investigators, did you not?

9    A   Yes.

10   Q   At the time of the Patterson case and prior to you

11       issuing the 6700 Investigation letter to Lindsey

12       Springer, had you already applied for CI position?

13       Time frame -- I'll give you that -- would be the

14       date of your letter, January 26th, 2004.

15   A   Yes.

16   Q   You mentioned earlier that you had been turned down

17       the first time, but you got approved the second

18       time; is that true?

19   A   Correct.

20   Q   Is there written documents to that effect?

21   A   Somewhere.

22   Q   Do you remember when you and I sat down in this

23        building and we started going over certain people's

24        names?  Do you remember having discussions about

25        people's names when you and I met; do you remember

24

1    that?

2    A   Yes.

3    Q   Do you remember when we got to Mr. Patterson we

4        didn't have a discussion about that; do you remember

5        that?

6    A   I don't remember that.

7    Q   Do you remember whether or not you were assigned a

8        6700 Investigation based upon Doug Horn and Melody

9        Noble Nelson?

10   A   No, I was not.

11   Q   No, you were not.  And at no time did either of them

12       have anything to do with your 6700 assignment of

13       Lindsey Springer?

14   A   They did not have anything to do with it.

15   Q   But you don't know whether Mr. Gregory assigned

16       you -- can you find out who assigned you?

17   A   It would have come through him, but I just can't

18       remember on that program if it would have -- I just

19       don't remember how that process worked.

20   Q   Okay.  At the time you were doing your 6700

21      Investigation were you also working with criminal

22      investigation division involving an investigation of

23      Lindsey Springer?

24   A   No.

25   Q   Had you ever made any comment to anybody that CI was

25

1    not interested at that time of your 6700

2    Investigation letter, January 26th, 2004?  Had you

3    ever made any comment to anybody that CI was not

4    interested in investigating Lindsey Springer?

5  A   I don't remember making that comment.

6  Q   Do you remember working with a man in the Patterson

7    case who was a CI agent?  And I believe his name

8    started with an A?

9        MR. STRONG:  Objection.

10        MR. SPRINGER:  Only because of this document,

11    not because of that case.  I'm not going into that

12    case.

13        MR. STRONG:  What document?  We haven't seen a

14    document yet.

15        MR. SPRINGER:  Well, she hasn't testified that

16    she knows anything about it yet, so I'm working on

17    it.

18  Q   (By Mr. Springer) I'm not asking you to give me any

19    information about a criminal investigation that you

20    are involved in currently or you were ever involved

21      in currently other than as it relates to Lindsey

22      Springer and your involvement of a 6700 case.  Do

23      not answer my question on anything other than that.

24          MR. STRONG:  You asked a question regarding her

25      involvement with criminal -- CID on the Patterson

EUSTICE REPORTING SERVICE
BOX 700488  TULSA, OK 74170  (918)445-2965

26

1    case.

2        MR. SPRINGER:  Right.  Because she said she had

3    not worked with a CI in this case and she also said

4    that Melody Nelson and Douglas Horn did not appoint

5    her or assign her on anything to do with her doing a

6    6700 Investigation with me.  But she's also said she

7    doesn't know who actually assigned her.  And so, I

8    have a right to ask who assigned her and I'm trying

9    to -- (Interrupted)

10       MR. STRONG:  You've already asked that question

11    though.  Now you're asking her whether she's worked

12    with CI on the Patterson case -- (Interrupted)

13       MR. SPRINGER:  All right.  So we'll go --

14    (Interrupted)

15       MR. STRONG:  -- ask her not to answer that.

16       MR. SPRINGER:  We'll go a different way.

17  Q    (By Mr. Springer) Prior to December 2nd, 2004 when

18    you issued page two of Defendant's Exhibit No. 13,

19    have you ever shared any of the information that you

20    received from Lindsey Springer with any criminal or

21      civil investigation of the IRS?

22          MR. STRONG:  I'm going to object on the basis

23      of law enforcement privilege as it goes to if she

24      shared any information with the criminal

25      investigation division and instruct her not to

27

1    answer.

2         MR. SPRINGER:  I'm not asking her what she

3    shared with criminal investigation, I'm asking her

4    did she.

5         MR. STRONG:  I'm instructing the witness not to

6    answer based on my previous assertion of privilege.

7    Q   (By Mr. Springer) Do you remember having a

8    conversation with Lindsey Springer about if he was

9    to give you information involving your 6700

10    Investigation that you would not share that

11    information with -- and had nobody else assigned

12    with you and you would share it with nobody else; do

13    you remember that?

14    A   I don't remember that.

15    Q   Do you remember telling Lindsey Springer that you

16    were the only one assigned to his case?

17    A   I don't remember saying that.

18    Q   Do you remember having to tell Lindsey Springer that

19    there was a revenue officer assigned and that you

20    had forgot to tell him that?

21   A   No, I don't remember that.

22   Q   I'm going to read you something and see if you can

23        remember this:  Received message from R.A. Meadors

24        advising mailing address was 5147 South Harvard

25        Suite 107 which is a PO drop box.  Do you remember

28

1     saying that to anybody during your 6700

2     Investigation?

3  A   I don't remember saying it, no.

4  Q   Do you remember telling somebody:  She is meeting

5     with coordinator in Oklahoma City this week and ask

6     that I not contact taxpayer until after her meeting

7     this week?

8  A   I don't remember saying that.

9  Q   Do you remember she advised the residence location

10     is in a file box and she will get with me this

11     Friday, 6-11, and provide the needed information.

12     Do you remember having any conversation with anybody

13     like that?

14  A   No.

15  Q   If you had had a conversation with somebody like

16     that, would you have kept notes about that?

17  A   Not necessarily.

18  Q   Received message from R.A. Meadors.  She had meeting

19     in Oklahoma City and has action plan on her case and

20     wants to discuss on Monday 6-21 with me as unable to

21      get back in office until then.  Do you remember

22      having an action plan with anybody on 6-18, 2004?

23   A   I don't remember having an action plan.

24   Q   Do you know what an action plan is?

25   A   An action plan can be a lot of different things.

29

1   Q   What would be involving a 6700 Investigation if you

2       know?

3   A   I don't know that.  I don't recall that specific

4       term as it relates to a 6700 Investigation.

5   Q   Okay.  She also has taxpayer's physical resident

6       address in Kiefer, Oklahoma and will provide at the

7       time.  She wants to discuss her plans prior to me

8       making any contact.  Do you remember making that

9       statement to anybody?

10  A   No.

11  Q   R.A. had left message 6-21-04 advising change in

12      plans and would not be in office until Thursday

13      6-24.  She will contact me then.  Do you know who

14      that would have been that you were saying you would

15      contact then if you remember?

16  A   No, I don't remember any of those conversations.

17  Q   Now, on 6-28, 2004 a person writes:  Met with R.A.

18      Meadors and obtained copy of interview report and

19      3164-P. To her knowledge he has no bank accounts.

20      Do you remember meeting with somebody?

21   A   I don't.

22   Q   Would you have a case history report that would say

23      who you met with on 6-28, 2004?

24   A   I wouldn't have it.

25   Q   Do you remember ever sitting down with anybody and

30

1    having a conversation about Lindsey Springer during

2    your 6700 Investigation?

3  A  I remember having conversations with my manager,

4    Mike Gregory.

5  Q  And that's it?

6  A  Yes.  I don't remember any other conversations.

7  Q  Did you ever have any conversation with a Fred Rice?

8  A  I have had conversations with Fred Rice.

9  Q  During the 6700 Investigation?

10  A  I don't remember that I did.  I'm not saying I

11    didn't.  I don't remember any of that.

12  Q  As a 6700 Investigating agent, would you have also

13    been working parallel with a revenue officer during

14    the entire 6700 Investigation?

15  A  It's possible, but I don't -- I don't recall that.

16  Q  Spoke with R.A. Meadors.  This is 7-12, 2004.  Spoke

17    with R.A. Meadors updating her on living conditions

18    in vehicles.  She would like me to take her to

19    taxpayer's residence as is difficult to find.  Did

20    anybody ever take you out to look at my house?

21    A    No, not then.

22    Q    At any time?

23    A    I have been by your house.

24    Q    At the time you were doing the 6700 Investigation?

25    A    Not that I can remember.

31

1  Q   So at 7-12, 2004 do you remember being -- asking

2      somebody to take you out to see my house?

3  A   I don't remember that.

4  Q   Now, what would have been -- if you wanted to see

5      Lindsey Springer's house, what would have been

6      relevant at his house to a 6700 Investigation?

7  A   I don't know.

8  Q   Reading again:  Spoke with R.A. Meadors.  She has

9      summons back approved and is issuing same on all the

10     known sources including the check cashing locations.

11     She wants copy of digital photos showing assets and

12     standard of living.  Why would you have wanted

13     digital photos of assets and standard of living?

14 A   I don't know.

15 Q   As a 6700 Investigation, would the IR Manual tell

16     you that you need to have that information?

17 A   I don't know.

18 Q   On 9-3, 2004 says:  CI requested copies of photos

19     made, copies on disks of the photos taken in

20     compatible format.  Would you know what disks and

21      what compatible format and what photos are being

22      referred to?

23   A   I have no idea.

24   Q   Did you ever look at any photos while you were doing

25      a 6700 Investigation?

32

1    A    Not that I can remember.

2    Q    CI, standard language in IRS terms is criminal

3         investigator?  Is that what you refer to yourself,

4         as a CI today?

5    A    I refer to myself as a special agent.

6    Q    Special agent.  Do you know what a CI is?

7    A    CI means criminal investigation.

8    Q    Provided photo disk to CI.  You did not input that

9         anywhere?

10   A    I have no idea.

11   Q    Met with Donna Meadors 9-8, 2004.  She is receiving

12        the summons information today and has meeting

13        scheduled at 9:30 with taxpayer.  I will be able to

14        be part of the interview process and make initial

15        contact.  Do you know who that would be?

16   A    Who who would be?

17   Q    I will be able to be part of the interview process

18        and make initial contact.

19   A    I don't.  I don't remember anyone else being

20        involved.

21   Q   I will be provided with copies of the summons

22        documents first thing tomorrow morning which will

23        allow me minimal time to review and develop

24        additional interview questions.  Reviewing file and

25        developing interview questions for tomorrow's

33

1      meeting.  Taxpayer has not filed a return since at

2      least 1990.  All balance dues are SFRs and Donna is

3      sure he will challenge the assessments.  Did you say

4      that to anybody?

5   A   I don't remember.

6   Q   Spoke with Donna Meadors.  She informed taxpayer of

7      my involvement and he was not happy about same.

8      Does that refresh your memory at all?

9   A   No.

10  Q   Not at all?

11  A   I don't remember those conversations at all.

12  Q   She also informed him that the summoned info would

13     be provided to me.  She is sending third party

14     contacts to all names uncovered to the summon

15     process and will be interviewing them.  She did not

16     go into my asset info.  She did advise me that I can

17     now contact taxpayer.  Do you know who you told that

18     to?

19  A   I don't.

20  Q   She further advised that they cannot make a promoter

21     case and unlikely that the third party interview

22     will change this.  Does that seem like something you

23     would have said?

24   A   I don't remember.

25   Q   We've mentioned Michael Gregory as your group

34

1    manager and we've mentioned Fred Rice as a

2    collection revenue officer?

3  A   Yes.

4  Q   Is there any other name that you know of that would

5    have been involved with you in the 6700

6    Investigation at the time that you conducted your

7    6700 Investigation of Lindsey Springer?

8  A   No other names that I can recall.

9  Q   Have you ever had a memory problem before?

10  A   That's five years ago.  I don't remember specifics

11    about a lot of the cases I worked that long ago.

12  Q   Does the IRS keep records because of that particular

13    reason where people can forget from one case to

14    another?

15  A   The IRS keeps records.  I don't know if that's the

16    reason why they keep them.

17  Q   Where would all of the records that you generated or

18    used or relied upon in entering your December 2nd,

19    2004 letter to Lindsey Springer at the Harvard

20    address, where would those records be maintained?

21   A   I have no idea.

22   Q   Can you tell me who your group manager was in 2004

23        besides Mr. Gregory?

24   A   It was Mr. Gregory.

25   Q   Mr. Gregory?

35

1   A   Yes.

2   Q   Okay.  Have you ever heard of a name David Reed?

3   A   Yes.

4   Q   What do you know about David Reed?

5   A   David Reed was a revenue officer and he was -- I

6       can't remember his exact title.

7   Q   Is he a civil/criminal coordinator now?

8   A   He's retired now.

9   Q   Was he a civil/criminal coordinator?

10  A   I don't know if that was the title.

11  Q   Was he out of Oklahoma City or Tulsa?

12  A   Oklahoma City.  But I have met with him in Tulsa.

13  Q   You have?

14  A   Yes.

15  Q   Would you ever have had occasion meet with him

16      during your 6700 Investigation of Lindsey Springer?

17  A   I don't remember.

18  Q   If Mr. Gregory brought you a file to do a 6700

19      Investigation on Lindsey Springer and you needed to

20      obtain a last known address of Lindsey Springer, and

21      you were a revenue agent since 1991, where would you

22      have looked within the IRS records to find a current

23      last known address of Lindsey Springer?

24   A   I don't know on the 6700 Investigation where I would

25      have looked.

36

1   Q   Have you ever heard of a master file before?

2   A   Yes.

3   Q   Would that be something -- you said earlier you

4      wouldn't have had access to the ICS history

5      transcript, but would you have access to the master

6      file?

7   A   At the time I would have had access to a system.  It

8      wasn't called the master file system.

9   Q   What was it called?

10   A   It was called the IDRS system.

11   Q   Now, you said earlier that the ICS history is for

12      revenue officers, right, collection?

13   A   Correct.

14   Q   Isn't it true when a 6700 Investigation is issued

15      that a revenue agent and a revenue officer work

16      together?

17   A   I don't remember that.

18   Q   Do you ever remember a 6700 Investigation where

19      there was no revenue officer assigned?

20   A   I don't remember on any of my 6700 Investigations if

21     I worked hand-in-hand with a revenue officer or not.

22   Q   If there was a policy or procedure -- scratch that.

23     If there was a revenue officer assigned to a 6700

24     Investigation along with you, would that be

25     something that Mr. Gregory would have done?

37

1   A   No.

2   Q   Who would have been assigning a revenue officer in

3       the event there would have been one assigned?

4   A   It would have been the revenue officer's manager.

5   Q   Revenue officer's manager.  And you do, again,

6       remember Fred Rice worked on this case, you just

7       don't remember -- excuse me.  Strike that.

8           Did you say that you had communicated with Fred

9       Rice before about your 6700 Investigation on Lindsey

10      Springer?

11  A   I don't remember that.

12  Q   Now, do you know where Fred Rice offices out of,

13      where his posted duty is?

14  A   I don't.

15  Q   If you had had any conversations with Mr. Rice,

16      would you have made a record of them somewhere?

17  A   I could have.

18  Q   If you did, would that be contained in the file?

19  A   It should be.

20  Q   And if you had a file and then you concluded an

21      investigation, what would you do with that file?

22   A   I would send it wherever it was supposed to go.

23   Q   In this case would you have sent it back to Mr.

24      Gregory, is it likely?

25   A   I don't remember in 6700 Investigations what the

38

1     actual process was.  He would have at one time seen

2     my file, but I don't remember if it would have been

3     closed to him.  I just -- (Interrupted)

4  Q   Would he have seen your file before you wrote your

5     final letter of December 22nd, 2004?

6  A   I don't know.

7  Q   Do you remember ever remember making any referrals

8     or reports against Lindsey Springer?

9  A   I believe there's a report at the end of a 6700

10    Investigation.

11 Q   Is that a report making any type of referrals if you

12    know?

13    MR. STRONG:  What do you mean by referrals?

14 Q   (By Mr. Springer) Any recommendations?

15    MR. STRONG:  What sort of recommendations?

16    MR. SPRINGER:  I'm asking her to answer that

17    question.  I don't know the answer to that question.

18 A   I don't know either.

19 Q   (By Mr. Springer) Okay.  Did you make a

20    determination, a civil determination, that Lindsey

21      Springer had failed to file tax returns?

22  A   As part of the 6700 Investigation?

23  Q   Yes, ma'am.  And only as a part of that 6700

24      Investigation.

25  A   I don't remember that the letter says -- our review

39

1       of the transaction does not constitute an

2       examination of your income tax returns.  We may

3       examine your income tax returns for correct

4       determination of any income tax liability.  That's

5       the only thing that I can remember if it says it in

6       this letter then.

7   Q    Just to be sure.  You're not on any medication that

8       would have in some way cause you to forget now but

9       remember later any of the questions I've asked you

10      here today?

11  A    No.

12  Q    The only thing that would help you is if you could

13      see the case file then you may be able to refresh

14      your memory?

15  A    Correct.

16        MR. SPRINGER:  Just for safety, I'm going to

17      make her two letters separated as Defendant's

18      Exhibit No. 41 and 42.  We'll make the --

19      (Interrupted)

20        MR. STRONG:  January 26th is 41?

21          MR. SPRINGER:  Yes.

22          MR. STRONG:  December 2nd is 42?

23          MR. SPRINGER:  42.  We will also make

24     Defendant's Exhibit No. 13 a part of this deposition

25     as well.  Thank you.

40

1          MR. STRONG:  I have no questions.  We'll read

2      and sign.

3          (WITNESS EXCUSED)

4      SIGNATURE OF DONNA MEADORS:  _____

5      SUBSCRIBED AND SWORN to before me this _____ day of
       _____, 20___.
6
       SIGNATURE OF NOTARY PUBLIC: _____
7      My Commission expires: _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EUSTICE REPORTING SERVICE
BOX 700488  TULSA, OK 74170  (918)445-2965

41

1          C E R T I F I C A T E

2
     STATE OF OKLAHOMA  )
3                       ) SS.
     COUNTY OF TULSA    )
4

5          I, Greg Eustice, Certified Shorthand Reporter

6     in and for the State of Oklahoma, do hereby certify that

7     on April 9, 2009 pursuant to court order, the above

8     witness, Donna Meadors, was by me first duly sworn to

9     testify the truth, the whole truth, and nothing but the

10    truth in the case aforesaid; and that the deposition by

11    her was reduced to writing by me in stenograph, and

12    thereafter transcribed by myself, and is fully and

13    accurately set forth in the preceding 40 pages.

14          I do further certify that I am not related to

15    nor attorney for any of the said parties, nor otherwise

16    interested in the event of said action.

17          WITNESS my hand this _____ day of April, 2009.

18

19          _____
            GREG EUSTICE
20           Certified Shorthand Reporter

21

22

23

24

25


EUSTICE REPORTING SERVICE
BOX 700488  TULSA, OK 74170  (918)445-2965