## UNITED STATES DISTRICT COURT
§
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN THE MATTER OF SEARCH | § | MAGISTRATE NO. |
| WARRANT FOR THE PREMISES | § | |
| LOCATED AT | § | |
| 25278 South 201st West Avenue | § | |
| Kellyville, Oklahoma | § | |

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

### AFFIANT EXPERIENCE

I, BRIAN M. SHERN, being on oath first duly sworn, depose and say:

1. I received a B.S. Degree in Accounting in 1999, and received a Masters in
   Accounting in 2000, both from Oklahoma State University, Stillwater,
   Oklahoma.

2. I was employed as an auditor with PricewaterhouseCoopers, LLC from June
   2000 through December 2000. In this capacity, I performed financial statement
   audits for companies in accordance with generally accepted auditing
   standards. From December 2000 through August 2004, I worked in various
   accounting positions within Dollar Thrifty Automotive Group, Inc., a publicly
   held rental car company.

3.   In February 2005, I graduated from the Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia.  At Glynco, I received extensive training in the enforcement of criminal tax and money laundering statutes.  I also received training in constitutional law, enforcement operations, and interviewing.  As a Special Agent, my duties include investigating individuals engaged in activities constituting violations of criminal tax statutes (Title 26 United States Code) and money laundering statutes (Title 18 and Title 31 United States Code).

4.   As a new Special Agent, I am receiving instruction and supervision from Special Agent Don Shoemake.  Special Agent Shoemake is a Certified Public Accountant licensed in the State of Oklahoma, and obtained a Masters in Business Administration in 1991 from Central State University, Edmond, Oklahoma.  Special Agent Shoemake has had over ten years of experience as a Special Agent investigating potential violations of criminal tax and money laundering statutes.  His investigative experience includes participating in the execution of search warrants, reviewing and analyzing documents and records used in financial transactions, and interviewing witnesses and defendants involved in criminal activity.  Special Agent Shoemake is also familiar with the methods of operation used by individuals to illegally conduct business and avoid law enforcement.

The following information was initially discovered in the course of an investigation and prosecution of EDDY PATTERSON.  Information was further developed when the investigation of EDDY PATTERSON was expanded to include LINDSEY SPRINGER with regard to violations of Title 26, U.S.C. § 7201 (tax evasion), and Title 26, U.S.C. § 7203 (failure to file a return or pay tax).  This investigation pertains to allegations that LINDSEY SPRINGER received income for providing legal and tax advice to numerous clients, and that he knowingly and willfully did not report this income in order to evade the taxes associated with it.  Information obtained during the investigation also suggests that SPRINGER'S conduct may constitute violations of Title 26, U.S.C. § 7212(a) (corrupt interference with administration of internal revenue laws).  The information was received by the affiant from personal observation and experience, from other law enforcement officers, and other individuals named herein.

1.  EDDY PATTERSON (PATTERSON) was found guilty by jury trial in the Northern District of Oklahoma, Case Number 03-CR-55-EA, on December 16, 2003, for violations including conspiracy, false statements, securities fraud, subscribing to a false tax return, and tax evasion.  He was sentenced on September 1, 2004 to 110 months imprisonment.  PATTERSON was represented by OSCAR STILLEY (STILLEY) during his trial and sentencing.

2.  On May 6, 2004, an interview was conducted by Special Agent Tim

Arsenault with PATTERSON.  During the interview, PATTERSON

discussed his representation during his criminal trial.  PATTERSON waived

any attorney-client privilege through his attorney, Steve Knorr.  In March

2000, PATTERSON met with STILLEY and LINDSEY SPRINGER

(SPRINGER) to discuss the issue of him being under criminal investigation

for tax violations.  At the meeting, PATTERSON decided to hire SPRINGER

and STILLEY to represent him with respect to his criminal tax investigation.

SPRINGER told PATTERSON that he was not an attorney, but that he had

been doing tax law research for the last ten years.  Upon SPRINGER'S

recommendation, PATTERSON hired STILLEY.  STILLEY is an attorney

practicing out of Ft. Smith, Arkansas.

3.  PATTERSON stated that SPRINGER initially told him that he needed

$45,000 to work on the case.  PATTERSON said he paid SPRINGER this

$45,000 over the next several months.  SPRINGER asked PATTERSON to

write "donation" on the memo line of the checks that were written to him.

SPRINGER said that he did not charge fees, but took money for his

ministry.  PATTERSON said that any payments to SPRINGER represented

fees for services related to handling his criminal case.  PATTERSON would

not have made charitable donations to SPRINGER because he did not
believe that SPRINGER had any kind of religious ministry. Your affiant
reviewed various records including checks and correspondence from
previous civil IRS audits and criminal investigations showing that
SPRINGER'S ministry is called BONDAGE BREAKERS MINISTRY (BBM).
It is not known if BBM actually functions as a ministry. Based on a search
of charitable organizations listed with the Oklahoma Secretary of State and
the IRS, BBM is not registered as a charitable organization either with the
State of Oklahoma, or with the IRS. PATTERSON identified three $10,000
checks written to SPRINGER dated 8/25/00, 9/25/00, and 11/9/00, numbers
3868, 3889, and 3943 drawn from his account number 4008822 at Citizens
Bank of Tulsa. These records were obtained pursuant to a grand jury
subpoena issued during the investigation of PATTERSON. PATTERSON
said these were part of the $45,000 paid to SPRINGER, and that he
thought there was another check written to SPRINGER earlier than August
2000 that investigators did not have at the interview.

4. On or around the Spring of 2003, PATTERSON endorsed a $112,500
check payable to him for the sale of ECC Energy Stock over to STILLEY for
legal fees. PATTERSON said that he gave STILLEY permission to pay
SPRINGER $15,000 for services rendered by SPRINGER for
PATTERSON'S criminal case. Your affiant reviewed billing records
provided by PATTERSON that were given to PATTERSON from STILLEY

5

showing descriptions of services provided and amounts charged for work on PATTERSON'S criminal case. Your affiant also reviewed STILLEY'S bank records for his client interest on lawyer's trust account (IOLTA), account number 570124271 with Arvest Bank in Ft. Smith, Arkansas, obtained pursuant to a grand jury subpoena. Both the billing records and the bank records show the $112,500 deposit into the IOLTA from PATTERSON, and a $14,539 check paid to SPRINGER from the IOLTA.

5. Your affiant also reviewed e-mail correspondence provided by PATTERSON that contained e-mails between STILLEY and PATTERSON and SPRINGER and PATTERSON. The content of the e-mails between SPRINGER and PATTERSON during July and August of 2003 included discussions about the case, discussions about legal strategy, and explanations of court procedures. SPRINGER'S e-mail address listed in the records was gnutella@mindspring.com.

6. In November 2003, approximately $375,000 was wired to STILLEY'S IOLTA on behalf of PATTERSON. This money represented partial proceeds from an insurance settlement PATTERSON received in accordance with an officers and directors liability insurance policy he had. PATTERSON said that after he gave STILLEY permission, STILLEY paid SPRINGER $90,000 of this money for SPRINGER'S expertise and services rendered for PATTERSON'S criminal case. STILLEY'S billing records

show a payment to SPRINGER of $78,000 on November 7, 2003, which

represents the $90,000 payment less $12,000 that SPRINGER owed to the

IOLTA.  STILLEY'S IOLTA records show four cash withdrawals on

November 7, 2003 totaling $78,000.

7.  Your affiant reviewed records from a civil IRS investigation of SPRINGER

which was conducted to determine if SPRINGER was involved in the

promotion of anti-tax plans or abusive trusts for the period of January 1,

2000 to December 31, 2003.  This investigation was initiated because it

was alleged that SPRINGER'S conduct may have been subject to the

penalty provisions of Title 26, U.S.C. § 6700 (promoting abusive tax

shelters, etc.) and Title 26, U.S.C. § 6701 (penalties for aiding and abetting

understatement of tax liability).  These statutes assess penalties to

individuals who knowingly promote abusive tax shelters or knowingly assist

or advise people to understate their tax liability.  As part of the investigation,

checks that were cashed by SPRINGER at CHECKS CASHED were

summonsed and reviewed.  CHECKS CASHED is a check-cashing

business located at 4117 South Peoria Avenue, Tulsa, Oklahoma, that

SPRINGER frequently utilizes to cash checks that he receives.  Once

SPRINGER'S cashed checks were obtained, individuals who wrote checks

to SPRINGER were contacted by the IRS by letter.  The letters asked these

individuals if SPRINGER promoted or offered tax plans or arrangements,

provided written manuals or audio/video presentations, if the individuals

attended any meetings discussing income tax topics, and if any fees or donations were charged for any of these products or services. The results of the civil investigation indicated that SPRINGER'S conduct did not appear to be subject to the penalty provisions of Title 26, U.S.C. §§ 6700 or 6701 during 2000 through 2003, however, it did indicate that SPRINGER received payments from individuals for whom he provided legal or tax advice.

8.  Included in the civil investigation documents are copies of checks written to SPRINGER from DR. PHILLIP ROBERTS (ROBERTS), who is a chiropractor from Ft. Smith, AR. The documents contain a total of five checks from ROBERTS dated in 2000 and 2001 totaling $80,000. David Blackorby, an Assistant U.S. Attorney in the Western District of Arkansas, told your affiant that ROBERTS was convicted in Ft. Smith, Arkansas of criminal tax charges in 2000 or 2001. ROBERTS was represented by STILLEY in trial. SPRINGER was actively involved in providing consultation to the defense throughout the trial. Copies of checks from ROBERTS were also found in STILLEY'S IOLTA dated in 2000 and 2001 totaling approximately $136,000.

9.  Included in the civil investigation documents are copies of checks written to SPRINGER from JAMES LAKE (LAKE), a Delta Airlines Pilot living in Newport Beach, California. The documents contain a total of three checks

from LAKE dated in 2000 totaling $30,000. Kimberly Summerville, an IRS-CI Special Agent from Atlanta, GA, told your affiant that LAKE pleaded guilty to tax charges in Georgia in approximately 2002. LAKE was originally represented by STILLEY in trial. SPRINGER was actively involved in assisting the defense during trial. LAKE fired STILLEY and SPRINGER during trial, and hired another attorney who advised him to plead guilty. Copies of checks from LAKE were also found in STILLEY'S IOLTA dated in 2000 and 2001 totaling approximately $62,000.

10. Included in the civil audit documents are references to payments received by SPRINGER from MICHAEL BURT, ART and CYNTHIA HAWKINS, ERIKA DERTIEN, and SALVATORE and MELISSA PIZZINO (amounts unknown at this time). ERIKA DERTIEN is the daughter of KAREN and ANDREW OUWENGA. Included in STILLEY'S IOLTA are copies of checks written from MICHAEL BURT, CYNTHIA HAWKINS, ANDREW OUWENGA, and SALVATORE PIZZINO during 2002 and 2003 totaling approximately $178,000. William Smith, an IRS-CI Supervisory Special Agent from Grand Rapids, Michigan, told your affiant that ANDREW OUWENGA and his wife, Karen, were previously under investigation by IRS-CI. The OUWENGA'S were convicted of tax evasion, impeding and obstructing the lawful functions of the IRS, and willfully and unlawfully disobeying a grand jury subpoena. ANDREW and KAREN OUWENGA were sentenced on May 26, 2004 to 60 and 51 months imprisonment. Matt

Willard, an IRS-CI Special Agent from Bridgeport, Connecticut, told your affiant in July 2005 that SALVATORE PIZZINO was currently under investigation for tax crimes. SPRINGER and STILLEY represented PIZZINO, and accompanied him when he met with Special Agent Willard for an interview.

11. In July 2005, Tom Klepper, an IRS-CI Special Agent from Phoenix, Arizona, told your affiant that he was currently assisting with a trial against five defendants who established an organization called Innovative Financial Consultants (IFC). The defendants are charged with violating Title 18, U.S.C. 371 (conspiracy). IFC is an organization that promoted abusive trusts to individuals all over the country. IFC distributed instructions and materials for individuals to sign up and divert their income and assets into a trust to avoid paying taxes. IFC charged a fee for these services. STILLEY is assisting the defendants in this trial as a consultant. Special Agent KLEPPER heard SPRINGER'S name come up during trial discussions as possibly serving as a witness for the defense.

12. Joe Ellery, an IRS-CI Special Agent from Flint, Michigan, told your affiant in August 2005 that he is currently conducting an investigation on PATRICK TURNER (TURNER). TURNER met with Special Agent Ellery on October 24, 2003, for an interview. SPRINGER came to the meeting and was designated as TURNER'S power of attorney. During the meeting,

10

SPRINGER stated that he has been working with TURNER and other clients of IFC to convince them to report their income properly and file their income tax returns.  SPRINGER stated that he has several former IFC clients that he will be representing.  SPRINGER stated that TURNER and his other clients are victims of misrepresentation of the law by IFC. SPRINGER stated that he previously was a tax protestor, but now he has reformed and is helping people with their tax problems.  SPRINGER told Special Agent Ellery that he conducts a weekly conference call for the victims of IFC to discuss income tax issues.  SPRINGER stated that he was in possession of TURNER'S partnership records, and that those records were in Oklahoma.

13. Janet Delancey, an IRS-CI Special Agent from Evansville, Indiana, told your affiant in August 2005 that she was currently conducting an investigation of PATRICK BOGAN (BOGAN) for tax crimes.  BOGAN was a computer consultant that purchased the IFC program and organized his financial affairs according to IFC instructions.  BOGAN came into contact with SPRINGER through the weekly IFC conference call that SPRINGER conducted.  SPRINGER helped BOGAN find a law firm and CPA firm to use during his criminal investigation.  During 2003 and 2004, BOGAN paid SPRINGER approximately $5,000 with money orders payable to BBM.

11

14. Jim Dye, an IRS-CI Special Agent in Fairview Heights, Illinois, told your affiant in August 2005 that he was currently conducting an investigation of ORVIL DUANE HASSEBROCK (HASSEBROCK) for tax crimes. During an interview between Special Agent Dye and HASSEBROCK'S CPA, SAM PHILLIPS, on August 1, 2005, PHILLIPS stated that he has been in contact with LINDSEY SPRINGER of Tulsa, Oklahoma regarding HASSEBROCK'S tax affairs. HASSEBROCK advised PHILLIPS that SPRINGER was a paralegal, and that PHILLIPS could discuss his tax affairs with him. PHILLIPS has faxed SPRINGER several personal income tax returns that he prepared on behalf of HASSEBROCK. PHILLIPS had a record of SPRINGER'S fax number, which is (918) 247-4249. Your affiant conducted an internet phone number search on this number on the web search engine Whitepages.com. Information from Whitepages.com listed this phone number as being a Kellyville, Oklahoma based phone number. PHILLIPS also had a record of SPRINGER'S e-mail address, listed as gnutella@mindspring.com. This is the identical e-mail address that EDDY PATTERSON used to correspond with SPRINGER during his criminal case.

15. Your affiant has talked with at least ten IRS-CI Special Agents from different areas of the country that have conducted criminal investigations in which SPRINGER has been involved. SPRINGER frequently travels to different areas of the country to conduct meetings with these subjects.

16. Your affiant reviewed records received from Bruce Smith with the Oklahoma Tax Commission listing vehicles registered in SPRINGER'S name with the State of Oklahoma. Below is a chart that shows the vehicles registered to SPRINGER, the date registered, and the purchase price of each vehicle. None of the vehicles below have an associated lien on file with the State of Oklahoma.

| Registration Date | Year, Make and Model | Purchase Price |
|---|---|---|
| 09/10/04 | 2004 Lexus R33 | $47,000.00 |
| 11/10/04 | 1994 Ford F-150 | $5,195.00 |
| 12/18/04 | 2004 Ford F-350 | $38,500.00 |
| 12/31/04 | 1999 Mercedes G500 | $40,000.00 |
| 02/20/05 | 1994 Mercedes G300 | $34,000.00 |
| 04/13/05 | 2003 Chevrolet Corvette | $38,000.00 |
| 04/20/05 | 2004 Dodge SQ2 | $32,500.00 |
| 06/09/05 | 1985 Chevrolet C20 | $1,800.00 |
| 06/09/05 | 1955 GMC SK | N/A |

17. SPRINGER has not filed a federal income tax return since before 1990. STILLEY has not filed a federal income tax return since before 1990. The IRS Collection Division filed substitute returns for SPRINGER for the years 1990 through 1995. No returns have been filed on behalf of SPRINGER since 1995. The amount of tax assessed by the Collection Division for each year a substitute return was filed, including penalties and interest assessed in 1996, is shown below. SPRINGER has not made any payments toward this outstanding balance.

| Year | Tax Assessed |
|------|-------------|
| 1990 | $34,017.00 |
| 1991 | $28,980.87 |
| 1992 | $27,263.95 |
| 1993 | $125,835.51 |
| 1994 | $40,231.87 |
| 1995 | $38,346.97 |
| 1996 | $6,422.79 |
| Total | $301,098.96 |

18. Your affiant reviewed information from an IRS-CI investigation conducted on SPRINGER during 1998. The information included memorandums of interview, transcripts of conversations, and discussions with other Special Agents. The information shows SPRINGER conducted numerous meetings where he discussed legal topics on taxation and promoted views against income taxation and the U.S. Government's interpretation of tax laws. Your affiant has also reviewed books that SPRINGER has compiled containing constitutional amendments, sections of Title 26 and Title 31 of the United States Code, IRS policies and procedures, and past legal cases dealing with tax issues.

19. Dan Elliott, a Special Agent with IRS-CI in Little Rock, Arkansas told your affiant that he conducted two criminal tax investigations in the Eastern District of Oklahoma that involved SPRINGER. Both investigations resulted in convictions. The subject of one of the investigations was HAROLD BOOS, a chiropractor in Muskogee, Oklahoma that evaded his taxes. SPRINGER testified in BOOS' trial in 1998 as a witness for the defense.

14

taxation and the IRS. The subject of the other investigation was JAMES TURNER, a chiropractor from Sallisaw, Oklahoma. This investigation went to trial in 2000. During the investigation, it was discovered that TURNER utilized the tax advice of SPRINGER, and SPRINGER traveled to Sallisaw, Oklahoma to set up trusts for TURNER for the purpose of evading his taxes.

20. Your affiant reviewed Department of Justice records showing that SPRINGER was involved in a civil suit in the Eastern District of Pennsylvania between the U.S. Securities and Exchange Commission and The Infinity Group Company. The Court found that The Infinity Group Company fraudulently raised at least $24.5 million from public investors through a Ponzi scheme that promoted non-existent investments which were purported to generate high rates of return. On March 16, 1998, SPRINGER was ordered by the court to pay disgorgement of $1,265,000.

21. Department of Justice records also showed that SPRINGER was a plaintiff in two civil lawsuits against the IRS and IRS employees individually. One lawsuit occurred in or about 1994, and the other in or about 1996. Both suits were rejected by the Court. One lawsuit was appealed to the U.S. Court of Appeals for the Tenth Circuit. In response, the Court imposed a $2,000 sanction upon SPRINGER pursuant to 28 U.S.C. 1912, and found

15

Division that show SPRINGER is presently involved in another lawsuit

against the IRS and IRS employees individually.

22. Records reviewed by your affiant including STILLEY'S IOLTA, CHECKS

CASHED records, and memorandums of interview with clients of STILLEY

and SPRINGER show that SPRINGER frequently deals in cash and money

orders.  SPRINGER frequently conducts cash financial transactions at

CHECKS CASHED.  Your affiant researched information within the

Currency and Banking Retrieval System (CBRS) showing Currency

Transaction Reports filed under LINDSEY SPRINGER or BONDAGE

BREAKERS MINISTRIES.  A Currency Transaction Report (CTR) is a

report filed in accordance with Title 31 U.S.C. 5313 which must be filed by a

financial institution for currency transactions exceeding $10,000.  From

January 1, 2000 through February 22, 2005, there were 43 Currency

Transaction Reports filed under LINDSEY SPRINGER or BONDAGE

BREAKERS MINISTRIES amounting to $760,794.  After researching CBRS

records, STILLEY'S IOLTA records, CHECKS CASHED records, civil and

criminal IRS records and correspondence with SPRINGER, and after

discussions with other IRS-CI Special Agents, your affiant has not obtained

any evidence to suggest that SPRINGER presently has or utilizes a

personal bank account.  SPRINGER'S address listed on each CTR is 5147

South Harvard Avenue, Tulsa, Oklahoma, which is the location of a mailbox

registrations, his driver's license, and his correspondence with the IRS.

23. Your affiant reviewed a memorandum of interview dated June 29, 1998,
with Kathy Beckner, an IRS-CI Special Agent in Tulsa, and LINDA
GREENHAW, the previous owner of SPRINGER'S residence at 25758
South 201st West Avenue, Kellyville, Oklahoma.  Your affiant also reviewed
a memorandum of interview dated October 8, 1998, between Special Agent
Beckner and TOM HARDGRAVE, a realtor with JOHN HAUSAM
REALTORS, who was involved in the sale of GREENHAW'S property to
SPRINGER.  Your affiant also reviewed the general warranty deed
associated with this transaction.  SPRINGER purchased the property at
25758 South 201st West Avenue, Kellyville, Oklahoma, from WILLIAM and
LINDA GREENHAW on July 30, 1996 with approximately $40,000 in money
orders and by assuming a private mortgage of approximately $30,000 from
the GREENHAW'S with W.T. and JANET SMITH.  SPRINGER had the
transaction conducted in the name of S.L.C.A. FAMILY TRUST.

24. TOM HARDGRAVE said SPRINGER and his family lived in a large RV or
bus on the property while the residence was being renovated in mid to late
1996.  HARDGRAVE said he saw bunk beds, a television, and a computer
inside the bus.  LINDA GREENHAW said HARDGRAVE told her
SPRINGER had a law library inside the bus.  During the interview with

17

EDDY PATTERSON on May 6, 2004. PATTERSON said that SPRINGER told him in March 2000 that he had a bus he needed to refurbish and use to travel to other tax cases.

25. After researching CBRS records, STILLEY'S IOLTA records, CHECKS CASHED records, civil and criminal IRS records and correspondence with SPRINGER, and after discussions with other IRS-CI Special Agents, your affiant has not obtained any evidence identifying any locations SPRINGER owns or utilizes other than his residence.

26. On August 10, 2005, your affiant participated in a drive-by of the residence at 25758 South 201st West Avenue, Kellyville, Oklahoma. Your affiant observed four vehicles and a large, white traveling bus parked at the residence. Three vehicles had identical license plate numbers to the vehicles listed on the records obtained from the Oklahoma Tax Commission for vehicles registered to LINDSEY SPRINGER. The vehicles also appeared to be the same makes and models of the listed vehicles, which were the 2004 Lexus R33, the 2004 Ford F-350, and the 1999 Mercedes G500. The fourth vehicle also appeared to be the same make and model as the 1994 Ford F-150, although the license plate number was unclear. Your affiant also observed LINDSEY SPRINGER outside the residence.

27. On September 2, 2005, your affiant examined property records from the
Creek County Clerk's Office in Sapulpa, Oklahoma. The records indicated
that there has not been a transfer of ownership or deed issued related to
the property at 25758 South 201st West Avenue, Kellyville, Oklahoma, since
the property was purchased by SPRINGER in July 30, 1996. Your affiant
also confirmed that the legal description on the General Warranty Deed
dated July 30, 1996 described the property at 25758 South 201st West
Avenue, Kellyville, Oklahoma.

28. On March 18, 1988, SPRINGER pleaded guilty to one felony count of Title
18, U.S.C. § 511 (altering or removing motor vehicle identification numbers)
in the Eastern District of Oklahoma. SPRINGER received three years
probation.

## AFFIANT'S KNOWLEDGE

Based on my training and experience and discussions with other Special Agents I
know that:

1. Providing legal and tax advice is a document-intensive profession, and
individuals involved in this profession usually keep financial records, letters,
e-mails, notes, contracts, legal forms, court documents, and other
correspondence, documents, and business records associated with
services performed. Records of this kind are also often stored on computer
media.

2.  Individuals involved in providing legal or tax advice usually keep records of income, including billing records, financial statements, client correspondence, and other documents related to receiving income for services.  Records of this kind are also often stored on computer media.

3.  Individuals who conduct business out of their home normally keep business records inside their home, including records of expenses such as travel and utilities and phone service required to maintain a home office.

4.  Individuals involved in providing legal or tax advice routinely use computers to perform research, maintain client files, maintain records of income and expenses, and communicate through the use of the internet.

5.  Individuals who are involved in a business activity commonly retain records for long periods of time, particularly when they participate in the business activity for a long period of time.

6.  Individuals who attempt to conceal the existence and source of their funds do so by engaging in financial transactions with domestic and foreign institutions, and others, through all manner of financial instruments, including cash, cashier's checks, money drafts, traveler's checks, wire

20

individual's residence or place of business.

## **COMPUTER DATA**

Based upon my training, experience and information related to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices including hard disk drives, floppy disks, compact disks, magnetic tapes and memory chips. I also know that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

1. Searching computer systems is a highly technical process which requires expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application or operating system that is being searched.

2. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and

to recover "hidden," erased, compressed, encrypted or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

3. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing fifteen gigabytes of data are now commonplace in desktop computers. Consequently, each non-networked, desktop computer found during a search can easily contain the equivalent of 7.5 million pages of data, which, if printed out, would completely fill a 10' x 12' x 10' room to the ceiling.

4. Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of

innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into a readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in the process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband or instrumentalities of a crime.

**CONCLUSION OF THE AFFIANT**

Based on the information contained in this affidavit, I have probable cause to

believe and do believe that within the premises described in Attachment A,

Location to be Searched, incorporated herein by reference to the Search Warrant,

are now located records evidencing Federal violations of Title 26, U.S.C., Sections

7201 and 7203, including all records described in Attachment B, Items to be

Seized, incorporated herein by reference to the Search Warrant for property of

LINDSEY SPRINGER.


Brian M. Shern
Special Agent, IRS-CI


Subscribed and sworn to before me
this _15th_ day of _Sept_, _2005_.

24