## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.      09-CR-043-SPF |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS TO SUPPRESS AND FOR FRANKS HEARING

The United States of America, by and through its attorneys, David E. O'Meilia, United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke, Assistant United States Attorney, and Charles A. O'Reilly, Trial Attorney, United States Department of Justice, hereby responds in opposition to Defendant Lindsey Kent Springer's Motion to Suppress and For Franks Hearing, and Defendant Oscar Amos Stilley's Motion to Suppress All Testimony and Documents From Oscar Stilley to the Grand Jury, filed June 1, 2009.

A.     Defendant Springer Is Not Entitled To A *Frank's* Hearing

A defendant is only entitled to a *Franks* hearing where the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*,

438 U.S. 154, 155-56 (1978); *see also United States v. Coral-Coral*, 899 F.2d 927, 933 (10th Cir. 1990); *United States v. Orr*, 864 F.2d 1505, 1507 (10th Cir. 1988).  Defendant Springer fails on each prong of the test.

As an initial matter, contrary to Defendant Springer's caption entitled "Facts Not In Dispute," many of the allegations raised in this section of Defendant Springer's Memorandum of Law in Support of Motion for Frank's [sic] Hearing and Motion to Suppress Evidence, are not just disputed by the Government, they are demonstrably false.

For example, and not by way of limitation, the following statements in Defendant Springer's "Facts Not in Dispute" section of his motion are disputed because they are incorrect:

- "On July 3, 2001, an ongoing criminal investigation of Lindsey Springer and Bondage Breaker's Ministry was active."  Docket #75 at 2.

- "On March 6, 2003, an active criminal 'referral' was ongoing against Springer."  Docket #75 at 2.

- "On October 14, 2003, Criminal Investigation is actively involved in hot pursuit of Springer for non filing."  Docket #75 at 2.

- IRS Special Agent Donna Meadors "secretively" applied for the position of Criminal Investigator.  Docket #75 at 2.

- "On January 24, 2004, Special Agent Donna Meadors, in disguise as a 'Revenue Agent' sent Springer a letter involving a 6700 investigation she was pursuing."   Docket #75 at 3.

- "Meadors also informed Springer that she was working with no other person and the information Springer shared with her was not being reviewed by any other person."   Docket #75 at 3.

- "Ms. Meadors sent Springer a letter stating he was not found to have committed any acts prohibited by section 6700 on December 2, 2004."   Docket #75 at 3.

Nothing in Defendant Springer's submissions to the Court supports these assertions and, in several cases, Defendant Springer's own submissions refute his assertions.  For example, Docket #75-7, which appears to be an email dated March 6, 2003, between IRS employees, states that the IRS "could be up against some stiff competition *if we decide to work him*" (emphasis added).  This email demonstrates than on March 6, 2003, Defendant Springer was not under criminal referral.  At best, Defendant Springer confuses the Internal Revenue Service's civil attempts to collect Defendant Springer's delinquent taxes for the years 1990 through 1996 with criminal investigations that were considered, initiated and discontinued during the time period Defendant Springer references.  Additionally, Special Agent Donna Meadors was not an Internal Revenue Service Special Agent until 2005; she was not "in disguise" as a Revenue Agent during 2004.  Revenue Agent was her position and title.

Neither did Special Agent Meadors "secretively" apply for the position of Special Agent. Furthermore, even if Defendant Springer's allegations were correct, they are irrelevant with respect to his burden of demonstrating the need for a *Franks* hearing.

Defendant Springer asserts that "Springer has demonstrated substantial and convincing evidence that a *Frank's* [sic] hearing should be held on July 2, 2009." Docket #74 at 1.  However, Defendant Springer fails to clearly identify any allegedly false statements included by the affiant in the warrant affidavit until page 24.[1]  Towards the end of Defendant Springer's lengthy motion, Defendant Springer makes the following allegations of false statements included in the search warrant affidavit:

- ". . . the investigation of Eddy Patterson was expanded to include Lindsey Springer . . .."

As indicated by Attachment A (Tax Division authorization of expansion of Grand Jury investigation), this statement is true.  The expansion of the Patterson grand jury investigation to include Defendant Springer as a target was approved by the Tax Division by letter dated June 10, 2005.  Internal records of the U.S. Attorney's Office show that a "matter" was opened as to Lindsey Springer on August 11, 2004.

---

[1]     The Government notes that Defendant Springer's motion exceeds the page limit imposed by the local rules of the United States District Court for the Northern District of Oklahoma.  Rule 1.2 of the Local Criminal Rules of the United States District Court for the Northern District of Oklahoma provides that, "where appropriate in a criminal context, Civil Local Rules . . . 7.2 (Briefs) . . . are also deemed applicable in criminal cases.  Local Civil Rule 7.2(c) provides that "[n]o brief shall be submitted that is longer than twenty-five (25) typewritten pages without leave of Court."  Defendant Springer's Motion and Memorandum in Support of Motion to Suppress and For Franks Hearing total thirty-eight pages.

- "Patterson was represented by Stilley during trial and sentencing."

In fact, while Defendant Stilley represented Patterson prior to and through the trial, Patterson fired Defendant Stilley prior to sentencing. Therefore, the phrase "and sentencing" is incorrect and should be redacted from the affidavit.[2]

- Defendant Springer takes exception to the inclusion in the affidavit of Patterson's statements, including those in which Patterson said that any fees paid to Defendant Springer were for services in handling Patterson's criminal case.

The statements cited are what Patterson told the investigating agents. The focus of a *Franks* motion must be on the veracity of the affiant's statements, not statements made by an informant. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003) (the defendant's attack on the informant's veracity was insufficient to meet his burden for a *Franks* hearing); *United States v. Green*, 178 F.3d 1099, 1108 (10th Cir.1999) ( *Franks* permits a defendant to "challenge the veracity of statements made by a search warrant affiant, not the veracity of statements made by a confidential informant to the affiant.")  Also, Special Agent Shern included in the affidavit Defendant Springer's self-serving statement to Patterson "that he [Defendant Springer] did not charge fees, but took money for his

---

[2]   Special Agent Shern was not involved in the investigation or prosecution of Eddy and Judith Patterson.  Special Agent Shern relied on reports of the investigation and trial events. The docket sheet for Case No. 03-CR-055 indicates that Mr. Patterson fired Stilley and hired new counsel prior to his sentencing, but after he received his Presentence Report and after his wife (and co-defendant) had been sentenced.

ministry." Docket #75-20 at 4. Thus, contrary to Defendant Springer's implications to the contrary, Defendant Springer's theory that the payments were gifts was included in the affidavit presented to the Magistrate Judge who issued the search warrant.

On pages 27 through 31 of Docket #75, Defendant Springer takes exception to the affidavit's description of the moneys paid by Patterson to Defendant Springer. The affiant, Special Agent Shern, relying both on the financial records available prior to the execution of the search warrant and the memoranda of interview with Patterson, accurately related the sequence and details of payments Patterson made to Defendant Springer. Defendant Springer ignores the evidence of payments from numerous other individuals for whom Defendant Springer provided legal assistance that are included in paragraphs eight through ten of the affidavit. Defendant Springer further ignores the detailed acquisition of automobiles contained in paragraph sixteen of the search warrant affidavit, which shows Defendant Springer's ownership of nine automobiles with purchase prices totaling more than $200,000, including the following: 2004 Lexus R33; 2004 Ford F-350; 1999 Mercedes G500; 1994 Mercedes G300; 2003 Chevrolet Corvette.

Defendant Springer incorrectly asserts that "[t]here is no evidence of Springer being paid for any services rendered whatsoever and Shern knew it from the first time he looked into the facts of this part of his statement." Docket #75 at 31. Contrary to Defendant Springer's claim, there was sufficient evidence that Defendant Springer earned income, and

evaded tax on that income, to enable the grand jury to return the instant indictment against

Defendants Springer and Stilley.[3]

With the exception of the erroneous inclusion of the words "and sentencing" to

describe the duration of the attorney services Defendant Stilley provided Patterson,

Defendant has failed to make any showing, let alone a substantial showing, that false

statements were knowingly and intentionally included in the search warrant affidavit.

Redacting the words "and sentencing" in no way impacts the probable cause determination.

Therefore, Defendant Springer's motion for a *Franks* hearing should be denied.

> B.    Defendant Springer's Assertion that Magistrate Lacked
>        Authority to Issue Search Warrant is Frivolous

To satisfy the search warrant requirement, an impartial judicial officer must assess

whether the government has probable cause to make an arrest, to conduct a search, or to seize

evidence.  *Warden v. Hayden*, 387 U.S. 294, 301-02 (1967).  The magistrate must consider

the facts and circumstances presented in the warrant application, including the supporting

affidavit, in a practical, common-sense manner and make an independent assessment

regarding probable cause.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

---

[3]    Defendant Springer states, without attribution, that Special Agent "Shern is known for some unbelievable claims."  Docket #75 at 31, n. 1.  This is utter fabrication, and the Government objects to this transparent attempt at character assassination.

Defendant Springer asserts that "no 'Affidavit' was therein any discovery . . .." Docket #75 at 17.  Defendant Springer is in error.  A copy of the signed search warrant affidavit can be found in the discovery at Bates Numbers SW04679 through SW04701.

Defendant Springer also asserts that "the record appears to show that the purported 'affidavit' was never properly verified and sworn to by someone authorized to administer oaths."  Docket #75 at 18.  Defendant Springer is again wrong.  A quick review of the document bearing Bates Number SW04701, provided to Defendants pursuant to discovery, clearly shows United States Magistrate Judge Frank H. McCarthy's signature immediately below the phrase "Subscribed and sworn to before me this 15th day of Sept. 2005."   The only confusion alluded to by Defendant Springer arises from Defendant Springer's attempts to obfuscate the facts.

On September 15, 2005, IRS Special Agent Shern provided a sworn affidavit establishing probable cause that evidence evincing violations of Title 26, United States Code Sections 7201 and 7203 would be found in Defendant Springer's residence, 25758 South 201st West Avenue, Kellyville, Oklahoma.  United States Magistrate Judge McCarthy, an impartial judicial officer, assessed the affidavit to decide whether the Government had presented probable cause to conduct a search and seize evidence, and determined that the Government did have probable cause.

The Government invites Defendant Springer to withdraw his motion, at least in as much as it is based upon the erroneous assertion that the affidavit was not signed by a judicial

officer.  If Defendant Springer declines to do so, Defendant Springer's motion to suppress because the Magistrate Judge lacked authority to issue the search warrant should be denied.

      C.      <u>Defendant Springer Identifies No Basis<br>to Suppress Evidence Seized from His Home</u>

"A defendant challenging a search pursuant to a warrant has the burden of proof." *United States v. Harrison*, 2009 WL 1549191, *1 (10th Cir. 2009) (citing *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir.1994)  Defendant Springer asserts there was "not one shred of probable cause to believe any of the 'evidence sought by [Special Agent] Shern in his unsworn affidavit would be located in the home [Defendant] Springer lives in.'" Docket #75 at 32.  As asserted in the search warrant affidavit, Defendant Springer maintained no office.  As indicated in paragraphs 24 and 25 of the search warrant affidavit, there was no evidence Defendant Springer worked out of anywhere besides his residence.  Special Agent Shern identified that based upon his training and experience, he knew that individuals providing legal and tax advice, such as Defendant Springer, maintained records.  All of the evidence gathered, combined with Special Agent Shern's training and experience, indicated that records, including computer records, would be maintained in Defendant Springer's home.  "[A] law enforcement agent's opinion, based upon his professional expertise, that evidence of illegal activity will be found in the place to be searched, is entitled to consideration in our determination of whether probable cause existed at the time a warrant issued." *United States v. Mathis*, 357 F.3d 1200, 1205 (10th Cir. 2004).

D.   The Search Warrant Should be Upheld Under *United States v. Leon*

"The first notion to be remembered in considering the good faith principle is the presumption created in *Leon* that when an officer relies upon a warrant, the officer is acting in good faith." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985); *see United States v. Leon*, 468 U.S. 897, 922 (1984) ("Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.") (internal quotations and citations omitted).

"It is only when [an executing officer's] reliance was wholly unwarranted that good faith is absent." *Cardall*, 773 F.2d at 1133; *see also United States v. Wright*, 791 F.2d 133, 135 (10th Cir. 1986) (concluding that where the affidavit was not "devoid of factual support," officers who executed the search warrant were "entitled to rely in good faith upon the decision of that magistrate as provided in *Leon* and *Cardall*."); *Herring v. United States*, ___ U.S. ___, ___, 129 S.Ct. 695, 702, 172 L.Ed.2d 496 (2009) ("[S]ince *Leon*, we have never applied the [exclusionary] rule to exclude evidence obtained in violation of the Fourth Amendment, where the police conduct was [merely negligent].")

Thus, even were the Court to find that statements in the search warrant affidavit should be disregarded in analyzing probable cause, or if the Court were to find inadequate probable cause, the "good faith" exception to the exclusionary rule, as set forth in *United States v. Leon*, 468 U.S. 897 (1984), negates suppression.

-10-

E.    Defendant Stilley Not Entitled to Suppression of Grand Jury Testimony
and Documents Provided to Grand Jury.

Defendant Stilley's motion confuses the law, the facts, and makes a mishmash out of

the English language.  Defendant Stilley also appears to be responding to the Government's

Consolidated Response to Defendant's Motions to Dismiss, which compounds the confusion.

The Government attempts here to answer Defendant Stilley's allegations and assertions, but

is unsure what Defendant Stilley means by various unclear verbiage, including "de facto

change of the law."

What is clear is that Defendant Stilley fabricates with impunity.  Contrary to

Defendant Stilley's statement, there is no evidence that Special Agent Brian Shern "knew at

all times that he participated in the subpoena of Oscar Stilley that Oscar Stilley was a target

of the investigation."  The evidence establishes that Special Agent Shern believed that the

only target of the Grand Jury investigation was Defendant Springer.  The Government resents

and objects to even the insinuation, let alone the accusation, that Special Agent Shern

intentionally made any misrepresentation.  As indicated in the Government's Consolidated

Response to Defendant's Motions to Dismiss (Docket #71), Special Agent Shern did not

provide target warnings to Defendant Stilley because Special Agent Shern understood

Defendant Stilley to be a witness in the investigation of Defendant Springer.  As indicated

by correspondence sent to and received by the Internal Revenue Service and the Department

of Justice, Tax Division, Defendant Stilley was not considered to be a target of the Grand

Jury investigation until 2007.  See Attachment B (United States Attorney's Office request

for Tax Division assistance), Attachment C (United States Attorney's Office request to expand Grand Jury investigation), Attachment D (Internal Revenue Service request to expand Grand Jury investigation), and Attachment E (Tax Division authorization of expansion of Grand Jury investigation).   Special Agent Shern never lied to Defendant Stilley.   The documentation provided by the Government, consistent with the government's discovery obligations, in no way evinces that Special Agent Shern knew Defendant Stilley was a target on or prior to May 17, 2006, when in response to Defendant Stilley's query, Special Agent Shern stated that Defendant Stilley was not under investigation.

Defendant Stilley asserts that the form entitled "Information Needed to Issue a ND/OK Grand Jury Subpoena" that was completed with respect to Defendant Stilley's grand jury subpoena "would most likely incriminate [Special Agent Shern] for his violation of the constitution and other laws or rules of the United States."   Docket #73 at 4.   Defendant Stilley's libelous conjecture is without merit.   As indicated by Attachment F, dated September 22, 2005,[4] Special Agent Shern designated only Defendant Springer to be a target of the Grand Jury investigation.   Special Agent Shern left blank the line "Is Advice of Rights or target/subject warning needed" with a highlighted question mark because, as a relatively new agent, he did not know what to indicate on this line.   Special Agent Shern included a

---

[4]     Attachment F, a standard form completed to obtain a grand jury subpoena, is neither evidence in the case, nor is Attachment F exculpatory.   Thus, the Government did not include Attachment F in the already voluminous discovery.

request that the Assistant U.S. Attorney assigned to the investigation review the subpoena request.

A review of the subpoena indicates that Defendant Stilley did not have to appear before the grand jury in March 2006; Defendant Stilley could have complied with the subpoena simply by delivering the subpoenaed records to Special Agent Shern. Attachment G.

On May 17, 2006 during a telephone conversation between Special Agent Shern and Defendant Stilley, two months after Defendant Stilley's grand jury testimony and his presentation of twenty-one copies of the bound document entitled Response to Subpoena to the grand jury (Attachment H - Discovery GJ707 to GJ732), Special Agent Shern informed Defendant Stilley that he was not under investigation in response to Defendant Stilley's query. However, Special Agent Shern was not lying when he made the statement to Defendant Stilley, and Special Agent Shern did not make the statement "in order to get Oscar Stilley to testify before the grand jury."[5]   Importantly, no misrepresentation regarding Defendant Stilley's status, inadvertent or otherwise, was made prior to Defendant Stilley's only appearance before the grand jury on March 9, 2006.

A defendant is not entitled to suppression of his testimony when not advised of target status prior to testifying.  *United States v. Myers*, 123 F.3d 350, 355-56 (6th Cir. 1997).

---

[5]     Defendant Stilley, a criminal defense attorney, testified before the grand jury on March 9, 2006; his subsequent grand jury appearance was excused.  Defendant Stilley did not reappear before the grand jury after March 9, 2006.

Neither the Self-incrimination Clause nor the Due Process Clause of the Fifth Amendment require the government to notify a grand jury witness of their target status.  "Because target witness status neither enlarges nor diminishes the constitutional protection against compelled self-incrimination, potential-defendant warnings add nothing of value to protection of Fifth Amendment rights."  *United States v. Washington*, 431 U.S. 181, 190 (1977).  *See Myers*, 123 F.3d at 355-56 (Defendant, who was target of grand jury investigation, was not entitled to suppression of his grand jury testimony based on government's failure to provide target letter prior to his testimony).  The remedy for this type of violation of Departmental policy is to bring the matter to the attention of the Office of Professional Responsibility. *Myers*, 123 F.3d at 357-58; *United States v. Gillespie*, 974 F.2d 796, 802 (7th Cir. 1992); *United States v. Pacheco-Ortiz*, 889 F.2d 301, 310-11 (1st Cir. 1989); *see also United States v. Gross*, 41 F.Supp.2d 1096, 1097 (C. D. Cal. 1999).

As became apparent after the documents from the *Eddy Patterson et al.* prosecution were unsealed, the Assistant U.S. Attorneys handling the investigation and prosecution of the Pattersons considered Defendants Springer and Stilley to be under investigation as early as May 2004.  Prior to reviewing the document titled Joint Sentencing Agreement (Docket #75-22), neither Assistant U.S. Attorney Kenneth Snoke, IRS Special Agent Brian Shern, nor the undersigned, were aware that Defendant Stilley was under investigation prior to his March 9, 2006 grand jury appearance.  Records of both the United States Department

of Justice, Tax Division, and the Internal Revenue Service, indicated that the investigation of Defendant Stilley commenced well after Defendant Stilley's grand jury appearance.

These records indicate that in June of 2005, the Internal Revenue Service requested, and the Tax Division authorized, the expansion of the Patterson grand jury investigation to include Defendant Springer.  Attachments A and I.  These records further indicate that in January of 2007, ten months after Defendant Stilley's March 9, 2006 grand jury appearance, the Internal Revenue Service and the Tax Division expanded the ongoing grand jury investigation to include Defendant Stilley as a target.  Attachment D and E.

F.     Conclusion

For the foregoing reasons, each of Defendants' motions to suppress should be denied.  Furthermore, Defendant Springer's Motion for *Franks* Hearing should be denied.

Respectfully submitted,

DAVID E. O'MEILIA
UNITED STATES ATTORNEY


 */s/ Charles A. O'Reilly*
CHARLES A. O'REILLY, CBA NO. 160980
Trial Attorney, Dept. of Justice
KENNETH P. SNOKE, OBA NO. 8437
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma  74119
(918) 382-2700

-15-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of June 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Lindsey Kent Springer
Defendant

Oscar Amos Stilley
Defendant

Robert Williams
Standby Counsel assigned to Lindsey Kent Springer

Charles Robert Burton, IV
Standby Counsel assigned to Oscar Amos Stilley.


*/s/ Charles A. O'Reilly*
Trial Attorney, Dept. of Justice