IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                              Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.

SPRINGER'S REPLY REGARDING OPPOSITION TO SPRINGER'S MOTIONS TO DISMISS

## 1.    Venue

The United States argues that venue is proper in the United States' Northern Judicial District "Oklahoma" because under 18 U.S.C. § 3237 venue is proper where ever the "offense" "begun, continued or completed." Opp at 3.

### A.    Conspiracy Offense

The United States claims "Defendant Springer resided within the Northern District of Oklahoma" for the purpose of venue in Count One. The United States alleges "numerous overt acts" to have been "committed within the Northern District of Oklahoma." The United States agrees all Internal Revenue Districts and District Directors were "abolished" by October, 2000.[1] Opp. at 4 The United States also

---

[1]The United States takes exception to Springer's claim the Internal Revenue District Arkansas-Oklahoma was abolished in the latter part of 1999. Though they cite to evidence all the Internal Revenue Districts were abolished by October, 2000, America did not all just wake up one morning and viola, the

agrees with Springer that section 6091 of Title 26 "governs the place for filing tax returns."  Opp. at 4

The United States decides however to ask this Court to reject United States v. Brewer, 486 F.2d 507,509 (10th Cir. 1973) and the cases cited by the 10th Circuit[2] therein and the holding in U.S. v. Taylor, 828 F.2d 630, 634-635 (10th Cir. 1987).

First, the United States argues that "common sense" is what governs the statutory crimes of Title 18, Section 371, Title 26, Sections 7201 and 7203, when those allegations are premised upon willful failure to file any return.  Opp. at 4.  The argument goes that "words are given their fair meaning in accord with the manifest intent of the lawmakers." citing United States v. Moore, 423U.S. 122, 145 (1975), quoting United States v. Brown, 333 U.S. 18, 25-26 (1948).

Neither sections 7201 or 7203 mention section 6091.  Furthermore, Title 18, Section 371 fails to refer to section 6091.  The United States suggests this Court should construe sections 371, 7201 and 7203, fairly in the "criminal" context.  Opp. at 4.

Count One in paragraph 14 alleges Springer did "refrain from filing forms with

districts were gone.  No, this was a controlled demolition so methodically  done the public and most Federal Judges did not know or were aware of the demolition.

[2]United States v. Gorman, 393 F.2d 209, 213-214 (7th Cir.), cert. denied, 393 U.S. 832, 89 S.Ct. 102, 21 L.Ed.2d 103 (1968); Yarborough v. United States, 230 F.2d 56, 58-59 (4th Cir.), cert. denied, 351 U.S. 969, 76 S.Ct. 1034, 100 L.Ed. 1487 (1956); Bowles v. United States, 73 F.2d 772, 773-774 (4th Cir. 1934), cert. denied, 294 U.S. 710, 55 S.Ct. 506, 79 L.Ed. 1245 (1935); United States v. Commerford, 64 F.2d 28, 32-33 (2d Cir.), cert. denied, 289 U.S. 759, 53 S.Ct. 792, 77 L.Ed. 1502 (1933). See also United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1915); Weaver v. United States, 298 F.2d 496 (5th Cir. 1962).

the Internal Revenue Service, including Forms 1040 and 1099." The United States cites to the 7th Circuits holding in United States v. Patridge, 507 F.3d 1092, 1094 (7th Cir. 2007) which found "that § 7203 requires a 'return' but does not define that word or require anyone to use Form 1040, or any 'official' form at all." at 1095.

In Counts Two through Six the Grand Jury alleged Springer failed to file "U.S. Individual Income Tax Returns" as "required by law."

The United States takes the position now that it was not the law that required Springer to "file" a "return" but rather because there were no internal revenue districts or district directors, section 6091(b)(1)(B)(i) controls the "returns" Springer was "required" to "make" or "file." Opp. at 4

Title 26, Section 6091(b)(1)(B)(I) states:

"Exception Returns of - (I) persons who have no legal residence or principal place of business in any internal revenue district...shall be made at such place as the Secretary may by regulations designate."

In order to reach this regulation, this Court must first make the conclusion that "internal revenue districts" or "district directors" are not a place "provided for by this title." See Title 26, Section 6091(a). Section 6091(b)(1)(A) clearly and unmistakably directs "in the case of a return of tax required under authority of part II of this subchapter...a return shall be made to the Secretary in the internal revenue district in which is located the legal residence.... of the person making the return" or at "a service center serving the internal revenue district referred to in clause (I), as the

Secretary my by regulation designate."

It should first be obvious there are no service centers serving any internal revenue districts.  The United States does not argue otherwise.

Springer contends because section 6091 provide the place of "internal revenue districts" that Congress has not given to the Secretary the power to prescribe by regulation the meaning of the crime of failure to file returns under section 7201 or 7203.  Furthermore, Title 18, section 371, encompassing failing to provide information must hinge upon section 6091.

It is a fundamental tenet of due process that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939). A criminal statute is therefore invalid if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden."  United States v. Batchelder, 442 U.S. 114, 123 (1979)

Sections 371, 7201 and 7203, taken with section 6091, are clearly then beyond ambiguous.

The United States cannot rest though as they offer a new Department of Justice interpretation of Title 26, Section 6091.  Since there are no internal revenue districts or district directors, (b)(1)(B)(I) purportedly kicks in because Springer does not have a "legal residence" in any "internal revenue district."    Opp. at 5. Accordingly, as the argument goes, "the Secretary may designate an alternative

place." Opp. at 5.

This "place" the United States argues is specified, for purpose of a crime under section 371, 7201 and 7203, by the Secretary, is found at 26 CFR 1.6091-2. There are two reasons why this argument fails miserably. The first is that 26 CFR 1.6091-2 for the years 2000 through 2004 read as follows:

> (a) *Individuals, estates, and trusts.* (1) Except as provided in paragraph (c) of this section, income tax returns of individuals, estates, and trusts **shall be filed with the district director for the internal revenue district in which is located the legal residence or principal place of business of the person required to make the return**, or, if such person has no legal residence or principal place of business in any internal revenue district, with the **District Director at Baltimore, Md. 21202.**

See Exhibit 29

So for 2000 through 2004 there were no internal revenue districts and no District Directors, including in Baltimore. The United States clearly then argues:

> The Secretary of the Treasury has so designated. Title 26, Code of Federal Regulations, Section 1.6091-2 clearly provides that "income tax returns of individuals, estates, and trusts shall be filed **with any person assigned the responsibility to receive returns at the local Internal Revenue Service office that serves the legal residence or principal place of business of the person required to make the return.**" **Prior to, as well as after, the September 16, 2004 revision of Section 1.6091, taxpayers were afforded the option of filing their tax returns at the local office of the Internal Revenue Service**, or with the Internal Revenue Service Center servicing their residence. The local office of the Internal Revenue Service serving Defendant Springer's legal residence and principal place of business is located at 1645 S. 101st East Avenue, Tulsa, Oklahoma 74128, and was located at that address at all times relevant to the Indictment.

Opp. at 5.

The scandalous argument here could not be more clear.  The United States says "Prior to as well as after, the September 16, 2004 revision of section 1.6091, taxpayers were afforded the option of filing returns at the local office of the Internal Revenue Service."  As Springer clearly shows the regulation prior to the 2005 filing year never directs any "local" anything whatsoever.

What does being afforded mean for the purpose of an alleged federal crime?  As Springer argued in his Motion to Dismiss, the claims against Springer are "specific intent crimes." Denbo v. U.S. 988 F.2d 1029 (10th Cir. 1993)("we're talking about criminal intent in the one area [sections 7201 and 7203]").

Springer certainly objects to any construction that Congress deferred to the Secretary of the Treasury the power to determine where violations of section 371, 7201 and 7203 purportedly begin by "regulation."

Having said that, even the regulation does not save the United States failures. In Screws v. U.S., 325 U.S. 91, 102 (1945) the Supreme Court said among other things, "In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence.'"

The United States argues such is not to be though in this case.  The United States is wrong and they know they are wrong. In *United States v. Mersky*, 361 U.S. 431, (1960):

> **An administrative regulation, of course, is not a "statute."** While in practical effect regulations may be called "**little laws**,"  they

are at most but offspring of statutes..... **This Court has always construed the Criminal Appeals Act narrowly, limiting it strictly "to the instances specified**." *United States v. Borden Co.*, 308 U.S. 188, 192 (1939). See also *United States v. Swift & Co.*, 318 U.S. 442 (1943). **Here the statute is not complete by itself, since it merely declares the range of its operation and leaves to its progeny the means to be utilized in the effectuation of its command**. But it is the statute which creates the offense of the willful removal of the labels of origin and provides the punishment for violations. The regulations, on the other hand, prescribe the identifying language of the label itself, and assign the resulting tags to their respective geographical areas. Once promulgated, these regulations, called for by the statute itself, have the force of law, and violations thereof incur criminal prosecutions, just as if all the details had been incorporated into the congressional language. **The result is that neither the statute nor the regulations are complete without the other, and only together do they have any force. In effect, therefore, the construction of one necessarily involves the construction of the other**.

Id. @ 438

Next is the assertion that the new regulation will save the claims in 2005[3]

because for that year the regulation stated:

> (a) *Individuals, estates, and trusts*. (1)Except as provided in paragraph (c) of this section, income tax returns of individuals, estates, and trusts shall be filed with **any person assigned the responsibility to receive returns at the local Internal Revenue Service office** that serves the legal residence or principal place of business of the person required to make the return.

Out of this regulation construed in the criminal context the United States asks

---

[3]Although the United States argues the new regulation came to be in September 2004, the actual date upon Exhibit 30 is April 1, 2005. If this Court construes the new regulation to reach the 2004 tax year, which would clearly be ex post facto and in violation of the Constitution, Springer suggests this opposition to the new regulation argument by the United States be equally applied to 2004 and any other year just to be thorough.

this Court conclude that the alleged crimes in Counts One through Six all occurred at 1645 S. 101st East Avenue, Tulsa, Oklahoma 74128, because this is the "Local Internal Revenue Service office."

So by regulation the crimes alleged in Counts One through Six occurred according to 26 CFR 1.6091-2 and the Secretary's power executed pursuant to that which Congress gave under Title 26, Section 6091(b)(1)(B)(I).

The Grand Jury indictment offered three places Austin Texas, Tulsa, or Commissioner of Internal Revenue.  The United States, who has had complete control of their theory and time, now tells this Court the "returns" or "reports" were not required in Austin, Texas, or with the Commissioner, as the Grand Jury alleges, but now only at 1645 S. 101st East Avenue, Tulsa, Oklahoma 74128.

Regulations are to be "published in the Federal Register, and constructive notice of their contents is thus [to be] given all persons affected by them." Yakus v. U.S., 321 U.S. 414, 435 (1944) Penal provisions of a statute are applicable only to violations of a regulation which are willful. Id. There is no regulation identified by the United States that directs 1645 S. 101st East Avenue, Tulsa, Oklahoma 74128 is the specific place information is to be provided after April 1, 2005 by persons living where Springer lives on Form 1040 or 1099.  What a three ring circus!

The United States is now arguing Springer and Stilley conspired to deprive the IRS at 1645 S. 101st East Avenue, Tulsa, Oklahoma 74128 of information they were entitled to pursuant to 26 CFR 1.6091-2(2005).

Such a construction starves this Court of venue and Jurisdiction in Counts One, Two, Three, Five and Six directly.

The United States argument regarding the new regulation is an attempt to save Count Four.  Count Four alleges beginning in January, 2005, and continuing to January, 2009, in the Northern District.

Any purported "return" or "U.S. Individual Income Tax" form for the "calender year "2005" the United States now argues was required to be "filed" at the "local office" in "Tulsa."  The instruction by the Commission says "Where do you file" and answers that question by stating for "Oklahoma" in "Austin, Texas."

Springer understands the "instructions" by the Commissioner are less than trustworthy, but the United States arguing he meant to tell the citizens of the State of Oklahoma to provide their information at 1645 S. 101st East Avenue, Tulsa, Oklahoma 74128, is beyond absurd.

Springer simply was not required to say or do anything at the "local office" in Tulsa and the United States points to no statute or regulation interpreting any statute, that says otherwise.  Regardless of the year 2000, 2002, 2003, 2004 and 2005. The outcome is the same.  There were no internal revenue districts and no District Directors and thus Springer was not "required by law" to say or do anything within the jurisdiction of this Court.

9

### B.     Tax Evasion Offense

Counts Two, Three and Four, each suffer from the same defect explained above for Count One.  Springer incorporates the argument above for Count One in reply to Counts Two, Three and Four.

In addition, Springer addresses the "continuing" offense theory advanced by the United States.  The United States argues the Grand Jury Tax Evasion Theory is premised upon Springer's failure to file income tax information on some form of return for calender years 2002, 2003 and 2005.

Springer was not required to report any of the money he received to the IRS in Tulsa on Form 1040 or 1099 nor on any specific date. "Willfulness, as construed by our prior decisions in criminal tax cases, **requires the Government to prove that the law imposed a duty on the defendant**, <u>that the defendant knew of this duty</u>, and that he voluntarily and intentionally violated that duty." Cheek v. United States, 498 U.S. 192, 200-2001 (1991) (slip op., at 7) ("Congress has . . . softened the impact of the common law presumption [that ignorance of the law is no defense to criminal prosecution] **by making specific intent to violate the law** an element of certain federal criminal tax offenses"); 26 U.S.C. §§ 7201, 7203 (criminalizing willful evasion of taxes and willful failure to file a return); See United States v. Thompson/Center, 504 U.S. 505, 517-518 (1992) "In certain cases involving willful violations of the tax laws, we have concluded that the jury must find that the defendant was aware of the specific provision of the tax code that he was charged with violating." Bryan v.

United Statse, 524 U.S. 184, 194 (1998); quoting , Cheek v. United States, 498 U.S. 192, 201 (1991).

Because there were no "internal revenue districts" and no "District Directors" there was no place the law required Springer to provide anything for these calender years to the Internal Revenue Service, as a matter of law.    How could Springer intend to fail to act, as purportedly "required by law," where there is no place for any such "requirement" to specifically occur?

### C.    Willful Failure to File Offense

Incorporating the arguments above as to Counts One, Two, Three and Four, Springer replies to the United States opposition as it relates to Counts Five and Six. Counts Five and Six are the purported violations of section 7203 purportedly taking place in the Northern District or in Texas or Washington D.C.      In these claims of the purported Grand Jury Springer is alleged to have "willfully failed to file an income tax return." by April 15, 2003 and 2005.   Section 7203 directs "at the times" but leaves out "at the place" and there is no mention of where the purported crime of failing to  make a return is to have occurred.

There is simply no way to show Springer willfully failed to make or file anything with "as required by law" without the complete theory of law giving the public such notice of what the law requires.   There are no internal revenue districts and no District Directors to which section 6091 would then complete for a section 7203 violation.

11

2.      **Paperwork Reduction Act of 1995**

The United States argues Springer's "complete defense" under the Paperwork Reduction Act of 1995" arguing the Form 1040 for 2000 through 2005 does not contain the required information IRS certified to OMB such requests would contain, is "frivolous."  Opp. at

The United States cites to Salberg v. United States, 969 F.2d 379, 384 (7th Cir. 1992), United States v. Patridge, 507 F.3d 1092, 1094 (7th Cir. 2007),James v. United States, 970 F.2d 750, 753 n.6 (10th Cir. 1992), United States v. Holden, 963 F.2d 1114, 1116 (8th Cir. 1992), United States v. Dawes, 951 F.2d 1189, 1191-93 (10th Cir. 1991) and United States v. Wunder, 919 F.2d 34, 38 (6th Cir. 1990).

In Salberg the theory was that section 7203 was the statute the required a return.  Patridge affirmed Salberg but added the twist the United States evades in their opposition.  In Patridge the 7th Circuit stated:

> One reason for this is that **§7203 requires a "return" but does not define that word or require anyone to use Form 1040, or any "official" form at all**.

Patridge at 1095

Springer is certain the United States did not offer such theory to the Grand Jury as paragraph 14 of Count One mentions the Form 1040 specifically.  The United States usage of the 10th Circuit footnote in James is scandalous behavior.  The note "noting that the lack of an OMB number on IRS notices and forms does not violate PRA" clearly is being taken out of context by the United States.  The Dawes Court

12

answers this question and states:

> We would be inclined to follow the general analysis of Wunder and Hicks and hold that the operation of the PRA in these circumstances did not repeal the criminal sanctions for failing to file an income tax return because the obligation to file is a statutory one. However, **we are not compelled to rest our opinion on the statutory origin theory** because we find the analysis of other courts which have considered the issue to be persuasive.

Dawes at 1193.

"The 1040 form is the information collection request which arguably must comply with the PRA. It is through the 1040 form that the government obtains all of the tax information it requires." Id.  And "As long as the 1040 form complies with the Act, nothing more is required."  Id.

The United States scandalous behavior does not stop with Dawes or the fact it takes a footnote in James and makes it the law of the land.  The United States completely ignores a criminal published decision by the 10th Circuit in 2007.

In U.S. v. CHISUM, 502 F.3d 1237, 1243 (10th Cir. 2007), the 10th Circuit held:

> The PRA, 44 U.S.C. §§ 3501-20, precludes the imposition of any penalty against a person for "failing to comply with a collection of information" if either (1) it "does not display a valid control number" or (2) the agency fails to alert the person that he or she "is not required to respond to the collection of information unless it displays a valid control number." 44 U.S.C. § 3512(a).  **A § 3512(a) defense may be raised at any time.  *See id.* § 3512(b). Tax forms are covered by the PRA.  *See Dole v. United Steelworkers of Am.*, 494 U.S. 26, 33, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990**). Mr. Chisum contends that "[s]ince there was no proof that Form 1040 was a lawful form under the [PRA], the trial

13

> court erred in failing to grant [his] request [at the sentencing hearing] to dismiss the indictment." Aplt. Br. at 29. **But the PRA protects a person only "for** *failing* **to file information**. It does not protect one who files information which is false." *Collins*, 920 F.2d at 630 n. 13 (internal quotation marks omitted). The charges against Mr. Chisum were predicated on the filing of false information, **not the failure to file. He is therefore not entitled to relief**.

Id. at 1244.

Yet, the United States argues the "complete defense" argued by Springer is "frivolous." Opp. at 6.   The United States admits the Form 1040 does not comply with 5 CFR 1320.8(b)(3).  It is hard to understand the opposition the United States takes to the complete defense Springer makes but one thing holds true.  All agree the Form 1040 does not comply with the certification at section 19 on the Form 83I made by the IRS to OMB for 1998, 2001 and 2004.  Springer supplied these exhibits to the United States on more than one occasion and they refuse to explain where the Form 1040 complies with the certification made by the IRS therein.  None of the Forms comply with this certification and the United States takes no position otherwise.  Had IRS not certified OMB's application Form 83I for 1998, 2001 and 2004, OMB could never have allowed IRS to continue use # 1545-0074 with some form of validity.

## 3.   Duberstein

The United States arrogantly in defiance to the Supreme Court's decision in Commissioner v. Duberstein, 363 U.S. 278, 288 (1960) that "Judge or Jury" must decide whether the money Defendant Springer received is income."  Opp. at 7.

Duberstein states:

> Specifically, the trier of fact must be careful not to allow trial of the issue whether the receipt of a specific payment is a gift to turn into a trial of the tax liability, or of the propriety, as a matter of fiduciary or corporate law, attaching to the conduct of someone else.

Yet, the United States is asking this Court to do the very thing the Supreme Court directed not ever be done.  Furthermore, it is not whether Springer received "income" as the United States has worn that word out, the question is whether Springer received "gross income" as the Grand Jury alleges in Counts Five and Six or "taxable income" as alleged by the Grand Jury in Counts Two, Three and Four.

Title 26, Section 102 clearly says "Gross income does not include the value of property acquired by gift, bequest, or inheretence."  It is the "terms of the gift" that govern this decision. See 102(b)(2).

The United States is asking this Court to find it does not matter whether District Directors or internal revenue districts exist pursuant to section 7201, 7203, or under Title 18, Section 371's theory of impede.  Venue does not matter even though Article III, Section 2, Clause 3 clearly states the trial is to be held in the State where the "crime" was "committed."  The Paperwork Reduction Act of 1995 does not matter regardless of whether they must acknowledge the Chisum decision or instead cite

to a footnote in 1992 clearly involving quiet title and a levy.[4] [5]  And now they inform this Court that what the Supreme Court says or Congress says simply can be set aside by this Court.  Turning the law upside down is not the answer.

The Form 1040 likewise provides an even greater problem for the United States in this degree.   On that form the phrase "adjusted gross income" becomes the "taxable" trigger and not "income" or "gross income" or "taxable income" as they carefully mislead the Grand Jury about.

This Court is required to follow Duberstein and section 102.  The United States explain no reason otherwise.  The United States is asking this Court to have the trial jury decide whether money given Springer was or wasn't a gift.  Opp. at 7.   This Court should dismiss on this admission of intent alone as it clearly shows the United States contempt for the rule of law and the decision by the Supreme Court.

4.      **Substantial Tax Deficiency**

The United States is asking this Court to have Springer guess as to what money given Springer qualifies in their intended theory to be a gift under section 102 or within "adjusted gross income" to make a return.

This Court knows the United States is not required to present anything to the jury it chooses not to.   Directing Springer to spend waisted time going through

---

[4]In 1998, Congress overhauled the IRS and levy notices do require due process.  See Title 26, Section 6330.

[5]Or that section 3512 begins "No person shall be subject to any penalty..."

16

40,000 documents of discovery to determine which gifts the United States intends to argue were not gifts and which ones they accept, is a violation of every rule in the criminal rules.

This is not a case where the United States intends to introduce 1099s or W-2s. This is a case where the United States has offered deals to people in exchange for their altered testimony. In some cases, the testimony changed in less than a week under their own evidence.

Springer will simply ask for the tax records of every person the United States plans to introduce in attempt at establishing some theory of adjusted gross income instead of gifts being intended by those specific persons.

The United States' attempt to suggest the "taxes of another" theory is just the sort of guessing the criminal rules of this Court were written to avoid. The United States cites to See United States v. Wilson, 118 F.3d 228, 231, 236 (4th Cir. 1997) where it asserts an "attorney convicted of attempting to evade a client's taxes." This is even more interesting because it suggests the United States theory is Springer is a client of Stilleys.

Where is it that some Fourth Circuit case in 1997 squarely off point has purported precedential value while Supreme Court and 10th Circuit precedent are extremely ignored? If the United States has its way that place would be in this Court.

5.     **Silence**

The United States argues that "It is not criminal to earn income; therefore, the requirement to file a federal income tax return does not compel an individual to testify against oneself, in violation of the Fifth Amendment of the United States Constitution."  Opp. at 9.

There is many more testimonial applications to what can be derived from the submission of anything on any Form and the United States does not argue otherwise.   The United States did not deny the pervasive regulation of Springer specifically.

Springer cited to Garner and Marchetti and stated:

> In the gambling tax cases, however, making a claim of privilege when the disclosures were requested, i. e., when the returns were due, **would have identified the claimant as a gambler**. The Court therefore forgave **the usual requirement that the claim of privilege be presented for evaluation in favor of a "claim" by silence**. See Marchetti, 390 U.S., at 50. Nonetheless, it was recognized that one who "claimed" the privilege by **refusing to file could be required subsequently to justify his claim of privilege**. See id., at 61. If a particular gambler would not have incriminated himself by filing the tax returns, the privilege would not justify a failure to file.  Garner, 658-659

Fifth Memo at 7

The United States counters:

> In Garner, the Court stated that "the claims of privilege we consider here are only those justified by a fear of self-incrimination other than under the tax laws. Finally, nothing we say here questions the continuing validity of Sullivan's holding that returns must be filed." 424 U.S. at 650, n.3.

Opp. at 10

> Yet, Garner clearly states:

> In the latter cases the Court considered whether the Fifth Amendment was a defense in prosecutions for failure to file the returns required of gamblers in connection **with the federal occupational and excise taxes on gambling**. The Court found that any disclosures made in connection with the payment of **those taxes** tended to incriminate because of the pervasive criminal regulation of gambling activities.

Garner, at 658

The Fifth Amendment is not stuck in 1927 as the United States wishes this Court to argue.  In fact, the entire reason for the Paperwork Reduction Act of 1980 and 1995 was to give the public notice so they could evaluate what they should and should not answer on any specific compliant form.

Then of course is the legislative history of the 1995 PRA which makes it clear that Congress ushered in the Paperwork Reduction Act of 1995, intending to make "unequivocally" "clear" that the Paperwork Reduction Act of 1980 was enacted to "eliminate exemptions from review for several agencies" including the "Internal Revenue Service."  *See House Report, P.L. 104-13 [page 8] at 171-172.*

Because of the inconsistency, the House Report No. 104-37 [page 53] states that the scope, purpose, and requirements of section 3512's current provisions on public enforcement "are unchanged".  Id.   The report states that section 3512 was "amended, however, for purpose of consistency and clarity, and to unequivocally cover all collection of information."  Id.

The United States takes no exception to the claim by Springer there is a pervasive regulation of purported labeled "tax defiers" and "tax protestors." They do not deny the claim by Springer this area of regulation is heavier regulated than gambling at any time whatsoever.

Furthermore, they do not take exception Springer has been under criminal investigation by the IRS since at least 1995. Count Four shows the contempt for the Fifth Amendment the United States has in the case against Springer.

Springer is told on September 16, 2005, he is being criminally investigated by Brian Shern, Melody Noble Nelson and Douglas Horn, in relation to his conduct attending criminal trials of certain persons, including the Patterson Trial in 2003. The United States gives no explanation as to how Springer could say or do anything whatsoever with the IRS and whatever Springer were to have said or done, that said or done would have had a likelihood of being used against Springer as is being done in this case currently.

The United States has simply turned the general notion of gathering income tax information into a criminal investigation of Springer. The United States argues the earning of income is not criminal.  Then why have they sought a Grand Jury indictment over and over again for the last umpteen years until they apparently succeeded?  If Springer was not alleged to have had "income" as a crime then why is "substantial tax deficiency" an element of a tax evasion charge?

Under the United States theory the earning of adjusted gross income is

criminal and amnesty is allowed once certain theories are said to have been satisfied.

Dismissal is warranted based upon proper application of the Fifth Amendment as Springer was given no alternative other than to remain silent.

## 6.      Count One Defraud

The United States argues Springer is frivolous and without merit regarding the indictment failing to allege the functions by statute the object of the conspiracy was to impede or impair.  Count one says "computation, ascertain, assessment, and collection" of taxes owed by Springer.

Presuming the IRS has a function of computing and collecting, the ascertaining and assessment stand in their way.  To ascertain clearly would mean to gather information.   Besides the problem with the Form 1040 gathering instruments, and the Fifth Amendment application in Springer's case, the only argument made, or could be made, is Springer did not voluntarily supply the information the IRS wished to ascertain.  This is why Duberstein is so problematic for the United States in its theory.  In order to get to ascertain the United States must get past so many road blocks according to the law and Supreme Court decisions. Assessment and Collection are clearly not available to the United States because of the "abolished" District Directors.

Title 26, Section 6203 and 6301 lead to 26 CFR 301.6203-1 and 301.6301-1

which both rely solely upon the District Director to make "assessments" and "collect" taxes.  Since those positions do not exist there is no way Springer could have impeded the District Director's function in anyway.

This leaves "computation" which means what?  Springer and Stilley conspired to impede the IRS' computation of Springer's adjusted gross income?  There is no allegation supporting such a claim.  Who is the person assigned to compute Springer's adjusted gross income that Springer and Stilley intended to impede?  The United States cannot show Springer was aware of any computing whatsoever.

The United States admits the conspiracies object must have been to "violate the law."

> In the Five elements they agree they are as follows:
>
> 1. The defendant agreed with at least one other person to violate the law;
>
> 2. One of the conspirators engaged in at least one overt act furthering the conspiracy's objective;
>
> 3. The defendant knew the essential objective of the conspiracy;
>
> 4. The defendant knowingly and voluntarily participated;
>
> 5. There was interdependence among the members of the conspiracy, that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

Opp. at 11

Yet, the United States then argues "Defendants assert that the Government 'must prove Springer and Stilley entered into an agreement to violate this law,' and appear to be arguing that there must be some other law that the Defendants conspired to violate."  Opp. at 13.

The United States concludes that it is the second part of section 371 under Title 18 that this Court should instruct the jury Stilley and Springer had as an object to violate.  Such a response clearly would make no sense.

For instance, In the Five elements they agree imputing section 371, they would read as follows:

1. The defendant agreed with at least one other person to violate **section 371,**

2. One of the conspirators engaged in at least one overt act furthering the conspiracy's objective to **violate section 371**;

3. The defendant knew the essential objective of the conspiracy was to **violate section 371**;

4. The defendant knowingly and voluntarily participated in the **violation of section 371**;

5. There was interdependence among the members of the conspiracy, that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy **to violate section 371.**

Section 371 is entitled Conspiracy ...to Defraud the United States. "We begin with the 18 U.S.C. § 371 conspiracy charge. In order to convict a defendant of that offense, the government must prove beyond a reasonable doubt that (1) the defendant entered into an agreement; (2) the agreement involved a violation of the law; (3) one of the members of the conspiracy committed an overt act; (4) the overt act was in furtherance of the conspiracy's object; and (5) the defendant wilfully entered the conspiracy." United States v. Dazey, 403 F.3d 1147, 1159 (10th Cir. 2005). "The core of a conspiracy is an agreement to commit an unlawful act."

United States v. Morehead, 959 F.2d 1489, 1500 (10th Cir. 1992) (quoting United States v. Esparsen, 930 F.2d 1461, 1471 (10th Cir. 1991)). "[T]he critical inquiry is whether the circumstances, acts, and conduct of the parties are of such a character that the minds of reasonable men may conclude therefrom that an unlawful agreement exists." Id. (quoting United States v. Kendall, 766 F.2d 1426, 1431 (10th Cir. 1985)). The existence of the agreement to violate the law may be inferred from a "unity of purpose or common design and understanding" among conspirators to accomplish the objects of the conspiracy. Kendall, 766 F.2d at 1431 quoted in U.S. v. Thompson, 518 F.3d 832, 853 (10th Cir. 2008)

Only if all five of the elements are proven can a jury find section 371 was violated.  The United States is asking this Court to find that section 371 is violated when the object of an agreement is to violate section 371.   That argument is circular and ridiculous.   This is why the indictment on the conspiracy is much about nothing.

What law did the Grand Jury find Springer and Stilley had as an objective agreeing to violate the law?  The indictment does not say.  All five elements show the object does not have to be complete to have a violation of section 371 yet each of the elements would need incorporate section 371 and the "impede, impair obstruct and defeat" the IRS functions listed in order to then end up with such violation.

Section 371 clearly says "to defraud...any agency there of" and defraud is

defined in United States v. Caldwell, 989 F.2d 1056 (9th Cir. 1993), as "through fraudulent or dishonest means," and "by dishonest means." Id. at 1060.  The Ninth Circuit defined conspiracy to defraud the IRS under 18 U.S.C. § 371 as requiring agreement to impede a lawful function of the government by "deceitful or dishonest means." Id. at 1059. It reversed a conviction because the district court's instructions did not make it clear that the jury had to find the means were deceitful or dishonest; the court's instruction that the jury find "a joint plan to obstruct, impede, impair and defeat" was not sufficiently specific. The Caldwell court did not prescribe a specific form of jury instruction, but held that it had to include the "dishonest means" requirement. See id. at 1059 n. 3; see U.S. v. Scott, 37 F.3d 1564 (10th Cir. 1994) Hammerschmidt itself stated that "[t]o conspire to defraud the United States means primarily to cheat the government out of property or money" and "usually" involves "trick, deceit, chicane, or overreaching." 265 U.S. at 188, 44 S.Ct. at 512.

The 10th Circuit in U.S. v. BEDFORD, 536 F.3d 1148, 1155 (10th Cir. 2008) stated there must be a "substantive crime of defrauding the government."
 Section 371 cannot be the object of the conspiracy and the statute violated if all the elements are found.

**7.    Meadors and the Fourth and Fifth Amendment**

The United States claims Meadors was not working with criminal investigators or the civil/criminal coordinator, David Reed in Oklahoma City.  The evidence

demonstrates otherwise.  As Springer clearly shows in his Motion to Suppress and for a Frank's Hearing, Meadors was actively involved with Reed and the Criminal Investigation of Springer as early as 2003.  See Exhibits 5,6 and 7 therein. The United States admits she worked as the cooperative Revenue Agent in the Patterson case in 2003 which she worked side by side with CI Agent Tim Arsenault.  Arsenault clearly was investigating Springer during the Patterson Trial.  See Exhibit Exhibit 12 (Arsenault Memo 5.12.2004) and 20 (Shern purported Affidavit.)

The United States turning to hide behind a Grand Jury "indicted them" to cover for selective prosecution is equally ridiculous.  The United States clearly took no exception to their "tax defier initiative" nor could they.  This initiative clearly was aimed at people outspoken against the crimes of the Internal Revenue Service. Springer clearly fell within that category which is clearly an arbitrary classification. There is not a single code section of law that uses the phrase "tax defier."  You cannot get more arbitrary than that.

The United States argues Shern was not lying when he told Stilley he was not under criminal investigation in June of 2006. Douglas Horn's request for permission from the Department of Justice in December of 2005 to subpoena Oscar Stilley clearly shows the United States is continuing to lie to this Court.  See Exhibit 31.

The United States admits Oscar Stilley asked if he was under criminal investigation and even admits they lied to him.  Yet they argue they can use his testimony against him and Springer notwithstanding the Fifth Amendment.  These

United States Attorneys making such argument need to be fired.  No person shall be compelled in any criminal case to be a witness against himself.   The United States argues these words ring hollow.  Springer wonders why the great men and women of our armed forces continue to put on the uniform and shoulder such a burden when the lawyers allowed to continue in their civil jobs render those words thought being protected as meaningless.

In footnote 7 the United States argues Shern's lie was innocent.  They argue Shern did not know Stilley was a target.   Opp at 18, fn 7.   The evidence is overwhelming against such a posture.  On page 13 of Exhibit 20[6] attached to Springer's Motion to Suppress and for a Frank's Hearing, Shern says "Stilley has not filed an income tax return since before 1990." See paragraph 17 therein.

Shern states during the Patterson "investigation" that investigation was expanded to include Springer.  Exhibit 20, at 3.  On May 6, 2004, Special Agent Tim Arsenault interviewed Patterson after Patterson "waived" his attorney client privilege regarding Oscar Stilley.  Exhibit 20, pg. 4.

To argue Shern innocently in March 2006 lied to Stilley about whether he was a target of Shern's investigation while Shern served a subpoena on Stilley to testify before a Grand Jury is simply fraudulent and beyond prosecutorial misconduct.

O'Rielly may not have known about the investigation of Stilley, but clearly Mr.

---

[6]All these exhibits are attached to Springer's Motion for Frank's Hearing and to Suppress.

27

Snoke and Shern were more than aware. Douglas Horn was head of the criminal division during this time period between 2001 and 2007. See Exhibit 32. Snoke told Stilley during a hearing Stilley attempted to represent a defendant named Blackstock that Stilley should not be allowed to represent Blackstock because he was under ongoing investigation by the Northern District's Office. In June of 2006, at the same time Stilley was to provide additional information to Shern, Snoke appears at the arraignment of Blackstock and raises a conflict of interest charge because of the criminal investigation. See Exhibit 33.

The United States argues it was not until 16 months after the Patterson case was closed that Springer was added to that Grand Jury investigation. Opp. at 20. The evidence says otherwise and Mr. O'Rielly no longer can maintain his innocence if he continues to argue what the evidence he has before him clearly shows. See Exhibit 5,6,7,8,11,1213,20 and 2.4

CONCLUSION

This Court should grant each and every Motion to Dismiss filed by Springer for the reasons stated therein, the reasons agreed to by the United States, and as explained in more detail herein.

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

28

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Reply regarding Opposition to his Motions to Dismiss by the United Statse was ecf'd

on  June  15, 2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature