**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.**    **09-CR-043-SPF** |
| | ) | |
| **LINDSEY KENT SPRINGER,** | ) | |
| **OSCAR AMOS STILLEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**UNITED STATES' MOTION TO QUASH SUBPOENAS**

The United States of America, by and through its attorneys, Thomas Scott Woodward,

Acting United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke,

Assistant United States Attorney, and Charles A. O'Reilly, Special Assistant U.S. Attorney,

hereby respectfully moves this Court to enter an order quashing the subpoenas *duces tecum* for

testimony and documents issued by Defendant Lindsey K. Springer directing the individuals

identified hereafter to appear, produce documents and testify in the United States District Court

for the Northern District of Oklahoma on July 2, 2009 at 9:00 a.m.  These individuals include:

Internal Revenue Service employees Kathy Beckner, Donna Meadors, Brian Shern, and Donald

Shoemake; United States Department of Justice employee Doug Horn; former Internal Revenue

Service employee William Taylor; and former Department of Justice employee Melody Nelson.

The proceeding currently scheduled for July 2, 2009 is for a hearing on the Defendant Springer's

Motion on a *Franks* issue, Motion to Suppress, and Motion for Bill of Particulars.  Also served

with subpoenas *duces tecum* were Eddy and Judith Patterson.  Copies of the subpoenas *duces*

*tecum* and attachments are included as Exhibit A.

These subpoenas, issued without compliance with the *Touhy* regulations and in violation of the Rules of Criminal Procedure, are a transparent attempt to waste the Government attorneys' and agents' time; the subpoenas are not issued in good faith.

There are four independent bases to quash the subpoenas. First, the subpoenas served on the employees of the United States (each individual except the Pattersons) must be quashed because Defendant Springer did not comply with the procedures set forth pursuant to Title 5, United States Code Section 301.[1] Second, the subpoenas must be quashed because compliance is both unreasonable and oppressive under Rule 17(c) of the Federal Rules of Criminal Procedure since the subpoenas (1) do not request specific or relevant documents, and (2) the Government has a strong interest in preserving the confidentiality of its investigative methodologies. Moreover, the request is not made in good faith. Third, the documents sought pursuant to the subpoenas appear to have already been turned over to the defense pursuant to the Government's discovery obligations. Finally, this request constitutes an attempt to circumvent the limitations on disclosure established by Rule 16(a)(2) of the Federal Rules of Criminal Procedure and Title 18, United States Code Section 3500 et seq. Accordingly, the United States respectfully requests that this Court enter an order quashing the subpoenas *duces tecum*.

## I.    BACKGROUND

By order dated April 22, 2009, the Court ordered a hearing on July 2, 2009 at 9:00 a.m.[2]

---

[1]    The regulations enacted pursuant to 5 U.S.C. §301, generally termed *Touhy* regulations, constitute an absolute condition precedent to compliance with subpoenas served on employees of the United States.

[2]    The original date for the hearing was July 9. However, upon motion of the Government, the date was moved to July 2, 2009. Doc. 49 and 50.

on Motion for *Franks* issue and/or Suppress, if necessary.  By order dated June 17, 2009, the

Court added consideration of Defendant Springer's Motion for Bill of Particulars to the hearing.

Defendant Springer served  subpoenas *duces tecum* directing Special Agents Kathy

Beckner,  Donna Meadors, Brian Shern and Donald Shoemake, former Assistant U.S. Attorney

Melody Nelson, Assistant U.S. Attorney Doug Horn and former Internal Revenue Service

Supervisory Special Agent William Taylor to testify and produce documents before the Court on

July 2, 2009.  A copy of the subpoenas *duces tecum*, respectively, is attached as Exhibit A.

Defendant Springer served the Pattersons, Meadors, Shern, Shoemake, Beckner, and Nelson on

Thursday, June 25, one week prior to the date of the hearing.  Assistant U.S. Attorney Horn was

served on the evening of Monday, June 29.  The materials sought pursuant to the various

subpoenas appear to largely consist of the materials already provided to Defendants Springer and

Stilley in discovery as indicated in the attached discovery index.  Exhibit B.

## II.     LEGAL BACKGROUND

### 1. Compliance with the Code of Federal Regulations.

Titles 31 C.F.R §§ 1.8 et seq., 26 C.F.R. §§ 301.9000-1 *et seq*., and 28 C.F,R. §§ 16.21 *et*

*seq*. define the requirements that must be met before compliance with subpoena requests for

testimony or document production from employees of the Internal Revenue Service and the

Department of Justice.  Title 31 C.F.R. § 1.11(c) and 26 C.F.R. § 9000-4 prohibit an Internal

Revenue Service employee to provide testimony or documents without the prior authorization of

the appropriate agency counsel.  Similarly, 31 C.F.R. § 1.11(c) and 28 C.F.R. § 16.27 prohibit a

Department of Justice employee to provide testimony or documents without prior authorization.

The party requesting the testimony or documents must comply with authorization

procedures. *See United States. v. Allen*, 554 F.2d 398, 406 (10th Cir. 1977) (noting that the defendant made no showing that a request for testimony had been made or approved and granting Government's motion to quash).  The party requesting the testimony or documents must define the scope of the request so the agency counsel can assess whether the disclosure is proper or lawful. *Id*.

Title 31 C.F.R. § 1.11(e) provides a nonexclusive list of factors to be considered by the agency counsel, including burdensomeness of the demand, its relevance, reasonableness of its scope, and the time or resources it would take to respond. *Id.*  Ordinarily, compliance with a subpoena is not authorized if the disclosure violates a statute, executive order or regulation, or if the integrity of the Department's internal processes is compromised. *Id.*  When compliance with subpoenas is not authorized, the employee is directed not to testify or provide documents. Furthermore, 26 C.F.R. §§301.9000-1 *et seq*. prescribes additional procedures which must be followed when subpoenaing an employee of the Internal Revenue Service.  The legal tribunal cannot hold in contempt a subordinate federal officer who refuses to testify or produce information in response to a court order until compliance with subpoenas is authorized pursuant to the agency regulations.  *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).  *See also Kwan Fai Mak v. F.B.I.*, 252 F.3d 1089 (9th Cir. 2001) (stating that "in general, federal officials could not be held in contempt for failing to disclose information demanded").

Moreover, an employee who testifies or produces documents without authorization is "subject to administrative discipline, up to an including dismissal" and may incur criminal liability. 26 C.F.R § 301.9000-4(h).

Compliance with 31 C.F.R. §§ 1.8 *et seq*., 26 C.F.R. §§ 301.9000-1 *et seq*. and 28 C,F,R.

§§ 16.21 *et seq*. constitutes an absolute condition precedent to compliance with the subpoenas served on the employees of the Internal Revenue Service.

**2. Rule 17(c) Standard**.

A court can quash a subpoena if compliance with it is either unreasonable or oppressive. Fed. R. Crim. P. 17(c).  In *United States v. Nixon*,  418 U.S. 683, 699-700 (1974), the Supreme Court adopted the formulation enunciated in *United States v. Ioazia*, 13 F.R.D. 335, 338 (SDNY 1952) as to the required showing under Rule 17(c). The party requesting production of documents must show:

1)      That the documents are evidentiary and relevant;

2)      That they are not otherwise procurable reasonably in advance of trial by exercise of due diligence:

3)      That the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial;

4)      That the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 700 (quoting *Ioazia*, 13 F.R.D. at 338).

Based on this formulation, *Nixon* coined a three-prong test for determining whether a subpoena is defensible under Rule 17(c): the subpoena must be (1) relevant, (2) admissible, and (3) requested with adequate specificity. *Id.* at 700.  All three prongs must be satisfied.  *See, e.g., United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006).

The Tenth Circuit has adopted the test set forth in *Nixon*.  *United States v. Winner*, 641 F.2d 825, 833 (10th Cir. 1981); *United States v. Abdush-Shakur*, 465 F.3d at 458. "[S]pecificity and relevance elements require more than the title of a document and conjecture to

its contents." *United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992).  A defendant in *Arditti*

asserted that Internal Revenue Service documents that he subpoenaed were relevant "to his lack

of predisposition for his entrapment and outrageous-conduct defenses."  *Arditti*, 955 F.2d at 346.

The Fifth Circuit found that the defendant did not meet his burden of showing relevance and

specificity under Rule 17(c) since he did not set forth what the subpoenaed materials contain,

forcing the court to speculate as to the specific nature of their contents and its relevance.  *Id.*

"Conclusory statements do not establish relevance." *United States v. Abdush-Shakur*, 465 F.3D at

468.

Even if relevance, admissibility and specificity were established, a court may nevertheless

quash a subpoena if (1) the  burden of producing subpoenaed materials outweighs the relevance

of the requested materials or (2) interests of the party required to produce subpoenaed materials

prevail. *See United States v. Hardy*, 224 F.3d 752, 756 (8th Cir. 2000) (holding a subpoena to be

oppressive because it would require the police department to spend seventeen hours of listening

to the tapes to determine which communications were relevant to defendant's case); *United

States v. Under Seal*, 478 F.3d 581, 587 (4th Cir. 2007) (upholding balancing of interests of the

parties where compliance with a subpoena by the city would compromise confidentiality of the

investigation).

**3. The relationship between Rules 16 and 17**.

Rule 16 does not authorize "the discovery or inspection of reports, memoranda, or other

internal government documents made by an attorney for the government or other government

agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2).  The

Supreme Court in *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220-21 (1951), discussed

the relationship between Rules 16 and 17, and warned that Rule 17 must be read in conjunction

with Rule 16:

> It was not intended by Rule 16 to give a limited right of discovery, and then by
> Rule 17 to give a right of discovery in the broadest terms. . . . Rule 17(c) was not
> intended to provide additional means of discovery. . . . it [the court] should be
> solicitous to protect against disclosures of the identity of informants, and the
> method, manner and circumstances of the Government's acquisition of the
> materials.

*Id.*

In *Bowman*, the subpoena explicitly excluded counsel memoranda, memoranda of

interviews, as well as any information obtained by seizure or process.  *Id.* at 216. Nevertheless,

the Supreme Court characterized as "merely a fishing expedition to see what may turn up" and

struck down the part of the subpoena that required the Government to produce all materials

which were "relevant to the allegation or charges contained in said indictment, whether or not

they might constitute evidence with the respect to the guilt or innocence of any of the

defendants."  *Id.* at 221.

The Tenth Circuit has cited with approval the Ninth Circuit case that warned that "Rule

17(c) subpoena is not intended as a discovery tool . . . or to allow a blind fishing expedition

seeking unknown evidence."  *United States v. Morris*, 28 F.3d 985, 991 (10th Cir. 2002), quoting

*United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984).

## III.   ARGUMENT

   **A.   The Internal Revenue Service and Department of Justice cannot
   authorize the testimony and document production due to the breadth
   of the subpoenas and sensitivity of the requested materials.**

Defendant Springer failed to give the required notice under 31 C.F.R. § 1.11(e) and 26

C.F.R. §§ 301.9000-4 precision and clarity to his request for the testimony of the Special Agents and release of the documents.  In addition, Defendant Springer requests the documents that would reveal the investigative methodologies and law enforcement techniques of the Internal Revenue Service.  The disclosure of these documents will compromise the integrity of the Department's processes. *See* 31 C.F.R. § 1.11(e)(2)(ii).  Defendant Springer neither defines the scope of the testimony nor does he circumscribe his request for documents.

Based on the breadth of the subpoenas and the sensitivity of the requested materials,  the Internal Revenue Service cannot authorize the testimony of Special Agents and production of the documents.  *See* 31 CFR §1.11(e) (defining factors considered by Department of Treasury counsel in determining whether to give authorization for testimony and document production).

**B.    The subpoenas are an attempt to circumvent discovery limitations and compliance with the subpoenas is unreasonable and oppressive.**

Defendant Springer directs the Special Agents to an extremely broad spectrum of documents, effectively requesting the vast production of thousands of documents generated over the course of several years.  In *Reed*, the Ninth Circuit denied defendant's request for arson investigation files, noting that no specific documents were requested in a subpoena. *Reed*, 726 F.2d at 577.  Defendant Springer's subpoenas are even broader in scope than the subpoena rejected by the Supreme Court in *Bowman*, since Defendant Springer does not discriminate between internal memoranda, witness interviews, etc.  He demands everything, but does not explain what exactly he is looking for.  Defendant Springer's subpoenas lack the requisite specificity mandated under *Abdush-Shakur* (465 F.3d at 467) and *Bowman*.

 Defendant Springer forces this Court to speculate about the contents and the relevance of

the materials he subpoenaed.  In *Reed*, the court observed that in the request for the investigation files a defendant had "not pointed to any substantial foundation for believing that investigative reports would furnish defensive matter."  *Reed*, 726 F.2d at 577. Similarly, Defendant Springer never clearly articulated how the subpoenaed materials would be relevant.  Merely repeating conclusory statements about "outrageous government conduct" does not establish relevance.

The Government's discovery practice has afforded Defendants access to more than thirty-three thousand pages of evidence. For instance, Defendant Springer is in receipt of plea agreements of potential witnesses, their tax returns and criminal history records, charging documents, plea hearing transcripts, 5K1 motions, sentencing transcripts, Judgment of Conviction orders, court transcripts, civil investigation files, etc.  Exhibit B.  The Government has fully complied with its discovery obligations.  From the outset the Government adopted an open file discovery policy; Defendants are already in possession of substantial amount of Internal Revenue Service internal documents. Hundreds of thousands of pages neatly organized for Defendant's convenience were disclosed by the Government timely and in good faith.

The interests of the United States clearly prevail here.  *Hardy* upheld the balancing of the burden of producing records with any relevance these records might have to a case.  224 F.3d at 756. Compliance with the subpoenas would substantially burden the Government's interests in preserving the confidentiality of its investigative methodologies and law enforcement techniques. Defendant Springer is trying to get hold of the internal Government memoranda - the precise materials the Supreme Court in *Bowman* asked the courts to protect.  314 U.S. at 220.  In addition, the Government would have to allocate substantial resources in order to reproduce the thousands of pages requested by Defendant Springer.  Here, the interests of Defendant Springer

in the subpoenaed documents and communications are nonexistent, in part because Defendant Springer is already in possession of the materials relevant to his case.

The inescapable conclusion is that Defendant Springer is not making a good-faith request for the documents; he is using the subpoena process to circumvent the discovery rules set forth in the Federal Rules of Criminal Procedure.  Like the Ninth Circuit in *George*, this court must see Defendant Springer's subpoenas for what they really are  - "a wild goose chase."  *United States v. George*, 883 F.2d 140, 1418 (9th Cir. 1989).  Defendant Springer attempts to make work for the Government and circumvent the rules of criminal procedure.

Finally, all of what Defendant Springer seeks appears to be in violation of Title 18, United States Code Section 3500, which provides in relevant part:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

## IV.    CONCLUSION

In sum, neither the Internal Revenue Service nor the Department of Justice can authorize the testimony and the production of documents due to Defendant Springer's failure to comply with the *Touhy* regulations, including providing adequate notice, defining the scope of the testimony, and meaningfully circumscribing the request for documents.

Furthermore, Defendant Springer's subpoena requests were not made in good faith.  In addition, the Government has strong interests in preserving the confidentiality of its investigative methodologies and law enforcement techniques. Therefore the compliance with the subpoenas is oppressive and unreasonable under Rule 17(c).

-10-

Finally, since Defendant Springer has received all the documents he is entitled to under Rule 16, *Brady*, and *Giglio*, these subpoenas amount to nothing more than a blind fishing expedition, in direct contravention of Rule 17(c) and Rule 16(a)(2) of the Federal Rules of Criminal Procedure.

Based on the foregoing, the subpoenas *duces tecum* must be quashed.

<div style="margin-left:40%;">

Respectfully submitted,

THOMAS SCOTT WOODWARD
ACTING UNITED STATES ATTORNEY


 /s/ Charles A. O'Reilly
CHARLES A. O'REILLY, CBA NO. 160980
Special Assistant U.S. Attorney
KENNETH P. SNOKE, OBA NO. 8437
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma  74119
(918) 382-2700

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of June 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Lindsey Kent Springer
Defendant

Oscar Amos Stilley
Defendant

Robert Williams
Standby Counsel assigned to Lindsey Kent Springer

Charles Robert Burton, IV
Standby Counsel assigned to Oscar Amos Stilley.


*/s/ Charles A. O'Reilly*_____
Trial Attorney, Dept. of Justice

-12-