# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.    09-CR-043-SPF |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## TRIAL BRIEF OF THE UNITED STATES OF AMERICA

THOMAS SCOTT WOODWARD
Acting United States Attorney
BY: KENNETH P. SNOKE, OBA No. 8437
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

# TABLE OF CONTENTS

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, ii

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii, iv, v, vi, vii

**I.**   **STATUS OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II.**   **THE CHARGES IN THE INDICTMENT** . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   The Indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1.   Count One - Conspiracy to Defraud the United States . . . . . . . . . . . 2

            a.   Essential Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            b.   Objects of the Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . 3

            c.   Overt Acts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            d.   Knowledge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            e.   Participation In The Conspiracy . . . . . . . . . . . . . . . . . . . . 4

            f.   Proof Of The Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.   Counts Two, Three, and Four - Tax Evasion . . . . . . . . . . . . . . . . . 6

            a.   Essential Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            b.   Tax Evasion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            c.   Affirmative Acts of Evasion . . . . . . . . . . . . . . . . . . . . . . . 8

            d.   Tax Due and Owing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        3.   Aiding and Abetting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        4.   Counts Five and Six - Willful Failure to File a Tax Return . . . . . . 11

            a.   Essential Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

i

   b. Required to File by Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**III.** **STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

  A. Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

  B. The Conspiracy - Count One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

  C. The Substantive Counts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**IV.** **POSSIBLE EVIDENTIARY ISSUES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

  A. Rule 404(b) or *Res Gestae* Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . 20

  B. Charts and Summaries-Federal Rule of Evidence 1006 . . . . . . . . . . . . . 20

  C. Summary/Expert Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

  D. Statements by Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**V.** **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blumenthal v. United States*, 332 U.S. 539, 68 S. Ct. 248, 92 L. Ed. 154 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Booth v. United States*, 57 F.2d 192 (10th Cir. 1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bourjaily v. United States*, 483 U.S. 171 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 25

*Carlson v. United States*, 187 F.2d 366 (10th Cir. 1951) . . . . . . . . . . . . . . . . . . . . . 20, 22

*Cohen v. United States*, 297 F.2d 760 (9th Cir. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Crawford v. Washington*, 541 U.S. 36 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Davis v. Washington*, 547 U.S. 813 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Hammerschmidt v. United States*, 265 U.S. 182 (1924) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Harris Market Research v. Marshall Marketing and Communications, Inc.*, 948 F.2d 1518 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Iannelli v. United States*, 420 U.S. 770 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Jordan v. United States*, 370 F.2d 126 (10th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Martin v. Funtime, Inc.*, 963 F.2d 110 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Minner v. United States*, 57 F.2d 506 (10th Cir. 1932) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Pinkerton v. United States*, 328 U.S. 640 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Spies v. United States*, 317 U.S. 492 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*State Office Systems, Inc. v. Olivetti Corp. of America*, 762 F.2d 843 (10th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Swallow v. United States*, 307 F.2d 81 (10th Cir. 1962) . . . . . . . . . . . . . . . . . . . . . . . . 10

iii

*United States v. Andreen*, 628 F.2d 1236 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Beall*, 970 F.2d 343 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Behrens*, 689 F.2d 154 (10th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . 20, 22

*United States v. Bell*, 734 F.2d 1315 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Bosch*, 914 F.2d 1239 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Brierly*, 501 F.2d 1024 (8th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Brimberry*, 961 F.2d 1286 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Buckner*, 610 F.2d 570 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Burdick*, 221 F.2d 932 (3rd Cir.1955) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Citron*, 783 F.2d 307 (2nd Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Conley*, 826 F.2d 551 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 8, 22

*United States v. Cooper*, 464 F.2d 648 (10th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . 20, 22

*United States v. Costello*, 221 F.2d 668 (2nd Cir. 1955) . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Daniel*, 956 F.2d 540 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Dazey*, 403 F.3d 1147 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Dotson*, 817 F.2d 1127 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Downen*, 496 F.2d 314 (10th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . 20, 22

*United States v. Duncan*, 919 F.2d 981 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*United States v. Ellis*, 525 F.3d 960 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Espinosa*, 771 F.2d 1382 (10th Cir.), *cert. denied sub nom.*
474 U.S. 1023 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Fox*, 902 F.2d 1508 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Gallup*, 812 F.2d 1271 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Gross*, 286 F.2d 59 (2nd Cir.1961) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Harmas*, 974 F.2d 1262 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Harrold*, 796 F.2d 1275 (10th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Harting*, 879 F.2d 765 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Hauck*, 980 F.2d 611 (10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Horn*, 946 F.2d 738 (10th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Johnson*, 319 U.S. 503 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Jungles*, 903 F.2d 468 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Kaatz*, 705 F.2d 1237 (10th Cir. 1983) . . . . . . . . . . . . . . . . . . . 20, 21, 22

*United States v. Kapnison*, 743 F.2d 1450 (10th Cir. 1984) . . . . . . . . . . . . . . . . . . 22, 23

*United States v. Kendall*, 766 F.2d 1426 (10th Cir.1985) . . . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. King*, 616 F.2d 1034 (8th Cir. 1980), *cert. denied*, 446 U.S.
969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Lahue*, 261 F.3d 993 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Lynman*, 592 F.2d 496 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Mackey*, 571 F.2d 376 (7th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Marashi*, 913 F.2d 725 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Marcus*, 401 F.2d 563 (2nd Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. McGill*, 964 F.2d 222 (3rd Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. McKee*, 506 F.3d 225 (3rd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Middleton*, 246 F.3d 825 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Mohney*, 949 F.2d 1397 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Moore*, 997 F.2d 55 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Notch*, 939 F.2d 895 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Peveto*, 881 F.2d 844 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Pree*, 384 F.2d 378 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Scales*, 594 F.2d 558 (6th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*United States v. Scott*, 37 F.3d 1564 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Scroger*, 98 F.3d 1256 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Shorter*, 809 F.2d 54 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Siragusa*, 450 F.2d 592 (2nd Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Small*, 423 F.3d 1164 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Thompson*, 806 F.2d 1332 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Townley*, 472 F.3d 1267 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 24, 25

*United States v. Wade*, 585 F.2d 573 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Williams*, 875 F.2d 846 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Williamson*, 53 F.3d 1500 (10th Cir. 1995 (citations omitted)) . . . . . . . 24

*United States v. Windfelder*, 790 F.2d 576 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Winn*, 948 F.2d 145 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## FEDERAL STATUTES

18 U.S.C. § 371-(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

26 U.S.C. § 6012(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

26 U.S.C. § 7203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Evid. 801(d)(2)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Fed. R. Evid. 1006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  09-CR-043-SPF |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## TRIAL BRIEF OF THE UNITED STATES OF AMERICA

The United States of America, by and through its attorneys, Thomas Scott Woodward, Acting United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke, Assistant United States Attorney, and Charles A. O'Reilly, Special Assistant United States Attorney, hereby files the following trial brief:

## I.   STATUS OF THE CASE

A.   The trial is currently set for Monday, October 26, 2009, at 9:30 a.m., before the Honorable Stephen P. Friot, United States District Judge.

B.   The estimated time for trial is fifteen (15) days.

C.   The defendants are free on bond.

D.   Trial by jury has not be waived.

E.   An interpreter will not be required.

F.   The Government expects to call approximately sixty-five (65) witnesses, depending on stipulations.

## II.   **THE CHARGES IN THE INDICTMENT**

### A.   The Indictment

Both defendants are charged in Counts One, Three and Four of the Indictment.

Defendant Springer is charged alone in Counts Two, Five and Six.

### 1.   Count One - Conspiracy to Defraud the United States

Count One of the Indictment charges Defendants Springer and Stilley with

conspiracy to defraud the United States, by "impeding, impairing, obstructing and

defeating the lawful government functions of the Internal Revenue Service, between in or

about 2000, until on or about January 15, 2009, in violation of Title 18, United States

Code Section 371.

Title 18, United States Code Section 371 provides, in pertinent part:

 If two or more persons conspire . . . to defraud the United States, or any
agency thereof in any manner or for any purpose, and one or more of such
persons do any act to effect the object of the conspiracy, each shall be fined
under this title or imprisoned not more than five years, or both.

#### a.   Essential Elements

The essential elements of the charged conspiracy are:

(1)   the defendant agreed with at least one other person to defraud

the United States;

(2)   one of the conspirators engaged in at least one overt act

furthering the conspiracy's objective;

(3)   the defendant knew the essential objective of the conspiracy;

2

(4)     the defendant knowingly and voluntarily participated; and

(5)     there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.  [Tenth Circuit Criminal Pattern Jury Instruction 2.19 (February 2006) (modified for "defraud clause")].

> b.     Objects of the Conspiracy

Two separate types of conspiracy are proscribed by 18 U.S.C. § 371– (1) an agreement to violate some other federal criminal law, and (2) an agreement to defraud the United States.  *United States v. Hauck*, 980 F.2d 611, 615 (10th Cir. 1992).  Defendants Springer and Stilley are charged with entering into an agreement to defraud the United States.  To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924); *see also United States v. Dazey*, 403 F.3d 1147, 1159-60 (10th Cir. 2005).

> c.     Overt Acts

(1)     An overt act need not itself be criminal, because its only function is to demonstrate that the conspiracy is operative.  *Jordan v. United States*, 370 F.2d 126, 128 (10th Cir. 1966); *see also United States v. Andreen*, 628 F.2d 1236, 1248 (9th Cir. 1980).

(2)     The Government need prove only one of the overt acts charged in each conspiracy count of the indictment.  *Minner v. United States*, 57 F.2d 506, 510 (10th Cir. 1932); *United States v. Lynman*, 592 F.2d 496, 500 (9th Cir. 1978).

(3)     The Government may properly introduce proof of overt acts committed by unindicted coconspirators.  *United States v. Brierly*, 501 F.2d 1024, 1028 (8th Cir. 1974).

d.      Knowledge

To be guilty of conspiracy, the defendant must know that he is connected to the conspiracy and know of the objective of the conspiracy.  *Booth v. United States*, 57 F.2d 192, 200 (10th Cir. 1932); *United States v. Scott*, 37 F.3d 1564, 1573 (10th Cir. 1994).

e.      Participation In The Conspiracy

(1)     The government must show that a conspiracy between at least two people existed and that the defendant was a member of the conspiracy charged.  *United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005).

(2)     Express agreement is not required; rather, agreement may be inferred from conduct.  Proof of an agreement rarely is susceptible to direct evidence, and may be inferred from the facts and circumstances of the case.  *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990);  *United States v. Kendall*, 766 F.2d 1426, 1431 (10th Cir.1985)*;  Iannelli v. United States*, 420 U.S. 770, 777 n. 10 (1975)  .  "[T]he critical inquiry is whether the circumstances, acts, and conduct of the parties are of such a

4

character that the minds of reasonable men may conclude therefrom that an unlawful agreement exists." *Kendall*, 766 F.2d at 1431.

(3)     Once a conspiracy is proven, evidence establishing beyond a reasonable doubt the defendant's connection to that conspiracy – even if the connection is slight -- is sufficient to convict him of knowingly participating in the conspiracy. *United States v. Horn,* 946 F.2d 738, 741 (10th Cir.1991).

(4)     A defendant is vicariously liable for the substantive acts of his coconspirator whether or not he directly participates in such acts, so long as those acts are committed pursuant to and in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946).

(5)     A defendant can be guilty of conspiracy even if he does not realize benefits directly from underlying substantive offenses, but instead conspires to directly benefit others and only indirectly benefit himself. *United States v. Gallup*, 812 F.2d 1271, 1278 (10th Cir. 1987).

f.     Proof Of The Conspiracy

(1)     The Government may prove a conspiracy by circumstantial evidence that the defendants acted together in furtherance of a common goal. *United States v. Peveto*, 881 F.2d 844, 855-56 (10th Cir. 1989).

(2)     While mere presence at the scene of illegal activity is, without more, insufficient to infer that the defendant is part of the conspiracy, a defendant's presence may nevertheless be probative of that connection when viewed in the context of

5

other evidence.  *United States v. Espinosa*, 771 F.2d 1382, 1392-93 (10th Cir.), *cert. denied sub nom.* 474 U.S. 1023 (1985).

       (3)     The Supreme Court has held that coconspirator statements themselves may be used along with other evidence to prove the existence of a conspiracy, the membership in the conspiracy by the speaker and the defendant against whom the statement is to be offered, and the furtherance of the objectives of the conspiracy. *Bourjaily v. United States*,  483 U.S. 171, 175 (1987).

      2.     <u>Counts Two, Three, and Four - Tax Evasion</u>

Counts Two, Three and Four of the Indictment charge violations of 26 United States Code Section 7201.  Defendant Springer is charged in all three counts with willfully attempting to evade and defeat the individual income taxes due and owing by him to the United States.  Count Two, Counts Three and Four charge attempted tax evasion for the calendar years 2000, 2003 and 2005, respectively.  Defendant Stilley is charged in Counts Three and Four with aiding and abetting Defendant Springer's tax evasion, in violation of Title 26, United States Code Section 7201 and Title 18, United States Code Section 2.

<u>Title 26 United States Code Section 7201, provides, in pertinent part</u>:

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title, or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, . . . .

      a.     <u>Essential Elements</u>:

The Essential Elements of a violation of Section 7201 are:

6

(1)     There was a substantial income tax due and owing for the year charged in the Indictment;

(2)     The defendant intended to evade and defeat the assessment and  payment of that additional tax;

(3)     The defendant committed at least one affirmative act in furtherance of this intent, as set forth in the Indictment; and

(4)     The defendant acted willfully, that is, with voluntary intent to violate a known legal duty.

The Government must prove each element beyond a reasonable doubt.  *United States v. Marashi*, 913 F.2d 725, 735 (9th Cir. 1990); *United States v. Williams*, 875 F.2d 846, 849 (11th Cir. 1989).

b.   <u>Tax Evasion</u>

The means by which one can attempt to evade the or defeat the individual income taxes due and owing are unlimited.  As noted above, Section 7201 expressly provides that the attempt can be made "in any manner."  The only requirement is that the taxpayer take some affirmative action.  The general rule is that "any conduct, the likely effect of which would be to mislead or to conceal" for evasion purposes, constitutes an attempt.  *Spies v. United States*, 317 U.S. 492, 499 (1943).  Even an activity that would otherwise be legal can constitute an affirmative act supporting a Section 7201 conviction, so long as it is carried out with the intent to evade tax.  *United States v. Jungles*, 903 F.2d 468, 474 (7th Cir. 1990) [taxpayer's entry into an "independent contractor agreement," although a legal

7

activity in and of itself, satisfied "affirmative act" element of Section 7201]; *see also,*
*United States v. Conley*, 826 F.2d 551 (7th Cir. 1987) [use of nominees and cash done
with intent to evade payment of taxes].

c.   <u>Affirmative Acts of Evasion</u>

Although the Government must prove some affirmative act constituting an attempt
to evade, it need not prove each act alleged. *See United States v. Mackey*, 571 F.2d 376
(7th Cir. 1978), where the Government introduced evidence of six affirmative acts and
the Court pointed out that proof of only one act is enough. "The prosecution need not
prove each affirmative act alleged." *Mackey*, 571 F.2d at 387. The Supreme Court "by
way of illustration, and not by way of limitation," set out examples of what can constitute
an "affirmative willful attempt" to evade in *Spies*, 317 U.S. at 499:

> Keeping a double set of books, making false entries or alterations, or false
> invoices or documents, destruction of books or records, concealment of
> assets or covering up sources of income, handling of one's affairs to avoid
> making the records usual in transactions of the kind, and any conduct, the
> likely effect of which would be to mislead or to conceal.

Examples of affirmative acts of evasion of payment of taxes include placing assets in the
names of others; dealing in currency; causing receipts to be paid through and in the name
of others, causing debts to be paid through and in the name of others; and paying creditors
instead of the Government. *Cohen v. United States*, 297 F.2d 760, 762, 770 (9th Cir.
1962). *See also, United States v. Beall*, 970 F.2d 343, 346-47 (7th Cir. 1992) [defendant
instructed employer to pay income to a tax protest organization]; *United States v. McGill*,
964 F.2d 222, 233 (3rd Cir. 1992) [defendant concealed assets by using bank accounts in

8

names of family members and co-workers]; *United States v. Brimberry*, 961 F.2d 1286,

1291 (7th Cir. 1992) [defendant falsely told IRS agent that she did not own real estate and

that she had no other assets with which to pay tax]; *United States v. Daniel*, 956 F.2d 540,

543 (6th Cir. 1992) [defendant used others' credit cards, used cash extensively, placed

assets in others' names]; *United States v. Shorter*, 809 F.2d 54, 57 (D.C. Cir. 1987)

[defendant maintained a "cash lifestyle" in that he conducted all of his personal and

professional business in cash, possessed no credit cards, never acquired attachable assets,

and maintained no bank accounts, ledgers, receipts, or disbursements journals].

d.   Tax Due and Owing

Tax evasion prosecutions are not collection cases and it is not necessary to charge or prove the exact amount of the tax that is due and owing.  *United States v. Harrold*, 796 F.2d 1275, 1278 (10th Cir. 1986); *United States v. Citron*, 783 F.2d 307, 314-15 (2d Cir. 1986); *United States v. Marcus*, 401 F.2d 563, 565 (2d Cir. 1968); *United States v. Thompson*, 806 F.2d 1332, 1335-36 (7th Cir. 1986); *United States v. Buckner*, 610 F.2d 570, 573-74 (9th Cir. 1979).  It is enough to prove that the defendant attempted to evade the payment of a substantial income tax, even though the actual amount of the tax that he owed may be greater than or less than the amount charged in the criminal case.  *United States v. Johnson*, 319 U.S. 503, 517-18 (1943); *Swallow v. United States*, 307 F.2d 81, 83 (10th Cir. 1962)*; Marcus*, 401 F.2d at 565.  *See e.g., United States v. Burdick*, 221 F.2d 932, 934 (3d Cir.1955) [upholding a conviction where the Indictment charged $33,000 as unreported taxable income and the proof that trial established on $14,500 as unreported].  Similarly, in *United States v. Costello*, 221 F.2d 668, 675 (2d Cir. 1955) [upholding a conviction where the bill of particulars alleged $244,000 gross income as unreported and $288,000 was proved at trial].  In *United States v. Citron*, *supra*, the Court upheld an "open-ended" Section 7201 Indictment that did not allege precise amounts of unreported income or tax due but rather alleged that the defendant had attempted to evade a "large part" of the income tax due and that the tax due was "substantially in excess" of the amount he reported.  *Citron*, 783 F.2d at 314-15.

10

Whether a tax deficiency is substantial or not is a jury question and the cases note that relatively small sums can be deemed substantial. *United States v. Gross*, 286 F.2d 59, 61 (2d Cir. 1961) (unreported income of $2,500 deemed "substantial"); *United States v. Siragusa*, 450 F.2d 592, 595-96 (2d Cir. 1971) (taxes of $3,956, $900 and $2,209 in three successive years held to be substantial).

> 3.     Aiding and Abetting

Defendant Stilley is charged in Counts Three and Four with aiding and abetting Defendant Springer's tax evasion.

Title 18, United States Code Section 2(a), provides in pertinent part, "[w]hoever commits an offense . . . or aids, abets, counsel, commands, induces or procures its commission, is punishable as a principal.

In *United States v. Ellis*, 525 F.3d 960, 963 (10th Cir. 2008), the Court held:

[Ellis] correctly concedes, however, that the aiding and abetting statute "applies implicitly to all Federal offenses" and that "even though the Defendant is charged with commission of the substantive offense, proof that he or she only aided or abetted the commission of the crime will support the indictment. [citations omitted]" To be sure an indictment must "contain [ ] the elements of the offense charged" [citations omitted]. But aiding and abetting is not an independent crime. [citing *United States v. Scroger*, 98 F.3d 1256, 1262 (10th Cir. 1996)].

> 4.     Counts Five and Six - Willful Failure to File a Tax Return

Defendant Springer is charged in Counts Five and Six with willfully failing to file a tax return for the calendar year 2002 (Count Five), and for the calendar year 2004

11

(Count Six), although required by law to do so, in violation of Title 26 United States

Code Section 7203.  These two counts are misdemeanors.

Title 26, United States Code Section 7203, provides, in pertinent part:

Any person required under this title to pay any estimated tax or tax, or
required by this title or by regulations made under authority thereof to make
a return, keep any records, or supply any information, who willfully fails to
pay such estimated tax or tax make such return, keep such records or supply
such information, at the time or times required by law or regulations, shall,
in addition to other penalties provided by law, be guilty of a misdemeanor
and . . . .

a.    Essential Elements

The essential elements of Title 26, United States Code Section 7203 are:

(1)    The defendant was a person required to file a return;

(2)    The defendant failed to file at the time required by law; and

(3)    The failure to file was willful.

*United States v. Harting*, 879 F.2d 765, 766-67 (10th Cir. 1989).

b.    Required to File by Law

Various provisions of the Internal Revenue Code (and regulations thereunder)

specify the events that trigger an obligation to file a return.  Section 6012 lists the persons

and entities required to make returns with respect to income taxes, including, *inter alia*,

"[e]very individual having for the taxable year gross income which equals or exceeds the

exemption amount," with certain specified exceptions, and "every corporation subject to

taxation under subtitle A."  Title 26, United State Code Section 6012(a)(1)(A).  The

receipt of a specified amount of gross income generally determines whether an income

12

tax return must be filed.  *See United States v. Middleton*, 246 F.3d 825, 841 (6th Cir.

2001) (stating that the assertion that the filing of an income tax return is "voluntary" is

frivolous because Title 26, United States Code Section 6012(a)(1)(A) requires that every

individual who earns a threshold level of income must file a tax return); *see also United*

*States v. McKee*, 506 F.3d 225, 245 (3d Cir. 2007) (government must prove that an

individual has a duty to file a tax return based on the receipt of income of a taxable

nature, and bears burden of proving taxable character of funds).  "Gross income" is

broadly defined in section 61(a) of the Code to mean the following:

> [A]ll income from whatever source derived, including (but not limited to)
> the following items:
>
>> (1) Compensation for services, including fees, commissions, fringe benefits,
>> and similar items;
>> (2) Gross income derived from business;
>> (3) Gains derived from dealings in property;
>> (4) Interest;
>> (5) Rents;
>> (6) Royalties;
>> (7) Dividends;
>> (8) Alimony and separate maintenance payments;
>> (9) Annuities;
>> (10) Income from life insurance and endowment contracts;
>> (11) Pensions;
>> (12) Income from discharge of indebtedness;
>> (13) Distributive share of partnership gross income;
>> (14) Income in respect of a decedent; and
>> (15) Income from an interest in an estate or trust.

To meet its burden, the Government need prove only that a person's gross income

equals or exceeds the statutory minimum.  *United States v. Bell*, 734 F.2d 1315, 1316 (8th

Cir. 1984); *United States v. Wade*, 585 F.3d 573, 574 (5th Cir. 1978).

III.   **STATEMENT OF FACTS**

The Government expects to prove each and every allegation in the Indictment, including but not limited to, the following:

A.   Background

Lindsey Kent Springer, a resident of Creek County, Oklahoma, in the Northern District of Oklahoma, has not filed a tax return since the late 1980's.  Prior to the time period in this Indictment, Springer made his living by giving anti-tax seminars in Oklahoma, and elsewhere, and by creating abusive trusts for taxpayers who wished to shield their assets from  the IRS.  Springer did this individually, but frequently collected money in the name of "Bondage Breakers Ministry."  Bondage Breakers Ministry was a DBA, but was not incorporated, nor was it a § 501(c)(3), tax exempt, organization.  Defendant Springer's stated purpose for Bondage Breakers Ministry was "to get rid of the Internal Revenue Service."

Defendant Oscar Amos Stilley, a resident of Little Rock, Arkansas, also has not filed a tax return since the late 1980's.  Defendant Stilley was an attorney, licensed to practice law by the State of Arkansas.  Defendant Stilley practice included representing and defending, in federal courts around the country, individuals who had been charged criminally for not complying with the tax laws of the United States.  Defendant Stilley earned taxable income from these representations, much of which was received by Stilley into an Arkansas IOLTA Foundation Trust Account ("IOLTA Account") at Arvest Bank, in Fort Smith, Arkansas.

14

B.     The Conspiracy - Count One

In late 1999, or early 2000, a taxpayer, who had previously attended Defendant Springer's anti-tax seminars, was being prosecuted in federal court for failure to file tax returns.  Prior to his criminal prosecution, this taxpayer had been convinced by Defendant Springer that he had no obligation to pay income taxes or to file income tax returns.  This taxpayer knew of and hired Defendant Stilley to represent him with respect to those charges.  This taxpayer brought Defendants Stilley and Springer together, possibly for the first time, when the taxpayer hired Defendant Stilley to defend him in federal court on the criminal charges, and hired Defendant Springer to be part of that legal team to help in his defense.  As this legal representation continued, numerous payments were made by this taxpayer to both Defendant Springer and to Defendant Stilley in the year 2000, and to Defendant Stilley in 2001.  All of these checks were made payable to either Lindsey Springer or to Oscar Stilley, and all were for legal services provided by the two defendants to this taxpayer.  Although early checks written to Defendant Springer carried nothing in the "memo" column, at Defendant Springer's request, the taxpayer put "donation" on some of the later checks.  Checks written to Defendant Stilley indicated they were for his professional services.

Subsequent to this collaboration in the year 2000, the federal criminal tax defense team of Springer and Stilley went on to represent, and to be paid for representing, numerous other taxpayers who were facing federal criminal charges for failure to comply with the tax laws of the United States.  The majority of these "clients" became aware of

Defendant Springer through his seminars, through his periodic conference calls to prior investors in an offshore trust ("IFC") being investigated by the IRS, or by referrals from other persons.  In most of the cases Defendant Springer would provide the clients with advice, counseling, and materials on the tax laws that he had previously created or obtained, in return for payments made to him or to Bondage Breakers Ministry.  If the client was charged with a federal crime, then Defendant Springer would usually recommend that the client utilize the services of Defendant Stilley, who was actually an attorney capable of appearing in federal court in a number of districts throughout the United States on behalf of the clients.  Defendant Springer, however, would remain a part of the defense team, for which he would be compensated.

Defendant Springer did not maintain a bank account or normal business records and worked out of his residence in Creek County.  Although Defendant Springer instructed many of his clients to make their checks payable to Bondage Breakers Ministry, and/or to place the memo "donation" on their checks, many made their checks payable to Defendant Springer himself.  Some clients were told, although they should make their checks payable to Bondage Breakers Ministry, that they should not attempt to deduct the amount of their payment, because Bondage Breaker's Ministry was not a tax exempt organization.  Bondage Breakers Ministry was, in fact, merely a DBA of Defendant Springer and was a source of monetary support.  Whether incoming payments were payable to Bondage Breakers Ministry, or to Defendant Springer, Defendant Springer would utilize a Tulsa check cashing service to convert the incoming checks,

cashier's checks, and money orders to cash, in the absence of a bank account in the name of Bondage Breakers Ministry or in his own name.  This method of receiving income defeated normal IRS investigative methods, and was contrary to normal business practices, even the normal business practices of a ministry.

At a point in this continuing criminal tax defense team relationship, Defendant Springer began requesting that his clients make their payments to Defendant Stilley's IOLTA Trust Account in Fort Smith, Arkansas, rather than making the payments for Springer's legal services directly to him or to Bondage Breakers Ministry.   In some of these indirect transactions, Defendant Stilley would receive clients' payments on behalf of Defendant Springer into Defendant Stilley's IOLTA Account, and would then send Defendant Springer his portion of those payments from the IOLTA Account in the form of checks or cashier's checks.  On some occasions, Defendant Stilley made payments to third parties on behalf of Defendant Springer, in lieu of sending Defendant Springer a check from the IOLTA Account.  Additionally, Defendant Springer would and did use Defendant Stilley's credit card to pay Defendant Springer's personal expenses, and then would repay Defendant Stilley. All of these actions avoided creating the usual records of financial transactions, concealed Defendant Springer's income, and defeated normal IRS investigative methods.

Throughout this period of time, Defendants Springer and Stilley did not file any income tax forms with the IRS including Forms 1040 and 1099.  Additionally, both Defendant Springer and Defendant Stilley continued to represent to the IRS and others

17

that Defendant Springer received no income from his activities, but only received donations or gifts for which Springer provided no services.

C.     The Substantive Counts

As noted above, during the calender year 2000 (Count Two), Defendant Springer received actual income upon which there was a substantial income tax due and owing, yet Defendant Springer filed no income tax return for that year.  Additionally, Defendant Springer committed various affirmative acts of evasion, including receiving income in the fictitious name of Bondage Breakers Ministry, directing clients to write "donation" or "gift" on checks that were payments for services, directing individuals to pay for services by cashier's check, using a check cashing business to cash checks, using money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal his income, operating without a bank account, and making false statements to agents and employees of the IRS.

Although in the calender year 2003 (Count Three) and in the calender year 2005 (Count Four), Defendant Springer received taxable income upon which there was a substantial tax due and owing, Defendant Springer, aided and abetted by Defendant Stilley, filed no income tax returns for those years.  Additionally, the Defendants evaded and defeated the individual income taxes due and owing by Defendant Springer, by directing individuals to make checks payable to Bondage Breakers  Ministry; by using a check-cashing business to cash checks, by accepting collectable coins as payment for services, and by operating without a bank account (with the cooperation of Defendant

18

Stilley, who utilized his IOLTA Trust Account to funnel income payments to Defendant Springer, and by allowing Defendant Springer to utilize Defendant Stilley's credit card to pay Springer's personal expenses).  Defendant Springer also utilized a check cashing service to cash incoming cashier's checks and money orders, and other means to avoid keeping normal business records and to conceal his income, as well as making false statements to agents and employees of the IRS.

In the manner set forth above, Defendant Springer received in excess of $7,700 in gross income during the calender year 2002, yet knowingly and willfully did not file an income tax return for that year (Count Five).  Likewise, during the calender year 2004, Defendant Springer received gross income totaling in excess of $15,900, yet knowingly and wilfully did not file an income tax return for that year (Count Six).

## IV.  **POSSIBLE EVIDENTIARY ISSUES**

      A.     Rule 404(b) or *Res Gestae* Evidence

Notice has already been given and this issue has been briefed. See Doc.134.

      B.     Charts and Summaries–Federal Rule of Evidence 1006

The United States will offer summary charts in this case. Some of these charts will show the flow patterns of funds that were passed through Defendant Stilley's IOLTA account, providing the Defendant Springer with income during the time period charged in the Indictment.

The use of charts and summaries has been approved for many years.  *See e.g., United States v. Kaatz*, 705 F.2d 1237 (10th Cir. 1983); *United States v. Behrens*, 689

F.2d 154, 161-62 (10th Cir. 1982); *United States v. Downen*, 496 F.2d 314, 319-21 (10th

Cir. 1974); *United States v. Cooper*, 464 F.2d 648, 656-57 (10th Cir. 1972); *Carlson v.*

*United States*, 187 F.2d 366, 372 (10th Cir. 1951).  Now the use of summaries and charts

is usually governed by Federal Rule of Evidence 1006:

> The contents of voluminous writings, recordings, or photographs which
> cannot conveniently be examined in court may be presented in the form of a
> chart, summary, or calculation.  The originals, or duplicates, shall be made
> available for examination or copying, or both, by other parties at reasonable
> time and place.  The court may order that they be produced in court.

The admission of summaries under Rule 1006 is within the sound discretion of the trial

court.  *Harris Market Research v. Marshall Marketing and Communications, Inc.*, 948

F.2d 1518, 1525 (10th Cir. 1991).  "The admission of summaries offers the only

practicable means of making their contents available to the jury.  *See* Notes of Advisory

Committee to Rule 1006."  *United States v. Harmas*, 974 F.2d 1262, 1269 (11th Cir.

1992).  "We cannot rationally expect an average jury to compile summaries and to create

sophisticated flow charts to reveal patterns that provide important inferences about the

defendant's guilt."  *United States v. Duncan*, 919 F.2d 981, 988 (5th Cir. 1990).

A summary is admissible if all of the records from which it is drawn are otherwise

admissible.  *Martin v. Funtime, Inc.*, 963 F.2d 110, 115-16 (6th Cir. 1992); *State Office*

*Systems, Inc. v. Olivetti Corp. of America*, 762 F.2d 843, 845 (10th Cir. 1985).  Of

course, the charts or summaries must accurately reflect the information underlying them.

*United States v. Scales*, 594 F.2d 558, 563 (6th Cir. 1979).  In addition, limiting

instructions may be necessary.  *United States v. Kaatz*, 705 F.2d at 1245. Limiting

20

instructions can be given both at the time the summaries or charts are offered and when the jury is given its comprehensive instructions at the conclusion of the case.  *See, e.g., United States v. Winn*, 948 F.2d 145, 157-58 n. 30 (5th Cir. 1991).

Rule 1006 does not require that it literally be impossible to examine the underlying records before a summary or chart be admitted; all that is required is that the underlying documents be "voluminous" and that in-court examination be inconvenient.  *Scales*, 594 F.2d at 562 (161 exhibits, involving 16 counts and 21 overt acts, made comprehension of exhibits difficult and certainly inconvenient without Government's charts).[1]  Nor does the fact that the underlying documents are admitted mean that they can be "conveniently examined" in court, thereby obviating the purpose of summaries.  *Duncan*, 919 F.2d at 988.

A proper foundation can be laid by the person who supervised the preparation of the exhibit.  *Behrens*, 689 F.2d at 161.  In Tenth Circuit criminal cases, investigating agents have sponsored charts and summaries.  *See, e.g., United States v. Kapnison*, 743 F.2d 1450, 1457-58 (10th Cir. 1984) (IRS agent); *Kaatz*, 705 F.2d at 1245 (IRS agent).

Summaries and charts can cover many topics.  The Tenth Circuit has encountered a variety of such exhibits.  *Behrens*, 689 F.2d at 161 (drug conspiracy case; chart outlining drug prescriptions written by defendant doctor and filled by defendant pharmacist); *United States v. Downen*, 496 F.2d 314, 319-21 (10th Cir. 1974) (stolen

---

[1]     *Scales* has been cited at least twice by the Tenth Circuit.  *Kaatz*, 705 F.2d at 1245; *Behrens*, 689 F.2d at 161.

truck conspiracy; chart summarizing Government's theory of case remained in court during trial and sent to jury room); *Cooper*, 464 F.2d at 656 (misapplication of bank funds; summary of bank records); *Carlson*, 187 F.2d at 374 (interstate stolen wheat conspiracy; charts comparing weights of trucks at different locations).  From other circuits, *see also, Conley*, 826 F.2d at 559-60 (tax evasion; chronological charts showing what defendant was doing in relation to his taxes and financial activities);

The charts to be offered by the United States in this case fit well within the parameters of Rule 1006 and case law and, therefore, their use at trial should be permitted.

C.    Summary/Expert Witness

The United States will call an IRS Special Agent to sponsor the summaries and charts referenced above.  The United States, as previously noted (Doc. 126), plans to also call two (2) experts.

The testimony of a summary witness may be received in a tax case as long as he bases his summary testimony on evidence received in the case and is available for cross-examination.  *United States v. Kapnison*, 743 F.2d 1450, 1457-58  (10th Cir. 1984), citing *United States v. King*, 616 F.2d 1034 (8th Cir. 1980); *and see: United States v. Notch*, 939 F.2d 895, 900 (10th Cir. 1991); *United States v. Dotson*, 817 F.2d 1127, 1131-32 (8th Cir. 1987); *United States v. Pree*, 384 F.2d 378, 391-93 (7th Cir. 2004); *United States v. Moore,* 997 F.2d 55, 58 (5th Cir. 1993); *United States v. Mohney*, 949 F.2d 1397, 1406

(6th Cir. 1991); *United States v. Bosch*, 914 F.2d 1239, 1242 (9th Cir. 1990); *United States v. Windfelder*, 790 F.2d 576, 581 (7th Cir. 1986).  In *Pree*, the Court said:

> As a summary witness, an IRS agent may testify as to the agent's analysis of the transaction which may necessarily stem from the testimony of other witnesses.  The agent may also explain his analysis of the facts based on his special expertise (citations omitted).

D.    Statements by Defendants

During the course of the trial, it is anticipated that several witnesses will testify about conversations they had with one or the other of the Defendants.  These conversations are not hearsay because they are statements of a co-conspirator during the course of and in furtherance of the conspiracy.  Fed. R. Evid. 801(d)(2)(E).  The proponent of a co-conspirator's statement must establish that "(1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made during the course of and in furtherance of the conspiracy."  *United States v. Lahue*, 261 F.3d 993, 1008 (10th Cir. 2001) (quoting *United States v. Williamson*, 53 F.3d 1500, 1517-18 (10th Cir. 1995 (citations omitted)).

In addition, co-conspirators' statements are not considered testimonial and therefore, the admission of such statements does not violate the rule of *Crawford v. Washington*, 541 U.S. 36 (2004), as defined further in *Davis v. Washington*, 547 U.S. 813 (2006).  *Crawford* held that testimonial statements may not be admitted against a defendant unless he has an opportunity to cross-examine the declarant, irrespective of whether the statement falls within a firmly rooted hearsay exception or bears

23

particularized guarantees of trustworthiness.  However, co-conspirator statements are nontestimonal in nature, therefore, *Crawford* does not apply to render these statements inadmissible.  *United States v. Townley*, 472 F.3d 1267, 1271-73 (10th Cir. 2007).

In *Townley* 472 F.3d at 1273, the Tenth Circuit made it clear that neither *Crawford* or *Davis* overruled *Bourjaily v. United States*, 483 U.S. 171 (1987).  In *Bourjaily*, 483 U.S. at 183-84, the Supreme Court held that a trial court need not independently inquire into the reliability of statements of co-conspirators where Federal Rule of Evidence, 801(d)(2)(E) is at play.  This is "especially true since Rule 801(d)(2)(E) treats declarations by co-conspirators not as an exception to the hearsay rules, but as nonhearsay."  *Townley*, 473 F.3d at 1273.

## V.  <u>CONCLUSION</u>

This brief is offered to acquaint the Court with factual and legal issues which may arise at trial.  The United States requests that the Court grant it leave to submit additional memoranda should other issues emerge later.

Respectfully submitted,

THOMAS SCOTT WOODWARD
ACTING UNITED STATES ATTORNEY

 */s/ Kenneth P. Snoke*
KENNETH P. SNOKE, OBA NO. 8437
Assistant United States Attorney
CHARLES A. O'REILLY, CBA NO. 160980
Special Assistant U.S. Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma  74119
(918) 382-2700

24

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of September 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Lindsey Kent Springer
Defendant

Oscar Amos Stilley
Defendant

Robert Williams
Standby Counsel assigned to Lindsey Kent Springer

Charles Robert Burton, IV
Standby Counsel assigned to Oscar Amos Stilley.


　*/s/ Kenneth P. Snoke*　　　　　　　　　
Assistant U.S. Attorney