IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 09-CR-43-SPF |
| | ) | |
| LINDSEY KENT SPRINGER and | ) | |
| OSCAR STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

LINDSEY KENT SPRINGER TRIAL BRIEF

Lindsey Kent Springer ("Springer") files his trial brief related to the trial of Lindsey Kent Springer.

INTRODUCTION

The trial in this case is currently scheduled to begin on October 26, 2009. The Court has set an informal jury instruction conference on October 21, 2009.

## 1.    Count One

In Count One, the Indictment charges that from the year 2000 to January 15, 2009, Defendants Springer and Stilley conspired to defraud the United States by working together to impede and impair the ability of the Internal Revenue Service to ascertain, compute, assess, and collect the federal income tax liabilities owed by  Springer. The Indictment charges that, in an attempt to evade his federal income tax liabilities, Springer conspired with Stilley and others to hide the fact that Springer received taxable gross income. The Indictment charges that Springer

1

earned taxable income and utilized various means to hide this fact. These means included using the nominee name Bondage Breakers Ministry, using Stilleys attorney-client trust account to transmit funds to Springer, and using Stilleys credit card Springer's purchases for which Springer reimbursed  Stilley. The Indictment alleges that the Springer and Stilley took these and other steps to impede, impair, obstruct and defeat the Internal Revenue Service in its ascertainment, computation, assessment and collection of federal income tax liabilities owed by Springer for years 2000, 2003 and 2005.

**2.     Elements of Count One**

The elements of conspiracy "to defraud" under 18 U.S.C. § 371 are "that (1) the defendant entered into an agreement; (2) the agreement involved a violation of the law; (3) one of the members of the conspiracy committed an overt act; (4) the overt act was in furtherance of the conspiracy's object; [and] (5) the defendant wilfully entered the conspiracy," *United States v. Weidner*, 437 F.3d 1023, 1033 (10th Cir. 2006). See also U.S. v. Thompson, 518 F.3d 832, 853 (10th Cir. 2008), and (6) interdependence among the alleged co-conspirators; that is the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged. Title 18, United States Code Section 371. *See United States v. Edwards,* 69 F.3d 419, 430-431 (10th Cir. 1995); Tenth Circuit Pattern Jury Instructions 2.19 (2005) (modified)

According to the Grand Jury Indictment Springer and Stilley began the

conspiracy in the year 2000 and the law violated was the "defraud" law to which this Court has yet to identify in any of its previous orders.  Nor has the Prosecution identified where public notice of this criminal provision was given to Springer prior to the year 2000.  Nonetheless, at this point, based upon the Court's citation to United States v. Bedford, 536 F.3d 1148, 1151, 115501157, it is believed by Springer the theory of Prosecution  is there is some "underlying" criminal provision which makes "defrauding the United States" illegal.  See Doc. 136 at 2

It is certainly true that "federal crimes are defined by statute rather than by common law." *United States v. Oakland* Cannabis Buyers' Coop., 532 U.S. 483, 490, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001).  "It is well settled that there are no common law **offences** against the United States." *United States* v. *Hudson*, 7 Cranch, 32; *United States* v. *Coolidge*, 1 Wheat. 415; *United States* v. *Britton*, 108 U.S. 199, 206; *Manchester* v. *Massachusetts*, 139 U.S. 240, 262, 263, and cases there cited.   And under our constitutional system "federal crimes are defined by statute rather than by common law." see *United States* v. *Hudson*, 7 Cranch 32, 34 (1812); U.S. v. Al-Rekabi, 454 F.3d 1113 (fn.7)(10th Cir. 2006)

To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful government functions by deceit, craft or trickery, or at least by means that are dishonest." Hammerschmidt v. United States, 265 U.S. 182, 188, 44 S.Ct. at 512; See also McNally v. United States, 483 U.S. 350, 359-60 & n. 8, 107 S.Ct.

3

2875, 2881-82 & n. 8, 97 L.Ed.2d 292 (1987); quoted in U.S. v. Scott, 37 F.3d 1564, 1575 (10th Cir. 1994) ["We agree with Caldwell's requirement that the instructions clearly communicate that the means must be dishonest, deceitful or fraudulent in the sense of its usual meaning."] [*United States v. Caldwell,* 989 F.2d 1056, 1059 (9th Cir. 1993)]

There is absolutely no allegation in 2000 of any agreement other than the conspiracy agreement began or was born in the year 2000.  The indictment alleges Mr. Stilley lied to the Grand Jury in 2006 and Springer lied in 2005 and again on January 15, 2009.

**3.      Materiality as to Count One**

Springer asserts the burden is on the Prosecution to show the statements alleged to have been made were made, were false, and were false to a material matter.   To determine whether a statement is material the appropriate test is to examine whether it has a natural tendency to influence, or is capable of influencing a decision or action by another. United States v. Wiles,106 F.3d 1516, 1519 (10th Cir. 1997). The question of whether a statement is material is a question of fact for the jury to decide. Neder v. United States, 527 U.S. at 19-23, 119 S.Ct. 1827; see also U.S. v. Lawrence, 405 F.3d 888, 901 (10th Cir. 2005)

The question of materiality is constitutionally required to be submitted to the jury as an element; failure to do so is reversible error. *United States v. Gaudin*, 515 U.S. 506, 511, 522–23 (1995). A material statement is one that has a natural tendency

4

to influence or was capable of influencing the decision of the tribunal in making a required determination. *See, e.g., United States v. Harrod*, 981 F.2d 1171, 1176 (10th Cir. 1992).  See also *Neder v. United States*, 527 U.S. 1, 25 (1999).

## 4.    Lawful Function

The indictment alleges Springer and Stilley had as an object of their alleged agreement to impede, impair, obstruct, and defeat the lawful functions of the IRS in their computation, ascertainment, assessment and collection of tax liability owed by Springer for the years 2000, 2003 and 2005.   A federal officer is ''engaged in the performance of his official duties'' if he is acting within the scope of what he is employed to do, rather than engaging in a personal frolic of his own. *United States v. Young*, 614 F.2d 243, 244 (10th Cir. 1980)

## 5.    Venue as to Count One

Failure to file Tax Returns is a central issue in Count One.  In Count One of the indictment, the Government is required to prove venue.   Proof of venue is an essential element of each of the Counts in the Government's case according to the offenses charged and the Sixth Amendment. It may be established by direct or circumstantial evidence. Furthermore, unlike other elements of an offense which must be proved beyond a reasonable doubt, *venue need* only be proved by a preponderance of the evidence." U.S. v. Taylor, 828 F.2d 630, 633 (10th Cir. 1987) The requirement concerning the place of filing of the individual income tax return Form 1040 for the years 2000 through 2005 is provided in 26 U.S.C.A. § 6091(b)(1)(A)

for persons other than corporations. It prescribes the place of filing as "in the internal revenue district in which is located the legal residence or principal place of business of the person making the return. . . ." "The federal statute and regulations lay down the rule as a matter of federal law."  Taylor at 634

In order for the jury to find venue was proven to be in the United States District Court for the Northern District of Oklahoma Prosecution must prove to the jury (1)  Springer was required by law to file a Form 1040 for the years 2000 through 2005 on or before April 15, 2001, April 15, 2002, April 15, 2003, April 15, 2004, April 15, 2005 and April 15, 2006 with the District Director over the Internal Revenue District encompassing the County of Creek, State of Oklahoma; (2) that Springer maintained a legal residence in this "Internal Revenue District" established by law at the same time; (3) that legal residence was located within the geographical boundaries of the United States District Court for the Northern District of Oklahoma. To find an "Internal Revenue District" encompassed the legal residence of Springer according to Title 26, Section 7621, the Prosecution must prove and the jury must find that as of January 1, 2001, and continuing through April 15, 2006, the President of the United States of America had established an "Internal Revenue District" encompassing the County of Creek in the State of Oklahoma.  The Prosecution must prove and the jury must find Springer's residence is within the United States District Court for the Northern District of Oklahoma and that Springer lived in the County of Creek in the State of Oklahoma from at least January 1, 2001 through

April 15, 2006.

**6.      Springer's current defenses to Count One**

Springer only speculates as to the different defenses regarding Count One. Springer asserts the evidence will show  no agreement, formal or otherwise, at any time beginning in the year 2000 and the Prosecutions tendered discovery proves this along with the testimony Brian Shern.  Springer was unaware nonetheless of any separate offense of the United States regarding the prohibition of "defrauding" independent of 18 U.S.C. § 371 or the meaning of that term in such unknown provision of law.  Springer asserts the evidence will show that at all times he took no deliberate steps to hide anything from the IRS.

The evidence will not show Springer acted in bad faith.  The evidence will show no district director or internal revenue district existed that could be relied upon by the Prosecution to prove to the jury under Cheek Springer was "required by law" or the "law imposed a duty" that he file a Form 1040 for the year 2000, 2001, 2002, 2003, 2004 and 2005.  The evidence will also prove the money at issue for each year was intended not as payment for services rendered, as Brian Shern testified to the indicting Grand Jury, but rather was given to Springer and made known at the time it was given to continue Springer's mission of helping "get rid of the Internal Revenue Service" once and for all.   Evidence will also overwhelming show the IRS Form 1040 for the years 1995 to present do not comply with the Paperwork Reduction Act of 1995 and that a defense to the claims in Count One

was offered by the Commissioner of the Internal Revenue Service in 1996 through 2005 and that Springer relied upon these words and the complete defense under 44 U.S.C. § 3512  as a public protection from the penalties sought in this charge. Evidence will also show Springer's ministry to get rid of the IRS did not begin in 2000 as Shern testified but rather began in 1992 long before Shern alleges Springer met Stilley.   The evidence will also show that none of the alleged overt acts in Count One are acts in furtherance of any agreement entered in 2000 by Springer and Stilley.   Furthermore, there is no evidence the Prosecution intends to enter that will show Springer and Stilley entered into an agreement in 2000 to impede, impair, obstruct, or defeat, the lawful function of the IRS in the computation, ascertainment, assessment or collection of any taxes owed by Springer for 2000, 2003 and 2005.

The evidence will show that Springer's usage of Bondage Breaker's Ministry was not a fake name used to hide money tendered to Springer from the IRS.   The evidence will show Springer did not use Stilley's Iolta Account to conceal income and assets from the IRS.  The evidence will show if Springer was required to make or file anything with the IRS that it was an unintentional mistake and not deliberate. If it becomes necessary, Springer will present a good faith defense to the claims in Count Two.  The evidence will show that the term "exempt amount" for the year 2000 through 2005 has not been written in any law of Congress.   The evidence will prove lack of venue as to Count One.

**7.      Count Two**

Springer is charged in Count Two with attempting to evade Springer's income tax liability for the years 2000  in violation of Title 26, United States Code, Section 7201.

**8.      Count Two Elements**

The elements of attempted tax evasion are: (1) a substantial tax liability was due and owing by Springer for the year 2000; United States v. Mounkes, 204 F.3d 1024, 1028 (10th Cir. 2000); U.S. v. Anderson, 319 F.3d 1218, 1219 (10th Cir. 2003); U.S. v. Thompson,  518 F.3d 832, 853 (10th Cir. 2008) and U.S. v. Farr, 536 F.3d 1174, 1181 (10th Cir. 2008), (2) willfulness; and (3) an affirmative act constituting evasion or attempted evasion of payment regarding the tax liability owed by Springer for the year 2000.   United States v. Mounkes, 204 F.3d 1024, 1028 (10th Cir. 2000); U.S. v. Anderson, 319 F.3d 1218, 1219 (10th Cir. 2003).  To find Springer acted willfully as alleged in Count Two, the Government must prove (1) that the law imposed a specific duty on Springer to file a Form 1040 at the time, place and manner, prescribed by law, (2) that Springer knew of this specific duty according to these prescribed laws, and (3) that he voluntarily and intentionally violated such duty under these laws. . U.S. v. Chisum, 502 F.3d 1237, 1241 (10th Cir. 2007); quoting Cheek v. United States, 498 U.S. 201, 202 (1991).

**9.      Materiality as to Count Two**

Springer asserts the burden is on the Prosecution to show the statements

9

alleged to have been made were made, were false, and were false to a material matter.   To determine whether a statement is material the appropriate test is to examine whether it has a natural tendency to influence, or is capable of influencing a decision or action by another. United States v. Wiles,106 F.3d 1516, 1519 (10th Cir. 1997). The question of whether a statement is material is a question of fact for the jury to decide. Neder v. United States, 527 U.S. at 19-23, 119 S.Ct. 1827; see also U.S. v. Lawrence, 405 F.3d 888, 901 (10th Cir. 2005)

The question of materiality is constitutionally required to be submitted to the jury as an element; failure to do so is reversible error. *United States v. Gaudin*, 515 U.S. 506, 511, 522–23 (1995). A material statement is one that has a natural tendency to influence or was capable of influencing the decision of the tribunal in making a required determination. *See, e.g.*, *United States v. Harrod*, 981 F.2d 1171, 1176 (10th Cir. 1992).  See also *Neder v. United States*, 527 U.S. 1, 25 (1999).

## 10.    Venue as to Count Two

Failure to file Tax Returns is a central issue in Count Two.  In Count Two of the indictment, the Government is required to prove venue.  Proof of venue is an essential element of each of the Counts in the Government's case according to the offenses charged and the Sixth Amendment. It may be established by direct or circumstantial evidence. Furthermore, unlike other elements of an offense which must be proved beyond a reasonable doubt, *venue need* only be proved by a preponderance of the evidence." U.S. v. Taylor, 828 F.2d 630, 633 (10th Cir. 1987)

The requirement concerning the place of filing of the individual income tax return Form 1040 for the year 2000 is provided in 26 U.S.C.A. § 6091(b)(1)(A) for persons other than corporations. It prescribes the place of filing as "in the internal revenue district in which is located the legal residence or principal place of business of the person making the return. . . ." "The federal statute and regulations lay down the rule as a matter of federal law."  Taylor at 634

In order for the jury to find venue was proven to be in the United States District Court for the Northern District of Oklahoma Prosecution must prove to the jury (1)  Springer was required by law to file a Form 1040 for the years 2000 on or before April 15, 2001 with the District Director over the Internal Revenue District encompassing the County of Creek, State of Oklahoma; (2) that Springer maintained a legal residence in this "Internal Revenue District" established by law at the same time; and (3) that legal residence was located within the geographical boundaries of the United States District Court for the Northern District of Oklahoma. To find an "Internal Revenue District" encompassed the legal residence of Springer according to Title 26, Section 7621, the Prosecution must prove and the jury must find that as of January 1, 2001, and continuing through April 15, 2006, the President of the United States of America had established an "Internal Revenue District" encompassing the County of Creek in the State of Oklahoma.  The Prosecution must prove and the jury must find Springer's residence is within the United States District Court for the Northern District of Oklahoma and that Springer lived in the

11

County of Creek in the State of Oklahoma from at least January 1, 2001 through April 15, 2001.

## 11.    Count Two Defenses

The evidence will show that Bondage Breaker's Ministry was not some fake name to hide from the IRS money tendered Springer.  The evidence will show Springer never directed anyone to pay for any service by writing "donation" or "gift" on any check.  The evidence will show Springer kept records as seized by Brian Shern on September 16, 2005.  The evidence will show Springer never concealed or intended to conceal any gross income or assets owned by Springer.

The evidence will not show Springer acted in bad faith.  The evidence will show no district director or internal revenue district existed that could be relied upon by the Prosecution to prove to the jury under Cheek Springer was "required by law" or the "law imposed a duty" that he file a Form 1040 for the year 2000.  The evidence will also prove the money at issue for each year was intended not as payment for services rendered, as Brian Shern testified to the indicting Grand Jury, but rather was given to Springer and made known at the time it was given to continue Springer's mission of helping "get rid of the Internal Revenue Service" once and for all.  Evidence will also overwhelming show the IRS Form 1040 for the year 2000 did not comply with the Paperwork Reduction Act of 1995 and that a defense to the claims in Count Two was offered by the Commissioner of the Internal Revenue Service in 2000 and that Springer relied upon these words and the

complete defense under 44 U.S.C. § 3512 as a public protection from the penalties sought in this charge.    Evidence will also show Springer's ministry to get rid of the IRS did not begin in 2000, as Shern testified, but rather began in 1992.  The evidence will show Springer never stated he had no "income" as Brian Shern testified before the Grand Jury.  The evidence will show if Springer was required to make or file anything with the IRS that it was an unintentional mistake and not deliberate.  If it becomes necessary, Springer will present a good faith defense to the claims in Count Two.  The evidence will show that the term "exempt amount" for the year 2000 has not been written in any law of Congress.  The evidence will prove lack of venue as to Count Two.

## 12.    Count Three and Four

Springer and Stilley are  charged in Counts Three and Four with attempting to evade Springer's income tax liability for the years 2003 and 2005 in violation of Title 26, United States Code, Section 7201. Defendant Stilley is charged using the aiding and abetting statue, Title 18, United States Code, Section 2.

## 13.    Count Three and Four Elements

The elements of attempted tax evasion are:  (1) a substantial tax liability was due and owing by Springer for the year 2003 and 2005; United States v. Mounkes, 204 F.3d 1024, 1028 (10th Cir. 2000); U.S. v. Anderson, 319 F.3d 1218, 1219 (10th Cir. 2003); U.S. v. Thompson,  518 F.3d 832, 853 (10th Cir. 2008) and U.S. v. Farr, 536 F.3d 1174, 1181 (10th Cir. 2008), (2) willfulness; and (3) an affirmative act constituting

evasion or attempted evasion of payment regarding the tax liability owed by Springer.   United States v. Mounkes, 204 F.3d 1024, 1028 (10th Cir. 2000); U.S. v. Anderson, 319 F.3d 1218, 1219 (10th Cir. 2003).To find Springer acted willfully as alleged in Count Three and Four, the Government must prove (1) that the law imposed a specific duty on Springer to file a Form 1040 at the time, place and manner, prescribed by law, (2) that Springer knew of this specific duty according to these prescribed laws, and (3) that he voluntarily and intentionally violated such duty under these laws. U.S. v. Chisum, 502 F.3d 1237, 1241 (10th Cir. 2007); quoting Cheek v. United States, 498 U.S. 201, 202 (1991).  The elements of aiding and abetting are that the Government must prove beyond a reasonable doubt Stilley (1) "willfully associate[d]  with the criminal venture," and (2) "aid[ed] such venture through affirmative action." United States v. Jones, 44 F.3d 860, 865, 869 (10th Cir. 1995)

## 14.    Venue for Count Three and Four

Springer states that issue of venue is the same for Counts Three and Four as Springer expressed above for Count Two and is not in need of being restated.

## 15.    Materiality for Count Three and Four

Springer states that issue of materiality is the same for Counts Three and Four as Springer expressed above for Count Two and is not in need of being restated.

## 16.    Count Three and Four Defenses.

14

The Defenses for Counts Three and Four are the same as expressed above in Count Two with the addition that the evidence will show Stilley never aided and abetted Springer for the year 2003 or 2005 or the other way around.   Evidence will also overwhelming show the IRS Form 1040 for the year 2003 and 2005 did not comply with the Paperwork Reduction Act of 1995 and that a defense to the claims in Count Two was offered by the Commissioner of the Internal Revenue Service in 2003 and 2005 and that Springer relied upon these words and the complete defense under 44 U.S.C. § 3512 as a public protection from the penalties sought in this charge.   The evidence will show Springer never used Stilley's Iolta account to deposit any money from Springer nor did Springer use Stilley's credit cards to conceal any gross income of springer nor did Springer make any materially false statements to the IRS agents and employees or commit any other allegation alleged in Counts Three and Four.  The evidence will not show Springer attempted to conceal any gross income from any proper officer of the United States.  The evidence will show that the term "exempt amount" for the year 2003 and 2005 have not been written in any law of Congress.

## 17.    Counts Five and Six.

Springer is charged individually in Counts Five and Six with willfully failing to file his federal income tax return Form 1040 for the years 2002 and 2004, in violation of Title 26, United States Code, Section 7203. The elements of willful failure to file a Form 1040 are: (1) Springer omitted filing a Form 1040 for each of the years 2002 and

2004 and (2) Springer acted willfully. Sansone v. United States, 380 U.S. 343, 351 (1965)   To find Springer acted willfully as alleged in Count Five and Six, the Government must prove (1) that the law imposed a specific duty on Springer to file a Form 1040 at the time, place and manner, prescribed therein, (2) that Springer knew of this specific duty according to these prescribed laws, and (3) that he voluntarily and intentionally violated such duty under these laws. U.S. v. Chisum, 502 F.3d 1237, 1241 (10th Cir. 2007); quoting Cheek v. United States, 498 U.S. 201, 202 (1991). See also United States v. Thompson/Center Arms Co., 504 U.S. 505, 518 (1992); Bryan v. United States, 524 U.S. 184, 194 (1998)

## 18.     Venue for Count Five and Six

_____Springer states that issue of venue is the same for Counts Five and Six as Springer expressed above for Count Two and is not in need of being restated.

## 19.     Count Five and Six Defenses

The evidence will not show Springer acted in bad faith.  The evidence will show no district director or internal revenue district existed that could be relied upon by the Prosecution to prove to the jury under Cheek that Springer was "required by law" or the "law imposed a duty" that he file a Form 1040 for the year 2000, 2001, 2002, 2003, 2004 and 2005.  The evidence will also prove the money at issue for each year was intended not as payment for services rendered, as Brian Shern testified to the indicting Grand Jury, but rather was given to Springer and made known at the time it was given to continue Springer's mission of helping "get

16

rid of the Internal Revenue Service" once and for all.   Evidence will also overwhelming show the IRS Form 1040 did not comply with the Paperwork Reduction Act of 1980 or 1995 and that a defense to these claims in Count one was offered by the Commissioner of the Internal Revenue Service since 1996. Evidence will also show Springer's ministry to get rid of the IRS did not begin in 2000 as Shern testified but rather began in 1992 .   If it becomes necessary, Springer will present a good faith defense to the claims in Count Five and Six.  The evidence will prove lack of venue as to Count Five and Six. The evidence will show that the term "exempt amount" for the year 2002 and 2004 have not been written in any law of Congress.

## 20.   The Paperwork Reduction Act of 1995.

In *United States v. Chisum*, 502 F.3d 1237 (10th Cir. 2007), the 10th Circuit held that if the charges against Mr. Chisum were predicated on the failing to file the Paperwork Reduction Act of 1995 would apply. at 1244.

The Prosecution in this case took the position that the Paperwork Reduction Act of 1995 did not provide a complete defense or "no defense" to the claims predicated upon the failing to file Form 1040s from 1989 through 2005.

The 10th Circuit in Chisum clearly said:

The PRA, 44 U.S.C. §§ 3501-20, precludes the imposition of any penalty against a person for "failing to comply with a collection of information" if either (1) it "does not display a valid control number" or (2) the agency fails to alert the person that he or she "is not required to

17

respond to the collection of information unless it displays a valid control number." 44 U.S.C. § 3512(a). A § 3512(a) defense may be raised at any time. *See id.* § 3512(b). Tax forms are covered by the PRA. *See Dole v. United Steelworkers of Am.*, 494 U.S. 26, 33, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990).

*United States v. Chisum*, 502 F.3d 1237, 1243 (10th Cir. 2007)

The Prosecution cited to Chief Judge Eagan's opinion in 06-110 which stated:

However, it is settled law that "the requirement to file a tax return is mandated by statute, not by regulation" and "such explicit statutory requirements are not subject to the PRA." *United States v. Dawes*, 951 F.2d 1189, 1191-92 (10th Cir.1991).

*Springer v. United States*, 447 F.Supp.2d 1235, 1238 (N.D. Okla. 2006).

Yet, the Dawes Panel actual held:

"We would be inclined to follow the general analysis of *Wunder* and *Hicks* and hold that the operation of the PRA in these circumstances did not repeal the criminal sanctions for failing to file an income tax return because the obligation to file is a statutory one. **However, we are not compelled to rest our opinion on the statutory origin theory because we find the analysis of other courts which have considered the issue to be persuasive."**

Dawes at 1192

Of course, this is why the published decision on 8. 31.09 by the Tenth Circuit in Springer v. IRS stated its 5.1.07 Order in Springer III only upheld Chief Judge Eagan's decision that the Paperwork Reduction Act of 1995 did not provide a right of action and can only be raised as a defense.  See Exhibit 1, pg. 8-9  Nothing else Judge Eagan said was affirmed.  In fact, the Panel actually stated "we did not address the merits of Mr. Springer's claims under the PRA in any of the three

cases."  See Exhibit 1, pg. 8

Interestingly, the Prosecution argued to this Court **"Defendant's "complete defense" is no defense"** while the Tenth Circuit repeatedly states the protection provide by the Paperwork Reduction Act is a complete defense, a defense, is a difficult issue and applies to failing to file Forms 1040.

In Springer III, the Tenth Circuit stated to this Court:

"Thus, § 3512 **may only be invoked as a defense** "at any time during ongoing proceedings." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 150 (D.C. Cir. 2001) (discussing *Saco River Cellular, Inc. v. F.C.C.*, 133 F.3d 25, 31 (D.C. Cir. 1998)).
     Springer did not raise the PRA as a defense or in a judicial action applicable to any agency administrative process. Rather, he raised it as a claim in an independent action, a fact that is underscored by the relief sought under the PRA—an injunction against conduct alleged to have occurred in connection with other pending civil actions and criminal investigations. **Because § 3512(b) does not provide a right of action, the district court properly dismissed the case."**

See Exhibit 2, pg. 13 [Order of May 1, 2007 involving 05-466 and 05-1075 (Judge Friot presiding)]

Lastly, there can be no doubt the Paperwork Reduction Act of 1995 applies as a complete defense to the claims the Prosecution advanced against Springer to the Grand Jury.

The Prosecution cited to section 6151 as part of its theory on the meaning of "required by law."  See Doc. 104 "The Internal Revenue Code ties the duty to pay federal income taxes to the duty to make an income tax return. See 26 U.S.C. § 6151(a) ("when a return of a tax is required . . . the person required to make such

19

return shall . . . pay such tax")  " Holywell Corp. v. Smith, 503 U.S. 47, 52 (1992)

In U.S. v. Collins, 920 F.2d 619, 630 n. 13 (10th Cir. 1990) the Tenth Circuit

announced to the Prosecution in this case:

> In United States v. Weiss, 914 F.2d 1514, 1520-22 (2d Cir. 1990), the Second Circuit held that the Paperwork Reduction Act did not preclude prosecution for filing false medicare and Medicaid claims, despite the fact that the forms in question did not contain OMB control numbers. Distinguishing Smith, where defendants were prosecuted for failure to file a Plan of Operations with the Forest Service, **the Second Circuit reasoned that the Act "`only protects a person from penalties for failing to files information** It does not protect one who files information which is false.'" Id. at 1522 (quoting Funk, The Paperwork Reduction Act: Paperwork Reduction Meets Administrative Law, 24 Harv.J. on Legis. 1, 77 n. 411 (1987)) (emphasis in original). We recognize that because defendant was charged with tax evasion and not failure to file tax returns, he technically was not being prosecuted for failure to provide information. Had defendant's tax evasion been effectuated through the filing of falsified tax returns, Weiss would dictate that no Paperwork Reduction Defense would be available to him. But **because the provision of information in 1040 forms is inexorably linked to the statutory requirement to pay taxes, and defendant failed to file such forms, the Paperwork Reduction Act was applicable to such conduct.**

The Tenth Circuit in Chisum referenced this footnote 13 by saying:

> But the PRA protects a person only "for *failing* to file information. It does not protect one who files information which is false." *Collins*,920 F.2d at 630 n. 13 (internal quotation marks omitted).

Chisum 502 F.3d at 1244

In its Bill of Particulars the Prosecution explains:

Counts 2, 3, 5 and 6 of the Indictment each include the phrase

"required by law" in reference to Defendant Springer's failure to file a federal income tax return. **The filing of income tax returns is mandated by statute**. *United States v. Collins*, 920 F.2d 619, 630-31 (10th Cir. 1990); *United States v. Dawes*, 951 F.2d 1189, 1193 (10th Cir. 1991); *United States v. Neff*, 954 F.2d 698, 699-700 (11th Cir. 1992); *United States v. Hicks*, 947 F.2d 1356, 1359 (9th Cir. 1991); *United States v. Kerwin*, 945 F.2d 92 (5th Cir. 1991); *United States v. Wunder*, 919 F.2d 34, 38 (6th Cir.1990). The statutes that required Defendant Springer file individual federal income tax returns are as follows:

Springer attaches the entire quote from Collins on page 630-631 and

challenges the Prosecution to show this Court and Springer where in that language

the conclusion that the "filing of income tax returns is mandated by statute":

[29]  2. Paperwork Reduction Act

[30] The Paperwork Reduction Act, 44 U.S.C. § 3501-20, requires that federal agencies submit all "information collection requests" to the Director of the Office of Management and Budget (OMB) for review, 44 U.S.C. § 3507. "Typical information collection requests include tax forms,[fn12] medicare forms, financial loan applications, job applications, questionnaires, compliance reports and tax or business records." Dole v. United Steelworkers, ___ U.S. ___, 110 S.Ct. 929, 933, 108 L.Ed.2d 23 (1990). Once the OMB director approves the information collection requests, he must assign it a control number. 44 U.S.C. § 3504. An agency shall not conduct or sponsor the collection of information unless the information collection request has been submitted to and approved by the Director, 44 U.S.C. § 3507(a), and shall not engage in a collection of information without obtaining from the Director a control number to be displayed upon the information collection request, 44 U.S.C. § 3507(f). Moreover,

> no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved was made  after December 31, 1981, and does not display a  current control number assigned by the Director, or fails to state that such request is not subject to
> this chapter.

21

[31] 44 U.S.C. § 3512. See, e.g., United States v. Smith, 866 F.2d 1092, 1098-99 (9th Cir. 1989) (prosecution for failure to file a Plan of Operations with the Forest Service barred under § 3512 of the Act because the filing requirement was imposed pursuant to an information collection request which lacked an OMB control number).

[32] Dickstein did not contend that the W-4 forms at issue in the case violated the Paperwork Reduction Act. He further conceded that the IRS 1040 forms at issue all contained OMB control numbers.[fn13] He argued, however, that because the forms did not contain expiration dates, they did not comply with the Act. While acknowledging that there is no explicit requirement in the statute that information collection requests contain expiration dates, Dickstein pointed to oblique language in the legislative history of the Act suggesting that expiration dates are required. See S.Rep. No. 96-930, 96th Cong. 2d Sess. (1980), reprinted in 1980 U.S.Code Cong. & Admin. News 6241, 6242. We agree with the district court that this isolated language in the Senate Report does not outweigh plain statutory language indicating that expiration dates are not required along with an OMB control number. However we cannot say that Dickstein lacked an arguable legal basis to argue to the contrary. See Lonsdale v. United States, 919 F.2d 1440, 1447 (10th Cir. 1990) (coverage of Paperwork Reduction Act is not sufficiently well-settled to warrant sanctions for frivolous appeal). On the other hand, the IRS 1040 forms at issue in the present case were explicitly designated as either "1982," "1983," or "1984" tax returns with their effective dates of coverage clearly denoted.[fn14] See rec. vol. IX, doc. 25. Assuming arguendo, that the Paperwork Reduction Act mandates that all federal forms contain expiration dates, this requirement plainly would be satisfied by the dates provided on the 1040 forms at issue. Dickstein thus lacked any arguable basis in fact or law to argue that the noncompliance of the 1040 forms which defendant failed to file did not comply with the Paperwork Reduction Act: his argument is legally frivolous. See Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989) (defining legal frivolousness).

Springer cannot find any such suggestion on page 630 or 631 of the Collins published decision.  Springer also cannot find on page 1193 in the Dawes decision

where the proposition the filing of an income tax return is mandated by statute was

held.  Page 1193 quotes as follows:

> [14] We do not believe that Congress could have intended that the PRA repeal the statutory criminal penalty for failing to file an income tax return because tax regulations and instructions lack OMB numbers. As noted above, the 1040 form has the necessary numbers and expiration date for any necessary compliance with the Act. The regulations and instructions, meaningless without a 1040 form to file, are regulations and instructions aimed at a purpose: the proper completion of the 1040 form. As long as the 1040 form complies with the Act, nothing more is required. We agree with the Ninth Circuit that
>
>> [i]f in enacting the PRA, Congress had intended to repeal 26 U.S.C. § 7203 [which predates the PRA by  over twenty-five years] it could have done so explicitly. Repeals by implication are not favored. Morton v. Mancari, 417 U.S. 535, 549 [94 S.Ct.  2474, 2482, 41 L.Ed.2d 290] (1974). Congress enacted   the PRA to keep agencies, including the IRS, from  deluging the public with needless paperwork. It did  not do so to create a loophole in the tax code.
>
> [15] Hicks, 947 F.2d at 1359.
>
> [16] Finally, the appellants argue that because the instructions explicitly require them to maintain tax and business records, see Instructions for Preparing Form 1040 (1983 ed.) at 18, the instructions are "recordkeeping requirements" and thus are information collection requests subject to the PRA. We disagree. We would discern two subsets to the recordkeeping side of the "reporting and recordkeeping" category. Any recordkeeping that would require the taxpayer to further manipulate, analyze or rearrange the information in the documents he or she has already amassed in order to complete the 1040 form might arguably be an additional paperwork step that would be subject to the PRA - a point we need not decide. In contrast, a requirement simply to maintain or store the documents already assembled, or which logically ought to be assembled, for completion of the 1040 does not impose any extra paperwork burden on the taxpayer within the meaning of the Act and should escape the force of the PRA. Thus, neither the instructions nor the regulations are information collection requests or reporting and recordkeeping requirements requiring OMB control numbers pursuant to the PRA. The

public protection provision of the Act, therefore, will not shield appellants from the penalty for failing to file their tax returns.

Dawes at 1193

And again, Springer does not find anywhere in these two Tenth Circuit published decisions where the Tenth Circuit subscribed to the statutory origin theory argued by the Prosecution in their Bill of Particulars and other responses.  In fact, in Dawes, as Springer argued above, the Tenth Circuit specifically rejected the statutory origin theory wherein they stated:

> However, we are not compelled to rest our opinion on the statutory origin theory because we find the analysis of other courts which have considered the issue to **be persuasive**.

Dawes at 1192.

Springer agrees that the other Circuit decisions cited by the Prosecution do reference a statutory origin theory however none of those theories agree with each other.  For instance, *in United States v. Neff*, 954 F.2d 698, 699-700 (11th Cir. 1992) the Eleventh Circuit said:

> We state only the most obvious reason for rejecting Neff's claim. Congress created Neff's duty to file the Returns in 26 U.S.C. § 6012(a), and **nowhere did Congress condition this duty on any Treasury regulation**. See United States v. Wunder, 919 F.2d 34, 38 (6th Cir. 1990). Congress did not enact the PRA's public protection provision to allow OMB to abrogate any duty imposed by Congress. See Dole, 494 U.S. at 32-33, 110 S.Ct. at 933; United States v. Hicks, 947 F.2d 1356, 1359-60 (9th Cir. 1991); Wunder, 919 F.2d at 38. So the PRA provides Neff no refuge from his statutorily-imposed duty to file income tax returns.

There is obvious reason why the Tenth Circuit does not agree with the

Eleventh Circuit in Neff.  In Dawes, 951 F.2d 1189, 1193 (10th Cir) at footnote 3 the

Panel in that published decision cited to both section 6011 and 6012.   See also

United States v. Rickman, 638 F.2d 182, 184 (10th Cir. 1980)("Sections 6011 and 6012,

Title 26 U.S.C. require that he file a return.")

As this Court clearly can see section 6011 begins "When required by

regulation prescribed by the Secretary every person made liable for any tax

imposed by this title, or with respect to the collection thereof, shall make a return

or statement according to the forms and regulations prescribed by the Secretary."

Here the Tenth Circuit found the obvious in Dawes and Rickman and that was the

requirement to provide information is conditioned upon regulations prescribed by

the Secretary and such conclusion was inapposite to the conclusion in Neff by the

Eleventh Circuit.

*In United States v. Kerwin*, 945 F.2d 92 (5th Cir. 1991) the Fifth Circuit per

curiam stated:

> This issue was considered in *United States v. Wunder,* 919 F.2d 34, 38
> (6th Cir. 1990), which held that the Paperwork Reduction Act does not
> apply to the statutory requirement that a taxpayer must file a return.
> Since Kerwin, like the taxpayer in *Wunder,* **was convicted of that
> statute**, which is not an information request, there is no violation of the
> Paperwork Reduction Act. <u>For the reasons set forth in *Wunder,* we
> AFFIRM.</u>

In *United States v. Hicks*, 947 F.2d 1356, 1359 (9th Cir. 1991) that panel

obviously rejected by the Dawes Panel and stated "the code requires that persons

such as Hicks make a return. 26 U.S.C. § 6012." Obviously, the 9th Circuit in Hicks did not agree section 6011 played any role in the requirement to file a return as the Panel in Dawes and Rickman did.

The last citation by the Prosecution in their Bill of Particulars is *United States v. Wunder*, 919 F.2d 34, 38 (6th Cir.1990). This decision was also relied upon by the Panel in Kerwin by the Fifth Circuit. In Wunder, that panel held:

> "the regulations do not need a number because the requirement to file a tax return is mandated by statute, not by regulation. Defendant was not convicted of violating a regulation but of violating a statute which required him to file an income tax return. See 26 U.S.C. § 6012 and 7203."

The theory in Wunder left off section 6011 and added section 7203. Neff relied upon 6012 by itself as did Hicks. Yet the Dawes Court rejected these theories specifically. The Dawes Court specifically rejected the Prosecution theory in this case and the theory in Wunder and Hicks by saying:

> "We would be inclined to follow the general analysis of **Wunder and Hicks** and hold that the operation of the PRA in these circumstances did not repeal the criminal sanctions for failing to file an income tax return because the obligation to file is a statutory one. **However, we are not compelled to rest our opinion on the statutory origin theory because we find the analysis of other courts which have considered the issue to be persuasive**."

Dawes at 1192

And lastly, this Court need look no further to decide the Paperwork Reduction Act is a complete defense to all the charges in the indictment of this case as the Prosecution cited to section 6011 among the numerous sections they cited to on

July 14, 2009.  See Doc. 104.  All the charges rely upon and are predicated upon the alleged willful failure to file returns.

As the Tenth Circuit stated on August 31, 2009 finding the Commissioner of the Internal Revenue frivolous, that the argument the Paperwork Reduction Act defense was found frivolous in Springer I, II and III, is a frivolous argument in and of itself by the Commissioner and his attorneys.

The Prosecution in this case is no less frivolous than the Commissioner was in 08-9004 held on August 31, 2009 by the Tenth Circuit by arguing what it has argued to this Court in its opposition to the Paperwork Reduction Act claims of Springer.

This Court did not make a formal order on why it was denying Springer's Paperwork Reduction Act claims for dismissal leaving Springer to believe this Court accepted the Prosecution's frivolous position they have articulated over and over again.

Because the Paperwork Reduction Act is inexorably linked to payment of taxes the defense provided by section 3512 clearly applies in this case.

Paperwork Reduction Act violations self evidence from face of Form 1040s for 1990 through 2008.   The evidence introduced at trial will show the Forms 1040, the booklets, and the application 83I made by the IRS are not in compliance with the certification made by the IRS in section 19 of the Form 83I nor are any of the information required on Form 1040 pursuant to Title 44, Section 3506 and 3507, or under 5 CFR 1320 appearing upon the face of any Form 1040 from 1995 through

2008.  As the Tenth Circuit recently stated while finding the Commissioner "frivolous"

"Mr. Springer raises difficult issues regarding the PRA and the tax code."

     Since the charges in Counts One through Six are "predicated" upon the

failure to file the Paperwork Reduction Act does apply as a complete defense and

or good faith or otherwise defense.


                Respectfully Submitted
                /s/ Lindsey K. Springer
                Lindsey K. Springer
                5147 S. Harvard, # 116
                Tulsa, Oklahoma 74135
                918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Trial Brief was ecf'd on September 21, 2009 to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature

29