IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 09-CR-43-SPF |
| | ) | |
| LINDSEY KENT SPRINGER and | ) | |
| OSCAR STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

EMERGENCY MOTION REGARDING RULE 15 DEPOSITION TRAVEL[1]

Lindsey Kent Springer ("Springer") moves the Court for an order directing the United States Comply with this Court's Order involving the paid expenses incurred regarding Deposition of Vikki Wiggins i("Wiggins") in California and direct Springer's return flight be scheduled for Saturday, October 17, 2009 on flight 2450 that leaves at 3:35 P.M. from LAX instead of the day of the deposition, October 16, 2009 at 4:35 P.M. Over Springer's objections this Court ordered the Rule 15 Trial Deposition of Wiggins be taken but without direction from the Court as to when such deposition is to be taken (before trial).

---

[1]At 1:40 P.M. today, Springer contacted Mr. O'Reilly one last time to see if he would be willing to agree to the Saturday departure after having had the night to sleep on it to which he rejected Springer's offer of change to Saturday and flight 2450 being requested herein and elaborated more on why he refused to change the time. He said Springer's reason to change is not because Springer is worried about the deposition or missing his flight but because he hypothecates Springer will use Friday evening and Saturday Morning early to "investigate" for trial preparation and it was for that additional reason he would not honor Springer's requested change.

In its Order the Court said the "Government will pay the costs of taking the deposition and the expense of travel and subsistence for the defendants and their standby counsel."  It is these words that form the basis of Springer's Motion herein and the problems between the parties.

On October 7, 2009, Springer, Stilley and the Prosecution, agreed to take the deposition per this Court's Order on October 16, 2009 beginning at 9:00 A.M. California Time.  Springer was informed by Mr. O'Reilly a Ms. Hall[2] will communicate with Springer about travel arraignments.  The deposition is to take place at Wiggins' Home.  Wiggins home is apprx. 1 hour from the LAX Airport.  **See Exhibit 5.**

On October 8, 2009 Springer gets notice from a David Darrington[3] representing he works with the U.S. DOJ regarding travel arraignments ("travel agent").  **See Exhibit 1**.  Springer is given flight and lodging itinerary.  **See Exhibit 2**. Less than 5 minutes after the travel agent first notified Springer he was flying out on Thursday, October 15, 2009 at 12:35 P.M. and leaving California at 4:35 P.M. on October 16, 2009 Springer is told to "disregard this one" and that "you will have another one coming soon."  **See Exhibit 1** These plans placed Springer at the Crown Hotel in L.A. California.

On Monday, October 12, 2009, Springer receives a phone call message from

---

[2]Springer has had numerous communications with Ms. Hall and is familiar with her.

[3]Springer trusts certain representations of the Prosecution so long as he can verify same.

the travel agent directing Springer to contact the travel agent about his travel. Springer returns the call and leaves a message with the travel agent to call him on his cell phone. The Office was closed on Monday but the travel agent stated he was in the office for a few more minutes and to have Springer call within that time. Springer did call but no one answered.

On October 13, 2009, 2 days before travel at issue in this Motion, Springer receives an email at 7:02 A.M. from the travel agent with the proposed current travel schedule. See **Exhibit 3**.[4]  Springer, upon receiving the email, immediately attempted to contact by phone the travel agent and had to leave a message again because the travel agent did not answer his phone. Springer informed the travel agent that the flight out of LAX on Friday at 4:35 P.M. was not reasonable.

At 10 A.M. Springer gets an email from the travel agent informing him "I'm sorry but I have everything scheduled for airfare and hotel stay. If you have any questions, please let us know." **See Exhibit 4.**

At 2:23 Mr. O'Reilly sends Springer an email that says:

The United States' responsibility is to make travel arrangements that allow you to attend the deposition. We have done so.

As noticed in the United States filing last week the deposition will commence at 9:00 a.m. Friday, October 16, at Ms. Wiggins' home, which is approximately forty minutes from the airport and hotel. Ms. Wiggins' address, which was previously provided to Mr. Robert Burton,

---

[4]The differences between the October 8, 2009 and October 13, 2009 do not affect the issues in this motion regarding departure date and time.

3

is 1052 East 131st Street, Los Angeles, California. The United States has also arranged for Mr. Robert Burton to be reimbursed for a rental car to be used to transport you, Mr. Stilley and Mr. Williams (if he attends) to the deposition and back to the airport. Your flight on Friday leaves at 4:45 p.m., allowing at least six hours for the deposition.

**The United States is not in a position to adjust your travel arrangements. If you wish to adjust your travel for whatever reason, that is your responsibility, not that of the United States**.

Sincerely,

Charles A. O'Reilly
Special Assistant U.S. Attorney
**Northern District of California**[5]

See Exhibit 5.

At apprx. 2:30 P.M on October 13, 2009, Springer contacted O'Reilly [6] by phone and explained to him that the travel agent was not contacting Springer back and that time was becoming short for the Rule 15 deposition.

Springer explained that beginning the deposition at 9:00 A.M. on Friday, October 16, 2009 and having to be at the L.A. Airport and on a flight that leaves at 4:35 P.M.[7] was unreasonable and unacceptable. Springer reminded O'Reilly why

---

[5]Springer is not certain about this designation but is investigating it presently.

[6]Since he is the person who informed the Court "the United States will pay the costs associated with the taking of the deposition, including the cost of videotaping the deposition, preparing transcripts of the videotaped deposition (if requested), and the travel of the defendants and their attorneys." See sealed supplemental Motion dated October 1, 2009.

[7]If Mr. O'Reilly has his way Springer will miss the flight by at least 10 minutes as he suggests in Exhibit 4 the flight takes off at 4:45 P.M. which Exhibit 3 shows

we were at Ms. Wiggins home was because "Vikki would be able to rest when needed" among other illnesses she is said may affect her abilities at the deposition. See Sealed Exhibit D attached to Prosecution's Sealed Supplemental Motion dated October 1, 2009.

Springer directed O'Reilly that if Ms. Wiggins home is apprx. 1 hour away from the L.A. Airport and Springer needs to arrive Apprx. 2 hours ahead of the scheduled flight departure,[8] this would place Springer needing to be in a car and in route to the Airport by apprx. 1:30 P.M.[9] Springer then pointed out that this left 4.5 hours to take the trial video deposition of Ms. Wiggins. On the surface this may appear to be barely enough time but just enough is only if there is no problems or erros that affect this time table.[10]

Springer has Grand Jury testimony to go over with Ms. Wiggins as well as anything she says during her deposition which also may trigger questions from Mr. Stilley and redirect examination from the Prosecution. **See Exhibit 7**

As Exhibit 5 shows the Prosecution thinks they have 6 hours to take a deposition which they clearly do not if Springer is considered to make his flight.

Then there is the problem of having to rush the deposition in light of any

---

4:35. P.M.

[8]This is not Tulsa or Oklahoma City it is LAX.

[9]With no room for L.A. traffic problem consideration.

[10]For instance, Springer does not know how many breaks Ms. Wiggins will need among other possible breaks and interruptions.

problems that could come up and to this the travel plans O'Reilly offers fails to consider and is unacceptable.

In Springer's conversation with O'Reilly initially it was agreed that if Springer could change the flight plan without relying upon any other person then the proposed plan could remain in place because Springer could simply call up and change the plan to Saturday.[11]  As Mr. O'Reilly admitted they would not adjust the plans and that Springer is on his own. **See Exhibit 5.**

O'Reilly's expressed reason for why he was preventing Springer from changing the flight plan to a reasonable time was that he was trying to save the "tax payers" the hotel expense for the second night. [12]   In fact, O'Reilly's 6 hour determination is ridiculous.  **See Exhibit 4**.

Springer explained in a lengthy email why it is best to error on the side of caution and schedule the flight out on Saturday because of the risk Friday departure poses on Springer's 6th Amendment Right to confront witnesses against him to which O'Reilly proposed that if by 2:00 P.M. on Friday, October 16, 2009, they could see that the deposition was not concluding, then Springer could call the travel agent and he could change the flight. **See Exhibit 6**

---

[11]The last flight out of California that arrives in Tulsa on October 16, 2009 must depart by 4:35 P.M.  There is 2 hour time change and a 3.5 hour flight to Dallas plus a 1 hour flight to Tulsa.

[12]Springer stated to O'Reilly do you really wish to get the Court involved over $ 100.00 (they are spending 10 to 15 thousand on this deposition) to which he replied "Mr. Springer, you have been manipulating the system for 2 decades and I am not going to let you do it here."

Springer informed O'Reilly why this proposal would not work was because 2:00 P.M is 4:00 P.M. Oklahoma time, where the travel agent is located and that Springer was not placing his time in the hands of a person he has never spoken to that care nothing about Springer's well being regarding travel or anything else for that matter.[13] See Exhibit 7. Springer has many hundreds of thousands of miles in the air and has been stuck traveling numerous times in airports. Springer agreed to the October 16, 2009 Deposition but did not agree to run the risk of being stuck in California till the next available flight out that the Prosecution could then schedule at their will.

Springer would be faced with cutting the deposition short affecting his 6th Amendment right to confront Ms. Wiggins or missing not only the 4:35 flight but the possibility exists Springer could not be on a flight til Monday with such short notice.

Because Mr. O'Reilly interjected his rendition of Springer's purported 2 decade manipulation of the "system" to justify why he would not direct Springer's travel to an afternoon flight on Saturday, sighting his excuse not to "waste" tax payer's money on a second night stay as a another reason, Springer needs this Court to get involved.

---

[13]The treatment Springer is getting currently from O'Reilly and his staff should be sound indicators these people are of the mind set Springer has been in manipulation mode for 2 decades of "the system" and would care nothing at all about the impact on Springer either not being able to make his flight or not being allowed to complete the trial deposition of Ms. Wiggins would have on Springer as some sort of purported justice.

7

Springer pointed out in his email that the travel of Mr. Burton was allowing him to return on Sunday to which O'Reilly explained that is different because they were "accomodat[ing]" Mr. Burton. The entire reason why this deposition is taking place is so Springer can have a right to confront all witnesses presented against him.

O'Reilly cannot point to a single "accommodation" Springer has sought or received regarding this rule 15 deposition. It is apparent Mr. O'Reilly believes Springer's Sixth Amendment Right to confront Ms. Wiggins is a "waste of tax payer's money." Maybe he holds that same position in respect to jury trials or Judges salaries. It is obvious to Springer there is something much more sinister a foot regarding why Mr. O'Reilly will not direct Springer's travel plans to a reasonable time and Springer will not stop until he finds out what that is.

Springer could have been flown out much later on Thursday but makes no complaint on that waste of Springer's time. Springer has tried to accommodate O'Reilly and based upon what has been stated to Springer on October 13, 2009; i.e, the ever changing story about one minute the plan cannot be changed and that cost rests on Springer, to, Springer can change it through O'Reilly's travel agent so long as he knows by 4:00 P.M. Oklahoma time on October 16, 2009; Springer needs this Court to order O'Reilly to direct Springer's travel home to a reasonable time table considering all the facts explained by Springer herein and in his emails attached as exhibits.

O'Reilly's last shot at Springer suggests "the United States representatives are

flying out Thursday and returning Friday" and that Springer has not articulated any reason to be "treated differently."[14]  **See Exhibit 8.**   Holding true to his statements earlier on October 13, 2009, which previously argued Mr. Snoke needed 2 hours to depose Ms. Wiggins and Springer can only have 2 hours to cross examine her, Mr. O'Reilly seems now to have adjusted his estimate to "less than one hour" in taking Ms. Wiggins deposition.  **See Exhibit 8 compared to Exhibit 7**.

What O'Reilly's theory is of Springer's purported 2 decade manipulation of the system will have to wait for trial as Mr. Shern was on the phone with him when O'Reilly made that ridiculous statement.  O'Reilly's objectivity at this point is certainly in question.

There is a flight out of LAX at 3.35 on October 17, 2009, # 2450 which Springer could easily make by arriving at the airport on Saturday, October 17, 2009 by 1:30.[15] There are plenty of seats on that flight currently.

In the spirit of fairness[16] Springer attaches Exhibit 9 which is O'Reilly's last word on the subject being addressed herein.  His expression of his attempts to resolve this dispute "amicably" is self centered on the realization Springer intends on having him stand account to this Court for his responses and treatment of Springer regarding this unreasonable and unacceptable travel return from the deposition

---

[14]Although on different flights.

[15]Springer is not certain how far the Hotel is from the airport but check out time is by noon giving Springer enough time to make the 3:35 flight.

[16]Something not forthcoming form the Prosecution in this case!

of Ms. Wiggins (and explanations in opposition). Springer invites him to explain what he means by "continued misrepresentations" since his emails speak for themselves.

Springer, regardless of the personal attacks O'Reilly makes on Springer, states that the issue here is whether a 1:30 departure time from Ms. Wiggins Home is sufficient to take both the deposition and timely arrive on a flight that leaves at 4:35 P.M. on Friday, October 16, 2009.

And if it is not, what are Springer's remedies. Springer believes that scheduling the basic same flight but on Saturday instead of Friday, more than satisfies the problem readily apparent with O'Reilly's current flight plan.[17] Usually the flights late in the day are less expensive than flights in the morning. Springer thus suggested same basic flight time but next day to satisfy everyone including the "taxpayers."

Springer would also point out that he successfully took the deposition of 11 high ranking treasury officials in April of 2009, in case 08-278, and was commended by the District Court for Springer seemed to get through depositions faster than any recent memory the District Court had on the subject and without any incidents whatsoever.

---

[17]O'reilly's suggestion that it would be ok for Springer to get stuck in LA because he would be stuck with Department of Justice Attorneys is ridiculous. DOJ has so many remedies that Springer does not. Springer does not have a DOJ credit card for one.

CONCLUSION

Springer requests this Court issue an order to Charles O'Reilly to direct Springer's Flight out on Saturday, October 17, 2009, scheduled on flight 2450 departing California's LAX airport at 3:35 P.M as this allows the deposition of Ms. Wiggins to be taken with reasonable time and without the possibility that either the deposition will not be concluded or Springer will miss his flight leaving him in California waiting on the Government to get around to changing Springer's flight.

Respectfully Submitted
/s/ Lindsey K. Springer
<u>Lindsey K. Springer</u>
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Emergency Motion Regarding Rule 15 Deposition travel was ecf'd on October 14, 2009, to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

<u>/s/ Lindsey K. Springer</u>
Signature