IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                        Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants

TITLE 28, SECTION 144 AFFIDAVIT OF LINDSEY KENT SPRINGER
REGARDING BIAS AND PREJUDICE

Lindsey Kent Springer ("affiant") makes this affidavit regarding bias against affiant and in favor of the United States and prejudice against affiant and in favor of the United States by both Honorable Stephen P. Friot, United States Western Oklahoma Judicial District Court Judge and the Honorable Chief Judge Claire V. Eagan United States' Northern Oklahoma Judicial District Court Judge pursuant to Title 28, Section 144.  A certification of Counsel accompanies this affidavit.

FACTS RELEVANT TO BIAS AND PREJUDICE

The Internal Revenue Service is a creature created by the Secretary of Treasury at 26 CFR 601.101 which live or die outside the District of Columbia through "internal revenue districts" and "district directors."

On May 29, 1985, Wayne Edward Alley was nominated by then President Ronald Reagan to a **newly enacted** inferior Article III office in the United States'

1

Western Oklahoma Judicial District, at 98 Stat. 333.  The senate confirmed the appointment on July 10, 1985.  Judge Alley took senior status in 1999.

On or by October, 2000, all internal revenue districts encompassing the State of Oklahoma were abolished and all district director offices were also abolished at the same time.  See Doc. 71.pg. 4.

On September 4, 2001, Stephen P. Friot, was nominated by then President George W. Bush to hold an Article III Judicial Office formerly held by Judge Alley, in the United States' Western Judicial District during good behaviour.   Stephen P. Friot commission began on November 12, 2001.[1]

On August 31, 2004, Chief Judge Eagan, United States' Northern Oklahoma Judicial District,  entered an order involving an agreement between Douglas Horn, Melody Nelson and Eddy Patterson, in exchange for some future reduction in Mr. Patterson's sentence if Mr. Patterson assisted in the "on going" Grand Jury investigation of Affiant and Stilley. Doc. 77-22

On September 1, 2004, Chief Judge Eagan granted a 35(b) motion in favor of Ms. Patterson in 03-cr-055 reducing Ms. Patterson's sentence 14

---

[1] The boundaries or border Congress set for the United States' Western Oklahoma Judicial District surround the counties of Alfalfa, Beaver, Beckham, Blaine, Caddo, Canadian, Cimarron, Cleveland, Comanche, Cotton, Custer, Dewey, Ellis, Garfield, Garvin, Grady, Grant, Greer, Harmon, Harper, Jackson, Jefferson, Kay, Kingfisher, Kiowa, Lincoln, Logan, McClain, Major, Noble, Oklahoma, Payne, Pottawatomie, Roger Mills, Stephens, Texas, Tillman, Washita, Woods, and Woodward.  Tulsa or Creek County are not listed by Congress.

months in exchange for her withdrawing her appeal at the 10th Circuit and agreeing to testify before an ongoing Grand Jury investigating Affiant.  Doc. 77-23

Ms. Patterson testified before a Grand Jury sitting in the United States Courthouse in Tulsa Oklahoma no October 6, 2004.  Exhibit 1 attached to affiant's Memorandum supporting Motion to Disqualify, Recuse, Removal and Random Reassignment filed simultaneously herewith this affidavit.

On April 25, 2005, affiant filed case 05-466, styled Springer v. IRS, in the United States Western Oklahoma Judicial District Court and was assigned the Honorable Stephen P. Friot as the District Judge.

On September 15, 2005, affiant filed case 05-1075, styled Springer  v. IRS, in the  United States Western Oklahoma Judicial District Court and was assigned the Honorable Stephen P. Friot as the District Judge.

On October 6, 2005, the Honorable Stephen P. Friot dismissed affiant's complaint in 05-466 in favor of the IRS.

On February 17, 2006, affiant filed case 06-cv-110, styled Springer v. IRS, in the United States' Northern Oklahoma Judicial District Court and was assigned the Honorable Chief Judge Claire V. Eagan.

On June 21, 2006, the Honorable Chief Judge Claire V. Eagan, instead

3

of recusing herself, issued an order in favor of the IRS and against affiant and referenced knowledge of both 05-466 and 05-1075 therein.

On August 7, 2006, the Honorable Stephen P. Friot dismissed affiant's complaint in 05-1075 in favor of the IRS.

On March 10, 2009, a Title 28, Section 1861 "Grand Jury" sitting in the United States Courthouse in Tulsa, Oklahoma, purportedly returned an "indictment" pursuant to the Fifth Amendment naming Lindsey Kent Springer and Oscar Amos Stilley for violating internal revenue laws in a Judicial District.

On March 10, 2009, Honorable Judge James H. Payne was randomly assigned according to local rules of civil procedure Rule 40.1(a) . On March 18, 2009, Affiant filed a Bill of Particulars.  Doc. 7 On March 18, 2009, Honorable Judge James H. Payne  recused him self citing conflict of interest in this case. Doc. 9

On March 31, 2009, Honorable Chief Judge Claire V. Eagan directed the Clerk of Court to bypass local civil Rule 40.1(a) and to direct the Honorable Western Oklahoma  Judicial District Judge Stephen P. Friot, to preside in 09-cr-043. Doc. 24

On April 7, 2009, Affiant moved for clarification of appointment.  Doc. 30.

On April 10, 2009, Stephen P. Friot ordered a hearing on his assignment.  Doc. 34

On April 16, 2009, the United States responded to Affiant's Motion attaching Misc. # 23 to its response.  Doc. 42

On April 22, 2009, during a purported pretrial conference Stephen P. Friot

informed Affiant his Motion to Clarify was granted and that he had been clarified. On April 22, 2009, Stephen P. Friot denied without prejudice Affiant's Motion for Bill of Particulars.  Doc. 43.

On April 22, 2009, Stephen P. Friot ordered all the sealed pleadings in 03-cr-55 to be turned over to him in the United States District Court for the Western Oklahoma Judicial District by April 29, 2009 concerning Judith and Eddy Patterson.[2] Those pleadings showed Chief Judge Eagan[3] had given 35(b) relief to Judith

_____

[2] Judith Patterson was subpoenaed to appear at the Frank's hearing dated July 2, 2009, in which Affiant would have learned Ms. Patterson testified before a Grand Jury on October 6, 2004. Something that would have undoubtedly rebutted the very representations made on July 2, 2009, by Mr. O'Reilly and Snoke regarding when an institutional referral was in fact made by the purported District Director encompassing the State of Oklahoma.  This testimony alone should have been sufficient to then obtain the testimony of, and documents from, Donna Meadors, and where appropriate,  Melody Nelson, who were also subpoenaed July 2, 2009 to testify at Affiant's Franks Hearing. Douglas Horn attempted to use Touhy Regulations to excuse his not even showing up to the Hearing.  Stephen P. Friot mooted the subpoenas after denying Affiant had satisfied the level necessary to justify a Franks and Suppression Hearing.  Stephen P. Friot has accepted the unsworn words of Mr. O'Reilly or Mr. Snoke each time they have given them over the claims and supporting evidence by Affiant with no findings of facts or conclusions of law ever.  Magically, there is no original signed sworn affidavit in the Clerk's Office of the Northern District Court.  The unsworn purported affidavit obtained by Affiant is missing page 18 as well.

[3] Chief Judge Eagan is the Judge (1) over the Patterson case, (2) the 35(b) for Ms. Patterson which obviously contains false statements by Melody Nelson and Douglas Horn to Judge Eagan dated September 1, 2004, (3) the plea agreement of Eddy Patterson with Horn and Nelson on August 30, 2004, (4) the person who purportedly directed the Clerk to assign Stephen P. Friot to this case, and (5) the Judge assigned to 06-cv-110 in Affiant v. IRS (obvious recusal should have occurred based upon Patterson sealed documents revealed during this case), (6) the person overseeing the Grand Jury investigation of Affiant and Stilley as early as 2004, (7) the person who appointed Stephen Knorr, former

Patterson under false pretenses made both by Melody Nelson and Douglas Horn, along with William Widell, and with knowledge of Chief Judge Eagan.

On May 15, 2009, Affiant submitted 8 Motions to Dismiss and 8 memorandums in support of such motions.  See Doc. 51-66 with attached exhibits  These Motions to Dismiss included failure to allege an offense, lack of jurisdiction and venue, violation of the Paperwork Reduction Act, violations of the Fifth Amendment, errors in the obtaining information by way of summons and search warrant, challenge to the constitutionality of certain provisions, among others.

On May 22, 2009, Affiant received from the Clerk's Office a copy of the only document purporting to be an "affidavit" with Brian Shern's name on it  unsworn and signed in blue ink only by Shern. On June 1, 2009, this was brought to the Court's attention with the affidavit Affiant filed simultaneously with his Motion to Suppress and for Frank's hearing.

On May 22, 2009, Trial was set by Stephen P. Friot for October 26, 2009.

On May 29, 2009, Mr. Snoke and Mr. O'Reilly ("Prosecution") filed their response in opposition to Affiant's 8 motions to dismiss.  Doc. 71[4]

On June 1, 2009, Affiant filed a Motion for Frank's Hearing and to Suppress evidence obtained unlawfully by Brian Shern and Donna Meadors.  See Doc. 74

---

Chief Public Defender for the Northern Judicial District to represent Eddy Patterson in his relations with this case.  Chief Judge Eagan should never have had any involvement in any issue in 09-cr-043 whatsoever.

[4]Directing this Court that all "internal revenue districts" were in fact and law "abolished" as of the year 2000 rendering jurisdiction absent.

and 75.

On July 2, 2009, Stephen P. Friot denied Affiant's Motion for Frank's hearing and Motion to Suppress without any findings of facts or conclusions of law. [5] See Doc. 100

Stephen P. Friot also denied Affiant's Motion to Dismiss docket # 51 through 66 and again by minute order without any findings of facts or conclusions of law as required by Federal Rules of Criminal Procedure 12 and due process under the Fifth Amendment.

At hearing on July 2, 2009, Stephen P. Friot directed the Prosecution to provide a bill of particulars identifying each statute meant by the phrase "required by law" in Counts Two, Three, Five and Six.  On July 14, 2009, the Prosecution provided a list of "internal revenue laws" including Section 1, 61, 63, 6011, 6012, 6071, 6091, 6151 and 7203 under Title 26, United States Code.

Affiant moved for a Third (labeled "Second") Bill of Particulars based upon the inclusion of Section 6011 and "when required by regulations" and Stephen P. Friot denied the motion without any record explaining why. Doc. 105

On August 12, 2009, Affiant again moved to dismiss Counts One through Six. Doc. 123 and 124. On September 18, 2009, Stephen P. Friot denied as out of time Docket # 123 and denied # 105 without comment. Doc. 136

_____

[5]Stephen P. Friot warned Affiant not to ever bring up the affidavit or its defect of not being sworn to or missing page 18 again.

On September 21, 2009, the Prosecution filed its Trial Brief and littered the ground with the term "regulations."  Doc. 138

On September 30, 2009, Affiant moved for a Fourth Bill of Particulars regarding the use of the term "regulations" on the Prosecution Trial Brief. Doc. 166

On October 8, 2009, Stephen P. Friot granted Doc. 166. Doc. 184 and again 192.

On October 19, 2009, the Prosecution filed its list of regulations which did not include any regulations under section 6091 or 6151. Doc. 201

On October 21, 2009, the Prosecution turned over to Affiant the Grand Jury transcript of Judith Patterson from October 6, 2004 in violation of every ethic and moral obligation the United States' lawyers had under the sun.

On October 26, 2009, a purported sixth amendment jury trial began.

On November 1, 2009, Affiant moved to reconsider Stephen P. Friot's minute order denial dated July 2, 2009, Doc. 100, regarding Affiant's Motion to Suppress evidence and motion for Frank's Hearing (if that was appropriate) in light of the revelation Judith Patterson[6] had in fact testified before a "grand jury" on October 6, 2004, rendering the institutional referral to have taken place prior to that date.[7]

_____

[6]The United States had not intended to call Ms. Patterson and after being informed Affiant was calling Ms. Patterson, stated an interview occurred and it was at this time Mr. Snoke and Mr. O'Reilly learned of the purported hidden mystery.

[7]The United States has argued they actually provided this transcript of Ms. Patterson to  Affiant on October 16, 2009, the same day Affiant was in California with the United States taking the deposition of Vikki Wiggins.  The deception, false assertions and lies surrounding Douglas Horn, Melody Nelson and Kenneth Snoke, and when the Grand Jury referral from the IRS occurred as to Affiant and

On November 13, 2009, Mr. Snoke informed Stephen P. Friot that he was needing excused from November 16, 2009, trial continuation because he was due to orally argue in the Tenth Circuit in 08-cv-636, 08-cv-620(NDOk), 09-5034 and 09-5035 .

This request was affirmed by Stephen P. Friot after Mr. Snoke acknowledged the orders Mr. Snoke was defending were orders issued by Stephen P. Friot.

On November 16, 2009, the purported jury, based upon the erroneous instructions Stephen P. Friot propounded to them, and over Affiant's objections at that time, returned guilty verdicts on all six counts after an allen instruction.

On November 20, 2009, the Prosecution filed its Response in Opposition to Affiant's Motion to Reconsider. Doc. 252

On November 27, 2009, the Tenth Circuit docketed 09-5165, "In re Lindsey Kent Springer" addressed to Stephen P. Friot and Chief Judge Claire V. Eagan.

On December 4, 2009, Mr. Snoke entered his appearance in 09-5165 on behalf of Stephen P. Friot in 09-5165.

On December 4, 2009, an empaneled group of three Tenth Circuit Judges denied Affiant's Petition in 09-5165.

On December 9, 2009, Stephen P. Friot issued an order that struck Affiant's Reply (Doc. 257)to the Prosecution's Response in Opposition (Doc. 252) at Doc. 264

---

Stilley, which is obviously before October, 2004, by the revelation of Ms. Patterson's Grand Jury testimony, warranted complete suppression.

claiming Affiant's Reply did not comply with local civil rules.  Stephen P. Friot also, without cause struck Affiant's Motion for Judgement of Acquittal without identifying where Affiant was given any notice in the Northern Oklahoma Judicial District Rules that civil rules apply to Motions under Rule 29(c) or any other Motion for that matter.

On December 10, 2009, Affiant moved to vacate Stephen P. Friot's order dated December 9, 2009 (Doc. 264).  See Doc. 265.

On December 11, 2009, Mr. Snoke,[8] the one defending Stephen P. Friot's order in in 08-cv-636, 08-cv-620(NDOk), 09-5034 and 09-5035 (Tenth Circuit), filed his Motion to Oppose, opposition and Motion for more time, to Affiant's Motion to Vacate. Doc. 266.

On December 15, 2009, Mr. Snoke filed his opposition to Mr. Stilley's Motion to Reconsider Stephen P. Friot's decision to strike pleadings on December 9, 2009 (Doc. 267), in which he argued it was not necessary for this Court to reconsider its striking of certain pleadings because a single case in the Fifth Circuit said that such an order would be reviewed for abuse of discretion.

### REASONS FOR BELIEF BIAS AND PREJUDICE EXISTS AGAINST AFFIANT

A.    Judge Eagan should be recused and should have recused for bias and
        prejudice and proceed no further

Under 28 U.S.C. § 455(a), "[a]ny justice, judge or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality

---

[8]Mr. O'Reilly was with him on this submission.

10

might reasonably be questioned." 28 U.S.C. § 455(a). Judicial recusal is required "if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge of his interest or bias in the case." *Sao Paulo State of the Federative Republic of Braz. v. Am. Tobacco Co.*, 535 U.S. 229, 233, 122 S.Ct. 1290, 152 L.Ed.2d 346 (2002) (alterations, emphasis and internal quotation marks omitted).U.S. v. Wardell, 581 F.3d 1272, 1304 (10th Cir. 2009)

Stephen P. Friot must have been told by Chief Judge Eagan why he was purportedly being assigned to 09-cr-043.   The record in this case does not show what the reason given was. As evidence unfolded during discovery and trial, Chief Judge Eagan should never have had any involvement in 09-cr-043.   She should never have been involved in 06-cv-110.  Whatever she did say to Stephen P. Friot, or whatever her involvement was in 09-cr-043, such violated policy behind Title 28, Section 455.   There is no question Chief Judge Eagan's "impartiality"[9] is reasonably questioned.  There is equally bias present.

On December 16, 2003 Chief Judge Eagan presided over the trial and verdict of Eddy and Judith Patterson.  On September 1, 2004, after Judith Patterson was in prison and awaiting a ruling on both her stay pending appeal and her appeal at the Tenth Circuit, 04-5048, Chief Judge Eagan, along with Douglas Horn and Stephen Knorr, entered into an agreement where Chief Judge Eagan would grant Douglas Horn's 35(b) for Ms. Patterson.   See Doc. 74,75,77-23

---

[9]And a Motion to Recuse has been filed after the affidavit herein.

11

The Government reported to Chief Judge Eagan that "Judith Patterson has agreed to testified before the grand jury and at any further proceedings including jury trial regarding the information provided in the interview."[10]  Judge Eagan issued an order on September 1, 2004, based upon the information provided in the Motion under 35(b) and ordered, based upon that information provided, a sentencing reduction and directed Ms. Patterson be released for time served.  See Exhibit 5

On August 30, 2004, Chief Judge Eagan was presented with a lengthy "agreement" between Eddy Patterson, Douglas Horn and Melody Nelson, whereby statements like "ongoing" and "continuing" "criminal" "investigation" of Affiant and Stilley were stated.  Doc. 74,75,77-22, pg 2-3

Ms. Patterson met after September 1, 2004, but before October 6, 2004, with Chief Judge Eagan and William Widell.    On September 27, 2004, William Widell entered his appearance in 04-5048 in the Tenth Circuit and moved to dismiss the Appeal brief filed on behalf of Ms. Patterson docketed on July 27, 2004.

On October 6, 2004, Ms. Patterson testified before Douglas Horn and Melody Noble Nelson's Grand Jury.  See Exhibit 1 attached to affiant's Memorandum in Support of Motion to Disqualify, Recuse, Remove and Reassignment filed simultaneously herewith.

---

[10]Judy Patterson testified under oath that the first time she ever spoke to anyone regarding the United States or Doug Horn or Melody Nelson was on October 6, 2004, before the Grand Jury she agreed to testify before on September 1, 2004.

On September 16, 2005, Affiant's home is raided without probable cause and without lawful warrant absent any internal revenue districts.   The same two attorneys involved in the Patterson agreement with Chief Judge Eagan, Douglas Horn and Melody Nelson, are the same two attorneys involved in the "Grand Jury" investigation of Lindsey Springer and Oscar Stilley as of October 6, 2004.

On February 17, 2006, Affiant filed a civil action raising the Paperwork Reduction Act violations in the Northern Oklahoma Judicial District Court and was "randomly" assigned Chief Judge Eagan by the Clerk's Office.[11]   Only Chief Judge Eagan knew she should have recused her self at that time.   Apparently, she did not because the very action Affiant sought to take in his complaint was being overseen by Chief Judge Eagan.  This conflict was more than obvious.

Chief Judge Eagan stated on June 21, 2006, that:

> However, it is settled law that "the requirement to file a tax return is mandated by statute, not by regulation" and "such explicit statutory requirements are not subject to the PRA." United States v. Dawes, 951 F.2d 1189, 1191-92 (10th Cir. 1991).

Springer v. United States, 447 F. Supp.2d 1235, 1238(N.D.Okla. 2006)

---

[11]Even as late as June 30, 2008, Chief Judge Eagan continued to issue orders and was maintaining what the Tenth Circuit on August 31, 2009, published was a "frivolous" argument that the Tenth Circuit on May 1, 2007, purportedly ruled Affiant's Paperwork Reduction Act claims were frivolous when they had not so ruled.  The August 31, 2009 decision clearly states they have never ruled on the merits of Affiant's Paperwork Reduction Act claims.  Chief Judge Eagan wrote "and the Tenth Circuit determined that plaintiff's arguments were frivolous."  See Order, Exhibit 3, pg. 2

There is no question that the actual holding in Dawes was that the Tenth Circuit said:

> "However, we are not compelled to rest our opinion on the statutory origin theory because we find the analysis of other courts which have considered the issue to be persuasive." "As long as the 1040 form complies with the Act, nothing more is required."

Dawes, 1193

Whatever Douglas Horn or Meldoy Nelson had conveyed to Chief Judge Eagan regarding Affiant should have been enough to convince Chief Judge Eagan she was not authorized to have any involvement in any case involving affiant because of her involvement in the Patterson case and the sentencing deals she ordered for both Pattersons which were based completely on affiant.

What Chief Judge Eagan wished the Dawes holding to be was not what the holding actually said.  Her bias and partiality against Affiant could not be made more clear within her June 21, 2006 Order.  In its May 1, 2007 Order, the Tenth Circuit only upheld Chief Judge Eagan on the finding Affiant can  raise the Paperwork Reduction Act bar or otherwise only as a "defense."  Yet, on June 30, 2008, Chief Judge Eagan maintains the Tenth Circuit held Affiant's "arguments were frivolous." Exhibit 3, pg. 2.

Affiant's indictment should have been randomly reassigned to another Judge in the United States Northern Oklahoma Judicial District.  Chief Judge Eagan could not have made her recusal more necessary than after Judge Payne recused

14

himself and for over 20 days the Clerk's Office was assigned as the Judge. Whatever that meant, Chief Judge Eagan should never have taken any steps regarding 09-cr-043 whatsoever.  Docket # 24 clearly shows she not only was involved, but heavily involved.  She apparently selected Stephen P. Friot.

Chief Judge Eagan was aware Affiant drew Stephen P. Friot in both 05-466 and 05-1075 commenced by Affiant in Oklahoma City:

> In March 2005, the IRS sent plaintiff notice of its intent to levy and gave plaintiff information on his rights under the Internal Revenue Code. Plaintiff rightfully requested a collection due process hearing ("CDP hearing"). He then filed suit against the government in the United States District Court for the **Western District of Oklahoma**, disputing the amount of his income tax liability, the method by which the government assessed the amount owed, and the manner in which the IRS conducted its investigation. Id. The **Western District of Oklahoma** granted defendants' motion to dismiss for lack of subject matter jurisdiction and held that proper jurisdiction was in the Tax Court. Id.; see 26 U.S.C. § 6330(d). After the CDP hearing, plaintiff filed a second complaint in **the Western District of Oklahoma** asking for injunctive relief from the government. This action constitutes plaintiff's third attempt to enjoin the federal government from penalizing him for failing to file federal income tax returns.

Springer v. United States, 447 F. Supp.2d 1235, 1237 (N.D.Okla. 2006)

Affiant was informed by both Robert Williams and Robert Burton that they were both selected to be stand by counsel or counsel by Chief Judge Eagan apparently prior to March 10, 2009.

On June 29, 2009, in 03-cr-055, Chief Judge Eagan appointed Stephen Knorr to represent Eddy Patterson during a Hearing scheduled for July 2, 2009, to suppress

evidence and for Frank's Hearing.  See Doc. 233,234 and 235 in 03-cr-055.  On July 1, 2009, Stephen Knorr moved to quash the subpoena issued by the Clerk's Office on behalf of Eddy Patterson.  See Doc. 99.  At the same time Chief Judge Eagan is approving representation under the CJA for Eddy Patterson in this case, Eddy and Judy Patterson are maintaining a false and fraudulent lawsuit against both Affiant and Stilley in State Court.  See CJ 2008 02961

During Trial, the attorney who filed this lawsuit on behalf of the Pattersons against affiant, testified that he gathered all his purported  information from Assistant U.S. Attorney Douglas Horn and William Widell.

On July 1, 2009 Chief Judge Eagan approved Stephen Knorr to represent Eddy Patterson in 03-cr-55 regarding his testimony on 09-cr-043.  Whatever the reason for such appointment, along with the Grand Jury testimony of Judith Patterson on October 6, 2004, would most certainly demonstrate Chief Judge Eagan should not have exercised any judicial or other administrative power over any case involving affiant.

On or about September 9, 2009, Steve Knorr, former Chief Public Defender for the United States Northern Oklahoma Judicial District Court, gave deposition to affiant where he testified he had a few conversations with Chief Judge Eagan outside the Court  involving affiant and both Pattersons and others.

Chief Judge Eagan clearly had a personal bias against affiant and in favor of the United States.   Chief Judge Eagan equally was and acted prejudicially

against affiant and in favor of the United States.   There is no other explanation that bias and prejudice which a reasonable person could conclude motivated Chief Judge Eagan to maintain and remain involved in 09-cr-043 silently or otherwise.

B.    Stephen P. Friot should be recused and proceed no further for bias and prejudice

There are so many reasons why Chief Judge Eagan's bias and prejudice has had a spill over affect against affiant regarding Stephen P. Friot.   First, the "assignment" by Chief Judge Eagan of Stephen P. Friot.  That act alone would need raise the suspicion and curiosity of any jurist.  There is no judicial or other lawful authority to have made such assignment.   What possibly did Chief Judge Eagan say to Stephen P. Friot regarding his "assignment"?   How the random selection process under LCvR.40.1 was aborted raises even more suspicion of bias and prejudice and needs discovered.

Take for instance the Frank's Hearing and Suppression Motions of Affiant. There was plenty of evidence a "grand jury" investigation of Affiant and Stilley was "ongoing" in September 2004 presented by Affiant to warrant the hearing absent the revelation Judith Patterson testified in October, 2004 before a Grand Jury overseen by Chief Judge Eagan.  That evidence was ignored on July 2, 2009, for the unsworn representation by Mr. O'Reilly and Mr. Snoke that Affiant was not under Grand Jury  investigation by institutional referral until June, 2005. In a single word minute order Affiant's motion was purportedly denied.

The day before the hearing scheduled, July 1, 2009, Chief Judge Eagan

approved Stephen Knorr to represent Eddy Patterson involving Mr. Patterson's sought testimony.   Chief Judge Eagan is the person who selected Robert Burton and Robert Williams to be stand by counsel or counsel.  She is the person who picked Stephen P. Friot.  She is the person who appointed Stephen Knorr to represent Eddy Patterson.    She is the person who exchanged prison time for testimony of Judith Patterson as early as October 6, 2004 and for Eddy Patterson both in principal on August 30, 2004 and in reality in 2007 when he was released 4 years early by Order of Chief Judge Eagan.

Affiant sought to call certain witnesses involved in the gathering of evidence Brian Shern purportedly relied upon to obtain the "indictment" in the case herein, and to this Stephen P. Friot specifically stated that Affiant could not call Stephen Knorr, Donna Meadors, Douglas Horn, or Melody Nelson because of "Touhy" compliance regulations.   Such a conclusion was clearly in opposition to Affiant's right to call witnesses to aid in Affiant's defense under the sixth amendment. Whether Affiant mislead or concealed anything from the Secretary of the Treasury or Commissioner was a factual dispute the Jury should have been allowed to consider.   Stephen P. Friot said no and allowed this factual dispute to hinge on an expert's opinion who had only heard this case during trial named Brian Miller.  Brian Miller was the expert who assisted Douglas Horn and Melody Nelson in the Patterson trial that Chief Judge Eagan presided over in 2003.

Affiant presented undeniable and undisputable proof that the requirement

18

to file a form 1040, inexorably linked to each of the Six Counts in the grand jury claims, could only be according to the internal revenue laws.  That those "laws" relied exclusively upon "internal revenue districts" outside of the District of Columbia.  Even in the Prosecution's bill of particulars they cite to section 6091 and 6151 to conclusively show internal revenue districts are key to both filing Form 1040s and paying taxes according to the information reported therein.   See 26 CFR 601.101(2000-2009)

In Doc. 71 the prosecution admits to those internal revenue districts being "abolished" and Stephen P. Friot chose to ignore that fatal fact in challenges to original jurisdiction, jurisdiction, and venue, of the Northern Oklahoma Judicial District Court.  Those motions were denied in a minute order with no explanation as to the basis for such decision.

Affiant raised the issue about "gift" under both Title 26, Section 102 and the Supreme Court's directive about fact finding in Commissioner v. Duberstein, 363 U.S. 278, 288 (1960) in a Motion to Dismiss.  In that motion, Affiant pointed out  the determination of whether money received by Affiant was a gift could not be used to determine whether a tax liability existed while a fact finder was considering whether the money given was in fact a gift.

In Duberstein, the Supreme Court held "Specifically, the trier of fact must be careful not to allow trial of the issue whether the receipt of a specific payment is a gift to turn into a trial of the tax liability..." and Stephen P. Friot not only ignored that

directive, but over Affiant's objection, presented a 3 page instruction [# 19] defining gift. Affiant directed Stephen P. Friot to Title 26, Section 102 which "Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance." Instead of letting the jury decide the fact question, which the entire question presented was therein unlawful and each Count should have been dismissed as at best premature, regarding gift, Stephen P. Friot ignored Duberstein, ignored Affiant's objections, ignored Title 26, Section 102, and wrote, over Affiant's objection, jury instruction # 19. This took the law defining or using the term "gift" from a two line sentence to 3 pages of words Affiant nor the rest of the free world had ever seen before. The bias and prejudice of Stephen P. Friot was appearing more and more clear.

Affiant sought to introduce evidence at trial he relied upon from two published Court decisions related directly to the United States taking from Affiant 1.2 million dollars in 1997. These decisions stated Affiant had not earned the money and where the money was considered to be a "donation" to which Stephen P. Friot refused to allow affiant to show the Jury what Judges, like current Supreme Court Justice Alito, stated in the 3rd Circuit's published opinion Affiant clearly relied upon.

Then there was Brian Shern testifying that no one stole $ 2,000 from Affiant on or after September 16, 2005, which was the subject of 06-156, a case Stephen P. Friot stated on the record he thought that Affiant must like Judge Frizzell because of his orders in that case, and when Affiant sought to show the jury that Brian Shern's

attorneys were arguing on interlocutory appeal, before the Tenth Circuit in 09-5088, that there was no disputed fact regarding whether $2,000 was stolen, Stephen P. Friot refused to allow affiant to cross examine Brian Shern to show the Jury he was giving at least opposite and inconsistent testimony with what he was claiming to both Judge Frizzell and the Tenth Circuit.[12]

While at the same time Stephen P. Friot allowed the Prosecution to continue to paint Affiant as some greedy person who frivolously sued Shern and others for millions of dollars which could only have been intended to bias and prejudice Affiant in his defense before the jury. Without any other evidence to show, the Jury was only left to believe the false statements presented by Brian Shern under oath.[13]

Then there was the Form 1040. While Stephen P. Friot was fully aware of the numerous times Affiant had sought rulings from Judge Friot, and others, like Chief Judge Eagan, on the merits of Affiant's claims related to the Form 1040 and its obvious violations of the Paperwork Reduction Act of 1980 and 1995, Stephen P. Friot continually directed the jury the Form 1040 did not violate and complied with

---

[12]Shern again argued on December 18, 2009 "Affiant argues (Br. 16) that the special agents in the court below did not accept as true his allegation that the money was stolen. Affiant is wrong. The record shows that the special agents – in arguing below that there were no legally material issues of fact – accepted as true, for summary judgment purposes, the allegation that the amount of money counted out by the agents in front of Mrs.Affiant at the time of the seizure was $19,000, and that $2,000 was stolen. (Aplt.App. 421; see also, id. at 221, 259.)" See Exhibit 4, pg. 10

[13]Affiant will be filing a Motion for New trial on this issue based upon the December 18, 2009 reply brief attached herein.

the Paperwork Reduction Acts.  Stephen P. Friot was fully aware of the "difficult issues" the Tenth Circuit published related to Affiant's claims and had even said "they were not getting the hint" on the record but chose instead to place the words of a commissioned United States Western Oklahoma Judicial Officer over the word of affiant before the Jury and in the twisted favor of the United States.

Affiant then brings forth the United States Government Accountability Report from May of 2005 where Congress was informed that OMB and IRS were not complying with the Paperwork Reduction Act of 1995.  Stephen P. Friot knew this report should have been considered accurate as all Government reports are to be given, and as affiant sought to introduce this evidence so the jury could see this report for themselves, Stephen P. Friot said no.

While affiant was on the stand Stephen P. Friot allowed statements in the form of a question to be asserted before the Jury by Mr. O'Reilly that the Form 1040 did not have to comply with the Paperwork Reduction Act.  This was allowed with reference to Chief Judge Eagan's decision on June 21, 2006, which on August 31, 2009, the Tenth Circuit instructed the world they had never ruled on the merits of any of affiant's PRA claims.

Between Stephen P. Friot's statements that the Form 1040 did comply and did not violate the PRA, and the Prosecution's argument the Form did not have to comply because of Chief Judge Eagan's "statutory origin theory," rejected by the Tenth Circuit on numerous occasions, Stephen P. Friot, reduced Affiant's defense

to at best gibberish in front of the jury.  This shows bias and prejudice against affiant and in favor of the United States on the part of Stephen P. Friot.

During Trial it was learned Ms. Patterson testified before a Grand Jury on October 6, 2004, in the grand jury investigation of Lindsey K. Springer and Oscar Stilley.  Affiant moved to reconsider the July 2, 2009, denial of suppression, based upon the undisputed fact an "institutional referral" was in fact made prior to Donna Meadors using civil summons beginning in January, 2004.

On December 7, 2009, Affiant filed a reply to the Prosecution's response to Affiant's Motion to Reconsider and for dismissal.  Affiant also filed a Motion for Judgment of acquittal on December 8, 2009.

On December 9, 2009, Stephen P. Friot signed a purported order that struck both Affiant's Reply and Motion for Judgment of Acquittal citing both violated a local Northern District civil rule involving civil briefs and pleadings.

These actions equally show the bias against affiant and in favor of the United States,  and prejudice against affiant and in favor of the United States by Stephen P. Friot.   Stephen P. Friot has been recently found to favor the United States even when that favor requires violating an accused's constitutional rights.  See U.S. v. FARR, 536 F.3d 1174 (10th Cir. 2008)

Due to the obvious bias and prejudice of Chief Judge Eagan, and the way in which Stephen P. Friot was "assigned" by the chief Judge, affiant is placed in the

unique and extraordinary position of having to either challenge the bias and prejudice of Stephen P. Friot, risking even more bias and prejudice to come out, or waiving affiants right to make such timely objections.  Just having to raise the issue of Stephen P. Friot's disqualifications, recusal and removal, by Motion, demonstrates the impact raising such issues can have on any future conduct Stephen P. Friot may take where discretion plays any part of such decision.    Robert Burton told affiant on December 24, 2009, that affiant should never have filed a Petition with the Tenth Circuit (09-5165) and that such filing is what probably led to Stephen P. Friot striking affiant's Reply and Motion for Judgment of Acquittal on December 9, 2009.

C.     Affiant's good cause

To the extent good cause becomes an issue, and it certainly should not as the Judith Patterson Grand Jury Transcript was just recently turned over, and the impact could not have been understood while trial and post trial events were taking place,   the striking of certain documents along with such revelations sufficiently demonstrated to affiant that both bias and prejudice against affiant and in favor of the United States was occurring both as to Chief Judge Eagan and Stephen P. Friot.   Affiant has also filed a Motion to Disqualify, Recuse, Removal, and Random Reassignment simultaneously with this affidavit.  The United States knew of Judith Patterson's testimony before the Grand Jury on October 6, 2004 and only revealed it when faced with the fact Ms. Patterson was being called as a witness by affiant.  The United States was fully aware no internal revenue districts existed,

or district directors, form 1040 did not comply with the Paperwork Reduction Act as stated by the United States Government Accountability Office Report from May, 2005, and that a determination of gift and liability were not to be determined by the same fact finder or at the same time.

Each of these instances demonstrates that Stephen P. Friot and Chief Judge Claire V. Eagan, were biased and prejudicial against Affiant way before the indictment was emailed to Affiant on March 10, 2009 and that Stephen P. Friot should never have exercised any jurisdiction in the Northern Oklahoma Judicial District Court. Chief Judge Claire V. Eagan and Stephen P. Friot should have never been involved in any procedure, judicially or otherwise, in 09-cr-043 or any other case to which affiant is involved where the United States is a party.

Lindsey Kent Springer respectfully requests that an order directing Stephen P. Friot proceed no further and that an Article III Judge with competent jurisdiction be randomly assigned pursuant to Title 28, Section 144 and in accord with Title 28, Section 455 as provided by LCvR40.1 provides.

/s/ Lindsey K. Springer*

Subscribed and Affirmed before me this 28th  day of December , 2009

/s/ Justin Thomas*

Seal                                            Notary

My Commission expires 12-08-2012                       Official Seal placed here

*I certify that I have the signed original of this document, which is available for inspection at any time by the Court or a party to this action.  /s/ Lindsey K. Springer

25

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Affidavit pursuant to Title 28, Section 144 regarding bias and prejudice was ecf'd on December 28, 2009 to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

/s/ Lindsey K. Springer
Signature