No. 09-5088

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

————————————

LINDSEY K. SPRINGER,

Plaintiff-Appellee

v.

CHRISTOPHER D. ALBIN; JASON C. WHITE;
DONALD A. ANDERSON; MARC K. COLLINS;
KATHY L. BECKNER; DONALD G. SHOEMAKE;
BRIAN SHERN; WILLIAM R. TAYLOR; SCOTT A
WELLS; DIANA S. MEGLI; LOY DEAN SMITH,

Defendants-Appellants

————————————

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT
OF OKLAHOMA (JUDGE GREGORY K. FRIZZELL)

————————————

REPLY BRIEF FOR THE APPELLANTS

————————————

JOHN A. DiCICCO
  *Acting Assistant Attorney General*

JONATHAN S. COHEN          (202) 514-2970
JOHN A. DUDECK, JR.         (202) 514-3026
  *Attorneys*
  *Tax Division*
  *Department of Justice*
*Of Counsel*:                *Post Office Box 502*
                             *Washington, D.C. 20044*
SCOTT WOODWARD
  *United States Attorney*

# TABLE OF CONTENTS

Page

Table of contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

A.   Contrary to Springer's contentions, the District
     Court's denial of the special agents' claim of
     qualified immunity is immediately appealable
     under the collateral order doctrine . . . . . . . . . . . . . . . . . .   2

B.   The special agents are entitled to qualified
     immunity as a matter of law on the Fourth
     Amendment claim

     1.   The seizure of the currency was reasonable
          and did not violate Springer's Fourth
          Amendment rights . . . . . . . . . . . . . . . . . . . . . . . . .   11

     2.   In any event, the special agents' conduct
          violated no clearly established Fourth
          Amendment right . . . . . . . . . . . . . . . . . . . . . . . . .   18

C.   The special agents are entitled to qualified
     immunity as a matter of law on any Fifth
     Amendment claim implicated by the complaint . . . . . . . .   21

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

Certificate of compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

Certificate of service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

## TABLE OF AUTHORITIES

Page(s)

Cases:

*Ali v. Ramsdale*, 423 F.3d 810 (8th Cir. 2005) . . . . . . . . . . . . . .   12

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . .   17

*Behrens v. Pelletier*, 516 U.S. 299 (1996). . . . . . . . . . . . . .   3-4, 10

*Bivens v. Six Unknown Named Agents of Federal*
 *Bureau of Narcotics*, 403 U.S. 388 (1971) . . . . . . . .   14, 17-20

*Burton-Bey v. United States*, 100 F.3d 967,
 1996 WL 654457 (10th Cir. 1996) (unpublished). . . . . . . .   21

*Carlson v. Green*, 446 U.S. 14 (1980). . . . . . . . . . . . . . . . . . . .   23

*Case v. Eslinger*, 555 F.3d 1317 (11th Cir. 2009). . . . . . . . . . .   12

*Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007). . . . . . . . . .   20

*Daniels v. Williams*, 474 U.S. 327 (1986). . . . . . . . . . . . . . . . .   22

*Davis v. Scherer*, 468 U.S. 183 (1984) ... . . . . . . . . . . . . . . . . .   20

*Fox v. Van Oosterum*, 176 F.3d 342 (6th Cir. 1999). . . . . . . . . .   11

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982). . . . . . . . . . . . . . . . .   3

*Hudson v. Palmer*, 468 U.S. 517 (1984). . . . . . . . . . . . . . .   12-14, 21

*Knox v. Southwest Airlines*, 124 F.3d 1103
 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5-6

*Mitchell v. Forsyth*, 472 U.S. 511 (1985). . . . . . . . . . . . . . . . .   3, 8

*Mom's, Inc. v. Wilman*, 109 Fed. Appx. 629
 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375
 (10th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on*
 *due process issue, Daniels v. Williams*,
 474 U.S. 327 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Pearson v. Callahan*, 129 S. Ct. 808 (2009) . . . . . . . . . . . . .   17-18

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) . . . . . . .   17

*Robbins v. Wilkie*, 433 F.3d 755 (10th Cir. 2006),
 *reversed and remanded on other issues, sub. nom.*
 *Wilkie v. Robbins*, 551 U.S. 537 (2007) . . . . . . . . . . . . . .   5-6

Page(s)

Cases (continued):

*Roque-Rodriguez v. Lema Moya*, 926 F.2d 103
(1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
*Safford Unified School District Number 1 v. Redding*,
129 S. Ct. 2633 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
*Schweiker v. Chilicky*, 487 U.S. 412 (1988) . . . . . . . . . . . . . . . 22
*Simkins v. Bruce*, 406 F.3d 1239 (10th Cir. 2005) . . . . . . . . . . 20
*United States v. Lindsey Springer, et al.*,
No. 4:09-cr-00043 (N.D. Okla.) . . . . . . . . . . . . . . . . . . . . . 2
*Wagner v. Higgins*, 754 F.2d 186 (6th Cir. 1985) . . . . . . . . . . . 12
*Weise v. Casper*, 507 F.3d 1260 (10th Cir. 2007) . . . . . . . . . . . 4
*Wilkie v. Robbins*, 551 U.S. 537 (2007) . . . . . . . . . . . . . . . . . . . 6
*Wright ex rel. Trust Co. of Kan. v Abbott Laboratory,
Inc.*, 259 F.3d 1226 (10th Cir. 2001) . . . . . . . . . . . . . . . . . 8
*York v. City of Las Cruces*, 523 F.3d 1205
(10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Miscellaneous:

Fed. R. App. P.:
Rule 4(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Rule 4(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8
Rule 4(a)(4)(A)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Rule 6(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Fed. R. Civ. P.:
Rule 10(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Rule 56(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Rule 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4970267.11

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

————————————

No.  09-5088

LINDSEY K. SPRINGER,

Plaintiff - Appellee

v.

CHRISTOPHER D. ALBIN; JASON C.
WHITE; DONALD A. ANDERSON;
MARC K. COLLINS; KATHY L. BECKNER;
DONALD G. SHOEMAKE; BRIAN SHERN;
WILLIAM R. TAYLOR; SCOTT A. WELLS;
DIANA S. MEGLI; LOY DEAN SMITH,

Defendants-Appellants

————————————

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT
OF OKLAHOMA (JUDGE GREGORY K. FRIZZELL)

————————————

REPLY BRIEF FOR THE APPELLANTS

————————————

This reply brief is directed only to those contentions in the

appellee's answering brief that we believe warrant a further response.

With respect to points not discussed herein, we rely on our opening

brief.[1]

> A.   Contrary to Springer's contentions, the District
> Court's denial of the special agents' claim of
> qualified immunity is immediately appealable
> under the collateral order doctrine

The District Court's denial of qualified immunity in this case

turned on both issues of law and evidentiary sufficiency.  Under the

collateral order doctrine, a denial of a claim of qualified immunity is

immediately appealable to the extent it turns on an issue of law.  As we

discussed in our opening brief (at 21-24), the District Court's denial of

the special agents' claim of qualified immunity is an appealable

interlocutory order under the collateral order doctrine because the

defense asserted by the agents raises pure questions of law, and does

not involve a question of the sufficiency of the evidence.[2]

---

[1]  "Aplt.App." references are to the separately bound record appendix prepared by the appellants.  "Att." references are to the opinions and orders attached to the appellants' opening brief.

[2]  As noted in our opening brief (at 6), Springer was indicted on March 10, 2009, for tax evasion, failure to file tax returns, and conspiracy to defraud the United States.  *See United States v. Lindsey Springer, et al.,* No. 4:09-cr-00043 (N.D. Okla.).  On November 16, 2009, a jury found Springer guilty on Counts 1-6 of the indictment.

(continued...)

4970267.11

1.  Springer argues (Br. 3, 20, 25) that the District Court's denial of qualified immunity on the special agents' motion for summary judgment is not an immediately appealable order because no discovery has taken place to distinguish the first denial of qualified immunity on the agents' motion for judgment on the pleadings from the second denial of qualified immunity on the denial of summary judgment that is at issue here.  The argument lacks merit.

Both *Harlow* and *Mitchell* make clear that the qualified immunity defense is meant to give government officials the right not merely to avoid standing trial, but also to avoid such pretrial matters as discovery, which can be disruptive of effective government.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).  As the Supreme Court stated in *Behrens*, "*Mitchell* clearly establishes that an order rejecting the defense of qualified immunity at *either* the dismissal stage *or* the summary judgment stage is a 'final' judgment subject to immediate appeal."  *Behrens v. Pelletier*, 516 U.S.

---

[2](...continued)
(*See* No. 4:09-cr-00043, Doc. 245.)

4970267.11

299, 307 (1996) (emphasis in original).  *See also Weise v. Casper*, 507 F.3d 1260, 1265 (10th Cir. 2007) (*"Behrens* rejects the 'one-interlocutory-appeal' approach and clarifies that the denial of qualified immunity at the dismissal stage does not preclude a renewal of that defense at summary judgment after further factual development has occurred.")  Therefore, an appeal is proper here from the denial of the motion for summary judgment on qualified immunity grounds, even though the agents dismissed their earlier appeal from the denial of their motion for judgment on the pleadings on qualified immunity grounds.

Springer also is incorrect in arguing (Br. 20, 23) that there is nothing in the record to differentiate the special agents' first claim of qualified immunity, raised in their motion for judgment on the pleadings, from their second claim of qualified immunity, raised in their motion for summary judgment.  At the time the special agents filed their motion for summary judgment, further factual development of the record had occurred, with numerous declarations and exhibits submitted on their behalf regarding the circumstances surrounding the

search and seizure.  (Aplt.App. 138-228.)  The special agents' motion for

summary judgment on qualified immunity therefore was based on a

completely different evidentiary foundation than their earlier motion

for judgment on the pleadings.  In this regard, the agents' situation is

similar to that in *Knox v. Southwest Airlines*, 124 F.3d 1103, 1105-07

(9th Cir. 1997), where the Ninth Circuit held that it had jurisdiction

over an appeal from a district court's denial of a second summary

judgment motion on qualified immunity grounds where the record had

been supplemented with additional evidence in the form of an affidavit

from a police officer.[3]

   Springer's reliance (Br. 28) on this Court's decision in *Robbins v.*

*Wilkie* as supporting his no-jurisdiction argument is totally misplaced.

---

   [3]  The declarations and exhibits at issue here were the same
declarations and exhibits relied on by the Government in the motion for
summary judgment filed on behalf of the two Assistant United States
Attorneys named as defendants in the complaint.  (Aplt.App. 16-17;
Docs. 124-125.)  On November 25, 2008, the District Court issued an
order granting summary judgment in favor of those attorneys.
(Aplt.App. 261-266.)

4970267.11

*Robbins v. Wilkie*, 433 F.3d 755 (10th Cir. 2006), *reversed and
remanded on other issues, sub. nom.*, *Wilkie v. Robbins*, 551 U.S.
537(2007). There, this Court held that the defendants' failure to appeal
a district court's denial of dismissal on qualified immunity did not
divest it of appellate jurisdiction to consider the defendants' subsequent
appeal involving denial of summary judgment, because the defendants'
summary judgment motion had relied, in part, on evidence developed
during discovery. 433 F.3d at 763. It thus is apparent that, contrary to
Springer's contentions, the reasoning in *Robbins* strongly supports the
agents' position here, and, under *Robbins*, jurisdiction over the instant
appeal is proper. Indeed, in reaching its decision in *Robbins,* 433 F.3d
at 762-763, this Court cited with approval the Ninth Circuit's decision
in *Knox*, 124 F.3d at 1105-07, involving a similar situation regarding
the further factual development of the record in a *Bivens* case.

2. There is no basis for Springer's argument (Br. 27) that the
notices of appeal filed by the agents with respect to the District Court's
rulings on summary judgment are untimely. The District Court
entered its order denying the agents' motion for summary judgment on

4970267.11

April 7, 2009.  (Aplt.App. 368.)  The agents filed a timely motion to
alter or amend judgment on April 21, 2009, *i.e.*, within 10 days after
entry of the order denying summary judgment.  (*Id.* at 374.)  *See* former
Fed. R. Civ. P., Rule 59(e) (motion to alter or amend  judgment); former
Rule 6(a)(2) (computing time period when the period is less than 11
days).  The motion to alter or amend judgment was subsequently
denied by the District Court in its order entered on May 21, 2009.  (*Id.*
at 424.)

   The amended notice of appeal filed by the agents on June 16, 2009
(*id.* at 432), was timely with respect to the order denying the motion to
alter or amend entered on May 21, 2009, because it was filed within 30
days of the entry date of that order.  *See* former Fed. R. App. P., Rule
4(a)(1) (time for filing notice of appeal).  Furthermore, under former
Rule 4(a)(4), the timely filing of certain post-decision motions (including
a motion to alter or amend under Rule 59(e)) suspends the start of the
appeal period until the disposition of those motions.  *See* former Fed. R.
App. P., Rule 4(a)(4)(A)(iv)(effect of motion to alter or amend on a notice
of appeal).  Accordingly, the 30-day period for appealing the court's

4970267.11

order denying summary judgment did not begin to run until the

District Court denied the agents' motion to alter or amend its ruling on

summary judgment. And the amended notice of appeal was timely with

respect to the order denying summary judgment, because it was filed

within 30 days of the entry of the order denying the motion to alter or

amend. *See Wright ex rel. Trust Co. of Kan. v Abbott Lab., Inc.*, 259

F.3d 1226, 1232 (10th Cir. 2001)(discussing former Rule 4(a)(4)); *Roque-*

*Rodriguez v. Lema Moya,* 926 F.2d 103, 106 (1st Cir. 1991) (motion to

alter or amend order denying summary judgment on claim of qualified

immunity was timely, and tolled period for filing notice of appeal until

disposition of motion to alter or amend).[4]

3. Springer argues (Br. 31-32) that the orders here are not

appealable because the District Court ruled that a material issue of fact

remains concerning the original amount of the money counted by the

---

[4] Springer is mistaken in arguing (Br. 27) that the District Court's order denying the motion to alter or amend is not an appealable interlocutory order. The court's order denying the motion to alter or amend elaborates on the reasons why the court denied the agents' motion for summary judgment on qualified immunity. (Att. 1a-5a; Aplt.App. 424-428.) Consequently, that order is an appealable interlocutory order under *Mitchell v. Forsyth* to the extent it discusses questions of law relating to qualified immunity.

4970267.11

agents and whether, how, and when the $2,000 disappeared after it
was counted.  (Att. 8a-9a, Aplt.App. 370-371.)  The argument is
misconceived.

The District Court's determination that factual issues remain
concerning the circumstances surrounding the handling of the money
does not render its denial of summary judgment nonappealable.  As
discussed in our opening brief (at 23-25), the special agents maintain
that they are entitled to qualified immunity – even accepting as true
Springer's allegations that the agents converted or stole the $2,000,
and even accepting the District Court's statement that a material issue
of the fact remains on that issue –  because their conduct, as a matter
of law, (1) did not violate any of Springer's constitutional rights under
the Fourth and Fifth Amendments, and (2) even if it did, any such
constitutional rights were not clearly established.  Since the agents, for
purposes of this appeal, accept as true the allegations in Springer's
complaint, and accept the facts as the District Court viewed them, this
appeal does not involve a question as to the sufficiency of the evidence.
*See York v. City of Las Cruces*, 523 F.3d 1205, 1209 (10th Cir. 2008)
("Our jurisdiction also extends to situations where a defendant claims

4970267.11

on appeal that accepting the plaintiff's version of the facts as true, he is still entitled to qualified immunity.")[5]  Therefore, the qualified immunity defense asserted by the agents presents precisely the kind of purely legal issue that is immediately appealable.  *See Behrens*, 516 U.S. at 312-313 (fact that material issues remained for trial did not bar defendant's appeal from denial of summary judgment motion based on matters of law pertaining to qualified immunity issue).

---

[5]  Springer argues (Br. 16) that the special agents in the court below did not accept as true his allegation that the money was stolen. Springer is wrong.  The record shows that the special agents – in arguing below that there were no legally material issues of fact – accepted as true, for summary judgment purposes, the allegation that the amount of money counted out by the agents in front of Mrs. Springer at the time of the seizure was $19,000, and that $2,000 was stolen.  (Aplt.App. 421; *see also, id.* at 221, 259.)

-10-

B.   The special agents are entitled to qualified
     immunity as a matter of law on the Fourth
     Amendment claim

   1. The seizure of the currency was reasonable
      and did not violate Springer's Fourth
      Amendment rights

a.   In our opening brief (at 30-37), we argued that the actions of

the defendant special agents in seizing and retaining the currency

under a facially valid warrant was prima facie reasonable and,

therefore, did not violate the Fourth Amendment.  We also argued (Br.

33-34) that Springer's complaint raised only a post-seizure theft claim,

and that such a claim was insufficient to invoke the protection of the

Fourth Amendment once the currency had been lawfully seized by the

agents.  Put another way, once the agents lawfully seized the currency,

the Fourth Amendment no longer applied because Springer no longer

possessed the currency, constructively or otherwise.  *See Fox v. Van*

*Oosterum,* 176 F.3d 342, 351 (6th Cir. 1999) ("the Fourth Amendment

protects an individual's interest in retaining possession of property but

not the interest in regaining possession of property.")  Rather, it is the

Fifth Amendment, as opposed to the Fourth Amendment, that is the

relevant source of rights where property is taken indefinitely by the

government.  *See, e.g., Ali v. Ramsdale*, 423 F.3d 810, 814-815 (8th Cir.

2005);*Wagner v. Higgins*, 754 F.2d 186, 190-191 (6th Cir. 1985); *Case v.*

*Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009); *Hudson v. Palmer*, 468

U.S. 517, 540 (1984) (O'Connor, J., concurring) ("The loss, theft or

destruction of property so seized has not, to my knowledge, ever been

thought to state a Fourth Amendment claim."). *Contra Mom's, Inc. v.*

*Wilman*, 109 Fed. Appx. 629, 637 (4th Cir. 2004) (unpublished).

b.  In his answering brief, Springer now alleges (Br. 21), contrary

to the facts and allegations set out in his complaint regarding a post-

seizure theft, that the $2,000 was stolen before or during the execution

of the search warrant.  The argument lacks merit and should be

rejected.[6]

Springer's complaint does not state a viable Fourth Amendment

claim, because it does not challenge the lawful seizure of the currency

by the agents pursuant to the search warrant, but contends that the

---

[6]  In his opposition to the agents' motion for summary judgment filed
below, Springer did not articulate any argument to the effect that the
currency was converted or stolen by the agents before it was seized.
(Aplt.App. 303-347.)  *See also* Fed. R. Civ. P. 56(e)(2) (opposing party's
obligation to respond to summary judgment motion).  The District
Court did not discuss this matter in its opinion on summary judgment,
and indeed had no reason to do so.  (Att. 6a-11a; Aplt.App. 368-373.)

-12-

full amount of the seized currency was not returned to him. (Aplt. App.

23-42.)[7] Moreover, as explained in *Hudson*, while the Fourth

Amendment protects against unreasonable temporary dispossessions, it

is the Fifth Amendment that protects against indefinite dispossessions.

*See Hudson*, 468 U.S. at 539. (O'Connor, J., concurring.) Because

Springer claimed in his complaint that the currency was stolen (*i.e*,

indefinitely dispossessed), it is the Fifth Amendment that would be the

relevant source of any constitutional rights here. Hence, Springer

should not be permitted to recast the post-seizure theft allegations in

his complaint as a pre-seizure Fourth Amendment claim.

Indeed, contrary to Springer's contentions on appeal (Br. 21), the

complaint itself purports to waive any issue of pre-seizure theft.

Springer explicitly stated in his complaint that it was "undisputed" that

the agents seized the full amount of the currency at issue ($19,000),

---

[7] Although Springer did not challenge the validity of the search
warrant in his complaint (Aplt.App. 23-43), he now argues (Br. 22) that
the search warrant was defective because it was not signed by a judge.
The argument is without merit. The District Court found in its Opinion
and Order filed on November 25, 2008, that the search warrant was
signed by a magistrate judge. (Aplt.App. 263.) *See also* the signed copy
of the search warrant attached to the Declaration of Melody Nelson.
(Aplt.App. 179, 187.)

4970267.11

that the $2,000 was stolen after the seizure, and that later (in January 2006) the agents returned only $17,000. Specifically, the complaint states as follows (Complt. ¶ 97; Aplt.App. 38; emphasis added):

> Due to the *undisputed fact $19,000.00 was seized and taken pursuant to a Court Ordered Search Warrant from Plaintiff's home* and possession and because *only $17,000.00 of said seizure actually survived from the search of Plaintiff's home to the depositing bank* for the Federal Grand Jury, Agent Shern and the other 10 unknown named Agents of the Federal Grand Jury and Internal Revenue Service stole $2,000.00 from Plaintiff.

Inasmuch as Springer alleged in his complaint as an "undisputed" fact that $2,000 was stolen *after* the search, and *after* the seizure of the $19,000 pursuant to the search warrant, it follows that the alleged conversion occurred outside the scope of the Fourth Amendment, and does not give rise to a *Bivens* suit. *See Hudson*, 468 U.S. at 539-540 (O'Connor, J., concurring).[8]

---

[8] Springer's vague and general assertion in ¶102 of the complaint that "a theft had occurred at Plaintiff's home while the service of a warrant to search Plaintiff's home was being conducted" cannot be squared with his statement in ¶ 97 of the complaint conceding that the alleged theft occurred *after* the $19,000 was seized and taken by the agents pursuant to a court-ordered search warrant. (Aplt.App. 38-39.)

4970267.11

Case: 09-5088  Document: 0101833448  Date Filed: 12/18/2009  Page: 19

Furthermore, the allegations in the complaint that $2,000 was stolen make sense only if: (i) $19,000 was the amount of currency originally seized by the agents on September 16, 2005; (ii) $2,000 was *later* converted or stolen from the $19,000 in currency that was lawfully seized by the agents on September 16, 2005; and (iii) the balance ($17,000) was returned to Springer on January 10, 2006.  The complaint consistently takes this position.  *See, e.g.*, Complt. ¶ 57 ("At all times the amount counted was $19,000.00."); Complt. ¶ 59 ("Plaintiff was given a receipt from Agent Shern which denotes '$19,000' was seized.")[9]; Complt. ¶ 74, ¶ 76 (Agent Shern in January 2006 "presented a check to Plaintiff in the amount of $17,000.00," . . . an amount that "was $2000.00 less than what was on the receipt given to Plaintiff at the time the money was taken . . .").  (Aplt.App. 32, 34.)[10]

---

[9]  In fact, the receipt or inventory given to Springer by the agents who conducted the search said "[*a*]*pproximately* $19,000.00 in U.S. Currency" was [s]eized [p]er [w]arrant."  (Aplt.App. 44; emphasis added.)

[10]  Springer's answering brief takes the same position that $19,000 was the amount of money seized and taken by the agents.  *See* Appellee's Br. 19: "Springer alleged [in the complaint] that Appellants *discovered $19,000 in cash* at his home, *purportedly left with the same* tendering Springer with a receipt showing '$19,000' but only returned
(continued...)

At no time does the complaint allege that there was more than

$19,000 at the residence on the date of the seizure, "approximately" or

precisely.[11]  Thus, if the $2,000 was stolen or converted during the

search, only $17,000 would have been seized by the agents (*i.e.*, the

amount later returned to Springer).  But Springer admitted in the

complaint that $19,000 was the amount of currency originally seized

and taken by the agents pursuant to the court-ordered search warrant

on September 16, 2005.  (Aplt.App. 38.)[12]  Hence, Springer's argument

here (Br. 21) that the alleged theft or conversion occurred prior to or

during the search is inconsistent with the admission in his complaint

---

[10](...continued)
months later $17,000 to him." (Emphasis added.).  *See also* Appellee's
Br. 11: "On January 10, 2006, Agent Shern delivered a request to waive
Springer's right to sue to Springer with the condition that if Springer
signed the waiver Springer could have *$17,000 of the $19,000 back.*"
(Emphasis added.)

[11]  As an exhibit to his complaint, Springer attached a copy of the
inventory of items seized pursuant to the search warrant.  As
mentioned, one of the items listed as seized was "[a]pproximately
$19,000.00 in U.S. Currency."  (Aplt.App. 44.)  That exhibit became
part of the complaint "for all purposes," including summary judgment.
Fed. R. Civ. P. 10(c).  *See also Mountain Fuel Supply Co. v. Johnson*,
586 F.2d 1375, 1382 (10th Cir. 1978).

[12]  *See also* the Declaration of Jeanie Springer: "At all times the
amount [of cash counted during the seizure] was $19,000 in paper
clipped currency and not $17,000."  (Aplt.App. 259.)

4970267.11

(and the basic thrust of his lawsuit) that the full $19,000 was seized and taken pursuant to the warrant on September 16, 2005, and that the $2,000 was converted or stolen after the seizure.  (Aplt.App. 38.)  *See Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949-50 (2009) (a *Bivens* complaint must state a claim that is plausible on its face); *Robbins v. Oklahoma,* 519 F.3d 1242, 1247-48 (10th Cir. 2008) (discussing plausibility standard in § 1983 case).

In sum, Springer has not pleaded a viable Fourth Amendment *Bivens* claim.  Once the special agents gave Springer the inventory receipt for approximately $19,000 and left the premises, the course of the search had ended.  If a theft of the currency occurred after the agents' departure, a crime would have been committed, and common-law tort principles of conversion might be implicated, but the Fourth Amendment is not.

4970267.11

> **2.** In any event, the special agents' conduct
> violated no clearly established Fourth
> Amendment right

a.  We argued in our opening brief (at 28-30) that, under the

Supreme Court's recent decision in *Pearson v. Callahan*, 129 S.Ct. 808,

818-823 (2009), this Court has discretion in a *Bivens* case to address

whether any alleged constitutional right was clearly established without

first deciding whether the Constitution prohibits the defendants'

conduct.  We also pointed out that, because the clearly established

question is significantly easier to resolve here than the question

whether a constitutional right exists, it would be appropriate under

*Pearson* for this Court to address the clearly established question first.

Springer makes no attempt to refute the argument set forth in our

opening brief on this point.

b.  We also argued in our opening brief (at 38-42) that there was

no clearly established law on the date of the seizure holding that a

conversion or theft of property after it had been lawfully seized violates

the Fourth Amendment.  No Tenth Circuit or Supreme Court decision

had (or has) recognized such a right.  Moreover, although there is a

circuit split on the question, the great weight of authority from other

4970267.11

Case 4:09-cr-00043-SPF   Document 270-3   Filed in USDC ND/OK on 12/28/09   Page 23 of 30

circuits supports the conclusion that the alleged theft of property seized under a valid warrant does not violate the Fourth Amendment.  Thus, there was no clearly established law when the search warrant was executed that put the special agents on notice that their conduct violated any Fourth Amendment right.  Accordingly, the agents were entitled to qualified immunity as a matter of law.  *See Safford Unified School Dist. No. 1 v. Redding*, 129 S.Ct. 2633, 2643-44 (2009) (qualified immunity warranted where circuit split existed on Fourth Amendment issue).  Once again, Springer fails to respond directly to our arguments.

Springer's reliance (Br. 22-23, 37-39) on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), is misplaced.  As explained in our opening brief (at 44), the search in *Bivens* was conducted without a warrant.  *Bivens*, 403 U.S. at 389. Therefore, *Bivens* establishes only the general proposition that a warrantless search may be actionable under the Fourth Amendment. That proposition is not implicated here, as Springer does not challenge the lawfulness of the search or the initial seizure of the money, and the instant case involves the seizure of evidence under a facially valid warrant.  Moreover, like the District Court, Springer erroneously fails to

-19-

analyze the clearly established issue in light of the specific factual context of this case.  (Att. 4a-5a; Aplt.App. 427-428.)  *See Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005) (the clearly established inquiry must be posed in the context of the particular case before the court, and not as a general, abstract matter).

In short, aside from his misplaced reliance on *Bivens*, Springer does not cite any case showing that he has met his burden of alleging the violation of a specific, clearly established Fourth Amendment right in the factual context of this case.  *See Davis v. Scherer*, 468 U.S. 183, 197 (1984)(discussing plaintiff's burden on qualified immunity); *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (*en banc*) (same). Because the weight of authority indicates that Springer's post-seizure theft claim is not cognizable under the Fourth Amendment, such a right cannot reasonably be characterized as clearly established.

4970267.11

C. The special agents are entitled to qualified
immunity as a matter of law on any Fifth
Amendment claim implicated by the complaint

1. Although Springer did not formally allege a Fifth Amendment claim in his complaint, we pointed out in our opening brief (at 45-47) that his allegations are more naturally characterized as a Fifth Amendment claim for deprivation of property without due process. Thus, assuming *arguendo* that the Fifth Amendment is implicated by Springer's complaint, we argued in our opening brief (at 46-51) that Springer has not been deprived of the constitutional right to due process.[13]

Due process is not violated where a government official, through a random and unauthorized act, deprives a person of his property, so long as the government provides adequate post-deprivation remedies. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on due process issue, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 530-533 (1984). *See also Burton-Bey v. United*

---

[13] Although Springer states in several places in his brief (at 12, 23) that his complaint made no Fifth Amendment claim with respect to the seizure, he nevertheless advances conclusory Fifth Amendment arguments in other places in his brief (at 4, 21-23).

4970267.11

*States*, 100 F.3d 967, 1996 WL 654457 (10th Cir. 1996) (unpublished).

In this case, Springer has not been deprived of due process, because he

had adequate post-deprivation remedies regarding the seized currency,

such as bringing a tort suit under Oklahoma law or under the Federal

Tort Claims Act. *See* our opening brief at 49-51. These alternative

remedies render a *Bivens* action inappropriate here. *See Schweiker v.*

*Chilicky*, 487 U.S. 412, 423 (1988).[14]

Finally, as we argued in our opening brief (at 56-57), it is apparent

that there was no clearly established law as of the date of the seizure

that would have put the special agents on notice that their conduct

violated any Fifth Amendment right in the specific situation they

confronted. Thus, even accepting Springer's allegations as true, the

special agents' conduct did not violate any clearly established Fifth

Amendment right.

Springer does not directly contest our arguments on these points.

Instead, he simply mentions in passing (Br. 4-5, 21-23, 35) the Supreme

---

[14] *See also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (rejecting
due process claim in a prisoner § 1983 case: "Our Constitution . . . does
not purport to supplant traditional tort law in laying down rules of
conduct to regulate liability for injuries that attend living together in
society.")

-22-

Court's decision in *Carlson v. Green*, 446 U.S. 14 (1980) and the Federal Tort Claims Act, and argues in a cursory and conclusory manner that the District Court's rulings on these matters are correct. Springer and the District Court are wrong, however, for the reasons we discuss at some length in our opening brief (at 47-55). It would serve no useful purpose to reiterate those reasons here.

2. In sum, the District Court erred in denying the special agents' motion for summary judgment on qualified immunity. There was no clearly established law in 2005 (and there is none today) that would have put the special agents on notice that their conduct, as alleged by Springer, violated any constitutional right under the Fourth or Fifth Amendments. Rather, the great weight of authority supports the constitutionality and objective reasonableness of the agents' conduct. Accordingly, the agents are entitled to qualified immunity as a matter of law, and it would be improper to subject them to an evidentiary hearing to address issues of fact and credibility.

4970267.11

## CONCLUSION

For the reasons stated above and in the appellants' opening brief,

this Court should vacate the order of the District Court, and direct it to

enter judgment in favor of the defendants-appellants.

Respectfully submitted,


JOHN A. DICICCO
  *Acting Assistant Attorney General*

 s/ John A. Dudeck, Jr.

JONATHAN S. COHEN          (202) 514-2970
JOHN A. DUDECK, JR.          (202) 514-3026
 *Attorneys*
 *Tax Division*
 *Department of Justice*
 *Post Office Box 502*
 *Washington, D.C. 20044*
*Of Counsel:*        John.A.Dudeck@usdoj.gov
          Appellate.Taxcivil@usdoj.gov

SCOTT WOODWARD
   *United States Attorney*

DECEMBER 2009

4970267.11

# CERTIFICATE OF COMPLIANCE

Please complete one of the sections:

Section 1.  Word count

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this reply brief is proportionally spaced and contains 4670 words.

Complete one of the following:

  X   I relied on my word processor to obtain the count and it is [name word processor software]: WordPerfect X3.

_____   I counted five characters per word, counting all characters including citations and numerals.

Section 2.  Line count

My brief was prepared in a monospaced typeface and contains _____ lines of text.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.


____ s/ John A. Dudeck, Jr. ____
JOHN A. DUDECK, JR.
*Attorney*


4970267.11

## CERTIFICATE OF SERVICE

It is hereby certified that, on this 18th day of December 2009, this brief was filed with the Court by using the CM/ECF system and seven paper copies were sent to the Clerk by FedEx for next-business-day delivery. This brief was also served on the appellee, who is appearing *pro se*, on this 18th day of December, 2009, by sending him two paper copies by FedEx, for next-business-day delivery, in an envelope properly addressed as follows:

> Lindsey K. Springer (*pro se*)
> 5147 S. Harvard St., Apt. #116
> Tulsa, OK 74135

It is further certified that: (1) all required privacy redactions have been made; (2) the ECF submission is an exact copy of the paper copies sent to the Clerk; and (3) the ECF submission was scanned for viruses with the Trend Micro OfficeScan 8.0 antivirus program (copyright 2007), and, according to the program, is free of viruses.

_____s/ John A. Dudeck, Jr._____
JOHN A. DUDECK, JR.
*Attorney*

-26-

4970267.11