IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

Plaintiff,

Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

Defendants

BRIEF/MEMORANDUM IN  SUPPORT OF MOTION TO DISQUALIFY, RECUSE AND

REMOVE, STEPHEN P. FRIOT AND RANDOM REASSIGNMENT

I.  Table of Contents

A.   Undisputed Facts  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

B.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

1.   Stephen P. Friot was not ever nor is a commissioned Article III Judge assigned
     to the United States' Northern Oklahoma Judicial District Court, pursuant to
     Title 28, Section 116(a) boundaries, or within the jurisdiction of section 116(a)
     district court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

2.   Chief Judge Claire V. Eagan had no judicial power or other lawful authority
     to "assign" Stephen P. Friot to exercise Article III inferior Court jurisdiction and
     authority within the United States' Northern Oklahoma Judicial District Court
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

3.   Misc.# 23 does not designate Stephen P. Friot to 09-cr-043 or for any other
     specific  public  interest  or  temporarily  hold  a  court  other  than  of  his
     commission  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

4.   Misc. # 23 is not lawful under Title 28, Section 292(b) and invalid  . . . . . .  15

5. Chief Judge of Tenth Circuit and District Court have no Appointment Clause Authority to appoint any inferior commissioned officer under Article III as only Congress and the President are constitutionally enumerated . . . . . . . .   18

6. Assignment of Stephen P. Friot is unconstitutional  . . . . . . . . . . . . . . . . . . .   23

C. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

II. Table of Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

A. Cases

American Constr. Co. v. Jacksonville, T. & K. W. R. Co., 148 U.S. 372 (1893)17

Ball v. United States, 140 U.S. 118 128 (1891)  . . . . . . . . . . . . . . . . . . . . . . .   16

Freytag v. Commissioner, 501 U.S. 868, 878 (1991)  . . . . . . . . . . . . . . . . . . .   21

Glidden Company v. Zdanok, 370 U.S. 530, 535 (1962) . . . . . . . . . . . . . 16,17

Gomez 490 U.S. 858 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

Gonzalez v. U.S., 06-11612, page 11 (U.S. 5-12-2008)  . . . . . . . . . . . . . . . .   23

Hallstrom v. Tillamook County, 493 U.S. 20, 27 (1989) . . . . . . . . . . . . . . . .   23

In Re Kensington Intern. LTD., 368 F.3d 289, 319 (3rd Cir. 2004) . . . . . . . .   12

In Re Federal-Mogul Global Inc., 300 F.3d 368, 373 (3rd Cir. 2002)  . . . . .   12

In Re Jaritz Industries, 151 F.3d 93, 104 (3rd Cir. 1998)  . . . . . . . . . . . . . . .   13

In Re Estate of Ferdinand E. Marcos Litigation, 978 F.2d 493, 503(9th Cir. 1992)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Keller v. Potomac Electric Company, 261 U.S. 428, 440, 442, 443 . . . . . . .   22

McDowell v. United States, 159 U.S. 596, 602 . . . . . . . . . . . . . . . . . . . . . . . .   16

Mistretta v. United States,  488 U.S. 361, 382 (1989) . . . . . . . . . . . . . . . . . . .   21

Moran v. Dillingham, 174 U.S. 153, 158 (1899) . . . . . . . . . . . . . . . . . . . . . . . 18

Nguyen v. United States, 539 U.S. 69, 79 (2003) . . . . . . . . . . . . . . . . . . . 16,18

Postum Cereal Co. v. Calif. Fig. Nut. Co., 272 U.S. 693, 700 (1927) . . . . . . 22

Prentis v. Atlantic Coast Line Company, 211 U.S. 210, 225, 226 . . . . . . . . 22

United States v. Rodriguez-Moreno, 526 U.S. 275, 278 (1999) . . . . . . . . . . 22

William Cramp & Sons Ship & Engine Building Co. v. International Curtiss
Marine Turbine Co., 228 U.S. 645 (1913) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B.    Statutes

Title 4, Section 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Title 26, Section 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, Section 61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, Section 63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, Section 6011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, Section 6012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, Section 6071 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, Section 6091 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, Section 6151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, Section 7203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 28, Section 41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Title 28, Section 44 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Title 28, Section 116(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 11,14,15

Title 28, Section 116(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

Title 28, Section 132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,11

Title 28, Section 133 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,11,20

Title 28, Section 134 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,11

Title 28, Section 292(b) . . . . . . . . . . . . . . . . . . . . . . . . 12,13,14,15,18,20

Title 28, Section 451 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Title 28, Section 455(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Title 28, Section 455(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

C.   Regulations

26 CFR 601.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

D.   Constitution

Article II, Section 2, Clause 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,23

Article III, Section 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,22,23

Article III, Section 2, Clause 3 . . . . . . . . . . . . . . . . . . . . . . . . . 11,22,23,24

Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,23,24

E.  Local Rules

LCvR40.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,10

F.   Misc.

Misc. # 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,14,18,19,20

Lindsey Kent Springer ("Springer") files this memorandum in support of his Motion (1) to Disqualify the Honorable Stephen P. Friot United States' Western Oklahoma District Court Judge from 09-cr-043 pursuant to Title 28, Sections 455(a) due to partiality in favor of the United States, 455(b)(1) due to prejudice, (2) for recusal based upon Stephen P. Friot's lack of jurisdiction outside the geographical boundaries set to his commission at Title 28, Sections 116(c), 132, 133, 134 and 451, (3) removal from holding court in the Northern Oklahoma Judicial District under Article III, and (4) for random reassignment under LCvR40.1.

FACTS RELEVANT TO MOTION

The Internal Revenue Service is a creature created by the Secretary of Treasury at 26 CFR 601.101.

On May 29, 1985, Wayne Edward Alley was nominated by then President Ronald Reagan to a **newly enacted** inferior Article III office in the United States' Western Oklahoma Judicial District, at 98 Stat. 333.  The senate confirmed the appointment on July 10, 1985.  Judge Alley took senior status in 1999.

On or by October, 2000, all internal revenue districts encompassing the State of Oklahoma were abolished and all district director offices were also abolished at the same time.  See Doc. 71.pg. 4.

On September 4, 2001, Stephen P. Friot, was nominated by then President George W. Bush to hold an Article III Judicial Office formerly held by Judge Alley, in the United States' Western Judicial District during good behaviour.   Stephen P.

Friot commission began on November 12, 2001.[1]

On August 31, 2004, Chief Judge Eagan, United States' Northern Oklahoma Judicial District, entered an order involving an agreement between Douglas Horn, Melody Nelson and Eddy Patterson, in exchange for some future reduction in Mr. Patterson's sentence if Mr. Patterson assisted in the "on going" Grand Jury investigation of Affiant and Stilley. Doc. 77-22

On September 1, 2004, Chief Judge Eagan granted a 35(b) motion in favor of Ms. Patterson in 03-cr-055 reducing Ms. Patterson's sentence 14 months in exchange for her withdrawing her appeal at the 10th Circuit and agreeing to testify before an ongoing Grand Jury investigating Affiant.  Doc. 77-23

Ms. Patterson testified before a Grand Jury sitting in the United States Courthouse in Tulsa Oklahoma no October 6, 2004.  Exhibit 1

On April 25, 2005, affiant filed case 05-466, styled Affiant v. IRS, in the United States Western Oklahoma Judicial District Court and was assigned the Honorable Stephen P. Friot as the District Judge.

On September 15, 2005, affiant filed case 05-1075, styled Affiant v. IRS, in the United States Western Oklahoma Judicial District Court and was assigned the Honorable Stephen P. Friot as the District Judge.

On October 6, 2005, the Honorable Stephen P. Friot dismissed affiant's

---

[1] The boundaries or border Congress set for the United States' Western Oklahoma Judicial District Court are listed at Title 28, Section 116(c).

-2-

complaint in 05-466 in favor of the IRS.

On February 17, 2006, affiant filed case 06-cv-110, styled Affiant v. IRS, in the United States' Northern Oklahoma Judicial District Court and was  assigned the Honorable Chief Judge Claire V. Eagan.

On June 21, 2006, the Honorable Chief Judge Claire V. Eagan, instead of recusing herself, issued an order in favor of the IRS and against affiant and referenced knowledge of both 05-466 and 05-1075 therein.

On August 7, 2006, the Honorable Stephen P. Friot dismissed affiant's complaint in 05-1075 in favor of the IRS.

On March 10, 2009, a Title 28, Section 1861 "Grand Jury" sitting in the United States Courthouse in Tulsa, Oklahoma, purportedly returned an "indictment" pursuant to the Fifth Amendment naming Lindsey Kent Affiant and Oscar Amos Stilley for violating internal revenue laws in a Judicial District.

On March 10, 2009, Honorable Judge James H. Payne was randomly assigned according to local rules of civil procedure Rule 40.1(a) . On March 18, 2009, Affiant filed a Bill of Particulars.  Doc. 7 On March 18, 2009, Honorable Judge James H. Payne  recused him self citing conflict of interest in this case. Doc. 9

On March 31, 2009, Honorable Chief Judge Claire V. Eagan directed the Clerk of Court to bypass local civil Rule 40.1(a) and to direct the Honorable Western Oklahoma  Judicial District Judge Stephen P. Friot, to preside in 09-cr-043. Doc. 24

On April 7, 2009, Affiant moved for clarification of appointment.  Doc. 30.

On April 10, 2009, Stephen P. Friot ordered a hearing on his assignment.  Doc. 34

On April 16, 2009, the United States responded to Affiant's Motion attaching Misc. # 23 to its response.  Doc. 42

On April 22, 2009, during a purported pretrial conference Stephen P. Friot informed Affiant his Motion to Clarify was granted and that he had been clarified. On April 22, 2009, Stephen P. Friot denied without prejudice Affiant's Motion for Bill of Particulars.  Doc. 43.

On April 22, 2009, Stephen P. Friot ordered all the sealed pleadings in 03-cr-55 to be turned over to him in the United States District Court for the Western Oklahoma Judicial District by April 29, 2009 concerning Judith and Eddy Patterson.[2] Those pleadings showed Chief Judge Eagan[3] had given 35(b) relief to Judith Patterson under false pretenses made both by Melody Nelson and Douglas Horn, along with William Widell, and with knowledge of Judge Eagan.

On May 15, 2009, Affiant submitted 8 Motions to Dismiss and 8 memorandums in support of such motions.  See Doc. 51-66 with attached exhibits  These Motions to Dismiss included failure to allege an offense, lack of jurisdiction and venue, violation of the Paperwork Reduction Act, violations of the Fifth Amendment, errors in the obtaining information by way of summons and search warrant, challenge to the constitutionality of certain provisions, among others.

---

[2]See affidavit of Lindsey Kent Springer, footnote 2, page 5.

[3]See affidavit of Lindsey Kent Springer, footnote 3, page 5.

On May 22, 2009, Affiant received from the Clerk's Office a copy of the only document purporting to be an "affidavit" with Brian Shern's name on it unsworn and signed in blue ink only by Shern. On June 1, 2009, this was brought to the Court's attention with the affidavit Affiant filed simultaneously with his Motion to Suppress and for Frank's hearing.

On May 22, 2009, Trial was set by Stephen P. Friot for October 26, 2009.

On May 29, 2009, Mr. Snoke and Mr. O'Reilly ("Prosecution") filed their response in opposition to Affiant's 8 motions to dismiss.  Doc. 71[4]

On June 1, 2009, Affiant filed a Motion for Frank's Hearing and to Suppress evidence obtained unlawfully by Brian Shern and Donna Meadors.  See Doc. 74 and 75.

On July 2, 2009, Stephen P. Friot denied Affiant's Motion for Frank's hearing and Motion to Suppress without any findings of facts or conclusions of law. [5] See Doc. 100

Stephen P. Friot also denied Affiant's Motion to Dismiss docket # 51 through 66 and again by minute order without any findings of facts or conclusions of law as required by Federal Rules of Criminal Procedure 12 and due process under the Fifth Amendment.

---

[4]Directing this Court that all "internal revenue districts" were in fact and law "abolished" as of the year 2000 rendering jurisdiction absent.

[5]Stephen P. Friot warned Affiant not to ever bring up the affidavit or its defect of not being sworn to or missing page 18 again.

At hearing on July 2, 2009, Stephen P. Friot directed the Prosecution to provide a bill of particulars identifying each statute meant by the phrase "required by law" in Counts Two, Three, Five and Six.  On July 14, 2009, the Prosecution provided a list of "internal revenue laws" including Section 1, 61, 63, 6011, 6012, 6071, 6091, 6151 and 7203 under Title 26, United States Code.

Affiant moved for a Third (labeled "Second") Bill of Particulars based upon the inclusion of Section 6011 and "when required by regulations" and Stephen P. Friot denied the motion without any record explaining why. Doc. 105

On August 12, 2009, Affiant again moved to dismiss Counts One through Six. Doc. 123 and 124. On September 18, 2009, Stephen P. Friot denied as out of time Docket # 123 and denied # 105 without comment. Doc. 136

On September 21, 2009, the Prosecution filed its Trial Brief and littered the ground with the term "regulations."  Doc. 138

On September 30, 2009, Affiant moved for a Fourth Bill of Particulars regarding the use of the term "regulations" on the Prosecution Trial Brief. Doc. 166
On October 8, 2009, Stephen P. Friot granted Doc. 166. Doc. 184 and again 192.

On October 19, 2009, the Prosecution filed its list of regulations which did not include any regulations under section 6091 or 6151. Doc. 201

On October 21, 2009, the Prosecution turned over to Affiant the Grand Jury transcript of Judith Patterson from October 6, 2004 in violation of every ethic and moral obligation the United States' lawyers had under the sun.

On October 26, 2009, a purported sixth amendment jury trial began.

On November 1, 2009, Affiant moved to reconsider Stephen P. Friot's minute order denial dated July 2, 2009, Doc. 100, regarding Affiant's Motion to Suppress evidence and motion for Frank's Hearing (if that was appropriate) in light of the revelation Judith Patterson[6] had in fact testified before a "grand jury" on October 6, 2004, rendering the institutional referral to have taken place prior to that date.[7]

On November 13, 2009, Mr. Snoke informed Stephen P. Friot that he was needing excused from November 16, 2009, trial continuation because he was due to orally argue in the Tenth Circuit in 08-cv-636, 08-cv-620(NDOk), 09-5034 and 09-5035 .

This request was affirmed by Stephen P. Friot after Mr. Snoke acknowledged the orders Mr. Snoke was defending were orders issued by Stephen P. Friot.

On November 16, 2009, the purported jury, based upon the erroneous instructions Stephen P. Friot propounded to them, and over Affiant's objections at that time, returned guilty verdicts on all six counts after an allen instruction.

On November 20, 2009, the Prosecution filed its Response in Opposition to

---

[6]See affidavit of Lindsey Kent Springer, footnote 6, page 5.

[7]The United States has argued they actually provided this transcript of Ms. Patterson to  Affiant on October 16, 2009, the same day Affiant was in California with the United States taking the deposition of Vikki Wiggins.  The deception, false assertions and lies surrounding Douglas Horn, Melody Nelson and Kenneth Snoke, and when the Grand Jury referral from the IRS occurred as to Affiant and Stilley, which is obviously before October, 2004, by the revelation of Ms. Patterson's Grand Jury testimony, warranted complete suppression.

Affiant's Motion to Reconsider. Doc. 252

On November 27, 2009, the Tenth Circuit docketed 09-5165, "In re Lindsey Kent Affiant" addressed to Stephen P. Friot and Chief Judge Claire V. Eagan.

On December 4, 2009, Mr. Snoke entered his appearance in 09-5165 on behalf of Stephen P. Friot in 09-5165.

On December 4, 2009, an empaneled group of three Tenth Circuit Judges denied Affiant's Petition in 09-5165.

On December 9, 2009, Stephen P. Friot issued an order that struck Affiant's Reply (Doc. 257)to the Prosecution's Response in Opposition (Doc. 252) at Doc. 264 claiming Affiant's Reply did not comply with local civil rules.  Stephen P. Friot also, without cause struck Affiant's Motion for Judgement of Acquittal without identifying where Affiant was given any notice in the Northern Oklahoma Judicial District Rules that civil rules apply to Motions under Rule 29(c) or any other Motion for that matter.

On December 10, 2009, Affiant moved to vacate Stephen P. Friot's order dated December 9, 2009 (Doc. 264).  See Doc. 265.

On December 11, 2009, Mr. Snoke,[8] the one defending Stephen P. Friot's order in in 08-cv-636, 08-cv-620(NDOk), 09-5034 and 09-5035 (Tenth Circuit), filed his Motion to Oppose, opposition and Motion for more time, to Affiant's Motion to Vacate. Doc. 266.

On December 15, 2009, Mr. Snoke filed his opposition to Mr. Stilley's Motion

---

[8]Mr. O'Reilly was with him on this submission.

to Reconsider Stephen P. Friot's decision to strike pleadings on December 9, 2009 (Doc. 267), in which he argued it was not necessary for this Court to reconsider its striking of certain pleadings because a single case in the Fifth Circuit said that such an order would be reviewed for abuse of discretion.

On December 15, 2009, Mr. Snoke filed his opposition to Mr. Stilley's Motion to Reconsider Stephen P. Friot's decision to strike pleadings on December 9, 2009 (Doc. 267), in which he argued it was not necessary for this Court to reconsider its striking of certain pleadings because a single case in the Fifth Circuit said that such an order would be reviewed for abuse of discretion.[9]

ARGUMENT

**1.      Stephen P. Friot was not ever nor is a commissioned Article III Judge assigned to the United States' Northern Oklahoma Judicial District Court, pursuant to Title 28, Section 116(a) boundaries, or within the jurisdiction of section 116(a) district court.**

It is beyond dispute that Stephen P. Friot was commissioned to the United States' Western Oklahoma Judicial District as an Article III judicial inferior Court officer on November 12, 2001.  His appointment occurred on September 4, 2001 by then sitting President George W. Bush.  What is equally not disputed is that none of the counties under Title 28, Section 116(c) are listed in Title 28, Section 116(a). Jurisdiction for a United States Western Oklahoma Judicial District Judge is limited to those places identified at Title 28, Section 116(c).

---

[9]What Mr. Snoke did not state in his response was how striking such a document was not an abuse of any discretion nor could he.

The Honorable Stephen P. Friot, United States Western Oklahoma Judicial District Judge has **no** commissioned jurisdiction in the United States' Northern Oklahoma Judicial District defined at Title 28, Section 116(a).    An order of Recusal and removing him from this case is warranted and must be issued.

2.    **Chief Judge Claire V. Eagan had no judicial power or other lawful authority to "assign" Stephen P. Friot to exercise Article III inferior Court jurisdiction and authority within the United States' Northern Oklahoma Judicial District Court.**

There is no question that Judge Payne was originally assigned to 09-cr-043. Equally beyond dispute is that Judge Payne recused himself on March 18, 2009. Where things go south is when the Clerk's Office did not follow civil and criminal procedure Local Rule 40.1(a) which says:

> **LCvR40.1 Assignment and Distribution of Cases.**
> (a) **Random Assignment of District Judges.** Criminal and civil cases shall be assigned to **district judges** according to a system based on random selection both for initial assignment and for assignment in the event of recusal. The system of random case assignment, distribution of cases, and rotating supervision of the Grand Jury shall be determined by the Court.

On March 31, 2009, docket # 24 states the Clerk of Court, at the direction of Chief Judge Eagan, assigns "Judge Stephen P. Friot" to 09-cr-043.  There is nothing in the record of this Court that identifies the authority for Chief Judge Eagan to assign Stephen P. Friot to a case brought within the "jurisdiction" of Title 28, Section 116(a).  Stephen P. Friot is not within the list of random assignments, as he is not a commissioned Article III inferior Court Judge within the jurisdiction of Title 28, Section 116(a), and as required by Title 28, Section 132,133 and 134.

-10-

Chief Judge Eagan has no lawful constitutional or statutory authority to create Article III offices nor is she authorized to select who will be an Article III Judge to any case deposited within the Jurisdiction of the Northern Oklahoma Article III Judicial District Court under Title 28, Section 116(a).  Chief Judge Eagan should have recused herself from any involvement in this case including who would be Judge.

The assignment of Stephen P. Friot was unlawful and recusal is warrant as the order of assignment should be vacated and assigned to an unbiased impartial Judge of competent jurisdiction from the Northern Oklahoma Judicial District Court.

**3.      Misc.# 23 does not designate Stephen P. Friot to 09-cr-043 or for any other specific public interest or temporarily hold a court other than of his commission.**

It is undisputed that Stephen P. Friot  is only commissioned to be an Article III Judge in the United States' Western Oklahoma Judicial District Court.  No law provides any Judicial Office holder under Article III for one Judicial District Court, to be considered automatically an Article III Judicial Officer in any other Article III Judicial District.  Especially in a criminal case governed by Article III, Section 2, Clause 3 and the Sixth Amendment.

In order for Stephen P. Friot to then be sitting outside of the jurisdictional boundaries set at Title 28, Section 116(a),[10] in an Article III capacity, some authority

_____

[10]The Constitutionality of such temporary assignment is challenged in section 4.

-11-

other than that of Stephen P. Friot's commission, need be identified by Stephen P. Friot to sit in 09-cr-043. Not the purported United States Attorney's say so.    Springer knows of no such lawful or statutory authority.  Springer has a right to know what that authority is claimed to be so Springer can make any objections.

The United States is expected to represent Stephen P. Friot on this issue as they did on April 16, 2009 by their response to Springer's Motion for Clarification.[11]  Misc. # 23 states that it purports to be a "designation" under Title 28, Section 292(b) by Chief Judge Henry from the Tenth Circuit Court of Appeals.[12]

Section 292(b) provides: "The chief judge of a circuit may, *in the public interest*, designate and assign **temporarily** any district judge of the circuit **to hold a district court** in any district within the circuit." In Re Kensington Intern. LTD., 368 F.3d 289, 319 (3rd Cir. 2004); see also  In Re Federal-Mogul Global Inc., 300 F.3d 368, 373 (3rd Cir. 2002)("In November 2001, the chief judge of this circuit, pursuant to 28 U.S.C. § 292(b), assigned Judge Alfred M. Wolin, a senior district judge in the District of New Jersey, to sit by designation in the District of Delaware **to manage five asbestos-related Chapter 11 proceedings**, including that of Debtors)(civil).

District Judges have also been transferred through the Judicial Council of the

---

[11]This lone act merged the Executive and Judicial functions into one and violates the separation of powers.

[12]On December 10, 2009, Chief Judge Henry announced his resignation to President Obama effective June, 2010.

Third Circuit where a "crisis"[13] existed "by transferring judges from other districts to help service the Virgin Islands workload."[14]  In Re Jaritz Industries, 151 F.3d 93, 104 (3rd Cir. 1998)  At times the Courts have referred to this "assignment" as an "intracircuit" assignment under 28 U.S.C. § 292(b).   In Re Estate of Ferdinand E. Marcos Litigation, 978 F.2d 493, 503 (fn.3) (9th Cir. 1992)[15]

Misc. # 23 says:

"Pursuant to the provisions of Title 28, United States Code, § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2009, through December 31, 2009, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

James H. Payne - Western District of Oklahoma
Frank H. Seay - Northern and Western Districts of Oklahoma
Clare V. Eagan - Eastern and Western Districts of Oklahoma
Terence C. Kern - Eastern and Western Districts of Oklahoma
Robin J. Cauthron - Eastern and Northern Districts of Oklahoma
Timothy D. DeGuissti - Eastern and Northern Districts of Oklahoma
Stephen P. Friot - Eastern and Northern Districts of Oklahoma
Joe Heaton - Eastern and Northern Districts of Oklahoma
Timothy Leonard - Eastern and Northern Districts of Oklahoma
Vicki Miles-LaGrange - Eastern and Northern Districts of Oklahoma

[13]Crisis was specified.

[14]A "territory" of the United States.

[15]A civil action without Article III, Section 2, Clause 3 and Sixth Amendment protections.

David L. Russell - Eastern and Northern Districts of Oklahoma

Lee R. West - Eastern and Northern Districts of Oklahoma

FILED DEC.30.2008 U.S. DISTRICT COURT WESTERN DIST. OF OKLA.

Copies of this designation shall be furnished to the designee Judge and Chief Judge and Clerks of the respective Districts.

12-30-2009                                  /s/ Robert H. Henry
_____Date                                 Robert H. Henry, Chief Judge

                                            United States Court of Appeals

for the

                                            Tenth Circuit.

See Exhibit 2

There is nothing in Misc. # 23 that could be relied upon to conclude Chief Judge Henry assigned Stephen P. Friot to 09-cr-043.  No words in Misc. # 23 identify what the "public interest" is or what "court" Stephen P. Friot is to "hold." In fact, docket entry # 24 explains the Clerk assigned Stephen P. Friot at the direction of Chief Judge Eagan and no other authority or reason is given.[16]

There is no vacancy or any other reason for anyone to even need Chief Judge Henry to act under section 292(b).  Even if their was, that reason must be stated on the record and is not stated.   None of the other Northern Judicial District Court Judges recused themselves from random selection, after Judge Payne recused.  What Court was Stephen P. Friot to "hold" under section 292(b)?

Misc. # 23 does not identify the public interest, temporary assignment to "a

_____

[16]Misc. # 23 was not on file with the Clerk's Office in the Northern Oklahoma Judicial District Court as of April 16, 2009 or at any other time.

court," was not filed in the Northern Oklahoma Judicial District, identified no specific office, nor does it even attempt to explain how such a signed document qualifies under Title 28, Section 292(b). Stephen P. Friot should be recused and/or removed as Misc. # 23 does not provide him with assignment or designation in any seat, vacant or otherwise within Title 28, Section 116(a).

**4.    Misc. # 23 is not lawful under Title 28, Section 292(b) and invalid.**

Springer takes exception with the fact the same day Misc. # 23 was purportedly  "filed" in the "U.S. Dist. Court Western Dist. Of Okla" it appears signed by Chief Judge Henry.   Section 292(b) refers to the limitation on the "chief judge" of "a circuit" may, *in the public interest*, designate and assign **temporarily** any district judge of the circuit **to hold a district court** in any district within the circuit.  The phrase "A circuit" could easily mean section 292(b) speaks to a Chief Judge of all Circuit Courts under Title 28, Section 44.    The problem of course is that Chief Judges of Circuits have jurisdiction that is distinct.  The District of Columbia would obviously be within Title 4, Section 72 while the rest of the Circuits appear not.  Some Circuits sit over issues involving territories like the 2nd and 9th Circuit. See Nguyen v. United States, 539 U.S. 69, 79 (2003)

Whatever may be the rule when a person's judicial  authority is challenged, the Supreme Court has described it as well settled "that where there is an office to be filled and one acting under color of authority fills the office and discharges its

-15-

duties, his actions are those of an **officer de facto** and binding upon the public."
*McDowell* v. *United States*, 159 U.S. 596, 602. Glidden Company v. Zdanok, 370 U.S.
530, 535 (1962) Just not binding on the accused.

Under former section 596, Revised Statutes, the Circuit Judge, whenever, in
his judgment, the public interest so required, could designate and appoint, in the
manner and with the powers provided in section 591, the District Judge of any
judicial district within his circuit, to hold the District or Circuit Court in place of, or in
aid of, any other District Judge within the same circuit. Ball v. United States, 140 U.S.
118 128 (1891) This section contemplated that the appointment made under it
should state what court the appointee was to hold, and that it was in place of the
judge of the District Court, or in aid of him; and that the appointment should be
filed and entered on the minutes, as provided in section 591. Id.

The Supreme Court has agreed to correct, at least on **direct review**, violations
of a statutory provision that "embodies a strong policy concerning the proper
administration of judicial business" even when the defect was not raised in a timely
manner. Glidden, 370 U.S., at 536 (plurality opinion).  Springer raises the unlawfulness
of Stephen P. Friot in this case timely.

In American Constr. Co. v. Jacksonville, T. & K. W. R. Co., 148 U.S. 372 (1893),
the case Justice Harlan cited for this proposition in Glidden, a judgment of the
Circuit Court of Appeals was challenged because one member of that court had

been prohibited by statute from taking part in the hearing and decision of the appeal.   The Supreme Court succinctly observed: "If the statute made him incompetent to sit at the hearing, the decree in which he took part **was unlawful**, and perhaps **absolutely void**, and should certainly **be set aside or quashed by any court having authority to review it by appeal, error or certiorari**." 148 U.S., at 387.

The American Constr. Co. rule was again applied in William Cramp & Sons Ship & Engine Building Co. v. International Curtiss Marine Turbine Co., 228 U.S. 645 (1913), even though the parties had consented in the Circuit Court of Appeals to the participation of a District Judge who was not permitted by statute to consider the appeal. Id., at 650. Rather than sift through the underlying merits, the Supreme Court remanded to the Circuit Court of Appeals "so that the case may be heard by a competent court, [organized] conformably to the requirements of the statute." Id., at 651. See also Moran v. Dillingham, 174 U.S. 153, 158 (1899) ("[T]his court, without considering whether that decree was or was not erroneous in other respects, orders the Decree of the Circuit Court of Appeals to be set aside and quashed, and the case remanded to that court to be there heard and determined according to law by a **bench of competent judges**" (emphasis deleted)). See Nguyen v. United States, 539 U.S. 69, 79 (2003)

Whatever anyone would say Title 28, Section 292(b) enumerates to a single Chief Judge of a United States Circuit Court, what is suggested by the United States'

-17-

Misc. # 23 intends to mean renders Misc. # 23 unlawful, illegal, and invalid.

An order of recusal and/or removal regarding Stephen P. Friot should issue due to Misc. # 23 is unlawful, illegal, and invalid under Title 28, Section 292(b).

**5.      Chief Judge of Tenth Circuit and District Court have no Appointment Clause Authority to appoint any inferior commissioned officer under Article III as only Congress and the President are constitutionally enumerated.**

Article III enumerates that Congress is the only body to establish courts inferior to the one supreme Court.  Article III, Section 1.  Congress is enumerated at Article I, Section 8, clause 9 to establish those inferior Courts.  Once those inferior court offices are established, by law, then the President may appoint, with the advice and consent of the Senate, a person to hold such office during good behaviour which is lifetime. Nguyen v. United States, 539 U.S. 69, 72 (2003) Chief Judges Henry from the Tenth Circuit, or Chief Judge Eagan from the Northern Oklahoma Judicial District, have no appointment clause power to do or say anything in regard to appointment, assignment or designation, of Article III inferior Court officers and case or controversy within their judicial power.  See Article II, Section 2, Cl. 2.

All one must ask is which "office" are the listed Judges in Misc. # 23 being designated or assigned to in Misc. # 23?   The answer is clearly none.

The "offices" Misc. # 23 directs to be filled do not exist nor are any such specific office even mentioned.  Misc. # 23 is being used by the Department of Justice to offer an explanation,  at least, as to how the Chief Judge of the Northern

-18-

Oklahoma Judicial District Court selected a person to preside over an indictment outside that person's Article III jurisdiction.   No office is identified as vacant in the Northern Oklahoma Judicial District Court.  No temporary assignment is made and no public interest is identified for such conclusions to be tested according to law.

Even if these criteria could be made out, and they are clearly not, Springer asserts a commissioned inferior Article III officer within one geographical boundary could never carry that jurisdiction to another and be within the judicial power of the United States under Article III.  There is no consent to Stephen P. Friot by Springer.

What would the words in Misc. # 23 be that identify the "public interest" in having each commissioned Article III Judicial Office Holder in each of the three Judicial Districts, within the external boundaries of the State of Oklahoma, in becoming an Article III Judicial Office Holder in the other two Judicial Districts for renewable terms of 1 year?  Whatever that might be it certainly was not intended by Congress passing Title 28, Section 292(b). The abuse this construction of section 292(b) could lead to is impossible to calculate but to suffice it to say such abuse has demonstrated itself in this very case.

Under the Department of Justice silent inference, there are 14 Northern Judicial District Court Judges; 14 Western Judicial District Court Judges; and 14 Eastern Judicial District Court Judges.  That equals 39 seats where Congress only established by law 3 in the Northern Judicial District Court, 6 in the Western Judicial

-19-

District Court, and 1 in the Eastern Judicial District Court with 1 established in the Northern, Eastern and Western Judicial Districts Courts.[17]

Then there is the added issue of making senior Judges from the Eastern and Western District Courts "District Judges" in the Northern, Eastern and Western Judicial Districts Courts. Imagine, Judge Payne is commissioned in the Northern, Eastern and Western Districts under Title 28, Section 133, yet Chief Judge Henry purportedly designated Judge Payne to the "Western District of Oklahoma" as his first designation in Misc. # 23.

Congress can place in the hand of the Courts of Law "appointment of such inferior Officers, as they think proper" but the appointment must be "by law" and Congress did not think it proper to do what Misc. # 23 appears to be attempting to do.   Although Article III Judges, save the one supreme Court are "inferior office" holders, they are not subject to "appointment" by the "courts of law." The seat or office must be created by law then the law will direct how that seat or office is to be filled.  At best Congress could have intended that Article III Judges appointed for life could be used for other non Article III issues within the Tenth Circuit that life time tenure does not demand.  This case is not one of those cases.

The roots of the separation-of-powers concept embedded in the Appointments Clause are structural and political. Our separation-of-powers

---

[17]This seat is currently commissioned to Judge Payne.

jurisprudence generally focuses on the danger of one branch's aggrandizing its power at the expense of another branch. See *Mistretta* v. *United States*, 488 U.S. 361, 382 (1989). The Appointments Clause not only guards against this encroachment but also preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power.    Freytag v. Commissioner, 501 U.S. 868, 878 (1991)

The Tenth Circuit is not a geographical boundary.  It is a Jurisdictional boundary to an inferior Article III Court.  See Title 28, section 41 describing "composition" and not location.  It may serve geographical boundaries but those boundaries can be Judicial District Courts and States previously established by law not districts.  Misc. # 23 apparently  creates 1 year term offices in the Northern, Eastern and Western Judicial District Courts of "Oklahoma." [18] Congress has no power to give the Chief Judge of any Circuit to create 1 year term offices in any Article III Judicial District pertaining to Article III, Section 1 inferior Court offices. Those are not lifetime or for good behaviour.  Springer struggles to even offer a legitimate reason why Chief Judge Henry, or for that matter, Chief Judge Eagan, considered that either of them had any such authority to either create such offices

---

[18]"Oklahoma" cannot be the "State of Oklahoma" because this would render the Tenth Amendment meaningless and repugnant.  All statutory construction should be to avoid placing the language into constitutional infirmity.

or fill them.

Article III of the Constitution requires that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." Art. III, § 2, cl. 3. United States v. Rodriguez-Moreno, 526 U.S. 275, 278 (1999) Article III Judicial Power is limited "to cases and controversies in such form that the judicial power is capable of acting on them." Postum Cereal Co. v. Calif. Fig. Nut. Co., 272 U.S. 693, 700 (1927)

The Supreme Court in Keller v. Potomac Electric Company, 261 U.S. 428, 440, 442, 443 pointed out that, "while Congress in its constitutional exercise of exclusive legislation over the District may clothe the courts of the District not only with the jurisdiction and powers of the federal courts in the several States but also with such authority as a State might confer on her courts, Prentis v. Atlantic Coast Line Company, 211 U.S. 210, 225, 226, and so may vest courts of the District with administrative or legislative functions which are **not properly judicial."**, Congress "may not do so with this Court or any federal court established under Article III of the Constitution."  Id.

Stephen P. Friot should be recused and or removed as any assignment by anyone other than the President and Congress violates the appointment clause.

**6.     Assignment of Stephen P. Friot is unconstitutional**.

Any construction of any assignment of Stephen P. Friot to the Jurisdiction of

the United States' Northern Oklahoma Judicial District Court by either Chief Judge Henry or Chief Judge Eagan is in violation of Article III, Section 1, Article III, Section 2, Clause 3, Article II, Section 2, Clause 2, and the Fifth and Sixth Amendment.  The constitutional provisions have been outlined above and need not be addressed herein and are incorporated herein from above.

The Supreme Court held in *Gomez* 490 U.S. 858 (1989) that imposition of a magistrate judge over objection was structural error, violating the basic right to a trial conducted at all critical stages by a judicial officer **with appropriate jurisdiction**.  See also Gonzalez v. U.S., 06-11612, page 11 (U.S. 5-12-2008) We have stated that courts "are not at liberty to create an exception where Congress has declined to do so." *Hallstrom* v. *Tillamook County*, 493 U.S. 20, 27 (1989).

"When a statute creates an office to which it assigns specific duties, those duties outline the attributes of the office. Any additional duties performed pursuant to a general authorization in the statute reasonably should bear some relation to the specified duties." 490 U.S., at 864.

The Fifth Amendment provides that no life, liberty or property, shall be deprived of any person without due process of law.   Stephen P. Friot was not assigned as Judge in 09-cr-043 under any law whatsoever.

The Sixth Amendment requires Springer have a jury trial and by trial it is meant the trial reserved by Article III, Section 2, Clause 3.  Springer has not had any "trial"

according to Article III, Section 2, Clause 3 and the Sixth Amendment.  To have a trial means to have a Judge whom is de jure.  Stephen P. Friot was not de jure nor is he de facto.        An order of recusal and or removal on Stephen P. Friot should be entered in the record of this case.

CONCLUSION

Lindsey Kent Springer respectfully requests an order (1) finding Stephen P. Friot is not a commissioned Article III Judge within the jurisdiction of Title 28, Section 116(a) boundaries; (2) finding Chief Judge Claire V. Eagan had or has no  Article III judicial power or other lawful authority to "assign" Stephen P. Friot to exercise Article III inferior Court judicial power within the United States' Northern Oklahoma Judicial District Court; (3) finding  Misc.# 23 does not designate Stephen P. Friot to 09-cr-043 or for any other specific public interest or temporarily to hold an Article III Judicial Court; (4) finding Misc. # 23 not a lawful exercise under Title 28, Section 292(b) and invalid; (5) finding Congress has not tendered to Chief Judge of a circuit Court, or Chief Judge of an Article III Judicial District Court, outside the District of Columbia, any Authority to appoint and assign any inferior commissioned officer to hold Article III court  outside the District Court of his or her commission; and (6) finding the Assignment of Stephen P. Friot by Chief Judge Eagan is unconstitutional and in violation of the appointment clause;

-24-

AS A RESULT OF THE FOREGOING, an order should be entered of record  (A) Disqualifying the Honorable Stephen P. Friot United States' Western Oklahoma District Court Judge from 09-cr-043 pursuant to Title 28, Sections 455(a) due to partiality in favor of the United States, 455(b)(1) due to prejudice and bias, (B) for recusal based upon Stephen P. Friot's lack of jurisdiction outside the geographical boundaries set to his commission at Title 28, Sections 116(c), 132, 133, 134 and 451, (C) removal from holding court by Stephen P. Friot in the Northern Oklahoma Judicial District Court under Article III, and (D) for random reassignment under LCvR40.1.

Respectfully Submitted

/s/ Lindsey K. Springer
Lindsey K. Springer

5147 S. Harvard, # 116

Tulsa, Oklahoma 74135

918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Brief Memorandum in support of his Motion to Disqualify, Removal, Recusal and

Random Reassignment, with attachments, was ecf'd on December 28, 2009 to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

<u>/s/ Lindsey K. Springer</u>
Signature