IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                      Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants

SPRINGER'S REPLY REGARDING SPRINGER'S
MOTION FOR NEW TRIAL

Table of Contents of Issues Presented

I.      SHERN NOR O'REILLY AND SNOKE AUTHORIZED OUTSIDE D.C. . . . . . . . . . . 1

      A.     **Brian Shern is not an Internal Revenue Special Agent of the Secretary and has no delegation of authority to act outside District or Columbia** . . . . . . . . 1

      B.     **There is no office established by law since at least 2000 where a proper delegate of the Secretary can exercise the office of the Secretary in the State of Oklahoma, or encompassing any of the 50 States** . . . . . . . . . . . . . . . . . . . . . . 7

      C.     **Mr. O'Reilly and Snoke ("AGA") are not authorized by Congress to bring the prosecution against, or prosecute, Springer (and Stilley).** . . . . . . . . . . . . . . . 9

        (i)    **No office of United States Attorney provision establishing office by law** . . .10

        (ii)   **No United States Attorney after June 28, 2009 for authority to prosecute** .11

        (iii)  **Attorney General has not appointed Thomas Scott Woodward** . . . . . . . . .12

II.     GIFT, FINDING OF FACT, AND TAX LIABILITY ERRORS . . . . . . . . . . . . . . . . . .12

      **A.  Gift** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

(Contents Con'td)                                     Page #

**B.    Finding of Fact on payment items** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**C.    Court directed jury to find liability in defiance to *Duberstein* and due process** 18

III.    VENUE HINGES UPON EXISTENCE OF INTERNAL REVENUE DISTRICTS AND DISTRICT DIRECTORS LOCATED IN THIS  JUDICIAL DISTRICT   . . . . . . . . . . 19

IV.    JURY WAS TOTALLY CONFUSED BY COURT AND PROSECUTION ON FORM 1040 AND GOOD FAITH DEFENSE OF SPRINGER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.    JURY NOT PROPERLY DRAWN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.    COUNT ONE CONSPIRACY INVOLVING SPRINGER'S INCOME . . . . . . . . . . . . 21

VII.    SPRINGER IS NOT A CHRONIC TAX CHEAT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VIII    STEPHEN P. FRIOT NOT AUTHORIZED BY LAW . . . . . . . . . . . . . . . . . . . . . . . . . 22

IX    TOUHY REGULATIONS VIOLATE'S CONFRONTATION CLAUSE . . . . . . . . . . . 23

X.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Table of Authority

Cases

*Allnutt v. C.I.R.*, 523 F.3d 406, 414 (fn. 1) (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Armour Packing Co. v. United States*, 209 U.S. 56, 82 (1908) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Buckley v. Valeo*, 424 U.S. 1, 126 (1976)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cameron v. I.R.S.*, 593 F. Supp. 1540, 1549 (1984)(NDIn)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Christiansen v. CIR*., 843 F.2d 418, 420 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Colder v. Bull*, 3 Dall. 386, 390-392, 1 L.Ed. 648 (1798) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Commissioner v. Duberstein*, 363, U.S. 278, 288 (1960)  . . . . . . . . . . . . . . . . . . . . . . 15,16,18,19

*Gilson v. Sirmons*, 520 F.3d 1196, 1227 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

(Authorities Con'td)                                                                    page #

*Graham v. CIR*, 822 F.2d 844,849 (9thCir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hernandez v. CIR*, 490 U.S. 680, 689 (fn. 10)(1989)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hughes v. United States*, 953 F.2d 531, 542-43 ( 9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . 2,3,4,7,8

*Johnston v. United States*, 351 U.S. 215, 220 (1956)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lonsdale v. United States*, 919 F.2d 1440, 1447 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Springer v. United States*, 447 F.Supp.2d 1235, 1238 (N.D. Okla. 2006) . . . . . . . . . . . . . . . . . 21

*Silver v. United States Postal Service*, 951 F.2d 1033, 1036 n. 2 (9th Cir. 1991) . . . . . . . . . . . 23

*Thomas v. I.N.S.*, 35 F.3d 1332, 1338 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,10

*United States v. Amer. Bar Endwmt.,* 477 U.S. 105, 106 S.Ct. 2426, 2434, 91 L.Ed.2d 89 (1986)8

*United States v. Bailey*, 259 F.3d 1216, 1219 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Bisbee*, 245 F.3d 1001, 1005-1006 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Brewer*, 486 F.2d 507, 509 (10th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Capps,* 77 F.3d 350, 354 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Carmack*, 329 U.S. 230, 248 (1946)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Dawes*, 951 F.2d 1189, 1191-92 (10th Cir.1991)  . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Duran*, 133 F.3d 1324, 1336 (fn. 8) (10th Cir. 1998)  . . . . . . . . . . . . . . . . . . . . 3

*United States v. Gorman*, 393 F.2d 209, 214 (7th Cir. 1968)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Lasalle National Bank*, 437 U.S. 298, 308 (1978) . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Rodriguez-Moreno*, 526 U.S. 275, 278 (1999)  . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Taylor*, 828 F.2d 630, 634 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Terrell*, 754 F.2d 1139, 1149 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

(Authorities Con't)                                        page #

*Young v. IRS*, 596 F. Supp. 141, 147 (1984)(NDIn) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statutes

Title 4, United States Code, Section 71 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Title 4, United States Code, Section 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,7,9,12

Title 26, United States Code, Section 6091 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Title 26, United States Code, Section 6301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Title 26, United States Code, Section 7701(a)(11) . . . . . . . . . . . . . . . . . . . . . . . . . 5

Title 26, United States Code, Section 7608(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Title 26, United States Code, Section 7801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4

Title 26, United States Code, Section 7802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Title 26, United States Code, Section 7803 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Title 28, United States Code, Section 501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Title 28, United States Code, Section 516 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Title 28, United States Code, Section 541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,9,11

Title 28, United States Code, Section 542 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Title 28, United States Code, Section 543 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Title 28, United States Code, Section 547 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,12

Title 31, United States Code, Section 301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Regulations

26 CFR 1.61-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

26 CFR 1.61-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

(Regulations Con't)                                                        Page #

  26 CFR 301.6301-1(2000-2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

  26 CFR 301.7701-9 (2000-2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,5

  26 CFR 301.7701-10 (2000-2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

  26 CFR 601.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,8

  26 CFR 601.107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,8

Misc.

  Internal Revenue Manual at 9.1.2.2 (01-16-2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

  *Harv. L.Rv*., "The Status of Our New Territories" Vol. XII,1. 25.1899, 365, 385 . . . . . 13

CONSTITUTION

  Article I, Section 8, Clause 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13

  Article III, Section 2, clause 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SPRINGER'S REPLY REGARDING MOTION FOR NEW TRIAL

Lindsey Kent Springer ("Springer") files his reply addressing Docket # 276 filed in response to Springer's Motion for a New Trial.

I.      SHERN NOR O'REILLY AND SNOKE AUTHORIZED OUTSIDE D.C.

Springer submits this issue in reply is out of turn but the egregiousness by which it turns demands being the first batter on Springer's list at the top of the order.

Purported Special Assistant U.S. Attorney Charles A. O'Reilly and purported Assistant U.S. Attorney Kenneth Snoke ("Attorney General Appointments")("AGA") oppose Springer's claims wherein Springer asserted neither Brian Shern nor the AGAs were authorized to exercise the office of the Secretary of Treasury (Title 31, Section 301) or the United States Attorney (Title 28, Section 541) in the United States' Northern Oklahoma Judicial District, including the Court therein itself.

A.      **Brian Shern is not an Internal Revenue Special Agent of the Secretary and has no delegation of authority to act outside District or Columbia**

The AGA's argue the "wholly original defense" that the "Internal Revenue Service Special Agent" was not authorized to act "outside the District of Columbia"[Doc.no. 262:15] is "frivolous to the point of absurdity." Doc. 276, pg. 13      The AGA does not dispute the controlling law cited by Springer at Title 4, Section 72.  Nor does the AGA dispute what the meaning of Title 4, Section 72 is in the words of the statute.  The AGA takes no exception with any word in Title 4, Section 72.

The AGA argues however, that "there is no support for his position that this statute prevents the Internal Revenue Service or the United States Attorney for the Northern District of Oklahoma from operating outside the District of Columbia."  Doc. 276, pg. 13

To support this tail spin out of control the AGA argues "[T]he Secretary of the Treasury and the Commissioner of Internal Revenue have the authority to delegate tax collecting power to local

IRS officers and employees throughout the country."*Hughes v. United States*, 953 F.2d 531, 542-43 ( 9th Cir. 1992). Springer agrees the authority to delegate or redelegate can exist but that delegation or redelegation only could exist so long as a district director and internal revenue district exists.

Springer believes and agrees with the AGA that the Hughes decision, and its complete analysis, should control completely on this issue. However, as Springer cited on page 3 of his Motion, the Hughes Court held:

> The President is authorized to **establish internal revenue districts for the purpose of administering the internal revenue laws**, and these districts can be created outside of Washington, D.C. See 26 U.S.C. § 7621."[1]

This is the only manner in which any office exercised in the District of Columbia could be authorized to be exercised outside the District of Columbia. The actual entire quote reads as follows:

> "First, the Hugheses argue that the IRS has no authority outside of Washington, D.C. To support this contention, they rely on 4 U.S.C. § 72, which states that "[a]ll offices attached to the seat of governments shall be exercised in the District of Columbia, and not elsewhere, except as otherwise expressly provided by law." This section does not foreclose the exercise of authority by the IRS outside the District of Columbia. The President is authorized to establish **internal revenue districts** for the **purpose of administering the internal revenue laws**, and these districts can be created outside of Washington, D.C. See 26 U.S.C. § 7621. Furthermore, as we have held, the Secretary of the Treasury and the Commissioner of Internal Revenue have the authority to delegate tax collecting power to local IRS officers and employees throughout the country. See supra Part II(A)(1)."

Hughes, pg. 543 paragraph 75

The sentence "as we have **held,** the Secretary of the Treasury and the Commissioner of

---

[1] Title 26, United States Code, Section 7621(a) reads in relevant part: "The President shall establish convenient internal revenue districts **for the purpose of administering the internal revenue laws**. The President may from time to time alter such districts." Section 7621(b) reads in relevant part: "Boundaries-For the purpose mentioned in subsection (a), the President may subdivide any State, or the District of Columbia, or may unite **into one district two or more States**."see also *United States v. Gorman*, 393 F.2d 209, 214 (7th Cir. 1968)

Internal Revenue have the authority to delegate tax collecting power to local IRS officers and employees throughout the country" refers back to Part II(A)(1) which reads as follows:

> Relevant statutes and regulations demonstrate, however, that the Secretary does have the power to collect taxes, and that **such power can be delegated to local IRS agents**. 26 U.S.C. § 6301 provides that "[t]he Secretary shall collect the taxes imposed by the internal revenue laws." **The actual task of collecting the taxes, however, has been *delegated* to local IRS directors**. "The taxes imposed by the internal revenue laws shall be collected **by district directors** of internal revenue." 26 C.F.R. § 301.6301-1. **District directors** in turn are authorized to redelegate the levy power **to lower level officials such as collection officers**. See IRS Delegation Order 191. The delegation of authority down the chain of command, from the Secretary, to the Commissioner of Internal Revenue, to local IRS employees constitutes a valid delegation by the Secretary to the Commissioner, and a redelegation by the Commissioner to the delegated officers and employees. See 26 C.F.R. § 301.7701-9. Therefore, the agents involved in the case at bar were acting within their authority when they collected taxes from the Hugheses.

Hughes, pg. 536, paragraph 23

"The word 'agent' is not self-defining." *United States v. Duran*, 133 F.3d 1324, 1336 (fn. 8) (10th Cir. 1998)    In the case of "internal revenue laws" the Secretary is provided with the "authority" over the "administration and enforcement" thereof.  See Title 26, Section 7801.  See *United States v. Lasalle National Bank*, 437 U.S. 298, 308 (1978)("The Secretary of the Treasury and the Commissioner of Internal Revenue are charged with the responsibility of administering and enforcing the Internal Revenue Code. 26 U.S.C. §§ 7801 and 7802.")

It is clear "that the Secretary of the Treasury has full authority to administer and enforce the Internal Revenue Code, 26 U.S.C. § 7801, and has the power to create an agency to administer and enforce the laws. *See* 26 U.S.C. § 7803(a).[2]  Pursuant to this legislative grant of authority, the Secretary of the Treasury created the IRS. 26 C.F.R. § 601.101." *Young v. IRS*, 596 F. Supp. 141,

---

[2]Someone moved the wording of Section 7803(a) to its current location of 7804(a).

147 (1984)(NDIn); see *Cameron v. I.R.S.*, 593 F. Supp. 1540, 1549 (1984)(NDIn); See also *United States v. Collins*, 920 F.2d 619,630 (10th Cir. 1990) citing *Cameron* to certain authority issues.

26 CFR 601.101 in relevant part states:

"The Internal Revenue Service is a bureau of the Department of the Treasury under the immediate direction of the Commissioner of Internal Revenue. The Commissioner has general superintendence of the assessment and collection of all taxes imposed by any law providing internal revenue. The Internal Revenue Service **is the agency** by which these ***functions*** are performed. **Within an internal revenue district** the internal revenue laws are administered **by a district director** of internal revenue...."

Outside of the District of Columbia the phrase "Internal Revenue Service" has no standing nor even exists by law without "internal revenue districts" and a "district director" for each district.

Just like the Court in *Hughes*, all the "functions" of the Secretary are to be performed through "internal revenue districts" by the "district director" of internal revenue.   And as undisputed, no internal revenue district encompassing the State of Oklahoma and this judicial district have existed since at least 2000.  See Doc. 71, pg. 4.  The position of "district director" was also eliminated at the same time the internal revenue districts were eliminated.   See *Allnutt v. C.I.R.*, 523 F.3d 406, 414 (fn. 1) (4th Cir. 2008)(the Fourth Circuit found the "District Director's Office, now **defunct**,..." Black's Law, Sixth Edition defines "defunct" as "having ceased to exist; no longer operative..."  See also Internal Revenue Bulletin, 2007-36 where the Secretary explains the reason for changing a regulation because the district director office was eliminated by the Secretary as a result of a law passed in 1998.  See Doc. 281, Exhibit 1, Page 536

What is even more alarming is the deception that once again, without any evidence whatsoever, the AGA argues Brian Shern is a delegate of the district director without producing a

single citation of any delegation order or statute or regulation whatsoever.  Even the Internal

Revenue Manual at 9.1.2.2 (01-16-2008) labeled "General Authority to Enforce Internal Revenue

Laws and Related Statutes" explains:

> 1.Title 26 United States Code (USC) §7608(b) provides the initial authority for
> investigating crimes arising under the Internal Revenue laws.

Title 26, Section 7608(a) directs application is to who the Secretary charges with the duty to

enforce any criminal provision.  In order for Brian Shern or any person to be considered a "special

agent" of the Secretary of the Treasury, he must be a delegate of the Secretary. See definition of

Secretary to include his delegate at Title 26, Section 7701(a)(11).   To determine whether Brian

Shern is a "delegate" of the Secretary, the *Hughes* Court directed holding to 26 C.F.R. § 301.7701-9.

Since Shern began his pursuit of Springer in April, 2005, Springer turns to 301.7701-9 for

the year 2005. 26 CFR § 301.7701–9 is labeled "Secretary or his delegate" and states the following:

> (a) The term *Secretary or his delegate* means the Secretary of the Treasury, or any
> officer, employee, or agency of the Treasury Department **duly authorized by the
> Secretary** (directly, or indirectly by one or more redelegations of authority) **to
> perform the function mentioned or described in the context**, and the term ''or his
> delegate'' when used in connection with any other official of the United States shall
> be similarly construed.
>
> (b) In any case in which a function is vested by the Internal Revenue Code of 1954
> or any other statute in the Secretary or his delegate, and Treasury regulations or
> Treasury decisions approved by the Secretary or his delegate provide that such
> function may be performed by the Commissioner, assistant commissioner, regional
> commissioner, assistant regional commissioner, **district director**, director of a
> regional service center, **or by a designated officer or employee in the office of any
> such officer**, such provision in the regulations or Treasury decision shall constitute
> a delegation by the Secretary of the authority to perform such function to the
> designated officer or employee. If such authority is delegated to any officer or
> employee performing services under the supervision and control of the
> Commissioner, such provision in the regulations or Treasury decision shall constitute
> a delegation by the Secretary to the commissioner of the authority to perform such
> function and a redelegation thereof by the Commissioner to the designated officer or

employee.

(c) An officer or employee, including the Commissioner, authorized by regulations or Treasury decision to perform a function shall have authority to **redelegate the performance of such function to any officer or employee performing services under his supervision and control**, unless such power to so redelegate is prohibited or restricted by proper order or directive. The Commissioner may also redelegate authority to perform such function to other officers or employees under his supervision and control and, to the extent he deems proper, may authorize further redelegation of such authority.

(d) The Commissioner may prescribe such limitations as he deems proper on the extent to which any officer or employee under his supervision and control shall perform any such function, but, in the case of an officer or employee designated in regulations or Treasury decision as authorized to perform such function, such limitations shall not render invalid any performance by such officer or employee of the function which, except for such limitations, such officer or employee is authorized to perform by such regulations or Treasury decision in effect at the time the function is performed.

This regulation by the Secretary remains the same from 2000 through 2010.

In 26 CFR § 301.7701–10 the Secretary defines District director to mean "the district director of internal revenue for an internal revenue district. The term also includes the Assistant Commissioner (International)."  This is the same from 2000 through 2010.

26 CFR 601.107(2000-2009) provides in relevant part: "Each **district** has a Criminal Investigation **function** whose mission is to encourage and achieve the **highest possible degree of voluntary compliance** with the internal revenue laws."

The AGA therefore cannot dispute that in order for Brian Shern to be an "Agent" of the Secretary, as a delegate, he must be delegated by the district director of the internal revenue district to which his commission assigns. See *United States v. Bisbee*, 245 F.3d 1001, 1005-1006 (8th Cir. 2001)(Secretary delegated to "district director" and "IRS district director had the authority to assess the penalty.") "In the law of agency, actual authority takes two forms: (1) express authority, and (2)

authority that is implied or incidental to a grant of express authority. W. Edward Sell, Sell on Agency 25-31 (1985)." *Thomas v. I.N.S.*, 35 F.3d 1332, 1338 (9th Cir. 1994)

The Tenth Circuit said in *Lonsdale v. United States*, 919 F.2d 1440, 1447 (10th Cir. 1990) that "descriptions permitting an understanding of the organization of the Internal Revenue Service are published by statute and in the Code of Federal Regulations. See, e.g., 26 U.S.C. § 7801-7810; 26 C.F.R. Part 600, et seq."

Unless Brian Shern, or any other purported Special Agent is delegated by the district director in the internal revenue district to which he functions, he nor anyone else similarly situated,  has lawfully  "the authority" "delegated" from the Commissioner or Secretary to investigate, gather, present, enforce, or collect any information and a new trial should be granted.

> **B.     There is no office established by law since at least 2000 where a proper delegate of the Secretary can exercise the office of the Secretary in the State of Oklahoma, or encompassing any of the 50 States.**

The AGA argues "[T]he Secretary of the Treasury and the Commissioner of Internal Revenue have the authority to delegate tax collecting power to local IRS officers and employees throughout the country." *Hughes v. United States*, 953 F.2d 531, 542-43 ( 9th Cir. 1992).  Throughout the Country is an obvious phrase that must be in accord with Title 4, Section 72 which reads in part:

> "[a]ll offices attached to the seat of governments shall be exercised in the District of Columbia, and not elsewhere, except as otherwise expressly provided by law."

The AGA neither directed any evidence of any office established by law outside the District of Columbia that authorizes the office of the Secretary of the Treasury at Title 31, Section 301, to be exercised outside the District of Columbia,  by any proper delegated person.  Nor did the AGA identify any part of the *Hughes* decision that could support the suggestion an office exists where

Brian Shern offices.   The "office" in *Hughes* was described as in internal revenue district and "IRS director."  *Hughes*, at 536.  The AGA omits reference to that language in *Hughes* and for obvious reasons.  The AGA admitted on May 29, 2009, these internal revenue districts and district director offices were abolished in the year 2000.  See Doc. 71, pg. 4.

Springer points to 26 CFR 601.101, and 601.107 from 2000 through 2010, to show without internal revenue district and district director encompassing where Springer lives and this judicial district, there is no "office" within the meaning of Title 4, Section 72 which would allow the exercise of the office of the Secretary of Treasury to be exercised not only outside the District of Columbia but within the State of Oklahoma or this judicial district.

If the AGA new of any such established by law office Springer is certain, and this Court should be same, that the AGA would have identified that law and show how such office was then established.  Just saying the Secretary can delegate does not say that he has delegated.

Springer agrees with the *Hughes* Court that Congress directed the President to create districts encompassing the States with specific boundaries to administer and enforce the internal revenue laws.  Springer also agrees that logic suggests a "district" office could be established therein and that the Secretary, on behalf of the President, could then delegate certain authority by delegation order to the district directors of each internal revenue district.

Without the office and the district director there is no proper delegation of authority for Brian Shern to administer and enforce any internal revenue law, including those at issue in Counts One, Two, Three, Four, Five and Six.  Neither Shern's purported Affidavit to get the search warrant on September 15, 2005, or his declaration in 06-156 allege he is a delegate of the Secretary of the Treasury. He clearly is not.

C.      Mr. O'Reilly and Snoke ("AGA") are not authorized by Congress to bring the
        prosecution against, or prosecute, Springer (and Stilley).

There is no dispute between the parties that Congress has conferred "express authority" on the United States Attorney "by law" to "prosecute for all offenses against the United States" at Title 28, Section 547.  Doc. 276, pg. 15 What follows is egregious conduct on the part of the AGA.  The AGA states "the authority of both the Internal Revenue Service Special Agent and the prosecution team to operate in the Northern District of Oklahoma are expressly provided by law."   Id.

First, there is nothing quoted by the AGA from the Hughes case that remotely supports the conclusion Brian Shern is authorized to "operate in the Northern District of Oklahoma "expressly provided by law."  Without an internal revenue district encompassing the Northern Judicial District boundaries, no such authorization could ever be shown by Shern under anyone's theory of the district.   Other than Title 4, United States Code, Section 72, the AGA did not cite to one single code provision or regulation to support its conclusion.  The AGA is knowingly wrong.

Additionally, the AGA argues that Title 28, United States Code, Section 547 provides the "authority" of the "prosecution team" to "operate in the Northern District of Oklahoma."  Such a conclusion is also knowingly false.  Up until June 28, 2009, David O'Meilia was the "United States Attorney" appointed by the President under Title 28, Section 541.  See **http://www.mainjustice.com/tag/david-omeilia/.**  Section 541 allows the President to appoint a single United States Attorney in each office established by law in each "judicial district" for a four year specific term.  This section also provides the President with the sole authority to hire and fire the United States Attorney.  This power is an Article II, Section 2, Clause 2 power that can only be exercised by the President of the United States of America. *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)

On the other hand, Assistant United States Attorneys are appointed by the Attorney General

to assist the United States Attorney "when the public interest so requires." See Title 28, Section 542. These appointed Assistants to the United States Attorney are removable solely by the Attorney General and have no specific term. They would qualify as officers under Article II.

Title 28, Section 543 also provides the Attorney General may appoint a "Special Attorney" to "assist United States Attorneys when the public interest so requires." None of these provisions allow Assistant United States Attorneys or Special Attorneys to "prosecute for all offenses against the United States." That power Congress solely placed in the hands of the appointed, with advise and consent, a United States Attorney for the judicial district. See Title 28, Section 541

The AGA argues "United States Attorneys get their authority directly from Congress, not by delegation from the Attorney General. Congress has conferred express authority on United States Attorneys by law." *Thomas v. I.N.S.*, 35 F.3d 1332, 1338 (9 Cir. th 1994). In Thomas, the split panel majority said:

> We have not been able to find any place in the Code of Federal Regulations where the Attorney General delegates to United States Attorneys her power to prosecute federal crimes. They [United States Attorneys] nevertheless have that power, because Congress assigned it to them independently of any delegation by the Attorney General. [emphasis added]

*Thomas,* 1339.

### (i)     No office of United States Attorney provision establishing office by law.

The AGA identifies no "office" that would provide exercise of a United States Attorney to prosecute any offense outside the District of Columbia, which Title 4, Section 72 withholds and forbids. No office exists that is established by law.

Title 28, Section 541 established the appointment process for each office in each judicial district but section 541 does not establish the "office." In any event, even if section 541 is read to

Page -9-

establish the appointment process and an executive office in "each judicial district" for a specific United States Attorney, and Springer argues it does not, there could, under that rationale, only be an "office" if there is a United States Attorney appointed with advice and consent of the Senate. There is no office established by law in any event.

### (ii) No United States Attorney after June 28, 2009 for authority to prosecute.

Springer surrenders nothing by way of illustrating that the United States Attorney at the time of the indictment in this case was named David E. O'Meilia. See Doc. 2, pg. 14. Currently, and since June 30, 2009, each filing by the AGA has listed Thomas Scott Woodward as "acting" United States Attorney. Compare Doc. 80, pg. 15 listing David E. O'Meilia with Doc. 94 pg. 11 listing acting Thomas Scott Woodward.

Also, note that Charles A. O'Reilly goes from "Trial Attorney, Department of Justice" in Doc. 80 to Special Assistant U.S. Attorney in drafting Doc. 94 and thereafter. Mr. Snoke has maintained his appointment by the Attorney General by label of Assistant United States Attorney on every pleading he has signed, joined or authored.

Since there is no United States Attorney for the judicial district named "Northern District of Oklahoma" after June 28, 2009, Congress had given no authority to anyone, named or unnamed, to prosecute Springer (or Stilley) for the allegations contained within Doc. 2. This reaches all pleadings.

Even if there was a United States Attorney named, Springer would oppose the prosecution unless that prosecution was specifically performed by the specific person appointed by the President of the United States of America. Congress has given no authority to the Attorney General, or to Assistant United States Attorneys or Special Assistant United States Attorneys, to actually prosecute any offense outside the District of Columbia in any office.     The AGA cites to no such authority nor

do they no of any because none has ever existed in the over 200 plus years of the republic.

A new trial is warranted only to be prosecuted by a Presidential appointed United States Attorney to the United States' Northern Oklahoma Judicial District.

### (iii)   Attorney General has not appointed Thomas Scott Woodward

The AGA identifies Thomas Scott Woodward as an "acting" United States Attorney in its opposition.  Doc. 276.    There is no provision that allows for an "acting" United States Attorney. The AGA avoids this problem created by their argument entirely.   Silence is bliss.   Without a "United States Attorney" "appointed" by the President of the United States of America to this judicial district there would be no existence of any "office"in this "judicial district."

Title 28, Section 516 excepts Title 28, Section 547's sole power to prosecute in the judicial district to the United States Attorney (beginning "Except as otherwise authorized by law...").   The AGA does not argue their authority is under Title 28, Section 518 nor could they.

Title 4, Section 72 forbids any office allowed to be exercised in the seat of government to be exercised outside the District of Columbia except as "expressly provided by law.     Title 28, Section 501, places the "Department of Justice" as "an executive department of the United States at the seat of Government."  Title 4, Section 71 provides the "[A]ll that part of the territory of the United States included within the present limits of the District of Columbia shall be the permanent seat of government of the United States."  Article I, Section 8, Clause 17 limits the "territory" to 10 miles square.  See *United States v. Carmack*, 329 U.S. 230, 248 (1946)("If the Federal Government desires exclusive legislative jurisdiction over land acquired by it, the Constitution indicates that the consent of the state in which the land is located is necessary.")

"Article III of the Constitution requires that '[t]he Trial of all Crimes . . . shall be held in the

State where the said Crimes shall have been committed.' Art. III, § 2, cl. 3." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 278 (1999)   "Its command is reinforced by the Sixth Amendment's requirement that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed.'" Id.   By "district" meaning subdivision of a State. *Harv. L.Rv*., "The Status of Our New Territories" Vol. XII,1. 25.1899, 365, 385

Since there is no law expressly establishing an office called "United States Attorney Office" inside or outside the District of Columbia, or any other "office" which would allow the Attorney General to "exercise" his office within the State of Oklahoma, the AGA had no statutory authority to prosecute Springer (or Stilley) in this case.

There was and is no United States Attorney for this judicial district nor any office for an appointment to be filled.  A new trial should be granted.

II.   GIFT, FINDING OF FACT, AND TAX LIABILITY ERRORS

Purported AGA argues that in *United States v. Terrell*, 754 F.2d 1139, 1149 (5th Cir. 1985) instructions # 18 and 19, which were neither offered by Springer or the AGA, were "complete and accurate in all respects."  Doc. 276, pg 3   The AGA stated in Doc. 137, at page 12 in its Motion in Limine addressing Springer presenting evidence of money as a gift:

> "This evidence would be irrelevant; the Government will prove Defendant Springer earned income through the **specific item method** of proof. Through documentary evidence and witness testimony, the Government will establish that Defendant Springer received payments from income from individuals for whom he provided legal assistance."

In Terrell, the 5th Circuit stated:

> "David H. Terrell has made his living as an evangelist since the late 1950's. In 1965, **he formed a tax-exempt corporation known as the New Testament Holiness**

**Church**. He preaches under the auspices of that church, while not receiving any direct compensation from the corporation. Because he received no direct compensation, appellant's income for the indictment period, 1976 through 1979, was reconstructed using the net worth plus expenditures method of proof."

Id. at 1142

### A.  Gift

Section 102 defines Gifts not to be included within the calculation of gross income.  That is it.  *Commissioner v. Duberstein*, 363, U.S. 278, 288 (1960) clearly says, and the AGA does not dispute, that the "trier of fact must be careful not to allow trial of the issue whether the receipt of a specific payment is a gift to turn into a trial of the tax liability..."  Springer has cited to this case pretrial making an entire Motion to Dismiss on the subject.  There is nothing "reprehensible" about leaving off "...or of the propriety, as a matter of fiduciary or corporate law, attaching to the conduct of someone else."  The AGA does not argue otherwise.

Springer was not preaching under the auspices of a church tax exempt corporation.  The AGA argues Springer did not timely object to the Court's gift instruction.  Springer not only objects prior to trial and during trial, Springer orally objected at the jury instruction conference specifically and prior to and in writing.

If Congress intends "Gift" to mean what this Court sua sponte instructed the jury the term to mean then Congress is required to announce that to the entire world.  This Court's instruction violates the most basic notion of due process.  "It is the province of the judiciary to enforce laws constitutionally enacted, not to make them to suit their own views of propriety or justice." *Armour Packing Co. v. United States*, 209 U.S. 56, 82 (1908)

### B. Finding of Fact on payment items

Instruction # 19 states in relevant part:

"In determining whether a transfer of money is a gift for tax purposes, the question is whether in actuality the transfer is a bon fide gift or simply a method for paying compensation for services.   Consideration should be given to the intent of the parties, the reasons for the transfer, and the parties performance in accordance with their intentions.

The practical test of whether income is a gift is whether it was received gratuitously and in exchange for nothing.  Where the person transfering the money did not act from any sense of generosity, but rather to secure goods, services, or some other such benefit for himself or for another, there is no gift.

The intent of the person transferring the money is important in determining whether the amount received from the donor by the donee is a gift for tax purposes.  However, the characterization given to certain payment by either the defendant or the person making the payment is not conclusive.  Rather, you the members of the jury must make an objective inquiry as to whether a certain payment is a gift.  Among other things, you should consider the terms and substance of any request made by the defendant for the funds.  In determining whether the transfer of funds was a gift, you may also consider whether the recipient used any subterfuges, cooperative intermediaries, or devious means with respect to the transfer.  In addition, you may take into account the following factors:

1.   How the defendant made his living.

2.   Whether the person making the payment expects to receive anything in return for it.

3.   Whether the person making the payment felt he had a duty or obligation to make the payment.

4.   Whether the person making the payment did so out of fear or intimidation.

This is not a complete listing of all the factors you should consider.  You should take into account all the facts and circumstances of this case in determining whether any payment was a gift.

─────────────────────────

These rules with respect to payments which are asserted to have been gifts are applicable to all payments which are asserted to have been gifts, regardless of whether or not it is asserted that the payment was a gift to a minister or to a ministry.

The AGA is correct in that Springer did tell the jury that under the Court's instruction to the jury that Springer would have conducted the transactions both with the donor and with the United

States differently in regard to answering questions related to the conduct surrounding the specific items at issue in this case. Springer was not given the Court's definition by the Secretary of Treasury as of September 16, 2005 when Mr. Shern interviewed Springer  Mr. Shern never informed Springer of the Court's definition when he asked certain questions of Springer. This definition by the Court was not given to Springer on January 15, 2009 by the AGA.   This definition was not given to the grand jury ever.    This definition did not arrive into the trial until the Court offered it after several days of testimony.

Being able to write the law on meaning of gift, after the facts have come in at trial, is one of the greatest abuses Springer has ever seen in any trial. The only person in the Court room that could have possibly known of the meaning of gift the Court was to give was the Court itself. The Secretary of Treasury under his rule making power has never defined "gift" in the manner defined by the Court in Instruction # 19.  Springer was never given any notice by the Secretary that Congress meant by gift at section 102 what this Court said in Instruction # 19.

The Supreme Court in *Duberstein* said:

The exclusion of property acquired by gift from gross income under the federal income tax laws was made in the first income tax statute[fn4] passed under the authority of the Sixteenth Amendment, and has been a feature of the income tax statutes ever since. The meaning of the term "gift" as applied to particular transfers has always been a **matter of contention**.[fn5] Specific and illuminating legislative history on the point does not appear to exist. Analogies and inferences drawn from other revenue provisions, such as the estate and gift taxes, **are dubious**. See Lockard v. Commissioner, 166 F.2d 409. The meaning of the statutory term has been shaped largely by the decisional law.

*Duberstein*, 284

Springer argued pretrial to this Court and continues to argue that the "payments" should have been considered by the IRS as being dual payments, at most, with where the payment exceeded the

value of the service alleged to be the dividing line.  See *Hernandez v. CIR*, 490 U.S. 680, 689 (fn. 10)(1989)

The AGA argues the jury did not believe Springer that the payments were asserted at the time to Springer as gifts under Springer's understanding of gift.  Doc. 276 at 3.  Under the Court's definition of gift, had Springer been given notice by Congress or the Secretary that gift was defined in the manner this Court, on its own, defined it to the jury, Springer would not have believed himself. This is why the law cannot be allowed to be written by a Court after the facts come in.

The Court's instruction amounts to a violation of the due process and ex post facto clauses of the Constitution. "Although the Latin phrase 'ex post facto' literally encompasses any law passed 'after the fact,' it has long been recognized by this Court that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them." *Colder v. Bull*, 3 Dall. 386, 390-392, 1 L.Ed. 648 (1798); see also *Gilson v. Sirmons*, 520 F.3d 1196, 1227 (10th Cir. 2008)

"Technically, because he challenges judicial interpretations of a statute rather than the statute itself, Bailey raises a due process argument rather than one based directly on the Ex Post Facto Clause. *United States v. Capps,* 77 F.3d 350, 354 (10th Cir. 1996) ("Though the Ex Post Facto Clause serves to limit legislative power, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, can function like an ex post facto law, and violate the Due Process Clause."). See *United States v. Bailey*, 259 F.3d 1216, 1219 (10th Cir. 2001) This Court's instruction on gift construed "gift" in the context of a criminal case beyond narrowly to say the least of it.  Congress wrote a single section for the public and this Court wrote two plus pages basically telling the jury what was not a gift.  The Supreme Court said in *Duberstein* that "[D]ecision of the issue presented

Page -16-

in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case." at 289

There is simply no way the jury could have found that Springer was aware of the Court's definition of Gift.  The AGA presented no evidence that Springer was so aware because even the AGA was unaware of the Court's expansive definition of "gift." The United States Supreme Court held that "[t]he *sine qua non* of a charitable contribution is a transfer of money or property without adequate consideration." *United States v. American Bar Endowment,* 477 U.S. 105, 106 S.Ct. 2426, 2434, 91 L.Ed.2d 89 (1986). "If a taxpayer expects a substantial benefit in return for his payment, then the payment is not deductible." *Christiansen v. CIR.*, 843 F.2d 418, 420 (10th Cir. 1988)

No "taxpayer" testified they expected a "substantial benefit" for giving Springer money.  In fact, the only ones who testified expecting anything were people the AGA offered years of prison off their sentence or other payment incentives.  Patterson for instance, received 4 years off his sentence and testified he sued Springer for the return of $ 60,000 the AGA argued was not a gift. Patterson testified Springer did not do anything for the $ 60,000.[3]  Now how could the AGA argue Patterson expected a substantial benefit when Patterson testified he neither expected or received any benefit for the $ 60k.   In each instance the AGA established people gave Springer money and Springer is on a mission to get rid of the Internal Revenue Service.  If the test was "substantial benefit" in an "expectation" then the Court's instruction # 19 did not provide any such guidance.

_____

[3]As soon as Mr Hawkins got back to his prison he was released from prison almost 2 years early.  He testified his release date was 9.11.11.  He also testified before the jury he was aware of no negotiation or deal in exchange for his testimony.  We now know he was lying and had been in direct contact with Mr. Snoke and Mr. O'Reilly as early as 2007 expecting some deal.  See Exhibit 2, and 3.  The nature of Mr. Hawkins 35(b) is sealed and Springer will pursue that document post haste.

Judge Friot told Springer during one exchange where Springer specifically requested the jury be allowed to consider something less than the total amount of each "item" that the jury was only being allowed to consider an all or none theory.

"The test is not the economic character of what the payor receives but whether there is a specific, measurable quid pro quo for the donation in question." *Graham v. CIR*, 822 F.2d 844,849 (9thCir. 1987) "The course of decision here makes it plain that the statute does not use the term "gift" in the common-law sense, but in a more colloquial sense.*" Duberstein,* at 284

Instruction # 19 never mentions quid pro quo or even suggests the jury must find specifically what Springer was expected to specifically do for each dollar he received. Instruction # 18 defines "gross income" to mean "all income" from "compensation for services."  Doc. # 201 (Second Bill of Particulars) cites to regulation 26 CFR 1.61-1 et seq which includes 1.61-2.  As of 2000 forward, the phrase "Compensation for services" and states "(a) *In general.* (1) Wages, salaries, commissions paid salesmen, compensation for services on the basis of a percentage of profits...," The only other term missing from the phrase Compensation for services is "rendered."

**C.     Court directed jury to find liability in defiance to Duberstein and due process.**

Both jury instruction 25 and 27 direct the jury to find "substantial income tax owed by Springer" which places the jury that determined whether payments were a "gift" also in the position of deciding the tax consequences of those payments.   *Duberstein* warned against this and the prejudice could not be more substantial to Springer.  Which did they decide first? That Springer owed a substantial tax deficiency or each dollar of each "item" of each payment was "compensation for services?"  The AGA just shoved every item into one payment without presenting any evidence of any specific conduct other than Springer was to help their attorney or them.  What is the quid pro

quo?  Ms. Wiggins said Springer edited a couple of letters for her and for that she gave Springer

$35,000?  The AGA turned the United States District Court into an administrative agency tribunal.

If tax court was to have decided the facts involving each item they would have been required to

determine each transaction and the value each donor received for their gift.  That is not what has

been done in this case and in direct violation of *Duberstein* and Springer's rights to due process.

Both instruction # 18 and 19 violated both the ex post facto clause and due process involving

construction of a statute(s) construing "gift" in the criminal context beyond any notice given to the

public on the meaning of the term by Congress or the Secretary.

III.   VENUE HINGES UPON EXISTENCE OF INTERNAL REVENUE DISTRICTS AND
       DISTRICT DIRECTORS LOCATED IN THIS  JUDICIAL DISTRICT

The AGA cites to *United States v. Brewer*, 486 F. 2d 507, 509 (10th Cir. 1973) and to then

hide their erroneousness in a footnote.   They cite to "by statute, be filed in the place of legal

residence of the taxpayer or at a service center serving that district, 26 U.S.C. § 6091(b)(1)(A)(i) and

(ii)...."  Doc. 276 at 4 (fn. 1) The service center serving the internal revenue district not judicial.

The AGA argues Springer obsess about the lack of Internal Revenue Districts and goes on

Springer "simply refuses to acknowledge that 'in a criminal case, venue is appropriate in each district

in which an offense is committed."  Doc. 276, pg. 5   The AGA argues *United States v. Taylor*, 828

F. 2d 630, 633 (10th Cir. 1987) supports their erroneos argument.  Yet, just a single flip of the page

and everyone in the world finds:

> "The requirement concerning the place of filing of the individual income tax returns
> is provided in 26 U.S.C.A. § 6091(b)(1)(A) for persons other than corporations. It
> prescribes the place of filing as 'in the **internal revenue district** in which is located
> the legal residence or principal place of business of the person making the return. .
> . .' The **federal statute and regulations lay down the rule as a matter of federal
> law**..."

*U.S. v. Taylor*, 828 F.2d 630, **634** (10th Cir. 1987)

In *Johnston v. United States*, 351 U.S. 215, 220 (1956) the Supreme Court held that the general rule is:

> "where the crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime."..."The venue of trial is thereby predetermined, but those provisions do not furnish guidance for determination of the place of the crime. That place is determined **by the acts of the accused that violate a statute**. This requirement of venue states the public policy that fixes the situs of the trial in the vicinage of the crime <u>rather than the residence of the accused</u>. Cf. *United States v. Anderson*, 328 U.S. 699, 705. "A variation from that rule for convenience of the prosecution or the accused is not justified."  Id

IV.     JURY WAS TOTALLY CONFUSED BY COURT AND PROSECUTION ON FORM 1040 AND GOOD FAITH DEFENSE OF SPRINGER

There is no better evidence than the first two sentences on page 5 of the AGA's opposition. Doc. 276, pg. 5.  They argue first that Springer "continues to maintain a frivolous position that the Form 1040 fails to comply with the Paperwork Reduction Act."  Then in the very next sentence argue the Form's "compliance or noncompliance" "is irrelevant to the crimes of which Defendants were convicted."   The AGA furthers this erroneousness by saying "Nowhere does the Indictment allege that either Defendant willful failed to file a Form 1040." Doc. 276, pg 6.  So, the Court tells the jury the form 1040 did not violate the PRA, Springer is left to arguing in good faith he believed the form 1040 did not comply with the PRA, and the AGA is arguing that the form 1040 was not even a part of their theory.  This Court never  "correctly instructed the trial jury, 'the requirement to file a tax return is mandated by statute, not by regulation' and 'such explicit statutory requirements are not subject to the PRA.' *United States v. Dawes*, 951 F.2d 1189, 1191-92 (10th Cir.1991), quoted in *Springer v. United States*, 447 F.Supp.2d 1235, 1238 (N.D. Okla. 2006)."

This Court never told the jury the requirement to file was a mandate of any statute and never

told the jury the requirement was "not subject to the PRA."  In fact, the Court continued to tell the jury, with the AGA approval, that the form 1040 did not nor does not violate the Paperwork Reduction Act.  No requirement to file was instructed to the jury.   The confusion from this issue alone warrants a new trial.

## V.       JURY NOT PROPERLY DRAWN

Interestingly, when the bond conditions were amended Springer's travel was limited to Tulsa County and Creek County.   Springer is told to do "community service" and that must be within one or the other Counties.  Yet "community" in the Sixth Amendment, the AGA argues, is much broader than the county Springer lives in.  Even when the AGA argues erroneously where the requirement to file and pay are to occur as a matter of law they argue Springer lives in Kellyville Oklahoma.  The Sixth Amendment, like Article III, Section 2, Clause 3, applies in the State and district and by district mean subdivision of a State.  Neither Springer nor the founders surrendered the right to have a jury drawn according to the law of the State to the United States for its determination.  The AGA argues nothing to oppose Springer as there is nothing they could oppose with.  The jury could have and should have been drawn from Creek County and not some far County never visited by Springer.

## VI.      COUNT ONE CONSPIRACY INVOLVING SPRINGER'S INCOME

The AGA argues on page 6 that "Nowhere does the Indictment allege that either Defendant willful failed to file a Form 1040" and on page 8 states the "indictment's language referencing Defendant Stilley's failure to file Form 1040 clearly and unmistakably alleges conduct independent of Defendant's Springer's income."   If the AGA is confused then the Jury was confused.  The AGA is beyond confused. By what they wrote on page 6 and 8.

Count One should never have involved any of "Stilley's" "income" tax liabilities as the

manner and means clearly and continuously referenced Springer only involving the "lawful functions" of the district director that no longer exists.[4]  A new trial should be ordered preventing this confusion from entering into the jury at any time.

VII.    SPRINGER IS NOT A CHRONIC TAX CHEAT

The AGA never one time entered any evidence Springer owed any money to the Secretary of the Treasury by levy or otherwise for any year prior to 2000 nor could they.  No money was or is owed to the Secretary by Springer.  At issue in Counts Two, Three and Four, for years 2000, 2003 and 2005.  2000 was outside the statute of limitations and once proper weight is given to the absence of any quid prop quo for 2000 and 2003, there is no tax to have been cheated.  For 2005, that theory is utterly absurd regarding how a loan becomes gross income.  Most certainly there is no quid pro quo on the loan.  The AGA argued that Springer cheated on his taxes for 19 years and yet presented no evidence to even suggest that statement was supported by any evidence whatsoever.  A tax cheat for 19 years is different than someone who for one reason or another has not filed "tax returns." Exercising the public protection of the Paperwork Reduction Act of 1995 does not make Springer a tax cheat.  The AGA said nothing on page 9 or 10 that supports the attainder of "tax cheat."  Even the admission by the AGA they said "years 2000 through 2005" clearly misled and prejudiced Springer as 2002 and 2004 involved no allegation of any tax liability whatsoever.

VIII    STEPHEN P. FRIOT NOT AUTHORIZED BY LAW

There is nothing about Misc. # 23 that complies with Title 28, Section 292(b) and Springer means nothing.   There is no public interest identified, no temporary assignment, no identified

---

[4]Springer has filed Motions to Dismiss simultaneously herewith this Reply for lack of Article III subject matter jurisdiction, standing and failure to allege an offense.

vacancy, and certainly no consent by Springer.  The AGA does not dispute the de facto status of

Stephen P. Friot.  See *Silver v. United States Postal Service*, 951 F.2d 1033, 1036 n. 2 (9th Cir.

1991) (declining to apply de facto officer doctrine and questioning continued vitality of the doctrine

in collateral attacks)

IX      TOUHY REGULATIONS VIOLATE'S CONFRONTATION CLAUSE

It is simply amazing how regulations jump back into the AGA's argument when it fits their

desired result.  The Sixth Amendment provides that Springer is allowed to call witnesses in aid of

his defense.  There is no question at trial Brian Shern testified that he relied upon information he

gathered from Donna Meadors and Tim Arsenault.  It was not apparent to Springer of exactly the

constitutional dimension of their testimony until Ms. Patterson testified conferring that she had in

fact testified before a Grand Jury on October 6, 2004.  This testimony made suppression applicable.

The testimony of Donna Meadors would also have shown the jury that Springer never hid anything

from the district director or his purported designate when asked.

Springer also finds it interesting that the AGA cites to regulations at 26 CFR 301.9000.  In

any event, the Constitution's Sixth Amendment required Meadors, Arsenault, Horn and Nelson to

be confronted and the only reason they were not allowed to testify was because the Court found

Springer had not complied with Touhy.  The AGA has been doing everything they can to keep

Springer from examining those people Shern relied upon and that is simply a violation of due

process as well.

X.      CONCLUSION

Springer requests an order be issued for a new trial, finding that (1) Stephen P. Friot was not

authorized by law to be de jure in this case, Commission or otherwise; (2) the Internal Revenue

Service does not exist outside the District of Columbia without district directors and internal revenue districts, and no such place or office has existed encompassing the State of Oklahoma since 2000; (3) no United States Attorney existed during the prosecution of this case in violation of Title 28, Section 547 and due process; (4) no United States Attorney "office" exists as a matter of law; Thomas Scott Woodward is not appointed United States Attorney nor is his appointment pending; (5) the jury instruction on gift and income violated both sixth amendment, ex post facto and due process rights of Springer as the words therein were not written by Congress prior to the time those instructions were meant to apply, giving Springer no notice of same; (6) the law of venue relied upon in the Court's instruction was clear error, plain error, constitutional error, and an abuse of discretion; (7) the existence of internal revenue district and not judicial district is where "internal revenue laws" were to be administered and enforced; (8) no such internal revenue district encompassing this judicial district and the State of Oklahoma exists, as a matter of fact and law; (9) no district director exists encompassing this judicial district and the State of Oklahoma, as a matter of fact and law; (10) both Stephen P. Friot and the AGA confused the jury about the Form 1040's obligation to comply with the Paperwork Reduction Act of 1995 injecting confusion in Springer's Court allotted 45 minute good faith defense; (11) the jury was not properly drawn according to Title 28, Section 1861 and Article III, Section 2, Clause 3 and the Sixth Amendment (either was the grand jury); (12) the jury was confused in Count One about whose taxes were the subject of the alleged conspiracy agreement; (13) Springer should have been allowed to confront Donna Meadors, Tim Arsenault, Douglas Horn and Melody Nelson, before the jury on issues of fact that were involved in the grand jury allegations and witness testimony; (14) Touhy regulation requirement levied by Stephen P. Friot violates the Sixth Amendment confrontation clause, a right claimed by Springer.

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Reply Regarding

Motion for New Trial was ecf'd on January 21, 2010 to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature