IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                            Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants

MOTION STAY ALL ORDERS PENDING RULING FROM SUPREME COURT,
BRIEF IN SUPPORT AND FOR ALTERNATIVE

Lindsey Kent Springer ("Springer") moves the court to stay all of its orders, rulings and opinions pending ruling by the Supreme Court in 09-8701,  pursuant to F.R.A.P.8., or in the alternative relax the 40 hour requirement in its order dated November 17, 2009.

## Table of Contents

I.       BACK GROUND TO MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.      ISSUE RAISED IN 09-8701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.     TEST FOR STAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.    HARM TO SPRINGER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.     ESTABLISHMENT OF FOUR FACTORS IN SPRINGER'S FAVOR . . . . . . . . . . . . . 5

      (1) the likelihood of success on appeal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      (2) the threat of irreparable harm if the stay or injunction is not granted  . . . . . . . . . . . 13

      (3) the absence of harm to opposing parties if the stay or injunction is granted  . . . . . . 13

(4) any risk of harm to the public interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VII.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Table of Authority

Cases

*Clyma v. Sunoco*, 08-5153 (10th Feb. 3, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

*Continental Oil Co. v. Frontier Ref. Co.,* 338 F.2d 780, 781-82 (10th Cir. 1964) . . . . . . . . . . . 4

*Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . 4

*Faretta v. California*, 422 U.S. 806, 821, 832 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*F.T.C. v. Mainstream Marketing Services, Inc*., 345 F.3d 850, 852 (10th Cir. 2003) . . . . . . . . . 4

*Macklin v. City of New Orleans*, 293 F.2d 237, 240 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 7

*McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261 (1983) . . . . . . . . . . . . . . . . . . . . . . 12

*Nguyen v. United States*, 539 U.S. 69, 80 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ohlander v. Larson*, 114 F.3d 1531 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1246 (10th Cir. 2001) . . . . . . . . 4

*Rush v. United States* 256 F.2d 862, 864 (10th Cir. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Brewer*, 486 F.2d 507, 509 (10th Cir**.** 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Taylor*, 828 F.2d 630, 634 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*William Cramp & Sons* v. Curtiss, 228 U.S. 645, 650 (1913) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Statutes

Title 18, United States Code, Section 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Title 26, United States Code, Section 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, United States Code, Section 61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, United States Code, Section 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, United States Code, Section 63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, United States Code, Section 6011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, United States Code, Section 6012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, United States Code, Section 6071 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, United States Code, Section 6091 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, United States Code, Section 6151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, United States Code, Section 7203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 26, United States Code, Section 7621 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Title 28, United States Code, Section 116(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Title 28, United States Code,  Section 292(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Title 28, United States Code,  Section 292(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10,11

Regulations

26 CFR 1.1-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26 CFR 1.61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26 CFR 1.63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26 CFR 1.102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26 CFR 1.6011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26 CFR 1.6012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Misc.

Misc. # 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,4,9,10,11,12,15

Rules.

10th Cir. R. 8.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.       BRIEF IN SUPPORT OF MOTION

BACKGROUND TO MOTION

On March 31, 2009, Honorable United States Northern Oklahoma Judicial District Court Chief Judge Claire V.  Eagan ("Judge Eagan") hand picked Honorable United States Western Oklahoma Judicial District Court Judge Stephen P. Friot ("Judge Friot") in 09-cr-043.   Doc. 24.

On April 22, 2009, Judge Friot stated clarification of assignment was contained within Misc. # 23 offered by Charles A. O'Reilly ("O'Reilly")  and Kenneth P. Snoke ("Snoke") attorneys "prosecuting" under Title 28, United States Code, Section 547, Springer in 09-cr-043.

During Trial it was realized that a more than "speculative" reason for why Judge Eagan selected Judge Friot was because she was "disqualified" from being randomly selected after Honorable United States Northern, Eastern and Western Oklahoma Judicial District Court Judge James H. Payne disqualified himself for an undisclosed "conflict."   Doc. 9

On October 21, 2009, 5 days prior to trial and while O'Reilly and Snoke were intentionally plaguing Springer's pretrial time with a deposition to be taken in California 10 days before trial, and during a pretrial conference, O'Reilly tendered to Springer the "grand jury" transcript of Judith Patterson from October 6, 2004.

During trial it was learned that Judith Patterson had not met with Douglas Horn ("Horn"), Melody Nelson ("Nelson"), IRS and FBI Agents, prior to her meeting with Judge Eagan in early September, 2004, before which Judge Eagan had granted a Rule 35(b) Motion filed by Horn and Nelson seeking a  14 month departure for Judith Patterson in exchange for the substantial assistance Judith Patterson previously gave to Horn, Nelson, IRS and FBI.  Doc. 75-23. See Order, Doc. 270-4.

On November 20, 2009, O'Reilly and Snoke offered even more encouragement to Springer's

-1-

confidence in the system as they pointed out that the reason why they did not turn over Judith Patterson's testimony when they were ordered to do so by Judge Friot was they had discovered Judith Patterson testified on October 6, 2004, during a "witness" interview on October 6, 2009, even though Judith Patterson was not a witness of O'Reilly and Snoke.[1] Doc. 252, pg. 2, fn. 2 They both explained they found her testimony but the Grand Jury log book was left "blank."[2]

Springer first moved for a Writ of Mandamus to the Tenth Circuit on November 27, 2009. See 09-5165 (10th.)

On December 4, 2009, a panel of three judges in an unsigned order dismissed Springer's Petition for Writ of Mandamus.[3]

On December 9, 2009, after Springer filed time sensitive pleadings in 09-cr-043, Judge Friot struck those documents for violating a Northern District local civil rule. Doc. 264

On December 14, 2009, Springer moved to reconsider the striking order of December 9, 2009. Doc. 267-268

---

[1]If she was then there is even more testimony and memorandums they have wantonly not turned over to Springer.

[2]Imagine what type of confidence the public has in knowing a Grand Jury overseen by Judge Eagan on October 6, 2004, where names are left "blank" about a witness Judge Eagan reduced the sentence by 14 months based upon purported substantial assistance Judith Patterson gave that she testified never happened and prior to her being swept out of prison and taken directly to Judge Eagan's Court Room (while a stay motion was pending before Judge Eagan no doubt), knowing Judge Eagan in 2006 was assigned and did not recuse in 06-cv-110, apparently was assigned to the disbarment proceedings of Oscar Stilley as this Court noted in its order of January 28, 2010, that Judge Eagan selected Judge Friot overriding random selection in the Northern District Rules previously agreed to by all Northern District Judges, and who hand picked stand by counsel for both Springer and Stilley.

[3]Sure is instilling much confidence in the system when out of three judges not a single one wishes to sign his or her name to it!

-2-

On December 28, 2009, Springer submitted a notarized affidavit under Title 28, United States Code, Section 144 for bias and prejudice of Judge Friot based in large part on Judge Eagan's disqualification which led to Judge Friot's assignment by Judge Eagan.  Doc. 270

On December 28, 2009, Springer also moved for Judge Friot to recuse himself after informing himself of the reasons he was previously aware of that disqualified him from presiding that were not, and still not directly, made known to Springer.

While the Affidavit and Motion were pending, Judge Friot continued to issue orders in 09-cr-043.  Doc. 278, 289, 290 and 291 in violation of Title 28, United States Code, Section 144.

On January 25, 2010, the Supreme Court of the United States docketed Springer's Petition for Writ of Mandamus assigning case # 09-8701.  Exhibit 1.

On January 28, 2010, Judge Friot issued a omnibus order addressing several issues pending before the court in what would appear to be the greatest abuse of discretion thus far occurring in 09-cr-043.

II.     ISSUES RAISED IN 09-8701

Springer's Petition in 09-8701 raises several issues related to the designation and assignment of Judge Friot. These issues are:

I.      Has Chief Circuit Judge in Misc. # 23 and the Panel in 09-5165,  so far departed from Title 28, United States Code, Section 292(b), including the sanctioning of such departure by a lower district court, calling for an exercise of this Court's supervisory power pursuant to S.Ct. Rule 10(a) to render such exercise clear abuse of such limited power extended by Section 292(b)?

A.      Does Title 28, United States Code, Section 292(b) authorize a Chief Judge of a circuit, to designate United States' Judicial District Court Judges commissioned in one "Oklahoma" judicial district, to 1 year terms in the other two "Oklahoma" judicial districts on a renewable yearly basis for no reason?

    B.    What is the limitation on the meaning of the term "temporarily" and phrase "public interest" in Title 28, United States Code, Section 292(b)?

    C.    Does Misc. # 23 qualify as a lawful and legal  Article III designation pursuant to Title 28, Section 292(b) of Stephen P. Friot to 09-cr-043?

    D.    Should all orders entered by Stephen P. Friot in 09-cr-043 outside Stephen P. Friot's Western Judicial District Court commission be rendered coram non judice and invalid?

II.    When the Secretary abolishes "internal revenue districts," by calender year 2000 encompassing the State of Oklahoma, what original, territorial, and subject matter jurisdiction does a District Court Judge have over alleged "internal revenue law" offenses pursuant to Title 18, United States Code, Section 3231?

III.    Is a United States Judicial District under Title 28, United States Code, Section 116(a) a valid substitute for an "internal revenue district" required for administration and enforcement of the "internal revenue laws" pursuant to Title 26, United States Code, Section 7621 in the State of Oklahoma?

III.    TEST FOR STAY

    A request for a stay is governed by Federal Rules of Appellate Procedure 8. To obtain a stay under these rules, Springer must address the following factors: "(1) the likelihood of success on appeal; (2) the threat of irreparable harm if the stay or injunction is not granted; (3) the absence of harm to opposing parties if the stay or injunction is granted; and (4) any risk of harm to the public interest. *Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001); 10th Cir. R. 8.1." *F.T.C. v. Mainstream Marketing Services, Inc*., 345 F.3d 850, 852 (10th Cir. 2003)

    With respect to the four stay factors, "where the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is somewhat relaxed. *Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1246 (10th Cir. 2001); *Continental Oil Co. v. Frontier Ref. Co.,* 338 F.2d 780, 781-82 (10th Cir. 1964). "Under those circumstances, probability of success is demonstrated when the petitioner seeking the stay has raised 'questions going to the merits so serious, substantial, difficult, and doubtful as to make the issue ripe

for litigation and deserving of more deliberate investigation.' *Prairie Band*, 253 F.3d at 1246-47

(internal quotations omitted)." *F.T.C.* at 853

IV.    THE HARM TO SPRINGER

Springer seeks a stay of the Court's orders due to the difficulty Springer has in balancing his

need to comply with release pending sentencing and his need to protect and represent himself in 09-

cr-043 and the other cases Springer is required to prosecute or defend.

As Springer has been made fully aware by Judge Friot of Judge Friot's awareness during

pretrial on October 21, 2009, Springer has pending many different litigations; between Springer and

11 Bivens Defendants, 06-156 (N.D.Ok) on interlocutory appeal, 09-5088; between Springer and the

United States of America in 08-278[4] (N.D.Ok); between Springer and the Richardson Law Firm in

the State Supreme Court 106,227;  Springer v. Commissioner, 3781-09L; Springer v. CIR, on appeal

to the Supreme Court of the United States, 09-8858 (appeal 10th order 8.31.09)

Besides the post trial issues Springer was required to raise in 09-cr-043 or he would quickly

be seen by Judge Friot to have acted untimely in raising same, Springer is also needing to focus his

attention to some degree on preparing for the April 21, 2010 sentencing even though it may not

actually take place depending on what the Supreme Court does with Springer's Petition for Writ of

Mandamus.

Springer was ordered by the Supreme Court to serve all interested parties in 09-8701 to

---

[4]Four days after trial in this case and while Springer was continuing to raise money so he
can defend himself, O'Reilly and Snoke issued a knowingly unlawful levy levying Springer's
wife's checking account and Springer's paypal account to which Springer was using to pay for
trial transcripts he had ordered for mounting his post trial attacks upon the jury verdict.   This
caused Springer to spend much time in both 08-278 and in tax court preparing pleadings to stop
O'Reilly and Snoke from blatantly and erroneously directing people to sign their name on behalf
of the Secretary of Treasury when they were not delegated with the power to do so.

which he has done.  Just having to file this motion demonstrates the time required for Springer to defend himself under the conditions Springer is in based upon Judge Friot's orders.

Presently Springer has three objections, two replies, another Writ of Mandamus to the Tenth Circuit on Judge Friot's order of January 28, 2010, regarding disqualification and the affect Judge Eagan's disqualification has on her hand picking Judge Friot, as well as other issues subject to mandamus review by the Tenth Circuit Court of first impression.[5]  Springer needs to file a motion in 09-5088 involving the claims regarding the Solicitor General that if they are not made by Springer it is apparent to Springer, like Judge Friot, if an argument can be made they are not made timely, the issues may go not addressed on their merits.

On February 3, 2010, the Tenth Circuit in *Clyma v. Sunoco*, 08-5153,[6] published that "a writ

---

[5]For instance, on January 28, 2010, Judge Friot held two months after trial that the obligation to file a tax return was a "mandate of statute, not by regulation" and "such explicit statutory requirements are not subject to the PRA." Doc. 293, pg. 6.  Prior to trial Judge Friot ordered and accepted two bill of particulars from O'Reilly and Snoke.  The First listed United States Code Sections 1, 61, 63, 6011, 6012, 6071, 6091, 6151 and 7203 as the meaning of "required by law." Doc. 104  Springer doubts anyone will argue there is any difference between "explicit statutory requirements" and "required by law."  In the second bill of particulars O'Reilly and Snoke listed regulations under 26 CFR 1.1-1, 1.61, 1.63, 1.102, 1.6011, 1.6012. Doc. 201 These were identified after Judge Friot ordered them to identify "substantive" regulations meant within their trial brief. Doc. 192 On May 29, 2009, O'Reilly specifically cited to 26 C.F.R. 1.6091-2 as the Secretary of the Treasury authority to mandate where people such as Springer were allegedly required to provide information on Form 1040 to the Commissioner of Internal Revenue.  Doc. 71, pg. 5.  At the conclusion of O'Reilly and Snoke's Second Bill of Particulars they add "However, as stated above, the United States did not rely upon any regulations specifying events triggering an obligation for the Defendants to file tax returns."  Specifying events triggering an obligation to file clearly could not satisfy due process unless the regulations cited by O'Reilly and Snoke were interpretive regulations.   Section 102, 6011, 6012, 6091 and 7203 need substantive regulations to mean anything.

[6]"By simply denying the application in a minute order without any substantive explanation, we cannot say the district court exercised any meaningful discretion. And we have long held that a court's failure to exercise meaningful discretion constitutes an abuse of discretion. For example, in *Ohlander v. Larson*, 114 F.3d 1531 (10th Cir. 1997), we recognized a

of mandamus is used only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Id. at 1186 (internal quotations omitted).Page 8.[7]

"Therefore, we will grant a writ only when the district court has acted wholly without jurisdiction or so clearly abused its discretion as to constitute a usurpation of power." Id. (internal quotations omitted). In determining whether to issue a writ, we have identified five "'nonconclusive guidelines'" under which we ask whether (1) the petitioner has alternative means to secure relief; (2) the petitioner will be damaged in a way not correctable on appeal; (3) the district court's order constitutes an abuse of discretion; (4) the district court's order represents an oft-repeated error and manifest, persistent disregard of applicable law; and (5) the district court's order raises new and important problems of law or issues of first impression. Id. at 1187 *Clyma*, supra

Springer is mindful of the "mischief" this Court identifies in its January 28, 2010 Order as the reason for its conditions of release.  The evidence is clear and convincing that none of the alleged conduct involving the public at issue during the trial has occurred or was occurring at the time of the Grand Jury indictment.  In fact, the last transaction alleged with Stilley involved the remaining

---

"clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based." Id. at 1537." Page 8-9    This case would show that each minute order entered resolving Motions to Dismiss are considered an abuse of discretion by the Tenth Circuit.

   In doc. 269, pg. 2 O'Reilly and Snoke argue: "However, the United States found a relevant Fifth Circuit opinion holding that the appellate court will 'review the district court's administrative handling of a case, including its enforcement of the local rules and its own scheduling orders for abuse of discretion.' *Macklin v. City of New Orleans*, 293 F.2d 237, 240 (5th Cir. 2002)" Like just about everything else they have been willing to say, even that appears wrong.

   [7]Springer attaches the order of the Tenth Circuit in that it is so recent as Exhibit 2.

money of the Turner Loan being distributed to Springer in May, 2006.

This leaves 42 months of no "mischief" for the Court to be concerned about.[8]

V.      ESTABLISHMENT OF FOUR FACTORS IN SPRINGER'S FAVOR

The risk of harm is to Springer being prohibited from representing himself and vigorously

pursuing that end. "An accused has a Sixth Amendment right to waive his right to counsel and

conduct his own defense in a criminal case." *Faretta v. California*, 422 U.S. 806, 821, 832 (1975);

*United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir. 1991), cert. denied, 502 U.S. 1106 (1992).

Thus far Springer has been able to some extent to do just that.[9]

While Judge Friot was prohibited from "proceeding further" under Title 28, United States

Code, Section 144, he issues two sentencing orders and an order denying certain relief involving

transcripts at government expense.  Judge Friot also issues the January 28, 2010 Order that Springer

is pursuing to the Tenth Circuit as that order equally violates Title 28, United States Code, Section

144 and recusal clearly was warranted from the beginning under Title 28, United States Code,

---

[8]Springer admits this Court has not defined the mischief it intends to control by its conditions of release.  Springer has been under the direct supervision of employees of this Court since March, 2009, and knows of no complaint made regarding any "mischief."

[9]To some extent, Springer means that stand by counsel has informed Springer that he has met with Judge Friot on more than one occasion and that Judge Friot has directed stand by to certain communications, or pressed same, to Springer.  Standby recently informed Springer Judge Friot has decided to conduct sentencing under Western District rules instead of Northern District rules.  Springer is at somewhat of a disadvantage when Judge Friot communicates with stand by counsel issues that affect Springer personally without Springer being allowed to hear each word uttered by Judge Friot to determine Springer's course of action.  Springer just having to determine whether he has some rights being construed by Judge Friot as being waived or not exercised timely because of the two judicial district competition is just further evidence the impact Judge Friot's orders are having upon Springer in this case alone.  Springer cannot find a single case where the multiple district confusion at issue in this case has ever even been addressed by any attorney let alone offering some road map as to how to address the issue adequately.

Section 455 to Springer.

Springer has already had to acquire the assistance of an attorney in 09-5165 and with O'Reilly and Snoke directing levies on Springer, with no delegation or other lawful authority, these actions place the status quo right of Springer to represent himself adequately in jeopardy. The levies also impacted Springer's ability to obtain transcripts as Springer needed for post trial issues.

(1) the likelihood of success on appeal

There are three central issues Springer raises in his Petition for Writ of Mandamus in 09-8701. Springer directly attacks Misc. # 23 as being unreliable for any designation as the unsigning panel stated on December 4, 2009. The Panel did not find Judge Friot was "assigned" by Chief Judge Henry nor could they. Judge Friot on Jan. 28, 2010, found he was assigned by Judge Eagan.

The Supreme Court has never been asked to address the limits of Title 28, United States Code, Section 292(b). They have been asked once to address section 292(a) and the issues in that case were raised for the first time on Writ of Certiorari to the Supreme Court. See *Nguyen v. United States*, 539 U.S. 69, 80 (2003)("But [to ignore the violation of the designation statute in these cases would incorrectly suggest that some action (or inaction) on petitioners' part could [create] authority Congress has quite carefully withheld.]")   Even if the parties had expressly stipulated to the participation of a non-Article III judge in the consideration of their appeals, no matter how distinguished and well qualified the judge might be, such a stipulation would not have cured the plain defect in the composition of the panel. See *William Cramp & Sons* v. Curtiss, 228 U.S. 645, 650 (1913). *Nguyen v. United States*, 539 U.S.at 81

The issues raised regarding Misc. # 23 are not like those in Nguyen which the Supreme Court

-9-

noted were "an isolated, one time mistake."[10]   Id. fn. 12 As Springer shows in his Petition to the Supreme Court of which Judge Friot has been served, Judge Friot has been outside his judicial district as early as in 2005.   Had Springer known what Judge Friot wrote on January 28, 2010 about why Judge Eagan picked him Springer would have moved for recusal immediately on the bias of Judge Eagan over Oscar Stilley.[11]

There is no person except the Supreme Court that can address whether Chief Judge Henry exceeded his statutory authority in issuing Misc. # 23.   Congress only placed the authority to "designate and assign" in the Chief Judge of a circuit.   Considering the problem obviously has existed for some time, and the public is just now learning about it, it is likely the Supreme Court will grant the relief Springer seeks.

   A.   Does Title 28, United States Code, Section 292(b) authorize a Chief Judge of a circuit, to designate United States' Judicial District Court Judges commissioned in one "Oklahoma" judicial district, to 1 year terms in the other two "Oklahoma" judicial districts on a renewable yearly basis for no reason?

Springer claims it is more than likely the Supreme Court will answer this question No Congress nor section 292(b) intend to accomplish what Judge Friot and obviously Judge Eagan believe Misc. # 23 purportedly allowed in 09-cr-043.

   B.   What is the limitation on the meaning of the term "temporarily" and phrase "public interest" in Title 28, United States Code, Section 292(b)?

_____

[10]Think it, the Supreme Court corrected the one time mistake without ever saying Nguyen was untimely.   The test was collateral and Springer is not at any collateral attack point in this case.

[11]Judge Eagan should have recused in Stilley's disbarment proceedings and obviously she chose not to do that.   Stilley most certainly would have moved to recuse Judge Eagan had Stilley been aware of her involvement in the Patterson's sealed deals as Judge Eagan would have clearly been biased against Stilley's representation of the Pattersons notwithstanding any other.

Springer claims that Misc' # 23 is a demonstration of construing section 292(b) without limitation.  The assignment must be temporary and for the public interest and includes a "designation and assignment" requirement.  Any other reading of section 292(b) is simply lawlessness.

Springer would add that having Chief Judge Henry be commanded to act under section 292(b) and then to interpret 292(b) to authorize Misc. # 23 shows the violation of separation of powers doctrine in need of being enforced.  The Supreme Court will answer this question by outlining the limitations.

C.  Does Misc. # 23 qualify as a lawful and legal  Article III designation pursuant to Title 28, Section 292(b) of Stephen P. Friot to 09-cr-043?

Springer claims Stephen P. Friot is not lawfully and legally designated and assigned to 09-cr-043.  In his January 28, 2010 Order, Judge Friot offers a limited view of how he believes his purported designation in Misc. # 23 and assignment by Judge Eagan authorizes him to act in 09-cr-043.  Although Judge Friot gives some insight he stops far short of addressing specifically section 292(b) and the limitations accompanying the congressional command.  Judge Friot addressing Judge Eagan's disqualification supported Springer's claim of disqualification and did absolutely nothing to displace Springer's claims.  The Supreme Court will answer this question No!

D.  Should all orders entered by Stephen P. Friot in 09-cr-043 outside Stephen P. Friot's Western Judicial District Court commission be rendered coram non judice and invalid?

This is a status quo question that is at the heart of Springer's latest push to the Supreme Court.  If the appearance of bias is enough for recusal then recusal should have occurred by Judge Friot whether Springer was capable of speculating or not.  Judge Friot shows in his January 28, 2010 order that he was aware Judge Eagan was disqualified when Judge Eagan hand picked Judge Friot.

-11-

This alone was enough for Judge Friot to recuse himself.

Springer cited to a case from the Fifth Circuit which Judge Friot quoted in his order of January 28, 2010, and then Judge Friot attempted to distinguish the Fifth Circuit's holding:

> Third, Mr. Springer's argument that Chief Judge Eagan should not have assigned a judge to this case depends on language from a Fifth Circuit case, McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1261 (1983). McCuin reasons that to permit a disqualified chief judge to select the judge who will handle a case in which the chief judge is disabled would violate the congressional command that the disqualified judge be removed from all participation in the case, and that it might create suspicion that the disqualified judge will select a successor whose views are consonant with his. *Id*. at 1261. No similar language from a Tenth Circuit case has been cited by the defendants. Regardless, McCuin is **distinguishable**. In McCuin, the chief judge was disqualified because that judge's brother-in-law had been employed as local counsel for the defendant and the court noted that the brother-in-law, as a result of this fact, had a substantial interest in the outcome of the case. *Id.* at 1260. By contrast, here there are no personal disqualification facts similar to the type of disqualification facts described in McCuin. **This is an important distinction**. In transferring this case to an out-of-district judge, Chief Judge Eagan cannot conceivably be said to have been acting for the purpose of protecting some personal interest, or for that matter, any interest other than her judicial interest in carrying out her duties as the Chief Judge of the Northern District.

Whether the facts underlying the disqualification were different does not remove the fact that "the chief judge is disabled" and that such disability "would violate the congressional command that the disqualified judge be removed from all participation in the case, and that it might create suspicion that the disqualified judge will select a successor whose views are consonant with his."  Hiding disqualification behind Misc. # 23 proves Springer's claims here.

What is important here is that Judge Friot admits Judge Eagan transferred 09-cr-043 to him personally.  What possible reasons "might create suspicion" is the test for if direct evidence would be required then Springer would need take the deposition of both Judge Friot and Judge Eagan (and

possibly others including Henry.)[12] Judge Friot's explanation demonstrates no party could ever object

without placing at risk the bias and prejudice imbedded in the selection process by Judge Eagan.

Springer cannot possibly maintain representing himself on these issues if Springer is to

expend 40 hours per week away from representing himself under Judge Friot's Nov. 17, 2009 Order.[13]

The Court's order regarding sentencing raises tremendous issues Springer needs attending

to on top of Springer maintaining his rights he intends to protect in this and all cases cited above.

(2) the threat of irreparable harm if the stay or injunction is not granted;

The only threat to Springer is if the stay is not granted.   Springer has pending cases that

involve important issues pending long before 09-cr-043.  It is shocking to Springer his Government

would actually do to one citizen what the government has actually sought from Springer.  Having

said that, Springer must be allowed to continue the status quo of maintaining his rights in each case

cited above.  For instance, Springer did not invite the Levy of November 20, 2009, brought at the

direction of O'Reilly and Snoke, but Springer's rights are impacted based upon that erroneous

tactical move.

(3) the absence of harm to opposing parties if the stay or injunction is granted

---

[12]What Judge Friot's position suggests is that Springer must sue all Judges involved and
through discovery prove the disqualifications and recusal were warranted.  This is the type of
absurd result Congress did not intend under section 292(b), taken with section 144 and 455.  It is
beyond straining or credible to suggest there was a need for an out of district judge but that
section 144 and 455 played no role in that need.

[13]Springer was notified on February 4, 2010 his volunteer community service at Habitat
for Humanity will not include the time to drive from Kellyville to Tulsa and back.   Springer is
not in control of rules and procedures of the Courts in the various cases identified above.
Springer and Randall Drew were both in agreement and the need for the relief sought in this
motion never became needed.  For reasons withheld from Springer Mr. Drew no longer reports to
Mr. Drew.   Because of the stringent requirement Judge Friot is holding to Springer on all timely
issues, as made apparent by the order of January 28, 2010, Springer seeks this stay.

There is no harm to the public if this Court's orders are stayed pending resolution by the Supreme Court of the issues in 09-8701. There is equally no harm to O'Reilly and Snoke. They are not even United States Attorneys. They certainly had no identifiable authority to prosecute the trial. Judge Friot cites to no such authority in his Order of January 28, 2010. Springer knows of no such authority to be cited.

In any event, there is no harm to any party in this Court staying its orders pending the outcome by the Supreme Court in 09-8701.[14]

(4) any risk of harm to the public interest

Springer agrees that the public's interest is in seeing justice performed but also that the justice performed was performed by a disinterested Judge who lawfully presided at trial. There is no way the public would be able to find, knowing what Judge Eagan and Judge Friot know, that Judge Eagan was not disqualified from choosing anyone in 09-cr-043. It is beyond doubt, what limited information Springer has, that the public would suspect bias or prejudice of Judge Eagan or that bias and prejudice would follow, where her selection and continued participation were to go.

The way in which Judge Friot appeared on the docket and the manner in which Judge Eagan selected him sufficiently shows that the harm to the public is if orders by Judge Friot are allowed to continue pending the outcome in 09-8701.[15]

The public has an interest in knowing that Chief Judge Henry conducted his limited

---

[14]Springer makes this Motion so that he can pursue stay in the Tenth Circuit and then Supreme Court if he is unsuccessful. Such requirement will even take more time.

[15]Springer is filing a Petition to the Tenth Circuit on the order of January 28, 2010 seeking mandamus review therein. Springer obviously is spending every waking second in his self representative defense of which the Constitution provides him with the right to do.

legislative authority under section 292(b) in a manner that does not exceed the intent of Congress. Judges should be held to an even higher standard when statutes interpreting their conduct are at issue. In this case, in order for Misc. # 23 to be sustained, the standard of Chief Judges of Circuits would need be lowered so far that it would become difficult to determine the difference between the power to act under Article III in a judicial capacity and that of a legislative command.[16]

This is not a case where no other alternative existed. This case was accomplished by Judge Eagan wishing to make no record of why she was disqualified because that disqualification would have led to her need to recuse in 06-cv-110[17] and equally Stilley's disbarment proceedings.

The public had a greater interest in Judge Eagan disqualifying herself in 09-cr-043 based upon Judge Eagan's involvement in 03-cr-55 and the Patterson deals for major sentence reduction[18] and then allowing the law to be complied with in all respects instead of circumventing the law and turning to Misc. # 23 to escape the command of Congress.[19]

---

[16]Chief Judge Henry had no authority to delegate his power under Title 28, United States Code, Section 292(b) to Judge Eagan and neither Judge Friot or O'Reilly and Snoke cite to any.

[17]What tends to exasperate the need to disqualify even more is that Springer appealed 06-cv-110 and the Tenth Circuit did not accept Judge Eagan's erroneous characterization of the holding in *Dawes v. United States*, the very case Judge Friot on January 28, 2010 cited to for his new found statutory mandate theory the record in this case clearly did not support. Judge Friot, and obviously Judge Eagan, now wish Springer to have to appeal that decision a second time to the Tenth Circuit. Something the public would have had an interest in Springer not being required to do and to which Springer paid $ 8,000 to the public to rely upon the Tenth Circuit's order.

[18]Judge Eagan hired Steven Knorr on June 30, 2009 to represent Eddy and Judith Patterson at Springer's purported Frank's Hearing. What ever her reason was for that move alone would show she would be conflicted in 09-cr-043.

[19]Springer doubts either Judge Kern or Judge Frizzell would have raised disqualification as Springer has had them in less cases than Judge Friot.

The last two issues in 09-8701 are of equal force and O'Reilly and Snoke's opposition at doc. 292 would never satisfy anyone's test of what opposition would override Springer's claims.

Springer raises:

II.     When the Secretary abolishes "internal revenue districts," by calender year 2000 encompassing the State of Oklahoma, what original, territorial, and subject matter jurisdiction does a District Court Judge have over alleged "internal revenue law" offenses pursuant to Title 18, United States Code, Section 3231?

III.    Is a United States Judicial District under Title 28, United States Code, Section 116(a) a valid substitute for an "internal revenue district" required for administration and enforcement of the "internal revenue laws" pursuant to Title 26, United States Code, Section 7621 in the State of Oklahoma?

To both Judge Friot remains silent in the January 28, 2010 Order and simply refers to the issues as those already addressed by Judge Friot.  If Judge Friot has addressed these issues, other than with silence, Springer was not served with any such order.

True at trial Judge Friot offered a Jury instruction on venue but neither from the bench or in any written order did he one time explain how he arrived at his conclusions of law.

No one disputes the internal revenue districts no longer exist as a matter of law.  See Doc. 71, pg. 4.  Snoke's opposition on January 27, 2010 gives not a hint of how the United States intends to argue in opposition to Springer's claims.  In fact, Snoke asking Judge Friot to tell him what Judge Friot wishes Snoke address is beyond alarming.  It demonstrates the interrelationship between Judge Friot and Snoke that has not been shared equally between Judge Friot and Springer.[20]

---

[20]Imagine if the rule of law stood for the notion that a party representing himself was to be held to the same standard as any attorney in representing himself.  Next, imagine if Springer filed a motion and said "Hey, Judge Friot, tell me what you are thinking and I will file what ever it is you will grant"[?] That is exactly what Snoke did in doc. 292 although in opposition.  This is not the first time Snoke has made this suggestion to Judge Friot.

There is no question Springer will prevail on the impact no internal revenue district or district director in Oklahoma has upon the jurisdiction of a Court in the Northern Oklahoma Judicial District regarding "internal revenue laws."  The cases are so overwhelming in Springer's favor neither Snoke or O'Reilly can address them head on.

Equally, there is no doubt Judge Friot, nor any other Person, has any legislative authority to expand a Court's limited jurisdiction by replacing the phrase in any statute "internal revenue district" with "judicial district."   Snoke and O'Reilly's citation to *United States v. Brewer* 486 F.2d 507, 509 (10th Cir. 1973) and *United States v. Taylor*, 828 F.2d 630, 634 (10th Cir. 1987) only show the contempt they have for the Tenth Circuit's decision in *Rush v. United States* 256 F.2d 862, 864 (10th Cir. 1958).[21]  In Rush, the Tenth Circuit clearly and undeniably held that internal revenue district and judicial district "do not coincide."

To suggest otherwise when a citizen's liberty is being sought requires with equal force sanctions against the attorneys making such argument.

CONCLUSION

Springer respectfully requests an Order staying all orders by Judge Friot be entered in 09-cr-043 pending resolution of 09-8701 docketed January 25, 2010 so Springer can properly defend himself and the status quo of the cases cited above.

_____

[21]Both Taylor and Brewer mean "internal revenue district" and not "judicial district." The failure to address the impact of 26 CFR 601.101 or the lack of any delegation of authority from the Secretary of Treasury by Snoke and O'Reilly will soon be before the Supreme Court and they can explain to whoever their justification for making no response as they did in doc. 292 to Springer's challenges to Article case or controversy, standing and subject matter jurisdiction.

-17-

Alternatively,[22] an order relaxing the now 40 hour time period so Springer could manage properly each of the cases cited above, including 09-cr-043, depending on how that order is written, may relieve the need for the stay in all other respects.[23]

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

---

[22]Springer commends the efforts of Matthew Kehoe and nothing in this Motion should be construed as to take issue with anything either he or his supervisor has done.

[23]Springer has been requested to work closely with stand by counsel on sentencing issues. Springer is at a loss how anyone can represent themselves in just one case while being required to first deposit 40 hours of awake time to issues other than Springer's defense.

-18-

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Motion for Stay

pending outcome of Supreme Court in 09-8701 was ecf'd on February 8, 2010 to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature