FILED
United States Court of Appeals
Tenth Circuit

February 3, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

―――――――――――――――――――

SAM CLYMA, an individual,

     Plaintiff-Appellee,

v.                                                                No. 08-5153

SUNOCO, INC., a Pennsylvania
Corporation,

     Defendant-Appellee.

--------------------------------------

OKLAHOMA EMPLOYMENT
LAWYERS ASSOCIATION,

     Movant-Appellant.

--------------------------------------

JAMES B. LEBECK; JOHN D.W.
PARTRIDGE,

     Amici Curiae.

―――――――――――――――――――

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 03-CV-809-TCK-PJC)**

―――――――――――――――――――

Mark Hammons of Hammons, Gowens & Associates, Oklahoma City, Oklahoma, for Movant-Appellant.

James B. Lebeck of Vinson & Elkins LLP, Houston, Texas, and John D.W. Partridge of Gibson Dunn & Crutcher LLP, Denver, Colorado, as Court-Appointed Amici Curiae.

―――――――――――――――――――

Before **HOLMES**, **BALDOCK**, and, **SILER**,[*] Circuit Judges.[**]

_____

**BALDOCK**, Circuit Judge.

_____

A civil jury rendered a verdict for Plaintiff Clyma and against Defendant Sunoco in the employment discrimination dispute underlying this matter. With cross-appeals pending in this Court, Movant Oklahoma Employment Lawyers Association (OELA) submitted to the district court an "Application for Permission to Interview Jurors for Instructional Purposes" pursuant to N.D. Okla. L.R. 47.2.[1] OELA is a group of plaintiffs' employment lawyers providing continuing legal education to employment law litigators. OELA sought leave to contact the jurors "for the purpose of providing educational information to members of the bar regarding jury dynamics in employment law cases." In support of its request, OELA asserted a First Amendment right to juror access. The district court denied OELA's application in a minute order, and OELA sought review by way of direct appeal

_____

[*] The Honorable Eugene E. Siler, United States Court of Appeals for the Sixth Circuit, sitting by designation.

[**] After examining the briefs and appellate record, this panel has determined unanimously to grant the Movant's request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is therefore ordered submitted without oral argument.

[1] Local Rule 47.2 provides: "At no time, including after a case has been completed, may attorneys approach or speak to jurors regarding the case unless authorized by the Court, upon written motion." OELA assumes the applicability of Rule 47.2 to the facts of this case.

2

under 28 U.S.C. § 1291.  Clyma and Sunoco subsequently settled their differences and filed a stipulation to dismiss their appeals.  We entered an order dismissing those appeals without delay.

## I.

At the outset, we examine our appellate jurisdiction in terms of both OELA's standing, and more generally, its direct appeal.[2]  OELA's attempt to directly appeal the district court's order raises a jurisdictional flag because, absent circumstances not present here, a non-party to a district court proceeding such as OELA may not directly appeal an adverse ruling.  Such a ruling, however, *may* be reviewable by way of mandamus as our decision in Journal Publishing Co. v. Mechem, 801 F.2d 1233 (10th Cir. 1986), well illustrates.  In Mechem, a publisher petitioned us pursuant to the All Writs Act, 28 U.S.C. § 1651(a), for a writ of mandamus directing the district court to resolve its post-trial order prohibiting press interviews with jurors.[3]  We first held that the publisher had standing to challenge the order:  "Journal Publishing alleged an injury in fact because the court's order impeded its ability to gather news,

_____

[2] Because no respondent appears in this matter, we appointed amici curiae to address (1) whether OELA has standing to challenge the district court's order denying its request for juror interviews, and, if so, (2) whether the district court's denial of that request violated the First Amendment.  In their joint brief, amici also address our appellate jurisdiction generally.  We express our indebtedness to amici for their thorough analysis of the issues raised.

[3] Section 1651(a) provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

and that impediment is within the zone of interest sought to be protected by the First Amendment." Id. at 1235. We next held that a petition for a writ of mandamus was the proper means by which to seek review: "Because Journal Publishing was not a party and could not challenge the post-trial order on direct appeal, it has no other adequate means to obtain relief." Id. at 1236. We recognize that unlike the situation before us in Mechem, OELA is not a media organization and has not petitioned us for a writ of mandamus. But as we shall see, neither distinction is in itself sufficient to defeat our jurisdiction over OELA's case.

### A.

As to the standing inquiry, we first note that the media does not have a special right of access to information unavailable to the public. See Smith v. Plati, 258 F.3d 1167, 1178 (10th Cir. 2001). But OELA's alleged First Amendment right to juror access for the exclusive benefit of its members and the trial bar more generally, apparently raised within both a professional and commercial context, surely does not match the media's right to access information for the purpose of informing the political thought and behavior of the general public. See Haeberle v. Texas Int'l Airlines, 739 F.2d 1019, 1022 (5th Cir. 1984). Nonetheless, OELA's request for such access in order to prepare a program to educate a segment of the bar, despite countervailing concerns related to juror privacy and the administration of justice, *may* not be entirely devoid of First Amendment implications. See id. (describing as "not without First Amendment significance," an attorney's and his clients'

4

unsuccessful request for post-trial jury interviews "to satisfy their own curiosity and to improve their techniques of advocacy").  OELA has standing because it asserts an actual, particularized injury as a result of an alleged constitutional violation traceable to the district court's order and redressable by a favorable ruling here.  See Horne v. Flores, 129 S. Ct. 2579, 2592 (2009).  OELA may pursue this matter on behalf of its members because (1) OELA's members would have standing to sue in their own right under the same theory; (2) the interests OELA seeks to protect are related to its organizational purpose; and (3) neither the constitutional claim asserted nor the relief requested requires the participation of OELA's individual members.  See Utah Ass'n of Counties v. Bush, 455 F.3d 1094, 1099 (10th Cir. 2006).

B.

Given OELA's standing, the next question is whether we may construe its direct appeal as a petition for a writ of mandamus under § 1651(a).  We are unimpressed with the inability of OELA's counsel to discern the true procedural posture of OELA's request for review, and consequent failure to proceed consistent with Mechem.  Counsel's oversight has required the court to waste time and resources sorting out its jurisdiction.  Fortunately for OELA, in United States v. McVeigh, 119 F.3d 806 (10th Cir. 1997), we construed a press appeal challenging the sealing of district court documents as a petition for a writ of mandamus despite the media's claim that its appeal was proper under § 1291 because the court's order fell within the collateral order doctrine.  We explained that we could justifiably treat

5

the press appeal as a petition for a writ of mandamus if the media had standing and had substantially complied with the requirements of Fed. R. App. P. 21(a).  Id. at 809 n.4.  Before proceeding to the merits, we acknowledged the media's standing and noted that the opposing parties conceded compliance with Rule 21(a), which provides in relevant part:

> (1) A party petitioning for a writ of mandamus . . . directed to a court must file a petition with the circuit clerk with proof of service on all parties to the proceeding in the trial court.  The party must also provide a copy to the trial-court judge.  All parties to the proceeding in the trial court other than the petitioner are respondents for all purposes.
>
> (2)(A) The petition must be titled "in re [name of petitioner]."
> (B) The petition must state:
> > (i) the relief sought;
> > (ii) the issues raised;
> > (iii) the facts necessary to understand the issues presented by the petition; and
> > (iv) the reasons why the writ should issue.
> (C) The petition must include a copy of any order or opinion or parts of the record that may be essential to understand the matters set forth in the petition.

Fed. R. App. P. 21(a)(1) & (2).

In addressing whether OELA's appeal substantially complies with Rule 21(a) so as to enable us to proceed, we observe that OELA's appellate brief sets forth the relevant facts, explains the substantive issue presented, analyzes the issue in some detail, and specifies the relief sought.  OELA's appendix to its brief includes those portions of the district court record necessary to an understanding of its claim.  The record further indicates that OELA served its brief on the parties to the underlying

6

proceeding.  While nothing in the record suggests OELA served the district judge with a copy of its brief consistent with Rule 21(a)(1), we do not believe this point is outcome determinative.  Federal rules governing direct appeals do not require service of briefs on district judges.  Requiring prior service upon a district judge in an instance such as this would allow us only upon the rarest occasion to construe a direct appeal, where inevitably no court service occurs, as a petition for a writ of mandamus, essentially limiting McVeigh to cases where opposing parties concede compliance with Rule 21(a).  Moreover, a district judge against whom a writ of mandamus is sought has no right to respond to a petition, unless we invite or order such response, so that we may direct service at a later date if desirable.[4]  Accordingly, we conclude that OELA has substantially complied with Rule 21(a), despite its apparent failure to provide the district judge with a copy of its brief, and now construe its direct appeal as a petition for a writ of mandamus under § 1651(a).[5]

II.

The precepts governing our consideration of a petition for a writ of mandamus

---

[4] Fed. R. App. P. 21(b)(4) provides: "The court of appeals may invite or order the trial-court judge to address the petition or may invite an amicus curiae to do so. The trial-court judge may request permission to address the petition but may not do so unless invited or ordered to do so by the court of appeals."

[5] Concerned that OELA may have filed its notice of appeal out of time, we entered an order to show cause regarding the timeliness of its appeal.  But because we conclude that OELA's appeal is best construed as a petition for a writ of mandamus governed by Fed. R. App. P. 21, the time limits set forth in Fed. R. App. P. 4 relating to direct appeals have no application.  Accordingly, the order to show cause is discharged.

are ably set forth in <u>In re Cooper Tire & Rubber Co.</u>, 568 F.3d 1180, 1186-87 (10th Cir. 2009), and we need not repeat them in detail here. Importantly, "a writ of mandamus is used only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." <u>Id.</u> at 1186 (internal quotations omitted). "Therefore, we will grant a writ only when the district court has acted wholly without jurisdiction or so clearly abused its discretion as to constitute a usurpation of power." <u>Id.</u> (internal quotations omitted). In determining whether to issue a writ, we have identified five "'nonconclusive guidelines'" under which we ask whether (1) the petitioner has alternative means to secure relief; (2) the petitioner will be damaged in a way not correctable on appeal; (3) the district court's order constitutes an abuse of discretion; (4) the district court's order represents an oft-repeated error and manifest, persistent disregard of applicable law; and (5) the district court's order raises new and important problems of law or issues of first impression. <u>Id.</u> at 1187. As we have seen, OELA's only means of relief is mandamus because direct appeal is unavailable to it. Therefore, our discussion focuses on the latter three factors.

Our research suggests that the substantive question presented in this case may be one of first impression, namely whether the First Amendment requires that attorneys who did not participate in the underlying litigation be given access to jurors to assist them in the preparation of an educational program for the use and benefit of members of a professional organization. The closest case we have found,

about which we express no opinion, is the Fifth Circuit's decision in <u>Haeberle</u> involving a participating attorney's unsuccessful request to interview jurors post-trial for self-education. The Fifth Circuit agreed with the district court's "implicit conclusion" in denying the request under a local rule similar to N.D. Okla. L.R. 47.2, that the First Amendment interests of the attorney were "plainly outweighed by the juror's interest in privacy and the public's interest in well-administered justice." <u>Haeberle</u>, 739 F.2d at 1022. <u>See generally</u> Dale R. Agthe, Annotation, <u>Propriety of Attorney's Communication with Jurors After Trial</u>, 19 A.L.R. 4th 1209, at § 3 (1983 & Supp. 2009) (discussing the propriety of attorneys' communication with jurors for self-education).

We in no way suggest that the district court's denial of OELA's application to interview jurors represents an oft-repeated and manifest, persistent disregard of applicable law. But unlike the Fifth Circuit in <u>Haeberle</u>, we are unwilling to conclude anything from the district court's terse denial of OELA's request. Whether the First Amendment requires the district court in this case to craft a narrowly tailored order utilizing the least restrictive means to protect the jury and the administration of justice, thereby allowing OELA some form of access to the jurors, is a question we are uncomfortable deciding in the first instance, even more so given the lack of any opposition to OELA's application. The apparently novel issue presented certainly requires the district court to exercise some discretion in ruling upon OELA's application and therein lies the fundamental problem in this case. By

simply denying the application in a minute order without any substantive explanation, we cannot say the district court exercised any meaningful discretion. And we have long held that a court's failure to exercise meaningful discretion constitutes an abuse of discretion.  For example, in <u>Ohlander v. Larson</u>, 114 F.3d 1531 (10th Cir. 1997), we recognized a "clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based."  <u>Id.</u> at 1537.  This is a case where such failure occurred.

Accordingly, we grant OELA's petition and issue a *limited* writ of mandamus to the district court.  The district court is directed to vacate its prior order denying OELA's "Application for Permission to Interview Jurors for Instructional Purposes," and reconsider the matter pursuant to a meaningful exercise of its discretion in support of its ultimate determination.

SO ORDERED.