United States District Court
Northern District of Oklahoma

FILED
JUL 13 2010
Phil Lombardi, Clerk
U.S. DISTRICT COURT

United States Of America

v.                                    09-CR-043

Lindsey Kent Springer, and Oscar Amos Stilley

Memorandum in support of Motion For Writ of Error Coram Nobis.

Lindsey Kent Springer ("Springer") File this memorandum in support of his motion for Writ of Error Coram Nobis filed Simultaneously herewith.

## I   Factual Background

(1) On March 10, 2009, Springer and Stilley were indicted by a Grand Jury Containing Six Counts. Count One alleged violation of defrauding the Secretary of the Treasury in the State of Oklahoma in violation of Title 18, § 371. This count pertained to both Stilley an Springer. Count Two, Three, an Four allege violation of title 26 Section 7201 in the assessment of income taxes owed by Springer. Count Two is only against Springer. Count Three an Four are against Springer with Stilley violating Title 18 § 2 aiding and abetting Springer. Count

✓ Mail   __No Cert Svc   __No Orig Sign
__C/J   __C/MJ   __C/Ret'd   __No Env
__No Cpys   ✓No Env/Cpys   __O/J   __O/MJ

(-1-)

(OVER)

Five an Six allege Springer violated Title 26 §§ 7203.

(2.) On March 18, 2009, Springer and Stilley were purportedly arraigned before U.S. Magistrate Cleary.

(3) Prior to arraignment US District Judge James Payne recued for conflict.

(4) No other Trial Judge was assigned.

(5.) On March 18, 2009, Magistrate Cleary directed Springer meet with Randall Drew, the Probation Officer assigned to Springer and Stilley.

(6) Springer met with Mr. Drew in U.S. District Judge Ellisons former office.

(7.) Springer proceeded to the courtroom where numerous attorneys were arguing about who was to represent Springer And Stilley.

(8) Springer was told none of the attorneys wished to speak with him, (Mr. Weber for example) Within 20 minutes Robert Williams shows up and Springer meets him for about 3 minutes.

(9.) Springer is then purportedly arrained after filing a Bill of Particulars and Motion.

(-2-)   (Next)

and asked if he wishes to waive his right to be arraigned with being represented by Counsel, Springer waived

(10) Springer is purportedly arraigned along with Stilley.

(11) On March 31, 2009, Chief Judge Claire V. Eagan designated and assigns Judge Stephen P. Friot from the United States Western Judicial District by docket entry minute order.

(12) Judge Friot ordered a scheduling conference on April 22, 2009.

(13) On April 22, 2009, Springer and Stilley appeared before Judge Friot and were told Judge Friot had some issues under "Faretta" he wished to discuss. A very short exchange took place resulting in Judge Friot finding a voluntary waiver of Springer's Sixth Amendment right to be advised by counsel in his defense.

(14) Stilley has a law degree and Springers formal education is graduating from High School

(15) Throughout Pretrial and Trial Springer made numerous mistakes regarding procedure, applying local civil rules not complying

(-3-)

with Toughy Regulations regarding witnesses like Donna Meadors, and at trial, such as asking questions, cross examining the witnesses, calling witnesses relevant, testifying as a witness, and knowing what was and was not fair game. Knowing Jury instructions prior to trail, filing instructions out of time, the courts definition of gift, that the court had found the Form 1040 did not violate the PRA, the Requirement to file in the law was in a Judicial District and not in an Internal Revenue District, are just a few of the examples. Where Springer was unaware of the dangers and disadvantages of being pro-se in a Criminal Trial.

(16) Sentencing was even more difficult as Springer was having to object to the Courts Probation Officer Report, the Governments seeking 20 years as oppose to the Probations 8 yrs. it's objections, and Springers limited understanding of the Post Booker Application to the Sentencing procedure.

(17) Springer told the Court on April 23, 2010 Preparing to dispute facts by a preponderance of the evidence was the most difficult area Springer

(-4-)

had encountered in the trial process. By far that was not the only difficulty Springer experienced.

(18) Being a witness and pro-se in a criminal trial is absolutely a hazard to any litigant if not a nightmare.

(19) On April 22, 2009 and on July 1, 2009, Standby Robert Williams informed Springer he was selected by Chief Judge Eagan to be Springer's standby counsel. This revelation did not set well with Springer because of previous encounters Springer had with Chief Judge Eagan. Springer had filed a Judicial Complaint in 2006 with the Tenth Circuit against Claire V. Eagan as well as receiving a judicial opinion adverse to Springer's claims of injunction under the PRA which was rejected.

(20) Robert Burton informed Springer he to was selected by Chief Judge Claire V. Eagan to be Stilley's Standby Counsel on April 22, 2009.

(21) Williams informed Springer his appointment was to serve the Court and not Springer.

(-5-)

(22) The District Court's denial of all of Springer's pretrial motions to dismiss with one word denials, Springer's post trial denied motions, and his continuation of the sentencing hearing, which was denied, shows Springer was not aware of the dangers and disadvantages of self representation.

(23) Springer had never represented himself at any trial, civil or criminal.

(24) There is no doubt the outcome would have been different had Springer's Sixth Amendment Right been penetrated and comprehensively examined.

II   Jurisdiction

(25) This Court has jurisdiction to "correct errors of the most fundamental character," U.S. v. Dawes, 895 F.2d 1581, 1582 (10th Cir. 1990); citing U.S. v. Morgan, 346 U.S. 502, 512, 98 L.Ed. 248, 74 S.Ct. 247 (1954); Quoting U.S. v. Mayer, 235 U.S. 55, 69, 59 L.Ed. 129, 35 S.Ct 16 (1912). Morgan held the District Court had power under the All Writs Act, 28 U.S.C. § 1651(a) "to issue a writ of error coram nobis to vacate a conviction on the grounds that the

(-6-)

The defendant had been deprived of Counsel without his Knowing waiver of his Constitutional right to Counsel." <u>Dawes</u>, 895 F.2d 1582

<u>III</u> Springer never Knowingly and Intellegently waived his Sixth Amendment Right to Counsel before the Trial Judge Voluntarely.

(26) The "right to counsel is fundamental to insuing the very integrity of the fact finding process." <u>Dawes</u> 895 F.2d 1582. Prior to Dawes, the Tenth Circuit held that the failure of the District Court to advise defendants of the danger of proceeding to trial Pro-se was harmless error beyond a reasonable doubt." <u>US v Dawes</u> 874 F.2d 746, 749 (10th Cir. 1989) In <u>U.S. v. Allen</u>, 895 F.2d 1577 (10th Cir. 199) Dawes was reconsidered in Light of a factually Similar case in <u>Penson v. Ohio</u>, 488 U.S 75, 109 S.CT 346, 102 L. Ed.2d 300 (1988)

(27) In Penson the Supreme Court refused to apply harmless error analysis to a Petitioner left without Appellate representation 109 S.CT at 354 In <del>V.S</del> v. Allen, 895 F.2d at 1580, the tenth Circuit held the "Penson" holding precludes Application of harmless error analysis to waiver of

(-7-)

Counsel cases." The Supreme Court has held that the writ of error Coram nobis is available to correct errors of the most fundamental character." <u>Dawes</u>, Supra. The waiver of the fundamental Constitutional guarantee must be voluntary, known and "Intellegent." Id

28) In U.S.V. Padilla, 819 F.2d 952 (10th Cir. 1987) the tenth Circuit held that Faretta requires two separate examinations. First, did the defendant voluntarily choose self-representation. The central question is whether the defendant knew of his right to competent counsel, A "choice between incompetent or unprepared counsel and appearing pro-se is a dilemma of constitutional magnitude," <u>Padilla</u>, 819 F.2d at 955. The choice cannot be <u>voluntary in the Constitutional sense</u> when such a dilemma exists. See Sanchez V Mondragon dilemma Ex 858 F.2d 1462, 1465 (10th Cir. 1988).

29. Second the trial Court must determine whether the defendant knowingly and intelligently waived his right to counsel. Id "The Trial Judge should conduct an inquiry sufficient to establish a defendants knowledge and understanding of the factors" relevant

(-8-)

to his decision to waive counsel. Sanchez at 1465; Quoting Padilla, 819 F.2d at 959.

### (A) To determine Voluntary

(30) In order to determine that a defendant voluntarily chose to represent himself, The Trial Court **Must** find that he does not have "good cause" warranting a substitution of counsel. Sanchez, 858 F.2d 1466. Indeed, before allowing a defendant to proceed pro-se, the District Court must ensure and establish on the record that defendant "knows what he is doing and [that] his choice is made with eyes open." Faretta v. California, 422 U.S. 806, 835, 45 L.Ed. 2d 562, 95 S.CT 2525 (Quoting Adams v. U.S. ex rel. McCann, 317 U.S. 269, 279, 87 L.Ed 268, 63 S.CT 236 (1942).

(31) "Faretta requires a showing on the record that the defendant who elects to conduct his own defense had some sense of the magnitude of the undertaking and the hazards inherent in self-representation when he made the election. The task of ensuring that defendant possesses the requisite understanding initially falls on the Trial Judge who **must** bear in mind the strong presumption against waiver.

Von Moltke v. Gillies, 332 U.S. 708, 723, 68, S.CT 316, 323, 92 L Ed. 309 (1948)

(32) "To be valid such waiver <u>must</u> be made with an apprehension of the nature of the charge, the statutory offenses, including with them the range of punishments there under, possible defenses to the <u>charges and circumstances in mitigation there</u> of. A Judge can <u>make certain</u> that an accused's professed waiver of Counsel is understandingly and wisely made <u>only</u> from penetrating and comprehensive examination of all the circumstances under which such plea is tendered." Von Moltke, 332 U.S. at 723-24, 68 S. CT at 323. See also Allen at 1578. The factors articulated <u>must</u> be conveyed to the defendant by the Trial Judge and must appear on the record so that our review may be conducted without speculation." Padilla, at 956-57; Allen, supra "The inquiry <u>mandated</u> by Padilla must occur at a pretrial hearing so that if the defendant decides not to waive his right to Counsel, he will have a meaningful opportunity to exercise it." Allen supra.

(B) To knowingly ad Intelligently

(-10-)

(33) When "an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." Faretta, 422 U.S. at 835. For this reason "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." Id. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self representation, he should be made aware of the dangers and disadvantages of self representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Id. Although "no precise litany is prescribed... the Court should question the defendant... without such an inquiry on the record, a determination that the defendant made his choice with eyes open cannot be made by a reviewing court without speculation. Padilla, 819 F.2d 959. Although the Trial Judge in Sanchez did more than Padilla, the inquiry was none the less insufficient. Sanchez at 1469. The District Court "must" bear in mind the strong presumption against waiver." Padilla, at 956. Although Padilla "was experienced with the criminal justice system and was aware of most, if not

(-11-)

all of the information that the Court was required to provide." The "Trial Court did not fulfill its obligation to ensure the defendant was fully aware of all the requisite information." Padilla, 819 F.2d at 958-59. The evidence of Defendants knowledge of relevant considerations must be in the record. Sanchez, 1467; Quoting U.S. Gipson 693 F.2d 109, 112 (10th 1982)

(C) Trial Judge did not ensure Springer was fully aware of requisite information

(34) The hearing before the Magistrate on March 18, 2009 was not before the Trial Judge. The only Trial Judge recused before that hearing. Although Stilley had conducted several criminal trials from start to finish, Springer was not an attorney and not schooled in how to represent himself in a Federal Criminal trial to which he would testify.

(35) The Trial Judge did warn Springer he would be treated no different than an attorney and that Springer voluntarily chose to represent himself but that was the extent of the warning. No in depth analysis was conducted by the Trial Judge.

(36) The Trial Judge never informed Springer of (1) the dangers of self representation; (2) Springer was never informed of the specific dangers of proceeding without Counsel. The entire manner in which Counsel was to standby demonstrates even Standby Counsel was unaware of Springer's Sixth Amendment Right to Counsel. Springer asked Standby how many complicated or uncomplicated tax cases had he tried to which Williams said none.

(37) On March 18, 2009 the scene was more of confusion with attorneys standing by outside Magistrate Cleary's Court Room each telling Probation Officer Drew they would not represent Springer.

(38) The entire test <u>must</u> be satisfied by the April 22, 2009 hearing record. At this hearing the Trial Judge did not ask if Springer "knew what he is doing." The Trial Judge did not "ensure knowledge of certain factors." No "expression" of any specific hazards of self representation was made that Springer remembers.

(39) The Trial Judge did not make

(-13-)

the "apprehension of the nature of the charges." No "discussion" regarding any of the Counts was "penetrated or comprehensive" examination. There was no "range" of Punishment other than the Maximum, if added together was 22 years and the Tax Division told Springer and Stilley were looking at up to 10 years under the guidlines. There was no discussion about the "possible defenses" to each of the Six Counts or "circumstances in mitigation."

(40) The Trial Judge was required to convey each of these "factors" on the record at a pre-trial hearing. The Trial Judge should have questioned the defendant Springer to which no such penetrating took place on the record (with or without the Tax Division).

IV   Springer (and Stilley) were arraigned before Magistrate Cleary on March 18, 2009 and not before any Trial Judge.

(41) The preliminary examination from the arraignment of the defendant "is a critical stage of the Criminal proceeding against the defendant." Pearce v. Cox, 354 F.2d 884, 890 (10th Cir. 1965) "It is not necessary for

(—14—)

an indigent defendant to request the appointment of counsel in order to preserve his right to counsel." Id.; see also Rice v. Olson, 324 U.S. 786, 788, 789, 65 S.Ct 989, 89 L.Ed 1367. Unless "the right to be represented by counsel at a preliminary hearing competently, intelligently and voluntarily waived, the fact the defendant was not represented at the preliminary examination "vitiates the hearing." 354 F.2d 891. Oklahoma law recognizes that the right to counsel under the Sixth Amendment attaches at arraignment. See Miller v. State 2001 OK CR 17, 29 P.3d 1077, 1080 (Okla Crim. App. 2001) The Sixth Amendment means the same thing whether in State Court or U.S. Court. See Duncan v. Louisiana, 391 U.S. 145, 150, 88 S.Ct 1444, 20 L.Ed 2d 491 (1968). The writ of error coram nobis is used to correct misgarrage of Justice. Title 28, § 2255 "is not a bar to issuance of a writ of error coram nobis." Dawes, 895 F.2d 1582. Section 2255 is an "inadequate remedy in these circumstances."

## V.        Discovery of Error.

(42) Springer discovered the Constitutional error while assisting his pro bono Appellate

(-15-)

counsel in determining which issues to pursue on Appeal. Springer raised 34 issues on Appeal. Springer raised 34 issues in his docketing statement. The Tax Division had moved to have Springer's Appellate Attorney removed for conflict of interest. While Springer was reviewing Tenth Circuit cases regarding Sixth Amendment Right to Appellate Counsel, as a right, see <u>Penso</u> and <u>Dawes and Allen</u>, supra, Springer discovered the Sixth Amendment violations. Springer is unable to raise any issue related to the denial of his Sixth Amendment Right to Counsel in his direct appeal because such error was not noticed until after Judgement.

### A. Due Diligence

(43) Springer raises the Sixth Amendment Constitutional error only 2 months after the conviction and Judgement was entered. Springer's challenge is timely under <u>Dawes and Allen</u>.

(44) The issue here is short. The trial Judge was required to conduct the penetrating examination of Springer. See Padilla. Examination could not have been done on 3.18.09, because no trial judge was of record until 3.31.09. Springer and Stilley were not arraigned on April 22, 2009 with any comprehensive waiver or at

(-16-)

any other time before or after April 22, 2009 with Sixth Amendment Right being properly waived, No arraignment was done after the trial Court conducted its enquiry however limited it was on April 22, 2009.

## Conclusion

Lindsey Kent Springer request a writ of error Coram Nobis Finding Springer was convicted and judgement entered in 09-CR-043 based upon Springer being deprived of Counsel in violation of the Sixth Amendment and without a voluntary, known, and intelligent waiver on the record being made, at anytime before the trial record or Court.

Respectfully Submitted

7-9-10
Date

/s/ Lindsey Springer
5147 S Harvard #116
Tulsa, Okla 74135

No Phone
No Email
use same as previously

-17-