United States District Court
Northern District of Oklahoma

**FILED**

JUL 16 2010

Phil Lombardi, Clerk
U.S. DISTRICT COURT

United States of America

v.

Lindsey Kent Springer
and Oscar Amos Stilley

09-CR-043

Springer's Second Memorandum
is Support of Motion For Writ
of Error Coram Nobis

Lindsey Kent Springer ("Springer") File his Second Memorandum in support of his Motion For Writ of Error Coram Nobis, intending to supplement his original memorandum with additional facts and arguement in support of Motion For Writ of Error Coram Nobis. No response has been filed by the Tax Division.

I.        Issue(s) Presented

Whether Springer on the record before the trial Judge voluntarily, knowingly and intelligently, with eyes open, waived his Sixth Amendment right to be represented by an attorney at every stage of trial, from arraignment, pretrial, trial, post trial, and sentencing?

If not, isn't the April 23, 2010 Judgement invalid and void, and in error in violation of the Fifth Amendment right to due process and Sixth Amendment right to assistance of counsel?

-1-

## II. Additional Facts to be Considered

At the time of the indictment Springer was defending for his home in U.S.A. v. Springer, 08-278 (ND.OK); Springer v. CIR, 3731-09L, defending a Certificate of Release that was purportedly revoked; and defending against the third attempt at dismissal on Qualified Immunity grounds in Springer v. Horn, 06-156 (N.D.OK). None of these case's were criminal and none had gone to trial.

Springer was in the middle of discovery in 08-278 as of March 10, 2009.

Springer was arraigned on March 18, 2009. No district court trial judge was currently designated or assigned. The March 30, 2009 hearing was before Judge Cleary. No trial date was set until April 22, 2009 and no judge was designated and assigned until March 31, 2009.

Before arraignment Springer moved for a Bill of Particulars, not understanding the six counts of the indictment.

After arraignment Springer was required to attend ten previously scheduled depositions in 08-278 in four states where Toughy Regulation were held not to apply. Donna Meadors is one person subpoena'd

-2-

No discovery was given to Springer from March 18, 2009 through April 22, 2009, in 09-CR-043.

On April 22, 2009, Springer was ordered to attend a hearing before Trial Judge Stephen P. Friot.

On July 1, 2009 a Motions hearing was held where the Trial Judge denied all outstanding Motions with one word "denied." Springer had filed motions to dismiss and a Motion for Franks hearing and to Suppress and all Ten were denied.

On July 1, 2009, the trial judge did order a Bill of Particulars on the meaning of the repeated phrase "required by law" that the Grand Jury relied upon throughout the indictment.

Meanwhile, in 06-156, the trial judge set (5.15.09) a discovery deadline for August, 2009 and a trial in November, 2009. This schedule however was stayed pending interlocutory appeal in late June, 2009. That case is 09-5088 in the Tenth Circuit.

Also in June Springer is ordered to a Tax Court hearing in September, 2009, in 3731-09L. The hearing took 2 days.

In late June the Trial Judge in 08-278 also suspended trial set for July.

Springer also is now to prepare by sometime in September, 2009 his opposition brief in 09-5088, as Appellee.

On July 14, 2009 the Tax Division filed its First Bill of Particulars on what

-3-

grand jury means by "required by law."

Springer sought a Second Bill of Particulars on the "regulations" triggered by the First Bill of Particulars citing 26.U.S.C § 6011. The Trial Judge denied the Motion Springer moved to reconsider and that Motion was denied.

Because of the confusion surrounding "required by law" Springer sought an extension on Jury Instructions. The Trial Judge denied the motion but only after Springer's time expired. The Court's order directed trial briefs. The Tax Division filed their brief repeatedly referencing "regulation" over and over again. Springer was denied allowed to file Instructions.

Springer moved for reconsideration again based upon the repeated usage of "regulation." This time the Trial Judge granted Springer's request.

One ~~Two~~ weeks before Trial the Tax Division files a Second Bill of Particulars Springer had in part sought since March 18, 2009 (Doc.8) identifying Nine Regulations the grand jury relied upon in its phrase "required By law." See Doc 8, 105, 164

Springer is then ordered to L.A, (Doc.178) California on October 15 ad 16, 2009, to take the trial deposition of Vikki Wiggins. This is just 10 days before trial and Five days before a pretrial conference. (Doc.158)

-4-

On October 21, 2009, the Tax Division 5 days before Trial, turns over the October 6, 2004 grand jury transcript of Judith Patterson which clearly indicated the Criminal "referral" ocurred much earlier than June 10, 2005 as the Tax Division led this Court at the July 1, 2009 Suppression and Franks Hearing denials.

At the same time Springer is having to obtain trial subpoenas of certain (Doc. 157) witnesses and denied others because of Springer's not understanding that Touhy Regulations trump the Sixth Amendment right to call witnesses at trial.

The trial Judge never told Springer, or made any record that it had found Form 1040 (without and years identified) did not violate the Paperwork Reduction Act until the second half of trial.

The trial Judge never told Springer or made any record that it had found Form 1040's are required to be filed in the Judicial District instead of the Internal Revenue District of Residence.

The trial Judge never told Springer it's definition of Gift or made anyone aware of its intention to define it, and the way it defined Gift, until the middle of trial.

Springer was never informed by the trial Judge until the trial that the "unlawful" act that was the object

-5-

of the allegation in Count One was the offense of "defraud" citing to a case from the Tenth Circuit in 2008 styled U.S. v. Bedford.

The trial Judge never informed Springer of the hazards, dangers, or disadvantages of being pro-se and testifying in Springer's defense. The "narrative" way was not disclosed to Springer until a day before Springer was to begin his defense.

The trial judge never discussed any specific danger with Springer regarding self-representation in this or any specific regard.

The trial Judge never discussed the different stages of trial or about sentencing and how the advisory guidelines worked.

The trial Judge never told Springer Northern District local Civil Rules applied generally to certain criminal filings until December, 2009.

On March 16, 2010 Springer, in 08-278, is ordered to vacate his home of 14 years by April 15, 2010, 6 days before sentencing is to begin.

No one prepared Springer for the hazards of sentencing or trial.

The Tulsa World even reported that a normal sentence takes 15 minutes while Springer's took three days.

In denying release on April 23, 2010 this trial Judge pointed to Springer's claim of probation as a reason Springer was a flight risk.

-6-

## III. Supplemental Argument

A defendant's "technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to waive counsel." Faretta v. California, 422 U.S. 806, 836, 45 L. Ed 2d 562, 95 S. CT 2525 (1975). However, his repeated assertions and continuous stuborn refusal to accept counsel and that he could not work with an attorney unless he shared the defendant's views constitutes an "implied waiver." U.S. v. Willie 941 F.2d 1384, 1390 (1991)

The Tenth Circuit in U.S. v. Smith 413 F.3d 1253, 1279 (2005) once again said the knowingly, intelligently and voluntary relinquished right to counsel as only "one" factor in determining whether the district court unconstitutionally denied a defendant his right. The waiver must be unequivocally made and timely. Mr. Smith was appointed not one but two attorneys and a paralegal. Id. They exclusively worked on Smith's case for a year.

In U.S. v. Patterson 140 F.3d 767, 775 (8th Cir. 1998) Patterson decided the day of trial to represent himself and was questioned extensively by the trial court.

In U.S. v. Green 08-2195 (10th Cir 2009) Green had three different attorneys appointed at "various stages of litigation." Before trial he wished to fire them. The Tenth Circuit said he had "knowledge."

-7-

In U.S. v. deShazar 554 F.3d 1281, 1285 (10th 2009) he was given two specific hearings solely dedicated to his self representation requests. He was questioned about trial strategy, his defense and even told his defense would anger the jury. deShazar did not address the "intelligent" ellement.

In U.S. v. Hughes 191 F.3d 1317, 1324 (10th Cir. 1999) Hughes had an attorney for a month, fired him and obtained a 30 day extension to find another attorney and was an attorney himself.

The right to counsel is fundamental to insuing the very integrity of the fact finding process. U.S. v. Dawes, 895 F.2d 1581, 1582 (10th Cir. 1990); (U.S. v. MacKovich 209 F.3d 1227, 1237) (MacKovich was represented for 7 months and appeared many times with counsel.)

In Faretta he was actually asked many intrinsic questions about things like the hearsey rule, jury challenges and about California Code and Procedure. In Powell v. Alabama, 287 U.S. 45, 69, 77 L.Ed 158, 53 S.Ct 55, 88 ALR 527 Powell was listed with several dangers and disadvantages.

A person charged must be found with a full awareness of both the nature of the right being abandoned and the consequence of the decision.

-8-

Moran v. Barbie, 475 U.S. 412, 421, 106 S.Ct 1135, 89 L.Ed 2d 410 (1986), before his waiver is deemed valid. Iowa v. Tovar, 541 U.S. 77, 81, 124 S.CT 1379, 158 L.Ed 2d 209 (2004).

Whether there has been an "intelligent" waiver of the right to counsel must depend in each case, upon the particular facts and circumstances surrounding the case, including the background of the case, the accused's experience and his conduct. Johnson v. Zerst, 304 U.S. 458, 464, 82 L.Ed 1461, 58 S.CT 1019 (1938). Since "the Sixth Amendment constitutionally entitles one charged with a crime to the assistance of counsel, compliance with this Constitutional mandate is an essential jurisdictional prerequisite to a Federal Courts authority to deprive an accused of his life or liberty." 304 U.S. 467. Courts are open to look to the substance of the matter, 304 U.S. 466.

A.   Test of The Waiver

The test of waiver is by a preponderance of the evidence. Springer must show he neither had counsel or properly waived counsel. Tovar, 541 U.S. 88. The information a defendant must possess, in order to make an intelligent election or plea,

-9-

will depend on a range of specific factors, including the defendants education or sophistication, the complex or easy grasped nature of the charges and the stage of the proceeding. Tovar 541 U.S. at 88; Johnson 304 U.S. at 464

To be valid the waiver or plea must be made with:

   1) apprehension of the nature of the chargers, the statutory offenses, including
   2) the range of punishment
   3) Possible defenses to the charges
   4) all other facts essential to a broad understanding of the whole matter. Von Moltke at 724; Von Moltke v. Gillies 332 U.S. 708, 723, 68 S.CT. 316, 323 92 L.Ed 309 1948. The colloquy must be a "penetrating and comprehensive examination of all circumstances under which such a waiver is intended." Maynard v. Boone, 468 F.3d. 665, 677 (10th Cir. 2006) Part of the reason for the more probing inquiry required when a defendant seeks to proceed pro-se is to determine aspects of the waiver that the defendant might not understand initially so that the implications of representing oneself at trial can be clarified. Id. citing U.S. v. Turner 287 F.3d 980, 984 (10th Cir. 2002)

The 3rd Circuit requires each district court use "Federal Judicial Center Benchbook For U.S District Courts

-10-

Judges § 1.02 (4th Ed. 2000) which has 14 general categories of questions. See U.S. v. Peppers, 302 F.3d 120, 136 (3rd Cir. 2002). In addition a probing further and explanation may be warranted. A district court "cannot make an informed decision as to the knowing and voluntary nature of a defendants request to proceed pro-se without a thorough inquiry on the record to assure itself that the defendant fully apprehends the nature of the charges against him, the perils of self representation and the requirements that will be placed upon him. Peppers, 302 F.3d 133.

This calls for specific forewarning of the risks that foregoing counsels trained representation entails. Id.

The "purpose an attorney can serve at the particular stage of the proceeding in question and what assistance he could provide to an accused at that stage in order "to determine the scope of the Sixth Amendment right to counsel and the type of warnings and procedure that should be required before a waiver of that right will be recognized." Patterson v. Illinois, 487 U.S. 285, 298 L.Ed. 2d 261 108 S.Ct 2389 (1988)

"Warnings pretrial are less substantial and more obvious to an accused then they are at trial." Id.

-11-

At the extreme end of the Sixth Amendment spectrum, the Supreme Court recognized "the enormous importance and role that an attorney plays at a crucial trial" imposing "the most rigorous restrictions on the information that must be conveyed to a defendant and the procedure that must be observed, before permitting him to waive his right to counsel at trial." Patterson 487 U.S. 298; citing Foretta 422 U.S. 835-836; Von Moltke 332 U.S. 723-724

A waiver is "knowing" when he is made aware of the "pragmatic assessment of the usefulness of counsel at a particular proceeding" and the "dangers to the accused of proceeding without counsel." Patterson 487 U.S. 298

B.   Springer's case is squarely on point with U.S. v. Taylor 113 F.3d 1136 (10th Cir. 1997)

In a case out of the Western District of Oklahoma, the Tenth Circuit reversed a decision of a jury because Mr. Taylor's Sixth Amendment right was violated. The panel in Taylor said the presumption is against waiver.

Springer asserts that, unlike Taylor,

-12-

Springer's self-representation was not voluntary. Springer had known Mr. Williams a better part of 5 minutes when Mr. Williams stood by Springer during arraignment on March 18, 2009. Mr. Williams moved to withdraw on March 26, 2009. His first statement to Springer was that Springer not ask him to do anything illegal. Springer means no disrespect to Mr. Williams as he appeared to Springer to be a nice man, but coupled with the circus on March 18, 2009 where everyone was telling Mr. Drew they would not represent Springer, Springer was unaware of the source of that general bias.

Like in Taylor, Mr. Williams withdrew as fast as he entered. Springer did not make a complaint about Williams because he did not know Williams. Other than reading the indictment Williams could have known nothing about Springer. No discovery was tendered till late April, 2009 and continued up until trial with one disc after another. Since there was no trial Judge until after March 30, 2009, Springer's waiver was never voluntary on the record before the trial Judge.

Taylor was not warned till the first day of trial about the technical nature of a trial. Taylor @ 113 F.3d 1141

-13-

Other than "general advisement," the "Court did nothing to ensure Mr. Taylor's waiver of his right to counsel was knowing or intelligent." Id.

Similar to U.S. v. Padilla 819 F.2d 952, 955-56 (10th Cir. 1987) and Taylor, the Court in the present case never advised Springer of any specific danger or disadvantage of self representation. Nor did the court ask Springer ever "his reasons for proceeding pro-se." The trial Judge never sought understanding about Springer's understanding of the "consequence" of Springer's decision. Id.

At no time did the trial court discuss "possible defenses" with Springer. Id.

Springer did not make repeated and unequivocal assertions or that he would not accept a court appointed attorney at every stage of the case. Springer never told the trial Judge he would object to any attempt by the Judge to violate his Sixth Amendment Right as Mr. Willie did. Taylor, 113 F.3d 1142. Nor did Springer stubbornly refuse to accept the services of counsel.

Even though Springer sought what relief he understood, those motions were denied with less words than Taylor

-14-

received from two motions. Taylor received a "three page order" where Springer received "denied." See Doc 100. And Springer's pre trial, trial and post trial was far from Mr. Taylor's "exemplary" pro se representation. Id. Taylor was even allowed his standby to cross examine witnesses and make objections at his trial and still he was found not to have waived his right to counsel.

C.        Complexity.

The Supreme Court referred in Ratzlaf v. U.S. 510 U.S. 135 L.Ed 2d 615, 114 (1998) S.Ct 655 to Title 31 §§ 5322 inbedded "in a complex of provisions" to determine meaning of willful. In Cheek v. U.S. 498 U.S. 192, 112 L.Ed 2d 617, 111 S.Ct 604 (1991) the Supreme Court to the tax law as a "complex tax system" where uncertainty often arises. at 206 Mistakes arise from "complexity of the Internal Revenue Code." Id. In U.S. v. Platte, 401 F.3d 1176, 1185 (2005)(10th) the Tenth Circuit refered to the offense as a violation of a complex regulatory scheme."

The investigation of Springer has apparently been ongoing since 1997. The tax division has been compiling thousands of documents for over 12 years.

The advent of electronic media searchable or not makes grasping the extent and magnitude of a complex criminal case much different than a civil or tax court case.

In 09-CR-043 the tax division continued to turn over discovery material up to right before trial and even during trial. And they had 12 years to prepare.

The reason the trial judge gave for denying Springers First Motion for Bill of Particulars was to see what discovery would answer.

As Springer explains further, there is no record in 09-CR-043 of any discussion of the complexities a pro-se defendant may run into.

Springer any criminal reported case on Lexis where the trial Judge contended with a pro-se defendant where the key trial issue would hinge on the Juries perception of the defendants willfulness. The trial judge ruduced Springers good faith to Springer was wrong but was he wrong in good faith

Springer has yet to find a report case where pro-se met wrong good faith.

-16-