D. Apprehension of the nature of the charges.

Springer is not certain anyone understood the nature of the charges. Springer's First Bill of Particulars sought such understanding. That was denied on April 22, 2009. Springer's (Doc. 82) second request spawned a First Bill of Particulars but that July 14, 2009 filing raised more questions than it answered. By citation to 26 U.S.C. § 6011 the tax division was alleging regulations promulgated by the Secretary were what Springer, in a complex regulatory scheme, violated. Yet, they also argued a statutory mandate theory. Count One involved the IRS lawful functions and the IRS is created as a regulatory agency by the Secretary of Treasury at 26 CFR 601.101 The only way the IRS could have any "lawful functions" was by Treasury Regulations. Count Two through Six were all based upon Springer's failure to provide information to the IRS on Form 1040. Count One alleged Form 1040 filings as part of the object of the conspiracy. (Failure to

Springer pushed for the "regulations" meant by 26 U.S.C. § 6011 to which the trial judge was to have already apprehended with Springer on the "nature" of the offense. What else does a bill of particulars do?

-17-

The First Bill of Particulars was granted to know what the "nature" of the offense was. After July 14, 2009, when the Tax Division filed the First Bill, no other "apprehension" was made between Springer and the trial court on the record.

Springer request identification of the "regulations" meant by Title 26, § 6011 and the Trial Court repeatedly denied Springer's request.

Finally, after the Tax Division filed its trial brief on September 21, 2009, did the trial judge see what Springer was trying to "apprehend." After the trial Judge ordered a Second Bill of Particular Two weeks before trial, the Tax Division, on October 19, 2009, filed its Second Bill of Particulars citing to Nine Treasury regulations involved in the charges alleged by the grand jury in each Count. The Tax Division's Trial Brief speaks for itself. Although in its May 29, 2009 Opposition to Springer's Motion to Dismiss, they cite to 26 CFR 1.6091-2 as the regulation requiring Springer file or deliver a Form 1040 to the IRS, the Second Bill of Particulars leaves off this particular regulation. See Doc 71, 201

This regulation also changed in 2004 and was substantively different for 2000-2004. Tax Division quoted 2004 only.

-18-

A Finding that one week before trail that the Tax Division had defined "required by law" as to mean 8 code provisions and 9 regulations would Never show Springer and the Trial Judge had any penetrating discussion about Springers' understanding of the "Nature" of the Charges.

Springer also did not understand the Courts finding that "defraud" was a seperate offence refferred in 18 U.S.C § 371 until it cited to U.S. v. Bedford before trial in an order.

E.   Statutory Offense

The trial judge never had any discussion with Springer, let alone a penetrating discussion about the Statutory offenses alleged in the March 10, 2009 indictment, Bill of Particulars is only the discussion.

F.   Range of Punishment

Springer recollects the Court asked the tax Division to tell Springer the Statutory Maximum For each count and the tax Division did that. No other penetrating discussion was made ever.

G.   Possible Defenses

The district court did order all

(-19-)

affirmative defenses Springer intended to raise to be filed in Springers Trail Brief, if Springers memory serves him correct. This was the trial Court telling Springer but no penetrating ever occurred as to possible defenses. Springer and the trial Judge never discussed the defense of "Good Faith" Until Trial. Springer informed the Court about his "Paperwork Reduction Act defense" barely chinned the bar" during trial.

The Trial Court never told Springer about it's definition of Gift or that Springer's Venue challenge was in Error because the requirement to file, to which all six counts were based, was in a Judicial District Instead of an Internal Revenue District. Springer made the trial Judge aware of the abolished IRS Districts on April 22, 2009. The trail Courts "denied" told Springer nothing. DOC 100

The most eggregrious was tell the Jury the trail judge found Form 1040 did not violate the PRA. Springer and the trail judge never discussed this ever and no record says it in discussing Springers possible defenses.

The only thing the trial Court told Springer on April 22, 2009 is that Springer probably knows the PRA better than anyone.

(20)

After Springer found out at trial the Courts directive to the jury for the first time Springer was left with a good Faith defense that he was wrong. All the trial Judge told Springer was and at the trial he would not allow Springer to raise the PRA as a "complete defense". Then when the trial Court is addressing Springers Motion For a new trial on Springers claim its instruction violated Springers basic right to a trial by jury, the trial Judge Said it did not matter what he told the Jury because the PRA did not apply to the Statatory requirement to file a tax return. See Doc 293, Pg 6. This though the tax Division filed (was ordered) to file Two Bills of Particular and the Second contained more refferences to Regulations than first did to Statutes. Then of course there is 26 CFR 1.6091-2 which the tax division said was the regulation that governed where the "filing" was to occur, Doc 71, Pg. 6

In Short there was never any disscussion of any defense until after trial was halfway over. And that was not a disscussion to see if Springer understood his right to counsel. It was tell Springer for the fiest time something the trial Judge intended all along and just forgot to discuss that before trial with Springer. Springer means no disrespect

(21)

H. all other factors

What is the meaning of all other factors essential to broad understanding There is no presise explanation mandated by the Tenth Circuit or Supreme Court.

Springer could never had a discussion about the nature until after the tax division Filed its second Bill of Particullars. This was on Oct. 19, 2009 7 days before trial, 2 days before pretrial, 2 days before the Patterson disclosure and 2 days after the Rule 15 deposition in L.A.

If Springer's Motions did not indicate to the trial Judge the disposition and dangers Springer faced, the minute sheet "denied" most certainly would have. Doc 100

Springer filed an "now overlength" Memorandum on MAR. 18, 2009 to which the tax division never informed Springer they asserted the Memorandum violated a local Civil Rule. On June 17, 2009, the Tax Division moved to Strike Springer's reply filed June 15, 2009 (Doc 81, 86) to which before Springer could respond this Court denied the Tax Divisions request to strike and on June 18, 2009 this Court ordered a sur-reply (Doc. 87) When Springer filed an now Admittedly overlength motion for Judgement of Acquittal, pursuant to local civil rules of the Northern District, again

-22-

without giving Springer any time to oppose the Tax Divisions Motion to Strike, a reply, (Doc 257) the trial Judge struck Springer's reply regarding Springer's Motion to reconsider and motion to dismiss, Doc 224, and on its own Motion struck Springer's Motion for Judgement of of Acquital. See Doc 264.

Springer never had any discussion with the trial Judge about how local Civil Rules apply to what documents filed in this criminal case. This repeated transgression now to Springer's detriment was another example to the trial Judge Springer did not understand dangers and disadvantages of self representation in a criminal trial.

The trial Judge was fully made aware no Internal Revenue District surrounded Springer's home. Its denial on July 2, 2009, did not warn Springer his defense of wrong venue was trumped by replacing Judicial District with Internal Revenue District, something the Tenth Circuit previously held was an error, that affected substantial Rights. See Rush v. U.S. 256, F.2d 862 (1958)(at 864)

The trial Judge took the position the requirement to file was based upon where a taxpayer resided and not where the Form 1040 was to be delivered.

The trial court never discussed with Springer its view of filing in any order, discussion, or colloquy. The Supreme Court in _____, and the Tenth Circuit in U.S. v. Brewer, 486 F.2d 507, (10th 1973) and U.S. v. Taylor, 828 F.2d 630 (10th Cir. 1987) all acted to develope Springer's understanding as to where the place was that Springer was, if required by law, to deliver a Form 1040 for each year at issue. The trial judge was made aware of Springer's understanding and simply remained silent on this possible defense with respect to discussions with Springer.

Springer needed to call certain witness who worked for the Secretary of Treasury and U.S. Attorney's office to show Springer, while he was secretly under grand jury investigation by Doyhs Horn and Melody Nelson, was purportedly being parrelle investigated by Donna Meadors of the Treasury department. Mrs Meadors would have testified that Springer cooperated fully with her 6700 investigation and provided thorough information about (2000-2004) money given to Springer. It was her information that was used by Shern to obtain the search warrant on September 15, 2005 by Brian Shern. The jury would have seen a different picture of the events that began on September 16, 2005 and continued through January 15, 2009.

During the January 15, 2009, Springer

answered Eight hours worth of Questions. There were two premises to the answers. First, Springer answered as to what he thought at the time of each Transaction and second considered at least some of the money given as gross income. Springer then answered as to expenses. The trial Judge told Springer at the begining of Trial the Jury would only consider each transaction as all gross income or not, theory. The Key to Counts One through Four was "mislead or conseal". On April 22 2009, the Tax Division told Springer only some of the transaction the grand jury considered gross income. Springer sought trial Subpoenas to bring in many who had testified by grand jury Subpoena that were not in the Tax Division theory of "gross income" to which the trial Judge denied because these transactions were not considered "gross income". However, these people would have shown that it was not uncommon for Springer to recieve large ammounts of money not alleged to be Services. This testimony would also have shown the testimony of Eddy Patterson James Lake Martin Dingsman, Lauren Ouwenga and Cindy and Arthur Hawkins was simply not credible or at least not credible in light of the resonable Doubt Standard. Hawkins was let out of jail after he testified.

    Ms. Meadors testimony was central to both Springers belief his cooperation with her, and the letters she received

(25.)

from several people who supported Springer.

Had Springer been able to call as witnesses Donna Meadors, Jerold Barringer, Douglas Horn, Melody Nelson, Mrs Patricia Turner, Larry Simms, these persons would have then allowed the jury to consider as credible Patrick Turner, Michael Burt, Paul Sturpo, Penny Datridge, Andy Owwors, and Lucky Bennett (and inca Dintren), Dick Clark also became relevant but he died.

The trial Judge informed Springer on October 9, 2009 that Springer could not subpoena Donna Meadors, Douglas Horn, or Melody Nelson because Springer had not complied with Toughy regulations. Springer did not understand how a Toughy Regulation overroad the Sixth Ammendment right to call witnesses to this complex Tax Case. The trial Judge allowed Brian Shern to testify about the theft of $2,000.00 on Sep. 16, 2005 but didn't allow Springer to show the jury, through pleadings filed by Mr. Sherns Attorneys, that he Admitted the money was stolen to the Tenth Circuit. No Cross Examination was Allowed.

Springer tried to Enter the GAO Report where the US Gov. found the forms by the Treasury Department did not comply with the PRA and for some reason the trial Judge would not let the jury have that report in evidence. Form 83 Is were also not Allowed in. Springer barely did get the Form 1040 or instructions in the record but that was a fight.

26

when Springer asked why not the court said something but Springer remembers not.

Needless to say being Pro-Se in front of the trial Judge was made impossible when Springer found out he was to testify in the narrative 2 days before Springer testified. Springer did not know what a trial narrative even was. As to testifying the record shows that no discussion with Springer as to danger and disadvantage occurred before trial but narrative testifying was both.

It is true Springer learned of Touhy regulations by the tax division on July 2, 2009. No discussion occurred before the trial Judge because the hearing was denied. Springer previously heard of Touhy when the U.S.A. oposed certain discovery in 08-278. Magistrate Cleary overruled Touhy and ordered compliance. Donna Meadors was included in the ones to be deposed. Her testimony was limited claiming secrecy and attorney privelege.

How Touhy applied to a Criminal Trial and not a civil case in light of the Sixth Amendment, although shocking, shows Springer's understanding was limited and lacking.

The only definition of Gift Springer had to go by prior to the middle of trial was 26 CFR 1.102 and Title 26 Section 102 and the Supreme Courts

holding in Duberstien v. CIR, (1960). Springer moved to dismiss on this issue alone. Though the trial Judge in a single word "denied" Springer's Motion. Springer nor the Trial Judge ever had any discussion about Gift or its eventual 3 page instruction to the Jury.

Whether it was about understanding the phrase "required by law," venue, rules of procedure and evidence, Toughy regulations, Gift, Jury instructions, Form 1040 and the PRA, where to deliver, seating and picking a jury, calling and cross examining witness, hostile or not, pro-se testifying in a narrative, the meaning of defraud, mislead, conseal, lawful function of the IRS, services, and post trial motions, including local civil rules, and the 2nd trial on Sentencing.

This list alone above should be enough to convince even some attorneys and pro-se defendants to never conduct there own cause in a criminal case and never waive the Sixth Amendment right to counsel.

Sentencing is another matter. The facts present at trial though not specifically found and those found by the trial Judge is the difference between $160K in tax loss and 14 points v. $.1 million in

-28-

in tax loss and 34 points. Wherever sentencing goes the Sixth Amendment is surely not following along.

The tax division present one theory for sentencing that took two days. The Trial Judges Probation officer presented a different theory. Springer presented a third theory. The Trial Judge after two full days found and even Fourth Theory. It took 3 weeks to present facts Springer may have owed $160 k. It took 15 days to obtain possible 14 points, and two days to almost tripple that by Judge found facts.

There was no discussion between Springer and the trial judge about the dangers and disadvantages of sentencing and self representation. These factors are readily apparent to anyone who goes through it. Sentencing guidelines becoming advisory renders a need to have a penetrating discussion between the trial judge and Springer all the more a must.

The Sixth Amendment may not currently stop a trial judge from finding facts to increase a sentence beyond those facts necessarily found by the jury verdict but at this point there is no doubt it should prohibit any person from losing there liberty on Judgement based upon a violation of

-29-

Springer's Sixth Amendment right to competent effective Counsel. The trial judge told Springer during trial that entering the instructions that do not accompany Form 1040 was slitting Springer's throat. Such information could have been conveyed under the penetrating inquiry or colloquy required by Padilla, Allen, Dawes, and Taylor. This danger or disadvantage in the middle of trial after Springer began his defense in chief shows Springer did not voluntarily, knowingly and intelligently waive his Sixth Amendment Right to counsel.

Springer has no doubt that with an effective competent attorney who has dealt with complex tax litigation, the outcome of the trial would have been much different. The Jury reported they were hung on Counts One, Three and Four. An attorney would have objected to an Allen charge after so much deliberation. Not guilty would be the result.

## Conclusion

Lindsey Kent Springer respectfully request an order for Writ of Error Coram Nobis vacating the April 23, 2010 Judgement being entered in violation of the Fifth and Sixth Amendment.

7.13.10
Date

/s/ Lindsey K Springer

-30-

# Table of Contents

| | | Pg. |
|---|---|---|
| I | Issues Presented. | -1- |
| II | Additional Facts | -2- |
| III | Supplemental Argument | -7- |
| A. | Test of Waiver | -9- |
| B. | U.S. v. Taylor 113 F.3d 1136 | -12- |
| C. | Complexity | -15- |
| D. | Apprehension of Nature | -17- |
| E. | Statutory Offense | -19- |
| F. | Range of Punishment | -19- |
| G. | Possible Defenses | -19- |
| H. | All other Factors | -22- |
| | Conclusion | -30- |
| | Table of Contents | -i- |
| | Table of Authorities | -ii- |

## Table of Authorities                                                                 pg.

| Case | Page |
|---|---|
| Cheek v. U.S. 498 U.S. 192 (1991) | 15 |
| Faretta v. California, 422 U.S. 806 (1975) | 7, 8, 12 |
| Iowa v. Tovar, 541 U.S. 77 (2004) | 9, 10 |
| Johnson v. Zerst, 304 U.S. 548 (1938) | 9, 10 |
| Maynard v. Boone, 468 F.3d 665 (10th 2006) | 10 |
| Moran v. Barbie, 475 U.S. 412 (1986) | 9 |
| Patterson v. Illinois, 487 U.S. 285 (1988) | 11, 12 |
| Powell v. Alabama, 287 U.S. 45 (1932) | 8 |
| Ratzlaf v. U.S., 510 U.S. 135 (1998) | 15 |
| Rush v. U.S., 256 F.2d 862 (10th 1958) | 23 |
| U.S. v. Brewer 486 F.2d 507 (10th 1973) | 24 |
| U.S. v. deShazar, 554 F.3d 1281 (2009) | 8 |
| U.S. v. Dawes, 895 F.2d 1581 (10th 1990) | 8 |
| U.S. v. Green, 08-2195 (10th Cir 2009) | 7 |
| U.S. v. Hughes, 191 F.3d 1317 (10th 1999) | 8 |
| U.S. v. MacKovich, 209 F.3d 1227 (10th 2000) | 8 |
| U.S. v. Padilla, 819 F.2d 952 (10th 1987) | 14 |
| U.S. v. Patterson, 140 F.3d 767 (8th 1998) | 7 |
| U.S. v. Platte, 401 F.3d 1176 (10th 2005) | 15 |
| U.S. v. Peppers, 302 F.3d 120 (3rd 2002) | 11 |
| U.S. v. Taylor, 113 F.3d 1136 (10th 1997) | 12, 13, 14 |
| U.S. v. Taylor, 828 F.2d 630 (10th 1987) | 24 |
| U.S. v. Turner, 287 F.3d 980 (10th 2002) | 10 |
| U.S. v. Willie, 941 F.2d 1384 (10th 1991) | 7 |
| Von Moltke v. Gillie, 332 U.S. 708 (1948) | 10, 12 |