United States District Court
Northern District of Oklahoma

| | |
|---|---|
| United States of America | ) |
| | ) |
| v. | ) 09-CR-043 |
| | ) |
| Lindsey Kent Springer | ) |

**FILED**
SEP 9 2010
Phil Lombardi, Clerk
U.S. DISTRICT COURT

Defendant's Reply To United States Opposition to Defendant's Motion For Release and Stay Pending Ruling Motion For Writ of Error Coram Nobis

Lindsey Kent Springer ("Springer") file his reply to United States Response in Opposition to Springer's Motion For Release and Stay of Judgment Pending Ruling on Motion For Writ of Error Coram Nobis and Appeal. (Doc. 416), and appointment of Counsel.

## This Court's Jurisdiction

Without again citing to a single case the United States opposes Springer's Motion (Doc. 416) for "Want of Jurisdiction." Resp. at 1. The sole basis in opposition is based upon the fact Springer has "timely appealed his Judgment and Sentence to the Tenth Circuit... and is represented on appeal by Jerold W. Barringer, Esq..." Resp. at 1.

Characterized as Springer's "most recent gambit to evade responsibility for his criminal conduct" the United States opines Springer's "assertion" is that "he did not knowingly and voluntary [sic] waive counsel." Resp. at 1. The United States never addresses knowingly or intelligently factors and only mentions voluntary. Resp. 2

1

In its opposition to Springer's Motion For writ of error coram nobis the United States did not cite to any record where Springer "voluntarily, knowingly and Intelligently" waived his Sixth Amendment Right to Counsel. They simply asked this Court to deny the motion either on its merits in the last sentence, or for lack of Jurisdiction.

<u>Warning of dangers of Pro Se Representation.</u>

The United States argues "defendant was warned of the dangers of pro-se representation, both by the Honorable Magistrate Judge Paul J. Cleary at the hearing regarding representation held on March 30, 2009 (doc. no. 23) and by the Honorable District Judge Stephen P. Friot at the motions hearing held April 22, 2009. (doc. no. 43, transcript doc. no 114, pp. 4-26.)

The United States citation to the hearing before Magistrate Cleary is misplaced. As Springer pointed out in his Motion For Writ of Error Coram Nobis and briefs in support thereof, as well as his Motion (doc 416) in U.S. v. Pidilla, 819 F.2d 952, 955, The 10th Circuit held "Faretta" required two seperate "examinations."

The first "examination" is did defendant voluntarily choose self representation. The central question is did defendant know of his right to competent counsel. A "Choice" between "incompetent" counsel or "unprepared" counsel and appearing pro-se is a dilemma of Constitutional magnitude." Padilla at 955 See also, U.S. v. Taylor, 113 F.3d 1136, 1141 (10th Cir. 1997)

2

The choice cannot be voluntary in "the constitutional sense" when the "dilema exist." Sanchez v. Mondragon, 858 F.2d 1462, 1465 (10th Cir. 1988).

The second obligation of the "trial court" is that it "must" determine whether the defendant "knowingly and intelligently waved his right to counsel." Id. It is the "Trial Judge" that "should conduct an inquiry sufficient to establish a defendants knowledge and understanding of the factors" relevant to defendants "decision to waive counsel." Sanchez at 1465; Quoting Padilla, 819 F.2d at 959.

It is the Trial Court and not the magistrate that "must" "examine" defendant to determine his "knowledge and understanding" of defendants decision to "waive counsel." Id.

The United States knowing there is a "strong presumption against waiver," Von Molke v. Gillies, 332 U.S. 708, 723, 68 S.Ct 316, 323, 92 L.Ed 309 (1948), directs this Court to the April 22, 2009 hearing from pg. 4-26, to conclude Springer "had a sense of the magnitude of the undertaking and the inherent hazards of self-representation at the time of Defendant's decision to proceed pro-se was voluntary." Resp. at 2 The presumption remains, the United States concedes Springer was never told about any "disadvantages" but argues Springer was told about the "dangers" only. Resp. at 1

A voluntary waiver and informing Springer of the dangers of self representation are not exclusive but one cannot be made

3

without both dangers and disadvantages being conveyed on the record.

The only "dangers" one may conclude conveyed by the trial court are as follows:

(1) "we will not... have a tag-team arrangement."
   H. Trans, 4.22.09, pg 6, ln. 15-16

(2) "Standby Counsel,... are not here to represent you...."
   pg. 6, ln. 23-25.

(3) "without a lawyer,... there would be items that you... might miss altogether at the trial stage..."
   pg 8, ln 21-24

(4) "it is... unwise to represent yourselves..."
   pg 10, ln 3.

(5) "under the law you will not get any special treatment..."
   pg. 10, ln. 11-12

(6) "you will not be entitled to continuances and procedural delays..."
   pg. 10, ln. 17-18

(7) "the government is not going to go easier on you..."
   pg 11, ln 22-23

(8) "you will not be able to claim on appeal that your lack of legal knowledge or skill constitutes a basis for a new trial..."
   pg. 12, ln 4-6

4

(9)   "You do understand the dangers and disadvantages of representing yourself."

Pg. 12, ln. 14-17.

Although these are not the Dangers meant by the Court. These are the only possible conveyances by the trial court where any Jurist could possibly identify as "dangers."

Springer cannot find a single time where the trial court informed Springer of "disadvantages" of self representation in a criminal trial, nor pretrial or post trial. The United States identifies no disadvantage "colloquy" because the trial court record shows none were made to Springer by the trial court.

Springer, already cloaked with "Standby Counsel," pg 3, ln 19-20, even asks the trial court how "standby counsel" is to work. Pg. 13, ln. 1-5.

Springer also sought understanding about how to get "assistance" regarding "Subpoena witnesses favorable to my defense" and the trial court simply directed Springer to "rule 17(b)." Pg. 14, ln 1-25.

Springer also explained his only issue about counsel was "an affidavit" that created a sticking point. Pg. 14, ln 6-7. This case involved transactions and support for Springer in his cases then before the district court. Springer did not think it fair for the Government to have knowledge of his financial condition and sought to communicate outside the presence of the Government Springer's ability to pay for or hire counsel. This was done before the Magistrate and not trial judge. See Taylor, 113 F.3d 1142. This was done

5

outside the context of waiver of counsel. No further inquiry was allowed or made. Worth noting is the Trial Court held Rule 17 hearing on whether Springer should receive Government assistance on defense witnesses outside the presence of the Government and found Springer and Stilley should receive such assistance. Doc. 141. The trial Court should have made the same inquiry outside the presence of the Government with regard to Springer's reasons he explained as the "sticking point." Pg. 14, ln. 7

Springer even explained his understanding the investigation against him was "ongoing." Pg. 15, ln. 8 The trial court's response was "you should first consult with your standby counsel." Pg. 15, ln. 20-21

The Trial Court no doubt confused its role regarding "advantages" of having a lawyer with its obligation to convey "disadvantages." Pg. 15, ln 2-4.

Then the Trial Court asked Springer if he understood the "nature of the charges against you." Pg. 16, ln. 7-8. This question was premised upon "you have filed motions for Bill of Particulars." Pg. 16, ln 10. Springer answers No. Pg. 16, ln 15. Springer continues "I have certain questions I don't understand." Pg. 17, ln. 2-3 The trial Court simply stated "We'll address that when we address the motions for Bill of Particulars." Pg. 17, ln 11-12

The First Bill of Particulars was docket on July 14, 2009 and the second was docketed 7 days before trial on October 19, 2009. Doc. 104, 201

6

The trial court found "For immediate purposes, ... you do at least understand, subject to the limitations you have described, the general nature of the charges against you." Pg 17, ln. 10-15

The next statement from the court states "If I conclude that your understanding of these charges is fatally deficient, then I'm not going to let you represent yourself." Pg. 18, ln. 14-17  Although this was said to Stilley, and not Springer, it should be clear understanding the charges was required for a presumed waiver.

Springer tried to understand the charges from March 18, 2009, June 15, 2009, July 30, 2009, September 30, 2009. Doc 8, 82, 105, 167. See also both Bill of Particulars. (Doc 104, 201) See also Doc 192

Out of these statements the Government argues "Defendant was aware of the nature of the charges, the range of allowable punishments and possible defenses, and was fully informed of the risks of proceeding pro-se." Springer respectfully disagrees,

Nature of the Charges.

Although Springer can read the indictment, understanding the nature of the charges was not made at the April 22, 2009 hearing (subject to the limitations which was the bill of Particulars filed on March 18, 2009.) See Doc. 7   At best this Court can find that after Springer returned from Wiggins deposition in California, 10,16,09, 5 days later, Springer received the Second Bill of Particulars on October 21, 2009. Doc 201 This was 5 days before trial and 0. days before pretrial conference. See Doc.192,

7.

There is no way the trial court understood the charges as of April 22, 2009. On July 2, 2009, the trial court in explaining its problem with "offense" and "required by law" asked the United States:

"I'm asking you, tell me, for jury instruction purpose, what provisions should I be looking at here."
H. Trans. 7.22.09 pg 125, ln 11-21.

The trial court's recognition of the term "regulations" in the United States "Trial Brief" causing the order for a Second Bill of Particulars shows as of October 13, 2009 the trial court still did not understand the nature of the charges. How could the trial court conclude in substance Springer understood the charges as of April 22, 2009, if the trial court didn't understand them until October 19, 2009?

The Government's conclusion Springer understood the charges as of March 30, 2009, or April 22, 2009 is clearly erroneous.

### Possible Defenses

Springer cannot find the term defense in the April 22, 2009 Transcript in connection with any colloquy anywhere. If the government could show what page number between 4-26 in which they rely for their claim they should be required to identify it. This Court never discussed any trial defenses with Springer on April 22, 2009. Springer did try to win dismissal before trial but even

8

regarding those defenses, the trial court's order denying dismissal is a minute sheet. See Doc. 100 The trial court spoke of each denial on the record but never made Rule 12(d) findings of facts or conclusions of law. Taylor, 113 F.3d 1141

Springer did not learn till the end of trial the trial court's definition of "gift" or that it found "Form 1040" complied with the "Paperwork Reduction Act" or the instruction on "venue"

Springer agrees the trial court was required to question and inform Springer of possible defenses ("must") but no such "examination" took place.

The United States conclusion the trial court discussed "defenses" with Springer prior to page 26 is clearly erroneous.

## Risks of Proceeding Pro Se

Springer cannot find a single statement about "Risk of Proceeding Pro Se" anywhere between pg 4-26 other than those outline on pages 4 and 5 of this Reply. (listing 9)

As outlined in Springer's Motion for Writ of Error Coram Nobis and both memorandums, Springer had no awareness of testifying in a narrative until the day before the government rested. Putting on a good faith defense in a narrative was certainly a "danger" or "risk" the trial court was required to disclose to Springer among many others to make sure Springer's decision was with eyes open. Without limitation Springer gives a few examples caused by the trial court's required role.

9

The trial court on July 2, 2009 addresses Springer's Motion For Suppression which was a "37-page document." The trial court never directs Springer this document violates local civil rules. The Government moved to strike and instead of this Court striking it ordered a Surreply Doc. 87. On December 9, 2009, this Court struck Springer's Motion For Judgment of Acquittal. Doc. 264

At no time did the trial court inform or inquire whether Springer knew the trial Court's Western District Rules, Local Northern District Civil Rules applicable in a criminal case, or how those could be used. Springer understands now.

The trial Court never told Springer it intended to enforce Touhy regulations at the criminal trial of Springer. Springer had recently learned about the United States use of Touhy regulations in USA. v. Springer, 08-278 (10-5037) to which the Court told the Government in that civil case Touhy regulations did not apply to Springer's subpoenas because Springer was the Defendant.

In this case on July 2, 2009, the United State tried to use Touhy in a Suppression hearing which this Court did not reach because it denied a Franks hearing and never allowed a Suppression hearing. Doc. 100.

The trial court refused Rule 17 subpoenas because Springer had not complied with Touhy regulations prior to the Rule 17 hearing.

These are just a few examples Springer was unaware of that significantly affected the outcome of the trial that if not for

10.

the absence of Sixth Amendment Counsel, the trial outcome would have been much different. The actual prejudice is endless.

The Government's claim this Court made Springer aware of the risks of proceeding pro-se is clearly erroneous.

### Magnitude of the Undertaking

The United States argues without citation to a single fact "The record establishes Defendant had a sense of the magnitude of the undertaking." Resp. at 2. To whatever this Court subscribes this phrase means, Springer obviously did not have proper sense.

Here the United States claim is clearly erroneous.

### Inherent Hazards of Self Representation.

The United States claims Springer was made aware of the inherent hazards of self representation. Resp. at 2. Springer has now browsed through the entire 20 pages of transcript cited generically in the April 22, 2009 transcript and finds not a single phrase "Inherent Hazard of Self Representation."

The trial Court did ask Springer if he understood that if he did not "abide by those rules," it may terminate self representation. H.Trans. 4.22.09. pg 11 ln. 1-5. The Court told Springer about disruption. pg. 11, ln 12.

There is not a single word on Hazards of Self representation. The United States is wrong again.

11

### Voluntary

The United States concludes Springer's decision was voluntary. In U.S. v. Taylor 113 F.3d 1136, 1141 (10th Cir. 1997) Taylor was found to have decided to represent himself because "he wanted to do so." At the time Springer was arraigned he was having to defend in 08-278 and in Tax Court in 3731-09L. Springer had never represented himself in any trial. Springer was also having to litigate in 06-156 which had taken 3 years to that point. There is not a single question by the trial court as to why Springer "decided to represent himself." None.

The United States cites to U.S. v. Willie, 941 F.2d 1384, 1388 (10th Cir. 1991) which the Taylor Panel discussed at length. Willie informed the Court he would not accept any court-appointed attorney. Taylor at 1142. Willie also "objected to any attempt by the Judge to violate his right of self-representation." 941 F.2d at 1389; Taylor 113 F.3d 1142. The Tenth Circuit concluded Willies' "repeated and unequivocal assertions of his right to self-representation, his continuous stubborn refusal to accept the services of admittedly competent and available counsel... and his clear expression that he could only work with an attorney who shared his views on taxation, constituted a valid implied waiver of his right to counsel." 941 F.2d at 1390.

Springer, like Taylor, and unlike Willie, "did not make repeated... assertions of his right to counsel." Taylor, 113 F.3d 1143

Springer never stated he would not accept any court-appointed attorney or attempted to object to any attempt by the Judge to violate that right. Willie, 941 F.2d at 1389; Taylor, 113 F.3d 1142.

Springer did not stubbornly refuse to accept the services of counsel, as Willie. See 941 F.2d at 1390. Springer used standby counsel at trial extensively. See Doc. 418, pg. 3. Springer did not complain when Mr. Williams made certain objections or sought to give Springer advice. T.T. ___

It is true Springer filed pre trial motions including a Bill of Particulars, Doc. 8, 82, 105, 167; see also 104, 201. All were denied by minute sheet, Doc. 100; other than "required by law", Doc. 104; and "regulation", Doc. 201.

As in Taylor, the Trial Court failed to advise Springer of the "perils and risks of self-representation" or that Springer's waiver was "understandingly and wisely made." Taylor, 113 F.3d 1142.

Voluntarily, Knowingly, and Intelligently.

The United States argued Springer voluntarily chose to proceed pro-se. Resp. 2. Although in the constitutional sense Springer objects to this claim, the United States never claims the waiver was knowingly and intelligently made.

Springer told the Court he is 12th grade educated. H.T. 4.22.09 pg 21, ln. 22. The Court was required to make a "penetrating and comprehensive examination of all the circumstances under which such plea is tendered." Taylor, 113 F.3d 1141-42.

13

"Examination" means of the Defendant. The trial court simply never made this examination. Springer found not a single question where the trial court asked Springer why he tendered a plea to the Magistrate. The Tenth Circuit directs this must be a "comprehensive formal inquiry of the defendant on the record.." Taylor, 113 F.3d 1142. All of these factors along with a "sense of the magnitude of the undertaking and the inherent hazards of self-representation at the time of his decision to proceed pro-se." See Padilla, 819 F.2d at 956.

There needed to be an "examination" and certain "factors articulated" which "must be conveyed to the defendant by the trial judge and must appear on the record.." No such "examination" or "factors" were conveyed or took place.

### Advantages of a lawyer.

Springer admits the trial court gave "some advantages" of having counsel to represent Springer. H.Trans 4/22/09 pg 7-8. But those advantages are not disadvantages. Advantages is defined as "a beneficial factor or combination of factors." American Heritage College dictionary. pg 19. "Disadvantage" on the other hand is defined as "an unfavorable condition" or "deprived of some necessities or advantages."

Although the defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently to choose self representation, he should be made aware of the dangers and disadvantages

14.

of self-representation. The trial court is required to ensure Springer was "fully aware of all the requisite information." Padilla, 819 F.2d at 958, 59.

In its Memorandum of Approval date 8.17.10 this court said the advice provided to Springer by Standby counsel enabled Springer to reduce the "likelihood that Springers "self-representation would make a difficult legal and factual situation much worse." Springer appreciates the characterization but "difficult" is hardly the best description. Springer attempted numerous times to obtain advice at trial and Springer found it beyond difficult to articulate the advice of both Mr. Williams and Burton. At times they simply did not agree and that left Springer beyond confused. See Vol. XII, pg 2673, ln 12-13; (over instruction books); See also pg 2738, ln 11-15. ("Standby counsel has tried to confer with these parties...") Burton was standby for Stilley. H. Trans 4.22.09, pg 4, ln 3-6

## Conclusion

The United States agrees Springer's purported waiver was not knowingly and intelligently made asserting it was voluntary. Resp. 2. The record from page 4-26 of the hearing on 4.22.09 does not show any penetrating examination of Springer as to why he proceeds pro-se, dangers or disadvantages of self representation, Springer's knowledge of rules, defenses, risks, or that Springer was aware of any "perils", and it was clear Springer was not aware of the nature of the charges as of 4-22-09, 7-2-09 or 10-13-09.

Respectfully Submitted
Lindsey K Springer

15.

## Certificate of Service

I hereby certify that on September 6, 2010, I mailed in U.S. Mail at Big Springs Texas, Defendants Reply to Government's Opposition to Defendant's Motion for Release pending ruling on Motion for Writ of Error Coram Nobis, to:

Court Clerk's Office
333 W. 4th St.
Tulsa, Oklahoma 74103

I further certify that all parties to this case will receive a copy through this Court's ecf system:

Charles O'Reilly
Acting U.S. Attorney Scott Woodward *
Oscar Stilley

* The Tulsa World reported on August 22, 2010 that Scott Woodward was "acting" and not U.S. Attorney, even though the Government in this case presents Mr. Woodward as the U.S. Attorney.

Lindsey K Springer
#02580-063
BIG-FCI
1900 Simler Ave
Big Springs Texas 79720

16