In The United States District Court
For the Northern District of Oklahoma

United States of America )
　　　　　　　　　　　　　 )
　　　　Plaintiff　　　　　　)
　　　　　　　　　　　　　 )
　　　v.　　　　　　　　　　)　　09-CR-043-SPF
　　　　　　　　　　　　　 )
Lindsey Kent Springer,　　　)
and Oscar Amos Stilley,　　　)
　　　　　　　　　　　　　 )
　　　Defendants　　　　　　)

**FILED**
FEB 16 2011
Phil Lombardi, Clerk
U.S. DISTRICT COURT

Memorandum in Support of
Motion for New Trial with
Suppression

Lindsey Kent Springer
# 02580-063
FCI - Big Spring
1900 Simler Ave
Big Spring TX 79720

✓ Mail　　　No Cert Svc　　　No Orig Sign
__C/J　__C/MJ　__C/Ret'd　__No Env
__No Cpys　✓ No Env/Cpys　__O/J　__O/MJ

# Table of Contents                                pg.

Newly Discovered Evidence                          1

Brief Summary of related Facts                     10

Issues Presented                                   13

  1. Shern and Bivens Defendants not authorized under § 7608(b)     15

  2. Sherns Affidavit was false as to IRS Conducting Criminal Investigation     19

  3. Tax Division purposefully confused Court between Grand Jury Investigation and IRS Criminal Investigation.

  4. Stilley was under investigation by Grand Jury prior to 1.20.06     24

  5. Sherns April 21, 2010 Testimony renders previous testimony regarding his obtaining Search warrant false to a material matter among others.     25

  6. This Court should find Sherns Testimony that he did not know his delegation of authority or charge after June 3, 2005 to present false and misleading intended to cover up previous false statements     26

# Contents Contd.

| | pg. |
|---|---|
| 7. Horn, Nelson, and Shern's response to Judge Frizzell's order dated 1.18.11 did not address bright line. | 29 |
| Affect of New Evidence | 32 |
| All Evidence affected | 33 |
| Conclusion | 35 |
| Certificate of Service | 36 |
| Appendix | App. 1 |

# Table of Authorities

| | |
|---|---|
| Anaya v. U.S., 815 F.2d 1373 (10th 1990) | 18 |
| Hale v. Henkel, 201 U.S. 43 (1906) | 24 |
| Holloway v. Arkansas, 435 U.S. 475 (10th 1978) | 17 |
| Neder v. U.S. 547 U.S. 1 (1999) | 21 |
| Stirone v. U.S. 361 U.S. 212 (1960) | 23 |
| Stuffels v. Hegarty, Fed Appx 814 | 18 |
| U.S. v. Aguilar, 515 U.S. 593 (1996) | 20 |
| U.S. v. Chanen, 549 F.2d 1306 (9th 1977) | 23 |
| U.S. v. Deberry, 430 F.3d 1294 (10th 2005) | 17 |

Authorities Cont'd          page

| Authority | page |
|---|---|
| U.S. v. Donaldson, 400 U.S. 531 (1970) | 22 |
| U.S. v. Erikson, 561 F.3d 1150 (10th 2009) | 20 |
| U.S. v. LaSalle, 437 U.S. 298 (1978) | 17, 18, 19, 20, 22, 23, 33, 35 |
| U.S. v. Williams, 504 U.S. 36 (1992) | 23 |

## Statutes Involved

| Statute | page |
|---|---|
| Title 26 § 7201 | 5 |
| § 7203 | 5 |
| § 7212 | 6 |
| § 7608(b) | 15, 19, 25, 26, 28-30, 32 |
| § 7803 | 18 |
| Title 28 § 547(1) | 32 |

In The United States District Court
Northern District of Oklahoma

United States of America  )
    Plaintiff  ) 09-CR-043-SPF
v.  )
Lindsey Kent Springer  )
and Oscar Amos Stilley  )

### Memorandum in Support of Motion For New Trial.

Lindsey Kent Springer ("Springer") files this Memorandum in Support of his Motion by Federal Rules of Criminal Procedure Rule 33 based upon newly discovered evidence. The interest of justice so requires a new Trial w/ Suppression.

### Newly Discovered Evidence

There are three significant events that materialized after Trial ending November 16, 2009. Sequentially, and first, Brian Shern testified on April 21, 2010 that he is a:

"delegate of the Secretary of the Treasury of the United States." Doc. 399, 39, ln 21-25. App. 2

When asked "when did you (sic) make you a delegate" Shern answered:

"I don't know." Doc. 399, 40, 1. App. 3

Mr. Shern went on to say he:

① of 36

"guess to answer your prior question about -- when I said "I don't know," I would assume I became a delegate whenever I became a Special Agent." Doc. 399, 40, ln. 11-13. App. 2

Springer asked Shern:

"Is there anybody between you and the Secretary of the Treasury that you get your delegation order to be a Special Agent from that you know of?" Doc 399, 40, ln. 15-17 App. 3

Mr. Shern's answer was:

"I'm not sure I know how to answer that." Doc 399, 40, ln. 18, App. 3

The Second evidentiary event occurring material to the outcome of this case is that on August 5, 2010, as modified on October 15, 2010, the Tenth Circuit reversed Honorable Judge Gregory Frizzells decisions denying Qualified Immunity by granting qualified immunity to Mr. Shern and 10 other Bivens Defendants for acts taking place on September 16, 2005, while Mr. Shern and the 10 others served a search warrant on Springer's home. The Tenth Circuit stated:

"Summary-Judgment is proper if 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."

See Order of October 15, 2010, App. 14

Springer was never allowed discovery in *Springer v. Horn, et al*, 06-CV-156, interlocutory appeal to the Tenth Circuit, at 09-5088, and at all times prior to August 5, 2010, the capacity of Shern and others in Springer's home on September 16, 2005 was as a:

"Special Agents with the Internal Revenue Service - Criminal Investigation." App. 31

Mr. Shern declared:

"As a Special Agent with the Internal Revenue Service - Criminal Investigation, I have the authority to perform all duties conferred upon such officers under all laws and regulations administered by the Internal Revenue Service, including the authority to investigate, execute and serve search warrants and arrest warrants, make arrests without warrant, carry firearms, make seizures of property subject to forfeiture, and to require and receive information, as to all matters relating to such laws and regulations." App. 30-31

On July 2, 2009, Springer sought information

③ of 36

from Mr. Shern about his experience with Search Warrants, but was prevented after objection by Mr. O'Reilly. Doc 383, 24, ln 4-10. Mr. Shern told this court:

> "I prepared the -- I wrote the search warrant affidavit, prepared the attachment A and B to the search warrant application." Doc. 383, 25, ln. 10-12

After objection, the Court prevented Springer from obtaining an answer to the question:

> "So I take it your testimony is, is that you typed out the whole thing." Doc 383, 25, ln 13-14.

In Mr. Shern's purported Affidavit he states:

> "As a new special agent, I'm receiving instruction and supervision from Special Agent Don Shoemake." Doc. 75-20 pg 2; Doc 383, 46, ln 17-19 (paragraph 4).

Springer pointed out that Mr. Shern's Affidavit on page 3 continued:

---

1. This issue has to do with the unsworn original, Springer, by this Court's order on April 22, 2009, obtained from the Clerk's office under seal.

④ of 36

"The following information was initially discovered in the course of an investigation and prosecution of Eddie Patterson." Doc 75-20, pg 3; Doc 383, 46-47, ln 25-1.

Springer pointed out to this Court:

"Now, this becomes a very important statement in Mr. Shern's affidavit because the government has tried to argue that when Lindsey Springer was added to the investigation of Eddie Patterson that that took place in June of 2005..." Doc 383, 47, ln 2-6

Springer informed this Court reading from Mr. Shern's Affidavit:

"Information was further developed when the investigation of Eddie Patterson was expanded to include Lindsey Springer with regard to violations of Title 26, 7201 and 7203." Doc 75-20, pg 3.[2]

Mr. Shern further stated:

"Information obtained during the investigation also suggests Springer's

---

2. This Court received the Clerk's office unsworn Affidavit as Defendant's Exhibit #1 at hearing on July 2, 2009. Doc 383, 43, ln 20-23

conduct may constitute a Title 26 72[12] violation." Doc 383, 47 ln 18-20; Doc 75-20, pg 3-4.

Mr Shern's Affidavit clearly refers to "this investigation." Doc 75-20, pg 3. In Mr. Shern's Declaration in 06-CV-156, he declares:

"The authority of Special Agents of the Internal Revenue Service - Criminal Investigation to execute search warrants is set forth in Section 7608(b) of the Internal Revenue Code (26 U.S.C.). On September 16, 2005, I and ten other Special Agents with the Internal Revenue Service - Criminal Investigation executed a search warrant..." App. 31 page 2 para 6

Although the Court's formal order denying Suppression or a Franks Hearing is docketed at #100, the Court's explanation is found in the July 2, 2009 Transcript at Docket # 383.

This Court, based upon the evidence said:

"Because while a matter is still being investigated by the IRS as a part of the Treasury department, whether it be strictly speaking civil or criminal or perhaps both, the matter becomes factually to entwined within that department to sort it out. So, the referral to the DOJ is the bright line that we're going to look at."

⑥ of 36

Doc. 383, 74, ln 17-23.

Mr. Shern's declaration is dated November 28, 2007 in Judge Frizzell's court. The Tax Division tendered the "bright line" criminal referral on June 15, 2009. See Doc. 80-2.

This Court inquired, "Under controlling case law, what is the event that provides the line of demarcation as of which a civil investigation must cease in deference to a criminal?" Doc. 383, 61, ln.16-19. Springer answered:

"When a criminal referral is known." Doc. 383, 61, ln 20-21

This Court stated at Doc. 383, 64, ln 4-7:

"Now, as I believe you indicated earlier in response to a question I had a few minutes ago, is it not true that in the LaSalle case the Supreme Court drew a bright line based on referral?"

Mr. O'Reilly told this Court that Exhibit 7 of Docket 75:

"to me is very clear, he was not under investigation, it was he might become so." Doc. 383, 67, ln 11-13.

After Mr. O'Reilly directs this Court to the June 10, 2005 "Grand Jury expansion authorization" he tells this Court:

"Also attached to that is various

(7) of 36

other documentation, which again corroborates Special Agent Shern's statement in the affidavit of when the -- how the investigation of Lindsey Springer began." Doc. 383, 69, ln 1-5.

This Court recognized that it was the June 3, 2005 letter, referred to in the June 10, 2005 letter, Docs 80-1 (6.10.05) and 80-10 (6.3.05), and;

"That is the criminal referral referring Mr. Springer to the Department of Justice Tax Division, seeking to have a grand jury investigation for potential Title 26 violations. And as noted on the face of it... Patterson Investigation expansion." And... "Title 26 grand jury investigation expansion concerning Lindsey K. Springer." Doc 80-10; See also Doc 383, 70, ln 11-19.

This Court pressed Mr. O'Reilly as to which date, June 3, 2005, or June 10, 2005;

"is the definitive demonstration of the date of referral?" Doc 383, 70, ln 20-24.

Mr. O'Reilly specifically answered this Court:

"The referral would be made by

the June 3rd letter. Because that comes from the IRS. That is their referral letter to the Department of Justice tax division seeking authorization to actually conduct a grand jury investigation of a potential Title 26 violation." Doc 383, 71, ln. 1-5.

Although Springer and this Court disagreed on the LaSalle factors, this Court asked Mr. O'Reilly to "respond briefly on the line of demarcation", Doc 383, 78, ln. 8, to which Mr. O'Reilly stated:

"That is just wrong. It is not a bright line for that. But as the Court noted, and I believe the Court is correct, it's when the case gets referred over.... When Special Agent Shern was assigned to this case -- I believe it was March or April of 2005, he, as any good agent would, went out and tried to find everything there was about the individual whom he was investigating...." Doc 383, 79, 2-17

This Court found:

"I have referred that there is no credible or reliable evidence that Agent Shern in any way materially mischaracterized either the activities or the overall mission..." Doc 383, 81, ln. 17-19.

(9) of 36

This Court concluded:

"Mr. Springer has not carried that burden. However, even if he had raised a significant doubt on that score, that doubt would be authoritatively resolved by the June 3 and June 10, 2005 documents that are attached to the government's response." Doc 383, 84, ln. 17-21.

Brief Summary of other related Facts.

Although the Government declared the Title 26 Grand Jury referral occurred on June 3, 2005, on October 21, 2009, Mr. O'Reilly and Snoke turned over the Grand Jury Transcript of Judith Patterson dated October 6, 2004. Doc 252, pg 3.

The Government informed this Court Mr. O'Reilly, Snoke, and Mr. Shern, first learned of the Horn and Nelson Grand Jury on October 6, 2009. Doc 252, pg 3.

This was contrary to Mr. Shern's Trial Testimony where Mr. Shern testified he knew about the Judith Patterson testimony before, or at the time, Stilley was being investigated by him and a DOJ Attorney. Doc 392, 1841, ln. 1-6, 8.

Mr. Shern explained he learned "After 2007 but before the indictment was issued." Doc 383, 84, 11-12

Mr. Shern also explained he learned of the October 6, 2004 Grand Jury after

the "IRS investigation" was opened. Doc. 392, 1841, ln. 1-3.

The Stilley "investigation" clearly was "ongoing" by the IRS as of May 6, 2004. See Horn, Nelso, and IRS Tim Arsenault memorandum of interview at Doc 75-8 (Exhibit 8).

Exhibit "B" Mr. Shern prepared with his purported Search Warrant Affidavit, list the name Oscar Stilley. App. 42.

The name Oscar Stilley appears on the Judith Patterson Grand Jury transcript dated October 6, 2004, Doc 224, Exh. 1

On December 15, 2005, Doug Horn sought a Grand Jury Subpoena on Oscar Stilley referring to Stilley as a Target or Subject. See Doc 81-4.

This Court also assumed a Department of Justice policy violation occurred when Mr. Shern or Mr. Horn failed to inform Stilley he was a target of a Grand Jury investigation existing by referral. Doc 383, 102, ln 15-16

Also, on September 17, 2005, Mr. Shern filled out a request to subpoena Stilley's records to Melody Nelson and placed an "?" on whether Stilley was a target of an investigation. Doc. 80

Mr. Shern explained the Stilley investigation:

"It was sometime after we already opened the IRS investigation of Mr. Stilley, and I was working with one of the tax division attorneys, I don't remember which one, but sometime well into the investigation."

Doc. 392, 1841, ln. 1-3.

The "Prosecution Team" produced a January 26, 2007 letter that stated Oscar Stilley was joined to the Patterson Grand Jury Investigation. Doc 80-6.

Stilley was subpoenaed to testify before Horn's Grand Jury on January 20, 2006, to appear on March 6, 2006. See indictment, pg 2. See also Doc 80-9.

One of the false statements Springer alleged for his requested Franks Hearing was:

"That the investigation of Eddie Patterson was expanded to include Lindsey Springer." Doc 383, 68, ln. 2-4

This Court stated on January 28, 2010:

"Nothing about the October discovery of the Patterson Grand Jury evidence changes the fact that no rights were infringed when Stilley was not advised of his status as a Target. As the Court has previously ruled, Constitutional rights are not abridged by a failure to advise a witness that he is the object of a criminal investigation..."
Doc. 293, pg 4

In the Patterson Plea Agreement between Eddie Patterson and the U.S. Attorney's office, the parties on August 30, 2004, agreed:

"Specifically, the United States agrees

to forego further prosecution in the Northern District of Oklahoma..." Doc 75 Exh. 22, pg 5-6

On September 16, 2005, Mr. Shern placed "Investigation Number" on the Inventory Listing of all items seized:

"750530384" See App. 40

The June 10, 2005 purported referral letter refers to the "investigation";

"Grand Jury Investigation
Patterson Investigation
Northern District of Oklahoma
DJ # 5-59N-7484
Concerning Lindsey K. Springer

The Treasury check returning $17,000 to Springer tendered January 10, 2006, says the Investigation number is:

"IRS 7505006401"

Issues Presented

1. Was Brian Shern and 10 others, as of September 16, 2005, prohibited from acting on behalf of the Secretary of the Treasury due to an institutional referral dated June 3, 2005?

2. Did Brian Shern falsely state on September 15, 2005 that he, as a Special Agent of the Secretary, was conducting a criminal

⑬ of 36

investigation of Springer at that time?

3. Did Counsel Prosecuting purposefully confuse this Court by interchanging a Grand Jury Investigation regarding Title 26 with a Criminal investigation by the Criminal division of the Secretary of the Treasury's Internal Revenue Service pertaining to Springer?

4. Did Counsel Prosecuting purposefully confuse this Court by interchanging a Grand Jury Investigation regarding Title 26 with a Criminal investigation by the Criminal division of the Secretary of the Treasury's Internal Revenue Service pertaining to Stilley?

5. Does Brian Shern's April 21, 2010 Testimony that he did not know the authority he had contradict previous given testimony warranting a hearing on Suppression, Suppression, a Franks hearing, and a resulting new trial?

6. Does the Tenth Circuit's finding Mr. Shern was a Special Agent under Title 26, § 7608(b) on October 15, 2010, rebut the claim institutional referral occurred on June 3, 2005?

7. Does the Court ordered response in 06-CV-156 filed by Horn, Nelson, Shern and 10 others, contradict Mr. O'Reilly's assertion the institutional referral ever took place, on June 3, 2005, or at any other time before or after?

(14) of 36

1. Brian Shern and the 10 others were not authorized to act under Title 26, § 7608(b) on September 15 or 16, 2005.

On September 15 and 16, 2005, Brian Shern and Ten other Federal employees levied a Search warrant on Springer's home deriving evidence used to present the Tax Divisions Trial Theory to the Grand Jury and petit Jury. Section 7608(b) in relevant part states:

"Any criminal investigator of the Intelligence Division of the Internal Revenue Service whom the Secretary charges with the duty of enforcing any of the criminal provisions of the Internal Revenue Laws, or any other criminal provision of law relating to internal revenue for the enforcement of, which the Secretary is responsible,..."

Mr. Shern and the other 10 Federal Employees declared under penalty of perjury in 06-CV-156 that they each were in Springer's home as "Special Agents with the Internal Revenue Service - Criminal Investigation." App. 30-31

Mr Shern further declared that on September 16, 2005, his authority as a Special Agent with the Internal Revenue Service - Criminal Investigation is to:

"perform all duties conferred upon such officers under all laws and regulations administered by the Internal Revenue Service, including the authority to investigate..." App 30-31

(15) of 36

Mr. Shern in his purported Affidavit said:

"Information was further developed when the investigation of Eddy Patterson was expanded to include Lindsey Springer with regard to violations of Title 26, 7201 and 7203." Doc. 75-20, pg 3.

This Court accepted Mr. O'Reilly's version of the bright line referral took place on June 3, 2005 because:

"the referral would be made by June 3rd letter." Doc 383, 71, ln. 1-5.

This Court also explained that the criminal referral referring Springer to the Department of Justice Tax Division was on June 3, 2005. Doc. 383, 84, ln. 17-21

Mr. O'Reilly confirmed Mr. Sherns declaration in his purported Affidavit that the June 3, 2005 letter:

"noted on the face of it..., Patterson Investigation expansion..." Doc. 383, 70, ln 11-19

Prosecutors[3] representations are entitled almost as much weight as an affidavit. "To reject the [Federal prosecutor]'s represent-

---

3. Springer's challenge to Mr. O'Reilly, or Shoke being authorized to prosecute under Title 28, § 547(1) is pending on appeal.