ations is not only to ignore 'the presumption of regularity'... but to disregard the [prosecutor]'s duty as an attorney. 'Attorneys are officers of the Court, and when they address the Judge solemnly upon a matter before the Court, their declarations are virtually made under oath.'" U.S. v. Deberry, 430 F.3d 1294, 1300 (10th Cir. 2005)(quoting Holloway v. Arkansas, 435 U.S. 475, 486, 98 S.CT 1173, 55 L.Ed 2d 426 (1978).

Mr. Shern's declaration in 06-CV-156 was false to a material matter. His purported Affidavit contains the same false and misleading statement.

This Court was correct that the Supreme Court's decision in U.S. v. LaSalle, 437 U.S. 298, 312 (1978) controls the determination of the "bright line" of when the power of the Secretary of the Treasury ceases. The power of the Secretary "under controlling case law";

"provides the line of demarcation as of which a civil investigation must cease in deference to a criminal..." Doc 383, 61, 16-19

"Now this Courts use of "civil" is meant "while a matter is still being investigated by the IRS as a part of the Treasury department, whether it be strictly speaking civil or criminal, or perhaps both, the matter becomes factually to entwined within that department to sort it out. So, the referral to the DOJ is the bright line were going to look at."

(17) of 36

Doc. 383, 74, ln. 17-23

Mr. Shern would not have any authority from the Secretary under Title 26, §7608(b), or any other section of title 26, "as long as... referral has been made to Justice for criminal prosecution." Stoffels v. Hegarty Fed Appx 814; See Anaya v. U.S. 815 F.2d 1373, 1377 (10th Cir. 1990)

Only a referral to the U.S. Attorney permits criminal enforcement litigation "to proceed." LaSalle at 312.

The Secretary at Internal Revenue Manual 1.2.48.7, as cited at Delegation Order 9-6, delegates to Criminal Division Special Agents:

"to refer all criminal matters within the jurisdiction of the Internal Revenue Service to the Department of Justice for grand jury investigation, criminal prosecution, or other criminal enforcement action."

Delegation Order 9-6 derives its authority at Treasury Order 150-35 only. This order, signed July 10, 2000, cites its authority at Section 7803(a) in the Internal Revenue Code.

Section 7803 gives the Commissioner of the Internal Revenue as the delegate of the Secretary of the Treasury, authority to administer tax laws. LaSalle, 437 U.S. at 308

LaSalle also directs the criminal division is established by the Secretary at 26 CFR §601.107. 437 U.S. at 314

Although this Court has never addressed its jurisdiction in the absence of IRS jurisdiction, the Court in LaSalle clearly explained the Special Agent's referral derived from each "revenue district." Id. See § 601.107 (2005) ("each district..."). There cannot be a Criminal referral from a Special Agent while at the same time the Special Agent keeps his Special Agent delegation under Title 26, § 7608(b) or any other statute in Title 26.

Mr. Shern's Affidavit was materially false as was his declaration in 06-cv-156, along with the other Ten Defendants in that case. Mr. Shern had no investigation authority as of September 16, 2005, as the Criminal referral had already been made.

2. Mr. Shern's purported Affidavit seeking a Search warrant was false in regard to his claims as a Special Agent for the IRS conducting a Criminal Investigation of Springer as of September 16, 2005.

Mr. Shern told Magistrate McCarthy that his request for a Search Warrant was based:

"As a new Special agent, I'm receiving instruction and supervision from Special Agent Don Shoemake." Doc 75-20, pg 2; Doc 383, 46, ln. 17-19.

During Trial, Springer asked Mr. Shern "And as s it here today, are you that

Internal Revenue Service employee that the false statements are--allegedly were made to? Doc 394, 2380, ln. 13-15.

Mr. Shern answered "One of them." Doc 394, 2380, ln. 16.

In Counts One through Four the Grand Jury alleged Springer misled Internal Revenue Service employees. Doc 2, pg 4 ("Springer told Internal Revenue Service employees..."); See also Doc 2, pg 8 ("False Statements to agents and employees of the Internal Revenue Service..."); Doc 2, pg 9, Doc 2, pg 11, Doc 2, pg 12.

Mr. Shern was the only witness that testified in front of the Grand Jury on March 9, 2009. Doc 394, 2366, ln. 1-5.

Mr. Shern could not have been in Springer's home on September 16, 2005, or January 15, 2009, in the U.S. Attorney's office, as an IRS employee, on behalf of the Secretary.

"If the defendant lacks knowledge that his actions are likely to affect the judicial proceedings, he lacks the requisite intent to obstruct." U.S. v. Aguilar, 515 U.S. 593, 599 115 S. CT 2357, 132 L. Ed 2d 520 (1996) See also U.S. v. Eriksson 561 F.3d 1150, 1159 (10th Cir. 2009)

Mr. Shern testified on April 21, 2010 that he did not know his legal authority to act as a Special Agent or where such power flowed from. Doc 399, 40, ln 1.

It is apparent from this new evidence Mr. Shern did not appear to understand his authority to act on behalf of the Secretary and when that authority ended.

Mr. Shern's misleading statements to Magistrate McCarthy show Mr. O'Reilly, and both Mr. Snoke and Mr. Shern, were intentionally making false statements about Mr. Shern's capacity to serve a Search Warrant under Title 26, § 7608(b), or his authority to conduct an "Internal Revenue Service - Criminal Division" Treasury criminal investigation. Knowing at the same time the U.S. Attorney in the Northern District of Oklahoma had received the June 3, 2005, Title 26 institutional bright line referral that had ended the Treasury's authority to do anything under the name Internal Revenue Service.

Mr. Shern's declaration in 06-CV-156 clearly declares his actions were authorized by Title 26, § 7608(b) when he knew otherwise by the June 3, 2005 letter adding Springer to the purported Patterson investigation. Doc 75-20, pg 3.

The Affidavit was materially false in regard to Mr. Shern's authority. "A false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision making body." Neder v. U.S., 547 U.S. 1, 144 L.Ed 2d 35, 119 S.Ct 1827 (1999)

3. The Tax Division purposefully confused everyone conserned between a Grand Jury Investigation and IRS Criminal Treasury investigation of Springer.

There is no question the LaSalle Supreme Court, along with United States v. Donaldson

400 U.S. 531, 535, 27 L.Ed. 2d 580, 91 S.CT 534 (1970) that a "referral" to a U.S. Attorney allows "criminal litigation to proceed." LaSalle 437 U.S. at 312.

An examination of Mr. Shern's words, Mr. O'Reilly's words, and Mr. Snokes words, regarding the word "investigation" confused and intended to confuse the Court:

"Your Honor... the representation that the defendant just testified to in the Blackstock case has no relevance to anything that has come up in this trial to date except through the mouth of the defendant. And the representation was to the Magistrate that Mr. Blackstock needed to be advised that there may be a conflict of interest because the defendant was under investigation by our office, Mr. Stilley was under investigation by our office." Doc. 395, 2490, ln. 1-7.

Mr. O'Reilly used the term investigation:

"to me is very clear, he was not under investigation, it was might become so." Doc. 383, 67, ln. 11-13

Mr. O'Reilly continues:

"various... documents... corroborates Special Agent Shern's statement... how the investigation of Lindsey Springer began. Doc. 383, 69, ln. 1-3.

of 36

Mr. O'Reilly continued:

"I believe... its when the case gets referred over... when Special Agent Shern was assigned... it was March or April of 2005... tried to find everything ... about the individual... he was investigating." Doc 383, 79, ln 2-7.

Mr. O'Reilly answered this Court:

"The referral... made... June 3, Letter. Because that comes from the IRS. That is their referral letter... Seeking... to... conduct a grand jury investigation of a potential Title 26 violation." Doc 383, 71, 1-5.

The IRS cannot seek to do a grand jury investigation. "The IRS cannot try its own prosecutions." LaSalle, 437 U.S. at 312

Only the grand jury is mentioned in the Bill of Rights, but not in the body of the Constitution." U.S. v. Williams, 504 U.S. 36, 47 (1992).

The "Grand Jury" "has not been textually assigned, therefore, to any of the branches described in the first three Articles." It "is a constitutional fixtures in its own rights." United States v. Chanen, 549 F.2d 1306, 1312 (CA9 1977)

In fact, the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people. Williams, supra; See Stirone v. U.S., 361 U.S. 212, 218 (1960); Hale v. Henkel

201 U.S. 43, 61 (1906)
The delegate of the Secretary of the Treasury authorized by the Secretary to make the institutional referral, pursuant to 26 CFR § 601.107, is authorized to make the referral at IR Manual 1.2.48.7. Once that referral is made the Secretary's power, and with it, the civil and criminal administration of the Internal revenue laws cease.

Mr. O'Reilly, Mr. Snoke, and Mr. Shern, knew the significance and simply misled Magistrate McCarthy (Horn, Nelson and Shern) the Grand Jury, this Court and the Trial Jury.

4. Stilley was under investigation prior to January 20, 2006 or March 6, 2006.

Mr. Snokes use of "investigation" along with "our office" in the Blackstock hearing, along with Horn and Nelsons plea with Patterson on August 30, 2004, which stated Patterson provided information in the "ongoing" criminal investigation of Springer and Stilley, The Rule 35(b) for Ms. Patterson, the October 6, 2004 Grand Jury testimony (in the matter of... Stilley), the Attachment B Shern wrote to his request for subpoena, his mystery "?" on September 17, 2005, Horn's "Target" statement to obtain approval to subpoena Stilley dated December 15, 2005, now coupled with Sherns testimony at Trial he learned of the October 6, 2004 Grand Jury after he "opened" an investigation on Stilley, show the intentional misleading and false

(24) of 36

statements were based upon Shern not knowing who his power came from or what stops and starts it. Doc. 399, 40, ln. 1-18.

5. The April 21, 2010 Testimony of Brian Shern renders this Court's reliance upon his previous testimony regarding his investigation False, warranting Suppression and Franks hearing, Suppression and a new trial.

Mr. Shern falsely stated he occupied Springers house under Title 26, §7608(b) on September 16, 2005 when he knew a criminal referral was made months early where he stated in his purported Affidavit on September 15, 2005 "Information was further developed when the investigation of Eddie Patterson was expanded to include... Springer..." Doc 75-20

How could Mr. Shern investigate Springer for 4 years and not know where his authority derived from?

The answer is simple. Mr. O'Reilly, Mr. Snoke, Mr. Horn, Ms. Nelson, and Mr. Shern, intended to confuse and hide the fact that After June 3, 2005, Mr. Shern had no authority to administer or enforce Title 26 or any regulations.

Mr. Shern's declaration carefully explains:

"I have the authority to perform all duties conferred upon such officers under all laws and regulations administered by the Internal Revenue Service.." App 30-31.

25 of 36

Although the record in 06-CV-156 was closed on interlocutory appeal before the Tax Division revealed their referral theory on July 2, 2009, by Mr. Shern, and the Ten others, that record was opened by Motion and order dated January 18, 2011.

There can be no doubt Mr. Shern was fully aware he was not in Springer's home on September 16, 2005, pursuant to Title 26, § 7608(b).

The Secretary could not have charged Mr. Shern with any duty to enforce any criminal provisions of the internal revenue laws, or any other criminal provision, at least after June 3, 2005, the bright line date of referral (purportedly).

His April 21, 2010 testimony that he did not know his "charge" from the Secretary shows he knew once a referral was made he had no charge from the Secretary and at all times previous he misled.

6. This Court should find Mr. Shern's testimony that he did not know his delegation of authority, or charge, from June 3, 2005 to present, false, misleading, intended to cover up previous false statements, and was intended to violate Springer's Constitutional and Statutory rights.

The Tenth Circuit recently overturned Judge Frizzell's order denying Qualified Immunity to Shern and the other 10 Bivens defendants, accepting their declarations that the 11 Bivens Defendants were

in Springer's home "acting under their authority." App. 5; and App. 10

The Panel found "the agents executed a search warrant at Mr. Springer's home." App. 6 The panel also explained that the "assistant United States attorney's instructed Agent Shern to... obtain a $17,000 Treasury Department check..." App. 6

The Panel found Springer agreed to "hold the IRS and its agents harmless from any claims, demands, damages, or legal action with respect to the seizure." App. 7

The Panel also said the Federal Tort Claims Act provides that "the United States is liable for loss of property... caused by the negligent or wrongful act or omission of any employee" while acting "within the scope of his office or employment. 28 U.S.C. § 1346(b)." App. 7

As of June 3, 2005, Mr. Shern, or the other 10 Bivens defendants were not acting within the scope of their "office" or "employment." ("civil investigation must cease in deference to a criminal") Doc. 383, 61, ln 16-19. See also Doc 383, 74 ln. 19-23 ("it be strictly speaking civil or criminal, or perhaps both, the matter becomes factually to entwined within that department to sort it out.")

Through out the Panels "order and Judgment" it refers to the Bivens Defendants as "agents" over 40 times. Agents for who? No doubt the reversal is premised on "agents declarations." App. 10

(27) of 36

In light of the November 28, 2007 declaration describing Mr. Shern's September 16, 2005 purported § 7608(b) authority, along with the Ten other Bivens Defendants, and with the June 3, 2005 "bright line" demarcation of when Department of Treasury Civil and Criminal "cease" to a U.S. Attorney, and both Mr. Shern's refusal to identify his authority did not exist after referral on April 21, 2010, with the Tenth Circuit's finding it was "agents" of the IRS who were in Springer's home on September 16, 2005, with Qualified Immunity, as of October 15, 2010, the evidence is clear.

Mr. Shern did not have any authority of the Secretary of the Treasury as of June 4, 2005, and his false declaration he, the 10 Bivens Defendants, the Tax Division, allowed the Tenth Circuit to be completely misled by false declarations.

In 06-cv-156, in response to the District Court ordering Mr. Shern and the 10 other Bivens Defendants to address Springer's motion to reconsider summary judgment filed December 20, 2010, due to this Courts bright line being June 3, 2005 when it said "Because while a matter is still being investigated by the IRS as part of the Treasury Department", Mr. Shern and the 10 Bivens Defendants stated through their counsel:

"Last, IRS Special Agents are authorized to execute search warrants. 26 U.S.C § 7608(b). Doc 209, pg 3. App. 27

Counsel for Mr. Shern and the 10 Bivens Defts.

(28) of 36

Defendants mischaracterize Springer's Motion showing an intention to not address the material false declarations presented to the Court by Mr. Shern and the 10 other Bivens Defendants.

Neither Horn or Nelson rely or even mention the June 3, 2005 referral letter Mr. O'Reilly, Snoke and Shern, convinced this Court to rely upon for the authorization to prosecute Springer.

7. Horn, Nelson, and Shern's response to Judge Frizzell's January 18, 2011 order does not address or identify the bright line this Court found was June 3, 2005.

There is no question the official capacity of Brian Shern, and when David O'Mielia received referral to use his prosecution authority regarding Title 26 related offenses, have been brought into serious question by three new events.

First, Mr. Shern's lack of knowledge on April 21, 2010, as to his authority to act as a delegate of the Secretary of the Treasury when the institutional referral was ongoing by all accounts.

Second, the Tenth Circuit reversing Judge Frizzell's denial of Qualified Immunity to Shern and the other 10 Bivens defendants was based upon the declarations Mr. Shern and others were acting under Title 26, § 7608(b) which means no Grand Jury referral was in place.

Third, Horn, Nelson, and Shern were ordered to file a substantive response to Springer's

Motion to Reconsider the Qualified Immunity and prosecutorial immunity extended to Horn, Nelson, and the 11 Bivens defendants. Their response failed to identify the referral their prosecutorial immunity claim was based upon. App. 25-28

The short summary is that the 11 Bivens Defendant at all times on September 16, 2005, claimed to be acting as:

"Any Criminal investigator of the Intelligence Division of the Internal Revenue Service whom the Secretary charges with the duty of enforcing any criminal provision of the Internal revenue laws..."

See 26 U.S.C. § 7608(b).

If Shern was acting "with the duty to enforce" and if, as he declared, the Secretary charged him to enforce any criminal provision of the internal revenue laws, then there could be no June 3 or 10, 2005 institutional referral to David O'Mielia.

Yet this Court denied both a Franks hearing and Suppession hearing on July 2, 2009 due to representation of O'Reilly and Snoke.

For an example, Mr. O'Reilly explained when Donna Meadors testified in the Patterson Case Mr. O'Reilly referred to her involvement as a "cooperating Agent." Doc. 71, pg 15

A cooperating Agent means cooperating with the U.S. Attorney. In Mr. Shern's Declaration he declares:

"On or about April 26, 2005, I was

(30) of 36

assigned as the case agent to conduct an investigation of Lindsey Springer for allegations of violations of Title 26 United States Code... On September 15, 2005, I presented an application and affidavit for search warrant to search Springer's residence..." App. 31.

By their response to Judge Frizzell, their was no institutional referral on June 3, 2005 or at any other time. App. 27

Mr. O'Reilly represented the June 3, 2005 letter as the institutional referral while the Prosecutors, as of June 3, 2005, did not assert their prosecution was based upon the purported June 3, 2005 letter to Judge Frizzell. In response to his order, Horn, Nelson, Shern and 10 others filed response entitled;

"Defendants' Response to Springer's motion to reconsider dismissal on Summary Judgment Grounds due to Material false statements." App 25

Neither Mr. Shern, Horn, Nelson, or the other 10 Bivens defendants ever address the "material false statements" allegation. In fact, the term false appears once in the Title of the response but never addresses the substance of the motion as ordered by the Court.

The Motion was docketed on December 20, 2010, and it was not til after Bivens

(31) of 36

Defendants' filed nothing within the time provided by rules for response, that Judge Frizzell ordered a response by February 8, 2011.

Springer attaches a copy of his motion so this Court can see Horn, Nelson, and Mr. Shern's response. There is no explanation as to how 11 Bivens Defendants remained with § 7608(b) authority after an institutional referral or when that institutional referral lawfully occurred.

### Affect of New Evidence.

The purported prosecutors who were ordered to explain their Title 26 prosecutorial authority refused to address their Title 28, § 547(1) prosecution authority and where it derived.

Mr. Shern equally did not assert what he purportedly told Judge McCarthy that:

"Information was further developed when the investigation of Eddie Patterson was expanded to include Lindsey Springer..." Doc. 75-20, pg 3.

Mr. Shern statement "Last, IRS Special Agents are authorized to execute search warrants. 26 U.S.C. § 7608(b)." App. 27 rejects that an institutional referral either exists or was even made. Mr. O'Reilly, Mr. Snoke, and Mr. Shern

(32) of 36

directed such referral was June 3, 2005.

Without an institutional referral no prosecutorial authority exists under Title 26. It is "the Secretary of the Treasury and the Commissioner of Internal Revenue are charged with the responsibility of administering and enforcing the Internal Revenue Code," LaSalle, 437 U.S. at 308. Not U.S. Attorneys.

This Court should find the failure of Horn, Nelson, or Shern to address Springer's claims of false statements in their declarations in 06-CV-156 to be new evidence that contradicts Mr. O'Reilly, Mr. Snoke and Mr. Sherns previous statements to this Court.

All evidence is affected.

Everything gathered by Mr. Shern under § 7608(b) for 4 years, or more would be obtained in violation of LaSalle and in bad faith.

That evidence includes all evidence on September 16, 2005, taken from Springers home and all evidence obtained, before or after, gathered as a result of that unlawful levy.

This new evidence would also affect Mr. Sherns construction of statements made to him as intending to mislead or conceal from the IRS, as well as the allegation Springer made false material statements to Internal Revenue Service employees, as the Grand Jury alleged.

(33) of 36

This new evidence would also impact Mr. Shern's credibility which each Count relied upon his interpetation of Services, gift, income, in his presentation of Springer's alleged false statements.

The new evidence is overwhelming. Springer will finally show for now that the June 3, 2005 purported referral letter is a prosecutorial fraud on the Court.

During the end of Trial Mr. Shern was asked to explain his role in this case and he said to the question "What are your current responsibilities as a special agent";

"As a Special agent, I investigate potential criminal violations of the Internal Revenue Code and other financial violations." Doc 392, 1807, ln. 17-19

Mr Shern said he is what is called the "case agent" with "respect to the case against Mr. Springer and Mr Stilley." Doc 392, 1807, ln. 20-22.

Mr. O'Reilly asked when Mr. Shern was "assigned to this investigation" which Shern answered "April of 2005." Doc 392, 1807, ln. 23-24. Mr. Shern testified he had been the case agent for a "pretty long time." Doc 392, 1808, ln. 11-12

Mr. Shern was asked by Mr. O'Reilly about answers Springer gave to Mr Shern concerning money "payments" Springer never denied receiving, that had Mr Shern "taken Mr. Springer at his word" there

would have been "no reason to continue the Criminal Investigation." Doc. 392, 1815, ln. 18-21.

As of June 3, 2005 the investigation was not an IRS criminal investigation but purportedly a Grand Jury institutional referral from a "Special Agent in charge." App. 37

Either the referral letter is a complete fraud or Mr. Shern's Affidavit is premised upon false claims of authority and his declaration, and the 12 others, in 06-cv-156 are outright perjury as to § 7608(b) authority or prosecutorial immunity.

## Conclusion

Springer request this Court, after hearing, on this new evidence, suppress all evidence obtained in violation of LaSalle, Franss, make a definite determination when the demarcation from the Secretary to the U.S. Attorney occurred ("bright line") and find either no prosecutorial power over laws related to internal revenue was conveyed to David O'Miulia prior to indictment, depriving both the Grand Jury and this Court of Jurisdiction, or if referral is found then find Mr. Shern, Mr. O'Reilly, and Mr. Snoke intentionally misled this Court regarding the Grand Jury investigation with an institutional criminal investigation, that Mr. Shern obtained a search warrant in violation of LaSalle, and under false

35 of 36

statements of his authority, and that a new Trial with the unlawfully used evidence suppressed be ordered as to all counts.

A motion for Evidentiary Hearing is filed simultaneously herewith.

Respectfully Submitted

*Lindsey K Springer*
# 02580-063
FCI Big Spring
1900 Simler Ave
Big Spring TX 79720

## Certificate of Service

I hereby certify that I mailed Springer's Motion for New Trial with exhibits on February 8, 2011 to Clerks Office, 333 W. 4th St, Tulsa, Okla, 74103.
I further certify that all parties will receive service of this motion through the Courts ECF System.

Charles O'Reilly
Oscar Stilley.

*Lindsey K Springer*

(36) of 36