Case 4:09-cr-00043-SPF   Document 440-2 Filed in USDC ND/OK on 02/16/11   Page 1 of 20

-1-

## Index To Appendix

1. Excerpts From 4.21.10 — App. 1
2. Tenth Circuit order 8.5.10 — App. 4
3. Tenth Circuit order 10.15.10 — App. 23
4. Bivens Defendants Response 1.25.11 — App. 25
5. Excerpts Shern Declaration — App. 30
6. June 10, 2005 purported referral — App. 37
7. Inventory listing 9.16.05 (part) — App. 40
8. $17,000 Treasury Check — App. 41
9. Excerpts Shern Declaration "B" (part) — App. 42
10. Springer's Motion to Reconsider in Bivens Case — App. 43

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                      Case No. CR-09-43-SPF

LINDSEY KENT SPRINGER and
OSCAR AMOS STILLEY,

    Defendants.

-------------------------------

TRANSCRIPT OF SENTENCING PROCEEDINGS

BEFORE THE HONORABLE STEPHEN P. FRIOT

UNITED STATES DISTRICT JUDGE

APRIL 21, 2010

VOLUME I OF III

```
 1              THE COURT:  Mr. Springer, cross-examination.
 2                         CROSS-EXAMINATION
 3   BY MR. SPRINGER:
 4   Q.   Good morning, Mr. Shern.
 5   A.   Good morning.
 6   Q.   Mr. O'Reilly referred to you as a special agent, correct?
 7   A.   Yes.
 8   Q.   Special agent for the Secretary of the Treasury; is that
 9   correct?
10   A.   For the Internal Revenue Service.
11   Q.   Internal Revenue Service?
12   A.   Yes.
13   Q.   Not the Secretary of the Treasury?
14   A.   I believe the Internal Revenue Service falls under the
15   Secretary of the Treasury.
16   Q.   Okay.  And you are a delegate of the Secretary of the
17   Treasury; is that correct?
18              MR. O'REILLY:  Objection.  Beyond the scope of direct
19   and relevance.
20              THE COURT:  Overruled.
21              THE WITNESS:  Can you repeat the question, please?
22   Q.   (BY MR. SPRINGER)  Are you a delegate of the Secretary of
23   the Treasury of the United States?
24   A.   Yes.
25   Q.   Okay.  When did you (sic) make you a delegate?
```

App. 2

BRIAN SHERN - CROSS BY MR. SPRINGER                              40

```
 1   A.   I don't know.
 2          MR. O'REILLY:  Objection, Your Honor; relevance.
 3          THE COURT:  Overruled.  We'll -- I'm going to hear
 4   this for a while, we'll see how much, but it will be
 5   overruled.
 6   Q.   (BY MR. SPRINGER)  When you say "special agent," that's
 7   what you're referring to is you're a delegate of the Secretary
 8   of Treasury; is that correct?
 9   A.   Yes.
10   Q.   Okay.  And --
11   A.   I guess to answer your prior question about -- when I said
12   "I don't know," I would assume I became a delegate whenever I
13   became a special agent.
14   Q.   Okay.  Are you familiar -- scratch that.
15          Is there anybody between you and the Secretary of the
16   Treasury that you get your delegation order to be a special
17   agent from that you know of?
18   A.   I'm not sure I know how to answer that.
19   Q.   Thank you.  If you would turn to Exhibit -- Government's
20   Exhibit Number 134, please -- excuse me -- 1134, please.  Do
21   you remember testifying earlier today with regard to Dale
22   Hedberg -- I'm sorry, 1001, I'm sorry, Your Honor.  I'm sorry.
23   I'm sorry.  I'm sorry.  It's 1001.  I'm sorry, Agent Shern.
24   It's 1001; Exhibit Number 1001.
25          Do you remember testifying earlier about a check written
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 3

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 5, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

LINDSEY K. SPRINGER,

    Plaintiff-Appellee,

v.

CHRISTOPHER D. ALBIN; JASON C. WHITE; DONALD A. ANDERSON; MARC K. COLLINS; KATHY L. BECKNER; DONALD G. SHOEMAKE; BRIAN SHERN; WILLIAM R. TAYLOR; SCOTT A. WELLS; DIANA S. MEGLI; LOY DEAN SMITH,

    Defendants-Appellants.

No. 09-5088
(D.C. No. 4:06-CV-00156-GKF-FHM)
(N.D. Okla.)

---

### ORDER AND JUDGMENT[*]

---

Before **McKAY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

APP. 4 

Lindsey K. Springer, proceeding pro se,[1] brought a *Bivens* action against eleven special agents of the Internal Revenue Service (IRS), asserting that they violated his Fourth Amendment rights by stealing $2,000 during or following the execution of a search warrant at his home. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (recognizing cause of action for damages against federal agents acting under their authority who allegedly violated plaintiff's Fourth Amendment rights). The district court denied the agent's motion for summary judgment, which was based in part on qualified immunity. In this interlocutory appeal, the agents appeal the district court's denial of qualified immunity. We first conclude that we have jurisdiction under 28 U.S.C. § 1291 to consider the legal questions presented in this appeal. *See Thomas v. Durastanti*, 607 F.3d 655, 658-59, 662 (10th Cir. 2010) (recognizing that this court considers only legal questions when considering interlocutory appeal from denial of qualified immunity). Also, we conclude that there was no clearly established law that the agents' conduct violated the Fourth Amendment. Accordingly, we reverse the denial of qualified immunity and remand to the district court to enter judgment in favor of the agents.

---

[1]  Because Mr. Springer has proceeded pro se at all times, we liberally construe all of his filings. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

App. 5

## BACKGROUND

On September 16, 2005, the agents executed a search warrant at Mr. Springer's home as part of an investigation into his tax activities. The warrant authorized seizure of currency and other items. During the execution of the warrant, Jeanie Springer, Mr. Springer's wife, told the agents about currency in her bedroom dresser drawer. The currency consisted of $20 and $100 bills separated into bundles. Agent Loy Dean Smith photographed the currency, and Agents Donald A. Anderson and William R. Taylor separately counted it in front of Mrs. Springer. Both agents determined there was approximately $19,000. Agent Taylor prepared an evidence tag for the currency, stating on the tag that there was approximately $19,000 in cash. Based on the evidence tag, Agent Christopher D. Albin then recorded in the inventory of items seized that approximately $19,000 had been seized pursuant to the warrant.

Agents Taylor and Brian Shern took the currency to a bank to have it counted and to obtain a cashier's check. The bank teller, using a counting machine, counted the money twice, each time informing the agents that there was only $17,000. The agents obtained a cashier's check in that amount.

A week later, Mr. Springer filed a motion in district court for the return of the currency. *See* Fed. R. Crim. P. 41(g). The court denied the motion without prejudice. Thereafter, assistant United States attorneys instructed Agent Shern to return the money to Mr. Springer. Agent Shern obtained a $17,000 Treasury


App. 6

Department check and gave it to Mr. Springer. Upon receiving the check, Mr. Springer signed a release, agreeing to hold the IRS and its agents harmless from any claims, demands, damages, or legal action with respect to the seizure.

Approximately two months later, Mr. Springer brought this *Bivens* action against the agents seeking the return of the $2,000 and damages of $1,000,000 from each agent for violating his Fourth Amendment rights. Three agents moved to dismiss the complaint for failure to state a claim upon which relief could be granted, asserting the lawfulness of the seizure of the currency under the warrant and the unavailability of a *Bivens* remedy because Mr. Springer had a remedy under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-2680.[2] The district court denied the motion, reading Mr. Springer's allegations broadly to include the possibility the $2,000 was taken at his home. Also, noting "the Fourth Amendment is not confined to seizures that are the outcome of a search," the court could not conclude at that time "that the protection of the Fourth Amendment could not extend to a seizure of Springer's $2,000 if it occurred sometime after the IRS agents' search of Springer's home." Aplt. App., Vol. 1 at 49. Lastly, the court decided that the FTCA was not an exclusive remedy.

---

[2] The FTCA generally provides that the United States is liable for "loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b).

The agents then individually filed answers and collectively moved for judgment on the pleadings, asserting that because Mr. Springer had not presented a constitutional claim, they were entitled to qualified immunity and that he had not alleged facts showing that each agent was involved personally in the alleged wrongful conduct. The district court denied the motion. First, the court declined to alter its previous conclusion that it lacked sufficient evidence to determine whether the agents' alleged conduct violated the Fourth Amendment. Also, the court decided that the availability of a remedy under the FTCA or state law did not defeat a *Bivens* action. Further, citing *Peoples v. CCA Detention Centers*, 422 F.3d 1090 (10th Cir. 2005), *vacated in part*, 449 F.3d 1097 (10th Cir. 2006) (en banc) (per curiam), the court noted that the Tenth Circuit has not determined "whether the availability of FTCA and/or state court remedies precludes [Mr. Springer] from asserting a *Bivens* claim." Aplt. App., Vol. 2 at 271. The court therefore concluded that Mr. Springer had adequately alleged a constitutional violation against the agents. The agents appealed, but later withdrew their appeal.

The agents also moved in district court for summary judgment arguing that they are entitled to qualified immunity because their conduct did not violate the Fourth Amendment and the alleged Fourth Amendment violation is not clearly established. The district court denied summary judgment, first noting that it had already rejected the agents' argument that no Fourth Amendment claim could

exist. Further, the court found that there are genuine issues of material fact remaining for trial "concerning whether the amount of money discovered in [Mr. Springer's] house was actually $19,000 . . . or only *approximately* $19,000" and "whether, where and how $2,000 of the cash disappeared." Aplt. App., Vol. 2 at 370-71. Also, the court found that it had previously rejected the agents' argument that no Fifth Amendment claim was available because Mr. Springer had an adequate post-deprivation remedy under the FTCA.

The agents moved to alter or amend the judgment under Fed. R. Civ. P. 59(e), asserting their entitlement to qualified immunity because their conduct did not violate Mr. Springer's Fourth Amendment rights in light of available post-deprivation remedies and because the alleged Fourth Amendment right, if it exists, is not clearly established. The district court denied the motion, deciding a Fourth Amendment right was clearly established because *Bivens* had been in effect for more than thirty years. Also, the court pointed to *Carlson v. Green*, 446 U.S. 14, 19-20 (1980), where the Supreme Court held that an available remedy under the FTCA did not defeat a *Bivens* claim. Thereafter, the agents appealed from the denial of Rule 59(e) relief. The next day, they filed an amended notice of appeal, appealing from both the opinion and order denying their motion for summary judgment, as well as the order denying Rule 59(e) relief.

## JURISDICTION

As an initial matter, we consider Mr. Springer's motion to dismiss for lack of jurisdiction. He makes three separate jurisdictional arguments.

First, Mr. Springer argues that this appeal is untimely because the agents previously appealed from the district court's denial of qualified immunity asserted in their motion for judgment on the pleadings, but later withdrew the appeal. He contends that that motion and the summary-judgment motion raised the same arguments and that the agents failed to present new evidence in the summary-judgment motion to support the same qualified immunity claim they previously raised. We conclude that Mr. Springer's argument lacks merit.

Although there is some overlap between the agents' qualified-immunity assertions in their motion for judgment on the pleadings and those in their motion for summary judgment, the arguments in the summary-judgment motion were more fully developed and relied on the agents' declarations, which were not referred to in the motion for judgment on the pleadings. Furthermore, the district court's analysis of the motion for judgment on the pleadings focused on the allegations in the complaint, whereas the court's analysis of the motion for summary judgment looked to the evidence presented in the light most favorable to Mr. Springer. *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). Due to the difference in analysis,

> [i]t is clear that a defendant may assert qualified immunity through a motion to dismiss, take an appeal from the denial of such a motion, and if the appeal is resolved unfavorably to him, renew the issue of qualified immunity by way of a motion for summary judgment, appealing once again, if necessary, from the denial of the summary judgment motion.

*Walker v. City of Orem*, 451 F.3d 1139, 1146 n.5 (10th Cir. 2006); *see also Behrens*, 516 U.S. at 306-11 (recognizing that interlocutory appeals are permitted both at appeal of denial at dismissal stage and at later appeal of denial of summary judgment after further factual development).[3]

Next, Mr. Springer argues that we lack jurisdiction to hear this appeal because the district court found that the agents' qualified immunity claims are based upon disputed facts that must be decided by a jury. "[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995); *see also Thomas*, 607 F.3d at 659 ("An appellate court lacks jurisdiction in an interlocutory qualified immunity appeal to resolve *genuine* disputes of fact."). In other words, "we are not at liberty to review a

---

[3] Even if Mr. Springer's argument had merit, the agents withdrew their first appeal, and this is therefore our first opportunity to consider the qualified immunity issue. *Cf. Grant v. City of Pittsburgh*, 98 F.3d 116, 120 (3d Cir. 1996) (deciding there was no merit to argument that party may not appeal denial of motion for summary judgment where motion raises same legal arguments as prior motion to dismiss that was not appealed).

district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1152 (10th Cir. 2010) (quotation marks omitted). Indeed, our review must "scrupulously avoid second-guessing the district court's determinations regarding whether [a plaintiff] has presented *evidence* sufficient to survive summary judgment." *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997).

But under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949), "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Under the doctrine, "summary judgment determinations *are* appealable when they resolve a dispute concerning an abstract issue of law relating to qualified immunity–typically, the issue whether the federal right allegedly infringed was clearly established[.]" *Behrens*, 516 U.S. at 313 (alteration omitted) (citation omitted) (internal quotation marks omitted).

"When a district court denies qualified immunity because of a factual dispute, that finding is not jurisdictionally dispositive on appeal if the defendants argue that immunity applies even under the plaintiff's version of the facts."

*Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1070 (10th Cir. 2010) (quotation marks omitted); *see also id.* at 1074. Thus, "a district court's decision concerning the existence of a factual dispute is not dispositive of jurisdiction if the defendants can persuade us that, viewing those facts in the light most favorable to the plaintiff, qualified immunity is warranted." *Thomas*, 607 F.3d at 662.

Even though the district court in this case concluded "that controverted issues of fact remain, [we] may consider the legal question of whether the [agents'] conduct, taken as alleged by [Mr. Springer], violates clearly established law." *Thomas*, 607 F.3d at 659. Even under the facts alleged by Mr. Springer, we decide a "purely legal" issue of whether those facts can "support a claim of violation of clearly established law." *Johnson*, 515 U.S. at 313 (quotation marks omitted). We therefore are not required to resolve any genuine issues of material fact. And as the agents argue, whether currency was seized, lost, or stolen is irrelevant to the legal questions posed in this appeal.

Next, Mr. Springer argues that we lack jurisdiction because a Rule 59(e) motion applies only to judgments and the district court's orders of April 7, 2009 denying summary judgment and of May 21 denying Rule 59(e) relief were not judgments. The Supreme Court has stated, however, that a district court's "order rejecting the defense of qualified immunity at . . . the summary judgment stage is a 'final' judgment subject to immediate appeal." *Behrens*, 516 U.S. at 307. It

therefore follows that the summary-judgment order may be challenged by a Rule 59(e) motion before an appeal is taken. *See* Fed. R. Civ. P. 54(a) (defining "judgment" as "any order from which an appeal lies"); *Lora v. O'Heaney*, 602 F.3d 106, 110 (2d Cir. 2010) (stating timely filed Rule 59 motion tolls time for filing appeal from ruling denying qualified immunity); *Roque-Rodriguez v. Lema Moya*, 926 F.2d 103, 106 (1st Cir. 1991) (deciding that because district court's rejection of qualified immunity and denial of summary judgment was "functional equivalent of a judgment for purposes of appeal," court's order "came within the purview of" Rule 59(e)); *cf. Camacho v. City of Yonkers*, 236 F.3d 112, 114 n.2 (2d Cir. 2000) (assuming without deciding that appeal from order denying dismissal on qualified immunity grounds was appealable judgment for purposes of Fed. R. App. P. 4(a)(4)(A)(iv) and Rule 59(e)).

## FOURTH AMENDMENT VIOLATION

We review de novo the district court's decision to deny the agents' summary-judgment motion asserting qualified immunity. *Armijo*, 601 F.3d at 1070. Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). We "construe the record in the light most favorable to" Mr. Springer. *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quotation marks omitted).

-11-

App. 14

"Because of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010) (quotation marks omitted). Qualified immunity "protects governmental officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quotation marks omitted). Qualified immunity therefore is unavailable only (1) if a constitutional violation occurred and (2) if the violated constitutional right was clearly established when the violation occurred. *Id.* at 815-16. We may address these inquiries in any order. *Id.* at 818. Mr. Springer has the burden of satisfying each inquiry. *Thomas*, 607 F.3d at 662.

The agents argue that there was no Fourth Amendment violation because they participated in a seizure pursuant to a valid warrant, which authorized the seizure of currency. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has defined a seizure as "some meaningful interference with an individual's possessory interests in [his] property." *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (quotation marks omitted).

In his complaint, Mr. Springer contended that the alleged $2,000 theft by the agents occurred either during the execution of the search warrant at his home or on the way to the bank. He stated that "$ 19,000 was seized and taken pursuant to a Court Ordered Search Warrant from [his] home and possession and because only $ 17,000.00 of said seizure actually survived from the search of [his] home to the depositing bank" the agents "stole $ 2,000.00 from [him]." Aplt. App., Vol. 1 at 38. Further, he asserted that the theft occurred at his home while the agents served the warrant. *Id.* at 39. Liberally construing Mr. Springer's complaint, he clearly asserts that $19,000 was seized pursuant to a warrant and the $2,000 theft occurred after the seizure. Mr. Springer, however, does not challenge the initial seizure of the $19,000.[4]

We need not and do not decide whether the agents violated Mr. Springer's Fourth Amendment rights. Instead, we can more easily and quickly decide the clearly-established law question. *See Pearson*, 129 S. Ct. at 820. In declining to decide the Fourth Amendment issue, we follow the principle of not deciding a constitutional question when it is possible to avoid doing so. *Id.* at 821.

We conclude that there was no clearly established law holding that a theft of money during the execution of a valid search warrant violates the Fourth

---

[4] For the first time on appeal, Mr. Springer asserts that the search was defective. Aplee. Br. at 22. We will not consider this issue because it was not raised in the district court. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992).

Amendment. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part on other grounds by Pearson*, 129 S.Ct. at 818.

> The key to the analysis is notice–an official somehow must be on notice that the conduct in question could violate the plaintiff's constitutional rights. There need not be precedent declaring the exact conduct at issue to be unlawful, as long as the alleged unlawfulness was apparent in light of preexisting law.

*DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001) (quotation marks omitted). "[F]or the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Thomas*, 607 F.3d at 669 (quotation marks omitted). "[T]here is no need that the very action in question have previously been held unlawful." *Safford Unified Sch. Dist. No. 1 v. Redding*, 129 S. Ct. 2633, 2643 (2009) (brackets omitted) (quotation marks omitted). Rather, it is only necessary that the unlawfulness of the conduct be apparent in light of the existing law. *DeSpain*, 264 F.3d at 979. The plaintiff has the burden to cite law he believes is clearly established. *Thomas*, 607 F.3d at 669.

Mr. Springer has failed to meet his burden. His citation to *Bivens* is insufficient to show the unlawfulness of the agents' conduct. *Bivens* generally established a cause of action for damages against federal agents acting under their

authority who violate a plaintiff's Fourth Amendment rights. 403 U.S. at 389. But the factual situation that led the Court to decide that the plaintiff's complaint stated a cause of action under the Fourth Amendment in *Bivens*, is quite different from that here.

Furthermore, neither the Tenth Circuit nor the Supreme Court had case law on point in September 2005 establishing that a theft by federal agents of lawfully seized currency during the execution of a valid search warrant violated the Fourth Amendment. Other circuits, however, had considered a similar issue by September 2005. Those circuits split on the Fourth Amendment issue.

Three of the four cases that had addressed the failure to return lawfully seized property had held that there was no Fourth Amendment violation. In *Shaul v. Cherry Valley-Springfield Central School District*, 363 F.3d 177, 179 (2d Cir. 2004), a school teacher filed a § 1983 action against school officials for unreasonably searching his classroom and taking certain items.[5] He contended that the failure to return the items was an unreasonable seizure of them. *Id.* at 187. Because the initial seizure was reasonable, the Second Circuit held that the defendants' failure to return property did "not, by itself, state a separate Fourth Amendment claim of unreasonable seizure." *Id.*

---

[5] A *Bivens* suit against a federal agent is the federal equivalent of a suit against State officials under § 1983. *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006). Thus, we cite to both *Bivens* and § 1983 cases as authority.

-15-

App. 18

In *Fox v. Van Oosterum*, 176 F.3d 342, 344 (6th Cir. 1999), the plaintiff filed a § 1983 action seeking the return of his driver's license. The Sixth Circuit held there was no seizure and no violation of the plaintiff's Fourth Amendment rights, because the plaintiff was not challenging the initial seizure of his wallet, but, rather, only the refusal to return the license to him. *Id.* at 349, 350 (noting that seizure was complete before defendants refused to return license). The court pointed out that "the Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of property." *Id.* at 351. "Once the act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies." *Id.*

In *Lee v. City of Chicago*, 330 F.3d 456, 458-59 (7th Cir. 2003), the plaintiff's car was impounded for evidentiary purposes. The plaintiff, in his § 1983 action, did not dispute this seizure. Rather, he contended that the City of Chicago's refusal to return the car after concluding its search unless he paid a fee was an additional seizure under the Fourth Amendment. *Id.* at 460. The Seventh Circuit disagreed, holding that the Fourth Amendment applies to an individual's interest in retaining property, not in regaining property that has been lawfully taken. *Id.* at 466. "Once an individual has been meaningfully dispossessed, the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable." *Id.* "Conditioning the car's release upon payment of towing and storage fees after the search was completed neither continued the

App. 19