United States District Court
Northern District of Oklahoma

United States of America

v.                                    09-CR-043-SPF

Lindsey Kent Springer

Reply

**FILED**

MAR 14 2011

Phil Lombardi, Clerk
U.S. DISTRICT COURT

Springer files reply to USA's opposition to Springer's motion for Hearing and New Trial. Springer established the USA's use of "IRS Criminal Investigation", "Internal Revenue Service Criminal Investigation", "criminal investigation" interchangeably with "Grand Jury Investigation" was confusing and intentional resulting in Springer's right to a grand jury indictment and jury trial free of unlawful conduct being violated.

To explain this prejudice upon Springer that resulted in obtaining the conviction, the USA states an institutional referral:

"did not deprive the ability of the IRS Special Agents to assist the grand jury investigation." Doc 441 at 5.

The USA argues, without citing any authority, Special Agents retain the enforcement authority involving "criminal provisions of the internal revenue laws, of which the Secretary is responsible..."; citing Title 26, § 7608(b), to "execute and serve search warrants issued under authority of the United States." Doc 441 at 5

1

Now that the USA admits their "assist the Grand Jury theory," this Court must first determine whether the "assist" theory after <u>Institutional Referral</u> provides the Secretary with retention of the power to enforce "any criminal provisions of the internal revenue laws... other... law relating to internal revenue <u>for the enforcement of which the Secretary is responsible</u>... is in the performance of his duties..."

Springer clearly demonstrates the Secretary of the Treasury retains no enforcement authority after institutional referral, civil or criminal.

1. Secretary is in cooperating capacity with the U.S. Attorney.

The Secretary of the Treasury cannot "try its own prosecutions." <u>U.S. v. LaSalle</u> 437 U.S. 298, 308 (1978) "A refferral to the Justice Department permits criminal litigation to proceed." After referral the authority to prosecute "is reserved to ... United States Attorneys. 28 USC § 547(1)." Id.

Until refferral, the IRS's criminal investigation "does not inhibit" the authority of the IRS to conduct investigations..." <u>Anaya v. U.S.</u> 815 F.2d 1373, 1377 (10th Cir. 1990).

The Supreme Court held the refferral must be institutional. 437 U.S. at 313

The test of faith is to be looking at the "IRS as an institution." Anaya supra Prior to referral "responsibility of... enforce

2

ing the Internal Revenue Code." _LaSalle_ 437 U.S. at 308.

"The designation of "Special Agent" and "revenue agents" have little significance. U.S. v. Garden 607 F.2d 61 (3rd Cir. 1979). See _LaSalle_ 437 U.S. at 308-11 and _Donaldson v. U.S._ 400 U.S. 517, 535-36 (1971)

Internal Revenue Manual 1.2.48.7 direct referral to U.S. Attorney be made by Special Agent. Title 28 § 547(1) requires a refferal to "his district." Each revenue district has an intelligence division. _LaSalle_, 437 U.S. at 314 citing 26 CFR § 601.107.

The Supreme Court refers to the post referral period as "Interagency Cooperation." Id. at 312. After referral, authority to settle is with the U.S. Attorney. Id.

Providing information the IRS has gathered before institutional referral is completely different than Special Agents' claiming after referral to have the authority to serve search warrants or remain in any enforcement or lawful capacity under any provision of law.

2. Grand Jury Investigation prohibits Secretary of the Treasury enforcement

The grand jury belongs to no branch of the institutional government serving as buffer or referee between the government and the target. U.S. v. Williams 504 U.S. 36, 47 (1992) "Institutional referral is a prophylactic restraint." _LaSalle_ 437 U.S. at 313. The role of grand jury is a "principal tool of criminal accusation." _Anaya_ at 1348

citing LaSalle 437 U.S. at 312.

The office of grand jury "agent" would clearly make the Special Agent of the IRS and the grand jury on one side with no buffer or referee:

> "The most important function of a grand jury is to stand between prosecuting authorities and the suspect as an unbiased valutor of evidence."

U.S. v. Anderson, 577 F.Supp. 223, 232 (D. Wyo. 1983. See U.S. v. Claiburne 765 F.2d 784, 795 (1st Cir. 1988).

The grand jury process is abused when the prosecutor uses it for... a substitute for discovery." U.S. v. Jenkins 904 F.2d 549, 559 (10th Cir. 1990)

Though the Secretary's enforcement power is said to be institutionally to the U.S. Attorney, by referral on June 3, 2005, the USA now maintains:

> "IRS Special Agents to assist the grand jury investigation." Doc. 441 at 5.

3. Timeliness of Motion

The USA argues Springer's motion is out of time or fails to raise new evidence. A motion is untimely unless it is due to excusable neglect. Bad faith requires a showing of fraud, or deceitful or dishonest action. Mock v. T&Y 971 F.2d 522, 531 (10th Cir. 1992) The USA has acted in bad faith

4

"Attorneys are officers of the court and when they address the Judge solemnly upon a matter before the court, their declarations are virtually made under oath." U.S. v. Deberry 430 F.3d 1294, 1300 (10th Cir. 2005).

There is no doubt this court used "cease", "difinitive demonstration", "bright line", and "line of demarcation" to explain the meaning of institutional referral.

"Excusable neglect" means showing (1) no unfair prejudice, (2) length of delay, (3) reasons for delay, (4) good faith, U.S. v. Vogle 374 F.3d 976, 981 (10th Cir. 2004).

There is no unfair prejudice to the USA simply because the conviction was obtained in violation of grand jury clause, as the grand jury ceased being a grand jury by the unlawful alignment of IRS Special Agents (12 of them) as assistants of the "grand jury". The U.S.A. has never asserted till now IRS Special Agents are Grand Jury assistants. Doc 441 at 5

The delay in raising Springer's issues are a direct result of the USA and Mr. Shern's misleading the court of the IRS's investigation with that of the grand jurys investigation.

The length of delay was due to the confusion caused by comingling IRS investigation with grand jury.

Good faith is certainly in Springer's favor as the acts of the USA and Mr. Shern (and the other 11) were the institutions of Bad faith.

This court has inherent supervisory authority over grand juries. McNabb

5.

<u>v. U.S.</u> 318 U.S. 322, 340-41, 346-47 (1943). Springer equally satisfied the 5 part test under the rule of both newly constructed evidence and new evidence.

(1) after trial

From the beginning Shern claimed "case agent" assignment explaining he was to "conduct an investigation." <u>Doc. 135 in 06-CV-156</u>, 11.28.07 Shern declared he and "Ten other Special Agents with the Internal Revenue Service Criminal Investigation..." served a September 15, 2005 Search warrant on September 16, 2005. Both ASUA Horn and Nelson declared they were assigned "a case involving an investigation by the Internal Revenue Service." <u>Doc. 126, 134 in 06-CV-156</u>. The grand jury alleged Springer gave false statements to Special Agents, post referral, who were now;

"assist[ing] the grand jury investigation." <u>Doc. 441 at 5</u>.

The USA claims the fact ASUA Horn or Nelson knew about nor relied upon the USA's proffered June 3, 2005 "letter" was neither relevant or new evidence. <u>Doc 441 at 6</u>.

On July 2, 2009 the USA told this court that because:

"that comes from the IRS. That is their nefferral letter... seeking authorization to actually conduct

6

a grand jury investigation of potential Title 26 violations." Doc. 115, 71, ln. 15.

Examining the previous evidence surrounding the referral in light of the Tenth Circuits' official capacity reversal, Shern's April 21, 2010, not knowing his post referral capacity which would not have changed from June 3, 2005 to and including April 21, 2010, and the fact Horn nor Nelson relied upon the June 3, 2005 "letter" to pursue prosecution of Springer, show the new evidence and new construction of previous evidence satisfies the first prong of the 5 part test.

(ii) Failure not caused by lack of diligence.

Springer attempted to discover issues surrounding Horn and Nelson at the scheduled suppression hearing on July 2, 2009. The Court prevented Springer. Springer tried to reach Shern's authority at trial and the court prevented Springer correctly finding Sherns capacity was not a jury issue.

The USA explains Shern's answer on April 21, 2010 of "I don't know" or his explanation he guessed his enforcement authority stemmed from when he became a Special Agent, was his:

"inability to understand Defendants question." Doc. 441 at 4

The USA continues to maintain after

7

exposure to their misuse of Springer's right to a grand jury free from the government that:

"IRS Special Agents were authorized to conduct the criminal investigation." Doc. 441 at 5

Although the USA states this Court discussed the relationship between the 12 Special Agents and their role with the grand jury, a review of the record says otherwise.

Although the distinction separating agency cooperation with another agency, or an agency providing an agent as a witness to the office of grand jury may be difficult for the most brilliant scholar. Once the enforcement theory is properly exposed, the errors become clear.

The USA employed a grand jury to subpoena witnesses, used Special Agents to serve the subpoenas, and continued to use the Secretary to enforce laws related to internal revenue. Thus appears the "assist" theory.

Mr. Shern told the jury he had been the "case agent" for "a pretty long time." Doc. 392, 1808, ln. 11. Shern testified he had been "assigned to this investigation." Doc. 394, 2367, ln. 11.

Shern is the only person who testified to obtain the indictment. Doc. 392, 1830, ln. 20-23. Shern testified he "wrote the search warrant affidavit and Exhibit A and B. Doc. 115, 25, ln. 10-12

Shern told the jury the "Internal Rev-

8

enue Service employees alleged in the indictment was himself, Shoemake and Siuils. Doc 394, 2380, ln. 16-18.

Shern testified had he taken Springer at his word:

"there would have been [no] reason to continue the criminal investigation." Doc 392, 1815, ln 18-20

Through out the trial the USA insisted Shern did not indict Springer "it was the grand jury that" did. Doc 392, 1837, ln. 7-9

(a) The Stilley investigation.

Although Shern prepared the Search warrant Exhibits listing "Oscar Stilley", the USA explained Shern's misrepresentation to Stilley in May, 2006, that Stilley was not under investigation was an "innocent" "misrepresentation." Doc 71, pg 18, n. 7. The USA explained Shern understood the investigation "was of Defendant Springer." Id. Shern told Stilley he was not under criminal investigation. Doc. 71, pg 17. The USA had claimed Stilley did not become "a target of the investigation until January of 2007." Doc 71 at 18.

The USA stated Shern did not know of the October 2004 Grand Jury Investigation until the "October 6, 2009 pretrial witness interview of Ms. Patterson." Yet prior to the USA's November 20, 2009 assertion, Shern testified he had learned of the 2004 Grand Jury:

"after 2007 but before the indictment."

9

Doc. 392, 1841, ln. 6; compare Doc 252, at 3.

Yet the USA told this court neither Shern or Snoke knew of the 2004 grand jury.

Mr. Snoke told this court he told Stilley during the Blackstock hearing in May 2006 that "Mr. Stilley was under investigation by our office." Doc. 395, 2489-90, ln. 1-7. Snoke was not at the October 2004 or March 2006 grand jury hearing.

The USA stated Snoke "did not know Stilley was under investigation prior to his March 9, 2006 grand jury appearance." Doc 252 at 6.

Mr. Snoke told this court Mr. Woodward was sworn in as U.S. Attorney in January, 2010, see Doc 292 n.1, whereas the Tulsa world reports that office remains "unfilled," Article January 9, 2011 by Jim Myers.

Stilley proffetically told this court that Mr. Shern's explanation that "criminal investigation has different meanings at different times" when trying to find the "LaSalle bright line";

"just wrecks our whole system."
Doc 115, 99, ln. 12-23

The USA explained Shern's confusion as Stilley "was only a witness." Doc 71, pg 18.

(b) IRS Contract.

The Tenth Circuits October 15, 2010 order shows the June 3, 2005 "letter"

10

is a fabrication of a purported referral by the USA to explain away the Meador use of Summons during a time when, prior to October 21, 2009, the only literal evidence an "ongoing investigation" existed was the August 30, 2004 plea agreement of Eddie Patterson with Horn and Nelson, and the May 6, 2004 memorandum of interview between IRS Special Agent Tim Arsenault, Horn, Nelson, and Mr. Patterson, See Doc 75-22.

Both Springer and Stilley are named by Shern in his Affidavit for Search, and Exhibit B, yet the USA stated as of September 16, 2005, January 20, 2006, and March 9, 2006, neither Shern or Snoke knew Stilley was under investigation.

The Contract dated January 10, 2006 shows Shern, on behalf of the Internal Revenue Service, and not the grand jury or U.S. Attorney Asset forfieture, agreed money was "seized... in the course of a criminal or civil investigation..." Doc 135, Exh 6 in 06-CV-156.

Judge Frizzell in granting prosecutorial immunity to Horn and Nelson premised that decision on the "IRS is investigating" Springer for "alleged tax evasion and failure to file income tax returns," Doc. 150 at 2 in 06-CV-156 dated 11.25.08.

Horn, Nelson, Shern, and the Ten others claimed "As the Internal Revenue Service release of claim was executed in Oklahoma." Oklahoma law governed the contract. See Doc 156 at 22 in 06-CV-156.

The June 3, 2005 referral theory did not surface until Mr. O'Reilly fabricated

11

it to defeat Bad faith use of Summons during a grand jury referral.

(c) No referral letter produced for October 2004 Grand Jury.

Not only has Horn or Nelson ever declared reliance upon a grand jury referral, they have never identified any referral.

Perhaps the USA in fabricating the June 3, 2005 and June 10, 2005 letters considered this when they state Springer was added to the non existent Patterson investigation.

Consider who is the subject of the August 30, 2004 plea agreement. It is Mr. Patterson. Who testified on October 6, 2004? Mrs. Patterson. The USA says this was a "Non Tax" Investigation. Doc 80-10 Yet the Patterson case was a Tax Case. See Doc 75-22.

When Springer asked Mr. Shern what his current authority was in this case he said, after objection that was overruled, "I don't know." Doc 399, 40, ln 1-13

Had Shern told Magistrate McCarthy he did not know his authority would a search warrant been issued? No

Had Shern told the Grand Jury he did not know his delegation what would that result have been?

The Franks Hearing and Suppression Hearing Springer was prevented from having would have revealed all that is being revealed now.

(iii) evidence is not merely impeaching.

The USA argues Shern's lack of knowledge is merely impeaching. Shern's answer shows his not understanding Stilley's question was more than a misunderstanding.

Shern's use of the grand jury to expand the IRS's discovery tools is forbidden.

"The likelihood that discovery would be broadened or the role of the grand jury infringed is substantial if post referral use of the summons authority were permitted." LaSalle 437 U.S. at 312.

Section 7608 derives the same authority and enforcement power as §§ 7601, 7602, 7604 and 7609. Once Institutional referral is made all authority of the Secretary is suspended.

In this case the grand jury used § 7608 to gather evidence neither the IRS, as an institution, had, or that the grand jury was aware of.

The new evidence shining upon existing evidence changes the construction and application of all the evidence obtained by Meadors, Shern, and the grand jury relative to Stilley.

(v) New evidence is principal to issues

Not only would Franks and Suppression produce a different result of the evidence, the trial outcome would be entirely different after suppression.

In addition statements made to Shern would also result in a different outcome because those statements were not made to an IRS employee enforcing tax law but at best a witness.

13.

In addition, all of Stilley's Grand Jury Subpoena and production would be suppressed virtually removing Stilley from any charge whatsoever.

Springer claims once the issue of grand jury agent is resolved in Springer's favor, this result should render the entire grand jury process employed a sham.

The Court in U.S. v. Kilpatrick 575 F. Supp. 325, 336 (D.C. Colo. 1983) found the office of IRS Agent/Grand Jury Agent/and Prosecution Assistant, was a man of many occupations the Judge said "I know not." See also 594 F. Supp 1324, 1328-29 (D.C. Colo. 1984) ("psuedo-investiture")

The 10th Circuit in U.S. v. Erickson 561 F.3d 1150, 1159 (10th Cir. 2009) drew a line between an "ancillary proceeding" independent of the Court or grand jury.

There is no doubt the new evidence goes to many dominant issues.

(v) The new evidence along with old evidence's new construction will result in suppression, a new trial and acquittal

As explained above the new evidence, new construction of old evidence, suppression and then a new trial, will likely result in acquittal.

Stilley removed, statements removed, and evidence removed, would not even support obtaining an indictment. Springer has a right to a grand jury as a buffer and not the IRS's grand jury.

14.

Finally, without a proper referral there is no jurisdiction for the U.S. Attorney, Grand Jury or This Court. This Court is a Court of limited jurisdiction.

It is presumed that a cause lies outside this limited jurisdiction, See Turner v. Bank of Am. 4 Dall 8, 11, 1 L.Ed 718 (1799), and the burden rests upon the party asserting jurisdiction, McNutt v. General Motors, 298 U.S. 178, 182-83, 80 L.Ed 1135, 56 S.CT 780 (1836), quoted in Kokkonen v. Guardian Life Ins. 511 U.S. 375, 377, 128 L.Ed 2d 391 (1994) A Judgment without jurisdiction is void. Johnson v. Zerbst 304 U.S. 458, 467-68 (1938)

## Conclusion

Springer request this Court grant Springer an Evidentiary hearing on his Motion for New Trial, for Franks and Suppression Hearing, suppress evidence obtained unlawfully, and set a new trial date.

Respectfully
Lindsey K Springer
#02580-063
FCI BIG SPRING
1900 Simler Ave
Big Spring TX 79720

---

1 Willey v. Coastal Corp 503 U.S. 131, 136-37 (1992) ("which cannot be expanded by judicial decree.") The lack of sworn evidence by a referral renders the judgment void. With evidence of referral most evidence is suppressed.

15.

## Certificate of Service

I hereby certify I mailed Springers Reply regarding Motion For New Trial and Evidentiary Hearing to the Court Clerk, 333 W. 4th St, Tulsa Okla 74103.

I further certify that all parties will receive service through this Courts ECF System.

Charles O'Reilly
Oscar Stilley

3.9.11
date.

/s/ Lindsey K Springer

16.