IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

       Plaintiff,

v.                        Case No. 09-CR-043-F

Lindsey Kent Springer, et al.,

       Defendants.

DECLARATION OF LINDSEY KENT SPRINGER

IN SUPPORT OF MOTION TO VACATE, SET ASIDE, AND CORRECT

CONVICTION, SENTENCE AND JUDGMENT

# FILED

**MAR 11 2013**

**Phil Lombardi, Clerk**
**U.S. DISTRICT COURT**

Lindsey Kent Springer
Prisoner # 02580-063
Federal Correctional Institution
1900 Simler Ave
Big Spring, Texas 79720

___ Mail    ___ No Cert Svc    ___ No Orig Sign

___ C/J    ___ C/MJ    ___ C/Ret'd    ___ No Env

___ No Cpys    ___ No Env/Cpys    ___ O/J    ___ O/MJ

-a-

## INDEX TO DECLARATION OF LINDSEY KENT SPRINGER

The following is a listing of general topics arranged in my Declaration:

PRE-INDICTMENT. . . . . . . . . . . 1

INDICTMENT. . . . . . . . . . . 6

OFFENSE CONDUCT. . . . . . . . . . . 7

PRE-TRIAL . . . . . . . . . . . . 8

DURING TRIAL. . . . . . . . . . . 17

MOTION FOR RELEASE and APPEAL. . . . . . . . 27

SENTENCING. . . . . . . . . . . . 27

PRE-SENTENCE MOTION FOR NEW TRIAL. . . . . . . . 32

APPELLATE COUNSEL. . . . . . . . . . 32

CHOOSING TRIAL DEFENSES. . . . . . . . . . 36

TENTH CIRCUIT'S ORDER ON OCTOBER 26, 2011. . . . . . 45

STATEMENTS OF ERROR IN APPEAL BRIEF BY TENTH CIRCUIT. . . . 46

POST JUDGMENT EVIDENCE. . . . . . . . . 48

STATUTES AND TREASURY REGULATIONS INVOLVED IN REQUIREMENT TO FILE TAX RETURN. 49

EXPLANATION OF OTHER DEFENSES AND INFORMATION. . . . . 58

Mr. OBAMA's INELIGIBILITY. . . . . . . . . 61

OBVIOUS CONFLICTS. . . . . . . . . . .63

TENTH CIRCUIT AND DISTRICT COURT DECISIONS. . . . . . 68

REASONS AND STATUS FOR GROUNDS RAISED. . . . . . 73

REQUESTED RELIEF. . . . . . . . . . 93

## Cases Mentioned

Briner v. Baker, 506 F.3d 1297, 1300-01(10th Cir. 2001).   .   .   .   . 72

Dole v. United Steelworkers of America, 494 U.S. 26, 32-33(1990).  .  . 36,68

In Re Barringer, 11-816 (10th Cir. 2011).   .   .   .   .   .   . 34

In Re Springer, U.S. App. Lexis 27413(10the Cir. 2010).   .   .   . 35

Kawashima v. Holder, 182 L.Ed. 1,10-11(2012).   .   .   .   . 86

Lewis v. CIR, 532 F.3d 1272, 1275(10th Cir. 2008).   .   .   . 36,70,71,72

Olpin v. CIR, 270 F.3d 1297, 1300-01(10th Cir. 2001).   .   .   .   . 72

Pond v. CIR, 211 Fed. Appx. 749(10th Cir. 2007).   .   .   .   .   . 71

Springer v. Alvin, 398 Fed. Appx. 427(10th Cir. 2011).   .   .   .   . 34

Springer v. IRS, ex rel., 231 Fed. Appx. 793(10th Cir. 2007).   .   . 5,36,70

Springer v. CIR, 580 F.3d 1142(10th Cir. 2009).   .   .   .   . 15,35

Springer v. U.S., 447 F. Supp. 2d 1235, 1238(N.D. Ok. 2006).   .   .   . 68

U.S. v. Chisum, 502 F.3d 1237(10th Cir. 2007).   .   .   .   .   . 19,70

U.S. v. Collins, 920 F.2d 619(10th Cir. 1990).   .   .   .   . 18,36,68

U.S. v. Dawes, 951 F.2d 1189, 1192(10th Cir. 1991).   .   .   . 36,69,71

U.S. v. Hoodenpyle, 461 Fed. Appx. 675, 682(10th Cir. 2012).   .   . 39,90

U.S. v. LaSalle, 437 U.S. 298, 308-317(1978).   .   .   .   .   . 91

U.S. v. O'Leary, U.S. App. Lexis 19753(10th Cir. 1997).   .   .   . 93

U.S. v. Springer 444 Fed. Appx. 256(10th Cir. 2011).   .   .   . 3,35,45

U.S. v. Springer, 447 Fed. Appx. 877(10th Cir. 2011).   .   .   . 35

U.S. v. Tedder, 787 F.2d 540, 542(10th Cir. 1986).   .   .   .   . 68

U.S. v. Weise, 914 F.2d 1514, 1520-22(2nd Cir. 1990).   .   .   . 68

Wheeler v. CIR, 528 F.3d 773, 787(10th Cir. 2008).   .   .   .   . 71

05-CV-466 (W.D.Ok. 2005).   .   .   .   .   .   .   . 4,5

05-CV-1075(W.D.Ok. 2005).   .   .   .   .   .   . 4,5

06-CV-110 (N.D.Ok. 2006).   .   .   .   .   .   . 5

Statutes Mentioned

Title 5, U.S.C. § 552.   .   .   .   .   .   .   .   .   .   .   79

12 U.S.C.  § 411   .   .   .   .   .   .   .   58,59,88

15, U.S.C. § 77b(a)(1)   .   .   .   .   .   .   .   58

18, U.S.C. § 2.   .   .   .   .   .   .   .   .   54

§ 8.   .   .   .   .   .   .   .   .   58

§ 371.   .   .   .   .   .   .   .6,42,54,55

26, U.S.C. § 1.   .   .   .   .   .   .   .   14,49,55

§ 61.   .   .   .   .   .   .   .   . 14

§ 63.   .   .   .   .   .   .   .   . 14

§ 102.   .   .   .   .   .   .   . 54,65,82

§ 165(g)   .   .   .   .   .   .   58,59,88

§ 6001.   .   .   .   .   .   . 1,38,40,50,63,72,92

§ 6011(a).   .   .   1,2,3,14,37,38,40,41,50,55,60,63,78,92

§ 6012(a).   .1,2,3,14,36,37,38,40,41,45,51,55,59,60,63,73,77--
--78,81,82,88,89,92.   .   .   .   .   .   .   .   .

§ 6061.   .   .   .   .   .   .   . 60,72,78

§ 6065.   .   .   .   .   .   .   . 60,72,78

§ 6072.   .   .   .   .   .   .   .   .51

§ 6091(a).   .   .   .   . 41,43,45,51,54,55,59,63,64,92

§ 6091(b).   .   10,14,37,40,43,51,53,54,55,57,59,63,64,78,92

§ 6151.   .   .   .   .   .   .14,21,37,39,53,56,63,78

§ 6334(e).   .   .   .   .   .   .   .   83

§ 7201.   .   .   .   . 6,8,23,26,39,40,42,53,55,65,84

§ 7203.   .   .   . 6,8,14,36,41,42,45,53,55,77,85,88,92

§ 7514.   .   .   .   .   .   .   .   3,79

§ 7601.   .   .   .   .   .   .   .   . 66

§ 7608(b).   .   .   .   .   .   .   . 65

## Statutes Mentioned (con'td)

Title 26, U.S.C. § 7611. . . . . . . . 83

§ 7621. . . . . . . 3,64,66,79

§ 7805(b). . . . . . . 43,65,91,92

§ 7805(c). . . . . . . 2,60,63,78,85

28, U.S.C. § 541. . . . . . . .65,74,86

§ 547(1). . . . . . . 65,74,86

§ 2241. . . . . . . . 62

§ 2255. . . . . . 61,62,82,85,87,89

31, U.S.C. § 3124. . . . . . . 59

44, U.S.C. § 3506(c)(1)(B). . . . . . 2,3,9

§ 3507. . . . . . . 2,9

§ 3512(a). . . . . . 2,9,12,37,42,46

## Regulations Mentioned

Title 5, CFR § 1320.8(b)(3). . . . . . . 3,9

26, CFR § 1.1-1. . . . . . .17

§ 1.102-1. . . . . . 17

§ 1.151-1. . . . . . . 17

§ 1.6011-1. . . . . 17.41.50.51.56.63

§ 1.6012-1. . . . 17,41,51,56,63,73,83

§ 1.6001-1(b). . . . . . . 50

§ 1.6091-2(1999-2005). . . . . .52,55,59,64,92

§ 1.6091-2(2005). . . . 10,43,45,52,56,59,64,82,91,92

§ 1.6065-1. . . . . . . .72

§ 601.101(1999-2009). . . . . .39,65,66,90

28, CFR § 16.23(c). . . . . . . 47

## Guidelines Mentioned

U.S.S.G. § 2T1.1(c)(2). . . . . . .46,86

## DECLARATION OF LINDSEY KENT SPRINGER

1.    My name is Lindsey Kent Springer and I declare the following:

2.    I am the person imprisoned due to an order of conviction, sentence, and judgment in 09-CR-043-F out of the Northern Judicial District of Oklahoma.

3.    Since at least 1992 I have been actively involved in a nation wide effort to change the tax policy of the United States including the elmination of the IRS.

4.    Since at least 1996, the Secretary of the Treasury and Commissioner of Internal Revenue publicly stated in instructions for Form 1040 United States Individual Income Tax Return that Form 1040 is subject to the Paperwork Reduction Act and that under 26 U.S.C. §§ 6001, 6011, 6012(a), and their regulations, Form 1040 use is mandatory.

5.    The 1999 through 2007 instructions from the Commissioner of Internal Revenue gives notice to the public of the following:

"The IRS Restructuring and Reform Act of 1998, the Privacy Act of 1974, and the PAPERWORK REDUCTION ACT of 1980 require that when we ask you for information we must first tell you our legal right to ASK for the information, why we are ASKING for it, and how it will be used. WE MUST also tell you what could happen if we do not receive it and whether your response is voluntary, required to receive a benefit, or mandatory under the law."

6.    The same instructions give notice that:

"This notice applies to all papers you file with us including THIS TAX RETURN. It also applies to any questions we need to ask you so we can complete, correct, or process your return; figure your tax, and collect tax, interest, and penalties ....we try to create forms and instructions that can be easily understood. Often this is difficult to do because our tax laws are VERY COMPLEX."

7.    The Commissioner of Internal Revenue continues:

"Our legal right to ASK for information is Internal Revenue Code Section 6001, 6011, and 6012(a), and their regulations.  THEY SAY that you must file a return or statement with US for any tax you are liable for.  Your response is mandatory under these sections...You MUST fill in all parts of the TAX FORM that apply to you."

8.    The Commissioner of Internal Revenue provides specific instruction and notice for Form 1040 responders:

"You are not REQUIRED to provide the INFORMATION REQUESTED ON A FORM THAT IS SUBJECT TO THE PAPERWORK REDUCTION ACT UNLESS THE FORM DISPLAYS A VALID OMB CONTROL NUMBER."

(1)

9.      I learned in reading the Paperwork Reduction Act of 1980 and 1995 that the phrase "valid OMB control number" must be "assigned by the Director [of OMB] in accordance with this subchapter" at 44 U.S.C. § 3512(a)(1)(1995).

10.      I also understand Form 1040 must comply with 44 U.S.C. §§ 3506(c)(1)(B)(i), (ii), (iii), (I), (II), (III), (IV), and (IV), 3507, and 3512(a)(1) and (2) to be "in accordance" with the Paperwork Reduction Acts.

11.      I have attached Form 1040 for 2000 through 2005 showing these Forms of Returns do not (1) indicate the Form is in accordance with the clearance requirements of Section 3507(see § 3506(c)(1)(B)(ii));(2) inform the persons receiving Form 1040 (I) the reasons the information is being collected; (II) the way such information is to be used; (III) an estimate of the burden of collection; (IV) whether response is voluntary or mandatory; and (V) the fact that an agency [IRS] may not conduct or sponsor, and a person is not required to respond to the Form 1040 questions unless it displays a valid control number.

12.      At Trial I entroduced Form 1040 and instructions for years 2000 through 2005 as Defense Exhibits 24 through 34. Doc. 396, pg. 2690-2693, received at pg. 2734-35

13.      I also attached Form 1040 for 2000 through 2005 to my Motion to Dismiss and Memorandum in Support, at Docket # 53 and 54, Exhibit 1 through 5. See Exh. 13-1 to 6

14.      I realize the instructions for Form 1040 attempts to provide some of the information required by the PRA but it does not provide near enough except for maybe where it says under 26 U.S.C. §§ 6011 and 6012 my response is "mandatory" to Form 1040.

15.      I relied on these Forms and Instructions in forming my belief the requirement to file Form 1040 was mandatory and that such Form was first subject to the public protections provided by Congress under the PRA's public protection provision.

16.      I also learned in my reading 26 U.S.C. § 7805(c) Congress mandated "the Secretary shall prepare and distribute all instructions, regulations, directions, forms,...pertaining to the assessment and collection of internal revenue."

17.      Since at least the year of our Lord 2000, the President of the United States

(2)

has not established or maintained any Internal Revenue Districts pursuant to his authority Congress mandated at 26 U.S.C. § 7621. Springer, 444 Fed. Appx. at 261

18.     Prior to his resignation as U.S. Attorney, David O'Meilia filed his opposition to My Motion to Dismiss, Docket # 51 and 52, where he agreed I did not live in any Internal Revenue District and that was because there were none to live in. See Doc. 71, page 4

19.     Since 2000, the Secretary of the Treasury has not authorized by seal any person to hold the office of District Director applicable to 26 U.S.C. § 7514 and my place of residence. See Doc. 71, pg. 4; Springer, 444 Fed. Appx. at 261

20.     The Secretary of the Treasury, through his delegate, applies to the Office of Management and Budget ("OMB") certifying (§ 3506(c)(1)(B)(ii)) Form number 1040 entitled "U.S. Individual Income Tax Return" is mandatory pursuant to 26 U.S.C. § 6011 and 6012 and that Form 1040 contains all the information OMB mandates at 5 CFR § 1320.8(b)(3), as again required by 44 U.S.C. § 3506(c)(1)(B)(ii).

21.     I attached to my Motion to Dismiss, Docket 53 and 54, the Secretary of the Treasury's Form 83I it filed with OMB for years 1998 through 2006 showing that the information certified to be displayed on Form 1040 to OMB does not appear on Form 1040 and with few exceptions, that information does not appear in the instructions in a complete compliance manner.

22.     Form 83I was attached to Docket 53 and 54 as Exhibit 6,7 and 8.

23      In 1996, I received two notice of deficiencies from a delegate of then district director office located in Oklahoma City, Oklahoma which used the Bureau of Labor Statistics to claim I was required to file a Form 1040 for 1990 through 1995.

24.     In March, 2005, I received a Notice of Intent to Levy from Revenue Officer Fred Rice which in the place for the "Form Number" he wrote Form 1040. Exhibit 2

25.     On April 26, 2005, someone assigned Special Agent Brian Shern to the ongoing IRS criminal investigation involving me for years 2000 through 2004. Doc. 35-8, pg.2

26.     On June 15, 2009, the then U.S. Attorney, before he resigned, attached a

(3)

letter dated June 3, 2005, claiming the Special-Agent-in-charge pursuant to some unidentified authority [that he] had referred me for criminal prosecution attached to Doc. 80 as Exhibit 10, or Doc. 224, Exhibit 16.  See Exhibit 15

27.    This June 3, 2005 letter clearly states it was noticed to Brian Shern.

28.    On September 15, 2005, Agent Shern and Assistant U.S. Attorney Melody Noble Nelson, sought and obtained a "search warrant" from U.S. Magistrate Frank H. McCarthy involving Calendar or Tax Years 2000 through 2004 and the IRS institutional criminal investigation being conducted by both Agent Shern and Assistant U.S. Attorneys Nelson and Douglas Horn. See Doc.35-8, pg. 2; Doc. 37-2, pg. 2-3

29.    These facts were presented to the Court in the Declarations of Agent Shern and both Nelson and Horn filed in a civil case then pending before United States District Judge Frizzell, at docket # 06-CV-156. Is attached each of their declarations to Docket # 35 and 75. See also Docket # 37.

30.    A day before Agent Shern was joined to the ongoing IRS institutional criminal investigation of me, on April 25, 2005, I filed a civil action attempting to enjoin the conduct of certain Agents and Officers of the IRS involved in Agent Rice's March 2005 Notice of Intent to Levy regarding Form Number 1040 for years 1990 to 1995.

31.    On September 15, 2005, the same day Shern and Nelson sought a search warrant in their IRS institutional criminal investigation, I commenced a second civil action stemming from two "Notice of Determinations" issued on August 16, 2005, by the Defendants in my April 25, 2005 civil action. Springer v. IRS, 05-CV-1075(W.D.Ok)

32.    The April 25, 2005 civil action was filed in the Western Judicial District of Oklahoma, case # 05-CV-466-F, and the September 15, 2005 civil action was filed in the Western Judicial District of Oklahoma, case # 05-CV-1075-F.

33.    Both 05-CV-466-F and 05-CV-1075-F raised challenges to Form 1040 and its obvious deficiencies under the PRA.

34.    On September 16, 2005, Shern and Ten other IRS Special Agents raided my home armed with a search warrant for Calendar and Tax Year 2000 through 2004. Doc. 35-8

(4)

35.      On October 6, 2005, Judge Friot dismissed my case in 05-CV-466-F without ever addressing my Paperwork Reduction Act claims.

36.      In February, 2006, I sought an injunction against the IRS institutional criminal investigation claiming Form 1040 for all previous years at issue violated the PRA.

37.      This case was filed in the Northern Judicial District of Oklahoma as 06-CV-110-E(Eagan).

38.      On June 22, 2006, Judge Eagan in 06-CV-110 dismissed my injunction claims telling me:

> "the Secretary of the Treasury and IRS have clear authority to impose criminal and civil penalties RELATED TO FORM 1040."

39.      This case decision was published at 447 F. Supp. 2d 1235, 1238(N.D.Ok. 2006)

40.      Judge Eagan explained her view that the PRA does not apply to the requirement to file a Tax Form 1040 due to the obligation deriving from a statute, not a regulation, and that I could not raise the PRA as a Plaintiff.

41.      On August 7, 2006, Judge Friot dismissed my case in 05-CV-1075-F without ever addressing my Paperwork Reduction Act claims.

42.      I appealed 05-CV-466-F, 05-CV-1075-F, and 06-CV-110-E to the Tenth Circuit where on May 1, 2007, without addressing my PRA claims related to Form 1040, the Tenth Circuit consolidated each of my Three cases and affirmed them in various ways.

43.      The May 1, 2007 decision by the Tenth Circuit did not reach the merits of my PRA appeal claims, which are available to be raised "at any time," and ruled I was not able to raise the PRA as a Plaintiff but must wait until I am a Defendant.

44.      This decision by the Tenth Circuit is unpublished at 231 Fed. Appx. 793 (10th Cir. 2007).

45.      While I am pursuing my PRA claims in the Tax Court  and Petitioning all Three decisions consolidated by the Tenth Circuit to the Supreme Court, on August 23, 2007, the Secretary of the Treasury's delegate issued a Certificate of Release listing Form 1040  for Officer Rice's Notice of Intent years 1990 to 1995. Exh. 3

46.     On May 10, 2008, the Department of Justice Tax Division sues me over the August 23, 2007 released from lien Tax Years 1990 through 1995. 08-CV-278(N.D.Ok.)

47.     While I am defending the Tax Court decision to uphold the August, 2005 Determinations, and having to defend the May 10, 2008 Government lawsuit for 1990 through 1995, and after 2 plus years of my Bivens claims involving the theft of $ 2000 in 06-CV-156-F(Frizzell)(N.D.Ok.), I am asked to meet with and do meet with Agent Shern and Charles O'Reilly, among others, regarding certain evidence gathered during the September 16, 2005 search of my home.

48.     The bulk of the discussions centered around what I should have reported on Form 1040 to the IRS.

49.     On or about February, 2009, I met again with Agent Shern and Mr. O'Reilly where we discussed Form 1040 again, among other things.

INDICTMENT

50.     I was indicted on March 10, 2009  on  Six Counts of Tax Related offenses claimed to be authorized by the June 3, 2005 letter proffered as a referral on June 15, 2009 by the then U.S. Attorney David O'Meilia. See Doc. 2; Doc. 80-10 or 224-16

51.     In its June 15, 2009 filing David O'Meilia attached a January 10, 2007 letter referrencing a January 6, 2007 letter which he proffered was the referral of Oscar Stilley to the case being sought against me.  Doc. 80

52.     The Indictment alleged violation of 18 U.S.C. § 371 and conduct intending to "defraud" the Department of the Treasury's Bureau named "Internal Revenue Service" ("IRS") of its lawful functions in the assessment and collection of federal income taxes [Count One]. See Doc. 2, ¶ 9

53.     The Indictment alleged 3 violations of 26 U.S.C. § 7201's willful evading the assessment of income taxes [Counts Two, Three, Four], and 2 violations of 26 U.S.C. § 7203's willful failure to make or file an income tax return [Counts Five and Six]. See Doc. 2, ¶¶ 41,43,45,47,49 [on information and belief]

54.     The Grand Jury also alleged Oscar Amos Stilley ("Stilley") as a co-conspir-

(6)

ator with me in Count One and charged Stilley as a principal in Counts Three and Four to my attempts to evade the assessment of income taxes in violation of 18 U.S.C. § 2(a). Doc. 2, ¶¶ 9, 43,45

55.

OFFENSE CONDUCT

55.       Count One alleges I (1) failed to file individual income tax returns (¶ 6); (2) refrained from filing Forms with the IRS inclduing Form 1040 and 1099 (¶ 14); and (3) intended as an object to impede assessment and collection of "Federal Income Taxes" (¶ 9). Doc.2  (years 2000 to 2009)

56.       Count Two alleges I willfully attempted to evade and defeat the taxes due and owing for Calendar Year 2000 "by failing to file a United States Individual Income Tax Return as required by law..."(¶ 41); and incorporating ¶ 6 as if set forth fully in Count Two (¶ 40). Doc.2 (years 2000 to 2009)

57.       Count Three alleges I willfully attempted to evade and defeat the taxes due and owing for Calendar Year 2003 "by failing to file a United States Individual Income Tax Return as required by law.." (¶ 43); and incorporating ¶ 6 as if set forth fully in Count Three (¶ 42). Doc.2 (years 2003 to 2009)

58.       Count Four alleges I willfully attempted to evade and defeat the taxes due and owing for Calendar Year 2005 "by failing to file a United States Individual Income Tax Return despite earning income of  sufficient amount to require the filing of an individual income tax return..." (¶ 45); and incorporating ¶ 6 as if set forth fully in Count Four (¶ 44).  Doc.2 (years 2005 to 2009)

59.       Count Five alleges I willfully failed to "make" an income tax return to the proper official of the IRS as "required by law" and to the "person assigned to receive returns..."(¶ 47); and incorporating ¶ 6 as if set forth fully in Count Five (¶ 46).Id.

60.       Count Six alleges I willfully failed to "make" an income tax return to the proper official of the IRS as "required by law" and to the "person assigned to receive returns..."(¶ 49), and incorporating ¶ 6 as if set forth fully in Count Six(¶ 48). Id.

(7)

## PRE-TRIAL

61.     On March 18, 2009, I filed a Motion for In-Camera review of my Fifth Amendment proffer, Doc. 6,7, and my First request for a Bill of Particulars. Doc.8

62.     In my first request for Bill of Particulars I sought (1) the meaning of the term "return", Doc. 8, pg. 8, ¶ 8; (2) "which Forms 1040 and 1099's for which transactions, pg. 13-14, ¶ 48, the "identity with particularity the meaning and identity of the phrase "Individual Income Tax Return' the Grand Jury alleges in paragraph 41,43,45, that they allege Lindsey Kent Springer was 'required by law' to file"; pg. 17, ¶ 62, and (3) the identity and meaning of the phrase "Income Tax Return" alleged in paragraph 47 and 49 "that Lindsey Kent Springer was 'required by law' to 'make.'" pg. 17, ¶ 64

63.     The U.S. Attorney David O'Mielia's assistant Kenneth Snoke opposed my First request for particulars arguing:

> "It is clear the Defendants understand the phrase required by law, function, and computation, ascertainment, assessment and collection."

See Doc. 19, pg.3

64.     Special Assistant Attorney Charles O'Reilly bolstered his argument at the July 2, 2009 hearing arguing I did not need to know "what they already know." Doc 383, pg. 125, ln 6-7

65.     During the April 22, 2009 Motion hearing the Trial Judge held a supplemental Faretta colloquy with me where I explained my initial understanding of the charges while my First Bill of Particulars was pending (Doc.8), which went like this:

> "Your Honor, honestly, you know, no I don't understand them. They're very confusing to me. I can give you what I do understand and you can see if that answers your question. I understand there is a conspiracy charge in Count 1 under 18 U.S.C. § 371, the defraud prong. I understand that there are three charges of tax evasion under 26 U.S.C. § 7201. I DO NOT UNDERSTAND WHETHER ITS EVASION OF ASSESSMENT, EVASION OF PAYMENT OR HOW ONE COULD GO FOR 9 Years. And then willful failure to file, right, which is 7203."

See Doc. 383, pg. 16, ln 14-23

66.     At the April 22, 2009 hearing, the Trial Judge informed me of the following:

(8)

"I understand your point. We'll address that when we address the motion for Bill of Particulars. I think your recitation at least for immediate purpose, satisfies me that you do at least understand, SUBJECT TO THE LIMITATIONS YOU HAVE DESCRIBED, the general nature of the charges."

See Doc. 382, pg. 17, ln 10-15

67.     The Trial Judge made sure I understood that even though he appointed "stand-by counsel, you will still have the responsibility...of your defense in this case." Doc. 382, pg. 25, ln 7-9

68.     I explained my understanding of the charges in each Count this way:

"My case is...about whether...income was reportable or not on a Form 1040 or whatever other form the Government would say was a proper request for information."

Doc. 382, pg. 93, ln 12-16

69.     At the end of the April 22, 2009 hearing, the Trial Judge explained his limitation of my waiver of counsel by saying that we will address that issue "when we address the motion for a Bill of Particulars," Doc. 82, pg. 17, ln 10-15, and explaining a Bill of Particulars is "fair game" if either me or Mr. Stilley could show our ability "to defend [ourselves] is impaired..." Doc. 382, pg. 118, ln 7-11

70.     On May 15, 2009, I moved to dismiss each Count on grounds Form 1040 United States Individual Income Tax Return at issue in each of the Six Counts did not comply with 44 U.S.C. §§ 3506(c)(1)(B)(i), (ii), (iii), (I), (II), (III), (IV), (V), 3507, and 3512(a). Doc. 53,54 ("Second Motion")

71.     I also claimed the Form 1040 United States Individual Income Tax Return for each year at issue did not comply with §§ 3506(c)(1)(B)(ii) and 3507's clearance and certification requirements by the Director of OMB at 5 CFR 1320.8(b)(3).54,p.7-10

72.     On May 15, 2009, I moved to dismiss claiming the Fifth Amendment privilege against the type of self-incrimination apparent to me protected me from having to answer the questions on Form 1040 for each year involving my ministry's mission. Doc. 59, 60 ("Fifth Motion").

73.     On May 15, 2009, I moved to dismiss each Count for failure of the Grand Jury

to allege "statutes imposing criminal duty upon Springer to provide information to the IRS on any U.S. Individual Income Tax Return for years 2000 through 2005." Doc. 63,64 ("Seventh Motion")

74.     On May 15, 2009 I also moved to dismiss each Count on impermissive selective prosecution. Doc. 65,66 ("Eighth Motion").

75.     The U.S. Attorney opposed my motion to dismiss on venue, Docket # 51,52, claiming the "place" Congress directs income tax returns and taxes due and owing is specifically found at 26 U.S.C. § 6091(b). Doc. 71, pg. 4

76.     The U.S. Attorney did not dispute and admitted I did not live in any Internal Revenue District and claimed:

> "Where a person has no legal residence or principal place of business in any internal revenue district, the Secretary may by regulation designate an alternative place."

See Doc. 71, pg. 5

77.     The U.S. Attorney identified  the place Congress directed a person like me who doesn't live in any internal revenue district to file a "Tax Return" was found specifically at 26 U.S.C. § 6091(b)(1)(B)(i). Doc. 71, pg. 4

78.     The U.S. Attorney directed that the Secretary designated by Treasury Regulation the place to file a tax return when a person doesn't live in any internal revenue district was published at 26 CFR § 1.6091-2. Doc. 71, pg. 5

79.     The U.S. Attorney claimed 26 CFR § 1.6091-2 "clearly provides":

> "income tax returns of individuals, estates, and trusts shall be filed with any person assigned the responsibility to receive returns at the local Internal Revenue Service Office that serves the legal residence or principal place of business of the person required to make the return."

See Doc. 71, pg. 5

80.     The U.S. Attorney opposed dismissal to my Paperwork Reduction Act defense (Doc. 53,54) arguing:

> "Some courts have simply noted that the PRA applies to the Forms themselves... and because the Form 1040 does have a control number, there is no PRA violation ...tax instruction books are not agency requests for information."

See Doc. 71, pg. 6

81.     In opposing dismissal on Fifth Amendment grounds (Doc. 59,60), the U.S. Attorney argued:

> "If the Form of Return provided called for answers that the defendant was privileged from making he could have raised the objection in the return..."

See Doc. 71, pg. 9

82.     In opposing dismissal for "failure to allege the duty under the law for Springer to provide information to the IRS" he argued that was not required. Doc. 71, pg. 10.

83.     The U.S. Attorney opposed my Eighth motion to dismiss on selective prosecution grounds claiming:

> "There is no evidence to support their claims nor their motion to dismiss for selective prosecution.  Defendants were selected for prosecution, and the Grand Jury indicted them, because the evidence established that each have violated the criminal tax law."

See Doc. 71, pg. 17

84.     On June 15, 2009, I filed a more narrow request for Bill of Particulars, Doc. 82, after the Trial Judge denied without prejudice my First Motion. Doc. 43

85.     On June 28, 2009, U.S. Attorney David O'Meilia resigned his Senate confirmed office on information and belief.

86.     After June 28, 2009, Mr. O'Reilly and Snoke signed their name under a person name "Scott Woodward" with the term "acting" preceeding his name, which based upon certain information and belief, Mr. Woodward was not "acting" under any Statute or Regulation. See Doc. 292; See also Exhibit 8

87.     Mr. O'Reilly and Snoke opposed my more narrow Second request for Bill of Particulars arguing that the Bill would be necessary "to inform the defendant of his charges...to allow him to prepare a defense." See Doc. 97, pg. 4

88.     At the July 2, 2009 hearing, Mr. O'Reilly and Snoke explained the requirement to file a "tax return" alleged was "Black Letter Law." Doc. 383, pg. 126, ln 2-3

89.     In opposing my more narrow Second Bill of Particulars Mr. O'Reilly stated:

> "A Bill of Particulars is a very narrow function when the Indictment is unclear ...on what has been charged."

See Doc. 383, pg. 126, ln 13-14

(11)

90.      Prior to granting my Second Motion for Bill of Particulars, the Trial Judge explained to the Government:

> "He has shown me several places in the indictment where it says he failed to file an individual income tax return as required by law."

See Doc. 383, pg. 12, ln 23-25

91.      The Trial Judge told the Government my second requests for Bill of Particulars on "required by law" "sounds pretty reasonable to me." Doc. 383, pg. 126, ln 13-14

92.      The Trial Judge had explained to the Government:

> "They're asking you to tell them what provisions you have in mind, what provisions you rely on when you say they didn't do something required by law."

See Doc. 383, pg. 126, ln 10-13

93.      The Trial Judge directed the Government to file a Bill of Particulars stating:

> "the government is directed to file a bill of particulars specifying the provisions which provided for the legal duties with which the Defendant's were obligated to comply as 'required by law' as those words are used in those Counts."

See Doc. 383, pg. 128-129

94.      The Trial Judge explained my Second motion to dismiss(Doc. 53, 54) as follows:

> "The question presented by this motion is whether the prosecution should be dismissed because the defendants contend the TAX REPORT-ING FORMS and publications IN QUESTION did not comply with the Paperwork Reduction Act, 44 United States Code, Section 3512."

See Doc. 383, pg. 132, ln 16-23

95.      The Trial Court explained my Fifth motion to dismiss(Doc. 59, 60) as follows:

> "This motion raises the QUESTION of whether the prosecution should be dismissed because the defendants-and this applies to both of them-- whether the defendants' Fifth Amendment privilege against self-incrimination protects them in these circumstances where they claim that any filing of a return would have put them

in danger of prosecution because they had been under investigation by the
Internal Revenue Service since at least 1995."

See Doc. 383, pg. 138, ln 4-12

96.     The Trial Judge explained its denial of my Seventh motion to dismiss (Doc.

63,64) this way:

"I have obviously given the defendants some relief by way of my partial granting
of the motion for Bill of Particulars."

See Doc. 383, pg. 150-151

97.     The Trial Judge explained my Eighth motion to dismiss(Doc. 65,66) as follows:

"A defendant claiming selective prosecution must demonstrate that the federal
prosecutorial policy had a discriminatory effect and that it was motivated by
a discriminatory purpose."

See Doc. 383, pg. 152, ln 11-16(quoting U.S. v. Armstrong, 517 U.S. 456, 465 (1996))

98.     The Trial Judge explained the conduct of "defraud" alleged in Count One

to me meant interfering or obstructing the government's lawful function:

"as collecting taxes and getting lawful returns in by some means that is
dishonest.  And that is exactly WHAT IS CHARGED HERE."

See Doc. 383, pag. 150, ln 16-24

99.     The Trial Judge in denying my Second motion to dismiss(Doc. 53,54) explained:

"Any arguable failure to comply with the Paperwork Reduction Act, I conclude, is
not a defense to the tax crimes alleged in the indictment and those motions are denied.

See Doc. 383, pg. 134, ln 17-20

100.    The Trial Judge relied upon Judge Eagan's decision in 06-CV-110, reported

at 447 F.Supp. 2d 1235, at 1238 explaining:

"'It is settled law that the requirement to file a tax return is mandated by
statute, not by regulation' and that explicit statutorily requirements such as
those involving the filing of income tax returns 'are not subject to the
Paperwork Reduction Act.'"

See Doc. 383, pg. 133, ln 18-24

101.    The Trial Judge in denying my Fifth motion to dismiss (Doc. 59,60) explained:

"The privilege against self-incrimination is not a defense, as such, to pros-
cution for the complete failure or refusal to file a tax return.  In that res-
pect, I am certainly informed by United States v. Sullivan. 274 U.S. 259, at
263.  Now while the privilege may be claimed to protect against specific
disclosures SOUGHT on a return, where the ANSWERS the defendant would be

privileged to MAKE, the privilege does not authorize a person to refuse to state his income and 'draw a conjures circle around the whole matter by his own declaration that TO WRITE ANY WORD UPON THE GOVERNMENT BLANK WOULD BRING HIM INTO DANGER OF THE LAW."

See Doc. 383, pg. 138-139

102.    The Trial Judge in denying my Eighth motion to dismiss (Doc. 65,66) held:

"I have no showing of selective prosecution, and consequently, I have no basis for a dismissal as sought in the Eight motion to dismiss."

See Doc. 383, pg. 153, ln 3-5

103.    The Trial Judge on July 2, 2009, in ordering a Bill of Particulars on the Grand Jury's phrase "required by law" applied the meaning to Count Four also. See Doc. 383, pg. 119, ln 22-23("Okay."); See ¶ 93 above for actual order.

104.    On July 14, 2009, Mr. O'Reilly and Snoke provided to me and the Court their First Bill of Particulars citing 26 U.S.C. §§ 1,61,63,6011(a), 6012(a)(1)(A), 6072, 6091, 6151 and 7203. Doc. 104, pg. 2 (including § 7203 as lessor included offense)

105.    In their First Bill of Particulars Mr. O'Reilly and Snoke explained:

"Counts 2,3,5 and 6, of the indictment include the phrase 'required by law' in reference to Defendant Springer's FAILURE TO FILE A FEDERAL INCOME TAX RETURN. The filing of income tax returns is mandated by statute...The statutes that required Defendant Springer file Federal Income Tax Returns are as follows..."

See Doc. 104, pg.1

106.    Due to Mr. O'Reilly's citation to 26 U.S.C. § 6011(a), 6091, 6151, and 7203, I sought another Bill of Particulars on regulations involved in the Six Counts. See Doc. 105.

107.    Mr. O'Reilly and Snoke opposed my Third request for Bill of Particulars arguing no regulations were involved in the requirement to file a Form 1040 United States Individual Income Tax Return, as alleged in all Six Counts.  Doc. 116

108.    In opposing Stilley's proposed jury instructions, Mr. O'Reilly and Snoke proclaimed they did not have to prove I was made liable by 26 U.S.C. §§ 1,61,63, 6011(a), 6012(a), 6072, 6091, 6151, or 7203.  Doc. 120, pg. 4

109.    On August 31, 2009, the Tenth Circuit issued its published opinion in

(14)

Springer v. CIR, reported at 580 F.3d 1142(10th Cir. 2009), holding I raised "difficult issues under both the tax code and PRA" and that the PRA applies when the penalties sought or imposed are "based on Mr. Springer's failure to file Form 1040's for the tax years in question." Id at 1144

110.    On September 18, 2009, the Trial Judge denied my Third motion for Bill of Particulars (Doc. 105) on Treasury Regulations disclosure. Doc. 136

111.    Just 3 days after denial of my Third motion for Bill of Particulars (Doc. 136), Mr. O'Reilly and Snoke file their Trial Brief disclosing:

> "various provisions of the Internal Revenue Code(and regulations thereunder) specifying the events that trigger an obligation to file a return."

See Doc. 138, pg. 12

112.    In their Trial Brief, Mr. O'Reilly and Snoke explained their evidence will show:

> "throughout this period of time, Defendant Springer and Stilley did not file any income tax FORMS with the IRS including Form 1040 and 1099."

See Doc. 138, pg. 7

113.    In their Trial Brief, Mr. O'Reilly and Snoke explained I was charged in Counts Two, Three, and Four:

> "with attempting to evade and defeat the individual income taxes due and owing by him to the United States. Count Two, Three, and Four charge attempted tax evasion for the Calendar years 2000, 2003, and 2005, respectively. Defendant Stilley is charged in Counts Three and Four with aiding and abetting Defendant Springer's tax evasion..."

Doc. 138, pg. 6

114.    In their Trial Brief, Mr. O'Reilly and Snoke explained the Second element of their charged attempted evasion in Counts Two, Three, and Four:

> "the defendant intended to evade and defeat the assessment and payment of that additional tax."

See Doc. 138, pg. 7

115.    In their Trial Brief, Mr. O'Reilly and Snoke explained Tax Evasion as charged in Counts Two, Three, and Four:

(15)

"Tax evasion prosecutions are not collection cases and it is not necessary to charge or prove the exact amount of the tax that is due and owing...It is enough to prove that the defendant ATTEMPTED TO EVADE THE PAYMENT OF A SUBSTANTIAL income tax..."

See Doc. 138, pg. 10

116.    As a result of Mr. O'Reilly and Snoke citing to "regulations thereunder" in their Trial Brief, I moved again for a Fourth Bill of Particulars seeking all Treasury Regulations involved in the duties and obligations at issue in all Six Counts.

117.    In this Motion I explain:

"In each Count of the indictment, the claims therein are inexorably linked to to the requirement to make or file a Form 1040 with the IRS."

See Doc. 166, pg. 6

118.    In my Trial Brief, I explained if I was "required to make or file anything with the IRS it was a[n] unilateral mistake not deliberate." See Doc. 142, pg. 8

119.    I also explained fully my understanding of Counts Two through Six's elements of "willfully" requiring the Government to prove:

"(1) that the law imposed a specific duty on Springer to file a Form 1040 at the time, place, and manner prescribed by law, (2) that Springer knew of this specific duty according to these prescribed laws, and (3) that he voluntarily and intentionally violated such duty under these laws."

See Doc. 142, pg. 9

120.    Obviously, I had not addressed the "regulations thereunder" as that was revealed to me on the same day my Trial Brief and the Governments were filed.

121.    My Trial Brief explained what the evidence regarding Form 1040 would show:

"Evidence will also overwhelmingly show the IRS Form 1040 for years 1995 to present do not comply with the Paperwork Reduction Act of 1995."

See Doc. 142, pg. 7

122.    On September 30, 2009, I moved for a Fourth Bill of Particulars on the "regulations thereunder" explaining my understanding of each Count is "inexorably linked to the requirement to make or file a Form 1040 with the IRS." Doc. 166, pg.6

123.    On October 8, 2009, the Trial Judge GRANTED my Fourth motion for Bill of Particulars on disclosure by Mr. O'Reilly and Snoke of the Treasury Regulations involved in their proof of whether I acted willfully on the tax imposed. Doc. 184

(16)

124.     In the Trial Judges Second order GRANTING my Fourth motion for Bill of Particulars, the Trial Judge ordered Mr. O'Reilly and Snoke identify:

> "specifying the 'regulations thereunder'...specifically relied upon by the government as specifying events TRIGGERING AN OBLIGATION TO FILE A RETURN."

See Doc. 192, pg. 1

125.     On October 19, 2009, Mr. O'Reilly and Snoke filed their Second Bill of Particulars explaining:

> "The passing, parenthetical reference to REGULATIONS in the government's trial brief was not intended to suggest that the government would be relying on TREASURY REGULATIONS  IN PROVING ITS CASE IN CHIEF."

See Doc. 201, pg. 1-2

126.     In their Second Bill of Particulars, Mr. O'Reilly and Snoke once again, as if they were pointing their finger at me and saying:

> "Defendant had a statutorily-mandated obligation to file a federal tax return without reference or reliance on Treasury Regulations."

See Doc. 201, pg. 2

127.     The TREASURY REGULATIONS offered to me by Mr. O'Reilly and Snoke "triggering an obligation to file a return" were identified or relied upon by the Grand Jury in each of the Six Counts as 26 CFR §§ 1.1-1, 1.102-1, 1.151-1, 1.6011-1, and 1.6012-2. See Doc. 201, pg. 3

DURING TRIAL

128.     During the James hearing I addressed Form 1040 several times. Doc. 385, pg. 164, ln 25.

129.     During the Daubert hearing, the Secretary's Agent Brian Miller explained how he "determined what the filing requirements are for a person to file a Form 1040." Doc. 390, pg. 1282, ln 20-22

130.     Agent Brian Miller explained the requirement to file a Form 1040 is explained in the Form 1040 instructions.  Doc. 390, pg. 1284, ln 16-24

131.     When I asked Miller how would a person determine what Tax Form to use, Miller said "most people use a Form 1040." Doc. 390, pg. 1286, ln 7 to 13

132.     Special Agent Shern, who was the only witness to testify before the Grand Jury on March 9, 2009, and who summarized the testimony for the Grand Jury of others, when asked "what is a tax return" he answerd:

"Its a form that you submit to the Government that shows how much tax you owe." See Doc. 392, pg. 1863, ln 3-4

133.     I asked Agent Shern "which Form are you referring to when you say 'tax return'" which he testified his education and training taught him:

"Typically, when I think of a Tax Return I think of the Form 1040." See Doc. 392, pg. 1863, ln 5-8.

134.     Prior to proffering a good faith defense to the Jury, for consideration of whether I acted willfully, I was required to make a proffer to the Trial Judge. Doc. 392, pgs. 1875 to 1934.

135.     During my proffer, the Trial Judge asked me:

"I need you to cite me a decision by an Article III Judge that says that a STATUTORY REQUIREMENT OF FILING A FORM 1040 is subject to the Paperwork Reduction Act."

See Doc. 392, pg. 1889, ln 14-17

136.     The Trial Judge continued to only reference to Form 1040. See Doc. 392, pg. 1890, ln 19

137.     The Trial Judge during my required proffer asked me where in the Tenth Circuit's decision in U.S. v. Collins, 920 F.2d 619 (10th Cir. 1990) does it "talk about application of PRA to Form 1040." Doc. 392, pg. 1898-99

138.     In another exchange of words, the Trial Judge states:

"Now wait a second. Its one thing for the PRA to apply to a given Form, its another for a GIVEN FORM to violate the PRA."

See Doc. 392, pg. 1905, ln 23-25

139.     The Trial Judge asked me:

"are you telling me...that there is in fact, a violation of the PRA applicable to the Form 1040 that absolves you of the obligation to file."

See Doc. 392, pg. 1914, ln 18-21

(18)

140.  The Trial Judge also summarized what I was telling him and showing him:

> "so you're telling me that the face of the 1040 was required to contain the information set forth in sub paragraphs A through J on the second page of your exhibit 49."

See Doc. 392, pg. 1914, ln 18-21

141.  The Trial Judge then asked me to articulate "something that supports your theory as a basis for a good faith belief that Form 1040 violates the PRA?"

See Doc. 392, pg. 1917, ln 13-15

142.  While addressing a case I relied upon styled U.S. v. Chisum, 502 F.3d 1237(10th Cir. 2007), the Trial Judge stated:

> "but Chisum still didn't say that the 1040 violated the PRA."

See Doc. 392, pg. 1921, ln 16-17

143.  In issuing its decision to allow me to present my good faith defense that I believed Form 1040 violated the PRA and that the law instructed me I was not required to file, the Trial Judge held:

> "The issue is whether you have a basis for a good faith belief that the Form 1040 violated the Paperwork Reduction Act."

See Doc. 392, pg. 1931, ln 5-7

144.  I chose to take the witness stand and present in my defense why I chose not to file a Form 1040 for the years at issue in each of the Six Counts.

145.  During the Trial, the Trial Judge instructed the Jury he had:

> "RULED THAT FORM 1040 DID NOT AND DOES NOT VIOLATE THE PAPERWORK REDUCTION ACT."

See Doc. 393, pg. 1949, ln 16-18

146.  In ruling I could present a good faith defense to the Jury on why I believed Form 1040 violated the PRA, the Trial Judge explained to the Jury:

> "proof of the crimes charged in the indictment must include proof beyond a reasonable doubt of an element known in law as willfulnes...I will admit evidence as to defendant's understanding of the Paperwork Reduction Act at the times relevant to the indictment for your consideration with respect to the issue of willfulness."

See Doc. 393, pg. 1950.

(19)

147.         When asked by the Trial Judge whether Mr. O'Reilly and Snoke had any problem instructing the Jury "Form 1040 did not and does not violate the Paperwork Reduction Act," Mr. O'Reilly stated he had "none." Doc. 396, pg. 1951, ln 2-9

148.         Tax Law expert Brian Miller who testified previously at the Daubert hearing was asked by me:

"was I required to report all of these transactions on would be the Form 1040." See Doc. 393, pg. 2112, ln 12 to 14.

149.         Miller answered my question before the Jury, Trial Judge, Government Attorneys, and even Special Agent and witness Shern "THATS CORRECT." Id. at ln 15

150.         Mr. O'Reilly made certain the Trial Judge understood the offense conduct in each Count was the product of the Grand Jury and not Mr. Sherns. Doc. 392, pg. 1837, ln 7-9

151.         After learning of the Court's Jury instruction on meaning of the term "gift" and "income" I testified to the Jury that had I known of the meaning the Court provided the Jury, which was not written by Congress or appeared in any Treasury Regulation or rule that I was aware of, I would have conducted my receipt of money much differently. Doc. 396, pg. 2806, ln 15 to 24

152.         Mr. Miller repeated his expert opinion of over 20 years was that the Form of Return at issue in all Six Counts was Form 1040. Doc. 393, pg. 2147, ln 7 to 16

153.         Mr. O'Reilly demanded the Jury be given 1040 instructions if the Forms were allowed into evidence:

"I also understand Mr. Springer wanted to introduce the Forms 1040 from his direct. If Mr. Springer lays a foundation that makes those admissible, we want the instruction books as well from years 2000 through 2005."

See Doc. 395, pg. 2458, ln 21 to 25

154.         I focussed repeatedly and often on Form 1040. See Doc. 396, pg. 2614, ln 13-14; pg. 2620, ln 3("1040 Form"); and ln 5("Form 1040"); 2622, ln 6-7("what made them obligated to file Form 1040"); ln 23 ("wrestling with whether or not Form 1040 needed to comply.")

155.         I explained my understanding that all Counts were based on:

(20)

> "an alleged claim that I failed to file or willfully failed to file a U.S.
> individual income tax form and Mr. O'Reilly gave this Court a bill of particulars
> that cited to section 6151 that said the only way you would be required to pay
> is if you were required to file a return."

See Doc. 395, pg. 2648, ln 3-8

156.    In answering a question from the court I explained:

> "All I want to do now is show the jury the forms that were issued by the IRS
> to show them why I-they did not contain the information as the general account-
> ability office also concluded."

See Doc. 395, pg. 2669, ln 1-4

157.    Mr. O'Reilly, during Trial informed the theory on Count Two, Three and

Four, was:

> "the evasion counts are independent of whether or not he filed a return because
> of all the affirmative acts."

See Doc. 395, pg. 2648, ln 19-24

158.    I also testified "the IRS never said of that document what law it was

that required me to file a Form 1040." Doc. 396, pg. 2677, ln 13-14

159 .    I testified the Secretary of the Treasury or his Commissioner "ask you

and I information on the Form 1040." Doc. 396, 2677, ln 13-14

160.    I further testified my understanding of the Form approval process the IRS

must go through in order to "put the OMB number on Form 1040." Doc. 396, pg. 2684,

ln 3-4.

161.    Mr. O'Reilly and Snoke explained they had no objection to my entering into

evidence Form 1040 and instruction books explaining to the Trial Judge:

> "Your honor, with respect to the materials the information books and returns
> for the years 2000 to 2005, we're not going to oppose the introduction of those,
> they're voluminous, but at least they do fall within the scope of the conspiracy,
> although Mr. Springer didn't file any of the Forms IN ISSUE."

See Doc. 396, 2675, ln 19-25

162.    I explained to the Jury my understanding is the "IRS asserts to you and I

that answering the questions on the Form is mandatory." Doc. 396, pg. 2684, ln 11-13

163.    At one point the Trial Judge asked me:

> "what do you have that relates to the 1040 THAT DOES NOT RELATE TO THE PAPER-

WORK REDUCTION ACT."

See Doc. 396, pg. 2688, ln 18-19

164.     I answered the Trial Judge:

"I just need to show the jury that...I went and looked at the Form 1040."

See Doc. 396, pg. 2688, ln 20-22

165.     I presented all Grand Jury alleged Form 1040 United States Individual Income

Tax Returns and 1040 instructions from 2000 through 2005. Doc. 396, pg. 2690-2693;

received by the Trial Judge, pg. 2734-35

166.     During cross examination of me, the Government asked about:

"your belief that the Form 1040 failed to comply with any of the criteria set
forth under the Paperwork Reduction Act."

See Doc. 396, pg. 2841, ln 14-17

167.     I continued to discuss the Form 1040.  See Doc. 396, pg. 2850, ln 15-16;

pg. 2857, ln 9-10; pg. 2870, ln 22-23; pg. 2871, ln 4.

168.     The Trial Court limited my good faith testimony to around 90 minutes.

Doc. 396, pg. 2688-89.

169.     I was also asked by Mr. O'Reilly on his cross examination of me:

"does Dole ever mention Form 1040."

See Doc. 396, pg. 2767, ln 20.

170.     While discussing my objections to the Jury instructions on Counts Two,

Three, and Four, involving whether the Jury should decide whether, as the Grand

Jury alleged, I was required to file a "United States Individual Income Tax Return"

as "required by law", the Trial Judge explained why he would not so instruct:

The Tenth Circuit Pattern Instructions confirm my conception that Tax Evasion
is a crime both as a matter of Form and as a matter of substance, which is
separate and independent of the Form of willful failure to file--of the crime
of willful failure to file. And for that reason, it certainly comes as no
surprise to me that the Tenth Circuit pattern instruction does not contain
the extra element that Mr. Springer, would propose to add, and I don't intend
to add it."

See Doc. 396, pg. 2929-2930

171.     The Trial Judge explained his understanding of a Section 7201 violation:

"Its abit of an over simplification, but Section 7201 tax evasion goes to the tax as opposed to the procedure by which the tax is assessed, in substance."

See Doc. 396, pg. 2930, ln 10-15

172. The Trial Judge explained to the Jury:

"Your only interest is to determine whether the government has proven the defendant guilty beyond a reasonable doubt of the CRIMES CHARGED AGAINST THAT DEFENDANT IN THE INDICTMENT."

See Doc. 396, pg. 2880, ln 7 to 11

173. The Trial Judge explained to the Jury:

"You may find a defendant guilty only if you are convinced beyond a reasonable doubt that he committed the crime charged in the indictment."

See Doc. 396, pg. 2880, ln 16 to 18

174. The Trial Judge explained to the Jury that it was alleged by the Grand Jury that on September 16, 2005, during the search warrant execution by Shern, I was dishonest with "Internal Revenue Service employees" about the motives behind the money I received.

See Doc. 396, pg. 2884, ln 5-6

175. The Trial Judge instructed the Jury that the first element they must find in Count one was that:

"First, that the defendant agreed with at least one other person to violate the law by defrauding the United States."

See Doc. 396, pg. 2906, ln 21-22

176. The Trial Judge also instructed the Jury that Section 7201 "makes it a crime for anyone to willfully attempt to evade and defeat the payment of Federal Income Taxes."

See Doc. 396, pg. 2910, ln 22-23 and pgs 2913-14, ln 24-25 ("As previously stated, this law makes it a crime to willfully attempt to evade or defeat the payment of Federal tax.")

177. The Trial Judge cautioned me about my closing argument length stating:

"Now as a minister, you know there's a reason that sermons are usually about 20 minutes."

See Doc. 396, pg. 2934, ln 23-24

178. Mr. Miller explained to the Jury his view about Turner's transaction; over my

objections, and as expressed for the reason and during the Daubert hearing, explain-
ing his factual opinion as to why he believed the $ 250,000 transaction in 2005,
was actually gross income paid to me in 2005:

> "Initially, I feld like it might have been a loan based on the testimony of
> Mr. Turner, but then I heard the testimony of other witnesses, saw other ex-
> hibits, that led me to believe in all likelihood the $ 250,000 would never
> be repaid by Mr. Springer...and would therefore be treated as income to him."

See Doc. 393, pg. 2008, ln 12-19; see also Doc. 393, pg. 1955, ln 12-22

179.  Mr. Miller also testified that after Stilley's IOLTA account received Turner's
$ 250,000 in July and August, 2005, the $ 250,000 "went out in checks to buy other
items." Doc. 393, pg. 2006-07.

180.  After Miller testified that his view of the Turner transaction was gross income
Count Four went from excluding to including Turner's $ 250,000 for Calendar year
2005's taxes.   See Gov. Exhibit 680 at Doc. 393, pg. 1956, ln 23-24, to including
the $ 250,000 in 2005's gross income.  Doc. 393, pg. 2006, ln 17

181.  When I asked Turner whether I had anything to do with why he went and borrowed
$ 250,000 from someone on his home, he said "No." Doc. 394, pg. 2284, ln 18-21

182.  Turner testified I made payments in 2006, Doc. 391, pg. 1473, ln 10-13, which
I made from Mid 2006 to mid to late 2008 every month and on time, and that Turner
believed he would be repaid. Doc. 391, pg. 1476, ln 1-4

183.  Turner also testified his $ 250,000 to me was "absolutley" a loan. Doc. 391,
pg. 1472, lns 6, and 13 to 15; Doc. 391, pg. 1436, ln 15 to 27

184.  Turner testified I was paying him $ 1400.00 a month. Doc. 391, pg. 1510, ln 20

185.  When asked by the Government whether the payments were interest only Turner
explained I had paid down the principal in "one manner of speaking" at the time
the payments were being made. Doc. 391, pg. 1475, ln 15-17  Turner also explained
that was an accounting issue.

186.  Turner also testified he had first lien (and only) on an RV that I had purchased
with most of the proceeds. Doc. 391, pg. 1470, ln 13 to 25; see also Gov. Trial
exhibit 235 at pg. 1471, ln 8-11.

187. On July 2, 2009, the Trial Judge explained his finding of my knowledge of the Paperwork Reduction Acts:

> "Now, Mr. Springer is very familiar with the Paperwork Reduction Act. As a MATTER OF FACT, I will go so far as to say that is a law on which he may well be more knowledgeable than anyone else in the Courtroom."

See Doc. 383, pg. 133, ln 1-4

188. The Trial Judge instructed the Jury as to Counts Two, Three, and Four, the Jury must find "Defendant Springer intended to evade and defeat the PAYMENT OF THAT TAX." Doc. 397, pg. 2954, ln 7-8[Count 2]; pg. 2957, ln 11-12[Count 3]; and pg. 2959, ln 15-16[Count 4].

189. The Trial Judge explained to the Jury:

> "Mr. Miller should not be understood by you as giving independent evidence as to matters that are in controversy in this trial."

See Doc. 393, pg. 1973, ln 20-22; Doc. 396, pg. 2897, ln 1-4

190. The Trial Judge explained to the Jury his instructions on the meaning of "to evade and defeat the PAYMENT of tax "means to escape PAYING A TAX DUE other than lawful avoidance." Doc. 397, pg. 2954, ln 14-15[Count 2]; pg. 2957, ln 19-21[Count 3]; pg. 2959, ln 23-24[Count 4].

191. The Trial Judge also instructed the Jury what an "affirmative act" is:

> "an affirmatice act to evade and defeat PAYMENT of taxes is a positive act of commission designed to mislead and conceal."

See Doc. 397, pg. 2954, ln 23-25

192. The Trial Judge further explained to the Jury:

> "The defendants are not on trial for any act, conduct, or crime not charged in the indictment."

See Doc. 396, pg. 2898, ln 17-19

## SEARCH WARRANT

193. Agent Shern submitted an Affidavit with his Seach Warrant material, but that was not signed or sworn on file in the Grand Jury file sealed in the Clerk's Office. See Doc. 100, Defendant's Exhibit 1; see also Doc. 75-20

(25)

194. Assistant U.S. Attorney under U.S. Attorney David O'Meilia, Melody Nelson, declared under penalty of perjury:

> "I was assigned to a case involving investigation by the Internal Revenue Service into the activities of Lindsey K. Springer, for alleged violations of Title 26, United States Code (including, but not limited to section 7201 of the Internal Revenue Code), as part of this investigation, I prepared a search warrant of Plaintiff's residence."

See Doc. 37-2, pg. 2; Doc. 75-18

195. Agent Shern Stated that he prepared the Attachments A and B to the requested search warrant. Doc. 35-8, pg. 2

196. Nowhere in Shern's "Affidavit" filed and not signed by the issuing Magistrate does the "Affidavit" declare the proffered Grand Jury referral that I can find.

197. In Shern's Affidavit to obtain the Search Warrant he explained:

> "All of the items to be seized as referenced below are for years beginning January 1, 2000 through the execution of the warrant."

See Doc. 35-8, Attachment A, pg. 1 of 5, ECF page 14 of 20

198. Shern declared under the penalty of perjury that as of:

> "September 16, 2005, I and Ten other Special Agents with the Internal Revenue Service-Criminal Investigation executed a search warrant signed by U.S. Magistrate Judge Frank H. McCarthy on September 15, 2005."

See Doc. 35-8, pg. 2

199. Shern continued to declare his:

> "authority to peform all duties conferred upon such officers under laws and regulations administered by the Internal Revenue Service, including the authority to investigate, execute and serve search warrants."

See Doc. 35-8, pg. 2

200. Shern declared under penalty of perjury as a "case agent" on April 26, 2005, he was assigned to conduct:

> "an investigation of Lindsey Springer for allegations of violations of Title 26, United States Code, including tax evasion and failure to file income tax returns."

See Doc. 35-8, pg. 2

201. Shern also declared "On [September 15, 2005] I presented an application and affidavit for search warrant to search Springer's residence..." Doc. 35-8, pg. 2

MOTION FOR RELEASE
AND APPEAL

202.     In response to my Motion for Release the Government made the following

claim of its Trial theory:

> "with his frivolous legal contention that the Paperwork Reduction Act provides
> a complete defense to willful failure to file a tax return (no necessarily a
> Form 1040).

See Doc. 357, or 361, pg. 5-6

203.  .   In the Government's Appellee Brief they actually argued:

> "despite Springer's claim that each Count of conviction is inexorably linked
> with a Form 1040, only the two failure to file Counts could potentially be
> affected by the PRA."

See Exhibit  4 - 1

204.     The Government continued in its argument:

> "Springer tries to avoid this case law by maintaining that because THE FORM
> HE WAS REQUIED TO FILE BY REGULATION, the PRA applies.  BUT  SPRINGER IS NOT
> PUNISHED FOR WILLFULLY FAILING TO FILE A PARTICULAR AGENCY-SPECIFIED FORM; he
> is being punished for willfully failing to 'make a return....at the time or
> times required by law or regulation."

See Exhibit  4 - 2

SENTENCING

205.     At sentencing, the Trial Judge stated he had rejected my Paperwork

Reduction Act defense as a matter of law and the jury has rejected it as a factual

matter. Doc. 399, pg. 8, ln 21-23 ; compare ¶ 145 instructing the jury factually

206.     Agent Shern testified the evidence regarding tax loss and restitution

for sentencing purposes consisted of one item before 2000 and items after 2005.

Doc. 399, pg. 14, ln 15-23

207.     Agent Shern testified that there were 8100 different hits on a blog

people were following regarding my case.  Doc. 399, pg. 29, ln 16

208.  .   Agent Shern testified the $ 111,701.50 I received in 1999 from Dale

Hedberge was not for any payment of any services in 1999 or at any time thereafter.

See Doc. 399, pg 41-43

(27)

209.      Agent Shern testified he never spoke to Mr. Hedberge personally and through another Agent was told Mr. Hedberge gave the apprx. $.111,701.50 as a gift for his childrens future to me to the best of my knowledge and belief.

210.      Mr. Shern testified I personally introduced Eddy Patterson to Cynthia Hess, who is a college professor at Tulsa University School of Law and an Attorney and CPA to the best of my knowledge and belief.  Doc. 399, pg. 54, ln 16-25; pg. 55, ln 4.

211.      Mr. Shern testified he did not know how many hours of "services" I provided to James Lake, Eddy Patterson  and Judy Patterson, Dr. Roberts or Dale Hedberge. Doc. 399, pg. 69.

212.      Mr. Shern testified he did not know how many hours I worked for Ernie Swischer,  Doc. 399, pg. 74, ln 2-4,  nor Kent and Jo Hovind. ln 5-7

213.      Mr. Shern testified year 2001 was not charged due to being outside the statute of limitations on failure to file, with no tax deficiency available, Doc. 399, pg. 74, and Count Five and Six were only willful failure to file because "there wasn't a tax liability." pg. 75, ln 16; ln 24-25; pg. 76, ln 1-3

214.      At sentencing, I was told Mr. Turner's $ 250,000 transaction went from a loan to gross income based upon no one thought I would ever pay it back. Doc.399 pg. 82, ln 18

215.      Mr. Miller acknowledged that the only other loan I had made was from Eddy Patterson and that I paid it back without any lien interest being held in the vehicle purchased.  Doc. 393, pgs. 1984-1985

216.      The Trial Court explained the Government theory on Count Four:

"The government theory as to Mr. Turner, as I understand it, is not that the deposit into the IOLTA account was evasion of taxes, per se, but that it was ---had the effect of impairing the Government's collection ability..."

See Doc. 399, pg. 83, ln 8-13

217.      In reaffirming the Trial Court's decision that it was an all or nothing theory on each payment and testimony presented to the Jury at trial, explained:

> "the overarching question of whether the funds that you received over the years that were involved in this case were received by you for SERVICES RENDERED has been conclusively resolved against you by the verdict."

See Doc. 399, pg. 85, ln 2-7

218.    It was explained to me that Count Four's $ 250,000.00 was gross income to me for the alleged tax evasion claim in Count Four's evasion of payment and also attributable to me as "helping Mr. Turner evade the payment of taxes that he owed." Doc. 399, pg. 88, ln 15-16

219.    Mr. Shern testified  that everyone accepts the purpose of Turner transfering $ 250,000.00 to Stilley's IOLTA was so Turner:

> "would have funds available to use [sic] him as counsel if necessary, but instead of the money being used for that purpose, you took it and bought a motor home and a Lexus with it and spent it."

See Doc. 399, pg. 88, ln 17-23

220.    Out of the hundreds of people attending the IFC conference calls, Mr. Shern testified I directed people to file tax returns and that I did not advocate anyone violate the tax laws.   Doc. 399, pg. 94, ln 20

221.    Mr. Shern testified he did not know how many hours I worked for Dr. Guthrie.  Doc. 399, pg. 95, ln 6-7

222.    The Sentencing Judge found that:

> "Mr. Springer did have followers, he did solicit donations and -- for individuals like Mr. Springer in this part of the Country. lossly speaking, we're in the land of small donations..."

See Doc. 399, pg. 123, ln 5-8

223.    Mr. O'Reilly sought to clarify at sentencing his theory of my ministry:

> "Just for clarification,  our THEORY is that Mr. Springer ran a business and all the payments to that, that were not actually used for MINISTERIAL purposes, basically he kept in his pocket.  First of all, its gross income, and then how he used it would be potentially deductible.  That is our THEORY based on the Court's JURY INSTRUCTIONS at trial, also our understanding of the law."

See Doc. 399, pg. 123, ln 17-24

224.    The Trial Court found I had received possibly thousands of donations. Doc. 401, pg. 398, ln 12-14

(29)

225.     Mr. Stilley asked Mr. Shern what was the act that he claimed began the Conspiracy in Count One to which he explained:

"I THINK the legal representation that you gave Mr. Roberts was- you knew was completely false and it wasn't going to be effective, but yet you still put forward those defenses."

See Doc. 399, pg. 142, ln 9-12

226.     Mr. Shern testified about the theory behind the Turner transaction:

"Well, considering the fact that as soon as the money went into the account and it was spent, I think Mr. Turner just-- he may have thought he was transfering that money over, which I think he testified to as a loan in case a criminal investigation started, investigating him and pursuing criminal prosecution of him, that he was going to hire you to perform services for him."

See Doc. 399, pg. 168, ln 8-14

227.     Mr. Turner testified the criminal investigation had been going on since at least 2003. Doc. 391, pg. 1480, ln 22 to 25

228.     Mr. Miller testified and referred to me has having a "ministry." Doc. 399, pg. 180, ln 12

229.     Mr. Miller explained how he treated the money I received:

"It was either for services rendered or it was in pursuit of your ministry. And to me, you know, it doesn't matter; its income either way."

See Doc. 399, pg. 207, ln 3-5

230.     Mr. Shern testified that both Art and Cindy Hawkins' payments to Bondage Breakers's Ministries were known by them to be for legal services and that they tried to hide that fact:

"Yes, I believe so, because they knew the money wasn't a donation of any kind or a gift to any kind of charitable organization.  The purpose of writing that check to Bondage Breaker's Ministries was to hide the fact that is was legal services."

Doc. 399, pg. 145, ln 13-17

231.     Mr. Shern agreed that the "conspiracy" in Count One was an "existing conspiracy that Oscar Stilley joined." Doc. 399, pg. 146, ln 23-25 (answering "yes")

232.     Mr. Shern explained Oscar Stilley's role was:

"To come in and help Lindsey Springer bilk money from all these clients and to hide it."

See Doc. 399, pg. 147, ln 7-8

233.    Mr. Shern was asked what Stilley should have done differently to which he answered:

> "Not helped Mr. Springer hide Mr. Turner's $ 250,000 by going through your account."

See Doc. 399, pg. 165, ln 2-4

234.    Mr. Shern also testified about Mr. Turner's loan;

> "So there's two separate crimes being committed here: One is tax evasion on the $ 250,000 that Mr. Springer received as income, and Two, is assisting Mr. Turner in evading the payment of his taxes."

See Doc. 399, pg. 165, ln 22-25

235.    Mr. Miller testified at sentencing that he:

> "was an expert witness on the requirement to file and the Form and a summary witness of all the testimony that has been provided earlier."

Doc. 400, pg. 213, ln 18-20

236.    The Sentencing Judge "for 1990 through 1995" included in tax loss and restitution "the assessed amount of tax" which was "$ 91,196.00" Doc. 401, pg. 407, ln 6-7

237.    The Sentencing Judge relied upon Calendar and Tax Year 1990 through 1995, and 1999 through 2007 in compiling its tax loss calculations attributable to me in the amount of $ 390,787..." Doc. 401, pg. 407, ln 13 to 20

238.    The Sentencing Judge imposed restitution for years 1990 through 1995 and 1999 to 2007 in the amount of $ 691,343.00 on information and belief.  Doc. 401, pg. 432-433; See also Doc. 337, pg. 6

239.    The Sentencing Judge imposed restitution to the State of Oklahoma in the amount of $ 80,186.00 for 1990 through 1995 and 1999 through 2007 on information and belief. Doc. 401, pg. 433, ln 1; Doc. 337, pg. 6

240.    The Sentencing Judge held my testimony that I "did not willfully fail to file Form 1040 for years 2000 through 2005" was "categorically false." Doc. 401, pg. 426-427

MOTION FOR NEW TRIAL

241.     In denying my motion for New Trial on the Court's instruction to the Jury

that "IRS Form 1040 did not violate the Paperwork Reduction Act" the Trial Judge

based his decision on a quote from Judge Eagan's decision in Springer v. U.S., 447

F.Supp. 2d 1235, 1238 (N.D.Ok. 2006) which he said:

> "the requirement to file a tax return is mandated by statute, not by regulation'
> and 'such explicit statutory requiements are not subjec to  the PRA.'"

See Doc. 293, pg. 6

242.     The Trial Judge also denied my motion based on the claim there was no

U.S. Attorney to prosecute.  Doc. 293, pg. 12

243.     The Trial Judge denied my motion for new trial. Doc. 293, pg. 13

244.     The Trial Judge also denied my motion that claimed there was no jurisdiction

to prosecute due to no U.S. Attorney to prosecute .the  ×-proffered referral for

years 2000 through 2004 dated June 3, 2005.  Doc. 312, pg. 2

245.     The Trial Judge held expanding Count One to include Stilley's income

was permissible because the Grand Jury alleged:

> "Defendant Springer and Stilley would and did refrain from filing Forms with
> the Internal Revenue Service, including Forms 1040 and 1099."

See Doc. 293, pg. 7-7; reported at 2010 Lexis 6906 (N.D.Ok. 2010)

246.     In its denial of my Motion for a New Trial regarding Count One, which

I claimed had effect on Counts Two through Six, the Trial Judge explained its ruling:

> "Count references Mr. Stilley's failure to file Form 1040 and alleges conduct
> by Mr. Stilley that is independent of Mr. Springer's income."

See Doc. 293, pg. 8

247.     Directly after Trial, on or around November 20, 2009, Mr. Rice issued a

Notice of Levy for years 1990 through 1995 and in the column "kind of tax" he wrote

"1040." See Exhibit 5

APPELLATE COUNSEL

248.    My attorney, Jerold Barringer, was suspended from the Tenth Circuit's Bar
on September 2, 2011. In re: Barringer, 11-816(10th Cir. 2011).

249.    My original opening brief to the Tenth Circuit was filed by Mr. Barringer
on or about December 8, 2010.

250.    On December 14, 2010, Mr. Barringer filed for a Stay in a civil case then
pending before the Tenth Circuit, 10-5037, originating from 08-CV-278 out of the
Northern District of Oklahoma.

251.    On December 15, 2010, the Tenth Circuit issued an order on the Motion for
Stay denying relief sought and making a finding that claims the IRS has no juris-
diction outside Washington D.C. without the President establishing Internal Revenue
Districts either meritless or frivolous.

252.    On January 3, 2011, Mr. Barringer filed a "revised" opening brief making
similar claims to the Jurisdiction of the IRS regarding its criminal enforcement
due to the President's failure to establish Congress's demand for Internal Revenue
Districts.

253.    On June 23, 2011, Tenth Circuit Judges Tymkovich, Baldock, and Brorby, issued
its decision in 10-5037 affirming the District Court's orders in 08-CV-278 in 10-
5037. ⌊10th Doc. # 9878245⌋

254.    On June 23, 2011, the same Panel directed an order that Barringer show cause
why he should not be disciplined for violating the Tenth Circuit's admonishment in
its December 15, 2010 order in 10-5037. ⌊10th Doc. 987853⌋

255.    In its June 23, 2011 order, the Tenth Circuit specifically referred to my
then pending criminal appeal in 10-5055:

> "For example, in a pending criminal matter, Mr. Barringer 'challenges the
> ⌊Treasury⌋ Secretary's jurisdiction and authority to enforce offenses con-
> cerning the Internal Revenue Laws,' United States v. Springer, No. 10-5055,
> Aplt. Revised Opening Br. at 8 (filed January 3, 2011). Similar to the Frivolous
> claims he made in this  appeal, Mr. Barringer argues that '⌊w⌋ithout ⌊Internal
> Revenue Districts⌋ and ⌊Division Districts⌋ there could never have been any
> proper delegation of authority outside the District of Columbia from the

Secretary⌊of the Treasury⌋ to any U.S. Attorney. Id. at 11.  Mr. Barringer
thus concludes that '⌊t⌋he District Court should have dismissed all Counts
for failure to establish jurisdiction and venue of each Count since all ⌊Inter-
nal Revenue Districts⌋ and ⌊Division Districts⌋ were abolished in 2000 preventing
any authorization to prosecute ⌊defendant⌋ for any offenses related to internal
revenue...."

256.   On July 13, 2011, Barringer filed Petition for Rehearing in 10-5037. ⌊10th
Doc. # 9884305⌋.

257.   On July 13, 2011, Barringer also filed his "show cause" responding to the
Court's June 23, 2011 show cause order.  ⌊10th Doc. 9884306⌋

258.   On or about July 28, 2011, Judges Tymkovich, Baldock, and Brorby referred
Barringer to the Court's assigned disciplinary panel after finding Barringer "insists
on pursuing" his theory and "making frivolous statements in the guise of advocacy."

259.   The Clerk's Office opened case # 11-816, In re: Barringer.

260.   In 11-816, the Court directed Barringer to show cause why he should not be
disciplined by the Tenth Circuit for violating Rules of Professional Conduct 3.1.

261.   In that order, the Court again explained the conduct at issue:

"For example, in a pending criminal matter, Mr. Barringer 'challenges the
⌊Treasury⌋ Secretary's jurisdiction and authority to enforce offenses concern-
ing the Internal Revenue Laws.' United States v. Springer, No. 10-5055, Aplt.
Revised Br. at 8(filed January 3, 2011). Similar to the frivolous claims he
made in this appeal, Mr. Barringer argues that "⌊w⌋ithout ⌊Internal Revenue
Districts⌋ and ⌊Division Districts⌋ there could never have been any proper
delegation of authority outside the District of Columbia from the Secretary
⌊of the Treasury⌋ to any U.S. Attorney.' Id. at 11.  Mr. Barringer thus con-
cludes that "⌊t⌋he District Court should have dismissed all Counts for failure
to establish jurisdiction and venue of each Count since all ⌊Internal Revenue
Districts⌋ and ⌊Division Districts⌋ were abolished in 2000 preventing any
authorization to prosecute ⌊defendant⌋ for any offenses related to internal
revenue...").Id."

262.   The Tenth Circuit suspended Mr. Barringer from the Bar of its Court on September
2, 2011.

263.   On October 26, 2011, Judges Lucero, Baldock, and Tymkovich authorized a "per-
curium" order and judgment in my criminal appeal, case No. 10-5055, consolidating my
appeal with Mr. Stilleys at 10-5057, and two other cases, 10-5156 and 11-5053.

264.   Judges Baldock and Tymkovich were both on the Panel in 10-5037, reported at
427 Fed. Appx. 650(10th Cir. 2011), and 10-5055, reported at 444 Fed. Appx. 256.

265.    In the Tenth Circuit's order in 10-5055, the Court wrote:

"During the pendency of these appeals, Mr. Springer's attorney, Jerold W.
Barringer, was indefinitely suspended from practicing before this Court. See
In re: Barringer, No. 11-816(10th Cir. Sept. 2, 2011), reh'g en banc denied
(10th Cir. Sept. 28, 2011). Mr. Springer is presently subject to pro-se filing
restrictions, but those restrictions are inapplicable to criminal appeals. See
Springer v. IRS, ex rel   United States, 231 F.App'x 793, 802-804(10th Cir.
2007)(unpublished)."

266.    Under the model code of Judicial Conduct at Rule 2.15(2011 Edition), a Court
responding to Judicial and Lawyer Misconduct requires that "(D) A Judge who receives
information indicating a substantial likelihood that a lawyer has committed a viol-
ation of the Rules of Professional Conduct shall take appropriate action."

267.    I Petitioned for Rehearing and En Banc consideration which were denied in
10-5055, 10-5156, and 11-5053.

268.    I appealed by Petition to the Supreme Court where my Petition was "denied"
on June 4, 2012.

269.    The State of Illinois has brought disbarment proceedings against Mr. Barringer
for conduct occurring in my cases.

270.    Recently Mr. Barringer sought reinstatment in the Tenth Circuit and was denied
after another Panel of Three Judges in a procedural only order stated "Advancing
and defending frivolous legal arguments is something very different from simply
making 'errors' or using 'poorly chosen' words." See Order in 11-816 dated 11.28.12
[10th Doc. 01018957689]

271.    Mr. Barringer has represented me in several cases before the Tenth Circuit;
See Spinger v. CIR, 580 F.3d 1142(10th Cir. 2009); Springer v. Albin, 398 Fed. Appx.
427(10th Cir. 2010); In Re Springer, 2010 U.S. App. Lexis 27413(10th); Springer v.
CIR, 416 Fed. Appx. 681(10th Cir. 2011); U.S. v. Springer, 447 Fed. Appx 877(10th
Cir. 2011); and U.S. v. Springer, 444 Fed. Appx. 256(10th Cir. 2011):

272.    At no time was Mr. Barringer, prior to the December 15, 2010 order issued
in 10-5037, ever found to have acted in an unprofessional manner or raised issues
the Court found to be frivolous in his representation of me.

CHOOSING TRIAL DEFENSES

273.   In choosing my defenses in the District Court I relied on the Grand Jury's words, words from the 1040 instructions, the Form 1040 for years 1990 through 2008, Office of Managment and Budget's Certification Form 83I filed by the Secretary of the Treasury's delegate or compliance officer, the Paperwork Reduction Act and several Court decisions discussing Form 1040 and the Paperwork Reduction Acts, in my decision to refuse to answer questions on Form 1040 U.S. Individual Income Tax Return prescribed by the Secretary.

274.   I mostly relied on Dole v. United Steelworkers of America, 494 U.S. 26, 32-33 (1990), as referred and explained in U.S. v. Collins, 920 F.2d 619, 631 and footnote 12 and 13; and as reported in U.S. v. Dawes, 951 F.2d 1189, 1192(10th Cir. 1991); U.S. v. Chisum, 502 F.3d 1237, 1243-44(10th Cir. 2007); Springer v. IRS, ex rel, United States, 231 Fed. Appx. 793, 795-99(10th Cir.2007); Lewis v. CIR, 532 F.3d 1272, 1275(10th Cir. 2008); and Springer v. CIR, 580 F.3d 1142, 1143-44(10th Cir. 2009); concluding Form 1040 United States Individual Income Tax Returns are subject to every obligation Congress set forth in the Paperwork Reduction Acts.

275.   In Collins, the Tenth Circuit reported at 920 F.2d at 631:

"[t]he IRS 1040 Forms at issue in the present case..."

276.   In Collins, the Tenth Circuit reported at 920 F.2d at 631, n.13:

"But because the provision of information in 1040 Form is inexorably linked to the statutory requirement to pay taxes, and defendant failed to file such forms, the Paperwork Reduction act was applicable to such conduct."

277.   I relied on the Two Bills of Particulars in my decision to represent myself at trial, my decisions regarding my defenses, and both the examination and cross examination of my and the Government witnesses, plus my decision to testify in my defense.

278.   I was never informed prior to the decision of October 26, 2011, Form 1040 U.S. Individual Income Tax Returns, and each their questions, were divorced from 26 U.S.C.§§ 6012, 7203, or the offenses and offense conduct alleged in each of the Six Counts by the Northern District, Tenth Circuit, Secretary of Treasury and CIR,

279.    At all times I understood and claimed before indictment, before trial, and continue to claim herein, that Form 1040 United States Individual Income Tax Returns at issue in each of the Six Counts were inexorably linked to the requirements under 26 U.S.C. §§ 6011, 6012, 6091(b), 6151, and their regulations, as identified by the Government in its Two Bills of Particulars. See Doc. 104, 201

280.    At all times I understood and claimed before indictment, before trial, and continue  to claim herein, that the phrase "Notwithstanding any other provision of law" appearing in 44 U.S.C. § 3512(a)(1995), and as this phrase appeared in 1980s version of 3512, meant no single provision of law existing at the time the Paper- work Reduction Acts were enacted into law withstood the public protection provided by § 3512(1980 and 1995).

281.    I did not waive trial counsel with any understanding Form 1040 was divorced from § 6012's requirements.

282.    I would never have chosen to testify at trial, given a proffer, or met with the United States' Internal Revenue Service employees about whether I was required to file a United States Individual Income Tax Return for any year had I been made aware, publicly or privately, that Form 1040 was divorced from the requirements of the law.

283.    I was never given notice until October 26, 2011, that "Tax Returns" appearing in the Title of 26 U.S.C. § 6091(b) actually were placed by Congress under § 6091(a).

284. I was personally informed and involved in the plea negotiations between Pastor Carl Morris and Mr. Snoke in either 2007 or 2008 time period involving tax offenses Pastor Morris was alleged to have committed.

285.    I am aware and informed Pastor Morris was represented by Attorny Alan Richey of Spokane Washington who represented Pastor Morris in his plea agreement with Mr. Snoke.

286.    I am informed that Mr. Snoke agreed to allow Pastor Morris to appeal issues involving whether the Form 1040 United States Individual Income Tax Returns for the

years in his plea agreement violated the Paperwork Reduction Act.

287.    I am informed the 2012 1040 instructions continue to announce Form 1040 is mandatory under 26 U.S.C. §§ 6001, 6011, 6012(a), and their regulations.

288.    I am informed the 2012 Form 1040 continues to notice the public Form 1040 is subject to the Paperwork Reduction Act.

289.    The Grand Jury alleged in its General Allegations applicable to all Six Counts that:

> "Defendant Springer used the name Bondage Breaker's Ministry to solicit and receive money. Defendant Springer's stated purpose for Bondage Breaker's Ministry was 'to get rid of the Internal Revenue Service.'"

See Doc. 2, pg. 1, ¶ 2

290.    Count Two's alleged affirmative acts are alleged as follows:

1) receiving income in a fictious name;

2) directing individuals to write "donation" or "gift" on checks that were payment for services;

3) directing individuals to pay for services by cashiers checks;

4) using check-cashing business to cash checks;

5) using money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal his income;

291.    Count Three alleges the following affirmative acts:

1) directing individuals to make checks payable to Bondage Breaker's Ministry;

2) using a check-cashing business to cash checks;

3) accepting collectible coins as payment for services;

293.    Count Four alleges the following affirmative acts:

1) directing  individuals to make checks payable to Bondage Breaker's Minstry;

2) using a check-cashing business to cash checks;

294.    Count Three alleges myself and Stilley committed and aided and abetted the commission of the following acts of evasion:

1) using Stilley's IOLTA account;

2) using Stilley's credit card;

3) Using cashier's checks, money orders, cash, and other means to avoid usual record and to conceal income;

4) Making false statements to agents and employees of the Internal Revenue Service;

5) Concealing and attempting to coneal from all proper officers of the United States of America Defendant's true and correct income;

Count Four alleges the following affirmative acts:

1) directing individuals to make checks payable to Bondage Breaker's Ministry;

2) using a check-cashing business to cash checks;

295.  Count Four alleges myself and Stilley committed and aided and abetted the following acts:

1) Using Stilley's IOLTA account;

2) Using Stilley's credit card;

3) Using cashier's checks, money orders, cash and other means of payment to avoid usual records and to conceal income;

4) Making false statements to agents and employees of the IRS;

5) Concealing and attempting to conceal from all proper officers of the United States of America Defendant Springer's true and correct income;

296.  I would never have gone to trial regarding the meaning of "gift" had I been made aware of the Court's planned definition and would have sought advice of Counsel on how to proceed with Trial where the Court instructs on  a definition of a term I had never seen before.

297.  I recenlty became aware of the Tenth Circuit's unpublished decision in U.S. v. Hoodenplyle, 461 Fed. Appx. 675, 682(10th Cir. 2012), where the Court held the IRS was created as an Agency of the Secretary of the Treasury at 26 CFR § 601.101.

298.  Count One through Six never uses the term "payment" of taxes as any part of the alleged conduct as that term is used at 26 U.S.C. §§ 7201 and 6151 ("pay").

299.  It is my understanding and I am informed that the identification of Form 1040 and United States Individual Income Tax Returns alleged in the Grand Jury claim

implies Treasury Regulations, which is consistent with the Government's Two Bills of Particulars and the Statutes and Regulations listed therein, as well as the CIR's instructions specifically identify §§ 6001, 6011, 6012(a), and their regulations.

300.   I was present during the Trial when the Government accepted the 1040 instructions into the record insisting they accompany Form 1040 to the Jury. See ¶¶ 154,162 infra

301.   It is my understanding that to "file" a "Tax Return" implicates its delivery and that 26 U.S.C. § 6091(b) is Congress's provision on where the demand or duty "Tax Returns" must be delivered.

302.   At all times during 2000 through 2003, and most of 2004, there was no place referred to as "Internal Revenue District" or office of District Director anywhere, including 26 CFR § 1.6091-2's "Baltimore, Md" for persons who do not live in any Presidentially established "Internal Revenue District" on information and belief.

303.   It is my understanding that whether a payment is a gift or not goes to issues of assessment and not payment with the understanding Section 7201 at issue in Counts Two, Three, and Four, anounce two offenses,not one.

304.   With the understanding evasion of assessment and evasion of payment are two distinct offenses under Section 7201, not one, I am unaware of how my receipt of money from others was an attempt to evade payment under the Supreme Court's holdings.

305.   It is my humble opinion and claim that I did not voluntarily, knowingly, and intelligently waive my right to Sixth Amendment Counsel with an  understanding of the charges and offense conduct of attempted evasion of payment in Counts 2,3, and 4, or Counts 2,3,4,5 and 6's Failure to make or file a Tax Return (Counts 2,3,and 4 as lessor included 7203 offenses) where the Tenth Circuit held Form 1040 divorced and not involved in any obligation at issue in the Six Counts of the Indictment.

306.   Furthermore, my waiver contained an exception or limitation with regard to Counts 2,3 and 4, which even in the Government's Trial Brief they were referencing to both the offense of assessment and payment together as one offense.

307.   I certainly did not have any colloquy with Judge Friot about any defenses prior to waiver, in the transcripts sent me by Mr. Barringer, and I remember no such conversation about any defenses where Form 1040 was the subject and considered "divorce[d]" by the Government, Grand Jury, Secretary of the Treasury or his Agents, and the Court.

308.   I was misled into believing Form 1040 was required by law and central to all Six Counts, including how taxes on income becamse due and owing.

309.   I was misled that Form of Return Form 1040 United States Individual Income Tax Return was required and mandatory under 26 U.S.C. §§ 6011 and 6012, as well as 26 CFR § 1.6011-1(a) and § 1.6012-1(a)(6).

310.   I was misled into believing the law required at 26 U.S.C. § 6151 the return of tax at the place I was required by law to file a tax return.

311.   I was misled into believing the requiement to deliver the Form of Return prescribed by law and designated as Form 1040 U.S. Individual Income Tax Return was to be delivered according to Congress's words at 26 U.S.C. § 6091(b), and not at § 6091(a).

312.   I was misled into believing regulations play no significant role in the Governments case in chief. Doc. 201.

313.   I was misled into believing the Paperwork Reduction Act's public protection provision applied to the Secretary's Form 1040 since at least 1981.

314.   I was misled into believing Counts Two, Three, and Four, also contained the lessor included offense of willful failure to file a "United States Individual Income Tax Retun" under 26 U.S.C. § 7203. Doc. 104.

315.   Had the Grand Jury not alleged I last filed income tax returns in the late 1980s (¶ 6), or that I refrained from filing Tax Forms with the Internal Revenue Service, including Forms 1040 (¶ 14), or intended to impede the assessment and collection of "Federal Income Taxes" (¶ 9), [Count One]; or if they had not alleged in Counts Two, Three, and Four that I willfully attempted to evade and defeat the individual income taxes due and owing by me to the United States of America "by failing to file a United States Individual Income Tax Return," as required,

or that I willfully failed to file an income tax return for years 2002 and 2004, I would have proceeded fundamentally differently in my decisions in this case after I was indicted.

316. First, I never would have raised any defenses without consulting with an attorney which at the time I had consulted with numerous attorneys on the requirements to file Form 1040 United States Individual Income Tax Returns, including Alan Richey, Jerold Barringer, Cynthia Hess, and even Robert D. Metcalfe of the Tax Division of the U.S. Department of Justice.

317. At no time to the best of my memory did any of these Attorneys suggest or imply Form 1040 United States Individual Income Tax Returns were divorced from the requirement to file an income tax return.

318. Second, I would never have presented any defense to the charges in each of the Six Counts as to why I did not file Form 1040s alleged had I been made aware Form 1040 was divorced from any duty or obligation at issue.

319. Third, I would have never chosen to testify and waive my Fifth Amendment Right to remain silent at trial had I been made aware Form 1040 was divorced from the obligations and duties at issue in each Count as explained by the Two Bills of Particulars.

320. Fourth, I would never have sued the IRS over Form 1040 not complying with the Paperwork Reduction Act had I been made aware Form 1040 was divorced from the requirments of 26 U.S.C. § 6012.

321. Fifth, I would never have sued the IRS over Form 1040 not complying with the Paperwork Reduction Act had I been made aware Title 26, and Title 26 related penalties related to failure to provide information on Form 1040, i.e. failure to file or deliver 1040 U.S. Individual Income Tax Returns, withstood the public protection Congress mandated at 44 U.S.C. § 3512(a), including crimnal penalties at 26 U.S.C. §§ 7201, 7203, and under Title 18, U.S.C. § 371, when the claims are involving the Internal Revenue Service.

(42)

322.   Even Judge Eagan told me in her order of June 22, 2006, quoted by Judge Friot on at least two different occasions, that the Secretary of the Treasury and IRS have authority to impose crimnal penalties related to Form 1040. See 447 F.Supp. 2d at 1238

323.   Sixth, had I known Congress had moved "Tax Returns" out of 26 U.S.C. § 6091(b) and under § 6091(a), as the Tenth Circuit held in its October 26, 2011 decision affirm-ing the District Court's decisions, I would never have formed my position under § 6091(b) regarding Internal Revenue Districts and office of District Directors.

324.   Seventh, had I known 26 CFR § 1.6091-2(2005) was an exception to 26 U.S.C. § 7805(b), I would have challenged retroactive application of § 1.6091-2(2005) to the referral years of 2000 through 2004 as violating the Ex Post Facto Clause of Article I, Section 9, Cl. 3 (U.S. Constitution) and 26 U.S.C. § 7805(b).

325.   Eighth, besides conducting myself differently prior to each years alleged conduct, I also would have consulted Counsel on what to do where the law and regulat-ions say Form 1040 is mandatory, and subject to the PRA, contrary to what the Court now says on October 26, 2011 that Form 1040 is "divorced" from §§ 6012 and 7203 and Title 26 criminal penalties withstand the Paperwork Reduction Act.

326.   I probably, after consulting an attorney in regard to my ministry and its mission, submitted some form of information as I did when summoned by Agent Meadors in 2004.

327.   Ninth, I most likely would never have elected to go to trial had I, after being informed prior to each Tax or Calender year Form 1040 was divorced from the requirement to file a Federal income tax return, conducted myself in a way unacceptable to the IRS. I say most likely because without the advice of Counsel I am unable to say with any degree of certainty.

328.   Tenth, with the benefit of the Tenth Circuit's decision on Form 1040 being divorced, and "Tax Returns" being moved out of 26 U.S.C. § 6091(b) and under § 6091(a), and Treasury Regulations control each Count in "chief", I would have moved to dismiss each Count of the indictment for alleging conduct that was "divorced" from any duty

or obligation I had under the law, and because, as the Tenth Circuit explained:

"there is no substantive obligation or crime arising out of Form 1040 itself."
See 444 Fed. Appx. at 262; quoted at ¶335, infra

329.   Eleventh, I would also have moved, as I claim in my Habeas Corpus being filed accompanying this declaration, that the statutes and regulations relied upon by the Secretary in making the referral, U.S. Attorney in presenting the Six Counts for Grand Jury indictment, the Grand Jury for its Six Count return, and the District Court, are unconstitutional for having two different constructions of what they direct the public to accomplish or do.

330.   Twelfth, I would have moved to dismiss claiming the statutes and regulations that direct use of Form 1040, as mandatory, were contrary to the Tenth Circuit's holding in my case specifically.

331   Thirteenth, I proceeded with a fundamentally distorted view of the charges and offense conduct, defenses, and my prospects of conviction verses acquittal.

332.   Fourteenth, I clearly have established in the record of the District Court a defense of "entrapment by estoppel" and as I understand it there are at least Four elements to the defense of "entrapment by estoppel" which are:

1) active misleading by Government Agent;

2) actual reliance by the Defendant;

3) which is reasonable in light of the identity of the agent, point of law misrepresented, and the substance of the misrepresentation;

4) and that the Agent must be one who is responsible for interpreting, administering, or enforcing the law defining the offense.

333.   Fifteen, I clearly had the option of presenting a good faith defense as to why I did not believe I was required to file an income tax return based upon the Fifth Amendment that I believed protected me from having to provide any information to the IRS on my "business" that had a publicly supported and stated mission to "get rid of the" IRS, as the Grand Jury states in the indictment.

334.   I had these other defenses I would have presented had I known Form 1040 was "divorced" or that the Court would instruct the Jury the way it did on Form 1040.

(44)

TENTH CIRCUIT'S ORDER

335.    The Tenth Circuit in affirming my convictions held:

"there is no substantive obligation or crime arsing out of FORM 1040 ITSELF."

See U.S. v. Springer, 444 Fed. Appx. 256, 262(10th Cir. 2011).

336.    The Tenth Circuit also, in refusing to once again reach the merits of my

PRA claims of protection which no law is supposed to withstand ("notwithstanding"),

involving Form 1040 alleged by the Grand Jury applicable to all Six Counts, held:

"the obligation to file a tax return and the criminalization of willful
failure to do so represent statutory mandates DIVORCED from Form 1040."

444 Fed. Appx. at 262

337.    The Tenth Circuit explained its decision was based upon the following:

"defendants' obligation to file a return, and the crimes associated with their
efforts to circumvent that obligation, are prescribed by statute, e.g. 26 U.S.C.
§§ 6012 (requiring the filing of return), and 7203(proscribing the failure to
file return)."

444 Fed. Appx. at 262

338.    The Tenth Circuit continued holding:

"In fact, an actual Form 1040 MAY not even be necessary to comply with the
statutory obligations."

Springer, 444 Fed. Appx. at 262.

339.    The Tenth Circuit also explained  its holding  on where the law required

the "Tax Returns" to be filed at a specific place:

"The Secretary of the Treasury is authorized under 26 U.S.C. § 6091(a) to
promulgate regulations prescribing 'the place for the filing of any return,
declaration, statement or other document."

444 Fed. Appx. at 261.

340.    The Tenth Circuit expounded on its holding by identifying 26 CFR § 1.6091-

2(2005 version):

"but 26 C.F.R. § 1.6091-2(a) requires individuals to file returns with 'any
person assigned the responsibility to receive returns at the local Internal
Revenue Service office that serves the legal residence...of the preson required
to make the return."

444 Fed. Appx. at 261

341.     As an alternative, under its 26 CFR § 1.6091-2 holding, the Tenth Circuit said:

> "Otherwise, if so instructed, individuals or corporations must file returns with a specifically designated internal revenue service center."

444 Fed. Appx. at 261

342.     The Tenth Circuit also held that the Sentencing Guidelines that determine Tax Loss at 2T1.1(c)(2) & n.(A) states:

> "[i]f the offense involved failure to file a tax return the tax loss shall be treated as equal to 20% of the gross income..."

Springer, 444 Fed. Appx. at 265

### STATEMENTS OF ERROR IN APPEAL BRIEF

343.     The Tenth Circuit made the following statement regarding my appeal:

> "Defendants make passing reference to other potential issues throughout their opening brief, but such scattered, perfunctory statements are insufficient to invoke appellate review, and accordingly, those issues are deemed waived.

Springer, 444 Fed. Appx. at 260 ; order at 5 (n.4)

344.     The Tenth Circuit made the following statement regarding my appeal:

> "As we understand their argument, defendants believe the Secretary of the Treasury is authorized to collect taxes only within the territorial limits of Washington D.C."

444 Fed. Appx. at 260 ; order at 6

345.     The Tenth Circuit made the following statement regarding my appeal:

> "These types of spurious delegation arguments were rejected as frivolous before the RRA was enacted...and they have been rejected as frivolous since."

444 Fed. Appx. at 261 ; order at 7

346.     The Tenth Circuit made the following statement regarding my appeal:

> "In short, Defendants' delegation argument is patently frivolous.

444 Fed. Appx. at 261 ; order at 7

347.     The Tenth Circuit made the following statement regarding my appeal:

> "Initially, defendants make no showing that IRS Form 1040 fails to comply with § 3512(a)."

444 Fed. Appx. at 261 ; order at 11

348.     The Court held "Internal Revenue Districts are now defunct[.]" Id.

(46)

349.     The Tenth Circuit made the following statement regarding my appeal:

"But the absence of a statutory definition does not, in and of itself, indicate error."

444 Fed. Appx. at 263; order at 12

350.     The Tenth Circuit made the following statement regarding my appeal:

"If defendants mean to suggest that while gross income excludes gifts, taxable income does not, they are wrong."

444 Fed. Appx. at 263; order at 12

351.     The Tenth Circuit made the following statement regarding my appeal:

"Here, defendants advance no argument why Toughy should not bar their subpoena requests."

444 Fed. Appx. at 263; order at 13

352.     The Tenth Circuit made the following statement regarding my appeal:

"Nor do defendants indicate whether they submitted to the Department of Justice a summary of the evidence they sought to obtain, as required by 28 C.F.R. § 16.23(c)."

444 Fed. Appx. at 263; order at 13

353.     The Tenth Circuit made the following statement regarding my appeal:

"As best we can tell, defendants initially challenge the district court's tax loss calculations."

444 Fed. Appx. at 265 ; order at 16

354.     The Tenth Circuit made the following statement regarding my appeal:

"Mr. Springer contests the inclusion of his assessments from 1990 through 1995, although he does not explain why."

444 Fed. Appx. at 265; order at 17

355.     The Tenth Circuit made the following statement regarding my appeal:

"And defendants point to no evidence demonstrating that the conduct considered by the district court was unrelated for purpose of assessing loss."

444 Fed. Appx. at 265; order at 17

356.     The Tenth Circuit made the following statement regarding my appeal:

"Additionally, Mr. Springer used his purported ministry to solicit funds that he reported as donations."

444 Fed. Appx. at 263 ; order at 18

(47)

357.    The Tenth Circuit made the following statement regarding my appeal:

> "To the extent defendants challenge the court's application of USSG § 3C1.1
> for obstructing justice (or any other remaining enhancement, for that matter),
> their arguments advance no reasoned argument and are insufficient to invoke
> appeal review."

444 Fed. Appx. at 266 ; order at 19.

## POST JUDGMENT EVIDENCE

358.    The Commissioner of the Internal Revenue was reported in U.S.A. Today
Article that at the time of the indictment brought against me, between 2009 and
again in 2011, over 33,000 rich Americans caught stashing their money overseas
were not charged criminally with evading taxes in exchange for paying civil penalties.
See Exhibit  6

359.    In another Article, the Associated Press reported almost 2.5 million
Fraudulent Tax Returns were filed from data obtained in 2011.  See Exhibit  7

360.    In another Article, the Tulsa World reported the Northern District of
Oklahoma has not had a Senate consented and advised U.S. Attorney in Office for more
than Three years.  See Exhibit  8

361.    In another Article in the Tulsa World, it was reported that the Former
Director of HOW stole more than $ 1,359,714.89 with an additional $ 224,000.00
over a period of 8 years.  See Exhibit  9 - 1

362.    The Tulsa World reported that Mr. McGinness actually owed the IRS more
than $ 366,000.00 for tax years 2006 through 2010.  See Exhibit  9 - 1

363.    Mr. McGinness, the Tulsa World reported, "did not report on his federal
income taxes the money he took from a foundation account to pay his credit card."
See Exhibit  9 - 2

364.    Judge Eagan sentenced Mr. McGinness to 15 months in prison and ordered him
to pay more than $ 1.5 million in restitution to the HOW foundation. See Exhibit  9 - 2

365.    Judge Eagan departed below the guidelines of 41 to 51 months  but said
she could not go lower than 15 months due to McGinness's "egregious conduct." Id.

366.    The Tulsa World recently reported the IRS is not auditing religious organ-
izations based upon a decision by a United States District Court in 2009. Exhibit  10

STATUTES AND TREASURY REGULATIONS INVOLVED IN REQUIREMENT
TO MAKE OR FILE AN INCOME TAX RETURN

367. I am setting forth the Statutes and Regulations identified by
Mr. O'Reilly and Snoke in their Two Bills of Particulars, See Doc. 104,
201, explaining the duties and obligations the Grand Jury meant when
it alleged taxes were due and owing by my requirement the law sets
forth instructing me to deliver a Form 1040 United States Individual
Income Tax to a specific person, by a specific day, and to a specific
place desribed in the law.

Statutes and Regulations -

368. Title 26 is known to me and the public as the "Internal Revenue
Code and "Income Taxes" begins at "Subtitle A."

369. Chapter 1 is entitled "Normal Taxes and Surtaxes."

370. Subtitle A is entitled "Determination of Tax Liability."

371. Part I of Chapter I, Subchapter A, is entitled "Tax on Individuals."

372. Section 1 of the Internal Revenue Code ("IRC") is entitled "Tax
Imposed and reads as follows:

> "(c) UNMARRIED INDIVIDUALS (other than surviving spouses and heads
> of household). There is hereby IMPOSED on the taxable income of
> every individual (other than a surviving spouse as defined in
> Section 2(a) or the head of household as defined in Section 2(b)
> who is not a married individual as defined in Section 7703) a tax
> determined in accordance with the following table..."

373. Section 1(d) entitled MARRIED INDIVIDUALS FILING SEPARATE RETURNS
and reads as follows:

> "There is hereby imposed on the taxable income of every married
> individual (as defined in Section 7703) who does not make a single
> return jointly with his spouse under Section 6013, a tax determ-
> ined in accordance with the following table.."

374. § 1(f) directes that the table after December 15, 1993, is

to be prescribed by the Secretary "in lieu of the tables contained in Subsection (a), (b), (c), (d), and (e) with respect to taxable years beginning in the succeeding calendar year."

375.  Section 6001 entitled "Notice or Regulations requiring records, Statements, and Special Returns" reads in relevant part:

> "Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, renders such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe. Whenever in the judgment of the Secretary it is necessary he may require any person, by notice served upon such person or by regulation, to make such returns, render such statements, and keep such records, as the Secretary deems sufficient to show whether or not such person is liable for tax under this title."

376.  The corresponding Treasury Regulation applicable to § 6001 is 26 CFR § 1.6001-1(b) which states:

> "...Individuals whose gross income includes...compensation for personal services rendered are required with respect to such income to keep such records as will enable the district director to determine the correct amount of income subject to tax."

377.  Section 6011 entitled "General requirement of return, statement or list" and begins "Part II" entitled "Tax Return or Statement" which under "Subpart A" entitled "General Requirements" reads in relevant part:

> "When required by regulations prescribed by the Secretary any person made liable for any tax imposed by this title...shall MAKE A RETURN or statement ACCORDING TO THE FORMS AND REGULATIONS prescribed by the Secretary.  Every person required to MAKE A RETURN or statement shall include therein the information required by such FORMS or REGULATIONS."

388.  The corresponding Treasury Regulation applicable to § 6011 is 26 CFR § 1.6011-1(a) entitled "General requirement of return" which states:

> "...Every person subject to any tax...under Subtitle A of the code, shall make such return or statements as are required by the regulations in this chapter.  The returns...shall include therein the information required by the applicable regulations and FORMS."

389.   26 CFR § 1.6011-1(b) entitled "USE OF PRESCRIBED FORMS" and

states:

> "...Each taxpayer should carefully prepare his return and set
> forth fully and clearly the information required to be included
> therein.   Returns which have not been so prepared WILL NOT BE
> ACCEPTED as meeting the requirements of the code."

390.   Section 6012 "Persons  required to make returns of income" and

is the second provision of "Part II" of Subchapter A reads in relevant

part:

> "(a) General rule. Returns with respect to income taxes under-
> subtitle A [26 USC §§ 1, et seq] shall be made by the following
> (1)(A) Every individual having for the taxable year gross
> income which equals or exceeds the exemption amount..."

391.   The corresponding Treasury Regulation applicable to § 6012(a)(1)

is 26 CFR § 1.6012-1(a)(6) entitled "FORMS OF RETURN" and states:

> "Form 1040 is prescribed for general use in makeing THE RETURN
> required under this paragraph."

392.   Section 6072 requires that "returns under Section 6012···shall

be filed on or before the 15th day of April following the close of the

Calendar year."

393.   Section 6091 is the provision that directs Persons to the place

where their returns are required to be delivered or filed and specific-

ally reads in relevant part:

> "(a) When not otherwise provided by this title, the Secretary
> shall by regulations prescribe the place for filing of any
> return...required by this title or by regulation."

394.   Section 6091(b) is entitled "Tax Returns" and otherwise provides

by "this title" in relevant part reads:

> "In the case of RETURNS OF TAX REQUIRED UNDER AUTHOITY OF PART
> II of this subchapter [26 USC §§ 6011, et seq]-(1) Persons...
> (A) Except as provided in subparagraph (B), a RETURN...shall be
> made to the Secretary (i) in the internal revenue district in
> which is located the legal residence···of the person making the
> return, or (ii) at a service center serving the internal revenue
> district referred to in clause (i), as the Secretary may  by
> regulation designate. (B) EXCEPTIONS.   Returns of --(i) persons

who have no legal residence...in any **internal revenue district**
...**shall be made at such place as the Secretary may by regulation
designate.** (4) Hand carried returns...a return to which paragraph
$\overline{(1)(A)}$...would...which is made to the Secretary, be made in the
internal revenue district referred to in paragraph (1)(A)."

395.   The corresponding Treasury Regulation applicable under certain

expressed situations to § 6091(b) is 26 CFR § 1.6091-2(1990 to 2004)

entitled "PLACE FOR FILING INCOME TAX RETURNS" which states:

"(a) Individuals..(1) Except as provided in paragraph (c) of
of this section, income tax returns of individuals...shall be
FILED WITH THE DISTRICT DIRECTOR for the INTERNAL REVENUE
DISTRICT in which is located the **legal residence**...of the
person required to make the return, or if such person has no
legal RESIDENCE...in **any internal revenue district, WITH THE
DISTRICT DIRECTOR AT BALTIMORE, Md. 21202**"

396.   Subsection (c) of 26 CFR § 1.6091-2(1990 to 2004) then states:

"(c) Returns filed with Service Center.   NOTHWITHSTANDING
paragraph (a) and (b) of this section, whenever instructions
applicable to income tax returns provide that the returns be
filed with a service center, the returns **MUST** BE FILED IN
ACCORDANCE WITH THE INSTRUCTIONS."

397.   Subsection (d) of 26 CFR § 1.6091-2 entitled "HAND CARRIED

RETURNS" states:

"Notwithstanding paragraph (1) and (2) of section 6091(b) and
and paragraph (c) of this section; (1) Persons other than
Corporations. Returns of persons...which are filed by hand
carrying shall be filed with the district director (or with
any person assigned the administrative supervision of an area,
zone, or local office constituting a permanent post of duty
**within the internal revenue district of such director**) as
provided in paragraph (a) of this section."

398.   26 CFR § 1.6091-2 was changed by the Secretary for the 2005

Calendar year keeping the same title but now states:

"(a) Inidividuals...(1) Except as provided in paragraph (c) of
this section, income tax returns of individuals...shall be
filed with any person assigned the responsibility to receive
returns at the local Internal Revenue Service Office that
serves the local **residence**...of the person required to make
the return...(c) Returns filed with service center. NOTWITH-
STANDING paragraphs (a) and (b) of this section, whenever
instructions applicable to income tax returns provide that
the returns must be filed in accordance with the instruction.
(d) Hand-carried returns.   NOTWITHSTANDING paragraph (1) and (2)

(52)

of section 6091(b) and paragraph (c) of this section; (1) Persons other than corporations. Returns of persons other than corporations which are filed by hand carrying shall be filed with any person assigned the responsibility to receive hand carried returns in the local Internal Revenue Service office as provided in paragraph (a) of this section."

399. Section 6151 of the IRC is entitled "TIME AND PLACE FOR PAYING TAX SHOWN ON RETURN" and reads as follows:

"(a) General Rule. Except as otherwise provided in this sub-chapter, when a return of tax is required under this title or regulation, the person required to make such return shall, without assessment or notice and demand from the Secretary, pay such tax to the internal revenue officer with whom the return is filed and shall pay such tax at the time and place fixed for filing the return..."

400. The corresponding Treasury Regulation applicable to § 6151 is 26 CFR § 1.6151-1 is entitled "TIME AND PLACE FOR PAYING TAX SHOWN ON RETURN" and states:

"(a)...Except as provided in Section 6152 and paragraph (b) of this section, the tax shown on any income tax return shall, without assessment or notice and demand, be paid to the internal revenue officer with whom the return is filed at the time fixed for filing the return (determined without regard to any extension of time for filing the return).  For provisions reated to the time for filing income tax returns, see section 6072...and §§ 1.6072-1 to 1.6072-4, inclusive. For provisions relating to the place for filing income tax returns, see section 6091...§§ 1.6091-1 to 1.6091-4, inclusively."

401. Section 7201 of the IRC is entitled  "Attempt to evade or defeat" and reads as follows:

"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this Title, or the payment thereof, ...and upon conviction thereof, shall be...imprisoned not more than 5 years..."

402. There are no corresponding regulations to Section 7201 prescribed specifically pursuant to this section.

403. Section 7203 of the IRS is entitled "Willful failure to file return supply information, or pay tax" and reads as follows:

"Any person required under this title to...make a return...who willfully fails to...make such return...at the time or times re-

quired by law or regulation...shall...be guilty of a misdemeanor and...imprisoned not more than one year..."

404. There are no corresponding regulations to section 7203 prescribed by the Secretary of the Treasury or his delegate.

405. Title 18, § 2(a) entitled "Principals" and reads as follows:

"Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principle."

406. Title 18, § 2(b) reads:

"Whoever willfuly causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

407. Title 18, § 371 entitled "Conspiracy to Commit offense or to defraud United States" reads as follows:

"two or more persons conspire...to defreaud...an agency [of the United States]...in any manner or for any purpose, and one or more such persons do any act to effect the object of the Conspiracy, each shall be fined...or imprisoned not more than Five years, or both."

408. In its second Bill of Particulars the Government cited to both 26 USC § 102 and 26 CFR § 1.102-1 involving the meaning of gifts.

409. Title 26, § 102 entitled "Gift and inheretances" reads:

"Gross income does not include the value of property acquired by gift...defise..."

410. The corresponding Treasury Regulation applicable to Section 102 is also entitled "Gift and inheretances" and states:

"General rule.  Property received as a gift, or received under a will or under statutes of descent and distribution, is not included in gross income, although the income from such property is includable in gross income."

411. Due to the switch in the charges from being inexorably linked to Form 1040, to "divorced," and where Tax Returns previously falling under § 6091(b) were moved to § 6091(a), and due to the switch where Treasury Regulations were held to control, I claim the following unconstitutional.

(54)

412.    The words or phrases listed below I claim specifically are unconstitutionally vague, ambiguous, subject to more than once construction, and in some cases simply unintelligable:

A.  From 18 U.S.C. § 371 the term "defraud," and "computation, ascertainment, assessment, and collection...of Federal Income Taxes" [Count One];

B.  From 18 U.S.C. § 371 the phrase "lawful functions" [Count One];

C.  From 18 U.S.C. § 371 the term "willfully" [Count One];

D.  From 26 U.S.C. § 7201 the words and phrases "tax imposed," "tax imposed by this Title, or the payment thereof," "willfully" and "attempts" [Counts Two,Three,Four];

E.  From 26 U.S.C. § 7203 the phrase "make a return" [Counts Two through Six];

F.  From 26 U.S.C. § 7203 the term "willfully" [Counts Two through Six];

G.  From 26 U.S.C. § 1 the phrase "Tax Imposed" and subsection (a)'s "hereby imposed on the taxable income of every head of household" or (b)'s "imposed on the taxable income" [Counts One through Six];

H.  From 26 U.S.C. § 6011(a) the words and phrases "prescribed by the Secretary any person made liable for any tax imposed by this Title...shall make a return... according to the Forms and Regulations prescribed by the Secretary..." [Counts One through Six];

I.  From 26 U.S.C. § 6012(a) the words and phrase "Return...shall be made by the following..." [Counts One through Six];

J.  From 26 U.S.C. § 6091(a) the phrase "When not otherwise provided for by this Title, the Secretary shall by regulation prescribe the place for filing of any return, declaration, statement, or other document...requied by this Title or by regulation" [Counts One through Six];

K.  From 26 U.S.C. § 6091(b) the phrase "Tax Return" and "internal revenue district," and "In the case of returns of tax required under the authority of Part II of this subchapter..." [Counts One through Six];

L.  From 26 U.S.C. § 6091(b) the phrase "have no legal residence in any internal

revenue district" [Counts One through Six];

M.  From 26 U.S.C. § 6151 the words and phrase "return of tax" and "pay such tax to the internal revenue officer with whom the return is filed, and shall pay such tax at the...place fixed for filing the return." [Counts One through Six];

N.  From 26 CFR § 1.6011-1(a) the words or phrase "use of prescribed forms" [Counts One through Six];

O.  From 26 U.S.C. § 1.6011-1(a)(1) the words and phrase "Returns which have not been so prepared will not be accepted as meeting the requirements of the code." [Counts One through Six];

P.  From 26 CFR § 1.6012-1(a)(6) the words and phrase "Forms of Return" and "Form 1040 is prescribed for general use in making the return required under this paragraph." [Counts One through Six];

Q.  From 26 CFR § 1.6091-2(a)(1999 through 2004) words and phase "Place for Filing Income Tax Returns" [Counts One through Six];

R.  From 26 CFR § 1.6091-2(a)(1999 through 2004) words and phrases "income tax returns of individuals...shall be filed with the district director for the internal revenue district in which is located the legal residence...of the person required to make the return, or if such person has NO LEGAL RESIDENCE...IN ANY INTERNAL REVENUE DISTRICT, WITH THE DISTRICT DIRECTOR AT Baltimore, Md. 21202." [Counts One through Three, Five, and Part of Six];

S.  From 26 CFR § 1.6091-2(1999 through 2004) words and phrases "Notwithstanding paragraphs (1) and (2) of section 6091(b)...Returns of persons...which are filed by hand carrying shall be filed with the district director (or with any person assigned the administrative supervision of an area, zone, or local office constituting a permanent post of duty within the internal revenue district of such director) as provided in paragraph (a) of this section." [Counts One through Three, Five, and Part of Six];

T.  From 26 CFR § 1.6091-2(a)(2005) words and phrases "income tax returns of individuals...shall be filed with any person assigned the responsibility to receive

returns at the local Internal Revenue Service Office that serves the legal residence
...of the person required to make the return..." [Counts One through Six];

U.  From 26 CFR § 1.6091-2(c)(2005) words and phrase "Returns filed with service
center." and "Notwithstanding paragraphs (a) and (b) of this section, whenever instr-
uctions applicable to income tax returns provide that the return must be filed in
accordance with the instructions." [Counts One through Six];

V.  From 26 CFR 1.6091-2(d)(2005) words and phrase "Notwithstanding paragraphs
(1) and (2) of section 6091(b) and (c) of this section...(1)...Returns of persons
other than corporations which are filed by hand carrying shall be filed with any
person assigned the responsibility to receive hand carried returns in the local Inter-
nal Revneue Service office as provided in paragraph (a) of this section." [Counts One
through Six];

W.  From 26 CFR § 1.6151-1(1999 through 2009) word and phrase "Time and Place
for Paying Tax Shown on Return" [Counts One through Six];

X.  From 26 CFR § 1.6151-1(1999 through 2009) words and phrase "the tax shown on
any income tax return shall...be paid to the internal revenue officer with whom the
return is filed a  the time fixed for filing the return, see section 6091...§§ 1.6091-
1 to 1.6091-4, inclusively." Counts One through Six].

EXPLANATION OF OTHER DEFENSES AND INFORMATION

413.   In or about 1999, I compiled a series of documents and information in a book
I labeled "Economic Reality" where I highlighted among others how Federal Reserve
Notes are treated as both obligations of the United States and Securities of the
United States. See Shern Affidavit profer Doc. 100, Def. Exh. 1, pg. 14; Doc.75-20 @14

414.   Congress in Title 31, United States Code, at § 3124, exempts from State taxation
receipt of any obligations of the United States.

415.   Congress defines in Title 18, United States Code, at § 8 the phrase "obligation
or Security of the United States to include "Federal Reserve Notes."

416.   Congress defines in Title 15, United States Code, § 77b(a)(1) the term "Security"
to mean "any note."

417.   Congress in Title 12, United States Code, at § 411 provides for the creation
or issuance of "Federal Reserve Notes" by Federal Reserve Banks proclaiming that in
order for Federal Reserve Notes to qualify as issued under § 411 they must be redeem-
able in "lawful money" at any Federal Reserve Bank.

418.   On the face of all Federal Reserve Notes is inscribed this phrase:

        "This note is legal tender for all debts public and private."

419.   The Federal Reserve Notes currently circulating as currency are not redeemable
in anything other than other Federal Reserve Notes and in a few instances coins.

420.   I concluded that Federal Reserve Notes not issued according to § 411, or other-
wise not redeemable in lawful money, were intrinsically worthless until you exchange
them for some goods or services.

421.   Congress provides in Title 26, United States Code, at § 165(g) that any "security"
received during the calendar year that either was worthless, or became worthless, is
deductible from an individual's gross income on information and belief.

422.   Except for a couple of transactions tendered to me in gold or silver, and even
one platinum coin, all the transactions presented at trial by the Government were either
instruments denominated in Federal Reserve Notes or in a few instances, Federal Reserve
Notes, to the best of my memory.

433.    Federal Reserve Notes are the primary form of circulating currency other than coins in the United States of America.

434.    If "lawful money" is not defined in Title 12,15,18,26,and 31, then what I claim "lawful money" means must be something other than Federal Reserve Notes.

435.    Had I not been misled by the CIR, Grand Jury, and both the Government and the Trial Judge regarding Form 1040 United States Individual Income Tax Returns being "at issue" in each Count, I would have had to consider other defenses, either affirm--ative, or in Good Faith.

436.    The following are some of my defenses once the Grand Jury's "required by law" and both Form 1040 and United States Individual Income Tax Return are either removed and replaced or redefined in light of the Tenth Circuits decision:

A) Fifth Amendment Good Faith belief I was not required to provide any information due to the testimonial privilege under the circumstances of my case and the nature of the "business" I was in.

B) In Good Faith, I did not believe Federal Reserve Notes were gross income and in fact were deductible from gross income, because they had not bee issued according to 12 U.S.C. § 411 and pursuant to 26 U.S.C. § 165(g) were deduct-ible from Gross Income.

C) In Good Faith, I did not believe Federal Reserve Notes were taxable by the State of Oklahoma being obligations of the United States and exempt under 31 U.S.C. § 3124.

D) In Good Faith, I was unable to deliver a Tax Form to the place prescribed by law due to that place recognized in 26 U.S.C. § 6091(b), or 26 CFR § 1.6091-2 for years 2000 through 2003, and most of 2004 did not exist for someone who did not live in any internal revenue district.

E) I also had the option of presenting the affirmative defenses of entrapment by estoppel, both by the Executive, and Judicial, on Grounds Form 1040 was divor--ced from the requirements of 26 U.S.C. § 6012 and divorced from the offense conduct in each Count.

F) I also had the option of presenting the affirmative defenses of entrapment by estoppel both by the Executive, and Judicial, on Grounds Form 1040 was subject to the Paperwork Reduction.

G) Also, in Good Faith, I did not have knowledge the duty to file a Form 1040 "Tax Return" fell under 26 U.S.C. § 6091(a), instead of where Congress gave me notice under § 6091(b).

H) Also, in Good Faith, I did not know a 2005 Treasury Regulation, 26 CFR 1.6091-2 could be applied retroactively in the criminal context due to 26 U.S.C. §

7805(b) and Article I, § 9, Cl. 3 of the Constitution of and for the United States of America both strictly forbid and prohibit.

I) Also, in Good Faith, I did not know Form 1040 was divorced from 26 U.S.C. § 6012 or the obligations and duties alleged in each Count by the Grand Jury.

J) In Good Faith, I did not know the requirement to provide verified income tax information to the Secretary's IRS was prescribed or requested pursuant to 26 U.S.C. §§ 6011, 6061, 6065, and 7805(c) anywhere other than on the Tax Form prescribed.

437.   At sentencing, the Trial Judge expanded the Grand Jury referral beyond 2000 through 2004, beyond my tax liability sought to prove, and even beyond the Court's addition of Stilley's Arkansas liabilities, explaining:

"That statement of the object of the conspiracy in paragraph 9 of the indictment was most assuredly not confined to these defendants' own individual income taxes."

See Doc. 401, pg. 410, ln 20-23

438.   In the Sentencing Judges own words he explained what he found was meant by encouraging others to violate the law:

"I also hasten to add that evidence that a defendant encouraged some individual to violate the law is not vitiated by evidence that the defendants advised others to comply with the law any more than a drug dealer would get credit for telling his sister to stay away from drugs."

See Doc. 401, pg. 417, ln 12-16

439.   The Court further explained its finding I encouraged others to violate the law stating it:

"credited the trial testimony of Brenda Frederiksen, who testified that at a meeting in 2001 in context of Dr. Roberts Trial, Mr. Springer stated that the tax system is basically voluntary."

See Doc. 401, pg. 417, ln 17 to 20.

440.   Of course, Dr. Roberts trial was held in the summer of 2000 well before this 2001 meeting.

441.   The Trial Judge looked me square in the eyeballs and said:

"As for Mr. Springer, at trial, he looked at the jury and testified under oath that he never had an agreement with Mr. Stilley or anyone else to defraud the United States.  He testified that he did not willfully fail to file Form 1040 for years 2000 through 2005.  He stated that he did not willfully fail to report substantial tax liability...These statements were categorically false.  They were made under oath.  They were made for the purpose of deceiving the jury,

and they amounted to obstruction of justice, MR. SPRINGER." (emphasis added)
See Doc. 401, pg. 426-27, ln 21-25; and ln 1 to 10.

### Mr. Obama's Ineligibility

442.    It has been widely reported in the New Media that Barack Hussein Obama, II, was and is ineligible to be President of the United States of America under the conditions set in Article II of the Constitution in and for these United States of America, including the State of Oklahoma where I was a citizen before my unlawful imprisonment, and the State of Texas, where my unlawful imprisonment continues.

443.    In taking issue with whether Mr. Obama is eligible to hold Article II's Executive Office of President of the United States of America, the News Media and other public persons focused on whether Mr. Obama is or qualifies as a "natural born citizen" which is a prerequisite to his assension.

444.    A birth certificate copy was widely circulated in the New Media but that certificate was not under oath and many allege it was not a copy of any original comparably made during the 1961 time period in or from the State of Hawaii.

445.    Being in Prison I have no access to such materials other than what the Media reports and those reports are clearly divided.

446.    It has also been reported many federal actions were both brought and dismissed due to Mr. Obama's claims the Plaintiffs lacked standing to challenge his eligibility.

447.    Due to my continued incarceration by Mr. Obama's Executive Power he exercises against my liberty, and because I was prosecuted erroneously while he acted under Article II's Executive Power, I have standing to challenge, and do challenge his eligibility to hold the Office of President of the United States of America.

### 28 U.S.C. § 2255

448.    Although 28 U.S.C. § 2255 allows for unlimited facts to be provided, it does not provide space for unlimited arguments or memorandums of points of authority which deprives a prisoner wrongfully incarcerated from being able to fully explain

(61)

why his incarceration is unconstitutional.

449.    I sought and was denied leave to file a memorandum brief exceeding 25 pages currently fixed by local civil rule of the Northern Judicial District of Oklahoma.

450.    Before Mr. Barringer was suspended from the Tenth Circuit Bar, and before he filed an opening brief on my behalf, he sought and was denied leave to exceed the 14,000 word limit fixed by Federal Rules of Appellate Procedure and local rule of the Tenth Circuit.

451.    The Tenth Circuit denied addressing certain issued in Barringer's opening brief finding they were raised in a prefunctory manner while at the same time the Tenth Circuit considered me pro-se after Barringer was suspended.

452.    My understanding is a Motion under § 2255 is to be as broadly construed as either a common law Writ of Habeas Corpus or a Petition under 28 U.S.C. § 2241.

453.    By limiting my rights to 14,000 words on appeal and 25 pages in a brief to support my Motions filed under § 2255, while allowing the Executive branch years of investigation time, multiple Grand Juries, changing or shifting theories like the wind, and both lower Courts in complete opposite ends of the issue related to Form 1040, not only places forbidden limitations on my right or privilege to seek relief under 28 U.S.C. § 2255, and suspended my right to a direct appeal by conflict free counsel, but also clearly and unmistakably suspends my right to obtain a Writ of Habeas Corpus in a meaningful, fully, and fair manner.

454.    Limiting me to 25 pages of argument while directing me I must raise every issue or ground I have or I waive it makes § 2255 both inadequate, ineffective, and unconstitutional. The Jailer is to be called to account and without meaningful process a procedure under § 2255 is just as forbidden by the Constitutions as the rest of the conduct in my other Grounds for relief show.

OBVIOUS CONFLICTS

455.    There are many difficult issues that must be addressed fully and with a merits based analysis on for instance:

A.   Congress directs the Secretary of the Treasury to prescribe Forms of Returns at 26 U.S.C. § 6011, as cited by the Government in its First Court ordered Bill of Particulars, and the Tenth Circuit holds in my criminal appeal no one is required to use any specific Form prescribed by the Secretary;

B.   Congress directs the Secretary of the Treasury to prescribe Forms, directions, and instructions at 26 U.S.C. § 7805(c) and the Tenth Circuit holds the Form the Grand Jury alleged I refrained from filing, a/k/a United States Individual Income Tax Return, are "divorced" from §§ 6012 and 7203 (7203 is a lessor included offense alleged by the Government in the First Bill of Particulars) and no one is required to use Form 1040, the Form prescribed by the Secretary at 26 CFR § 1.6012-1(a)(6)(identified by the Government in its Second Bill of Particulars as "1.6012-1")

C.   Congress directs returns of tax are required at 26 U.S.C. § 6012 and the Secretary prescribed Form 1040 pursuant to 26 U.S.C. § 6011 which Congress directed "shall" make a return according to the Secretary's Forms and include the information requested  by such Forms; but the Tenth Circuit says Form 1040 is divorced from § 6012s requirement and no one is requied to use Form 1040 contrary to 26 CFR § 1.6012-1(a)(6) and 1.6011-1(a)(1);

D.   The Secretary of the Treasury and Commissioner of Internal Revenue direct in their 26 U.S.C. § 7805(c) instructions for Form 1040 that any person required under 26 U.S.C. §§ 6001, 6011, 6012(a), and their regulations to file an income tax return such person must use Form 1040 stating its "mandatory"; but the Tenth Circuit held not only Form 1040 not necessary, it is actually divorced from the requirements at § 6012 and ultimately divorced from the offense conduct in each Count;

E.   The Grand Jury alleged Form 1040 and United States Individual Income Tax Return, or income tax return throughout each of the Six Counts. The Court allowed me to present a good faith defense on why I did not willfully fail to file Form 1040s even instructing the Jury Form 1040 did not factually violate the PRA, and even enhanced me I think 4 points at sentencing based upon me telling the public they were not required to file Form 1040 and me telling the Jury I did not willfully fail to file Form 1040, which it found false; but the Tenth Circuit in refusing once again to address my PRA claims against Form 1040 on the merits and after suspending my Sixth Amendment Appellate Counsel, held Form 1040 was divorced and not at issue in any of the Six Counts;

F.   Congress directs "Tax Returns" must be filed according to 26 U.S.C. § 6091(b); but the Tenth Circuit holds Congress is wrong and directs that the Grand Jury's alleged "Tax Returns" in each Count were required to be filed pursuant to Congress' words at 26 U.S.C. § 6091(a);

F.   Congress directs at 26 U.S.C. § 6151 to return any tax owed to the place Congress requires the "Tax Return" is required to be filed, which is § 6091(b); but the Tenth Circuit holds that a return of tax falls under § 6091(a);

G. Congress directs Tax Returns are to be filed with the district director located within the Internal Revenue District created by the President at 26 U.S.C. § 7621, pursuant to 26 U.S.C. § 6091(b)(1)(A), and the District Court refused to address this issue head on, and faced with Tenth Circuit precedent, and after finding no district director or Internal Revenue Districts existed since 1998, the Tenth Circuit turned to 26 CFR § 1.6091-2 to apply a 2005 version proposed in late 2004 and its ambiguous language, to years of the proferred referral of 2000 through 2004, and without actually identifying the version they were quoting from in their decision was the 2005 version, contrary to 26 U.S.C. § 7805(b) and Article I, § 9, Cl. 3 of the Constitution in and for the people and their liberty in these United States of America;

H. Congress directs the Secretary to promulgate regulations to fill gaps Congress left in the tax laws. The Secretary does so and depending on what day it was, the Department of Justice and Court argued or held no regulations were or are involved in the requirement to make or file an income "TAX RETURN";

I. The Secretary of the Treasury at 26 CFR § 1.6091-2(1999 to 2004) directs that under his authority at 26 U.S.C. § 6091(b), not 6091(a), if a person does not live in any Internal Revenue District for the tax year, he must file his "Tax Return" with the district director at Baltimore MD, which the Tenth Circuit in finding no such district directors existing, citing to Allnutt v. CIR, 523 F.3d 406, 408(n.1)(4th Cir. 2008), and no Internal Revenue Districts existed since 1998, held neither by § 6091(b), or § 1.6091-2(1999 to 2004) provided a specific place satisfying the allegation "required by law";

J. The Department of Justice, acting without a U.S. Attorney in the Northern Judicial District of Oklahoma, after expanding the preferred referral beyond years 2000 through 2004, argue there are no treasury regultions involved in their prosecution of me which the Court at times accepted;

K. Then, on appeal, the same U.S. Department of Justice, again without a U.S. Attorney for the Northern Judicial District of Oklahoma, argues pursuant to 26 U.S.C. § 6091(b)(1)(B) and 26 CFR § 1.6091-2(2005) governs years 2000 through 2004, and the Tenth Circuit holds the 2005 version applies retroactively even though Congress forbids retroactive application of Treasury Regulations, and when the United States was given breath by the Constitution of these United States of America, as expressed by the Tenth Amendment, it was guaranteed no expost facto law would ever be applied against my liberty, which now it surely has;

L. The Grand Jury referral was proffered for 2000 through 2004 and the Department of Justice expanded it to 2000 through 2009 in the Six Count indictment;

M. The Grand Jury proferred referral was limited to my tax liabilities for 2000 to 2004 and at Trial the Department of Justice without any authority convinced the Trial Judge to expand Count One to include Oscar Stilley's liabilities from his home State of Arkansas for years outside the referral years;

N. At my demanded for Jury Trial, not Judge Trial, the Trial Judge directed he factually found Form 1040 did not violate the Paperwork Reduction Acts in violation of my Sixth Amendment Right; but on Appeal the Tenth Circuit held Appellate Counsel did not show Form 1040 did violate the PRA even ignoring where the District Court limited my time testifying about the PRA to around 90 minutes;

O.  Congress has not defined "gift" or "donation" in Title 26 and nor has the Secretary of the Treasury in any Treasury Regulation. At trial, the Judge gave the Jury an instruction defining the term "gift" and directing that meaning, as a matter of law, was to be applied to all transactions the Department of Justice sought to prove was "gross income" instead of being exempted from "gross income" by Congress's own words at 26 U.S.C. § 102. The Judges instruction on gift was applied in a criminal context and expost facto which both Congress prohibits the Secretary at § 7805(b) from doing and we the people prohibit any branch of the United States from doing, including Federal Courts;

P.  The Supreme Court directed the Secretary of Treasury was only authorized by Congress to enforce Title 26, or Title 26 related offenses. The Supreme Court directed the Secretary must make a referral to a sitting U.S. Attorney to prosecute such tax offenses as alleged by the Grand Jury in all Six Counts. The referral proffered by the Department of Justice is not signed by the Secretary of the Treasury;

Q.  Congress directs at 28 U.S.C. § 547(1) only U.S. Attorneys appointed pursuant to Congress's mandates at 28 U.S.C. § 541 are authorized to prosecute offenses against the laws of the United Statse which upon referral include tax offenses. The Northern District of Oklahoma did not have a U.S. Attorney after June 28, 2009 till the summer of 2012. I was tried beginning on October 26, 2009 and with verdict on November 16, 2009, at a time when no U.S. Attorney or person authorized by any Federal Law was allowed to perform the functions Congress politically placed in the hands of the office of U.S. Attorney;

R.  The Secretary of the Treasury and Commissioner of Internal Revenue state the tax law filing requirements are very complex and yet the Court and Department of Justice held me to understand every word of them, no matter what notice, or lack of notice,  I had or had not received;

S.  I tried 5 different times to receive a ruling on the merits of my PRA claims in Federal Court and 5 times the Courts refused to address my specific claims on the merits, and even gave reason in 2007 to limit my access to the Courts;

T.  The Supreme Court held once a Grand Jury referral is made the IRS as an institution no longer can proceed to enforce any tax provisions on the person they have referred. On September 15, 2005, 3 months after the June 3, 2005 proferred referral to convene a Grand Jury for years 2000 through 2004, Magistrate McCarthy issued a search warrant to the IRS and Agent Brian Shern to search my home under 26 U.S.C. § 7608(b) authority which he did not possess after June 3, 2005 pertaining to me and years 2000 through 2004;

U.  During the Trial proceedings at  the direction of the Department of Justice, the Court switched the Grand Jury's claims in Counts 2,3,and 4 from attempted evasion of assessment conduct to attempted evasion of payment conduct, which recently the Supreme Court on February 12, 2012, reaffirmed 26 U.S.C. § 7201 prescribes two offenses, not one. This change shows just how messed up and abused § 7201 really is;

V.  During my appeal in my criminal case, and while I had 3 other cases pending or recently ruled on by the Tenth Circuit, the Tenth Circuit held my attorney on my criminal appeal was frivolous for claiming the IRS had no jurisdiction to enforce Title 26, or Title 26 related offenses, without the Internal Revenue Districts and district directors referenced in 26 CFR § 601.101, and then held me pro-se and liable for their determinations;

W.   Then, after suspension, the Tenth Circuit held me liable ruling on my direct criminal appeal that was not in accord with my right to be represented on appeal in a criminal case;

X.   Since at least 2002 the Tenth Circuit has continued to issue rulings and opinions, published and unpublished, as if Internal Revenue Districts and district directors continued to exist when in my direct appeal they ruled they had not existed since 1998;

Y.   As I record on pages  68  to 73 the Tenth Circuit has always explained the PRA was applicable to Form 1040, civil or criminal, published and unpublished, and including within their rulings where tax evasion inexorably linked to failing to file was alleged conduct leading to the tax deficiency;

Z.   Since 1990 the Tenth Circuit held the PRA did not aply to providing false information on an agency form as a measure of protection; but in my appeal the same Tenth Circuit suggests the PRA does protect a person from providing "faulty information" on a "non-compliant" agency Form;

AA.  Since at least for tax years 1981, the Tenth Circuit has always held when a Grand Jury alleges specific conduct including Form 1040, Form 1040 is inexorably linked to the charges, but in my case on direct appeal the Tenth Circuit held the Grand Jury's allegations of my willful failure to file Form 1040 United States Individual Income Tax Returns, or refraining from filing same with the IRS, was divorced from the charges in all Six Counts;

BB.  When Mr. Barringer claims without Internal Revenue Districts or district directors prohibits the IRS from acting outside Washington D.C. according to the direct language of 26 U.S.C. § 7601, 7621, and as delegated by the Secretary at 26 CFR § 601.101, the Tenth Circuit holds Barringer's claims are frivolous and or meritless; but then when having to address whether the Government in a criminal tax prosecution was required to factually prove the IRS existed, the Tenth Circuit did not find that issue frivolous and then quoted to 26 CFR § 601.101 stopping just short of the sentence in § 601.101 Mr. Barringer relied upon in making his claims in my civil and criminal appeal.

456.   I claim that each of my Grounds filed with my Motion allege and demonstrate a miscarriage of justice has occurred in my case.  I claim I am innocent of attempting to hide money from the IRS in their effort to receive any payments.  Mr. Shern listed several vehicles held in my or me and my then wife's name at the time he searched my home.  See Doc. 75-20; or Doc. 100, Def. Exhibit 1, pg. 13.

457.   I claim my appellate counsel in 10-5055, 10-5156 and 11-5053, had a conflict at the point he was notified of either the December 15, 2010 order in 10-5037, or at least by the June 23, 2011, order directing him to show cause.

458.   I became aware of the factual deficiency with Barack Hussein Obama, II's birth allegedly in 1961 in Hawaii when during the Presidential race it was widely reported on both CNN and Fox News showing   Mr. Obama had released a purported copy of a 1961 birth cirtificate from Hawaii.

459.   As the letter I received indicates the question of whether Mr. Obama was born in one of the 50 Tenth Amendment States has not been answered yet by any Court where those who have claimed he was not so born have had their claims dismissed for lack of standing.  See Exhibit 14

460.   My   indictment, conviction, sentence and judgment under Federal Law requires a President of the United States of America in order to faithfully execute the laws of the United States  and I claim we have not had such a President unless Mr. Obama was born in 1961 in the State of Hawaii.

461.   I have attached the front page to the Form I received from the Clerk's Office herein. See Exhibit 1

(67)

TENTH CIRCUIT AND DISTRICT COURT DECISIONS

462.   In United States v. Tedder, 787 F.2d 540, 542(10th Cir. 1986), the Tenth

Circuit held that tax forms were not information collection requests subject to the

Paperwork Reduction Act because the filing of income tax returns was obligatory.

463.   The Tenth Circuit held its Tedder holding is superceded by the Supreme Court's

analysis in Dole v. United Steelworkers, 494 U.S. 26, 32-33 (1990) in U.S. v. Collins,

920 F. 2d 619, 631 & n.12 (10th Cir. 1990).

464.   The Tenth Circuit in Collins explained "[t]he IRS 1040 Forms at issue in the

present case were explicitley designated as either '1982,' '1983,' or '1984,' TAX

RETURNS with their effective dates of coverage clearly denoted." Collins, at 631

465.   The Tenth Circuit explained in Collins at its footnote 13:

"In United States v. Weise, 914 F.2d 1514, 1520-22(2nd Cir. 1990), the Second
Circuit held that the Paperwork Reduction Act did not preclude prosecution for
filing false medicare and Medicaid claims, despite the fact that the forms in
question did not contain OMB control numbers. Distinguishing Smith, where def-
endants were prosecuted for failure to file a Plan of Operations with the Forest
Service, the Second Circuit reasoned that the Act 'only protects a person from
penalties for failing to file information. It does not protect one who files
information which is false.' Id. at1252 (quoting Funk, the Paperwork Reduction
Act: Paperwork Reduction Act Administrative Law, 24 Harv. J. on Legis 1, 77 n.411
(1987)(emphasis in original).  We recognize that because defendant WAS CHARGED
WITH TAX EVASION AND NOT FAILURE TO FILE TAX RETURNS, HE TECHNICALLY WAS NOT
BEING PROSECUTED FOR FAILURE TO PROVIDE INFORMATION.  HAD DEFENDANT'S TAX EVAS-
ION BEEN EFFECTUATED THROUGH THE FILING OF FALSIFIED TAX RETURNS, WEISS WOULD
DICTATE THAT NO PAPERWORK REDUCTION DEFENSE WOULD BE AVAILABLE TO HIM  BUT BE-
CAUSE THE PROVISION OF INFORMATION IN 1040 FORMS IS INEXORABLY LINKED TO THE
STATUTORY REQUIREMENT TO PAY TAXES, AND DEFENDANT FAILED TO FILE SUCH FORMS,
THE PAPERWORK REDUCTION ACT WAS APPLICABLE TO SUCH CONDUCT."

466.   In Tedder, 787 F.2d at 542, the Tenth Circuit stated that 26 U.S.C. § 6012

requires "every individual" to file "returns with respect to income taxes under Sub-

title A..." at (n.3).

467.   Tedder also states at page 542:

"[a]lthough Treasury regulations establish voluntary compliance as the general
method of income tax collection, Congress gave the Secretary of the Treasury the
power to enforce the income tax laws through involuntary collection. See e.g.
26 U.S.C. § 6301, et seq.,"

468.   In U.S. v. Dawes, 951 F.2d 1189, 1192 (10th Cir. 1990), the Tenth Circuit held:

"The Supeme Court in Dole has notes that most items in the statutory definition are 'forms for communicating information to the party requesting that information to the party requesting that information' and that the 'reporting and record keeping requirement category is limited to 'only rules requiring information to be sent or made available to a federal agency, [and] not disclosure rules."

469.   In Dawes, the Tenth Circuit also held at page 1192:

"The 1040 Form is the information collection request which arguably MUST comply with the PRA. It is through the 1040 Form that the **THE GOVERNMENT OBTAINS ALL OF THE TAX INFORMATION IT REQUIRES: the instructions and regulations**...are subsidiary to and mere administrative appendages of the **TAX FORM**. They function only to aid the taxpayer in providing the information required by the Form 1040."

470.   The Dawes Court continued at page 1192:

"As long as the 1040 Form complies with the PRA, NOTHING MORE IS REQUIRED."

471.   The Dawes Court also discussed at page 1190 (n.1):

"As will be discussed below, the Paperwork Reduction Act contains a public protection provision which negates any penalty for failure to provide information solicited in an information collection request that does not bear a control number."

472.   In footnote # two  in the Dawes decision by the Tenth Circuit at page 1190

reads as follows:

"In response to a question from the Court during oral argument, Counsel for the Government indicated that the government did not have a unified federal position regarding this issue. Given the fact that the issue is one of national in scope which affects the tax revenues of the United States we find this posture regretable."

473.   However, the Tenth Circuit in my criminal appeal cited Dawes for a completely

opposite position at page 262:

"See also United States v. Dawes, 951 F.2d 1189, 1192(10th Cir. 1991)(affirming convictions for willful failure to file returns on other grounds but noting that '[w]e would be inclined to...hold that the operations of the PRA in these circumstances did not repeal the criminal sanctions for failing to file an income tax return, because the obligation to file is a statutory one. In fact, an actual 1040 may not even be necessary to comply with the statutory obligations."

474.   In Springer v. U.S., 447 F. Supp. 2d 1235, 1238 (N.D.Ok. 2006) it was held that:

"It is settled law that the requiement to file a tax return is mandated by statute, not by regulation and that explicit statutorily requirements such as those involving the filing of income tax returns 'are not subject to the Paperwork Reduction Act.'"

See Doc.383, pg. 133, ln 18-24 (repeated from ¶ 100 of this declaration).

475.   In U.S. v. Chisum, 502 F.3d 1237, 1244 (10th Cir. 2007) the Tenth Circuit:

> "rejected a defendant's reliance on the PRA when the underlying conviction was for criminal tax evasion for filing false tax information. In the context of rejecting the PRA challenge, we observed, 'the PRA protects a person only for failing to file information. IT DOES NOT PROTECT ONE WHO FILES INFORMATION WHICH IS FALSE.'"

See Lewis v. CIR, 523 F.3d 1272, 1275 (10th Cir. 2008)(quoting Collins, 920 F.2d at 631 (n.13).

476.   Even with the Tenth Circuit's Collins decision at page 631 and footnote 13 explaining the Second Circuit's Weiss decision where Tax Evasion which was effected by making false statements on any Form is not protected by the PRA, and like a deer in headlights, the Tenth Circuit explaining in Chisum the PRA does not protect a person from penalties for filing false information but only protects them for failing "to file information," the Tenth Circuit in my appeal obviously faced with rejecting two decades of its own words, held at page 262:

> "Defendants might have invoked the PRA to avoid any penalties assessed for submitting faulty information on a non-compliant IRS Form, but they cannot use the PRA to side-step criminal offenses arising under the Internal Revenue Code."

477.   The Chisum decision at page 1244 actually reads:

> "But the PRA protects a person only 'for failing to file information. It does not protect one who files information which is false.' Collins, 920 F.2d at 630"

478.   The Tenth Circuit continues in Chisum at page 1244:

> "The charge against Mr. Chisum were predicated on the filing of false information, not the failure to file."

479.   In Springer v. IRS, ex rel., 231 Fed. Appx 793, 799 (10th Cir. 2007), the Tenth Circuit explained:

> "He asserts that IRS Form 1040 and its variants had not complied with the PRA since 1981 because the OMB number is invalid."

480.   The Tenth Circuit continued at page 797:

> "He also sought a preliminary injunction against the alleged investigation into his failure to supply information on income tax returns."

481.   The Tenth Circuit also held at page 799 I claimed the PRA precludes the IRS from collecting any penalties "arising from his failure to file a federal income tax return for calendar year 1982 through 2006."

(70)

482.    In Lewis at 1274, the Tenth Circuit held:

"The PRA has a public liability provision stating, "[n]otwithstanding any other provision of law, no person shall be subject to any penalty..."

483.    The Tenth Circuit in Lewis continued at page 1275:

"The current version of the PRA includes a provision limiting personal liability for failure to comply with any collection of information when (1) the information collection device does not include a 'valid control number assigned by [OMB],' or when (2) 'the agency fails to inform the perosn...that su h person is not required to respond to the collection of information unless it displays a valid control number."

484.    The Lewis Court at page 1275 then states:

"Lewis correctly highlights how the PRA applies to tax forms, such as Form 1040."

485.    At page 1277, the Lewis Court held:

"In Collins, the defendant challenged the ommission of an expiration date on Form 1040, while conceding the presence of OMB control numbers on the Form, much like Lewis does."

486.    The Lewis Court continued in its publicly reported decision at page 1277:

"The IRS, an agency, satisfies this obligation by making these disclosures in the instruction booklets associated with Form 1040."

487.    So in Dawes, the Tenth Circuit excluded instruction booklets from being subject to the public liability protections of the PRA, and in Lewis, the Tenth Circuit saves the Form 1040 PRA defects by holding the disclosures required by the PRA are satisfied if they appear buried in some non accompanying instruction booklet when they are obviously not appearing on the Form 1040 itself.

488.    The Tenth Circuit affirmed Lewis shortly after that decision in Wheeler v. CIR, 528 F.3d 773, 787(10th Cir. 2008).

489.    In Wheeler, the Tenth Circuit expalined at footnote 5, page 781:

"In his briefs, Mr. Wheeler references an unpublished opinion of this Court, Pond v. Commissioner, 211 Fed. Appx. 749 (10th Cir. 2007), in arguing that we held therein that an argument cannot be called frivolous without consideration of two questions; (1) whether the 1040 Form displayed a valid OMB control number, and (2) whether the 1040 Form displayed 'the notice required under 44 U.S.C. § 3506(c)(1)-(B)(iii).' Aplt. Opening Br. at 22.  First, as we noted in Lewis, unpublished decisions are not precedential value, See 523 F.3d at 1275, n. 5. Second, Pond 'declined to address the argument that the [1040] form violated the PRA because the defendant had not included any of the forms in the record,' and 'even affirmed the district court's dismissal of the PRA claims as frivolous.' Id. Third, Pond contains no reference to § 3506."

(71)

490. In Lewis, the Tenth Circuit explained its decision in Pond at page 752 at page 1275 (n.4) this way:

"We even affirmed the district court's dismissal of the PRA claims as frivolous while acknowledging that the PRA applies to Form 1040."

491. However, the Tenth Circuit in Pond, 211 Fed. Appx. at 754 reported Pond's case did not come from any "district court" but rather it was "[t]he Tax Court upheld those assessment."

492. After I was indicted, the Tenth Circuit in Springer v. CIR, 580 F.3d 1142, 1145 (10th Cir. 2009) held:

"The failure-to-pay penalties have an independent and separate statutory basis under the Internal Revenue Code, however, that is no based on Mr. Springer's failure to file Form 1040s."

493. The Tenth Circuit in my direct criminal appeal decision stated at 444 Fed. Appx. 261-262, effectively reversing published decisions by an unpublished per curiam:

"In that case, he contested certain failure-to-pay penalties on the ground that Form 1040 violated the PRA, but we recognized that Form 1040 did not give rise to the penalties because they had an 'independent and separate statutory basis under the Internal Revenue Code...that [was] not based on Mr. Springer's failure to file Form 1040s.'"

494. In Briner v. Baker, 506 F.3d 1021, 1027(10th Cir. 2007) the Tenth Circuit citing Olpin v. CIR, 270 F.3d 1297, 1300-01(10th Cir. 2001) held:

"Unsigned tax returns are usually not valid because the signor has not attested, under penalty of perjury, that the returns are accurate."(Citing §§ 6061,6065)

495. 26 U.S.C. § 6061 requires:

"any return...required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with the Forms or regulations prescribed by the Secretary."

496. In Olpin at page 1300-1301, the Tenth Circuit explained § 6065's duty:

"except as otherwise provided by the Secretary, any return...required to be made under any provision of the internal revenue laws or regulations SHALL contain or be verified by a written declaration that it is made under the penalty of perjury."

497. 26 CFR § 1.6065-1(1999 to 2007) reads as follows:

"(a) Persons signing returns. If a return...made under the provisions of Subtitle A or F of the Code [26 U.S.C. § 1 et seq.. or 6001 et seq.], or the regulations thereunder, with respect to any tax imposed by Subtitle A of the Code [26 U.S.C.

(72)

§§ 1 et seq.] is required by the regulations contained in this chapter, or the Form and instructions, issued with respect to such return...to contain or be verified by a written declaration that it is made under the penalty of perjury...shall be so verified by the person signing it."

498.   In U.S. v. O'Leary, 1997 U.S. App. Lexis 19753, affirming revocation of probation the Tenth Circuit explained the Judges reasons explaining what the Judge said:

"I am sure you are well aware of Mr. O'Leary's argument that there is no reulation or actual requirement in the statutes under the tax code that a tax form has to be filed....The Tax Code and regulations require every individual with income exceeding the exemption amount to file a tax return. 26 U.S.C. 6012, 26 CFR § 1.6012-1(a)."

## REASONS AND STATUS FOR GROUNDS RAISED

### Ground 1

499.  Ground One was not specifically raised on Appeal.  Counsel attempted to obtain permission to file an overlength brief and was denied.  I do not know why Counsel did not raise this issue, or raise it properly, or address the issue.  It is my understanding jurisdiction can be raised or challenged at any time and its the Court's continuing duty to examine its own jurisdiction at all times.  This Ground is in my favor and results in invalidating the referral, indictment, conviction, sentence, judgment, and the Tenth Circuit's decision on appeal on all Six Counts.

500.  Continuing to maintain against my liberty the Court's conviction, sentence, and judgment when it had no jurisdiction or authorization to exercise jurisdiction, from the Secretary of the Treasury to enforce Title 26 offenses, or Title 26 related offenses, satisfies and shows the miscarriage of justice on information and belief.

501.  Having no jurisdiction to enforce Title 26 offenses, or Title 26 related offenses, has extremely prejudiced me, including loss of my liberty, my ministry, and separated me from my immediate family for almost 3 years.

502.  It is also my claim my Appellate Counsel becamse conflicted either on December 15, 2010, after the criminal brief was originally filed on my behalf, or at some time before October 26, 2011 decision in 10-5055, 10-5156 and 11-5053, where I was left "pro-se" and defending a brief the Court had already spoke negatively against in Orders it issued in 10-5037 and 11-816.

503.     Counsel could have raised this issue between pages 29 to 35 of his opening brief where instead a heading claiming one general subject containing an argument of something totally different and already argued in the previous issue therein.

Ground 2

504.     Ground 2 was mentioned by Mr. Barringer at the end of his brief but neither addressed or developed, and the Tenth Circuit did not address it. Counsel attempted to receive permission to file an overlength brief and was denied. I do not know why Counsel did not raise this issue.  It is my understanding jurisdiction can be raised at any time and the Court has a continuing duty to examine its own jurisdiction at all times and when it appears lost the Court should make such a record and dismiss the action.

505.     Ground 2 is in my favor and results in invalidating the indictment, conviction, sentence, and judgment on all Six Counts.  It also invalidates the Tenth Circuit's October 26, 2011 decision.

506.     Continuing to maintain against my liberty the Court's conviction, sentence, and judgment, when no prosecution was authorized without a U.S. Attorney, notwithstanding Ground One, creates a unique kind of miscarriage of justice that damages me as well as the public. My First Amendment Rights are clearly taken direct aim at by the Government without complying with 28 U.S.C. § 541 and 547(1).

507.     As a result of being prosecuted by someone other than what Congress authorized I lost my liberty (been deprived), my family and First Amendment Right to my exercise of my ministry and its mission.

508.     It is also my claim Barringer becamse conflicted either on December 15, 2010, after my original criminal appeal brief was filed, or at some time before the October 26, 2011 decision where I was left standing pro-se and defending a brief the Court had already spoken negatively about in 10-5037 and 11-816.

509.     Counsel could have raised this issue between pages 29 to 35 easily which instead contains a heading claiming one general subject and containing an argument of something totally different and already argued in the previous issue therein.

## Ground 3

510.    I repeat and incorporate what I showed for Ground 1 above as if set forth word for word in Ground 3 herein with one main exception or difference.  Ground 3 only affects Counts 1,2,3 and 4 and does not itself reach Counts 5 and 6.  However, the invalidating and voiding of Counts 1,2,3, and 4, requires a new trial on Counts 5 and 6 free of Stilley as a co-defendant, free of his conduct and tax liability, and free of the two false and misleading Bills of Particulars.

511.    To the extent Count 5 and 6 somehow survive each Ground I have raised, those Counts should be subject to a New Bill of Particulars and trial nunc pro tunc redefining what the Grand Jury meant by "required by law" with citation to statutes and regulations that specifically state what the Grand Jury relied upon that matches the March 9, 2009 testimony Shern gave.

## Ground 4

512.    I repeat and incorporate what I showed for Ground 1 and 3 above as if set forth word for word in Count 4 with the following exception or difference.  Ground 4 only affects Count 1 and does not itself reach Counts 2 through 6.  However, the invalidating and voiding of the conviction, sentence, and judgment as to Count 1, requires a new Trial on Count 1 through 6 nunc pro tunc with with dismissal on Counts 1,2,3 and 4 due to those Counts exceeding the Grand Jury referral proffer which lists years 2000 through 2004 only and my liabilities.

## Grounds 5 through 9

513.    I repeat and incorporate what I showed for Ground 2 above as if set forth word for word in and for Grounds 5,6,7,8 and 9 of my Motion.

## Ground 10

514.    I repeat and incorporate what I showed in Ground 2 as if set forth in and for Ground 10 with the following distinction. Ground 10 only changes the restitution part of the sentence and judgment as to all Six Counts.

Grounds 11,12 and 13

515.   I repeat and incorporate what I showed for Ground 1 as if set forth word for word in  Ground 11, 12 and 13, with the following distinction that these grounds only change the restitution part of the sentence and judgment as to all Six Counts.

Ground 14

516.   I repeat and incorporate what I showed for Ground 2 above as if set forth word for word in Ground 14 with the following distinction that this Ground goes to the length of sentence and the judgment as to all Six Counts.

Grounds 15 through 27

517.   Grounds 15 through 27 could not have been raised or were not raised either in the District Court or on Appeal simply because I was given no notice anyone for the Government opposed the Secretary of the Treasury's and CIR's instructions for Form 1040, for any years regarding statement Form 1040 is subject to the PRA and is otherwise mandatory to be used.

518.   The Grand Jury alleged Form 1040 and United States Individual Income Tax Return, or income tax return, in each of the Six Counts respectively.  The Government's case agent and expert testified I was required to use Form 1040 to report the transactions I received for each year at issue.

519.   The Tenth Circuit confusingly held in my case that Form 1040 was divorced from any and all issues in each of the Six Counts.  To the extent the issue could have been raised on appeal, I repeat and incorporate what I showed for Ground 1 as if set forth word for word in Grounds 15,16,17,18,19,20,21,22,23,24,25,26, and 27.

Ground 28

520.   Ground 28 incorporated with Ground 2 above and Ground 29 below appears to have been raised in some capacity by Barringer under the Tenth Circuit's view, but that Court hald Barringer did not "show" Form 1040 violated the PRA. It is my firm belief that the Public Protection can be raised at any time. This issue is also jurisdictional.

521.   Ground 28 is in my favor and results in invalidating the indictment, conviction,

and judgment on all Six Counts.  Ground 28 would also call into question the Tenth
Circuit's October 26, 2011 decision on my direct criminal appeal.

522.   Continuing to maintain against my liberty the Court's conviction, sentence, and
judgment whit it lost subject matter jurisdiction shows the miscarriage of justice
any my actual innocense claims.

523.   It is also my claim Appellate Counsel became conflicted either on December 15,
2010, after the criminal brief was first filed on my behalf, or at some time before the
October 26, 2011 decision in my direct appeal where I was left pro-se by the Tenth
Circuit defending a brief the Tenth Circuit had already spoken negatively about in its
orders in 10-5037 and 11-816.

524.   Counsel was also ineffective for failing to show Form 1040 violated the PRA as
it surely and most definitely does.  Counsel could have raised this Ground on pages 29
to 35 of his opening brief instead of what was presented in error on those pages.

Ground 29

525.   Ground 29 incorporates  Ground 1 and 28 above with a few differences. First, this
issue was not raised specifically and had it been raised the Court would most likely
have held these words "notwithstanding any other provision of law" means no Federal
Statute, including Title 26 or Title 26 related offenses,withstands the reach of the
PRA's public protection.

526. Second, the fact the Government made § 7203 included in the phrase "required by
law," as well as the allegation I did not file United States Individual Income Tax Re-
turns, inexorably links the PRA to all Six Counts.

527.   The failure to raise this issue caused a miscarriage of justice and I am actually
innocent of willfully failing to file Form 1040 as the Tenth Circuit has now held no
person is required to use Form 1040 and Form 1040 is divorced from any requirement at
26 U.S.C. §§ 6012 and 7203.

Ground 30

528.   Ground 30 incorporates Ground 1, 28 and 29 above, with the added distinction the

(77)

District Court Trial Judge invaded my right to a jury trial on the element of willful on all Six Counts by directing the Jury it had found Form 1040 did not violate the PRA.

529.   This issue was inexorably linked to my demand for a jury trial under the Sixth Amendment and was even consented to by the Government at Trial.

530.   The question before the Jury was whether I willfully failed to file Form 1040 for all Six Counts and that issue was expanded at sentencing where the Sentencing Judge relied upon his jury instruction on the PRA to apply his fact finding to years 1990 to 1995, 1999, and 2005 to 2007, years beyond the referral time period. This issue also affects the Court's sustaining of Stilley's liability for failing to file Form 1040s with the IRS alleged by the Grand Jury in its ¶ 14.

531.   Appellate Counsel should have raised this issue and the Courts fact finding instruction created a miscarriage of justice and I am actually innocent of willfully failing to file Form 1040, the for the Tenth Circuit has now held is "divorced" from any duty or obligation at issue in the Six Counts of coviction. The Court's instruction directly violated my Sixth Amendment Right to a Jury Trial.

Ground 31

532.   This Ground could not have been raised as it was not reasonably forseeable that the Tenth Circuit would divorce the Grand Jury's alleged Form 1040 United States Individual Income Tax Return from the duties and obligations at issue in each of the Grand Jury's Six Counts.

533.   Had I not bee notified by the Commissioner of Internal Revenue in the 26 U.S.C. § 7805(c) instructions for §§ 6011, 6012, 6061, 6065, 6091(b) and 6151's Form of Return 1040 was inexorably linked to all Six Counts I would have proceeded fundamentall differently and would have, after counseled as secured by the Sixth Amendment, proceeded with any number of different defenses listed in this declaration, for example, on entrapment by estoppel.

534.   The record in the District Court along with the Tenth Circuit's "divorced" holding provides overwhelming evidence of entrapment by estoppel, executive and judicial, creat-

ing a miscarriage of justice. I claim I am actually innocent of willfully failing to file Form 1040 United States Individual Income Tax Returns alleged by the Grand Jury.

Ground 32

535.    Ground 32 incorporating Ground 1 fully with the following additions.  I have been adversly affected by the Secretary of the Treasury, or his CIR, not publishing compliance with 5 U.S.C. § 552.

536.    The Tenth Circuit held the prvevious organization of the IRS outside Washington, D.C. was dramatically changed in 1998 with the Internal Revenue Districts called for by 26 U.S.C. § 7621, and district directors of each Internal Revenue District called for by 26 U.S.C. § 7514, abolished as of 1998.

537.    I could not willfully fail to file a Form 1040 United States Individual Income Tax Return "required by law" if the place "required by law" no longer exists. I claim actual innocense of willfully failing to file the Grand Jury's alleged and now Tenth Circuit's "divorced" Form 1040 "as required by law."  This also shows a miscarriage of justice.

Ground 33

538.    Ground 33 incorporates Ground 1   with the following addition.  I drew the Courts attention to the problem with Counts 2,3 and 4 at the April 22, 2009 hearing.

539.    Appellate Counsel should have raised this issue on direct appeal and also the Supreme Court's recent decision in Kawashima v. Holder, decided February 12, 2012 clearly shows evasion of assessment and evasion of payment are two distinct and separate offenses.

540.    Since I was not charged with conduct alleging evasion of payment, and in fact the word "payment" does not appear in Counts 1 through 6, the Trial Judge's switch to evasion of payment at the end or during Trial creates a miscarriage of justice to which I claim I did  not willfully fail to make any payment on any assessment of any tax made by the IRS for calender years 2000, 2003, or 2005.  Mr. Shern's "affidavit" he signed but otherwise not sworn in the Clerk's Office lists numerous assets held in my name or me and my wife's name which clearly shows I was not evading payment of assessed taxes for those years and such vehicles could have been seized at any time according to the IRS.

Ground 34

541.    Ground 34 incorporates Ground 1 to the extent applicable or appropriate has to do with the Two alleged affirmative acts in Count Four of the Grand Jury's violation of § 7201.  Besides being beyond the proferred referral of 2000 through 2004, and besides the fact the two acts allege conduct evading assessment, not payment, the two acts alleged have nothing to do with the Turner transaction. See ¶ 295 herein for list of both acts alleged.

542.    The jury had to find for Count Four one of these two acts unanimously to the best of my reading of the instructions to find me guilty of attempting to evade the payment of the income tax.  Turner's transaction went through Stilley's IOLTA account and not in checks made out to "Bondage Breaker's Ministries" or did that transaction go through a "check cashing" business.  Turner's transaction was sent out in a write to buy an RV, to buy a trailer, and for the purchase of a new Lexus in Tulsa.  The remaining amounts were made payable to me personally and not Bondage Breaker's Ministries due to the "loan" agreement between me and Turner.

543.    As far as I can remember, not one penny was either written to Bondage Breakers Ministries as alleged in Count Four.

544.    Without Turner's 250k being considered as gross income in 2005, for purpose of the Two Acts alleged in Count Four, Mr. Miller testified I would not have received enough to trigger even a "requirement" to file what he said would be Form 1040.

545.    The switch to evasion of payment from assessment and to include Turner's 250k shows the offense the Grand Jury alleged in Count Four is an entirely different offense than what the Jury was asked to find.

546.    Count Four is a miscarriage of justice and for these reasons I claim Ground 34 shows an actual innocent claim regarding evading of payment in the two acts alleged by the Grand Jury.

547.    Appellate Counsel should have raised this issue and between page 29 to 35 of his brief there was plenty of room to make this claim.

Ground 35

548.    I repeat and incorporate as if set forth word for word what I showd in Ground 1
in support of Ground 35 of my Motion filed simultaneously herewith.

Ground 36

549.    I repeat and incorporate as if set forth word for word what I showed in Ground 2
in support of Ground 36 of my Motion filed simultaneously hereiwth.

Ground 37

550.    I repeat and incorporate to the extent applicable or appropriate, as if set forth
word for word what I showed in Ground 1 above with the following addition that the evid-
ence I attach to this Declaration was not known or disclosed by th Government during the
District Court proceedings.  Certainly, not enforcing the tax laws equally is a miscarri-
age of justice to me.

Ground 38

551.    I repeat and incorporate as if set forth word for word what I showed in Ground
1, and 15 to 27, with the following addition that it seems in other cases the Government
and Court found Form 1040 central to issues of whether a requirement to file was violated
while in my case Form 1040, alleged by the Grand Jury, the Tenth Circuit held "divorced"
and not necessarily the Form at issue, notwithstanding months of argument that it was
the only form at issue.

Ground 39

552.    I repeat and incorporate to the extent applicable and appropriate, as if set forth
word for word what I showed in Grounds 1, 15 thorugh 27,31, and 37 and 38 below, with the
following distinction that the Court should have considered 15 years for the Six Counts
as cruel and unusual punishment in light of the other similar cases and taking into
consideration the public statements made by the Commissioner of Internal Revenue that
Form 1040 use was mandatory under § 6012 and not "divorced" as the Tenth Circuit held.

Ground 40

553.    I repeat and incorporated as if set forth word for word what I showed in Ground 1.

Ground <u>41</u> through <u>43</u>

554.    I repeat and incorporate to the extent applicable and appropriate what I showed in Ground 1.

Ground <u>44</u>

555.    I repeat and incorporate to the extent applicable and appropriate what I showed in Ground 2 above in Ground 44 with the following addition that the Court's switch to evasion of payment caused erros in applying the Sentencing Guidelines where evasion of assessment does not include interest or penalties in calculating tax loss.  The tax loss objections explained in Ground 44 of my Motion explains the issues that Appellate Counsel should have raised on direct appeal and the results would have been a lower sentence in a significant amount.

Ground <u>45</u> through <u>49</u>

556.    These Grounds could not have been raised on appeal as they were either contrary to prior cases, inconsistent with the Government's Grand Jury indictment theory, or developed as a result of the appellate process.

557.    Broadening the Six Counts divorcing Form 1040, applying and saving all Six Counts a 2005 version of a Treasury Regulation and applying it retroactively to the proferred referral years 2000 through 2004, or allowing the Court to instruct the Jury on the meaning of gift that neither Congress or the Secretary of the Treasury had written by statute or regulation and applying it retroactively, created a tremendous prejudice and miscarriage of justice to me and my rights.

558.    I had no notice Form 1040 was divorced from the Six Counts or divorced from § 6012.  I could not have known in 2000 through 2003 what 2005 version of 26 CFR § 1.6091-2 would propose to say (in lat 2004).  I had no advanced notice of the meaning the Court gave the jury about the term "gift" at § 102 which it applied expost facto to 2000 through 2005 at trial and 1999 to 2007 for sentencing.

Ground <u>50</u>

559.    This issue could not have been raised until I had standing to file under § 2255.

(82)

Ground 51

560.   This issue could not have been raised as no one could have forseen the Tenth Circuit holding the Restructuring and Reform Act of 1998 by itself, and without any other words from Congress, abolished Internal Revenue Districts and the offices of district directors as 26 U.S.C. § 6334(e) is contrary to the Tenth Circuit's holding and was enacted in the same Restructuring and Reform Act of 1998.

561.   I also incorporate Ground 1 above as if set forth word for word to the extent applicable and appropriate and to the extent Appellate Counsel should have raised it. Had the Tenth Circuit held that Congress did not abolish in the Restructuring and Reform Act of 1998 all Internal Revenue Districts and district director offices nation wide the outcome of my direct criminal appeal would most likely have been different.

562.   This error caused a miscarriage of justice and I am innocent of willfully failing to file Form 1040 United States Individual Income Tax Returns as alleged by the Grand Jury was "required by law" at 26 CFR § 1.6012-1 due to th PRA violations I claim are facially present by merely looking at Form 1040, and the law and OMB regulations for each year at issue.

Ground 52

563.   This issue could not have been raised because the IRS recently made public and admitted they did not have any person authorized by the Secretary of the Treasury to issue any letter in writing under § 7611. See ¶ 366 above.

Ground 53

564.   I repeat and incorporate as if set forth word for word what I showed in Ground 1 to the extent applicable and appropriate in Ground 53 with the following addition that Mr. Miller should never have been allowed to testify in the first place about his view of the facts as a summary witness and his opinion about the transaction between Mr. Turner and myself was beyond highly prejudicial and just wrong to have been made.

565.   The Court instructing the Jury on Gift's meaning applying that definition retro-

actively which the Constitution forbids Congress from doing and Congress forbids the Secretary of the Treasury to do which is write a meaning for a term and then apply that meaning to conduct before that term's enactment; directed the Jury the Trial Judge found Form 1040 did not and does not violate the PRA; changed Counts 2,3, and 4, to attempted evasion of payment under § 7201 when the affirmative acts alleged by the Grand Jury were acts alleging attempted evasion of assessment; and the District Court allowed Agent Miller to interject his opinion about the Turner 250k transaction and when that transaction would have been considered "gross income" under § 6012.

566.    The Court's fact finding and ex post facto judicial application of its never seen before by me definition of "gift," along with Agent Miller's fact finding and the switch to evasion of payment violated my Fifth and Sixth Amendment rights.

567.    Such conduct resulted in a complete and undeniable miscarriage of justice that without which I believe the jury, who was hung for 2 plus days, would not have found me Guilty of Counts 1 through Six.

Ground 54

568.    I repeat and incorporte to the extent applicable and appropriate in to Ground 54 as if set forth word for word with the following addition that the Court's instruction on Form 1040 not violating the PRA factually, along with its in appropriate meaning of "gift," and its switch to attempted evasion of payment not alleged in by the Grand Jury in Counts 2,3, and 4, and Miller's fact testimony about the Turner transaction, when presented with a hung jury for 2 1/2 days, the Allen charge immediately and unduly influenced the jury to a verdict of guilty at least as to Counts 1,3, and 4, which I claim had a spill over affect on Counts 2, 5 and 6.

Ground 55

569.    This Ground may not have been able to be raised based upon the newly discovered evidence of Mr. McGinness's judgment. To the extent it could have I  incorporate Ground 1 as if set forth word for word herein where appropriate and applicable.

(84)

Ground 56

570.   I repeat and incorporate what I showed for Ground 1 as if set forth word for word
in and for Ground 56 with the following addition that had a certain amount of time been
attributable for what I actually did that could arguably be said to be a service, and
the rest remaining either a gift or donation, it is highly unlikely a tax deficiency
would have been established for Counts 2,3 and 4, reducing the amount of "gross income"
significantly. Because the Court refused to allow me to present evidence or argue to
the jury this ground I was unable to develope the record to support it at trial.

Ground 57 and 58

571.   I repeat and incorporate what I showed for Ground 1 in Ground 57 as if set forth
word for word and with the addition that Appellate Counsel did make a Sixth Amendment
claim in the brief he filed on my behalf but failed to raise this issue in the most
effective manner causing the prejudice claimed in Ground 59.

572.   Furthermore, there is no way anyone would have known or knew the Tenth Circuit,
after all its reported and unreported cases with both me and about the PRA and Form 1040,
would hold Form 1040 United States Individual Income Tax Returns "divorced" from the
Grand Jury's alleged duties and obligations in all Six Counts derived from § 6012 and
§ 7203 under the circumstances of the Commissioner's § 7805(c) instructions for Form
1040, and the extensive issues surrounding Form 1040 at  the Trial and my extensive lit-
igation involving  the Form 1040 and PRA.

Ground 59 to 61

573.   This Ground could not have been raised on direct appeal but the outcome of this
Ground was prejudicial to me resulting in a different outcome than what each Ground in
my Motion filed under 28 U.S.C. § 2255 to which this Declaration accompanies and supports.
If not for these errors the outcome would have been substantially different and in my
favor.

Ground 62

574.   As I showed in Ground 5 through 9 the IRS as an institution lost enforcement

(85)

power over me on June 3, 2005.

575.    I repeat and incorporate Ground 2 herein as if set forth word for word and would add that Appellate Counsel did challenge the search warrant as it relates to Ms. Meadors but only in a prefunctory way may have raised Ground 62.

576.    Had this issue been raised correctly on appeal the outcome most likely would have been reversal of all Six Counts.  Not raising this issue was highly prejudicial to me.

Ground 63

577.    This issue goes to the heart of Article II power and was not raised at the District Court.  Evidence coming to light in the 2010 through 2012 years involving actions brought or filed challenging Mr. Obama's "natural born" status triggered a purported birth certificate being presented to the News Media demonstrating that there is a disputed fact as to whether Mr. Obama is natural born and eligible to attain the office of President of the United States of America.

578.    This issue could not have been properly raised until after judgment and was not raised before.  However, I have standing to raise this Ground due to the dates of indictment, trial judgment, appeal, and my continued incarceration remains solely under Mr. Obama's exercise of the Office of President of the United States America and that offices executive law enforcement power which I claim no statute of Congress directing or authorizing enforcement of any Federal Law is or would be authorized, including Title 26 offenses, Title 26 related offenses, or any Title 18 statutes, and this includes 28 U.S.C. § 541 and 547(1) prosecutions by a Presidentially appointed U.S. Attorney to which Mr. Obama's ineligibility nullifies.

Ground 64 and 65

579.    This issue could not have been raised till after the Tenth Circuit's October 26, 2011 decision in 10-5055 (my criminal appeal).  This issue is re-enforced by the Supreme Court's decision in Kawashima v. Holder on February 12, 2012 which reaffirmed that § 7201 prescribes two separate offenses, not one, one being attempted evasion of assessment and the other being attempted evasion of payment which occurrs after assessment is made.

580.    It is my claim these Fifth and Sixth Amendment violations individually and collectively created or caused a complete miscarriage of justice.

Ground 66

581.    I repeat and incorporate Ground 1 through 75 herein as if set forth word for word to the extent appropriate and applicable.

Ground 67

582.    I repeat and incorporate Ground 2 as if set forth word for word herein with the addition that had these issues been raised properly the Tenth Circuit decision would have been noticeably different as to issues regarding the time of referral and its validity, type of offense in Counts 2,3, and 4, extent of the offense in Count One, and a lessor amount of tax loss applied under USSG § 2T1.1.

583.    No matter what, I claim the primary and basis for my imprisonment is currently willful failure to pay a tax debt which pursuant to the State of Oklahoma's Constitution the State of Oklahoma reserved under its Tenth Amendment reservation of power to itself whether any of its citizens could ever be imprisoned for failure to pay a debt.

584.    In other Grounds I have challenged the Court's change to failure to pay in Counts 2,3, and 4, and its increase of the "tax loss" from Counts 5 and 6.  In the event those Counts are reversed that reversal would have an impact on whether this issue remains at issue.

Ground 68

585.  This Ground could not have been raised until after the October 26, 2011 decision divorcing Form 1040 and its cause prevented me from any meaningful exercise of my First, Fifth, Sixth, Ninth and Tenth Amendment Rights and Privileges outlined in my Motion filed under § 2255 seeking Habeas Corpus relief.

586.    I had this and other defense options had I not been misled about the role Form 1040 played in all Six Counts of the Grand Jury indictment. Properly instructed, this defense is supported by the District Court's current record.

587.    Misleading me into not choosing this or other winning defenses caused me to

(87)

suffer a miscarriage of justice as the Court made it emphatically clear at sentencing
I claimed I did not willfully faile to file Form 1040 for any of the years alleged in
the Six Counts.

Ground 69 and 70

588.   This issue was not raised either in the District Court or on direct appeal but
was an affirmative and good faith defense I had to present had I not been misled by the
Grand Jury's allegations that I had refrained from filng forms with the IRS, including
Form 1040, and that I willfully failed to file a United States Individual Income Tax
Return, or income tax return, at issue in each of the Six Counts "as required by law."

589.   The Tenth Circuit's decision Form 1040 was divorced from all Six Counts and div-
orced from the requirement at 26 U.S.C. §§ 6012 and 7203, rendered my presented good
faith defense I did not willfully faile to File Form 1040 meaningless.

590.   My defense that receipt of Federal Reserve Notes that purport to be issued in
compliance with 12 U.S.C. § 411, but are not redeemable in "lawful money" at any Federal
Reserve Bank as required by § 411, render the Federal Reserve Notes in circulation as
worthless securities under 26 U.S.C. § 165(g) and deductible for gross income.

591.   Without being redeemable in lawful money the only point in transacting in denom-
inations of Federal Reserve Notes could possibly lose their worthless designation is
when, and only when, such notes are exchanged for something other than other Federal
Reserve Notes and the value is received only by the person who surrenders their Federal
Reserve Note denominations for something else.

592.   Under this defense I would be actually innocent of being requied to do anything
and thus a miscarriage of justice is presumed or probably occurred.

Ground 71 and 72

593.   This issue was unavailbe to be raised until after the Tenth Circuit rendered its
decision on October 26, 2011, divorcing Form 1040 From the conduct alleged in all Six
Counts and Divorcing Form 1040 from 26 U.S.C. § 6012's requirements.

594.   I could not have willfully failed to file a Form 1040 is Form 1040 was divorced

and not at issue in each of the Six Counts of the indictment. I could not have encouraged other people not to file Form 1040 as "violating the law" if Form 1040 was divorced from the requirement to file an income tax return at issue under § 6012.

595. Even though this issue is raised separately it seems impossible to get to this issue since Form 1040 at issue in each of the Six Counts is "divorced" from the duties and obligations rendering the my conduct leading to the proferred referral, the referral, subsequent indictment, both Trial and Sentencing unconstitutionally void in violation of the First, Fourth, Fifth, Sixth, Ninth, and Tenth Amendments. It is highly doubtful Mr. Shern could have made a case for any warrant to search my home based upon my alleged refusal to File Form 1040s had the public been made aware Form 1040 was divorced from any duty he claimed I had in his purported affidavit in support of his post referral request to search my home. Equally, had Mr. Shern, the only person who testified on March 9, 2009, leading to the return of the Six Counts, explained to the Grand Jury I was not required to File Form 1040 United States Individual Income Tax Returns the Grand Jury would never have alleged  Form 1040s were refrained from being filed with the IRS, or ever alleged I failed to file "United States Individual Income Tax Returns" as "required by law."

596. A decision here is a decision in my favor of dismissal on all Charges to the best of my knowledge and belief.

Ground 73

597. This issue could not be raised till my 1 year window was procedurally opened and caused a motion under § 2255 to effectively suspend the Writ of Habeas Corpus challenging my conviction, sentence, and judgment, on jurisdictional grounds.

598. 28 U.S.C. § 2255(e) suggests a Writ of Habeas Corpus is unavailable where § 2255 is inadequate or ineffective yet the Supreme Court of the United States has held in U.S. v. Hayman, 342 U.S. 205, 219(1952) that motions under 2255 were a creature designed by the Judiciary to "minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum."

599.  A rule allowing argument of law limited to only 25 pages when required to raise every possible issue is not in accord with § 2255's requirement I support my determination my conviction, sentence, and judgment is unconstitutional and void.

600.  Limiting a person so incarcerated to 25 pages in 2013 while affording the United States unfettered power to put me in prison is unfair and should be repudiated.

GROUND 74

601.  I repeat and incorporate Ground 2 as if set forth word for word in Ground 74 to the textent appropriate and applicable with the following addition that if the existence of the IRS is sustained by the Tenth Circuit under the first sentence of 26 CFR § 601.101, and where the Tenth Circuit held the Internal Revenue Districts and district directors identified by the Secretary of the Treasury in the fourth sentence of § 601.101 were abolished in 1998 by the Restructuring and Reform Act of 1998, then I contend the Tenth Circuit's decision to suspend Appellate Counsel Barringer for claiming out of the fourth sentence of § 601.101 the IRS was prohibited without Internal Revenue Districts and district directors from acting outside Washington D.C. pursuant to Title 4, § 72, was not only not frivolous, but appears meritorious.

602.  The Tenth Circuit's decision in U.S. v. Hoodenpyle, 461 Fed. Appx. 675, 682 (10th Cir. 2012) lends support for the total miscarriage of justice accomplished by the Tenth Circuit in its two different standards derived from § 601.101.

GROUND 75

603.  I repeat and incorporate Ground 1 as if set forth word for word in Ground 75 to the extent appropriate and applicable with the following additions incorporating Grounds 1 to 4, 10 to 14, 30, 34, 35, 39, 40, 42, 43, 44, 48, 67 and to the extent available and relevant, 71 and 72.

GROUND 76

604.  This issue was not available to be raised until after the Tenth Circuit's decision on October 26, 2011. In incorporate as if set forth word for word Grounds 1 through 75 herein.

605.    I claim this is especially true where the State of Oklahoma,who as sovereign
is to protect my liberty from Federal encroachment,has failed to do so.

606.    I claim the entire Constitution is in ongoing breach by the United States and its
judicial and executive branches in the circumstances of my case where the States'tender
of power to the United States was not for the purposes of denying due process but rather
securing liberty through due process.

607.    As the other 74 Grounds demonstrate, I have not received the double protection of
my liberty the Supreme Court has explained when explaining Federalism principals.

608.    It may seem the most egregious of these violations is (1) the expanding the years
of referral from 2000 to 2004, to and including 2000 through 2009 without permission
or authorization from the Secretary; or (2) adding Oscar Stilley's tax liability from
2000 through 2009 without any such proferred referral as to his liability stemming from
the State of Arkansas; or (3) having no referral signed by the Secretary of the Treasury;
or (4) that Agent Brian Shern 3 months after the Government's claimed proferred referral
dated June 3, 2005, on September 15, 2005, obtained a search warrant claiming his author-
ity was, as an Internal Revenue Service Special Agent, which under U.S. v. LaSalle, 437
U.S. 298, 308-317(1978) was not legally possible as his § 7608(b) enforcement authority
according to LaSalle was suspended upon Grand Jury referral; or (5) the switching of
the Grand Jury's Counts 2,3 and 4, from attempted evasion of the tax imposed by Title
26, to attempted evasion of payment during the Trial and sentencing; or (6) the Judges
decision to inform the Jury at Trial Form 1040 he had Found did not violate the PRA,or
instructing the Jury to the meaning of "gift" which neither Congress or the Secretary
had ever given the public notice of, applying same retroactive or backwards to 1999
forward (in 2009); or (7) one minute the Government claims no treasury regulations are
said to be involved in their case in chief,and during appeal and facing dismissal due
to the undisputed fact Internal Revenue Districts and district directors were abolished
for all relevant times from 2000 forward,  the Government argues and convinces the
Tenth Circuit to save all Six Counts on 26 CFR § 1.6091-2(2005) and apply that "regul-

ation" retroactively which clearly conflicts with Congress' 26 U.S.C. § 7805(b) and
the Constitutions prohibition of applying laws expost facto in criminal cases.

609.    At first glance these above claims I have made may just shock a reasonable jurist.

610.    But, in my opinion, what seems should raise the public to outcry is where the
Secretary of the Treasury and Commissioner of Internal Revenue, every Grand Juror (I
suspect), every juror or jurist, myself (and most clearly the Trial Judge), understood
Form 1040 to be subject to the Paperwork Reduction Act and otherwise mandatory to be
used in satisfying any duty or obligation under 26 U.S.C. § 6001, 6011, 6012(a), their
regulations, and as clarified by both Bills of Particulars ordered by the Court the
Government was forced to file.

611.    The instructions for Form 1040 are authorized by Congress at 26 U.S.C. § 7805(c).
Yet, the Tenth Circuit decided  Form 1040 United States Individual Income Tax Returns
alleged at issue in all Six Counts were "divorced" from §§ 6012 and 7203, and "divorced,"
or not at issue in the Grand Jury's claims levied against my liberty.

612.    The fact the Tenth Circuit moved the duty to file a "Tax Return" out of 26 U.S.C.
§ 6091(b), where Congress put it, and into § 6091(a), was not something anyone reading
§ 6091(b) would ever have reached or concluded.

613.    And then, by doing this change to § 6091(a) all "Tax Returns" Congress put under
§ 6091(b), the Tenth Circuit then applied a 2005 version of 26 CFR § 1.6091-2 to the
facts of 2000 through 2004 which 2000 through 2004's version specificaly directed that
if I did not live in any Internal Revenue District, which was also undisputed, I was
directed to deliver Form 1040 to the "district director" in Baltimore Md.-which also no-
longer existed.  Such application clearly violated § 7805(b) and Article I, § 9, Cl. 3.

614.    Suspending my Appellate Counsel and not appointing new Sixth Amendment Appeal
Counsel shows no one was protecting my basic rights to liberty or property.

615.    Our founding fathers (and mothers) enacted the protection of the Writ of Habeas
Corpus to put an end to my deprivations of liberty and property and that is exactly
what I am requesting that Judge that hears my Grounds for relief to restore without delay.

REQUESTED RELIEF

616.    The relief I seek in Grounds 1 through 9, 15 though 32, 34 through 38, 40, 41, 45 through 52, 56, 62 through 68, 70, 73, 74, and 75, is dismissal of all Six Counts with prejudice.

617.    The relief I seek in Grounds 1 through 9, 15 through 38, 40, 41, 45 through 53, 56, 57, 58, 62 through 68, 70, 73, 74, 75, if anyone is not dismissed outright as outlined above, is I be put back at the point the right was violated Nunc Pro Tunc to the date the indictment was returned and with Sixth Amendment Counsel appointed.

618.    The relief I seek in Grounds 1 through 9, 15 through 38, 40, 41, 45 through 54, 56, 57, 58, 62 through 68, 70, 73 through 75, if anyone is not dismissed outright or if any are not granted Nunc Pro Tunc, is a New Trial on all Counts then remaining.

619.    The relief I seek in Grounds 10 through 36, 39 through 53, 55 through 58, 62, 63, 66 through 75, if any Counts are either not dismissed, not returned Nunc Pro Tunc to the place the violation complained of began to occur, or if a New Trial on all remaining Counts is not granted, is a new full sentencing hearing Nunc Pro Tunc with all claims for relied honored overruling any objections by the Government or Probation office.

620.    The relief I seek in Grounds 1 through 76, if any are not dismissed, or not granted restoration Nunc Pro Tunc, or not granted a New Trial, or the sentencing relief requested, is a new appeal Nunc Pro Tunc with experienced Counsel appointed. The experience should be with complex criminal tax cases in part.

621.    The relief I seek is having my litigation position, being deprived of due process and prejudiced in the first instance, restored with damage assessments made due to the passage of time and effect of incarceration and loss of pre-sentencing abilities.

622.    The request I seek is also for an evidentiary hearing on all Grounds both

individually and collectively and first with appointment of Counsel.

623.   I declare under the penalty of perjury pursuant to 28 U.S.C. 1746(1) under the laws of the United States of America the forgoing is true and correction to the best of my knowledge and belief.

March 4, 2013
Date

Declarant

AO-243 - Motion to Vacate, Set Aside, or Correct a Sentence
By a Person in Federal Custody

Instructions

1.    To use this form, you must be a person who is serving a sentence under a judgment
      entered against you in a federal court. You are asking for relief from the conviction or the
      sentence. This form is your motion for relief.

2.    You must file the form in the United States district court that entered the judgment that
      you are challenging. If you want to challenge a federal judgment that imposed a sentence
      to be served in the future, you should file the motion in the federal court that entered that
      judgment.

3.    Make sure the form is typed or neatly written.

4.    You must tell the truth and sign the form. If you make a false statement of a material fact,
      you may be prosecuted for perjury.

5.    Answer all the questions. You do not need to cite law. You may submit additional pages
      if necessary. If you do not fill out the form properly, you will be asked to submit
      additional or correct information. If you want to submit a brief or arguments, you must
      submit them in a separate memorandum.

6.    There is no filing fee for this motion.

7.    In this motion, you may challenge the judgment entered by only one court. If you want to
      challenge a judgment entered by a different judge or division (either in the same district
      or in a different district), you must file a separate motion.

8.    When you have completed the form, send the original to:
      •                    Clerk of Court
      •                    United States District Court
      •                    333 West Fourth Street, Room 411
      •                    Tulsa, OK 74103

9.    The court does not require additional copies of any filings.  To receive a file-stamped
      copy of the motion by return mail, you must send a copy of the motion, along with a
      self-addressed envelope with sufficient postage affixed for return of the copy to you.

10.   CAUTION: You must include in this motion all the grounds for relief from the conviction
      or sentence that you challenge. And you must state the facts that support each ground. If
      you fail to set forth all the grounds in this motion, you may be barred from presenting
      additional grounds at a later date.

11.   CAPITAL CASES: If you are under a sentence of death, you are entitled to the assistance
      of counsel and should request the appointment of counsel.

EXHIBIT 1

**Internal Revenue Service**
55 N ROBINSON AVE
MS5115OKC
OKLAHOMA CITY, OK 73102

**Department of the Treasury**

**Letter Date:**
03/02/2005
**Social Security or**
**Employer Identification Number**
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
**IRS Employee to Contact:**
FREDRICK RICE
**Employee Identification Number:**
73-00576
**Contact Telephone Number:**
(405)297-4468

CERTIFIED MAIL - RETURN RECEIPT

LINDSEY K SPRINGER
5943 EAST 13TH
TULSA, OK 74112

### FINAL NOTICE
### NOTICE OF INTENT TO LEVY AND NOTICE OF YOUR RIGHT TO A HEARING
*PLEASE RESPOND IMMEDIATELY*

Your Federal tax is still not paid. We previously asked you to pay this, but we still haven't received your payment. This letter is your notice of our intent to levy under Internal Revenue Code (IRC) Section 6331 and your right to receive Appeals consideration under IRC Section 6330.

We may file a Notice of Federal Tax Lien at any time to protect the government's interest. A lien is a public notice to your creditors that the government has a right to your current assets, including any assets you acquire after we file the lien.

If you don't pay the amount you owe, make alternative arrangements to pay, or request Appeals consideration within 30 days from the date of this letter, we may take your property, or rights to property, such as real estate, automobiles, business assets, bank accounts, wages, commissions, and other income. We've enclosed Publication 594 with more information, Publication 1660 explaining your right to appeal, and Form 12153 to request a Collection Due Process Hearing with Appeals.

To prevent collection action, please send your full payment today. Make your check or money order payable to U.S. Treasury. Write your social security number or employer identification number on your payment. Send your payment to us in the enclosed envelope with a copy of this letter. The amount you owe is shown on the next page.

If you have recently paid this tax or you can't pay it, call us immediately at the telephone number shown at the top of this letter and let us know.

The unpaid amount from prior notices may include tax, penalties, and interest you still owe. It also includes any credits and payments we've received since we sent our last notice to you.

### nterest - Internal Revenue Code Section 6601
We charge interest when your tax is not paid on time. Interest is computed from the due date of your return regardless of extensions) until paid in full or to the date of this notice.

EXHIBIT 2-1

**Letter 1058 (DO) (Rev. 6-2004)**
**Catalog Number: 40488S**

Interest is also charged on penalties assessed on your account. Interest compounds daily except on underpaid estimated taxes for individuals or corporations.

**Paying Late - Internal Revenue Code Section 6651(a)(2)**
We charge a penalty when your tax is not paid on time. Initially, the penalty is ½% of the unpaid tax for each month or part of a month the tax was not paid.

If you have any questions about your account or would like a further detailed explanation of the penalty and interest charges on your account, please call me at the telephone number shown above.

Sincerely yours,

FREDRICK RICE
REVENUE OFFICER

The amount you owe is:

| Form Number | Tax Period | Unpaid Amount from Prior Notices | Additional Penalty | Additional Interest | Amount You Owe |
|---|---|---|---|---|---|
| 1040 | 12/31/1990 | $18595.58 | $1919.75 | $13383.21 | $33898.54 |
| 1040 | 12/31/1991 | $15615.45 | $1994.75 | $11271.05 | $28881.25 |
| 1040 | 12/31/1992 | $14606.76 | $2021.00 | $10542.95 | $27170.71 |
| 1040 | 12/31/1993 | $67060.95 | $9943.00 | $48403.76 | $125407.71 |
| 1040 | 12/31/1994 | $21309.20 | $3406.00 | $15380.73 | $40095.93 |
| 1040 | 12/31/1995 | $20155.73 | $3514.50 | $14548.12 | $38218.35 |
| CIVPEN | 12/31/1996 | $4329.16 | $0.00 | $2069.91 | $6399.07 |
| | | | | Total: | $300071.56 |

Enclosures:
Copy of this letter
Pub. 594
Pub. 1660
Form 12153

EXHIBIT 2-2

Letter 1058 (DO) (Rev. 6-2004)
Catalog Number: 40488S

| Form 668 (Z)<br>(Rev. 10-2000) | 3682 | Department of the Treasury - Internal Revenue Service<br>**Certificate of Release of Federal Tax Lien** |
|---|---|---|

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #5<br>Lien Unit Phone:    (800) 913-6050 | Serial Number<br><br>373880607 | For Use by Recording Office |
|---|---|---|

I certify that the following-named taxpayer, under the requirements of section 6325 of the Internal Revenue Code has satisfied the taxes listed below and all statutory additions. Therefore, the lien provided by Code section 6321 for these taxes and additions has been released. The proper officer in the office where the notice of internal revenue tax lien was filed on _____ **June 26** _____ , **2007** , is authorized to note the books to show the release of this lien for these taxes and additions.

Name of Taxpayer    **LINDSEY K SPRINGER**

Residence    5943 E 13TH
TULSA, OK 74112-5407

**COURT RECORDING INFORMATION:**

| Liber | Page | UCC No. | Serial No. |
|---|---|---|---|
| 638 | 1665 | n/a | 07 8718 |

| Kind of Tax<br>(a) | Tax Period<br>Ended<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/1990 | XXX-XX-3758 | 05/29/1997 | 06/28/2007 | 18550.58 |
| 1040 | 12/31/1991 | XXX-XX-3758 | 05/29/1997 | 06/28/2007 | 15615.45 |
| 1040 | 12/31/1992 | XXX-XX-3758 | 05/29/1997 | 06/28/2007 | 14606.76 |
| 1040 | 12/31/1993 | XXX-XX-3758 | 05/29/1997 | 06/28/2007 | 67060.95 |
| 1040 | 12/31/1994 | XXX-XX-3758 | 05/29/1997 | 06/28/2007 | 21339.20 |
| 1040 | 12/31/1995 | XXX-XX-3758 | 05/29/1997 | 06/28/2007 | 20155.73 |
| XXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX |

Place of Filing

COUNTY CLERK
CREEK COUNTY
SAPULPA, OK 74066

**Total**    157328.67

This notice was prepared and signed at ____**NASHVILLE, TN**____ , on this,

the __23rd__ day of ____**August**____ , __2007__ .

Signature    *R. A. Mitchell*    Title    **Director, Campus Compliance Operations**

(NOTE:  Certificate of officer authorized by law to take acknowledgements is not essential to the validity of Certificate of Release of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409

Form **668 (Z)** (Rev. 10-2000)

EXHIBIT 3-1

| Form 668 (Z) (Rev. 10-2000) | 3682 | Department of the Treasury - Internal Revenue Service **Certificate of Release of Federal Tax Lien** |
|---|---|---|

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #5 Lien Unit Phone:    (800) 913-6050 | Serial Number 373880807 | For Use by Recording Office |
|---|---|---|

I certify that the following-named taxpayer, under the requirements of section 6325 of the Internal Revenue Code has satisfied the taxes listed below and all statutory additions. Therefore, the lien provided by Code section 6321 for these taxes and additions has been released. The proper officer in the office where the notice of internal revenue tax lien was filed on _____June 26_____ , _____2007_____ , is authorized to note the books to show the release of this lien for these taxes and additions.

Name of Taxpayer    LINDSEY K SPRINGER

Residence    5943 E 13TH
             TULSA, OK 74112-5407

COURT RECORDING INFORMATION:

| Liber | Page | UCC No. | Serial No. |
|---|---|---|---|
| 638 | 1666 | n/a | 07 8719 |

| Kind of Tax (a) | Tax Period Ended (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 6673 | 12/31/1996 | XXX-XX-3758 | 04/09/1998 | 05/09/2008 | 4329.16 |

**Place of Filing**

| | | |
|---|---|---|
| COUNTY CLERK CREEK COUNTY SAPULPA, OK 74066 | Total | 4329.16 |

This notice was prepared and signed at    NASHVILLE, TN    , on this,

the _23rd_ day of ___August___ , _2007_ .

Signature R. A. Mitchell    Title    Director, Campus Compliance Operations

(NOTE: Certificate of officer authorized by law to take acknowledgements is not essential to the validity of Certificate of Release of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409

EXHIBIT 3-2

- 18 -

The gist of Springer's argument appears to be that the IRS's internal reorganization makes it impossible for anyone to be convicted of tax crimes. In short, he argues that, without internal revenue districts, there was no place where he was "required by law" to file his tax returns. (Br. 11.) This argument fails for several reasons.

First, its premise is wrong: there was a place where Springer was required to file his tax returns. Section 6091(b)(1)(B)(i) of Title 26 provides—as it provided in 2000—that the returns of "persons who have no legal residence or principal place of business in any internal revenue district . . . shall be made at such place as the Secretary may by regulations designate." 26 U.S.C. 6091(b)(1)(B). Since 2004, the Treasury Department's regulations have required individual taxpayers to file either at their local IRS office or at the IRS Service Center specified in the applicable tax return's instructions. *See* 26 C.F.R. 1.6091-2(a),(c),(d); 69 Fed. Reg. 55743 (Sept. 16, 2004) (amending 26 C.F.R. 1.6091-2). And the pre-2004 filing regulation, like the current one, required taxpayers to file their returns by mailing them to their particular Service Center. *See* 26 C.F.R. 1.6091-2(c) (2003). At all times relevant to this case, Springer's legal residence was in the county of Creek (*see* Springer May 4, 2010, Bail Mot. at 39 n.14) and the local IRS office serving his residence was in Tulsa (Doc. 71 at 5), both of which are in the Northern District of Oklahoma. *See* 28 U.S.C. 116(a). Thus Springer was required by law to file his tax returns, and he was resident in the Northern District of Oklahoma when he failed to do so.

EXHIBIT 4-1

- 19 -

Second, Springer's conclusions do not follow from his premise: even if there were no laws or regulations specifically requiring Springer to file his tax returns in the Northern District of Oklahoma, the indictment would still be sufficient and his (and Stilley's) convictions would still be valid. The obligation to file federal income tax returns and pay federal income taxes arises by statute, *see* 26 U.S.C. 1, 6012, as does the due date for those returns, *see* 26 U.S.C. 6072(a), and none of these provisions relies on the existence of (or even makes reference to) internal revenue districts or district directors. Springer's criminal failures to file were complete when he willfully failed to file his 2002 and 2004 tax returns "at the *time or times* required by law or regulations," 26 U.S.C. 7203 (emphasis added); *see also United States v. Sams*, 865 F.2d 713, 716 (6th Cir 1988) (§ 7203 violation complete once there is a duty to pay and willful nonpayment), without reference to any particular location requirement. And, as noted above, these crimes were committed while Springer lived in the Northern District of Oklahoma, making venue proper. *See United States v. Garman*, 748 F.2d 218, 220 (4th Cir. 1984) (in a failure-to-file case, "venue is proper in either the district of residence or the district where the service center is located"). The most that Springer can plausibly make of his internal-revenue-district argument is that he did not *willfully* fail to file his returns because he did not know where to file them—an argument the jury rejected when it convicted him on the willful-failure-to-file counts.[16]

_____

[16] Additionally, even if the abolition of internal revenue districts in 2000 had some effect on the failure-to-file counts, it would have nothing whatever to do

EXHIBIT 4-2

- 20 -

## II

## THE PAPERWORK REDUCTION ACT OFFERS
## NO DEFENSE TO CRIMINAL TAX CHARGES

The defendants' second argument (Br. 14-23), also meritless, is that the

"public protection provision" of the Paperwork Reduction Act (PRA), 44 U.S.C.

3512, prevented the district court from imposing any penalties based on their

counts of conviction.

A. *Standard of Review*

Questions of law are reviewed de novo. *Lewis v. Comm'r*, 523 F.3d 1272,

1274 (10th Cir. 2008).

B. *Discussion*

The PRA requires an agency to receive approval from the Office of

Management and Budget to "conduct or sponsor the collection of information," 44

U.S.C. 3507(a), and § 3512(a) of the Act, entitled "Public protection," provides:

> Notwithstanding any other provision of law, no person shall be
> subject to any penalty for failing to comply with a collection of
> information that is subject to this subchapter if . . . (1) the collec-

---

with Springer's and Stilley's convictions for conspiring to defraud the United
States and attempting to evade Springer's income taxes. Conspiracy to defraud the
United States requires an agreement between two or more people to impede the
government's lawful functions through means that are dishonest, *see*
*Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924), and impossibility is
not a defense to conspiracy, *see United States v. Rosner*, 485 F.2d 1213, 1229 (2d
Cir. 1973). Nor do internal revenue districts have anything to do with the tax-
evasion counts: "the elements of § 7201 are willfulness, the existence of a tax
deficiency, and an affirmative act constituting an evasion or attempted evasion of
the tax," *Boulware v. United States*, 552 U.S. 421, 424 n.2 (2008) (brackets and
ellipses omitted), and, as noted above, a person's liability for federal income taxes
does not depend on the existence of internal revenue districts, *see* 26 U.S.C. 1.

EXHIBIT 4-3

- 22 -

cannot rely on 44 U.S.C. 3512 as a defense"); *United States v. Patridge*, 507 F.3d
1092, 1094 (7th Cir. 2007) (explaining that "the obligation to file a tax return"
comes from statute, "not from any agency's demand," and is therefore not subject
to the PRA);[17] *cf. United States v. Dawes*, 951 F.2d 1189, 1192 (10th Cir. 1991)
("[w]e would be inclined to . . . hold that the operation of the PRA in these
circumstances did not repeal the criminal sanctions for failing to file an income tax
return because the obligation to file is a statutory one"); Rev. Rul. 2006-21, 2006-
15 I.R.B. (April 10, 2006) (citing cases).[18]

　　Finally, contrary to Springer's assertions (Br. 17-18), the Forms 1040 for
the years 2002 and 2004 do not violate the public-protection provision of the

---

[17] Springer's counsel, Mr. Barringer, was counsel of record in both *Gross*
and *Patridge*.

[18] In his brief, Springer tries to avoid this caselaw by maintaining that,
because the Form 1040 was the specific form he was required to file by regulation,
the PRA applies. (Br. 13.) But Springer is not being punished for failing to file a
particular, agency-specified form; he is being punished for willfully failing to
"make a return . . . at the time or times required by law or regulations." 26
U.S.C. 7203; *see also* 26 U.S.C. 6012, 6072 (establishing the income thresholds
and deadlines for filing a return); Doc. 2 (Indictment) ¶¶ 47, 49 (charging Springer
with willfully failing to "make and file an income tax return"); Tr. 2965
(instructing the jury that in order to convict Springer it had to find that he "was
required by law to file a tax return concerning his income" and that "he failed to
file such a return at the time required by law"). This Court has defined a "return"
as a document that "contains sufficient data from which the IRS can compute and
assess a tax liability." *United States v. Stillhammer*, 706 F.2d 1072, 1075 (10th
Cir. 1983). Thus, whatever argument Springer might have if he had filed a return
but was being penalized for failing to do so "according to the forms and regula-
tions prescribed by the Secretary" of the Treasury, 26 U.S.C. 6011, is irrelevant to
this case, because Springer failed to file any return at all. *See Patridge*, 507 F.3d
at 1095 (making the same point).

EXHIBIT 4-4

- 23 -

PRA.[19]  Both documents, in compliance with the public-protection provision, 44
U.S.C. 3512(a)(1)-(2), display a valid OMB control number, and each informs the
recipient in its corresponding instructions that he or she is not required to respond
without one.  (*See* Docs. 54-2, -4; Form 1040 Instructions (2002) at 76; Form 1040
Instructions (2004) at 75.)[20]

III

THE DISTRICT COURT PROPERLY DENIED SPRINGER'S<br>AND STILLEY'S MOTIONS TO SUPPRESS EVIDENCE

Springer and Stilley next erroneously argue (Br. 23-34) that the IRS's civil
and criminal investigations of them were undertaken in bad faith and in violation
of the IRS's statutory authority, purportedly requiring reversal of the district
court's judgments of conviction.[21]

---

[19] Springer's brief also invokes a provision of the Administrative Procedure
Act, 5 U.S.C. 552, but fails to explain how or why it would prevent the imposition
of criminal penalties in this case.  (Br. 18-19.)

[20] The Form 1040 instructions for 2002 and 2004 are available at
http://www.irs.gov/pub/irs-prior/i1040--2002.pdf and
http://www.irs.gov/pub/irs-prior/i1040--2004.pdf.  As this Court has held, the IRS
satisfies its obligation "to inform the person responding to the request that he or
she is not required to respond unless a valid control number is displayed . . . by
making these disclosures in the instruction booklet associated with Form 1040."
*Wheeler v. Comm'r*, 528 F.3d 773, 781 (10th Cir. 2008).

[21] The heading on page 29 of Springer's brief, which purports to begin a
new argument, appears to be there erroneously—Springer's suppression argument
continues in the text until page 34.

EXHIBIT 4-5

DATE: 11/20/2009 ←

REPLY TO:

INTERNAL REVENUE SERVICE
STOP 5113-RICE
55 N. ROBINSON
OKLAHOMA CITY, OK 73102

TELEPHONE NUMBER
OF IRS OFFICE:

(405) 297-4468
(405) 297-4405 FAX

NAME AND ADDRESS OF TAXPAYER:

LINDSEY K. SPRINGER
5147 S. HARVARD #116
TULSA, OK 74135

TO:

PAYPAL
ATTENTION: LEGAL DEPARTMENT
PO BOX 45950
OMAHA, NEBRASKA 68145-0950

IDENTIFYING NUMBER(S):

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/1990 | $18,790.58 | $26,661.55 | $45,452.13 |
| 1040 | 12/31/1991 | $15,615.45 | $22,801.74 | $38,417.19 |
| 1040 | 12/31/1992 | $14,606.76 | $21,483.89 | $36,090.65 |
| 1040 | 12/31/1993 | $67,060.95 | $99,299.13 | $166,360.08 |
| 1040 | 12/31/1994 | $21,339.20 | $31,808.71 | $53,147.91 |
| 1040 | 12/31/1995 | $20,155.73 | $30,371.20 | $50,526.93 |
| CIVIL PENALTY | 12/31/1996 | $4,329.16 | $4,339.47 | $8,668.63 |

THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS' RETIREMENT PLANS, OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED IN THE BLOCK TO THE RIGHT. ——————→

**Total Amount Due ▶ $398,663.52**

We figured the interest and late payment penalty to ___12/20/2009___

Although we have told you to pay the amount you owe, it is still not paid. This is your copy of a notice of levy we have sent to collect this unpaid amount. We will send other levies if we don't get enough with this one.

Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code **must hold your money for 21 calendar days** before sending it to us. They must include the interest you earn during that time. Anyone else we send a levy to must turn over your money, property, credits, etc. that they have (or are already obligated for) when they would have paid you.

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. Make checks and money orders payable to United States Treasury. If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy. You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us. If you write to us, please include your telephone number and the best time to call.

| Signature of Service Representative | Title REVENUE OFFICER FRED RICE |
|---|---|
| Part 4— For Taxpayer | Form 668-A(c)(DO) (Rev. 7-2002) |

EXHIBIT 5

# IRS makes offer to offshore tax cheats

The IRS is reviving a program that lets Americans hiding money abroad pay back taxes and penalties while avoiding criminal prosecution. IRS Commissioner Douglas Shulman said efforts in 2009 and 2011 resulted in the collection so far of $4.4 billion from 33,000 people. He said the government could gain several times that amount as a result of both the new initiative plus people deciding against stashing assets overseas.

EXHIBIT 6

TULSA WORLD

Friday, August 3, 2012 · · · · A 9

# Tax fraud may have cost IRS more than $5 billion

- Identity theft in filing tax returns is a rising problem.

**BY JOSH LEDERMAN**
Associated Press

WASHINGTON — The Internal Revenue Service may have delivered more than $5 billion in refund checks to identity thieves who filed fraudulent tax returns for 2011, Treasury Department investigators said Thursday. They estimate another $21 billion could make its way to ID thieves' pockets over the next five years.

The IRS is detecting far fewer fraudulent tax refund claims than actually occur, according to a government audit that warned the widespread problem could undermine public trust in the U.S. tax system. Although the IRS detected about 940,000 fraudulent returns for last year claiming $6.5 billion in refunds, there were potentially another 1.5 million undetected cases of thieves seeking refunds after assuming the identity of a dead person, child or someone else who normally wouldn't file a tax return.

In one example, investigators found a single address in Lansing, Mich., that was used to file 2,137 separate tax returns. The IRS issued more than $3.3 million in refunds to that address. Three addresses in Florida, the epicenter of the identity theft crisis, filed more than 500 returns totaling more than $1 million in refunds each address.

In hundreds of troubling scenario, hundreds of refunds were deposited in the same bank account — a red flag for investigators searching for ID thieves who may be filing for refunds for multiple people.

through a sample of the 1.5 million undetected cases to Bill Nelson, whose home state contains the top two cities see why the IRS never flagged them as fraudulent. In 49 of where fraudulent tax returns 60 returns, investigators said, originate, Tampa and Miami. the return didn't score high Last week Nelson, a Demoenough on the IRS's fraud fil- crat, joined with Republican ter to merit a closer review. In Sen. Tom Coburn of Oklaeight of the 11 cases where the homa to introduce legislation IRS did perform an additional designed to curb identity theft review, it never verified the in the tax system. income and withholding on "It's an ongoing problem," the return. Nelson said in a statement. The audit was prompted by "We've got to find a fix."

Nelson's bill would improve protections for Social Security numbers that thieves need to file returns and would expand an existing program that gives previous victims of ID theft a personal identification number to deter repeat offenses against the same taxpayer. Another bipartisan bill passed by the House on Wednesday would bolster prosecutions and strengthen criminal penalties on ID thieves.

The IRS said it is already putting a number of new measures in place, including new ID theft screening filters that found that the IRS wasn't providing good customer service and proper assistance to victims of ID theft, increasing the burden for those whose identities are stolen. The Federal Trade Commission has listed identity theft as the No. 1 consumer complaint for the past 12 years.

to identify thieves, the recovery process can be less than smooth. A separate report by the inspector general in May will hold on to refunds until the IRS can verify a taxpayer's identity. That filter had potentially fraudulent refunds thwarted about $1.3 billion in April, the audit said.



Fri. Aug. 3 - Sun, Aug. 5
in all Macy's
Oklahoma stores

YOU DESERVE A TAX

BREAK!

EXHIBIT 7-1

In another troubling scenario, hundreds of refunds were deposited into the same bank account — a red flag for investigators searching for ID thieves who may be filing for refunds for multiple people. In one instance, the IRS deposited 590 refunds totaling more than $900,000 into one account.

"We found multiple reasons for the IRS's inability to detect billions of dollars in fraud," J. Russell George, the Treasury Department's inspector general for tax administration, in a statement. "At a time when every dollar counts, these results are extremely troubling."

Topping the list of concerns is the IRS's lack of timely access to third-party information it needs to verify returns and root out fraud.

Many Americans are struggling to pay their bills and the IRS takes pride in processing returns and issuing refunds promptly. But taxpayers can start filing their returns in mid-January, while employers and financial institutions don't have to submit withholding and income documents for taxpayers to the IRS until the end of March. That means the IRS often issues refunds long before it can confirm the veracity of what's listed on taxpayer returns.

Thieves are also exploiting vulnerabilities in the way the IRS delivers refunds, investigators found of the 1.5 million undetected cases of potential fraud, 2 million used direct deposits, including pre-loaded debit cards. Thieves often prefer those methods to a paper check, which require a physical address to receive the check and photo ID matching the taxpayer's name to

IRS officials said the growth of identity theft-related fraud is one of its biggest challenges. Already this year, the agency has stopped some $12 billion in claimed fraud, it says. And it says its criminal investigators are actively pursuing those who perpetrate fraud — including the previously undetected cases identified by

FREE SHIPPING AT MACYS.COM with $99 online purchase

You won't pay sales tax on all clothing and footwear purchases under $100 subject to statement merchandise limitations

Plus, take an EXTRA 15% OR 10% OFF with your Macy's card or pass!
tax exclusions apply, see pass

★macy's WOW! PASS

EXTRA SAVINGS ON ALL SALE & CLEARANCE APPAREL!
(EXCEPT SPECIALS & SUPER BUYS)

EXTRA 15% OFF
SELECT SALE & CLEARANCE APPAREL FOR HIM, HER & KIDS
PLUS, SELECT HOME ITEMS

EXTRA 10% OFF ALL SALE & CLEARANCE
FINE & FASHION JEWELRY, WATCHES, HANDBAGS,
SHOES, COATS, SUITS, DRESSES, INTIMATES,
SUIT SEPARATES & SPORTCOATS FOR HIM

Excludes: Everyday Values (EDV), specials, super buys, furniture, mattresses, floor coverings, rugs, electrics/electronics, cosmetics/fragrances, gift cards, jewelry trunk shows, previous purchases, special orders, selected licensed depts., special purchases, services, macys.com. Cannot be combined with any savings pass/coupon, extra discount or credit offer except opening a new Macy's account.
EXTRA SAVINGS % APPLIED TO REDUCED PRICES.

VALID 8/3-8/5/2012

EXHIBIT 7-2

... a paper check, which require a physical address to receive the check and photo ID matching the taxpayer's name to cash it.

IRS officials said the growth of identity theft-related fraud is one of its biggest challenges. Already this year, the agency has stopped almost $12 billion in confirmed fraud, it says. And it says its criminal investigators are actively pursuing those who perpetrate fraud — including the previously undetected cases identified by the audit.

"If the IRS determines a refund has been issued improperly, we will attempt to recoup the funds," said IRS spokeswoman Michelle Eldridge.

The IRS agreed with the inspector general that Congress should expand the agency's access to resources that could help it fight theft.

But IRS officials disputed the notion that $21 billion in fraudulent returns could be issued over the next five years, arguing that the estimate didn't take into account the IRS's stepped-up compliance and prevention efforts.

"We're going to continue to monitor the IRS in this area until we see some improvement," Michael McKenney, the acting deputy inspector general for audit, told The Associated Press.

Investigators went back

**FREE SHIPPING AT MACYS.COM** with $99 online purchase

No promo code needed; exclusions apply.

the magic of macy's

macys.com

m a c y ' s

BLOG

OPEN A MACY'S ACCOUNT FOR EXTRA 15% SAVINGS THE FIRST 2 DAYS, UP TO $100, WITH MORE REWARDS TO COME. Macy's credit card is available subject to credit approval; new account savings valid the day your account is opened and the next day; excludes services, selected licensed departments, gift cards, restaurants, gourmet food & wine. The new account savings are limited to a total of $100; application must qualify for immediate approval to receive extra savings; employees not eligible.

Excludes: Everyday Values (EDV), specials, super buys, furniture, mattresses, floor coverings, rugs, electrics/electronics, cosmetics/fragrances, gift cards, jewelry trunk shows, previous purchases, special orders, selected licensed depts., special purchases, services, macys.com. Cannot be combined with any savings pass/ coupon, extra discount or credit offer except opening a new Macy's account. EXTRA SAVINGS % APPLIED TO REDUCED PRICES.

D0002180310031818171111
VALID 8/3-8/5/2012

EXHIBIT 7-3

# Senate OKs U.S. attorney nominee

**BY DAVID HARPER**
World Staff Writer



**APPROVED**

**Danny Williams:** The Tulsa lawyer is the new U.S. attorney for the Northern District.

The U.S. Senate on Thursday night confirmed the nomination of Danny Williams as the new U.S. attorney for the Tulsa-based Northern District of Oklahoma.

Williams, a partner in the law firm of Charney, Buss & Williams, now specializes in condemnation proceedings but has prosecutorial experience as a former assistant district attorney.

A native of Mississippi, he is a graduate of Dillard University and the University of Tulsa law school.

Scott Woodward has been serving in the role of top federal prosecutor in the district since former U.S. Attorney David O'Meilia left office more than three years ago.

The Tulsa-based position has been the last U.S. attorney position still in limbo after the turnover in federal administrations that followed the 2008 presidential election.

The Obama administration and Oklahoma's two Republican senators had been unable to agree on a nominee until Williams' name was put forward in March.

SEE **SENATE** A15

EXHIBIT 8

Case 4:09-cr-00043-SPF Document 474 Filed in USDC ND/OK on 03/11/13 Page 116 of 148

# Ex-nonprofit leader guilty of fraud

■ The former HOW Foundation director stole more than $1 million over 8 years.

**BY DAVID HARPER**
World Staff Writer

A former leader of a Broken Arrow nonprofit organization pleaded guilty Thursday to defrauding the agency of more than $1 million through wire fraud over a nearly eight-year period.

Wesley Scott McGinness, former executive director of the HOW Foundation, which helps men recover from drug and alcohol addiction, admitted in his plea agreement that he "gambled heavily at casinos in the Tulsa area" by using his credit cards and then illegally wrote HOW checks to pay for his gambling habit.

McGinness, who is free on bond, said as he left the courtroom Thursday that he is "very remorseful" about his criminal conduct.

"It was inexcusable," he said.

**PLEA**

**Wesley Scott McGinness:** He admitted to using the funds to pay his gambling debts.

McGinness stated in his petition to plead guilty that he was in treatment for alcohol addiction at the HOW Foundation for 20 years.

The U.S. Attorney's Office in Tulsa accused McGinness on June 12 of using checks drawn on the foundation's bank accounts to pay personal credit card debts from Jan. 13, 2003, until Dec. 14, 2010.

McGinness, 65, stated in his plea agreement that he would manipulate the books and records of the organization "by making false entries which inflated legitimate expenses, thereby fraudulently accounting for the funds" he spent to pay his credit card bills.

He acknowledged in his plea agreement that the total amount of the 213 unauthorized checks was $1,359,714.89.

He also admitted that from 2005 through 2010 he embezzled about $720 per week from the cash receipts of the HOW Foundation's thrift store, for an additional approximate total of $224,000 he illegally took from the organization.

McGinness also pleaded guilty Thursday to a charge of filing a false 2008 federal income tax return but agreed that he actually owes the Internal Revenue Service a total of $366,564.82 for the tax years 2006 through 2010, when he did not report on his federal taxes the money he took from a foundation account to pay his credit card bills.

HOW Foundation attorney Paul DeMuro issued a statement in June, saying: "The HOW Foundation's primary mission is, has been, and always will be to help men recover from the disease of drug and alcohol addiction. Our commitment to this mis-

sion has only been strengthened by this sad episode.

"We have always been fully self-supporting, declining any public funds. We remain financially sound and will continue to serve our community as a self-supporting program of recovery."

The new executive director discovered the fraud, according to a civil suit filed Jan. 28, 2011, in Tulsa County District Court.

On May 3, Tulsa County District Judge Rebecca Nightingale found that the foundation was entitled to more than $1.3 million judgment in the civil case.

U.S. District Judge Claire Eagan will be able to consider anything she deems relevant to McGinness in the criminal case on Nov. 8.

He will face from three to five years in prison under sentencing guidelines, Assistant U.S. Attorney Kevin Leitch estimated.

**David Harper** 918-581-8359
david.harper@tulsaworld.com

EXHIBIT 9-1

**TULSA WORLD**

# Ex-HOW Foundation exec gets prison in fraud case

■ **He must pay more than $1.5 million in restitution.**

**BY DAVID HARPER**
World Staff Writer



**FRAUD**

**Wesley Scott McGinness:** He pleaded guilty in August to "gambling heavily at casinos in the Tulsa area," using his credit cards and then writing checks on HOW's account to pay for his gambling debt. He was sentenced to one year and three months for defrauding the agency and was ordered to pay more than $1.5 million in restitution to the agency.

A former Broken Arrow nonprofit organization leader was sentenced Thursday to one year and three months in prison for defrauding the agency of more than $1.5 million over nearly eight years.

Wesley Scott McGinness, 65, was also ordered by U.S. District Judge Claire Eagan to pay $1,584,114.89 in restitution to the HOW Foundation, which he used to serve as executive director.

McGinness had pleaded guilty Aug. 2. He admitted in his plea agreement that he "gambled heavily at casinos in the Tulsa area," using his credit cards, and then wrote checks on HOW's account to pay for his gambling habit.

McGinness, who must begin his prison sentence by Jan. 8, said during Thursday's sentencing hearing that "my actions were inexcusable, your honor."

He stated in his petition to plead guilty that for 20 years he was in treatment for alcohol addiction at the HOW Foundation, which helps men recover from drug- and alcohol-abuse problems.

Assistant U.S. Attorney Kevin Leitch wrote in a recent court document, "Alcohol and gambling have been the double-barreled bane of McGinness' life."

The U.S. Attorney's Office in Tulsa charged McGinness with fraud on June 12, accusing him of using checks drawn on the foundation's bank accounts to pay personal credit card debts from Jan. 13, 2003, until Dec. 14, 2010.

In his guilty plea, McGinness admitted manipulating the organization's books and records "by making false entries which inflated legitimate expenses, thereby fraudulently accounting for the funds."

The HOW Foundation filed a civil suit to recover the money, and a Tulsa County district judge found that the foundation was entitled to a judgment of more than $1.3 million. The group then obtained a temporary injunction preventing McGinness from transferring his assets except to pay for living, medical and legal expenses.

McGinness had also pleaded guilty in August to a charge of filing a false 2008 federal income tax return, agreeing that he owes $366,564.82 to the Internal Revenue Service for the tax years 2006 through 2010, when he did not report on his federal taxes the money he stole from the foundation.

Eagan also ordered McGinness on Thursday to pay that amount to the IRS.

Under federal sentencing guidelines, McGinness could have faced from 41 to 51 months in prison. However, his attorney, Mark Lyons, pointed out in an Oct. 31 filing that McGinness is in "exceedingly poor health" due to chronic obstructive pulmonary disorder and has a life expectancy of five years or less.

Eagan lessened McGinness' punishment range to 15 to 21 months but said she could not go lower than that due to the "egregious nature" of the crime.

**David Harper 918-581-8359**
david.harper@tulsaworld.com

EXHIBIT 9-2

TULSA WORLD

A look at some key national and foreign developments

# IRS not enforcing church rules

- Tax code prohibits partisan advocacy by religious groups.

BY RACHEL ZOLL
Associated Press

New York

For the past three years, the Internal Revenue Service hasn't been investigating complaints of partisan political activity by churches, leaving religious groups who make direct or thinly veiled endorsements of political candidates unchallenged.

The IRS monitors religious and other nonprofits on issues such as salaries, and that oversight continues.

However, Russell Renwicks, a manager in the IRS Mid-Atlantic region, recently said the agency had suspended audits of churches suspected of breaching federal restrictions on political activity. A 2009 federal court ruling required the IRS to clarify which high-ranking official could authorize audits over the tax code's political rules. The IRS has yet to do so.

Dean Patterson, an IRS spokesman in Washington, said Renwicks, who examines large tax-exempt groups, "misspoke." Patterson would not provide any specifics.

However, attorneys who specialize in tax law for re-

ligious groups, as well as advocacy groups who monitor the cases, say they know of no IRS inquiries in the past three years into claims of partisanship by houses of worship. IRS church audits are confidential but usually become public as the targeted religious groups fight to maintain their nonprofit status.

The tax code allows a wide range of political activity by houses of worship, including speaking out on social issues and organizing congregants to vote. But churches cannot endorse a candidate or engage in partisan advocacy. The presidential election has seen a series of statements by clergy that critics say amount

to political endorsements. Religious leaders say they are speaking about public policies, not candidates, and have every right to do so.

The Billy Graham Evangelistic Association has taken out full-page newspaper ads urging Americans to vote along biblical principles. Graham met with Mitt Romney and pledged to do "all I can" to help the Republican.

In a survey last week by the Pew Forum on Religion and Public Life, 40 percent of black Protestants who attend services regularly said their clergy have discussed a specific candidate in church — and the candidate was President Barack Obama.

EXHIBIT 10

estoppel argument does not, however, apply to a legal matter such as whether there is legal authority to collect taxes.
See, e.g., McKay v. Commissioner, 102 T.C. 465 (1994) rev'd as to other issues, 84 F.3d 433 (5th Cir. 1996).

Relevant Case Law:

United States v. Schiff, 379 F.3d 621 (9th Cir. 2004), cert. denied, 546 U.S. 812 (2005); see also
http://www.usdoj.gov/tax/txdv04551.htm. – the court affirmed a federal district court's preliminary injunction barring
Irwin Schiff, Cynthia Neun, and Lawrence N. Cohen from selling a tax scheme that fraudulently claimed that payment
of federal income tax is voluntary. In subsequent criminal trials, these three individuals were convicted of violating
several criminal laws relating to their scheme. See 2005 TNT 206-18. Schiff received a sentence of more than 12
years in prison and was ordered to pay more than $4.2 million in restitution to the IRS; Neun received a sentence of
nearly 6 years and was ordered to pay $1.1 million in restitution to the IRS; and Cohen received a sentence of nearly 3
years and was ordered to pay $480,000 in restitution to the IRS. See
http://www.usdoj.gov/opa/pr/2006/February/06_tax_098.html.

Adams v. Commissioner, 170 F.3d 173, 181-82 (3d Cir. 1999), cert. denied, 528 U.S. 1117 (2000) – the court affirmed
the imposition of penalties for failure to file tax returns and pay tax, as Adams' religious beliefs—payment of taxes to
fund the military is against the will of God—did not constitute reasonable cause for failing to pay taxes.

United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993), cert. denied, 510 U.S. 1193 (1994) – the court stated
that the "taxpayers'] claim that payment of federal income tax is voluntary clearly lacks substance" and imposed
sanctions in the amount of $1,500 "for bringing this frivolous appeal based on discredited, tax-protester arguments."

Wilcox v. Commissioner, 848 F.2d 1007, 1008 (9th Cir. 1988) – the court rejected Wilcox's argument that payment of
taxes is voluntary for American citizens and imposed a $1,500 penalty against Wilcox for raising frivolous claims.

http://www.irs.gov/taxpros/article/0,,id=159932,00.html

EXHIBIT 11

Case 4:09-cr-00043-SPF Document 474 Filed in USDC ND/OK on 03/11/13 Page 120 of 148

Case 4:08-cv-00278-TCK-PJC Document 89-2 Filed in USDC ND/OK on 01/26/2009 Page 1 of 7.

# United States  Of America

### Department of the Treasury
### Internal Revenue Service

Date: **SEP 22 2008**

## CERTIFICATE OF OFFICIAL RECORD

I certify that the annexed: transcript of the taxpayer named therein in respect to the taxes specified, is a true and complete transcript for the period stated, of all assessments, penalties, interest, abatements, credits, refunds, and advance or unidentified payments relating thereto as disclosed by the records of this office as of the date of this certification consisting of 6 pages

under the custody of this office.

IN WITNESS WHEREOF, I have hereunto set my hand, and caused the seal of this office to be affixed, on the day and year first above written.

By direction of the Secretary of the Treasury:

Kathleen Bushnell,
Field Director,
Submission Processing (Austin)

Form **2866** (Rev. 09-1997)

EXHIBIT 12-1

023

---

### CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

---

LINDSEY K SPRINGER                    EIN/SSN: ▓▓▓▓-3758


TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC  1990

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|-----------------------------|-------------------------------------|-----------------------------|----------------------------------|
| 02-16-1996 | SUBSTITUTE FOR RETURN 18210-062-00849-6 | | 0.00 | 04-01-1996 |
| | ADDITIONAL TAX ASSESSED BY EXAMINATION EXAM/COLLECTIONS 90 DAY LETTER UNAGREED, CLOSED TO APPEALS 18247-754-10058-6  19965208 | | 0.00 | 01-06-1997 |
| 01-06-1997 | LEGAL SUIT PENDING | | | |
| 03-18-1997 | ASSESSMENT STATUTE EXPIR DATE EXTEND TO 07-10-1997 | | | |
| | QUICK ASSESSMENT 73251-149-13500-7      08 | | 7,679.00 | 05-29-1997 |
| | LATE FILING PENALTY 19972508 | | 1,920.00 | 05-29-1997 |
| | ESTIMATED TAX PENALTY 19972508 | | 507.00 | 05-29-1997 |
| | INTEREST ASSESSED 19972508 | | 6,473.58 | 05-29-1997 |
| | QUICK ASSESSMENT 73251-190-13000-7      08 | | 0.00 | 07-09-1997 |

FORM 4340  (REV. 01-2002)                  PAGE   1

EXHIBIT 12-2

1

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
--------------------------------------------------------------------------------

LINDSEY K SPRINGER                    EIN/SSN: ████████3758


TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040      TAX PERIOD: DEC 1990

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|---------------------------------|
|  | QUICK ASSESSMENT 73251-190-13000-7      08 |  | 2,000.00 | 07-09-1997 |
| 01-04-1999 | LEGAL/BANKRUPTCY SUIT NO LONGER PENDING |  |  |  |
|  | ADDITIONAL TAX ASSESSED BY EXAMINATION AUDIT REVIEW 18247-404-79006-9   19990708 |  | 0.00 | 03-01-1999 |
| 03-01-1999 | RENUMBERED RETURN 18247-404-79006-9 |  |  |  |
| 04-30-1999 | FEDERAL TAX LIEN |  |  |  |
| 05-24-1999 | FEES AND COLLECTION COSTS |  | 16.00 |  |
| 11-24-2003 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM |  |  |  |
| 12-15-2003 | MODULE REVERSED OUT OF FEDERAL PAYMENT LEVY PROGRAM |  |  |  |
| 03-22-2004 | MODULE BLOCKED OR RELEASED FROM FEDERAL PAYMENT LEVY PROGRAM |  |  |  |

FORM 4340  (REV. 01-2002)                    PAGE    2


EXHIBIT 12-3

### CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS

----------------------------------------------------------------------

LINDSEY K SPRINGER                    EIN/SSN: ▓▓▓▓▓-3758

TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040        TAX PERIOD: DEC  1990

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|-----------------------------|----------------------------------|
| 02-28-2004 | REVERSAL OF MODULE BLOCKED FROM FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-22-2004 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 03-02-2005 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | | | |
| 03-02-2005 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE LEVY NOTICE ISSUED | | | |
| 03-25-2005 | COLLECTIONS WORKING CASE | | | |
| 03-28-2005 | LEGAL SUIT PENDING | | | |
| 04-18-2005 | MODULE REVERSED OUT OF FEDERAL PAYMENT LEVY PROGRAM | | | |
| 10-11-2005 | SUBSEQUENT PAYMENT | | 75.00 | |
| 10-28-2005 | FEDERAL TAX LIEN | | | |

FORM 4340  (REV. 01-2002)              PAGE    3

EXHIBIT 12-4

### CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
--------------------------------------------------------------------------

LINDSEY K SPRINGER                    EIN/SSN: ⬛⬛⬛⬛⬛3758


TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040        TAX PERIOD: DEC  1990

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|------------|------------|------------|
| 11-21-2005 | FEES AND COLLECTION COSTS | | 30.00 | |
| 09-15-2005 | COLL DUE PROC HRNG RSLVD BY APPEALS-DETRMINATN LTR ISSUED, TXPYR WAIVD JUDCL REVW OR WTHDRW HRNG RQST | | | |
| 09-15-2005 | LEGAL SUIT NO LONGER PENDING | | | |
| 12-26-2005 | MODULE IN FEDERAL PAYMENT LEVY PROGRAM | | | |
| 02-13-2006 | MODULE REVERSED OUT OF FEDERAL PAYMENT LEVY PROGRAM | | | |
| 09-15-2006 | LEGAL SUIT PENDING | | | |
| 04-20-2007 | FEDERAL TAX LIEN | | | |
| 05-14-2007 | FEES AND COLLECTION COSTS | | 30.00 | |
| 09-15-2006 | LEGAL SUIT PENDING | | | |
| 06-15-2007 | FEDERAL TAX LIEN | | | |
| 07-09-2007 | FEES AND COLLECTION COSTS | | 90.00 | |

FORM 4340  (REV. 01-2002)              PAGE   4

EXHIBIT 12-5

### CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
--------------------------------------------------------------------

LINDSEY K SPRINGER                    EIN/SSN: ████████-3758


TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040     TAX PERIOD: DEC  1990

| DATE | EXPLANATION OF TRANSACTION | ASSESSMENT, OTHER DEBITS (REVERSAL) | PAYMENT, CREDIT (REVERSAL) | ASSESSMENT DATE (23C, RAC 006 ) |
|------|----------------------------|-------------------------------------|----------------------------|----------------------------------|
| 06-29-2007 | FEDERAL TAX LIEN | | | |
| 07-23-2007 | FEES AND COLLECTION COSTS | | 60.00 | |
| 08-31-2007 | FEDERAL TAX LIEN RELEASED | | | |
| 02-12-2008 | LEGAL SUIT NO LONGER PENDING | | | |
| 08-08-2008 | FEDERAL TAX LIEN | | | |
| 09-01-2008 | FEES AND COLLECTION COSTS | | 60.00 | |
| 05-29-1997 | Statutory Notice of Balance Due | | | |
| 07-21-1997 | Statutory Notice of Intent to Levy | | | |
| 07-09-1997 | Statutory Notice of Balance Due | | | |
| 03-15-1999 | Statutory Notice of Intent to Levy | | | |
| 12-01-2003 | Statutory Notice of Intent to Levy | | | |
| 08-18-2008 | Statutory Notice of Intent to Levy | | | |

FORM 4340  (REV. 01-2002)                    PAGE    5

EXHIBIT 12-6

CERTIFICATE OF ASSESSMENTS, PAYMENTS, AND OTHER SPECIFIED MATTERS
--------------------------------------------------------------------
LINDSEY K SPRINGER                    EIN/SSN: ████████-3758


TYPE OF TAX: U.S. INDIVIDUAL INCOME TAX RETURN
FORM: 1040     TAX PERIOD: DEC  1990
--------------------------------------------------------------------

BALANCE        18,790.58

--------------------------------------------------------------------
I CERTIFY THAT THE FOREGOING TRANSCRIPT OF THE TAXPAYER NAMED ABOVE IN RESPECT
TO THE TAXES SPECIFIED IS A TRUE AND COMPLETE TRANSCRIPT FOR THE PERIOD STATED,
AND ALL ASSESSMENTS, ABATEMENTS, CREDITS, REFUNDS, AND ADVANCE OR UNIDENTIFIED
PAYMENTS, AND THE ASSESSED BALANCE RELATING THERETO, AS DISCLOSED BY THE
RECORDS OF THIS OFFICE AS OF THE ACCOUNT STATUS DATE ARE SHOWN THEREIN.  I
FURTHER CERTIFY THAT THE OTHER SPECIFIED MATTERS SET FORTH IN THIS TRANSCRIPT
APPEAR IN THE OFFICIAL RECORDS OF THE INTERNAL REVENUE SERVICE.

--------------------------------------------------------------------
SIGNATURE OF CERTIFYING OFFICER: _Denise Bradley_

PRINT NAME:_____   Denise Bradley
                             Accounting Operations Manager
TITLE:_____   Submission Processing

DELEGATION ORDER:_____   Service Wide Delegation of Authority
                             Delegation Order 11-5

LOCATION: INTERNAL REVENUE SERVICE

        ACCOUNT STATUS DATE 09/16/2008

FORM 4340  (REV. 01-2002)              PAGE     6

EXHIBIT 12-7

029

Form **1040**   Department of the Treasury—Internal Revenue Service
**U.S. Individual Income Tax Return** **2000**   (99)   IRS Use Only—Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2000, or other tax year beginning _____, 2000, ending _____, 20 ____   OMB No. 1545-0074

**Label** (See instructions on page 19.) Use the IRS label. Otherwise, please print or type.

| Your first name and initial | Last name | Your social security number |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |

Home address (number and street). If you have a P.O. box, see page 19.   Apt. no.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 19.

▲ **Important!** ▲
You must enter your SSN(s) above.

**Presidential Election Campaign** (See page 19.)

Note. Checking "Yes" will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund? . . . . ►

You ☐ Yes ☐ No   Spouse ☐ Yes ☐ No

**Filing Status**

Check only one box.

1 ☐ Single
2 ☐ Married filing joint return (even if only one had income)
3 ☐ Married filing separate return. Enter spouse's social security no. above and full name here. ►
4 ☐ Head of household (with qualifying person). (See page 19.) If the qualifying person is a child but not your dependent, enter this child's name here. ►
5 ☐ Qualifying widow(er) with dependent child (year spouse died ► _____ ). (See page 19.)

**Exemptions**

6a ☐ Yourself. If your parent (or someone else) can claim you as a dependent on his or her tax return, do not check box 6a . . . . . . . . . . . . . . . . . .
b ☐ Spouse . . . . . . . . . . . . . . . . . . . . . . . . . . . .

No. of boxes checked on 6a and 6b _____

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 20) |
|---|---|---|---|
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

If more than six dependents, see page 20.

No. of your children on 6c who:
• lived with you _____
• did not live with you due to divorce or separation (see page 20) _____
Dependents on 6c not entered above _____

d Total number of exemptions claimed . . . . . . . . . . . . . . . . .

Add numbers entered on lines above ► _____

**Income**

Attach Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.

If you did not get a W-2, see page 21.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | |
|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 |
| 8a | Taxable interest. Attach Schedule B if required | 8a |
| b | Tax-exempt interest. Do not include on line 8a . . . | 8b | |
| 9 | Ordinary dividends. Attach Schedule B if required | 9 |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see page 22) . . | 10 |
| 11 | Alimony received . . . . . . . . . . . . . . . . . | 11 |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ► ☐ | 13 |
| 14 | Other gains or (losses). Attach Form 4797 . . . . . . . . . . | 14 |
| 15a | Total IRA distributions . 15a | b Taxable amount (see page 23) | 15b |
| 16a | Total pensions and annuities 16a | b Taxable amount (see page 23) | 16b |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 |
| 18 | Farm income or (loss). Attach Schedule F . . . . . . . . . . | 18 |
| 19 | Unemployment compensation . . . . . . . . . . . . . | 19 |
| 20a | Social security benefits . 20a | b Taxable amount (see page 25) | 20b |
| 21 | Other income. List type and amount (see page 25) | 21 |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your total income ► | 22 |

**Adjusted Gross Income**

| | | |
|---|---|---|
| 23 | IRA deduction (see page 27) . . . . . . | 23 | |
| 24 | Student loan interest deduction (see page 27) . . . . | 24 | |
| 25 | Medical savings account deduction. Attach Form 8853 . | 25 | |
| 26 | Moving expenses. Attach Form 3903 . . . . | 26 | |
| 27 | One-half of self-employment tax. Attach Schedule SE . | 27 | |
| 28 | Self-employed health insurance deduction (see page 29) | 28 | |
| 29 | Self-employed SEP, SIMPLE, and qualified plans . | 29 | |
| 30 | Penalty on early withdrawal of savings . . . . . | 30 | |
| 31a | Alimony paid  b Recipient's SSN ► | 31a | |
| 32 | Add lines 23 through 31a . . . . . . . . . . | 32 |
| 33 | Subtract line 32 from line 22. This is your adjusted gross income . . . . ► | 33 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 56.   Cat. No. 11320B   Form **1040** (2000)

EXHIBIT 13-1

Form 1040 (2000)                                                                                          Page **2**

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 34 | Amount from line 33 (adjusted gross income) . . . . . . . . . . . . | 34 | |
| | 35a | Check if: ☐ You were 65 or older, ☐ Blind; ☐ Spouse was 65 or older, ☐ Blind. Add the number of boxes checked above and enter the total here . . . . ▶ 35a | | |
| | b | If you are married filing separately and your spouse itemizes deductions, or you were a dual-status alien, see page 31 and check here . . . . . . . . ▶ 35b ☐ | | |

**Standard Deduction for Most People**

Single: $4,400

Head of household: $6,450

Married filing jointly or Qualifying widow(er): $7,350

Married filing separately: $3,675

| | | | |
|---|---|---|---|
| 36 | Enter your itemized deductions from Schedule A, line 28, or standard deduction shown on the left. But see page 31 to find your standard deduction if you checked any box on line 35a or 35b or if someone can claim you as a dependent . . . . . . . . . | 36 | |
| 37 | Subtract line 36 from line 34 . . . . . . . . . . . . . . . . . | 37 | |
| 38 | If line 34 is $96,700 or less, multiply $2,800 by the total number of exemptions claimed on line 6d. If line 34 is over $96,700, see the worksheet on page 32 for the amount to enter . | 38 | |
| 39 | **Taxable income.** Subtract line 38 from line 37. If line 38 is more than line 37, enter -0- | 39 | |
| 40 | **Tax** (see page 32). Check if any tax is from a ☐ Form(s) 8814   b ☐ Form 4972 | 40 | |
| 41 | Alternative minimum tax. Attach Form 6251 . . . . . . . . . . . . | 41 | |
| 42 | Add lines 40 and 41 . . . . . . . . . . . . . . . . . . ▶ | 42 | |

| | | | | |
|---|---|---|---|---|
| 43 | Foreign tax credit. Attach Form 1116 if required . . | 43 | | |
| 44 | Credit for child and dependent care expenses. Attach Form 2441 | 44 | | |
| 45 | Credit for the elderly or the disabled. Attach Schedule R . . | 45 | | |
| 46 | Education credits. Attach Form 8863 . . . . . | 46 | | |
| 47 | Child tax credit (see page 36) . . . . . . | 47 | | |
| 48 | Adoption credit. Attach Form 8839 . . . . . | 48 | | |
| 49 | Other. Check if from a ☐ Form 3800   b ☐ Form 8396   c ☐ Form 8801   d ☐ Form (specify) _____ | 49 | | |

| | | | |
|---|---|---|---|
| 50 | Add lines 43 through 49. These are your total credits . . . . . . . | 50 | |
| 51 | Subtract line 50 from line 42. If line 50 is more than line 42, enter -0- . . . . . ▶ | 51 | |

| | | | |
|---|---|---|---|
| **Other Taxes** | 52 | Self-employment tax. Attach Schedule SE . . . . . . . . . . . | 52 |
| | 53 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 53 |
| | 54 | Tax on IRAs, other retirement plans, and MSAs. Attach Form 5329 if required . . . . | 54 |
| | 55 | Advance earned income credit payments from Form(s) W-2 . . . . . . . . . | 55 |
| | 56 | Household employment taxes. Attach Schedule H . . . . . . . . . . | 56 |
| | 57 | Add lines 51 through 56. This is your **total tax** . . . . . . . . . ▶ | 57 |

**Payments**

If you have a qualifying child, attach Schedule EIC.

| | | | | |
|---|---|---|---|---|
| 58 | Federal income tax withheld from Forms W-2 and 1099 . . | 58 | | |
| 59 | 2000 estimated tax payments and amount applied from 1999 return | 59 | | |
| 60a | **Earned income credit (EIC)** . . . . . . . | 60a | | |
| b | Nontaxable earned income: amount . . ▶ [____] and type ▶ .................... | | | |
| 61 | Excess social security and RRTA tax withheld (see page 50) | 61 | | |
| 62 | Additional child tax credit. Attach Form 8812 . . . . | 62 | | |
| 63 | Amount paid with request for extension to file (see page 50) | 63 | | |
| 64 | Other payments. Check if from  a ☐ Form 2439  b ☐ Form 4136 | 64 | | |

| | | | |
|---|---|---|---|
| 65 | Add lines 58, 59, 60a, and 61 through 64. These are your **total payments** . . . . ▶ | 65 | |

**Refund**

Have it directly deposited! See page 50 and fill in 67b, 67c, and 67d.

| | | | |
|---|---|---|---|
| 66 | If line 65 is more than line 57, subtract line 57 from line 65. This is the amount you **overpaid** | 66 | |
| 67a | Amount of line 66 you want **refunded to you** . . . . . . . . . . . ▶ | 67a | |
| b | Routing number [_____]   ▶ c Type: ☐ Checking  ☐ Savings | | |
| d | Account number [_____] | | |
| 68 | Amount of line 66 you want applied to your 2001 estimated tax  ▶ | 68 | |

**Amount You Owe**

| | | | |
|---|---|---|---|
| 69 | If line 57 is more than line 65, subtract line 65 from line 57. This is the **amount you owe.** For details on how to pay, see page 51 . . . . . . . . . . . . . ▶ | 69 | |
| 70 | Estimated tax penalty. Also include on line 69 . . ▶ | 70 | |

**Sign Here**

Joint return? See page 19.

Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation | Daytime phone number |
|---|---|---|---|
| | | | |
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | May the IRS discuss this return with the preparer shown below (see page 52)? ☐ Yes  ☐ No |

**Paid Preparer's Use Only**

| Preparer's signature ▶ | | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code ▶ | | | EIN | |
| | | | Phone no. ( ) | |

EXHIBIT 13-2

Form **1040** (2000)

Form **1040**

Department of the Treasury—Internal Revenue Service

**U.S. Individual Income Tax Return** **2001**   (09)   IRS Use Only—Do not write or staple in this space

| For the year Jan. 1–Dec. 31, 2001, or other tax year beginning | , 2001, ending | 20 | OMB No. 1545-0074 |

## Label

(See instructions on page 19.)

Use the IRS label. Otherwise, please print or type.

L A B E L   H E R E

Your first name and initial | Last name | Your social security number

If a joint return, spouse's first name and initial | Last name | Spouse's social security number

Home address (number and street). If you have a P.O. box, see page 19. | Apt. no.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 19.

▲ **Important!** ▲

You must enter your SSN(s) above.

**Presidential Election Campaign**
(See page 19.)

Note: Checking "Yes" will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund? ▶

You: ☐ Yes ☐ No   Spouse: ☐ Yes ☐ No

## Filing Status

Check only one box.

1 ☐ Single
2 ☐ Married filing joint return (even if only one had income)
3 ☐ Married filing separate return. Enter spouse's social security no. above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See page 19.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (year spouse died ▶   ). (See page 19.)

## Exemptions

6a ☐ Yourself. If your parent (or someone else) can claim you as a dependent on his or her tax return, **do not** check box 6a

b ☐ Spouse

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 20) |
|---|---|---|---|
|  |  |  | ☐ |
|  |  |  | ☐ |
|  |  |  | ☐ |
|  |  |  | ☐ |
|  |  |  | ☐ |
|  |  |  | ☐ |

If more than six dependents, see page 20.

No. of boxes checked on 6a and 6b

No. of your children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see page 20)

Dependents on 6c not entered above

Add numbers entered on lines above ▶

d Total number of exemptions claimed

## Income

Attach Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.

If you did not get a W-2, see page 21.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 | |
| 8a | Taxable interest. Attach Schedule B if required | 8a | |
| b | Tax-exempt interest. **Do not** include on line 8a | 8b | |
| 9 | Ordinary dividends. Attach Schedule B if required | 9 | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see page 22) | 10 | |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | Total IRA distributions   15a   b Taxable amount (see page 23) | 15b | |
| 16a | Total pensions and annuities   16a   b Taxable amount (see page 23) | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | |
| 18 | Farm income or (loss). Attach Schedule F | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits   20a   b Taxable amount (see page 25) | 20b | |
| 21 | Other income. List type and amount (see page 27) | 21 | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | 22 | |

## Adjusted Gross Income

| 23 | IRA deduction (see page 27) | 23 | |
| 24 | Student loan interest deduction (see page 28) | 24 | |
| 25 | Archer MSA deduction. Attach Form 8853 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | One-half of self-employment tax. Attach Schedule SE | 27 | |
| 28 | Self-employed health insurance deduction (see page 30) | 28 | |
| 29 | Self-employed SEP, SIMPLE, and qualified plans | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid   b Recipient's SSN ▶ | 31a | |
| 32 | Add lines 23 through 31a | 32 | |
| 33 | Subtract line 32 from line 22. This is your **adjusted gross income** ▶ | 33 | |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 72.   Cat. No. 11320B   Form **1040** (2001)

EXHIBIT 13-3

Form 1040 (2001)                                                                                                    Page **2**

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 34 | Amount from line 33 (adjusted gross income) . . . . . . . . . . | 34 | |
| Standard Deduction for— | 35a | Check if: ☐ You were 65 or older,  ☐ Blind; ☐ Spouse was 65 or older,  ☐ Blind. | | |
| • People who checked any box on line 35a or 35b or who can be claimed as a dependent, see page 31. | | Add the number of boxes checked above and enter the total here . . . ▶ 35a | | |
| | b | If you are married filing separately and your spouse itemizes deductions, or you were a dual-status alien, see page 31 and check here . . . . . . . ▶ 35b ☐ | | |
| | 36 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) . | 36 | |
| | 37 | Subtract line 36 from line 34 . . . . . . . . . . . . . . . | 37 | |
| | 38 | If line 34 is $99,725 or less, multiply $2,900 by the total number of exemptions claimed on line 6d. If line 34 is over $99,725, see the worksheet on page 32 . . . . . | 38 | |
| • All others: | 39 | **Taxable income.** Subtract line 38 from line 37. If line 38 is more than line 37, enter -0- . | 39 | |
| Single, $4,550 | 40 | Tax (see page 33). Check if any tax is from  a ☐ Form(s) 8814   b ☐ Form 4972 . . . | 40 | |
| Head of household, $6,650 | 41 | Alternative minimum tax (see page 34). Attach Form 6251 . . . . . . . . | 41 | |
| Married filing jointly or Qualifying widow(er), $7,600 | 42 | Add lines 40 and 41 . . . . . . . . . . . . . . . . ▶ | 42 | |
| | 43 | Foreign tax credit. Attach Form 1116 if required . . . | 43 | |
| | 44 | Credit for child and dependent care expenses. Attach Form 2441 | 44 | |
| | 45 | Credit for the elderly or the disabled. Attach Schedule R . . | 45 | |
| Married filing separately, $3,800 | 46 | Education credits. Attach Form 8863 . . . . . . . | 46 | |
| | 47 | Rate reduction credit. See the worksheet on page 36 . . . | 47 | |
| | 48 | Child tax credit (see page 37) . . . . . . . . . | 48 | |
| | 49 | Adoption credit. Attach Form 8839 . . . . . . . | 49 | |
| | 50 | Other credits from:  a ☐ Form 3800   b ☐ Form 8396   c ☐ Form 8801   d ☐ Form (specify) _____ | 50 | |
| | 51 | Add lines 43 through 50. These are your **total credits** . . . . . . . | 51 | |
| | 52 | Subtract line 51 from line 42. If line 51 is more than line 42, enter -0- . . . . ▶ | 52 | |
| **Other Taxes** | 53 | Self-employment tax. Attach Schedule SE . . . . . . . . . . | 53 | |
| | 54 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 . . | 54 | |
| | 55 | Tax on qualified plans, including IRAs, and other tax-favored accounts. Attach Form 5329 if required . . | 55 | |
| | 56 | Advance earned income credit payments from Form(s) W-2 . . . . . . . | 56 | |
| | 57 | Household employment taxes. Attach Schedule H . . . . . . . . | 57 | |
| | 58 | Add lines 52 through 57. This is your **total tax** . . . . . . . . . ▶ | 58 | |
| **Payments** | 59 | Federal income tax withheld from Forms W-2 and 1099 . . | 59 | |
| | 60 | 2001 estimated tax payments and amount applied from 2000 return | 60 | |
| If you have a qualifying child, attach Schedule EIC. | 61a | Earned income credit (EIC) . . . . . . . . . . | 61a | |
| | b | Nontaxable earned income . . . | 61b | | | |
| | 62 | Excess social security and RRTA tax withheld (see page 51) | 62 | |
| | 63 | Additional child tax credit. Attach Form 8812 . . . . | 63 | |
| | 64 | Amount paid with request for extension to file (see page 51) | 64 | |
| | 65 | Other payments. Check if from  a ☐ Form 2439  b ☐ Form 4136 | 65 | |
| | 66 | Add lines 59, 60, 61a, and 62 through 65. These are your **total payments** . . . . ▶ | 66 | |
| **Refund** | 67 | If line 66 is more than line 58, subtract line 58 from line 66. This is the amount you overpaid | 67 | |
| Direct deposit? See page 51 and fill in 68b, 68c, and 68d. | 68a | Amount of line 67 you want refunded to you . . . . . . . . . . ▶ | 68a | |
| | ▶ b | Routing number | | ▶ c Type: ☐ Checking ☐ Savings |
| | ▶ d | Account number | | |
| | 69 | Amount of line 67 you want applied to your 2002 estimated tax ▶ | 69 | |
| **Amount You Owe** | 70 | **Amount you owe.** Subtract line 66 from line 58. For details on how to pay, see page 52 ▶ | 70 | |
| | 71 | Estimated tax penalty. Also include on line 70 . . . . . | 71 | |

**Third Party Designee**
Do you want to allow another person to discuss this return with the IRS (see page 53)?  ☐ **Yes. Complete the following.**  ☐ **No**

| Designee's name ▶ | Phone no. ▶ ( ) | Personal identification number (PIN) ▶ | |
|---|---|---|---|

**Sign Here**
Joint return? See page 19.
Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation | Daytime phone number ( ) |
|---|---|---|---|
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | |

**Paid Preparer's Use Only**

| Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code ▶ | | EIN | |
| | | Phone no. ( ) | |

Form **1040** (2001)

EXHIBIT 13-4

Form **1040**

Department of the Treasury—Internal Revenue Service

**U.S. Individual Income Tax Return** 20**02** (99) IRS Use Only—Do not write or staple in this space.

For the year Jan 1-Dec. 31, 2002, or other tax year beginning , 2002, ending 20 OMB No. 1545-0074

**Label**

(See instructions on page 21.)

Use the IRS label. Otherwise, please print or type.

| | |
|---|---|
| Your first name and initial | Last name |
| If a joint return, spouse's first name and initial | Last name |
| Home address (number and street). If you have a P.O. box, see page 21. | Apt. no. |
| City, town or post office, state, and ZIP code. If you have a foreign address, see page 21. | |

Your social security number

Spouse's social security number

▲ **Important!** ▲

You must enter your SSN(s) above.

**Presidential Election Campaign** (See page 21.)

Note. Checking "Yes" will not change your tax or reduce your refund.

Do you, or your spouse if filing a joint return, want $3 to go to this fund? ▶

You: ☐ Yes ☐ No  Spouse: ☐ Yes ☐ No

**Filing Status**

Check only one box.

1 ☐ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See page 21.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (year spouse died ▶ ). (See page 21.)

**Exemptions**

6a ☐ Yourself. If your parent (or someone else) can claim you as a dependent on his or her tax return, do not check box 6a
b ☐ Spouse

c Dependents:

If more than five dependents, see page 22.

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 22) |
|---|---|---|---|
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

No. of boxes checked on 6a and 6b

No. of children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see page 22)

Dependents on 6c not entered above

Add numbers on lines above ▶

d Total number of exemptions claimed

**Income**

Attach Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.

If you did not get a W-2, see page 23.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | **7** | |
| 8a | Taxable interest. Attach Schedule B if required | **8a** | |
| b | Tax-exempt interest. Do not include on line 8a | **8b** | |
| 9 | Ordinary dividends. Attach Schedule B if required | **9** | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see page 24) | **10** | |
| 11 | Alimony received | **11** | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | **12** | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | **13** | |
| 14 | Other gains or (losses). Attach Form 4797 | **14** | |
| 15a | IRA distributions **15a** | b Taxable amount (see page 25) | **15b** | |
| 16a | Pensions and annuities **16a** | b Taxable amount (see page 25) | **16b** | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | **17** | |
| 18 | Farm income or (loss). Attach Schedule F | **18** | |
| 19 | Unemployment compensation | **19** | |
| 20a | Social security benefits **20a** | b Taxable amount (see page 27) | **20b** | |
| 21 | Other income. List type and amount (see page 29) | **21** | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | **22** | |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | Educator expenses (see page 29) | **23** | |
| 24 | IRA deduction (see page 29) | **24** | |
| 25 | Student loan interest deduction (see page 31) | **25** | |
| 26 | Tuition and fees deduction (see page 32) | **26** | |
| 27 | Archer MSA deduction. Attach Form 8853 | **27** | |
| 28 | Moving expenses. Attach Form 3903 | **28** | |
| 29 | One-half of self-employment tax. Attach Schedule SE | **29** | |
| 30 | Self-employed health insurance deduction (see page 33) | **30** | |
| 31 | Self-employed SEP, SIMPLE, and qualified plans | **31** | |
| 32 | Penalty on early withdrawal of savings | **32** | |
| 33a | Alimony paid b Recipient's SSN ▶ | **33a** | |
| 34 | Add lines 23 through 33a | **34** | |
| 35 | Subtract line 34 from line 22. This is your **adjusted gross income** ▶ | **35** | |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 76. Cat. No. 11320B Form **1040** (2002)

EXHIBIT 13-5

Form 1040 (2002)      Page **2**

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 36 | Amount from line 35 (adjusted gross income) . . . . . . . . . . | 36 | |
| **Standard Deduction for—** | 37a | Check if: ☐ You were 65 or older.   ☐ Blind; ☐ Spouse was 65 or older.   ☐ Blind. Add the number of boxes checked above and enter the total here . . . . ▶ 37a | | |
| • People who checked any box on line 37a or 37b or who can be claimed as a dependent, see page 34. | b | If you are married filing separately and your spouse itemizes deductions, or you were a dual-status alien, see page 34 and check here . . . . . . . ▶ 37b ☐ | | |
| | 38 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | 38 | |
| | 39 | Subtract line 38 from line 36 . . . . . . . . . . . . . . . . . | 39 | |
| • All others: | 40 | If line 36 is $103,000 or less, multiply $3,000 by the total number of exemptions claimed on line 6d. If line 36 is over $103,000, see the worksheet on page 35 . . . . . . . | 40 | |
| Single, $4,700 | 41 | Taxable income. Subtract line 40 from line 39. If line 40 is more than line 39, enter -0- | 41 | |
| Head of household, $6,900 | 42 | Tax (see page 36). Check if any tax is from: a ☐ Form(s) 8814   b ☐ Form 4972 | 42 | |
| Married filing jointly or Qualifying widow(er), $7,850 | 43 | Alternative minimum tax (see page 37). Attach Form 6251 . . . . . . . | 43 | |
| | 44 | Add lines 42 and 43 . . . . . . . . . . . . . . . . . ▶ | 44 | |
| Married filing separately, $3,925 | 45 | Foreign tax credit. Attach Form 1116 if required . . . | 45 | |
| | 46 | Credit for child and dependent care expenses. Attach Form 2441 | 46 | |
| | 47 | Credit for the elderly or the disabled. Attach Schedule R . | 47 | |
| | 48 | Education credits. Attach Form 8863 . . . . . . | 48 | |
| | 49 | Retirement savings contributions credit. Attach Form 8880 . | 49 | |
| | 50 | Child tax credit (see page 39) . . . . . . . . | 50 | |
| | 51 | Adoption credit. Attach Form 8839 . . . . . . | 51 | |
| | 52 | Credits from: a ☐ Form 8396   b ☐ Form 8859 . . | 52 | |
| | 53 | Other credits. Check applicable box(es): a ☐ Form 3800 b ☐ Form 8801   c ☐ Specify _____ | 53 | |
| | 54 | Add lines 45 through 53. These are your total credits . . . . . . . . | 54 | |
| | 55 | Subtract line 54 from line 44. If line 54 is more than line 44, enter -0- . . . . . ▶ | 55 | |
| **Other Taxes** | 56 | Self-employment tax. Attach Schedule SE . . . . . . . . . . . . | 56 | |
| | 57 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 57 | |
| | 58 | Tax on qualified plans, including IRAs, and other tax-favored accounts. Attach Form 5329 if required . | 58 | |
| | 59 | Advance earned income credit payments from Form(s) W-2 . . . . . . . | 59 | |
| | 60 | Household employment taxes. Attach Schedule H . . . . . . . . . | 60 | |
| | 61 | Add lines 55 through 60. This is your total tax . . . . . . . . . ▶ | 61 | |
| **Payments** | 62 | Federal income tax withheld from Forms W-2 and 1099 . . | 62 | |
| | 63 | 2002 estimated tax payments and amount applied from 2001 return . | 63 | |
| If you have a qualifying child, attach Schedule EIC. | 64 | Earned income credit (EIC) . . . . . . . . . | 64 | |
| | 65 | Excess social security and tier 1 RRTA tax withheld (see page 56) | 65 | |
| | 66 | Additional child tax credit. Attach Form 8812 . . . . . | 66 | |
| | 67 | Amount paid with request for extension to file (see page 56) | 67 | |
| | 68 | Other payments from: a ☐ Form 2439 b ☐ Form 4136 c ☐ Form 8885 . | 68 | |
| | 69 | Add lines 62 through 68. These are your total payments . . . . . . . ▶ | 69 | |
| **Refund** | 70 | If line 69 is more than line 61, subtract line 61 from line 69. This is the amount you overpaid | 70 | |
| Direct deposit? See page 56 and fill in 71b, 71c, and 71d. | 71a | Amount of line 70 you want refunded to you . . . . . . . . . . . ▶ | 71a | |
| ▶ b | Routing number | | | ▶ c Type: ☐ Checking  ☐ Savings |
| ▶ d | Account number | | | |
| | 72 | Amount of line 70 you want applied to your 2003 estimated tax ▶ | 72 | |
| **Amount You Owe** | 73 | Amount you owe. Subtract line 69 from line 61. For details on how to pay, see page 57 ▶ | 73 | |
| | 74 | Estimated tax penalty (see page 57) . . . . . . . | 74 | |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS (see page 58)? ☐ Yes. Complete the following. ☐ No

| Designee's name ▶ | Phone no. ▶ ( ) | Personal identification number (PIN) ▶ |
|---|---|---|

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See page 21.

Keep a copy for your records.

| Your signature | Date | Your occupation | Daytime phone number ( ) |
|---|---|---|---|
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | |

**Paid Preparer's Use Only**

| Preparer's signature ▶ | | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code ▶ | | | EIN | |
| | | | Phone no. | ( ) |

Form **1040** (2002)

EXHIBIT 13-6

Form **1040**

Department of the Treasury—Internal Revenue Service

**U.S. Individual Income Tax Return** 2003 (99) IRS Use Only—Do not write or staple in this space

For the year Jan. 1–Dec. 31, 2003, or other tax year beginning , 2003, ending , 20

OMB No. 1545-0074

**Label**

(See instructions on page 19.)

Use the IRS label. Otherwise, please print or type.

| Your first name and initial | Last name | Your social security number |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |

Home address (number and street). If you have a P.O. box, see page 19. | Apt. no.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 19.

▲ **Important!** ▲

You must enter your SSN(s) above.

**Presidential Election Campaign**

(See page 19.)

Note. Checking "Yes" will not change your tax or reduce your refund.

Do you, or your spouse if filing a joint return, want $3 to go to this fund? . . . ▶

You ☐ Yes ☐ No   Spouse ☐ Yes ☐ No

**Filing Status**

Check only one box.

1 ☐ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See page 20.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child. (See page 20.)

**Exemptions**

6a ☐ Yourself. If your parent (or someone else) can claim you as a dependent on his or her tax return, do not check box 6a . . . . . . . . . . . . . .

b ☐ Spouse . . . . . . . . . . . . . . . . . . . . . . . . .

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 21) |
|---|---|---|---|
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

If more than five dependents, see page 21.

d Total number of exemptions claimed . . . . . . . . . . . . . .

No. of boxes checked on 6a and 6b

No. of children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see page 21)

Dependents on 6c not entered above

Add numbers on lines above ▶

**Income**

Attach Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.

If you did not get a W-2, see page 22.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 | |
| 8a | Taxable interest. Attach Schedule B if required | 8a | |
| b | Tax-exempt interest. Do not include on line 8a . . . | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a | |
| b | Qualified dividends (see page 23) . . . . | 9b | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see page 23) . . | 10 | |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ . . . . . . . . | 12 | |
| 13a | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13a | |
| b | If box on 13a is checked, enter post-May 5 capital gain distributions | 13b | |
| 14 | Other gains or (losses). Attach Form 4797 . . . . . . . . . . | 14 | |
| 15a | IRA distributions . . | 15a | b Taxable amount (see page 25) | 15b | |
| 16a | Pensions and annuities | 16a | b Taxable amount (see page 25) | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | |
| 18 | Farm income or (loss). Attach Schedule F . . . . . . . . . . | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits . . | 20a | b Taxable amount (see page 27) | 20b | |
| 21 | Other income. List type and amount (see page 27) | 21 | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your total income ▶ | 22 | |

**Adjusted Gross Income**

| 23 | Educator expenses (see page 29) | 23 | |
| 24 | IRA deduction (see page 29) . . . | 24 | |
| 25 | Student loan interest deduction (see page 31) . . . | 25 | |
| 26 | Tuition and fees deduction (see page 32) . . . . . | 26 | |
| 27 | Moving expenses. Attach Form 3903 . . . . . . | 27 | |
| 28 | One-half of self-employment tax. Attach Schedule SE . | 28 | |
| 29 | Self-employed health insurance deduction (see page 33) | 29 | |
| 30 | Self-employed SEP, SIMPLE, and qualified plans . . | 30 | |
| 31 | Penalty on early withdrawal of savings . . . . . | 31 | |
| 32a | Alimony paid   b Recipient's SSN ▶ | 32a | |
| 33 | Add lines 23 through 32a . . . . . . . . . . . . . . . . . | 33 | |
| 34 | Subtract line 33 from line 22. This is your **adjusted gross income** . . . ▶ | 34 | |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 77.

Cat. No. 11320B

Form **1040** (2003)

EXHIBIT 13-7

Form 1040 (2003)

Page 2

| | | | | | |
|---|---|---|---|---|---|
| **Tax and Credits** | 35 | Amount from line 34 (adjusted gross income) . . . . . . . . | | 35 | |
| **Standard Deduction for—** | 36a | Check if: ☐ You were born before January 2, 1939, ☐ Blind. ☐ Spouse was born before January 2, 1939, ☐ Blind. } Total boxes checked ▶ 36a | | | |
| • People who checked any box on line 36a or 36b or who can be claimed as a dependent, see page 34. | b | If you are married filing separately and your spouse itemizes deductions, or you were a dual-status alien, see page 34 and check here . . . . . ▶ 36b ☐ | | | |
| | 37 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | | 37 | |
| | 38 | Subtract line 37 from line 35 . . . . . . . . . . . | | 38 | |
| • All others: Single or Married filing separately, $4,750 | 39 | If line 35 is $104,625 or less, multiply $3,050 by the total number of exemptions claimed on line 6d. If line 35 is over $104,625, see the worksheet on page 35 . . . | | 39 | |
| | 40 | Taxable income. Subtract line 39 from line 38. If line 39 is more than line 38, enter -0- | | 40 | |
| Married filing jointly or Qualifying widow(er), $9,500 | 41 | Tax (see page 36). Check if any tax is from: a ☐ Form(s) 8814  b ☐ Form 4972 | | 41 | |
| | 42 | Alternative minimum tax (see page 38). Attach Form 6251 . . . . | | 42 | |
| Head of household, $7,000 | 43 | Add lines 41 and 42 . . . . . . . . . . . . ▶ | | 43 | |
| | 44 | Foreign tax credit. Attach Form 1116 if required . . . . | 44 | | |
| | 45 | Credit for child and dependent care expenses. Attach Form 2441 | 45 | | |
| | 46 | Credit for the elderly or the disabled. Attach Schedule R . . | 46 | | |
| | 47 | Education credits. Attach Form 8863 . . . . . . | 47 | | |
| | 48 | Retirement savings contributions credit. Attach Form 8880 . | 48 | | |
| | 49 | Child tax credit (see page 40) . . . . . . . . | 49 | | |
| | 50 | Adoption credit. Attach Form 8839 . . . . . . | 50 | | |
| | 51 | Credits from:  a ☐ Form 8396   b ☐ Form 8859 . . | 51 | | |
| | 52 | Other credits. Check applicable box(es):  a ☐ Form 3800  b ☐ Form 8801  c ☐ Specify _____ | 52 | | |
| | 53 | Add lines 44 through 52. These are your total credits . . . . . | | 53 | |
| | 54 | Subtract line 53 from line 43. If line 53 is more than line 43, enter -0- . . . ▶ | | 54 | |
| **Other Taxes** | 55 | Self-employment tax. Attach Schedule SE . . . . . . . . . | | 55 | |
| | 56 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 . . | | 56 | |
| | 57 | Tax on qualified plans, including IRAs, and other tax-favored accounts. Attach Form 5329 if required . | | 57 | |
| | 58 | Advance earned income credit payments from Form(s) W-2 . . . . . . | | 58 | |
| | 59 | Household employment taxes. Attach Schedule H . . . . . . . | | 59 | |
| | 60 | Add lines 54 through 59. This is your total tax . . . . . . . ▶ | | 60 | |
| **Payments** | 61 | Federal income tax withheld from Forms W-2 and 1099 . . . | 61 | | |
| | 62 | 2003 estimated tax payments and amount applied from 2002 return | 62 | | |
| If you have a qualifying child, attach Schedule EIC. | 63 | Earned income credit (EIC) . . . . . . . . . | 63 | | |
| | 64 | Excess social security and tier 1 RRTA tax withheld (see page 56) | 64 | | |
| | 65 | Additional child tax credit. Attach Form 8812 . . . . . | 65 | | |
| | 66 | Amount paid with request for extension to file (see page 56) | 66 | | |
| | 67 | Other payments from:  a ☐ Form 2439  b ☐ Form 4136 c ☐ Form 8885 | 67 | | |
| | 68 | Add lines 61 through 67. These are your total payments . . . . ▶ | | 68 | |
| **Refund** | 69 | If line 68 is more than line 60, subtract line 60 from line 68. This is the amount you overpaid | | 69 | |
| Direct deposit? See page 56 and fill in 70b, 70c, and 70d. | 70a | Amount of line 69 you want refunded to you . . . . . . ▶ | | 70a | |
| ▶ b | Routing number | | ▶ c Type: ☐ Checking ☐ Savings | | | |
| ▶ d | Account number | | | | | |
| | 71 | Amount of line 69 you want applied to your 2004 estimated tax ▶ | 71 | | |
| **Amount You Owe** | 72 | Amount you owe. Subtract line 68 from line 60. For details on how to pay, see page 57 ▶ | | 72 | |
| | 73 | Estimated tax penalty (see page 58) . . . . . | 73 | | |
| **Third Party Designee** | | Do you want to allow another person to discuss this return with the IRS (see page 58)? ☐ Yes. Complete the following. ☐ No | | | |
| | | Designee's name ▶ | Phone no. ▶ ( ) | Personal identification number (PIN) ▶ | | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See page 20. Keep a copy for your records.

| Your signature | Date | Your occupation | Daytime phone number ( ) |
|---|---|---|---|
| Spouse's signature. If a joint return, **both** must sign. | Date | Spouse's occupation | |

**Paid Preparer's Use Only**

| Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code ▶ | | EIN | |
| | | Phone no. ( ) | |

Form **1040** (2003)

EXHIBIT 13-8

Form **1040**

Department of the Treasury—Internal Revenue Service

**U.S. Individual Income Tax Return** **2004** (99) IRS Use Only—Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2004, or other tax year beginning , 2004, ending , 20

OMB No. 1545-0074

**Label**
(See instructions on page 16.)

Use the IRS label. Otherwise, please print or type.

Your first name and initial | Last name | Your social security number

If a joint return, spouse's first name and initial | Last name | Spouse's social security number

Home address (number and street). If you have a P.O. box, see page 16. | Apt. no.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 16.

▲ **Important!** ▲
You must enter your SSN(s) above.

**Presidential Election Campaign**
(See page 16.)

Note. Checking "Yes" will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund? . . . ▶

You: ☐ Yes ☐ No  Spouse: ☐ Yes ☐ No

**Filing Status**

Check only one box.

1 ☐ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See page 17.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (see page 17)

**Exemptions**

6a ☐ **Yourself.** If someone can claim you as a dependent, do not check box 6a
  b ☐ **Spouse** . . . . . . . . . . . . . . . . . . . . . . .

c Dependents:

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 18) |
|---|---|---|---|
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

If more than four dependents, see page 18.

d Total number of exemptions claimed . . . . . . . . . . . .

Boxes checked on 6a and 6b
No. of children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see page 18)
Dependents on 6c not entered above
Add numbers on lines above ▶

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see page 19.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

7 Wages, salaries, tips, etc. Attach Form(s) W-2 . . . . . . | 7
8a Taxable interest. Attach Schedule B if required . . . . . . | 8a
  b Tax-exempt interest. Do not include on line 8a . . . | 8b
9a Ordinary dividends. Attach Schedule B if required . . . . | 9a
  b Qualified dividends (see page 20) . . . . . | 9b
10 Taxable refunds, credits, or offsets of state and local income taxes (see page 20) . . | 10
11 Alimony received . . . . . . . . . . . . . . . | 11
12 Business income or (loss). Attach Schedule C or C-EZ . . . . . | 12
13 Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13
14 Other gains or (losses). Attach Form 4797 . . . . . . . . | 14
15a IRA distributions . . | 15a | b Taxable amount (see page 22) | 15b
16a Pensions and annuities | 16a | b Taxable amount (see page 22) | 16b
17 Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17
18 Farm income or (loss). Attach Schedule F . . . . . . . . | 18
19 Unemployment compensation . . . . . . . . . . . | 19
20a Social security benefits | 20a | b Taxable amount (see page 24) | 20b
21 Other income. List type and amount (see page 24) . . . . . . . . . . . | 21
22 Add the amounts in the far right column for lines 7 through 21. This is your total income ▶ | 22

**Adjusted Gross Income**

23 Educator expenses (see page 26) . . . . . | 23
24 Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24
25 IRA deduction (see page 26) . . . . . . | 25
26 Student loan interest deduction (see page 28) . . . | 26
27 Tuition and fees deduction (see page 29) . . . . | 27
28 Health savings account deduction. Attach Form 8889 . . | 28
29 Moving expenses. Attach Form 3903 . . . . . | 29
30 One-half of self-employment tax. Attach Schedule SE . . | 30
31 Self-employed health insurance deduction (see page 30) | 31
32 Self-employed SEP, SIMPLE, and qualified plans . . . | 32
33 Penalty on early withdrawal of savings . . . . . | 33
34a Alimony paid  b Recipient's SSN ▶ | 34a
35 Add lines 23 through 34a . . . . . . . . . . . . . . | 35
36 Subtract line 35 from line 22. This is your adjusted gross income . . . . . . ▶ | 36

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 75.   Cat. No. 11320B   Form **1040** (2004)

EXHIBIT 13-9

Form 1040 (2004)                                                                                                    Page 2

| | | | | | |
|---|---|---|---|---|---|
| **Tax and Credits** | 37 | Amount from line 36 (adjusted gross income) | | 37 | |
| | 38a | Check if: ☐ You were born before January 2, 1940, ☐ Blind. ☐ Spouse was born before January 2, 1940, ☐ Blind. Total boxes checked ▶ 38a | | | |
| **Standard Deduction for—** | b | If your spouse itemizes on a separate return or you were a dual-status alien, see page 31 and check here ▶ 38b ☐ | | | |
| | 39 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) . | | 39 | |
| | 40 | Subtract line 39 from line 37 . . . . . . . . . . . . . . . | | 40 | |
| **• People who checked any box on line 38a or 38b or who can be claimed as a dependent, see page 31.** | 41 | If line 37 is $107,025 or less, multiply $3,100 by the total number of exemptions claimed on line 6d. If line 37 is over $107,025, see the worksheet on page 33 . . . . | | 41 | |
| | 42 | Taxable income. Subtract line 41 from line 40. If line 41 is more than line 40, enter -0- | | 42 | |
| | 43 | Tax (see page 33). Check if any tax is from: a ☐ Form(s) 8814  b ☐ Form 4972 | | 43 | |
| **• All others:** | 44 | Alternative minimum tax (see page 35). Attach Form 6251 . . . . . | | 44 | |
| Single or Married filing separately, $4,850 | 45 | Add lines 43 and 44 . . . . . . . . . . . . . . . . ▶ | | 45 | |
| | 46 | Foreign tax credit. Attach Form 1116 if required . . . | 46 | | |
| | 47 | Credit for child and dependent care expenses. Attach Form 2441 | 47 | | |
| Married filing jointly or Qualifying widow(er), $9,700 | 48 | Credit for the elderly or the disabled. Attach Schedule R . . | 48 | | |
| | 49 | Education credits. Attach Form 8863 . . . . . . | 49 | | |
| | 50 | Retirement savings contributions credit. Attach Form 8880 . | 50 | | |
| Head of household, $7,150 | 51 | Child tax credit (see page 37) . . . . . . . . | 51 | | |
| | 52 | Adoption credit. Attach Form 8839 . . . . . | 52 | | |
| | 53 | Credits from: a ☐ Form 8396  b ☐ Form 8859 . . | 53 | | |
| | 54 | Other credits. Check applicable box(es): a ☐ Form 3800 b ☐ Form 8801  c ☐ Specify | 54 | | |
| | 55 | Add lines 46 through 54. These are your total credits . . . . . . . . . | | 55 | |
| | 56 | Subtract line 55 from line 45. If line 55 is more than line 45, enter -0- . . . . . ▶ | | 56 | |
| **Other Taxes** | 57 | Self-employment tax. Attach Schedule SE . . . . . . . . | | 57 | |
| | 58 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | | 58 | |
| | 59 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required . | | 59 | |
| | 60 | Advance earned income credit payments from Form(s) W-2 . . . . . . . | | 60 | |
| | 61 | Household employment taxes. Attach Schedule H . . . . . . . . | | 61 | |
| | 62 | Add lines 56 through 61. This is your total tax . . . . . . . . . ▶ | | 62 | |
| **Payments** | 63 | Federal income tax withheld from Forms W-2 and 1099 . | 63 | | |
| | 64 | 2004 estimated tax payments and amount applied from 2003 return | 64 | | |
| **If you have a qualifying child, attach Schedule EIC.** | 65a | Earned income credit (EIC) . . . . . . . . | 65a | | |
| | b | Nontaxable combat pay election ▶ 65b | | | |
| | 66 | Excess social security and tier 1 RRTA tax withheld (see page 54) | 66 | | |
| | 67 | Additional child tax credit. Attach Form 8812 . . . . | 67 | | |
| | 68 | Amount paid with request for extension to file (see page 54) | 68 | | |
| | 69 | Other payments from: a ☐ Form 2439 b ☐ Form 4136 c ☐ Form 8885 | 69 | | |
| | 70 | Add lines 63, 64, 65a, and 66 through 69. These are your total payments . . . ▶ | | 70 | |
| **Refund** | 71 | If line 70 is more than line 62, subtract line 62 from line 70. This is the amount you overpaid | | 71 | |
| **Direct deposit?** | 72a | Amount of line 71 you want refunded to you . . . . . . . . . . ▶ | | 72a | |
| **See page 54 and fill in 72b, 72c, and 72d.** | b | Routing number | ▶ c Type: ☐ Checking ☐ Savings | | |
| | d | Account number | | | |
| | 73 | Amount of line 71 you want applied to your 2005 estimated tax ▶ | 73 | | |
| **Amount You Owe** | 74 | Amount you owe. Subtract line 70 from line 62. For details on how to pay, see page 55 ▶ | | 74 | |
| | 75 | Estimated tax penalty (see page 55) . . . . . | 75 | | |

**Third Party Designee**
Do you want to allow another person to discuss this return with the IRS (see page 56)?   ☐ Yes. Complete the following.   ☐ No

| Designee's name ▶ | Phone no. ▶ ( ) | Personal identification number (PIN) ▶ |
|---|---|---|

**Sign Here**
Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return?
See page 17.

Keep a copy for your records.

| Your signature | Date | Your occupation | Daytime phone number ( ) |
|---|---|---|---|
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | |

**Paid Preparer's Use Only**

| Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code ▶ | | EIN | |
| | | Phone no. ( ) | |

Form **1040** (2004)

EXHIBIT 13-10

Form **1040**

Department of the Treasury—Internal Revenue Service

**U.S. Individual Income Tax Return** 2005 (99) IRS Use Only—Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2005, or other tax year beginning , 2005, ending , 20 | OMB No. 1545-0074

**Label**
(See instructions on page 16.)

Use the IRS label. Otherwise, please print or type.

Your first name and initial | Last name | Your social security number

If a joint return, spouse's first name and initial | Last name | Spouse's social security number

Home address (number and street). If you have a P.O. box, see page 16. | Apt. no.

▲ You must enter your SSN(s) above. ▲

City, town or post office, state, and ZIP code. If you have a foreign address, see page 16.

Checking a box below will not change your tax or refund.

**Presidential Election Campaign** ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund (see page 16) ▶ ☐ You ☐ Spouse

**Filing Status**

Check only one box.

1 ☐ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See page 17.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (see page 17)

**Exemptions**

6a ☐ Yourself. If someone can claim you as a dependent, do not check box 6a
b ☐ Spouse

| Boxes checked on 6a and 6b |
| No. of children on 6c who: |

c Dependents:

| (1) First name  Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 19) |
|---|---|---|---|
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

if more than four dependents, see page 19.

• lived with you
• did not live with you due to divorce or separation (see page 20)
Dependents on 6c not entered above

d Total number of exemptions claimed

Add numbers on lines above ▶

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see page 22.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

7 Wages, salaries, tips, etc. Attach Form(s) W-2 | 7
8a Taxable interest. Attach Schedule B if required | 8a
b Tax-exempt interest. Do not include on line 8a | 8b
9a Ordinary dividends. Attach Schedule B if required | 9a
b Qualified dividends (see page 23) | 9b
10 Taxable refunds, credits, or offsets of state and local income taxes (see page 23) | 10
11 Alimony received | 11
12 Business income or (loss). Attach Schedule C or C-EZ | 12
13 Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13
14 Other gains or (losses). Attach Form 4797 | 14
15a IRA distributions | 15a | b Taxable amount (see page 25) | 15b
16a Pensions and annuities | 16a | b Taxable amount (see page 25) | 16b
17 Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17
18 Farm income or (loss). Attach Schedule F | 18
19 Unemployment compensation | 19
20a Social security benefits | 20a | b Taxable amount (see page 27) | 20b
21 Other income. List type and amount (see page 29) | 21
22 Add the amounts in the far right column for lines 7 through 21. This is your total income ▶ | 22

**Adjusted Gross Income**

23 Educator expenses (see page 29) | 23
24 Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24
25 Health savings account deduction. Attach Form 8889 | 25
26 Moving expenses. Attach Form 3903 | 26
27 One-half of self-employment tax. Attach Schedule SE | 27
28 Self-employed SEP, SIMPLE, and qualified plans | 28
29 Self-employed health insurance deduction (see page 30) | 29
30 Penalty on early withdrawal of savings | 30
31a Alimony paid b Recipient's SSN ▶ | 31a
32 IRA deduction (see page 31) | 32
33 Student loan interest deduction (see page 33) | 33
34 Tuition and fees deduction (see page 34) | 34
35 Domestic production activities deduction. Attach Form 8903 | 35
36 Add lines 23 through 31a and 32 through 35 | 36
37 Subtract line 36 from line 22. This is your adjusted gross income ▶ | 37

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 78. Cat. No. 11320B Form **1040** (2005)

EXHIBIT 13–11

Form 1040 (2005)                Page **2**

| Tax and Credits | 38 | Amount from line 37 (adjusted gross income) | | 38 | |
|---|---|---|---|---|---|
| | 39a | Check { ☐ You were born before January 2, 1941, ☐ Blind. } Total boxes if: { ☐ Spouse was born before January 2, 1941, ☐ Blind. } checked ▶ 39a | | | |
| **Standard Deduction for—** | b | If your spouse itemizes on a separate return or you were a dual-status alien, see page 35 and check here ▶39b ☐ | | | |
| | 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | | 40 | |
| • People who checked any box on line 39a or 39b or who can be claimed as a dependent, see page 36. | 41 | Subtract line 40 from line 38 | | 41 | |
| | 42 | If line 38 is over $109,475, or you provided housing to a person displaced by Hurricane Katrina, see page 37. Otherwise, multiply $3,200 by the total number of exemptions claimed on line 6d | | 42 | |
| | 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | | 43 | |
| | 44 | Tax (see page 37). Check if any tax is from: a ☐ Form(s) 8814  b ☐ Form 4972 | | 44 | |
| • All others: | 45 | Alternative minimum tax (see page 39). Attach Form 6251 | | 45 | |
| Single or Married filing separately, $5,000 | 46 | Add lines 44 and 45 ▶ | | 46 | |
| | 47 | Foreign tax credit. Attach Form 1116 if required | 47 | | |
| | 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | | |
| | 49 | Credit for the elderly or the disabled. Attach Schedule R | 49 | | |
| Married filing jointly or Qualifying widow(er), $10,000 | 50 | Education credits. Attach Form 8863 | 50 | | |
| | 51 | Retirement savings contributions credit. Attach Form 8880 | 51 | | |
| | 52 | Child tax credit (see page 41). Attach Form 8901 if required | 52 | | |
| Head of household, $7,300 | 53 | Adoption credit. Attach Form 8839 | 53 | | |
| | 54 | Credits from: a ☐ Form 8396  b ☐ Form 8859 | 54 | | |
| | 55 | Other credits. Check applicable box(es): a ☐ Form 3800 b ☐ Form 8801  c ☐ Form | 55 | | |
| | 56 | Add lines 47 through 55. These are your total credits | | 56 | |
| | 57 | Subtract line 56 from line 46. If line 56 is more than line 46, enter -0- ▶ | | 57 | |
| **Other Taxes** | 58 | Self-employment tax. Attach Schedule SE | | 58 | |
| | 59 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | | 59 | |
| | 60 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | 60 | |
| | 61 | Advance earned income credit payments from Form(s) W-2 | | 61 | |
| | 62 | Household employment taxes. Attach Schedule H | | 62 | |
| | 63 | Add lines 57 through 62. This is your total tax ▶ | | 63 | |
| **Payments** | 64 | Federal income tax withheld from Forms W-2 and 1099 | 64 | | |
| | 65 | 2005 estimated tax payments and amount applied from 2004 return | 65 | | |
| If you have a qualifying child, attach Schedule EIC. | 66a | Earned income credit (EIC) | 66a | | |
| | b | Nontaxable combat pay election ▶ | 66b | | |
| | 67 | Excess social security and tier 1 RRTA tax withheld (see page 59) | 67 | | |
| | 68 | Additional child tax credit. Attach Form 8812 | 68 | | |
| | 69 | Amount paid with request for extension to file (see page 59) | 69 | | |
| | 70 | Payments from: a ☐ Form 2439 b ☐ Form 4136 c ☐ Form 8885 | 70 | | |
| | 71 | Add lines 64, 65, 66a, and 67 through 70. These are your total payments ▶ | | 71 | |
| **Refund** Direct deposit? See page 59 and fill in 73b, 73c, and 73d. | 72 | If line 71 is more than line 63, subtract line 63 from line 71. This is the amount you overpaid | | 72 | |
| | 73a | Amount of line 72 you want refunded to you | | 73a | |
| | ▶ b | Routing number | ▶ c Type: ☐ Checking  ☐ Savings | | |
| | ▶ d | Account number | | | |
| | 74 | Amount of line 72 you want applied to your 2006 estimated tax ▶ | 74 | | |
| **Amount You Owe** | 75 | Amount you owe. Subtract line 71 from line 63. For details on how to pay, see page 60 ▶ | | 75 | |
| | 76 | Estimated tax penalty (see page 60) | 76 | | |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS (see page 61)? ☐ Yes. Complete the following. ☐ No

Designee's name ▶     Phone no. ▶ ( )     Personal identification number (PIN) ▶

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See page 17.
Keep a copy for your records.

| Your signature | Date | Your occupation | Daytime phone number ( ) |
|---|---|---|---|
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | |

**Paid Preparer's Use Only**

| Preparer's signature | | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code | ▶ | | EIN | |
| | | | Phone no. | ( ) |

Form **1040** (2005)

✹ Printed on recycled paper

EXHIBIT 13-12

# PAPERWORK REDUCTION ACT SUBMISSION

Please read the instructions before completing this form. For additional forms or assistance in completing this form, contact your agency's Paperwork Clearance Officer. Send three copies of this form, the collection instrument to be reviewed, the Supporting Statement, and any additional documentation to Office of Information and Regulatory Affairs, Office of Management and Budget, Docket Library, Room 10102, 725 17th Street NW, Washington, DC 20503.

| | |
|---|---|
| 1. Agency/Subagency originating request<br>**Department of the Treasury/IRS** | 2. OMB control number<br>a. <u>1545</u>-<u>0074</u>   b. ___ None |
| 3. Type of information collection (check one)<br><br>a. ___ New collection<br>b. _X_ Revision of a currently approved collection<br>c. ___ Extension of a currently approved collection<br>d. ___ Reinstatement, without change, of a previously approved collection for which approval has expired<br>e. ___ Reinstatement, with change, of a previously approved collection for which approval has expired<br>f. ___ Existing collection in use without an OMB control number<br><br>For b-f, note item A2 of Supporting Statement instructions | 4. Type of review requested (check one)<br>a. _X_ Regular submission<br>b. ___ Emergency - approval requested by: <u>10</u>/ <u>01</u> / <u>98</u><br>c. ___ Delegated<br><br>5. Small entities<br>Will this information collection have a significant economic impact on a substantial number of small entities?<br>___ Yes     _X_ No<br><br>6. Requested expiration date<br>a. ___ Three years from approval date<br>b. _X_ Other  Specify <u>12 /30 /98</u> |
| 7. Title: **U.S. Individual Income Tax Return** | |
| 8. Agency form number (s) (if applicable): **Form 1040 and Schedules A, B, C, C-EZ, D, D-1, E, EIC, F, H, J, R, and SE** | |
| 9. Keywords: **Personal Income Taxes, Tax Return** | |
| 10. Abstract: These forms are used by individuals to report their income tax liability. The data is used to verify that the items reported on the forms are correct, and also for general statistical use. | |
| 11. Affected public (Mark primary with "P" and all others that apply with "X")<br>a. _P_ Individuals or households   d. ___ Farms<br>b. ___ Business or other for-profit  e. ___ Federal Gov.<br>c. ___ Not-for-profit institutions  f. ___ State, Local or Tribal Gov. | 12. Obligation to respond (Mark primary with "P" and all others that apply with "X")<br>a. ___ Voluntary<br>b. ___ Required to obtain or retain benefits<br>c. _P_ Mandatory |
| 13. Annual reporting and recordkeeping hour burden<br>a. Number of respondents          <u>71,877,464</u><br>b. Total annual responses          <u>276,493,973</u><br>   1. Percentage of these responses collected electronically  <u>6%</u><br>c. Total annual hours requested     <u>1,211,582,312</u><br>d. Current OMB inventory          <u>1,143,129,008</u><br>e. Difference               <u>+68,453,304</u><br>f. Explanation of difference<br>   1. Program change (+, -)         <u>+38,595,728</u><br>   2. Adjustment (+, -)          <u>+29,857,576</u> | 14. Annual reporting and recordkeeping cost burden (in thousands of dollars)<br>a. Total annualized capital/startup costs   _____<br>b. Total annual costs (O&M)         _____<br>c. Total annualized cost requested      _____<br>d. Current OMB inventory          _____<br>e. Difference                _____<br>f. Explanation of difference<br>   1. Program change            _____<br>   2. Adjustment             _____ |
| 15. Purpose of information collection (Mark primary with "P" and all others that apply with "X")<br>a. ___ Application for benefits  e. ___ Program planning or Mgmt<br>b. ___ Program evaluation   f. ___ Research<br>c. ___ General purpose statistics  g. _P_ Regulatory or compliance<br>d. ___ Audit | 16. Frequency of recordkeeping or reporting (check all that apply)<br>a. _X_ Recordkeeping   b. ___ Third party disclosure<br>c. _X_ Reporting<br>   1. ___ On occasion   2. ___ Weekly   3. ___ Monthly<br>   4. ___ Quarterly   5. ___ Semi-annually  6. _X_ Annually<br>   7. ___ Biennially   8. ___ Other (describe) _____ |
| 17. Statistical methods<br><br>Does this information collection employ statistical methods?<br><br>___ Yes     _X_ No | 18. Agency contact (person who can best answer questions regarding the content of this submission)<br><br>Name:  **Martha Brinson**<br>Phone:  **202-622-5200** |

OMB 83-I

10/95

DIRA DOCKET LIBRARY

RECEIVED
SEP 16 1998

EXHIBIT 13-13

## 19. Certification for Paperwork Reduction Act Submissions

On behalf of this Federal agency, I certify that the collection of information encompassed by this request complies with 5 CFR 1320.9.

**NOTE:** The text of 5 CFR 1320.9, and the related provisions of 5 CFR 1320.8 (b) (3), appear at the end of the instructions. *The certification is to be made with reference to those regulatory provisions as set forth in the instructions.*

The following is a summary of the topics, regarding the proposed collection of information, that the certification covers:

    **(a)** It is necessary for the proper performance of agency functions;

    **(b)** It avoids unnecessary duplication;

    **(c)** It reduces burden on small entities;

    **(d)** It uses plain, coherent, and unambiguous terminology that is understandable to respondents;

    **(e)** Its implementation will be consistent and compatible with current reporting and recordkeeping practices;

    **(f)** It indicates the retention periods for recordkeeping requirements;

    **(g)** It informs respondents of the information called for under 5 CFR 1320.8 (b) (3):

        **(i)** Why the information is being collected;

        **(ii)** Use of information;

        **(iii)** Burden estimate;

        **(iv)** Nature of response (voluntary, required for a benefit, or mandatory);

        **(v)** Nature and extent of confidentiality; and

        **(vi)** Need to display currently valid OMB control number;

    **(h)** It was developed by an office that has planned and allocated resources for the efficient and effective management and use of the information to be collected (see note in Item 19 of the instructions);

    **(i)** It uses effective and efficient statistical survey methodology; and

    **(j)** It makes appropriate use of information technology;

*If you are unable to certify compliance with any of these provisions, identify the item below and explain the reason in Item 18 of the Supporting Statement.*

| | | |
|---|---|---|
| **Signature of Program Official**   *G. Shear* <br> Garrick R. Shear, IRS Reports Clearance Officer | | **Date** <br> 9/15/98 |
| **Signature of Senior Official or designee** <br> *(signature)* | Departmental Reports <br> Management Officer. | **Date** <br> 9/16/98 |

**OMB 83-I**                                                                                         10/95

EXHIBIT 13-14

TRULINCS 02580063 - SPRINGER, LINDSEY KENT - Unit: BIG-R-E

---------------------------------------------------------------------------------------

FROM: Quilhot, William
TO: 02580063
SUBJECT: Jump on this opportunity!
DATE: 02/07/2013 08:00:01 AM

PRESS RELEASE #11
FOR IMMEDIATE RELEASE
February 6, 2013
SIBLEY INJECTS STUXNET-LIKE MOTION CHALLENGING OBAMA'S ELIGIBILITY
INTO FEDERAL CRIMINAL JUSTICE NETWORK
Washington D.C.   A new front on the legal battle to establish that Barack Hussein Obama, II,
is ineligible to be President was opened today by Montgomery Blair Sibley.
To date, no federal court has taken up the merits of Obama's eligibility relying instead on the
dubious legal doctrine of "standing" to dismiss every lawsuit. Accordingly, Sibley has released
his Stuxnet-like Motion to Dismiss Indictment into the federal prison system. The Motion makes
the simple argument that: (i) no federal law is valid under Article I, § 7, cl. 2, of the Constitution
unless it is presented to the President, (ii) Obama is not a legitimate President and thus (iii) his
signing of the Fraud Enforcement and Recovery Act of 2009 ("FERA") is void. Accordingly,
every person charge and/or convicted under FERA is entitled to be released.
The Sixth Amendment to the Constitution guarantees: "in all criminal prosecutions, the accused
shall . . . have compulsory process for obtaining witnesses in his favor." Thus the Motion
demands federal subpoenas for Obama s: (i) certificates of live birth, (ii) college applications
from Occidental College, Columbia University and Harvard Law School, (iii) U.S. Passport
application, (iv) Social Security application and (v) Selective Service registration information
documents Obama has refused to reveal despite repeated requests.
Sibley has sent the Motion to prisoners convicted under FERA and their defense attorneys and
expects his Motion to be filed in dozens of FERA cases by them in the near future. Sibley said:
"Like the Stuxnet computer virus, my Motion will circulate among the prison and population and
criminal defense bar both of which are very adept at bringing legal pleadings to Court. Once the
Motion is properly presented, the Courts will be forced to deal with the merits of Obama s
legitimacy. The doctrine of  standing  will no longer be a barrier to adjudication. My Motion
forces the Courts to make the choice of issuing the requested subpoenas   thereby finally settling
the issue of Obama s eligibility to be President   or affirming that the Sixth Amendment has
been repealed by Judicial fiat because it threatens the status quo. Either way, we will know
where we stand as a People and whether it is time to convene a Constitutional Convention to
re-assert our fundamental rights in a federal judicial system which has evolved to ignore those
sacred rights when they challenge the ruling class."
- E n d -

EXHIBIT 14



DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

*1 Val.*

Criminal Investigation

## CAUTION: ENCLOSURES CONTAIN GRAND JURY INFORMATION -

June 3, 2005

The Honorable Eileen J. O'Connor
Assistant Attorney General
Department of Justice (Tax Division)
600 E. NW, Room 5013 BICN Bldg.
Washington, DC 20530

*Patterson Invest.*
*Exp.*

Attn:  Ronald A. Cimino, Chief Western Enforcement Section

Re:  Title 26 Grand Jury Investigation Expansion
Concerning:  LINDSEY K. SPRINGER

Dear Mr. Cimino:

I am referring the matter shown above to your office concurring with your request to
expand a grand jury investigation.  Based on my review of the information provided by
Assistant U. S. Attorney Melody Noble Nelson and our examination of the relevant tax
records, I find there is reason to believe that federal criminal tax violations have been
committed.  Disclosures of tax return and/or tax return information made herein or in the
accompanying enclosures are authorized by 26 U.S.C. § 6103(h)(3)(A).  I have
authorized the commitment of Internal Revenue Service resources to assist in the
investigation of potential Title 26 and Title 26-related violations that Lindsey K. Springer
may have committed for the years 2000 through 2004.

The following information is enclosed for your review:

1. Form 9131 and Exhibits
2. Evaluation memorandum prepared by Criminal Tax attorney.

If you need Criminal Tax Counsel to assist in the evaluation of evidence developed by
the grand jury as it relates to Title 26 and Title 26-related offenses, please call me at
(214) 413-5919 and I will arrange to have a docket attorney assist you.

*6/8/05*

EXHIBIT 15-1

*5-59N-7848*
*2000201076*

Originals or copies of an    orrespondence sent to this office s    uld be addressed to me with the notation, "Material to be opened by address only." If you have any questions regarding this memorandum, please contact Supervisory Special Agent William R. Taylor or Special Agent Brian Shern at (918) 581-7050 Ext. 230.

Sincerely,

*Lacenski*

Michael D. Lacenski
Special Agent in Charge
Dallas Field Office
1100 Commerce Street, DAL 9000
Dallas, TX  75242

Enclosures (2)

Cc:    Richard A. McDonald
       Field Counsel (Criminal Tax)

EXHIBIT 15-2



**U.S. Depa. .ien  *i* Justice**
**Tax Division**

*Western Criminal Enforcement Section*
*P.O. Box 972, Ben Franklin Station*            *(202) 514-5762*
*Washington, D.C. 20044*            *Telefax: (202) 514-9623*

EJO'C:RACimino:jhm
DJ# 5-59N-7848
CMN# 2000201076

June 10, 2005

<u>CERTIFIED MAIL - RETURN RECEIPT REQUESTED</u>

David E. O'Meila, Esquire
United States Attorney
Northern District of Oklahoma
3600 United States Courthouse
110 West 7th Street
Tulsa, OK 74119

Attn: AUSA Melody Noble Nelson

Re: <u>Grand Jury Investigation</u>
Patterson Investigation
Northern District of Oklahoma
DJ# 5-59N-7848
Concerning: Lindsey K. Springer

Dear Mr. O'Meila:

Reference is made to a letter dated June 3, 2005, the Special Agent-in-Charge, Internal Revenue Service, Dallas, Texas, approving your request to expand an existing non-tax grand jury investigation to include an investigation of potential criminal tax violations in the above-entitled matter. In accordance with Tax Division Directive 86-59, the Tax Division has no objection to this expansion.

Pursuant to established procedures, no tax or tax-related charges, including charges to which a target has agreed to enter into a plea agreement, may be filed without prior approval of the Tax Division. You are reminded that any expansion of this grand jury investigation, to include additional targets, requires Tax Division approval as well. If you determine that use of the statutory compulsion process pursuant to 18 U.S.C. § 6003(b) or a non-prosecution agreement with a witness ("letter immunity") is warranted, refer to the procedures set forth in U.S.A.M. § 9-23.000, <u>et seq</u>., and U.S.A.M. § 9-27.600, <u>et seq</u>., respectively.

EXHIBIT 15-3

- 2 -

Upon conclusion of the investigation, please provide the testimony, documents, and other materials accumulated by the grand jury to the assisting Internal Revenue Service agent for the sole purpose of analyzing the potential criminal tax aspects of the case and preparing a report setting forth his or her recommendation regarding prosecution. This report will be reviewed by an Internal Revenue Service Counsel, who will make a written evaluation and recommendation to the Special Agent-in-Charge. The Special Agent-in-Charge will forward the reports and exhibits, along with his or her recommendation regarding prosecution to the Tax Division.

You must provide the Tax Division with a written report of your views regarding the prosecution potential of this case, the non-tax charges, if any, that you intend to bring, and the anticipated date of indictment. In addition, the case should be submitted to the Tax Division for review at least 60 days prior to the date on which you need a decision.

You have the authority to terminate this investigation, provided that prior written notification is given to both the Tax Division and the Internal Revenue Service. This notification should indicate that the matter is terminated pursuant to 26 U.S.C. § 7602(d). Please be reminded that your use of all tax returns and return information is governed by 26 U.S.C. § 6103(h). In the event that the tax aspects of the investigation are terminated, you must obtain a court order pursuant to Section 6103(I) in order to retain and use such returns and return information previously obtained under Section 6103(h).

In all future correspondence, please use the following caption:

Re:  Grand Jury Investigation
     Patterson Investigation
     Northern District Oklahoma
     DJ# 5-59N-7848
     Concerning:

Please list each target (individuals and entities) who is the subject of the correspondence.

A copy of the Special Agent-in-Charge's letter and its attachments is enclosed. You are reminded that Fed. R. Crim. P. 6(e)(3)(B) requires that you furnish the court with the names of all persons with access to grand jury material. Enclosed with the Special Agent's letter are the IRS Counsel's memorandum and IRS Form 9131 (Request for Grand Jury Investigation) which lists all Internal Revenue Service personnel to whom such material has been disclosed.

EXHIBIT 15-4

- 3 -

        Please advise all Internal Revenue Service personnel who assist
you in this investigation, and who will have access to grand jury
material, that such material is supplied to them on the following
conditions:

    1.   All grand jury material will remain under the custody of the
         grand jury, the United States Attorney, and the Tax
         Division;

    2.   Disclosure of grand jury material may be made only to
         Internal Revenue Service personnel who are assisting in the
         investigation and formulating a recommendation by the
         Service regarding prosecution, and such Internal Revenue
         Service personnel may only use the grand jury material for
         this purpose;

    3.   The Internal Revenue Service will furnish the Tax Division
         with advice and a recommendation, whether favorable or
         unfavorable, regarding the prosecution potential of this
         case;

    4.   The Internal Revenue Service will return all grand jury
         material to you when it is no longer needed for use in
         advising and assisting the Department of Justice in the
         investigation of this matter.

        If you have any questions about this case or your authority under
Directive 86-59, you may contact Tax Division, Western Criminal Chief
Ronald A. Cimino at (202) 514-5762.  Please acknowledge receipt of
this letter and its enclosures.

                        Sincerely yours,

                        EILEEN J. O'CONNOR
                    Assistant Attorney General
                          Tax Division

                   By:
                           RONALD A. CIMINO
                        Chief, Western Criminal
                        Enforcement Section

Enclosures
     (1 Volume)
cc:  Special Agent in Charge
     Dallas, Texas

                        EXHIBIT 15-5



**U.S. Departme~ Jf Justice**
**Tax Division**

*Western Criminal Enforcement Section*
*P.O. Box 972, Ben Franklin Station*      *(202) 514-5762*
*Washington, D.C. 20044*      *Telefax:  (202) 514-9623*

EJO'C:RAC:CEPell:ks
5-59N-7848                           JAN 2 6 2007
2000201076

<u>CERTIFIED MAIL - RETURN RECEIPT REQUESTED</u>

David E. O'Meilia, Esquire
United States Attorney
Northern District of Oklahoma
110 West 7th Street
Suite 300
Tulsa, Oklahoma 74119

Attn: AUSA Loretta Ragford

A. J. File Copy

> Re:   <u>Grand Jury Investigation</u>
>       Patterson et al. Investigation
>       Northern District of Oklahoma
>       5-59N-7848
>       Concerning: Oscar A. Stilley

Dear Mr. O'Meilia:

    Reference is made to a letter dated January 6, 2007, from
the Special Agent-in-Charge, Internal Revenue Service, Dallas,
Texas, recommending that this grand jury investigation be
expanded to include the above-named individual as a target.

    After careful consideration, the Tax Division has determined
that the grand jury investigation should be expanded to include
Oscar A. Stilley  as a target, and you are requested to initiate
such action.  Please refer to the Tax Division transmittal letter
dated June 10, 2005, for additional information regarding this
investigation.  The procedures contained therein apply to this
new target.  If you have any questions about this case, you may
contact Tax Division attorney Charles E. Pell at 202-616-3856.
Please acknowledge receipt of this letter and its enclosures.

                    Sincerely yours,

                    EILEEN J. O'CONNOR
                    Assistant Attorney General
                        Tax Division


                EXHIBIT 15-6

- 2 -

By:
　　　　　　　　　　　　　　　$\mathcal{JRN}$

RONALD A. CIMINO
Chief, Western Criminal
Enforcement Section

Enclosure

cc:　Special Agent-in-Charge
　　　Dallas, Texas

2179582.1

EXHIBIT 15-7