IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

**FILED**

APR 29 2013

Phil Lombardi, Clerk
U.S. DISTRICT COURT

LINDSEY KENT SPRINGER,            )

      Petitioner/Movant,            )

v.                                )            Case No. 13-cv-145
                                  )            (Formerly 09-cr-043)
UNITED STATES OF AMERICA,         )

      Respondent.                   )

AFFIDAVIT OF LINDSEY KENT SPRINGER

PURSUANT TO 28 U.S.C. § 144

by: Lindsey Kent Springer
    Prisoner # 02580-063
    Federal Correctional Institution
    1900 Simler Ave
    Big Spring, Texas 79720

___Mail   ___No Cert Svc   ___No Orig Sign
___C/J    ___C/MJ    ___C/Ret'd    ___No Env
___No Cpy's   ___No Env/Cpy's   ___O/J   ___O/MJ

-i-

## TABLE OF CONTENTS

Summary of Facts In Support of Determination of Conflict, Bias and Prejudice.   1

    Count One.   .   .   .   .   .   .   .   .   4

        (i) Overt Acts "in furtherance of the conspiracy".   .   .   8

        (ii) Count One's object alleged.   .   .   .   10

        (iii) Count One's Manner and Means of the Agreement.   .   .   10

Civil Rights Grounds at Issue In Petitioner's Section 2255 Motion.   .   .11

    Count Two, Three and Four.   .   .   .   .   .   .11

    The Crime of Evading Assessment.   .   .   .   .   .   16

    U.S. Circuits.   .   .   .   .   .   .   .   17

    The Crime of Evading Payment.   .   .   .   .   .   19

    Section 7201 Proscribes Two Distinct Crimes.   .   .   .19

    Count Two, Three and Four, Allege Willfully Attempt to Evade or Defeat
Assessment.   .   .   .   .   .   .   .   .   .22

    Count Two.   .   .   .   .   .   .   .   22

    Count Three.   .   .   .   .   .   .   .   23

    Count Four.   .   .   .   .   .   .   .   24

    Count Three  and  Four.   .   .   .   .   .   .   24

    Count Five and Six.   .   .   .   .   .   .   25

    Count Two, Three and Four, Elements.   .   .   .   .   25

    Duties at Issue In  Count Two, Three and Four .   .   .   .   26

    Evidence and Allegations of Conduct for Cuonts Two, Threee and Four.   28

        (i) Evidence.   .   .   .   .   .   .   28

    Judge Friot's Switch from Assessment to Payment Criminal Offense.   .   32

    Instruction on Gift Shows Crime was Evasion of Assessment, not Payment.   34

    Sentencing Commmission Considered Section 7201 Two Distinct Crimes.   .35

    Evidence Shows Springer Was Not Concealing Assets from the IRS.   .   37

    Judge Friot Is Material Witness Regarding Petitioner's Civil Rights Claims
    .   .   .   .   .   .   .   .   38

-ii-
## TABLE OF CONTENTS (con'td)

(i) Judge Friot's Order of March 15, 2013.   .   .   .   .   42

Judge Friot's Conduct at Issue In Petitioner's Civil Rights Claims.   .   48

Judge Friot Is Disqualified from Being Judge Over Petitioner's Civil Rights's Claims Caused by Him Directly.   .   .   .   .   51

Summary of Petitioner's Grounds Where Judge Friot is Witness.   .   .   54

Bias and Prejudice Jurisprudence.   .   .   .   .   .   66

Judge Friot Contends Petitioner's § 2255 Claims are a Continuation of the Criminal Case.   .   .   .   .   .   .   .   67

Prior Instance of Bias and Prejudice.   .   .   .   .   .   72

-iii-

## TABLE OF AUTHORITIES

Bedarco v. CIR, 464 U.S. 386, 399(1983). . . . . . .60

Berger v. U.S., 255 U.S. 22,34(1921). . . . . . 53

Blakely v. Washington, 542 U.S. 296, 306(2004). . . . . 53

Bouleware v. U.S., 552 U.S. 421, 424(2008). . . . . 25

Boumedienne v. Bush, 171 L.ED 2d 41(2008). . . . . 42,71

Bradley v. Fisher, 80 U.S. 335, 352(1872). . . . . . 45

Bryan v. U.S., 524 U.S. 184, 194(1998). . . . . . 25

CIR v. Duberstien, 363 U.S. 278, 288(1960). . . . . 71

Clawson v. U.S., 114  U.S. 477, 488(1885). . . . . . 45,59

Davis v. U.S., 411 U.S. 233(1973). . . . . . . 43

Dennis v. U.S., 384 U.S. 855, 860(1966). . . . . . . 5

Dimick v. Schredt, 293 U.S. 474, 485-86(1935). . . . . . 51

Dunn v. U.S., 442 U.S. 100, 106(1979). . . . . . . 61

Ex Parte Bain, 121 U.S. 1, 10(1887). . . . . . . 46

Ex Parte Siebold, 100 U.S. 371, 376(1880). . . . . . 41,59

Ex Parte Tom Tong, 108 U.S. 556, 559-60(1883). . . . .39,40,71

Fay v. Noia, 372 U.S. 391, 399(1963). . . . . . 39,41,42,59

Finley v. U.S., 123 F.3d 1342, 1347(10th Cir. 1997). . . . 53

Flora v. U.S., 362 U.S. 145, 176(1960). . . . . . .17

Gonzales v. Edeza, 359 F.3d 146, 150(n.1)(10th Cir. 2004). . . 47

Grosso v. U.S., 390 U.S. 62, 65(1968). . . . . . .17

Gwinn v. Awmiller, 354 F.3d 1211, 1219(10th Cir. 2004). . . . 67

Freeman v. Heimann, 426 F.2d 1050, 1052(10th Cir. 1970). . . . 61

Hammerschmidt v. U.S., 265 U.S. 182, 188(1924). . . . . 5

Heflon v. U.S., 358 U.S. 415, 418(n.7)(1959). . . . . 40,71

Hensley v. Municiple Ct., 411 U.S. 345, 350(1973). . . . . 39

Hill v. U.S. 368 U.S. 424, 427(1962). . . . . . .38,44

Cohen v. U.S., 297 F.2d 760, 770(9th Cir. 1962). . . . . 18,26

-iv-
TABLE OF AUTHORITIES (con'td)

Hixon v. U.S., 268 2d 667, 668(10th Cir. 1959).   .   .   .   .   . 40

Hollywell v. Smith, 503 U.S. 47,53(1992).   .   .   .   .   . .17

Hunt v. Am. Bank & Trust Co. of Baton Rouge, 783 F.2d 1011, 1015(11th C.1986)51

In re Murchison, 349 U.S. 133, 136(1955).   .   .   .   .   . 53

Johnson v. Zerbst, 304 U.S. 458, 468(1938).   .   .   .   . 47,61

Kaufman v. U.S., 394 U.S. 217, 225(1969).   .   .   .   . 40,44,45

Kawashima v. Holder, 182 L.Ed 2d 1, 10(2012).   .   .   . .21,22,25,63

Keeny v. Tamayo-Reyes, 504 U.S. 1, 14(1992).   .   .   .   . 40

Krueter v. U.S., 376 F.2d 654, 658(10th Cir. 1967).   .   .   . 51

Laing v. U.S., 423 U.S. 161, 191(1975).   .   .   .   .   . 17

Lawn v. U.S., 355 U.S. 339, 360(1957).   .   .   .   .   . .17

McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1261(5th Cir. 1983).   . 73

McGuire v. Blount, 199 U.S. 142, 143(1905).   .   .   .   . .51

Martin v. U.S., 273 F.2d 775, 777-78(10th Cir. 1960).   .   . 40,70

Nigro v. U.S., 276 U.S. 332, 341(1928).   .   .   .   .   . 41

Offutt v. U.S., 348 U.S. 11, 14(1954).   .   .   .   .   . .53

Parrott v. VI, 230 F.3d 615, 620(n.7)(3rd Cir. 2000).   .   . 40,41

Presdor v. Rodgriguez, 411 U.S. 475, 484(1973).   .   .   . 41

Riddle v. Dyche, 262 U.S. 333, 336(1923).   .   .   .   . 40

Rubens v. Mason, 387 F.3d 183, 191(2nd Cir. 2004).   .   . 52

Sanders v. U.S., 373 U.S. 1, 13(1963).   .   .   .   .   . 39

Sansone v. U.S., 380 U.S. 343, 354(1965).   .   . 16,18,21,26,36

Sloan v. State Farm, 360 F.3d 1220, 1226(10th Cir. 2004).   . 52

Spies v. U.S., 317 U.S. 492, 497(1943).   .   .   .   .   . 16

Springer v. Horn, 06-cv-156(N.D.Ok. 2006).   .   .   .   . 29

Stirone v. U.S., 361 U.S. 212, 217(1960).   .   .   .   . 46,47

Stone v. Powell, 428 U.S. 465, 477(n.10)(1976).   .   .   . 44,59

Swain v. Pressly, 430 U.S. 372(1952).   .   .   .   .   . 71

-v-
TABLE OF AUTHORITIES (con'td)

Tomkovich v. Kansas Bd. of Regents, 159 F.3d 504, 518(10th Cir. 1998).   .   67

Townsend v. Sain, 372 U.S. 293, 311-13(1963).   .   .   .   .   44

Turner v. Bank of Amercia, 4 Dall 8, 10(1799).   .   .   .   .   .45

Turpin v. U.S., 970 F.2d 1344, 1350(4th Cir. 1992).   .   .   .   53

Quercia v. U.S., 289 U.S. 466, 470(1933).   .   .   .   .   .   52

Roberts v. Hunter, 140 F.2d 38, 39(10th Cir. 1943).   .   .   .   .   41

U.S. v. Addonizio, 442 U.S. 178, 185(1979).   .   .   .   .   .   .44

U.S. v. Adkins, 158 F.3d 1147, 1153(11th Cir. 1998).   .   .   .   .   4

U.S. v. Alston,77 F.3d 713, 720(n.17)(3rd Cir. 1996).   .   .   .   .   5

U.S. v. Anderson, 545 F.3d 1072, 1078(D.C. Cir. 2008).   .   .   .   57,61

U.S. v. Bedford, 536 F.3d 1148, 1155(10th Cir. 2008).   .   .   .   .5,6

U.S. v. Bishop, 412 U.S. 346, 359(1973).   .   .   .   .   .   .   16

U.S. v. Bishop, 2012 U.S. App. Lexis 17313(10th Cir. 2012).   .   .   .   65

U.S. v. Chisum, 502 F.3d 1237, 1244(10th Cir. 2007).   .   .   .   .   ⁻21

U.S. v. Collins, 920 F.2d 619, 630(n.13)(10th Cir. 1990).   .   .   18,26

U.S. v. Dack, 747 F.2d 1172, 1174(7th Cir. 1984).   .   .   .   .   17,19

U.S. v. Daley, 564 F.2d 645, 651(2nd Cir. 1977).   .   .   .   .   66,67

U.S. v. Daniel, 956 F.2d 540, 542(6th Cir. 1992).   .   .   .   .   18

U.S. v. Dunkel, 900 F.2d 105, 107(7th Cir. 1990).   .   .   .   18,19,20,26

U.S. v. Farr, 2006 U.S. Dist. Lexis 82702(W.D.Ok.).   .   .   .   .   20,36,46

U.S. v. Farr, 536 F.3d 1174, 1177(10th Cir. 2008)   .   .   .   .19,46,47,60

U.S. v. Fletcher, 322 F.3d 508, 513(8th Cir. 2008).   .   .   .   .   5

U.S. v. Frady, 456 U.S. 152, 165(1982).   .   .   .   .   .   .42,43

U.S. v. Galletti, 541 U.S. 114, 122(2004).   .   .   .   .   .   .   17

U.S. v. Garber, 607 F.2d 92, 97(5th Cir. 1979).   .   .   .   .   .   51

U.S. v. Gonzales-Huerta, 403 F.3d 727, 738(10th Cir. 2005).   .   .   .   51

U.S. v. Green, 239 Fed. Appx 431, 434(10th Cir. 2007).   .   .   .   19,25,35

-vi-

TABLE OF AUTHORITIES (con'td)

U.S. v. Hassebrock, 663 F.3d 906, 922(7th Cir. 2011). . . . 57,61

U.S. v. Hayman, 342 U.S. 205(1952). . . . . . . 7,39

U.S. v. Huff, 2012 U.S. Dist. Lexis 2331(n.1)(D.C. Utah). . . . . 69

U.S. v. Hunerlach, 197 F.3d 1059, 1065(11th Cir. 1999). . . . .20

U.S. v. Killough, 848 F.2d 1523, 1529(11th Cir. 1988). . . .67

U.S. v. Klein, 247 F.2d 908, 915(2nd Cir. 1957). . . . . . 4,5

U.S. v. Krehbrel, 2008 U.S. Dist. Lexis 17922(W.D.Ok.). . . . . 69

U.S. v. LaSalle, 437 U.S. 298, 312(1978). . . . . . .60

U.S. v. Mal., 942 F.2d 682, 689(9th Cir. 1991). . . . . . 20

U.S. v. Martin Linen Supply, 430 U.S. 564, 572-73(1977). . . . .17

U.S. v. Masat, 896 F.2d 88,91(5th Cir. 1990). . . . . . 20

U.S. v. McGill, 964 F.2d 222, 230(3rd Cir. 1993). . . 18,19,25,26

U.S. v. McKee, 506 F.3d 225, 238(3rd Cir. 2007). . . . . . 5

U.S. v. Mollica, 949 F.2d 723, 730(2nd Cir. 1987). . . . . 6

U.S. v. Morgan, 346 U.S. 502, 505(1954). . . . . . . 40,42

U.S. v. Miller, 471 U.S. 130, 143(1985). . . . . . . 46

U.S. v. Nicki, 427 F.3d 1286, 1293(10th Cir. 2005). . . . 52

U.S. v. Overhold, 397 F.3d 1231, 1246(10th Cir. 2002). . . . 25

U.S. v. Payne, 978 F.2d 1177, 1179(10th Cir. 1992). . . . 18

U.S. v. Prichard, 875 F.2d 789, 791(10th Cir. 1989). . . . 43

U.S. v. Richardson, 2012 U.S. Dist. Lexis 151606(E.D. Cal.). . . .21

U.S. v. Root, 585 F.3d 145, 150(3rd Cir. 2009). . . . .16,18,22

U.S. v. Rosenblatt, 554 F.2d 36, 42(2nd Cir. 1977). . . . .5

U.S. v. Scott, 37 F.3d 1564, 1575(10th Cir. 1994). . . . .5

U.S. v. Silkman, 156 F.3d 833, 834(8th Cir. 1998). . . . 21

U.S. v. Springer, 444 Fed. Appx. 256, 262(10th Cir. 2011). . . 61,63

U.S. v. Terrell, 754 F.2d 1139, 1149(5th Cir. 1985). . . . 72

-vii-

## TABLE OF AUTHORITIES (con'td)

U.S. v. Thompson, 518 F.3d 832, 852(10th Cir. 2008). . . . 18,20,25

U.S. v. Threadgill, 2012 U.S. Dist. Lexis 15685(E.D.Tenn.). . . .21

U.S. v. Vogt, 910 F.2d 1184, 1202(4th Cir. 1990). . . . . 5

U.S. v. Waldeck, 900 F.2d 555, 558(1st Cir. 1990). . . . 20,22,36

U.S. v. Warner, 23 F.3d 287, 291(10th Cir. 1994). . . . . 42

U.S. v. Yost, 24 F.3d 99, 104(10th Cir. 1994). . . . . . 24

Usery v. Fisher, 565 F.2d 137, 139(10th Cir. 1977). . . . . 61

Wainright v. Sykes, 433 U.S. 72, 84(1977). . . . . 44

Wiley v. Wainright, 793 F.2d 1190, 1193(11th Cir. 1986). . . . 67

Williams v. U.S., 984 F.2d 28, 29(2nd Cir. 1992). . . . 40,41

Wolfsom v. Palmier,396 F.2d 121, 124(2nd Cir. 1968). . . . .67

Woodford v. IVGO, 126 S.Ct. 2378, 2386(n.2)(2006). . . . . 41

## STATUTES INVOLVED

18 U.S.C. § 371. . . . . . . . 7,49

         § 3231. . . . . . . . . 59

26 U.S.C. § 1. . . . . . . . . 26

         § 61. . . . . . . . . 26

         § 63. . . . . . . . . .26

         § 6011. . . . . . . . 26,27

         § 6012. . . . . . . . .26,27

         § 6072. . . . . . . . . 26

         § 6091(a). . . . . . . 26,50,63,64,65

         § 6091(b). . . . . . . 26,27,50,63,64

         § 6531. . . . . . . . . 62,63

         § 7201. . . . . . 16.17.19.20.21.30.32.35.36.62,63

         § 7203. . . . . . . . . 26,35

-viii-
STATUTES INVOLVED (con'td)

26 U.S.C. § 7602.                                  . 60

          § 7608(b).                               .48

          § 7701(a)(11).                            59

          § 7801(a).                                59

          § 7805(b).                             62,65

          § 7805(c).                                49

28 U.S.C. § 144.                                     1

          § 455(a).                               1,66

          § 455(b).                               1,66

          § 547(1).                                 60

          § 2007.                                   61

          § 2255.       1,28,38,39,40,42,49,67,68,69,70,72

REGULATIONS INVOLVED

26 C.F.R. § 1.1-1.                                  27

          § 1.102-1.                                27

          § 1.151-1.                                .27

          § 1.6011-1(a).                         15,27

          § 1.6012-1(a)(6).                      15,27

          § 1.6091-2(1999-2004).                    63

          § 1.6091-2(2005).                         65

          § 601.103(a).                             17

MISC.

Internal Revenue Code of 1939, § 145(a).           16

                           § 145(b).               16

Article III, § 2, Cl. 3.                           19

Article I, § 9, Cl.3.                     48,50,56,65

Fourth Amendment.                                  50

-ix-
MISC (con'td)

Fifth Amendment.   .   .   .   .   .   .   . .   .50,56

Sixth Amendment.   .   .   .   .   .   .   .   .50,56

Eighth Amendment.   .   .   .   .   .   .   50

United States Sentencing Commission Guideline § 2T1.1.   .   .   35,36

Federal Rules of Evidence Rule 605.   .   .   .   .   . 52

Local Rules 40.1(b).   .   .   .   .   .   .   .69

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

LINDSEY KENT SPRINGER,              )

    Petitioner/Movant,          )

vs.                                 )      Case No. 13-CV-145
                                           (Formerly 09-cr-043)
UNITED STATES OF AMERICA,           )

    Respondent.                 )

AFFIDAVIT OF LINDSEY KENT SPRINGER
PURSUANT TO 28 U.S.C. § 144

    I, Lindsey Kent Springer (hereinafter referred to as "Petitioner"), affiant
herein, first affirm that I am lawful age and competent to testify to the following
matters:

1.   Petitioner provides this affidavit in effort to show Honorable United States
District Judge for the Western District of Oklahoma why he should recuse himself from
proceeding any further in Petitioner's civil rights action seeking a Writ of Habeas
Corpus under 28 U.S.C. § 2255's procedure.

2.   Petitioner also provides this affidavit to show the Honorable United States
District Judge for the Northern District assigned to determine the merits of Petitioner's
claims herein and those made by Petitioner's Motion filed pursuant to 28 U.S.C §
455(a) and (b) that Judge Stephen P. Friot ("Judge Friot") is a material witness in
the 76 Grounds for relief Petitioner claims in his civil rights action.

SUMMARY OF FACTS IN SUPPORT OF DETERMINATION OF CONFLICT, BIAS AND PREJDUICE.

3.   To start, Petitioner shows Judge Friot's view the role Form 1040 United States
Individual Income Tax Returns played in the alleged obligations and duties at issue
was detrimentally flawed from start to finish where during sentencing Judge Friot
enhanced Petitioner's sentence by several points concluding:

> "As for Mr. Springer, at trial, he looked at the jury and testified under oath
> that he never had an agreement with Mr. Stilley or anyone else to defraud the
> United States. He testified that he did not willfully fail to file Form 1040
> for the years 2000 through 2005. He stated he did not willfully fail to report

substantial tax liability....These statements are CATEGORICALLY FALSE. They
were made under oath.  They were made for the purpose of deceiving the jury,
and they amounted to obstruction of justice, MR. SPRINGER."

See Doc. 401, pg. 426-27 (4.23.2010)

4.     Judge Friot's decision that Count One encompassed more than Petitioner's Federal

Income Taxes in denying Petitioner's Motion for New Trial while deflecting Petitioner's

claims the Jury was allowed to consider Stilley's Federal Income Taxes within the

scope of the object of the alleged conspiracy to defraud the IRS, stated:

"Count One references Mr. Stilley's failure to file Form 1040s and alleged
conduct that is independent of Mr. Springer's income."

See Doc. 293, pg. 8; reported at U.S.A. v. Springer, 2010 Lexis 6906 (N.D. of Okla).

5.     The Tenth Circuit on direct appeal held that:

(a) "there is no substantive obligation or crime arising out of Form 1040";

(b) "the obligation to file a tax return and the criminalization of willful
    failure to do so represents statutory mandates DIVORCED from Form 1040";

(c) "an actual Form 1040 may not even be necessary to comply with the statutory
    obligations."

See U.S.A. v. Springer, 444 Fed. Appx. 256, 262(10th Cir. 2011).

6.     During Trial Judge Friot was faced with my request to include in Counts Two,

Three and Four, that the Jury find as the Grand Jury alleged that Petitioner was

"required by law" to file a "United States Individual Income Tax Return" for the

years 2000, 2003 and 2005, to which Judge Friot denied explaining:

"The Tenth Circuit Pattern Instructions confirm my conception that Tax Evasion
is a crime both as a matter of Form and as a matter of substance, which is
separate and independent of the Form of willful failure to file--of the crime
of willful failure to file.  And for that reason, it certainly comes as no
surprise to me that the Tenth Circuit pattern instruction does not contain the
extra element that Mr. Springer would propose to add, and I don't intend to
add it."

See Doc. 396, pg. 2929-2930

7.     Judge Friot during sentencing calculated the tax loss and in applying USSG §

2T1.1 for all years applied a 20% rate which the Tenth Circuit explained was allowed

due to the Sentencing Commission's advice:

-2-

"[i]f the offense involved failure to file a tax return the tax loss shall be treated as equal to 20% of the gross income..."

8.   As will be shown more fully below, the Grand Jury's alleged "manner and means"

the "defraud[ing]" allegedly occurred inexorably linked specifically to Form 1040

United States Individual Income Tax Returns, and while denying Petitioner's Motion

to Dismiss, Judge Friot explained to Petitioner what was meant by defraud in Count

One:

"as collecting taxes and getting lawful returns in by some means that is dishonest. And that is exactly WHAT IS CHARGED HERE."

See Doc. 383, pg. 150, ln 16-24.

9.   Judge Friot ordered Mr. Snoke and O'Reilly to file a Bill of Particulars which

required defining what the Grand Jury meant when it alleged "required by law" in

Counts Two, Three, Five and Six (Count Four alleged "requiring"):

"the government is directed to file a bill of particulars specifying the provisions which provided for the legal duties with which the Defendant's were obligated to comply as 'required by law' as those words are used in those Counts."

See Doc. 282, pg. 128-129.

10.   The team of Snoke and O'Reilly filed a "Bill of Particulars" which stated the

Grand Jury meant:

"Counts 2,3,5, and 6, of the indictment include the phrase 'required by law' in reference to Defendant Springer's FAILURE TO FILE A FEDERAL INCOME TAX RETURN."

See Doc. 104, pg. 1

11.   At or during Trial, Mr. Snoke and O'Reilly looked Judge Friot square in the eye,

without a wink or nod, and said:

"the evasion counts are indpendent of whether or not he filed a return because of all the affirmative acts."

See Doc. 395, pg. 2648, ln 19-24.

12.   During sentencing, the team of Mr. Snoke and O'Reilly explained their "theory"

now that the trial was over:

"Just for clarification, our THEORY is that Mr. Springer ran a business and all the payments to that, that were not actually for ministerial purposes, basically he kept in his pocket. First of all, its gross income, and then how he used it would be potentially deductible.   That is our THEORY based on the Court's Jury

instructions at trial, also our understanding of the law."

See Doc. 399, pg. 123, ln 17-24

13.  By the time we were in the middle of Trial, while Petitioner was attempting to move the Form 1040 and Instructions into the record, the team of Mr. Snoke and O'Reilly decided they did not oppose the introduction of the Forms and instructions because:

> "they're voluminous, but at least they do fall within the scope of the conspiracy, although Mr. Springer didn't file any of the FORMS IN ISSUE."

See Doc. 396, pg. 2675, ln 19-25.

14.  As these paragraphs above indicate, one minute Form 1040 United States Individual Income Tax Returns are meant by "required by law" and within the scope of the conspiracy, and at other times the charges were "independent" of Failure to File Federal Income Tax Returns at issue in All Six Counts, including Count Two, Three and Four.

15.  As is also clear and plain that both Mr. Snoke and O'Reilly, along with the endorsement of Judge Friot, during Trial, changed the crime of tax evasion charged in Counts Two, Three, and Four, from the crime of attempting to willfully evade and defeat the "assessment" of Federal Income Taxes (i.e. "tax imposed by this title"), to the separate and distinct crime of attempting to willfully evade and defeat the payment of Federal Income Taxes that had already been assesed.

.:..                                    COUNT ONE

16.  To understand Petitioner's civil rights claims regarding Count One it must first be understood that Count One is alleged as a "Klein Conspiracy." See Doc. 383, pg. 150, ln. 10-15("is commonly called a Klein conspiracy...")

17.  A Klein Conspiracy is a conspiracy to defeat the Internal Revenue Service's (herein after reffered to as "IRS") lawful function and victimize the IRS. See U.S. v. Klein, 247 F.2d 908, 915(2nd Cir. 1957)

18.  To show a Klein Conspiracy the United States must show not only (i) the requisite act of failure to properly report income, but also (ii) an agreement between at least two conspirators to impede the IRS's functioning, and (iii) knowing participation in such conspiracy. See U.S. v. Adkinson, 158 F.3d 1147, 1153(11th Cir. 1998); See

U.S. v. McKee, 506 F.3d 225, 238(3rd Cir. 2007).

19.  The essence of any conspiracy is the agreement or confederation to commit a crime. See U.S. v. Bedford, 536 F.3d 1148, 1155(10th Cir. 2008)(referring to the "substantive crime of defrauding the government.")

20.  There are two factors to the meaning of "defraud"; first, to "cheat the government out of property or money" and second, "to interfere with or obstruct one of the government's lawful functions by MEANS that are dishonest." See Hammerschmidt v. U.S., 265 U.S. 182, 188(1924); see also U.S. v. Scott, 37 F.3d 1564, 1575(10th Cir. 1994) ("we agree with Caldwell's requirement that the instructions clearly communicate that the MEANS must be dishonest, deceitful, or fraudulent in the sence of its usual meaning.")

21.  To convict Petitioner of conspiracy to defraud the IRS by MEANS of impeding one of its listed "lawful functions" the jury must find the existence of an agreement to defraud the IRS and at least one overt act by one of the conspirators in furtherance of the agreement's objective. See U.S. v. Fletcher, 322 F.3d 508, 513(8th Cir. 2002); See also U.S. v. Furkin, 119 F.3d 1276, 1279(7th Cir. 1997); U.S. v. Alson, 77 F.3d 713, 720(n.17)(3rd Cir. 1996); U.S. v. Vogt, 910 F.2d 1184, 1202(4th Cir. 1990)

22.  "It is clear the jury could not have found defendants guilty unless they found that defendants participated in or agreed to a scheme that involved patently deceitful MEANS to aid in hiding income the government was entitled to tax." See Scott, 37 F.3d at 1576

23.  What is required is that an indictment charging a defraud clause conspiracy set forth the "essential nature of the alleged fraud." See U.S. v. Rosenblatt, 554 F 2d 36, 42(2nd Cir. 1977); citing Dennis v. U.S., 384 U.S. 855, 860(1966).

24.  Although "Klein does indicate that a defendant can be convicted on a general charge of impeding and obstructing the Treasury Department in the collection of income taxes, [Klein at 916], it does NOT support the proposition that when the indictment specifically alleges a conspiracy to defraud the government by impeding and obstructing the Treasury Department in the collection of income taxes, the

defendant can be convicted of a general conspiracy to defraud the government, without showing that the conspiracy was related to income taxes." See U.S. v. Mollica, 949 F.2d 723, 730(2nd Cir. 1987).

25.   In Bedford, the Tenth Circuit set the "elements" for the alleged offense of a conspiracy to defraud the IRS as follows [536 F.3d at 1156]:

> (a) There was an agreement to violate the law;
>
> (b) Defendant knew the essential objective of the conspiracy;
>
> (c) Defendant knowingly and voluntarily participated in the conspiracy;
>
> (d) An overt act was committed in furtherance of the conspiracy's objective;
>
> (e) The two or more persons were interdependent.

26.   Mr. Snoke and O'Reilly's Trial Brief identified these five elements slightly different [Doc. 138, pg. 3]

> (a) The defendant agreed with at least one other person to defraud the United States;
>
> (b) One of the conspiractors engaged in at least one overt act furthering the conspiracy's objective;
>
> (c) The defendant knew the essential objectives of the conspiracy;
>
> (d) The defendant knew the essential objectives of the conspiracy;
>
> (e) There was interdependence among the members of the conspiracy; taht is the members, in some way or MANNER, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

27.   Judge Friot's instruction to the Jury was quite a bit more than these five elements which demonstrates the Fifth and Sixth Amendment violations claimed:

> "A violation of Section 371 of Title 18, United States Code, is charged against both defendants in Count 1.  Section 371 provides in pertinent part that 'if two or more persons conspire either to commit an offense against the United States or to defraud the United States or any agency thereof in any manner or for any purpose and one or more of such persons do any act to effect the object of the conspiracy,' then each such person shall be guilty of an offense against the United States [Doc. 396, pg. 2905, ln 17-25]
> As I stated, Defendants Springer and Stilley are charged in Count 1 with a viol-ation of Title 18, United States Code, Section 371. This law makes it a crime to willfully conspire to violate the law by defrauding the United States. The indictment charges that beginning in or about 2000 and continuing until on or about January 15, 2009, within the Northern District of Oklahoma, and elsewhere, Defendants Springer and Stilley and others unlawfully and knowingly combined, conspired, confederated, and agreed together to defraud the United States by

impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service, an agency of the United States, in the ascertainment, computation, assessment, and collection of revenue, that is federal individual income taxes.

Section 371 of 18 United States Code makes it a crime to willfully conspire to violate the law by defrauding the United States. To find a defendant guilty of this crime as charged in Count 1, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt: First, that the defendant agreed with at least one othe person to violate the law by defrauding the United States; second, that one of the conspirators engaged in at least one overt act furthering the conspiracy's objectives; third, that the defendant knew the essential objective of the conspiracy; fourth, that the defendant participated in the conspiracy knowingly, willfully, and voluntarily; and fifth, that there was interdependence among the members of the conspiracy. That is that the members of the conspiracy in some way or MANNER intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

You are further instructed that to 'defraud' the United States means not only to intentionally cheat the government out of property or money but also to interfere with or obstruct by deceit, craft, or trickery or at least by MEANS that are dishonest one of the following lawful government functions; The lawful government functions which the indictment charges were interfered with by the defendants in this case are the Internal Revenue Service's ascertainment, computation, assessment and collection of revenue.

To find a defendant guilty of a conspiracy to defraud the United States, the government must prove beyond a reasonable doubt that the defendant knowingly and willfully acted in the manner set forth in the preceeding paragraph. In order to find a defendant guilty of a conspiracy to defraud the United States, the government must prove beyond a reasonable doubt that the defendant knew the purpose or goal of the agreement or understanding and that the defendant deliberately entered into the agreement intending in some way to accomplish the goal or purpose of the conspiracy by this common plan or action."

[pg. 2906, 2907 and 2908 through ln 5]

"A conspiracy or agreement to defraud the United States, like any other kind of agreement or understanding, need not be formal, written, or even expressed directly in every detail. In order to find a defendant guilty of a conspiracy to defraud the United States, the government must prove beyond a reasonable doubt that one of the conspiractors engaged in at least one of the overt acts charged in the indictment and that this particular overt act was taken in furtherance of the conspiracy's objective.

In order to find a defendant guilty of a conspiracy to defraud the United States, you, the jury, must unanimously agree among yourselves that the same overt act was taken in furtherance of the conspiracy. If you do not unanimously agree that at least one of the overt acts charged in the indictment was taken in furtherance of the conspiracy's objective, then you must find the defendants not guilty of the conspiracy charge.

The term 'overt act' means some type of outward objective action performed by one of the parties; two, or one of the members of the agreement or conspiracy which evidences that agreement. To find a defendant guilty of a conspiracy, you must unanimously agree that the same overt act was committed by the same conspiractors.

The government is not required to prove that more than one of the overt acts charged in the indictment was committed, but you must unanimously agree among yourselves with respect to at least one of the overt acts charged in the

-7-

indictment. In that regard, you are instructed that Count 1 of the indictment charges the following acts in furtherance of the conspiracy. The paragraph numbers below refer to the paragraph numbers as they appear in the indictment."

[pg. 2908, beginning at line 6, through pg. 2909, ln 1 through 13]

(i) Overt Acts "in furtherance of the Conspiracy"

28. The "overt acts" alleged by the Grand Jury the Trial Judge instructed the Jury they must be unanimous on at least one to find Petitioner guilty of the offense in Count One are alleged as follows:

¶ 15) On or about September 16, 2005, Defendant SPRINGER told Internal Revenue Service employees that all fund he received are gifts and donations, that he does not have any income, and that he does not provide and services for payment.

¶ 16) On or about January 20, 2006, Defendant STILLEY stated to Internal Revenue Service employees that people give money to Defendant SPRINGER for his ministry, and expect no services in return.

¶ 17) On or about March 9, 2006, Defendant Stilley provided the Grand Jury with a document titled "RESPONSE TO SUBPOENA" stating that "LINDSEY SPRINGER does not charge for his services," and purporting to list "any money paid, given, transferred, or provide to LINDSEY SPRINGER for any purpose."

¶ 18) On or about June 24, 2003, Defendant STILLEY caused to be deposited a check for $ 112,500 into his IOLTA account.

¶ 19) On or about June 30, 2003, Defendant STILLEY caused to be written a check for $ 14,359 from his IOLTA account to Defendant SPRINGER.

¶ 20) On or about July 21, 2003, Defendant STILLEY caused to be written a check for $ 35,000 from his IOLTA account to Defendant SPRINGER.

¶ 21) On or about July 31, 2003, Defendant STILLEY, using funds from his IOLTA account, purchased a $ 37,000 cashier's check for Defendant SPRINGER.

¶ 22) On or about July 31, 2003, Defendant SPRINGER used the $ 37,000 cashier's check to purchase a Chevrolet Corvette.

¶ 23) On or about November 6, 2003, Defendant STILLEY caused $ 375,059.90 to be transmitted to his IOLTA account.

¶ 24) On or about November 7, 2003, Defendant STILLEY caused three cashier's checks payable to Defendant SPRINGER in the amount of $ 20,000 each to be issued from his IOLTA account.

¶ 25) On or about November 7, 2003, Defendant STILLEY purchased $ 18,000 in money orders for Defendant SPRINGER using funds from his IOLTA account.

¶ 26) On or about August 8, 2005, Defendant SPRINGER sent an email to a third person containing the account number, routing number, and name of Defendant STILLEY's IOLTA account.

-8-

⏎

¶ 27) On or about August 11, 2005, Defendant SPRINGER and STILLEY caused $ 192,000 to be transmitted to Defendant STILLEY's IOLTA account for Defendant SPRINGER.

¶ 28) On or about August 15, 2005, Defendant STILLEY caused $ 166,000 to be transmitted from his IOLTA account for the purchase of a motor home titled in the name of Defendant SPRINGER and his wife.

¶ 29) On or about August 18, 2005, Defendant SPRINGER and STILLEY caused $ 58,000 to be transmitted to Defendant STILLEY's IOLTA account for Defendant SPRINGER.

¶ 30) On or about August 26, 2005, Defendant Stilley caused § 5,560 to be transmitted from his IOLTA accuont to Oklahoma Truck and Trailer Sales for the purchase of a trailer titled in the name of Defendant SPRINGER.

¶ 31) On or about September 1, 2005, Defendant Stilley caused $ 25,813 to be transmitted from his IOLTA account to Lexus of Tulsa for the purchase of a Lexus titled in the name of Defendant SPRINGER and his wife.

¶ 32) On or about September 19, 2005, Defendant STILLEY purchased two $ 10,000 cashier's checks payable to Defendant SPRINGER with funds from Defendant STILLEY's IOLTA account.

¶ 33) On or about November 9, 2005, Defendant STILLEY purchased a $ 10,000 cashier's check payable to Defendant SPRINGER with funds from Defendant STILLEY's IOLTA account.

¶ 34) On or about November 29, 2005, Defendant STILLEY purchased a § 9,000 cashier's check payable to Defendant SPRINGER with funds from Defendant STILLEY's IOLTA account.

¶ 35) On or about December 9, 2005, Defendant SPRINGER caused $ 50,000 he earned from the sale of a motor home to be transmitted to Defendant STILLEY's IOLTA account.

¶ 36) On or about May 2, 2006, Defendant STILLEY caused to be written a $ 1,993.56 check from his IOLTA account to Defendant SPRINGER.

¶ 37) On or about July 25, 2006, Defendant STILLEY caused to be deposited a $ 175,000 check in his IOLTA account.

¶ 38) On or about August 3, 2006, Defendant STILLEY caused to be written a $ 25,000 check from his IOLTA account to Bondage Breaker's Ministry.

¶ 39) On or about January 15, 2009, Defendant SPRINGER represented that he earned no income and that the money he received was given "without any expectation for anything from anybody."

29. The last statement in Count One is "All in violation of Title 18, United States Code, Section 371.

-9-

(ii) Count One's object alleged:

30.  Count One's alleged object reads as follows:

"Beginning in or about 2000, and continuing until on or about January 15, 2009, within the Northern District of Oklahoma, and elsewhere, Defendants SPRINGER and STILLEY, and others, both known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together to defraud the United States by ipeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service, an agency of the United States, in the ascertainment, computation, assessment, and collection of revenue, that is, federal income taxes."

See Doc. 2, pg. 2-3, ¶ 9

31.  The Grand Jury then alleges Petitioner and Stilley entered into an agreement to prevent the IRS from ascertaining, computing, assessing, and ultimately collecting Federal Income Taxes.

32.  Paragraph 9 gives no indication of the person or people liable for the federal income taxes the alleged agreement was to defeat the collection of.

(iii) Count One's Manner and Means of the agreement

33.  Count One does however allege 5 paragraphs describing the manner and means by which the "object of the conspiracy was to be accompished, and was accomplished":

¶ 10)  Defendant SPRINGER  and STILLEY would and did use Deferidant STILLEY'S IOLTA account to conceal Defendant SPRINGER's income, assets, and personal expenses;

¶ 11)  Defendant SPRINGER would and did use Defendant STILLEY's credit card to pay DefendantSPRINGER's personal expenses;

¶ 12)  Defendants SPRINGER and STILLEY would and did use cashier's checks, money orders, cash, and other means to avoid creating the usual records of financial transactions and to coneal Defendant SPRINGER's income;

¶ 13)  Defendants SPRINGER and STILLEY would and did knowingly misrepresent the source and nature of Defendant SPRINGER's income to Internal Revenue Service employees, the Grand Jury, and the Department of Justice; and

¶ 14)  Defendant SPRINGER and STILLEY would and did refrain from filing forms with the Internal Revenue Service, including Forms 1040 and 1099.

34.  In each of these 5 paragraphs the "federal income taxes" at issue were "Springer's income," Springer's assets, Springer's personal expenses, and something that is as a result of Springer refraining from filing Form 1040 with the IRS and apparently Stilley refraining from filing Form 1040 and 1099.

-10-

CIVIL RIGHTS GROUNDS AT ISSUE IN PETITIONER'S
SECTION 2255 MOTION

35.   At least three different times in Count One alleged Petitioner did not timely file "an individual income tax return":

> ¶ 6 "Springer last filed an individual income tax return with the Internal Revenue Servicein the late 1980s";

> ¶ 14 "Springer...would and did refrain from filing forms with the Internal Revenue Service, including Forms 1040 and 1099."

> ¶ 8 "General Allegations paragraphs 1 through 7 are incorporated as if fully set forth herein."

36.   Everyone agrees the object of the conspiracy is alleged by the Grand Jury to defraud the IRS out of Federal Income Taxes.

37.   Whose "Federal Income Taxes" becomes the center piece of Petitioner's civil rights claims.

38.   To begin with, Judge Friot was required to ascertain the extent of the Secretary's jurisdiction for criminal prosecution involving tax offenses and that Judge Friot obviously did not do.

39.   The June 3, 2005 proffered letter from Mr. Lasenski to Assistant Attorney General Eileen J. O'Connor clearly states the years at issue are for 2000 through 2004, and states:

> "I have authorized the commitment of Internal Revenue Service resources to assist in the investigation of potential Title 26 and Title 26-related violations that Lindsey K. Springer may have committed for the years 2000 through 2004."

See Doc  80-10; 224-16

40.   During the July 2, 2009 motions hearing, Judge Friot informed Mr. Snoke and O'Reilly that:

> "He has shown me several places in the indictment where it says he failed to file an individual income tax return as required by law."

See Doc. 383, pg. 12, ln 23-25

41.   As identified in ¶ 10, Mr. Snoke and O'Reilly explained that the phrase "required by law is "in reference to Defendant Springer's FAILURE TO FILE A FEDERAL INCOME TAX

RETURN." See Doc. 104, pg. 1

42. After the team of Snoke and O'Reilly numerous times resisted identifying any Treasury Regulations relied upon in the Grand Jury's "required by law" allegations, when in their Trial Brief they claim their theory of prosecution involves "various provisions of the Internal Revenue Code(and regulations thereunder) specifying the events that trigger an obligation to file a return," See Doc. 138, pg. 12, and where they also claimed "throughout this period of time, Defendant Springer and Stilley did not file any income tax Forms with the IRS including Form 1040 and 1099,", Id. at pg. 7, Judge Friot ordered Snoke and O'Reilly to file a Second Bill of Particulars:

"specifying the 'regulations thereunder'...specifically relied upon by the government as specifying events triggering an obligation to file a tax return."

See Doc. 192, pg.1

43. On July 2, 2009, Judge Friot had denied my dismissal claims based upon Form 1040 not complying with the Paperwork Reduction Act applicable to all Six Counts, holding:

"It is settled law that the requirement to file a tax return is mandated by statute, not by regulation and that explicit statutory requirements such as those involving the filing of income tax returns are not subject to the Paperwork Reduction Act."

See Doc. 383, pg 133, ln 18-24

44. Prior to arriving at this "not by regulation" decision, Judge Friot explained:

"The question presented by this motion is whether the prosecution should be dismissed because the defendants contend the TAX REPORTING FORMS and publications IN QUESTION did not comply with the Paperwork Reduction Act,.."

See Doc. 383, pg. 132, ln 16-23

45. There are two glaring contradictions in both Snoke and O'Reilly's claims regarding the role Form 1040 United States Individual Income Tax Returns play in the Six Counts of the Grand Jury Indictment, one being Form 1040s were required by law to be filed with the IRS and the other is that Form 1040 was not even involved in the conduct alleged by the Grand Jury.

46. Judge Friot also provides two different versions of the role "regulations" play in the Grand Jury's allegation Petitioner was "required by law" to file Form

1040 United States Individual Income Tax Returns, one being, as admitted by Snoke and O'Reilly in their Trial Brief and their Second Bill of Particulars that Treasury Regulations were involved in the duties and obligations Petitioner allegedly intended to willfully violate, and the other was that regulations were not obligating Petitioner to file a tax return, the "tax reporting forms...in question."

47.   After Judge Friot approved Petitioner to present a good faith defense that he did not willfully fail to file the Form 1040 United States Individual Income Tax Returns alleged by the Grand Jury in ¶¶ 6,8,14,41,43,45,47 and 49, by finding "the issue is whether you have a basis for a good faith belief that the Form 1040 violated the Paperwork Reduction Act," See Doc. 392, pg. 1931, ln 5-7, Judge Friot instructed the Jury he had "ruled Form 1040 did not and does not violate the Paperwork Reduction Act." See Doc. 393, pg. 1949, ln 16-18

48.   Petitioner has intrinsically inspected the record prior to Judge Friot's telling the Jury what he had ruled and Petitioner cannot find such a ruling anywhere in the record.

49.   What Judge Friot had ruled was that Form 1040 was not subject to the Paperwork Reduction Act, not that it complied with the Paperwork Reduction Act.

50.   Judge Friot in his decision to allow Petitioner to proceed with a good faith defense that Form 1040 was believed to have violated the Paperwork Reduction Act had asked Petitioner this question:

> "I need you to cite me a decision by an Article III Judge that says that a STATUTORY REQUIREMENT TO FILE A FORM 1040 is subject to the Paperwork Reduction Act."

See Doc. 392, pg. 1889, ln 14-17.

51.   Judge Friot instructed the Jury on the element of willfulness explaining:

> "proof of the crimes charged in the INDICTMENT must include proof beyond a reasonable doubt of an element known in law as willfulness...I will admit evidence as to defendant's understanding of the Paperwork Reduction Act at times relevant to the indictment for your consideration with respect to the issue of willfulness."

See Doc. 393, pg 1950

52. As Petitioner testified in his Declaration in support of his Motion filed in this civil rights action:

> "I would never have chosen to testify at trial given a proffer, or met with the United States' Internal Revenue Service employees about whether I was required to file a United States Individual Income Tax Return for any year had I been made aware, publicly or privately, that Form 1040 was divorced from the requirements of the law."

See Springer Declaration filed in Support of his Motion, pg. 37, ¶ 282.

53. After Trial Petitioner moved for a new Trial involving Count One which was based on the Court's expanding, or allowing the "Federal Income Taxes" alleged in ¶ 9 of Count One to expand beyond that of Petitioner, to include Oscar Stilley's State of Arkansas earned gross income, and that when Judge Friot instructed the Jury he had Found Form 1040 did not and does not violate the Paperwork Reduction Act, he invaded my Sixth Amendment right to Jury Trial over my objection.

54. In denying Petitioner's Motion for New Trial on these grounds Judge Friot resorted back to his reliance upon then Chief Judge Claire V. Eagan's published decision in Springer v. IRS, 447 F.Supp. 2d 1235, 1238(N.D. Ok. 2006) which stated:

> "the requirement to file a tax return is mandated by statute, not by regulation and such explicit statutory requirements are not subject to the PRA."

See Doc. 293, pg. 6.

54. As quoted by Petitioner in ¶ 4 above, Judge Friot also resorted to Form 1040 and the Grand Jury's allegation in ¶ 14 to justify allowing the Jury to consider Oscar Stilley's Federal Income Tax liabilities as the object of the conspiracy alleged in Count One at ¶ 9; See Doc. 293, pg. 8

55. At sentencing, Judge Friot expanded Count One even further stating:

> "The statement of the object of the conspiracy in paragraph 9 of the indictment was most assuredly not confined to these defendants own individual income taxes."

See Doc. 401, pg. 410, ln 20-23

56. Not a single "overt act" listed from ¶¶ 15 to 39 allege any act to further any agreement to defraud the IRS of its lawful functions other than possibly that of Petitioner Federal Income Tax obligations.

-14-

57.  It is also important to remember that the June 3, 2005 letter of referral only addresses Petitioner's tax liabilities for 2000 through 2004 and no referral is in the criminal docket that shows the Grand Jury was referred anyone elses "Federal Income Taxes" and nothing in the manner and means section goes beyond what the Grand Jury alleges Petitioner's income, expenses, and deductions were concealed.

58.  Mr. Snoke and O'Reilly cited to 26 CFR §§ 1.6011-1 and 1.6012-1 in their Second Bill of Particulars explaining what the Grand Jury means when it alleged "required by law" and § 1.6011-1(a) is entitled "Use of Prescribed Forms" and directs that each taxpayer is required to "set forth fully and clearly the information required to be included therein" and "Returns which have not been so prepared will not be accepted as meeting the requirements of the code." Springer's Declaration filed in support of his Motion for Habeas Relief, pg. 51, ¶ 389.

59.  26 CFR § 1.6012-1(a)(6) entiled "Forms of Return" and states:

> "Form 1040 is prescribed for general use in making the return required by this paragraph."

See Springer's Declaration filed in support of his Motion for Habeas Relief, ¶ 391

60.  Petitioner has shown that Count One was expanded to include Oscar Stilley's Form 1040 United States Individual Income Tax Return liability which was neither authorized by the Secretary of the Treasury in his proffered letter of referral.

61.  Why Judge Friot allowed Count One to expland to include Stilley's 1040 Tax liability providing a broader base in which the Trial Jury could convict, and where learning on October 26, 2011, Form 1040 United States Individual Income Tax Returns are "divorced" from the statutory obligation to file an income tax return and the criminalization of willful failure to do so, and including the taxes due and owing as figured, or allegedly required to be figured on Form 1040, demonstrates the charge and conviction as to Count One are obtained and being maintained in violation of Petitioner's Fourth, Fifth and Sixth Amendment rights demonstrating why Judge Friot must be disqualified from consideration of Petitioner's civil rights claims.

-15-

COUNT TWO, THREE, AND FOUR

62. To understand Petitioner's civil rights claims regarding Count Two, Three, and Four, it must first be understood which crime proscribed by 26 U.S.C. § 7201 was alleged by the Grand Jury.

63. Congress's § 7201 has been described as the capstone of a series of sanctions calculated to induce fullfillment of every duty under the income tax laws, See Spies v. U.S ., 317 U.S. 492, 497(1943), reads in relevant part:

> "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title [26] or the payment thereof...and upon conviction thereof shall be...imprisoned not more than 5 years."

64. What allows Count Two, Three, and Four to be considered separate crimes, instead of a single crime hinges upon the language of the Statute. See U.S. v. Root, 585 F.3d 145, 150(3rd Cir. 2009)

THE CRIME OF EVADING ASSESSMENT

65. Section 7201 is the progeny of former § 145(a) and (b) of the Internal Revenue Code of 1939.  See U.S. v. Bishop, 412 U.S. 346, 359(1973); citing U.S. v. Sansone, 380 U.S. 343(1965).

66. The term "tax imposed by this title, or the payment therof" is not defined in the "legislative history" of § 145(a) or (b) of the 1939 Code.  Spies, 317 U.S. at 495.

67. The phrase "tax imposed by this title" is described in Spies, Id, this way:

> "The United States has relied for the collection of its income tax largely upon the taxpayer's own disclosures rather than upon a system of withholding the tax from him by those from whom income may be received."

68. Section 7201 is "the capstone of a system of sanctions which singly or in combination were calculated to induce prompt and forth right fullfillment of every duty under the income tax law and that provide a penalty suitable to every degree of delinquency." Bishop, 412 U.S. at 359

69. "Our income tax system is primarily a self reporting and self assessment one. It is 'based upon the voluntary assessment and payment, not upon distraint." See

-16-

Laing v. U.S., 423 U.S. 161, 191(1975); quoting Flora v. U.S., 362 U.S. 145, 176(1960)

70.    "In assessing income taxes the Government relies primarily upon the disclosure by the taxpayer of the relevant facts. This disclosure it requires to make in his annual return." See Helvring v. Mitchell, 303 U.S. 391, 399(1938)

71.    "The Federal tax system is basically one of self assessment, whereby each tax-payer computes the tax due and then files the appropriate FORM OF RETURN along with the requisite payment."  See U.S. v. Galletti, 541 U.S. 114, 122(2004)(quoting  26 CFR § 601.103(a)(2003) version.)

72.    'The "Internal Revenue Code ties the duty to pay Federal Income Taxes to the duty to make an income tax return." Hollywell v. Smith, 503 U.S. 47, 53(1992).

73.    In Grosso v. U.S., 390 U.S. 62, 65(1968), the Supreme Court referred to those liable for the payment of "wagering excise tax" as a statutory "scheme" where those liable for the tax "are required to submit each month Internal Revenue Service Form 730."

74.    In Lawn v. U.S., 355 U.S. 339, 360(1957) the Supreme Court for the first time identified the crime of "attempting to evade assessment of his income taxes" and separating that crime from the crime  of "attempting to evade the payment of income tax." 355 U.S. at 361

U.S. Circuits

75.    "Section 7201 of the Internal Revenue Code defines two DISTINCT crimes: (1) the willful attempt to evade or defeat any tax and (2) the willful attempt to evade or defeat the 'payment of tax.'" See U.S. v. Dack, 747 F.2d 1172, 1174(7th Cir. 1984); citing Sansone, 380 U.S. at 354.

76.    'Taxpayer may defend charge of willfully evading assessment of taxes by proving there was no tax due and owing." U.S. v. Martin Linen Supply, 430 U.S. 564, 572-73 (1977).

77.    Evasion of tax assessment, which involves efforts to shield taxable income to prevent the IRS from determining one's tax liability, and evasion of tax payment,

-17-

which concerns conduct designed to place assets out of the reach of the IRS to prevent the IRS from setling one's tax liability. See Root, 585 F.3d at 151; citing Sansone, 380 U.S. at 354; and U.S. v. McGill, 964 F.2d 222, 230(3rd Cir. 1993)

78.   Acts affirming or alleging attempts to evade assessment are described as "foiling the IRS about your income." U.S. v. Dunkel, 900 F.2d 105, 107(7th Cir.1990); See also Cohen v. U.S., 297 F.2d 760, 770(9th Cir. 1962)(evasion of assessment acts are "failing to file a return, filing a false return, failing to keep records, concealing income, or other means.")

79.   When tax evasion arises from the failure to file a tax return, no formal assessment is necessary because the deficiency is deemed to arise by operation of law on the date a return should  have been filed. U.S. v. Daniel, 956 F.2d 540, 542 (6th Cir. 1992)

80.   The Tenth Circuit in U.S. v. Collins, 920 F.2d 619, 630 and n.13(10th Cir. 1990) explained  Collins' tax evasion was effectuated by failing to file 1040 Forms, and placing Form 1040 "at issue" and that Form 1040 was "inexorably linked to the stattory requirement to pay taxes."; See also U.S. v. Payne, 978 F.2d 1177, 1179(10th Cir. 1992)("When tax evasion based on failure to file return, statute of limitations begins to run when return is due.")

81.   In the context of the Statute of Limitations, the Tenth Circuit in U.S. v. Thompson, 518 F.3d 832, 857(10th Cir. 2008) explained the limitations is measured by whether the defendant has already incurred a substantial tax deficiency [evasion of payment], or if a tax deficiency had not yet been incurred [evasion of assessment]. (explaining also that failure to file evasion is measured by the date the return was due and in post deficiency cases when the last act occurred after the deficiency was made.)

82.   Here, as can be plainly seen, the crime of willful attempt to evade the tax imposed, i.e. "assessment", pertains to concealing receipt of income that is subject to some sort of tax under Title 26 and include failure to file Form 1040 United States Individual Income Tax Returns.

-18-

THE CRIME OF EVADING PAYMENT

83.  In U.S. v. Farr, 536 F.3d 1174, 1177(10th Cir. 2008) she was charged with evading the payment not assessment.

84.  In Dunkel, 900 F.2d at 107, he was accused of "secreting assets after taxes have been assessed."

85.  "General affirmative acts associated with evasion of payment involve some type of concealment of the taxpayer's ability to pay his or her taxes or the removal of assets from the reach of the Internal Revenue Service." See McGill, 964 F.2d at 230

86.  The Tenth Circuit explained evasion of payment included "concealing and attempted to conceal...the nature and extent of his assets by placing funds and property in the names of nominees, and by filing false and fraudulent offer in compromise (supported by a false declaration under oath on Form 433-A.)" See U.S. v. Green, 239 Fed. Appx. 431, 434(10th Cir. 2007)(unpublished)

SECTION 7201 PROSCRIBES TWO DISINCT CRIMES

87.  As Petitioner demonstrated in the "Crime of Evasion of Assessment" section above, the Seventh Circuit in Dack, 747 F.2d at 1174, citing to Sansone, at 380 U.S. at 354, held:

88.  "Section 7201 of the Internal Revenue Code defines TWO DISTINCT CRIMES." The problem in Counts Two, Three and Four's Jury conviction and judgment is that the Grand Jury alleged the crime of evading assessment and the Jury at trial was instructed to find whether I committed the crime of evasion of payment.

89.  Before I show how and when the switch occurred, I first must show how the Federal Courts, including Judge Friot, evolved into an incorrect constitutional position that Section 7201 proscribed one crime or offense, instead of two separate offenses or crimes.

90.  Whether the term "crime" as appearing at Article III, Section 2, Cl. 3 and the Sixth Amendemnt is used, or the term offense, they both mean "transgression of

-19-

law." See Moore v Illinois, U.S. 14 How. 13, 14 L.Ed 306 at 19(1852)

91.   Judge Friot has actually explained his position in U.S. v. Farr, 2006 U.S.

Dist. Lexis 82702 while addressing duplicity claims under § 7201, stated:

> "Although the Tenth Circuit has apparently not addressed duplicity in the
> context of § 7201, other circuits agree that TAX EVASION IS A SINGLE CRIME."

92.   One such "circuit" is the Seventh in Dunkel, 900 F.2d at 107, which held:

> "We likewise decline to constrict the scope of § 7201 by defining 'tax evasion'
> as TWO DISTINCT CRIMES...We hold that § 7201 proscribes the SINGLE CRIME OF
> TAX EVASION."

93.   The Tenth Circuit in Thompson, 518 F.3d at 857, stated there was no reason

to distinguish between "evasion of assessment and evasion of payment cases."(citing

U.S. v. Hunerlach, 197 F.3d 1059, 1065(11th Cir. 1999)

94.   In Hunerlach, the Eleventh Circuit stated Section 7201 proscribed "the single

crime of tax evasion." 197 F.3d at 1065.

95.   The Ninth Circuit in U.S. v. Mal., 942 F.2d 682, 688(9th Cir. 1991) held "we

likewise decline to constrict the scope of § 7201 by defining 'tax evasion' as

two separate and distinct offenses.")(also explaining "evasion of payment and evasion

of assessment are not distinctly different kinds of conduct.")

96.   In U.S. v. Masat, 896 F.2d 88, 91(5th Cir. 1990) the Fifth Circuit held:

> "In truth, there is one crime, the evasion of taxes, and it is of no moment that
> both assessment and payment might have been evaded."

97.   In U.S. v. Waldeck, 909 F.2d 555, 558(1st Cir. 1990) after citing to Masat

and the Seventh Circuit's decision in Dunkel which the First Circuit quoted Dunkel

as saying "Section 7201 creates only one crime," 909 F.2d at 558, the First Circuit

explained its rejection of the one crime or offense holding regarding § 7201 and

said:

> "we are not so bold as to either ignore or shunt Sansone aside."

98.   The First Circuit in Waldeck also held evasion of assessment is charged where

Waldeck was alleged to have failed to file timely "an income tax return [for the

year charged]...by failing to pay to the Internal Revenue Service said income tax

-20-

and by taking affirmative steps to conceal from all proper officers of the United States of America his tax and correct income and tax liability." Waldeck, 909 F.2d at 558

99. In Sansone, 380 U.S. at 354, the Supreme Court held:

> "As this Court has recognized, § 7201 includes the offense of willfully attempting to evade or defeat the assessment of a tax as well as the offense of willfully attempting to evade or defeat the payment of a tax. Lawn v. U.S., supra."

100. The Tenth Circuit in U.S. v. Chisum, 502 F.3d 1237, 1244(10th Cir. 2007) held Mr. Chisum's "tax evasion" charges were "predicated on the filng of false information and not failure to file."

101. Recently, the Supreme Court made undeniably certain all Federal Courts understood Section 7201 proscribes two distinct and separate crimes stating in Kawashima v. Hölder, 182 L.Ed 2d 1, 10 (2.21.12) that:

> "§ 7201 includes two offenses."

102. In U.S. v. Silkman, 156 F.3d 833, 834(8th Cir. 1998), the Eight Circuit held § 7201 is violated either by "willfully attempting to defeat the IRS's ascertainment of [His] tax liability, or by willfully attempting to evade the payment of tax."

103. Recenlty, two Federal District Judges addressing 26 U.S.C. § 7201 and the distinction between the crime of assessment evasion and payment evasion.

104. In U.S. v. Threadgill, 2012 U.S. Dist. Lexis 15685(E.D. Tenn. 11,1,12) the Court stated:

> "The Government concedes Mr. Threadgil is charged with evasion of the assessment, not payment, of his tax obligations. (citing Kawashima v. Hölder, 132 S. Ct 1166, 182 L.Ed 2d 1 (2012).)"

105. And in U.S. v. Richardson, 2012 U.S. Dist. Lexis 151606(E.D. Cal. 10.22.12) the Court stated:

> "Section 7201 is widely interpreted to include TWO CRIMES; the offense of 'willfully attempting to evade or defeat the assessment of a tax as well as the offense of willfully attempting to evade or defeat the payment of a tax."

106. The Third Circuit rejected the Government's argument that Mr. Root was charged

-21-

in a single Count with "evading both the assessment and payment taxes." Root, 585
F.3d at 152; see also Waldeck, 909 F.2d at 557-58("we acknowledge that the phrase
'failing to pay to the internal revenue service said income tax' could be as an
evasion-of-payment charge but it was overborn by the other clear and unequivocal
evasion-of-assessment charges.")

107. The actual quote from Kawashima, 182 L.Ed 2d at 10 reads:

> "§ 7201 includes two offenses; 'the offense of willfully attempting to evade
> or defeat the assessment of a tax as wellas the offense of willfully attemping
> to evade or defeat the payment of tax.' Sansone v. U.S., 380 U.S. 343, 354(1965)

COUNT TWO, THREE AND FOUR, ALLEGE WILLFULLY ATTEMPT TO EVADE OR DEFEAT ASSESSMENT

108. Having showed that Section 7201 includes two separate and distinct crimes, one
being willful attempt to evade or defeat the assessment of a particular tax, and the
other crime being willfully attempting to evade or defeat the payment of a tax, Pet-
itioner next shows the charges in Counts Two, Three and Four, reveal Petitioner was
charged with the crime of willful evasion of assessment but was convicted of evasion
of payment.

COUNT TWO

109. Count Two alleged paragraphs 1,2,5 and 6 were incorporated therein which
alleged (1) Petitioner lived in the City of Kellyville, State of Oklahoma; (2)(a)
Petitioner used the name Bondage Breaker's Ministry to solicit and receive money;
(2)(b) Petitioner stated the purpose of Bondage Breaker's Ministry was to "get rid
of the Internal Revenue Service";(5) both Petitioner and Stilley earned income in
various ways; (6) and that Petitioner last filed a Federal Income Income Tax Return
in the late 1980s.

110. Count Two alleged Petitioner received taxable income in year 2000 and that due
to 2000's taxable income Petitioner owed a substantial income tax.

111. Count Two alleged the crime Petitioner committed was attempted willfully to evade
and defeat the individual income tax due and owing by (1) failing to file a "United
States Individual Income Tax Return" as "required by law" and (2) committing various

-22-

affirmative acts of evasion, including:

> (i) receiving income in a fictitious name;
>
> (ii) directing individuals to write "donation" or "gift" on checks that were payment for services;
>
> (iii) directing individuals to pay for services by cashier's checks;
>
> (iv) using a check cashing business to cash checks;
>
> (v) using money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal income;
>
> (vi) making false statements to agents and employees of the IRS;
>
> (vii) and otherwise concealing and attempting to conceal from all proper officers of the United States of America Petitioner's true and correct income.

112. Count Two is clearly alleging the Crime or Offense of willfully attempting to evade and defeat the assessment of Petitioner's Federal Income Taxes. Doc. 2, ¶ 40,41

COUNT THREE

113. Count Three alleged paragraphs 1 through 7 were incorporated herein which in addition to Count Two's paragraph 1,2,5 and 6, allege (3) Stilley was an attorney living in the State of Arkansas; (4) Stilley had an IOLTA bank account; (7) and Stilley last filed a Federal Income Tax Return reporting his gross income in the late 1980s.

114. Count Three alleged Petitioner received taxable income in year 2003 and that due to 2003's taxable income Petitioner owed a substantial income tax.

115. Count Three alleged the crime Petitioner committed was attempted willfully to evade and defeat the individual income tax due and owing by (1) failing to file a "United States Indivdual Income Tax Return"; and (2) committing various affirmative acts of evasion, including:

> (i) directing individuals to make checks payable to Bondage Breaker's Ministry;
>
> (ii) using a check cashing business to cash checks;
>
> (iii) accepting collectible coins as payment for services;

116. Count Three is clearly alleging the Crime or Offense of wilfully attempting to evade and defeat the assessment of Petitioner's Federal Income Taxes. Doc.2, ¶ 42,43

COUNT FOUR

117. Count Four alleged paragraph 1 through 7 were incorporated herein which are set forth in Count Two and Three above.

118. Count Four alleged Petitioner received taxable income in year 2005 and that due to 2005's taxable income Petitioner owed a substantial income tax.

119. Count Four alleged the crime Petitioner committed was attempted willfully to evade and defeat the individual income tax due and owing by (1) failing to file a "United States Individual Income Tax Return"; and (2) committing various affirmative acts of evasion, including:

    (i) directing individuals to make checks payable to Bondage Breaker's Ministry;

    (ii) used a check cashing business to cash checks.

120. Count Four is clearly alleging the Crime or Offense of willfully attempting to evade and defeat the assessment of Petitioner's Federal Income Taxes. Doc.2, 44,45

COUNT THREE AND FOUR

121. Count Three and Four also charge Stilley with aiding and abetting Petitioner's willful attempt to evade and defeat the assessment of Federal Income Taxes in violation of Title 18, United States Code, § 2.

122. Count Three and Four each allege the following acts in aiding and abetting Petitioner's willful attempt to evade and defeat the assessment of Federal Income Taxes:

    (i) use of Stilley's IOLTA account;

    (ii) use of Stilley's credit cards;

    (iii) using cashier's checks, money orders, cash, and other means of payment to to avoid usual records and conceal income;

    (iv) making false statements to agents and employees of the IRS;

    (v) concealing and attempting to conceal Petitioner's "true and correct income."

123. Count Three and Four clearly allege Stilley's acts were in the nature of the attempt to conceal income and not to prevent the IRS from collecting assessed Federal Income Taxes.

124. The Fourth element is "proof...establishing the...offense."U.S. v. Yost, 24 F.3d 99, 104 (10th Cir. 1994).

COUNT FIVE AND SIX

125. Count Five and Six allege a violation of 26 U.S.C. § 7203 in that Petitioner failed to "make an income tax return" for the Calendar year 2002 and 2004 and failed to state specifically the items of Petitioner's gross income and any deductions and credits Petitioner was entitled "as required by law."

COUNT TWO, THREE AND FOUR, ELEMENTS

126. The Tenth Circuit in Thompson, 518 F.3d at 850 held the elements of the Crime of evading the payment of taxes after assessment or a deficiency was determined are: (1) accused owed a substantial tax liability, "at least in the form" of Federal Income Taxes; (2) accused acted willfully; and (3) accused committed at least one affirmatve act of evading or attempting to evade the assessment or payment of the tax. See also Kawashima, 182 L.Ed 2d at 10; See also Bouleware v. U.S., 552 U.S. 421, 424(2008)

127. The Second Element of "willfully" or "willfulness" requires the Government prove and the Jury find beyond a reasonable doubt (1) that the law imposed a duty on the accused as alleged in that Count; (2) the accused is shown to be specifically aware of the alleged duty in that Count; and (3) the accuse is shown to have voluntarily and intentionally violated the duty alleged in that Count. See Cheek v. U.S., 498 U.S. 192, 201(1991); See also U.S. v. Overhold, 397 F.3d 1231, 1246(10th Cir. 2002) (finding the Jury must "find that the defendant was aware of the specific provision of the tax code he was charged with violation. 524 U.S. at 194."); quoting Bryan v. U.S., 524 U.S. 184, 194(1998).

128. As explained earlier, "[A]n affirmative act requires more than the passive failure to file a tax return; it requires a positive act of commission designed to mislead or conceal." Thompson, 518 F.3d at 852; compare U.S. v. Green, 239 Fed. Appx. at 434("concealing and attempted to conceal...the nature and extent of his assets by placing funds and property in the names of nominees, and by filing false and fraudulent offer in compromise (supported by a false declaration under oath on Form 433-A.)"); and see McGill, 964 F.2d at 230("General affirmative acts associated

-25-

with evasion of payment involve some type of concealment of the taxpayer's ability to pay his or her taxes or the removal of assets from the reach of the Internal Revenue Service.") compare Dunkel, 900 F.2d at 107(acts alleging attempts to evade assessment described as "foiling the IRS about your income"); see also Cohen, 297 F.2d at 770 (evasion of assessment acts are "failing to file a return, filing a false return, failing to keep records, concealing income, or other means."); and see Collins, 920 F.2d at 630(n.13)(Collins' tax evasion was effectuated by failing to file 1040 Forms "at issue."); and see Root, 585 F.3d at 151 citing Sansone, 380 U.S. at 354 and McGill, 964 F.2d at 230(distinguishing "evasion of assessment, which involves efforts to shield taxable income to prevent the IRS from determining one's tax liability, and evasion of tax payment, which concerns conduct designed to place assets out of reach to prevent the IRS from settling one's tax liability.")("plain language of [§ 7201] ...evinces the Congressional intent to allow distinct, significant, affirmative acts of tax evasion to constitute separate section 7201 offenses.")

DUTIES AT ISSUE IN COUNT TWO, THREE AND FOUR

129. In order to be certain what duties the Grand Jury alleged in Counts Two, Three and Four, Judge Friot should have reviewed Counts Two, Three and Four and would have easily ascertained the Grand Jury was alleging the Crime or Offense of willfully attempting to evade and defeat the assessment of Petitioner's Federal Income Tax obligations.

130. To start, Judge Friot ordered Mr. Snoke and O'Reilly to "file a bill of particulars specifying the provisions which provided for the legal duties with which the Defendants were obligated to comply as 'required by law' as those words are used in those Counts." See Doc. 383, pg. 128-129

131. On July 14, 2009, the First bill of particulars answered the "duties" by citing to 26 U.S.C. § 1,61,63,6011(a), 6012(a)(1)(A), 6072, 6091, 6151 and 7203. See Doc. 104

132. These duties were later expanded even further after Judge Friot ordered a Second Bill of Particulars, Doc. 192, directing:

-26-

"specifying the 'regulations thereunder'...specifically relied upon by the government as specifying events triggering an obligation to file a return."

133. Mr. Snoke and O'Reilly filed a Second bill of particulars identifying 26 CFR § 1.1-1, 1-102-1, 1.151-1, 1.6011-1 and 1.6012-1. See Doc. 201.

134. In their First bill of particulars Mr. Snoke and O'Reilly clearly explain the meaning of "required by law" in Counts Two, Three and Five and Six (Count Four for some reason only uses the term "requiring" instead of required) meant:

"Count 2,3,5 and 6 of the indictment include the phrase 'required by law' in reference to Defendant Springer's failure to file a Federal Income Tax Return."

See Doc. 104, pg. 1

135. At Trial, Mr. Snoke and O'Reilly looked Judge Friot square in the eyes, and without a wink or nod, told him:

"the evasion counts are independent of whether or not he filed a return because of all the affirmative acts."

See Doc. 395, pg. 2648, ln 19-24

136. So, the duties and obligations at issue in Counts Two, Three and Four, were (1) Petitioner received substantial income to require him to report that activity on a "United States Individual Income Tax Return" for years 2000, 2003 and 2005; (2) that due this duty, Petitioner was required to deliver the United States Individual Income Tax Returns for 2000, 2003 and 2005, on or before April 15, 2001, 2004, and 2006; (3) that the place for such delivery was according to 26 U.S.C. § 6091(b) for "Tax Returns"; (4) the Form prescribed pursuant to 26 U.S.C. §§ 6011 and 6012, and 26 CFR §§ 1.6011-1(a) and 1.6012-1(a)(6) is "Form (number) 1040"); and (5) any taxes due and owing as a result of what is computed on said Form 1040 must be delivered to the same place and at the same time the "United States Individual Income Tax Returns" are to be made or filed.

137. Each of these duties and obligations are comensurate with the assessment of Federal Income Taxes and not proscribing an assessment had already been made according to the requirements of the Tax Law [Title 26] which evasion of payment crimes require.

-27-

EVIDENCE AND ALLEGATION OF CONDUCT FOR COUNTS TWO, THREE AND FOUR

138.  As Petitioner showed above in Counts Two, Three and Four, paragraph 2(a) alleges Petitioner solicited and received money in the name of Bondage Breaker's Ministry; paragraph 5 of the indictment alleges Petitioner earned income in various ways; in paragraph 6 Petitioner is alleged not to have file a Federal Income Tax Return since the late 1980s.

139.  Count Two further alleges Petitioner was required by law to file a "United States Individual Income Tax Return" as does Count Three and Four, and they each allege affirmative acts  regarding "receiving income," and acting in various ways alleging Petitioner was trying to "avoid creating usual records of financial transactions" and "concealing income," and making false statements and concealing from all proper officers of the United State of America Petitioner's "true and correct income." See Doc. 2, ¶¶ 40,41,42,42,44, and 45.

140.  The term "payment" or phrase "evade payment" or any version thereof does not appear any where in Counts Two, Three and Four.

141.  These allegations clearly and directly identify the Crime or Offense the Grand Jury indicted Petitioner on is willfully attempting to evade or defeat the assessment of Petitioner's Federal Income Tax obligations and duties and not evasion of payment.

(i)  Evidence

142.  After the June 3, 2005 institutional proffered refferal of Petitioner for his tax liabilities from 2000 through 2004, See Doc. 80-10; 224-16, Special Agent Brian Shern on September 15, 2005, signed a document styled "Affidavit" that Magistrate Judge McCarthy said would be held in the "Grand Jury drawer," See Doc. 37-2, pgs. 41  through 44; see also Petitioner's Motion under § 2255, at Ground 8; and see Doc. 100, Def. Exhibit 1; see also Doc. 75-20, which explained what the purpose of the IRS's investigation consisted:

> "this investigation pertains to allegations that LINDSEY SPRINGER received income for providing legal and tax advice to numerous clients, and that he knowingly and willfully did not report this income in order to evade the taxes associated with it."

See Doc. 75-20, pg. 3; Doc. 100, Def. Exhibit 1, pg. 3

143.   In another case to which Agent Shern was a defendant, Springer v. Horn, et al.,

06-CV-156, Agent Shern declared under the penalty of perjury that on April 26, 2005

he was assigned to conduct:

> "an investigation of Lindsey Spriner for allegations of violations of Title 26,
> United States Code, including tax evasion and failure to file income tax returns."

See Doc. 35-8, pg. 2

144.   Sometime between January 20, 2006 and March 9, 2006, Agent Shern informed Stilley

he was not a target of the Grand Jury and that:

> "Shern understood that the investigation was of Defendant Springer, to Special
> Agent Shern's knowledge, Defendant Stilley was only a witness with respect to
> income earned by Defendant Springer."

See Doc. 71, pg. 18 and note 7

145.   The Grand Jury indictment dated March 10, 2009, alleges:

> "January 20, 2006, Defendant Stilley stated to Internal Revenue Service employees
> that people gave money to Defendant Springer for his ministry, and expected no
> services in return."

See Doc. 2, pg. 4, ¶ 16.

146.   The Grand Jury also alleged that on or about:

> "September 16, 2005, Defendant SPRINGER told Internal Revenue Service employees
> that all funds he received are gifts and donations, that he does not have any
> income, and that he does not provide services for payment."

See Doc. 2, pg. 4, ¶ 15

147.   The Grand Jury also alleged that on or about March 6, 2006:

> 'Defendant Stilley provided the Grand Jury with a document titled 'Response to
> Subpoena' stating that 'Lindsey Springer does not charge for his services,'"

See Doc. 2, pg. 4, ¶ 17

148.   The Grand Jury continues alleging that on January 15, 2009:

> "Defendant SPRINGER represented that he earned no income and that the money he
> received was given 'without any expectation for anything from anybody."

See Doc. 2, pg. 7, ¶ 39

149.   There is just no question what the subject of Agent Shern's 4 year IRS invest-

igation was about.  It was about Petitioner's receipt of money alleged taxable. What

Count Two, Three and Four, were never about was "payment" of assessed taxes as meant by the term "payment" in § 7201.

150.   Besides the direct language in Counts Two, Three and Four, each pointing directly to attempted willful evasion of the assessment, and not payment, of Federal Income Taxes, and besides the Affidavit and Declaration of Agent Shern pointing to claims comensurate with concealing receipt of income and not concealing assets, the words of U.S. Attorney David O'Mielia before he resigned his office had began to change the Grand Jury's charge and conduct in Count Two, Three and Four, away from evasion of assessment and into evasion of payment.

151.   For instance, in its opposition to Petitioner's Motion to Dismiss, Mr. O'Mielia argues:

> "It is enough to prove that the defendant attempted to evade the payment of a substantial income tax..."

See Doc. 71, pg. 10

152.   Mr. O'Mielia also asserted that:

> The indictment clearly alleges that Defendant Stilley attempted to evade Defendant Springer's Federal Income Taxes."

See Doc. 71, pg.8

153.   In Mr. Snoke and O'Reilly's Trial Brief they proffer the "essential elements of a violation of Section 7201 are";

> (1) There was a substantial income tax due and owing for the years charged in the indictment;
>
> (2) The defendant intended to evade and defeat the assessment and payment of of that additional tax;
>
> (3) The defendant committed at least one affirmative act in furtherance of this intent as set forth in the indictment; and
>
> (4) The defendant acted willfully, that is with voluntary intent to violate a known legal duty.

See Doc. 138, pg. 7

154.   Mr. Snoke and O'Reilly asserted "affirmative acts of evasion of payment of taxes includes:

(1) placing assets in the name of others;

(2) dealing in currency;

(3) causing receipts to be paid through and in the name of others;

(4) causing debts to be paid through and in the name of others;

(5) and paying creditors instead of the government.

See Doc. 138, pg. 8

155.   Each of these listed acts are not acts the Jury considered acts to attempt to evade the assessment of Federal Income Taxes but was argued to twist the Grand Jury indictment out of evasion of assessment and into evasion of payment.

156.   In an evasion of payment case there would have been no need to instruct the Jury on the meaning of "gift" or "income" as the payment of taxes does not hinge upon the method or manner in which the property being concealed from the IRS to prevent the IRS from using it to offset tax debt.

157.   Judge Friot stated during sentencing:

> "the overarching question of whether the funds that you received over the years that were involved in this case were received by you for services rendered has been conclusively resolved against you by the verdict."

See Doc. 399, pg. 85, ln 2-7

158.   During sentencing Mr. O'Reilly explained his clients theory of Counts Two, Three and Four:

> "Just for clarification, our theory is that Mr. Springer ran a business and all the payments to that, that were not actually used for miniserial purposes, basically he kept in his pocket.  First of all, its gross income, and then how he used it would be potentially deductible.  That is our THEORY based on the Court's Jury Instructions at trial, also our understanding of the law."

See Doc. 399, pg. 123, ln 17-24

159.   Mr. Shern testified at sentencing he believed the Hawkins knew the money they gave Petitioner was not a donation explaining the purose of "writing that check to Bondage Breaker's Ministries was to hide the fact that it was legal services." See Doc. 399, pg. 145, ln 13-17

160.   Shern when explaining the $ 250,000 loan at issue in Count Four explained:

-31-

"So there's two separate crimes being committed here: One is tax evasion on the $250,000 that Mr. Springer <u>received</u> <u>as income</u>, and Two, his assisting Mr. Turner in evading the payment of his taxes."

See Doc. 399, pg. 165, ln 22-25

161.   The above statement by Shern demonstrates he was fully aware of the difference between evasion of assessment and payment and what Petitioner was charged with.

162.   Mr. Miller, who testified at Trial as a "expert witness on the requirement to file and the FORM and a summary witness of all the testimony that has been provided earlier," Doc. 400, pg. 213, ln 18-20, testified   about the money Petitioner received:

"It was either for services rendered or it was in pursuit of your ministry. And to me, you know, it doesn't matter, its income either way."

Doc. 399, pg. 207, ln 3-5

163.   There was nothing in Counts Two, Three and Four, that in any way alleged or sought to prove Petitioner violated or committed the Crime of willful attempt to evade and defeat the payment of assessed Federal Income Taxes.

JUDGE FRIOT'S SWITCH FROM ASSESSMENT TO PAYMENT CRIMINAL OFFENSE

164.   On April 22, 2009, while Judge Friot is seeking to understand Petitioner's understanding of Counts Two, Three and Four, Petitioner explained to him that:

"no, I don't understand them. They're very confusion to me...I understand that there are three charges of tax evasion under 26 U.S.C. § 7201. I do not understand whether its evasion of assessment, evasion of payment, or how one could go for 9 years."

See Doc. 382, pg. 16, ln 14-23

165.   Judge Friot responded to Petitioner:

"I understand your point. We'll address that when we address the motion for Bill of Particulars. I think your recitation at least for immediate purposes, satisfies me that you do at least understand, SUBJECT TO THE LIMITATIONS YOU HAVE DESCRIBED, the general nature of the charges."

See Doc. 382, pg. 17, ln 10-15

166.   There was no record of any assessment that any person employed by the IRS was able to collect for years 2000, 2003, and 2005.

-32-

167.   In denying Petitioner's request for the Jury in Counts Two, Three and Four, to be instructed the Jury must find Petitioner was required by law to file a United States Individual Income Tax Return, Form 1040, Judge Friot explained his understanding of Petitioner's requested instruction:

> "The Tenth Circuit Pattern Instruction confirm my conception that Tax Evasion is a crime both as a matter of Form and as a matter of substance, which is separate and independent of the Form of Willful failure to file--of the crime of willful failure to file.  And for that reason, it certainly comes as no surprise to me that the Tenth Circuit pattern instruction does not contain the extra element that Mr. Springer would propose to add, and I don't intend to add it."

See Doc. 396, pg. 2929, 2930

168.   Judge Friot further explained his understanding of the Crime of Tax Evasion:

> "Its abit of an over simplification, but Section 7201 tax evasion goes to the tax as opposed to the procedure by which the tax is assessed, in substance."

See Doc. 396, pg. 2930, ln 10-15

169.   Judge Friot then instructed the Jury that Section 7201 "makes it a crime for anyone to willfully attempt to evade and defeat the payment of Federal Income Taxes." See doc. 396, pg. 2910, ln 22-23; pg. 2913, ln 24-24 ("As previously stated, this law makes it a crime to willfully attempt to evade or defeat the payment of Federal tax.")

170.   Judge Friot instructed the Jury further that:

> "to evade and defeat the PAYMENT of tax 'means to escape PAYING a tax due other than lawful avoidance."

See Doc. 397, pg. 2954, ln 14-15[Count Two]; pg. 2957, ln 19-21[Count 3]; and pg. 2959, ln 23-24[Count 4].

171.   Not only do the above understanding and Jury instructions totally misunderstand what the Grand Jury charged in Counts Two, Three and Four, regarding what evasion of payment as a crime means, Judge Friot continued to instruct the Jury on what an "affirmative act" is:

> "an affirmative act to evade and defeat PAYMENT OF TAXES is a positive act of commission designed to mislead and conceal."

See Doc. 397, pg. 2954, ln 23-25

172.  And Judge Friot understood what the Jury role was to accompish:

"Your only interest is to determine whether the government has proven the defendant guilty beyond a reasonable doubt of the Crimes charged against that defendant in the indictment."

See Doc. 396, pg. 2880, ln 7 to 11.

173.  Judge Friot continued:

"You may find a defendant guilty only if you are convinced beyond a reasonable doubt that he committed the crime charged in the indictment."

See Doc. 396, pg. 2880, ln 16 to 18

174.  Judge Friot concluded to the Jury:

"The defendants are not on trial for any act, conduct, or crime not charged in the indictment."

See Doc. 396, pg. 2898, ln 17-19

175.  As each of the statements indicate Judge Friot was fully aware of the danger of instructing the Jury on the wrong crime and for reasons not known by the record Judge Friot instructed the Jury on Count Two, Three and Four, on the Crime of evasion of PAYMENT, and not evasion of assessment.

INSTRUCTING ON GIFT SHOWS CRIME WAS EVASION OF ASSESSMENT, NOT PAYMENT

176.  Judge Friot instructed the Jury on gift and minister income beginning:

"Defendant Springer and Stilley, for their part, assert payment made to Defendant Springer were gifts or donations to Mr. Springer, and that gifts are excluded from income."

See Doc. 396, pg. 2902

177.  To further show the Crime charged in Counts Two, Three and Four, was for willful attempted evasion of the assessment of Federal Income Taxes, Petitioner shows the rest of Judge Friot's instruction to the Jury on Gift states:

"The Federal income taxes levied on income received by ministers and persons who hold themselves out as ministers or as being associated with a ministry when an individual provides ministerial services as her occupation, profession, or business and controls the money he receives in connection with those activities and receives no separate salary, the income generated by those activities is taxable to the minister.  Voluntary contributions when received and retained by the minister may be income to him.  Payment made to a minister for religious purposes, and money which is used instead for personal benefit of the ministry BECOMES TAXABLE INCOME TO HIM.

-34-

Gifts. You are instructed that for federal income tax purposes, taxable income does not include money or property acquired by fits."

178. This instruction shows Judge Friot understood their was no claim in Counts Two, Three or Four, that Petitioner willfully attempted to evade the payment of taxes.

### SENTENCING COMMISSION CONSIDERED SECTION 7201 TWO DISTINCT CRIMES

179. Judge Friot in his reasons for sentence cited to United States Sentencing Commission Guideline § 2T1.1, Doc. 410, pg. 396-397, which he determined the "Tax Loss" looks "to all conduct violating the tax laws'."

180. The Tenth Circuit in its October 26, 2011 per curiam decision, explained that under 2T1.1(c)(2) & n.(A) that "if the offense involved failure to file a tax return the tax loss shall be treated as equal to 20% of the gross income." Springer, 444 Fed. Appx. at 265

181. The Sentencing Commission states:

"Tax loss does not include interest and penalties, except in willful evasion of payment cases under § 7201 and willful failure to pay cases under 26 U.S.C. § 7203.

See U.S. v. Green 239 Fed. Appx 431, 447(10th Cir. 2007)

182. There is no doubt Counts Five and Six were not § 7203 offense of failure to pay. The Commission erroneously states that "[I]f the offense involved failure to file a tax return, the tax loss is the amount of tax that the taxpayer owed but did not pay." See notes to § 2T1.1.

183. This advice from the Commissioner would never apply in a § 7203 failure to file tax return case because by failing to file without the requirement the jury find a tax deficiency occurred the jurisdiction of the Court is limited to Grand Jury charge.

184. However, for Counts Two, Three and Four, the elements did involve the requirement of finding a tax deficiency, which each were alleged as offenses that "involved failure to file a tax return."

185. While Petitioner attempted to have the Jury find he failed to file a "United States Individual Income Tax Return" as the Grand Jury alleged in Counts Two, Three

-35-

and Four, Judge Friot found failing to file a tax return was not involved in the alleged crimes under § 7201.

186. Judge Friot's exact words were:

"The Tenth Circuit Pattern Instructions confirm my conception that Tax Evasion is a crime both as a matter of form and as a matter of substance, which is separate and independent of the form of willful failure to file—of the crime of willful failure to file. And for that reason, it certainly comes as no surprise to me that the Tenth Circuit pattern instruction does not contain the extra element that Mr. Springer would propose to add, and I don't intend to add it."

See Springer Decl. at pg. 22, ¶ 170; citing to Doc. 396, pg. 2929-2930

187. Judge Friot goes on to say:

"Its a bit of an over simplification, but Section 7201 tax evasion goes to the tax as opposed to the procedure by which the tax is assessed, in substance."

See Springer Decl. at pg. 23, ¶ 171; citing Doc. 396, pg. 2930, ln 10-15

188. There are two glaring examples of Judge Friot's disregard for Petitioner's civil rights held under the Constitution regarding the offense charged in Counts Two, Three and Four.

189. As previously discussed, Judge Friot was, in the words of the First Circuit, "so bold as to either ignore or shunt Sansone aside," See Waldeck, 909 F.2d at 558, referring to Sansone, 380 U.S. at 354.

190. Judge Friot explained his shunting in U.S. v. Farr, 2006 U.S. Dist. Lexis, 82702 which he held "[A]lthough the Tenth Circuit has apparently not addressed duplicity in the context of § 7201, other circuits agree that tax evasion is a SINGLE CRIME."

191. The Sentencing Commission's advice as to when to include interest and penalty where the offense or crime was "in willful evasion of payment cases" shows Judge Friot, who relied upon § 2T1.1, was aware of the Commissioner's advice.

192. What Judge Friot did in shunting and ignoring Sansone's two distinct crimes or offenses the Supreme Court explained it announced or that § 7201 proscribed, created an impossible crime to defend.

193. Judge Friot took advantage of the ambiguity of § 7201, along with his rejection

of Sansone, coupled withe the fact Petitioner, who represented himself but had informed
Judge Friot he did not understand which crime was charged in Counts Two, Three, and
Four, even ignoring the Commission, when he switched the Grand Jury's alleged crimes.

EVIDENCE SHOWS SPRINGER WAS NOT CONCEALING ASSETS FROM IRS

194. Keeping in mind that the referral years were for 2000 through 2004, See Doc.
80-10; 224-16, in the "affidavit" signed by Agent Shern on September 15, 2005, he
states:

> "Below is a chart that shows the vehicles registered to SPRINGER, the date
> registered, and the purchase price of each vehicle.  None of the vehicles
> below have an associated lien on file with the State of Oklahoma."

See Doc. 75-20, pg. 13, ¶ 16.

195. Shern's "affidvait" showed approximately $ 227,000 worth of "assets" listing
9 vehciles in Petitioner's name and no encumbrances.

196. Shern's "affidavit" also demonstrates that during Agent Meador's civil invest-
igation Summons were issued leading to "individuals who wrote checks to Springer
were contacted by the IRS." Doc. 75-20, pg. 7, ¶ 7

197. Shern testified at Trial Petitioner cooperated with Meadors civil investigation
which was to determine whether Petitioner "promoted or offered tax plans or arrangments,
provided written material or and video presentations, if the individuals attended
any meetings discussing income tax topics, and if any fees or donations were charged
for any of these products or services." See Doc. 75-20, pg. 7-8, ¶ 7

198. Shern also demonstrated that the money received by Petitioner was reported to
the IRS at least 43 times prior to September, 2005, Doc. 75-20, pg. 16, ¶ 22, and
at trial that number increased to 61 Currency Transaction Reports.

199. Judge Friot was well aware of Petitioner's civil case against Agent Shern and
others for the theft of $ 2000 occurring sometime after Agent Shern and the Ten
other institutional Agents of the IRS served the September 15, 2005 search warrant,
on September 16, 2005, where Agent Shern on January 10, 2006, delivered a check from
the IRS to Petitioner for $ 17,000 (minus the $ 2,000) which had Petitioner been

making attempts to evade the payment of taxes owed for years 2000, 2003 and 2005, as those are the years alleged in Count Two, Three and Four, why did the IRS return the $ 17,000 of the $ 19,000 seized during the institutional levy of the September 15, 2005 search warrant?

200. During Trial, Agent Shern testifed in answer to Stilley's question:

> "I think you (Stilley) and Mr. Springer had an agreement to help Mr. Springer hide his income."

See Doc. 392, pg. 1850, ln 17-19

201. Previously, Shern testified:

> "The conspiracy is to hide and coneal your income from the IRS in order to impede the IRS in determining your taxable income."

See Doc. 385, pg. 157, ln 16-18.

202. Although these statements would appear applicable to the Conspiracy charged in Count One, they clearly show the entire prosecution was about Petitioner's taxable income and not concealing assets or "some type of concealment of the taxpayer's ability to pay his or her taxes or the removal of assets from the reach of the Internal Revenue Service." McGill, 964 F.2d at 230; See also Root, 585 F.3d at 151 (evasion of tax payment concerns conduct designed to place assets out of reach to prevent the IRS from settling one's tax liability.")

203. JUDGE FRIOT IS MATERIAL WITNESS  REGARDING PETITIONER'S CIVIL RIGHTS CLAIMS

203. In order to understand why Judge Friot is a key witness to the Civil Rights violations Petitioner claims in his Motion filed under 28 U.S.C. § 2255 it is imperative that all involved have a clear understanding on what a Motion under § 2255 operates to accomplish.

204. Section "2255 was enacted that the legislation was intended simply to provide in the sentencing court a remedy exaclty commensurate with that which had previously been available by habeas corpus in the Court of the distruct judge the prisoner was confined." Hill v. U.S., 368 U.S. 424, 427(1962)

205. In order to avoid the constitutional question of whether § 2255 was an unconst-

-38-

itutional suspension of the Writ of Habeas Corpus, the Supreme Court held in U.S. v.
Hayman, 342 U.S. 205, 219(1952) that the remedy offered by Congress at 28 U.S.C. §
2255 "is as broad a remedy as habeas corpus." Sanders v. U.S., 373 U.S. 1, 13(1963).

206. "Plainly, were the prisoner invoking § 2255 faced with the bar of res-judicata,
he would not enjoy the 'same rights' as the habeas corpus applicant, or 'a remedy
exactly commensurate with habeas." Sanders, 373 U.S. at 14

207. "Indeed, if he were subject to any substantial procedure hurdles which made his
remedy under § 2255 less swift and imperative than federal habeas corpus, the gravest
constitutional doubts would be engendered as the Court in Hayman implicitly recogniz-
ed." Sanders, Id.

208. The Supreme Court in Fay v. Noia, 372 U.S. 391, 399(1963) held that a prisoner's
failure to appeal cannot under the circumstances be deemed an intelligent and under-
standing waiver of his right to appeal such as to justify the withholding of federal
habeas relief."

209. "[h]abeas corpus is not a static, narrow formalistic remedy...but one which must
retain the ability to cut through barriers of form and procedural mazes...it [must]
be administered with the initiative and flexibility essential to insure that mis-
carriage of justice with its reach are surfaced and corrected...the demand for speed,
flexibility, and simplicity is clearly evident in our decisions." Hensely v. Municiple
Ct., 411 U.S. 345, 350(1973)

210. "The writ of habeas corpus is the remedy which the law gives for the enforcement
of the civil rights of personal liberty." Ex Parte Tom Tong, 108 U.S. 556, 560(1883)

211. Ex Parte Tom Tong goes on to say:

> "Resort to it sometimes becomes necessary, because of what is done to enforce
> laws for the punishment of crimes; BUT the judicial proceeding under it is not
> to inquire into the criminal act which is complained of, but into the right to
> liberty notwithstanding the act.  Proceedings to enforce civil rights are civil
> proceedings and proceedings for the punishment of crimes are criminal proceedings.
> ....the writ of habeas corpus...is a new suit brought by him to enforce a civil
> right...The proceeding is one, instituted by himself for his liberty, not by
> the government to punish him for his crime."

Id.

-39-

212. The Tenth Circuit in Martin v. U.S., 273 F.2d 775(10th Cir. 1960) has held that "a motion under § 2255, like a petition for a writ of habeas corpus ***, is not a proceeding in the original criminal prosecution but an independent civil suit." (quoting Heflin v. U.S., 358 U.S. 415, 418, note 7(1959)). Id. at 777

213. "This court followed Heflin in Hixon v. United States, 10 Cr., 268 F.2d 667, 668, and said that a § 2255 application was 'an independent civil suit." Martin, 273 F.2d at 777

214. "⌊i⌋ our opinion an application under § 2255 is a new and independent civil proceeding..." Id at 778

215. "The writ of habeas corpus is not a proceeding in the original criminal prosecution, but an independent civil suit(Ex Parte Tom Tong, 108 U.S. 556, 559...), in which the trial court is not open to collateral attack, but imports absolute verity." Riddle v. Dyche, 262 U.S. 333, 336(1923)

216. "⌊t⌋he motion may be considered as an application under 28 U.S.C. § 2255 which is an independent civil suit..." Hixon v. U.S., 268 2d 667, 668(10th Cir. 1959)

217. "Habeas corpus is not an appellate proceeding but rather an original civil action in Federal Court." Keeney v. Tamayo-Reyes, 504 U.S. 1, 14(1992)

218. The question to be asked is not whether Petitioner is asking for "relitigation" "but whether one adequate litigation has been afforded." Kaufman v. U.S., 394 U.S. 217, 225(1969)

219. The Third Circuit in Parrott v. V.I., 230 F.3d 615, 620(n.7)(3rd Cir. 2000) has held  habeas corpus is "treated as civil, rather than  criminal, ones for purpose of determining jurisdiction."

220. The Second Circuit in Williams v. U.S., 984 F.2d 28, 29(2nd Cir. 1992) held the only connection the former cirminal prosecution plays in the § 2255 proceeding is "to record the motion ⌊§ 2255⌋ and its outcome on the original docket."

221. "⌊h⌋abeas corpus relief is sought in a separate case and record, the beginning of a separate civil proceeding." U.S. v. Morgan, 346 U.S. 502, 505(1954)

-40-

222.  "[h]abeas corpus is an original...civil remedy for the enforcement of the right to personal liberty, rather than a state of the...criminal proceeding." Woodford v. IVGO, 548 U.S. 91, 126 S.Ct. 2378, 2386 (n.2)(2006)(quoting Fay v. Noia, 372 U.S. 391, 423-24(1963)

223.  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody and ... the traditional function of the writ is to secure release from illegal custody." Presder v. Rodriquez, 411 U.S. 475, 484(1973)

224.  Habeas Corpus is "treated as civil, rather than criminal, ones for purpose of determining jurisdiction." Parrott v. V.I., 230 F.3d 615, 620 (n.7)(3rd Cir. 2000)

225.  The reason why the criminal case remains at issue at all is "to record the motion [§ 2255] and its outcome on the original criminal docket." Williams v. U.S., 984 F.2d 28, 29(2nd cir. 1992).

226.  "An offense created by [an unconstitutional law]," the Supreme Court has held, "is not a crime." Ex Parte Siebold, 100 U.S. 371, 376(1880)

227.  "A conviction under [such law] is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment." Id. at 376-77

228.  A law "beyond the power of Congress," for any reason, is "no law at all." Nigro v. U.S., 276 U.S. 332, 341(1928)

229.  "If it affirmatively appears on the face of the indictment that the acts charged as criminal do not constitute an offense against the laws of the United States, the judgment and sentence is a nullity and habeas corpus is available to test that question." Roberts v. Hunter, 140 F.2d 38, 39(10th Cir. 1943)

230.  "Thus there is nothing novel in the fact that today habeas corpus in the Federal Courts provides a mode for the redress of denials of due process of all." Fay, 372 U.S. at 402

231.  "Vindication of due process is precisely its historic office." Id.

232.  "If the commitment be against the law, as being made by one who had no jurisdiction of the cause or for a matter for which by law no man ought to be punished,

-41-

the courts are to discharge him..., and the commitment is liable to the same objection where the cause is so loosely set forth, that the Court cannot adjudge whether it were a reasonable ground of imprisonment or not." Fay, 372 U.S. at 405

233. "[a] writ of coram nobis 'is a step in the criminal case and not...a separate case and record.." U.S. v. Morgan, 346 U.S. 502, 505(1954)

234. And where "habeas corpus relief is sought in a separate case and record, the beginning of a separate civil proceeding." Id.

235. "The writ must not be subject to manipulation by those whose powers it is designed to restrain...the cost of delay can no longer be born by those in custody...they are entitled to a prompt habeas corpus hearing...the purpose of [habeas substitute statutes] was to expedite consideration of the prisoner's claims, not to delay or frustrate it." Boumedienne v. Bush, 171 L.Ed 2d 41, 64, 553 U.S. 723 (2008)

236. As these cases all indicate, Congress intended a new case to be activated without a filing fee when a motion is filed under § 2255 and the only resort to the criminal proceeding is to docket the Motion and record the outcome from the civil rights claims resulting from the civil case.

(i) Judge Friot's Order of March 15, 2013

237. Judge Friot issued an order on March 15, 2013 directing whoever the Respondent is to file a "preliminary response" stating:

> "concisely lists (with supporting citations) those grounds for relief, if any, which the government contends should be stricken or dismissed because it is clear that they are procedurally barred. For example, because they were raised and resolved in the proceedings in the underlying criminal prosecution, or because they could have been, but were not, raised in those proceedings."

See Doc. 478, pg. 2

238. Judge Friot cites generally to U.S. v. Frady, 456 U.S. 152, 165(1982) and quotes:

> "we have long and consistently affirmed that a collateral challenge may not do service for an appeal."

Id. at 2

239. Judge Friot, citing to U.S. v. Warner, 23 F.3d 287, 291(10th Cir. 1994) continues:

-42-

"2255 motions are not available to test the legality of matters which should
have been raised on direct appeal."

Id.

248.  Judge Friot further stated:

"[a] defendant's failure to present an issue on direct appeal bars him from
raising the issue in his § 2255 motions, unless he can show cause excusing his
procedural default and actual prejudice resulting from the errors of which he
complains, or can show that a fundamental miscarriage of justice will occur if
his claims are not addressed."

Id.

249.  And finally, Judge Friot states it would "not error in dimissing § 2255 motion

as to claims previously considered and disposed of on direct appeal," citing to U.S.

v. Prichard, 875 F.2d 789, 791(10th Cir. 1989)

250.   In Prichard's proposition, the Tenth Circuit explained:

"absent intervening change in law of circuit, issues disposed of on direct appeal
generally will not be considered in a § 2255 collateral attack."

Id.

251.  The Supreme Court in Frady explained the "cause and actual prejudice" standard

enunciated in Davis v. U.S., 411 U.S. 233(1973); Frady, 456 U.S. at 167

252.  First, the "cause" excusing the possible default, Frady. 456 U.S. at 168, and

Second, the "actual prejudice" resulting from errors of which he complains. Id

253.  Petitioner must show "not merely that the errors at his trial created a possib-

ility of prejudice, but that they worked to his actual and substantial disadvantage,

infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S.

at 170.

254.  The Supreme Court emphasized in Frady:

"that this would be a different case had Frady brought before the district court
affirmative evidence indicating that he had been convicted wrongly of a crime
of which he was innocent."

Frady, 456 U.S. at 171

255.  "[t]he vital distinction between appellate and habeas functions" cannot deny

habeas relief "solely on the ground that relief should have been sought by appeal

-43-

to prisoner's alleging constitutional deprivations." Kaufman v. U.S., 394 U.S. 217, 223(1969).

256. Kaufman explained the Supreme Court's decision in Townsend v. Sain, 372 U.S. 293, 311-13(1963) stating:

"The whole history of the Writ- its unique developement refutes a construction of the Federal Courts habeas corpus powers that would assimilate their task to that of courts of appellate review. The function of habeas _is different_. It is to test by way of AN ORIGINAL CIVIL PROCEEDING, INDEPENDENT OF THE NORMAL CHANNELS OF REVIEW OF CRIMINAL JUDGEMENTS, the very gravest allegations,..The language of Congress, the history of the Writ, the decisions of this Court, all make clear that the power of inquirey on Federal habeas corpus is plenary. Therefore, where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew."

257. Petitioner agrees with Judge Friot that habeas corpus applies to a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with rudimentary demands of fair procedure." Hill v. U.S., 368 U.S. 424, 428(1962)

258. The Supreme Court in Stone v. Powell, 428 U.S. 465, 477(n.10)(1976) limited the reach of habeas "unless the claim alleges a lack of jurisdiction or constitutional error."

259. The Supreme Court in U.S. v. Addonizio, 442 U.S. 178, 185(1979); quoting Hill, 368 U.S. at 428 held "that an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice."

260. "Where the Petitioner...failed properly to raise his claim on direct review, the writ is available only if the Petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged...violation." Wainwright v. Sykes, 433 U.S. 72, 84(1977).

261. The Kaufman Supreme Court further explained the reach of motions under § 2255:

"Federal prisoners applying for collateral relief often have had their constit-utional claims pased on by Federal Courts at trial or on appeal, so the Brown v. Allen rationale for federal court relitigation is in opposite. But, this difference provides no bases for limiting the grounds upon which Federal prisoners

-44-

may obtain collateral relief, or for formulating a separate set of rules to
determine where a federal prisoner's claim has adequately been adjudicated.
Where a Federal Trial or Appellate Court has had a 'say' on a Federal prisoner's
claim, there may be no need for collateral relitigation.  But what if the Federal
trial or appellate court said nothing because the issue was not raised? What if
it is unclear whether the 'say' was on the merits?  What if new law has been
made or facts uncovered relating to the constitutional claims since the trial
and appeal?  What if the trial or appellate court based its ruling on findings
of fact made after a hearing not 'full and fair' within the meaning of Townsend
v. Sain, 372 U.S. 293(1936)?

394 U.S. at 230

240. "These problems raise, not the issue whether relitigation is necessary, but
whether one adequate litigation has been afforded." Kaufman, 394 U.S. at 231

241. Petitioner's Motion filed under 28 U.S.C. § 2255 raises 76 grounds that show
Judge Friot's sentence and judgment in 09-CR-043 was entered without jurisdiction
and clearly resulted in a complete miscarriage of justice.

DISTRICT COURT JURISDICTION

242. "Only the jurisdiction of the Supreme Court is derived from the Constitution."
Turner v. Bank of America, 4 Dall 8, 10(1799)

243. "Every other Court created by the general government derives its jurisdiction
solely from the authority of Congress.  That body may give, withhold or restrict
such jurisdiction at its discretion, provided it be not extended beyond the boundar-
ies fixed by the Constitution." Id.

244. "Where there is clearly no jurisdiction over the subject matter, any authority
exercised is a usurped authority, and for the exercise of such authority, when the
want of jurisdiction is known to the Judge, no excuse is permissible." Bradley v.
v. Fisher, 13 Wall 80 U.S. 335, 352(1872)

245. "The laws of the United States have erected Courts which are invested  with
criminal jurisdiction." Clawson v. U.S., 114 U.S. 477, 488.. (1885)

246. This jurisdiction "can only be exercised through the instrumentality of grand
juries," and this "is necessary and extensive with that jurisdiction to which is
essential." Id.

247. "It is axiomatic in our legal system that 'a court cannot permit a defendant to

be tried on charges that are not made in the indictment against him." U.S. v. Farr,

536 F.3d 1174, 1179(10th Cir. 2008); citing Stirone v. U.S., 361 U.S. 212, 217(1960)

262. Judge Friot was specifically informed by the Tenth Circuit not to change an

indictment's charges:

> "If it lies within the province of a court to change the charging part of an
> indictment to suit its own notions of what it ought to have been, or what the
> Grand Jury would probably have made it if their attention had been called to
> suggest changes, the great importance which the common law attaches to an indict-
> ment by a Grand Jury...may be fittered away until its value is almost destroyed...
> Any other doctrine would place the rights of the citizens, which were intended
> to be protected by the constitutional provision, at the mercy or control of the
> Court or prosecuting attorney: for if it be once held that changes can be made
> by consent or the orders of the Court in the body of the indictment as presented
> by the Grand Jury, and the prisoner can be called upon to answer to the indictment
> as thus changed, the restriction which the constitution places upon the power of
> court, in regard to the prerequisite of an indictment, in reality no longer exists."

Farr, 536 F.3d at 1179-80; quoting Ex Parte Bain, 121 U.S. 1, 10(1887).

263. "[a]fter an indictment has been returned its charges may not be broadened through

amendment except by the Grand Jury itself." Farr, 536 F.3d at 1180; citing Stirone,

361 U.S. at 215-16

264. "An unconstitutional constructive amendment of a grand jury's indictment occurs

when the evidence presented at trial, together with the jury instructions, 'so alters

[the indictment] as to charge a different offense from that found by the Grand Jury."

Farr, 536 F.3d at 1180; quoting U.S. v. Miller, 471 U.S. 130, 143(1985); and Stirone,

361 U.S. at 213

265. The crucial question here is whether [the defendant] was convicted of an offense

not charged in the indictment..." Farr, 536 F.3d at 1180.

266. "In assessing a claim of an impermissible constructive amendment our ultimate

inquiry is whether the crime for which the defendant was convicted at trial was

charged in the indictment; to decide that question, we therefore compare the indictment

with the district court proceedings to discern if those proceedings broadened the

possible basis for conviction beyond those found in the operative charging document."

Farr, 536 F.3d at 1180.

267. "A court's jurisdiction at the beginning of trial may be lost in the course of the proceedings due to failure to complete the court-as the Sixth Amendment requires-by providing Counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake." Johnson v. Zerbst, 304 U.S. 458, 468(1938)

268. "If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving his of his life or his liberty." Id.

269. "If the requirement of the Sixth Amendment is not complied with, the Court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by habeas corpus." Id.

270. "A judge of the United States-to whom a petition for habaeas corpus is addressed-should be alert to examine the facts for himself when if true as alleged they make the trial absolutely void." Id.

271. "As the dual  source of the rule makes clear, it protects both a defendant's right to be subjected only to charges set by a grand jury and his interests in having sufficient notice." Farr, 536 F.3d at 1184; citing U.S. v. Gonzales-Edeza, 359 F.3d 1246, 150(n.1)(10th  Cir. 2004)

272. "In addition to any Sixth Amendment notice guarantee, the Fifth Amendment right to have a grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment," Farr, 536 F.3d at 1184; citing Stirone, 361 U.S. at 218-19, and "it provides a sufficient basis, standing alonge, to compel reversal without any further showing of prejudice, see id, 361 U.S. at 218."

273. "Deprivation of such a basic right is far too serious to be...dismissed as harmless error." Farr, 536 F.3d at 1185.

JUDGE FRIOT'S CONDUCT AT ISSUE IN PETITIONER'S CIVIL RIGHTS CLAIMS

274. Petitioner has shown above ceratin actions taken by Judge Friot that Petitioner claims directly violated his Constitutional Rights, including:

1) Judge Friot allowed Trial and imposed his discretionary sentence expanding the Secretary of the Treasury's enforcement referral beyond the years 2000 through 2004, as the June 3, 2005 letter conveys, to include 2000 through 2009 at trial and 1990 through 2007 at sentencing;

2) Judge Friot expanded the "Federal Income Taxes" alleged in Count One's object beyond that of Petitioners for 2000 through 2004 to not only include 2000 through 2009 involving Petitioner's Federal Income Taxes, but at trial broadened the "Federal Income Taxes" to include those proffered to be owed by Oscar Stilley for 2000 through 2009, and at sentencing expanded Count One's object beyond either Petitioners, or Stilley's Federal Income Taxes, to other persons not within the June 3, 2005 letter of referral;

3) Even though Petitioner from the beginning informed Judge Friot he did not understand Count Two, Three and Four, as to whether the claims were attempted willful evasion of assessment or evasion of payment, or how an evasion crime of assessment could go for 9 years when the crime is complete when the reporting form of return is due to be delivered to the proper official, Judge Friot instructed the Jury at Trial on Counts Two, Three and Four, the crimes which Petitioner was to defend and the Jury must find Petitioner committed beyond a reasonable doubt, is or was whether Petitioner committed the willful attempt to evade and defeat the payment of Federal Income Taxes;

4) Prior to Trial, Judge Friot, citing to Judge Eagan's decision involving Petitioner on June 22, 2006 where Judge Eagan found the Secretary of the Treasury has authority to impose civil and criminal penalties "related to Form 1040," held Form 1040 was not subject to the public protection of the Paperwork Reduction Act, but then during Trial before the Jury Judge Friot instructed the Jury he had ruled Form 1040 did not violate the Paperwork Reduction Act with no place in the record to support his merits based Jury instruction and leading to depriving Petitioner of Petitioner's Sixth Amendment Right to a Jury Trial on all issues of fact in dispute which one such element was the element of willfullnes and the other was tax deficiency.

5) Judge Friot knowing the June 3, 2005 date was the "line of demarcation" of where the IRS as an institution must cease enforcement of Title 26 regarding years of referral, refused Petitioner a Frank's hearing regarding IRS Agent Brian Shern's September 15, 2005 purported "affidavit" which Petitioner alleges Shern was not authorized to seek such a search warrant as his authority under 26 U.S.C. § 7608(b) regarding Petitioner ceased after June 3, 2005, regarding Petitioner, preventing Petitioner from fully and fairly receiving a hearing to suppress the fruits from the result of Shern's Search of Petitioner's home which was done in bad faith violating the Fourth Amendment;

6) During Trial Judge Friot issues an instruction to the Jury over Petitioner's objection defining the meaning of "gift" and "minister income" which Judge Friot allowed the Jury to apply that instruction backwards to all years of the Six Counts of indictment being fully aware Congress could not have enacted such ex post facto application of a law under Article I, § 9, Cl. 3 and even

-48-

Congress prohibits the Secretary of the Treasury from enforcing or making retroactive application of certain regulations at 26 U.S.C. § 7805(c);

275. Although the 6 issues above are just a sampling of Grounds raised in Petitioner's Motion filed under 28 U.S.C. § 2255, and they are no means exhaustive or intended to limit the reach of Petitiner's Affidavit being filed and explaind herein for the disqualification of Judge Friot, there are many issues that are raised by the Tenth Circuit's order dated October 26, 2011, that changed the reasons for referral for 2000 through 2004, the reasons why the Grand Jury issued its indictment, Petitioner's conduct stemming from the Grand Jury's charges, Judge Friot's decisions resulting from Petitioner's conduct, and what Petitioner would have done in response to Judge Friot's decisions, statements and rulings had Petitioner known Form 1040 United States Individual Income Tax Returns were divorced or not associated with, or disconnected from, the obligations and duties identified by Mr. Snoke and O'Reilly in both their Bills of Particulars Judge Friot ordered them to submit as to each Count.

ISSUES THAT THE TENTH CIRCUIT'S ORDER CHANGED DRAMATICALLY

276. The Tenth Circuit's decision on October 26, 2011, dramatically changed and altered what Petitioner was led to believe by the Grand Jury charges and as explained by both Bills of Particulars, including:

7) At all times Petitioner was led to believe that Form 1040 United States Individual Income Tax Returns were inexorably linked to the duties and obligations to answer questions or provide information to the Secretary of the Treasury the Grand Jury alleged was conduct it determined violated, or led to violating 18 U.S.C. § 371 "defraud" clause in Count One, and which was alleged in Counts Two, Three, Four, Five and Six, as "required by law" not only to communicate the requested information but which was relied upon by the Grand Jury to allege Petitioner owed a substantial income tax;

8) Petitioner chose a good faith defense he did not willfully fail to file Form 1040 United States Individual Income Tax Returns, to which Judge Friot specifically approved during Trial, to which was a meaningless defense in light of the Tenth Circuit divorced from decision involving Form 1040;

9) Not only did Petitioner never waive Sixth Amendment Counsel with an understand- as to the scope of Count One, or the actual offense of evasion of payment in Count Two, Three and Four, Petitioner never waived his Sixth Amendment right to effective representative counsel based upon any understanding Form 1040 United States Individual Income Tax Returns were "divorced" from the Grand Jury's Six Counts;

10) All during the criminal proceedings Petitioner was led to believe that Congress placed the duty to file a "Tax Return" under 26 U.S.C. § 6091(b), and not § 6091(a) as held by the Tenth Circuit on October 26, 2011, prejudicing Petitioner's ability to raise several defenses, both before and outside the presence of the jury regarding whether or not Petitioner, who the U.S. Attorney on May 29, 2009, admitted Petitioner did not live in any internal revenue district, was not "required by law" to file a Form 1040 with the "proper official" where that place was at all times abolished, as also confirmed by the Tenth Circuit's October 26, 2011 decision;

11) The entire defense by Petitioner was that he was not required to file the Form 1040 United States Individual Income Tax Returns alleged by the Grand Jury in each Count, as explaind by the Two Bill of Particulars, and Judge Friot increased Petitioner's sentence finding Petitioner telling the Jury Petitioner did not willfully fail to file Form 1040 was "categorically false," which the Tenth Circuit in holding Form 1040 was divorced from the obligation to file an income tax return, clearly agreed with Petitioner rendering Petitioner's testimony categorically "TRUE" not false and proved Petitioner's statements to the public that filing the Form 1040 was in fact voluntary undeniably correct statement of the law;

277.    Petitioner has claimed actual innocense of all Six Counts due to Petitioner not being required by law to provide any information to the IRS on their request for information Form 1040 United States Individual Income Tax Returns alleged in each Count, and therefore innocent of owing or being due any taxes computed from the information sought by the IRS and provided on such Form, as well as actual innocense of the crime of willful attempt to evade the payment of Federal Income Taxes that Judge Friot instructed the Jury they were to find charged in Count Two, Three and Four, and, as well as Petitioner claims actual innocense of Count One's conspiracy charged as Judge Friot allowed the Jury to consider Stilley's Federal Income Taxes within the object of the conspiracy due to the claims Stilley failed to file the now divorced Form 1040s from his home State of Arkansas, which was beyond the referral authorized by the Secretary.

278. Each of the claims Petitioner has raised in his civil rights action brought pursuant to 28 U.S.C. § 2255 are a direct result of Judge Friot disregarding both the Constitution of the United States at the Fourth, Fifth, Sixth an Eighth Amendments, as well as his violating the ex post faco clause of the Article I, § 9, Cl. 3, and even his limiting decision to afford Petitioner to file an overlength brief exceeding

the 25 page limitation placed on Petitioner's right to argue in his memorandum in favor of the 76 grounds Petitioner has raised, which Judge Friot denied without any reason, each show Judge Friot is a witness, if not the cause for each of the civil rights claims Petitioner has raised in his § 2255 motion.

## JUDGE FRIOT IS DISQUALIFIED FROM BEING JUDGE OVER PETITIONER'S CIVIL RIGHTS CLAIMS CAUSED BY HIM DIRECTLY

279. A Judge "should scrupulously maintain the right of every litigant to an impartial and disinterested tribunal for the determination of his rights..." McGuire v. Blount, 199 U.S. 142, 143(1905).

280. "A judge should be disqualified only if a reasonable person, apprised of all the facts and circumstances, would question the judge's impartiality." Hunt v. Am. Bank & Trust Co. of Baton Rouge, 783 F.2d 1011, 1015(11th Cir. 1986)

281. "The purpose of the Court's charge is to inform the jury as to the law of the case applicable to the facts as the jury finds the facts from the evidence." Kreuter v. U.S., 376 F.2d 654, 658(10th Cir. 1967)

282. "The Sixth Amendment is violated when a judge,rather than a jury, finds facts that mandatorily increase a defendant's sentence." U.S. v. Gonzales-Huerta, 403 F.3d 727, 738(10th Cir. 2005).

283. "Maintaenance of the jury as a fact finder body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinzed with utmost care." Dimick v. Schredt, 293 U.S. 474, 485-86(1935)

284. "The controlling distinction between the power of the Court and that of the jury is that the former is the power to determine the law and the latter to determine the facts." Dimick, 293 U.S. at 486

285. "Thus completely obscuring from the jury the most important theory of Garber's defense that she would not have willfully evaded a tax if there existed a reasonable doubt in the law that a tax was due, her trial was rendered fundamentally unfair." U.S. v. Garber, 607 F.2d 92, 97(5th Cir. 1979)

-51-

286. "A jury will give too much weight to the testimony of a judge because his position and authority bestow an 'imprimatur of character, credibility and reliability." Rubens v. Mason, 387 F.3d 183, 191(2nd Cir. 2004)

287. "Admitting the testimony of the decision maker below not only places 'a heavy burden on the party opposing [that] testimony' because of that decision maker's virtually unimpeachable credibility, but it becomes 'practically impossible for a party to challenge the mental impressions of a [decision maker], as his thoughts is known to him alone. Rubens, 387 F.3d at 191

288. "The admission of a judge's fact finding 'vitiates well settled law that test-imony revealing the deliberate thought proceesess of judges, juries, or arbitrators is inadmissible." Id.

289. In deed, the presiding Judge may not testify as a witness at the trial. A party need not object to preserve the issue. See Fed.R.Ev. Rule 605

290. It is improper for a judge to comment directly on the ultimate issue to be decided by the jury. U.S. v. Nicki 427 F.3d 1286, 1293(10th Cir. 2005)

291. "In commenting upon the testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it." Quercia v. U.S., 289 U.S. 466, 470(1933)

292. "The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling." Id.

293. In Quercia, the trial judge, as Judge Friot did during Petitioner's purported trial, did not analyze the evidence; "he added to it, and he bases his instruction upon his own addition." Id. 289 U.S. at 471

294. "The Judge put his own experience, with all the weight that could be attached to it, in the scale against the accused." Id.

295. "It is improper for a judge to comment directly on the ultimate factual issue to be decided by the jury." Sloan v. State Farm, 360 F.3d 1220, 1226(10th Cir. 2004)

296. Besides expanding Count One's object, changing Count Two, Three and Four from the crime of evasion of assessment to evasion of payment, the "issue of willful is properly characterized as an issue of scienter- 'the quintessential jury issue." Finley v. U.S., 123 F.3d 1342, 1347(10th Cir. 1997); citing Turpin v. U.S., 970 F.2d 1344, 1350(4th Cir. 1992)

297. "To deprive a jury of the opportunity to fully evaluate the conscious motions supporting a responsible person's conduct would be to deprive the word "willfully" of its operative effect." Finley, 123 F.3d at 1347

298. The "right to a jury trial...is no mere procedural formality, but a fundamental reservation of power in our constitutional structure." Blakely v. Washington, 542 U.S. 296, 306(2004)

299. "Just as suffrage ensures the people's ultimate control in the legislative and executive branches, a jury trial is meant to ensure their essential control in the judiciary." Blakely, 542 U.S. at 306.

300. The power is divided "between judge and jury." 542 U.S. at 313

301. "A fair trial in a fair tribunal is a basic requirement of due process." In re: Murchison, 349 U.S. 133, 136(1955)

302. "Every procedure which offers a possible temptation to the average man . as a judge...not to hold the balance nice, clean, and true between the State and the accused, denies the latter Due Process." Id at  136

303. "Justice must satisfy the appearance of justice." Offutt v. U.S., 348 U.S. 11, 14(1954)

304. "To commit to the Judge a decision upon the truth of the facts gives chance for the evil against which the section is directed.  The remedy by appeal is inadequate. It comes after the trial, and if prejudice exists, it has worked its evil, and a judgment of it in a reviewing tribunal is precarious." Berger v. U.S., 255 U.S. 22, 34(1921).

SUMMARY OF PETITIONER'S GROUNDS WHERE JUDGE FRIOT IS WITENSS

305. Judge Friot is a fact witness in deciding which of the Grounds Petitioner has raised Petitioner has shown cause and prejudice, actual innocense, a miscarriage of justice, or otherwise satisfied the maze and hurdles the Court establishes Petitioner must satisfy enabling Petitioner to proceed to the merits of Petitioner's claims.

306. What Judge Friot would have done regarding Petitioner's eight Pre-Trial Motions to Dismiss had it been understood Form 1040 United States Individual Income Tax Returns were divorced from the "obligation to file a tax return and the criminalization of willful failure to do so" is at the heart of almost every Ground for relief Petitioner seeks.

307. Form 1040 United States Individual Income Tax Returns is at the heart of ¶ 14 in Count One of the Grand Jury indictment where the Grand Jury alleged Petitioner refrained from delivering Form 1040s to the Internal Revenue Service, in the "Manner and Means" section, See Doc. 293, pg. 7, and where in denying Petitioner's Motion to Dismiss Count One for failure to allege the fraud with particularity, Judge Friot held the fraud alleged was:

> "as collecting taxes and getting lawful returns in by some means that is dishonest. And that is exactly WHAT IS CHARGED HERE."

See Springer's Declaration, pg. 13, ¶ 98

308. To be sure Form 1040 was at the heart of Count One in Judge Friot's mind, at sentencing, Judge Friot enhanced Petitioner's sentence finding:

> "As for Mr. Springer, at trial, he looked at the Jury and testified under oath that he never had any agreement with Mr. Stilley or anyone else to defraud the United States. He testified he did not willfully fail to file Form 1040 for the years 2000 through 2005...These statements are CATEGORICALLY FALSE. They were under oath. They were made for the purpose of deceiving the jury, and they amounted to obstruction of justice, MR SPRINGER."

See Springer Declaration, pg. 31, ¶ 240: Doc. 401, pg. 426-27 in 09-cr-0043

309. Not only did Judge Friot expand Count One to include Stilley's State of Arkansas Gross Income, Doc. 293, pg. 8: See also Springer Declaration, pg. 32, ¶ 246, Judge Friot at sentencing determined that:

"The statement of the object of the Conspiracy in paragraph 9 of the indictment WAS MOST ASSUREDLY NOT CONFINED TO THESE DEFENDANTS own individual income taxes."

See Doc. 401, pg. 410, ln 20-23 (Sentencing Hearing)

310. Judge Friot was fully aware criminal tax offenses were not general crimes but required specific referral from the Secretary of the Treasury to the Grand Jury and that the referral was limited to the years outlined in the referral:

"now which of these two documents, the June 10th letter or the June 3rd letter, strictly speaking, would you suggest--or something else, for that matter, I don't mean to confine you on that--is the definitive demonstration of the date of referral."

See Doc. 383, 70, ln 20-24, case # 09-cr-043

311. Judge Friot went on to say "So the referral to the DOJ is the bright line that we're going to look at." See Doc. 383, pg. 74, ln 13-23

312. To be sure Judge Friot understood the limitation the Secretary of the Treasury places on Grand Juries regarding his enforcement of Title 26 or related offenses, Mr. O'Reilly explained to Judge Friot:

"The referral would be made by the June 3rd letter. Because that was from the IRS. That is their referral letter to the Department of Justice tax division seeking authorization to actually conduct a grand jury investigation of potential Title 26 violations."

See Doc. 383, pg. 71, ln 1-5, case # 09-cr-043

313. Not only is the Grand Jury's jurisdiction limited to years 2000 through 2004, it was limited to claims involving Petitioner's tax liabilities, and no other taxpayers.

314. The referral was a limitation upon the Grand Jury's jurisdiction to charged Title 26 or related offenses and Judge Friot allowed the limitations of 2000 through 2004 to be expanded, not only to years 2000 through 2009, but also further expanded the Grand Jury jurisdiction to include years 1990 through 2009 at sentencing, and including Stilley's liability for 1990 through 2009, and even where the restitution Judge Friot claimed was owed to the State of Arkansas by Stilley and State of Oklahoma by Petitioner.

-55-

315. Then, Judge Friot ordered restitution be paid by Petitioner during his term of imprisonment to the IRS of nearly $ 700,000 and to the State of Oklahoma more than $ 80,000.

316. Judge Friot had no constitutional or statutory authority to exceed the Grand Jury Jurisdictional grant by the Secretary of the Treasury for years 2000 through 2004 and acted in absence of all jurisdiction when he exceeded those years in allowing Trial of years outside 2000 through 2004 and when he imposed his sentence, including restitution to the IRS and State of Oklahoma of more than $ 770,000.

317. In addition, Judge Friot's view of the role Form 1040 played in the Grand Jury's Six Title 26 and related offenses is central in determining whether Petitioner's grounds for Habeas Corpus relief are justified.

318. Petitioner has asserted in his Motion and declaration filed in 13-cv-145 that he never would have defended the Grand Jury's claims that Form 1040 violated the law had Petitioner been given notice Form 1040 United States Individual Income Tax Returns were divorced from the obligations and duties alleged in all Six Counts.

319. This effected numerous constitutional rights Petitioner had and that Judge Friot was charged with not violating.

320. Although Petitioner could write a book that would make the New York's Best Seller list on just how wrong almost every decision Judge Friot made regarding the maintaining and preservation of Petitioner's Constitution Rights, the following are the most glaring examples of Petitioner's rights that were violated, or allowed to be violated, by Judge Friot:

   1) Petitioner had a right to Trial Counsel on the crimes presented to the Jury at Trial under the direct language of the Sixth Amendment;

   2) Petitioner had a right to Sixth Amendment notice of the charges to which he was to defend at Trial;

   3) Petitioner had a right to call witnesses and cross examine witnesses on the charges he was to defend at trial as secured by the Sixth Amendment;

   4) Petitioner had a Sixth Amendment right to defend the charges at trial;

-56-

5) Petitioner had a right to raise and claim certain defenses to the charges to be tried at a Trial under both the Fifth and Sixth Amendments taken together;

6) Petitioner had a Fifth Amendment right to a Grand Jury indictment and a Sixth Amendment Trial on the Fifth Amendment indictment;

7) Petitioner had a Fifth Amendment right to a fixed and firm indictment;

8) Petitioner had a right to due process in the prosecution of the Grand Jury's Charges under the Fifth Amendment;

9) Petitioner had a right not to testify at trial unless he chose to voluntarily, knowingly, and intelligently waive that right which Petitioner did not do;

10) Petitioner has a right not to be held except by indictment for an infamous crime to which he was tried and convicted under the Fifth Amendment and Sixth Amendment taken together;

11) Petitioner has a right not to be deprived of his property or liberty without due process of law;

12) Petitioner had a right not to be convicted based upon use of ex post facto or retroactive application of laws and regulations under Article I, § 9, Cl.3;

13) Petitioner had a Fifth Amendment Right to notice of the law and both its exact requirement and what was intended to happen if a certain law was passed;

14) Petitioner had a right only to be taxed by Congress's laws and not based upon unforseen Judicial construction of such laws under the Fifth Amendment's Due Process Clause and its equal protection component;

15) Petitioner had a right to a Jury trial limited to the Grand Jury referral found to authorize the Secretary of the Treasury's enforcement of criminal provisions of Title 26 and related offenses under the Fifth Amendment's Due Process and equal protection components;

321. Above are just a sampling of the rights Petitioner has alleged Judge Friot has participated in violating in my civil rights action challenging his actions raised in my Motion, Memorandum (that he limited) and Declaration filed triggering this civil proceeding.

322. Besides these, Petitioner has also demonstrated Judge Friot had no jurisdiction to order restitution as a condition of incarceration and besides the recent decisions in U.S. v. Hassebrock, 663 F.3d 906, 922(7th Cir. 2011) or U.S. v. Anderson, 545 F.3d 1072, 1078(D.C. Cir. 2008) which make it clear what Judge Friot did in ordering restitution was fully aware he had no authorization to do, his statements at sentencing show his bias and prejudice against Petitioner, and in favor of the Government:

-57-

"I will now address restitution. I must admit that I was a bit limited, I guess is one way to say it, in my ability to thoroughly evaluate restitution because there was some adjustments to the tax loss amounts and then  there is obviously PENALTY AND INTEREST applicable to some items and not to others and the parties, perhaps understandably, from both standpoints did not devote a great deal of attention in their briefs to the issue of what items are fair game for restitution, what the legal basis for the restitution might be, whether there's any difference among the various counts with respect to restitution and even whether and to what extent there should be joint and several liability for restitution.

I'm not critical of either side for not focusing any harder than they did on that from the government's standpoint. THESE DEFENDANTS ARE LIKELY TO BE BURIED IN RESTITUTION OBLIGATIION FOR THE REST OF THEIR LIVES. AND UNDER ANY REASONABLE ASSESSMENT OF RESTITUTION, IT IS LIKELY THAT THESE DEFENDANTS WILL NEVER SEE THE END OF THEIR RESTITUTTION OBLIGATIONS. THESE TAX LIABILITIES CONTINUE TO BEAR INTEREST. THE INTEREST PAYMENTS ALONG, WHICH I DO NOT WAIVE AND WILL NOT WAIVE, WILL BE SUBSTANTIAL....AND I AM ALSO COGNIZANT TAHT MR. SPRINGER'S AND MR. STILLEY'S RESTITUTION OBLIGATION IS AN INDEPENDENT FREESTANDING OBLIGATION UNDER THE JUDGMENT AND SENTENCE OF THIS COURT...THAT SAID, MY CONCUSION IS THAT MR. SPRINGER'S FEDERAL RESTI1UTION OBLIGATION IS $ 691,343  and that his state restitution OBLIGATION is $ 80,186...."

See Doc. 401, pg. 432-433 (reasons for sentence)

323. Judge Friot shows here as he has throughout that if the law doesn't say he can't do something, he does it when it is in the Government's favor. And in other instances, Judge Friot does what he has been fully warned he cannot do as if he does it with some sort of immunity for instance in changing the charges to evasion of payment knowing full well Petitioner was charged with evasion of assessment and that there was not even a hint in the indictment Petitioner attempted to conceal assets from the IRS to prevent them from collecting assessed amounts.

324. Judge Friot had no authority to order Petitioner to pay any restitution and the reasons for sentencing transcript undeniably show this above.

325. Judge Friot's jurisdictional transgressions by no means started or stopped with his change of the charges, his instructions, his findings of facts, and his order for restitution which shows how cruel and unusual Judge Friot's 15 year penalty and more than $ 770,000 in "restitution" clearly is.

GROUNDS INVOLVING JURISDICTION

326. The Grand Jury's jurisdiction to indict Petitioner on Title 26, or Title 26 related offenses, Petitioner raised challenges to in Grounds 1,3,4,15,16,50,67,73 and

76.   "If the commitment be against the law as being made by one who had no juris-
diction of the cause...the courts are to discharge him..." Fay v. Noia, 372 U.S. 391,
405(1963).

327. In Stone v. Powell, 428 U.S. 465, 477(n.10)(1976) haveas corpus jurisdiction
reachs claims that allege "a lack of jurisdictional or constitutional error."

328. The criminal jurisdiction of the United States Courts "can only be exercised
through the instrumentality of grand juries," Clawson v. U.S., 114 U.S. 477, 488
(1885), and this exercise "is necessary and extensive  with that jurisdiction to
which is essential." Id.

329. The Grand Jury also lacked jurisdiction to indict Petitioner for Title 26, or
Title 26 related offenses, base dupon the statutes and regulations cited by the
team of Mr. O'Reilly and Snoke in their Two Bills of Particulars, that the Grand
Jury relied upon as challenged in Grounds 20,21,22,23,24,25,26 and 27, affecting all
Six Counts.  "An offense created by [an unconstitutional law]," the Supreme Court
has held, "is not a crime." Ex Parte Siebold, 100 U.S. 371, 376(1880).

330. "A conviction under [such law] is not merely erroneous, but is illegal and
void, and cannot be a legal cause of imprisonment." Id.

331. A law "beyond the power of Congress," for any reason, is "no law at all."
Nigro v. U.S., 276 U.S. 332, 341(1928)

332. The District Court lacked jurisdiction to consider any Title 26, or Title 26
related offense, under 18 U.S.C. § 3231 without authorization from the Secretary of
the Treasury for Grand Jury enforcement of any such Title 26, or Title 26 related
offense.

333. Petitioner alleged the June 3, 2005 referral letter was not authorized by, or
issued by, the Secretary of the Treasury in Ground 1 and showed it was not signed
by the Secretary of the Treasury personally, as required by 26 U.S.C. § 7801(a) and
§ 7701(a)(11).

334. "A referral...permits criminal litigation to proceed.  The IRS cannot try its

-59-

own prosecutions. Such authority is reserved...to the U.S. Attorney. 28 U.S.C. § 547(1)." U.S. v. LaSalle, 437 U.S. 298, 312(1978)("The Secretary of the Treasury and the Commmissioner of Internal Revenue are charged with the responsibility of administering and enforcing the Internal Revenue Code.")

335. The District Court lacked jurisdiction to consider any Title 26, or Title 26 related offenses, under 18 U.S.C. § 3231 without authorization from the Secretary of the Treasury for Grand Jury enforcement of such offenses.

336. Petitioner alleged the June 3, 2005 referral letter is limited to his liabilities and for years 2000 through 2004 only in Ground 3,4 and 12. "Once a criminal referral has been made the Commissioner is under well known restraints." Bedarco v. CIR, 464 U.S. 386, 399(1983); See also 26 U.S.C. § 7602(d)(3)("each taxable period...shall be treated separately.")

337. The District Court lost Trial Jurisdiction when it allowed to be changed, or himself changed, the Grand Jury charges in Counts One, Two, Three and Four, as Petitioner asserts in Grounds 4,16,17,18,19,33,34,35,57,58 and 64, at Petitioner's Sixth Amendment Trial for those charges in the Fifth Amendment indictment.

338. As Judge Friot was intimately aware, "[a]fter an indictment has been returned its charges may not be broadened through amendment except by the Grand Jury itself." U.S. v. Farr, 536 F.3d 1174, 1179-80(10th Cir. 2008)("It is axiomatic in our legal system that 'a court cannot permit a defendant to be tried on charges that are not made in the indictment against him.")

339. The "crucuial question here is whether [the defendant] was convicted of an offense not charged in the indictment..." Farr, 536 F.3d at 1180

340. Petitioner claims Count One, Two, Three and Four, are completely different charges than those which the Court instructed the Jury on at Petitioner's said "Jury Trial."

341. The District Court lost Trial Jurisdiction when it allowed Petitioner to present a defense and otherwise assert he did not willfully fail to file Form 1040 when,

as the Government argued for the first time on appeal, and apparently as the Tenth Circuit so held, Form 1040 United States Individual Income Tax Returns were divorced from the "obligation to file a tax return and criminalization of willful failure to do so represent.," Springer, 444 Fed. Appx. at 262, or deliver the taxes owed.

342.  "To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notion of due process." Dunn v. U.S., 442 U.S. 100, 106(1979)

343.  The District Court had no jurisdiction to impose restitutionas part of its sentence and judgment, See U.S. v. Hassebrock, 663 F.3d 906, 925(7th Cir. 2011); and see U.S. v. Anderson, 545 F.3d 1072, 1078(D.C. Cir. 2008) as Petitioner claims in Grounds 11,12,13,14 and 75.

344.  The District Court lost Trial jurisdiction when it instructed the Jury that Form 1040 did not violate the PRA.  "If the requirement of the Sixth Amendment is not complied with, the Court no longer has jurisdiction to proceed.  The Judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder my obtain release by habeas corpus," Johnson v. Zerbst,  304 U.S. 458, 468(1938), as claimed in Grounds 30, 57 and 58

345.  The District Court lost Trial jurisdiction when it allowed Brian Miller to testify as a fact witness as to whether the Turner $ 250,000 was a loan or gross income in year 2005, a year outside the referral years, as Petitioner claims in Ground 53.

346.  Congress has no authority to authorize a District Court to imprison Petitioner for any tax claimed owed, as Petitioner claims in Ground 67, See Article 2, § 13 of the Constitution for the State of Oklahoma; see also Freeman v. Heiman, 426 F.2d 1050, 1052(10th Cir. 1970); and Usery v. Fisher, 565 F.2d 137, 139(10th Cir. 1977) (citing to 28 U.S.C. § 2007(a)("a person shall not be imprisoned for debt on writ of execution or other process issued from a Court of the United States in any State wherein imprisonment for debt has been abolished.")

-61-

347. There are many Grounds raised alleging Constitutional violations occurring during the criminal proceedings involving Judge Friot to which what he would have done under the changed circumstances becomes necessary to determine what should have happened compared to what did happen and Petitioner should not have to wait till Judge Friot decides in an order what he would have done to discover his mind set.  Petitioner has a right to make a record of what Judge Friot would have done had he understood Section 7201 provides two distinct criminal offenses and that Petitioner was charged with the crime of attempted evasion of assessment, not payment; what Judge Friot would have ruled on several pre-trial and trial issues, and including sentencing, had he understood the requirement to File a Form 1040 United States Individual Income Tax Returns, at issue and alleged in all Six Counts, were "divorced" and only voluntary, not mandatory, as that finding pertains to rulings Judge Friot made in those Six Counts; including-

A) How would Judge Friot have decided the challenges Petitioner made that Count One failed to allege Petitioner defrauded the IRS had he fully known IRS's Form 1040 United States Individual Income Tax Returns for each year at issue were divorced from the statutory obligation to file an income tax return;

B) What authority does Judge Friot hold available to Agent Shern and Ten other Special Agents to serve the September 15, 2005 search warrant under 26 U.S.C. § 7608(b) in light of the June 3, 2005 letter of referral being the line of demarcation;

C) What statutory authority is relied upon to impose restitution ordering payment of tax to the IRS and State of Oklahoma;

D) What authority provides Judge Friot with the power to order Petitioner imprisoned for not paying Federal Income Taxes;

E) What authorizes Judge Friot to consider, hold trial, convict and sentence Petitioner of Title 26, and Title 26 related offenses beyond 2000 through 2004;

F) What authorized Judge Friot to increase the scope of Count One beyond the referral years of 2000 through 2004 and to include Oscar Stilley's State of Arkansas's Federal and State tax liabilities;

G) What words in Count Two, Three and Four, led Judge Friot to hold they charged the crime of evasion of payment instead of evasion of assessment crime;

H) What about my testimony to the Jury that I did not willfully fail to file a Form 1040 United States Individual Income Tax Return did you find categorically

-62-

false in light of the Tenth Circuit's decision Form 1040 is divorced from the statutory obligation to file a tax return;

I) Would Judge Friot have dismissed Count Two for being brought outside the 6 year statute of limitation under 26 U.S.C. § 6531 had he understood that § 7201 proscribed two separate crimes indictable by a Fifth Amendment Grand Jury;

J) Had the Government provided evidence they were not charging thousands, if not millions of people for violating either of the Two crimes proscribed under § 7201, how would Judge Friot have proceeded with respect to my motion to dismiss on selective prosecution;

K) Had Judge Friot known Form 1040 was divorced how would he have proceeded at every stage of the proceeding below, including arraignment, pre-trial, trial and at sentencing;

L) What would have been the tax loss had you considered Counts Two, Three and Four the crime of evading assessment instead of evading payment;

M) Had Judge Friot known the requirement to file a tax return was to be according to 26 U.S.C. § 6091(a), instead of 6091(b), how would you have ruled knowing § 6091(a) required resort to Treasury Regulation 26 CFR § 1.6091-2(1999-2004) for years 2000 through 2004, which directed persons who do not live in any internal revenue district to file their tax return with the District Director in Baltimore, Md. which the Tenth Circuit held was abolished in 1998;

N) Why did Judge Friot give me 12 times the prison sentence that Judge Eagan gave to Mr. McGuiness;

O) What does Judge Friot rely upon in the record to support a finding I waived my Sixth Amendment Right to Counsel in light of the changes he made to Counts One through Four and in consideration of the Tenth Circuit divorcing Form 1040 from the obligatinos and duties at issue in all Six Counts;

P) In light of the June 3, 2005 referral letter, what possibly could authorize Special Agent Brian Shern to seek, obtain, and serve a search warrant issued on September 15, 2005 and served on September 16, 2005;

Q) How would Judge Friot changed the decision to enhancements under 2T1.9 and 3C1.1 had he known Petitioner's testimony Petitioner did not willfully fail to file Form 1040 United States Individual Income Tax Returns for any year at issue was categorically true and that the statements made to the public that they were not required to file Form 1040 were true statments;

348. Just a review of each of Petitioner's 76 civil rights claims docketed in 13-cv-145 sufficiently indicate Judge Friot is a witness involved in each ground and it is necess- for him to disqualify himself and where Petitiner will rely upon Judge Friot to prove what he would have done had the situtations he ruled upon had the benefit of the Tenth Circuit's decision, 444 Fed. Appx. 256, and the Kawashima decision from the Supreme Court on February 21, 2012.

349. There is no question that the Tenth Circuit placed the obligation to file the Form 1040 United States Individual Income Tax Returns alleged by the Grand Jury in each of the Six Counts at times "required by law," at 26 U.S.C. § 6091(a), and not § 6091(b).

350. The Government on appeal claimed the statute that governed the place to file the Form 1040 was found at 26 U.S.C. § 6091(b)(1)(B). Brief at 18

351. In the district court the U.S. Attorney O'Mielia asserted § 6091(b)(1)(B)(i) governed the place because Petitioner lived in no internal revenue district. See Doc. 71, pg. 4.

352. Judge Friot also relied upon § 6091(b) while denying Petitioner's Motion to Dismiss challenging venue:

> "The defendants have cited Title 26, Section 6091, which governs where income tax returns may be filed and which refers to filing 'in the internal revenue district in which is located the legal residence of the person making the return.' Now, I've left out some words, but the words I have said there are the relevant ones.  That's 26 United States Code, Section 6091(b)(1)(A)(i)."

See Doc. 383, 130-131, 18-25

353. Not only does the Constitutional violation of switching the criminal conduct on appeal demonstrate due process violations with that switch, prejudicial to Petitioner, Judge Friot's reasoning for denying dismissal on venue violations under the Sixth Amendment were grounded  as follows:

> "for a tax evasion charge is in any district in which an affirmative act of evasion occurred."

See Doc. 383, pg. 131, ln 17-20

354. Judge Friot continued:

> "Failure to file a tax return is an offense either at the defendant's place of residence or at the collection point where the returns should have been filed."

See Doc. 383, pg. 131-32, lns 22-25; 1-4

355. Judge Friot concluded that:

> "Venue is proper for the crimes charged in the Northern District, in this case... The place where affirmative acts of evasion are charged to have occurred."

See Doc. 383, pg. 132, ln 10-15

356.  The Tenth Circuit's switch to § 6091(a), which led to 26 CFR § 1.6091-2 and its application of 2005's version to be applied backwards to years 1999 through 2004, not only causes Constitutional notice error to Petitioner, both under the Fifth and Sixth Amendment, but also is in direct violation of the Ex post facto clause of Article I, § 9, Cl. 3 and Congress's own words at 26 U.S.C. § 7805(b).

357. Besides Petitioner in his Motion for Judgment of acquittal at trial directing Judge Friot "I was not required to answer any question on any Form 1040 for years 2000, 2001, 2002, 3,4,or 5 based upon those violations," which Judge Friot denied, Judge Friot also explained Petitioner was "proud to proclaim he hadn't filed tax returns since the 1980s," Doc. 401, pg 417; that Petitioner publically stated the "tax system is voluntary," pg. 417, ln 19-20, and that Petitioenr told Mr. Dingman "according to the Constitution, we are not required to file personal tax returns," Doc. 401, pg. 418, ln 16-23, and that Petitioner told Mr. Patterson he "did not file tax returens," Doc. 401, pg. 418-19, ln 24-25, and otherwise Judge Friot centered his animosity at sentencing upon Petitioner telling the public that filing Form 1040 was voluntary and that Form 1040 did not comply with the PRA.

358.  Recently, in an unreported case styled U.S. v. Bishop, 2012 U.S. App. Lexis 17313(10th Cir. 2012), Judge Friot apparently became a witness in an obstruction of justice case where he was the witness due to something that happened during the sentence of a defendant then being sentenced which the Tenth Circuit explained:

> "Judge Russel consuled privately with Judge Friot, the sentencing judge in Bishop's First case.  In explaining the § 2J1.2(b)(2) enhancement, Judge Russell said, "I know the Judge [Friot] told me and he told the FBI that these letters affected his sentencing thinking process and so I am satisfied it did substantially interfere with the administration of justice for that very reason."

359.  Judge Friot's thinking process is exactly what is at issue in Petitioner's civil rights claims, and as in Bishop's case, Judge Friot was not the Judge who considered Bishop's second indictment.

## BIAS AND PREJUDICE JURISPRUDENCE

360. Having established Juries, not judges find the facts at trial and that Grand Juries, not judges charge the crimes for which an accused is to be held, the next issue to address is the jurisprudence of bias and prejudice of the judge against the accused, or in this case Judge Friot's bias and prejudice against Petitioner.

361. Petitioner contends changing the indictment in Count One to include Stilley's Federal Income Taxes, and changing Count Two, Three and Four, from evasion of assessment to evasion of payment at trial, shows Judge Friot did something prejudicial to Petitioner's rights to a Grand Jury indictment and trial on that indictment.

362. Petitioner also claims Judge Friot pre-trial order that Form 1040 was not subject to the Paperwork Reduction Act, and then at trial instructing the jury to an element of all Six Counts involving willfully that he had "ruled" Form 1040 did not and does not violate the Paperwork Reduction Act, demonstrates a continued deep seated favoritism in favor of the United States and against Petitioner.

363. If allowing the Grand Jury referral limited to 2000 through 2004 calendar years to be expanded to 2000 through 2009 does not show the favortism against Petitioner's rights, or the switch in each Count Two, Three and Four, to evasion of payment, or that Judge Friot believed Form 1040 was mandatory and not subject to the PRA, the apparent fact he did not believe his jurisdiction had any limits should throw this fact finder over the top.

364. Without finding any statutory authority to do so, Judge Friot imposed an order of more than $ 770,000 in restitution and included $ 80,000 to the State of Oklahoma which Congress had not authorized him, or the Secretary of the Treasury to do.

365. "It is true that 'there may be instances which a judge's behavior during prior judicial proceedings can demonstrate sufficient friction between the judge and the complaining party to support a finding of bias." U.S. v. Daley, 564 F.2d 645, 651 (2nd Cir. 1977)

366. Section 455 provides that a judge shall disqualify himself in a proceeding where

-66-

"his impartiality might reasonably be questioned." Daley, 564 F.2d at 652

367. "Comments and rulings by a judge during the trial of a case may well be relevant to the question of the existence of prejudice." Wolfsom v. Palmieri, 396 F.2d 121, 124 (2nd Cir. 1968)

368. "Conceivably also,...contacts during trial might themselves have created such a degree of irritation with a party or his lawyer as to create the bent of mind to which the Supreme Court referred in Berger." Palmieri, 396 F.2d at 125

369. "Usually, bias sufficient to disqualify a judge must stem from an extrajudicial source, except 'where such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party." U.S. v. Killough, 848 F.2d 1523, 1529(11th Cir. 1988)

370. "An exception exists when a judge's remarks demonstrate such pervasive bias or prejudice that it constitutes bias against a party." Wiley v. Wainwright, 793 F.2d 1190, 1193(11th Cir. 1986)

371. "Honesty and integrity are presumed on the part of a tribunal, [and] there must be some substantial countervailing reason to conclude that a decision maker is actually biased with respect to factual issues being adjudicated." Gwinn v. Awmiller, 354 F.3d 1211, 1219(10th Cir. 2004); quoting Tomkovich v. Kan. Bd. of Regents, 159 F.3d 504 518(10th Cir. 1998)..

372. Petitioner has raised 76 grounds for relief and almost all of them are caused by something Judge Friot did during the criminal proceedings.

JUDGE FRIOT CONTENDS PETITIONER'S § 2255
CLAIMS ARE A CONTINUATION OF THE CRIMINAL CASE

373. To further the concern Petitioner has for Judge Friot's bias and prejudice spilling over into this proceeding is further supported by Judge Friot's position on whether a motion under 28 U.S.C. § 2255 is a civil claim brought a new or a continuation of his criminal jurisdiction in the criminal case to which he was assigned by Judge Eagan on March 30, 2009.

-67-

374.  In Judge Friot's order he entered in 09-cr-0043 on April 9, 2013, addressing my Motion to Clarify Specially," Doc. 483, he states:

> "Motions brought under 28 U.S.C. § 2255 receive a civil case number when filed, but all documents filed in such matters are filed in the underlying criminal case.  All documents are filed in the criminal case regardless of whether the caption shows the criminal case number or both the criminal and civil case number."

375.  At the time this statement was made by Judge Friot I can only assume he was fully aware of the cases I provided to him in my Motion, Doc. 483, which I pointed out two cases within the Tenth Circuit, one from within his own district, which is in direct conflict with Judge Friot's words in Docket # 484.

376.  I asked Judge Friot to explain (1) how Petitioner's case is, after the initial filing of his Motion, Memorandum, and Declaration, "a continuation of the criminal case"; and (2) why it would not be necessary for Petitioner to file the application form to proceed without prepayment of "fees and costs" no matter what the form the future expense is styled as.

377.  The issue about the application to proceed in forma pauperis was a form that accompanied  the Forms Petitioner obtained from the Northern District Clerk's office. Judge Friot struck Doc. 479 (Application to Proceed In Forma Pauperis)  explaining:

> "A § 2255 motion is a continuation of the criminal case whose judgment is under attack, and no filing fee is required....The application is stricken as moot."

See Doc. 480

378. Whether a Motion under § 2255 triggers a filing fee, which it clearly does not so trigger, is a question entirely different than whether my civil rights claims made in my § 2255 motion are considered after the filing of the motion a criminal case.

379. As Judge Friot clarified on April 9, 2013, Doc. 484, "all documents filed in such matters are filed in the underlying criminal case" as he intends to treat my Motion.

380. In my Motion, Doc. 383, Petitioner identified two cases to Judge Friot that state "when a motion is filed under 28 U.S.C. § 2255 ("a § 2255 motion"), the motion

-68-

effectively begins a civil proceeding under a new case record and all pleadings and documents are filed in a new civil case number." See U.S. v. Huff, 2012 U.S. Dist. Lexis 2331(n.1)(District of Utah); See also U.S. v. Krehbrel, 2008 U.S. Dist. Lexis 17922(Western District of Oklahoma)("according to the procedure followed in this Court, a civil case is opened when a convicted defendant files a § 2255 motion.")

381. Petitioner acknowledges a civil case number was assigned by the Clerk's Office as 13-CV-145, and that under Local Civil Rules for the Northern District of Oklahoma Rule 40.1(b) a Northern District Magistrate Judge was assigned to 13-CV-145, but what Judge Friot has stated now in at least two orders specifically, and four orders intrinsically, by not using the civil case number, and only the criminal proceeding case number, whatever the history of § 2255 is, that history, and the rules and procedures that developed for the last almost 70 years, have been disregarded, and at least with respect to Petitioner's civil rights claims in his § 2255 motion, they (in Judge Friot's view) are made in an ongoing and continuing criminal case and not in a new civil proceeding.

382. Judge Friot's words in his orders show just how prejudicial he has become against Petitioner and all Petitioner's Constitutional rights.

382. Perhaps it is because Judge Friot realizes the brevity of what is at stake, or perhaps it is because he simply does not fully understand certain aspects of the law, but thus far he has:

> (1) refused to grant me an extension of pages to present my legal arguments to my 76 grounds for relief;
>
> (2) refused to allow me to obtain In Forma Pauperis status in 13-CV-145 and struck as moot my application presented in the Form tendered to me by the Northern District's Clerk's Office;
>
> (3) proceeded only in the criminal docket number to issue orders;
>
> (4) contradicts local rules and other decisions by Judges in other districts, including his own regarding whether my civil rights claims proceed in a new civil case;
>
> (5) extended the time to do initial screening out Ten Months which suggests relief under § 2255's habeas substitute is not swift by any means.

-69-

383.  Petitioner even quoted Wade v. Mayo, 334 U.S. 672, 690(1948) where the Supreme Court held:

> "habeas corpus cuts through all forms and goes to the very tissue of the structure."

See Doc. 483, pg. 3

384.  This is similar conduct the record in the Trial Court discloses that led to Petitioner's 76 grounds for relief.  What it appears to the public is that Judge Friot bent his mind against Petitioner's constitutinal rights.

385.  In order to arrive at Judge Friot's orders that my civil rights claims are now pending in an ongoing criminal proceeding and all documents filed are to be filed in that proceeding, a jurist, or the public would need to turn a blind eye to the following cases.

386.  In Ex Parte Tom Tong, 108 U.S. 556, 559(1883) the Supreme Court held that:

> "The Writ of habeas corpus is the remedy which the law gives for the enforcement of the civil right of liberty."

387.  Tom Tong continues saying:

> "Resort to it sometimes becomes necessary, because of what is done to enforce laws for the punishment of crimes; but the judicial proceeding under it is not to inquire into the criminal act which is complained of, but into the right to liberty notwithstanding the act.  Proceedings to enforce civil rights are civil proceedings and proceedings for the punishment of crimes are criminal proceedings. ....the writ of habeas corpus...is a new suit brought by him to enforce a civil right...The proceeding is one, instituted by himself for his liberty, not by the government to punish him for his crime."

Id.

388.  The question at the center of habeas corpus civil rights claims was explained in Tom Tong:

> "The question whether the individual shall be imprisoned is always distinct from the question whether he shall be convicted or acquitted of the charge on which he is to be tried, and therefore these questions are SEPARATE, and may be DECIDED IN DIFFERENT COURTS."

389. It may be tempting to dismiss the position Judge Friot has taken in regard to whether my motion under § 2255 continues the proceedings in the criminal case or whether a new civil case proceeds from the moment the § 2255 motion is filed, but

-70-

Judge has routinely always took a position that was the most against Petitioner no matter how against the Constitution and Laws that action would appear.

390. To understand § 2555 motions requires an understanding of habeas corpus. After all, § 2255 is in the Chapter of Title 28, United States Code, labeled "Habeas Corpus."

391. The Tenth Circuit in Martin, 273 F.2d at 777 clearly explained that "a motion under § 2255, like a petition for a writ of habeas corpus***, is not a proceeding in the original criminal prosecution but an indpendent civil suit."(quoting Heflin, 358 U.S. at 418, note 7)

392. The Tenth Circuit in Hixon, 268 F.2d at 668 said that § 2255 "was an independent civil suit." Martin, 273 F.2d at 777 ("in our opinion an application under § 2255 is a new and independent civil proceeding..." Id. at 778

393. Not only does Judge Friot go against district courts within the Tenth Circuit, or these Tenth Circuit decisions above and those cited within this affidavit, the question asked and needs answered by this Affidavit and Petitioner's Motion filed simultaneously herewith, is why is Judge Friot doing this at a crucial time where maybe my only right to see Habeas Corpus relief is available to me?

394. "Section 2255...was passed at the instance of the Judicial Conference to meet practical difficulties that had arisen in administering the habeas corpus jurisdiction of the federal courts....the sole purpose was to minimise the difficulties encountered in habeas corpus hearings affording the same rights in another and more convenient forum." Boumedienne v. Bush, 171 L.Ed 2d 41, 83(2008)

395. "The two leading cases addressing habeas substitutes," Swain v. Pressly, 430 U.S. 372(1977), and United States v. Hayman, 342 U.S. 205(1952) "were attempts to stream-line habeas corpus relief, not to cut it back." Id. at 82

396. The term "prejudice" is damage or detriment to one's legal right. See Black's Law.

PRIOR INSTANCES OF BIAS AND PREJUDICE

397. Prior to the § 2255 civil rights claims being docketed, and my motion seeking extended brief length to adequately develope my civil rights claims in effort to vindicate my liberty, Judge Friot had show some bias or prejudice that plays into the bent mind Petitioner claims by the filing of this Affidavit and his Motion filed simultaneously herewith.

398. When Petitioner challenged Judge Friot's jury instruction on income and gift due to that or those instructions never being given notice to the public, including Petitioner, and because the Grand Jury indictment put the Court on notice that the meaning of gift would be center to some of the issues in dispute, including a Motion to Dismiss Petitioner filed based upon claims Duberstein prevented a Jury Trial on the crime of defrauding the IRS, or attempting to evade the payment of taxes, due to a determination had not been made as to what was in fact owed. See Doc. 55,56

399. Mr. O'Mielia, prior to his resignation, claimed "whether Defendant Springer earned income" could be determined by the Trial Jury. Doc. 71, pg. 7

400. In Commissioner v. Duberstein, 363 U.S. 278, 288(1960) the Supreme Court said:

> "Specifically, the trier of fact must be careful not to allow trial of the issue whether the receipt of a specific payment is a gift to turn into a trial of the tax liability."

401. Judge Friot allowed the Jury at trial to do exactly what the Supreme Court said not to do.   In the middle of trial, Judge Friot proffers a definition of "gift" and Minister income to the Jury over Petitioner's objections.  After trial Petitioner moved for a new trial where Judge Friot incorrectly instructed the Jury regarding the meaning of gift and Minister income and that it was applied ex post facto or retroactive to all years of the indictment.  Judge Friot denied the Motion turning to a decision by the Fifth Circuit entitled United States v. Terrell, 754 F.2d 1139, 1149(5th Cir. 1985).

402. After Trial Petitioner attempted to convince Judge Friot to recuse himself

-72-

based upon the fact he was assigned by Judge Eagan who Petitioner contends was prevented from being the Judge in 09-cr-043 or else there would have been no need for Judge Friot to be assigned under Misc. 23.

403. Petitioner specifically identified McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1261(1983) which clearly demonstrated Judge Friot was not permitted because he was selected by a disqualified Judge, Judge Eagan.  Judge Friot reasoned in denying the Motion that Petitioner had not cited "similar language from a Tenth Circuit case" as if that was the standard he set.

404. So, when Gift is defined in the middle of Trial Judge Friot relies upon a Fifth Circuit decision named Terrell, and when Petitioner cites to the Fifth Circuit in McCuin to justify recusal of Judge Friot, Judge Friot rejects the Fifth Circuit claiming "No similar language from a Tenth Circuit case has been cited by the defendant."  See Doc. 293, pg. 22   These circumstances show the bent mind Judge Friot had before sentencing and lends support for Petitioner's claims he has an even more bent mind now.

CONCLUSION

405.   Judge Friot, telling the Jury I did not willfully fail to file Form 1040 United States Individual Income Tax Returns was a true factual statement and was true legally.

406.   Judge Friot, your expanding Count One beyond the referral years and liabilities authorized for prosecution, and expanding the Grand Jury's conduct in Count One to include Oscar Stilley's State of Arkansas debt was as clear an unconstitutional act on your part can be seen.

407.   Judge Friot, your changing Counts Two, Three and Four, from the crime of evasion of assessment to evasion of payment, was not only known to you to be unconstitutional where your directed the Jury to find Petitioner guilty of a crime not charged in the Grand Jury's charges, but you were put on notice in the Farr decision that such conduct was in violation of both the Fifth and Sixth Amendment.

408.   Judge Friot, Title 28 is not in the criminal code, that is Title 18, and a

-73-

a motion filed under 28 U.S.C. § 2255, though procedurally required to be filed in the Clerk's Office of the Court that pronounced sentence and judgment, is not a criminal case or controversy, and is a civil proceeding, not a criminal one.

409.   Judge Friot, 26 U.S.C. § 7201 proscribes two different Fifth Amendment crimes, and not one.

410.   Judge Friot, a civil proceeding under § 2255 is to be treated equal to a Petition filed under 28 U.S.C. § 2241, or under the common law of Habeas Corpus jurisdiction, and you have already impeded that swiftness and fairness by denying me the opportunity in this very complex tax case to a pro-se prisoner to file argument beyond 25 pages, you also extended what was to begin on March 11, 2013, an additional Ten Months with who knows how long after that you would order what you seek by the order dated 3.15.13.

411..   Judge Friot, telling people the requirement to file a Form 1040 United States Individual Income Tax Return is voluntary or otherwise optional was a correct statement of the law and expressing my view to the public that such filing is voluntary in no way encouraged others to violate the income tax law.

412.   Judge Friot, your jurisdiction derives from the Grand Jury in infamous crimes and the Grand Jury derived its jurisdiction to consider and indict Petitioner for the Six Title 26, or Title 26 related offenses, from the Secretary of the Treasury only, which in 09-cr-043 that jurisdiction was limited to years 2000 through 2004 and Petitioner's income tax debt, and could include no others in the Northern District of Oklahoma with a proper referral, not withstanding Ground One of Petitioner's 2255 Motion.

413.   Judge Friot, in order for the Grand Jury to have authority from the Secretary of the Treasury to indict Petitioner, or anyone else for tax related offenses, Congress and the Secretary of the Treasury must approve such prosecution of such infamous crimes and Congress place such authority in the office of the Secretary of the Treasury and in no other official is that authority enumerated.

414.   Judge Friot, neither the Secretary of the Treasury authorized you to impose restitution upon Petitioner for tax crimes, and even if he wanted to, as well as it is Congress who forbids such jurisdiction.

-74-

415.    Judge Friot, the State of Oklahoma is an independent sovereign from the United States and you had no authority to order Petitioner to pay the State of Oklahoma any debt you said Petitioner owes.

416.    Judge Friot, the State of Oklahoma surrendered its power to tax income to the United States by way of the Sixteenth Amendment and has not reserved to itself the power to tax such income.

417.    Judge Friot, the State of Oklahoma forbids you from imprisoning Petitioner for failure to pay a debt pursuant to Article 2, § 13 of the Constitution for the State of Oklahoma, as reserved by the State of Oklahoma by way of the meaning of the Tenth Amendment to the Constitution of the United States ⌊of America⌋.

418.    Judge Friot, you are a Western Judicial District Judge for the United States and are not authorized to be Petitioner's Judge in 13-cv-145

419.    Judge Friot, you took an oath under 28 U.S.C. § 453 which read:

> "I, Stephen P. Friot, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties in-cumbent upon me as ⌊Judge⌋ under the Constitution and laws of the United States. So, help me God."

420.    Judge Friot, Title 28 U.S.C. § 47 would forbid you from hearing or "determin⌊ing⌋ an appeal from the decision of a case or issue tried by ⌊you⌋."

421.    Judge Friot, Rule 4 requires 13-cv-145 to be assigned to a "judge under the Court's assignment procedure" when the trial or sentencing Judge "is not available."

422.    Judge Friot, it is Petitioner's claim that you have demonstrated the bias and prejudice, with a bent mind in favor of depriving Petitioner of several Constitutional Rights alleged in Petitioner's Motion under § 2255, and as more fully argued herein, 28 U.S.C. § 116, 137, 144, 453, 455(a) and 455(b), as well as Supreme Court and other Court's jurisprudence regarding § 2255 motions equal to Petitions for Habeas Corpus relief, and it will be necessary to probe your mind on what you would have done differently had you been aware of Form 1040 was divorced from the obligations and duties to file an income tax return and the criminalization of willful failure to do so.

-75-

423.    What has been so truly said of the Federal writ; "there is no higher duty then to maintain it unimpaired..." See Bowen v. Johnson, 306 U.S. 19,26(1939); Fay v. Noia, 372 U.S. 391, 400(1963); and Harris v. Neslon, 394 U.S. 286, 292(1969).

424.    All Petitioner seeks is the Court's duty remain unimpaired and Petitioner requests the Honorable United States District Judge, Stephen P. Friot, disqualify him-self for the reasons stated in this Affidavit as Petitioner shows Judge Friot has a deep seated favoritism in favor of the United States Government, a bias that is highly prejudicial to Petitioner and his right to relief based upon his civil rights claims caused by Judge Friot, and that Judge Friot is a key witness to Petitioners claims; as well as it is just improper, at 28 U.S.C. § 47 demonstrates, for Judge Friot to sit in judgment of decisions that are alleged to have violated Petitioner's civil rights.

Respectfully Submitted

Subscribed and Sworn before me this __25th__ day of April, 2013

My Commission expires on __11|1|16__

CARRIE L WILKS
NOTARY PUBLIC
State of Texas
Comm. Exp. 11-01-2016

DECLARATION

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1) the above 424 paragraphs are true and correct to the best of my knowledge and belief.

## CERTIFICATE OF COUNSEL

I, Lindsey Kent Springer, pro-se, certify that I have made the above Affidavit and Declaration in good faith.

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2013, I mailed by first class mail the above Affidavit of Lindsey Kent Springer to the Clerk of Court, United States District Court 333 West Fourth Street, Tulsa Oklahoma 74103;

I further certify that all parties shall be served electronically with the above Affidavit as they are all ECF users:

United States Attorney

## DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1) that I deposited the above Affidavit of Lindsey Kent Springer in the U.S. Mailbox located within the external limits of Big Spring, Texas inside FCI Big Spring Prison on April 25, 2013.

Lindsey Kent Springer
#02580-063
Federal Correctional Institution
1900 Simler Ave
Big Spring, Texas 79720



no postmark

**RECEIVED**

APR 29 2013

Phil Lombardi, Clerk
U.S. DISTRICT COURT

Clerk of Court
United States District Court
Northern District of Oklahoma
333 W. Fourth Street
Tulsa, Oklahoma 74103

09-CR-43-SPF

"Legal Mail"