**FILED**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

JUL 02 2013

LINDSEY KENT SPRINGER.                    )

      Petitioner/Movant.                    )

    Phil Lombardi, Clerk
    U.S. DISTRICT COURT

v.                                        )   Case No. 13-CV-145
                                    (Formerly 09-CR-043)

UNITED STATES OF AMERICA.                 )

      Respondent.                           )

MOTION FOR CONDITIONAL RELEASE ON WRIT OF HABEAS CORPUS

AS TO COUNTS TWO. THREE and FOUR'S SENTENCE TO 5 YEAR TERMS OF

IMPRISONMENT

Lindsey Kent Springer

Prisoner I.D. # 02580-063

Federal Correctional Institution

1900 Simler Ave

Big Spring. Texas 79720

/ Mail   ___No Cert Svc   ___No Orig Sign
___C/J   ___C/MJ   ___C/Ret'd   ___No Env
___No Cpy's   / No Env/Cpy's   ___O/J   ___O/MJ

TABLE OF CONTENTS

Table of Authorities.   .   .   .   .   .   .   -ii-

Standard for Release Pending Ruling.   .   .   .   .   1

1.   Petitioner claims in his LCvR 9.2 § 2255 application actual innocense to the 26 U.S.C. § 7201 crimes the Court asked the Jury to find in connection with Counts Two, Three and Four, and no jury verdict was or has been rendered in respect to the Grand Jury's § 7201 alleged crimes and the over Four years that passed rendering these convictions entered without constitutional jurisdiction.   .   2

   A.   The Grand Jury alleged in Counts Two, Three and Four, not crimes of evasion of payment, but rather alleged crimes of evasion of assessment.   .   .   .   2

     (i) Grand Jury Count Two.   .   .   .   .   2

     (ii) Grand Jury's Count Three.   .   .   .   .   3

     (iii) Grand Jury's Count Four.   .   .   .   .   4

     (iv) The elements.   .   .   .   .   .   .5

       (a) The elements of willfully.   .   .   .   5

       (b) The elements of Affirmative Acts.   .   .   5

     (v) History on Section 7201.   .   .   .   .   8

     (vi) Jury Instructions.   .   .   .   .   10

       (a) Jury Instruction on Gift.   .   .   .   11

     (vii) Sentencing Commission Advice.   .   .   .   11

   B.   Petitioner was convicted of crimes in Count Two, Three and Four, that were not alleged by the Grand Jury.   .   .   .   12

   C.   The Trial Judge lost jurisdiction under Article III, Section 2, Cl. 3 based upon the injunction against Trial pursuant to the Fifth and Sixth Amendment entered in 1791 into the Constitution of the United States through Article V Amendments.   .   .   .   12

2.   Petitioner should be released immediately due to the conviction, sentence, and judgment over Counts Two, Three and Four (Counts Five and Six have already been served out) imposing 5 year terms of imprisonment entered and ordered without a United States attorney and based upon a fraud upon the Court depriving the Court of Constitutional and statutory jurisdiction.   .   .   .   .   16

3.   Petitioner's conviction, sentence, and judgment as to Count Two, Three and Four (and Five and Six) are based upon the Grand Jury's allegation Petitioner willfully failed to file Form 1040 United States Individual

Income Tax Returns with the Internal Revenue Service for years 2000, 2002, 2003, 2004 and 2005, as "required by law" which the Tenth Circuit ruled on October 26, 2011, Petitioner was not required by law to say anything on Form 1040 or file Form 1040s ever.   .   .   21

A.   Tenth Circuit's Order dated October 26, 2011.   .   .   21

(i) Grand Jury Indictment on Form 1040.   .   .   .21

Conclusion.   .   .   .   .   .   .   .   .25

Certificate of Service.   .   .   .   .   .   .   26

Declaration of Mailing.   .   .   .   .   .   .   26

## TABLE OF AUTHORITIES

Barnett v. Hergett, U.S. App. Lexis 649(10th Cir. 1999).   .   .   .   1

Bouleware v. U.S., 552 U.S. 421, 424(2008).   .   .   .   5

Bradley v. Fisher, 13 Wall 80 U.S. 335, 352(1872).   .   .   .   15

Bryan v. U.S., 524 U.S. 184, 194(1998).   .   .   .   .   5

Buckley v. Valeo, 424 U.S. 1, 126(1976).   .   .   .   .   17

Cheek v. U.S., 498 U.S. 192, 201(1991).   .   .   .   .   .5

Clawson v. U.S., 114 U.S. 477, 488(1885).   .   .   .   14

Confiscation Cases, 7 Wall 454, 456(1864).   .   .   .   .   18

Edwards v. State of Oklahoma, 412 F. Supp. 556, 559-60(W.D. Ok. 1976).   .   1

Flora v. U.S., 362 U.S. 145, 176(1960).   .   .   .   .   8

Edmonds v. U.S., 520 U.S. 651, 659(1979).   .   .   .   18

Freytax v. CIR, 501 U.S. 868, 880(1991).   .   .   .   .   18

Kawashima v. Holder, 182 L.Ed 2d 1, 10(2012).   .   .   .   2.9

Graham v. Koerner, 322 Fed. Appx. 557, 582(10th Cir. 2009).   .   .   1

In Re Nofziger, 925 F.2d 428, 437(D.C. Cir. 1991).   .   .   .   17

Laing v. U.S., 423 U.S. 161, 191(1975).   .   .   .   .   8

Lawn v. U.S., 335 U.S. 339, 360(1957).   .   .   .   .   8

Linda Thompson, et al, v. Resolution Trust Corp, F.3d 1508, 1518(D.C. Cir.1993). 16

Holly well v. Smith, 503 U.S. 47, 53(1992).   .   .   .   .   8

Martinez v. Ensor, 958 F. Supp. 515, 518(D.C. Colo. 1997).   .   .   19

TABLE OF AUTHORITIES (con'td)

New York v. Muka, 440 F. Supp. 33, 36(N.D.N.Y., 1977).     19

New York Times Co. v. U.S., 403 U.S. 713, 716(1971).     13

Nichols v. Reno, 931 F. Supp. 748, 750(D.C. Colo. 1996).     18

Pavelic v. Laflore v. Marvel Enter. Group, 493 U.S. 120(1989).     16

Spies v. U.S., 317 U.S. 492, 497(1943).     8

Stirone v. U.S., 361 U.S. 212, 217-19(1960).     13,14

Sansone v. U.S., 380 U.S. 343, 354 (1965).     2,8,9

U.S. v. Balsys, 524 U.S. 666, 675(1998).     13

U.S. v. Bishop, 412 U.S. 346, 359(1973).     8

U.S. v. Boulier, 359 F. Supp. 165, 171(E.D. N.Y. 1972).     19

U.S. v. Bradshaw, 580 F.3d 1129, 1136(10th Cir. 2009).     19

U.S. v. Chisum, 502 F.3d 1237, 1244(10th Cir. 2007).     6

U.S. v. Cohen, 297 F.2d 760, 770(9th Cir. 1960).     6

U.S. v. Collins, 920 F.2d 619, 630 and n.13(10th Cir. 1990).     6

U.S. v. Cotton, 535 U.S. 625, 630(2002).     14

U.S. v. Cespedes, 151 F.3d 1329, 1332(11th Cir. 1998).     19

U.S. v. Dack, 747 F.2d 1172, 1174(7th Cir. 1984).     9

U.S. v. Daniel, 978 F.2d 540, 542(6th Cir. 1992).     7

U.S. v. Dunkel, 900 F.2d 105, 107(7th Cir. 1990).     6,9

U.S. v. Dunlap, 17 F. Supp. 2d 1183, 1185(D.C. Colo. 1998).     18

U.S. v. Durham, 941 F.2d 886, 892(9th Cir. 1991).     20

U.S. v. Farr, 2006 Dist. Lexis 82702(W.D.Ok.).     9

U.S. v. Farr, 536 F.3d 1174, 1180(10th Cir. 2008).     13,14

U.S. v. Galletti, 541 U.S. 114, 122(2004).     9

U.S. v. Green, 239 Fed. Appx. 431, 434(10th Cir. 2007).     6,11

U.S. v. Hunerlack, 197 F.3d 1059, 1065(11th Cir. 1999).     9

U.S. v. LaSalle, 437 U.S. 298, 308-312(1978).     16

TABLE OF AUTHORITIES (con'td)

U.S. v. Mal,  942 F.2d 682, 688(9th Cir. 1991).        .        .        .        9

U.S. v. Masat, 896 F.2d 88, 91(5th Cir. 1990).        .        .        .        9

U.S. v. McGill, 964 F.2d 222, 230(3rd Cir. 1993).        .        .        . 6,9

U.S. v. Overhold, 307 F.3d 1231, 1246(10th Cir. 2002).        .        . 5

U.S. v. Payne, 978 F.2d 1177, 1179(10th Cir. 1992).        .        .        .7

U.S. v. Richardson, 2012 U.S. Dist. Lexis 151606(E.D. Cal. 10.22.12).        .9

U.S. v. Providence Journal Co., 485 U.S. 693, 699-708(1998).        . 19,20

U.S. v. Root, 585 F.3d 145, 151(3rd Cir. 2009).        .        .        . 6,15

U.S. v. Silkman, 156 F.3d 833, 834(8th Cir. 1998).        .        .        9

U.S. v. Singleton, 165 F.3d 1297, 1299(10th Cir. 1999)(en banc).        . 20

U.S. v. Springer, 444 Fed. Appx. 256, 262-263(10th Cir. 2011)        16,21,24,25

U.S. v. Tedder, 787 F.2d 540, 542(10th Cir. 1986).        .        .        . 15

U.S. v. Thompson, 518 F.3d 832, 852(10th Cir. 2008).        .        . 6,7

U.S. v. Threadgill, 2012 U.S. Dist. Lexis 15685(E.D.Tenn. 11.1.12).        .9

U.S. v. Waldeck, 909 F.2d 555, 558(1st Cir. 1990).        .        .        9

U.S. v. Williams, 65 F.R.D. 422(W.D. Mo. 1974)Lexis 11786.        .        19

White v. American Airlines, Inc., 915 F.2d 1414, 1427(10th Cir. 1990).        . 16

Yaselli v. Goff, 12 F.2d 396, 404(2nd Cir. 1926).        .        .        . 18

STATUTES INVOLVED

18 U.S.C. § 3231.        .        .        .        .        .        . 15

26 U.S.C. § 6011.        .        .        .        .        .        .24

        § 7201.        .        .        .        .2,5,6,7,8,9,10,11,25

28 U.S.C. § 541.        .        .        .        .        .16,17,18,19

        § 542.        .        .        .        .        .        16

        § 547(1).        .        .        .        .        16,17,18,19

        § 1651.        .        .        .        .        .        1

        § 2241.        .        .        .        .        .        . 1

STATUTES INVOLVED (con'td)

28 U.S.C. § 2255. . . . . . 1,2,15,25

MISC.

I.R.C. of 1939 § 145(a). . . . . . 8

§ 145(b). . . . . . . 8

LCvR 9.2. . . . . . . 2,15

DOJ Manual-Criminal Tax, § 807[2](2008). . . . .7

U.S.S.G. § 2T1.1(c)(2) & note 4. . . . . .11

26 C.F.R. § 1.6011-1(a) . . . . .24

§ 1.6012-1(a)(6). . . . . . 24

28 C.F.R. § 0.136. . . . . . .17

CONSTITUTION

Article II. § 2. Cl.2. . . . . . . 17

III. § 2. Cl. 3. . . . . . . 12

Fifth Amendment. . . . . . 12.13.15

Sixth Amendment. . . . . . 12.13.15

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

LINDSEY KENT SPRINGER,                    )

      Petitioner/Movant,                  )

v.                                        )   Case No. 13-CV-145
                                (Formerly 09-CR-043)

UNITED STATES OF AMERICA,                 )

      Respondent.                         )

MOTION FOR CONDITIONAL RELEASE ON WRIT OF HABEAS CORPUS
AS TO COUNTS TWO, THREE and FOUR'S  5 YEARS EACH OF IMPRISONMENT

1.    Lindsey Kent Spriner ("Petitioner") moves the above entitled Court for an order to enlarge Petitioner to his liberty in issuance of a conditional writ of habeas corpus pending final determination of his 76 Grounds for relief sought pursuant to 28 U.S.C. § 2255 filed March 11, 2013, pursuant to its inherent power commensurate with its jurisdiction to consider issuance of a Writ of Habeas Corpus in the above entitled 2255 proceeding, or pursuant to 28 U.S.C. §§ 1651 and 2241.

STANDARD FOR RELEASE PENDING RULING

2.    Petitioner set forth the standard for release in his Motion for Issuance of a Conditional Writ of Habeas Corpus filed simultaneously herewith addressing Count One's indictment in pages 1 through 6 and need not be repeated here as the same Standard applies.

3.    Petitioner is called upon to show exceptional circumstances must be made for such relief, or a demonstration of a clear case on the merits of the habeas petition. See Edwards v. State of Oklahoma, 412 F. Supp. 556, 559-60(W.D. Okla. 1976)(requiring clear case on the law and or clear case on the merits); See also Graham v. Koerner, 322 Fed. Appx. 557, 582(10th Cir. 2009)(unpublished)("exceptional circumstances" required applicant must show "clear case on the merits of the habeas petition.") See also Barnett v. Hergett, U.S. App. Lexis 649(10th Cir. 1999)("To warrant release pending review of a Petition for Writ of Habeas Corpus, a defendant must demonstrate special circumstances or a high probablility of success.")

(1)

1. Petitioner claims in his LCvR 9.2 § 2255 application actual innocense to the 26 U.S.C. § 7201 crimes the Court asked the Jury to find in connection with Counts Two, Three and Four, and no Jury verdict was or has been rendered in respect to the Grand Jury's § 7201 alleged crimes and the over Four years that passed rendering these convictions entered without Constitutional jurisdiction.

4.   Petitioner raises actual innocense claims regarding the Crimes the Court instructed the Jury at Counts Two, Three and Four.  Counts Two, Three and Four, each allege Petitioner willfully attempted to evade or defeat Petitioner's Federal Income Taxes for Calendar Year 2000 [Count Two], 2003 [Count Three] and 2005 [Count Five].   Count Two, Three and Four, each alleged Petitioner accomplished committing these Crimes "by failing to file a United States Individual Income Tax Return" for years 2000, 2003 and 2005 as required by law. The Court instructed the Jury they were to find Petitioner's attempted evasion was not the assessment of a tax imposed by Title 26, but rather, the Court instructed the Jury the Crime for which they were to find was that Petitioner attempted to evade the "payment" of Federal Income Taxes.

5.   After the Tenth Circuit entered its decision on October 26, 2011, the Supreme Court in Kawashima v. Holder, 182 L.Ed 2d 1, 10(2012) explained its holding in Sansone v. U.S., 380 U.S. 343, 354(1965) that:

"§ 7201 includes two offenses: 'the offense of willfully attempting to evade or defeat the assessment of a tax as well as the offense of willfully attempting to evade or defeat the payment of a tax."

A.  The Grand Jury alleged in Counts Two, Three and Four, were not alleged as crimes of evasion of payment, but rather, were alleged as the crimes of evasion of assessment.

(i) GRAND JURY'S COUNT TWO

6.   Count Two alleged paragraph 1,2,5 and 6 were incorporated therein alleging:

(1) Petitioner lived in the City of Kellyville, State of Oklahoma;
(2)(a) Petitioner used the name Bondage Breaker's Ministry to solicit and receive money;
(2)(b) Petitioner stated the purpose of Bondage Breaker's Ministry was to "get rid of the Internal Revenue Service";
(5) both Petitioner and Stilley earned income in various ways;
(6) and that Petitioner last filed a Federal Income Tax Return in the late 1980s.

(2)

7.   Count Two alleged Petitioner received taxable income in the year 2000 and that due to year 2000's taxable income Petitioner owed a substantial tax debt.

8.   Count Two alleged the crime Petitioner committed was attempted willfully to evade and defeat the individual income tax due and owing by (1) failing to file a "United States Individual Income Tax Return" as "required by law," and (2) committing affirmative acts.

9.   These acts which identifies the crime intended was evading assessment, not payment:

> (i) receiving income in a fictitious name;
> (ii) directing individuals to write "donation" or "gift" on checks that were payment for services;
> (iii) directing individuals to pay for services by cashier's checks;
> (iv) using a check cashing business to cash checks;
> (v) using money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal income;
> (vi) making false statements to agents and employees  of the IRS;
> (vii) and otherwise concealing and attempting to conceal from all proper officers of the United States of America Petitioner's true and correct income.

### (ii) GRAND JURY'S COUNT THREE

10.   Count Three alleged paragraph 1 through 7 which in addition to paragraphs 1,2,5, and 6, includes paragraphs 3,4 and 7 alleging:

> (3) Oscar Stilley was an attorney living in the State of Arkansas;
> (4) Oscar Stilley had an IOLTA account;
> (7) Oscar Stilley last filed a Federal Income Tax Return in the late 1980s;

11.   Count Three alleged Petitioner received taxable income in year 2003 that due to year 2003's taxable income Petitioner owed a substantial tax debt.

12.   Count Three alleges the crime Petitioner committed was attempted willfully to evade and defeat the individual income tax due and owing by (1) failing to file a "United States Individual Income Tax Return," and (2) committing various affirmative acts.

13.   These acts which identifies the crime intended was evading assessment, not payment:

> (i) directing individuals to make checks payable to Bondage Breaker's Ministry;
> (ii) using a check cashing business to cash checks;
> (iii) accepting collectible coins as payment for services;

(3)

14.  In addition to the evasion of assessment crime alleged in Count Three, the Grand Jury also alleged Oscar Stilley aided and abetted Petitioner in the above attempted evasion of assessment crime by:

    (i) using Oscar Stilley's IOLTA account;
   (ii) use of Stilley's credit cards;
  (iii) using cashier's checks, money orders, cash, and other means of payment
        to avoid usual records and conceal income.
   (iv) making false statements to agents and employees of the IRS;
    (v) concealing and attempting to conceal Petitioner's "true and correct
        income."

15.  None of these acts allege aiding and abetting Petitioner in the evasion of payment crime, but rather, allege acts in furtherance with the offense of willful attempt to evade assessment.

(iii) GRAND JURY'S COUNT FOUR

16.  Count Four alleged paragraph 1 through 7 were incorporated therein as listed above in Section (i) and (ii) above.

17.  Count Four alleged Petitioner received taxable income in year 2005 that due to year 2005's taxable income Petitioner owed a substantial tax debt.

18.  Court Four alleges the crime Petitioner committed was attempted willfully to evade and defeat the individual income tax due and owing by (1) failing to file a "United States Individual Income Tax Return," and (2) committing various affirmative acts.

19.  These acts which identifies the crime intended was evading assessment, not payment:

    (i) directing individuals to make checkes payable to Bondage Breaker's Ministry;
   (ii) using a check cashing business to cash checks;

20.  In addition to the evasion of assessment crime alleged in Count Four, the Grand Jury also alleged Oscar Stilley aided and abetted Petitioner in the above attempted evasion of assessment crime by the same five acts listed above in (i), (ii), (iii), (iv), and (v) in Section (ii).

(4)

(iv) THE ELEMENTS

21.   The elements of violating § 7201's crime of attempted evasion of assessment regarding Federal Income Taxes for Calendar Year 2000, 2003 and 2005, are that (1) Petitioner owed a substantial tax debt "at least in the form" of Federal Income Taxes; (2) Petitioner acted willfully; and (3) Petitioner committed at least one affirmative act of attempting to evade or defeat the assessment of the tax imposed by Title 26.  See Bouleware v. U.S., 552 U.S. 421, 424(2008)

22.   The crime of evading the payment of assessed taxes would change the 3rd element to that of Petitioner need be found to have committed at least one aff-irmative act of attempting to evade or defeat the payment of assessed Federal Income Taxes.

23.   The difference between attempting to evade the assessment of taxes versus attempting to evade the payment of taxes under the 2nd element above also changes what the evidence must show to prove Petitioner acted willfully.

(a) The element of willfully

24.   The second element of "willfully" requires the Grand Jury allege and the government must prove beyond a reasonable doubt that (1) the law imposed a duty on Petitioner as that duty is alleged in each Count; (2) Petitioner is found to specifically be aware of the alleged duty alleged in that Count [Two, Three and Four]; and (3) Petitioner is shown to have voluntarily and intentionally violated the duty alleged in that Count.  See Cheek v. U.S., 498 U.S. 192, 201(1991); see also U.S. v. Overholt, 307 F.3d 1231, 1246(10th Cir. 2002)(finidng the jury must "find that the defendant was aware of the specific provision of the tax code he was charged with violating. 524 U.S. at 194"); quoting Bryan v. U.S., 524 U.S. 184, 194(1998).

(b) The element of affirmative act

25.   "[a]n affirmative act requires more than the passive failure to file a tax return; it requires a positive act of commission designed to mislead or conceal."

(5)

U.S. v. Thompson, 518 F.3d 832, 852(10th Cir. 2008); compare U.S. v. Green, 239 Fed. Appx. 431, 434(10th Cir. 2007)(unpuslbiished)("concealing and attempted to conceal...the nature and extent of his assets by placing funds and property in the names of nominees, and by filing false and fraudulent offer in compromise (supported by a false declaration under oath on Form 433-A)"); See also U.S. v. McGill, 964 F.2d 222, 230(3rd Cir. 1993)("General affirmative acts associated with evasion of payment involve some type of concealment of the taxpayers ability to pay his or her taxes, or the removal of assets from the reach of the Internal Revenue Service.")

26.   In McGill, the 3rd Circuit distinguished "evasion of assessment, which involves efforts to shield taxable income to prevent the IRS from determining one's tax liability, and evasion of payment, which concerns conduct designed to place assets out of reach to prevent the IRS from settling one's tax liability." 964 F.2d at 230; See also U.S. v. Root, 585 F.3d 145, 151(3rd Cir. 2009)

27.   The "plain language of [§ 7201]...evinces the Congressional intent to allow distinct, significant, affirmative acts to tax evasion to constitute separate section 7201 offenses." Id.

28.   In U.S. v. Dunkel, 900 F.2d 105, 107 (7th Cir. 1990) the Seventh Circuit explained acts alleging attempts to evade assessment described as "foiling the IRS about your income." See also U.S. v. Cohen, 297 F.2d 760, 770(9th Cir. 1960)(evasion of assessment acts are "failing to file a return, filing a false return, failing to keep records, concealing income, and other means.")

29.   In U.S. v. Collins, 920 F.2d 619, 630 and n. 13(10th Cir. 1990), the Tenth Circuit described the tax evasion crime effectuated by failing to file 1040 Forms "at issue."

30.   In U.S. v. Chisum, 502 F.3d 1237, 1244(10th Cir. 2007) the Tenth Circuit held Chisum's "tax evasion" was "predicated on the filing of false information and not failure to file."

31.    These cases clearly show that affirmative acts and duties involving the crime
of willfully attempting to evade and defeat the assessment of Federal Income Taxes
are distinctly different from the crime of willfully attempting to evade and defeat
the payment of properly assessed taxes.    Evading income tax assessment deals with
hiding income so as not to be detected for assessment and evading payment of
assessed taxes means hiding assets which matters not how a person receives money
that led to acquiring that asset.

32.    There are other ways to determine the intent in Counts Two, Three and Four,
that the crime charged was willfully attempting to evade the assessment and not
payment under § 7201.

33.    The Department of Justice, Criminal Tax Manual, § 807[2](2008) directs evasion
of assessment cases "must rleate to a specific year."

34.    Evasion of Payment instead required relation to the Tax Assessment date. See
Thompson, 518 F.3d at 857 (statute of limitations measured by whether defendant
has already been assessed or not yet assessed).  Thompson also explained failure
to file evasion is measured by the date the return was due and in post deficiency
cases when the last act occurred after the deficiency was made.  Id. See also
U.S. v. Payne, 978 F.2d 1177, 1179(10th Cir. 1992)("When tax evasion based on
failure to file return, statute of limiations begins to run when return is due.")

35.    When tax evasion arises from the failure to file a tax return, no formal
assessment is necessary because the deficiency is deemed to arise by operation
of law on the date a return should have been filed. U.S. v. Daniel, 956 F.2d 540
542(6th Cir. 1992)

(7)

(v) HISTORY ON SECTION 7201

36.  In Lawn v. U.S., 335 U.S. 339, 360(1957) the Supreme Court for the first time recorded tax evasion is two crimes; (1) "attempting to evade the assessment of his income taxes" and (2) the crime of "attempting to evade the payment of income taxes." Id. at 361 also

37.  Section 7201 is the progeny of Former § 145(a) and (b) of the Internal Revenue Code of 1939. See U.S. v. Bishop, 412 U.S. 346, 359(1973); citing U.S. v. Sansone, 380 U.S. 343(1965).  The phrase "tax imposed by this title or the payment thereof" is not defined in the "legislative history" of § 145(a) or (b) of the 1939 Code. Spies v. U.S., 317 U.S. 492, 497(1943)

38.  26 U.S.C. § 7201 reads in relevant part:

> "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title [26] or the payment thereof...and upon conviction thereof shall be...imprisoned not more than 5 years."

39.  The phrase "tax imposed by this title" is described in Spies this way:

> "The United States has relied for the collection of its income tax largely upon the taxpayer's own disclosures rather than upon a system of withholding the tax from him by those from whom the income may be received."

Spies, 317 U.S. at 495

40.  Section 7201 is the "capstone of a system of sanctions which singly or in combination were calculated to induce prompt and forth right fullfillment of every duty under the income tax law and that provide a penalty suitable to every degree of delinqency." Bishop, 412 U.S. at 359

41.  "Our income tax system is primarily a self reporting and self assessment one.  It is 'based upon the voluntary assessment and payment, not distraint." Laing v. U.S., 423 U.S. 161, 191(1975); quoting Flora v. U.S., 362 U.S. 145, 176 (1960).  The "Internal Revenue Code ties the duty to pay Federal Income Taxes to the duty to make an income tax return." Hollywell v. Smith, 503 U.S. 47, 53 1992) "The Federal tax system is basically one of self assessment, whereby each taxpayer computes the tax due and then files the appropriate form of return along

(8)

with the requisite payment." U.S. v. Galletti, 541 U.S. 114, 122(2004)

42.  The Seventh Circuit in U.S. v. Dack, 747 F.2d 1172, 1174(7th Cir. 1984) citing Sansone, 380 U.S. at 354 held "Section 7201...defines two distinct crimes."

43.  Beginning in 1990, Circuit Courts began to hold the words in § 7201 proscribed one crime, not two.  See U.S. v. Masat, 896 F.2d 88, 91(5th Cir. 1990) ("In truth, there is one crime, the evasion of taxes, and it is no moment that both assessment and payment might have been evaded.") See also U.S. v. Dunkel, 900 F.2d at 107("Section 7201 creates only one crime."); and see U.S. v. Hunerlach, 197 F.3d 1059, 1065(11th Cir. 1999)("Single crime of tax evasion"); and U.S. v. Mal. 942 F.2d 682, 688(9th Cir. 1991)(declining to find § 7201 proscribed two distinct crimes)

44.  However, other Circuits, like the First Circuit in U.S. v. Waldeck, 909 F.2d 555, 558(1st Cir. 1990) opposed Dunkel and Masat by explaining "we are not so bold as to either ignore or shunt Sansone aside."  The Third Circuit in McGill, 964 F.2d at 230, and Root, 585 F.3d 150-152 found § 7201 proscribed two crimes, not one, and in Root they rejected the Government's argument that a single Count could allege both evasion of assessment and payment crimes. See also U.S. v. Silkman, 156 F.3d 833, 834(8th Cir. 1998)(describing two distinct crimes, one defeating ascertainment and the other payment.)

45.  In U.S. v. Threadgill, 2012 U.S. Dist. Lexis 15685[E.D. Tenn. 11.1.12]:

   "The Government conceded Mr. Threadgill is charged with evasion of the assessment, not payment, of his tax obligations.(citing Kawashima, 132 S.Ct. 1166, 182 L.Ed 2d 1 (2012))"

46.  In U.S. v. Richardson, 2012 U.S. Dist. Lexis 151606 [E.D. Cali. 10.22.12] the District Court held:

   "Section 7201 is widely interpreted to include Two crimes..."

47.  Judge Friot previously was one of those Judges contending that § 7201 was a single crime.  See U.S. v. Farr, 2006 Dist. Lexis 82702("other circuits agree that tax evasion is a single crime.")

(9)

### (vi) JURY INSTRUCTIONS

48.   Somewhere Counts Two, Three and Four, changed from the Grand Jury Crime of willful attempted evasion of assessment to evasion of payment prior to trial.

49.   In its opposition to Petitioner's Motion to Dismiss United States attorney David O'Mielia argued:

> "Its enough to prove that the defendant attempted to evade the payment of a substantial income tax..."

Doc. 71, pg. 10 in 09-CR-043

50.   In their Trial Brief, Mr. Snoke and O'Reilly asserted the second element to the crimes charged by the Grand Jury in Counts Two, Three and Four, was:

> "The defendant intended to evade and defeat the assessment and payment of that additional tax."

Doc. 138, pg. 7

51.   Continuing, the Trial Brief listed out "affirmative acts of evasion of payment of taxes." Doc. 138, pg. 8  Although Petitioner informed the Trial Judge on April 22, 2009, Petitioner did not understand which crime was alleged, See Doc. 382, pg. 16, ln 14-23, at trial,  Judge Friot switched the crimes in Counts Two, Three and Four, instructing the Jury § 7201:

> "makes it a crime for anyone to willfully attempt to evade or defeat the payment of federal income taxes."

See Doc. 396, pg. 2910, ln 22-23; see also Doc. 396, pg. 2913, ln 24("As previously stated, this law makes it a crime to willfully attempt to evade or defeat the payment of Federal tax.")

52.   The Trial Judge further instructed the Jury:

> "to evade and defeat the payment of tax means to escape Paying a tax due other than lawful avoidance."

See Doc. 397, pg. 2954, ln 14-15[Count Two]; pg. 2957, ln 19-21[Count Three]; and pg. 2959, ln 23-24.

53.   The Trial Judge instructed the Jury what "affirmative act means":

> "an affirmative act to evade and defeat payment of taxes is a positive act of commission designed to mislead and conceal."

(10)

See Doc. 397, pg. 2954, ln 23-25

### (a) Jury instructed on Gift

54.   If Counts Two, Three and Four, were alleged by the Grand Jury as concealing assets to evade payment of assessed taxes, rather than what they alleged, which was not reporting payment for services allegedly provided, there would have been no reason to define gift to the Jury. See Co. 396, pg. 2902  There would have been no reason to allege what Petitioner allegedly stated to IRS employees about Petitioner receiving donations or gifts.

### (vii) SENTENCING COMMISSION ADVICE

55.   The Sentencing Commission advises that § 7201 proscribes two different crimes:

> "Tax loss does not include interest and penalties, except in willful evasion of payment cases under § 7201 and willful failure to pay cases under 26 U.S.C. § 7203."

See Green, 239 Fed. Appx. at 447 citing U.S.S.G. § 2T1.1(c)(2) & note (A).

(11.)

B.   Petitioner was convicted of crimes in Counts Two, Three and Four, that were not alleged by the Grand Jury.

56.   Petitioner realleges paragraphs 1 through 55 herein as if set forth word for word.

57.   Petitioner informed this Court on April 22, 2009, that he did not understand which crime the Grand Jury alleged in Count Two, Three and four.  Doc. 474, pg. 8, ¶ 65. ("I do not understand whether its evasion of assessment, evasion of payment or how one could go for 9 years.")

58.   Judge Friot responded:

"We'll address that when we address the motion for Bill of Particulars. I think your recitation at least for immediate purpose, satifies me that you do at least understand, subject to the limitations you have described, the general nature of the charges."

Doc. 474, pg. 9, ¶ 66

59.   Although Mr. O'Reilly and Snoke informed this Court in their Trial Brief that Petitioner "intended to evade or defeat the assessment and payment of that additional tax," Doc. 474, pg. 15, ¶ 114, which asserts two different crimes, See Kawashima, 182 L.Ed 2d at 10, the Trial Judge instructed the jury in Count Two, Three and Four, they were to find whether Petitioner willfully attempted to evade or defeat the payment of Federal Income Taxes. See Doc. 474, pg. 23, ¶ 176; pg. 25, ¶¶ 190,191

60.   The Grand Jury actually alleged the crime of evading assessment of Petitioner's Federal Income Taxes for years 2000, 2003 and 2005 in Counts Two, Three and Four respectively.  Petitioner stands convicted of a crime in Counts Two, Three and Four, which was not charged by the Grand Jury.

C.   The Trial Judge lost Jurisdiction under Article III, Section 2, Cl. 3 based upon the injunction against Trial pursuant to the Fifth and Sixth Amendment entered in 1791 into the Constitution of the United States through Article V Amendments.

61.  Having established the Grand Jury's charges in Count Two, Three and Four, were the crime of attempting to evade the assessment of Petitioner's Federal

(12)

Income Taxes for Calendar Years 2000, 2003 and 2005, and that the Jury's verdict and Trial Judge's entry of conviction, sentence, and judgment, for the crime of attempted evasion of the payment of assessed Federal Income Taxes for the same years, Petitioner claims the Trial Court lost jurisdiction, or never had jurisdiction to hold Petitioner to answer the crime of attempting to evade the payment of Federal Income Taxes for years 2000, 2003 and 2005.

62. The Fifth Amendment specifically states:

> "No person shall be held to answer for a...infamous crime, unless on a presentment or indictment of a Grand Jury...nor shall...be deprived of... liberty, or property without due process of law..."

See U.S. v. Farr, 536 F.3d 1174, 1180(10th Cir. 2008)

63. The Sixth Amendment specifically states:

> "In all criminal prosecutions [under Article III, Section 2, Cl. 3], the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district where the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."

64. The "currently received understanding of the Bill of Rights as instituted 'to curtail and restrict the general powers granted to the Executive, Legistlative, and Judicial Branches' of the National Government in the original articles, New York Times Co. v. United States, 403 U.S. 713, 716(1971)," is that the Constitutions "limitations on power...are naturally...applicable to the government created by the instrument..." U.S. v. Balsys, 524 U.S. 666, 675(1998)

65. "As the dual source of the rule makes clear, it protects both a defendant's right to be subjected only to charges set by a Grand Jury and his interest in having such notice." Farr, 536 F.3d at 1185

66. "In addition to the Sixth Amendment notice guarantee, the Fifth Amendment right 'to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment; Stirone, 361 U.S. at 218-19, and it provides a sufficient basis, standing alone, to compel reversal

(13)

without any further showing of prejudice, see id., 361 U.S. at 217("Deprivation of such a basaic right is far too serious to be...dismissed as harmless error.")

67.   In Farr, the Tenth Circuit reported she was charged with attempting "to evade and defeat the payment of the quarterly employment tax..." 536 F.3d at 1180 In explaining the charges in Farr, the Tenth Circuit explained:

> "Ms. Farr had been assessed the trust fund recovery penalty on the date cited in the indictment."

Id. at 1184

68.   "[d]efects in subject matter jurisdiction require correction regardless of whether the error was raised in the district court." U.S. v. Cotton, 535 U.S. 625, 630(2002)

69.   A Trial Judge's criminal jurisdiction can only be exercised through the instrumentality of the grand jury. Clawson v. U.S., 114 U.S. 477, 488(1885)

70.   "It is axiomatic in our legal system that 'a Court cannot permit a defendant to be tried on charges that are not made in the indictment against him." Farr, 536 F.3d 1179; citing Stirone v. U.S., 361 U.S. 212, 217(1960).

71.   "[a]fter an indictment has been returned its charges may not be broadened through amendment except by the Grand Jury itself." Farr, 536 F.3d at  1180; Stirone, 361 U.S. at 215-216.

72.   The "crucial question here is whether [the defendant] was convicted of an offense not charged in the indictment..." Id.

73.   "In assessing a claim of an impermissible constructive amendment our ultimate inquiry is whether the crime for which the ddefendant was convicted at trial was charged in the indictment; to decide that question, we therefore compare the indictment with the district court proceedings to discern if those proceedings broadened the possible basis for conviction beyond those found in the operative charging document." Farr, Id. at 1180

74.   Where there is clearly no jurisdiction over the subject matter, any authority exerci...

(14)

exercised is usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the Judge, no excuse is permissible." Bradley v. Fisher, 13 Wall 80 U.S. 335, 352(1872)

75. 18 U.S.C. § 3231 only provides the Northern Judicial District of Oklahoma jurisdiction over the crime of attempted evasion of payment of assessed taxes if first made by Grand Jury.  See U.S. v. Tedder, 787 F.2d 540, 542(10th Cir. 1986)("Federal district courts have original exclusive jurisdiction over all offenses against the laws of the United States, See 18 U.S.C. § 3231, including criminal matters arising under Title 26.")

76.  No Court sitting as the Northern Judicial District of Oklahoma was given subject matter jurisdiction to hold Petitioner to answer, hold trial, convict, sentence, or enter judgment against Petitioner for attempting to evade the payment of assessed Federal Income Taxes for Calendar Years 2000, 2003 and 2005.

77.  Convicting Petitioner for the Crime of attempting to evade the payment of assessed Federal Income Taxes for Calendar Years 200, 2003 and 2005, which was not "the allowable unit of prosecution," Root, 585 F.3d at 150, alleged in Count Two, Three and Four, sets aside the indictment as to Counts Two, Three and Four, see Doc. 472, ground 16(in violation of 5th Amendment no notice), ground 17(in violation of 5th Amendment right to choose and prepare defense), ground 33(in violation of 5th Amendment right of Grand Jury indictment,due process, and 6th Amendment Right to Jury Trial, know the nature and cause of the charges, and to call and cross examine witnesses for Petitioner's defense), ground 34 (same as 33), ground 36(in violation of 5th Amendment requirement of due process), ground 57 (in violation of 6th Amendment right to Assistance of Counse), ground 58 (same as 57), ground 64 (in violation of the speedy trial act), ground 65(in violation of 6th Amendment right to speedy trial), ground 66(in violation of 5th Amendment due process and its equal protection component), warranting an order from this Court pending the outcome of Petitioner's LCvR 9.2 § 2255 civil application for

2. Petitioner should be released immediately due to the conviction, sentence, and judgment over Counts Two through Four (Counts Five and Six have been served) imposing 5 year terms of imprisonment were entered and ordered without a United States attorney and based upon a fraud upon the Court depriving the Court of constitutional and statutory jurisdiction.

78. Count Two, Three and Four, allege Title 26 crimes and according to United States v. LaSalle, 437 U.S. 298, 308-12(1978), in order for a United States attorney to obtain authorization to enforce Title 26, the Secretary of the Treasury's Congressional enforcement authority must be referred to a United States attorney for prosecution under 28 U.S.C. § 547(1).

79. "The Internal Revenue Code itself terminates the IRS's investigative authority on referral." Linda Thompson, et al., v. Resolution Trust Corp., F. 3d 1508, 1518(D.C. Cir. 1993)  In fact, the Tenth Circuit explained "A Justice Department referral is in effect with respect to any person if the Secretary has recommended to the Attorney General a grand jury investigation or criminal prosecution of, such person for any offense connected with the adminstration or enforcement of the internal revenue laws." U.S. v. Springer, 444 Fed. Appx. 256, 262(10th Cir. 2011)(unpublished)(per curiam).

80. The indictment is signed by Charles A. O'Reilly, as a Trial Attorney with the Department of Justice dated March 9, 2009. Kenneth Snoke also signed the indictment as "Assistant United States attorney." Above their names is the printed name of David E. O'Mielia, United States Attorney. See Doc. 2, pg. 14

81. All agree at the time the March 9, 2009 indictment was returned, David E. O'Mielia was the United States attorney for the Northern Judicial District of Oklahoma. The office of United States attorney is created by Congress at 28 U.S.C. § 541. Assistant United States Attorneys obtain their statutory authority at 28 U.S.C. § 542 and need a United States attorney to then assist.

82. Type written names are not sufficient to invoke obligation under Rule 11. See White v. American Airlines, Inc., 915 F.2d 1414, 1427(10th Cir. 1990); see also Pavelic & LaFlore, v. Marvel Enter. Group, 493 U.S. 120(1989).

(16)

83.  As of June 28, 2009, David E. O'Mielia resigned his § 541 office.  Every document presented in opposition to Petitioner in 09-Cr-043 from June 28, 2009 till January 27, 2010 signed by either Mr. O'Rielly as "Special Assistant United States Attorney" or by Kenneth P. Snoke as "Assistant United States Attorney" presents above either signature "Acting United States Attorney Thomas Scott Woodward." Compare Doc. 71 with Doc. 104.

84.  Both O'Reilly, Snoke, and Woodward were each fully aware Woodward was not acting United States attorney for the Northern Judicial District of Oklahoma after June 28, 2009.

85.  All Three presented Woodward as "Acting United States Attorney" to deceive this Court and Petitioner regarding the authority to prosecute Petitioner for Title 26, or Title 26 related crimes pursuant to the June 3, 2005 and June 10, 2005 letters, Doc. 224-16 and 80-2, and ultimately Congressional power to pros-ecute all offenses  against the United States pursuant to 28 U.S.C. § 547(1)

86.  28 CFR § 0.136 entitled "Designation of Acting United States Attorney" states:

> "Each U.S. Attorney is authorized to designate any assistant U.S. Attorney in his office to perform the function and duties of the U.S. Attorney during his absence from office."

87.  Once Mr. O'Mielia resigned he was not authorized as United States attorney to delegate any Assistant United States attorney to act as United States attorney. No statute authorizes it and no Court decision could be relied upon to uphold it. Mr. O'Mielia was not "absent" but rather gone for good.

88.  The office of United States attorney is a "high government position." In re: Nofziger, 925 F.2d 428, 437(D.C. Cir. 1991) "An appointee exercising significant authority pursuant to the laws of the United States is an 'officer of the United States,' and must, therefore, be appointed in the manner prescribed by § 2, Cl. 2 of that Article [Art. II]." Buckley v. Valeo, 424 U.S. 1, 126(1976)

89.  The "structural interests protected by the appointment clause are not those of any one branch of government but of the entire union." Freytag v. CIR, 501

U.S. 868, 880(1991)

90.   The appointment clause is more than a matter of 'etequette or protocol,' its among the significant structural safeguards of the Constitutional scheme." Edmonds v. U.S., 520 U.S. 651, 659(1979)   Both a "failure to perform a [duty] or an erroneous performance, is regarded as an injury to the public." Yaselli v. Goff, 12 F.2d 396, 404(2nd Cir. 1926)  An attorney for the United States is to be enjoined when "acting outside his statutory authority." Fay v. Miller, 183 F.2d 986, 988(D.C. Cir. 1950)

91.   Section 541(a) requires the  United States attorney be appointed by the President [of the United States of America] and with advice and consent of the Senate.  U.S. v. Dunlap, 17 F. Supp. 2d 1183, 1185(D.C. Colo 1998); See also Nichols v. Reno, 931 F.Supp. 748, 750 (D.C. Colo. 1996)("the 'attorney for the government' referred to in the statute is the United States Attorney, appointed for each judicial district by the President pursuant to 28 U.s.C. § 541 within his district. 28 U.S.C. § 547")

92.   The settled rule is:

> "that those courts will not recognize any suit, civil or criminal, as regularly before them  if prosecuted in the name and for the benefit of the United States, unless the same is represented by the district attorney, or someone designated by him to attend to such business, in his absence as may pertain to the duties of his office."

Confiscation Cases, 7 Wall 454, 456(1864)

93.   Thomas Scott Woodward from June 28, 2009 till January 27, 2010, and there after was not authorized by any Act of Congress to hold the office of United States attorney for the Northern Judicial District of Oklahoma.

94.   Kenneth P. Snoke from June 28, 2009 till January 27, 2010, and there after was not authorized by any Act of Congress to hold the office of Assistant United States Attorney within the Northern Judicial District Oklahoma without a United States attorney authorized by Act of Congress.

95.   Charles A. O'Reilly from June 28, 2009 till January 27, 2010, and there after

(18)

was not authorized by Act of Congress to hold the office of Special Assistant United States Attorney within the Northern Judicial District of Oklahoma without without a United States attorney authorized by Act of Congress.

96.  On January 27, 2010, Mr. Woodward, Snoke, and O'Reilly, each presented Mr. Woodward as "United States attorney" for the Northern Judicial District of Oklahoma, which was false just like presenting Mr. Woodward as Acting United States attorney after Mr. O'Mielia resigned his office as of June 28, 2009.

97.  United States attorneys decide who to charge because "they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take care that the law be faithfully executed." U.S. v. Cespedes 151 F.3d 1329, 1332(11th Cir. 1998)

98.  For instance, a United States attorney under 28 U.S.C. § 541 "for one district has no authority to authorize dismissal of indictment in another district." U.S. v. Boulier, 359 F. Supp. 165, 171(E.D. N.Y. 1972); See Martinez v. Ensor, 958 F. Supp. 515, 518(D.Colo. 1997)("Criminal statutes can be enforced by the proper authorities of the United States government such as U.S. Attorneys."); see also New York v. Muka, 440 F. Supp. 33, 36(N.D. N.Y. 1977)("Federal crimes are prosecuted by United States Attorneys."); and see U.S. v. Bradshaw, 580 F.3d 1129, 1136(10th Cir. 2009)(The United States attorney "has the power to prosecute or not to pro-secute.")

99.  When an indictment or conviction has been obtained without a United States attorney and maintained by fraud, the proper course is for the indictment be set aside and or its conviction.  See U.S. v. Williams, 65 F.R.D. 422(1974)(W.D. Mo.) Lexis 11786

100. There is no question the District Court lost trial jurisdiction on June 28, 2009, when it learned it did not have a proper representative of the government "participating in the action." U.S. v. Providence Journal Co., 485 U.S. 693, 699 -708(1998)

(19)

101.  "Only officers of the Department of Justice or the United States attorney can represent the United States in the prosecution of a criminal case. 28 U.S.C. §§ 516, 547" U.S. v. Singleton, 165 F.3d 1297, 1299(10th Cir. 1999)(en banc)

102.  "Indeed, a Federal court cannot even assert jurisdiction over a criminal case unless it is filed and prosecuted by the United States attorney or a properly appointed assistant." Id. at 1300

103.  In Providence Journal Co., 485 U.S. at 699-700, this Court in Singleton, 165 F.3d at 1300 explained the Supreme Court dismissed a petition for certiorari for lack of jurisdiction where the petition was filed by a government lawyer acting without the authority to do so. The Tenth Circuit in Singleton went on to explain "whether Special AUSA had been properly appointed went to jurisdiction of the district court." 165 F.3d at 1300; citing United States v. Durham, 941 F. 2d 886, 892(9th Cir. 1991).

104.  "Therefore, the government's sovereign authority to prosecute and conduct a prosecution is vested solely in the United States Attorney and his or her properly appointed assistants." Id. "Of course, it cannot be otherwise because the government of the United States is not capable of exercising its power on its own; the government functions only through its officers and agents." Id.

105.  "We thus infer in criminal cases that an Assistant United States Attorney, acting within the scope of authority conferred upon that office, is the alter ego of the United States exercising its sovereign power of prosecution." Id.

106.  The District Court lost jurisdiction after Mr. O'Mielia resigned his office on June 28, 2009, and there was no properly appointed United States attorney nor were Mr. Woodward, Snoke, or O'Reilly, authorized by any Statute to prosecute Petitioner in the Northern Judicial District of Oklahoma without an existing United States attorney.  The Judgment for all Counts is without jurisdiction as there was no delegate of the President to prosecute Petitioner by law.

(20)

3. Petitioner's Conviction, Sentence, and Judgement, as to Counts Two through Six are based upon the Grand Jury's allegations Petitioner failed to file Form 1040 United States Individual Income Tax Returns with the Internal Revenue Service for years 2000, 2002, 2003, 2004 and 2005 as "requied by law" which the Tenth Circuit ruled on October 26, 2011 held Petitioner was not required by law to say anything on Form 1040 or file 1040s ever.

107. Having established Count Two, Three and Four, were switched after indictment from alleging crimes of evasion of assessment to evasion of payment, and are unconstitutional convictions, Count Two and Three's 5 year prison term are ran consecutively with Count One's 5 year term and concurrently with Count Four's 5 year term and Count Five and Six's 1 year terms of imprisonment.

A. Tenth Circuit's Order dated October 26, 2011.

108. The Tenth Circuit ruled on October 26, 2011 while Petitioner was on direct appeal that the "obligation to file an income tax return and the criminalization of willful failure to do so represent statutory mandates divorced from Form 1040." U.S. v. Springer, 444 Fed. Appx. 256, 262(10th Cir. 2011)  The Tenth Circuit also held:

"There is no substantive obligation arising from Form 1040 itself."
Id.

(i) Grand Jury Indictment on Form 1040

109. All Six Counts of the Grand Jury indictment dated March 10, 2009 are "based on" Petitioner's willfully failing to do something.  It is what that something is alleged by the Grand Jury to be that shows the referral, indictment, conviction, sentence and judgment, are based on conduct alleged that the Tenth Circuit held is not prescribed as criminal.

110. Keeping in mind that Count Two through Six are for years 2000, 2002 through 2005, and that the purported referral is for "2000 through 2004," there is several places the Grand Jury alleged "required by law" or "requiring" in connection with the filing of Form 1040 United States Individual Income Tax Returns. It must be remembered Form 1040s are "within the scope of the conspiracy" also.

(21)

111.  In Mr. O'Reilly and Snoke's Trial Brief they explained without a United
States Attorney:

> "throughout this period of time, Defendant Springer and Stilley did not file
> any income tax Forms with the IRS including Form 1040..."

Doc. 474, pg. 15, ¶ 12; see also Doc. 361, pg. 6 ("never the less, Defendant
willfully failed to file a tax return for any year from 2000 through 2007.")

112.  When opposing Petitioner's Motion to Dismiss, Mr. O'Reilly and Snoke, with
a United States attorney's name in print, explained its defense to Petitioner's
Claims the Form at issue violated Federal Law stating:

> "Some Courts have simply noted that the PRA applies to the Forms themselves
> and because the Form 1040 does have a control number, there is no PRA vio-
> lation...tax instruction books are not agency requests for information."

Doc. 474, pg. 10, ¶ 80

113.  In opposing Petitioner's dismissal claims based upon the protection of the
Fifth Amendment, Mr. O'Reilly and Snoke opposed stating:

> "If the Form of Return provided called for answers that the defendant was
> privileged from making he could have raised the objection in the return."

Doc. 474, pg. 11, ¶ 81

114.  Mr. O'Reilly's expert "on the requirement to file and the Form," Doc. 474,
pg. 31, ¶ 235, testified to the Jury that Petitioner "was required to report
all these transactions on would be the Form 1040." Doc. 474, pg. 20, ¶¶ 148, 149
Agent Miller testified that the Form of Return at issue in all Six Counts was
Form 1040.  Doc. 474, pg. 20, ¶ 152

115.  Special Agent Shern, the sole Grand Jury witness on all Six Counts,testified
before the Jury at trial that when he used the phrase to the Grand Jury "tax
return he meant:

> "Its a Form that you submit to the Government that shows how much tax you
> owe."

Doc. 474, pg. 18, ¶ 132

116.  The Trial Judge allowed Petitioner to present a Good Faith Defense:

> "The issue is whether you have a basis for a good faith belief that the Form 1040 violated the Paperwork Reduction Act."

Doc. 474, pg. 19, ¶ 143

117. The Trial Judge thought Form 1040 so important he would overrule Petitioner's election to have a Jury find all the facts to each element of the alleged offenses in Counts One through Six, he instructed he:

> "Ruled that Form 1040 did not and does not violate the Paperwork Reduction Act."

Doc. 474, pg. 19, § 145

118. Although relevant to Count One also, the Trial Judge thought he could justify expanding Count One to include in the Manner and Means to defraud the IRS solely based upon paragraph 14 of Count One "references Mr. Stilley's failure to file Form 1040...that is independent of Mr. Springer's income." Doc. 474, pg. 32, ¶ 246

119. During Trial, Mr. O'Reilly without a United States attorney stated:

> "I also understand Mr. Springer wanted to introduce the Form 1040 from his direct.   If Mr. Springer lays a foundation that makes those admissible, we want the instruction books as well from years 2000 through 2005."

Doc. 474, pg. 20, ¶ 153

120. During the introduction of Form 1040 for years 2000 through 2005, Mr. O'Reilly further stated:

> "Your honor, with respect to the material the information books and returns for the years 2000 through 2005, we're not going to oppose the introduction of those, they're voluminous, but at least they do fall within the scope of the conspiracy, although Mr. Springer didn't file any of the Forms in issue."

Doc. 474, pg. 21, ¶ 161

121. Agent Shern testified:

> "You not filing tax returns is relevant with tax evasion and failure to file tax returns for obvious reasons."

Doc. 385, pg. 156, ln 23-25

122. While opposing Petitioner's claims regarding Form 1040 as to the Counts of evasion Mr. O'Reilly instructed the Trial Judge:

> "The evasion Counts are independent of whether or not he filed a return because of all the affirmative acts."

Doc. 474, pg. 21, ¶ 157

(23)

123. At sentencing, Judge Friot looked directly at Petitioner and said:

> "As for Mr. Springer, at trial, he looked at the Jury and testified under oath that he never had an agreement with Mr. Stilley or anyone else to <u>defraud the United States</u>. He testified that he did not willfully fail <u>to file Form 1040 for years 2000 through 2005</u>. He stated that he did not <u>willfully fail to report substantial tax liability</u>...These statements were categorically false. They were made under oath. They were made for the purpose of deceiving the jury and they amounted to obstruction of justice, Mr. Springer."

Doc. 474, pg. 61, ¶ 441

124. Based upon the District Court's view and role Form 1040 United States Indi-

vidual Income Tax Returns played in Count One, and that the conduct of not filing

or refrained from filing with the IRS Form 1040s, alleged by the Grand Jury at

¶¶ 6 and 14 of the indictment that were "within the scope of the Conspiracy,"

See Doc. 474, pg. 21, ¶ 161, is conduct that the Tenth Circuit on October 26, 2011

held divorced from the obligation to make an income tax return and the criminal-

ization of willful failure to do so. Springer. 444 Fed. Appx. at 262. this Court

can easily find Count One did not allege a crime that violated 18 U.S.C. § 371

and did not satisfy the obligation of the 5th Amendment to indict Petitioner

for an infamous crime.

125. As Judge Friot was explained by the Tenth Circuit in Farr. 536 F.3d at 1181:

> "It is settled law in this Circuit. as elsewhere. that the language employed by the government in its indictments becomes an essential and delimiting part of the charge itself. such that '[i]f an indictment charges particulars. the jury instructions and evidence introduced at trial must comport with those particulars.'"

126. There is just no doubt besides the mentioning in Count One of Form 1040 and

"income tax return," when citing to what "required by law" means in relation to

being required to file a "United States Individual Income Tax Return" in Counts

Two, Three and Four, Mr. O'Reilly provided two Bills of Particulars which ident-

ified at 26 U.S.C. § 6011 the requirement to use prescribed forms of returns and

26 CFR §§ 1.6011-1(a) and 1.6012-1(a)(6) both pointing directly to Form 1040. See

Doc. 104, 201

(24)

127. Having established the "Forms in issue" Mr. O'Reilly identified and agreed

fell within the "scope of the conspiracy" alleged by the Grand Jury in each Count

One through Six is also the Form of Return "required by law" in Counts Two, Three,

Five and Six, and "requiring" in Count Four, this Court must enter an order re-

leasing Petitioner from any further serving of the terms of imprisonment imposed

on Counts Two, Three and Four, based upon each conviction was obtained alleging

conduct regarding Petitioner's failure to file Form 1040 United States Individual

Income Tax Returns for Calendar year 2000, 2003 and 2005, which the Tenth Circuit

repudiated in its Order dated October 26, 2011, holding "there is no substantive

obligation arising from Form 1040 itself" and:

> "obligation to file an income tax return and the criminalization of willful
> failure to do so represent statutory mandates divorced from Form 1040."

See Springer, 444 Fed. Appx. at 262.

## CONCLUSION

128. Petitioner has demonstrated a clear case on the merits warranting release

pending review of his application under § 2255 both as to special circumstances

and high probability of success on (1) Count Two, Three and Four's conviction,

sentence, and judgment are premised upon a violation of 26 U.S.C. § 7201's evasion

of payment prohibition not alleged by the Grand Jury warranting release, (2) that

no jurisdiction existed to proceed after the United States attorney resigned on

June 28, 2009 rendering the Court without jurisdiction warranting release, and (3)

the Form 1040 United States Individual Income Tax Returns alleged required by

law in each Court was actually not required by law and divorced from any obligat-

ion to file an income tax return or the criminalization of willful failure to do

so, justifying Petitioner be released pending final disposition. This Court must

order Petitioner's release as his imprisonment is unconstitutional.

Respectfully Made

_Lindsey K. Springer_ 6.26.13

(25)

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2013 I mailed first class the above Motion for Issuance of Conditional Writ of Habeas Corpus for Release to the Clerk of Court, 333 West Fourth Street, Tulsa, Oklahoma 74103;

I further certify that all parties to the above proceeding are ECF users and shall receive service of the above described Motion through the Court's ECF System:

United States Attorney
Danny C. Williams

_____
server

## DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1) under the laws of the United States of America that on June 26, 2013 I deposited the above described Motion in the U.S. Mail Box located inside FCI Big Spring Federal Prison addressed to the Clerk of Court as described above.

_____
declarant

Lindsey Kent Springer
#02580-063
Federal Correctional Institution
1200 Simler Ave
Big Spring, Texas 79720

09-CR-43

RECEIVED

JUL 02 2013

Phil Lombardi, Clerk
U.S. DISTRICT COURT

MIDLAND TX 797
THU 27 JUN 2013

Postmarked 6/27/13 -SC

Clerk of Court
United States District Court
Northern District of Oklahoma
333 West Fourth Street
Tulsa, Oklahoma 74103

"Legal Mail"

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL CORRECTIONAL INSTITUTION
BIG SPRING, TEXAS 79720-6003

DATE ___6/26/13___

The enclosed letter was processed through special mail-
ing procedures for forwarding to you. The letter has been
neither opened nor inspected. If the writer raises a question
or problem over which this facility has jurisdiction, you may
wish to return the material for further information or
clarification. If the writer encloses correspondence for for-
warding to another addressee, please return the enclosure to
the above address.