IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

**FILED**

FEB 1 0 2014

Phil Lombardi, Clerk
U.S. DISTRICT COURT

Lindsey Kent Springer

      Petitioner/Movant

v.

United States of America

      Respondent.

Case Number 13-CV-145
(Formerly 09-CR-043)

PETITIONER'S REPLY TO RESPONDENT'S

PRELIMINARY RESPONSE

by: Lindsey Kent Springer
Reg. # 02580-063
Federal Satellite Low-La Tuna
P.O. Box 6000
Anthony, New Mexico 88021

Mail ___ No Cert Svc ___ No Orig Sign
___ C/J ___ C/MJ ___ C/Ret'd ___ No Env
___ No Cpys ___ No Env/Cpys ___ O/J ___ O/MJ

-i-

TABLE OF CONTENTS

Table of Authorities                                                      –v–
Index to Grounds                                                         –xi–
1. Initial Matters                                                         1

2. Respondent's use of term "raised"                                       2

3. Term "raised," "raise," & "raises" meant in 2255 proceeding            3

4. Movant's objection to Respondent's argument regarding grounds raised
   on direct appeal.                                                       3

   (A) Respondent's argument of ineffective appellate counsel raised
       other issues does not trigger the Prichard bar due to Tenth
       Circuit not addressing the "other issues" on the merits, i.e.
       "had a say."                                                        4

   (B) Grounds 2,34, and 36 clearly could have been raised                5

   (C) All other gronds Respondent argues were raised on Appeal were
       not ruled or addressed on the merits.                               6

       (i)   Respondent does not identify where the Appellate Court
             ruled on the merits of grounds 1 to 9, 15 to 36, 38,40,41,
             44 to 48,51 to 58,62,67,68, and 71 to 75.                     6

       (ii)  Respondent agrees that of grounds, grounds 1 to 9, 28,29,
             30,32 to 36,41,44,46 to 48,51,53 to 58,62,67 and 75, each
             arise within the ineffective appellate counsel exception
             to the procedural bar.                                        6

       (iii) Grounds 15 to 27,31,38,40,45,47,52,68,71 to 74, Respondent
             argues were raised on direct appeal but not ruled on the
             merits–Gronds Petitioner alleged could not have been raised   7

             (a) Ground 47                                                 8

             (b) Grond 52                                                  9

5. Respondent argues Grounds 63 to 66,69,70 and 76, were not raised on
   direct appeal but could have been - Grounds Petitioner alleges could
   not have been raised.                                                  11

       (i)   Petitioner claims these grounds could not have been raised.  11

             (a) Ground 63                                                12

             (b) Ground 64                                                13

             (c) Ground 65                                                14

             (d) Ground 66                                                14

             (e) Ground 69                                                15

-ii-

TABLE OF CONTENTS (cont'd)

(f) Ground 70                                                     17

(g) Ground 76                                                     18

6. Petitioner's other objects to Respondent's arguments regarding
   grounds raised in the District Court (distinguished from Appellate).   19

   (A) Respondent claims grounds 1 to 3,5 to 14,28 to 30,32,35 to 37,
       39,41,48,53,56,62,65,66 and 75 were raised in the District
       Court, but not resolved in that Court - grounds Respondent
       also admits are alleged to arise within the ineffective appel-
       late counsel claims made by Petitioner.                   19

       (i) Respondent'argues the issues in ground 1 to 3, 5 to 14,
           28 to 30,32,35 to 37,39,41,48,53,56,62,65,66 and 75, were
           raised in the District Court, but nowhere does Respondent
           show where the issues in these grounds were resolved on
           the merits.                                           19

           (a)  Respondent's argument regarding issue preclusion does
                not apply to § 2255 proceedings.                 20

           (b)  The exception to issue preclusion                20

           (c)  Resjudicata does not apply to § 2255 proceedings.   22

       (ii) Grounds 1 to 3, 5 to 7, 10 to 14, 28 to 30, 35 to 37,
            48,53,56,62,66, and 75 arise within the exceptions to
            the procedural bar, and are jurisdictional claims as
            well as ineffective appellate consel claims.         22

           (a) Ground 1                                          22

           (b) Ground 2                                          23

           (c) Ground 3                                          28

           (d) Grounds 5, 7 and 62                               28

           (e) Grounds 6, 7 and 62                               30

           (f) Grounds 10, 11, 12, and 13                        31

           (g) Ground 14                                         32

           (h) Grounds 28, 29, 30 and 66                         32

           (i) Grounds 35, 36 and 66                             34

           (j) Ground 48                                         34

           (k) Ground 53                                         35

           (l) Ground 56                                         37

-iii-

TABLE OF CONTENTS (cont'd)

(m) Grond 75 .................................................... 38

(iii) Grounds 8, 9, 32, 39 and 65 are non-jurisdictional
claims that are also ineffective appellate counsel
claims among others. ...................................... 39

(a) Grounds 8 and 9 .................................. 40

(b) Ground 32 ......................................... 40

(c) Ground 39 ......................................... 41

(d) Ground 65 ......................................... 42

(B) Grounds 17,18,19,22,31,38,40,50,52 (7611),68,72 and 76
could not have been raised. .................................. 43

(i) Grounds 17 to 19, 22,31,38,40,50,52,68, 72 and 76 ..... 43

(ii) Ground 50 .............................................. 46

(iii) Ground 52 ............................................. 46

(C) Grounds 33,34,42,43,44,46,49,51,54,57,58,63,64 and 67 ........ 47

(i) Except for ground 49 Respondent agrees each of the
these grounds were not raised in the district court
"During Trial." .......................................... 47

(a) Ground 33 ......................................... 47

(b) Ground 34 ......................................... 50

(c) Ground 42,43,44, and 55 .......................... 51

(d) Ground 46 ......................................... 51

(e) Ground 49 ......................................... 52

(f) Ground 51 ......................................... 53

(g) Ground 54 ......................................... 53

(h) Ground 57 and 58 ................................. 54

(i) Ground 63 ......................................... 56

(j) Ground 64 ......................................... 56

(k) Ground 67 ......................................... 57

TABLE OF CONTENTS (cont'd)

(D) Grounds 15,16,20 to 27, 45,59 to 61,69 to 71,73 and 74    58

     (i)    Petitioner alleged in these grounds, like those in subsection (B), could not have been raised till after the Tenth Circuit's October 26, 2011 decision.    58

        (a)    Grounds 15,16,20 to 27, 69, 70 and 71    58

        (b)    Grounds 45 and 47    59

        (c)    Grounds 59,60 and 61    59

        (d)    Ground 73    59

        (e)    Ground 74    59

7.  Conclusion    60

8.  Request for Evidentiary Hearing    60

9.  Certificate of Service    60

10. Declaration of Mailing    61

–v–

TABLE  OF  AUTHORITIES

Alden v. Maine, 527 U.S. 706 (1999)                                          57

Allnutt v. Comm'r of Internal Revenue, 523 F.3d 406(4th Cir. 2008       9,41

American Fire & Casualty v. Finn, 341 U.S. 6(1951)                           21

Bedaracco v. Comm'r of Internal Revenue, 464 U.S. 386(1984)                  29

Bond v. United States, 131 S..Ct. 2355 (2011)                                57

Bouleware v. U.S. 552 U.S. 421(2008)                                         36

Bousley v. U.S. 523 U.S. 614(1998)                                           54

Brown v. U.S., 34 F.3d 990(10th Cir. 1994)                                12,22

Burks v. U.S., 437 U.S. 16(1978)                                             33

Byers v. Intuit, 600 F.3d 286(3rd Cir. 2009)                                  9

Cross et al. v. Harrison, 16 How. 164(1853)                                  12

Cupp.v. Naughten, 414 U.S. 141(1973)                                         35

Davis v. U.S., 417 U.S. 333(1974)                                            21

Esquibel v. Rice, 13 F. 3d 1430(10th Cir. 1994)                           35,50

Ex Parte Siebold, 100 U.S. 371(1880)                                         21

Freeman v. Heiman, 426 F.2d 1050(10th Cir. 1970)                             57

Graham v. Condor, 490 U.S. 386 (1989)                                        57

Hill v. U.S. 368 U.S. 424(1998)                                         21,28,29

Höllywell v. Smith, 503 U.S. 47(1992)                                        58

Huffman v. Saul HOldings, 194 F.3d 1072(10th Cir. 1999)                      22

In Re Coney, 583 F.3d 1249(10th Cir. 2009)                                   21

In Re Winship, 397 U.S. 358(1989)                                            37

Jackson v. Virginia, 443 U.S. 307(1979)                                    37,40

Johnson v. Zerbst, 304 U.S.458(1938)                                         55

Kaufman v. U.S., 394 U.S. 217(1969)                             5,6,11,18,20,22

Kawashima v. Holder, 182 L.Ed 2d 1(2012)                                34,48,49

Lawn v. U.S., 353 U.S. 355 U.S. 339(1958)                                    58

Dunn v. U.S.,   442 U.S. 100 (1979)                                          52

-vi-

TABLE OF AUTHORITIES (cont'd)

Lujan v. Defenders of Wildlife, 504 U.S. 555(1992)    28

Marchetti v. U.S. 390 U.S. 39(1968)    58

Murray v. Carrir, 477 U.S. 478(1986)    21,46

Neil v. Gibson, 278 F.3d 1044(10th Cir. 2001)    4

New York v. U.S. 505 U.S. 144(1992)    57

Roberts v. Hunter, 140 F.2d 38(10th Cir. 1943)    21

Sac & Fox Nation v. Cuoma, 193 F.3d 1162(10th Cir. 1999)    12

Sanders v. U.S., 373 U.S. 1(1963)    22

Sansone v. U.S. 380 U.S. 343 345(1965)    35,50

Smith v. Comm'r of Internal Revenue, 62 T.C.M 1429(Tax Ct. 1991)    45

Springer v. Comm'r of Intenral Revenue, 580 F.3d 1142(10th Cir. 2009)    33

State Farm Mut. Auto Insu. Co. v. Narvaez, 149 F.3d 1269(10th Cir. 1998)    23

Stirone v. U.S., 361 U.S. 212(1961)    48

Turner v. Bank of America, 4 Dall 8(1799)    23

U.S. v. Anderson, 319 F.3d 1218(10th Cir. 2003)    48

U.S. v. Baldwin, 541 F. Supp. 2d 1184(D.C. NM. 2008)    26

U.S. v. Ballard, 322 U.S. 78(1944)    21,50

U.S. v. Bliss, 642 F.2d 390(10th Cir. 1981)    52

U.S. v. Botefuhr, 309 F.3d 1263(10th Cir. 2002)    21

U.S. v. Brewer, 486 F.2d 507(10th Cir. 1973)    8

U.S. v. Cheek, 498 U.S. 192(1991)    54

U.S. v. Cervini, 379 F.3d 987(10th Cir. 2004)    20,21,37

U.S. v. Cespedes, 151 F.3d 1329(11th Cir. 1998)    12

U.S. v. Cook, 997 F.2d 1312(10th Cir. 1993)    5,6,11,18,20,21,22,29,30

U.S. v. Cook, 45 F.3d 388(10th Cir. 1995)    4,6

U.S. v. Collins, 920 F.2d 619(10th Cir. 1990)    45

U.S. v. Devaugh, 694 F.3d 1141(10th Cir. 2012)    22

U.S. v. Addonizio, 442 U.S. 178(1979)    10,21,29,30,38

-vii-

TABLE OF AUTHORITIES (cont'd)

U.S. v. Donn, 662 F.2d 820(9th Cir. 1981)                                   22

U.S. v. Dunn, 284 U.S. 390(1932)                                         28,52

U.S. v. Farr, 2006 Dist. Lexis 82702(W.D. Ok.)                              49

U.S. v. Farr, 536 F.3d 1174(10th Cir. 2008)                              48,50

U.S. v. Frady, 456 U.S. 152(1978)                                          37

U.S. v. Galloway, 56 F.3d1239(10th Cir. 1995)                              20

U.S. v. Goodlett, 403 Fed. Appx. 767(10th Cir. 2010)         5,6,11,18,20

U.S. v. Hassebrock, 663 F.3d 906(7th 2011)                                 31

U.S. v. Hatch, 919 F.2d 1394(9th Cir. 1990)                                33

U.S. v. Hilario, 218 F.3d 19(1st Cir. 2000)                                26

U.S. v. Hoodempyle, 461 Fed. Appx. 675(10th Cir. 2012)                  33,53

U.S. v. Hoskins, 654 F.3d 1086(10th Cir. 2011)                             58

U.S. v. Kelly, 29 F.3d 1107(10th Cir. 1994)                                22

U.S. v. LaSalle, 437 U.S. 298(1978)                                     23,29

U.S. v. Little, 753 F.2d 1420(9th Cir. 1984)                               29

U.S. v. Livingword Christian Church, Lexis 6902(D.C. Minn. 2009)           10

U.S. v. Martinez, 565 F. Sup. 2d 1270(D.N.M. 2008)                         26

U.S. v. Miller, 471 U.S. 130(1985)                                         49

U.S. v. Navarro, 972 F. Supp. 1296(E.D. Cal. 1997)                         24

U.S. v. Navarro, 959 F. Supp. 1273(E.D. Cal. 1997)                         24

U.S. v. Payne, 644 F.3d 1111(10th Cir. 2011)                               31

U.S. v. Prichard, 875 F.2d 789, 791(10th Cir. 1989)                     4,5,9

U.S. v. Providence Jounral Co., 485 U.S. 693(1988)                         24

U.S. v. Rayford, 496 Fed Appx. 767(10th Cir. 2012)                          4

U.S. v. Redcorn, 528 F.3d 727(10th Cir. 2008)                              28

U.S. v. Richard, 738 F.2d 1120(10th Cir. 1984)                             31

U.S. v. Root, 585 F.3d 145(3rd Cir. 2009)                                  50

–viii–

## TABLE OF AUTHORITIES (cont'd)

| | |
|---|---|
| U.S. v. Silker, 751 F.2d 477(2nd Cir. 1984) | 33,56 |
| U.S. v. Singleton, 165 F.3d 1297(10th Cir. 1999)(en banc) | 24,27 |
| U.S.A. v. Springer, 08–CV–278(N.D.Ok.) | 25 |
| U.S. v. Springer, 444 Fed. Appx. 256(10th Cr.11) | 3,8,9,16,28,35,41,42,48,52,53 |
| U.S. v. Sunrhodes, 831 F.2d 1537(10th Cir. 1987) | 31 |
| U.S. v. Talk, 158 F.3d 1064(10th Cir. 1998) | 9 |
| U.S. v. Taylor, 828 F.2d 630(10th Cir. 1987) | 8 |
| U.S. v. Willie, 941 F.2d 1384(10th Cir. 1991) | 54 |
| Utah Wilderness Alliance v. Palma, 707 F.3d 1143(10th Cir. 2013) | 22 |
| Von Moltke v. Gillies, 332 U.S. 708(1948) | 54 |
| Withrow v. Williams, 507 U.S. 680(1993) | 43 |
| Yellowbear v. Wyo. Attorney General, 525 F.3d 921(10th Cir. 2008) | 31 |

## STATUTES INVOLVED

| | |
|---|---|
| 5 U.S.C. § 3345(a) | 25,26 |
| § 3345(b) | 27 |
| 26 U.S.C. § 1 | 37 |
| § 61 | 37 |
| § 63 | 37 |
| § 165(g) | 17 |
| § 6011 | 8,45,55 |
| § 6012 | 8,45 |
| § 6091(a) | 8,9,41,51,52,55 |
| § 6091(b) | 8,9,41,52,55 |
| § 7201 | 13,33,36,48,58 |
| § 7203 | 33,48 |
| § 7602 | 23 |

-ix-

STATUTES INVOLVED (cont'd)

| | |
|---|---|
| 26 U.S.C. § 7608(b) | 29,30,35 |
| § 7611 | 10,11,46 |
| § 7805(b) | 9,35 |
| 18 U.S.C. § 3663 | 32,42 |
| § 3663A | 32 |
| § 3231 | 50 |
| § 371 | 33 |
| 28 U.S.C. § 116 | 27 |
| § 132 | 27 |
| § 133 | 27 |
| § 451 | 27 |
| § 541 | 2 |
| § 546(a) | 2,24,25,26 |
| § 546(c)(2) | 27 |
| § 546(d) | 2,26 |
| § 547 | 2,23 |
| § 2007(a) | 57,58 |
| § 2255 | 3,4,5,9,18,20,22,31,32 |
| 31 U.S.C. § 3124 | 17 |
| 44 U.S.C. § 3512(a) | 33 |
| § 3512(b) | 33 |

REGULATIONS INVOLVED

| | |
|---|---|
| 26 CFR § 1.1-1 | 37 |
| § 1.61-1 | 37 |
| § 1.6011-1 | 8,45 |
| § 1.6012-1 | 8,51 |
| § 1,6091-2(1999 through 2004) | 41,54 |

-x-

## REGULATIONS INVOLVED (cont'd)

26 CFR § 1.6091-2(2005 through 2007)                9,52,54

   § 601.101                                             53

## CONSTITUTIONAL PROVISIONS

State of Oklahoma Constitution

Article II, § 13                                           57

United States Constitution

Article I, § 9, Cl. 3                                     9,35

Article II                                                 12

Article III                            12,21,24,27,45

  Amendment 1                                      10,11

  Amendment 4                          10,11,20,30,40

  Amendment 5            10,11,14,30,33,40,41,48,51,53

  Amendment 6                            33,35,43,48

  Amendment 8                                       41

  Amendment 9                                       58

  Amendment 10                                      58

## MISC.

Local Civil Rule 9                                         9

Federal Rules of Civil Procedure Rule 60(b)               25

Federal Rules of Criminal Procedure Rule 41(d)(1)         40

Form 1040 U.S. Individual Income Tax Return   13,16,17,34,41,44,47,48,55,56

Speedy Trial Act                                          14

Ineffective Appellate Counsel - Amendment 6       throughout

-xi-

INDEX OF GROUNDS

| Grounds | Pages |
|---|---|
| 1 | 6,7,19,22 |
| 2 | 4,5,6,7,19,20,23,24 |
| 3. | 6,7,19,28 |
| 4 | 6,7,13 |
| 5 | 6,7,19,28.29 |
| 6 | 6,7,19,30 |
| 7 | 6,7,19,28,29,30 |
| 8 | 6,7,19,39,40 |
| 9 | 6,7,19,39,40 |
| 10 | 6,7,19,31 |
| 11 | 6,7,19,31 |
| 12 | 6,7,19,31 |
| 13 | 6,7,19,31 |
| 14 | 6,7,19,31 |
| 15 | 6,7,8,58,59 |
| 16 | 6,7,8,58,59 |
| 17 | 6,7,8,43,44,45 |
| 18 | 6,7,8,43,44,45 |
| 19 | 6,7,8,43,44,45 |
| 20 | 6,7,8,58,59 |
| 21 | 6,7,8,58,59 |
| 22 | 6,7,8,43,44,45,58,59 |
| 23 | 6,7,8,58,59 |
| 24 | 6,7,8,58,59 |
| 25 | 6,7,8,58,59 |

–xii–

INDEX OF GROUNDS (cont'd)

| Grounds | Pages |
|---|---|
| 51 | 6,7,47,53 |
| 52 | 6,7,8,9,11,43,46,47 |
| 53 | 6,7,19,20,35 |
| 54 | 6,7,47,53 |
| 55 | 6,47,51 |
| 56 | 6,7,19,20,37 |
| 57 | 6,7,8,47,54,55 |
| 58 | 6,7,47,54,55 |
| 59 | 6,7,58,59 |
| 60 | 6,7,58,59 |
| 61 | 6,7,58,59 |
| 62 | 6,7,19,20,28,29,30 |
| 63 | 6,7,11,12,47,56 |
| 64 | 6,7,8,11,13,14,47,56,57 |
| 65 | 6,7,11,14,20,39,42,43 |
| 66 | 6,7,11,14,19,20,32,33,34 |
| 67 | 6,47,57,58 |
| 68 | 6,7,8,43,44,45 |
| 69 | 6,11,15,17,58,59 |
| 70 | 6,11,17,18,58,59 |
| 71 | 6,7,8,58,59 |
| 72 | 6,7,8,43,45 |
| 73 | 6,7,8,58,59 |
| 74 | 6,7,8,20,58,59,60 |
| 75 | 6,19,38,39 |
| 76 | 6,8,11,18,43,44,45 |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

Lindsey Kent Springer

     Movant/Petitioner

v.

United States of American

     Respondent.

MOVANT'S REPLY TO RESPONDENT'S PRELIMINARY RESPONSE

Lindsey Kent Springer ("Movant" or "Petitioner") files his response to the Court's Order dated March 15, 2013 (Doc. 478).

1.  Initial Matters

Petitioner objects to any of the Grounds being raised being recatigorized into 20 Sections listed by Respondent in their Preliminary Response. See Doc. 518, pg. 6-7.  Petitioner also objects to the recatigorization in terms of both the labels Respondent places to each Ground and to the place Respondent lists each Ground.  Each Ground should remain a free standing Ground independent of the other Grounds as listed specifically in Petitioner's Application and supporting Memorandum (Doc. 473) and Declaration (Doc. 474).  Petitioner incorporates the words in each Ground raised (Doc. 472) as if realleged and set forth herein word for word (along with the Memorandum and Declaration).  Petitioner also objects to Respondent's claims only Ground 49 and 61 could not have been raised.  Petitioner claims each Ground speaks for itself regarding whether or to what extent the issue or issues raised in each Ground were unable to be raised due to the reasons stated therein.  Petitioner addresses each Ground, and Petitioner's objection to Respondent's issues raised as to those Grounds specifically and directly,below.  Petitioner also objects to the Preliminary Response (hereinafter referenced as "Response") as being very confusing in regard to what Respondent is trying to say.  Petitioner objects to the Response for not being signed by a person authorized by Federal Law to re-

present the United States of America due to the issues raised in Ground 1 and 2 namely that after June 28, 2009 and through at least both January 21, 2010 and August 2, 2012, the Northern Judicial District of Oklahoma, see 28 U.S.C. § 116, was without prosecutorial authority pursuant to 28 U.S.C. § 547(1), due to no United States attorney existing legally or factually pursuant to 28 U.S.C. § 541, 546(a), and 546(d).  And finally, as an initial matter, Petit-ioner objects to any Ground being barred from the First Step (Petitioner names the "Cause" step) where Respondent did not claim any of the 76 Grounds were raised and resolved either in the District Court or in the Appellate Court.

2.   Respondent's use of term "raised"

Respondent's Response places the two categories it addresses as "raised and resolved in the proceedings" and "could have been but were not raised in these proceedings." Doc. 518, pg. 1-2  However, after this general statement, Respo-dent does not mention where it claims the issues it raises were in fact resol-ed in the "raised and resolved" categoriy.  In fact, Respondent moved the term "resolved" out of the category of "raised and resolved" and moved it into the second category which then was changed to read "could have been raised and re-solved." Id. pg. 2 ("all were either raised, or could have been raised and re-olved, in the underlying proceedings, with the exception of two grounds...")

Respondent uses the term "raised" in the phrase "eight grounds raised in his appeal," Id. pg. 3, "concedes he raised on appeal," Id., "Springer also raised the following claims," Id., "Springer raised, or could have raised, each of these issues at trial or on appeal," Id. pg. 5, and identifies in a chart two sub categories  "all were either raised," labeled as "Raised during trial" or "Raised on appeal." Id. pg. 6  Respondent also incorporates incred-ibly loosly an "attachment" identifying "where the alleged new ground was rai-sed at trial or on appeal, or indicating that it could or could not have been raised previously." Id. at pg. 8  Respondent also identifies Grounds 63 to 66, 69, 70, 73, and 76 under a sub category of "had not previously raised." Id.

Respondent's conclusion argues:

> "With the exception of Mr. Springer's claims that appellate Counsel provi-
> ded ineffective assistance and that the Tenth Circuit Court of Appeals
> limitation on his appellate brief to 14,000 words was unconstitutinal,
> each of the grounds identified by Mr. Springer has been raised previously
> could have been raised previously, or both."

Id. pg. 10

Respondent relies on its attachment to identify which grounds "could have

been raised" and indicates the term "Yes" in each ground it argues could have

been raised.  Respondent identifies only grounds 49 and 61 were not capable of

being raised in its Response but its attachement also says "no" to grounds 59,

60, and 73, and even indicates the term "mixed" in grounds 66 and 76.  The ca-

tegory "could have been raised" does not appear in Respondent's table on page

6-7 of its response.  Respondent seems to argue that except for grounds 49 and

61, each ground should be "dismissed or stricken," Id. at pg. 2, or just stri-

cken, Id at pg. 10.

3.  Term "raised," "raise," & "raises" meant in 2255 proceedings.

Step One of this Court's March 15, 2013 order is dominated or controlled

by the term raised.  The Court does not define the term raised, raises, or

raise, however the Northern District's requird Form, See LCvR 9, identifies in

§ 9(f), see Doc. 472, pg. 2, phrases like "Grounds raised," and the same in §§

9(g)(5), 11(a)(5), 11(b)(5).  In § 12 of the 2255 approved and required form,

the term "raise" is used in § 12(b)(1), § 12(b)(2), and § 12(c)(1). See Doc.

472, pgs 11 to 86  Respondent raises issues with whether an issue in a ground

was raised in the "Trial Court" or in the "Appellate Court."  Movant will add-

ress Respondent's  Response under these classifications separately.

4.  Movant's objection to Respondent's argument regarding grounds raised on
    direct appeal.

The Tenth Circuit addressed "eight grounds" raised in ineffective appell-

ate Counsel's revised opening brief. U.S. v. Springer, 444 Fed. Appx 256, 260

(10th Cir. 2011)(unpublished).  Petitioner listed the eight grounds in § 9(f)

of his application. Doc. 472, pg. 2. Respondent admits the "eight grounds" raised in his appeal," Doc. 518, pg. 2, but then expands the term "raised" to include issues the Tenth Circuit refusd to consider as having been raised such as (1) Count Two violated statute of limitations (raised in Ground 36); (2) Count Four failed to allege and prove the tax deficiency element (raised in Ground 34);(3) Springer claims the prosecution was unlwaful without a United States Attorney to exercise the referral (raised in ground 2); see Doc. 518, pg. 3. These issues were not addressed by the Tenth Circuit.

First, ineffective appellate Counsel not raising these issues sufficientl to secure appellate review was clearly prejudicial to Petitioner in that all three are "dead bang winners." U.S. v. Cook, 45 F.3d 388, 395 (10th Cir.1995) disavowed as the actual standard in Neil v. Gibson, 278 F.3d 1044, 1057(10th Cir. 2001). In the first 2 Petitioner would have received a 5 to 10 year re-duced sentence, and the fact there was no United States attorney voids the entire case.

Second, had the 10th Circuit not unconstitutionally limited Petitioner's direct appeal to 14,000 words, the outcome of the appeal would have been diff-erent. First, the Tenth Circuit would have reasonably, if not in all probabil-ity, reversed Count Two, and Four. Had all Three issues been "resolved" such resolution would have led to all Six Counts being dismissed.

(A)  Respondent's argument of ineffective appellate counsel raised other issues does not trigger the Prichard bar due to Tenth Circuit not addressing the "other issues" on the merits, i.e. "had a say."

In U.S. v. Prichard, 875 F.2d 789, 791(10th Cir. 1989), the Court explai-ned "absent intervening change in law of circuit, issues disposed of on direct appeal generally will not be considered in a § 2255 collateral attack." The term "generally" does not mean always. See U.S. v. Rayford, 496 Fed. Appx. 767 769(10th Cir. 2012)(unpublished)(and cases cited therein).

Respondent's argument that ineffective appellate counsel raised these issues in his revised brief at pages 53-54, see App. 535, but the Tenth Circuit

4

did not address them, makes Petitioner's argument that cause is clearly shown. Barring Petitioner from raising these issues is prejudicial to Petitioner due to the obvious results being reversal or dismissal.  These grounds were not "encompassed" in Petitioner's direct appeal brief or ruling. Prichard, 875 F.2d at 791.

"When an issue should have been raised on direct appeal, the defendant ordinarily can raise the issue in a § 2255 motion only if the defendant raised it on direct appeal but the appellate court failed to address it." U.S. v. Goodlett, 403 Fed. Appx. 311, 313(10th Cir. 2010)(unpublished) citing U.S. v. Cook, 997 F.2d 1312, 1318 & (n.6)(10th Cir. 1993)  Respondent cites to no record where grounds 2, 34 and 36, were ruled on the merits.  See also Kaufman v. U.S., 394 U.S. 217, 227(n.8)(1969).  Respondent also agrees these three grounds arise within the ineffective appellate counsel exception to the procedural bar. Doc. 518, pg. 3 (n.3).

Ground 2, 34, and 36, are not procedurally barred because they were not addressed on the merits by the Tenth Circuit.

(B)  Grounds 2, 34, and 36 clearly could have been raised.

Alternatively, Respondent argues ineffective appellate counsel could have raised the issues in grounds 2, 34, and 36, on direct appeal. Petitioner agrees in part and objects in part.  There is no doubt Counsel could have raised the issues in grounds 2, 34, and 36, as he mentioned them in his revised brief on pgs 53-54.  Counsel though explains he was prohibited from addressing that due to the Court's refusal to allow an overlength brief. App. 54 .  The fact the Court struck his initial brief for exceeding the 14,000 word limit and had previously denied him the right to file an overlength brief, cause grounds 2, 34, and 36, to be excepted under § 2255.  Petitioner received a much harsher prison sentence due to grounds 34 and 36 not being addressed on the merits and had ground 2 been raised Petitioner would either win    reversal with instructions for evidentiary hearing, or outright dismissal.

Grounds 2, 34 and 36 are not procedurally barred and qualify under the could not have been raised, or ineffective appellate counsel exceptions. Ground 2 arises within the jurisdictinal exception to the procedural bar and both grounds 34 and 36 arise within the actual innocense and miscarriage of justice exception to the procedural bar.. Petitioner clearly established sufficient cause to even qualify under the Frady exception to the procedural bar.  Though not necessary to show the merits at this phase, the prejudice if these grounds are not addressed is clearly shown above.

(C)  All other grounds Respondent argues were raised on Appeal were not ruled or addressed on the merits.

Respondent argues grounds 10 to 14, 37, 39, 42, 43, 49, 50, 59 to 61, 63 to 66, 69, 70 and 76, were not raised on direct appeal Doc. 518, pg. 6-7. This leaves grounds 1 to 9, 15 to 36, 38, 40, 41, 44 to 48, 51 to 58, 62, 67, 68, and 71 to 75 as grounds containing issues Respondent argues were raised on direct appeal.

(i)  Respondent does not identify where the Appellate Court ruled on the merits of grounds 1 to 9, 15 to 36, 38,40,41,44 to 48, 51 to 58, 62, 67, 68, and 71 to 75

Respondent does not identify where the Appellate Court ruled on the merits of the issues raised in grounds 1 to 9, 15 to 36, 38,40, 41, 44 to 48, 51 to 58, 62, 67, 68 and 71 to 75.  Under Cook, 997 F.2d at 1318 and (n.6), Goodlett, 403 Fed. Appx. at 313, and Kaufman, 394 U.S. 227 and (n.8), each of the issues in these grounds can be raised requiring a merits ruling.

(ii)  Respondent agrees that of grounds, grounds 1 to 9, 28,29,30,32 to 36, 41,44,46 to 48, 51,53 to 58, 62,67 and 75, each arise within the ineffective appellate counsel exception to the procedural bar.

Respondent agrees that grounds 1 to 9, 28 to 30, 32 to 36, 41,44,46 to 48 51,53 to 58,62, 67 and 75 each allege the cause giving rise to them is ineffective appellate counsel.  "When a defendant alleges his appellate counsel rendered ineffecitve assistance by failing to raise an issue on appeal we examine the merits of the omitted issue[s]." U.S. v. Cook, 45 F.3d 388, 392(10th Cir.

1995).  Respondent clealry claims these grounds were "raised on appeal" but

not addressed on the merits.. Doc. 518, pg. 6-7  Respondent states "Ground 61

and alleged in numerous other grounds," Id at pg. 2; "Springer alleges that

appellate counsel was ineffective in more than half of the grounds he purports

to identify," Id. at 2-3, and in the "Table" on pg. 7 , Respondent places

grounds 59,60,61,66, and 76 under "Ineffective assistance of appellate coun-

sel," and in ground 59 alleges "Barringer should have raised or fully developed

grounds 1 to 14, 28 to 44, 48,51 to 54, 56 to 58, 60 to 66." See Doc. 518.

Attachment, pg. 39 to 53

Respondent concludes Springer's  "claims that appellate counsel provid-

ed ineffective assistance"could not have been raised, and was not raised on

appeal. Doc. 518, pgs. 2,7,10

> (iii)  Grounds 15 to 27, 31,38,40,45,47,52,68, 71 to 74, Respondent
> argues were raised on direct appeal but not ruled on the mer-
> its-Grounds Petitioner alleged could not have been raised.

Respondent alleges grounds 15 to 27,31,38,40,45,47,52,68,71 to 74, were

raised on direct appeal but not addressed by the Tenth Circuit on the merits.

Under Cook, Goodlett, and Kaufman, these grounds proceed to the merits in a §

2255 proceeding.

Alternatively, Respondent argues these grounds, though raised, but not

resolved, could have also been raised. Doc. 518, pg. 6-7; See attachments pgs.

9 to 15,17,21,23,26,28,33,47,50,51,52("Yes").

The fact Respondent argues each of those grounds were raised

on direct appeal, but not addressed, moves these grounds to the

second step.  However, Respondent contends that these issues

could have been raised, which they argue were raised on direct

appeal. Petitioner objects to the claim these issues "could have

been raised." Except for grounds 47, 52, and 73, Petitioner all-

eged:

"I was not given notice that form 1040 was divorced from the

Six Counts offense conduct so I was misled. In fact, I was specifically led Form 1040 was at the heart of each Count."

See Doc. 472, pg. 25 to 37, 41,48,50,55,73,81,82 and 84; see also Doc. 518, Attach. pgs. 9 to 15, 17,21,23,26,47,50 and 52

Respondent's Table in § 14 identifies a category "No Notice of Government's theory" and lists grounds 16 to 27, 31 to 33, 38, 40,57,64,68 and 76. Doc 518, pg. 7. However, the grounds Petitioner alleged could not have been raised are clearly grounds 15 to 27,31,38,40,45,68,71 to 74.

In grounds 47 and 52, Petitioner alleged:

"This ground could not have been raised on appeal as it evolved from the Tenth Circuit's decision dated 10.26.11."

See Doc. 472, pg. 57,62; See also Doc. 518, pg. 28 and 33 of 53.  And again, Respondent argues grond 47 and 52 were raised but not resolved by the Tenth Circuit.  Respondent admits grond 73 could not have been raised on appeal.Id

(a)  Ground 47

Ground 47 is based upon the Tenth Circuit's switch from 26 U.S.C. § 6091-(b), entitled "Tax Returns," to § 6091(a).  Springer, 444 Fed. Appx. at 261. Section 6091(b) begins:

"In the case of returns of tax required under the authority of Part II of this subchapter."

Prior to October 26, 2011, the Tenth Circuit held the obligation to file a United States Individual Income Tax Return arose under § 6091(b). See U.S. v Brewer, 486 F.2d 507, 509(10th Cir. 1973); U.S. v. Taylor, 828 F.2d 630,634(10 th Cir. 1987) Respondent cited to § 6091(b). Doc. 71, pg. 4  This Court cited to § 6091(b) as controlling also, Hearing Trans. Doc. 383, pg 130, App. 19

The "authority of Part II of this subchapter" begins at 26 U.S.C. § 6011 and 6012. Doc. 474, pg. 50.  Both Bills of Particulars lists §§ 6011 and 6012 and 26 CFR §§ 1.6011-1 and 1.6012-1.  Doc. 104,201.  The Tenth Circui cited to § 6012 in their opinion.  Springer, 444 Fed. Appx. at 262.  Every Court to

8

to address the requirement to file a tax return cited § 6091(b).  See Allnutt
v. CIR, 523 F.3d 406, 412(4th Cir. 2008) cited by the panel. 444 Fed. Appx. at
261; see also Byers v. Intuit, 600 F.3d 286, 293(3rd Cir. 2009).  No case ever
before the Tenth Circuit had ever cited to § 6091(a) regarding "Tax Returns."

        Even Prichard allows, when a "change in law of Circuit" has occurred, an
issue regarding that change may be raised in a 2255 proceeding. 875 F.2d @ 791
The change at issue happened during Petitioner's direct appeal and is binding
precedent under the law of the case, res judicata, and colateral estoppel. 444
Fed. Appx. at 259(n.*).  Petitioner was never given notice he was required to
file a tax return pursuant to § 6091(a).  This substantive change allows Pet-
itioner's claim under § 2255.  U.S. v. Talk, 158 F.3d 1064, 1070(10th Cir.1998)

        The Tenth Circuit then relying on § 1.6091-2 to establish the duty, place
the obligation at issue by regulations. 444 Fed. Appx. at 261  Both Respondent
and this Court claimed no regulations were involved in filing a tax return.
App. 22 ;Doc. 201 ;Doc. 474 citing Trans. Doc. 383, pg. 133; Doc. 293, pg. 6

        The Tenth Circuit relied exclusively on § 1.6091-2's 2005 version appl-
lied them retroactively in a criminal case in conflict with 26 U.S.C. § 7805-
(b) and Art. I, § 9, Cl. 3.  Ground 47 could not have been raised until after
the Tenth Circuit's decision.

        Ground 47 arises within the jurisdictional exception, constitutional exc-
eption, actual innocense exception, miscarriage of justice exception, to the
procedural bar. Petitioner objects to Respondent's argument if otherwise.

                (b) Ground 52

        It was widely reported in 2012 the Secretary of the Treasury had no "app-
ropriate high level Treasury Official" to authorize revenue agents of the
Internal Revenue Service to issue summons and conduct revenue audits of

                                        9

Petitioner's activities through the ministry named Bondage Break-
er's Ministries.  Doc. 474, pg. 10.   The District Court decision
referred to in the news report is U.S. v. Livingword Christian
Church, Lexis 6902 (D.C. Minn. 2009).  The Court said the problem
arose due the Restructuring and Reform Act of 1998.  See App. 71_ .

   Agent Meadors issues summons regarding Petitioner and his ministry begin-
ing January 26, 2004.  App. 74_  This was done without authority under 26
U.S.C. § 7611.  The Tenth Circuit held the problem began in 1998.  Springer,
444 Fed. Appx. at 261.  Misinformation of Constitutinal magnitude is cogniz-
able under § 2255.  U.S. v. Addonizio, 442 U.S. 178, 187(1979).  The article
states the problem has not been resolved.  Without complying with 26 U.S.C. §
7611(a)(2)(A) and (B) all the information obtained by Ms. Meadors was gathered
in violation of Federal Law, and Petitioner's First, Fourth and Fifth Amend-
ment rights.  Agent Shern relied uopn Agent Meadors unlawfully gathered infor-
mation to obtain his unlawfully obtained search warrant.  That unlawfully obt-
ained search warrant led to the evidence use at Trial to seek and obtain the
verdict of guilty on all Six Counts and the Court's sentence. Agent Shern's
unsworn Affidavit on file   in  Clerk's Grand Jury drawer almost exclusively
relies upon Agent Meadors.  Doc. 75-20, pg. 5 ; See Also Doc. 100, Def. Exh. 1
App. 14_  The name Bondage Breaker's Ministries on page 1 of the indictment.
Doc. 2, pg. 1  This name also appears in Shern's Affidavit. App. 14_.  This
same ministry name appears in the summons requests Meador sent out or issued.
This Court referred to Petitioner "as a minister." Doc. 474, pg. 23.  This
Court found Petitioner had thousands of donors.  Doc. 474, pg. 29.  Agent Mil-
ler testified the Secretary considered Petitioner's Bondage Breaker's Minist-
ies as a ministry.  Doc. 474, pg. 30.  Respondent argued during sentencing
that Petitioner had "ministerial" deductions.  Doc. 474, pg. 29

   Once the unlawfully obtained information and evidence is suppressed this

Court will find there is no evidence sufficient to prove Petitioner guilty by any reasonable doubt and not just one juror but all twelve.  Furthermore, dismissal is the only option when the IRS acts in bad faith under the Powel test relied upon in LivingWord Christian Church.  App. 70

Petitioner claims Ground 52 could not have been raised without learning the person required to authorize Ms. Meadors to audit Petitioner's Bondage Breaker's Ministries and that information was not available until it became public in 2012.

Nonetheless, Respondent argues the issues in ground 52 were raised on direct appeal but points to no record where a decision on the merits was made. According to Cook, Goodlett, and Kaufman, the issues in ground 52 Petitioner "can raise in a § 2255 motion." Kaufman, 394 U.S. at 227, (n.8).

Ground 52 could not have been raised due to the false claims of authority revealed after the Tenth Circuit issued its opinion.  Regardless, Respondent agrees the issues in ground 52 was not resolved on the merits.

The cause to ground 52 Petitioner alleged was the IRS's public statements to the media in 2012 as well as the false claims of authority made since 2004 by Respondent and Agent Meadors.  The Prejudice is that not only has Petitioner's First, Fourth, And Fifth Amendment Rights have been violated, but that those violations led to the unlawful imprisonment Petitioner is now serving that would not be had Agent Meadors complied with § 7611.

Ground 52 arises under the lack of jurisdiction exception, miscarriage of justice exception, recent discovery of facts that were not only not available, but intentionally not disclosed exception, and violation of Constitutional rights exception to the procedural bar.

5.   Respondent argues Grounds 63 to 66, 69, 70 and 76 were not raised on direct appeal but could have been – Grounds Petitioner alleges could not have been raised.

(i) Petitioner claims these grounds could not have been raised.

Respondent argues that ground 63 to 66, 69,70 and 76 were not previously raised, Doc. 518, pg. 8, but that "these grounds could have been raised in the underlying criminal proceedings, on direct appeal, or both. Each are also alleged to be also ineffective appellate counsel claims. See Doc. 472, pg. 73 to 76, 79, 80 and 86.

(a) Ground 63

Ground 63 raises issue with the eligibilty of Mr. Obama to be holding and excerising the Article II office of the President of the United States of America.  It is the office of President who is to enforce the statutes written by Congress.  Cross, et al, v. Harrison, 16 How. 164, 199(1853).  United States attorneys "are designated by statute as the President's delegates to help him discharge his constitutional responsibilities to 'take care that the laws be faithfully executed.'"  U.S. v. Cespedes, 151 F.3d 1329, 1332(11th Cir. 1998)

Every statute and regulation in existence, including those at issue in the case brought against Petitioner, can only be enforced if the one holding the office of President is authorized by the Constitution to be or "attain" said office.  Petitioner contends the Birth Certificate made public during the 2012 election cycle is not in compliance with either the laws of the United States, or the laws of the States of Hawaii.  See Doc. 474, pg. 67 and Exh. 14 See also expert testimony on the subject.  App. 75 to 83

Section 2255 is available to correct errors of constitutional and jurisdiction dimension.  Brown v. U.S. 34 F.3d 990, 991(10th Cir. 1994).  Article III, § 2 requires the United States to be a party in this case and without a President authorized by Article III, no such party may be reprsenting the United States.

Jurisdiction must be shown affirmatively and inferences are not allowed. Sac & Fox Nation v. Cuoma, 193 F.3d 1162, 1168 (10th Cir. 1999).

Ground 63 arises within the jurisdictional exception, the Con-

stitutional exception, and ineffective assistance of counsel exception, to the proceudrual bar.  Movant objects to Respondent's arugment if otherwise.

    (b) Ground 64

Ground 64 alleges a Speedy Trial Act violation based upon the claim in Ground 4 the Court allowed   the    Jury to consider Stilley's Arkansas Tax liabilities due to the Federal Income Taxes at issue in Count One, See Doc. 472, pg. 14.  Ground 64 is also based upon Ground 33 that Respondent convicned the Court to switch Count Two, Three, and Four, from the crime of willfully attemp to evade the assessment of Federal Income Taxes imposed by Title 26, to willfully attempting to evade   payment of assessed  Federal Income Taxes.  Ground is also based upon this Court instructing the jury Form 1040 did not violate the PRA raised in Ground 30.  Ground 64 simply claims Petitioner has not received a Jury Trial free of these devestating and prejudicial changes to both the Grand Jury referral limited to Petitioner's liability for 2000 through 2004, that Grand Jury's alleged crimes under § 7201, and Petitioner's Good Faith defense Form 1040 violated the PRA that this Court approved prior to presentation to the Jury.

    Petitioner was due a trial on the referral limitations and Grand Jury charges free of Judicial fact finding and variances reconstructing the charges.  Ground 64 is also within the ineffective appellate counsel exception. See Doc. 472, pg. 74; Doc. 518, Attach. pg. 43 of 57

    Petitioner agrees with Respondent that Ground 64 "could have been raised" and since it should have been raised, and was not, failing to raise this issue was highly prejudicial to Petitioner. There is simply no evidence Petitioner made any attempt to evade the payment of assessed taxes for years 2000, 2003, and 2005 (though 2005 is not within referral years). As Mr. Shern states in his affidavit (that was not sworn on file in the Grand Jury drawer), Petitioner had numerous assets to which could have been seized for payment. See Doc.

13

75-20, pg. 13; App. 15

Ground 64 arises within the jurisdiction exception, constitutional excep-

tion, actual innocense exception, miscarriage of justice exception, and ineff-

ective appellate counsel exception to the procedural bar.  The prejudice is

clearly shown to be that the result of the Trial Court, had the Jury Trial been

based upon the Grand Jury charges and no fact finding by the Court, Petitioner

would in all probability have been found not guilty and would not have been

deprived of his liberty and property as he currently stands so deprived.

(c) Ground 65

Ground 65 is a Sixth Amendment Speedy Trial Act claim that is identical

to Ground 64 in the facts, Doc. 518, attach. pg. 44 of 53.  Ground 65 is an

ineffective appellate counsel claim that is not subject to the proceudural

bar.  See Doc. 518, pg. 2,7,10.

Ground 65 arises within the jurisdictional exception, constitutional exc-

eption, actual innocense exception, miscarriage of justice exception, and in-

effective appellate counsel exception to the procedural bar.  The prejudice

is clearly shown to be that the result of the Trial Court, had the Jury Trial

been based upon the Grand Jury charges and no fact finding by the Court, Pet-

itioner would in all probability have been found not guilty and would have

been deprived of his liberty and property as he currently stands so deprived.

Movant objects to Respondent's arguments if othewise regarding grounds 64-65.

(d) Ground 66

Ground 66 is a collective ground alleging  all grounds 1 through 75

running together violated Petitioner's Fifth Amendment Rights to Due Process

and Equal Protection. Ground 66 is also an ineffective appellate counsel claim

not subject to the procedural bar. Doc. 518, pg. 2,7,10.

Ground 66 arises within the Constitutional exception, jurisdictional exc-

eption, actual innocense exception, miscarriage of justice exception, change

14

in the law exception, newly discovered evidence exception, and ineffective
appellate counsel exception to the procedural bar.  The Prejudice is clearly
shown that fundamental and basic constitutional rights were violated in the
Grand Jury and Jury Trial process, as well as that the results or outcome,
regarding each issue or issues in each ground, would have been either outright
dismissal, partial dismissal, a verdict of not guilty, judgment of acquittal,
or a substantively less term of incarceration.  The restitution would also
have not been ordered as it was. Petitioner's liberty and property would not
be deprived as they currently stand.  Petitioner objects to Respondent's argu-
ments if otherwise.

(e) Ground 69

Ground 69 could have been raised.  Respondent agrees.  Doc. 518, attach.
pg. 48 of 53.   Petitioner alleges the reason why it was not raised as a defe-
nese was based upon the Grand Jury's claims in Count One that Petitioner's
"manner and means" involved refraining from filing Forms with the IRS, includ-
ing Form 1040.  Doc. 2, ¶ 14.  See also Doc. 293, pg. 7-8  Counts 2, 3 and 4,
allege the attempted evasion of the tax imposed by Title 26 was accomplished
"by failing to file United States Individual Income Tax Return[s]."  See Doc.
2 ¶¶ 41,43,45.  In fact, Form 1040 United States Individual Income Tax Returns
were at issue in all Six Counts.  See Doc. 474, Exh. 13-1 to 13-13.  As Petit-
ioner pointed out, Form 1040 is the Form Number to a document entitled "U.S.
Individual Income Tax Returns. Id.  See also Doc. 474, pg. 10 citing Doc. 71,
pg. 6 ("because the Form 1040 does have a control number..."); See Doc. 474,
pg. 12 citing Hearing Trans. Doc. 383, pg. 132, App. 21 ("defendants contend
the taxing forms...in question"); See Doc. 474, pg. 15 citing Doc. 138, pg. 7
("Springer...did not file any income tax forms with the IRS including Form
1040"); See Doc. 474, pg. 18 citing Trial Trans. Doc. 392, pg. 1889, App. 25
("a statutory requirement of filing a Form 1040..."); See Doc. 474, pg. 19

15

citing Trial Trans. Doc. 392, pg. 1931, App. 26 ("the issue is whether you
have a basis for a good faith belief that Form 1040 violated..."); See Doc.
393, pg. 1949, App. 27 ("ruled that Form 1040 did not and does not violate..")
See Doc. 474, pg. 20 citing Trial Trans. Doc. 395, pg. 2458, App. 33 ("Spring-
er wanted to introduce... Forms 1040 From his direct...we want the instruction
books as well from years 2000 through 2005.") See Doc. 474, pg. 21 citing Doc.
396, pg. 2675, App. 35 ("with respect to the materials, the information books
and returns for... years 2000 to 2005...at least they do fall within the scope
of... conspiracy, although Mr. Springer didn't file any of the forms IN ISS-
UE.")

By now it is clear the Tenth Circuit held Form 1040 divorced from the con-
duct at issue in all Six Counts.  Springer, 444 Fed. Appx. at 262("there is no
substantive obligation or crime arising out of Form 1040 itself.")

Petitioner would never have sought to present, and present, a good faith
defense regarding why he did not file Form 1040 had Petitioner been given not-
ice that the obligations and duties the Government was requird to prove were
willfully violated, did not include the failure to file Form 1040 United Sta-
tes Individual Income Tax Returns.  See Doc. 474, pg. 42, ¶ 318.  Petitioner
would also never have chosen to testify. Id. at ¶ 319.

Although relavent to sentencing enhancements, the Court increased Petit-
ioner's level by 2 points for obstruction of justice based upon finding that
Petitioner told the jury "he did not willfully faile to file Form 1040 for
years 2000 through 2005." Doc. 474, pg. 60 citing Doc. 401, pg. 426-27. App.
46 .   This Court held this testimony was "categorically false...They were
made for the purpose of deceiving the jury..Mr. Springer." Id.

Based  upon the decision by the Tenth Circuit no person could willfully
fail  to file Form 1040 Unitd States Individual Income Tax Returns and that is
the law of the case. Springer, 444 F. Appx at 259  Petitioner would have rais-
ed other defenses had he not been deceived about Form 1040. Doc. 474, pgs. 40

through 44, and 58 through 60.

Ground 69 could not have been raised until after the Tenth Circuit's deci-
ision.  Ground 69 arises within the change of the law exception, Constitution-
al exception, jurisdictional exception, actual innocense exception, miscarri-
age of justice exception, to the procedural bar.  The Cause is clearly the
Tenth Circuit's decision which fundamentally changed the charges in all Six
Counts, and these fundamental violations were highly prejudicial to Petitioner
and his rights to present a defense to show he is actually innocent, not guil-
ty of the criminal conduct alleged, and that the sentence imposed was based
upon the Court completely misunderstanding, and thus Petitioner, the role Form
1040 played. Petitioner would not stand deprived of his liberty for failing
to file a Form 1040, at issue in each of the Six Counts, if it not for the
Grand Jury misunderstanding the role Form 1040 played in all Six Counts. Pet-
itioner doubts a Grand Jury would have indicted Petitioner on any of the Six
Counts had they not been misled into believing Form 1040 Unitd States Individ-
ual Income Tax Returns were at issue and requird by law to be filed.  Petit-
ioner objects to Respondent's argument if otherwise.

> (f)  Ground 70

Ground 70 is the same as Ground 69 except instead of the  transactions at
issue being exempt from State taxation, i.e. 31 U.S.C. § 3124, ground 70
claims that almost every transaction were denominated or measured by securit-
ies as defined by Title 26, § 165(g).  This ground would have been raised at
Trial had it not been for Petitioner being misled that Form 1040 United States
Individual Income Tax Returns were "the issue," See Doc. 474, pg. 19, or "in
issue," Id. pg. 21, or "in question." Id.   Agent Shern, in his purported aff-
idavit acknowledged Petitioner authored a Book on the subject.  Doc. 75-20, pg
14 ; Doc. 100, Def. Exhibit 1, pg. 14 , App. 16   This Court agreed the United
States just prints its securities at will.  See Doc. 401, pg. 448, App. 51

Whether ground 70 could have been raised on appeal is the question and without having the benefit of the Tenth Circuit's decision involving the role Form 1040 played, or better yet, did not play, the answer to that question is no.  See Doc. 474, pg. 80; Doc. 518, attach. 49 of 53

Ground 70 could not have been raised until after the Tenth Circuit's decision.  Ground 70 arises within the actual innocense exception, Constitutional exception, miscarriage of justice exception, change in the law exception, to the procedurual bar.  The Cause is clearly the Tenth Circuit's decision.  The prejudice is that Petitioner would have not been indicted at all, or if an indictment had issues that Petitioner would then be allowed to receive notice of, Petitioner in all probability have presented a good faith defense that would have negated the element of willfullness at issue in each of the Six Counts.  Petitioner objects to Respondent's arguments if otherwise.

(g)  Ground 76

Ground 76 alleges the issues there in could not have been raised until after the Tenth Circuit entered its decision.  Respondent disagrees saying "yes" it could have been raised but never says whether this "yes" applies to the Trial Court, Appellate Court, or both leaving Petitioner to guess. See Doc. 518, Attach. pages 1 through 53 top right corner.

If Petitioner alleges Ground 76 could not be raised until after the appeal then it could not be raised before now.  Respondent claims the issue is "mixed" but points to no place in the opinion of the Tenth Circuit where the issue was resolved on the merits.  Under Goodlett, 403, Fed. Appx. at 313, Cook, 997 F.2d at 1318, and Kaufman, 394 U.S.at 227(n.8) Respondent admits Ground 76 can be raised in this § 2255 proceeding.

Ground 76 either was raised and not addressed, Doc. 518, pg. 53 of 53, or could not have been raised. Doc. 472, pg. 86.  Ground 76 arises within the jurisdictinal exception, Constitutional exception, actual innocense exception,

18

and the miscarriage of justice exception to the procedural bar.  The Cause is

clearly the Tenth Circuit's decision and the prejudice is that if it were not

for the actions of the United States Government during Petitioner's proceeding

both at the District Court and on direct appeal, Petitioner would not be depr-

ived of his liberty and property and would in all probability either never been

indicted, or if indicted, Petitioner would have either won dismissal, a not

guilty decision, or reversal on direct appeal, involving all Six Counts. Pet-

itioner objects to Respondent's argument if otherwise.

6.  Petitioner's other objections to Respondent's arguments regarding grounds
    raised in the District Court (distinguished from Appellate).

    As to grounds Respondent argues were either raised by Petitioner in the

District Court, or could have been raised and resolved in the District Court,

Respondent argues Four categories.  The First (A) is ineffective appellate

Counsel claims based upon issues Petitioner did raise in the District Court

but were not raised on appeal.  The Second (B) is where Respondent argues in-

effective appellate counsel claims Respondent also argues were not raised by

Petitioner in the District Court.  The Third (C) is where Respondent address-

es grounds Petitioner claims could not have been raised in the District Court

without benefit of the Tenth Circuit's decision.  The Fourth (D) involve grou-

nds Petitioner raises now that were not able to be raised until after the Ten-

th Circuit's decision, or some other decision, where Resopndent agrees were

not raised in the District Court, but could have been.

    A.  Respondent claims grounds 1 to 3,5 to 14, 28 to 30, 32, 35 to 37, 39,
        41,48, 53,56,62,65,66 and 75 were raised in the District Court, but
        not resolved in that Court – grounds Respondent also admits are all-
        ged to arise within ineffective appellate counsel claims made by Pet-
        itioner.

        (i)  Petitioner shows the issues in ground 1,2,3, 5 to 14, 28 to 30,

             32, 35 to 37, 39, 41, 48, 53, 56, 62, 65, 66, and 75, were rais-
             ed in the District Court, but nowhere does Respondent show where
             the issues in these grounds were resolved on the merits.

Respondent argues grounds 1 to 3, 5 to 14, 28 to 30, 32, 35 to 37,39, 41,

48, 53, 56, 62, 65, 66 and 74 were raisd in the District Court. Doc. 518, pg.

6-7.   Each of the issues in these grounds Respondent makes no argument or eff-

ort to show where they were resolved on the merits.   Therefore, the issues in

these grounds can proceed to the merits in this § 2255 proceeding. See Good-

lett, 403 Fed. Appx. at 313; Cook 997 F.2d at 1318 and (n.6); see also Kaufman

394 U.S. at 227 (n.8).

> (a) Respondent's argument regarding issue preclusion does not
> apply to § 2255 proceedings.

Respondent argues the issues in the grounds listed above were raised in

the District Court and in ineffective counsel's Revised Brief and Reply on

Appeal.   Doc. 518, pg. 6-7.   Therefore, Respondent contends these grounds must

be struck.   Id. at 10.   Respondent is under a misconception about "issue prec-

lusion."   See Doc. 526, pg. 2:

> . "Mr. Springer raised this spurious claim in the underlying case, and made
> brief references to this assertion on appeal...Thus, Mr. Springer's cla-
> ims are barred by issue preclusion. See United States v. Galloway, 56 F.
> 3d 1239, 1242-43(10th Cir. 1995).   To the extent Mr. Springer failed to
> assert these claims in the underlying proceedings, he is procedurally
> barred from raising them in habeas review. See United States v. Cervini,
> 379 F.3d 987, 990(10th Cir. 2004).   Mr. Springer's attempt to relitigate.
> ..."

Respondent's theory on issue preclusion has three applications.   First,

if an issue was raised in the underlying case the issue is barred by issue

preclusion.   Second, if Petitioner "failed to assert" an issue "in the under-

lying proceedings, a procedural bar prevents the issue from being raised "in

habeas review."   And third, Petitioner seek "relitigation."   Although the

above quote from Doc. 526, pg. 2 was addressing ground 2, the exact same logic

appears by Respondent in its preliminary response on the ground being address-

ed herein regarding issues "raised during trial." Doc. 518, pg. 6-7

> (b) The exceptions to issue preclusion

Respondent has already agreed that ineffective appellate counsel claims

could not have been raised. Doc. 518, pg. 2,7,10.   Respondent argues issues

are precluded if they were raised but not resolved, and if they were not raised
because they could have been.  Doc. 518, pg. 2

The elements of issue preclusion are (1) the issue previously decided is
identical with the one present in the action in question, (2) the final action
has been fully adjudicated on the merits, (3) parties were the same, and (4)
Parties had a full and fair opportunity to litigate the issue in the prior act
action.  U.S. v. Botefuhr, 309 F.3d 1263, 1282(10th Cir. 2002).  "Under Feder-
al law, issue preclusion attaches only when an issue of fact or law is actua-l-l
lly litigated and determined by a valid and final judgment and the determinat-
ion is essential to the judgment."  In Re Coney, 583 F.3d 1249, 1251(10th Cir.
2009).

Respondent makes no effort to show where any of these elements are satis-
fied.  As to issues that were raisd but not resolved many exceptions to the
preclusion remain.  Lack of Article III Judicial Power cannot be waived or de-
faulted.  American Fire & Casualty Co. v. Finn, 341 U.S. 6, 17–18(1951); Cook,
997 F.2d at 1320.  Constitutional violations of fundamental character render-
ing entire proceeding irregular and invalid are exceptions.  See U.S. v. Add-
onizio, 442 U.S. 178, 186(1979).  A violation of Federal Law qualifying as a
miscarriage of justice is another exception. See Davis v. U.S., 417 U.S. 333,
346(1974); Hill v. U.S., 368 U.S. 424, 428(1962).  Actual innocense is an exc-
eption.  Bousley v. U.S., 523 U.S. 614, 623(1998).  When an indictment is
changed by the Court instead of Grand Jury is anothe rexception.  U.S. v.
Ballard, 322 U.S. 78, 90(1944).  When a law is unconstitutional is another
exception to the procedural bar.  Ex Parte Siebold, 100 U.S. 371, 376(1880).
When acts charged are not criminal is another exception.  Roberts v. Hunter,
140 F.2d 38, 39(10th Cir. 1943).  Reasonable doubt as to guilty is also an
exception.  Cervini, 379 F.3d at 991.  Factual or legal claims were not avai-
lable is another exception.  Murray v. Carrier, 477 U.S. 478, 488(1986).

Petitioner has placed his issues in each ground within these exceptions.

(c)   Resjudicata does not apply to § 2255 proceedings.

The doctrine of Res Judicata or issue preclusion does not  apply in §
2255 proceedings.  Sanders v. U.S., 373 U.S. 1, 13(1963); Kaufman, 394 at 223;
U.S. v. Kelly, 29 F.3d 1107, 1113(7th Cir. 1994); U.S. v. Donn, 661 F.2d 820
(9th Cir. 1981).

> (ii)   Grounds 1 to 3, 5 to 7, 10 to 14, 28 to 30, 35 to 37, 48, 53, 56
> 62, 66, and 75 arise within the exceptions to the procedural
> bar, and are jurisdictional claims as well as ineffective appe-
> llate counsel claims.

(a) Ground 1

Respondent argues the issues in Ground 1 were raised in the District
Court but not resolved. Doc. 518, pg. 6.  Respondent and Movant agree ground
1 goes to the jurisdiction of the District Court and that the issue in ground
1 was not resolved.  "[t]here is no barrier to a Court's excamination on a §
2255 motion of the propriety of its original exercise of jurisdiction.'  Kelly
29 F.3d at 1113. "Rather, a Court is under an affirmative obligation to so in-
quire." Id.   "Jurisdictional issues are never waived and can be raised on
collateral attack."  Cook, 997 F.2d at 1320. "The doctrine of standing 'is an
essential and unchanging part of the case-or-controversy requirement of Art-
icle III.'"  Utah Wilderness Alliance v. Palma, 707 F.3d 1143, 1153(10th Cir.
2013). "Absent a Plaintiff with Constitutional standing, Federal Courts lack
jurisdiction." Id. "Section 2255 is available to correct errors of constitut-
ional and jurisdictional dimension..." Brown, 34 F.3d at 991. "A defect in
subject matter jurisdiction can never be waived and may be raised at any
time." Huffman v. Saul Holdings, 194 F.3d 1072, 1076-77(10th Cir. 1999) "Juri-
sdiction, the court said, refers to the Courts statutory and constitutional
power to adjudicate the case." U.S. v. Devaughn, 694 F.3d 1141, 1147(10th
Cir. 2012). "In so far as subject matter jurisdiction is concerned, it has

long been recognized that a federal court must, sua sponte, satisfy itself of its power to adjudicate in every case and at every state of the proceedings." State Farm Mut. Auto Insu. Co. v. Narvaez, 149 F.3d 1269, 1270(10th Cir. 1998) And, a § 2255 proceeding is a "continuation of the same criminal matter." Cook, 997 F.2d at 1319.  See Also Doc. 480 holding same.

Ground 1 claims this Court had no Constitutional or Statutory jurisdiction due to the Grand Jury referral for 2000 through 2004 not being signed by the Secretary of the Treasury, or any person authorized by Congress to tranfer Title 26 enforcement to a local United States attorney to prosecute Petitioner.  Without a proper referral regarding Title 26, or Title 26 related offenses, the United States attorney would have no enforcement authority to prosecute Title 26, or Title 26 related offenses pursuant to 28 U.S.C. § 547.1 See U.S. v. LaSalle, 437 U.S. 298, 308-317(1978)  "Every other Court created by the general government derives its jurisdiction solely from the authority of Congress.  That body may give, withhold, or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution."  Turner v. Bank of America, 4 Dall 8, 10(1799).

Without a referral from the Secretary of the Treasury the United States attorney is prohibited from prosecuting Title 26, or Title 26 related offenses and lacks standing to sue Petitioner pursuant to 28 U.S.C. § 547(1). See also Springer, 444 Fed. Appx. at 262 citing Title 26, U.S.C. § 7602

Ground 1 rises within the jurisdictional exception, constitutional exception, and ineffective appellate counsel exception to the procedural bar. Petitioner objects to Respondent's argument if otherwise.

(b) Ground 2

Respondent argues the issues in Ground 2 were raised but not resolved in the Trial Court. Doc. 518, pg. 6.  Respondent also agrees ground 2 arises attacking the jurisdiction of the District Court.  Id. at Table § 1.  Petitioner

agrees with Respondent that ground 2 is jurisdictional. Doc. 472, pg. 12. The issue here is controlled by Article III § 2, Cl. 1's "case or controversy" where the United Staes is alleged as a party. A criminal case must be "filed and prosecuted by the Unitded States attorney or a properly appointed assistant." U.S. v. Singleton, 165 F.3d 1297, 1300(10th Cir. 1999)(en banc); citing U.S. v. Providence Journal, 485 U.S. 693, 699-708(1988)(dismissing case where prosecuting attorney was not authorized by Congress to represent the United States.) A "criminal case prosecuted by an unauthorized attorney is noncognizable." U.S. v. Navarro, 959 F. Supp. 1273, 1277(E.D. Cal. 1997) "[a] federal court cannot even assert jurisdiction over a criminal case unless it is filed and prosecuted by the United States attorney..." Singleton, 165 F.3d at 1300. "[w]here the prosecutor is not authorized to represent the United States, the government has not appeared, and ... the case brought must be dismissed for lack of a party having a case or controversy with defendant, i.e. the Court is without jurisdiction." U.S. v. Navarro, 972 F. Supp. 1296, 1305 (E.D. Cal. 1997) "[w]hen an unauthorized attorney purports to represent the United States, the United States is not a party within the meaning of Art. III and thus, once again, the Court is without jurisdiction." Id.

Ground 2 alleges there was no United States attorney after June 28, 2009 to prosecute, and supervise the prosecution of Petitioner. Doc. 472, pg. 12 Although twice this Court addressed this issue in short swift, it did so without the truth from Respondent, Doc. 292, pg. 1 (n.1), App. 11, and this Court never explained how it factually arrived at is conclusions and what law it was applying. See Doc. 293 and 312. Since these decisions, facts have came to light that directly refute Resopndent's previously blatant false claim on June 28, 2009, Mr. Woodward became "acting United States attorney." Resp- also claimed on January 27, 2010, Mr. Woodward was sworn in by the Attorney General Eric Holder as his selection pursuant to 28 U.S.C. § 546(a).Doc. 292,

note 1.  Recenlty, in USA v. Springer, 08-cv-278 (N.D. Ok.), an attorney on

behalf of the Department of Justice presented a response to Petitioner's Rule

60(b)(4) and (5) Motion to vacate the judgment in that case, claiming that Mr.

Woodward became "acting United States attorney" for the Northern District of

Oklahoma on June 28, 2009, pursuant to 5 U.S.C. § 3345, based upon being Mr.

O'Meilia's "First Assistant."  App. _1_  (Doc. 278 in 08-cv-278).  The evidence

presented by Mr. Shoemaker shows that on October 5, 2009, Mr. Woodward was

elevated to the position of "First Assistant" which such evidence specifically

prohibits Mr. Woodward from being "acting United States attorney" due to the

requirement being Mr. Woodward would     need appointment  by the President

only, see 5 U.S.C. § 3345(a)(2) and (3), and § 3345(b)(1)(i) and (ii) pro-

hibits Mr. Woodward from "acting" anything if he "did not serve in the posit-

ion of First assistant to the office of such officer" or "served in the posit-

ion of First assistant to the office of such officer for less than 90 days."

Mr. Woodward's assension to "First Assistant" on October 5, 2009, speci-

fically prohibits him from being "acting" anything as of June 28, 2009.

In addition, 5 U.S.C. § 3345 does not apply to the office of United States

attorney.  5 U.S.C. § 3345(a) provides this section only applies to:

> "an officer of an Executive agency...whose appointment to office is req-
> uired to be made by the President, by and with the advice and consent
> of the Senate."

See App. _7_

There is no doubt the office of United States attorney does not "require"

appointment by the President and with the advice and consent of the Senate.

Just reviewing Doc. 292, footnote 1, shows Respondent concedes a person could

be appointed to the office of United States attorney without being made by the

President or consented to by the Senate.  Mr. Shoemaker claims that on January

25, 2010, the Attorney General Eric Holder appointed Mr. Woodward for a 120

day term pursuant to 28 U.S.C. § 546(a).  App. _1_

Mr. Shoemaker declared he received the exhibits he attached from the United States attorney in the Northern District of Oklahoma. App. 1 . One of the exhibits he presented shows that on May 24, 2010, then Chief Judge Claire V. Eagan appointed Mr. Woodward as United States attorney for the Northern District. App. 5 , Judge Eagan claims her authority to make this appointment was 28 U.S.C. § 546(d). Section 546(d) did not require the President or Senate for Judge Eagan to make her appointment pursuant to § 546(d).

Petitioner contends that both 28 U.S.C. §§ 546(a) and 546(d) show that 5 U.S.C. § 3345 does not apply to the Office of United States attorney due to the appointment under §§ 546(a) and 546(d) not requiring the President/Senate involvement. It is not "required." In U.S. v. Hilario, 218 F.3d 19, 21(1st Cir. 2000), the Court held that the Judges of that Court had appointed an attorney under 28 U.S.C. § 546(d) and that term had lasted more than 6 years. In U.S. v. Baldwin, 541 F. Supp. 2d 1184,1188(D.N.M. 2008), which did not address § 3345(a) on its application, explained that a majority of the Judges appoint an attorney under § 546(d). See also U.S. v. Martinez, 565 F. Supp. 2d 1270, 1274(n.6)(D.N.M. 2008) collecting cases.

In addition, Judge Eagan's May 24, 2012 general order is invalid for two reasons. First, there is no evidence Eric Holder appointed Mr. Woodward under 28 U.S.C. § 546(d) on January 21, 2010 (Doc. 292, pg. 1), January 22, 2010, App. 4 , or January 25, 2010.

28 U.S.C. § 546(a) reads:

"Except as provided in subsection (b) the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant."

Section 546(c)(2) provides the Attorney General appointment shall not exceed 120 days.    28 U.S.C. § 546(d) states in relevant part:

"If an appointment expires under subsection (c)(2) of this section, the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the Court shall be filed with the Clerk of the Court."

First, the order of May 24, 2010, is only signed by one Judge of the "district court" as defined at 28 U.S.C. § 451.  Oklahoma, 28 U.S.C. § 116, and its Northern District, § 116(a), are one "district court," § 132, and have 4 district judges making up the "district court." § 133(a). The May 24, 2010 general order does not comply with 28 U.S.C. § 546(d).

Second, the district court has no authority to issue an order under § 546 until such time as the "appointment expires under subsection (c)(2)" and that appointment can never expire if it does not exist.  The May 24, 2010 general order is invalid as there was no appointment by the Attorney General that had expired to trigger the "district court's" authority of Congress.

Mr. Woodward was never "acting United States attorney" for the Northern District of Oklahoma from June 28, 2009, pursuant to 5 U.S.C. § 3345(a), and actually prohibited under § 3345(b).  Mr. Woodward was never "appointed" by the "Attorney General" pursuant to 28 U.S.C. § 546(a), on any day, and the May 2010 general order signed by Judge Eagan is invalid rendering Mr. Woodward's theory of being United States attorney from January 25, 2010 through August 2, 2010, knowingly void.

Without a United States attorney from June 28, 2009, through the October 26, 2009 beginning of Jury Trial, through November 16, 2009, and then from Nov ember 2009 through January 24, 2010, and from there to May 24, 2010, and from there  to August 2, 2012, the Article III, § 2 party named United States was not properly before this United States district court due to Congress "vested solely in the United States attorney and his properly appointed assisstants" the "sovereign authority to prosectute and conduct a prosecution." Singleton, 165 F.3d at 1300.

Without a properly appointed United States attorney there can be no "his properly appointed assistants." Id.  The false assertion Mr. Woodward was aut- horized as the United States attorney led to an ommission inconsistent with

rudimentory demands of fair procedure.  Hill v. U.S. 368 U.S. 424, 428(1962)

Ground 2 arises within the jurisdiction exception, constitutional exception, ineffective appellate counsel exception, newly discovered evidence exception, and false claims exception to the procedural bar.  Petitioner objects to Respondent's argument if otherwise.

### (c)  Ground 3

Respondent also agrees Ground 3 arises as a jurisdictional attack on the scope and breadth of the extent of the purported Grand Jury referral.  Doc. 518, pg. 6.  This issue was never ruled on or resolved in the District Court. The June 3, 2005 Lacenski letter is limited to calendar years "2000 through 2004."  Doc. 474, Exh. 15-1.  Count One and Two span years 2000 through 2009. Count Three is from 2003 through 2009 and Count Four is entirely outside the Lacenski years being from 2005 through 2009.  Doc. 2, ¶¶ 41,43,45.

"[o]ne who seeks to initiate or continue proceedings in Federal Court demonstrate...standing to obtain relief requested." Lujans v. Defender's of Wildlife, 504 U.S. 555, 560-61(1992). "A Justice Department referral is in effect with respect to any person if the Secretary has recommened to the Attorney General a Grand Jury investigation of, or criminal prosecution of, such person for any offense connected with the administration and enforcement of the Internal Revenue law."  Springer, 444 Fed. Appx. at 262

Clearly, each Counts One through Four exceed the years "2000 through 2004" and are "regarded as if it were a separate indictment." U.S. v. Redcorn, 528 F.3d 727, 734(10th Cir. 2008); citing U.S. v. Dunn, 284 U.S. 390, 393(1932). Because the referral is jurisdictional in nature, the District Court lacked subject matter jurisdiction over Counts One through Four due to these Counts exceeding authorization to enforce from the purported referral.

Ground 3 arises within the jurisdiction exception to the procedural bar. Petitioner objects to Respondent's argument if otherwise.

### (d)  Ground 5,7 and 62

28

Respodent argues the issues in Grounds 5,7 and 62 were raised but not resoved in the Trial Court.  Doc. 518, pg. 6-7  Respondent agrees Ground 5,7 and 62 arise as a Jurisdictional attack. Id at § 2   These  allege   the IRS had no Title 26 authority to seek or serve a search warrant on September 16, 2005 due to the institutional nature of the June 3, 2005 Lacenski letter. Doc. 474, Exh. 15-1  Petitioner was not afforded a Full and Fair Franks or Suppr-ession hearing on the authority to seek and serve the September 15, 2005 sea-rch warrant.  The evidence obtained after June 3, 2005 by the IRS through its enforcement of Title 26 authority twas gathered in Bad Faith, based upon false claims of authority in violation of the prophylactic rule announced in U.S. v. LaSalle, 437 U.S. 298, 308-317(1978).  Respondent also places ground 5 in its § 10.  Doc. 518, pg. 7.

"Under 26 U.S.C. § 7608(b), Congress grantd police powers to the IRS cri-minal invstigators."  U.S. v. Little, 753 F.2d 1420, 1436(9th Cir. 1984). "Once a criminal referral has been made, the Commissioner is under well known restraints..." Bedaracco v. CIR, 464 U.S. 386, 399(1984).  "Violations are not reviewable in a § 2255 motion when the Federal prisoner has had a full and fair opportunity to litigate the Fourth Amendment claims at trial and present issues on direct appeal."  Cook, 997 F.2d 1317.

Allowing Respondent to use, and benefit from, the IRS's post June 3, 2005 enforcement authority while institutional commitment and referral was in eff-ect, including the evidence gathered on September 16, 2005, "is a Constitut-inoal violation, or an error of law and fact of such 'fundamental character' that it 'renders the entire proceeding irregular and invalid.'"  Addonizio, 442 U.S. at 186; citing Hill, 368 U.S. at 428.

Petitioner has not received a full and fair opportunity to raise the issue in ground 5, 7 and 62 at or before trial and  direct appeal. Allowing

29

Respondent to benefit from the IRS's Bad Faith, and including at Trial, has cased a complete miscarriage of justice of one who is actually innocent. murry, 477 U.S. at 496

Grounds 5,7 and 62 arise within the jurisdictional exception, actual innocense exception, miscarriage of justice exception, to the procedural bar. par Petitioner objects to Respondent's argument if otherwise.

(e)   Grounds 6,7 and 62

Respondent argues grounds 6,7 and 62 were raised but not resolved in the Trial Court. Doc. 518, pg. 6-7  Respondent places grounds 6,7 and 62 in § 10 of its response arguing Petitioner seeks to invalidate the search warrant and suppress evidence. Id. at pg. 7.  These grounds are premised upon the IRS seeking in bad faith a search warrant to enforce on September 15, 2005, after the Lacenski June 3, 2005 purported referral letter, which under LaSalle's prophylactic rule, was sought in bad faith and in violation of Petitioner's Fourth and Fifth Amendment rights.

Ground 6,7, and 62 allege Magistrate McCarthy did not have any Congressional authority to issue the search warrant due to the June 3, 2005 IRS Lacenski letter.  Petitioner has not yet had a full and fair opportunity to litigate the issue in grounds 6,7 and 62.  Cook, 997 F.2d at 1317.  The fact the United Staets attorney was allowed to employ the IRS, and its enforcement authority, after June 3, 2005, "renders the entire proceeding irregular and invalid."  Addonizio, 442 U.S. at 186.  The Grand Jury cannot employ the IRS to excecute a search warrant under § 7608(b) authority after referral.  The prophylactic rule was designed to protect the Grand Jury's role as the accuser.

Petitioner alleges ground 6,7 and 62 are an attack on the jurisdiction of the Court due to the Magistrate having no authority to issue the search warrant after the June 3, 2005 referral and commitment from the IRS.

Ground 6,7  and 62 arise within the jurisdictional exception ineffective

30

appellate counsel exception to the procedural bar.  Petitioner objects to Respondent's argument if otherwise.

       (f)  Grounds 10,11,12 and 13

Respondent argues the issues in ground 10,11,12, and 13, were raised in the district court, Doc. 518, pg. 7, but not resolved.  Grounds 10 through 13 are issues involving restitution jurisdiction in the district court.  Respondent places these grounds under "Restitution improper."  Doc. 518, pg. 7

Ground 10 alleges the district court exceeded its jurisdiction to order restitution to the State of Oklahoma.  Doc. 472, pg. 20. Ground 11 alleges that the State of Oklahoma had no reserved power to Tax Federal Gross Income by the enumerations from the State of Oklahoma imbedded within the Sixteenth Amendment depriving once again the district court of jurisdiction to order restitution to the State of Oklahoma.  Doc. 474, pg. 21.  Ground 12 alleges the Lacenski June 3, 2005 letter limited restitution to years 2000 through 2004 and the district court was without jurisdiction to order restitution exceeding these years.  Doc. 474, pg. 22.  Ground 13 alleges the district court had no jurisdiction to order any restitution involving Title 26, or Title 26 related offenses as a condition of imprisonment, sentence, or judgment.

"[r]estitution hearings are part of the sentencing process."  U.S. v. Richard, 738 F. 2d 1120, 1122(10th Cir. 1984).  "The Due Process Clause applies to restitution hearings." U.S. v. Sunrhodes, 831 F.2d 1537, 1541(10th Cir. 1987).  "[a]bsence of jurisdiction in the convicting court is indeed a basis for federal habeas corpus relief cognizable under the due process clause."  Yellowbear v. Wyo. Attorney General, 525 F.3d 921, 924(10th Cir. 2008).  Section 2255 provides relief involving "the sentence was imposed in violation of the Constitution...in violation of the laws of the United States ...[and] the Court was without jurisdiction to impose such sentence." See also U.S. v. Payne, 644 F.3d 1111, 1113(n.2 en banc)(10th Cir. 2011)("the term

'sentence' [in § 2255] has been regarded as a generic term including all of the proceedings leading up to the sentence.")

The district court never stated what its jurisdiction derived from involving restitution. Doc. 401, pg. 432-33; App. 49 .  Congress did not include Title 26, or Title 26 related offenses in 18 U.S.C. §§ 3663 or 3663A. See U.S. v. Hassebrock, 663 F.3d 906, 925(7th Cir. 2011)

Grounds 10 through 13 each arise within the jurisdictional exception, constitutional exception, and ineffective appellate counsel exception to the procedural bar.  Petitioner objects to Respondent's argument if otherwise.

(g)  Ground 14

Respondent argues the issues in ground 14 were raised in the district court.  Doc. 518, pg. 6 citing Doc. 321  However, Respondent does not show where the issues in ground 14 were resolved.  Petitioner claims the district court had no jurisdiction to exceed years 2000 through 2004 in its calculat- for the Secretary of the Treasury of tax loss, relevant conduct, and restitution based primarily upon the tax loss and relevant conduct calculations. Doc. 472, pg. 24.  Petitioner contends the Court's changing Counts 2,3 and 4 to evasion of payment of assessed taxes also infected these amounts.

Petitioner claims the issues in ground 14 are jurisdictional stemming from the referral limitation, and due to that error in jurisdiction, the length of Petitioner's sentence, which impacted running certain terms consecutive instead of concurrent, resulted in a longer sentence that would have been had the Court stayed within the 2000 through 2004 time period.

Ground 14 arises within the jurisdictional exception and ineffective appellate counsel exception to the procedural bar.  Petitioner objects to Respondent's argument if otherwise.

(h)  Grounds 28, 29,30 and 66

Respondent argues grounds 28 to 30 and 66 were raisd but not resolved in

the Trial Court.   Doc. 518, pg. 6-6   Grounds 28 to 30, and, 66 arise due to

violations of the Paperwork Reduction Act ("PRA") involving Form 1040 United

States Individual Income Tax Return at issue and alleged in one form or ano-

ther in each Count, and including both Bills of Particulars filed by Respond-

ent, Doc. 104, 201, violated the PRA.  See Ground 28, Doc. 472, pg. 38.

Ground 29 alleges 44 U.S.C. § 3512(a)'s terms "notwithstanding any other

provision of law" includes 18 U.S.C. § 371, and 26 U.S.C. §§ 7201 and 7203's

penalties.  Doc. 472, pg. 39.  Ground 30 alleges the Court's instruction to

the jury it "ruled" previously that Form 1040 did not and does not violate the

PRA was both legally and factually wrong.  Doc. 472, pg. 40.  Each of these

grounds allege Petitioner's Fifth and Sixth Amendment rights were violated.

Ground 66 collectively allege each ground together also violated the Fifth

Amendment. Doc. 472, pg. 76.

Petitioner cannot find where the district court made such a ruling prior

to trial that the Form 1040 did not violate the PRA.  If it exists Respondent

did not cite to it anywhere in its respnse.  Under 44 U.S.C. § 3512(b) the

public protection can be raised at "any time."  During a § 2255 proceeding is

one of those times.  Springer v. CIR, 580 F.3d 1142, 1145(10th Cir. 2009). A

Trial Judge is not to weigh evidence...  Burks v. U.S., 437 U.S. 16(1978)

There is likewise no doubt the criminal law suit brought by Respondent stems

from "agency" action based upon the requird and purported referral.

Ground 28 to 30, and 66, can be raised at any time and qualify as both

the jurisdictional exception, See U.S. v. Hatch, 919 F.2d 1394, 1398(9th Cir.

1990), actual innocense exception, constituitnal exception, and ineffective

appellate counsel exception to the procedural bar.  Judges are simply not to

answer questions of facts during a jury trial.  U.S. Silker, 751 F.2d 477, 497

(2nd Cir. 1984) cited in U.S. v. Hoodenpyle, 461 Fed. Appx. 675, 682(10th Cir.

2012).  Petitioner objects to Respondent's argument if otherwise.

(i)  Ground 35, 36 and 66

Respondent argues the issue in ground 35, 36 and 66 were raised in the Trial Court.  Doc. 518, pg. 6-7  Respondent places ground 35, 36 and 66, in a section it refers to as "statute of limitations." Doc. 518, pg. 7

Ground 35 alleges Count One was subject to a 3 year statute of limitation and exceeded that limitations.  Doc. 472, pg. 45.  Ground 36 allegs Count Two, incorporating ground 33's allegation the offense in Count Two was switched at Trial, Doc. 472, pg. 43, exceeded a 6 year statute of limitations. Doc. 474, pg. 46.  Respondent alleges these issues were raised but "stricken."  Doc. 518 Attach. pgs. 19-20 of 53.  Ground 66 alleges ground 35. Doc. 472, pg. 76.

Petitioner has already places these issues under ineffective appellate Counsel.  Without an overt act within 3 years Count One is requird to be dismissed.  Count Two's limitation depends on which of th two crimes is alleged under § 7201.  See Kawashima v. Holder, 182 L.Ed 2d 1, 10(2012) holding "7201 includes two offenses" citing Sansone v. U.S., 380 U.S. 345, 354(1965).

Petitioner claims actual innocense to Counts One through Four regarding Form 1040 being at issue in any conspriacy involving Petitiner's purported liabilities. See Doc. 472, pgs. 25 to 37, and in Counts 2, 3, and 4, due to both attempting to evade an assessment for 2000, 2003 and 2005, involving Form 1040, and to any attempt to evade payment of assessed taxes for 2000, 2003 and 2005.  Doc. 472, pg. 43  A complete miscarriage of justice would result if ground 35, 36 and 66 are not addressed on their merits.

Grounds 35, 36, and 66 arise within the jurisdictional exception, actual innocense exception, miscarriage of justice exception, and ineffective appellate counsel exception to the procedural bar.  Petitioner objects to Respond's argument if otherwise.

(j)  Ground 48

Respondent argues the issues in ground 48 were raised in the district

34

court. Doc. 518, pg. 6-7, but not resolved. Ground 48 arises within the
Court's gift and minister income instructions to the jury that were then appl-
ied retroactively and ex post facto in violation of Article I, § 9, Cl.3's
injunction and 26 U.S.C. § 7805(b). The Court's instruction was written at
the close of trial in 2009 and applied to years 1990 through 2007 for either
Trial and then at sentencing and restitution. Congress does not define gift
in Title 26. Springer, 444 Fed. Appx. at 263. Neither does the Secretary
of the Treasury.

Although Respondent does not claim this issue was resolved, the Court did
deny a new trial involving its gift instruction as a violation of the Sixth
Amendment but not udnder Article I, § 9, Cl.3. Doc. 293, pg. 4-5 Had Con-
gress or the Secretary written the words the Court wrote to the Jury regarding
gift this Court would be forbidden from applying those words backwards in a
criminal case and in civil pursuant to § 7805(b).

"The question in such a collateral proceeding is whether the ailing ins-
truction by itself so infected the entire triàl tha the resulting conviction
violates due process." Esquibel v. Rice, 13 F.3d 1430, 1432(10th Cir. 1994)
citing Cupp v. Naughten, 414 U.S. 141, 147(1973)

There is no question changing the definition of gift from undefined to
defined impacted and infected the entire trial's outcome.

Ground 48 aries within the actual innocense exception, a loss of trial
jurisdiction under the Sixth Amendment exception, the constitutional violation
eception, miscarriage of justice exception, and ineffective appellate counsel
exception to the procedural bar. Petitioner objects to Respondent's argument
if otherwise.

(k)  Ground 53

Respondent argues the issues in ground 53 were raised in the district
court. Doc. 518, pg. 6-7, but not resolved. Ground 53 arises due to the de-

35

facto 13th Juror and Jury Foreman, Revenue Agent Brian Miller, testifying at trial as to whether factually Mr. Turner's transaction with Petitioner became gross income when Petitioner could no longer make payments that ceased in mid 2008.  Miller's only theory as to how $ 250,000 became gross income in 2005 was:

> "Initially, I felt like it might have been a loan based on the testimony of Mr. Turner.  I heard the testimony of other witnesses, saw other exhibits, that led me to believe in all likelihood the $ 250,000 would never be repaid by Mr. Springer, and would therefore be treated as income to him."

Doc. 474, pg. 24, citing Trial Trans. Doc. 393, pg. 2008; App. 31

The evidence was that Petitioner made payments every month to Mr. Turner from 2006 to 2008.  Doc. 474, pg. 24; Trial Trans. Doc. 391, pg. 1475; App. 23 These payments were $ 1400.00 a month.  Doc. 474, pg. 24; Trial Trans. Doc. 391, pg. 1510; App. 24

Without Turner's $ 250,000 as "gross income" in 2005's calendar year, the total gross income for 2005 presented to the Jury was $ 15,500.00.  Agent Miller testified:

> "for the year 2005, based on the testimony of the Turners and the other witnesses, we determined that the gross income for 2005 was $ 265,500."

Trial Trans. Doc. 393, pg. 2006; App. 29

This means and shows that Petitioner was not even required to file a tax return for 2005 due to the necessary income to trigger the requirement needing exceed $ 16,400.00 as Agent Miller testified. Trial Trans. Doc. 393, pg. 2022; App. 32

Petitioner is actually innocent of failing to file a "United States Individual Income Tax Return" for 2005 and no evidence of a deficiency exists in the record when the $ 250,000 is removed from Count Four's gross income and Agent Miller's factual opinion that placed the $ 250,000 in 2005's gross incom.  Section 7201's elements require a substantial tax debt be shown. Boule-ware v. U.S., 552 U.S. 421, 424 (2008)

The Court instructed the Jury they must find this element beyond a reasonable doubt.  Trial Trans. Doc. 397, pg. 2954, 2957, and 2959; App. 40 , 41 , 42

Actual innocense is an exception to the procedural bar.  The "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In Re Winship, 397, U.S. 358, 364(1989).  The Supreme Court stated in Frady "this would be a different case had Frady brought before the district court affirmative evidence indicating that he had been convicted wrongly of a crime of whichhhe was innocent."  U.S. v. Frady, 456 U.S. 152, 170(1978)

The facts clearly show by a fair probability Petitioner would have been found not guilty.  Cervini, 379 F.3d at 991.  The issue is "central to the basic question of guilt or innocense."  Jackson v. Virginia, 443 U.S. 307, 323 (1979).

Ground 53 arises within the actual innocense exception, loss of trial jur: jurisdiction exception, and ineffective appellate counsel exception to the procedural bar.  Petitioner objects to Respondent's argument if otherwise.

(1)   Ground 56

Respondent argues the issues in ground 56 were raised in the district court, Doc. 518, pg. 6-7, but not resolved. Ground 56 arises as a Due Process and equal protection component violation prohibited by the Fifth Amendment wh: where the Court refused to allow consideration that some of the unredeemable Federal Reserve Notes tendered to Petitioner by those who testified qualfied as partial payment (minimally) and part gift (majority).  The Bill of Particulars cites to 26 U.S.C. §§ 1,61,63, See Doc. 104, and 26 CFR §§ 1.1-1 and 1.61-1. Doc. 201.  What was to be taxed, and how that assessment was to be made, were dramatically changed by the Court's all or none approach.  The Tax Code does not support the Court's all or none approach.

Petitioner claims actual innocense and had each transaction been treated

criminally. how they were to be treated civilly, Petitioner in all probability would not have been liable for any substantial tax liability for years 2000, 2003, and 2005.  This claim is notwithstanding the Court's switch from evasion of assessment to evasion of payment at the close of the case.

Ground 56 arises within the actual innocense exception, miscarriage of justice exception, and ineffective appellate counsel exception to the procedural bar.  Petitioner objects to Respondent's argument if otherwise.

     (m)  Ground 75

Respondent arges the issues in ground 75 were raised in the Trial Court, Doc. 518, pg. 6-7, but not resolved.  Ground 75 arises due to a denial of due process in the sentencing stage of the underlying proceeding. Petitioner contends this Court lost sentencing jurisdiction when it denied an extension of time regarding the sentencing after Court became aware Judge Kern had ordered Petitioner to vacate his home of 14 years, and relocate Petitioner's family within 30 days from March 16, 2010. Doc. 322.  As it turns out, Judge Kern had no jurisdiction to enter this order in the first place due to there being No United States attorney for the Northern District of Oklahoma as of June 28, 2009 through April 2, 2012.  See Doc. 472, pg. 12.

Petitioner argues that had he been represented by Counsel and had that Counsel faced similar circumstances, this Court would have easily granted Counsel a continuance to prepare for sentencing as that is a critical stage of the case.  Had this Court not granted counsel a continuance to so prepare, Petitioner would easily qualify for relief under § 2255 for ineffective trial counsel in the event prejudice can be shown; i.e. that the outcome would have been different.  Self reprsentation should nave have received the bias this Court placed upon it in denying Petitioner's continuance requests.  It was simply an abuse of any discretion the Court had.  This Court's decision rendered the sentencing stage "irregular and invalid."  Addonizio, 442 U.S. at 186

The Cause is this Court's decision to deny the relief sought in the form of a continuance and Appellate Counsel's failure to raise it, as well as the Tenth Circuit's refusal to allow Appellate Counsel to file an overlength brief where this issue could have been properly raised.

The prejudice can easily be shown due to the outcome of the tax loss and restitution calculations, as well as relevant conduct and other sentencing enhancements, would have resulted in a much lower overall sentence and a lower sentence on each invidividual Count had a full and fair hearing been afforded.

Whether it be Petitioner can show the tax loss and restitution exceeded the jurisdictional limitation premised upon the June 3, 2005 Lacenski letter, which limited the years to 2000 through 2004, or the Court's inclusion of Mr. Stilley's Tax Liabilities from Arkansas, which were clearly outside any profferred referral jurisdiction, or the application and use of the Turner transaction did not belong in 2005, or even at all, or Petitioner presenting evidence he did not encourage others to violate the tax laws, including failing to file Form 1040s for any year, and that penalties and interest should not have been calculated in the Court's calculations for any year, and the evidence to mitigate involving the actual encouragement of many to return to what they were previously doing in connection with the IRS, all show a different outcome had Petitioner been allowed to properly prepare and present his defense at the sentencing mini trial.  The evidenc would also show Petitioner directing other persons to "tax professionals."

Ground 75 arises within the miscarriage of justice exception, due process violation exception, and ineffective appellate counsel exception to the procedural bar.  Petitioner objects to Respondent's argument if otherwise. Cause and Prejudice are also shown.

> (iii) Grounds 8,9, 32,  39 , and 65 are non-jurisdictional claims that
> are also ineffective appellate counsel claims among others

(a)  Ground 8 and 9

Respondent argues the issue in ground 8 and 9 were raised in the district
court, Doc. 518, pg. 6-7, but not resolved. Ground 8 and 9 arise due to the
purported Affidavit in Support of the Search Warrant dated September 15, 2005,
was not sworn on file in the Clerk of Court's Grand Jury Drawer. See Doc. 100,
Def. Exhibit 1. When Petitioner early on sought the "Affidavit," Magistrate
McCarthy ordered the original would be held in the Grnad Jury drawer. Doc. 37-
37-2, pg. 41 through 44.

Rule 41(d)(1) and (2) require the Search Warrant be filed with the Clerk
of Court and sworn. Petitioner claims the unsworn document on file in the
Clerk's Office renders use of the evidence gathered in violation of Petition-
er's Fourth and Fifth Amendment rights.  These issues are "central to the
basic question of guilt or innocense."  Jackson, 443 U.S. at 323.  Without the
evidence gathered by a  Search Warrant, and how it was construed once gather-
ed, there is a high probability no juror would have found Petitioner Guilty of
any of the Six Counts as charged.  Petitioner doubts a Grand Jury would have
even returned an indictment as the one Petitioner was called upon to defend
against.

Ground 8 and 9 arise within the actual innocense exception, miscarriage
of justice exception, Fourth and Fifth Amendment violation exception, and in-
effective appellate counsel exception to the procedural bar.  Petitioner obj-
ects to Respondent's argument if otherwise.

(b) Ground 32

Respondent argues the issues in ground 32 were raisd in the district
court, Doc. 518, pg. 6-7, but not resolved. Ground 32 arises as a Fifth Amend-
ment Due Process violation where the Secretary of the Treasury had published
in the Federal Register the place United States Individual Income Tax Returns
were required to be filed, after passage of the Restructuring and Reform Act

of 1998.   The Tenth Circuit held that as of 1998 the internal revenue distr-
icts and district director offices were abolished. Springer, 444 Fed. Appx. at
261.   26 U.S.C. § 6091(b), prior to the Tenth Circuit's 2011 decision in this
case, was the place Congress, and the Courts, had directed where the require-
ment to "file" was "required by law."

It was not until 2005 that the Secretary substantively amended 26 CFR §
1.6091-2 to change where the requirement of the law is to be satisfied. Betw-
een 1998 and 2005's version of § 1.6091-2, Petitioner was given no notice of
the place he was "requied by law" to file a Form 1040 United States Individual
Income Tax Return to the Secretary.

Ground 32 arises as a change in the law of the case doctrine where the
Tenth Circuit switched the place from § 6091(b), to § 6091(a), which then tri-
ggered application of Treasury Regulation § 1.6091-2 and for 1999 to 2004, a
person like Petitioner, not living in any internal revenue district, was req-
uired to file his tax return and pay his taxes, if any he owed, with the Dis-
trict Director in Baltimore Md.   See Doc. 474, pg. 51, ¶ 395.   But that place
was also abolished with the Restructuring and Reform Act of 1998.   See Allnutt
v. CIR, 523 F.3d 406, 408(n.1)(4th Cir. 2008) cited in Springer, 444 Fed.
Appx. at 261

Ground 32 arises within the change in the law exception, actual innocense
exception, miscarriage of justice exception, Fifth Amendment violation except-
ion & ineffective appellate counsel exception to the procedural bar.   Petit-
ioner objects to Respondent's argument if otherwise.

(c)   Ground 39

Respodent argues the issue in ground 39 was raised in the district court,
Doc. 518, pg. 6-7, but not resolved by the district court.   Ground 39 alleges
the punishment the Court adjudged was in violation of the Eighth Amendment's
prohibition of cruel and unusual punishment.   The Court has no Judicial Power

under Article III, or any statute of Congress to impose cruel and unusual punishment.  In light of evidence     millions each year are not even charged with Tax Crimes, Doc. 474, Exh. 6-7, or not sentenced as severe as Petitioner, Doc. 474, Exh. 9, and the confusion betwen the Secretary's instructions the public scrutinize Form 1040 with the mandates of the PRA, and where this Court held Form 1040 was not be so so scrutinized, Doc. 293, pg. 6, and where rev-enue districts and director offices were abolished in 1998 (really 1999); see Springer, 444 Fed. Appx. at 261, and where one minute regulations play no role in what the law requires at issue in all Six Counts under the element of will-fullness, see Doc. 201, pg. 1-2, and that regulations thus control the requir-ement to file a United States Individual Income Tax Return, Springer, 444 Fed. Appx. at 261, the complexities in this case did not justify 15 years in prison and almost $ 800,000 in restitution that the Court was certain would never be repaid.  Sent. trans. Doc. 401, pg. 431-32; App. <u>48-49</u>

18 U.S.C. § 3663 directed the Court to consider the Defendant's ability to pay which this Court was fully aware was zero.  This is of course nnotwith-standing the issue raised in ground 13.

Ground 39 arises within the jurisdictional exception, miscarriage of jus-tice exception, and the ineffective appellate counsel exception to the proced-ural bar.  Petitioner objects to Respondent's argument if otherwise. The juri-dictional attack in ground 39 is premised upon the loss of jurisdiction once the cruel and unusual punishment was announced on April 23, 2010.

(d)   Ground 65

Respondent argues the issue in ground 65 was raised in the district court Doc. 518, pg. 6-7, but not resolved.  Ground 65 alleges Petitioner's Sixth Amendment Right to a speedy trial is in an ongoing violation and that Petit-ioner did not receive a trial on the Grand Jury's charges in Counts 2,3 and 4. The Court should never have instructed the Jury it had previously ruled Form

1040 did not violate the PRA when it had not made such a decision public and where Petitioner had access of such decision and the reasons given. See Doc. 474, pg. 19.   Intent was the main issue in contest or controversy between Petitioner and Respondent's criminal law suit.   See Trial trans. Doc. 393, pg. 1949; and to the jury, pg. 1950.   App. 27 , 28   The Court should not have allowed Stilley's liabilities from Arkansas be considered in Count One as no prosecutorial referral, or even grand jury referral, had been made to the Department of Justice, or Mr. O'Meilia on Stilley's liabilities for any year. Doc. 474, Exh. 15-1 to 15-6

Petitioner has a right to a speedy trial pursuant to the Sixth Amendment. free of the Court's constructive and prejudicial variance.   The Sixth Amendment confers a fundamental right on criminal defendants, one that "assures the fairness, and thus the legitimacy of our adversary process."   Withrow v. Williams, 507 U.S. 680, 688(1993).

Ground 65 arises within the constitutinal exception, loss of trial jurisdiction exception, and ineffective appellate counsel exception to the procedural bar.   Petitioner objects to Respondent's argument if otherwise.

 (B)  Grounds 17,18,19,22,31,38,40,50,52 (7611), 68, 72 and 76 could not have been raised.

Respondent argues grounds 17 to 19, 22, 31, 38, 40, 50, 52 (7611), 68, 72 and 76 were raised in the district court, Doc. 518, pg. 6-7, and could have been raised in the district court. Id. at Attach.to each ground.   These grounds Petitioner alleged could not have been raised. Doc. 472, pg. 27 to 30, 32, 41, 48, 50, 60, 62, 78, 82 and 86.

 (i)  Grounds 17 to 19, 22, 31, 38, 40, 50, 52, 68, 72 and 76

Petitioner alleges the issues in grounds 17 to 19, 22, 31, 38, 40, 50, 52, 68, 72 and 76 that each of the issues in these grounds could not have been raised until after the Tenth Circuit entered its decision, or the new and pre-

viously unavailable evidence came to light.  Respondent cites to docket ent-
ries in support of its claims Petitioner raised the issues in these grounds,
save ground 52, in the district court.  The problem with Respondent's argument
is that it cites to no record where this Court addressed these issues on the
merits in light of the Tenth Circuit's decision.  Respondent shows no place
where Petitioner was given notice Form 1040 United States Individual Income
Tax Returns were considered "divorced" from the issues in each Count, or at
issue. See Springer, Fed. Appx. at 262

Respondent lists grounds 17 to 19, 22, 31, 38, 40, 68 and 76 in its Table
at § 14. Doc. 518, pg. 7(grounds 52 and 72 will be addressed separately). It
is a legal impossibility to have notice of a theory Respondent did not pursue
until after judgment was announced.  The first time Respondent turned against
the Grand Jury's alleged Form 1040 United States Individual Income Tax Returns
theory wsa in opposing Petitioner's release.  See Doc. 474, pg. 27, citing
Doc. 361, pg. 5-6 ("not necessarily a Form 1040").  Oh yes, it was Form 1040.
See Doc. 474, pg. 21, citing Trial Trans. Doc. 396, pg. 2675, App. 35 ("with
respect to the...books and returns for the years 2000 to 2005...at least they
do fall within the scope of the conspiracy, although Mr. Springer didn't file
any of the FORMS AT ISSUE.")    And in Counts 2, 3 and 4, each alleged Petit-
ioner fails to file "Unitd States Individual Income Tax Returns." Doc. 474,
pg. 7, citing Doc. 2, ¶¶ 41,43, and 45  In its First Bill of Particulars, Re-
spondent explains the meaning of the "legal duties with which the Defendants
were obligated to comply":

> "in reference to Defendant Springer's failure to file a federal income
> tax return."

See Doc. 474, pg. 14 citing Doc. 104, pg. 1, App. 59

Besides th lengthy list of regulations and statutes pointing directly at
Form 1040, See Doc. 474, pg. 50-51 citing to Doc. 104,201, or the Court's

demand **Movant** show an Article III decision that "says that a statutory requirement of filing a Form 1040 is subject to the" PRA, Doc. 474, pg. 18, citing Trial Trans. Doc. 392, pg. 1889, App. 25 , or Respondent convincing this Court Petitioner deserves 2 point enhancement for testifying at trial Petitioner "did not willfully fail to file Form 1040 for years 2000 through 2005," Doc. 474, pg. 60, citing Sent. Trans. Doc. 401, pg. 426-27, App. 46 , the evidence is clear that Petitioner was led he had to defend why he did not self assess on Form 1040.  And the title to Form 1040 is United States Individual Income Tax REeturn.  Doc. 474, Exh. 13-1 to 13

In Smith v̄. CIR, 62 T.C.M. 1429, 1435(U.S.T.C.)(1991) the Tax Court held the penalties or additions to tax arose "in relation to Petitioners' failing to file Forms 1040 reporting their income."  Smith's decision, the Tax Court explained, was based on the Tenth Circuit's decision in U.S. v. Collins, 920 F.2d 619, 630-31(10th Cir. 1990); App. 91

The IRS's "Truth about Taxes" states:

"The requirement to file an income tax return is not voluntary and is clearly set forth in section 6011(a), 6012(a) et seq., and 6072(a). See also Treas. Reg. § 1.6011-1(a)."

App. 61

In Respondent's First Bill of Particulars section 6011 is listed which in § 6011(e) these words appear:

"Except as provided in Paragraph (3), the SECRETARY MAY NOT REQUIRE RETURNS OF ANY TAX IMPOSED BY SUBTITLE A [26 U.S.C. §§ 1 et seq] ON INDIVIDUALS...TO BE OTHER THAN ON PAPER FORMS SUPPLIED BY THE SECRETARY."

App. 63

It was just not forseeable or possible to raise the issues raised in gronds 17 to 19, 22, 31, 38, 40, 68, 72, 76 until after the Tenth Circuit issued its decision in 2011.

Grounds 17 to 19, 22, 31, 38, 40, 68, 72 & 76 arise under the could not have been raised exception, change in the law exception, actual innocense

exception, miscarriage of justice exception, jurisdictional exception and in-
effective appellate counsel exception to the procedural bar.  Petitioner obj-
ects to Respondent's argument if otherwise.

      (ii) Ground 50

Respondent argues the issues in ground 50 were raised in the district
court, Doc. 518, pg. 6-7, and could have been raised. Id. at Attach.  Respond-
ent also argues the issues in Ground 50 were raised in ineffective appellate
counsel's opening brief.  Id. at pg. 31 of  53   Such an argument is baseless
due to one simple reason.  Petitioner could not have filed a Petition under
the habeas substitute until after the direct appeals were resolved.

Ground 50 arises within the could not have been raised exception to the
procedural bar.  Doc. 472, pg. 60.  Petitioner objects to Respondent'a argu-
ment if otherwise. Respondent does not cite to where ground 50 was resolved.

      (iii) Ground 52

Respondent argues the issues in ground 52 were raisd in the district
court, Doc. 518, pg. 6-7, could have been raised, and were raised on appeal.
Respondent does not cite to any record where the issue in ground 52 was re-
solved.  Ground 52 arises from the 2012 public revelation tha Ms. Meadors
was unauthorized to issue summons to investigate or audit Petitioner's Minis-
try due to there being no high raking Treasury official to authorize the
audit pursuant to 26 U.S.C. § 7611.  Doc. 472, pg. 62 and Exh. 10(explaining
in 2012 since 2009 court decision.)

The cause for ground 52 is the IRS failing to disclose it had no person
that was capable of authorizing Ms. Meadors to audit Petitioner's ministry
conduct or activities under 7611.  The prejudice is that unauthorized audit
led to the information gathered on September 16, 2005 then being used to ob-
tained the indictment against Petitioner and the jury conviction.  The First
Amendment and political concerns were why § 7611 authorization was mandatory.
Ground 52 was not legally or factually available until now. Murray, 477 U.S.

at 488.   Petitioner was unaware of Respondent's changed theory. Doc. 474, pg. 41-42  Petitioner would never have presented a defense, or conducted  his pre-indictment actions the way he chose,had Petitioner been aware Form 1040 was not "requird by law."  Petitioner would never have waived his right to remain silent at trial, or before, or even after, had notice been given of what the duties or obligations were and at issue as "required by law."  There was no need to scrutinize Form 1040 as the Secretary invited. Doc. 474, pg. 1

Ground 52 arises within the newly discovered evidence of Ms. Meadors false claims of authority when she bypassed section 7611 and audited Petit-ioner's ministry without approval from a "high-ranking treasury official."

Ground 52 was not capable of being raised until the IRS made public that there was no person authorized to authorize ministry audits pursuant to 26 U.S.C. § 7611 and that did not happen until 2012.  Petitioner objects to Res-pondent's argument if otherwise.

(C).  Grounds 33,34, 42, 43,  44,46,49,51,54,55,57,58,63,64 and 67

Respondent alleges gronds 33,34,42,43,44,46,49,51,54,55,57,58,63,64 and 67 were not raisd in the district court "During Trial." Doc. 518, pg. 6-7

(i)  Except for ground 49 Respondent agrees each of these ground were not raised in the district court "During Trial."

Grounds 33,34,42,43,44,46,49,51,54,55,57,58, 63,64, and 67 Respondent argues were not raisd in the district court. Doc. 518, pg. 6-7. However, save ground 49, Respondent argues ecah of these grounds could have been raised and arise under ineffective appellate counsel.

(a)  Ground 33

Respondent argues the issues in ground 33 was not raised but could have been. Doc. 518, Attach. 18 of 53.  Respondent is wrong regarding the issue in ground 33.  Petitioner raised it at the April 22, 2009 hearing. Doc. 474, pg. 8, citing Hear. Trans. Doc. 382, pg. 16; App. 17  During Trial Petitioner in-

sisted the Court instruct the Jury they need to find Petitioner is required

by law to file a United States Individual Income Tax Return Form 1040 at issue

in Counts 2,3 and 4, twhichc this Court refused.  Doc. 474, pg. 22, citing

Trial Trans. Doc. 396, pg. 2929-30; App. 39  explaining:

> "Tax evasion is a crime both as a matter of form and as a matter of sub-
> stance, which is separate and independent of the Form of willful failure
> to file--of the crime of willful failure to file...and I don't intend to
> add it."

In U.S. v. Anderson, 319 F.3d 1218, 1219-20(10th Cir. 2003), the Tenth

Circuit held:

> "Sectionn7201 criminalizes not just failure to file a return...but the
> willful attempt to evade taxes in any manner."

Respondent argued before the Trial Judge that:

> "the evasion counts are independent of whether or not he filed a return
> because of all the affirmative acts."

Doc. 474, pg. 21 citing Trial Trans. Doc. 395, pg. 2648

Respondent cited to Section 7203 as a lessor included offense in its

First Bill of Particulars.  Doc. 104.  The Tenth Circuit explained:

> "defendants' obligation to file a return, and their crimes associated
> with their efforts to circumvent that obligation, are prescribed by
> statute...7203(proscribing the failure to file return)."

Springer, 444 Fed. Appx. at 262

Ground 33 alleged Counts 2,3 and 4, were each switched to the crime of

evasion of payment, from evasion of assessment by the Court to the Jury at

Trial.  This was an impermissible constructive amendment to crimes the Grand

Jury gave no Judicial power to adjudicate.  U.S. v. Farr, 536 F.3d 1174, 1180

(10th Cir. 2008). Petitioner's right to a Grand Jury indictment, like the

notice requirement of the Sixth Amendment, "cannot be taken away with or with-

out Court amendment."  Stirone v. U.S., 361 U.S. 212, 218(1961). Reversal is

required without a showing of prejudice.  Farr, 536 F. 3d at 1184

In Kawashima v. Holder, 132 S.Ct 1166, 1174(2.22.12) the Supreme Court

held "§ 7201 includes two offenses.   This Court had previously held § 7201

"is a single crime." U.S. v. Farr, 2006 Dist Lexis 82702(W.D.Ok.) App. 65
(also explaining "affirmative acts" must support evasion of payment). An Un-
constitutional amendment occurs when the jury instructions "so alter [the ind-
ictment] as to charge a different offense from that found by the grand jury."
Farr, 536 F.3d at 1180 citing U.S. v. Miller, 471 U.S. 130, 143(1985)

The two crimes are evasion of assessment and evasion of payment. Kawashi-
ma, 132 S.Ct at 1174 citing Sansone v. U.S., 380 U.S. 343, 354(1965)  The
grand jury's conduct alleged was Petitioner failed to file Form 1040 United
States Individual Income Tax Returns for 2000, 2003, and 2005, and committed
affirmative acts to avoid creating records of transactions and to conceal and
attempt to conceal from the IRS Petitioner's "true and correct income." Doc. 2
¶¶ 41,43,45.  Counts 3 and 4 allege Stilley aided Petitioner in concealing
Petitioner's income. Id. ¶¶ 43 and 45

Although evasion of assessment has three elements, See U.S. v. Meeks, 998
F.2d 776, 779(10th Cir. 1993) citing Sansone, 380 U.S. at 351, this Court's
instruction established not three elements, but four elements.  Trial Trans.
Doc. 397, pg. 2954, 57 and 59. App.40-42 The Court's Second element states:

> "Second, that Defendant  Springer intended to evdade and defeat the pay-
> ment of tax."

Id.  App.40 to 42

The Third element invovled the finding of an "affirmative act" which the
Court instructed:

> "affirmative act to evade and defeat the payment of taxes is a positive
> act of commission designed to mislead and conceal."

Id.   The Court defined "evade and defeat" this way:

> "to evade and defeat the payment of tax means to escape tax due other
> than by lawful avoidance."

See Doc. 474, pg. 25 citing Tr. Trans. Doc.397 See also Trial Trans. Doc. 397
pgs. 2954, 57 and 59.  App. 40 to 42

The Court explained to the Jury Section 7201:

"makes it a crime for anyone to wilfully attempt to evade and defeat the payment of Federal Taxes."

Trial Trans. Doc. 396, 2910 App. 36  Clearly the case the Court presented to the Jury was evasion of payment but the Grand Jury charged evasion of assessment. "[e]vasion of assessment, which involves efforts to shield taxable income to prevent the IRS from determining one's tax liability, and evasion of payment which concerns conduct designed to place assets out of reach to prevent the IRS from settling one's tax liabilities." U.S. v. Root, 585 F.3d 145, 151(3rd Cir. 2009).

Agent Shern stated (unsworn) that as of September 15, 2005, Petitioner possessed 9 vehicles including a bus worth several hundred thousand dollars titled in Petitioner's name and with no liens. Doc. 75-20; Doc. 100, Def. Ex. 1, pg. 13; App. 15

This Court had no Article III Judicial power over the crime of evasion of payment, and no subject matter jurisdiction pursuant to 18 U.S.C. § 3231 over the offense of evasion of payment. Petitioner claims the switch also violated both the Fifth and Sixth Amendment as explained in Farr, 536 F.3d at 1180. See also U.S. v. Ballard, 322 U.S. 78,90(1944).

Ground 33 was raised in the district court, but not resolved. Ground 33 arises within the jurisdictional exception, actual innocense exception, miscarriage of justice exception, constitutinal exception, and ineffective appellate counsel exception to the procedural bar.  The Court's instruction infected the entire trial and violates due process. Equibel, 13 F.3d at 1432 Petitioner objects to Respondent's argumentif otherwise.

(b) Ground 34

Respondent argues the issues in ground 34 were not raised in the district court, but could have been raised. Doc. 518, Attach. 19 of 53.  Ground 34 is

impacted by what is described above in ground 33.  The alleged affirmative acts alleged were directing individuals to make checks to Bondage Breaker's Ministry and using check cashing  business to cash those checks. Doc. 2, ¶¶ 45 (Count 4). See Doc. 474, pg. 39.  However, the $ 250,000 was not tendered by check or to Bondage Breaker's Ministries.

Ground 34 arises within actual innocense exception, constitutional exception, fundamental misscarriage of justice exception, and ineffective appellate counsel exception to the procedural bar.  Petitioner objects to Respondent's arugment if otherwise.

(c) Ground 42, 43, 44, and 55

Respondent argues Ground 42,43,44 and 55 were not raised but could have been raised on appeal as the sentence was not known until April 23, 2010.

Ground 42,43,44 and 55 arise within the Fifth Amendment violation exception and ineffective appellate counsel excpetion to the procedural bar. Petitioner objects to Respondent's argument if otherwise.

(d) Ground 46

Respondent argues the issues in ground 46 could have been but were not raised in the district court. Doc. 518, Attach. 27 of 53  Petitioner claims the Tenth Circuit's reliance upon 26 U.S.C. § 6091(a) and 26 CFR § 1.6091-2 (2005) dramatically and fundamentally changed the duties and obligations alleged in the district court.  The district court held the obligation to file a tax return was not required by regulations. Hear. Trans. Doc. 383, pg. 133, App. 22; See also Doc. 293, pg. 6.  Respondent argued no regulations were involved in their case in chief. Doc. 201, pg. 1-2  On appeal, Respondent convinced the Tenth Circuit:

> "Springer tries to avoid this case law by maintaining thatbecause the Form he was required to file by regulation, the PRA applies. But Springer not punished for willfully failing to file a particular agency specified form."

Doc. 474, pg. 27,

Respondent then argued 26 CFR § 1.6091-2(2005) is the requirement to file an income tax return. App. 56. The "R" in "CFR" stands for "Regulations." The Tenth Circuit applied 2005's version retroactively backwards to 1999 to 2005. Springer, 444 Fed. Appx. at 262. The district court instructed the jury regarding willfully:

> "proof of the crimes charged in the indictment must include proof beyond a reasonable doubt of an element known in law as wilfullness."

Doc. 474, pg. 19; Trial Trans. Doc. 393, pg. 1950, App. 28

Petitioner could never have intended to disobey a 2005 regulation in 1999 through 2004. "Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused. Dunn, 442 U.S. at 106; U.S. v. Bliss, 642 F.2d 390, 392(10th Cir. 1981)

After Respondent was ordered to provide the "regulations thereunder... specifically relied upon by the government as specifying events triggering an obligatin to file a return," Doc. 192, pg. 1, Respondent did not list 26 CFR § 1.6091-2 for any year. Doc. 201, pg. 2

There is no question prior to the decision in Petitioner's direct appeal, the Tenth Circuit had held the requirement to "file" was at § 6091(b). See Brewer, 486 F.2d at 509; Taylor, 828 F.2d at 634. Compare Springer, 444 Fed. Appx. at 261 finding the requirement to file at § 6091(a). No Court has ever held the requirement to file a tax return is governned by § 6091(a). "Appellate courts are not free to revise the basis on which a defendant is convicted." Dunn, 442 U.S. at 107

Grund 46 arises within the actual innocense exception, miscarriage of justice exception, constitutional violation exception, change in the law exception, and ineffective appellate counsel exception to the procedural bar. Petitioner objects to Respondent's argument if otherwise.

(e) Ground 49

52

Respondent agrees the issue in Ground 49 could not have been raised.

(f)  Ground 51

Respondent argues the issues in ground 51 were not raised in the district court but could have been raised. Doc. 518, Attach. 32 of 53  Respondent is fully aware Petitioner raised issue with the absence of internal revnue districts and office of district directors. Doc. 71, pg. 4  Petitioner claims ground 51 "was not available" due to the Tenth Circuit's holding all revenue districts and director offices were abolished by the Restructuring and Reform Act of 1998.  Springer, 444 fed. Appx. at 261.  In addition, the Tenth Circuit in U.S. v. Hoodenpyle, 461 Fed. Appx. 675, 682(10th Cir. 2012) found the IRS's origin begins at 26 CFR § 601.101 which requires revenue districts and district directors.

Grond 51 arises within the jurisdictional exception, constitutional violation exception, change in th law exception, could not have been aised exception.and ineffective appellate counsel exception to the procedural bar. Petitioner objects to Respondent'as argument if otherwise.

(g)  Ground 54

Respondent argues the issues in ground 54 could have been raised but were not. Doc. 518, Attach. 34 of 53. Petitioner agrees the error could have been raised after trial but not before.  There is no question the jury was hung. Trial Trans. Doc. 397, pg. 3059, App. 43  Petitioner agrees at the time he did not object.  When you place the additional Allen charge, along with all the other erros in instructions, the Fifth Amendment Due Process screams it has been violated.  The Prejudice if this issue is not addressed is that Petitioner would not have been convicted otherwise on grounds 1,3 and 4.

Ground  54 arises within the jury instruction exception. constitutional exception and ineffective appellate counsel exception to the procedural bar. Petitioner objects to Respondent's argument if otherwise.

trial Trial Brief arguing "the defendant intended to evade and defeat the ass-
essment and payment of that additional tax." Doc. 474, pg. 15 citing Doc. 138,
pg. 7   Then there is the role Form 1040 United States Individual Income Tax
Return played in all Six Counts criminal conduct. See Doc. 2, ¶¶ 6,14,41,43,45

At Trial the Tenth Circuit held Form 1040 divorced from all Six Counts.
Count 2,3 and 4 switched to evasion of payment. See Springer, 444 Fed. Appx.
at 261-62; see also Trial Trans. Doc. 397, pg. 2954, 57 and 59, App.40-42 Then
the Court's directed the Jury it had ruled Form 1040 did not violate the PRA.
Doc. 293, pg. 6.  Then there is the citation of § 6011 by Respondent in its
First Bill of Particulars, Doc. 104, which prohibits the Secretary from seek-
ing income tax information on anything other than a prescribed form, which on
Appeal both Respondent and the Tenth Circuit rejected. See § 6011(e).  Then
there is Respondent citing to § 6091(b) yet on appeal the Tenth Circuit changed
to § 6091(a) on where the law requires a return to be filed. Springer, 444 Fed
App. at 261.  This Court even cited to § 6091(b). App.  Both before and after
the Second Bill of Particulars, this Court rejected the theory regulations
are at issue in the obligation to file an income tax return. Compare Doc. 474,
pg. 13 citing Hear. Trans. Doc. 383, pg. 133, App. 22, with Doc. 201, and then
the Court's order, Doc. 293, pg. 6

Although the issues in grounds 57 and 58 could have been raised, and to
the extent possible, were raised, it was impossible to raise grounds 57 and 58
until after Respondent and the Tenth Circuit finished there change of the
grand jury charges and what trial theory Respondent went with on appeal. "A
Court's jurisdiction, at the beginning of trial, may be lost in the course of
the proceedings due to failure to complete the court...by providing counsel
for an accused who has not intelligently waived this Constitutional guarantee
....."  Johnson v. Zerbst, 304 U.S. 458, 467-68(1938).  Such judgment is void
and "one imprisoned may obtain release by habeas corpus." Id.

Ground 57 and 58 arise within the jurisdictional exception, constitution-al exception, actual innocense exception, miscarriage of justice exception, change in the law exception,  and ineffective appellate counsel exception to the procedural bar.  Petitioner objects to Respondent's argument if otherwise.

(i)  Ground 63

Respondent argues   the issue in ground 63 could have been raisd in the trial court,  Doc. 518, Attach 42 of 53, but was not.  The evidence of Mr. Obama's birth certificate was not made available until the 2011 election cycle.  App. _75_ .  The forensic analysis was not made until after the 2011 release by the White House of the certificate.  App. _75_

Ground 63 arises under the jurisdictional exception, newly discovered evidence exception, and ineffective appellate counsel exception, to the proc-edural bar.  Petitioner objects to Respondent's argument if otherwise.

(j)  Ground 64

Respondent argues   the issue in Ground 64 could have been raised in the district court, Doc. 518, Attach. 43 of 53, but was not.  Petitioner agr-ees it could have been raised and raises this issue now due to, and in conjun-ction with, other grounds and issues raised.  Petitioner alleges he has not received Trial on the Secretary's referral offenses, subsequent Six Counts, and based upon a Jury Trial, without Judicial fact finding. See Silker, 751 F.2d at 497("Judges don't answer questions of fact [and] juries don't answer questions of law.")

Petitioner's claims Stilley's liabilities were not referred to the grand jury which is contrary to the Court's post trial denial of a new trial. Doc. 293, pg. 7-8  The Court changed Counts 2,3 and 4, to the crime of evading pay-ment.  The Court allowed expansion of the years "2000 through 2004" to include 1990 through 2007. Sent. Hear. Doc. 401, pg. 407 , App. _44_   The Court instruc-ted the Jury Form 1040 did not violate the PRA. Trial Trans. Doc. 393, pg 1949,

App. 27 , See also Doc. 293, pg. 6  Petitioner has not received a speedy trial under these facts.

Ground 64 arises within the jurisdictional exception, actual innocense exception, miscarriage of justice exception, constitutional exception, and in-effective appellate counsel exception to the procedural bar.  Petitioner objects to Respondent's argument if otherwise.

　　　　(k) Ground 67

Respondent argues the issue in ground 67 could have been raised "during Trial" or in the "criminal prosecution" but was not.  Doc. 518, pg. 6 Petit-ioner objects.

Petitioner wsa not imprisoned for failing to pay a tax debt until April 23, 2010.  Doc. 337.  The State of Oklahoma abolished imprisonment for any kind of debt, including tax debt, for its citizens, pursuant to Article 2, § 13.  Freeman v. Heiman, 426 F.2d 1050, 1052(10th Cir. 1970).  Congress, in ex-cepting those States that abolished imprisonment for debt, 28 U.S.C. § 2007:

> "[a] person shall not be imprisoned for debt on writ of execution or
> other process issued from a Court of the United Staes in any State where-
> in imprisonment for debt has been abolished."

The Tenth Amendment provides "an explicite textual source of constitutio-nal protection" against a particular sort of government behavior. Graham v. Condor, 490 U.S. 386, 395(1989).  The Constitution recognizes each person's liberty is protected by two Governments, not one.  Alden v. Maine, 527 U.S. 706, 758 (1999).  If States reserved power then the United States has no claim to such power.  New York v. U.S., 505, U.S. 144, 156(1992). "Impermiss-ive interference with State Sovereignty is not within the enumerated powers of the National Government." Bond v. U.S. 131 S.Ct. 2355, 2359(2011)

Petitioner's entire conviction and length of imprisonment is based upon Petitioner's failure to pay a tax debt. "a conviction upon a charge of attempt to evade...payment...cannot stand in the absence of proof of a deficiency."

57

Lawn v. United States, 355 U.S. 339, 361(1958)

The Court instructed the Jury the crime was evasion of payment. App. "Section 7201 tax eavasion goes to the tax as opposed to the procedure by which the tax is assessed, in substance." Doc. 474, pg. 23, App. 39  Without proof Petitioner owed a tax debt none of the 6% Counts would stand or lead to imprisonment.  This Court used 20% pont for each year. App. 44   The governments interest is "collection of revenue."  Marchetti v. U.S., 390 U.S. 39, 57 (1968). The duty to pay taxes is dited to the duty to file a tax return. Hollywell v. Smith, 503 U.S. 47, 53(1992).  "When the offense involves 'failing to file a tax return,' the tax loss is the amount of tax the taxpayer owed and did not pya." U.S. v. Hoskins, 654 F.3d 1086, 1095(10th Cir. 2011).

The indictment clearly alleged Petitioner was a citizen of the State of Oklahoma. Doc. 2, pg. 1 Count One clearly alleged "Federal Individual Income Taxes." Doc. 2, ¶ 9.  The Ninth and Tenth Amendment, as well as 28 U.S.C. § 2007(a) prohibit Petitioner's imprisonment.

Grond 67 arises within the jurisdictional exception, actual innocense of the sentence exception, actual innocense exception, miscarriage of justice exception, constitutinal exception, and ineffective appelate cunsel exception to the procedural bar. Petitioner objects to Respondent's argument if otherwise.

(D)  Grounds 15,16,20 to 27,45,59 to 61,69 to 71,73 and 74

Respondent argues the issues in grounds 15,16,20 to 27,45,59 to 61, 69 to 71, 73 and 74, were not raised cut could have been raised. Doc. 518, pg. 6-7.

(i) Petitioner alleged in these grounds, like those in subsection (B), could not have been raised till after the Tenth Circuit's October 26, 2011 decision.

Petitioner agrees the issues raised in grounds 15,16,20 to 27,45,59 to 61, 69 to 71, 73 and 74 were not raised but alleges they could not have been raised.

(a). Grounds 15,16,20 to 27,69,70 and 71

These grounds allege:

"I was not given notice  that Form 1040 was divorced from the Six Counts offense conduct so I was misled.  In fact, I was specifically led Form 1040 was at the heart of each Count."

Grounds 15,16,20 to 27, 69,70 and 71 arise within the could not have been raised exception  and Constitutional violation exception to the procedural bar.  Petitioner objects to Respondent's argument if otherwise.

(b)  Grounds 45 and 47

These grounds allege:

"this Ground could not have been raised on appeal as it evolved from the Tenth Circuit's decision dated 10.26.11."

Grounds 45 and 47 arise within the could not have been raised exception and Constitutional Right violation exception to the procedural bar. Petitioner objects to Respondent's argument if otherwise.

(c) Grounds 59,60 and 61

These grounds allege:

"Ground [59,60,61] was unavailable as it evolved from Appellate Counsel and Court conduct during appeal."

Grounds 59,60 and 61 arise within the could not have been raised exception, Constitutional Right violation exception, and ineffective appellate counsel exception to the procedural bar.  Petitioner objects to Respondent's argument if otherwise.

(d)  Ground 73

Ground 73 alleges:

"I lacked standing to challenge § 2255 until Supreme Court denied my Certiorari.  I now have standing."

Ground 73 arises within the could not have been raised  exception and Constitutional Right violation exception to the procedural bar. Petitioner objects to Respondent's argument if otherwise.

(e)  Ground 74

Grond 74 alleges:

"Counsel raised this issue on direct appeal but the Tenth Circuit found it meritless prior to its decision in U.S. v. Hoodenpyle."

59

Ground 74 arises within the could not have been raised exception and Constitutional Right violation exception to the procedural bar. Petitioner objects to Respondent's argument if otherwise.

7.                              CONCLUSION

Petitioner respectfully requests this Court overrule Respondent's Pre-liminary Response to the extent that response is in confict with Petitioner's Application, Doc. 472, Brief in Support, Doc. 473, and Declaration and Ex-bits, Doc. 474.  Each of the issues in each Ground should not be struck or dismissed, for the reasons stated in Petitioner's Application, Brief, and Declaration, and as articulated in Petitioner's Reply made herein.

8.                     REQUEST FOR EVIDENTIARY HEARING

Petitioner requests this Court hold an evidentiary hearing prior to rul-ing on which issues in which grounds proceed with appointment of counsel.

Respectfully Submitted

Reg. # 02580-063
Federal Satellite Low-LaTuna
P.O. Box 6000
Anthony, New Mexico 88021

9.                     CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 4 , 2014, I mailed First Class to the Clerk of Court, 333 West Fourth Street, Tulsa, Oklahoma 74103, Petitioner's Reply with accompanying Appendix of Excerps and Exhibits;

I futher Certify that all parties are ECF registered users and shall re-ceive service through the ECF system:

Danny C. Williams, Sr.
Charles A. O'Reilly
Jeffrey Gallant

Server

60

10.                        DECLARATION OF MAILING

    I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1),

under the laws of the United States of America, I deposited the above Reply

and excerp of exhibits in the U.S. Mailbox located inside FSL La Tuna on

February 4 , 2014.

                                  declarant

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

Lindsey Kent Springer,

    Petitioner/Movant

v.                             Case Number 13–CV–145
                             (Formerly 09–CR–043)

United States of America,

    Respondent.


PETITIONER'S APPENDIX OF RECORD EXCERPS

VOLUME ONE

(FILED IN SUPPORT OF PETITIONER'S REPLY)


                          by: Lindsey Kent Springer
                              Reg. # 02580–063
                              Federal Satellite Low–La Tuna
                              P.O. Box 6000
                              Anthony, New Mexico 88021

-i-

TABLE OF CONTENTS

Declaration of Martin M. Shoemaker ........................... App. 1

Notification of Personnel Action regarding Thomas Scott Woodward ........ App. 3

Appointment Affidavit signed by Thomas Scott Woodward ........ App. 4

Order signed May 24, 2010 in matter of Thomas Scott Woodward ........ App. 5

Appointment Affidavit signed by Thomas Scott Woodward ........ App. 6

Title 5, United States Code, § 3345 ........................... App. 7

Title 5, United States Code, § 3348 ........................... App. 9

United States Response in 09-CR-043 dated 1/27/10 ........... App. 11

Special Agent Brian Shern's Affidavit excerp, Doc. 75-20, pg. 5 ........ App. 14

Special Agent Brian Shern's Affidavit excerp  Doc. 75-20, pg. 13 ........ App. 15

Special Agent Brian Shern's Affidavit excerp  Doc. 75-20, pg. 14 ........ App. 16

Hearing Transcript, Doc. 382, pg. 16 ........................ App. 17

                           pg, 17 ........................ App. 18

             Doc. 383, pg. 130 to 133 ..................... App. 19

             Doc. 391, pg. 1475 .......................... App. 23

                           pg. 1510 ..................... App. 24

             Doc. 392, pg. 1889 .......................... App. 25

                           pg. 1931 ..................... App. 26

             Doc. 393, pg. 1949-1950 ..................... App. 27

                           pg. 2006 to 2008 .............. App. 29

                           pg. 2022 ..................... App. 32

             Doc. 395, pg. 2458 .......................... App. 33

                           pg. 2648 ..................... App. 34

             Doc. 396  pg. 2675 .......................... App. 35

                           pg. 2910 ..................... App. 36

                           pg. 2913 ..................... App. 37

                           pg. 2929-2930 ................ App. 38

-ii-

TABLE OF CONTENTS (cont'd)

Hearing Transcript, Doc. Doc. 397, pg. 2954                          App. 40

                                      pg. 2957                          App. 41

                                      pg. 2959                          App. 42

                                      pg. 3059                          App. 43

                      Doc. 401, pg. 407–408                          App. 44

                                      pg. 426–427                          App. 46

                                      pg. 431 to 433                          App. 48

                                      pg. 448                          App. 51

                                      pg. 450                          App. 52

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,              )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )     Case No. 08-cv-0278-TCK-PJC
                                       )
LINDSEY KENT SPRINGER, et al.,         )
                                       )
          Defendants.                  )
_____)

## DECLARATION OF MARTIN M. SHOEMAKER

1. I am a trial attorney with the United States Department of Justice, Tax Division,

CTS-Central Section, with an office in Washington, D.C. I am the attorney assigned to represent

the United States in the above-captioned action.

2. Attached hereto as Exhibits A, B, and C are documents obtained from the United

States Attorney's Office for the Northern District of Oklahoma to be used in this matter.

3. Exhibit A is a copy of a "Notification of Personnel Action" form pertaining to Thomas

Scott Woodward. (Exhibit A has been redacted for privacy reasons.)

4. Exhibit B is a copy of an "Appointment Affidavit" signed on January 22, 2010, by

Thomas Scott Woodward.

5. Exhibit C consists of two pages. The first page is a copy of the "Order of

Appointment" issued by the United States District Court for the Northern District of Oklahoma

filed May 24, 2010, in which Thomas Scott Woodward is appointed United States Attorney

pursuant to 28 U.S.C. § 546(d). The second page is a copy of an "Appointment Affidavit"

signed on May 25, 2010, by Thomas Scott Woodward.

//

1

App. 1

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 17, 2014, in Washington, D.C.

*/s/ Martin M. Shoemaker*
MARTIN M. SHOEMAKER

2

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| WOODWARD, THOMAS SCOTT | - redacted - 5 | - redacted - 9 | 10/05/09 |

**FIRST ACTION** — **SECOND ACTION**

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 769 | EXT OF PROMOTION NTE  10/04/13 | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| ZLM | 28 USC 546 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | FIRST ASST U.S. ATTY |
| | 620001      P15AA1 |

| 8. Pay Plan | 9. Occ Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | AD | 0905 | 7 | .00 | | J PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Pay | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | - redacted - | .00 | redacted .00 | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | OKLAHOMA, NORTHERN |
| | DJ JA620000000000000D      PP 20 2009 |

**EMPLOYEE DATA**

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1-None     3-10 Point/Disability     5-10 Point/Other<br>2-5 Point     4-10 Point/Compensable     6-10 Point/Compensable/30% | 1     0-None     2-Conditional<br>1-Permanent     3-Indefinite | | YES  X NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| 00  BASIC | 9  NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31 Service Comp Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| 1  CS | 08/23/82 | F  FULL TIME | |

**POSITION DATA**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 2  1-Competitive Service  3-SES General<br>2-Excepted Service  4-SES Career Reserved | E  E-Exempt<br>N-Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 40-4780-143 | TULSA   TULSA   OK |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | SEX: M | CITZ: 1 | VET STAT: N | ED LV:15 YR:82 INST PRG:220101 |

45. Remarks

EMPLOYEE HAS BEEN ADVISED THAT ASSIGNMENT TO A SUPERVISORY OR SENIOR
LITIGATION COUNSEL POSITION IS TEMPORARY AND THAT ANY RIGHTS TO A
HIGHER SUPERVISORY/SENIOR LITIGATION  COUNSEL SALARY ACCRUE ONLY SO
LONG AS HE/SHE IS AN INCUMBENT OF SUCH A POSITION.

GOVERNMENT
EXHIBIT
A

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/USA | E/S BY: JEAN DUNN |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | HUMAN RESOURCES OFFICER |
| DJ JA | 4244 | 10/02/09 | |

Editions Prior to 7/91 Are Not Usable After 8/30/93
NSN 7540-01-333-6237

TURN OVER FOR IMPORTANT INFORMATION
3-Part   50-315

1 - Employee Copy - Keep for Future Reference

DJ JA6200000000000000      PP 20 1*2009*BATCH 42445812 000-00 207-08 AG/EO JA-4244

App. 3

# APPOINTMENT AFFIDAVITS

United States Attorney
*(Position to which Appointed)*

1-25-2010
*(Date Appointed)*

Department of Justice
*(Department or Agency)*

*(Bureau or Division)*

Tulsa, Oklahoma
*(Place of Employment)*

I, Thomas Scott Woodward _____, do solemnly swear (or affirm) that—

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO THE PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

*(Signature of Appointee)*

Subscribed and sworn (or affirmed) before me this 22 day of January , 2010

at Tulsa
*(City)*

Oklahoma
*(State)*

*(Signature of Officer)*

(SEAL)

Commission expires 10/11/2011
*(If by a Notary Public, the date of his/her Commission should be shown)*

Administrative Officer
*(Title)*

Note - If the appointee objects to the form of the oath on religious grounds, certain modifications may be permitted pursuant to the Religious Freedom Restoration Act. Please contact your agency's legal counsel for advice.



GOVERNMENT
EXHIBIT
B
PENGAD 800-631-6989

NSN 7540-00-634-4015

Standard Form 61
Revised August 2002
Previous editions not usable

App. 4

Case 4:09-cr-00043-SPF  Document 534 Filed in USDC ND/OK on 02/10/14  Page 81 of 176
Case 4:08-cv-00278-TCK-PJC  Document 277-1 Filed in USDC ND/OK on 01/17/14  Page 5 of 6

Case 4:10-go-00001-CVE  Document 4 Filed in USDC ND/OK on 05/24/2010  Page 1 of 1

**FILED**

MAY 24 2010

Phil Lombardi, Clerk
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

GO-10-4

| | |
|---|---|
| IN THE MATTER | ) |
| | ) |
| OF APPOINTMENT | )    <u>ORDER OF APPOINTMENT</u> |
| | ) |
| OF THOMAS SCOTT WOODWARD | ) |
| | ) |
| <u>AS UNITED STATES ATTORNEY</u> | ) |

Pursuant to Title 28, United States Code, Section 546(d), Thomas Scott Woodward is appointed as the United States Attorney for the Northern District of Oklahoma, effective May 25, 2010.

DONE AND ORDERED at Tulsa, Oklahoma, this 24th day of May, 2010.

For the Court:

_Claire V. Eagan_

The Honorable Claire V. Eagan
Chief Judge
Northern District of Oklahoma

United States District Court    } SS
Northern District of Oklahoma    }
I hereby certify that the foregoing
is a true copy of the original on file
in this court.
Phil Lombardi, Clerk
By _____ Deputy

GOVERNMENT
EXHIBIT
C

# APPOINTMENT AFFIDAVITS

United States Attorney                                May 25, 2010
*(Position to which Appointed)*                       *(Date Appointed)*


Department of Justice          U.S. Attorney's Office          Tulsa, Oklahoma
*(Department or Agency)*       *(Bureau or Division)*          *(Place of Employment)*


I, Thomas Scott Woodward _____, do solemnly swear (or affirm) that--

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic;
that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental
reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which
I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof,
and I will not so participate while an employee of the Government of the United States or any agency
thereof.

## C. AFFIDAVIT AS TO THE PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration
for or in expectation or hope of receiving assistance in securing this appointment.

*(Signature of Appointee)*


Subscribed and sworn (or affirmed) before me this 25th day of May _____, 2010

at Tulsa _____        Oklahoma _____
*(City)*                              *(State)*

*(Signature of Officer)*

(SEAL)

Commission expires: 10/11/11                Director of Administration
*(If by a Notary Public, the date of his/her Commission should be shown)*        *(Title)*

Note - If the appointee objects to the form of the oath on religious grounds, certain modifications may be permitted pursuant to the
Religious Freedom Restoration Act. Please contact your agency's legal counsel for advice.

U.S. Office of Personnel Management                          Standard Form 61
The Guide to Processing Personnel Actions                    Revised August 2002
                                NSN 7540-00-634-4015         Previous editions not usable

App. 6

§ 3345.        Acting officer

(a) If an officer of an Executive agency (including the Executive Office of the President, and other than the General Accounting Office [Government Accountability Office]) **whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate**, dies, resigns, or is otherwise unable to perform the functions and duties of the office--

(1) the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346 [5 USCS § 3346];

(2) notwithstanding paragraph (1), the President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346 [5 USCS § 3346]; or

(3) notwithstanding paragraph (1), the President (and only the President) may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity, subject to the time limitations of section 3346 [5 USCS § 3346], if--

(A) during the 365-day period preceding the date of death, resignation, or beginning of inability to serve of the applicable officer, the officer or employee served in a position in such agency for not less than 90 days; and

(B) the rate of pay for the position described under subparagraph (A) is equal to or greater than the minimum rate of pay payable for a position at GS-15 of the General Schedule.

(b) (1) Notwithstanding subsection (a)(1), a person may not serve as an acting officer for an office under this section, if--

(A) during the 365-day period preceding the date of the death, resignation, or beginning of inability to serve, such person--

(i) did not serve in the position of first assistant to the office of such officer; or

(ii) served in the position of first assistant to the office of such officer for less than 90 days; and

(B) the President submits a nomination of such person to the Senate for appointment to such office.

(2) Paragraph (1) shall not apply to any person if--

(A) such person is serving as the first assistant to the office of an officer described under subsection (a);

(B) the office of such first assistant is an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate; and

(C) the Senate has approved the appointment of such person to such office.

USCS                                                  **1**

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

App. 7

02580063

(c) (1) Notwithstanding subsection (a)(1), the President (and only the President) may direct an officer who is nominated by the President for reappointment for an additional term to the same office in an Executive department without a break in service, to continue to serve in that office subject to the time limitations in section 3346 [5 USCS § 3346], until such time as the Senate has acted to confirm or reject the nomination, notwithstanding adjournment sine die.

(2) For purposes of this section and sections 3346, 3347, 3348, 3349, 3349a, and 3349d [5 USCS §§ 3346, 3347, 3348, 3349, 3349a, and 3349d ], the expiration of a term of office is an inability to perform the functions and duties of such office.

(Added Oct. 21, 1998, P. L. 105-277, Div C, Title I, § 151(b), 112 Stat. 2681-611.)

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

App. 8

02580063

§ 3348.        Vacant office

(a) In this section--

    (1) the term "action" includes any agency action as defined under section 551(13) [5 USCS § 551(13)]; and

    (2) the term "function or duty" means any function or duty of the applicable office that--

        (A) (i) is established by statute; and

            (ii) is required by statute to be performed by the applicable officer (and only that officer); or

        (B) (i) (I) is established by regulation; and

            (II) is required by such regulation to be performed by the applicable officer (and only that officer); and

            (ii) includes a function or duty to which clause (i) (I) and (II) applies, and the applicable regulation is in effect at any time during the 180-day period preceding the date on which the vacancy occurs.

(b) Unless an officer or employee is performing the functions and duties in accordance with sections 3345, 3346, and 3347 [5 USCS §§ 3345, 3346, and 3347], if an officer of an Executive agency (including the Executive Office of the President, and other than the General Accounting Office [Government Accountability Office]) whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office--

    (1) the office shall remain vacant; and

    (2) in the case of an office other than the office of the head of an Executive agency (including the Executive Office of the President, and other than the General Accounting Office [Government Accountability Office]), only the head of such Executive agency may perform any function or duty of such office.

(c) If the last day of any 210-day period under section 3346 [5 USCS § 3346] is a day on which the Senate is not in session, the second day the Senate is next in session and receiving nominations shall be deemed to be the last day of such period.

(d) (1) **An action taken by any person who is not acting under section 3345, 3346, or 3347** [5 USCS § 3345, 3346, or 3347], **or as provided by subsection (b), in the performance of any function or duty of a vacant office to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c** [5 USCS §§ 3346, 3347, 3349, 3349a, 3349b, and 3349c ] **apply shall have no force or effect**.

    (2) An action that has no force or effect under paragraph (1) may not be ratified.

(e) This section shall not apply to--

USCS                                       **1**

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

02580063

(1) the General Counsel of the National Labor Relations Board;

(2) the General Counsel of the Federal Labor Relations Authority;

(3) any Inspector General appointed by the President, by and with the advice and consent of the Senate;

(4) any Chief Financial Officer appointed by the President, by and with the advice and consent of the Senate; or

(5) an office of an Executive agency (including the Executive Office of the President, and other than the General Accounting Office [Government Accountability Office]) if a statutory provision expressly prohibits the head of the Executive agency from performing the functions and duties of such office.

(Added Oct. 21, 1998, P. L. 105-277, Div C, Title I, § 151(b), 112 Stat. 2681-613.)

USCS                                    **2**

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

App. 10

02580063

EXHIBIT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.    09-CR-043-SPF |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANT SPRINGER'S MOTIONS TO DISMISS (DOCS. 280, 282 AND 284) AND MOTION TO STRIKE DOC. 276 AND 277 (DOC. 285)

nited States of America, by and through its attorneys, Thomas Scott Woodward,

United States Attorney for the Northern District of Oklahoma[1] and Kenneth P. Snoke,

Assistant United States Attorney, and Charles A. O'Reilly, Special Assistant United States

Attorney, hereby responds in opposition to Defendant Springer's following filings:

- Motion to Dismiss Count One for Lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Venue (Doc. 280);

- Motion to Dismiss Counts Two, Three, Four, Five and Six for Lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Venue (Doc. 282);

- Motion to Dismiss Indictment for (1) Lack of Article III Standing of United States of America, (2) Lack of Article III Case or Controversy, (3) For Violation of Title 28, United States Code Section 547, Lacking of Subject Matter Jurisdiction (Doc. 284); and

---

[1]On January 21, 2010, Thomas Scott Woodward was sworn in as the Attorney General's appointed United States Attorney for the Northern District of Oklahoma.

ADDENDUM PAGE

App.  11

EXHIBIT _____

— Motion to Strike Doc. 276 and 277 (Doc. 285).

In these four motions, Defendant asserts many of the same frivolous arguments made in previous filings, including in Defendant's First Motion to Dismiss Grand Jury Indictment for Lack of Venue and supporting memorandum of law (Docs. 51 and 52), and in Defendant's Reply Regarding Opposition to Springer's Motion to Dismiss (Doc. 81). These arguments, previously rejected by the Court, include that the abolishment of the Internal Revenue districts prevented the United States from prosecuting him pursuant to Title 26, United States Code Sections 7201 and 7203. The Government has responded to Defendant's previous assertions, including in Docs. 42, 71, 80, 93, 276 and 277. The Court denied Defendant's motion to dismiss (Doc. 51) on July 1, 2009. Doc. 100. While a defendant may raise jurisdiction at any point while the case is "pending," Defendant has raised these arguments previously, and this Court has appropriately rejected them.

Defendant does raise what the United States believes may be new assertions, but these new assertions are frivolous to the point of absurdity. These arguments include that Thomas Scott Woodward "is not authorized to act as a United States Attorney" (Doc. 285 at 1-2), that the United States lacks standing to bring criminal charges pursuant to Title 26 (Doc. 284 at 2), that "[t]here are no United States Attorney Offices established by law that could qualify to be exercised outside of the District of Columbia" (Doc. 284 at 8-9), etc.

Further, to the extent Defendant's arguments go to jurisdiction as opposed to venue for this prosecution, Defendant's pending motions seeking a new trial (Doc. 262) and

2

ADDENDUM _____

EXHIBIT

challenging the jurisdiction of this Court (Docs. 271 and 272) also raise many of these issues,

to which the United States has already responded.

Defendant's motions (Docs. 280, 282, 284 and 285), together with their supporting

briefs, (Docs. 281 and 283), largely rehash frivolous arguments that Defendant has previously

made.  The United States previously addressed these assertions in Docs. 42, 71, 80, 93, 276

and 277.  However, the United States stands ready to file supplemental responses should the

Court determine that such responses would be of assistance to the Court.

Respectfully submitted,

THOMAS SCOTT WOODWARD
UNITED STATES ATTORNEY

*/s/ Kenneth P. Snoke*
KENNETH P. SNOKE, OBA NO. 8437
Assistant United States Attorney
CHARLES A. O'REILLY, CBA NO. 160980
Special Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma  74119
(918) 382-2700

3

ADDENDUM PAGE

not have made charitable donations to SPRINGER because he did not

believe that SPRINGER had any kind of religious ministry.  Your affiant

reviewed various records including checks and correspondence from

previous civil IRS audits and criminal investigations showing that

SPRINGER'S ministry is called BONDAGE BREAKERS MINISTRY (BBM).

It is not known if BBM actually functions as a ministry.  Based on a search

of charitable organizations listed with the Oklahoma Secretary of State and

the IRS, BBM is not registered as a charitable organization either with the

State of Oklahoma, or with the IRS.  PATTERSON identified three $10,000

checks written to SPRINGER dated 8/25/00, 9/25/00, and 11/9/00, numbers

3868, 3889, and 3943 drawn from his account number 4008822 at Citizens

Bank of Tulsa.  These records were obtained pursuant to a grand jury

subpoena issued during the investigation of PATTERSON.  PATTERSON

said these were part of the $45,000 paid to SPRINGER, and that he

thought there was another check written to SPRINGER earlier than August

2000 that investigators did not have at the interview.


4.  On or around the Spring of 2003, PATTERSON endorsed a $112,500

check payable to him for the sale of ECC Energy Stock over to STILLEY for

legal fees.  PATTERSON said that he gave STILLEY permission to pay

SPRINGER $15,000 for services rendered by SPRINGER for

PATTERSON'S criminal case.  Your affiant reviewed billing records

provided by PATTERSON that were given to PATTERSON from STILLEY

App. 14

5

:09-cr-00043-SPF Document 534 Filed in USDC ND/OK on 02/10/14 Page 91

Oklahoma Tax Commission listing vehicles registered in SPRINGER'S

name with the State of Oklahoma. Below is a chart that shows the vehicles

registered to SPRINGER, the date registered, and the purchase price of

each vehicle. None of the vehicles below have an associated lien on file

with the State of Oklahoma.

| Registration Date | Year, Make and Model | Purchase Price |
|---|---|---|
| 09/10/04 | 2004 Lexus R33 | $47,000.00 |
| 11/10/04 | 1994 Ford F-150 | $5,195.00 |
| 12/18/04 | 2004 Ford F-350 | $38,500.00 |
| 12/31/04 | 1999 Mercedes G500 | $40,000.00 |
| 02/20/05 | 1994 Mercedes G300 | $34,000.00 |
| 04/13/05 | 2003 Chevrolet Corvette | $38,000.00 |
| 04/20/05 | 2004 Dodge SQ2 | $32,500.00 |
| 06/09/05 | 1985 Chevrolet C20 | $1,800.00 |
| 06/09/05 | 1955 GMC SK | N/A |

17. SPRINGER has not filed a federal income tax return since before 1990.

STILLEY has not filed a federal income tax return since before 1990. The

IRS Collection Division filed substitute returns for SPRINGER for the years

1990 through 1995. No returns have been filed on behalf of SPRINGER

since 1995. The amount of tax assessed by the Collection Division for each

year a substitute return was filed, including penalties and interest assessed

in 1996, is shown below. SPRINGER has not made any payments toward

this outstanding balance.

App. 15

| Year | Tax Assessed |
|---|---|
| 1990 | $34,017.00 |
| 1991 | $28,980.87 |
| 1992 | $27,263.95 |
| 1993 | $125,835.51 |
| 1994 | $40,231.87 |
| 1995 | $38,346.97 |
| 1996 | $6,422.79 |
| Total | $301,098.96 |

18. Your affiant reviewed information from an IRS-CI investigation conducted on SPRINGER during 1998. The information included memorandums of interview, transcripts of conversations, and discussions with other Special Agents. The information shows SPRINGER conducted numerous meetings where he discussed legal topics on taxation and promoted views against income taxation and the U.S. Government's interpretation of tax laws. Your affiant has also reviewed books that SPRINGER has compiled containing constitutional amendments, sections of Title 26 and Title 31 of the United States Code, IRS policies and procedures, and past legal cases dealing with tax issues.

19. Dan Elliott, a Special Agent with IRS-CI in Little Rock, Arkansas told your affiant that he conducted two criminal tax investigations in the Eastern District of Oklahoma that involved SPRINGER. Both investigations resulted in convictions. The subject of one of the investigations was HAROLD BOOS, a chiropractor in Muskogee, Oklahoma that evaded his taxes. SPRINGER testified in BOOS' trial in 1998 as a witness for the defense.

App. 16

14

1  That I will give you as a good, solid general rule.  As

2  to how that works as a practical matter at the front door

3  of the courthouse, I'm not going to get involved in

4  unless there is some specific issue raised at a later

5  date.  Any other questions, Mr. Springer?

6            MR. SPRINGER:  No other questions, Your Honor.

7            THE COURT:  Do both of you believe you

8  understand the nature of the charges against you?  Now,

9  mind you, I understand you're challenging those charges,

10  you have filed motions for Bill of Particulars, but so

11  far as can be ascertained from the indictment, as

12  returned, Mr. Springer, do you believe that you

13  understand the general nature of the charges against you?

14            MR. SPRINGER:  Your Honor, honestly, you know,

15  no, I don't understand them.  They're very confusing to

16  me.  I can give you what I do understand and you can see

17  if that answers your question.  I understand there's a

18  conspiracy charged in Count 1 under 18 USC 371, the

19  defraud prong.  I understand that there are three charges

20  of tax evasion under 26 USC 7201.  I do not understand

21  whether it's evasion of assessment, evasion of payment,

22  or how one could go for nine years.  And then, again, the

23  other question is on the two willful failure to files.

24            THE COURT:  Willful failure to file.

25            MR. SPRINGER:  Willful failure to files, right,

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 17

1   which is 7203.  I think of all the charges I understand

2   those more than the rest, but I have certain questions

3   that I don't understand.  Like, for instance, I don't

4   understand where they claim the crimes were committed.

5   And I've asked them point-blank, I've said, in the

6   willful failure to files, you allege I did it in Austin,

7   Texas; Tulsa, Oklahoma; or Washington, DC; how could I

8   commit a crime in those places?  That's my nature of not

9   understanding.

10          THE COURT:  Okay.  I understand your point.

11   We'll address that when we address the motions for Bill

12   of Particulars.  I think your recitation, at least for

13   immediate purposes, satisfies me that you do at least

14   understand, subject to the limitations you have

15   described, the general nature of the charges against you.

16       Mr. Stilley, subject to those matters that perhaps

17   that you seek in your motion for Bill of Particulars in

18   which you have, on one hand, joined in Mr. Springer's

19   motion and, on the other hand, also added a few items

20   yourself, do you believe that you understand at least the

21   general nature of the charges against you?

22          MR. STILLEY:  Your Honor, I would have to say,

23   and I'm sure that the Court noted that I had a bit of

24   hesitation when you asked the question concerning

25   assistance of counsel, I cannot understand an indictment

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 18

1           THE COURT:  I don't want a list this long.

2           MR. O'REILLY:  Actually, Your Honor, it won't

3   be --

4           THE COURT:  Okay.  Okay.  Very well.  I have

5   carefully considered the other motions that are pending,

6   and I'm not sure that this is going to be taking them in

7   the exact order in which they were docketed.  That's

8   obviously neither here nor there.  But I do have the

9   benefit, of course, of the motions, of the papers filed

10  in support of the motions, the government's response, the

11  defendant's reply, and as to some issues the government's

12  sur-replies.

13      Addressing first Mr. Springer's first motion to

14  dismiss at Docket Entry Number 51 joined in by

15  Mr. Stilley at Docket Entry Number 69, it is my

16  conclusion that venue is properly laid in this district

17  and that the motions will be denied.

18      The defendants have cited Title 26, Section 6091,

19  which governs where income tax returns may be filed and

20  which refers to filing "in the internal revenue district

21  in which is located the legal residence of the person

22  making the return."  Now, I've left out some words, but

23  the words I have said there are the relevant ones.

24  That's 26 United States Code, Section 6091(b)(1)(A)(i).

25      Because the internal revenue districts have been

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 19

131

1  abolished, the defendants argue that there is no such

2  place as the internal revenue district in which the

3  defendants' legal residence is located.  For that reason,

4  the defendants go on to say that they cannot be

5  prosecuted for these asserted violations because the

6  districts have been abolished and venue is not proper

7  anywhere.

8       Venue, however, is appropriate in each district in

9  which a federal criminal offense is committed.  That is

10  established by 18 United States Code, Section 3237(a).

11  In particular, venue in a conspiracy case is appropriate

12  in any judicial district where the agreement was made or

13  where an overt act in furtherance of the conspiracy was

14  committed.  That much is made clear by our circuit's

15  decision in United States v. Record, 873 F.2d 1363, at

16  page 1366.

17       Now, venue for a tax evasion charge is in any

18  district in which an affirmative act of evasion occurred

19  such as where the return was prepared, signed, mailed, or

20  filed.  Which is established by a decision which is

21  persuasive to me by the Eighth Circuit in United States

22  v. Marchant, 774 F.2d 888, at page 891.

23       Also relevant is a decision from the Ninth Circuit,

24  United States v. Hicks, 947 F.2d 1356, at page 1361, in

25  which the motion to dismiss was held correctly denied by

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 20

1  the district court.  And I quote, "Failure to file a tax

2  return is an offense either at the defendant's place of

3  residence or at the collection point where the return

4  should have been filed."

5      Now, leaving out some citations, the Court went on

6  to say that the defendant's "place of residence is

7  Arizona and the collection point for his returns was the

8  IRS center in Utah.  Thus, Hicks' offenses could be

9  deemed to have occurred either in Arizona or Utah."

10     Venue is proper for the crimes charged in the

11 Northern District, in this case, the place of residence

12 and the place where overt acts of conspiracy to evade

13 taxes is charged to have occurred and the place where

14 affirmative acts of evasion are charged to have

15 occurred.  For those reasons, the motions will be denied.

16     I will next take up Mr. Springer's second motion to

17 dismiss, Docket Entry Number 53, joined in by Mr. Stilley

18 at Docket Entry Number 69.  The question presented by

19 this motion is whether the prosecution should be

20 dismissed because the defendants contend that the tax

21 reporting forms and publications in question did not

22 comply with the Paperwork Reduction Act, 44 United States

23 Code, Section 3501.  My conclusion is that the Paperwork

24 Reduction Act does not provide a defense to the crimes

25 charged, for which reason the motions will be denied.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 21

1          Now, Mr. Springer is very, very familiar with the

2     Paperwork Reduction Act.  As a matter of fact, I will go

3     so far as to say that is a law on which he may well be

4     more knowledgeable than anyone else in the courtroom.   In

5     a civil action that he filed in the Northern District

6     reported at 447 F.Supp.2d 1235, Mr. Springer previously

7     argued, as he does here, that he cannot be penalized for

8     having failed to file income tax returns because the

9     Paperwork Reduction Act states that "No person shall be

10    subject to any penalty for failing to comply with a

11    collection of information if the collection of

12    information does not display a valid control number."

13    And that, of course, is a reference to 44 USC Section

14    3512(a)(1).

15         Now, in that case, Judge Eagan quoted a Tenth

16    Circuit decision, Unites States v. Dawes, 951 F.2d 1189,

17    and the passage that's relevant is at pages 1191 and 1192

18    as follows:  "It is settled law that the requirement to

19    file a tax return is mandated by statute, not by

20    regulation" and that explicit statutory requirements such

21    as those involving the filing of income tax returns "are

22    not subject to the Paperwork Reduction Act."  That is

23    from a case involving none other than Lindsey Springer,

24    447 F.Supp.2d at page 1238.

25         Judge Eagan further said, "The PRA, Paperwork

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 22

PATRICK TURNER - DIRECT BY MR. O'REILLY                              1475

1   Q.   What has Mr. Stilley said?

2   A.   That Lindsey goes through a lot of money.  That was

3   actually prior -- that was prior to me actually meeting

4   Mr. Springer.  That was back in 2003.

5   Q.   Oh.  You said Mr. Springer has made some payments on

6   the loan?

7   A.   Yes.

8   Q.   What do those payments represent?

9   A.   Repayment of the loan.

10  Q.   Aren't they simply to cover the interest that you've

11  been paying on the loan?

12  A.   They're of the same amount that I pay monthly, yes.

13  Q.   So with respect to the principal, has Mr. Springer

14  paid back any of the loan?

15  A.   In one manner of speaking, yes.  That's a -- as you

16  may know, is an accounting issue.  I leave that to my

17  accountant.

18  Q.   How much, as you sit here today, do you understand

19  Mr. Springer still owes you on this loan?

20  A.   $250,000.

21  Q.   So in other words, he's paid nothing of the

22  principal on that loan?

23  A.   With -- there is interest accruing at this point,

24  yes.

25  Q.   So, in fact, now he's not making any payments?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App.  23

1  that's something you will need to cover in your case.

2  The government did not march this witness through the

3  Paperwork Reduction Act, and we're not going to go there

4  until your case.

5          MR. SPRINGER:  And just for the record -- never

6  mind.

7          THE COURT:  Very well.

8      (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN COURT,

9  WITH ALL PARTIES AND COUNSEL PRESENT, AND WITHIN THE

10  PRESENCE AND HEARING OF THE JURY.)

11          THE COURT:  Members of the jury, I'm going to

12  see if we can get a little closer to 3:00 before we take

13  our mid-afternoon break, but, of course, if anyone needs

14  a break, why, we'll certainly take one.  You may proceed

15  Mr. Springer.

16  Q.   (BY MR. SPRINGER)  Now, Mr. Turner, there were

17  discussions between you and Mr. O'Reilly regarding

18  payments that I was making to you?

19  A.   Correct.

20  Q.   And those were $1,400 payments?

21  A.   Yes.

22  Q.   And isn't it true that the reason why those payments

23  began because we both could see that the one year of the

24  loan agreement was coming to a conclusion and that, based

25  upon the current situation of the investigation of

LINDSEY SPRINGER - PROFFER BY MR. SPRINGER                    1931

1   even arguable or analogous relationship to the

2   transactions involved in this case.  I'll have to think

3   about that.  And it may -- I'm just going to have to

4   think about that.

5        But beyond that, bearing in mind that the issue is

6   whether you have a basis for a good-faith belief that the

7   Form 1040 violated the Paperwork Reduction Act, I'll tell

8   you, you would be in trouble if it was up to me, but it's

9   not up to me, it's up to those 12 good people.  And I'm

10  going to let you tell your story.

11       We're not going have all these -- for the reasons

12  discussed by the cases that I -- that I referred to at

13  some length last night, we're not going to have legal

14  materials, as such.

15       Now, I'll reserve judgment as to whether Forms 1040

16  from the relevant years are or are not admissible.  I'm

17  not going to decide that tonight.  But one thing I will

18  tell you, for the reasons covered by the Courts in the

19  cases that I referred to after we were finished for the

20  day with the jury yesterday, is that we're not going to

21  have in evidence extraneous legal materials, cases and so

22  forth.

23       To the extent that you are permitted to cover this,

24  and as I have said, you will be permitted within the

25  outer bounds of reason to cover this, your reference to

1  factors to be considered as articulated in that passage

2  are quite well satisfied here.

3      Now, assuming that the defendants or at least

4  Defendant Springer's case unfolds as we discussed last

5  night, I intend to give the jury what might properly be

6  called a clarifying instruction.  I suppose, in our

7  language, it is typically called a limiting instruction.

8  It's partly limiting and partly clarifying.  And I'm

9  going to read it to you.  I only have the copy that I

10 typed out.  I'm going to read it to you and give all

11 concerned an opportunity to be heard on it.

12     The premise for it is -- and there's no need for

13 further argument on this premise.  The premise is that

14 the Form 1040 did not violate the Paperwork Reduction

15 Act.

16     So the instruction will read as follows:  "Members

17 of the jury, the Court has ruled that the Form 1040 did

18 not and does not violate the Paperwork Reduction Act.

19 However, I am going to permit testimony with respect to

20 the defendants' assertions as to his understanding of the

21 Paperwork Reduction Act to be introduced for a limited

22 purpose on one issue and that is the issue of

23 willfulness.  Proof of the crimes charged in the

24 indictment must include proof beyond a reasonable doubt

25 of an element known in law as willfulness, as will be

```
 1   explained in my final instructions to you.  I will admit
 2   evidence as to the defendants' understanding of the
 3   Paperwork Reduction Act at the times relevant to the
 4   indictment for your consideration with respect to the
 5   issue of willfulness."  And that's the sum and substance
 6   of it.
 7       What does the government have to say about that
 8   limiting instruction?
 9            MR. O'REILLY:  Your Honor, just having listened
10   to it, it sounds fine.  No opposition at this time.
11            THE COURT:  Mr. Springer.
12            MR. SPRINGER:  With all due respect, I will be
13   making an objection to the form of the instruction for
14   the purposes of the record.  That overall I object to the
15   first sentence.  However, I understand where the Court is
16   coming from.  And over that objection, I have no problem
17   with that instruction, Your Honor.
18            THE COURT:  Mr. Stilley.
19            MR. STILLEY:  Your Honor, I would join in
20   Mr. Springer's comments, but I would also say that on the
21   basis of the proceedings here it seems to me that we
22   haven't sufficiently explored the Paperwork Reduction Act
23   so that we could actually make a ruling on it.  And so
24   that -- but in saying that, I'm joining Mr. Springer in
25   suggesting that we just take out the language that says
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 28

BRIAN MILLER - DIRECT BY MR. SNOKE                                   2006

1   A.   Okay.

2   Q.   Tell me what that is, sir.

3   A.   Yes.  This is the same forms we've been discussing,

4   except the only difference is that this year is for the

5   year 2005 showing Mr. Springer's gross income for that

6   year based on the exhibits and the testimony.

7   Q.   All right.

8            MR. SNOKE:  We would move into evidence

9   Government's Exhibit 681.

10           MR. SPRINGER:  Same objection, Your Honor.

11           THE COURT:  With that understanding, it is

12  received.

13  Q.   (BY MR. SNOKE)  Can you walk us through the entries

14  in this exhibit, sir?

15  A.   For the year 2005, based on the testimony of the

16  Turners and the other witnesses, we determined that the

17  gross income for 2005 was $265,500.

18  Q.   Now, this chart indicates that you included in there

19  the two payments that we just alluded to in the previous

20  flow charts of $192,058 totaling $250,000 in August of

21  2005 that went from Oscar Stilley's IOLTA account to

22  Lindsey Springer; is that correct?

23  A.   Yes.

24  Q.   Or, actually, he received them in those amounts into

25  his IOLTA account.  They actually went out in checks to

```
 1  buy other items.
 2  A.    That's right.
 3  Q.    And those were received from Patrick Turner -- I
 4  guess his wife may have actually signed the check; is
 5  that correct?
 6  A.    Yes.
 7  Q.    Can you tell the --
 8          THE COURT:  Now, this is the substituted 681?
 9  Because I've got a 681 that has no resemblance to the one
10  that's up now.
11          MR. SNOKE:  Yes.  I'm sorry.  You do not have
12  the --
13          THE COURT:  So this is the substituted 681?
14          MR. SNOKE:  Yes.
15          THE COURT:  Okay.  Now, are you going to
16  renumber the original 681?
17          MR. SNOKE:  Yes.  The one in your right hand
18  marked "draft" has been done away with.
19          THE COURT:  Okay.  Okay.  Very well.  Proceed.
20          MR. SNOKE:  I'm sorry.
21  Q.    (BY MR. SNOKE)  Now, this chart includes this
22  $250,000 payment from Mr. Turner in your chart as income
23  that year; is that correct?
24  A.    Yes, it does.
25          MR. SPRINGER:  Your Honor, objection.  He said
```

```
 1   payment to Mr. Turner.
 2          MR. SNOKE:  I'm sorry.  From Mr. Turner.  I
 3   misspoke.
 4   Q.  (BY MR. SNOKE)  It includes that as income in this
 5   year, is that right, 2005?
 6   A.  Yes.  The $250,000 that was paid by the Turners to
 7   the IOLTA account of Mr. Stilley and then transferred to
 8   Mr. Springer, that was included on this exhibit as income
 9   to Mr. Springer.
10   Q.  All right.  And can you tell us why you included
11   that as income?
12   A.  Initially, I felt like it might have been a loan,
13   based on the testimony of Mr. Turner, but then I heard
14   the testimony of other witnesses, saw some other
15   exhibits, that led me to believe in all likelihood the
16   $250,000 would never be repaid by Mr. Springer and that
17   Mr. Springer felt he had complete control over that money
18   for his own uses and would therefore be treated as income
19   to him.
20   Q.  All right.  Did that include the testimony of
21   Mr. Turner that he had originally sought to shield that
22   money from the IRS seizing it?
23   A.   Yes.  Mr. Turner indicated in his testimony that he
24   transferred that money to the IOLTA account so that they
25   would simply hold those funds for him to protect those
```

BRIAN MILLER - CROSS BY MR. SPRINGER                    2022

```
 1  But, clearly, there was a filing requirement in that
 2  year.
 3  Q.  All right.  And for the year 2004?
 4  A.  For the year 2004, the filing threshold, and for
 5  2005, for that matter, increased substantially and that
 6  was due to the fact that he was married in those two
 7  years.  But the filing threshold in '04 was 15,000 or
 8  15,900, I can't see it very well.  But the gross income
 9  was over 93,000, certainly requiring the filing of a
10  return.
11          And then in 2005, 16,400 is the threshold.  Gross
12  income, 265,000.  Again, a return certainly required to
13  be filed.
14  Q.  All right.  It looks like it changed quite a bit
15  there in 2004 and 2005.  Was there something that
16  triggered that or just the Congress formula?
17  A.  No, the fact that he was married caused the
18  exemption amount, the standard deduction amounts to go up
19  so that the filing threshold is larger based on that.
20          MR. SNOKE:  I don't believe I have any other
21  questions of the witness at this time.
22          THE COURT:  Cross-examination.
23                       CROSS-EXAMINATION
24  BY MR. SPRINGER:
25  Q.  Mr. Miller.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 32

1   if any, that are in fact received in evidence on the

2   basis of the lengthy discussions that we had earlier in

3   the trial on those issues.

4        MR. SPRINGER:  For the purpose of the record,

5   how would the Court like me to preserve that?  Outside

6   the presence of the jury or as each document I try to

7   bring in?  Because I don't want to sit there and go back

8   and forth, you know.

9        THE COURT:  Preserve what?

10       MR. SPRINGER:  Like, if I want to move into

11   exhibits the Court is suggesting more than likely would

12   not come in as exhibits, I still would like to make the

13   record for the Court of Appeals that I attempted to get

14   those documents into the record.

15       THE COURT:  That's a matter of the practice of

16   law that you'll just have to rely on yourself or your

17   standby counsel.

18       MR. SPRINGER:  I'll just -- point of order, Your

19   Honor.

20       THE COURT:  Very well.

21       MR. O'REILLY:  I also understood Mr. Springer

22   wanted to introduce the Forms 1040 from his direct.  If

23   Mr. Springer lays a foundation that makes those

24   admissible we want the instruction books as well from

25   years 2000 to 2005.

```
 1            MR. SPRINGER:  Of Count -- yes, Your Honor --
 2   Counts 2, 3, 4, 5, and 6, each one of those charges has
 3   an element -- an alleged claim that I failed to file or
 4   willfully failed to file a U.S. individual income tax
 5   form.  And Mr. O'Reilly gave this Court a bill of
 6   particulars that cited to Section 6151 that said the only
 7   way you would be required to pay is if you were required
 8   to file the return.  And so it's on that basis that I
 9   relied upon the 2006 events that I was just now
10   testifying.
11            THE COURT:  Mr. O'Reilly.
12            MR. O'REILLY:  Actually, sir, if Mr. Springer is
13   going to testify that he didn't file for 2005 because of
14   this act, he can testify to that.  Though, I don't think
15   -- I think any changes made on that date would have
16   applied to later years, not to the year 2005 returns.
17   But I can't testify -- I don't know that right now.
18            THE COURT:  Okay.
19            MR. O'REILLY:  But, Your Honor, also, the
20   evasion counts are independent of whether or not he filed
21   a return because of all the affirmative acts.  Really,
22   we're talking about, for the PRA defense, to the extent
23   that there is, is for the failure-to-file counts which
24   are before that.
25            THE COURT:  Well, I'm going to overrule the
```

```
 1   other materials, if there is some exceptional reason not

 2   now apparent shown for receiving other similar materials.

 3        MR. SPRINGER:  Your Honor, I also intend on

 4   moving into the record Exhibit Number 204, which was the

 5   General Accountability Office report from 2005 that I did

 6   read from during my direct testimony.  And I didn't want

 7   to go back over and sit down and then say I move that

 8   into the record too and have to come back over again.

 9   That's why I'm bringing it up.

10        THE COURT:  What says the government to that?

11        MR. O'REILLY:  We object to that, Your Honor.

12        THE COURT:  The objection will be sustained for

13   all the reasons we've discussed.  I won't receive that.

14   And in terms of any mass offer of these materials, let's

15   do that during a recess rather than taking up the jury's

16   time.

17        MR. SPRINGER:  So anything I want to move just

18   wait till the recess?

19        MR. O'REILLY:  Your Honor, with respect to the

20   materials, the information books and returns for the

21   years 2000 to 2005, we're not going to oppose the

22   introduction of those, they're voluminous, but at least

23   they do fall within the scope of the conspiracy, although

24   Mr. Springer certainly didn't file any of the forms in

25   issue.
```

Tracy Washbourne, RDR, CRR
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 35

```
 1          THE COURT:  Very well.  You've heard me read
 2   those paragraphs one time already and they are there for
 3   you to see on pages 35, 36, and down to the middle of 37
 4   of the instructions and you should regard those as having
 5   been re-read by me.  But with the courtesy of counsel and
 6   the parties, I will not read them again.
 7          Finally, you are instructed that in addition to the
 8   elements described in this instruction, proof of proper
 9   venue is also required before you may find a defendant
10   guilty of the crime charged in Count 1.  I will instruct
11   you later regarding proof of venue.
12          Next, I will instruct you regarding Counts 2 through
13   4 of the indictment.  Counts 2, 3, and 4 charge a
14   violation of Section 7201 of Title 26 of the United
15   States Code.  Section 7201 provides in pertinent part
16   that "any person who willfully attempts in any manner to
17   evade or defeat any tax imposed by this title or the
18   payment thereof" shall be guilty of an offense against
19   the United States.
20          Defendant Springer is charged in Count 2 with a
21   violation of this law, Title 26 of the United States
22   Code, Section 7201.  This law makes it a crime for anyone
23   to willfully attempt to evade or defeat the payment of
24   federal income tax.  The indictment charges that from on
25   or about January 1, 2000, and continuing to on or about
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 36

1  elements described in this instruction proof of proper

2  venue is also required before you may find the defendant

3  guilty of the crime charged in Count 2.  I will instruct

4  you later regarding proof of venue.

5      Counts 2 and 3, nature of the offense.  And for the

6  benefit of the jury, since it's five o'clock, I'm going

7  to go through page 44 and then we'll recess overnight.

8  It won't take terribly long to finish this in the

9  morning.

10      MR. O'REILLY:  Your Honor, I believe you

11  misspoke.  Counts 3 and 4.

12      THE COURT:  I'm sorry.  The instruction that's

13  on page 42 relates to Counts 3 and 4.  And if I said

14  otherwise, that was incorrect.

15  . So members of the jury, I'm going to go through page

16  44 and then tomorrow morning I will finish with the

17  remainder of the instructions, which won't take terribly

18  long, but I don't intend to keep you tonight while I

19  finish that, and then we will proceed, as I have stated,

20  with the closing arguments of counsel and the parties.

21      Counts 3 and 4 of the indictment charge both

22  Defendant Springer and Defendant Stilley with tax evasion

23  in violation of Title 26, Section 7201, of the United

24  States Code.  As previously stated, this law makes it a

25  crime to willfully attempt to evade or defeat the payment

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 37

```
1    not an element of the offense of 7201 and it should not

2    be crafted as an additional element in the jury

3    instructions.

4          THE COURT:  What do the Tenth Circuit pattern

5    instructions have to say on this subject?

6          MR. O'REILLY:  They specifically omit any such

7    reference.

8          THE COURT:  Okay.  I want to take a look at

9    that.  Let's see, does anybody have the Tenth Circuit

10   pattern instruction handy?

11         MR. SPRINGER:  Looking for them right now, Your

12   Honor.

13         THE COURT:  Well, I want to get a hard copy.

14   Stand by.  I'll go get a hard copy.

15      (BRIEF RECESS)

16         THE COURT:  I have looked at the Tenth Circuit

17   pattern criminal jury instructions, specifically

18   Instruction 2.92 on tax evasion.  And the pattern

19   instruction -- well, let me preface this by saying I'm

20   not wedded to pattern instructions as such.  They're

21   certainly a very substantial aid to the Court in a lot of

22   different circumstances, but I'm not wedded to pattern

23   instructions just for the sake of giving pattern

24   instructions.

25         However, the Tenth Circuit pattern instruction
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 38

1    confirms my conception that tax evasion is a crime both
2    as a matter of form and as a matter of substance, which
3    is separate and independent of the form of willful
4    failure to file -- of the crime of willful failure to
5    file.  And for that reason, it certainly comes as no
6    surprise to me that the Tenth Circuit pattern instruction
7    does not contain the extra element that Mr. Springer, and
8    I presume Mr. Stilley, would propose to add, and I don't
9    intend to add it.
10       It's a bit of an oversimplification, but Section
11   7201 tax evasion goes to the tax as opposed to the
12   procedure by which the tax is assessed, in substance.
13   And I don't intend to add the element proposed by the
14   defendants.  And, Mr. Stilley, as I say, I presume that
15   would have been your request also.
16       Now, it is my duty to conform the instructions to
17   the evidence in the case.  And for that reason, I do
18   fully intend to make the revision to the instructions on
19   evasion to say, for instance, on page 43, that the
20   Defendant Springer owed substantial income tax for the
21   year 2003 or 2000 or 2005, as the case may be.  Because
22   that does nothing more than conform the instructions to
23   the facts of the case.
24       I'm least of all happy with myself.  Whatever
25   criticism I might have for the parties and the counsel

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 39

1  guilty of the crime of tax evasion as charged in Count 2,

2  you must be convinced that the government has proved each

3  of the following essential elements beyond a reasonable

4  doubt:

5       First, that Defendant Springer owed substantial

6  income tax for the year 2000.

7       Second, that Defendant Springer intended to evade

8  and defeat payment of that tax.

9       Third, that Defendant Springer committed an

10  affirmative act in furtherance of this intent.

11      And, fourth, that Defendant Springer acted

12  willfully, that is, with the voluntary intent to violate

13  a known legal duty.

14      To "evade and defeat" the payment of tax means to

15  escape paying a tax due other than by lawful avoidance,

16  for the proof need not show the exact amount of the

17  additional tax due; however, the government is required

18  to prove beyond a reasonable doubt that the additional

19  tax due from Defendant Springer was substantial.

20      And by the way, the presence of the word

21  "additional" in those two sentences is also an error on

22  my part.

23      You are instructed that an affirmative act to evade

24  and defeat payment of taxes is a positive act of

25  commission designed to mislead or conceal.

1   Springer to the United States of America for calendar

2   year 2005 by failing to file a United States Individual

3   Income Tax Return, as required by law, and by committing

4   various affirmative acts of evasion.

5       Count 3, to find a defendant guilty of the crime of

6   tax evasion, as charged in Count 3, you must be convinced

7   that the government has proved each of the following

8   elements beyond a reasonable doubt:

9       First, that Defendant Springer owed substantial

10  income tax for the year 2003;

11      Second, that the defendant intended to evade and

12  defeat payment of that tax owed by Defendant Springer;

13      Third, that in furtherance of this intent, the

14  defendant committed one of the affirmative acts charged

15  in the indictment;

16      And, fourth, that the defendant acted willfully,

17  that is, with the voluntary intent to violate a known

18  legal duty.

19      As previously stated, to evade and defeat the

20  payment of tax means to escape paying a tax due other

21  than by lawful avoidance.

22      Count 3 of the indictment does not allege a specific

23  amount of tax due from Defendant Springer from calendar

24  year 2003.   The proof need not show the exact amount of

25  the tax due for that year.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 41

1    Defendant Stilley is charged as an aider and abetter in

2    Count 3.  I will instruct you shortly regarding the

3    elements of aiding and abetting.

4         Finally, you are instructed that, in addition to the

5    other elements described in this instruction, proof of

6    proper venue is also required before you may find a

7    defendant guilty of the crime charged in Count 3.  I will

8    instruct you later regarding proof of venue.

9         Count 4.  To find a defendant guilty of the crime of

10   tax evasion as charged in Count 4, you must be convinced

11   that the government has proved each of the following

12   elements beyond a reasonable doubt:

13        First, that Defendant Springer owed substantial

14   income tax for the year 2005;

15        Second, that the defendant intended to evade and

16   defeat payment of that tax owed by Defendant Springer;

17        Third, that in furtherance of this intent, the

18   defendant committed one of the affirmative acts charged

19   in the indictment;

20        And, fourth, that the defendant acted willfully,

21   that is, with the voluntary intent to violate a known

22   legal duty.

23        Again, as previously stated, to evade and defeat the

24   payment of taxes means to escape paying a tax due other

25   than by lawful avoidance.

```
 1              (COURT IN RECESS AT 9:00 A.M. AWAITING
 2    VERDICT.)
 3              (COURT RESUMES AT 11:50 A.M.)
 4         THE COURT:  Okay.  The record will show that all
 5    the parties and counsel are present.
 6         I have received a note from the jury, which I will
 7    make the next sequentially numbered Court's exhibits.  It
 8    reads as follows:  "We cannot agree on the charge Count
 9    1, 3, and 4.  Please advise what we need to do next.
10    Thank you.  P.S., 3 and 4 charges referred to above are
11    having difficulty is for Oscar Stilley.  We have agreed
12    on the other charges."
13         The jury has now deliberated for about six hours and
14    I -- we went from -- they actually started deliberating
15    Friday at about one and we recessed Friday at about 20
16    minutes till six.  It's now ten minutes till eleven.  And
17    they resumed promptly at nine this morning.  So it's
18    actually a little over six hours.
19         And I'm certainly not ready to do anything other
20    than instruct the jury to continue its deliberations.
21    Subject to what the parties have to say, I do intend to
22    bring the jury back in and give them some encouragement
23    in the form of a substantially modified and substantially
24    softened-up version of an Allen charge.  But I'll
25    certainly afford, first, the government and then the
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 43

1  could be imagined. And by saying that about Mr. Stilley, I

2  don't mean to put Mr. Springer in a favorable light, but,

3  nevertheless, the situation with respect to Mr. Springer is a

4  bit more complicated.

5      I will first cover the tax loss which I conclude for

6  guidelines purposes is attributable Mr. Springer. For 1990

7  through 1995, the assessed amount of tax was $91,196.

8      Now, I'm going to read the gross income from my notes with

9  respect to '99 through 2007, it's a simple mathematical

10  proposition to take 20 percent of this, but I won't read the 20

11  percent calculation into the record other than when I get to

12  the total.

13      The gross income that I attribute to Mr. Springer for 1999

14  is $111,702; for 2000, it is $160,000; for 2001, it is $63,000;

15  for 2002, it is $48,986; for 2003, it is $391,171; for 2004, it

16  is $117,550; for 2005, it is $278,500; for 2006, it is

17  $185,650; for 2007, it is $141,400; for a total gross income of

18  $1,497,959. At 20 percent, the tax loss attributable to that

19  is $390,787. I also attribute to Mr. Springer the state tax

20  loss --

21          MR. O'REILLY: Your Honor, I apologize for

22  interjecting, but you say the tax loss was 390,000?

23          THE COURT: That's --

24          MR. O'REILLY: That's 20 percent? Because I believe

25  that would be an overstatement of the tax loss for --

```
 1              THE COURT:  Well, that adds the 91,000 --
 2              MR. O'REILLY:  I apologize, Your Honor.
 3              THE COURT:  That adds the 91,196 from 1990 through
 4    1995.
 5              MR. O'REILLY:  I apologize.
 6              THE COURT:  I have proportionately reduced
 7    Mr. Springer's state tax loss based on the proportion by which
 8    I have reduced the federal tax loss.  The state tax loss
 9    accordingly is $80,186, to which I add the federal tax loss
10    attributable to Mr. Stilley, which I will cover in a minute,
11    but which amounts to $377,161, and Mr. Stilley's state tax
12    loss, which is $91,627.  So the total for Mr. Springer,
13    including his state tax loss and Mr. Stilley's state and
14    federal tax loss is $548,974.  Adding Mr. Springer's federal
15    tax loss, but ignoring for the moment the tax loss attributable
16    to Mr. Turner, Mr. Springer's state and federal tax loss,
17    including his own and Mr. Stilley's, is $939,761.80, to which I
18    add $145,713 attributable to Mr. Turner for a total tax loss
19    under Guideline 2T1.1 attributable to Mr. Springer in the
20    amount of $1,085,474.80.  The penalties and interest
21    attributable to that amount to $431,801.
22         With respect to Mr. Stilley, his gross income for 2000 was
23    $131,533; for 2001, it was $73,598; for 2002, it was $117,653;
24    for 2003, it was $466,774; for 2004, it was $96,600; for 2005,
25    it was $106,984; for 2006, it was $433,368; for 2007, it was
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 45

426

1   just ludicrous statements made for some theatrical effect, but

2   bear in mind that he was looking at a jury when he made those

3   statements under oath, and both defendants had placed their

4   intent and their willfulness squarely in issue.  So it is not

5   -- I'm not inclined at all to dismiss those statements as

6   reckless hyperbole or otherwise to relieve Mr. Stilley of the

7   natural effect which flows from making false statements like

8   those under oath.

9        He also said that the law -- under oath, looking at the

10  jury, that the law does not command anyone to file a tax

11  return.  He also said, under oath, that Mr. Lindsey Springer

12  did not charge for or receive compensation for services

13  rendered.  He also said, under oath, that he never allowed

14  Mr. Springer to use his, Mr. Stilley's, IOLTA account as a

15  parking place for money.  He also said, under oath, that he and

16  Mr. Springer have never discussed attempting to defraud the

17  United States of income taxes.  All of those statements were

18  material, they were made under oath, and they were

19  categorically false.  They amounted to perjury.  They certainly

20  did amount to obstruction of justice on Mr. Stilley's part.

21       As for Mr. Springer, at trial, he looked at the jury and

22  testified under oath that he never had an agreement with

23  Mr. Stilley or anyone else to defraud the United States.  He

24  testified that he did not willfully fail to file Form 1040 for

25  the years 2000 through 2005.  He stated that he did not

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 46

1  willfully fail to report substantial tax liability.  And he

2  stated that he believed that he did not receive gross income.

3  He also said under oath that receiving money with no

4  expectation for anything from anybody "was a guideline that I

5  had before I would have ever received any money."  And he has

6  testified that there never was any quid pro quo for the money

7  that the Hawkins paid to him.  These statements are

8  categorically false.  They were made under oath.  They were

9  made for the purpose of deceiving the jury, and they amounted

10  to obstruction of justice, Mr. Springer.

11       In addition, in March of 2006, Mr. Stilley told the grand

12  jury in writing that "Lindsey Springer does not charge for his

13  services."  A statement that Mr. Stilley well knew was

14  absolutely false and highly material to the grand jury's

15  investigation.  The defendants' testimony on these points was

16  unequivocal, it was false, it related to material matters that

17  were in issue in the trial of this case or before the grand

18  jury and the false testimony was willfully and intentionally

19  given as false testimony rather than as a result of confusion,

20  mistake, or faulty memory.

21       Accordingly, I rule on the government's objections to the

22  presentence report as follows:  To the extent that I have found

23  a tax loss that exceeds that found in the presentence report,

24  the government's objection to the scope of the relevant conduct

25  conclusions in the presentence reports and with respect to the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 47

431

1   advisory guidelines of 121 to 151 months.

2       I will now address restitution.  I must admit that I was a

3   bit limited, I guess is one way to say it, in my ability to

4   thoroughly evaluate restitution because there were some

5   adjustments to the tax loss amounts and then there is obviously

6   penalty and interest applicable to some items and not to others

7   and the parties, perhaps understandably, from both standpoints

8   did not devote a great deal of attention in their briefs to the

9   issue of what items are fair game for restitution, what the

10  legal basis for the restitution might be, whether there's any

11  difference among the various counts with respect to restitution

12  and even whether and to what extent there should be joint and

13  several liability for restitution.

14      I'm not critical of either side for not focusing any

15  harder than they did on that from the government's standpoint.

16  These defendants are likely to be buried in restitution

17  obligations for the rest of their lives.  And under any

18  reasonable assessment of restitution, it is likely that these

19  defendants will never see the end of their restitution

20  obligation.  These tax liabilities continue to bear interest.

21  The interest payments alone, which I do not waive and will not

22  waive, will be substantial.

23      So from that standpoint, it's probably understandable that

24  the government did not spend a great deal of time on the issue

25  of restitution.  From the defendant's standpoint, the issue of

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 48

432

1    restitution is certainly, by any measure, quite secondary to

2    considerations relating to their incarceration and those

3    guidelines and other sentencing-related matters that have a

4    more direct bearing on whether and how long they would be

5    incarcerated.

6         So I'm not critical either of the defendants for not

7    spending a great deal of time on restitution.  But the net

8    effect of all of that was that I was just a little bit at sea,

9    if you will, in my ability to determine what the outcome should

10   be with respect to restitution.

11        I have gone back through the numbers.  I have adjusted the

12   numbers and selected the ones that it appears to me are

13   appropriate for restitution.  To some degree, especially in the

14   case of Mr. Springer, I adjusted the numbers to reflect my

15   revision of the conclusions and findings with respect to tax

16   loss, although I have not modified the numbers as to the

17   assessed amounts.

18        And I'm also cognizant that Mr. Springer's and

19   Mr. Stilley's restitution obligation is an independent

20   freestanding obligation under the judgment and sentence of this

21   Court.  And there may well be and I suspect are other

22   independent legal means of proceeding against these defendants

23   for any amounts that are not embraced by my restitution order.

24        That said, my conclusion is that Mr. Springer's federal

25   restitution obligation is $691,343 and that his state

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App.  49

1    restitution obligation is $80,186.  I conclude that

2    Mr. Stilley's federal restitution obligation is $684,653 and

3    that his state restitution obligation is $91,627.

4        Does either defendant have any procedural objection to the

5    sentencing proceedings to this point?  Mr. Springer?

6        MR. SPRINGER:  May I have just a moment, Your Honor?

7    None other than the same objections I made yesterday with

8    reference to prior to the sentencing hearing objections I had,

9    Your Honor.

10       THE COURT:  Thank you, Mr. Springer.  Mr. Stilley?

11       MR. STILLEY:  I would likewise continue to maintain

12   all the objections that I have previously made and state that I

13   do not see that my due process complaints have been remedied by

14   anything that has taken place up to now.

15       THE COURT:  Thank you, Mr. Stilley.  I will now give

16   you -- for all concerned, I'll give you some understanding of

17   how we will proceed from here.

18       The defendants have a right, and it goes back hundreds of

19   years, to have what is called "allocution."  That is their

20   statements to the Court of anything, and I truly mean anything,

21   that they would want the Court to consider by way of mitigation

22   or with respect to any other matter relating to sentencing.

23   That's a very valuable right and I certainly intend to afford

24   the defendants a full opportunity to exercise their rights of

25   allocution.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 50

1    statements as well as the need to provide restitution.  All of

2    which I have carefully considered in this case.

3        As for the nature and circumstances of the offenses and

4    the history and characteristics of the defendants, I have tried

5    to find even a thin strand of truth or integrity to your

6    conduct or your way of life.  It is not there.  Not even a

7    speck.  There is not even a plausible basis upon which you

8    might have deluded yourself into thinking that you are anything

9    but complete frauds and predators.

10       Your scams have cheated the United States.  And that is a

11   serious matter in and of itself.  But the United States can

12   print money.  If anyone ever had any lingering doubt as to

13   whether you are frauds and predators, that doubt would be

14   removed by the fact that the two of you have also merciless

15   fleeced some very vulnerable people.  You are predators, pure

16   and simple.

17       In evaluating your culpability, one thing I should

18   consider in fairness to you is the possibility that you have

19   convinced yourselves to believe, in good faith, in the truth of

20   some things that would not be believable to a reasonable man.

21   That would not be fraud as we commonly understand fraud.  So if

22   you are among those who are exceptionally likely to believe

23   whatever you are told, especially if it is you who are doing

24   the telling, that might tend to diminish your culpability.  I

25   have carefully considered that possibility and I have rejected

1  arguments on their behalf.  This is an aspect of your history

2  and characteristics that I cannot ignore and that I conclude is

3  not addressed in anything close to a meaningful way by the

4  adjustment under Guideline 3B1.3 for use of a special skill.

5      It is painful to think that you went as long as you did

6  before you were called to account by the disciplinary

7  proceedings in Arkansas.  Mr. Stilley, you are not a lawyer in

8  any normal sense of that word.  You are a thief with a law

9  degree.

10     One other matter should be mentioned before sentence is

11 imposed.  Both of you are going to have some time, considerable

12 time to perfect your self-image as tax protestors who have been

13 persecuted and victimized by the Internal Revenue Service.

14 Before you get too far down that road, let me remind you that

15 you were indicted by a grand jury consisting of your fellow

16 citizens and not by the IRS.  You were convicted by a trial

17 jury sitting in this courtroom consisting of your fellow

18 citizens and not by the IRS.

19     The criminal statutes under which you have been convicted

20 were enacted by our elected representatives and not by the

21 IRS.  You are being sentenced by the Court and not by the IRS.

22 Most importantly, the facts that will result in your

23 considerable terms of imprisonment were created by you and not

24 by the IRS.

25     The defendants will please come to the lectern, both of

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

App. 52

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLHAOMA

Lindsey Kent Springer,

    Petitioner/Movant

v.                                      Case Number 13-CV-145
                                        (Formerly 09-CR-043)

United States of America,

    Respondent.

PETITIONER'S APPENDIX OF RECORD EXCERPS

VOLUME TWO

(FILED IN SUPPORT OF PETITIONER'S REPLY)

by: Lindsey Kent Springer
Reg. # 02580-063
Federal Satellite Low-La Tuna
P.O. Box 6000
Anthony, New Mexico 88021

-i-
TABLE OF CONTENTS

Appellate Counsel's Revised Brief excerps pages 53-54                    App. 53

Respondent's Appeal Opposition Brief excerps pages pages 17 to 20       App. 55

United States First Bill of Particulars excerps (Doc.104)               App. 59

IRS's Truth About Taxes listing 26 U.S.C. §§ 6011,6012; CFR § 1.6011-1  App. 61

Title 26, United States Code, § 6011 ("Part II Tax Returns...")         App. 62

United States v. Farr, Lexis 82702 (W.D. Ok. 2006)                      App. 65

United States v. Living Word Christian Center, Lexis 6902(D.Minn.2009)  App. 68

Meadors letter accompanying summons to Bondage Breaker's Ministry       App. 74

Expert Opinion excerps of Douglas Vogt on President's Birth Cert.       App. 75

Smith v. Comm'r of Internal Revenue, 62 T.C.M. 1429(T.Ct. 1991-612)     App. 84

### G. Springer didn't willfully fail to deliver prescribed forms of return.

Without IRD and DD no duty exists, which creates the rule of voluntary compliance and self assessment. The PRA and CIR's words also stated information was not required. The Privacy Act of 1974 was violated, and there are no current Treasury Regulations. Section 6091 is a complete mess, and the rule of lenity should apply.

Springer told the jury he has never seen the Court's definition of income or gift. Doc. 396, 2806, 15-21, and the Court rejected the 3rd Circuit in SEC v. TIGC. Doc. 396, 2700-2704. Springer accurately testified there was no quid pro quo for any money that he always acknowledged receiving. See Gov. Exh. 731.

### Summary

There is no finding of criminal violations for tax loss conduct according to Meeks. The direct method should have been used at sentencing minus the Turner loan. Tax loss at 2T1.1, or enhancements at 2T1.1(b)(I)[-2], 2T1.1(b)(2)[-2], 2T1.9[-2], 3B1.1(a)[-4], 3C1.1[-2], are each unsupported by any evidence, and each are clearly erroneous and unreasonable.

### Other Issues

This Court should reconsider and allow Springer to file an over-length brief.

Count Two violated the Statute of Limitations. Count Four failed to allege and prove the tax deficiency element since the $250,000 was a loan. Springer claims the prosecution was unlawful without a U.S. Attorney to exercise the criminal referral. Springer also claims District Judges Eagan and Friot were prevented from participating due to Judge Eagan's

-53-

involvement in 03-cr-55.

Springer claims the evidence was insufficient to establish beyond reasonable doubt each element of each offense alleged in Counts One through Six. The "required by law" duty was not shown. The Trial Court should have granted Judgment of Acquittal at any of the three times Springer requested it. After de novo review, this Court should reverse dismiss each count as the evidence was insufficient.

## CONCLUSION

The Tax Division had 6 years, 4 grand juries, 40,000 exhibits in discovery, with over 400 docket entries, a 3 week trial, 3,300 pages of transcripts, a three day sentencing hearing with 10,000 words of reasons for the sentence, yet Springer is required to address each error to this Court in under 14,000 words. That violates due process. Nonetheless, Springer has shown numerous reasons why Conviction, and Judgment and Sentence must be set aside, requiring a new trial or further hearings in some instances, and outright dismissal in others. Springer requests this Court make such rulings.

Respectfully submitted,

Lindsey Springer, Defendant-Appellant

By:  /s/ Jerold W. Barringer
Jerold W. Barringer
P.O. Box 213
200 W. Front St.
Nokomis, IL 62075
217-563-2646 Phone
217-563-2646 Fax
jbarry@consolidated.net

-54-

presented to the grand jury to support the indictment are not subject to review: "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 414 U.S. 338, 345 (1974).

B.   *Discussion*

The Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685, provided for the reorganization of the IRS by subsequent administrative action.[15]  The IRS subsequently reorganized in 2000, altering its national structure "from a geographic structure to a structure based on nationwide jurisdiction of similar types of taxpayers," Notice of Proposed Rulemaking, 74 Fed. Reg. 39003, 39004 (Aug. 5, 2009) (providing background), and the Treasury Department later amended its tax-return filing regulations to reflect this change in structure. *See* Treas. Dec. 9156, 69 Fed. Reg. 55743 (Sept. 16, 2004), *corrected by* 69 Fed. Reg. 60222 (Oct. 7, 2004) (amending 26 C.F.R. 1.6091-2).

---

[15]  Specifically, the Act directed the Commissioner of Internal Revenue to "develop and implement a plan to reorganize the Internal Revenue Service" that would "supersede any organization or reorganization of the Internal Revenue Service based on any statute or reorganization plan applicable on the effective date of this section." § 1001, 112 Stat. at 689.  The Act required the plan to "eliminate or substantially modify the existing organization of the Internal Revenue Service which is based on a national, regional, and district structure," though it also contained a "savings provision" stating that all IRS rules and regulations then in force "shall continue in effect according to their terms until modified, terminated, superseded, set aside, or revoked in accordance with law by the President, the Secretary of the Treasury, the Commissioner of Internal Revenue, or other authorized official, a court of competent jurisdiction, or by operation of law." *Id.* at 689-90.

- 18 -

The gist of Springer's argument appears to be that the IRS's internal reorganization makes it impossible for anyone to be convicted of tax crimes. In short, he argues that, without internal revenue districts, there was no place where he was "required by law" to file his tax returns. (Br. 11.) This argument fails for several reasons.

First, its premise is wrong: there was a place where Springer was required to file his tax returns. Section 6091(b)(1)(B)(i) of Title 26 provides—as it provided in 2000—that the returns of "persons who have no legal residence or principal place of business in any internal revenue district . . . shall be made at such place as the Secretary may by regulations designate." 26 U.S.C. 6091(b)(1)(B). Since 2004, the Treasury Department's regulations have required individual taxpayers to file either at their local IRS office or at the IRS Service Center specified in the applicable tax return's instructions. *See* 26 C.F.R. 1.6091-2(a),(c),(d); 69 Fed. Reg. 55743 (Sept. 16, 2004) (amending 26 C.F.R. 1.6091-2). And the pre-2004 filing regulation, like the current one, required taxpayers to file their returns by mailing them to their particular Service Center. *See* 26 C.F.R. 1.6091-2(c) (2003). At all times relevant to this case, Springer's legal residence was in the county of Creek (*see* Springer May 4, 2010, Bail Mot. at 39 n.14) and the local IRS office serving his residence was in Tulsa (Doc. 71 at 5), both of which are in the Northern District of Oklahoma. *See* 28 U.S.C. 116(a). Thus Springer was required by law to file his tax returns, and he was resident in the Northern District of Oklahoma when he failed to do so.

- 19 -

Second, Springer's conclusions do not follow from his premise: even if
there were no laws or regulations specifically requiring Springer to file his tax
returns in the Northern District of Oklahoma, the indictment would still be
sufficient and his (and Stilley's) convictions would still be valid.  The obligation
to file federal income tax returns and pay federal income taxes arises by statute,
*see* 26 U.S.C. 1, 6012, as does the due date for those returns, *see* 26
U.S.C. 6072(a), and none of these provisions relies on the existence of (or even
makes reference to) internal revenue districts or district directors.  Springer's
criminal failures to file were complete when he willfully failed to file his 2002 and
2004 tax returns "at the *time or times* required by law or regulations," 26
U.S.C. 7203 (emphasis added); *see also United States v. Sams*, 865 F.2d 713, 716
(6th Cir 1988) (§ 7203 violation complete once there is a duty to pay and willful
nonpayment), without reference to any particular location requirement.  And, as
noted above, these crimes were committed while Springer lived in the Northern
District of Oklahoma, making venue proper.  *See United States v. Garman*, 748
F.2d 218, 220 (4th Cir. 1984) (in a failure-to-file case, "venue is proper in either
the district of residence or the district where the service center is located").  The
most that Springer can plausibly make of his internal-revenue-district argument is
that he did not *willfully* fail to file his returns because he did not know where to
file them—an argument the jury rejected when it convicted him on the willful-
failure-to-file counts.[16]

_____

[16] Additionally, even if the abolition of internal revenue districts in 2000
had some effect on the failure-to-file counts, it would have nothing whatever to do

- 20 -

II

## THE PAPERWORK REDUCTION ACT OFFERS
## NO DEFENSE TO CRIMINAL TAX CHARGES

The defendants' second argument (Br. 14-23), also meritless, is that the

"public protection provision" of the Paperwork Reduction Act (PRA), 44 U.S.C.

3512, prevented the district court from imposing any penalties based on their

counts of conviction.

A. *Standard of Review*

Questions of law are reviewed de novo. *Lewis v. Comm'r*, 523 F.3d 1272,

1274 (10th Cir. 2008).

B.    *Discussion*

The PRA requires an agency to receive approval from the Office of

Management and Budget to "conduct or sponsor the collection of information," 44

U.S.C. 3507(a), and § 3512(a) of the Act, entitled "Public protection," provides:

> Notwithstanding any other provision of law, no person shall be
> subject to any penalty for failing to comply with a collection of
> information that is subject to this subchapter if . . . (1) the collec-

---

with Springer's and Stilley's convictions for conspiring to defraud the United
States and attempting to evade Springer's income taxes.  Conspiracy to defraud the
United States requires an agreement between two or more people to impede the
government's lawful functions through means that are dishonest, *see
Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924), and impossibility is
not a defense to conspiracy, *see United States v. Rosner*, 485 F.2d 1213, 1229 (2d
Cir. 1973).  Nor do internal revenue districts have anything to do with the tax-
evasion counts: "the elements of § 7201 are willfulness, the existence of a tax
deficiency, and an affirmative act constituting an evasion or attempted evasion of
the tax," *Boulware v. United States*, 552 U.S. 421, 424 n.2 (2008) (brackets and
ellipses omitted), and, as noted above, a person's liability for federal income taxes
does not depend on the existence of internal revenue districts, *see* 26 U.S.C. 1.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   09-CR-043-SPF |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' BILL OF PARTICULARS

The United States of America, by and through its attorneys, Thomas Scott Woodward, Acting United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke, Assistant United States Attorney, and Charles A. O'Reilly, Special Assistant United States Attorney, hereby files this Bill of Particulars pursuant to the Court's order dated July 2, 2009.

Counts 2, 3, 5 and 6 of the Indictment each include the phrase "required by law" in reference to Defendant Springer's failure to file a federal income tax return. The filing of income tax returns is mandated by statute. *United States v. Collins*, 920 F.2d 619, 630-31 (10th Cir. 1990); *United States v. Dawes*, 951 F.2d 1189, 1193 (10th Cir. 1991); *United States v. Neff*, 954 F.2d 698, 699-700 (11th Cir. 1992); *United States v. Hicks*, 947 F.2d 1356, 1359 (9th Cir. 1991); *United States v. Kerwin*, 945 F.2d 92 (5th Cir. 1991); *United States v. Wunder*, 919 F.2d 34, 38 (6th Cir.1990). The statutes that required Defendant Springer file individual federal income tax returns are as follows:

Title 26, United States Code Section 1 - Tax Imposed;

Title 26, United States Code Section 61 - Gross Income Defined;

Title 26, United States Code Section 63 - Taxable Income Defined;

Title 26, United States Code Section 6011(a) - General Requirement of Return, Statement or List;

Title 26, United States Code Section 6012(a)(1)(A) - Persons Required to Make Returns of Income;

Title 26, United States Code Section 6072(a) - Time for Filing Income Tax Returns;

Title 26, United States Code Section 6091 - Place for Filing Returns or Other Documents;

Title 26, United States Code Section 6151 - Time and Place for Paying Tax Shown on Returns;

Title 26, United States Code Section 7203 - Willful Failure to File Return, Supply Information or Pay Tax.

Respectfully submitted,

THOMAS SCOTT WOODWARD
ACTING UNITED STATES ATTORNEY

   /s Charles A. O'Reilly
CHARLES A. O'REILLY, CBA No. 160980
Special Assistant U.S. Attorney
KENNETH P. SNOKE, OBA No. 8437
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

-2-

**IRS**

The Truth About Frivolous Tax Arguments - Section I

February 15, 2012                                    Introduction 1 2 3 | Print PDF

## FRIVOLOUS TAX ARGUMENTS IN GENERAL

### Contents

A. The Voluntary Nature of the Federal Income Tax System

1. Contention: The filing of a tax return is voluntary
2. Contention: Payment of federal income tax is voluntary
3. Contention: Taxpayers can reduce their federal income tax liability by filing a "zero return"
4. Contention: The IRS must prepare federal tax returns for a person who fails to file
5. Contention: Compliance with an administrative summons issued by the IRS is voluntary

B. The Meaning of Income: Taxable Income and Gross Income

1. Contention: Wages, tips, and other compensation received for personal services are not income
2. Contention: Only foreign-source income is taxable
3. Contention: Federal Reserve Notes are not income
4. Contention: Military retirement pay does not constitute income

C. The Meaning of Certain Terms Used in the Internal Revenue Code

1. Contention: Taxpayer is not a "citizen" of the United States, thus not subject to the federal income tax laws
2. Contention: The "United States" consists only of the District of Columbia, federal territories, and federal enclaves
3. Contention: Taxpayer is not a "person" as defined by the Internal Revenue Code, thus is not subject to the federal income tax laws
4. Contention: The only "employees" subject to federal income tax are employees of the federal government

D. Constitutional Amendment Claims

1. Contention: Taxpayers can refuse to pay income taxes on religious or moral grounds by invoking the First Amendment
2. Contention: Federal income taxes constitute a "taking" of property without due process of law, violating the Fifth Amendment
3. Contention: Taxpayers do not have to file returns or provide financial information because of the protection against self-incrimination found in the Fifth Amendment
4. Contention: Compelled compliance with the federal income tax laws is a form of servitude in violation of the Thirteenth Amendment
5. Contention: The federal income tax laws are unconstitutional because the Sixteenth Amendment to the United States Constitution was not properly ratified
6. Contention: The Sixteenth Amendment does not authorize a direct non-apportioned federal income tax on United States citizens

E. Fictional Legal Bases

1. Contention: The Internal Revenue Service is not an agency of the United States
2. Contention: Taxpayers are not required to file a federal income tax return, because the instructions and regulations associated with the Form 1040 do not display an OMB control number as required by the Paperwork Reduction Act
3. Contention: African Americans can claim a special tax credit as reparations for slavery and other oppressive treatment
4. Contention: Taxpayers are entitled to a refund of the Social Security taxes paid over their lifetime
5. Contention: An "untaxing" package or trust provides a way of legally and permanently avoiding the obligation to file federal income tax returns and pay federal income taxes
6. Contention: A "corporation sole" can be established and used for the purpose of avoiding federal income taxes
7. Contention: Taxpayers who did not purchase and use fuel for an off-highway business can claim the fuels tax credit
8. Contention: A Form 1099-OID can be used as a debt payment option or the form or a purported financial instrument may be used to obtain money from the Treasury

## A.    The Voluntary Nature of the Federal Income Tax System

**1.    Contention:  The filing of a tax return is voluntary.**

Some taxpayers assert that they are not required to file federal tax returns because the filing of a tax return is voluntary.  Proponents of this contention point to the fact that the IRS itself tells taxpayers in the Form 1040 instruction book that the tax system is voluntary.  Additionally, these taxpayers frequently quote *Flora v. United States*, 362 U.S. 145, 176 (1960), for the proposition that "[o]ur system of taxation is based upon voluntary assessment and payment, not upon distraint."

**The Law:**  The word "voluntary," as used in *Flora* and in IRS publications, refers to our system of allowing taxpayers initially to determine the correct amount of tax and complete the appropriate returns, rather than have the government determine tax for them from the outset.  The requirement to file an income tax return is not voluntary and is clearly set forth in sections 6011(a), 6012(a), et seq., and 6072(a) of the Internal Revenue Code.  *See also* Treas. Reg. § 1.6011-1(a).

App. 61

13

# PART II  TAX RETURNS OR STATEMENTS

HISTORY; ANCILLARY LAWS AND DIRECTIVES

**Amendments:**

**In 2001,** P.L. 107-16, Sec. 542(b)(5)(B), repealed by P.L. 111-312, Sec. 301(a) (applicable to estates of decedents, dying, and transfers made, after 12/31/2009, as provided by Sec. 301(e) of P.L. 111-312, which appears as a note to Code Sec. 121), amended item C to read: "C. Returns relating to transfers during life or at death.".

RESEARCH REFERENCES

**Cross References**

This part is referred to in  26 USCS § 6091

## SUBPART A  General Requirement

§ 6011.        General requirement of return, statement, or list.

(a) **General rule.**  When required by regulations prescribed by the Secretary any person made liable for any tax imposed by this title, or with respect to the collection thereof, shall make a return or statement according to the forms and regulations prescribed by the Secretary. Every person required to make a return or statement shall include therein the information required by such forms or regulations.

(b) **Identification of taxpayer.**  The Secretary is authorized to require such information with respect to persons subject to the taxes imposed by chapter 21 or chapter 24 [26 USCS §§ 3001 et seq. or 3401 et seq.] as is necessary or helpful in securing proper identification of such persons.

(c) **Returns, etc., of DISCs and former DISCs and former FSC's.**
   (1) **Records and information.**  A DISC, former DISC, or former FSC (as defined in section 922 as in effect before its repeal by the FSC Repeal and Extraterritorial Income Exclusion Act of 2000) shall for the taxable year-
      (A) furnish such information to persons who were shareholders at any time during such taxable year, and to the Secretary, and
      (B) keep such records, as may be required by regulations prescribed by the Secretary.
   (2) **Returns.**  A DISC shall file for the taxable year such returns as may be prescribed by the Secretary by forms or regulations.

(d) **Authority to require information concerning section 912 allowances.**  The Secretary may by regulations require any individual who receives allowances which are excluded from gross

USCS                                         1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

02580063

income under section 912 [26 USCS § 912] for any taxable year to include on his return of the taxes imposed by subtitle A [26 USCS §§ 1 et seq.] for such taxable year such information with respect to the amount and type of such allowances as the Secretary determines to be appropriate.

(e) **Regulations requiring returns on magnetic media, etc.**

(1) **In general.** The Secretary shall prescribe regulations providing standards for determining which returns must be filed on magnetic media or in other machine-readable form. **Except as provided in paragraph (3), the Secretary may not require returns of any tax imposed by subtitle A [26 USCS §§ 1 et seq.] on individuals, estates, and trusts to be other than on paper forms supplied by the Secretary.**

(2) **Requirements of regulations.** In prescribing regulations under paragraph (1), the Secretary-

(A) shall not require any person to file returns on magnetic media unless such person is required to file at least 250 returns during the calendar year, and

(B) shall take into account (among other relevant factors) the ability of the taxpayer to comply at reasonable cost with the requirements of such regulations.

Notwithstanding the preceding sentence, the Secretary shall require partnerships having more than 100 partners to file returns on magnetic media.

(3) **Special rule for tax return preparers.**

(A) In general. The Secretary shall require than any individual income tax return prepared by a tax return preparer be filed on magnetic media if-

(i) such return is filed by such tax return preparer, and

(ii) such tax return preparer is a specified tax return preparer for the calendar year during which such return is filed.

(B) Specified tax return preparer. For purposes of this paragraph, the term "specified tax return preparer" means, with respect to any calendar year, any tax return preparer unless such preparer reasonably expects to file 10 or fewer individual income tax returns during such calendar year.

(C) Individual income tax return. For purposes of this paragraph, the term "individual income tax return" means any return of the tax imposed by subtitle A [26 USCS §§ 1 et seq.] on individuals, estates, or trusts.

(4) **Special rule for returns filed by financial institutions with respect to withholding on foreign transfers.** The numerical limitation under paragraph (2)(A) shall not apply to any return filed by a financial institution (as defined in section 1471(d)(5) [26 USCS § 1471(d)(5)]) with respect to tax for which such institution is made liable under section 1461 or 1474(a) [26 USCS § 1461 or 1474(a)].

(f) **Promotion of electronic filing.**

(1) **In general.** The Secretary is authorized to promote the benefits of and encourage the use

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

02580063

of electronic tax administration programs, as they become available, through the use of mass communications and other means.

(2) **Incentives.**   The Secretary may implement procedures to provide for the payment of appropriate incentives for electronically filed returns.

(g) **Disclosure of reportable transaction to tax-exempt entity.**   Any taxable party to a prohibited tax shelter transaction (as defined in section 4965(e)(1) [26 USCS § 4965(e)(1)]) shall by statement disclose to any tax-exempt entity (as defined in section 4965(c) [26 USCS § 4965(c)]) which is a party to such transaction that such transaction is such a prohibited tax shelter transaction.

(h) **Income, estate, and gift taxes.**   For requirement that returns of income, estate, and gift taxes be made whether or not there is tax liability, see subparts B and C [26 USCS §§ 6012 et seq. and 6018 et seq.].

(Aug. 16, 1954, ch 736, 68A Stat. 732; Sept. 2, 1958, P. L. 85-859, Title I, § 161, 72 Stat. 1305; Sept. 2, 1964, P. L. 88-563, § 3(a), 78 Stat. 843; June 21, 1965, P. L. 89-44, Title I, § 101(b)(6), 79 Stat. 136; July 31, 1967, P. L. 90-59, § 4(b), 81 Stat. 154; Nov. 26, 1969, P. L. 91-128, § 4 (f), (g), 83 Stat. 267; Dec. 10, 1971, P. L. 92-178, Title V, § 504(a), 85 Stat. 550; Oct. 4, 1976, P. L. 94-455, Title XIX, §§ 1904(b)(10)(A)(ii), 1906(b)(13)(A), 90 Stat. 1817, 1834; Nov. 8, 1978, P. L. 95-615, § 207(c), 92 Stat. 3108; Sept. 3, 1982, P. L. 97-248, Title III, § 319, 96 Stat. 610; Aug. 5, 1983, P. L. 98-67, Title I, § 109(a), 97 Stat. 383; July 18, 1984, P. L. 98-369, Div A, Title VIII, § 801(d)(12), 98 Stat. 997; Oct. 22, 1986, P. L. 99-514, Title XVIII, § 1899A(52), 100 Stat. 2961; Nov. 10, 1988, P. L. 100-647, Title I, § 1015(q)(1), 102 Stat. 3572; Dec. 19, 1989, P. L. 101-239, Title VII, § 7713(a), 103 Stat. 2394; Aug. 5, 1997, P. L. 105-34, Title XII, § 1224, 111 Stat. 1019; July 22, 1998, P. L. 105-206, Title II, § 2001(c), 112 Stat. 723; May 17, 2006, P. L. 109-222, Title V, § 516(b)(2), 120 Stat. 371; Dec. 29, 2007, P. L. 110-172, § 11(g)(19), 121 Stat. 2491; Nov. 6, 2009, P. L. 111-92, § 17(a), (b), 123 Stat. 2996; March 18, 2010, P. L. 111-147, Title V, Subtitle A, Part III, § 522(a), 124 Stat. 112.)

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

02580063

**UNITED STATES OF AMERICA, Plaintiff, vs. SKOSHI THEDFORD FARR, Defendant.**
**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**
**2006 U.S. Dist. LEXIS 82702; 98 A.F.T.R.2d (RIA) 7813**
**Case No. CR-06-0191-F**
**November 13, 2006, Decided**
**November 13, 2006, Filed**

**Editorial Information: Subsequent History**

Motion granted by, in part, Motion denied by, in part, Motion denied by United States v. Farr, 2007 U.S. Dist. LEXIS 3189 (W.D. Okla., Jan. 16, 2007)

**Counsel**     For Skoshi Thedford Farr (1), Defendant: Mack K Martin, Martin Law Office, Oklahoma City, OK.

For United States of America, Plaintiff: Susan Dickerson Cox, US Attorney's Office-OKC, Oklahoma City, OK.

**Judges:** STEPHEN P. FRIOT, UNITED STATES DISTRICT JUDGE.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant was charged with willfully attempting to evade and defeat the payment of quarterly employment taxes in violation of 26 U.S.C.S. § 7201. The court considered two motions: defendant's motion for disclosure of grand jury minutes and records and defendant's motion to dismiss the indictment due to duplicity.Defendant, charged with violations of 26 U.S.C.S. § 7201, was unsuccessful in her motion for disclosure of grand jury minutes because her request was highly conjectural and apparently based on what she hoped disclosure might reveal, rather than on any showing of facts indicating a particularized need as required by Fed. R. Crim. P. 6(e)(3)(E)(ii).

**OVERVIEW:** Denying the motion for disclosure of grand jury minutes, the court concluded that defendant's request was highly conjectural and appeared to be based on what she hoped disclosure might reveal, rather than on any showing of facts indicating a particularized need as required by Fed. R. Crim. P. 6(e)(3)(E)(ii). The motion demonstrated that defendant already had the statements of witnesses who were likely to be called to testify on behalf of the government at trial and to the grand jury testimony of the investigating agent in the case. The court next considered the motion for dismissal of the indictment, in which defendant argued that count one was duplicitous. Although the Tenth Circuit had apparently not addressed duplicity in the context of 26 U.S.C.S. § 7201, other circuits agreed that tax evasion was a single crime, and that in a criminal tax evasion case each year stood alone and the failure to pay taxes in each one of the years involved constituted a separate offense. The prosecutor opted to charge only one count for defendant's alleged 1995 evasion and only one count for the alleged 1999 evasion. In the circumstances, the court concluded that the indictment was not duplicitous.

**OUTCOME:** Defendant's motion for disclosure was denied. The court also denied defendant's motion to dismiss on grounds of duplicity.

**LexisNexis Headnotes**

*Criminal Law & Procedure > Grand Juries > Secrecy > Disclosure > Grounds for Dismissal*

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

02580063

*Criminal Law & Procedure > Grand Juries > Secrecy > Disclosure > Judicial Discretion*
*Criminal Law & Procedure > Grand Juries > Secrecy > Disclosure > Particularized Need Standard*
*> Defendants*

Fed. R. Crim. P. 6(e)(3)(E)(ii) provides that the court may authorize disclosure of a grand jury matter, at a time, in a manner, and subject to any other conditions that it directs, at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury. In such a case, the court will use its discretion to determine whether the defendant has met his burden to show a particularized need for the material which outweighs the policy of grand jury secrecy.

*Criminal Law & Procedure > Criminal Offenses > Fraud > Fraud Against the Government > Tax Fraud > General Overview*

Although the United States Court of Appeals for the Tenth Circuit has apparently not addressed duplicity in the context of 26 U.S.C.S. § 7201, **other circuits agree that tax evasion is a single crime**, and that in a criminal tax evasion case each year stands alone and the failure to pay taxes in each one of the years involved constitutes a separate offense.

**Opinion**

**Opinion by:**          STEPHEN P. FRIOT

**Opinion**

**ORDER**

Two motions are before the court: defendant's motion for disclosure of grand jury minutes and records, filed October 23, 2006 (doc. no. 15), and defendant's motion to dismiss the indictment due to duplicity, also filed October 23, 2006 (doc. no. 18). The government has responded, and the motions are ready for determination.

I. Grand Jury Minutes and Records

Fed. R. Crim. P., Rule 6(e)(3)(E)(ii) provides that the court "may authorize disclosure" of a grand jury matter, "at a time, in a manner, and subject to any other conditions that it directs," at the request of a defendant "who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." In such a case, the court will use its discretion to determine whether the defendant has met his burden to show a particularized need for the material which outweighs the policy of grand jury secrecy. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400, 79 S. Ct. 1237, 3 L. Ed. 2d 1323 (1959).

As the court understands defendant's argument regarding her showing of particularized need, it is that she needs production of all grand jury minutes and records for the grand jury returning the instant indictment and for any other grand jury which has investigated or considered the information and allegations contained in the indictment, because she asserts that if this matter was submitted to the grand jury without appropriate instructions concerning the elements of property law that she asserts govern the defendant's purported ownership of the property which the government claims defendant did not use to pay the taxes in question, defendant would be entitled to dismissal of the

1yjcases                                          **2**

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

02580063

indictment because she is not, in fact, the owner of that property and, if properly instructed regarding the elements of ownership, the grand jury would not have indicted her.

In support of her argument, defendant cites the Federal Rules of Criminal Procedure, but she cites no decisions in which courts considered any arguments similar to the one she makes here. The motion makes clear that defendant already has the statements of witnesses who are likely to be called to testify on behalf of the government at trial and to the grand jury testimony of the investigating agent in this case. Moreover, defendant's request for disclosure is extremely broad, and it is not tailored in any way to require the production of any instructions or other statements which might have been given to the grand jury regarding property law principles or elements to the extent that such law might arguably pertain to a determination of plaintiff's ownership of the subject property.

Defendant's motion for disclosure **DENIED**. Defendant's request is highly conjectural, and appears to be based on what she *hopes* disclosure may reveal, rather than on any showing of facts indicating a particularized need.

## II. Duplicity

Defendant has moved for dismissal of the indictment, arguing that count one is duplicitous because it charges an alleged failure to pay any one of four separate quarterly employment taxes and because count two charges an alleged failure to pay any one of three quarterly employment taxes.

The indictment charges defendant with two counts of willfully attempting to evade and defeat the payment of quarterly employment taxes in violation of 26 U.S.C. § 7201. Each count charges defendant with a single offense of evasion of payment of quarterly employment taxes. Specifically, the first count charges an evasion for taxes due in the year 1995, and the second count charges an evasion for taxes due in the year 1999.

Neither of the two cases which defendant quotes in her brief are tax evasion cases. Although the Tenth Circuit has apparently not addressed duplicity in the context of § 7201, **other circuits agree that tax evasion is a single crime**, and that in a criminal tax evasion case each year stands alone and the failure to pay taxes in each one of the years involved constitutes a separate offense. *See,* United States v. Smith, 335 F.2d 898, 900-01 (7th Cir. 1964)(indictment alleging income tax evasion for the years 1952 and 1953 in two counts upheld, as the counts pertained to a continuing course of illegal conduct in the sense that the intention was to avoid taxes so long as payoffs continued, and noting that in a criminal tax evasion case each year stands alone). Where acts could be characterized as part of a single, continuing scheme of tax evasion, the prosecutor may even charge conspiracy to evade several years' taxes as one count, without making the indictment duplicitous. United States v. Shorter, 257 U.S. App. D.C. 358, 809 F.2d 54, 56 (D.C. Cir. 1987), abrogated on other grounds.

Here, the prosecutor opted to charge only one count for the 1995 evasion and only one count for the 1999 evasion, rather than cause the defendant to be subject to several special assessments for each of these tax years. The government states that its evidence will show that the affirmative acts of evasion by the defendant were to defeat payment of taxes owing in each of the years charged and were not acts which were specifically targeted at any particular quarterly tax.

In these circumstances, the court finds and concludes that the indictment is not duplicitous. Defendant's motion to dismiss on grounds of duplicity is therefore **DENIED.**

Dated this 13th day of November, 2006.

STEPHEN P. FRIOT

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

02580063

**United States of America, Petitioner, v. Living Word Christian Center, Respondent.**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**
**2009 U.S. Dist. LEXIS 6902; 103 A.F.T.R.2d (RIA) 714**
**Civil No. 08-mc-37 ADM/JJK**
**January 30, 2009, Decided**
**January 30, 2009, Filed**

**Editorial Information: Prior History**

United States v. Living Word Christian Ctr., 2008 U.S. Dist. LEXIS 106639 (D. Minn., Nov. 18, 2008)

**Counsel**                 For United States of America, Petitioner: Robert E Fay, LEAD ATTORNEY, US Department of Justice, Washington, DC.
                For Living Word Christian Center, Respondent: Walter A Pickhardt, Faegre & Benson LLP, Mpls, MN.
**Judges:** ANN D. MONTGOMERY, U.S. DISTRICT JUDGE.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Petitioner United States Government objected to a magistrate judge's report and recommendation to deny its request to enforce an Internal Revenue Service summons against respondent church.U.S. Government's petition to enforce administrative summons against church was denied because Director of Exempt Organizations, Examination was not an appropriate high-level Treasury official who could make necessary "reasonable belief" determination required by 26 U.S.C.S. § 7611(a)(2) and (h)(7) before the church tax inquiry and examination.

**OVERVIEW:** The IRS sent the church a notice signed by the Director of Exempt Organizations, Examination that it was opening a church tax inquiry. The IRS issued an administrative summons to determine whether the church's tax-exempt status was legitimate. The court adopted the magistrate's recommendation to deny the Government's petition to enforce the summons. An "appropriate high-level Treasury official" had not made the necessary "reasonable belief" determination required by 26 U.S.C.S. § 7611(a)(2) and (h)(7) before a church tax inquiry and examination of the church's records could occur because the responsibilities of the Commissioner Tax Exempt and Government Entities were more closely aligned with those of the Regional Commissioner. The court rejected the Government's argument that the procedure for a secondary review provided insight into the intention of Congress with regard to initial church tax inquiries because there was no indication that a second inquiry initiated by a person with more expertise demonstrated that Congress shifted its priorities in terms of requiring the first inquiry to be initiated by a person with a high level of political accountability.

**OUTCOME:** The court overruled the objections and adopted the report and recommendation. The court denied the petition. The court determined that the IRS could choose to re-initiate an inquiry subject to a review by an appropriate high-level Treasury official.

**LexisNexis Headnotes**

*Civil Procedure > Judicial Officers > Magistrates > Pretrial Orders*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*

1yhcases                                   **1**

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

02580063

In reviewing a report and recommendation, the district court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. 28 U.S.C.S. § 636(b)(1)(C); D. Minn. R. 72.2(b). A district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

*Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Administrative Summons (IRC secs. 6038A, 6038C, 6331, 6503, 7210, 7402, 7602-7605, 7609-7611) > Enforcement of Summons*

To obtain judicial enforcement of an administrative summons, the United States Government must establish a prima facie case by demonstrating that (1) the Internal Revenue Service (IRS) investigation is being conducted pursuant to a legitimate purpose; (2) the inquiry may be relevant to that purpose; (3) the IRS or Commissioner of Internal Revenue does not currently possess the information sought; and (4) the administrative steps required by the Internal Revenue Code have been followed.

*Tax Law > Federal Tax Administration & Procedure > Audits & Investigations > Examinations (IRC secs. 7601-7606, 7608-7613) > Church Tax Examinations & Inquiries*

The Internal Revenue Code specifies that a church tax inquiry may begin only after notice and if an appropriate high-level Treasury official reasonably believes (on the basis of facts and circumstances recorded in writing) that the church may not be exempt by reason of its status as a church, from tax or may be carrying on an unrelated trade or business or otherwise engaged in activities subject to taxation under Title 26. 26 U.S.C.S. § 7611(a)(1), (2). An "appropriate high-level Treasury official" is defined as the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region. 26 U.S.C.S. § 7611(h)(7). An appropriate high-level Treasury official is a "Regional Commissioner (or higher Treasury official. Treas. Reg. § 301.7611-1T, Q&A (1).

*Administrative Law > Judicial Review > Standards of Review > Statutory Interpretation*

The fair measure of deference to an agency administering its own statute has been understood to vary with the circumstances, and courts look to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position. The weight accorded to an administrative judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Administrative Law > Judicial Review > Standards of Review > Statutory Interpretation*
*Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Scope of Freedom*

The expertise of the Internal Revenue Service in tax administration is not the type of expertise entitled to deference on an issue that requires the balancing of First Amendment issues.

**Opinion**

**Opinion by:**     ANN D. MONTGOMERY

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

02580063

Opinion

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Petitioner United States of America's ("the Government") Objections [Docket No. 23] to Magistrate Judge Jeffrey J. Keyes' Report and Recommendation ("R&R") [Docket No. 21]. The R&R recommends that the Government's Petition to Enforce Internal Revenue Summons [Docket No. 1] be denied because an "**appropriate high-level Treasury official**" has not made the necessary "reasonable belief" determination required by Congress before a church tax inquiry and examination of a church's records can occur. 26 U.S.C. §§ 7611(a)(2) and (h)(7). For the reasons set forth below, the Government's Objections are overruled and the R&R is adopted.

### II. DISCUSSION

The procedural and factual background, described in the R&R, is incorporated by reference for review of the Government's Objections. In April 2007, the Internal Revenue Service ("IRS") began investigating Living Word Christian Center ("LWCC") after receiving reports that LWCC may be engaging in conduct, including improperly conferring economic benefits on its senior pastor Reverend James M. Hammond, which may jeopardize its tax-exempt status. The IRS sent LWCC a notice signed by Marsha A. Ramirez, the Director of Exempt Organizations, Examination ("DEOE"), that it was opening a church tax inquiry. LWCC responded to the notice, and its response caused the IRS to open a church tax examination of LWCC's records. Before that examination could take place, LWCC asserted that the IRS's notice was defective because it was authorized by the DEOE who is not an **appropriate high-level Treasury official**. The IRS then issued an administrative summons to LWCC asserting that it needed the information sought in the summons to determine whether LWCC's tax-exempt status as a church is legitimate. When LWCC refused to comply with the summons, the IRS petitioned the Court for an order directing LWCC to comply in full. After a thorough examination of the issues and two rounds of briefing, Judge Keyes denied enforcement of the summons because the DEOE is not an **appropriate high-level Treasury official** to make the "reasonable belief" determination required before an examination of a church's records can occur.

### A. Standard of Review

In reviewing an R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. LR 72.2(b). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

To obtain judicial enforcement of an administrative summons, the Government must establish a prima facie case by demonstrating that (1) the IRS investigation is being conducted pursuant to a legitimate purpose; (2) the inquiry may be relevant to that purpose; (3) the IRS or Commissioner does not currently possess the information sought; and (4) the administrative steps required by the Internal Revenue Code have been followed. *See United States v. Powell*, 379 U.S. 48, 57-58, 85 S. Ct. 248, 13 L. Ed. 2d 112 (1964). The Internal Revenue Code specifies a church tax inquiry may begin only after notice and if:

an **appropriate high-level Treasury official** reasonably believes (on the basis of facts and

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

02580063

circumstances recorded in writing) that the church . . . may not be exempt by reason of its status as a church, from tax . . . or . . . may be carrying on an unrelated trade or business . . . or otherwise engaged in activities subject to taxation under this title.26 U.S.C. § 7611(a)(1), (2). An "**appropriate high-level Treasury official**" is defined as "the Secretary of the **Treasury** or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region." 26 U.S.C. § 7611(h)(7). Upon the enactment of this statute and following a formal notice and comment period, the IRS determined that an **appropriate high-level Treasury official** was a "Regional Commissioner (or higher **Treasury official**)." Treas. Reg. § 301.7611-1T, Q&A (1).

**The difficulty in applying the statute to this case was created by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 1001(a), 112 Stat. 685 (1998), which eliminated the position of Regional Commissioner. Congress did not amend the definition of "appropriate high-level Treasury official," and the IRS has not, in the ensuing years, undertaken any rule-making procedures to amend its own definition. Instead, the IRS delegated authority to other IRS officials to assume the former responsibilities of the Regional Commissioners. *See* Delegation Order 193 (Rev. 6) (last revised November 8, 2000). In the instant case, the DEOE was the individual who made the reasonable belief determination required by 26 U.S.C. § 7611. *See* Internal Revenue Manual § 4.76.7.4 (June 1, 2004).**

Because the enforceability of the summons turns on the IRS's interpretation that the DEOE is an **appropriate high-level Treasury official**, the Court must make a determination of the **level** of deference afforded to that interpretation. Judge Keyes determined that *Skidmore* deference applies, and the Government does not contend otherwise. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944); *see also* R&R at 15-20; Objections at 3-4. Under *Skidmore:*

> [t]he fair measure of deference to an agency administering its own statute has been understood to vary with the circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position. . . . The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.*United States v. Mead Corp.,* 533 U.S. 218, 228, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001) (quoting *Skidmore,* 323 U.S. at 140 (1944)).

Judge Keyes ultimately found that the IRS's interpretation was not persuasive and thus not entitled to deference. Instead, he found that an important constitutional interest underlies the requirements of a church tax inquiry--First Amendment protections against the Government's possible intrusion into religious affairs. R&R at 25. Congress created § 7611 to balance the rights of legitimate churches with the need for the IRS to investigate and eliminate church tax avoidance schemes. *Id.* Judge Keyes found that given the balancing of the constitutionally protected rights, the person responsible for determining "reasonable belief" should have broad responsibility and experience and have a **high**-profile position that would make it likely she has a heightened understanding the political and policy interests at stake. *Id.* Prior to the 1998 reorganization, the designated person was the Regional Commissioner, an **official** only one management **level** removed from the Commissioner of the IRS. *Id.* at 28. Judge Keyes reasoned that the DEOE, on the other hand, is four management levels removed from the Commissioner of the IRS and therefore is not the "**high-level Treasury official**" envisioned by Congress to properly serve the balancing function. *Id.* at 29. The nearest equivalent to the Regional Commissioner under the current IRS organization is the Commissioner Tax Exempt

1yhcases                                        4

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

025800063

and Government Entities ("TEGE"). *Id.* at 27.

## B. Objections

The Government argues that Judge Keyes failed to give **appropriate** weight to the IRS's reasonable interpretation. Objections at 4. It explains the result of Congress's 1998 mandated reorganization was a shift from geographical regional directors to directors based on areas of expertise. As a result, no single **official** has the areas of responsibilities previously assigned to the Regional Commissioners. Thus, it is argued, the added expertise of the DEOE in tax exempt areas makes her a better candidate to initiate a church tax inquiry. The Government, however, fails to explain how the DEOE has the background to satisfy the broader view of the political/policy balancing role possessed by the Regional Commissioners. The Court agrees with Judge Keyes that the DEOE does not constitute an **appropriate high**-ranking **Treasury official**.

The Government next argues that by not comparing § 7611(a) and § 7611(f), Judge Keyes overlooked evidence that Congress considered national perspective and exempt-organization expertise more important than the rank and command chain in initiating church tax inquiries. Objections at 6. Section 7611(f) protects churches from unnecessary repeated inquiries if the first inquiry does not result in either (1) a revocation of tax-exempt status or (2) a request for a change in the church's operational practices. Prior to the 1998 reorganization, a second inquiry could only be approved by the Assistant Commissioner for Employer Plans and Exempt Organizations ("EP/EO"), a person three levels from the IRS Commissioner. The Government then argues that because the requirements for a second inquiry are more stringent, and Congress allowed a lower ranking member to conduct this more sensitive review even after the 1998 reorganization, Congress valued expertise over rank.

The Court disagrees that the procedure for a secondary review provides insight into Congress's intention with regard to initial church tax inquiries. If the inference is that Congress intended to value expertise over national perspective and political accountability because of the "sensitive" nature of secondary inquiries, this inference overlooks that at the time of the first review, a politically accountable Regional Commissioner balanced the First Amendment rights of the church with the IRS's need for an inquiry. There is no indication that a second inquiry initiated by a person with more expertise demonstrates that Congress shifted its priorities in terms of requiring the first inquiry to be initiated by a person with a **high level** of political accountability.

The Government's next argument is that to the extent Judge Keyes determined that the DEOE did not have the broad scope of authority and array of duties that the Regional Commissioner had, the Commissioner TEGE also does not have a similar broad scope of authority and array of duties. Judge Keyes did not state that the Commissioner TEGE had the same broad array of duties as the Regional Commissioner. Instead, he found that the Commissioner TEGE's responsibilities, rather than the DEOE's responsibilities, are more closely aligned with those of the Regional Commissioner.

The Government's final objection is that Judge Keyes failed to adequately credit the IRS's expertise and inappropriately took into account the IRS's lack of formal rule making in his determination. While expertise is one factor a court should consider under *Skidmore* deference principles, Judge Keyes found that the **level** of deference was "not as great" because the interpretation in question does not "require the IRS's technical tax expertise." R&R at 22-23. The Government maintains that Judge Keyes failed to consider the IRS's expertise in tax administration. However, the IRS's expertise in tax administration is not the type of expertise entitled to deference on an issue that requires the balancing of First Amendment issues. Finally, Judge Keyes' critique of the IRS's failure to conduct formal notice-and-comment rule making does not necessarily mean the interpretation was accorded less weight under *Skidmore* deference. This Court also ultimately finds the IRS's interpretation

lyhcases                                          5

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

App. 72

02580063

unpersuasive and adopts Judge Keyes' determination that the IRS's summons be denied because it was not authorized by "an **appropriate high-level Treasury official**." The IRS may choose to reinitiate an inquiry subject to a review by an "**appropriate high-level Treasury official**" consistent with this Order.

## III. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner's Objections [Docket No. 23] are **OVERRULED;**

2. The R&R [Docket No. 21] is **ADOPTED;**

3. Petitioner's Petition to Enforce Internal Revenue Summons [Docket No. 1] is **DENIED;** and

4. This action is **DISMISSED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

/s/ Ann D. Montgomery

ANN D. MONTGOMERY

U.S. DISTRICT JUDGE

Dated: January 30, 2009.

1yhcases                                          6

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

02580063

Internal Revenue Service
Area Director

Treasury Department
Internal Revenue Service

**Date:** January 26, 2004

**Examiner:**
Donna Meadors

**Telephone Number:**
(918)581-7030 x241

**Refer Reply To:**
1645 S. 101st E. Ave, Suite 226
Mail Stop 4131:DM
Tulsa, OK 74128

Lindsey K. Springer
5147 S. Harvard, #116
Tulsa, OK 74135

**Date, Place & Time of Examination:**
**Wednesday, February 11, 2004**
**9:00 a.m.**
**1645 S. 101st E. Avenue**
**Taxpayer Service, 2nd Floor**

Dear   Mr. Springer:

We have reviewed certain materials with respect to your tax shelter promotion.  We are considering possible action under Section 6700 and 7408 of the Internal Revenue Code relating to penalties and an injunction action for promoting abusive tax shelters.  In addition, we plan to consider issuing "pre-filing notification" letters to the investors who have invested in this promotion.

You are requested to meet with the examiner at the above date, time and location.  Enclosed is a list of documents, books and records that you should have available and questions you should be prepared to reply to at that time.

If we conclude that penalties, injunction, and/or "pre-filing notification" action is appropriate, you will be afforded an opportunity to present any facts or legal arguments that you feel indicate that such action should not be taken.

Sincerely,

Donna Meadors
Revenue Agent # 73-2558

Enclosures:
     Form 4564, Information Document Request
     Publication 3498
     Publication 1

App.  74

Letter 1844 (9-83)

Copy provided courtesy of:  http://www.ProtectOurLiberty.org

THE REPOSITORY™

**ARCHIVE INDEX SYSTEMS, INC.**

IMAGING TECHNOLOGIES TO EXPAND MAN'S KNOWLEDGE

P.O. Box 40135

**BELLEVUE, WASHINGTON 98015**

(425) 643.1131; FAX (240) 384-7297

Response to this report: diehold@comcast.net

RESELLERS OF
PRODUCTION DOCUMENT SCANNERS
WIDE-FORMAT SCANNERS
CHECK SCANNERS
WEB-BASED DOCUMENT IMAGING SOFTWARE
SCANNING SOFTWARE

**WEB PAGES**
www.archiveindex.com
www.wholesalecheckscanners.com

# News Release of June 13, 2011

Final Analysis of President Obama's Certificate of Live Birth

By Douglas Vogt

Re: Legal proof that President Obama's Certificate of Live Birth is a forgery.

Dear Sir/Madam,

I have irrefutably proven that the Certificate of Live Birth that President Obama presented to the world on April 27, 2011 is a fraudulently created document put together using the Adobe Photoshop or Illustrator or other graphic programs on a Mac OS computer and the creation of this forgery of a public document constitutes a class B felony in Hawaii and multiple violations under U.S. Code Title 18, Part 1, Chapter 47, Sec.1028, and therefore an impeachable offense. When this comes to the public's attention, it will be the greatest scandal in the country's history—nothing comes even close. This will surpass all previous scandals including the Watergate scandal of the Nixon administration.

### My Credentials

I have a unique background that enables me to analyze this document in a competent, detailed, and extensive manner. I owned a typesetting company (Nova Typesetting) for eleven years, and thus have extensive knowledge and experience in type and form design. I have owned Archive Index Systems since 1993, a company that sells a wide selection of document scanners worldwide, and which also developed and sold document imaging software (TheRepository). Additionally, I have an extensive knowledge of how scanners function and their capabilities. I have also sold other document imaging programs, such as Laser Fiche, Liberty and Alchemy. I have sold and installed document imaging systems in city and county governments, and thus have extensive knowledge of municipal and county document imaging programs and procedures, including the design and implementation of such programs. Additionally, I have a good working knowledge of Adobe Photoshop and Illustrator. These factors will be crucial in understanding what has occurred with Obama's Certificate of Live Birth.

### What President Obama Presented to the Public is an alleged Certificate of Live Birth.

What President Obama presented is not the hospital birth certificate. In most states the hospital birth certificate would have the imprint of the baby's footprint, weight, length and other information. Most hospitals take a footprint of the baby before the baby even leaves the birthing room. This is done to establish positive identification. In my state of Washington, the religion of the parents is even identified on the hospital birth certificate. The birth certificate would be the source of the same information that would be typed onto the Certificate of Live Birth (the Long Form, COLB). What President Obama released was supposedly a copy of the Long Form that the county gets from the hospital, which is typed on a blank form and given a the hospitals by the county. That copy is then mailed to the county Board of Health and kept as a legal government document. On Obama's form (see Figure 1) the County Clerk supposedly hand stamped the form on the upper right hand corner

Copy provided courtesy of: http://www.ProtectOurLiberty.org

with a Bates number stamp. The number is a sequential number that reflects the sequence of Certificates that come into the County Health Department on a daily basis. The number was most likely stamped by hand because the number is crooked. The County Clerk also hand stamps the date of acceptance in boxes 20 and 22. Obama's Long Form was supposedly received on August 8, 1961, four days after his birth. The County Clerk would then sign the certificate (box 21) with his or her complete legal name, no initials.

 

Figure 1. Tiff image of Obama's Certificate of Live Birth dated August 8, 1961.

Figure 2. The microfilmed Certificate of Live Birth of Susan Nordyke dated August 11, 1961.

There are four important things wrong with the White House story of how they acquired the Certificate of Live Birth from the Department of Health on April 25, 2011 and with the document they presented to the country on April 27, 2011. There was a prepress conference at 8:48 a.m. about an hour before President Obama gave his news conference. The 8:48 a.m. press conference was given by Mr. Carney the Press Secretary, Mr. Dan Pfeiffer the Director of Communications and Mr. Robert Bauer the President's White House Counsel (now resigned). In that press conference Mr. Bauer gave the impression that it was a difficult process to get the President a Long Form Certificate of Live Birth but when I examined the Hawaii law (Appendix B) §338-13 states "the department of health **shall** [my emphasis], upon request, furnish to any applicant a certified copy of any certificate, or the contents of any certificate, or any part thereof." Further §338-18 Disclosure of records section list a great number of parties who would have a right to get such a form including: "The registrant;" "A person or agency acting on behalf of the registrant"; and "A governmental agency or organization who for a legitimate government purpose maintains and needs to update official lists of persons in the ordinary course of the agency's or organization's activities." The three I have listed here the White House Attorney could have easily used to demand a certified copy of the Long Form Certificate of Live Birth. There were over twenty different types of individuals or agencies who could have legally requested these certificates with little difficulty.

The second major problem is Mr. Pfeiffer's admission that they had received two stamped and sealed copies of the COLB from Hawaii. This was revealed when a reporter asked Mr. Pfeiffer:

"Q  You've got two certified copies, according to this study. You have these physical --
MR. PFEIFFER: Yes.  I showed you one. Just one.

App. 76

Copy provided courtesy of:  http://www.ProtectOurLiberty.org

Gynecological Hospital. Since we have an example of a microfilmed Long Form then it is safe to say that all Certificates in that period were microfilmed and still available for inspection as well as the original paper copy. Also these Certificates were embossed with the County's department seal (see Figure 21) as well as signed.

The Federal Government, to standardize law and security features, prevent fraud and detect terrorists, Passed The Federal Minimum Standards for Birth Certificates in 2004; Title 7, Sec. 7211(a)-(d), (See Appendix C for the entire law citation) Which states:

"(b) Standards for Acceptance by Federal Agencies. -

"(1) In general. - Beginning 2 years after the promulgation of minimum standards under paragraph (3), no Federal agency may accept a birth certificate for any official purpose unless the certificate conforms to such standards.

"(2) State certification. -

"(A) In general. - Each State shall certify to the Secretary of Health and Human Services that the State is in compliance with the requirements of this section.

In addition the Federal law clearly states that the Secretary of Health and Human Services may conduct periodic audits of each State's compliance with the requirements of this section. The purpose of the law was to standardize the formats and security features on birth and death records to prevent fraud and detect terrorists. The law also makes it clear that the Federal Government wanted the states to computerize their source documents, which also meant scanning them into a document imaging system. In Appendix C I have highlighted in red, the important sections of the law.

"(D) Audits. - The Secretary of Health and Human Services may conduct periodic audits of each State's compliance with the requirements of this section.

One of the reasons I mentioned the Federal law is because when President Obama gave his news conference, presenting his alleged Certificate of Live Birth, he stated that they had to get special permission to get a copy of his Certificate. His statement appears to be blatantly wrong because these are public documents and he could have requested a copy himself at any time as well as his Secretary of Health and Human Services could have audited the County's records and gotten a copy any time they wanted.

I do not know when the Hawaii Health Department acquired and implemented a document imaging system but it had to be within two years of the enactment of this law. Let me explain the process whereby the Long Form Certificates would have been scanned in. When a county or city institutes a document imaging system, it would start scanning their documents into the system. If the forms are all just type and lines, it would most likely be scanned in as binary images (black pixel or white pixel). If there are photos or other halftone graphics on the page, it may be scanned in as a grayscale which consists of 256 levels of gray going from 0 for white to 255 for black. If there is color on the documents, they may scan them in as color images, but color images are large and impractical to store significant amount of them on the server. The legitimate forms done by the Hawaii Board of Health were scanned in using both grayscale and binary modes. The reason I know this is because I found both methods used on the forms. You cannot have both on an original scanned image from an original.

I should also mention that most document imaging programs save the images as Group IV TIFFs because they produce the best compressed file size. Later programs will also let you put PDFs and other file formats into the database but they are not created by the scanning program but rather existing PDF files created external to the scanning program.

Some of the information on the Long Form is also put into government databases that are used to produce the short form version of the Certificate of Live Birth.

5

Document imaging systems use a database engine to store the database fields and file locations. Some of the popular databases used are Oracle or Microsoft's Sequel Server. The database is used by the clerks to perform data searches.

The images would be stored on the server at a specific location and the file name would be a series of number and letters. The image would include the correct file origination date (the system date of the server with time added). All imaging programs will let the clerk export an image out and save it in a different location or give it to someone else.  The original would still be in the file server. If the Clerk had permission on the server and/or imaging program they could also delete the original image and replace it with another, but the origination date for the image file on the server would be newer than the original. So if there was a real Obama Certificate of Live Birth on the server and for some reason someone wanted to alter it, the new image file would have a newer system date. If there was never a legitimate Obama Certificate of Live Birth entered into the system, then the fraudulent one would have a much newer origination date. System dates on servers are usually controlled by clocks outside the server and usually online. Usually the only person who has full access to the server is the system administrator in the IT department. No clerk would or should have that kind of access.

There would also be a database record that contains the file name of the image in the server with its correct location. The program would also have an audit trail that records who logged on, the time, what the person added, deleted, entered, searched for and even the IP address of the PC the person logged into. All of these records are public records that any member of the public can request a copy of. That is true here in Washington State but it is more restrictive in Hawaii. If the County Health Department gets a request for a Long Form, the clerk would search for the name in the document imaging program. When the program finds the correct name, the image of the Certificate of Live Birth would appear on the screen, which the clerk would print out on a laser printer on some type of security paper which is green in the case of Obama's Certificate (see Figure 1). That is what we are led to believe from what Obama presented on television to the public on April 27, 2011.

**What I Discovered about Obama's Certificate of Live Birth and why it is a Forgery.**

What the Obama administration released is a PDF image that they are trying to pass off as a Certificate Live Birth Long Form printed on green security paper by the County Health Department, but this form is a created forgery. Ironically the country has a lot to thank Mr. Donald Trump and Mr. Jerome Corsi and his new book, Where's the Birth Certificate?, because they made President Obama's birth certificate a public issue which in turn forced the White House to produce this forgery to answer both of them. The Obama Certificate of Live Birth Long Form is a forgery for the following reasons.

**1. Curved and non-curved type.** The image we are looking at was scanned in grayscale and some part in binary which cannot be on the same image. The reason I know this is because of the shadowing along the gutter (left-hand side) is produced by scanning in grayscale. It also means that the county employee, who did the original scanning of all the forms, did not take the individual pages out of the post binders. The result is that all the pages in that book display a parallax distorted image of the lines and type. They curve and drop down to the left. If you look at line 2 (see Figure 3) on the form that says *Sex* you will notice the letters drop down one pixel but the typed word *Male* does not. Also notice the line just below *Male* drops down 3 pixels.

The second incident of this parallax problem is seen in line 6c *Name of Hospital or Institution* (see Figure 4). The word *Name* drops down 2 pixels, but the typed hospital name, *Kapiolani*, does not drop down at all, and again the line just below drops down 2 pixels, but not the name *Kapiolani*.

6

Copy provided courtesy of: http://www.ProtectOurLiberty.org

The conclusion you must come to is that the typed in form was superimposed over an existing original Certificate of Live Birth form. In fact, since I found some of the form headings scanned in as binary and grayscale, the form itself is a composite but the person who created it did not flatten the image of the blank form and save it as one file before they started placing the typewriter text on the composite form. The individual(s) who perpetrated this forgery could not evidently find a blank form in the clerks imaging database, so they were forced to clean up existing forms and overlay the typewriter type we see here. The forger was also looking for certificates with the correct stamped dates and that is why I think they used more than one original form. At first I wondered why the forger didn't just typeset the entire form from scratch and overlay the type and not have to worry about the parallax problem. Then I remembered that in the early 1960s there was no phototypesetting and this form was set in hot metal from a linotype machine. The type design I think is Times Roman but they could never replicate the exact design. They were stuck having to use existing forms that were scanned in using binary and grayscale.



Figure 3. Line 2 of the form. Baseline differences.



Figure 4. Line 6c at 500%. The typewriter name of the hospital does not drop down 2 pixels.

**2. There is a white haloing around all the type on the form.** Figure 5 is an example of this. This effect should not appear on a scanned grayscale image. Figure 6 is a grayscale image scanned in at 240 dpi. You will notice that there is no haloing effect around the type and also the security pattern is seen through the type. Figure 7 is a color image where you can clearly see the security green color through the type and no haloing. Figure 8 shows a Black and White (binary) image of the same type. The important thing to remember is that you cannot have grayscale and binary on the same scan unless the image is a composite. This means that different components of the whole image are made up of smaller parts. Figure 9 is an enlarged version of Figure 6 showing what grayscale letters should look like compared to binary.

7

App. 79

Copy provided courtesy of: http://www.ProtectOurLiberty.org

The next question would be: What would have caused the haloing effect? We know that all the original Certificates of Live Birth (COLB) were microfilmed because we can see the Nordyke Certificate (see Figure 2) was microfilmed. Then some time after 2004 the paper original copies, in post binder books, were scanned using a commercial document scanner with a flatbed, scanned as grayscale images. The forger was working with two types of images. He/she may have used images printed from the microfilmed copy and then scanned the printout in grayscale. At that point the forger would have to invert the image so as to have a white background, black type. Figure 10 is an example of an inverted image of Figure 2. The result would be like Figure 9 but a whiter background. The image I am working with in Figure 10 is only 94 DPI but the forger was working with much higher resolution ($\geq$240 dpi). At that point the forger converted the grayscale to a binary image and placed it onto the background form image. The problem was that there were still image values for the pixels around the placed type so when he/she placed the type image over the background and instructed the program to bring the type "forward" it blanked out the background image, hence the haloing effect around the type.



Figure 5. Obama's form



Figure 6. Grayscale.

Figure 7. Color image.



Figure 8. Binary image.

Figure 9. An enlarged version of Figure 6 showing grayscale type.



Figure 10, Inverted image of Figure 2.

8

Case 4:09-cr-00043-SPF Document 594 Filed in USDC ND/OK on 02/10/11 Page 158 of 176
Copy provided courtesy of http://www.ProtectOurLiberty.org

**3. The Obama Certificate is loaded with both binary and grayscale letters** which is just another smoking gun that this form is a forgery. It appears the lines and some of the boxes were scanned using grayscale, but only some of the form headings were grayscale and sometimes it is only some letters. Figure 11 and Figure 4 give one example. You will notice that the *H* and, *al,* in Hospital, *I* in Institution, *If* and again the *h* and *l* in hospital were grayscale images, but the rest of the line is binary. The typewriter line below was scanned in as a binary image. I can also tell you for certainty that the form type was scanned in at a lower resolution (≤200 dpi). This is because of the size of the pixels on the letters were such that the openings on the *a* and *s* on the first line are not visible and filled in. This may also further indicate that forger took some of the type images from the microfilmed copies.


Figure 11. showing a mixture of grayscale and binary type on the same line.

Another example is found in form box 1a, his name *BARACK* for some reason the "R" is a grayscale image and the rest is binary (see Figure 13). That means the "R" was originally on the form and the rest was not until it was added.

The question again is: Why did the forger leave some grayscale type images on the form and not just erase the whole form? The answer is that he/she needed the grayscale images to re-establish the baseline of the type for the superimposed binary type. This also told me that the forger was an experienced graphic artist.


Figure 13. Another example of grayscale and binary on the same line.


Figure 14. The last "1" is grayscale, but the rest are binary.

Another example is the Certificate number itself (see Figure 14). The last "1" on the form is a grayscale image but the rest of the numbers are not. It also has a different baseline. This is just another example of a cut and paste job. It also means we do not know what the real Certificate number is if there even is one. There are other form boxes that display the same feature, boxes: 5b, 7e, 11, 13, 16, 18a.

9

Copy provided courtesy of http://www.ProjectAVALON.net

for a form that had the right date namely "August 8 19_1." As you can see the only things that are printed in dark green (R=71, G=92, B=73) are "Date A" and "AUG -8 6." The rest of the type is in black. This tells me that the forger was working in color mode and what they copied from had a color value for some reason unless they put a color value on it.


Figure 15. Two different colors, dark green and black.

The same thing is found in form box 20 "Date Accepted by Local Reg." Figure 16 again shows that the date has two different colors. The "AUG -8 196" is in dark green (R=87, G=111, B=87) and the "1" is in black. Yet again another irrefutable proof this form is a forgery. Form box 17a displays the same two color image in the word "None". The "Non" is in dark green.


Figure 16. Another example of two colors on the same line.

6. **The official seal is not part of the Certificate of Live Birth and they used the wrong size impression of a seal.** The Hawaiian law (Section 11-1-2 Seal of the Department of Health) states:

> a) The official seal of the department of health shall be circular in shape, **two and one-fourth inches in diameter.** At the curve on the top portion there shall be the words "DEPARTMENT OF HEALTH" and at the curve on the bottom portion there shall be the words "STATE OF HAWAII." At the curve on each side portion shall be a star. In the center of the seal shall be the Caduceus, a winged rod entwined with two serpents, which has long been recognized as a universal symbol of medicine. The Caduceus shall be encircled by an indentation, which shall separate it from the words "DEPARTMENT OF HEALTH" and "STATE OF HAWAII ."


Figure 17, Seal on Obamas Short Form    Figure 18: Nordyke seal from 1966    Figure 19: Obama's COLB long form Apr.2011
(Figure 19 is courtesy of Kevin Powell; www.pixelpatriot.blogspot.com/)

The first Certification of Live Birth Obama the candidate produced in June of 2008 was the "Short Form" of the COLB. It had the Department of Health's seal embossed on it (see Figure 17) appearing on it about 1.8" from the bottom of the 11 inch paper. That told me the Health Department is using an electric embosser, which applies ample pressure to leave a clear visible embossment.

11

App. 82

STATE OF HAWAII  **CERTIFICATE OF LIVE BIRTH**  DEPARTMENT OF HEALTH

FILE NUMBER **151**  **61 10641**

| 1a. Child's First Name (Type or print) | 1b. Middle Name | 1c. Last Name |
|---|---|---|
| BARACK | HUSSEIN | OBAMA, II |

| 2. Sex | 3. This Birth | 4. If Twin or Triplet, Was Child Born | 5a. Birth Month | Day | Year | 5b. Hour |
|---|---|---|---|---|---|---|
| Male | Single | Twin | Triplet | 1st | 2nd | 3rd | August | 4 | 1961 | 7:24 P.M. |

| 6a. Place of Birth: City, Town or Rural Location | 6b. Island |
|---|---|
| Honolulu | Oahu |

| 6c. Name of Hospital or Institution (If not in hospital or institution, give street address) | 6d. Is Place of Birth Inside City or Town Limits? If no, give judicial district |
|---|---|
| Kapiolani Maternity & Gynecological Hospital | Yes ☒ No ☐ |

| 7a. Usual Residence of Mother: City, Town or Rural Location | 7b. Island | 7c. County and State or Foreign Country |
|---|---|---|
| Honolulu | Oahu | Honolulu, Hawaii |

| 7d. Street Address | 7e. Is Residence Inside City or Town Limits? |
|---|---|
| 6085 Kalanianaole Highway | Yes ☐ No ☒ |

| 7f. Mother's Mailing Address | 7g. Is Residence on a Farm or Plantation? |
|---|---|
| | Yes ☐ No ☒ |

| 8. Full Name of Father | 9. Race of Father |
|---|---|
| BARACK    HUSSEIN    OBAMA | African |

| 10. Age of Father | 11. Birthplace (Island, State or Foreign Country) | 12a. Usual Occupation | 12b. Kind of Business or Industry |
|---|---|---|---|
| 25 | Kenya, East Africa | Student | University |

| 13. Full Maiden Name of Mother | 14. Race of Mother |
|---|---|
| STANLEY    ANN    DUNHAM | Caucasian |

| 15. Age of Mother | 16. Birthplace (Island, State or Foreign Country) | 17a. Type of Occupation Outside Home During Pregnancy | 17b. Date Last Worked |
|---|---|---|---|
| 18 | Wichita, Kansas | None | |

| 18. I certify that the above stated information is true and correct to the best of my knowledge | 19a. Signature of Parent or Other Informant | 18b. Date of Signature |
|---|---|---|
| | (Signed) Ann Dunham Obama    Parent | 8-7-61 |

| | 19a. Signature of Attendant | 20. Date of Signature |
|---|---|---|
| | (Signed) David A. Sinclair    M.D. Midwife Other | 8-8-61 |

| 21. Date Accepted by Local Reg. | 21. Signature of Local Registrar | 22. Date Accepted by Reg. General |
|---|---|---|
| AUG - 8 1961 | (Signed) Oiolee | AUG - 8 1961 |

23. Evidence for Delayed Filing or Alteration

I CERTIFY THIS IS A TRUE COPY OR ABSTRACT OF THE RECORD ON FILE IN THE HAWAII STATE DEPARTMENT OF HEALTH

APR 25 2011

*Alvin T. Onaka*, Ph.D.
STATE REGISTRAR

Exhibit "C"

App. 8  3

**62 T.C.M. 1429**
**T.C. Memo. 1991-612**
**James B. Smith and Jean T. Smith**
**v.**
**Commissioner.**
**Docket No. 3778-89.**
**United States Tax Court.**
**Filed December 10, 1991.**

James B. Smith, pro se. Victor A. Ramirez and Randall G. Durfee, for the respondent.

[62 T.C.M. 1430]

### Memorandum Findings of Fact and Opinion

GOFFE, Judge:

The Commissioner determined deficiencies in petitioners' Federal income tax and additions to tax as follows:

JAMES B. SMITH

Taxable
Additions to Tax Under Sections

| Year | Deficiency | 6651(a)(1)[1] | 6653(a)(1) | 6653(a)(2) | 6654 | 6653(b)(1) | 6653(b)(2) |
|---|---|---|---|---|---|---|---|
| 1974 | $1,807 | $452 | $90 | * | $58 | -0- | N/A |
| 1975 | 1,986 | 496 | 99 | * | 86 | -0- | N/A |
| 1976 | 2,578 | 644 | 129 | * | 96 | -0- | N/A |
| 1977 | 2,194 | 548 | 110 | * | 78 | -0- | N/A |
| 1978 | 2,459 | 615 | 123 | * | 78 | -0- | N/A |
| 1979 | 2,684 | 671 | 134 | * | 112 | -0- | N/A |
| 1980 | 3,163 | 791 | 158 | * | 202 | -0- | N/A |
| 1981 | 3,834 | 957 | 191 | * | 295 | -0- | N/A |
| 1982 | 589 | -0- | -0- | N/A | -0- | $294 | ** |
| 1983 | 1,317 | -0- | -0- | N/A | 15 | 658 | ** |
| 1984 | 2,001 | -0- | -0- | N/A | 58 | 1,000 | ** |

* 50 percent of the interest due on the portion of the underpayment attributable to negligence.

** 50 percent of the interest due on the underpayment attributable to fraud.

JEAN T. SMITH

App. 84

Smith v. Commissioner, 62 T.C.M. 1429 (U.S.T.C., 1991)

Taxable
Additions to Tax Under Sections

| Year | Deficiency | 6651(a)(1) | 6653(a)(1) | 6653(a)(2) | 6654 | 6653(b)(1) | 6653(b)(2) |
|------|-----------|-----------|-----------|-----------|------|-----------|-----------|
| 1974 | $ 818 | $204 | $ 41 | * | $ 26 | -0- | N/A |
| 1975 | 906 | 226 | 45 | * | 39 | -0- | N/A |
| 1976 | 1,436 | 359 | 72 | * | 54 | -0- | N/A |
| 1977 | 947 | 237 | 47 | * | 34 | -0- | N/A |
| 1978 | 1,101 | 275 | 55 | * | 35 | -0- | N/A |
| 1979 | 1,187 | 297 | 59 | * | 50 | -0- | N/A |
| 1980 | 1,475 | 369 | 74 | * | 94 | -0- | N/A |
| 1981 | 1,706 | 425 | 85 | * | 131 | -0- | N/A |
| 1982 | 589 | -0- | -0- | N/A | -0- | $ 294 | ** |
| 1983 | 1,317 | -0- | -0- | N/A | 15 | 658 | ** |
| 1984 | 2,001 | -0- | -0- | N/A | 58 | 1,000 | ** |

* 50 percent of the interest due on the portion of the underpayment attributable to negligence.

** 50 percent of the interest due on the underpayment attributable to fraud.

JAMES B. SMITH AND JEAN T. SMITH

Addition to Tax under Sections

| Year | Deficiency | 6653(b)(1) | 6653(b)(2) |
|------|-----------|-----------|-----------|
| 1985 | $1,930 | $1,209 | ** |

** 50 percent of the interest due on the underpayment attributable to fraud.

The issues for decision are: (1) Whether the Commissioner correctly determined petitioners' income tax liabilities for the taxable years 1974-84; (2) whether the Commissioner correctly determined petitioners' joint income tax liability for the taxable year 1985; (3) whether petitioners are liable for the addition to tax under section 6653(a)(1) and (2) for negligent disregard of revenue laws for the taxable years 1974-81; (4) whether petitioners are liable for the addition to tax under section 6653(b)(1) and (2) for fraud for the taxable years 1982-85; (5) whether petitioners are liable for the addition to tax under section 6651(a)(1) for the failure to file returns for the taxable years 1974-81; (6) whether petitioners are liable for the addition to tax under section 6654 for failure to pay estimated tax for the taxable years 1974-81, 1983-84; and, finally,

(7) whether petitioners are liable for a penalty under section 6673.

### Findings of Fact

James B. Smith and Jean T. Smith (husband and wife or, collectively, petitioners) were residents of Malad, Idaho, at the time the petition in this case was filed. Petitioners did not file Federal income tax returns for the taxable years 1974-84. Petitioners filed a joint Federal income tax return for 1985. Petitioners also did not maintain adequate records during the years in issue with which to prepare the tax returns that were required to be filed.

[62 T.C.M. 1431]

On February 28, 1990, respondent served on petitioners a request for admissions pursuant to Rule 90. The Court filed what it deemed to be petitioners' response to the request for admissions on March 19, 1990, which this Court found to be insufficient and frivolous, thereby failing to comply with the requirements of Rule 90(c). In an Order dated April 11, 1990, we found petitioners' answers to be groundless within the meaning of section 6673. We ordered petitioners to properly answer respondent's request for admissions in full on or before May 14, 1990. Petitioners failed to make a written response as required by Rule 90(c). As a result, the matters in the request for admissions were automatically deemed admitted. Morrison v. Commissioner [Dec. 40,506], 81 T.C. 644, 647 (1983).

During the years in issue, petitioners received income from the following sources:

| Year Form | Payor Amount | Payee |
|---|---|---|
| 1980 W-2 | LA-Z-Boy $ 458.11 | James Smith |
| 1981 W-2 | David J. Joseph 80.00 | James Smith |
| 1982 W-2 | Thiokol, Inc. 13,558.20 | James Smith |
| 1983 W-2 | Thiokol, Inc. 22,121.06 | James Smith |
| 1984 1099-Int | Thiokol CU 18.00 | James Smith |
| 1984 W-2 | Thiokol, Inc. 27,486.63 | James Smith |
| 1984 1099-Int | Ireland Bank 12.00 | Jean Smith |
| 1985 1099-Int | Thiokol CU 37.00 | James Smith |
| 1985 W-2 | Thiokol, Inc. 28,304.92 | James Smith |

$92,075.92

Mr. Smith claimed eight exemptions on the Form W-4, Employee's Withholding Exemption Certificate, for the period beginning April 1982 to January 30, 1984. He also claimed 14 exemptions during the period beginning January 31, 1984 to June 4, 1985. He then claimed an "exempt" status beginning June 5, 1985 to September 21, 1986. Petitioners were entitled to claim no more than two exemptions during the taxable years at issue.

Petitioners filed a joint Federal income tax return for the taxable year 1985 which bore the notation, "filed under protest." They reported the wage income of Mr. Smith reflected on the Form W-2 and the interest income reflected on the Form 1099-Int. They claimed four exemptions and a residential energy credit. They claimed a refund of income tax in the amount of $50. The return was due on or before April 15, 1986. It was stamped "RECEIVED OSC 118, FEB 22 1988, IRS-OGDEN, UTAH" which is nearly two years after the due date. No extension of time was sought by petitioners from, nor granted by, the Commissioner.

fastcase

App. 86

-3-

The Commissioner mailed statutory notices of deficiency to petitioners on November 25, 1988. In the notices covering the taxable years 1974 through 1984, the Commissioner determined deficiencies in tax and additions to tax against each petitioner separately. The notice of deficiency covering the taxable year 1985 was based upon the examination of petitioners' joint return for the taxable year 1985. In that notice the Commissioner disallowed the residential energy credit and allowed only two of the four exemptions claimed. He also determined that the return was fraudulent and determined the addition to tax under section 6653(b)(1) and (2).

## Opinion

Issue One: Determination of Tax for 1974-1984

We must first decide whether petitioners received taxable income for the taxable years 1974 through 1984, inclusive. Petitioners admit that they did not file income tax returns, therefore respondent was forced to reconstruct petitioners' income.

Under section 446(a), a taxpayer's income is computed according to the taxpayer's regular method of accounting. If a taxpayer does not have a regular method of accounting, or if the method used does not clearly reflect income, section 446(b) empowers the Commissioner to devise a method that clearly reflects income. Cracchiola v. Commissioner [81-1 USTC ¶ 9410], 643 F.2d 1383, 1385 (9th Cir. 1981), affg. a Memorandum Opinion of this Court [Dec. 35,803(M)].

The Commissioner determined petitioners' income for the taxable years 1974 through 1981, inclusive, using data compiled by the Bureau of Labor Statistics. Giddio v. Commissioner [Dec. 30,254], 54 T.C. 1530, 1532-1533 (1970).[2] For the taxable years 1982 through 1984, inclusive, respondent reconstructed petitioners' income using Forms W-2, Wage and Tax Statement, and Forms 1099-Int, Interest Income.

The Commissioner's method of calculation is presumptively correct. Avery v. Commissioner

[62 T.C.M. 1432]

[78-1 USTC ¶ 9454], 574 F.2d 467, 468 (9th Cir. 1978). Petitioners have the burden of proving the Commissioner's method to be wrong. Welch v. Helvering [3 USTC ¶ 1164], 290 U.S. 111, 115 (1933); Rule 142(a). Petitioners do not contest the accuracy of the reconstruction of their income by respondent. At trial, the Court asked:

> THE COURT: Now what evidence are petitioners going to offer to show that those amounts of income are not correct?

> THE WITNESS: I'm not going to offer any evidence in that respect, but I intend to enter evidence from the Revenue Code as to who is and who isn't a taxpayer. * * *

We thus conclude that petitioners' taxable income as reconstructed by respondent for the taxable years 1974 through 1984, inclusive, is correct. Petitioners have presented no evidence of any deductions or credits which would be allowable for those years.

Issue Two: Determination of Tax for 1985

The Commissioner determined a deficiency in tax for the taxable year 1985 based upon disallowance of the residential energy credit and entitlement to two exemptions. Petitioners offered no evidence to support allowance of the credit or the exemptions claimed over those disallowed. Accordingly, the determination of the Commissioner is sustained. Rule 142(a).

Issue Three: Additions to Tax Under Section 6653(a)

The next issue for decision is whether petitioners are liable for the additions to tax under section 6653(a) for the negligent disregard

of rules and regulations for the taxable years 1974-81. Section 6653(a) provides for the addition of an amount equal to 5 percent of the underpayment which is due to negligence or intentional disregard of rules or regulations (but without intent to defraud) and 50 percent of the interest payable on the underpayment.

Section 6001 requires that every person liable to pay income tax to keep records of income so that the Commissioner will be able to determine tax liability. Petitioners are liable to pay income tax because they received compensation for services and interest income. Sec. 61(a)(1) and (4); Brushaber v. Union Pacific Railroad Co. [1 USTC ¶ 4], 240 U.S. 1, 17 (1916); Rowlee v. Commissioner [Dec. 40,228], 80 T.C. 1111, 1119-1120 (1983). Petitioners failed to exercise due care in that they did not file tax returns which they knew they were required to do. Thompson v. Commissioner [Dec. 38,918], 78 T.C. 558, 563 (1982); Robinson's Dairy, Inc. v. Commissioner [Dec. 24,608], 35 T.C. 601, 608-609 (1961), affd. [62-1 USTC ¶ 9447] 302 F.2d 42 (10th Cir. 1962).

Petitioners offered no records at trial; therefore, we conclude that they had none. Petitioners failed to maintain records as required by section 6001 and were negligent in not filing returns as required by law. Accordingly, we find for respondent on this issue.

Issue Four: Additions to Tax Under Section 6653(b)

The next issue is whether petitioners are liable for additions to tax under section 6653(b) for the taxable years 1982-85. Section 6653(b) provides for an addition to the tax if any part of the underpayment is due to fraud and 50 percent of the interest payable on the underpayment attributable to fraud. Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Stone v. Commissioner [Dec. 30,767], 56 T.C. 213, 220 (1971); Rule 142(b). This burden may be met by showing there is an underpayment of tax and that the taxpayer intended to conceal, mislead, or

otherwise prevent the collection of taxes. Candela v. United States [80-2 USTC ¶ 9839], 635 F.2d 1272 (7th Cir. 1980); Stoltzfus v. United States [68-2 USTC ¶ 9499], 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner [Dec. 40,228], 80 T.C. 1111, 1123 (1983).

Petitioners filed no returns for the taxable years 1982 through 1984. Accordingly, they underpaid their tax for those taxable years. An underpayment for purposes of section 6653(b) equals the amount of tax imposed if a return is not filed on or before the last day prescribed for filing. Sec. 6653(c)(1); sec. 301.6653-1(c)(1)(ii), Proced. and Admin. Regs.

Petitioners filed a joint return for the taxable year 1985 on which they claimed credit for tax withheld from Mr. Smith's wages. The Commissioner allowed two of the four exemptions claimed and disallowed the residential energy credit which adjustments were not contested by petitioners. These adjustments produced a deficiency in income tax and an underpayment of income tax.

Having found that there were underpayments of tax for the taxable years 1982 through 1985, the remaining question is whether such underpayments were due to fraud. The existence of fraud is a question of fact to be resolved upon a consideration of the entire record. Mensik v. Commissioner [64-1 USTC ¶ 9243], 328 F.2d 147, 150 (7th Cir. 1964), affg. [Dec. 25,314] 37 T.C. 703 (1962); Rowlee v. Commissioner, supra at 1123; Gajewski v. Commissioner [Dec. 34,088], 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Respondent cannot satisfy his burden of proving fraud by relying solely on the failure of petitioners to discharge their burden of proving error in the determination of the deficiencies. Otsuki v.

[62 T.C.M. 1433]

Commissioner [Dec. 29,807], 53 T.C. 96, 106 (1969).

Fraud is never presumed. Beaver v. Commissioner [Dec. 30,380], 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Stephenson v. Commissioner [Dec. 39,562], 79 T.C. 995, 1005-1006 (1982), affd. [84-2 USTC ¶ 9964] 748 F.2d 331 (6th Cir. 1984); Gajewski v. Commissioner, supra at 200. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Spies v. United States [43-1 USTC ¶ 9243], 317 U.S. 492 (1943); Gajewski v. Commissioner, supra at 200; Stone v. Commissioner, supra at 223-224.

Courts have relied on a number of indicia of fraud in deciding section 6653(b) issues. See, e.g., Bradford v. Commissioner [86-2 USTC ¶ 9602], 796 F.2d 303 (9th Cir. 1986), and cases cited therein. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia is persuasive evidence. These "badges of fraud" include: (1) Understatement of income, Grudin v. Commissioner [76-1 USTC ¶ 9445], 536 F.2d 295, 296 (9th Cir. 1976); Ruark v. Commissioner [71-2 USTC ¶ 9699], 449 F.2d 311, 313 (9th Cir. 1971); Estate of Rau v. Commissioner [62-1 USTC ¶ 9339], 301 F.2d 51, 54-55 (9th Cir. 1962); (2) inadequate records, Bradford v. Commissioner, supra at 307; Bahoric v. Commissioner [66-2 USTC ¶ 9535], 363 F.2d 151, 153-154 (9th Cir. 1966); Factor v. Commissioner [60-2 USTC ¶ 9551], 281 F.2d 100, 129 (9th Cir. 1960); (3) failure to file tax returns, Factor v. Commissioner, supra at 129; Powell v. Granguist [58-1 USTC ¶ 9223], 252 F.2d 56, 61 (9th Cir. 1958); (4) failure to cooperate with tax authorities, Bradford v. Commissioner, supra at 307-308; Ruark v. Commissioner, supra at 313; Powell v. Granquist, supra at 61; and (5) submission of false W-4 certificates, Hebrank v. Commissioner [Dec. 40,488], 81 T.C. 640 (1983); Rowlee v. Commissioner [Dec. 40,228], 80 T.C. at 1123-1126; Habersham-Bey v. Commissioner [Dec. 38,826], 78 T.C. 304, 313-314 (1982).

In a previous case in this Court involving these petitioners, petitioners had filed returns for the taxable years 1969 and 1970. Smith v. Commissioner [Dec. 42,007(M)], T.C. Memo. 1985-167. Petitioners were, therefore, aware of the obligations to prepare and submit tax returns. We have also found that petitioners filed false W-4 certificates claiming excessive exemptions or "exempt" status when they were entitled to only two exemptions. This action further reveals petitioners' intent to evade the payment of income taxes.

Petitioners refused to stipulate to undisputed facts and made no attempt to cooperate in any way with authorities from the Internal Revenue Service. Instead, they advanced nothing more than the usual "protestor" arguments. Reliance upon frivolous tax protestor arguments which have often been rejected by the courts can be evidence of fraud. Castillo v. Commissioner [Dec. 41,940], 84 T.C. 405, 410 (1985). We conclude, based upon the record before us, respondent has presented clear and convincing evidence of fraud by petitioners in this case. Accordingly, we sustain the determination that petitioners are liable for the additions to tax for fraud under section 6653(b) for the taxable years 1982-85.

Issue Five: Additions to Tax Under Section 6651(a)(1)

The next issue for decision is whether petitioners are liable for additions to tax under section 6651(a)(1) for the taxable years 1974 through 1981. Section 6651(a)(1) imposes a 5 percent addition to the amount of tax due when a taxpayer fails to file an income tax return as required by the Code. This addition to the tax increases by 5 percent for each month that the return is not filed, but is not to exceed 25 percent in the aggregate. The addition will not be imposed if the failure to file the return "is due to reasonable cause and not due to willful neglect." Sec. 6651(a)(1).

Petitioners were well aware of their obligation to file income tax returns. They have been the subject of previous cases before this Court advancing traditional well-worn tax protestor arguments. See Smith v.

fastcase

Commissioner [Dec. 35,875(M)], T.C. Memo. 1979-51; Smith v. Commissioner [Dec. 42,007(M)], T.C. Memo. 1985-167. The instant case is no different.

Petitioners' reasons for not filing income tax returns were because they claim that: (1) they are not taxpayers under the Internal Revenue Code; (2) receipt of income is not a taxable event; (3) the Commissioner's authority to collect taxes was not properly delegated from the Secretary of the Treasury; (4) the regulations, forms, and letters used by the Internal Revenue Service violate the Paperwork Reduction Act because they do not have proper Office of Management and Budget (OMB) control numbers and expiration dates; and finally, (5) the Commissioner should have been collecting the taxes from them all along, and, petitioners argue, if we find against petitioners, this would effectively render them bankrupt.

Petitioners' argument that they are not "taxpayers" is based upon their observation that the money they receive as wages from their labor is "personal property." They contend that working for wages is a right secured by the U.S. Constitution. The Constitution, they argue, provides for two methods governing the collection of taxes: the rule of apportionment and the rule of uniformity. Of these two methods, petitioners

[62 T.C.M. 1434]

contend that neither method permits collection of tax measured by income.

Assuming, without deciding, that petitioners' arguments are correct, it would appear that petitioners have failed to read the amendments to the Constitution. Upon ratification of the Sixteenth Amendment, it no longer makes a difference whether income tax falls under the rule of apportionment or uniformity. This amendment permits Congress to lay and collect tax on income from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration. The validity of our

income tax law has been upheld since its inception. Brushaber v. Union Pacific Railroad Co. [1 USTC ¶ 4], 240 U.S. 1 (1916).

As the Court of Appeals for the Fifth Circuit said in Crain v. Commissioner [84-2 USTC ¶ 9721], 737 F.2d 1417, 1418 (5th Cir. 1984):

> We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit. The constitutionality of our income tax system — including the role played within that system by the Internal Revenue Service * * * — has long been established. * * *

The issue between apportionment versus uniformity is completely devoid of any arguable merit in law. The Court of Appeals for the Ninth Circuit has noted the "patent absurdity and frivolity of such a proposition." In re Becraft, 88,5 F.2d 547 (9th Cir. 1989); see also United States v. Collins, 920 F.2d 619, 629 (10th Cir. 1990). Efforts to argue this issue as a means to avoid paying income tax have been held to be frivolous, even when raised by pro se litigants. Lovell v. United States [85-1 USTC ¶ 9208], 755 F.2d 517, 519-520 (7th Cir. 1984).

The argument by petitioners that the receipt of income is not a taxable event is equally groundless. Petitioners maintain that income taxes are "excises" (sic) and that "excises are levied upon the happening of an event — Sales, Manufacturing, Consumption, Privileges, Licenses and Franchises." Petitioners argue that the income tax as presently devised is an excise tax, and there must be one of these triggering events which they have set forth for such a tax to be valid.

To the contrary, the income tax is a tax upon income. It is not an excise tax. Section 1.61-2(a)(1), Income Tax Regs., clearly includes

wages within the definition of income. The authority to lay and collect these taxes is conclusively established by the Sixteenth Amendment. Stratton's Independence, Ltd. v. Howbert, 231 U.S. 399, 415 (1913); United States v. Buras [81-1 USTC ¶ 9126], 633 F.2d 1356, 1361 (9th Cir. 1980); United States v. Russell [78-2 USTC ¶ 9814], 585 F.2d 368, 370 (8th Cir. 1978). To argue otherwise is patently frivolous.

The argument by petitioners that the tax forms which they were required to file did not comply with the Paperwork Reduction Act is likewise frivolous. This tired issue has been visited repeatedly by this and other courts. It has been conclusively settled. United States v. Collins, supra at 630-631, and cases cited therein. The Forms 1040 that petitioners were required to file all bore OMB numbers as required by the Paperwork Reduction Act.

Further, the additions to tax in issue here arose solely in relation to petitioners' failure to file Forms 1040 reporting their income, and the presence or absence of numbers on the tax forms is irrelevant. The Court of Appeals for the Tenth Circuit found, in United States v. Collins, supra at 631, that such an argument lacks "any arguable basis in fact or law" and is "legally frivolous." See also Neitzke v. Williams, 490 U.S. 319 (1989) (defining legal frivolousness).[3]

Finally, petitioners argue in the alternative that if they are "taxpayers" as defined by the Code, that respondent is derelict in his duties for "lack of prosecution." Mr. Smith testified that respondent "waited nearly 12 years or longer before they [respondent] attempted to do anything, and now they're attempting to impose penalties pursuant to their lack of prosecution, which would financially bankrupt the petitioners." Mr. Smith further testified that "the Revenue Service is well aware of who I am, where I live and could have prosecuted this case in order that petitioners' would have been spared the financial hardships of the ... case."

Petitioners' argument that the Internal Revenue Service is in some way responsible for

the magnitude of the additions to tax because it did not monitor petitioners' failure to file their tax returns each year is absurd. The tax system depends upon a scheme of self-assessment, albeit with the "encouragement" of additions to tax if the taxpayer negligently or intentionally disregards the law. Abrams v. Commissioner [Dec. 41,031], 82 T.C. 403, 408 (1984) (citing Hatfield v. Commissioner [Dec. 34,628], 68 T.C. 895, 899 (1977)). The onus for the initial assessment and reporting of the tax due is placed upon the taxpayer. We find this contention by petitioner without merit.

[62 T.C.M. 1435]

Petitioners cite Yoshimura v. Alsup [48-1 USTC ¶ 9234], 167 F.2d 104 (9th Cir. 1948), and they argue that this case stands for the proposition that if a tax "assessment would work a hardship on the plaintiffs [sic] and — and would destroy them financially, then the * * * taxpayers are entitled to an injunction against that assessment, so that they are not bankrupted by the assessment." The short response to petitioners' contention is that Yoshimura has nothing to do with the situation in issue here. Further, their characterization of the principle of law in Yoshimura is simply wrong.

In Yoshimura, a taxpayer with limited knowledge of the English language was coerced into signing blank forms confessing tax liability. It was discovered that the taxpayer had innocently made a $150 bookkeeping error, but he was threatened with a "jail term or a huge fine" if he didn't sign the forms. Yoshimura v. Alsup, supra at 105. As a consequence of signing the forms, the taxpayer was assessed $6,325 as additional Federal income tax due and $3,162.51 in additions therefor. Yoshimura v. Alsup, supra. The court, finding these tactics egregious, permitted the taxpayer to continue with his lawsuit seeking to enjoin the Internal Revenue Service from the collection of the tax because the assessment was procured by fraud and coercion.

The facts in Yoshimura are completely inapposite to the instant case. Unlike the

taxpayer in Yoshimura, petitioners made no attempt to cooperate in any way with revenue authorities. First, they did not file income tax returns at all for a decade. Then, when they filed a return "under protest" in 1985 and were contacted by the Internal Revenue Service, the Smiths carried on with amazing tenacity efforts to thwart orderly resolution of their case. The fault in resolving the deficiencies determined by the Service belongs to the Smiths' entirely, and they cannot look to the Yoshimura decision to shift responsibility for their own misbehavior.

As an afterthought, petitioners make general assertions that the additions to tax under the circumstances are unjustified and unwarranted. We disagree. It is the precise action of these taxpayers for which such additions are entirely appropriate.

All of petitioners' arguments are patently frivolous. We conclude that their failure to file tax returns was not due to reasonable cause but rather the result of intentional neglect. Therefore, we find for respondent and uphold his determination of the additions to tax provided by section 6651(a)(1) for the taxable years 1974-81.

Issue Six: Additions to Tax Under Section 6654

We must next decide whether respondent properly determined additions to tax under section 6654 for underpayments of estimated tax for the taxable years 1974 through 1981, inclusive, and for 1983 and 1984. Where prepayments of tax, either through withholding or by quarterly estimated tax payments, do not equal the percentage of total liability required under the statute, imposition of this addition is generally mandatory, unless the taxpayer shows that one of several statutory exceptions applies. Sec. 6654; Grosshandler v. Commissioner [Dec. 37,317], 75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner [Dec. 24,109], 33 T.C. 1071, 1072 (1960).

Petitioners failed to introduce any evidence on this issue; accordingly, we sustain respondent's determination as to the section

6654 additions to tax. Reaver v. Commissioner [Dec. 26,736], 42 T.C. 72, 83 (1964); Rule 142(a).

Issue Seven: Penalty Under Section 6673

We next consider respondent's motion for a penalty under section 6673. Section 6673(a)(1), as amended by section 7731(a) of the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, 2400 (applicable to positions taken after December 31, 1989, in proceedings pending on or commenced after such date), provides that:

> Whenever it appears to the Tax Court that
>
> (A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay,
>
> (B) the taxpayer's position in such proceeding is frivolous or groundless, or
>
> (C) the taxpayer unreasonably failed to pursue available administrative remedies,
>
> the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $25,000.

This proceeding involves in part the addition to tax for fraud. In this regard although we are normally reluctant to require a penalty in fraud cases, the record in this case establishes that petitioners have engaged in a crusade lasting more than a decade to simply ignore their obligation to pay income tax. This is not the first time that petitioners have wasted this Court's time. Petitioners have delayed consideration of other cases before this Court by requiring us to consider their worthless theories. It is unfair to other taxpayers with legitimate claims against the Commissioner's determinations to permit tax protestors to repeatedly glut this Court's docket with these types of cases. We have issued fair warning that the continued use of frivolous

arguments would be met with the full use of the penalty provisions provided to us by Congress. Abrams v. Commissioner [Dec. 41,031], 82 T.C. 403, 408-412 (1984), and cases cited therein.

[62 T.C.M. 1436]

Upon review of this record, we find that petitioners have instituted and maintained this action primarily for delay and that petitioners' position in this proceeding is frivolous and groundless. Accordingly, we hold that a penalty is appropriate in this case. Therefore, we will grant respondent's motion for a penalty, and in our decision we will require petitioners to pay to the United States a penalty of $10,000.

An appropriate order and decision will be entered.

---------------

Notes:

1. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable years 1974 through 1985, and Rule numbers refer to the Tax Court Rules of Practice and Procedure.

2. See also Greenway v. Commissioner [Dec. 43,605(M)], T.C. Memo. 1987-4; Denson v. Commissioner [Dec. 39,140(M)], T.C. Memo. 1982-360; Wheeling v. Commissioner [Dec. 38,998(M)], T.C. Memo. 1982-246, affd. without published opinion 709 F.2d 1512 (6th Cir. 1983); Kindred v. Commissioner [Dec. 36,437(M)], T.C. Memo. 1979-457, affd. [82-1 USTC ¶ 9187] 669 F.2d 400 (6th Cir. 1982).

3. Currier v. Commissioner [Dec. 47,322(M)], T.C. Memo. 1991-194; Allnutt v. Commissioner [Dec. 47,107(M)], T.C. Memo. 1991-6.

---------------

To:  Clerk of Court
     United States District Court
     Northern District of Oklahoma
     333 West Fourth Street
     Tulsa, Oklahoma 74103

From: Lindsey Kent Springer
      Reg. # 02580-063
      Federal Satellite Low-La Tuna
      P.O. Box 6000
      Anthony, New Mexico 88021

Dear Clerk

     Please find enclosed _My Reply_ to be filed in 13-CV-145

(09-CR-043).  The Reply and 2 separate record excerps could not be mailed in

the same envelope.  I have separate them into the Reply, Part One and Part Two,

for mailing purposes.  The Certificate of Service and Declaration of Mailing

apply to all three pieces to my Reply.

     Thank you and have a blessed day.


2/4/14                    Lindsey K Springer

To:  Clerk of Court
     United States District Court
     Northern District of Oklahoma
     333 West Fourth Street
     Tulsa, Oklahoma 74103

From: Lindsey Kent Springer
      Reg. # 02580-063
      Federal Satellite Low-La Tuna
      P.O. Box 6000
      Anthony, New Mexico 88021

Dear Clerk

     Please find enclosed _Record Excerp #2_ to be filed in 13-CV-145

(09-CR-043).  The Reply and 2 separate record excerps could not be mailed in

the same envelope.  I have separate them into the Reply, Part One and Part Two,

for mailing purposes.  The Certificate of Service and Declaration of Mailing

apply to all three pieces to my Reply.

     Thank you and have a blessed day.


2/4/14                    _Lindsey K Springer_

To:  Clerk of Court
     United States District Court
     Northern District of Oklahoma
     333 West Fourth Street
     Tulsa, Oklahoma 74103

From: Lindsey Kent Springer
      Reg. # 02580-063
      Federal Satellite Low-La Tuna
      P.O. Box 6000
      Anthony, New Mexico 88021

Dear Clerk

     Please find enclosed _Record Excerp #1_ to be filed in 13-CV-145

(09-CR-043).  The Reply and 2 separate record excerps could not be mailed in

the same envelope.  I have separate them into the Reply, Part One and Part Two,

for mailing purposes.  The Certificate of Service and Declaration of Mailing

apply to all three pieces to my Reply.

     Thank you and have a blessed day.


2/4/14                          _Lindsey K Springer_

Lindsey Kent Springer
Reg # 02580-063
Federal Satellite Low - Katuna
P.O. Box 6000
Anthony, New Mexico 88021

"Legal Mail"

09-CR-43

<<02580-063<<
Clerk Of Court
N.D. Okla.
333 W 4TH ST
Tulsa, OK 74103
United States

**RECEIVED**

FEB 1 0 2014

Phil Lombardi, Clerk
U.S. DISTRICT COURT





Lindsey Kent Springer
Reg # 02580-063
Federal Satellite low-la Tua
P.O. Box 6000
Anthony, New Mexico 88021

"Legal Mail"

02580-063

∞02580-063∞
Clerk Of Court
N.D. Okla
333 W 4TH ST
Tulsa, OK 74103
United States

FEB 10 2014
RECEIVED
Phil Lombardi, Clerk
U.S. DISTRICT COURT

EL PASO TX 799
THU 06 FEB 2014  PM

Postmark
2/6/14
QC



Lindsey Kent Springer
Reg # 02580-063
Federal Satellite Low / Camp
P.O. Box 6000
Anthony/ New Mexico 88021

09-CR-43

"Legal Mail"

◇◇02580-063◇◇
Clerk Of Court
N.D. Okla.
333 W 4TH ST
Tulsa, OK 74103
United States

RECEIVED
FEB 10 2014
Phil Lombardi, Clerk
U.S. DISTRICT COURT

EL PASO T × 790
THU 06 FE

P.O. mark 2/6/14
8C