IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

**FILED**

OCT 1 3 2015

Phil Lombardi, Clerk
U.S. DISTRICT COURT

UNITED STATES OF AMERICA,      )
                               )
    Plaintiff,                 )
                               )
v.                             )      Case No. 09-CR-043
                               )
LINDSEY KENT SPRINGER,         )
                               )
    Defendant.                 )

MOTION TO ENJOIN ENFORCEMENT OF THE JUDGMENT

DATED APRIL 28, 2010,

BASED UPON SEVERAL FRAUDS ON THE COURT

By:  Lindsey Kent Springer
     Reg. # 02580-063
     Federal Satellite Low-La Tuna
     P.O. Box 6000
     Anthony, New Mexico 88021

_____/Mail    ____No Cert Svc  ____No Orig Sign

____C/J    ____C/MJ    ____C/Ret'd    ____No Env

____No Cpys    ____No Env/Cpys    ____O/J    ____O/MJ

-i-

## TABLE OF CONTENTS

Table of Authorities...................................................

MOTION TO ENJOIN ENFORCEMENT OF THE JUDGMENT BASED UPON SEVERAL FRAUDS
ON THE COURT.........................................................1

    Statement of this Court's Jurisdiction........................1

    Facts Relevant to Scheme to Defraud the Court................3

    FOIA Request Involving Woodward..............................6

    FOIA Request Involving O'Reilly..............................8

    FOIA Request Involving Marrella..............................9

    FOIA Request Involving Snoke................................10

    FOIA Request Involving Gallant..............................10

    The Declaration of Linda Richardson.........................11

    Statutes and Authorities Involved...........................12

First Fraud on the Court.............................................14

Second Fraud on the Court............................................14

Third Fraud on the Court.............................................15

Fourth Fraud on the Court............................................16

Fifth Fraud on the Court.............................................17

Sixth Fraud on the Court.............................................18

Seventh Fraud on the Court...........................................19

Eighth Fraud on the Court............................................20

Ninth Fraud on th Court..............................................21

Tenth Craud on the Court.............................................21

Eleventh Fraud on the Court..........................................22

Twelfth Fraud on the Court...........................................23

Thirteenth Fraud on the Court........................................24

Conclusion...........................................................25

Certificate of Service and Declaration of Mailing....................26

-ii-

## TABLE OF AUTHORITIES

Anderson v. Roszowski, 681 F. Supp. 1284, 1291(N.D. Ill. 1988)..............2

Calderon v. Thomas, 523 U.S. 538, 553(1998)....................................2

Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238(1944)..........1,2

In Re: Nofziger, 925 F.2d 428, 437(D.C. Cir. 1991)........................12

Kenner c. CIR, 387 F.2d 689, 691(7th Cir. 1968)...........................1

Martinez v. Winner, 771 F.2d 424, 439(n.5)(10th Cir. 1985).................12

Nichols v. Reno, 931 F. Supp. 748, 750(D.C. Colo. 1996)....................12

Pacific RR of Mo. v. Pacific R. Co., 11 U.S. 505, 522(1884)................2

Robinson v.  Audi Aktiengesell-Shaft, 56 F. 3d 1259, 1265(10th Cir. 1995)....2

S.W. Gen. v. NLRB, 2015 U.S. App. Lexis 13812(D.C. Cir. 2015)(8.7.15).......13

Universal Oil Products Co. v. Root Ref. Co., 328 U.S. 575, 580(1946).........1

U.S. v. Baldwin, 541 F. Supp. 2d 1184, 1189(D.N.M. 2008)...................13

U.S. v. Beggerly,  524 U.S. 38, 46(1998)...................................2

U.S. v. Bishop, 774 F.2d 771, 774(7th Cir. 1985)...........................2

U.S. v. Braimah, 559 Fed. Appx. 698, 701(10th Cir. 2014)..................12

U.S. v. Bridwell, 583 F.2d 1135, 1140(10th Cir. 1978)......................12

U.S. v. Buck, 281 F.3d 1336, 1342(10th Cir. 2002)........................1,2

U.S. v. Cespedes, 151 F.3d 1329, 1332(11th Cir. 1998).....................12

U.S. v. Dunlap, 17 F. Supp. 2d 1183, 1185(D.C. Colo. 1998)................12

U.S. v. Hilario, 218 F.3d 19, 22(1st Cir. 2000)...........................12

U.S. v. McVeigh, 9 Fed. Appx. 980, 981(n.1)(10th Cir. 2001)................2

U.S. v. Rose, 537 F. Supp. 2d 1172, 1176(D.N.M. 2008)....................13

U.S. v. Sigillito, 759 F.3d 913, 927(8th Cir. 2014)......................12

U.S. v. Smiley, 553 F.3d 1137, 1144(8th Cir. 2009).........................2

U.S. v. Williams, 16 F. Supp. 3d 1301(N.D. Ok. 2014)....................1,2

U.S. v. 16,000 Acres of Land, 49 F. Supp. 645, 650(D.Kansas 1942)..........12

## STATUTES INVOLVED

5 U.S.C. § 3345(a)(1)...........................................3,4,13,14,15,16,19

§ 3346.......................................................17,18

§ 3348.......................................................13

28 U.S.C. § 515(a).............................................5,18,19,20

§ 541.......................................................12

§ 542.......................................................12,14,15,16,19

§ 543.......................................................5,12,18,20

§ 546(a)....................................................4,13,16,17,19

§ 546(c)(2).................................................4,16,17

§ 546(d)....................................................5,7,13,17,18

§ 2255......................................................2,5

## REGULATIONS

28 CFR § 0.13(a)..............................................5,18,19,20

## MISC

Federal Rules of Civil Procedure Rule 6(d)...................3

## CONSTITUTIONAL PROVISIONS

Article III, § 2.............................1,3,4,14,16,17,18,19,20,22,23,24

Article II, § 2, Cl. 2.......................3,5,7,8,10,11,15,20,21,22,23,24

–iv–

## EXHIBITS LIST

| EXHIBIT # | Description |
|---|---|
| 1 | Tulsa World Articles on Williams appointment |
| 2 | EOUSA July 23, 2015 Response for Williams' agency |
| 3 | EOUSA July 29, 2015 Supplemental  Response |
| 4 | Judge Eagan's May 24, 2010 order appointing Woodward |
| 5 | TDC/FOIA July 17, 2015 Response regarding Marrella |
| 6 | TDC/FOIA July 21, 2015 Response regarding O'Reilly |
| 7 | Springer FOIA to DOJ/FOIA October 9, 2013 on Woodward |
| 8 | Springer FOIA to EOUSA October 9, 2013 on Woodward |
| 9 | EOUSA September 17, 2014 Response on Woodward |
| 10 | Springer FOIA to Williams December 31, 2014 on Woodward |
| 11 | Springer FOIA to Williams December 31, 2014 on Woodward |
| 12 | Springer FOIA to DOJ/FOIA March 8, 2015 on Woodward |
| 13 | Springer FOIA to DOJ/FOIA October 9, 2013 on O'Reilly |
| 14 | Springer FOIA to EOUSA October 9, 2013 on O'Reilly |
| 15 | EOUSA June 4, 2014  Response on O'Reilly |
| 16 | Springer Appeal to OIP on EOUSA June 4, 2014 Response |
| 17 | OIP September 29, 2014 affirmance of June 4, 2014 EOUSA |
| 18 | Springer FOIA to Williams December 31, 2014 on O'Reilly |
| 19 | Springer FOIA to DOJ/FOIA March 8, 2015 on O'Reilly |
| 20 | Springer FOIA to TDC/FOIA March 25, 2015 on O'Reilly |
| 21 | TDC/FOIA July 21, 2015 Response regarding O'Reilly |
| 22 | Springer FOIA to TDC/FOIA March 25, 2015 on Marrella |
| 23 | Springer FOIA to DOJ/FOIA March 8, 2015 on Marrella |
| 24 | Springer FOIA to Williams December 31, 2014 on Snoke |
| 25 | Springer FOIA to DOJ/FOIA March 8, 2015 on Snoke |
| 26 | Springer FOIA to Williams January 2, 2015 on Gallant |

–v–

## EXHIBITS LIST (cont'd)

| EXHIBIT # | Description |
|---|---|
| 27 | Springer FOIA to DOJ/FOIA March 8, 2015 on Gallant |
| 28 | Declaration of EOUSA's Lnda Richardson July 30, 2015 |

## MOTION TO ENJOIN ENFORCEMENT OF THE JUDGMENT
## BASED UPON SEVERAL FRAUDS ON THE COURT

1.    Lindsey Kent Springer ("Defendant") moves this Court to enjoin

enforcement of the judgment dated April 28, 2010 based upon said judgment

being obtained and entered employing several frauds on the Court that led the

Court to the wrongful determination that Thomas Scott Woodward ("Woodward"),

Kenneth P. Snoke ("Snoke"), and Charles A. O'Reilly ("O'Reilly") possessed

Article III, § 2 standing to prosecute the March 10, 2009 indictment in the

name and for the benefit of the United States of America.

2.    The same frauds on the Court involving the determination that Woodward,

Snoke, and O'Reilly held the authority to prosecute Defendant, after David

E. O'Meilia ("O'Meilia") resigned as the Northern District of Oklahoma's

United States Attorney ("U.S.A."), led to this Court's exercise of its Article

III, § 2 Judicial Power that ceased to exist upon O'Meilia's resignation on

June 28, 2009.

### STATEMENT OF THIS COURT'S JURISDICTION

3.    "[t]here is no statute of limitations for bringing a fraud upon the court

claim, Hazel-Atlas [Glass Co. v. Hartford Empire Co., 322 U.S. 238 (1944)] at

244, because 'a decision produced by fraud on the Court is not in essence a

decision at all and never becomes final.'" U.S. v. Williams, 16 F. Supp. 3d

1301(N.D. Okla. 2014) quoting Kenner v. CIR, 387 F.2d 689, 691(7th Cir. 1968)

4.    This Court has "inherent power...to investigate whether a judgment was

obtained by fraud." Universal Oil Products Co. v. Root ref. Co., 328 U.S. 575,

580(1946)

5.    This power "is beyond question." Id.

6.    "There is no time limit for such proceedings, nor does the doctrine of

laches apply."  U.S. v. Buck, 281 F.3d 1336, 1342(10th Cir. 2002)

1

7.   "There are no formal requirements for asserting a claim of fraud on the Court." Id.

8.   The relief is properly entitled "Motion to Enjoin Enforcement of the Judgment." Hazel-Atlas Glass Co., 322 U.S. at 245.

9.   The jurisdiction "may be regarded as ancillary to the ...suit, so that relief asked may be granted by the court which made the decree..." U.S. v. Beggerly, 524 U.S. 38, 46(1998) citing Pacific R.R. of Mo. v. Pacific R. Co., 111 U.S. 505, 522(1884)

10.  "One long-recognized exception to the general rule of finality is where a judgment was based on a claim that the party obtaining the judgment knew it to be fraudulent." Robinson v. Audi Aktiengesell-Schaft, 56 F.3d 1259, 1265 (10th Cir. 1995)

11.  "The 'inherent power of the court to set aside its judgment if procured by fraud on the court is not dependent on the filing of a motion by a party: the court may assert this power sua sponte.'" Buck, 281 F.3d at 1342

12.  This court has "inherent subject-matter jurisdiction to review Federal judgments obtained by fraud on the court." Anderson v. Roszowski, 681 F. Supp. 1284, 1291(N.D. Ill. 1988)

13.  "In the criminal context, the Court in United States v. Smiley, 553 F.3d 1137, 1144(8th Cir. 2009), agreed that Smiley's fraud on the court motion was not a second or successive petition and 'reasoned that the fact the case involved a criminal sentencing process, rather than a civil proceeding such as Hazel-Atlas was inconsequential, citing United States v. Bishop, 774 F.2d 771, 774(7th Cir. 1985)." Williams, 16 F. Supp. 3d 1301; citing Calderon v. Thomas, 523 U.S. 538, 553(1998) and United States v. McVeigh, 9 Fed. Appx. 980, 981(n.1) (10th Cir. 2001)(unpub)("except for his argument that there is a fraud on the court exception to § 2255...")

2

14.  This Court's jurisdiction to reach the merits of Defendant's Motion that the fraud by Woodward, Snoke, and O'Reilly, and as joined and continued by Danny C. Williams, Sr., ("Williams") and Jeffrey A. Gallant ("Gallant"), intentionally perpetrated, led to this court's determination of its Article III, § 2 case and controversy Judicial Power to decide the Judgment dated April 28, 2010 which was lost or ceased at least by June 28, 2009.

## FACTS RELEVANT TO SCHEME TO DEFRAUD

15.  The filing of the March 10, 2009 Grand Jury Indictment presents Snoke as a Federal Rules of Criminal Procedure Rule 6(d) attorney for the Government, entitled "Assistant United States Attorney" ("AUSA"), O'Reilly as a Trial Attorney, and O'Meilia as the USA. Doc. 1, pg. 14

16.  On June 28, 2009, O'Meilia resigned his Article II, § 2, Cl. 2 office of USA  for the Northern District of Oklahoma ("NDOK").

17.  O'Meilia's resignation occurred with the President having nominated  no person for the NDOK USA office.

18.  The reason was that the two Oklahoma U.S. Senators and President Obama could not agree on a nominee.  See Declaration of Lindsey Kent Springer(Springer Declaration) at page  1   and Exhibit  1  .

19.  Prior to, and on or about June 28, 2009, Woodward, Snoke, O'Reilly, and others unknown, devised a scheme to defraud the United States District Court for the Northern District of Oklahoma to present Woodward as the Northern District of Oklahoma's "Acting United States Attorney" ("Acting USA"), from June 28, 2009 and pursuant to 5 U.S.C. § 3345(a)(1), in order that all then pending cases in which the United States of America was a party could continue as live cases or controversies, including the purported case herein.

3

20.  The scheme to defraud this Court included presenting Woodward as O'Meilia's First Assistant United States Attorney ("FAUSA") up to 1-year prior to O'Meilia's resignation, which was required by 5 U.S.C. § 3345(a)(1).

21.  Woodward was not O'Meilia's FAUSA prior to June 28, 2009.  See Springer Declaration at _4_ and Exhibit _2_.

22.  As of June 28, 2009, the scheme to defraud the Court also included changing O'Reilly's Title from Trial Attorney to "Special Assistant United States Attorney."  See Doc. 104, pg. 3 (changing O'Reilly to SAUSA)

23.  The scheme to defraud this Court continued where Woodward, Snoke, O'Reilly, and others unknown realized that, in order for their frauds on the Court to go undetected, the time period for Woodward to be "Acting USA" then fast expiring and no nomination by the President of a USA, determined they would present Woodward as the Attorney General's personal appointee as the NDOK USA pursuant to 28 U.S.C. § 546(a) and (c)(2).

24.  In response to Defendant's post-trial motion to dismiss raising issue with Woodward, Snoke, and O'Reilly's Article III, § 2 standing to represent the United States of America in this case, Woodward, Snoke, O'Reilly, and others, continued their scheme to defraud this Court by declaring that on January 21, 2010, Woodward was appointed, and sworn in, as the NDOK USA, pursuant to 28 U.S.C. § 546(a).  Doc. 292, pg. 1(n.1)

25.  By utilizing § 546(a) and (c)(2), Woodward, Snoke, and O'Reilly, extended their scheme to defraud this Court buying another 120 days and employing the presumption in favor of government attorneys that, as officers of the Court, what they say is true.

26.  This Court denied Defendant's Motion to dismiss for lack of standing on January 28, 2010, and on February 22, 2010. See Doc. 293 and 310

27.  This Court entered its order and Judgment on April 28, 2010. Doc. 337

28.  On May 24, 2010, and 123 days after Woodward, Snoke, and O'Reilly, declared to this Court that Attorney General Eric H. Holder, Jr., appointed Woodward, on January 21, 2010, or before, as the NDOK's USA, Judge Eagan, then Chief Judge for the NDOK, entered an order of appointment naming Woodward as the NDOK USA pursuant to 28 U.S.C. § 546(d).  See Springer's Declaration at page _2_ and Exhibit _4_.

29.  Snoke purportedly resigned as an AUSA in July, 2010.

30.  Gallant entered his appearance as an AUSA for the NDOK in September, 2010.

31.  On August 7, 2012, President Obama and Oklahoma's U.S. Senators finally agreed on a replacement for O'Meilia.  See Springer's Declaration at page _1_ and Exhibit _1_.

32.  After Defendant filed a Motion under 28 U.S.C. § 2255, and in response opposing Defendant's Motion to strike certain filings of O'Reilly, Williams, O'Reilly and Gallant, on October 24,2013, declared to this Court that O'Reilly had been assigned pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a), by Marrella, as Deputy Assistant Attorney General, on December 23, 2008 to investigate and prosecute Defendant knowing Marrella was never appointed to the office of Deputy Assistant Attorney General, and nor did Marrella ever issue any letter naming O'Reilly under § 515(a) or § 0.13(a) on December 23, 2008.  See Doc. _525_, pg. 2

33.  In the October 24, 2013 filing, Williams, O'Reilly, and Gallant, furthered the scheme to defraud this Court by declaring that O'Reilly had received an appointment to the Article II, § 2, Cl. 2 inferior office of Special Assistant United States Attorney ("SAUSA"), from O'Meilia on January 5, 2009, pursuant to 28 U.S.C. § 543. Doc. 525, pg. 2

5

34.  The October 24, 2013 filing furthered the scheme to defraud this  Court by declaring that O'Reilly had received extensions of his January 5, 2009 purported appointment by O'Meilia, from unnamed United States Attorneys dated January 4, 2010, January 4, 2011, and January 10, 2012. Doc. 525, pg. 2

35.  The October 24, 2013 filing furthered the scheme to defraud this Court by declaring that Williams personally extended the January 5, 2009 appointment of O'Reilly by O'Meilia dated December 19, 2012.  Doc. 525, pg. 2

36.  There was no December  23, 2008 assignment letter from Marrella to O'Reilly to investigate and prosecute Defendant, nor was there any SAUSA appointment letter dated January 5, 2009, or any extension dated January 4, 2010, January 4, 2011, January 10, 2012, or by Williams, dated December 19, 2012. See Springer Declaration at page 2-3 and Exhibits 2,5,6

37.  In another October 24, 2013 filing by Williams, O'Reilly, and Gallant, the three officers of the Court, in opposing discovery of the appointment records of Woodward and O'Reilly, declared:

> "Mr. Springer's claims are barred by res judicata...and Mr. Springer's attempt to relitigate the validity of the appointments of the United States Attorney warrants neither discovery nor the appointment of counsel."

Doc. 526, pg. 2

### FOIA REQUESTS INVOLVING WOODWARD

38.  On October 9, 2013, Defendant requested from DOJ/FOIA the instuments of appointment naming Woodward as the NDOK USA between June 1, 2009 through August 2, 2012.  See Springer Declaration at 3   and Exhibit  7 -.

39.  DOJ/FOIA has not responded to Defendant's FOIA request naming Woodward and the 20 days to do so has long expired. See Springer Declaration at page 3 .

40.  On October 9, 2013, Defendant requested from EOUSA the instuments of appointment naming Woodward as the NDOK USA between June 1, 2009 through August 2, 2012.  See Springer Declaration at 3  and Exhibit 8 .

41.  On September 17, 2014, EOUSA responded finding only one record naming

Woodward, dated May 25, 2010, and showing Woodward took an oath to the office of United States Attorney the day after Judgment Eagan purportedly appointed Woodward on May 24, 2010.  See Springer Declaration at page 3-4  and Exhibit  9 .

42.  On December 31, 2014, Defendant made a FOIA request to Williams'agency seeking the appointment instruments appointing Woodward to the Article II, § 2, Cl. 2 offices  of AUSA, FAUSA, and USA, between January 1, 2009 through January 1, 2013.  See Springer Declaration at page  4  and Exhibit  10 .

43.  On December 31, 2014, Defendant also requested from Williams' agency under FOIA all "Notification of Personnel  Action" naming Woodward as O'Meilia's FAUSA prior to October 4, 2009, and at a time that includes just prior to June 28, 2009.  See Springer Declaration at page  4  and Exhibit 11 .

44.  By letter dated July 23, 2015, EOUSA and on behalf of Williams' agency, found no record appointing Woodward by Eric H. Holder, Jr.  to the Article II, § 2, Cl. 2 office of AUSA, FAUSA, or USA between January 1, 2009 through January 1, 2013.  See Springer Declaration at page  4  and Exhibit  2 .

45.  The only record EOUSA located was the May 25, 2010 oath Woodward signed the day after Judge Eagan purportedly appointed Woodward pursuant to 28 U.S.C. § 546(d). See Springer Declaration at page  4  and Exhibit 2 , pg.  4 

46.  EOUSA found no record showing Woodward was  O'Meilia's "First Assistant" prior to June 28, 2009. See Springer Declaration at page  4  and Exhibit 2  .

47.  On March 8, 2015, Defendant made a FOIA request to DOJ/FOIA for all records appointing Woodward to the office of AUSA, FAUSA, and USA, between January 1, 2009 through January 1, 2013.  See Springer Declaration at page  4  and Exhibit  12 .

48.  DOJ/FOIA has not responded to Defendant's FOIA request naming Woodward and the 20 days to do so has long expired.  See Springer Declaration at page  4 .

7

## FOIA REQUESTS INVOLVING O'REILLY

49.  On October 9, 2013, Defendant requested from DOJ/FOIA the instruments of appointment naming O'Reilly as a NDOK SAUSA between June 1, 2009 through September 10, 2013.  See Springer Declaration at page  5  and Exhibit 13 .

50.  DOJ/FOIA has not responded to Defendant's FOIA request naming O'Reilly and the 20 days to do so has long expired.  See Springer Declaration at page  5  ;

51.  On October 9, 2013, Defendant requested from EOUSA the instruments of appointment naming O'Reilly as the NDOK SAUSA between June 1, 2009 through September 10, 2013.  See Springer Declaration at page  5  and Exhibit  14 .

52.  On June 4, 2014, EOUSA responded to Defendant's October 9, 2013 FOIA request finding O'Reilly was no longer employed as a SAUSA in the NDOK.  See Springer Declaration at page  5  and Exhibit 15 .

53.  The Office of Information Policy affirmed EOUSA's finding  on September 29, 2014.  See Springer Declaration at page 5-6 and Exhibit  17.

54.  On December 31, 2014, Defendant also requested under FOIA from Williams' agency seeking the appointment instruments appointing O'Reilly to the Article II, § 2, Cl. 2 inferior office of SAUSA for the NDOK between December 1, 2008 through January 1, 2015.  See Springer Declaration at page  6  and Exhibit 18 .

55.  By letter dated July 23, 2015, EOUSA and on behalf of Williams' agency, found no records appointing O'Reilly to the NDOK as a SAUSA between December 1, 2008 through January 1, 2015. See Springer Declaration at page  6  and Exhibit 2 .

56.  By letter dated July 29, 2015, EOUSA and on behalf of Williams' agency, supplemented their July 23, 2015 response after locating an oath signed by O'Reilly dated January 5, 2009.  See Springer Declaration at page  6  and Exhibit  3 .

57. On March 8, 2015, Defendant requested under FOIA from DOJ/FOIA all records appointing O'Reilly as a SAUSA and Trial Attorney between December 1, 2008 through January 1, 2015. See Springer Declaration at page __6__ and Exhibit __19__.

58. DOJ/FOIA has not responded to Defendant's FOIA request naming O'Reilly as an SAUSA or Trial Attorney between December 1, 2008 through January 1, 2015, and the 20 days to do so has long expired. See Springer Declaration at page __6__

59. On December 31, 2014, as resent on March 25, 2015, Defendant requested from TDC/FOIA under FOIA all records appointing O'Reilly as a SAUSA and Trial Attorney between December 1, 2008 through January 1, 2015. See Springer Declaration at page __6__ and Exhibit __20__.

60. TDC/FOIA responded on July 21, 2015 and finding no records pertaining to or showing the authorization and/or appointment of O'Reilly as a SAUSA from December 1, 2008 through January 1, 2015. See Springer Declaration at page __7__ and Exhibit __21__.

## FOIA REQUESTS INVOLVING MARRELLA

61. On March 25, 2015 Defendant requested under FOIA to TDC/FOIA seeking all records appointing Marrella to the office of "Deputy Assistant Attorney General" between January 1, 2008 through January 1, 2013. See Springer Declaration at page __7__ and Exhibit __22__.

62. On July 17, 2015 TDC/FOIA responded to Defendant's FOIA request finding no records pertaining to or showing authorization and/or appointment of Marrella to the office of Deputy Assistant Attorney General, Tax Division, between January 1, 2008 through January 1, 2013. See Springer Declaration at page __7__ and Exhibit __5__.

63. On March 8, 2015, Defendant requested under FOIA from DOJ/FOIA all records

9

appointing Marrella to the office of Deputy Assistant Attorney General, Tax Division, between January 1, 2008 through January 1, 2013.  See Springer Declaration at page  7  and Exhibit 23 .

64.  DOJ/FOIA has not responded to Defendant's FOIA request naming Marrella as a Deputy Assistant Attorney General between January 1, 2008 through January 1, 2013, and the 20 days to do so has long expired.  See Springer Declaration at page  7

### FOIA REQUESTS INVOLVING SNOKE

65.  On December 31, 2014, Defendant made a FOIA request to Williams' agency seeking the appointment instrument appointing Snoke to the Article II, § 2, Cl. 2 office of AUSA between January 1, 2008 through January 1, 2011. See Springer Declaration at page 7-8 and Exhibit 24  .

66.  By letter dated July 23, 2015, EOUSA and on behalf of Williams' agency, found no record appointing Snoke by Eric H. Holder Jr. to the Article II, § 2, Cl. 2 office of AUSA between January 1, 2008 through January 1, 2011. See Springer Declaration at page  8  and Exhibit  2 , pg. 1

67.  On March 8, 2015, Defendant requested under FOIA from DOJ/FOIA all records appointing Snoke as an AUSA by Eric H. Holder Jr. between January 1, 2008 through January 1, 2011.  See Springer Declaration at page  8  and Exhibit  25 .

68.  DOJ/FOIA has not responded to Defendant's FOIA request naming Snoke as an AUSA between January 1, 2008 through January 1, 2011, and the 20 days to do so has long expired.  See Springer Declaration at page  8 .

### FOIA REQUESTS INVOLVING GALLANT

69.  On January 2, 2015, Defendant made a FOIA request to Williams' agency seeking the appointment instrument appointing Gallant to the Article II, § 2, Cl. 2 office of AUSA between January 1, 2010 through January 1, 2015. See

Springer Declaration at page __8__ and Exhibit __26__.

70. By letter dated July 23, 2015, EOUSA and on behalf of Williams' agency, found no record appointing Gallant by Eric H. Holder Jr. to the Article II, § 2, Cl. 2 office of AUSA between January 1, 2010 through January 1, 2015. See Springer Declaration at page __8__ and Exhibit __2__.

71. The only record EOUSA located was the November 20, 2006 oath signed by Gallant.  See Springer Declaration at page __2,9__ and Exhibit __2__.

72. On March 8, 2015, Defendant requested under FOIA from DOJ/FOIA all records appointing Gallant as an AUSA by Eric H. Holder Jr. between January 1, 2010 through January 1, 2015.  See Springer Declaration at page __8__ and Exhibit __27__.

73. DOJ/FOIA has not responded to Defendant's FOIA request naming Gallant as an AUSA between January 1, 2010 through January 1, 2015.  See Springer Declaration at page __9__.

### DECLARATION OF LINDA RICHARDSON

74. In a declaration under penalty of perjury dated July 30, 2015, Linda Richardson of EOUSA stated under the penalty of perjury that she conducted the records search involving Woodward, Snoke, O'Reilly, and Gallant, and other than the May 25, 2010 oath of Woodward, the January 5, 2009 oath of O'Reilly, and the November 20, 2006 oath of Gallant, she could find no instruments of appointments appointing Woodward to the office of AUSA, FAUSA, and USA, appointing O'Reilly by Marrella on December 23, 2008, or on January 5, 2009, to the office of SAUSA, nor any of the letters extending any appointment, appointing Snoke to the office of AUSA, or appointing Gallant to the office of AUSA.  See Springer Declaration at page __9__ and Exhibit __28__.

11

STATUTES AND AUTHORITIES INVOLVED

75. 28 U.S.C. § 541 reads in relevant part:

"(a). The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district."

76. 28 U.S.C. § 541(a) requires the USA be appointed by the President and Senate. U.S. v. Dunlap, 17 F.Supp. 2d 1183, 1185(D.C. Colo. 1998); See Nichols v. Reno, 931 F. Supp. 748, 750(D.C. Colo. 1996). The office of USA is a high ranking office. In Re: Nofziger, 925 F.2d 428, 437(D.C. Cir. 1991). The USA is a delegate of the President, not the Attorney General. U.S. v. Cespedes, 151 F.3d 1329, 1332(11th Cir. 1998).

77. 28 U.S.C. § 542 reads in relevant part:

"(a). The Attorney General may appoint one or more assistant United States attorneys in any district where the public interest so requires."

78. "Assistant United States Attorneys 'are appointed <u>directly</u> by the Attorney General'..." U.S. v. Braimah, 559 Fed. Appx. 698, 701(10th Cir. 2014) quoting U.S. v. Hilario, 218 F.3d 19, 22(1st Cir. 2000); see also U.S. v. Bridwell, 583 F.2d 1135, 1140(10th Cir. 1978)(explaining there is a "statutory requirement that the assistant U.S. attorneys be appointed <u>only</u> by the Attorney General" at § 542(a).); see Martinez v. Winner, 771 F.2d 424, 439(n.5)(10th Cir. 1985) (AUSA's are controlled and supervised by USA)

79. 28 U.S.C. § 543 reads in relevant part:

"(a). The Attorney General may appoint attorneys to assist United States attorneys where the public interest so requires."

80. 28 U.S.C. § 543 requires SAUSAs to be appointed by the Attorney General personally. Bridwell, 583 F.2d at 1140; see U.S. v. Sigillito, 759 F.3d 913, 927(8th Cir. 2014) "[a]ttorneys specially appointed under such statute are required to take the oath prescribed for district attorneys <u>and to evidence</u> their authority in the district." U.S. v. 16,000 Acres of Land, 49 F. Supp. 645, 650(D.Kansas 1942)

81.    28 U.S.C. § 546 (a) reads in relevant part:

"...the Attorney General may appoint a United States attorney for the
district in which the office of United States attorney is vacant...(c)
...[who] may serve until...(2) the expiration of 120 days after
appointment by the Attorney General under this section."

82.    28 U.S.C. § 546 authorizes the Attorney General to personally appoint a

USA for a vacant district.  U.S. v. Baldwin, 541 F. Supp. 2d 1184, 1189(D.N.M.

2008)  "Congress has divided the responsibility for making such interim appoint-

ments between the Attorney general and the district court." U.S. v. Young, 541

F. Supp. 2d 1226, 1230(D.N.M. 2008)

83.    28 U.S.C. § 546(d) reads in relevant part:

"If an appointment expires under subsection (c)(2), the district court for
such district may appoint a United States attorney to serve until the vac-
ancy is filled.  The order of appointment by the Court shall be filed with
the Clerk of Court."

84.    28 U.S.C. § 546(d) authorizes a majority of district judges to issue an

order appointing a USA when the Attorney General appointment expires. Baldwin,

541 F. Supp. 2d at 1187.  "After [a § 546(a)] appointment expires, 'the district

court for such district may appoint a United States Attorney to serve until the

vacancy is filled." U.S. v. Rose, 537 F. Supp. 2d 1172, 1176(D.N.M. 2008)  "Only

when the executive branch defaults, then,  does the district court have the

authority to appoint a prosecutor." Rose, 537 F. Supp. 2d at 1176

85.    5 U.S.C. § 3345(a)(1) reads in relevant part:

"If an officer of an Executive agency...whose appointment to office is
required to be made by the President, by and with the advice and consent of
the Senate,...resigns...(1) the first assistant to the office of such off-
icer shall perform the functions and duties of the office temporarily in an
acting capacity subject to the time limitation of section 3346[210-days]."

86.    5 U.S.C. § 3345(a)(1) authorizes the "first assistant" to take over the

Executive agency office for 210-days. See SW Gen. v. NLRB, 2015 U.S. App. Lexis

13812(D.C. Cir. 2015)(8.7.2015).  "Actions taken by persons serving in violation

of the Act [are] void ab initio." Id. citing 5 U.S.C. § 3348(d)(1)-(2)

## FIRST FRAUD ON THE COURT CLAIM

87.    Paragrpahs 1 through 86  are reallged and incorporated herein by reference as if set forth word for word.

88.    In order for Woodward to qualify for the office of FAUSA requires Woodward first be appointed by the Attorney General personally as an Assistant United States Attorney for the NDOK.

89.    As of June 28, 2009, Woodward, Snoke, and O'Reilly, as continued by Williams and Gallant, presented Woodward as the NDOK Acting USA, pursuant to 5 U.S.C. § 3345(a)(1), knowing Woodward had not received any appointment by Attorney General Eric H. Holder, Jr., pursuant to 28 U.S.C. § 542(a).

90.    Williams' agency, in conjunction with EOUSA, searched the records of both EOUSA and Williams' agency, and could locate no records of any kind evidencing Woodward had been appointed by Attorney General Eric H. Holder, Jr. between January 1, 2009 through January 1, 2013.

91.    The presentation of Woodward as an AUSA for the NDOK was an intentional misrepresentation by Woodward, Snoke, O'Reilly, Williams, and Gallant, that directly affected the judicial process and judicial machinery itself and was designed to lead this Court into believing this Court continued with an Article III, § 2 live case and controversy, when in truth and fact, the Court's Article III, § 2 Judicial Power ceased to exist on June 28, 2009, when O'Meilia resigned as the NDOK USA.

92.    As a result, this Court should find that Woodward, Snoke, O'Reilly, Williams, and Gallant's representation to this Court, as officers of this Court, that Woodward was an AUSA appointed by Attorney General Eric H. Holder, Jr. was a Fraud on this Court.

## SECOND FRAUD ON THE COURT CLAIM

93.    Paragraphs 1 through 92  are realleged and incorporated herein by reference as if set forth word for word.

94.   In order for Woodward to qualify for the office of Acting USA under 5 U.S.C. § 3345(a)(1), beginning June 28, 2009, O'Meilia was required to authorize Woodward as O'Meilia's "First Assistant United States Attorney."

95.   To qualify as O'Meilia's FAUSA Woodward would need to hold that office prior to O'Meilia's resignation dated June 28, 2009.

96.   As of June 28, 2009, Woodward, Snoke, and O'Reilly, as continued by Williams and Gallant, presented Woodward as the NDOK Acting USA, pursuant to 5 U.S.C. § 3345(a)(1) and 28 U.S.C. § 542(a), knowing Woodward was not authorized as O'Meilia's FAUSA prior to O'Meilia's June 28, 2009 resignation.

97.   Williams' agency, in conjunction with EOUSA, searched the records of both EOUSA and Williams' agency, and could locate no records of any kind evidencing Woodward was authorized by O'Meilia to be his FAUSA prior to O'Meilia's June 28, 2009 resignation.

98.   The presentation of Woodward as O'Meilia's FAUSA was an intentional misrepresentation by Woodward, Snoke, O'Reilly, Williams, and Gallant, that directly affected the judicial process and judicial machinery itself and was designed to lead this Court into believing this Court continued with an Article III, § 2 live case and controversy, when in truth and fact, the Court's Article III, § 2 Judicial Power ceased to exist on June 28, 2009, when O'Meilia resigned as USA.

99.   As a result, this Court should find that Woodward, Snoke, O'Reilly, Williams, and Gallant's representation to this Court, as officers of this Court, that Woodward was O'Meilia's FAUSA was a Fraud on the Court.

THIRD FRAUD ON THE COURT

100.   Paragraphs 1 though 99 are realleged and incorporated herein by reference as if set forth word for word.

101.   Woodward did not qualify under 5 U.S.C. § 3345(a)(1) to hold the Article II, § 2, Cl. 2 office of Acting United States Attorney either before or after O'Meilia resigned as USA.

15

102.  As of June 28, 2009, Woodward, Snoke, and O'Reilly, as continued by Williams and Gallant, presented Woodward as the NDOK Acting USA, pursuant to 5 U.S.C. § 3345(a)(1) and 28 U.S.C. § 542(a), knowing Woodward was not authorized to hold the office of Acting United States Attorney.

103.  Williams' agency, in conjunction with EOUSA, searched the records of both EOUSA and Williams' agency, and could locate no records of any kind showing Woodward was authorized, pursuant to 5 U.S.C. § 3345(a)(1), to be Acting USA.

104.  The presentation as Acting USA, beginning June 28, 2009, was an intentional misrepresentation by Woodward, Snoke, O'Reilly, Williams, and Gallant, that directly affected the judicial process and judicial machinery itself and was designed to lead this Court into believing this Court continued with an Article III, § 2 live case and controversy, when in truth and fact, the Court's Article III, § 2 Judicial Power ceased to exist on June 28, 2009, when O'Meilia resigned.

105.  As a result, this Court should find that Woodward, Snoke, O'Reilly, Williams, and Gallant's representation to this Court, as officers of this Court, that Woodward was Acting USA pursuant to 5 U.S.C. § 3345(a)(1) and 28 U.S.C. § 542(a), was a Fraud on the Court.

### FOURTH FRAUD ON THE COURT

106.  Paragraphs 1 through 105 are realleged and incorporated herein by reference as if set forth word for word.

107.  As of January 21, 2010, Woodward, Snoke, and O'Reilly, as continued by Williams and Gallant, presented Woodward as the NDOK USA appointed by Eric H. Holder, Jr., pursuant to 28 U.S.C. § 546(a) and (c)(2), beginning January 21, 2010, or January 25, 2010, knowing no such appointment was in fact made.

108.  Williams' agency, in conjunction with EOUSA, searched the records of both EOUSA and Williams' agency, and could locate no records of any kind evidencing Woodward had been appointed by Attorney General Eric H. Holder, Jr., as USA pursuant to 28 U.S.C. § 546(a), as of January 21-25, 2010.

109.  The presentation of Woodward as the NDOK USA, beginning January 21-25, 2010, pursuant to 28 U.S.C. § 546(a) and (c)(2), was an intentional misrepresentation by Woodward, Snoke, O'Reilly, Williams, and Gallant, that directly affected the judicial process and judicial machinery itself and was designed to lead this Court into believing this Court continued with an Article III, § 2 live case and controversy, when in truth and fact, the Court's Article III, § 2 Judicial Power ceased to exist on both June 28, 2009, when O'Meilia resigned, and again, on January 21-25, 2010, when the purorted 210 days expired under 5 U.S.C. § 3346.

110.  As a result, this Court should find Woodward, Snoke, O'Reilly, Williams, and Gallant's representation to this Court, as officers of this Court, that Woodward was appointed by Eric H. Holder, Jr., pursuant to 28 U.S.C. § 546(a) and (c)(2), as the NDOK USA beginning January 21-25, 2010, was a fraud on the Court.

### FIFTH FRAUD ON THE COURT

111.  Paragraphs 1 through 110 are realleged and incorporated herein by reference as if set forth word for word.

112.  On May 24, 2010, then Chief Judge Claire V. Eagan, issued and filed an order pursuant to 28 U.S.C. § 546(d) appointing Woodward as the NDOK USA.

113.  Woodward, Snoke, and O'Reilly, as continued by Williams and Gallant, were fully aware that the May 24, 2010 appointment by Judge Eagan was contingent upon an Attorney General appointment under § 546(a) and (c)(2) expiring and that no such appointment by Eric H. Holder, Jr. was ever made naming Woodward or any other person prior to May 24, 2010 for the NDOK.

114.  The presentation of Wooward as the NDOK USA, as of May 25, 2010, pursuant to 28 U.S.C. § 546(d), was the direct result of the intentional misrepresentation by Woodward, Snoke, and O'Reilly, that Woodward had been appointed  on January 21-25, 2010 by Attorney General Eric H. Holder, Jr. pursuant to § 546(a).

115.   The presentation of Woodward as the NDOK USA pursuant to § 546(d),
directly affected the judicial process and judicial machinery itself and was
designed to further lead this Court into believing this Court continued with
an Article III, § 2 live case and controversy, when in truth and fact, the Court
had lost its Article III, § 2 Judicial Power as of June 28, 2009, and again on
January 21-25, 2010, based upon O'Meilia's resignation, and then the expiration
of the 210-days under 5 U.S.C. § 3346.

116. · As a result, this Court should find Woodward, Snoke, O'Reilly, Williams,
and Gallant's representation to this Court, as officers of this Court, that
Woodward was the NDOK USA, pursuant to 28 U.S.C.  § 546(d) and Judge Eagan's
May 24, 2010 order of appointment, was a fraud on the Court.

SIXTH FRAUD ON THE COURT

117.   Paragraphs 1 through 116 are realleged and incorporated herein by refer-
ence as if set forth word for word.

118.   As of June 28, 2009, Woodward, Snoke, and O'Reilly, changed O'Reilly's
Title of office to "Special Assistant United States Attorney" knowing O'Reilly
had not been appointed by the Attorney General personally pursuant to 28 U.S.C.
§ 543 prior to June 28, 2009.

119.   On October 24, 2013, Williams, O'Reilly, and Gallant, represented to this
Court, as officers of the Court, that O'Reilly received authorization from
Marrella to prosecute Defendant pursuant to 28 U.S.C. § 515(a) and 28 CFR §
0.13(a) on December 23, 2008 by letter, when no such letter was issued.

120.   TDC/FOIA and Williams' agency, in conjunction with EOUSA, and EOUSA of
its own, each searched their records and could locate no December 23, 2008
letter by Marrella naming O'Reilly under § 515(a) and § 0.13(a).

121.   TDC/FOIA searched their records and could locate no record of appointing
Marrella as a Deputy Assistant Attorney General between December 1, 2008 through

18

January 1, 2015 or ever holding such office.

122. The presentation of O'Reilly as a SAUSA authorized by Marrella, by letter dated December 23, 2008 and pursuant to § 515(a) and § 0.13(a), directly affected the judicial process and judicial machinery itself and was designed to intentionally   further lead this Court into believing this Court continued with an Article III, § 2 live case and controversy, notwithstanding the fact Woodward was not appointed under 28 U.S.C. §§ 542(a), 546(a), or authorized under 5 U.S.C. § 3345(a)(1), when in truth and fact, the Court lost its Article III, § 2 Judicial Power as of June 28, 2009, where O'Reilly had received no such appointment and authorization from Marrella, or anyone else, pursuant 28 U.S.C. § 515(a) and 28 CFR § 0.13(a), on December 23, 2008.

123. As a result, this Court should find Woodward, Snoke, O'Reilly, Williams, and Gallant's representation to this Court, as officers of this Court, that O'Reilly had been assigned by Marrella, on December 23, 2008, where Marrella was never a Deputy Assistant Attorney General, was a fraud on the Court.

## SEVENTH FRAUD ON THE COURT

124. Paragraphs 1 through 123 are realleged and incorporated herein by reference as if set forth word for word.

125. O'Reily never received any letter dated December 23, 2008 assigning him pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a).

126. The Presentation of O'Reilly, as assigned pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a), directly affected the judicial process and judicial machinery itself and was designed to intentionally further lead this Court into believing this Court continued with an Article III, § 2 live case and controversy, notwithstanding the fact Woodward was not appointed under 28 U.S.C. §§ 542(a) and 546(a), or authorized under 5 U.S.C. § 3345(a)(1), when in truth and fact, the Court lost its Article III, § 2 Judicial Power as of June 28, 2009, where O'Reilly had received no such appointment dated December 23, 2008,   pur-

suant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a).

127. As a result, this Court should find Woodward, Snoke, O'Reilly, Williams, and Gallant's representation to this Court, as officers of this Court, that O'Reilly had received a letter dated December 23, 2008, authorizing him pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a), was a fraud on the Court.

## EIGHTH FRAUD ON THE COURT

128. Paragraphs 1 through 124 are realleged and incorporated herein by reference as if set forth word for word.

129. On October 24, 2013, Williams, O'Reilly, and Gallant, represented to this Court, as officers of the Court, that O'Reilly was appointed SAUSA by O'Meilia on January 5, 2009 by letter, knowing O'Meilia never made any such appointment.

130. Williams' agency, in conjunction with EOUSA, searched the records of both EOUSA and Williams' agency, and could locate no letter appointing O'Reilly on January 5, 2009 to the Article II, § 2, Cl. 2 office of SAUSA.

131. The only record located was an oath O'Reilly signed showing a date of January 5, 2009, which without an actual appointment is meaningless.

132. The presentation of O'Reilly as a SAUSA, beginning March 10, 2009, or at least by June 28, 2009, was an intentional misrepresentation by Woodward, Snoke, O'Reilly, Williams, and Gallant, that directly affected the judicial process and judicial machinery itself and was designed to lead this Court into believing this Court continued with an Article III, § 2 live case and controversy, when in truth and fact, the Court's Article III, § 2 Judicial Power ceased to exist on June 28, 2009, when O'Meilia resigned as the NDOK USA.

133. As a result, this Court should find that Woodward, Snoke, O'Reilly, Williams, and Gallant's representation to this Court, as officers of this Court, that O'Reilly was appointed pursuant to 28 U.S.C. § 543, on January 5, 2009, by O'Meilia, was a fraud on the Court.

## NINTH FRAUD ON THE COURT

134. Paragraphs 1 through 133 are realleged and incorporated herein by reference as if set forth word for word.

135. On October 24, 2013, Williams, O'Reilly, and Gallant, represented to this Court, as officers of the Court, that O'Reilly received an extension of his January 5, 2009 SAUSA appointment on January 4, 2010, by the NDOK USA, knowing O'Reilly had never received any such extension or appointment.

136. Williams' agency, in conjunction with EOUSA, searched the records of both EOUSA and Williams' agency, and could locate no letter of extension dated January 4, 2010, naming O'Reilly as an SAUSA for the NDOK for another year.

137. The presentation of O'Reilly as a SAUSA, beginning March 10, 2009, or at least by June 28, 2009, and as purportedly extended on January 4, 2010, was an intentional misrepresentation by Woodward, Snoke, O'Reilly, Williams, and Gallant, that directly affected the judicial process and judicial machinery itself and was designed to lead this Court into believing this Court continued with an Article III, § 2 live case and controversy, when in truth and fact, the Court's Article III, § 2 Judicial Power ceased to exist on June 28, 2009, when O'Meilia resigned as the NDOK USA.

138. As a result, this Court should find that Woodward, Snoke, O'Reilly, Williams, and Gallant's representation to this Court, as officers of this Court, that O'Reilly received an extension of a January 5, 2009 purported appointment by O'Meilia, to the Article II, § 2, Cl. 2 office of SAUSA, on January 4, 2010, was a fraud on the Court.

## TENTH FRAUD ON THE COURT

139. Paragraphs 1 through 138 are realleged and incorporated herein by reference as if set forth word for word.

140. On October 24, 2013, Williams, O'Reilly, and Gallant, represented to this Court, as officers of this Court, that O'Reilly received another extension of his

21

January 5, 2009 purported appointment, as SAUSA by O'Meilia, dated January 4, 2011, by the NDOK USA, knowing O'Reilly had never received any such extension.

141. Williams' agency, in conjunction with EOUSA, searched the records of both EOUSA and Williams' agency, and could locate no letter of extension dated January 4, 2011, naming O'Reilly as an SAUSA for the NDOK for another year.

142. The presentation of O'Reilly as a SAUSA, beginning March 10, 2009, or at least by June 28, 2009, and as purportedly extended on January 4, 2011, was an intentional misrepresentation by Woodward, Snoke, O'Reilly, Williams, and Gallant, that directly affected the judicial process and judicial machinery itself and was designed to lead this Court into believing this Court continued with an Article III, § 2 live case and controversy, when in truth and fact, the Court's Article III, § 2 Judicial Power ceased to exist on June 28, 2009, when O'Meilia resigned as the NDOK USA.

143. As a result, this Court should find that Woodward, Snoke, O'Reilly, Williams, and Gallant's representation to this Court, as officers of this Court, that O'Reilly received an extension of a January 5, 2009 purported appointment by O'Meilia, to the Article II, § 2, Cl. 2 office of SAUSA, dated January 4, 2011, was a fraud on the Court.

### ELEVENTH FRAUD ON THE COURT

144. Paragraph 1 through 143 are realleged and incorporated herein by reference as if set forth word for word.

145. On October 24, 2013, Williams, O'Reilly, and Gallant, represented to this Court, as officers of the Court, that O'Reilly received another extension of his January 5, 2009 purported appointment, as SAUSA by O'Meilia, dated January 10, 2012, by the NDOK USA, knowing O'Reilly had never received any such extension.

146. Williams' agency, in conjunction with EOUSA, searched the records of both EOUSA and Williams' agency, and could locate no letter of extension dated January 10, 2012, naming O'Reilly as an SAUSA for the NDOK for another year.

22

147.   The presentation of O'Reilly as a SAUSA, beginning March 10, 2009, or at least by June 28, 2009, and as purportedly extended on January 10, 2012, was an intentional misrepresentation by Woodward, Snoke, O'Reilly, Williams, and Gallant, that directly affected the judicial process and judicial machinery itself and was designed to lead this Court into believing this Court continued with an Article III, § 2 live case and controversy, when in truth and fact, the Court's Article III, § 2 Judicial Power ceased to exist on June 28, 2009, when O'Meilia resigned as the NDOK USA.

148.   As a result, this Court should find that Woodward, Snoke, O'Reilly, Williams, and Gallant's representation to this Court, as officers of this Court, that O'Reilly received an extension of a January 5, 2009 purported appointment by O'Meilia, to the Article II, § 2, Cl. 2 office of SAUSA, dated January 10, 2012, was a fraud on the Court.

TWELFTH FRAUD ON THE COURT

149.   Paragraph 1 through 148 are realleged and incorporated herein by reference as if set forth word for word.

150.   On October 24, 2013, Williams, O'Reilly, and Gallant, represented to this Court, as officers of the Court, that O'Reilly received another extension of his January 5, 2009 purported appointment, as SAUSA by O'Meilia, dated December 19, 2012, by Williams personally, knowing O'Reilly had never received any such extension.

151.   Williams' agency, in conjunction with EOUSA, searched the records of both EOUSA and Williams' agency, and could locate no letter extension dated December 19, 2012, naming O'Reilly as an ASUSA for the NDOK for another year by Williams.

152.   The Presentation of O'Reilly as a SAUSA, beginning March 10, 2009, or at least by June 28, 2009, and as purportedly extended on December 19, 2012, was an intentional misrepresentation by Woodward, Snoke, O'Reilly, Williams, and Gallant, that directly affected the judicial process and judicial machinery

itself and was designed to lead this Court into believing this Court continued with an Article III, § 2 live case and controversy, when in truth and fact, the Court's Article III, § 2 Judicial Power ceased to exist on June 28, 2009, when O'Meilia resigned as the NDOK USA.

153. As a result, this Court should find that Woodward, Snoke, O'Reilly, Williams, and Gallant's representation to this Court, as officers of this Court, that O'Reilly received an extension of a January 5, 2009 purported appointment by O'Meilia, to the Article II, § 2, Cl. 2 office of SAUSA, dated December 19, 2012, by Williams, was a fraud on the Court.

## THIRTEENTH FRAUD ON THE COURT

154. Paragraph 1 through 153 are realleged and incorporated herein by reference as if set forth word for word.

155. Both Snoke and Gallant, between January 2009 through 2014, were represented to this Court by Woodward, Snoke, O'Reilly, Williams, and Gallant, to have been appointed AUSA by Attorney General Eric H. Holder, Jr., knowing neither Snoke, or Gallant, had received such appointment.

156. Williams' agency, in conjunction with EOUSA, searched the records of both EOUSA and Williams' agency, and could locate no records of appointment of either Snoke, or Gallant, save for an oath of Gallant, which is not an appointment.

157. The Presentation of Snoke and Gallant as AUSAs, was an intentional misrepresentation by Woodward, Snoke, O'Reilly, Williams, and Gallant, that directly affected the judicial process and judicial machinery itself and was designed to lead this Court into believing this Court continued with an Article III, § 2 case and controversy, when in truth and fact, the Court's Article III, § 2 Judicial Power ceased to exist on June 28, 2009, when O'Meilia resigned as the NDOK, USA.

155. As a result, this Court should find that Woodward, Snoke, O'Reilly, Williams, and Gallant's representation to this Court, as officers of this Court,

that  Snoke and Gallant held appointments by the Attorney General Eric H. Holder, Jr. to the Article II, § 2, Cl. 2 office of AUSA, for the NDOK, was and continues to be, a fraud on the Court.

CONCLUSION

Defendant respectfully requests this Court enter an order enjoining any further enforcement of the Judgment entered in this case dated April 28, 2010, based upon the following frauds on the Court that (1) Woodward was an AUSA when he was not; (2) Woodward was O'Meilia's First Assistant when he was not; (3) Woodward qualified as Acting USA when he did not; (4) Woodward was appointed USA pursuant to 28 U.S.C. § 546(a) when he was not; (5) Woodward was appointed USA pursuant to 28 U.S.C. § 546(d) when no § 546(a) and (c)(2) term had began or expired; (6) Marrella was appointed Deputy Assistant Attorney General when he was not; (7) O'Reilly was authorized to prosecute Defendant by Marrella pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a) when no such December 23, 2008 letter was actually issued; (8) O'Reilly was appointed on January 5, 2009 as a SAUSA when he was not; (9) the NDOK USA extended O'Meilia's appointment of O'Reilly on January 4, 2010 when no such extension was actually made; (10) the NDOK USA extended the January 4, 2010 extension for O'Reilly as SAUSA when no such extension was made; (11) the NDOK USA extended the January 4, 2011 extension on January 10, 2012 when no such extension was made; (12) the NDOK USA extended the January 10, 2012 extension on December 19, 2012 when no such extension was made; (13) Snoke and Gallant were AUSA's when they were not; and where these frauds on the Court were designed to lead, and did lead, this Court into an exercise of Article III, § 2 Judicial Power that actually ceased on June 28, 2009 when O'Meilia resigned as USA.

Respectfully Submitted,

Reg. # 02580-063

## CERTIFICATE OF SERVICE

I hereby certify that on October __7__, 2015, I mailed First Class
U.S. the above Motion to the Clerk of Court at 333 West Fourth Street, Tulsa,
Oklahoma 74103;

I further certify that all parties are registered users and shall receive
service of the above Motion through the Clerk of Court's ECF System:
United States of America

_Lindsey K Springer_
Server

## DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1),
under the laws of the United States of Americ, that on October __7__, 2015,
I deposited the above Motion in the U.S. Maibox located inside FSL La Tuna
Federal Prison to the Clerk of Court at the address above.

_Lindsey K Springer_
Declarant