**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**November 13, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

LINDSEY KENT SPRINGER,

     Defendant - Appellant.

No. 15-5109
(D.C. No. 4:09-CR-00043-SPF-1)
(N.D. Oklahoma)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**
_____

Grant R. Smith, Assistant Federal Public Defender (Virginia L. Grady, Federal Public
Defender with him on the briefs), Denver, Colorado, for Appellant.

Jeffrey Brian Bender, Attorney Tax Division (Caroline D. Ciraolo, Acting Assistant
Attorney General; David A. Hubbert, Acting Assistant Attorney General; S. Robert
Lyons, Chief of Criminal Appeals & Tax Enforcement Policy Section; Gregory Victor
Davis, Attorney Tax Division; Alexander P. Robbins, Attorney Tax Division; Danny C.
Williams, United States Attorney; and Loretta F. Radford, Acting United States Attorney,
with him on the briefs), Department of Justice, Washington, D.C., for Appellee.

_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

# I.      INTRODUCTION

Mr. Springer, a federal prisoner acting without counsel, brought this appeal of

the district court's denial of his motion for collateral relief based on an alleged fraud

on the conviction court.[1] The district court resolved the issue on the merits, ruling

that Mr. Springer's fraud-on-the-court claim is frivolous. Mr. Springer's appeal of

that decision raises questions concerning the intersection of the Antiterrorism and

Effective Death Penalty Act's (AEDPA) rules regarding second or successive

collateral attacks on a conviction or sentence and the inherent, equitable powers of

the courts. Specifically, Mr. Springer contends that claims of fraud on the court fall

outside the jurisdictional restrictions imposed by AEDPA and are instead governed

by the United States Supreme Court's decision in *McQuiggin v. Perkins*, 133 S. Ct.

1924 (2013). And Mr. Springer argues that the direction from the Supreme Court in

*McQuiggin* is so clear that this panel can depart from our contrary precedent in

*United States v. Baker*, 718 F.3d 1204, 1208 (10th Cir. 2013) (holding that claims of

fraud on the court are barred if raised in a second or successive motion under 28

U.S.C. § 2255 unless the conditions imposed by 28 U.S.C. § 2255(h) are met).

We first conclude that the Supreme Court's decision in *McQuiggin* does not

supersede our decision in *Baker*. Consequently, we hold that we may not exercise

jurisdiction over Mr. Springer's appeal in the absence of Certificate of Appealability

---

[1] Although Mr. Springer initiated this appeal pro so, in an Order dated
January 11, 2017, we directed that CJA counsel be appointed and supplemental
briefing be filed. In light of our January 11, 2017 order, Mr. Springer's motion to
proceed in forma pauperis is denied as moot.

(COA). Next, we construe Mr. Springer's notice of appeal as a request for a COA, but deny that request based on a clear procedural bar. Because we lack subject matter jurisdiction, we dismiss this appeal.

## II.    BACKGROUND

In April 2010, Lindsey Springer was convicted of conspiracy to defraud the United States, tax evasion, and willful failure to file tax returns. This court affirmed his convictions and sentence on direct appeal. *United States v. Springer*, 444 F. App'x 256, 259 (10th Cir. 2011) (per curiam) (unpublished). Years later, Mr. Springer filed a motion under 28 U.S.C. § 2255, raising seventy-six grounds for collateral relief. The district court dismissed most of the arguments as procedurally barred, and denied the remaining claims on the merits. We denied a certificate of appealability (COA). *United States v. Springer*, 594 F. App'x 554, 554–55 (10th Cir. 2015) (unpublished).

Mr. Springer then filed the "Motion to Enjoin Enforcement of the Judgment Dated April 28, 2010, Based upon Several Frauds on the Court [Motion to Enjoin]," that is the subject of this appeal. In his Motion to Enjoin, Mr. Springer alleged that government attorneys defrauded the conviction court by concealing their lack of authorization to prosecute him. The district court summarily denied the motion, stating: "Over the years, Mr. Springer has made similar arguments challenging the authority of prosecutors and the court, all of which have been rejected. Further discussion of these frivolous arguments is not necessary. The motion is DENIED." Mr. Springer filed a timely notice of appeal.

3

The government moved to dismiss the appeal, in part because it claimed Mr. Springer's Motion to Enjoin was in substance a second or successive § 2255 motion, and he has neither obtained authorization from this court to proceed in the district court, nor obtained a COA to proceed in this court.[2] Mr. Springer responded that he does not need authorization for a fraud-on-the-court claim, citing *McQuiggin*. We did not rule on the motion to dismiss and instead issued an order appointing Mr. Springer counsel to address the specific question of whether *McQuiggin* impacts our holding in *Baker*. We reserved the question of whether Mr. Springer is entitled to a COA. The government's motion to dismiss is now granted.

## III.   DISCUSSION

Mr. Springer's appeal challenges the district court's order that denied his Motion to Enjoin on the ground that his fraud-on-the-court claim is frivolous. But before we may address the merits of his appeal, we must determine whether Mr. Springer's claims—although not characterized as such—seek collateral relief under 28 U.S.C. § 2255. That is because AEDPA imposes two jurisdictional barriers to our review.

First, if AEDPA governs Mr. Springer's claim, we must decide whether a certificate of appealability (COA) should issue. Where required, a COA is a prerequisite to this court's exercise of jurisdiction, and 28 U.S.C. § 2253(c)(1)(B)

---

[2] Mr. Springer objects that the government's motion to dismiss was filed more than 14 days after his notice of appeal and thus, absent good cause, was untimely under 10th Cir. R. 27.3(A)(3)(a). But the motion raises jurisdictional issues that we would examine in any event. *Tooele Cty. v. United States*, 820 F.3d 1183, 1186 (10th Cir. 2016).

plainly requires petitioners to obtain a COA to appeal any "final order in a proceeding under section 2255." The COA stage "is not coextensive with a merits analysis." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, we are limited to determining whether Mr. Springer "has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). In *Buck*, the Supreme Court warned the lower courts that "[t]his threshold question should be decided without full consideration of the factual or legal bases adduced in support of the claims," because "[w]hen a court of appeals sidesteps the COA process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction." *Id.* (internal quotation marks omitted).

Thus, we begin our analysis here by determining whether the district court's order denying Mr. Springer's Motion to Enjoin was issued in a "proceeding under section 2255." If we answer that question in the affirmative, we are limited to granting or denying a COA before we can proceed further. 28 U.S.C. § 2253; *see also Buck*, 137 S. Ct. at 773 (A "prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal. Federal law requires that he first obtain a COA from a circuit justice or judge."). We may only grant a COA if Mr. Springer "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). And because the district court denied

5

the motion on the merits, we would ordinarily answer that question by determining whether Mr. Springer has "demonstrate[d] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

But here, we face a second jurisdictional hurdle: whether the district court had subject matter jurisdiction to decide the Motion to Enjoin on the merits. Because Mr. Springer has already submitted an initial petition under § 2255, his motion to the district court, if within the scope of AEDPA, is a second or successive motion falling under § 2255(h). As such, this court must grant authorization[3] before the district court may exercise jurisdiction over that second or successive motion. When a district court is confronted with an unauthorized motion, it "does not even have jurisdiction to deny the relief sought in the pleading." *United States v. Nelson*, 465 F.3d 1145, 1148 (10th Cir. 2006). Instead, the court has only two options: it must either dismiss the motion or, if it is in the interests of justice, transfer the motion to the circuit court for authorization. *In re Cline*, 531 F.3d 1249, 1252 (10th Cir. 2008) (describing factors the district court must consider in determining whether to transfer for authorization); *see also* 28 U.S.C. § 1631.

In contrast, if Mr. Springer is correct that his Motion to Enjoin based on a claim of fraud on the court is excused from compliance with AEDPA, the district

---

[3] The statute, 28 U.S.C. § 2255(h), calls this "certification," but courts routinely refer to it as "authorization." We use "authorization" in this opinion to distinguish this statutory mandate from the separate and independent "certificate of appealability" requirement in 28 U.S.C. § 2253.

court properly exercised subject matter jurisdiction over the matter and properly
reached the merits. Under those circumstances, this court has jurisdiction to review
the district court's decision on the merits. Accordingly, we must decide whether
AEDPA is applicable before we can assess our own jurisdiction over this appeal.

We resolve that question in favor of the government, holding that *McQuiggin*
does not clearly undermine our decision in *Baker.* As a result, this panel may not
entertain this appeal in the absence of a COA. And because Mr. Springer has not
made "a substantial showing of the denial of a constitutional right," 28 U.S.C.
§ 2253(c)(2), we deny COA and dismiss the appeal with instructions to the district
court to vacate its decision.

## A.   The Motion to Enforce is a Second or Successive § 2255 Petition Governed by AEDPA.

## 1.   Our Appellate Jurisdiction

Before we may examine the district court's jurisdiction, we must first define
the limits of our appellate jurisdiction. *See Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83, 94 (1998) (holding that on every appeal, "the first and fundamental
question is that of jurisdiction, *first, of this court,* and *then* of the court from which
the record comes") (emphasis added) (internal quotation marks omitted); *In re Lang*,
414 F.3d 1191, 1195 (10th Cir. 2005) ("[T]he question of this Court's jurisdiction
(i.e., our appellate jurisdiction) is *antecedent* to all other questions, including the
question of the subject matter of the District Court.") (internal quotation marks
omitted). "Jurisdiction is a threshold question that a federal court must address before

reaching the merits, even if the merits question is more easily resolved and the party prevailing on the merits would be the same as the party that would prevail if jurisdiction were denied." *Payton v. U.S. Dep't of Agric.*, 337 F.3d 1163, 1167 (10th Cir. 2003) (internal quotation marks omitted). "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co.*, 523 U.S. at 94–95 (alteration and internal quotation marks omitted). And irrespective of what we determine concerning our jurisdiction over this appeal, we do have the power to decide the threshold issue of whether such jurisdiction exists. *See United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction.").

As discussed, Congress has limited our jurisdiction to review a "final order in a proceeding under section 2255," such that the petitioner must first obtain a COA before we have the power to act on the appeal. *See* 28 U.S.C. § 2253. *Cf. United States v. Harper*, 545 F.3d 1230, 1232 (10th Cir. 2008) ("Before we may address the merits of [the defendant's] filing, we are necessarily confronted with the question whether a district court's dismissal order for lack of jurisdiction in these circumstances qualifies as a 'final order' under 28 U.S.C. § 2253(c)(1) & (B), such that Mr. Harper must obtain a COA in order to appeal."). There is no dispute that the district court order here is final. *See Harper*, 545 F.3d at 1233 (holding an order is "final" when "the district court's decision effectively terminated the petitioner's ability to proceed before that court"); *In re Universal Serv. Fund Tel. Billing Practice*

8

*Litig. v. Sprint Commc'ns Co.*, 428 F.3d 940, 942 (10th Cir. 2005) (holding that a decision is "final" when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment") (internal quotation marks omitted). So, we now consider whether Mr. Springer seeks relief pursuant to § 2255, and whether the district court was therefore proceeding "under" § 2255.

### 2.    Mr. Springer's Argument

Although Mr. Springer does not characterize his motion as one seeking habeas relief, it "is the relief sought, not his pleading's title, that determines whether the pleading is a § 2255 motion." *Nelson*, 465 F.3d at 1149; *see also Baker*, 718 F.3d at 1208 ("Call it a motion for a new trial, arrest of judgment, mandamus, prohibition, coram nobis, coram vobis, audita querela, certiorari, capias, habeas corpus, ejectment, quare impedit, bill of review, writ of error, or an application for a Get-Out-of-Jail card; the name makes no difference. It is substance that controls." (internal quotation marks omitted)); *United States v. Torres*, 282 F.3d 1241, 1242 (10th Cir. 2002) (construing a "petition for writ of error coram nobis and/or petition for writ of audita querela" as a second or successive § 2255 motion). Mr. Springer's characterization of his claim is not dispositive because, "to allow a petitioner to avoid the bar against successive § 2255 petitions by simply styling a petition under a different name would severely erode the procedural restraints imposed under 28 U.S.C. §§ 2244(b)(3) and 2255." *Torres*, 282 F.3d at 1246.

Mr. Springer's Motion to Enjoin raises a challenge to his underlying conviction based on his claim that the federal prosecutors defrauded the conviction

court by misrepresenting their authority. This circuit has held that a motion

challenging a federal conviction based on fraud on the conviction court is properly

deemed a § 2255 motion. *Baker*, 718 F.3d at 1208 ("[A] motion alleging fraud on the

court in a defendant's criminal proceeding must be considered a second-or-successive

collateral attack because it asserts or reasserts a challenge to the defendant's

underlying conviction."); *United States v. Cone*, 525 F. App'x 823, 825 (10th Cir.

2013) (unpublished) (affirming the district court's construction of the motion as a

§ 2255 motion because petitioner "did not raise a defect in the § 2255 proceedings

themselves, but rather attacked the validity of his underlying conviction"); *Berryhill*

*v. Evans*, 466 F.3d 934, 937 (10th Cir. 2006) (construing the petitioner's 60(b)

motion as a second or successive motion because he alleged fraud committed in his

sentencing and direct appeal courts, not fraud on the habeas court).

Nonetheless, Mr. Springer contends that *McQuiggin v. Perkins*, 133 S. Ct.

1924 (2013), dictates a result contrary to our holding in *Baker*, 718 F.3d at 1208. He

argues that fraud-on-the-court claims, which historically could be raised at any time

as a matter of equity,[4] are not subject to AEDPA's constraints on second or

---

[4] As we recently explained:

Courts have historically enjoyed the inherent authority to correct judgments
obtained by the commission of fraud on the court, regardless of ordinary
procedural bars like statutes of limitations or the time limits imposed on
motions to set aside judgments for fraud. This is because a decision
produced by fraud on the court is not in essence a decision at all, and never
becomes final.

10

successive § 2255 motions. Because a published opinion from this court has rejected

Mr. Springer's argument, we would typically be bound by our principles of

horizontal stare decisis to do the same. *United States v. Spedalieri*, 910 F.2d 707, 710

n.3 (10th Cir. 1990) ("Even if we were inclined toward Spedalieri's position, which

we are not, a panel cannot overrule circuit precedent."). But an exception to this rule

applies where subsequent Supreme Court authority undermines our prior precedent.

*See Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*,

843 F.3d 1225, 1235 (10th Cir. 2016); *United States v. Hathaway,* 318 F.3d 1001,

1006 (10th Cir. 2003). That is, we are bound by *Baker* "absent en banc

reconsideration or a superseding contrary decision by the Supreme Court." *Green*

*Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1115 (10th Cir. 2017) (internal

quotation marks omitted). For *McQuiggin* to constitute such superseding authority, it

must "contradict or invalidate" *Baker. Id.* (alterations omitted). To explain why the

Supreme Court's decision in *McQuiggin* does not permit a departure by this panel

from our holding in *Baker*, we explain each decision in some detail.

## 3.   United States v. Baker

In *Baker*, the defendant had been convicted of being a felon in possession of

ammunition in violation of 18 U.S.C. § 922(g)(1). *Baker*, 718 F.3d at 1205. Mr.

Baker filed a direct appeal that was denied by this court, followed by a motion for

rehearing en banc and petition for certiorari—both unsuccessful. *Id.* Next, he filed a

---

*United States v. Williams*, 790 F.3d 1059, 1071 (10th Cir. 2015) (citations and
internal quotation marks omitted).

petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. *Id.* After

the district court denied § 2255 relief, we denied Mr. Baker a COA. *Id.* On two

subsequent occasions, Mr. Baker filed for authorization to file second or successive

motions for relief under § 2255, but we denied authorization in both instances. *Id.*

Mr. Baker then filed a "Motion to Reconsider and Vacate Enhancement," which the

district court dismissed as an unauthorized successive petition under § 2255. *Id.*

When that motion too proved unsuccessful, Mr. Baker filed a motion in the district

court alleging fraud on the court and purporting to proceed under Rule 60(d)(3). *Id.*;

*see* Fed. R. Civ. P. 60(d)(3) (providing that Rule 60 "does not limit a court's power

to: (3) set aside a judgment for fraud on the court"). The district court concluded that

Mr. Baker's fraud-on-the-court motion was in substance, a successive motion

collaterally attacking his sentence under § 2255. *Baker,* 718 F.3d at 1205–06. And

because Mr. Baker lacked authorization from this court, the district court dismissed

the motion for lack of jurisdiction. *Id.* at 1206.

Mr. Baker appealed, claiming that he did not need a COA because "a motion

invoking the district court's inherent power to set aside a judgment obtained through

fraud on the court is not subject to the certification requirements in § 2255(h). . . ."

*Id.* We rejected that argument, holding the district court had correctly treated Mr.

Baker's motion as a second or successive petition under § 2255 because the motion

asserted claims of error in Mr. Baker's conviction. *Id.* We explained that even where

the petitioner has invoked the inherent power of the court to correct fraud on the

court, "we look at the relief sought, rather than a pleading's title or its form, to

12

determine whether it is a second-or-successive collateral attack on a defendant's conviction." *Id.* at 1208.

### 4.    McQuiggin v. Perkins

After our decision in *Baker*, the Supreme Court issued its decision in *McQuiggin*. There, Mr. Perkins waited more than 11 years to file an initial petition for relief from his conviction under 28 U.S.C. § 2244.[5] *McQuiggin*, 133 S. Ct. at 1929. Pursuant to AEDPA, such initial petitions must ordinarily be filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). But where the petitioner relies on newly discovered evidence, an initial petition may be filed within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* at § 2244(d)(1)(D).

Mr. Perkins relied on the second of these deadlines, claiming that three affidavits implicating a third party as the perpetrator of the crime were newly discovered. *McQuiggin*, 133 S. Ct. at 1929. The district court dismissed the petition as untimely, noting that the petition had been filed more than five years after the date of the latest of the affidavits. *Id.* at 1930. The district court acknowledged that the statute of limitations was subject to equitable tolling under the Sixth Circuit's precedent, but it found Mr. Perkins had failed to establish any exceptional

---

[5] The restrictions on second or successive petitions in 28 U.S.C. § 2244 are also applicable to petitions under 28 U.S.C. § 2255. *See In re Clark*, 837 F.3d 1080, 1082 (10th Cir. 2016).

circumstances justifying tolling in his case and had not acted diligently in pursuing his claim. *Id.* As an alternative basis for its decision, the district court found Mr. Perkins could not make a showing of actual innocence. *Id.*

The Sixth Circuit granted Mr. Perkins a COA on the issue of whether "reasonable diligence [is] a precondition to relying on actual innocence as a gateway to adjudication of a federal habeas petition on the merits." *Id.* After argument on that question, the Sixth Circuit reversed and remanded, holding that Mr. Perkins should be permitted to present his habeas claims as if timely filed, despite his lack of diligence. *Id.* The Supreme Court granted certiorari to resolve a conflict among the federal circuits on "whether AEDPA's statute of limitations can be overcome by a showing of actual innocence." *Id.*

To begin, the Court clarified that Mr. Perkins was not entitled to equitable tolling of the statute of limitations because he had not acted diligently. *Id.* at 1931. Instead, the Court framed the relevant issue as whether Mr. Perkins's "plea of actual innocence can overcome AEDPA's one-year statute of limitations," providing him with "an equitable exception to § 2244(d)(1), not an extension of the time statutorily prescribed." *Id.* (emphasis omitted).

The Court next focused on the historical significance of a "convincing actual-innocence claim," noting that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *Id.* The Court further explained that this "fundamental miscarriage of justice exception, is grounded in the 'equitable

14

discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* (citing *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (internal quotation marks omitted)).

Important for our purposes, the Court in *McQuiggin* held that the "actual innocence" gateway to federal habeas review applied in *House v. Bell*, 547 U.S. 518 (2006) and *Schlup v. Delo*, 513 U.S. 298 (1995), has survived the passage of AEDPA with respect to the one-year statute of limitations applicable to an initial petition for habeas relief under 28 U.S.C. § 2244(d)(1). *McQuiggin*, 133 S. Ct. at 1928. After noting that such actual-innocence claims historically could be asserted as equitable ("miscarriage of justice") exceptions to excuse various procedural defaults in habeas proceedings, *id.* at 1931–32, the Court explained that "[e]quitable principles have traditionally governed the substantive law of habeas corpus," *id.* at 1934 (internal quotation marks omitted). And of significance here, the Court admonished that federal courts "not construe [AEDPA] to displace courts' traditional equitable authority absent the clearest command." *Id.* at 1934 (internal quotation marks omitted). Because "[t]he text of § 2244(d)(1) contains no clear command countering the courts' equitable authority to invoke the miscarriage of justice exception to overcome the expiration of the statute of limitations governing a first federal habeas petition," *McQuiggin* held the "exception survived AEDPA's passage intact and unrestricted." *Id.* But the Court noted that for purposes of second or successive petitions, Congress had expressly "constrained the application of the [miscarriage of justice] exception," in §§ 2244(b)(2)(B) and 2254(e)(2), by requiring that the newly

15

discovered evidence: (1) "could not have been discovered previously through the exercise of due diligence; and . . . (2) "establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id* at 1933 (internal quotation marks omitted).

### 5.      McQuiggin Does Not Undermine Baker

Mr. Springer contends that his fraud-on-the-court claim is not subject to the authorization requirement because "AEDPA does not 'clearly' indicate a Congressional intent to restrict this traditional equitable authority." Mr. Springer also asserts that like actual innocence, fraud-on-the-court claims should not be subject to procedural constraints because "they impact the very integrity of the judicial process."

It is true that the courts are endowed with equitable powers, including the power to address fraud on the court. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 248 (1944); *United States v. Williams*, 790 F.3d 1059, 1071 (10th Cir. 2015). But where Congress created the federal district and circuit courts, Congress retains the authority to place clear statutory limits on the courts' powers. *See McQuiggin*, 135 S. Ct. at 1934; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). Mr. Springer argues that AEDPA places no clear limits on the inherent power to address fraud on the court and that, therefore, *McQuiggin* implicitly overruled our contrary decision in *Baker*. We are not convinced. "Although the Supreme Court decision need not be 'on all fours with our precedent,' it must 'contradict[] or

16

invalidate[] our prior analysis' to be considered superseding authority." *Green Sol.*

*Retail, Inc.*, 855 F.3d at 1115 (quoting *United States v. Brooks*, 751 F.3d 1204, 1209–

10 (10th Cir. 2014) (omissions in original). The Supreme Court's decision in

*McQuiggin* does not invalidate or contradict our holding in *Baker*.

First, despite *McQuiggin*'s broad language that we should "not construe

[AEDPA] to displace [our] traditional equitable authority absent the clearest

command," the decision dealt specifically with claims of actual innocence and the

miscarriage of justice exception. 133 S. Ct. at 1934 (internal quotation marks

omitted) (explaining that the expiration of AEDPA's one-year statute of limitations

could be overcome by the miscarriage of justice exception). The Court in *McQuiggin*

was careful to cabin its holding, stating that AEDPA's time limitations "apply to the

typical case in which *no allegation of actual innocence* is made. The miscarriage of

justice exception, we underscore, applies to a severely confined category: cases in

which new evidence shows it is more likely than not that no reasonable juror would

have convicted the petitioner." *Id.* at 1933 (alterations and internal quotation marks

omitted) (emphasis added). Thus, the *McQuiggin* holding is expressly limited to well-

supported claims of actual innocence under the miscarriage of justice exception; it

never mentions fraud on the court or any other claim arising under equity.

This limitation is appropriate in light of the significant differences between an

actual innocence claim and a claim of fraud on the court. Unlike claims of actual

innocence, fraud-on-the-court claims do not necessarily implicate the "fundamental

miscarriage of justice exception, [which] is grounded in the 'equitable discretion' of

17

habeas courts to see that federal constitutional errors do not result in the incarceration

of innocent persons." *McQuiggin*, 133 S. Ct. at 1931 (internal quotation marks

omitted). *See also Williams*, 790 F.3d at 1079–80 (concluding that defendant had

made a prima facie factual innocence claim under § 2255(h) as to only one of the

convictions alleged to have been the result of fraud on the court). And in cases where

a fraud-on-the-court claim does implicate actual innocence, the applicant may

proceed under AEDPA, but must do so in compliance with Congress's "clear

command" expressly limiting the circumstances under which an actual innocence

claim can be brought in a second or successive petition. *McQuiggin*, 133 S. Ct. at

1934. *See also* 28 U.S.C. § 2255(h); *Williams*, 790 F.3d at 1080. In addition, the

power to correct a fraud on the court and the power to prevent a miscarriage of

justice caused by the incarceration of an innocent person address different interests.

"The courts' interest in correcting a fraud on the court stems from 'far more than an

injury to a single [innocent] litigant.'" *Williams*, 790 F.3d at 1071 (citing *Hazel-*

*Atlas*, 322 U.S. at 246). While the miscarriage of justice claim is focused on the

innocent person's right to liberty, "our primary objective when correcting a fraud on

the court is to redress harm to the integrity of the judicial process." *Id.* (internal

quotation marks omitted). As a result, the corrective action taken to redress the fraud

on the court need not impact an otherwise valid underlying conviction or otherwise

benefit a properly convicted defendant. The court may instead impose sanctions in

the form of attorney's fees, suspension, disbarment, or even a referral for criminal

prosecution. *See id.*

18

Second, *McQuiggin*'s analysis centers on *first* habeas petitions and the Court underscores that a miscarriage of justice exception raised in a second or successive petition can succeed only if it comports with the requirements of AEDPA. *Id.* at 1934 ("In a case not governed by [the second or successive] provisions, i.e., a *first* petition for federal habeas relief, the miscarriage of justice exception survived AEDPA's passage intact and unrestricted.") (emphasis added); *see also In re Bolin*, 811 F.3d 403, 411 (11th Cir. 2016) (holding that the analysis in *McQuiggin* is limited to initial petitions for habeas relief).[6]

And Congress has directed that we differentiate between first petitions for collateral relief and second or successive petitions. Whereas a first AEDPA petition "*shall* be subject to review, on appeal, by the court of appeals," 28 U.S.C. § 2253(a) (emphasis added), the right to bring a second or successive petition is severely restricted and generally barred unless the petitioner can obtain authorization from the court of appeals and show the motion contains either:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

---

[6] We noted in our unpublished decision *United States v. Zaler*, 601 F. App'x 677, 679 (2015), that "[i]t was important in *McQuiggin* . . . that the prisoner sought to bring an untimely *first* habeas application. Notably, *McQuiggin* also recognized that Congress, through 28 U.S.C. § 2244(b), intended to 'modify' and 'constrain[]' . . . second or successive § 2255 motions." *Zaler* accordingly held that "[w]e are not persuaded that a reasonable jurist could debate whether *McQuiggin* allows Mr. Zaler to circumvent § 2255(h)'s restrictions simply by recasting his original untimely § 2255 claim as a claim of fraud upon the court." *Id.*

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h); *In re Lindsey*, 582 F.3d 1173, 1174 (10th Cir. 2009) ("Congress has placed limits on second or successive 28 U.S.C. § 2254 applications and § 2255 motions, allowing them to proceed only in specified circumstances and only with a circuit court's prior authorization.").

Nonetheless, Mr. Springer contends that the distinctions between the requirements for first and second habeas petitions do not matter here because fraud on the court is not specifically addressed in § 2255(h), whereas "AEDPA expressly limits the miscarriage of justice exception for claims of actual innocence when they appear in a second or successive § 2255 petition." Mr. Springer also notes that "[n]owhere in the text of AEDPA, neither in the rules on first petitions nor second or successive petitions, does Congress expressly limit a federal court's power to grant relief for a tenable fraud-on-the-court claim." Accordingly, Mr. Springer argues that the difference between first and second petitions matters in *McQuiggin* only because § 2255(h) expressly deals with actual innocence. But Mr. Springer ignores an important distinction between the statute of limitations applicable to first petitions and the restrictions on the district and circuit courts with respect to second or successive petitions.

Both the authorization requirement under 28 U.S.C. § 2255(h) and the COA requirement under 28 U.S.C. § 2253 are jurisdictional prerequisites to the federal courts' exercise of subject matter jurisdiction. In contrast, the Court in *McQuiggin*

20

held that a claim of actual innocence could circumvent the nonjurisdictional

procedural default rule found in § 2244(d)(1).[7] *See McQuiggin*, 133 S. Ct. at 1937–38

(Scalia, J., dissenting) (discussing the procedural default rules excused in *Bell*, 547

U.S. at 536–37; *Schlup*, 513 U.S. at 326–27; *Coleman v. Thompson*, 501 U.S. 722,

750 (1991); and *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).[8] The Supreme Court

has specifically held that AEDPA's "statute of limitations defense is not

'jurisdictional.' It does not set forth an inflexible rule requiring dismissal whenever

its clock has run." *Holland v. Florida*, 560 U.S. 631, 645 (2010) (internal quotation

marks omitted); *see also Clarke v. United States*, 703 F.3d 1098, 1101 (7th Cir. 2013)

("[T]he statute of limitations in section 2255 is just that—a statute of limitations, not

a jurisdictional limitation, and so it can be tolled."); *Dunlap v. United States*, 250

F.3d 1001, 1004 (6th Cir. 2001) ("The question now before this Court is whether the

one-year limitation period applicable to § 2255, and similarly § 2254, habeas

petitions is a statute of limitations subject to equitable tolling or a jurisdictional

prerequisite which bars review by the federal courts if it is not satisfied.").

---

[7] Although *McQuiggin* uses the term "procedural bar," 133 S. Ct. at 1928, which could potentially encompass jurisdictional bars, its decision is limited to procedural default rules. All of the precedent the Court relies on in *McQuiggin* involves nonjurisdictional procedural default rules. *See, e.g.*, *Schlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518 (2006). And the actual holding in *McQuiggin* impacts the one-year statute of limitation, which is nonjurisdictional. *Holland v. Florida*, 560 U.S. 631, 645 (2010).

[8] In his dissent, Justice Scalia explained that the procedural default rule is not *jurisdictional*, "rather, it is a prudential rule grounded in considerations of comity and concerns for the orderly administration of criminal justice." *Id.* at 1937 (Scalia, J., dissenting) (internal quotation marks omitted).

Although the courts enjoy some flexibility with respect to procedural default rules, statutory limitations on subject matter jurisdiction cannot be forfeited or waived and, once lost, there are no exceptions to bring it back. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). As noted, Congress may limit the jurisdiction of the federal district and circuit courts, so long as such limitations are clearly reflected by statute. *Williams*, 790 F.3d at 1070 (citing *Chambers*, 501 U.S. at 47). Therefore, "where a statute includes a 'clear command' limiting an inherent judicial power, courts cannot exercise that power in contravention of the statute." *Id.* The authorization requirement for second or successive motions and the COA requirement for all appeals of "a final order in a proceeding under section 2255" are clear jurisdictional requirements of AEDPA and cannot be waived. Congress has therefore expressly limited the court's inherent power to hear second or successive petitions for collateral relief. *See Baker*, 718 F.3d at 1208 ("[P]etitioners cannot circumvent the statutory certification requirements applicable to second-or-successive applications. . . .").

For all of these reasons, we are not convinced that *McQuiggin* has so clearly undermined the analysis in *Baker* that this panel is relieved of the obligation of following our circuit precedent.[9] It follows then that Mr. Springer's Motion to Enjoin is a second or successive petition governed by AEDPA. As a result, we may not exercise jurisdiction over this appeal unless Mr. Springer "has made a substantial

---

[9] "[I]n *United States v. Baker*, we squarely rejected the possibility that alleging fraud on the court of conviction creates an exception to the *procedural bars* under § 2255(h)." *Williams*, 790 F.3d at 1072 (emphasis added).

showing of the denial of a constitutional right," thereby entitling him to a COA. *See*

28 U.S.C. § 2253(c)(2). Mr. Springer should have filed a request for a COA with the

district court, but a notice of appeal constitutes a request for a certificate of

appealability. *See* Fed. R. App. P. 22(b)(2); *Slack*, 529 U.S. at 483 ("As AEDPA

applied, the Court of Appeals should have treated the notice of appeal as an

application for a COA."). So we now consider whether he is entitled to a COA.

### B.  Mr. Springer is not Entitled to a COA

Because the district court denied Mr. Springer's motion on the merits, our

COA inquiry would typically focus on whether "reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong." *Slack*,

529 U.S. at 484. [10] Alternatively, had the district court dismissed Mr. Springer's

unauthorized second or successive petition for lack of subject matter jurisdiction, we

could proceed according to the two-part test for procedural rulings set forth by the

Supreme Court in *Slack*, 529 U.S. at 484. This would require Mr. Springer to "show

both 'that jurists of reason would find it debatable whether the petition states a valid

claim of the denial of a constitutional right and that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling.'" *Baker*, 718

---

[10] In our decisions addressing unauthorized merits dismissals of second or
successive petitions, we have seldom discussed the COA requirement, and even when
we have done so, we have summarily denied the COA without addressing the
analytical framework set forth in *Slack*. *See, e.g.*, *United States v. Wetzel-Sanders*,
805 F.3d 1266, 1267 (10th Cir. 2015) ("Because we lack jurisdiction as did the
district court, we conclude that the COA was improvidently granted, dismiss the
appeal, and vacate the district court's order."); *United States v. Radcliff*, 566 F.
App'x 672, 674 (10th Cir. 2014) (unpublished); *United States v. Miller*, 561 F. App'x
701, 703 (10th Cir. 2014) (unpublished).

F.3d at 1206 (quoting *Slack*, 529 U.S. at 484). And under *Slack*, we may deny COA

by proceeding "first to resolve the issue whose answer is more apparent from the

record. . . ." 529 U.S. at 485.

Recall however, that the district court here failed to treat Mr. Springer's

motion as a proceeding under § 2255 and, without authorization from this court,

summarily denied the motion on the merits. As we now explain, that procedural

posture provides a basis for denial of a COA.

1.      **Mr. Springer's Motion Fails Under Plain Procedural Bar**

We addressed a similar situation in *Davis v. Roberts*, 425 F.3d 830, 834 (10th

Cir. 2005). There, we concluded that we could extend *Slack*'s "plain procedural bar"

test to cases in which the district court did not invoke that bar, because "we have

discretion to affirm on any ground adequately supported by the record." *Id.* (quoting

*Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004)); *see also United States v.

Alvarez*, 137 F.3d 1249, 1251 (10th Cir. 1998) ("[W]e are free to affirm a district

court decision on any grounds for which there is a record sufficient to permit

conclusions of law, even grounds not relied upon by the district court.") (internal

quotation marks omitted). *Davis* explained that "[n]o reason suggests itself why this

principle should be rejected in considering an application for a COA. Accordingly,

we may deny a COA if there is a plain procedural bar to habeas relief, even though

the district court did not rely on that bar." 425 F.3d at 834.[11]

_____

[11] *See also United States v. Allen*, 549 F. App'x 810, 812 (10th Cir. 2013)
(unpublished) ("Just as we may in appropriate circumstances affirm a ruling for legal

In *Davis*, the district court lacked jurisdiction to hear Mr. Davis's claim because he was no longer "in custody" for the sentence he was challenging, which is a prerequisite to a proceeding under 28 U.S.C. § 2241(c)(3). *Id.* As a result, we held that:

> To the extent that Mr. Davis raises a claim challenging the execution of his 1991 sentence, the district court lacked jurisdiction to hear the claim because he was no longer in custody under that sentence when he filed for relief in that court. Therefore, dismissal of Mr. Davis's § 2241 claim was clearly correct and we deny a COA on that claim.

*Id.*

Here, we have concluded that Mr. Springer's motion is a habeas petition under § 2255. Because he has previously filed an initial habeas petition, this petition is subject to AEDPA's constraints on second or successive petitions. *See Williams*, 790 F.3d at 1067 ("After a federal prisoner has filed one postjudgment habeas petition, which is permitted under 28 U.S.C. § 2255(a), another postjudgment motion is treated as a second or successive § 2255 motion if it asserts or reasserts claims of error in the prisoner's conviction."); *Baker*, 718 F.3d at 1207 ("[A] motion alleging fraud on the court in a defendant's criminal proceeding must be considered a second-or-successive collateral attack because it asserts or reasserts a challenge to the defendant's underlying conviction.").

---

reasons the district court did not rely on, we may deny a COA for such reasons when they demonstrate, beyond debate among jurists of reason, that the appellant cannot prevail."); *Miller v. Glanz*, 331 F. App'x 608, 610 (10th Cir. 2009) (unpublished) ("While this proceeding is currently before us on an application for COA to review the district court's disposition of the [Interstate Agreement on Detainers Act] claim on the merits, that does not impede our ability to recognize other impediments to habeas relief in the case.").

One such constraint precludes a petitioner from filing a second or successive § 2255 motion unless he first obtains "an order from the appropriate court of appeals authorizing the district court to consider the motion. . . ." *United States v. Nelson*, 465 F.3d 1145, 1148 (10th Cir. 2006); 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."); *see also Burton v. Stewart*, 549 U.S. 147, 157 (2007) ("Burton neither sought nor received authorization from the Court of Appeals before filing his 2002 petition, a 'second or successive' petition challenging his custody, and so the District Court was without jurisdiction to entertain it."). We have held that, because this requirement is jurisdictional, if a petitioner files an unauthorized motion, the district court "does not even have jurisdiction to deny the relief sought in the pleading." *Nelson*, 465 F.3d at 1148; *see also United States v. McDaniel*, 604 F. App'x 747, 748 (10th Cir. 2015) (unpublished) ("[I]t is beyond dispute that without authorization under § 2255(h), the district court had no jurisdiction to consider Mr. McDaniel's motion and was required to dismiss it."); *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008) (per curiam) (Absent authorization, "a district court does not have jurisdiction to address the merits of a second or successive § 2255 [motion]. . . ."); *Munoz v. United States*, 331 F.3d 151, 153 (1st Cir. 2003) ("Inasmuch as the petitioner did not seek, let alone obtain, the required authorization from this court, the district court lacked jurisdiction over his [] motion.").

26

So when the district court summarily denied Mr. Springer's Motion to Enjoin as frivolous rather than dismissing it as unauthorized under AEDPA, or transferring it to us for authorization, the district court acted without subject matter jurisdiction. *United States v. Wetzel-Sanders*, 805 F.3d 1266, 1269 (10th Cir. 2015) ("Although the district court could have transferred the matter to this court, or dismissed it for lack of jurisdiction, it should not have decided the motion."); *United States v. Tony*, 637 F.3d 1153, 1157–58 (10th Cir. 2011) ("Subject-matter jurisdiction cannot be forfeited or waived 'because it involves a court's power to hear a case. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court.'" (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002))). Under these circumstances, reasonable jurists could not debate whether Mr. Springer could prevail on appeal when the district court lacked jurisdiction to issue a final order.

Based on this "plain procedural bar," we deny Mr. Springer's request for a COA.[12] *See United States v. Arrington*, 763 F.3d 17, 24 (D.C. Cir. 2014) (It does not matter "that the district court summarily denied relief on procedural grounds without specifically referencing § 2255(h)'s requirement to obtain pre-filing authorization. 'We may deny a certificate of appealability if there is a plain procedural bar to

---

[12] We likewise decline to exercise our discretion to construe Mr. Springer's appeal as a request for authorization. *United States v. Williams*, 790 F.3d 1059, 1064 (10th Cir. 2015).

postconviction relief, even though the district court did not rely on that bar'. . . ."

(quoting *Davis*, 425 F.3d at 834)).[13]

## IV.   CONCLUSION

Under our controlling precedent, Mr. Springer's Motion to Enjoin is a second

or successive petition for habeas relief. As such, we lack jurisdiction to entertain his

appeal unless he first obtains a COA. Treating Mr. Springer's notice of appeal as a

request for a COA, we conclude that his Motion to Enjoin faced a clear procedural

bar in the district court due to that court's lack of subject matter jurisdiction. We

therefore DENY Mr. Springer's request for a COA and DISMISS this appeal, with

instructions to the district court to vacate its decision.[14]

All other outstanding motions are denied as moot.

---

[13] *Cf. Neiberger v. Rudek*, 450 F. App'x 719, 722 (10th Cir. 2011)
(unpublished) ("[W]e have identified a procedural bar to COA relief arising from the
district court's lack of subject matter jurisdiction to adjudicate Mr. Neiberger's
habeas petition—specifically, [he] failed to demonstrate that he was 'in custody'—
and we feel obliged to rest our COA decision on that jurisdictional procedural bar.").

[14] *Cf. Burton v. Stewart*, 549 U.S. 147, 152, 157 (2007) (per curiam) (vacating
the circuit court's holding and instructing it to direct the district court to dismiss an
unauthorized merits order on a successive habeas petition for lack of subject matter
jurisdiction, where the circuit court had granted a COA and had then issued an
opinion on the merits). *See also, e.g.*, *United States v. Wetzel-Sanders*, 805 F.3d
1266, 1269 (10th Cir. 2015); *United States v. Nelson*, 465 F.3d 1145, 1149 (10th Cir.
2006); *Berryhill v. Evans*, 466 F.3d 934, 938 (10th Cir. 2006); *Spitznas v. Boone*, 464
F.3d 1213, 1226–27 (10th Cir. 2006); *United States v. Gallegos*, 142 F.3d 1211, 1211
(10th Cir. 1998) (per curiam).

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker                                          Chris Wolpert
Clerk of Court              November 13, 2017             Chief Deputy Clerk

Mr. O. Dean Sanderford
Office of the Federal Public Defender
Districts of Colorado and Wyoming
633 17th Street, Suite 1000
Denver, CO 80202

Mr. Grant Russell Smith
Office of the Federal Public Defender
Districts of Colorado and Wyoming
633 17th Street, Suite 1000
Denver, CO 80202

**RE:      15-5109, United States v. Springer**
         Dist/Ag docket: 4:09-CR-00043-SPF-1

Dear Counsel:

Enclosed is a copy the court's final order issued today in this matter.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court



**15-5109 United States v. Springer "Case termination for published COA"
(4:09-CR-00043-SPF-1)**

ca10_cmecf_notify   to: CM-ECFIntake_OKND                    11/13/2017 03:54 PM

From:     ca10_cmecf_notify@ca10.uscourts.gov
To:       CM-ECFIntake_OKND@oknd.uscourts.gov

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

**Tenth Circuit Court of Appeals**

**Notice of Docket Activity**

The following transaction was entered on 11/13/2017 at 2:52:21 PM MST and filed on 11/13/2017

| | |
|---|---|
| **Case Name:** | United States v. Springer |
| **Case Number:** | [15-5109](#) |
| **Document(s):** | [Document(s)](#) |

**Docket Text:**
[10513091] COA Denial. Terminated on the merits after oral hearing. Written, signed, published. Judges Phillips, McHugh (authoring) and Moritz. [15-5109]

**Notice will be electronically mailed to:**

Mr. Jeffrey Brian Bender: jeffrey.b.bender@usdoj.gov, Cateps.Taxcriminal@usdoj.gov
Mr. Gregory Victor Davis: gregory.v.davis@usdoj.gov, Gregory.V.Davis@usdoj.gov, Cateps.Taxcriminal@usdoj.gov, LaQuita.S.Brooks@usdoj.gov
Mr. Samuel Robert Lyons: Samuel.R.Lyons@usdoj.gov, Samuel.R.Lyons@usdoj.gov, Cateps.Taxcriminal@usdoj.gov
Mr. Alexander Patrick Robbins: alexander.p.robbins@usdoj.gov, Cateps.Taxcriminal@usdoj.gov, Stan.J.Okula@usdoj.gov, alexander.robbins@usdoj.gov
Mr. O. Dean Sanderford: Dean_Sanderford@fd.org, co.10ecf@fd.org, cecilia_hernandez@fd.org
Mr. Grant Russell Smith: grant_smith@fd.org, co.10ecf@fd.org, clarita_costigan@fd.org, mitzi_tarver@fd.org

**Notice will not be electronically mailed to the following as the Court does not have a valid email address on file. If appropriate, notice will be delivered by other means to:**

Mr. Frank Phillip Cihlar
Dept. of Justice-Tax Division
Tax Division
P.O. Box 502
Washington, DC 20044-0000

The following document(s) are associated with this transaction:
**Document Description:** Order Denying COA
**Original Filename:** 15-5109.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1104938855 [Date=11/13/2017] [FileNumber=10513091-0]
[7b4c6d51f5535bc0aea016fb02f7a935e7dc468d9c25c340e4321249279081edb6f7f1f60a39f516a
4abf5147825e50d1e6d57441fb301e6c4c84d86067f1d40]]


**Document Description:** COA Order Cover Letter
**Original Filename:** /opt/ACECF/live/forms/StacySteinbrecher_155109_10513091_135.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1104938855 [Date=11/13/2017] [FileNumber=10513091-1]
[4491247a0b1694195079d053f4a93f1cd299ed12fbe4723fa5d6d6b668eab800a4a817ae8f97dd34
55ec0a49478f50b4a82351b41559a49864945240289ca27]]
**Recipients:**
- Mr. Jeffrey Brian Bender
- Mr. Frank Phillip Cihlar
- Mr. Gregory Victor Davis
- Mr. Samuel Robert Lyons
- Mr. Alexander Patrick Robbins
- Mr. O. Dean Sanderford
- Mr. Grant Russell Smith

cc:     Jeffrey Brian Bender
        Frank Phillip Cihlar
        Gregory Victor Davis
        Samuel Robert Lyons
        Alexander Patrick Robbins


EAS/sls