IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LINDSEY KENT SPRINGER,

    Defendant.

Case No. 09-CR-043
(13-CV-145)

**FILED**
JAN 4 2018
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

SPRINGER'S APPLICATION TO SET ASIDE THE JUDGMENT

ENTERED ON AUGUST 22, 2014 IN SPRINGER'S 28 U.S.C. § 2255

PROCEEDING BASED UPON TEN FRAUDS UPON THE § 2255 COURT***

By: Lindsey Kent Springer
Reg. # 02580-063
Federal Satellite Camp
P.O. Box 9000
Seagoville, Texas 75159

*** Springer is unaware of whether Plaintiff concurs with this Application

- i -

## TABLE OF CONTENTS

Application..................................................1

   I.   Jurisdiction and Inherent Judicial Power and Authority to
decide the Merits of Springer's Application....................3

  II.  Summary of Springer's § 2255 Ground One........................4

 III.  Summary of Springer's § 2255 Ground Two........................5

  IV.  The facts of the Frauds committed during Springer's § 2255
proceeding by O'Reilly, Gallant, and Williams....................7

   V.  The clear and convincing evidence of the Ten Frauds Upon the
§ 2255 Court................................................10

      (1)  Marrella never held the inferior office of DAAGTD..........10

      (2)  O'Reilly never received a letter dated December 23, 2008
that shows O'Reilly received authorization to prosecute
Springer pursuant to 28 U.S.C. § 515(a) and 28 CFR §
0.13(a)................................................12

      (3)  O'Reilly never received a letter dated January 5, 2009
that appointed O'Reilly to the Appointments Clause Inferior
Office of SAUSA for the NDOK, for a 1-year term, by
O'Meilia................................................12

      (4)  Congress has not enacted any Federal Statute that directs
USA's the Constitutional authority to appoint SAUSAs in
their district..........................................15

      (5)  The term of office of an SAUSA is fixed by the term of the
appointing officer terminating O'Reilly's purported term
upon the resignation of his appointing officer............15

      (6)  There was no USA for the NDOK, as of January 4, 2010, who
then extended O'Reilly's purported January 5, 2009 appoint-
ment from O'Meilia, for a 1-year term....................16

      (7)  Woodward never qualified for the Appointments Clause office
of Acting USA for the NDOK beginning June 28, 2009 through
January 21, 2010 pursuant to 28 U.S.C. § 542 and 5 U.S.C.
§ 3345(a)(1)............................................17

      (8)  O'Reilly never received a letter dated January 4, 2010,
explaining his purported appointment as an SAUSA for the
NDOK....................................................19

      (9)  Woodward never received any appointment from the AG on
January 21, 2010, pursuant to 28 U.S.C. § 546(a), as the
NDOK USA for 120 day term................................20

- ii -

TABLE OF CONTENTS (cont'd)

(10)  Snoke did not hold appointment as a NDOK AUSA between
      June 28, 2009 through April 28, 2010.......................21

Conclusion.............................................................22

Certificate of Service.................................................25

Declaration of Mailing.................................................25

- iii -

## TABLE OF AUTHORITIES

Bulloch v. U.S., 763 F.2d 1115, 1121(10th Cir. 1985)(en banc)............4

Buckley v. Valeo, 424 U.S. 1, 126(1976)..................................6

Chisolm v. House, 160 F.2d 632, 643(10th Cir. 1947)......................4

De Castro v. Board of Comm., 322 U.S. 451, 462(1944)...................16

Edmonds v. U.S., 520 U.S. 651, 659(1997)................................6

Freytag v. CIR, 501 U.S. 868, 880(1991)................................6

Gonzalez v. Crosby, 545 U.S. 524, 532-534(2005).........................3

Hazel Atlas Glass Co. v. Hartford Empire Co., 332 U.S. 238(1944)........3

Kalaris v. Donuvan, 679 F.2d 376, 397(D.C. Cir. 1982)..................16

U.S. v. Buck, 381 F.3d 1336, 1341-1342(10th Cir. 2002)..................3

U.S. v. Nelson, 465 F.3d 1145, 1147(10th Cir. 2006).....................3

U.S. v. Throckmorton, 98 U.S. 61, 66(1878)..............................4

## STATUTES INVOLVED

5 U.S.C. § 3345(a)(1)............................................10,17,18

        § 3346....................................................10

18 U.S.C. § 2..........................................................4

        § 3231...................................................4,7

26 U.S.C. § 7801(a)....................................................4

28 U.S.C. § 515(a).............................................1,8,10,12

        § 541....................................................5,6

        § 542.....................................10,13,17,18,21,22

        § 543........................................9,13,15,16,19

        § 544.....................................................19

        § 546(a)...........................................10,20,21

        § 546(d)..................................................18

        § 547..................................4,5,6,7,13,19,21

- iv -

## STATUTES INVOLVED (cont'd)

28 U.S.C. § 2255...................................1,2,3,4,5,7,10,22,23,24

## REGULATIONS

28 CFR § 0.13(a)..................................................1,8,10,12

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 60(d)(3)..............................................................3

## CONSTITUTIONAL PROVISIONS

Article  II, § 2, Cl. 2................................................1,22

      III...............................................................3

      III, § 2..........................................................7

## MISC.

Rule 12 of the Rules Governing § 2255 Proceedings..........................3

## APPLICATION

1.   Lindsey Kent Springer ("Springer") requests this 28 U.S.C. § 2255
Court issue an order setting aside its Judgment dated August 22, 2014,
Doc. 585, based upon finding that Charles A. O'Reilly ("O'Reilly"), Jeffrey
A. Gallant ("Gallant"), and Danny C. Williams, Sr. ("Williams"), i.e., the
lawyers purporting the Constitutional and Statutory authority to represent
the standing of the United States of America ("U.S. of A.") in Springer's
§ 2255 proceedings, fraudulently lied to this § 2255 Court as its Officers,
hiding their frauds behind the presumption of regularity that this Court
affords its Officers, fraudulently declaring on October 24, 2013 that (1)
O'Reilly received **authorization** from a John A. Marrella ("Marrella"), pur-
porting Marrella as holding the inferior office of Deputy Assistant Attorney
General, Tax Division ("DAAGTD"), **by letter** dated December 23, 2008, to
prosecute Springer pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a), for
the tax offenses alleged in the March 10, 2009 Grand Jury Indictment; (2)
O'Reilly was **appointed** by United States Attorney ("USA") for the Northern
District of Oklahoma ("NDOK") David E. O'Meilia ("O'Meilia") to the Article
II, § 2, Cl. 2 ("Appointments Clause") inferior office of Special Assistant
United States Attorney ("SAUSA"), **by letter** dated January 5, 2009, for a
1-year term; and (3) O'Reilly received **a letter** dated January 4, 2010, app-
ointing him to another 1-year term in the NDOK, as an SAUSA, by the USA for
the NDOK.  See Doc. 525, pg. 2 attached to the Declaration of Lindsey Kent
Springer ("Springer's Declaration") at Exhibit  1 .

2.   This application addresses **TEN JURISDICTIONAL FRAUDS UPON THE § 2255
COURT** which are addressed below as follows:

   1)  Marrella never held the inferior office of DAAGTD;

   2)  O'Reilly never received **a letter** dated December 23, 2008;

1

3) O'Reilly never received a letter dated January 5, 2009;

4) There is no Federal Statute directing USAs to appoint SAUSAs;

5) O'Reilly's term as SAUSA would never survive O'Meilia's June 28, 2009 resignation as the NDOK USA nevertheless;

6) As of January 4, 2010, there was no USA for the NDOK;

7) Scott Woodward ("Woodward") never qualified as Acting USA upon June 28, 2009 resignation of O'Meilia;

8) O'Reilly never received a letter dated January 4, 2010;

9) Woodward never received appointment dated January 21, 2010, as the NDOK USA for 120 day term;

10) Kenneth Snoke ("Snoke") held no appointment from June 28, 2009 to April 28, 2010 as Assistant United States Attorney ("AUSA") for the NDOK.

See Doc. 525, pg. 2; see also Doc. 526, pgs. 1-2 attached to Springer's Declaration at Exhibit 1 and 2.

3. These intentional Jurisdictional Fraudulent Statements were intended to connive at Springer's defeat involving Ground One and Two of Springer's Collateral Attack Motion filed on March 11, 2013 pursuant to 28 U.S.C. § 2255. See Doc. 472, pgs. 11 and 12 attached to Springer's Declaration at Exhibit 3.

4. O'Reilly, Gallant, and Williams also lied to this Court, in effert to continue their Jurisdictional Fraudulent Statements and connive at defeating Springer's Motion for Limited Discovery involving these Jurisdictional Facts, Doc. 524, by Fraudulently declaring to this § 2255 Court that (1) O'Reilly held Appointment Clause appointment to the inferior office of SAUSA; (2) Snoke held Appointments Clause appointment as an AUSA; and (3) Woodward held Appointment Clause appointment as AUSA, Acting USA, and USA, at all relevant times involving the prosecution of Springer after the resignation of O'Meilia on June 28, 2009 as the NDOK USA. See Doc. 526, pgs. 1-2.

2

5.   If not for the TEN Jurisdictional Frauds upon the § 2255 Court, that upon the resignation of O'Meilia on June 28, 2009, the truth would have led this § 2255 Court to GRANT Springer the relief requested in Grounds One and Two of Springer's § 2255 Motion.

6.   Springer files a Memorandum of Law, and Declaration with attached Exhibits, in support of this Application.

7.   Springer requests this Court find the facts of each of the TEN Jurisdictional Frauds intentionally perpetrated upon it, reinstate Springer's § 2255 proceedings, reinstate or order discovery on the Jurisdictional Facts of Article III standing for the USA, and Statutory standing, appoint Counsel, hold an evidentiary hearing, recapture the Court's § 2255 integrity by removing the impact of the Jurisdictional Frauds, and proceed to a proper resolution of Grounds One and Two of Springer's § 2255 Motion once those TEN Jurisdictional Frauds upon this § 2255 Court have been eradicated.

### I.   JURISDICTION AND INHERENT JUDICIAL POWER AND AUTHORITY TO DECIDE THE MERITS OF SPRINGER'S APPLICATION.

8.   Springer's request to set aside the § 2255 Judgment dated August 22, 2014, is authorized and presented pursuant to Federal Rules of Civil Procedures ("FRCvP") Rule 60(d)(3) and the Supreme Court's Fraud on the Court doctrine announced in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238(1944), made applicable to § 2255 proceedings pursuant to Rule 12 of the Rules Governing § 2255 proceedings and the holding in Gonzalez v. Crosby, 545 U.S. 524, 532-533(2005), made applicable to § 2255 proceedings in U.S. v. Nelson, 465 F.3d 1145, 1147(10th Cir. 2006). See also U.S. v. Buck, 281 F.3d 1336, 1341-1342(10th Cir. 2002)("invoking inherent power of a Court to set aside its judgment if procured by fraud upon the court," with no time limit, no formal requirements, and laches does not apply).

3

9.   In U.S. v. Throckmorton, 98 U.S. 61, 66(1878), the Supreme Court held equitable relief from a final judgment has long been granted "where an attorney fraudulently or without authority assumes to represent a party and **connives at his defeat."**

10.   In Chisolm v. House, 160 F.2d 632, 643(10th Cir. 1947), the Tenth Circuit recorded these words:

> "A party to a judgment or those in privity with him may impeach such judgment in a collateral proceeding for **inceptional** or **jurisdictional fraud**, that is, fraud which goes to the **very jurisdiction of the Court and prevents it from obtaining the requisite power or jurisdiction to entertain or decide the issue in controversy."**

See also Bulloch v. U.S., 763 F.2d 1115, 1121(10th Cir. 1985(en banc)(citing to both Throckmorton and Chisolm).

11.   This Court has Judicial Jurisdiction and Judicial Power and responsibility to decide the merits of Springer's Ten Frauds upon the Court claims in this request and neither Springer's legal arguments or facts are frivolous.

## II.   SUMMARY OF SPRINGER'S § 2255 GROUND ONE

12.   Ground One of Springer's § 2255 Motion claimed that the Federal Criminal Trial and District Court was without jurisdiction under Article III, § 2 and 18 U.S.C. § 3231, and 26 U.S.C. § 7801(a), absent authorization to a specific person to prosecute Springer from the Secretary of the Treasury, Attorney General, and then to USA O'Meilia. Doc. 472, pg. 11

13.   Springer argued in his supporting Memorandum that:

> "without a proper referral to the U.S. Attorney authorizing enforcement of Title 26, or Title 26 related offenses, Congress withheld authority to **prosecute** such offenses from the U.S. Attorney under 28 U.S.C. § 547(1)."

Doc. 473, pg. 2

14.   Springer's Memorandum continued:

> "The United States District Court for the Northern District of Oklahoma lacked jurisdiction over the subject matter alleged in each of the six Counts of the Grand Jury indictment and the United States Attorney or

4

Grand Jury lacked standing to sue Defendant over Title 26, and title 26 related offenses for want of a Grand Jury referral signed and issued by the Secretary of the Treasury."

Doc. 473, pg. 2

15.   Springer supported his Ground One with a declaration attaching the June 3, 2005 letter provided by Snoke and O'Reilly on June 15, 2009, when O'Meilia remained the NDOK USA, Doc. 474, pg. 4, which was provided to show the Attorney General had received a Grand Jury referral from the Secretary of the Treasury.  Doc. 474, Exhibit 15-1(this investigation only referral record was provided in Doc. 80-10).  See Springer's Declaration, pg. 2 , and Exhibit 4 .

16.   On June 10, 2005, O'Meilia received a Grand Jury Investigation expansion letter from Assistant Attorney General, Tax Division ("AAGTD") that specifically precluded any "tax or tax related charges" from being authorized "without prior approval of the Tax Division." See Springer's Declaration, pg. 2 , and Exhibit 4 (Doc. 80-2).

17.   The June 10, 2005 letter also directed:

"The Special Agent-in-charge will forward the reports and exhibits, along with his or her recommendation regarding prosecution to the Tax Division."

See Springer's Declaration, pg. 2 , and Exhibit 4 .(Doc. 80-2)

### III.   SUMMARY OF SPRINGER'S § 2255 GROUND TWO

18.   Ground Two of Springer's § 2255 Motion claimed that:

"The indictment, conviction, sentence, and judgment on each of the six counts must be vacated and set aside where trial jurisdiction was lost when the U.S. Attorney resigned on June 28, 2009, **leaving no one authorized** by the President or the Secretary of the Treasury, or confirmed by the Senate under 28 U.S.C. § 541 **to prosecute me on tax, or tax related offenses, under 28 U.S.C. § 547(1)**."

Doc. 472, pg. 12 (Ground Two).

19.   Ground Two explained the facts in support of this Ground as follows:

5

"Congress only authorized the Secretary of the Treasury to person-
ally enforce all tax laws under Title 26.  Congress only authorized
a U.S. Attorney to **prosecute** criminal offenses at 28 U.S.C. § 547(1).
David O'Meilia resigned his Senate confirmed office on June 28, 2009,
out of the Northern District of Oklahoma.  **No U.S. Attorney existed
from June 28, 2009 until Summer, 2012.**"

Doc. 472, pg. 12 attached to Springer's Declaration at Exhibit _3_ pg. _3_ .

20.    Springer's Ground Two was also supported by a "Memorandum in Support of

this Motion, at page 2,3, and 4." Doc. 472, pg. 12("Facts" section).

21.    Springer showed in his supporting Memorandum that "Congress provides

for assistant U.S. Attorneys to be appointed by the Attorney General at 28

U.S.C. § 542." Doc. 473, pg. 3 of 5.

22.    Springer's supporting Memorandum continued:

"Although Mr. O'Reilly and Snoke proffered that assistant U.S. Attorney
Scott Woodward became at all times after June 28, 2009, acting U.S.
Attorney, and at all times relevant to Defendant's prosecution, Mr.
**Woodward could never be designated as 'Acting United States Attorney.'**"

Doc. 473, pg. 3 of 5.

23.    Springer's supporting Memorandum relied upon the Supreme Court's decis-

ions in Buckley v. Valeo, 424 U.S. 1, 126(1976), Freytag v. CIR, 501 U.S.

868, 880(1991), and Edmonds v. U.S., 520 U.S. 651, 659(1997), to support his

claims in Ground Two.  Doc. 473, pg. 3 of 5.

24.    Springer also argued:

"Woodward could not be an 'acting' U.S. Attorney without a U.S. Attor-
ney to authorize him to so act and from June 28, 2009, no such U.S.
Attorney under 28 U.S.C. § 541 and § 547 existed for the Northern
District of Oklahoma, that then would allow Defendant to be prosecuted."

Doc. 473, pg. 4 of 5.

25.    Springer provided in his § 2255 supporting Declaration a copy of the

Tulsa World report that explained the NDOK USA Office had remained intent-

ionally vacant for more than three years since O'Meilia resigned. Doc. 474,

pg. 48 and Exhibit 8 attached thereto; see also attached to Springer's

Declaration, pg. _2_ , and Exhibit _6_ .

### IV. THE FACTS OF THE FRAUDS COMMITTED DURING SPRINGER'S § 2255 PROCEEDING BY O'REILLY, GALLANT, AND WILLIAMS.

26.   On March 11, 2013 Springer filed his timely § 2255 Motion raising in Ground One that there was no letter authorizing anyone to prosecute Springer for the six counts of the March 10, 2009 indictment depriving the Court of a live Article III, § 2 case or controversy and without jurisdiction under 18 U.S.C. § 3231.  Doc. <u>472, pg. 11</u>

27.   Springer's § 2255 Motion also contained in Ground Two the claim that upon the resignation of O'Meilia as the NDOK USA, on June 28, 2009, the Court lost jurisdiction where it was left with "no one authorized...to prosecute me...under 28 U.S.C. § 547(1)." <u>Doc. 472, pg. 12</u>

28.   The District Court entered a scheduling order directing two stages of responses by the United States Attorney. <u>Doc. 478</u>

29.   From May 3, 2013 to August 22, 2014, O'Reilly, Gallant, and Williams represented the U.S. of A. See <u>Docs. 487, 495, 518, 525, 526, 548, 549, 550, 562, and 576.</u>

30.   On May 10, 2013 Springer moved the § 2255 Court for an order seeking who the NDOK USA was "from June 29, 2009 through May 3, 2013," <u>Doc. 493</u>, for which this § 2255 Court denied after finding the following:

> "government's response clarifies that the response is filed by the United States acting by and through its attorneys Danny C. Williams, United States Attorney for the Northern District of Oklahoma, and Charles A. O'Reilly, Special Assistant United States Attorney."

<u>Doc. 496</u>

31.   Springer then moved for an order to disqualify O'Reilly from representing the United States in this § 2255 criminal matter, see <u>Doc. 507</u>, and after this Court found "the government has not responded" to Springer's Motion, the Court denied the relief Springer requested. <u>Doc. 511</u>

32.    After allowing an extension to file a preliminary response (stage 1), O'Reilly, on September 9, 2013, purporting to hold a current appointment to the inferior office of SAUSA for the NDOK for a 1-year term beginning December 19, 2012, Doc. 525, pg. 2, (declaring Williams appointed him on December 19, 2012), purportedly on behalf of the U.S. of A., filed the stage 1 response on behalf of the U.S. of A. without any supervision by Gallant or Williams.  Doc. 518

33.    On October 7, 2013, Springer moved to strike O'Reilly's September 9, 2013 stage 1 response arguing O'Reilly was not then appointed as a current Appointments Clause inferior officer as an SAUSA for the NDOK.  Doc. 522

34.    Springer also requested the Court allow limited discovery as to the purported Appointments Clause appointments of the persons who purported the constitutional and statutory power and authority to represent the U.S. of A. during the district court's criminal trial proceedings.  Doc. 524

35.    On October 24, 2013, O'Reilly, Gallant, and Williams  filed and signed opposition to Springer's Motion to Strike, referring to O'Reilly as the "undersigned," and with the intent to connive at Springer's defeat in regard to Springer's Ground One and Two, provided numerous fraudulent statements as to O'Reilly's purported authority to prosecute Springer in the name and benefit of the U.S. of A. during the district court criminal trial proceedings.  Doc. 525, pg. 2

36.    In the response opposing Springer's Motion to Strike, O'Reilly, the unsupervised "undersigned," declared the existence of several letters of appointment to O'Reilly that were each known not to exist, declaring as follows:

   A.  O'Reilly received a letter dated December 23, 2008 from Marrella, as DAAGTD, authorizing O'Reilly to investigate and prosecute Springer pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a);

8

B. O'Reilly received a letter dated January 5, 2009 from O'Meilia, in O'Meilia's capacity as a USA, appointing O'Reilly under 28 U.S.C. § 543 as an SAUSA for the NDOK for a 1-year term of such inferior office of the United States;

C. O'Reilly received a letter dated January 4, 2010 from an unnamed USA for the NDOK appointing O'Reilly under 28 U.S.C. § 543 as an SAUSA for the NDOK for a 1-year term of such inferior office of the United States;

D. O'Reilly received a letter dated January 4, 2011 from an unnamed USA for the NDOK appointing O'Reilly under 28 U.S.C. § 543 as an SAUSA for the NDOK for a 1-year term of such inferior office of the United States;

E. O'Reilly received a letter dated January 10, 2012 from an unnamed USA for the NDOK appointing O'Reilly under 28 U.S.C. § 543 as an SAUSA for the NDOK for a 1-year term of such inferior office of the United States;

F. O'Reilly received a letter dated December 19, 2012 from Williams, in Williams' capacity as a USA, appointing O'Reilly under 28 U.S.C. § 543 as an SAUSA for the NDOK for a 1-year term of such inferior office of the United States.

Doc. 525, pg. 2

37.   O'Reilly, Gallant, and Williams opposed Springer's request for limited discovery of the purported officer appointments stating:

> "Mr. Springer ask the Court to authorize a fishing expedition with respect to Mr. Springer's oft repeated and rejected assertion that the Government could not **prosecute** Mr. Springer because there was no United States Attorney for the Northern District of Oklahoma, and his similar claim that Assistant U.S. Attorney Kenneth P. Snoke(now retired) and Jeffrey A. Gallant, and Special Assistant U.S. Attorney Charles A. O'Reilly were not authorized to represent the United States...Mr. Springer's attempt to relitigate the **validity** of the **appointments of the United States Attorney warrants neither discovery nor the appointment of Counsel...**"

Doc. 526, pg. 2

38.   After refusing Springer leave to file a Reply, the § 2255 Court denied both Springer's Motion to Strike and Motion for Limited Discovery (Docs. 522,524).  See Doc. 528

39.   On January 17, 2014, Williams, in civil litigation between the U.S. of A. and Springer, supported by Declaration under penalty of perjury by

9

Martin M. Shoemaker ("Shoemaker"), declared that O'Meilia resigned as the NDOK USA on June 28, 2009, that Woodward assumed the office of Acting USA beginning June 28, 2009 pursuant to 28 U.S.C. § 542 (as O'Meilia's First Assistant United States Attorney ("FAUSA") for the NDOK) and 5 U.S.C. §§ 3345(a)(1) and 3346, that Woodward was appointed as the NDOK USA, pursuant to 28 U.S.C. § 546(a), on January 25, 2010 (declared previously to have been made by the AG on January 21, 2010 by O'Reilly, Snoke, and Woodward), and that when that purported AG Appointment Clause inferior office appointment by the Head of the DOJ expired, United States District Judge Claire V. Eagan issued the Appointment Clause inferior office appointment, pursuant to 28 U.S.C. § 546(d), to Woodward as the NDOK USA.  See Springer's Declaration, pg. _2_, and Exhibit _7_, pg. _2_.

40.  On March 4, 2014, this § 2255 Court rejected Springer's Ground One and Two on the strength of the declarations made by O'Reilly, Gallant, and Williams in Springer's § 2255 Proceeding relying upon the truth of their declarations made under the presumption of regularity. Doc. 537, pg. 7

### V.   THE CLEAR AND CONVINCING EVIDENCE OF THE TEN FRAUDS UPON THE § 2255 COURT.

(1)  Marrella never held the inferior office of DAAGTD.

41.  On October 24, 2013, O'Reilly, Gallant, and Williams declared that, as of December 23, 2008, and as part of their fraudulent scheme to deceive this Court and connive at Springer's defeat, Marrella held appointment to the inferior office of DAAGTD.  Doc. 525, pg. 2.

42.  On March 25, 2015, Springer, pursuant to the Freedom of Information Act ("FOIA"), requested from the Department of Justice ("DOJ") for:

> "information and any documentation pertaining to or showing the auth-
> orization and/or **appointment of John A. Marrella** to represent the
> United States of America pursuant to **28 U.S.C. §§ 515...and 28 CFR
> §§...0.13(a)...between January 1, 2008 through January 1, 2013...in**

...the Title of 'Deputy Assissant Attorney General.'"

See Springer's Declaration, pg. _3_, and Exhibit _8_.

43.    On July 17, 2015, DOJ's Tax Division Counsel for FOIA and PA Matters,
Carmen Banerjee ("Banerjee"), responded regarding Marrella as a DAAGTD:

> "Based on the information you provided, we...could locate **no responsive
> records.**"

See Springer's Declaration, pg. _3_, and Exhibit _9_, pg. _1_.

44.    On September 11, 2015, Springer timely appealed Banerjee's July 17,
2015 response involving Marrella to the Office of Information Policy ("OIP").
See Springer's Declaration, pg. _3_, and Exhibit _10_.

45.    On March 16, 2016, OIP affirmed Banerjee's finding that the DOJ poss-
essed <u>no records</u> evidencing Marrella ever having been appointed or design-
ated to the inferior office of DAAGTD, including on December 23, 2008.  See
Springer's Declaration, pg. _3_, and Exhibit _11_, pg. _1_.

46.    Sean R. O'Neil ("O'Neil") stated for OIP:

> "Please be advised that this <u>office's decision was made only after a
> full review of this matter.  Your appeal was assigned to an attorney
> with this office who thoroughly reviews and analyzed your appeal,
> your underlying request, and the action of the Tax Division in response
> to your request.</u>"

See Springer's Declaration, pg. _3_, and Exhibit _11_.

47.    Springer provided OIP with the information O'Reilly, Gallant, and
Williams submitted to this Court on October 24, 2013 regarding Marrella.
See Springer's Declaration, pg. _3_, and Exhibit _10_, pg. _11_.

48.    Springer did receive a copy of the Order by Holder naming Tamara
Ashford to the inferior office of Principal Deputy Assistant Attorney Gen-
eral, Tax Division ("PDAAGTD"), dated March 4, 2013, showing that had
Marrella held the DAAGTD office there would have been records to prove it.
See Springer's Declaration, pg. _3_, and Exhibit _12_, pg. _3_.

     (2)  O'Reilly never received <u>**a letter**</u> dated December 23, 2008 that <u>shows O'Reilly received authorization to prosecute Springer</u> <u>pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a).</u>

49.  On October 24, 2013, O'Reilly, Gallant, and Williams declared that, as of December 23, 2008, and as part of their fraudulent scheme to deceive this Court and connive at Springer's defeat, O'Reilly received a letter authorizing O'Reilly to prosecute Springer pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a).  <u>Doc. 525, pg. 2</u>.

50.  On March 25, 2015, Springer requested under the FOIA to the DOJ for:

"information and any documentation pertaining to or showing the authorization and/or appointment of **Charles A. O'Reilly** to represent the United States of America pursuant to 28 U.S.C. §§ 515...**and 28 CFR §§** ...0.13(a)...**between December 1, 2008 through January 1, 2015**,...in... the Title of 'Trial Attorney' and 'Special Assistant United States Attorney.'"

See Springer's Declaration, pg. <u> 4 </u>, and Exhibit <u>13</u>.

51.  On July 21, 2015, Banerjee responded finding 2 records in the DOJ's possession involving O'Reilly.  See Springer's Declaration, pg. <u> 4 </u>, and Exhibit <u>14</u>, pg. <u> 1 </u>.

52.  The 2 records are (1) a "Notification of Personnel Action"("NPA") dated in 1993, during the Clinton Administration, and (2) a November 15, 1992 oath Affidavit showing O'Reilly in the position of "Law Clerk."  See Springer's Declaration, pg. <u> 4 </u>, and Exhibit <u>14</u>, pgs. <u> 3 </u> and <u> 4 </u>.

53.  Banerjee stated she could locate no other records or documents between December 1, 2008 through January 1, 2015, the dates listed in Springer's FOIA request involving O'Reilly and 28 U.S.C. § 515(a) and 28 CFR § 0.13(a). See Springer's Declaration, pg. <u> 4 </u>, and Exhibit <u>14</u>, pg. <u> 1 </u>.

     (3)  <u>O'Reilly never received **a letter** dated January 5, 2009 that</u> <u>appointed O'Reilly to the Appointments Clause inferior office</u> <u>of SAUSA for the NDOK, for a 1-year term, by O'Meilia.</u>

54.  On October 24, 2013, O'Reilly, Gallant, and Williams declared that,

as of January 5, 2009, and as part of their fraudulent scheme to deceive

this Court and connive at Springer's defeat, O'Reilly received a letter from

USA O'Meilia appointing O'Reilly to the Appointments Clause inferior office

of SAUSA for the NDOK and for a 1-year term. Doc. 525, pg. 2.

55.   On December 31, 2014, Springer requested under the FOIA to Williams'

agency, for:

> "information and any documentation pertaining to or showing the author-
> ization and/or **appointment of Charles A. O'Reilly** to represent the
> United States of America pursuant to 28 U.S.C. §§ 542, 543, and 547(1)
> ...between...December 1, 2008 through January 1, 2015...in...the Title
> of 'Trial Attorney,' and 'Special Assisant United States Attorney.'"

See Springer's Declaration, pg.  4 , and Exhibit  15 .

56.   On January 8, 2015, Springer received a letter from Williams explain-

ing Williams' decision to forward Springer's FOIA on O'Reilly to the Execut-

ive Office for United States Attorneys ("EOUSA").  See Springer's Declaration,

pg.  4 , and Exhibit  16 , pg.  1 .

57.   On July 23, 2015, EOUSA responded through Susan B. Gerson ("Gerson"),

stating:

> "this letter constitutes a reply from the Executive Office for United
> States Attorneys, the official record-keeper for all records located
> in this office and the various United States Attorneys' Offices...
> **All the records you seek are being made available to you...**"

See Springer's Declaration, pg.  4 , and Exhibit  17 , pg.  1 .

58.   Gerson  provided:

> "Please note.   There were **no records** located for **Charles A. O'Reilly**
> ...because they are either no longer employees or were never employed
> by EOUSA."

See Springer's Declaration, pg.  4 , and Exhibit  17 , and pg.  1 .

59.   On July 29, 2015, Gerson made a "supplemental reply" to Springer's

FOIA request involving O'Reilly consisting of "one page" oath Affidavit

purporting to list O'Reilly as an SAUSA on January 5, 2009.  See Springer's

13

Declaration, pg. _5_, and Exhibit _18_, and pg. _2_.

60.   On July 30, 2015, in civil litgation involving Springer's FOIA request to Williams, an Administrative Services Assistant for the DOJ named Linda M. Richardson ("Richardson"), signed a Declaration under the penalty of perjury having personal knowledge of the efforts to locate the appointment letters for O'Reilly responded to by Gerson.  See Springer's Declaration, pg. _5_, and Exhibit _19_, pgs. _1-5_.

61.   Richardson declared she is the person who actually conducted the search of the EOUSA and Williams' agency involving Springer's FOIA request involving O'Reilly.   See Springer's Declaration, pg. _5_, and Exhibit _19_, pg. _2_.

62.   Richardson declared she searched the "eOPF" which "provides electronic, web enabled access for **all** Federal agency personnel to view and manage employment documents" and that eOPF included "security measures ensuring the integrity of the system and employee documents in the system."  See Springer's Declaration, pg. _5_, and Exhibit _19_, pg. _3_.

63.   Richardson declared she also searched the "DOJ's Microsoft Outlook Office, Global Address Book, Global Address Listings (GAL)," and explained GAL "is a database within the Microsoft exchange server account that **contains the names and email addresses, among other things, of every employee within DOJ**." See Springer's Declaration, pg. _5_, and Exhibit _19_, pg. _3_.

64.   Richardson then explained the discovery of the January 5, 2009 oath Affidavit with O'Reilly's name on it:

>   "a staff member from SAUSA program located a copy of Mr. O'Reilly's Appointment Affidavits."

See Springer's Declaration, pg. _5_, and Exhibit _19_, pg. _4_.

65.   Richardson continued:

>   "Apparently, Mr. O'Reilly was appointed by the U.S. Attorney for the NDOK for a limited purpose not to exceed January 5, 2016."

See Springer's Declaration, pg. _5_, and Exhibit _19_, pg. _4_

66.   Richardson was unable to locate any appointment letters naming O'Reilly to the inferior office of SAUSA by O'Meila even after her staff:

> "contacted USAO/NDOK staff to determine whether Appointment Affidavits existed for Mr. O'Reilly."

See Springer's Declaration, pg. _5_, and Exhibit _19_, pg. _4_.

67.   Richardson further explained she was "not aware of any other locations within the EOUSA where any other records that might be responsive to [Springer's] requests are likely to be located." See Springer's Declaration, pg. _5_, and Exhibit _19_, pg. _4_.

68.   And finally, Richardson declared:

> "I am not aware of any other method or means by which a further search could be conducted that would likely uncover additional responsive records."

See Springer's Declaration, pg. _5_, and Exhibit _19_, pg. 4-5.

> (4)   Congress has not enacted any Federal Statute that directs USAs the Constitutional authority to appoint SAUSAs in their District.

69.   On October 24, 2013, O'Reilly, Gallant, and Williams declared that, as of January 5, 2009, and as part of their fraudulent scheme to deceive this Court and connive at Springer's defeat, O'Reilly received an Appointments Clause appointment to the inferior office of SAUSA, for a 1-year term, from O'Meilia. Doc. 525, pg. 2.

70.   28 U.S.C. § 543(a), however, reads in conflict with O'Reilly, Gallant, and Williams presumption of regularity claims:

> "The **Attorney General** may **appoint** attorneys to assist United States Attorneys when the public interest so requires."

> (5)   The term of office of an SAUSA is fixed by the term of the appointing officer terminating O'Reilly's purported term upon the resignation of his appointing officer.

71.   On October 24, 2013, O'Reilly, Gallant, and Williams declared that, as of June 29, 2009, O'Reilly held an appointment from O'Meilia as an SAUSA

for the NDOK that continued until January 4, 2010.  Doc. 525, pg. 2.

72.    28 U.S.C. § 543 does not provide a specific term of office for the inferior office of SAUSA.

73.    In such a circumstance, the term of office for an SAUSA is the term of the appointing officer.  See De Castro v. Board of Comm., 322 U.S. 451, 462(1944); see also Kalaris v. Donuvan, 679 F.2d 376, 397(D.C. Cir. 1982)

74.    All terms of office for any person appointed by O'Meilia terminated upon O'Meilia's resignation effective June 28, 2009, including any term of office O'Reilly purportedly received from O'Meilia on January 5, 2009. See Springer's Declaration, pg. _2_, and Exhibit _7_, pg. _2_ ("O'Meilia resigned on June 28, 2009").

> (6)  There was no USA for the NDOK, as of January 4, 2010, who then extended O'Reilly's purported January 5, 2009 appointment from O'Meilia, for a 1-year term.

75.    On October 24, 2013, O'Reilly, Gallant, and Williams declared that, as of January 4, 2010, and as part of their fraudulent scheme to deceive this Court and connive at Springer's defeat, O'Reilly received a 1-year extension appointment from the NDOK USA then in office until January 4, 2011. Doc. 525, pg. 2.

76.  However, O'Reilly, Gallant, and Williams were fully aware the NDOK had no USA on January 4, 2010.  See Doc. 292, pg. 1(n.1)("On January 21, 2010, Thomas Scott Woodward was sworn in as the Attorney General's appointed United States Attorney for the Northern District of Oklahoma.")(filed by O'Reilly, Snoke, and Woodward); See also Exhibit 20 attached to Springer's Declaration

77.    Besides O'Reilly having no SAUSA appointment, dated January 5, 2009, available for extension, Richardson's July 30, 2015 Declaration stated she searched numerous places, including EOUSA and Williams' Office, and after more than a year maintaining O'Reilly was either never an SAUSA, or no longer

a SAUSA,  See Springer's Declaration, pg. _5_ , and Exhibit _21_ , pg. _1_ ,
she located no appointment records responsive to Springer's FOIA request
other than the January 5, 2009 oath Affidavit.  See Springer's Declaration,
pg. _5_ , and Exhibit _19_ , pg. _4_ .

78.   Springer's Declaration in support of his § 2255 Motion attached a copy
of the Tulsa World News Report finding Williams received Senate consent and
that the NDOK USA office had remained vacant for more than three years since
O'Meilia resigned.  See Springer's Declaration, pg. _2_ , and Exhibit _8_.

(7)   <u>Woodward never qualified for the Appointments Clause office of
Acting USA for the NDOK beginning June 28, 2009 through January
21, 2010 pursuant to 28 U.S.C. § 542 and 5 U.S.C. § 3345(a)(1).</u>

79.   On October 24, 2013, O'Reilly, Gallant, and Williams declared that,
as of January 4, 2010, and as part of their fraudulent scheme to deceive
this Court and connive at Springer's defeat, the NDOK had a USA to extend
the purported SAUSA appointment to O'Reilly by O'Meilia.  Doc. 525, pg. 2.

80.   On January 17, 2014, Williams provided a fraudulent created oath
Affidavit purporting to show Woodward signed an oath on January 25, 2010,
as the NDOK USA.  See Springer's Declaration, pg. _2_ , and Exhibit _7_ , pgs.
5,8 .

81.   Williams also provided an October 5, 2009 NPA which was more than 3
months after O'Meilia resigned.  See Springer's Declaration, pg. _2_ , and
Exhibit _7_ , pg. _7_ .

82.   On December 31, 2014, Springer requested under the FOIA to Williams'
agency, for:

"information and any documents pertaining to or showing **Thomas Scott
Woodward** as the 'First Assistant' to David E. O'Meilia, pursuant to
5 U.S.C. § 3345(a)(1), from or on **January 1, 2009 through June 28,
2009**...requesting...the Form 50-A or 50-B that is immediately before
the October 5, 2009 Form 50-B."

See Springer's Declaration, pg. _5_ , and Exhibit _22_ ,

83.   On December 31, 2014, Springer also requested under a separate FOIA request to Williams' agency, for:

> "information and any documentation pertaining to or showing the authorization and/or appointment of **Thomas Scott Woodward** to represent the United States of America pursuant to **28 U.S.C. §§ 542...and 5 U.S.C. § 3345(a)(1)**...between January 1, 2009 through January 1, 2013 ...in...the Title of 'Assistant United States Attorney,' 'Acting United States Attorney,'...for the Northern District of Oklahoma."

See Springer's Declaration, pg. _5_ , and Exhibit _23_ .

84.   On January 8, 2015, Springer received notification on behalf of Williams' Office, a separate record keeper under the FOIA, that Williams decided to forward Springer's Two FOIA requests involving Woodward dated December 31, 2014 to EOUSA.  See Springer's Declaration, pg. _4_ , and Exhibit _16_ , pg. _1_ .

85.   On July 23, 2015, Gerson responded on Williams' behalf in regard to Springer's Two FOIA requests involving Woodward as an AUSA, Acting USA, USA, and on Forms 50-A and 50-B(NPA), stating:

> "We...are making all records required to be released, or...for release, available to you."

See Springer's Declaration, pg. _4_ , and Exhibit _17_, pg. _1_ .

86.   The only record EOUSA could located after searching its records and that of Williams' agency is a single oath Affidavit signed by Woodward on May 25, 2010 as the NDOK USA.  See Springer's Declaration, pg. _4_ , and Exhibit _17_, pg. _4_ .

87.   Apparently, United States District Judge Claire V. Eagan issued an appointment order dated May 24, 2010 naming Woodward to the Appointment Clause inferior office of USA under 28 U.S.C. § 546(d).  See Springer's Declaration, pg. _2_ , and Exhibit _7_ , pg. _9_ .

88.   On July 30, 2015, Richardson declared under the penalty of perjury

that she conducted the Two FOIA searches for EOUSA and Williams' agency involving Woodward.  See Springer's Declaration, pg. _5_, and Exhibit _19_, pg. _2_.

89.   Richardson declared that after searching EOUSA and Williams' agency, as well as eOPF and GAL, she could only find the May 25, 2010 oath Affidavit listing Woodward as the NDOK USA.  See Springer's Declaration, pg. _5_, and Exhibit _19_, pg. _4_; and Exhibit _18_, pg. _2_

90.   Richardson did not locate any appointments naming Woodward as the NDOK AUSA, prior to June 28, 2009(when O'Meilia resigned), or as O'Meilia's FAUSA, nor any oath Affidavits signed by Woodward, as required by 28 U.S.C. § 544, for AUSA, FAUSA, or Acting USA.  See Springer's Declaration, pg. _6_, and Exhibit _23_, pg. _1_; and Exhibit _19_, pgs. _4-5_.

> (8)  O'Reilly never received a letter dated January 4, 2010, extend-
> ing his purported appointment as an SAUSA for the NDOK.

91.   On October 24, 2013, O'Reilly, Gallant, and Williams declared that, as of January 4, 2010, and as a part of their fraudulent scheme to deceive this Court and connive at Springer's defeat, O'Reilly received a letter extending his purported appointment from O'Meilia, as an SAUSA, for a 1-year term. Doc. 525, pg. 2.

92.   On December 31, 2014, Springer requested under the FOIA to Williams' agency, for:

> "information and any documentation pertaining to or showing the auth-
> orization and/or appointment of Charles A. O'Reilly to represent the
> United States of America pursuant to 28 U.S.C. §§...543, and 547(1)
> ...between...December 1, 2008 through January 1, 2015...in...the
> Title of...'Special Assistant United States Attorney.'"

See Springer's Declaration, pg. _4_, and Exhibit _15_.

93.   Again, Williams forwarded Springer's FOIA request to the EOUSA.  See Springer's Declaration, pg. _4_, and Exhibit _16_, pg. _1_.

94. Again, Richardson conducted the FOIA search involving O'Reilly and could find no letter dated January 4, 2010, appointing O'Reilly to the inferior office of SAUSA for a 1-year term. See Springer's Declaration, pg. _4_, and Exhibit _15_, pg. _1_; and Exhibit 19, pgs. _3-5_.

> (9) Woodward never received any appointment from the AG on January 21, 2010, pursuant to 28 U.S.C. § 546(a), as the NDOK USA for 120 day term.

95. On October 24, 2013, O'Reilly, Gallant, and Williams declared that, between January 4, 2010 and January 4, 2011, as part of their fraudulent scheme to deceive this Court and connive at Springer's defeat, the NDOK had a USA. Doc. 525, pg. 2.

96. On January 27, 2010, O'Reilly, Snoke, and Woodward declared that:

> "On January 21, 2010, Thomas Scott Woodward was sworn in as the **Attorney General's appointed United States Attorney for the Northern District of Oklahoma.**"

See Doc. 292, pg. 1 (n.1); See also Springer's Declaration, pg. _5_, and Exhibit _20_, pg. _1_.

97. However, on January 17, 2014, Williams declared, as an officer of the Court, that Woodward was appointed by Holder on January 25, 2010, and not January 21, 2010. See Springer's Declaration, pg. _2_, and Exhibit _7_, pg. _2_.

98. On December 31, 2014, Springer requested from Williams' agency under FOIA, for:

> "information and any documentation pertaining to or showing the auth- orization and/or **appointment of Thomas Scott Woodward** to represent the United States of America pursuant to **28 U.S.C. §§...546...between January 1, 2009 through January 1, 2013**...in the Title of...**United States Attorney...for the Northern District of Oklahoma.**"

See Springer's Declaration, pg. _6_, and Exhibit _23_.

99. Again, Williams forwarded Springer's FOIA request to the EOUSA. See Springer's Declaration, pg. _4_, and Exhibit _16_, pg. _1_.

100.   Again, Gerson located only the May 25, 2010 oath Affidavit with Woodward's name on it.  See Springer's Declaration, pg. _4_ , and Exhibit _17_ , pg. _4_ .

101.   And again, Richardson declared under the penalty of perjury that she conducted the search for the records of Woodward's purported appoint-ment by the AG under 28 U.S.C. § 546 and could find no such records.  See Springer's Declaration, pg. _5_ , and Exhibit _19_, pg. _3-5_ .

> (10)   Snoke did not hold appointment as a NDOK AUSA between June 28, 2009 through April 28, 2010.

102.   On October 24, 2013, O'Reilly, Gallant, and Williams declared that, as of June 28, 2009, and as a part of their fraudulent scheme to deceive this Court and connive at Springer's defeat, O'Reilly, Snoke, and Woodward each were independently authorized to prosecute Springer after O'Meilia's resignation on June 28, 2009.  Doc. 526, pgs. 1-2.

103.   On December 31, 2014, Springer requested under FOIA to Williams' agency, for:

> "information and any documentation pertaining to or showing the auth-orization and/or appointment of Kenneth P. Snoke to represent the United States of America pursuant to 28 U.S.C. §§ 542...and 547(1)... between January 1, 2008 through January 1, 2011...in...the Title of 'Assistant United States Attorney' for the Northern District of Oklahoma.'"

See Springer's Declaration, pg. _6_ , and Exhibit _24_ .

104.   Again, Williams forwarded Springer's FOIA request to the EOUSA.  See Springer's Declaration, pg. _4_ , and Exhibit _16_ , pg. _1_ .

105.   On July 23, 2015, EOUSA and Gerson responded stating:

> "Please note.  There was no records located for...Kenneth Snoke because they are either no longer employees or were never employed by EOUSA."

See Springer's Declaration, pg. _4_ , and Exhibit _17_, pg. _1_ .

106.   On February 28, 2016, Springer requested under FOIA to the National

Personnel Records Civilian/FOIA Unit, for:

> "all information and all documents pertaining to, including instrum-
> ents of **appointment to Article II, § 2, Cl. 2 office of Assistant
> United States Attorney for the Northern District of Oklahoma** pursuant
> to 28 U.S.C. § 542(a)...that shows the name of the person who appointed
> **Kenneth Snoke** and the terms and dates of such appointments...between
> January 20, 2001 through July, 2010."

See Springer's Declaration, pg. _6_ , and Exhibit _25_ ,

107.  By letter dated March 24, 2016, the National Personnel Records Center

responded stating:

> "We are unable to locate the requested record based on the information
> you have provided."

See Springer's Declaration, pg. _6_ , Exhibit _26_ , pg. _1_ .

CONCLUSION

This Court has never made any inquiry into the appointments and author-
izations purported for O'Meilia (unitl June 28, 2009 when he resigned),
Woodward (from June 28, 2009 until April 28, 2010), O'Reilly (from December
23, 2008 until April 28, 2010), or Snoke (from June 28, 2009 until April 28,
2010), to represent the United States of America, as its appointed officers,
in the filing and prosecution of the March 10, 2009 indictment against
Springer, and based upon the clear and convincing evidence being presented
herein and supported by Springer's Declaration and Exhibits, the Court
should allow Springer to inquire, through the adversary process in this §
2255 proceeding, where the Court's Constitutional and Statutory Power and
Jurisdiction depends on the truth-for which the Ten Jurisdictional Frauds
were intended to disguise-and the very basis of Springer's Ground One and
Two of his § 2255 Motion was claimed to reach.

As a result, Springer requests this Court do the following:

A.  Reconsider its Judgment dated August 22, 2014, Doc. 585, and;

22

(1) including its orders that led to that Judgment involving:

(a) Springer's Motion seeking a declaration propounded by the Court's adversary process as to who the NDOK USA was from June 28, 2009 through May 3, 2013 (Doc. 493), see Doc. 496; and

(b) Springer's Motion to Disqualify O'Reilly from representing the USA in Springer's § 2255 proceedings (Doc. 507), see Doc. 511; and

(c) Springer's Motion to Strike O'Reilly's unsupervised First stage brief dated September 9, 2013[i.e. Doc. 518](Doc. 522), see Doc. 528; and

(d) Springer's Motion for Limited Discovery on appointments to office of Woodward, O'Reilly, Gallant, and Snoke, stemming from that discovery (Doc. 524), involving the claims in Springer's Grounds One and Two, see Doc. 528; and

(e) Springer's Motion for Leave to File a Reply to O'Reilly, Gallant, and Williams' Docs. 525 and 526 (Doc. 527), see Doc. 528; and

(f) Denying Grounds One and Two of Springer's § 2255 Motion (Doc. 472, pgs. 11 and 12), see Doc. 537, pg. 7; and

(2) reinstate Springer's § 2255 proceedings due to the Ten Frauds upon the § 2255 Court listed in Springer's Application herein; and

(3) reinstate or order discovery on the Jurisdictional Facts of the issues in Springer's Ground One and Two of his § 2255 Motion; and

(4) appoint Criminal Justice Act counsel; and

(5) recapture the § 2255 Court's integrity that has been violated by the Ten Jurisdictional Frauds; and

(6) hold an evidentiary hearing; and

(7) find that O'Reilly, Gallant, and Williams committed the Ten Jurisdictional Frauds upon the § 2255 Court, as shown herein, in effort to connive

at Springer's defeat involving Ground One and Two of Springer's § 2255 Motion; and

(8)  Grant the relief Springer sought in Ground One and Two of Springer's § 2255 Motion after removing the entire effect of the Ten Jurisdictional Frauds on this § 2255 Court's order dated March 4, 2014, Doc. 537, and its final Judgment. Doc. 585.

Respectfully Submitted,

Reg. # 02580-063
Federal Satellite Camp
P.O. Box 9000
Seagoville, Texas 75159

CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2017 I mailed the above Application to the Clerk of Court, 333 West Fourth Street, Tulsa, Oklahoma 74103, by First Class Mail, Postage Prepaid;

I further certify that the persons representing the United States of America will receive service through the Court's ECF system to the following:

United States Attorney for the Northern District of Oklahoma
Jeffrey A. Gallant
Charles A. O'Reilly

_____
Server

DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that I placed the above Application in the U.S. Mailbox located inside Seagoville Federal Prison Camp to the address for the Clerk listed above. On December 28, 2007.

_____
Declarant

25



RECEIVED

JAN 4 2018

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

no postmark

04-cr-43-SPF

Lindsey Kent Springer
Reg # 02580-063
Federal Satellite Camp
P.O. Box 9000
Seagoville, Texas 75159

Legal Mail

⟨⟩02580-063⟨⟩
Clerk Of Court
Northern District of Okla
333 W 4TH ST
Tulsa, OK 74103
United States



Retail

US POSTAGE PAID
$0.00

Origin: 75253
Destination: 74103
Lb 8.50 Oz
Jan 02, 18
1006
-882000159-7

PRIORITY MAIL 2-Day®    C006

Expected Delivery Day: 01/05/2018

USPS TRACKING NUMBER

UNITED STATES POSTAL SERVICE