IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

**FILED**

APR 2 6 2018

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

UNITED STATES OF AMERICA,

     Plaintiff,

v.

                         Case No. 09-CR-043
                               (13-CV-145)

Lindsey Kent Springer,

     Defendant.

### LINDSEY KENT SPRINGER'S REPLY

Lindsey Kent Springer ("Springer") files his reply.

1. <u>John A. Marrella ("Marrella") was not the Deputy Assistant Attorney General Tax Division ("DAAGTD") on December 23, 2008, or at any time, according to the official records of the Department of Justice, Tax Division ("DOJTD") and the Executive Office for United States Attorneys ("EOUSA").</u>

The response, Doc. 641, attaches Exhibit 2 in effort to provide something supporting Charles A. O'Reilly ("O'Reilly"), Jeffrey A. Gallant ("Gallant"), and Danny C. Williams Sr.'s("Williams") declaration that on December 23, 2008, Marella "authorized" O'Reilly to prosecute Springer for the offenses alleged in the indictment. See Doc. 627, Exhibit 1, p. 2.

Exhibit 2 does not rebut the records, or lack thereof, the DOJTD reported in response to Springer's Freedom of Information Act ("FOIA") request seeking records of appointment for Marrella covering the time period of December 23, 2008. Both the DOJTD and the Office of Information Policy ("OIP") confirmed that Marrella was never in the office or position of DAAGTD. Doc. 625, p. 10-11, and Exhibits 9 and 11.

It is undisputed that Marrella was never the DAAGTD on or around December 23, 2008. Therefore, Marrella could never have "authorized" O'Reilly to prosecute Springer to the offenses in the indictment. Saying he did so is a clear fraud upon the Court intending to fabricate a live Article III case when none existed.

1

2.  O'Reilly never received any official appointment letter dated December 23, 2008 from the DAAGTD named Marrella that then authorized O'Reilly to prosecute Springer pursuant to 28 U.S.C. § 515(a) and 28 CFR § 0.13(a).

Exhibit 2 is a fraud upon the court and does not show O'Reilly received a letter authorizing him to prosecute Springer signed by Marrella.  The argument Springer incorrectly sought records of O'Reilly's various appointments from EOUSA, instead of requesting them from the DOJTD, ignores the fact that Springer did make FOIA requests to DOJTD, see Doc. 625, pg. 12, and Exhibit 13, and DOJTD responded finding "2" records neither of which is a copy of Doc. 641's Exhibit 2.

Doc. 641 changes the fraudster's October 24, 2013 declaration by stating Exhibit 2 "appointed" O'Reilly while the October, 24, 2013 declaration says Marrella "authorized" O'Reilly.  Compare Doc. 641, p. 5 with Doc. 627, Exhibit 1, p.2.  28 U.S.C. § 515(a) establishes no office whatsoever.

Exhibit 2 does not change that Marrella was never DAAGTD.  In addition, Exhibit 2 is not signed by Marrella.  Exhibit 2 has the initials of "RAC" after the name of Marrella which stands for Ronald A. Cimino.  See Doc. 627, Exhibits 4,5 (identifying Cimino).  So what is Cimino's appointment power?

Exhibit 2 does not use the term "appoint" anywhere, does not identify the office being appointed to, identifies O'Reilly as an "employee," fails to name Springer, or otherwise support the October 24, 2013 declarations made.

Employees are not officers.  Officers must be appointed but employees do not.  Bandimere v. U.S. SEC, 844 F.3d 1168, 1170(10th Cir. 2016); Buckley v. Valeo, 424 U.S. 1, 126 and n.162(1976).

Exhibit 2 does not list the tax years authorized, tax imposed, tax offenses, for which the Secretary of the Treasury and Attorney General have referred.  What Exhibit 2 is being argued to accomplish is placing the powers of the Secretary of the Treasury and Attorney General into O'Reilly under a

2

lifetime tenure and within any Judicial District of the United States. Exhibit 2 provides no term and even if it was an official record of the DOJTD it would expire when the term of the Attorney General and his Deputies expires. And that expiration would have been January 20, 2009 when Mukasey's term expired with President Bush. "[n]o civil officer has held office by a life tenure since the foundation of the Government." Shurtleff v. U.S., 189 U.S. 311, 316 (1903); see also DeCastro v. Bd. of Comm., 322 U.S. 451, 462(1944)(there is a "strong presumption against the creation of a life tenure in public office under the federal government.") "When a statute creates an office for which it assigns specific duties," Freytag v. CIR, 501 U.S. 868, 878(1991), and that statute "is silent as to their term of office, they can presumably be **appointed** for a term **not exceeding** that of the officer appointing them." DeCastro, 322 U.S. at 462-63; see also Kalaris v. Donuvan, 679 F.2d 376, 397(D.C. Cir. 1982)("absence of a Congressional statute to the contrary, inferior officers...serve...at the discretion of their Appointing officers.")

In addition, neither DOJTD or EOUSA ever located any records of O'Reilly signing an oath as a "Trial Attorney." And certainly if O'Reilly had been "appointed" to any office the President would have been obligated to issue a commission under Article III, § 2 and Federal Law. But he did not.

O'Reilly clearly and convincingly never received what he purported to have received to Springer and this Court on October 24, 2013. And he, Gallant, and Williams were fully aware their declaration was a jurisdictional fraud upon the § 2255 Court.

3.  O'Reilly did not receive a letter dated January 5, 2009 appointing him to the Appointments Clause inferior office of Special Assistant United States Attorney ("SAUSA") for the "Northern District of Oklahoma" ("NDOK")

Like Exhibit 2, Exhibit 3 is another installment of a fraud upon the § 2255 Court. Doc. 641 attempts to distance Exhibit 3 from the Official Record

3

of the EOUSA by suggesting it would not be located in EOUSA or within its reach under FOIA. Doc. 641, p. 4-5. However, as the fraudsters must admit, Section 543, listed in Exhibit 3, prevents anyone from making an appointment to office for a SAUSA other than the current Attorney General. Doc. 641, p. 5-6. Exhibit 3 is not an official record of the United States and had it been so the EOUSA would have located it. Doc. 627, Exhibit 19(Declaration of Ms. Richardson for EOUSA). Doc. 641 makes no effort to establish the chain of Exhibit 3 (as with 2 and 4 also) and where the original can be examined or why EOUSA was unable to lcoate it. It is simply another fraud on the court.

There is no doubt the Appointments Clause limits who Congress may authorize to appoint inferior officers of the United States. Freytag, 501 U.S. at 880; Buckley, 424 U.S. at 122; Bandimere, 844 F.3d at 1172-73(Congress is prohibited from placing the Appointment power in  inappropriate members of the Executive Branch and is "restricted...to specific public officials.")

U.S. v. Plesinski, 912 F.2d 1033, 1037(9th Cir. 1990), Doc. 641, p.5, and its application of 28 U.S.C. § 510, was decided before Freytag and also conflicts with the Tenth Circuit's decision in U.S. v. Widdowson, 916 F.2d 587, 592(10th Cir. 1990)(decided after Plesinski), which instructed the inquiry is whether Congress "intended to permit the delegate to subdelegate the authority conferred by Congress." (citing U.S. v. Giordano, 416 U.S. 505, 512-13(1974)). If the mere authority to authorize wire taps cannot be subdelegated then certainly the more significant power of appointing inferior officers that can take a persons life, liberty, or property, cannot be subdelegated.

Doc. 641 attempts to place blame on the fraud where O'Meilia was delegated by the Attorney General to appoint SAUSAs. Even in Plesinski, the question became "whether the appointing official had the authority to make

the appointment." 912 F.2d at 1038.  This is the first time Springer has seen Exhibits 2, 3, and 4, and there is nothing in Exhibit 3 that shows the chain of delegation from the Attorney General to O'Meilia if the Attorney General could do so.  If there was a proper chain of delegation the time to provide that chain was in Doc. 641.  But Doc. 641 is silent on the chain of delegation because the fraudsters are simply making this stuff up as they go along.

Even if Exhibit 3 had not been another fraudulent installment, nowhere in the October 24, 2013 declaration, Doc. 627, Exhibit 1, p.2, did the fraudsters explain that the term O'Meilia purportedly granted would have expired upon his resignation on June 28, 2009. And, as the silence argument that § 543 has no term of office goes, it long ago was decided against the appointee continuing in office upon the resignation of the appointing officer. See DeCastro, 322 U.S. at 462-63("they can presumably be appointed for a term not exceeding that of the officer appointing them."); Kalaris, 679 F.2d at 397 ("inferior officers...serve...at the discretion of their appointing officers")

A plain reading of Exhibit 3 shows that the recipient would clearly know he could no longer "report to and act under the direction of David E. O'Meilia with regard to any matters handled" upon the departure of O'Meilia. Doc. 641, Exhibit 3. The 1-year term, though completely bogus, would never have officially survived the resignation of O'Meilia.

This Court can also reject Doc. 641's argument that, even if this Court were to find the clear frauds related to O'Reilly being a SAUSA, it could find O'Reilly was a life-time Trial Attorney with nation wide authority of the Attorney General and Seceratary of the Treasury. Doc. 641, p. 5-6.

From June 28, 2009 to present day, O'Reilly represents to this Court that his constitutional power and authority to represent the United States of America in 09-CR-043 is as a SAUSA. See Docs. 94 through 641.

5

Had Exhibit 3 been the official record of the United States it would have been located under FOIA. If O'Reilly did not work for EOUSA then why for 9-years did he declare otherwise? O'Reilly may be an employee but he was never appointed on January 5, 2009 to the office of SAUSA and it was fraud to say that he was.

4. <u>It is undisputed that no Federal Statute authorized a sitting USA the Constitutional power to appoint SAUSAs in their District.</u>

Doc. 641 identifies no Federal Statute that authorizes a sitting USA to appoint a SAUSA for his or her District. This point is conceded by Doc. 641.

5. <u>The term of office of an SAUSA is that of his or her appointing officer.</u>

Doc. 641 makes no effort to dispute this fact and the silence of § 543 triggers the same results for SAUSAs as it does for Attorney Generals, Secretary of the Treasury, and all other officers whose statute establishing that particular office provides no term of office. See <u>DeCastro</u>, 322 U.S. at 462-63; <u>Kalaris</u>, 679 F.2d at 397.

6. <u>There was no United States Attorney for the NDOK, as of January 4, 2010, who then extended any previous proper appointment to O'Reilly as an SAUSA</u>

Exhibit 4 attached to Doc. 641, which is not an official record of the United States Government, clearly shows on its face the fraudsters knew that they could not name a "United States Attorney" authorized to "extend" the previous purported appointment because the fraudsters knew that the NDOK did not have a USA as of January 4, 2010. See Doc. 627, Exhibit 20, n.1 (on January 21, 2010, Woodward is purported to be appointed as USA for 120 day term).

Exhibit 4 is not signed by any current USA but rather "Acting" USA Woodward who himself did not qualify as an AUSA, First AUSA, or Acting USA between June 28, 2009 through January 21, 2010. See Doc. 625, p. 16-17, Exhibit 17, p.4 and Exhibit 19.

Doc. 641 not only attempts to place some unknown delegations of the app-
ointment power of the Attorney General into a properly appointed USA in the
NDOK, which it failed to show, but that same flaw moves further off the
delegation ship's plank by suggesting that a person purporting to "Act" as
the USA is somehow authorized to make inferior officer appointments of a
SAUSA.  Even if O'Meilia were properly appointed after President Bush received
consent from the U.S. Senate to do so, Woodward, even if he was properly app-
ointed as AUSA during O'Meilia's term in office, and then somehow delegated
as O'Meilia's First AUSA, would have never had the type of credentials
enabling him to make inferior office appointments.  At best, Woodward was an
employee impersonating an officer of the United States in violation of 18
U.S.C. § 912.   Arguing employees can first appoint themselves and then
others is something only conceivable in a  defense of fraud allegations
involving the Appointments Clause.

Even if somehow Woodward could be shown to have the Appointment Clause
power to appoint SAUSAs in his capacity of Acting USA, his term under 5 U.S.C.
§ 3345 would have ended on January 21, 2010 when he purportedly received an
appointment from his delegator as the NDOK USA for 120 days.  Thus, Exhibit
4's term would have terminated upon the expiration of Woodward's 210 day
term which also ended earlier due to his purported appointment on January 21,
2010. See Shurtleff, supra, DeCastro, supra, and Kalaris, supra.

If Exhibit 4 was the official record of the United States, and it is not,
O'Reilly's term would have ended on January 21, 2010 when Woodward purportedly
received a 120 day term as the NDOK USA.  Even if Woodward had not received
a 120 day term from the Attorney General, his 210 day term under § 3345(a)(1)
also came to an end rendering O'Reilly's term concluded at the end of Wood-
ward's term under § 3345(a)(1).

7

This Court can easily find that O'Reilly did not receive an appointment from a USA on January 4, 2010, as the official record of the United States, and that the fraudsters omitted that, if Exhibit 4 was what they were looking at, no USA extended any proper appointment O'Reilly purportedly received for 1-year but at best an Acting USA purportedly extended the term for 17 days or until January 21, 2010 because that is all Woodward purportedly would have had to offer (notwithstanding the argument above that under no circumstances could he make any Appointment Clause appointments).

7.  Woodward never qualfied for the Appointment Clause office of Acting USA for the NDOK beginning June 28, 2009 through Janaury 21, 2010 pursuant to 28 U.S.C. § 542 and 5 U.S.C. § 3345(a)(1).

To get to the office of Acting USA, which is a self promotion for 210 days, requires the person be a current appointed AUSA and the First AUSA to the outgoing USA.   Ms. Richardson did an exhaustive search of the records in EOUSA and the 94 United States Attorney Offices and was unable to locate any records showing Woodward with an apopintment as an AUSA for the last year of O'Meilia's term in office of USA.  Doc. 625, p. 18, and Exhibit 17, p.4 and Exhibit 19, p. 2-5.  She also was unable to locate any record showing Woodward as O'Meilia's First AUSA which would then qualify Woodward to Act as the USA upon the resignation of O'Meilia on June 28, 2009.  Id.

Furthermore, she could not locate any record showing  Woodward qualified and was recognized by the EOUSA as the NDOK Acting USA between June 28, 2009 through January 21, 2010.  Id.  She also was unable to locate any records showing Woodward was appointed under 28 U.S.C. § 546(a) by the Attorney General.  Id.

Doc. 641 makes no effort to dispute these clear and convincing facts and this Court can find Woodward never qualified as Acting USA for the NDOK ever.

8.  O'Reilly never received a letter dated January 4, 2010 appointing him as an SAUSA for the NDOK.

Exhibit 4 is not an official record of the United States DOJTD or EOUSA and this Court should reject its contents on their face. See Doc. 627, Exhibit 19 (Declaration of Ms. Richardson concluding that EOUSA could only find one record with O'Reilly's name on it related to appointment to office. Exhibit 4 was not it).

This Court should easily find O'Reilly never received an appointment letter dated January 4, 2010 appointing him to the inferior office of SAUSA for a 1-year term.

9. Woodward never received an appointment from the Attorney General on January 21, 2010 under 28 U.S.C. § 546(a).

Though Doc. 641 makes no effort to refute the fact that EOUSA could locate no appointment from the Attorney General to Woodward on January 21, 2010, it beligerantly argues Woodward was a properly appointed AUSA, qualified as the Acting USA on June 28, 2009 through January 21, 2010, and received an appointment from the Attorney General on January 21, 2010. Doc. 641, p.6.

EOUSA said otherwise, Doc. 625, p. 21, and Exhibit 17, p.4 and Exhibit 19, p. 3-5. EOUSA is the official record keeper of all the USA offices and not the fraudsters.

This Court has all the evidence it needs to conclude Woodward never was appointed by the Attorney General under 28 U.S.C. § 546(a) on January 21, 2010.

10. Snoke did not hold appointment as a NDOK AUSA between June 28, 2009 through April 28, 2010.

Doc. 641 argues that the reason why EOUSA had no records of Snoke as an appointed AUSA was that he had retired and therefore his records were nolonger located at EOUSA. Doc. 641, p.4.

That argument holds no water with Springer because during FOIA litigation that produced the Richardson declaration Springer received another declaration

from Princia Stone ("Stone") which directed Springer to the National Personnel
Records Center ("NPRC"). See Exhibit 27 attached to this Reply. Ms. Stone dec-
lared, i.e. advised Springer to follow 5 CFR § 293.307 in relation to Snoke's
appointment records. See Exhibit 27, p. 4 (n.1).

Springer followed Ms. Stone's advice and requested under FOIA to NPRC.
See Doc. 625, p. 21, and Exhibits 24, 25, and 26.  And as the fraudsters can
read for themselves, NPRC had no records for Snoke regarding any appointments
he may have received.  Doc. 627, Exhibit 26, p.1

The fraudsters never address these facts and this Court can easily find
Snoke was not a properly appointed AUSA between January 20, 2009 through April
28, 2010.

CONCLUSION

Springer respectfully requests this Court to reject each point, argument,
contention, notion, and suggestion contained within Doc. 641, find in favor of
Springer's Ten Fraud Claims and proceed to a just resolution of Springer's
Rule 60(d)(3) motion as soon as practicably possible.  Springer renews his
request for appointment of counsel, discovery, and an evidentiary hearing, if
this Court remains in the position it needs more evidence to vindicate its
integrity and the integrity of Springer's § 2255 proceedings.

Respectfully Submitted,

Reg. # 02580-063
Federal Satellite Camp
P.O. Box 9000
Seagoville, Texas 75159.

10

CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2018, I served the above Reply on the Clerk of Court, 333 West Fourth Street, Tulsa Oklahoma 74103, by U.S. Mail, First Class, Postage Prepaid;

I further certify that the following shall receive service of the above Reply through the Court's ECF system as registered users:

Charles A. O'Reilly
Jeffrey A. Gallant
R. Trent Shores

Server

DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that on April 23, 2018, I deposited the above Reply in the U.S. Mailbox located inside Seagoville Federal Prison Camp to the Clerk of Court at the address listed above.

Declarant

11

Case 4:09-cr-00043-SPF Document 642 Filed in USDC ND/OK on 08/03/15 Page 12 of 20

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) LINDSEY KENT SPRINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-CV-142-JED-FHM |
| | ) | |
| (1) UNITED STATES ATTORNEY FOR | ) | |
| THE NORTHERN DISTRICT OF | ) | |
| OKLAHOMA, Danny C. Williams, Sr., | ) | |
| Officially; | ) | |
| (2) UNITED STATES DEP'T OF | ) | |
| JUSTICE, Eric D. Holder, Jr., | ) | |
| Officially; | ) | |
| (3) EXECUTIVE OFFICE OF UNITED | ) | |
| STATES ATTORNEYS, Susan B. | ) | |
| Gerson, Officially; | ) | |
| (4) OFFICE OF INFORMATION | ) | |
| POLICY, Sean R. O'Neill, Officially; | ) | |
| (5) DIVISION COUNSEL FOR FOIA | ) | |
| AND PA MATTERS, Carmen M. | ) | |
| Banerjee, Officially, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF PRINCINA STONE

I, Princina Stone, declare as follows:

1.     I am currently employed as an Attorney-Advisor with Freedom of Information

Act/Privacy Act ("FOIAPA") staff of the Executive Office for United States Attorneys

("EOUSA"), United States Department of Justice ("DOJ"). I have been employed in this

capacity for three months. Prior to my current position with EOUSA, I worked for more than

five years as an attorney with the federal government, working with DOJ to defend the

government in FOIA and Privacy Act cases and providing legal advice to agencies regarding

various FOIA and PA requests. As an attorney with EOUSA, I serve as a liaison among other

Exhibit 1

*Exhibit 27*
*8 pages*

divisions and offices of DOJ in providing advice on responding to requests for access to

information located in this and the other ninety-three districts of the United States Attorneys'

Offices. Further, I review the adequacy of searches conducted in response to requests and

FOIA determinations made by EOUSA staff to ensure that the processing of records and

determinations to disclose or withhold responsive records are made in accordance with FOIA,

PA and DOJ regulations at 28 C.F.R. §§ 16.3 *et. seq.* and §§ 16.40 *et seq.* pursuant to 5

U.S.C. § 552 and 5 U.S.C. § 552a.

2.      Due to the nature of my responsibilities, I am familiar with the procedures

followed by this office in responding to the FOIA requests submitted to EOUSA by plaintiff.

Additionally, I have reviewed the Complaint that is the basis of the lawsuit and which this

declaration addresses.  I am also familiar with the FOIA requests submitted by plaintiff,

Lindsey Kent Spencer, ( "plaintiff") that were assigned FOIA Request Nos. 2015-01085,

2014-00473, and 2014-00169.

3.      The statements contained in this declaration are based upon my personal

knowledge, upon information provided to me in my official capacity as an Attorney-Advisor,

and upon conclusions and determinations reached and made in accordance therewith.

4.      The purpose of this declaration is to provide the Court with information

regarding EOUSA's efforts to respond to plaintiff's FOIA requests.  This declaration consists

of: (1) relevant correspondence related to plaintiff's FOIA requests, (2) EOUSA's response

thereto, and (3) and information supporting the Vaughn Index for documents responsive to

plaintiff's FOIA requests, but withheld from disclosure pursuant to FOIA Exemption 6; 5

U.S.C. §§ 552 (b)(6), in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert*

2

Exhibit 1

*denied*, 415 U.S. 977 91974), *on remand* 383 F. Supp. 1049 (D.D.C. 1974), *aff'd* 523 F.2d 1136 (D.C. Cir. 1975) .

## I.    CORRESPONDENCE

5.      Plaintiff submitted a FOIA request to EOUSA dated December 31, 2014, and January 2, 2015, and received by the United States Attorney's Office for the Northern District of Oklahoma ("USAO/NDOK")on January 5, 2015.  In accordance with DOJ regulations, USAO/NDOK forwarded plaintiff's request to EOUSA on January 8, 2015. EOUSA designated the request as FOIA No. 2015-01085.  Plaintiff therein sought information related to six individuals - Kenneth P. Snoke, Robert D. Metcalfe, Jeffrey A. Gallant, Charles A. O'Reilly, James C. Strong, and Thomas Scott Woodward.  Specifically, plaintiff wanted information that showed that the above-named individuals were authorized to represent the United States of America during various periods ranging from January 1, 2007, to January 1, 2015.  I respectfully refer the Court to the documents for a true and accurate statement of the FOIA request contents.

6.      Plaintiff submitted a FOIA request to EOUSA dated October 9, 2013 and received by EOUSA on October 23, 2013.  EOUSA designated the request FOIA No. 2014-00473.  Plaintiff sought to obtain information and any documents that pertain to the appointment of Charles A. O'Reilly as a "Special Assistant United States Attorney" ("SAUSA") during the period between June 1, 2009, and September 10, 2013.  I respectfully refer the Court to the documents for a true and accurate statement of the FOIA request contents.

7.      Plaintiff submitted another FOIA request to EOUSA dated October 9, 2013 and received by EOUSA on October 23, 2013.  EOUSA designated the request as FOIA No.

3

Exhibit 1

2014-00169. Plaintiff sought to obtain "information and any documents pertaining to the appointment of Thomas Scott Woodward as the United States Attorney for the Northern Judicial District of Oklahoma." I respectfully refer the Court to the documents for a true and accurate statement of the FOIA request contents.

8. On May 29, 2015, EOUSA was notified by USAO/NDOK that plaintiff had filed a complaint seeking to compel several Federal agencies to produce records related to his FOIA requests.

## II. EOUSA'S RESPONSES TO PLAINTIFF'S FOIA REQUESTS

9. With regard to FOIA No. 2015-01085, EOUSA sent a response to plaintiff on July 23, 2015, releasing in part copies of Appointment Affidavits for Thomas Scott Woodward and Jeffrey A. Gallant. EOUSA was unable to provide records for Kenneth P. Snoke, Robert D. Metcalfe, Charles A. O'Reilly, and James C. Strong because they were either no longer employed by or not employees of USAO/NDOK.[1]

10. With regard to FOIA No. 2014-00473, EOUSA initially sent plaintiff a "no records" response dated June 20, 2014. However, in July 2015 it was discovered that an Appointment Affidavits did exist for Mr. O'Reilly. Upon its receipt, EOUSA immediately processed the record and sent to plaintiff a supplemental response on July 29, 2015, releasing in part a copy of the Appointment Affidavits for Charles A. O'Reilly. I respectfully refer the Court to the documents for a true and accurate statement of the FOIA/PA request contents.

---

[1] Personnel records of former federal employees are transferred from the offices in which they were employed to the General Service Administration's National Personnel Records Center ("NPRC"), as required by federal regulation. See 5 CFR § 293.307.

4

Exhibit 1

11.     With regard to FOIA 2014-00169, EOUSA sent plaintiff a response on

September 17, 2014, releasing in part a copy of the Appointment Affidavits for Thomas Scott

Woodward.

**III.   DESCRIPTION OF INFORMATION WITHHELD AND RATIONALE FOR
        THE WITHHOLDING**

12.     The narrative description of the information withheld as provided in this

declaration and in the attached *Vaughn Index* (Exhibit A) is intended to provide the Court and

plaintiff with an understanding of the material being protected.

13.     All responsive records related to plaintiff's FOIA requests were processed to

achieve maximum disclosure consistent with the provisions of FOIA and Attorney General

Eric Holder's March 19, 2009, memorandum to federal executive agencies that provide

detailed instructions to federal agencies regarding the application of FOIA.

14.     In accordance with FOIA, and in keeping with DOJ regulations, 28 C.F.R.

16.1, *et seq.*, EOUSA FOIA/PA staff processes all requests for records that are maintained by

EOUSA in Washington, D.C. and the 94 USAOs nationwide.  Among other things, EOUSA

attorneys and paralegals liaison with other DOJ components regarding FOIA/PA matters and

oversee the processing of requests of EOUSA and/or USAO records, direct USAOs to search

for responsive records, and prepare final determinations to release or withhold agency records

pursuant to FOIA or PA.

15.     On January 9, 2015, (FOIA-2015-01085), April 23, 2014, (FOIA No. 2014-

00473), and February 4, 2014, (FOIA No. 2014-00169), EOUSA directed EOUSA personnel

staff to search for records responsive to plaintiff's FOIA requests.  Upon information and

belief, EOUSA's personnel staff conducted searches for records responsive to plaintiff's

5

Exhibit 1

FOIA requests. All responsive records located were scanned and uploaded into the AccessPro

Case Management System for review by EOUSA FOIA/PA staff.[2]

16.    EOUSA legal staff reviewed all responsive records after they were processed

by EOUSA FOIA/PA paralegal staff and before issuing a response to plaintiff. Upon

completion of that review, it was determined that two pages would be released in part with

redactions and exemptions duly applied. The determinations to withhold information in part

were made pursuant to FOIA Exemption 6, 5 U.S.C. § 552(b)(6).

17.    EOUSA has released all reasonably segregable non-exempt information from

records responsive to Plaintiff's FOIA requests and has properly withheld information

pursuant to FOIA Exemption (b)(6).

### *Records Withheld under Exemption 6 – Privacy*

18.    Exemption 6 protects from disclosure records related to personnel and medical

files and similar files the disclosure of which would constitute a clearly unwarranted invasion

of personal privacy. To determine whether Exemption 6 would protect the information in

question from disclosure, EOUSA must determine whether 1) the information in question is

contained personnel and medical files and similar files, and whether 2) disclosure could

reasonably be expected to constitute an unwarranted invasion of personal privacy by

balancing the public's right to disclosure of the information against the individual's right to

privacy.

19.    With regard to FOIA No. 2015-01085 concerning Thomas Scott Woodward,

and Jeffrey A. Gallant, FOIA No. 2014-00473 concerning only Charles A. O'Reilly, and

FOIA No. 2014-00169 concerning only Thomas Scott Woodward, EOUSA redacted the

---

[2] AccessPro is an automated database system designed to coordinate every aspect of USAOs' FOIA and PA
requests processing.

Exhibit 1

signatures from the pages of the Appointment Affidavits.[3] Courts have held that personal

information such as a person's signature is protected under Exemption 6.[4] The need to

protect the individuals' privacy rights far outweighs the public need for the disclosure of the

signatures.

20.     The information protected under Exemption 6 is included in the Vaughn Index,

attached hereto as Exhibit A.


Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing

is true and correct, to the best of my knowledge and belief.

Executed this 30th day of July, 2015.

Princina Stone
Attorney-Advisor
Freedom of Information/Privacy Act Staff
Executive Office for United States Attorneys

---

[3] Plaintiff also sought the Appointment Affidavits for Charles A. O'Reilly in FOIA No. 2015-01085. The release of information to plaintiff on July 29, 2015 was intended to satisfy both FOIA Nos. 2015-01085 and 2014-00473.
[4] See, e.g., *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982); *Brannum v. Dominguez*, 377 F.Supp.2d 75, 84 (D.D.C.2005).

7

Exhibit 1

## VAUGHN INDEX – EOUSA

*Lindsey Kent Springer v. USAO/NDOK, et al.*, Case No. 15-CV-142-JED-FHM

| DOCUMENT GROUP NO. | PAGES | DESCRIPTION | EXEMPTION STATUS |
|---|---|---|---|
| 1 | 3 | Information consisted of USAO/NDOK attorneys' signatures. | 5 U.S.C. § 552(b)(6)<br><br>Exemption (b)(6) is asserted to protect the signatures of USAO/NDOK attorneys contained on their Appointment Affidavits.  The Exemption protects information about individuals that may be contained in "personnel and medical files and similar files" in instances where the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  There is no public interest present that outweighs the individuals' privacy interest identified here. |

*P.Stone  Decl. - Exhibit A*

Exhibit 1

Name  Lindsey Kent Springer
Reg. No.   02580-063
FEDERAL CORRECTIONAL INSTITUTION
P.O. Box 9000
Seagoville, TX 75159-9000



RECEIVED

APR 26 2018

"Legal Mail"

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

⟷02580-063⟷
Clerk Of Court
Northern District of Okla
333 W 4TH ST
Tulsa, OK 74103
United States

Postmarked 4/24/18-sc

09-CR-143-GKF-1