FILED
APR 1 4 2020
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                            Case No. 09-CR-043

LINDSEY KENT SPRINGER,

    Defendant.

E M E R G E N C Y
MOTION TO REDUCE TERM OF IMPRISONMENT
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
DUE TO CORONAVIRUS

Lindsey Kent Springer ("Springer") moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for an Order reducing Springer's term of imprisonment to time served based upon the Coronavirus, its resulting COVID-19 disease, and in consideration with Springer's already accepted exposure to airborne asbestos and breath-taking mold for more than 500 days while Springer served his term of imprisonment at Seagoville FCI's prison camp. Springer requests this Motion be treated in an EXPEDITED manner.

ESSENTIAL BACKGROUND

Springer is currently designated as Cronic Care in the Bureau of Prisons ("BOP") for upper respiratory breathing issues stemming from exposure to asbestos and mold while Springer resided at Seagoville's prison camp. Doc. 679. This Court has already accepted the facts surrounding Springer's exposure to airborne asbestos and mold in its December 19, 2019 Order. Id. What has changed is the existence of the declaration of a National Emergency by President Donald J. TRump ("President") on about March 13, 2020 due to the Coronavirus and the resulting COVID-19 disease.

On December 21, 2018, the President signed into law the First Step Act ("FSA"), Pub. L. 115-391, § 603(b), 132 Stat. 5194, which amended 18 U.S.C.

1

§ 3582(c)(1)(A). On March 26, 2020, Attorney General William Barr ("A.G.") issued a Memorandum to the Director of the BOP ("Director") directing the BOP to consider the totality of circumstances for each federal prisoner in expanding home confinement in effort to try controlling the spread of the Coronavirus and the COVID-19 disease that follows. On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 12003(b)(2) of the CARES Act amended 18 U.S.C. § 3624(c)(2) providing:

> "During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."

Prior to the CARES Act, § 3624(c)(2) allowed the BOP to send any of its prisoners to home confinement for not more than 10% of his or her sentence, up to a mximum of 6 months. The AG's March 26, 2020 Memorandum finds emergency conditions will materially affect the functioning of the BOP involving the Coronavirus and the resulting COVID-19 disease.

Home confinement beyond the 6 months is authorized, and a priority, under the following conditions and criteria:

1) The prisoner's age;
2) The prisoner's vulnerability to COVID-19 under the Centers for Disease Control and Prevention ("CDCP");
3) The prisoner's security level at Low or Minimum Security Facilities;
4) The prisoner's conduct in prison with priority to prisoner's with no BOP violatins within the last 12 months;
5) The prisoner's PATTERN Score with priority given to minimum Score prisoners;
6) The prisoner's demonstration and verifiable reentry plan that--
   (a) prevents recidivism;
   (b) maximize public safety;
   (c) verification of conditions under which prisoner's would be confined upon release would present a lower risk of contracting COVID-19 than what the prisoner would face in Prison;
7) The prisoner's crime of conviction;
8) An assessment of the danger posed by the Prisoner to the Community;

2

The AG emphasized that "[T]here are particular concerns in this institutional safety" and that the AG did not want institutions to become petri dishes where the Cornoavirus could spread rapidly. On April 2, 2020, the President announced that the United States of America could see more than a 100 thousand deaths and millions infected with COVID-19 within the next few months. The Director has all but locked down the entire Federal Prison population, with limited exceptions, due to COVID-19. On April 3, 2020, the AG issued an emergency declaration Bureau wide regarding COVID-19 and the problem spreading throughout the BOP. On or about April 4, 2020, Warden John B. Fox of the Federal Transfer Center retired effective immediately.

Doctor Anthony Fauci of the National Institute of Allergy and Infectious Diseases, and Dr. Deborah Birx, White House Coronavirus Response Coordinator, both on the President's Coronavirus Task Force, have strongly urged that the Summer may slow down the Coronavirus but would most likely return in the fall of 2020. Dr. Fauci also announced to the World that we are at least a year to 18 months away from a vacination to prevent the COVID-19 Disease that derives from the Coronavirus.

## INTRODUCTION

Springer's Motion shows (A) there is no Warden appointed by the Attorney General at the Federal Transfer center after John B. Fox retired effective April 4, 2020; (B) Springer should be excused from the administrative requirements of 18 U.S.C. § 3582(c)(1)(A) due to the National Emergency of a Pandemic; (C) exhaustion of appeals would be futile without a Warden to begin the process and the National Emergency Pandemic which is Bureau wide; (D) the United States Sentencing Commission has not amended its guideline to reflect the changes based upon the FSA; (E) the government otherwise should waive any affirmative defense involving claim processing rules under § 3582(c)(1)(A)

3

due to the National Emergency Pandemic; (F) Springer's current time periods relevant to the CARES Act and FSA; (G) Springer's Reentry Plain; (H) Springer meets, to the extent this Court uses them as guides, all the AG's criteria in the AG's March 26, 2020 memorandum; (J) Springer satisfies the factors under 18 U.S.C. § 3553(a) applicable to this Motion; (K) Springer is not a danger to the safety of any other person or the community as provided in 18 U.S.C. § 3142(g) and USSG § 1B1.13.2; (L) a reduction is consistent with policy statement that focus on community safety, nature of the offenses, history and characteristics of the defendant, and nature of any danger; (M) COVID-19 and the Coronavirus meet § 3582(c)(1)(A)'s definition of extraordinary and compelling reasons for a sentence reduction and compassionate release.

## REASONS FOR MODIFICATION OF SENTENCE INVOLVING COVID-19

1. Springer's request for Compassionate Release and Sentence Modification.

On December 21, 2018, the President signed into law the FSA. Among the Criminal Justice Act Reforms, Congress amended 18 U.S.C. § 3582(c)(1)(A)(i) to provide the Sentencing Judge jurisdiction to consider a motion for reduction of sentence under "extraordinary and compelling reasons warrant[ing] such reduction..." 18 U.S.C. § 3582(c)(1)(A) reads in relevant part:

> "The Court may not modify a term of imprisonment once it has been imposed except that (1) in any case--(A) the Court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the laps of 30 days from the receipt of such a request by the Warden of the defendant's facility, which ever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that --(i) extraordinary and compelling reasons warrant such a reduction..."

4

Congress has not defined "extraordinary and compelling reasons" in the FSA.

### A. There is no Warden appointed under 18 U.S.C. §§ 4001 and 4041 to the Federal Transfer Center under 18 U.S.C. § 3582(c)(1)(A).

The Office of Warden is established through 18 U.S.C. §§ 4001 and 4014. Under section 4001(b)(1), Congress directs the Attorney General to promulgate rules for the government of each prison "and appoint all necessary officers and employees in accordance with the civil-service laws, the Classification Act, as amended, and the applicable regulations." Under section 4041:

> "The Bureau of Prisons shall be in charge of a director appointed by and serving directly under the Attorney General. The Attorney General may appoint such additional officers and employees as he deems necessary."

28 CFR § 500.1(a) defines the term "Warden" as the Chief Executive Officer of a federal prison. Wardens are clearly officers of the United States and exercise significant authority of the United States regarding the running of federal prisons like the Federal Transfer Center.

On or about April 4, 2020, the Warden of the Federal Transfer Center at Oklahoma City, Oklahoma retired effective immediately. All federal prisons require a Warden as the custodian. Rumsfeld v. Padilla, 542 U.S. 426, 435(2004).

18 U.S.C. § 3582(c)(1)(A) contemplates there being a Warden to request for assistance in obtaining the filing of a Motion for Modification of a federal prisoner's sentence. 28 CFR § 571.61(a)(1) and (2) directs requests for Compassionate Release be made to the Warden of the prison. However, 28 CFR in Chapter V are suspended during a National Emergency such as the March 13, 2020 declaration by the President. See 28 CFR § 501.1.

Without a Warden at the Federal Transfer Center there is no way for anyone to begin the process contemplated by the FSA and § 603(b).

5

B. <u>Springer should be excused from the administrative requirements due to the President's declaration of a National Emergency.</u>

On March 13, 2020, the President declared a National Emergency concerning the Coronavirus and resulting COVID-19 disease. Notwithstanding the terms of 28 CFR § 501.1's suspension of regulations under 28 CFR Chapter V, and that the Federal Transfer Center has no appointed Warden, the time period set forth under 28 CFR § 542.15 to appeal any denial of a request for Compassionate Release under 28 CFR § 571.61(a), would literally take months. See § 542.15(a) (allowing first appeal from "20 calendar days of the date **the Warden signed the response.**") Then there is appeal times for denials from the Regional Director. See <u>Garza v. Davis</u>, 596 F.3d 1198, 1204(10th Cir. 2010); <u>McCarthy v. Madigan</u>, 503 U.S. 140, 143(1992).

Recently, in <u>U.S. v. Brannan</u>, Case No. 4:15-CR-80-01(S.D. Texas, 4.2.2020), the district court granted an emergency motion under § 3582(c)(1)(A)-on the same day it was filed-whre the prisoner had served 9 months of a 36 month sentence for fraud at FCI Oakdale. In <u>U.S. v. Calvin</u>, Case No. 3:19-CR-179, 2020 WL 1613943(D.Conn., 4.2.2020), a federal prisoner was released to home confinement where COVID-19 Pandemic substantially increased the prisoner's risk of severe illness due to diabetes. And in <u>U.S. v. Foster</u>, Case No. 1:14-CR-324-02(MD PA, 4.3.2020), the district court granted modification of a federal prisoner's term of imprisonment finding:

> "The circumstances faced by our prison system during this highly contageous, potentially fatal global pandemic are unprecedented. It is no stretch to call this enviroment 'extraordinary and compelling,' and we well believe that, should we not reduce Defendant's sentence, Defendant has a high likelihood of contracting COVID-19 from which he would "not be expected to recover." USSG § 1B1.13. No rational is more compelling or extraordinary."

The Attorney General has clearly directed the BOP to release prisoners to home confinement no longer being bound by the 10% or 6-months under 18

6

U.S.C. § 3624(c)(2).

The President's National Emergency Declaration, the FSA, the CARES Act, and the AG's directive to the BOP, warrants the excusing any technical compliance with the administrative requirements to the Warden under 28 CFR §§ 571.61(a)(1) and (2), 571.62(to the extent they are applicable in the first place).

C. Without a Warden there is nothing to file or exhaust in appeals.

Without a Warden to consider assisting Springer in obtaining a modification to Springer's sentence under § 3582(c)(1)(A), there would be no appeals to then exhaust. Woodford v. NGO, 548 U.S. 81, 90(2006).

28 CFR § 571.61(a) reads in relevant part:

"A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) **shall be submitted to the Warden.**"

The Warden is to approve requests for a motion under 28 CFR § 571.62(a).

In Ross v. Blake, 136 S.Ct. 1850, 1859(2016), the Supreme Court explained the few circumstances when "administrative remedy, although officially on the books, is not capable of use to obtain relief." They called this a "dead-end" with officers unalbe to provide any relief to aggreived inmates. Id. (citing to Booth v. Chumer, 532 U.S. 732, 736(2001)).

"Where the relevant administrative procedure lacks authority to provide any relief," "the inmate has 'nothing to exhaust.'" Booth, 532 U.S. at 763; Ross, 136 S.Ct. at 1859.

D. The Sentencing Commission has not acted in accordance with 28 U.S.C. § 994(t) since the FSA was signed into law.

28 U.S.C. § 994(t) directs the Sentencing Commissino to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

7

Prior to the passage of the FSA, the Sentencing Commission established four categories of circumstances in which "extraordinary and compelling reasons exist." See USSG § 1B1.13, cmt. n.1. The four categories are (A) medical conditions of the defendant, (B) the age of the defendant, (C) family circumstances, and (D) other reasons.

Currently, the four categories do not reflect the FSA. See U.S. v. Cantu, 2019 U.S. Dist. Lexis 100923(S.D. Texas, 6.17.2019). The Sentencing Commission's "other reasons" should not be read to be limited to those listed where the title to the FSA's changes to § 3582(c)(1)(A) is "Increasing the Use of Transparency of Compassionate Release." Pub. L. 115-391, § 603(b), 132 Stat. 5194(2018). The current version of § 1B1.13 is not applicable when a defendant requests relief under § 3582(c)(1)(A), as amended, because it no longer explains an appropriate use of that statute. Cantu, supra.

Congress "can override any guideline or policy statement." U.S. v. Colon, 707 F.3d 1255, 1261(11th Cir. 2013); U.S. v. Berberna, 694 F.3d 514, 524-25, (3rd Cir. 2012)("Congress can...pass a law overriding the Commission's [policy] determination 'at any time.'")(quoting U.S. v. Horn, 679 F.3d 397, 406 )6th Cir. 2012)(quoting Mistetta v. U.S., 488 U.S. 361, 394(1989)); U.S. v. Anderson, 686 F.3d 585, 591(8th Cir. 2012); U.S. v. Fox, 631 F.3d 1128, 1131 (9th Cir. 2011).

Currently there is only two Commissioners and there are four required to change the Sentencing Guidelines. Cantu, Lexis 100923, at 1, n.1.

E. The Government should agree to waive administrative requirements.

If 28 CFR 501.1 does not suspend all of Chapter V in 28 CFR, the government should agree to waive compliance with 28 U.S.C. § 571.61 and § 542.10 et seq, based upon the National Emergency. See U.S. v. Brannan, Case No. 4:15-

8

CR-80-01(S.D. Texas, 4.2.2020) granting relief under § 3582(c)(1)(A) wihtout having to exhaust administrative requirements.

In <u>U.S. v. Stone</u>, 2019 U.S. Dist. Lexis 182081, at 1, 20-21(S.D. Iowa, 10. 22.19), the district court held § 3582(c)(1)(A)'s administrative requirements for compassionate release by the Court is a nonjurisdictinal requirement found under equity. The requirements are "claim process rules" that can be waived. <u>Kontick v. Ryan</u>, 540 U.S. 443, 456(2004); <u>Jones v. Bock</u>, 549 U.S. 199, 212 (2007); <u>Hammer v. Neighborhood Hous. Serv.</u>, 138 S.Ct. 13, 17-18(2017).

F. <u>Springer's time periods relevant to the CARES Act and FSA</u>.

Springer was sentenced on April 23, 2010 to 180 months imprisonment. As of April 23, 2010, Springer would have served more than 10 years and earned 539 days of his projected 809 days of good time credit under the FSA. This equals 18 months earned and 26 months projected. With the time period changes under § 12003(b) of the CARES Act, Springer's old home detention date was set at August 2, 2022 based upon a release date of February 2, 2023.

Under 18 U.S.C. § 3634(b), Springer would also be eligible for 12 months community confinement moving Springer's community confinment date to August 22, 2021. The CARES Act has removed the 6 month limitation for home confinement during the National Emergncy Pandemic and for 30 days after it is lifted.

Even if Springer was only given 10% of his 180 months to be served on home confinement, that date would also be around August 22, 2021. If the time periods under § 3624(b) were consecutive with § 3624(c), Springer's eligibility for release from incarceration would be around August 22, 2020.

G. <u>Springer's Reentry Plan</u>.

Being guided by 28 CFR § 571.61(a)(1) and (2), and the AG's March 26, 2020 directive to the BOP, Springer has a reentry plan to present to the Court.

Springer's sister, Jodee Winkle, and her husband, Rodney Ratcliff, have

9

agreed to allow Springer to live with them at their house located at 2626 E. 72nd St., Tulsa, Oklahoma 74136. Jodee Winkle's contact information is 918-639-8954. Springer's sister has agreed to help Springer find a job and provide for Springer's needs until Springer is able to gain employment and provide for himself. Springer's Dad, Lew Springer, his Mom, Jeanie McCarty, and his Brother, Randy Springer, have supportred Springer thoughout his 10 year prison term. Springer's children have also supported Springer during his 10 year prison term with the new addition of two grandchildren.

Springer's sister owns Moss' Seatcovers located at 4949 South Peria in Tulsa Oklahoma. Springer's Sister and Brother-in-Law are the only residents living at 2626 E. 72nd St. They are both in their 60s.

These conditions will prevent recidivism, maximize public safety, and provide Springer a lower risk of contracting COVID-19 than if Springer were to remain in Federal Prison.

### I. Springer satisfies, to the extent this Court finds them useful, all AG's criteria in the March 26, 2020 memorandum.

There are basically eight criteria the AG instructs for consideration of being released to home confinement and the totality of the circumstances Springer faces.

First, Springer is 54 years and 7 months old at the time of the filing of this motion. Second, Springer is currently under "cronic care" for upper respiratory breathing issues taking place after Springer was exposed to the asbestos and mold this Court previously addressed on December 19, 2019. See Doc. 679. Recently the BOP took X-Rays of Springer's lungs and Springer is awaiting the reading of those results. Springer is vulnerable more than most to the COVID-19 disease under the CDCP criteria. Third, Springer is at the Federal Transfer Center which houses out-custody, minimum custody, and low custody inmates in the CADRE unit where Springer resides. Springer works

10

for the Federal Transfer Center, holds a gate pass, and is designated as community custody by the BOP (the lowest designation available to persons in federal prison. Springer has worked at Seagoville FCI's Camp as its Warehouse Clerk and in the CADRE Unit furloughed daily to the Regional Director's Complex at Grand Prairie, Texas prior to requesting transfer to the Federal Transfer Center to help Springer facilitate visits with his family.

Fourth, Springer has no incident reports or disciplinary infractions in the last 12 months and only one such report (in 2013) in the almost 10-years Springer has served. Fifth, Springer qualifies as priority under the AG's directive based upon Springer's PATTERN Score of **minimum**. This is the lowest available. Sixth, and as outlined above, Springer has a verifiable reentry plan which includes living with his Sister and Brother-in-Law at 2626 E. 72nd St. in Tulsa, Oklahoma. Springer's Sister will provide Springer's needs until Springer is able to gain employment after the Governor lifts the shelter-in-place orders currently in force for the entire State of Oklahoma. While in Prison, Springer became real world certified as a fork lift driver good until 2022 by Robert Freeman of Texas. Springer also gained valuable experience managing, with supervision, the Warehouse at Seagoville FCI. Springer has been repairing commercial grade and household washers and dryers since his term of imprisonment basically began. Springer also worked at the Grand Prairie, Texas Regional Director Complex in Building ## 344, 345, and 346. These buildings were occupied by several hundred civilians who Springer worked in close proximity. Springer currently works in landscape.

Seventh, Springer's offenses of conviction are nonviolent (totally).

Eighth, Springer is not a danger to the community, or any person, and holds community custody designation by the BOP.

11

J. <u>Springer should satisfy the Court's 18 U.S.C. § 3553(a) factors applicable.</u>

Congress directs the district court to consider § 33553(a) factors when presented with a motion under § 3582(c)(1)(A)(i).

The President and AG have directed release would be appropriate where the prisoner was totally nonviolent with minimum PATTERN Score. Springer checks both boxes. Furthermore, if Springer were sentenced today based upon the same facts this Court used on April 23, 2010, the Sentencing Commission, since 2014, adjusted the tax loss levels under USSG § 2T4.1 by two levels involving more than $ 1,000,000 but less than $ 1,500,000. Compare 2T4.1(I) setting more than $ 1,000,000 at base offense level of 22 with Amendment 791's changes moving 22 points to more than $ 1,500,000. This Court's finding of tax loss on April 23, 2010 was less than $ 1,500,000. Springer's new range would change from 151 to 188 months, to 121 to 151 months. This Court most likely would have landed around 145 months based upon how it landed at 180 months. Under these circumstances, Springer would currently be at 138 months (with 18 months good time under the FSA) and would already be in community confinement or home confinement at this point.

K. <u>Springer is not a danger to the safety of any other person or the community as provided by 18 U.S.C. § 3142(g) and USSG § 1B1.13.2.</u>

Springer has been in Prison now almost Ten Years, earned almost 540 days of good time credit under the FSA, worked in positions requiring the highest degree of integrity, and is Scored under PATTERN as **minimum**. Prior to incarceration, Springer remained free in the Tulsa and Sapulpa communities and complied with every request of the Court's Probation Office. Springer complied with every Order the Court issued involving legal procedings. Springer is a totally nonviolent prisoner currently designated community custody by the BOP. Springer has worked in the Community of Grand Prairie, Texas around

12

hundreds of BOP personnel and keeps close contact with his parents, siblings, children, and now grandchildren.

Springer is no danger to anyone.

L. **A reduction is consistent with the policy statements that focus on community safety, nature of offense, history and characteristics of Springer, and nature of any danger.**

The policy at present is for over 50 federal prisoners to spend a portion of their sentence on home confinement. People over 50 years of age are at risk for contracting COVID-19 from the coronavirus. Although there is some information being presented to the public that 30 and 40 year old people are having some difficulty surviving COVID-19, the prognosis is grim when the person is over 50. Springer is over 50. The AG set forth the policy of the BOP on March 26, 2020 regarding COVID-19 and federal prisoners.

The passage of the CARES Act allows for the policy of the AG to the BOP place at risk prisoners, for which Springer is one, in home confinement where the federal prisons probably will become petri dishes where the Coronavirus could spread rapidly causing severe illness, with lasting damage or even death among the aging population.

Springer is community custody designated, totally nonviolent, more than Ten Years served by April 23, 2020, earned 539 days of good time credit under the FSA, is no danger to anyone, and is on cronic care for upper respiratory issues that triggered the cronic care being exposed to 500 days of asbestos and mold. Springer experiences nose bleeds and closure of his airways when not taking the prescribed medication. Sending Springer home will reduce the cost of incarceration.

M. **COVID-19 and the Coronavirus meet § 3582(c)(1)(A)'s meaning of extraordinary and compelling reasons and compassionate release.**

On Friday, April 3, 2020, the Attorney General declared a National Emerg-

ency under 28 CFR § 501.1 and directed each Prison to send to home confinement those prisoners no longer a threat to the public. It is no better said than in <u>Foster</u>, Case No. 1:14-CR-324-02(MD PA, 4.3.2020, and worth repeating:

> "The circumstances faced by our prison system during this highly contageous. potentially fatal global pandemic are unprecedented. It is no stretch to call this enviroment 'extraordinary and compelling,' and we well believe that, should we not reduce Defendant's sentence, Defendant has a high likelihood of contracting COVID-19 from which he would "not be expected to recover." USSG § 1B1.13. No rational is more compelling or extraordinary."

The deaths are expected to be in the undreds of thousands, the serious illness are expected to be in the millions, and as the AG said in declaring a BOP emergnecy on Friday, April 3, 2020, the COVID-19 is spreading through three of the BOP prisons at an alarming rate.

## CONCLUSION

Springer resepctfully requests this Court to enter an order modifying Springer's sentence to time served and allowing Springer to serve the remainder of his sentence on supervised relesae based upon the National Emergency by the President on or about March 13, 2020, and by the Attorney General on April 3, 2020, involving the risk of COVID-19 from the Coronavirus.

Respectfully Submitted,

/s/ Lindsey Springer

Reg. # 02580-063
Federal Transfer Center
P.O. Box 898801
Oklahoma City, Oklahoma 73189

---

1. Reuters reported on Saturday, April 3, 2020, 5 federal prisoners died at FCI Oakdale and 1 at FCI Elkton, from COVID-19. The report also said the BOP confirmed 91 inmates and 50 staff throughout its 122 institutions have fallen ill with COVID-19. "Uniion officials and families or prisoners have told Reuters they believe the number of people sickened with the virus is much higher." At present Fox News reports almost 10,000 dead and over 300,000 infected and the Surgeon General warns the coming weeks are going to be like Pearl Harbor.

CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2020, I sent by U.S. Mail, First Class, Postage Prepaid, the abov Motion to the Clerk of Court at 333 West Fourth Street, Tulsa, Oklahoma 74103;

I further certify that the following are ECF registered users and shall receive service of the above Motion through the Court's ECF system:

Charles O'Reilly
Jeffrey A. Gallant
R. Trent Shores

_____
Server

DECLARATION OF MAILING

I declare under the penalty of perjury pursuant to 28 U.S.C. § 1746(1), under the laws of the United States of America, that on April 6, 2020, I deposited the abov Motion in the U.S. Mail System inside the Federal Transfer Center to the Clerk of Court at the address listed above.

_____
Declarant

15



NAME: Lindsey Kent Springer
REG# 02580-063
FEDERAL TRANSFER CENTER
P.O. BOX 898801
OKLAHOMA CITY, OK 73189-8801

"Legal Mail"

postmarked 4/7/20-05

Of Court
Northern District of Okla
333 W 4TH ST
Tulsa, OK 74103
United States

09-CR-43-SPF-1

RECEIVED
APR 14 2020
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

S. GIBSON, CASE MANAGER